## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS, <br><br> Plaintiffs, <br><br> v. <br><br> LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; CANANDAIGUA NATIONAL CORPORATION d/b/a CANANDAIGUA NATIONAL BANK & TRUST; ELLIOT W. GUMAER, JR.; EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORPORATION; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; and WENDY EBER, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT** <br><br><br> **Jury Trial Demanded** |

Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays, as their Complaint against Defendants Lester Eber ("Lester"); Alexbay, LLC f/k/a Lester Eber, LLC ("Alexbay"); Canandaigua National Corp. d/b/a Canadaigua National Bank & Trust ("CNB"); Elliot W. Gumaer, Jr. ("Gumaer"); Eber Bros. & Co., Inc. ("Eber Bros."); Eber Bros. Wine and Liquor Corporation ("Eber W&L"); Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"); Eber-Connecticut, LLC ("Eber-Conn"); and Wendy Eber ("Wendy"), allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs hold two-thirds of the beneficial interest in the Eber Bros. wine and liquor distribution business through a trust (the "Trust"), which was created by the will of their grandfather, Allen Eber. The other third of the interest is held by Lester Eber, who is Plaintiffs' uncle, trustee of the Allen Eber trust, and CEO of all legal entities involved in the Eber Bros. wine and liquor business.

2.     In 2012, Lester transferred all of Eber Bros.' remaining operating assets—a distributorship in Connecticut—to himself, thereby cutting Plaintiffs out of any future value from either operating or selling the business.

3.     With help from his codefendants, Lester concealed the fact that he took the Connecticut business from Plaintiffs for several years.

4.     This lawsuit seeks damages and appropriate equitable relief for Defendants' fraudulent concealment of Lester's self-dealing, which constituted an extreme breach of his fiduciary duties to Plaintiffs both as a corporate officer and director and as a co-trustee.

## PARTIES

5.     Plaintiff Daniel Kleeberg is a citizen of the United States who resides in Lake Worth, Florida. He is one of two children of Sally Kleeberg, one of Allen Eber's two daughters. After Sally died in 2014, Kleeberg inherited a 1/6 interest in the Trust. *See* Exhibit A (family tree illustrating the relationships).

6.      Plaintiff Lisa Stein is a citizen of the United States who resides in Linwood, New Jersey. She is Sally Kleeberg's second child, and also has inherited a 1/6 interest in the Trust.

7.      Plaintiff Audrey Hays is a citizen of the United States who resides in Oak Creek, Colorado. She is the only child of Mildred Boslov, Allen Eber's other daughter. Hays inherited her mother's 1/3 interest in the Trust, which she has held at all relevant times.

8.      As used herein, "Plaintiffs" refers to all Trust beneficiaries other than Lester Eber, including both the current beneficiaries (Daniel Kleeberg, Lisa Stein, and Audrey Hays), as well as their predecessor beneficiaries (Sally Kleeberg and Mildred Boslov) when discussing events that occurred before they died.

9.      Defendant Lester Eber ("Lester") is a citizen of the United States who, upon information and belief, spends most of his time residing in temporary quarters in Manhattan and frequently transacts business in Manhattan as an employee of Eber Bros.' former competitor, Southern Wine & Spirits. Lester also has a permanent residence at 15 Coral Way, Rochester, New York 14618. Lester was at all relevant times an executive officer, manager, or director of the Defendant entities, and trustee of the Trust.

10.     Defendant Alexbay, LLC ("Alexbay") is a Connecticut limited liability company. When it was first registered in December 2011, it originally named Lester Eber, LLC and it changed its name in 2012. According to Connecticut records, Lester is the sole member. On information and belief, its principal place of business

is located at 30 Corporate Drive, North Haven, Connecticut, although it is and was at all relevant times controlled by Lester Eber, who frequently transacts Alexbay-related business relating in New York state, including in Manhattan, given its proximity to Connecticut.

11.     Defendant Canandaigua National Corp. d/b/a Canadaigua National Bank & Trust ("CNB") is a New York corporation with its principal place of business at 72 South Main Street, Canandaigua, New York. CNB was a trustee of the Trust at all relevant times and was the trustee principally responsible for managing the Trust's passive investment assets.

12.     Defendant Elliot W. Gumaer, Jr. ("Gumaer") is, on information and belief, a resident of New York and an attorney licensed to practice law in New York. Gumaer was designated as a trustee of the Trust in Allen Eber's will.

13.     Defendant Eber Bros. & Co., Inc. ("Eber Bros.") is a New York corporation that first registered with the Department of State on June 25, 1917. On information and belief, its principal place of business is located in Rochester, New York, either at 155 Paragon Drive or at 95 Allens Creek Road, Building 2, Suite 10.

14.     Defendant Eber Bros. Wine and Liquor Corporation ("Eber W&L") is a New York corporation. It was first registered with the Department of State on September 3, 1935. On information and belief, its official principal place of business is located in Rochester, New York, either at 155 Paragon Drive or at 95 Allens Creek Road, Building 2, Suite 10. On information and belief, Eber W&L is a wholly-owned subsidiary of Eber Bros.

4

15.     Defendant Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro") is a New York corporation. It was first registered with the Department of State on June 20, 1996. On information and belief, its official principal place of business is located in Rochester, New York, either at 155 Paragon Drive or at 95 Allens Creek Road, Building 2, Suite 10. On information and belief, Eber Metro is a wholly-owned subsidiary of Alexbay. Prior to June 2013, Eber Metro was a wholly-owned subsidiary of Eber W&L. On information and belief, since its New York operations ceased, Eber Metro has been primarily managed from Manhattan rather than Rochester given its proximity to Connecticut. On information and belief, since 2010, Eber Metro has held a controlling 79% interest in Eber-Conn.

16.     Defendant Eber-Connecticut, LLC ("Eber-Conn") is a Delaware limited liability company. It has been registered to do business in New York since March 8, 2006. On information and belief, its principal place of business is located at 30 Corporate Drive, North Haven, Connecticut, although it is and was at all relevant times controlled by Lester and Wendy Eber, who frequently transacted business in Manhattan. Eber-Conn operates a wine and liquor distributorship in Connecticut under the trade name Slocum & Sons.

17.     Defendant Wendy Eber ("Wendy") is a citizen of the United States who resides at 188 East 78th Street, Apartment 21A, New York, New York 10075. Wendy is Lester Eber's daughter and Plaintiffs' first cousin. At all relevant times, Wendy represented herself as the President of Slocum & Sons. On information and belief, Wendy was at all relevant times an executive officer, manager, or director of

Eber W&L and Eber Metro. Wendy is named as a Defendant because she authorized the transfer of Eber Metro (and thus control of Eber-Conn) to Alexbay in breach of her fiduciary duty of care to Eber Metro and Eber W&L, and concealed material information about the transfer from the beneficial owners.

## JURISDICTION AND VENUE

18.     This case implicates the Court's diversity jurisdiction. Plaintiffs are citizens of New Jersey, Colorado, and Florida, whereas Defendants are citizens of New York, Delaware, and Connecticut. The amount in controversy exceeds the $75,000 jurisdictional minimum because this case seeks damages and equitable relief for Defendants' wrongful transfer of an entity worth at least $10 million.  This Court therefore has jurisdiction under 28 U.S.C. § 1332.

19.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because at least one defendant resides in this district and, upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL COUNTS

20.     Allen Eber founded the Eber Bros. wine and liquor business. He had three children: Sally Kleeberg, Mildred Boslov, and Lester Eber. *See* Exhibit A.

21.     As part of his will, Allen Eber created a trust to hold, maintain, and manage his residuary estate, including the family business for the benefit of his children and their heirs (the "Trust").

22.     When his father died, Lester Eber was named a trustee of the family's business assets, including the Eber Bros. wine and liquor business.

23.     The will named Gumaer and a bank as co-trustees with Lester. Before the events in question in this lawsuit took place, CNB replaced the original bank as a trustee. CNB has been trustee at all relevant times.

24.     Lester himself had only a one-third ownership interest in the Trust's assets. The other two-thirds belonged to his two sisters, Sally and Mildred, who have since died, leaving their interests to their children, Audrey Hays, Daniel Kleeberg, and Lisa Stein.

25.     In addition, all legal claims, known or unknown, belonging to Sally Kleeberg at the time of her death have passed to her children, Daniel Kleeberg and Lisa Stein, along with her interest in the Trust, which was split evenly between them.

26.     In addition to being a trustee, Lester is and was at all relevant times the Chief Executive Officer and a director of the corporations associated with the Eber Bros. wine and liquor business: Eber Bros., Eber W&L, and Eber Metro.

27.     Upon information and belief, Wendy is and was at all relevant times the Chief Financial Officer and a director of Eber Metro.

28.     Upon information and belief, Wendy was the Chief Financial Officer, Secretary, and a director of Eber W&L until she resigned from those positions on March 31, 2014.

7

29.    Upon information and belief, Lester is and was at all relevant times managing member of Eber-Conn.

30.    Upon information and belief, Wendy is and was at all relevant times the President of Eber-Conn.

31.    The Trust holds at least 94 percent of the total equity in Eber Bros., including all of the voting shares.

32.    Eber W&L is the wholly-owned subsidiary of Eber Bros.

33.    Before June 2013, Eber Metro was the wholly-owned subsidiary of Eber W&L.

34.    As of February 2012, Eber Metro held a 79% interest in Eber-Conn. Thus, the Trust indirectly held a controlling interest in Eber-Conn.

**The Sham 2012 Action Resulting in Transfer of Eber Metro to "Alexbay"**

35.    Alexbay, an entity fully controlled by Lester, brought a sham, uncontested lawsuit in order to obtain uncontested judicial approval of Eber W&L's shares in Eber Metro to Alexbay—and with them, the controlling interest in Eber-Conn d/b/a Slocum & Sons.

36.    On February 21, 2012, Alexbay filed a complaint (the "2012 Action") against Eber W&L, Eber Metro, and Southern Wine & Spirits of America, Inc. ("Southern"), in New York Supreme Court, seeking a judicial declaration that it was "commercially reasonable" to transfer ownership of Eber Metro to Alexbay in full satisfaction of debts that were supposedly owed to Alexbay by Eber Metro and Eber W&L.

8

37.     A copy of the 2012 Action summons and complaint (without exhibits) is attached as Exhibit B.

38.     In the 2012 Action, Alexbay claimed that Eber Metro's 79% interest in Eber-Conn was "Collateral" for debts owed to an "Original Secured Creditor" (i.e., Lester) that were supposedly assigned to Alexbay about a month before it filed the 2012 Action.

39.     The 2012 Action alleged that there had been a default on some (but not all) of the debt, specifically a line of credit note

40.     According to the 2012 Action complaint, Southern was named as a defendant because it "may claim an interest as a secured creditor with respect to the Collateral…"

41.     The 2012 Action also listed "John Does 1–10" as defendants, which the caption described as "fictitious names intended to designate other entities or persons claiming any interest in Eber Bros. Wine & Liquor, Inc.'s 'OWNERSHIP INTEREST IN EBER BROS. WINE & LIQUOR METRO, INC.'"

42.     Alexbay's assertion that it did not know whether any "other entities or persons" claimed an ownership interest in Eber Metro was false and misleading because Alexbay was owned entirely by Lester.

43.     Thus, by including the "John Doe" defendants as described, Lester evinced his knowledge that Eber Bros., the Trust, and Plaintiffs were necessary parties to the 2012 Action.

44.     Neither Lester nor anyone else associated with him or any other trustee informed Plaintiffs about the 2012 Action, however.

45.     On March 15, 2012, Alexbay filed a motion seeking a determination that Alexbay's acceptance of all of Eber W&L's shares in Eber Metro in full satisfaction of the alleged debt was commercially reasonable under the Uniform Commercial Code ("UCC").

46.     No opposition to Alexbay's motion was filed.

47.     On May 11, 2012, the court granted Alexbay's unopposed motion.

48.     On information and belief, on June 5, 2013, all shares in Eber Metro were transferred to Alexbay, and with them the controlling interest in Eber-Conn.

## The Supposed Debts Owed to Lester

49.     In the 2012 Action, Alexbay alleged that the following agreements had been executed, creating a total debt in excess of $3.650 million:

      a.  On October 1, 2002, Lester loaned Eber W&L $575,895 pursuant to a promissory note;

      b.  On August 15, 2005, Lester loaned Eber W&L the sum of $1,503,750 pursuant to a promissory note;

      c.  On March 13, 2006, the two promissory notes were combined into an amended and restated promissory note with a principal balance of $1,434,710.68;

      d.  In October 2009, Lester extended a line of credit to Eber Metro of up to $1,500,000 pursuant to a Line of Credit Note;

e.   On February 26, 2010, Eber W&L guaranteed Eber Metro's payments on the line of credit note to Lester;

f.   On February 26, 2010, a security agreement gave Lester a secured interest in substantially all of Eber W&L's assets;

g.   On February 10, 2011, the security agreement was amended to specifically include Eber W&L's shares in Eber Metro, and thus its 79% interest in Eber-Conn;

h.   On February 11, 2011, pursuant to a debt assumption agreement, Eber Metro assumed Eber W&L's obligations under the amended promissory note.

50.   In fact, the purported loans by Lester to Eber Bros. were fictitious or exaggerated, and the representations made by Defendants to the New York state court were false.

51.   Attached as Exhibit C is a letter, dated April 2, 2010, sent by Lester to Sally Kleeberg on Eber W&L letterhead.

52.   According to the letter, Lester represented that he had loaned only "approximately $500,000" to the business, including Eber W&L and Eber Metro.

53.   In the 2012 Action, Alexbay alleged that Lester assigned the $1.5 Million Note and the LOC Note to Alexbay on February 11, 2012—just ten days before Alexbay filed the 2012 Action.

54.   Alexbay attached as an exhibit to the 2012 Action the purported assignment agreement—which was unsigned.

11

55.     On information and belief, Lester had not in fact executed the assignment before Alexbay filed the 2012 Action.

## Defendants' Concealment of the Transfer

56.     None of the Plaintiffs, nor any their immediate family members, have been employed by, or otherwise knowledgeable of the business affairs of, any Defendants since 2007.

57.     CNB failed to disclose this transfer in any of its annual statements and in fact affirmatively suggested that Eber-Conn was still part of the Trust's assets.

58.     For example, on December 18, 2012, CNB sent an annual statement to Plaintiff Hays that included the following paragraph in the cover letter:

> The trust does hold various Eber Bros. securities. The focus with business limited to Connecticut has required the company to downsize and execute a modified business plan. The company will not be declaring and paying an annual dividend on its Class A, Class B, or Preferred stock this year. Earnings are being used to invest and improve the business.

Exhibit D (December 18, 2012, cover letter).

59.     CNB's December 18, 2012, letter was misleading because it stated that the business was "limited to Connecticut" and had been required to "downsize and execute a modified business plan." These statements implied that the Trust had a continuing interest in Eber-Conn, even though months earlier it was determined that Eber-Conn would be transferred to Lester alone.

60.     CNB's December 23, 2013, cover letter for its next annual statement for the Trust simply omitted any mention of an operating business. Nor did it mention anything about the disposition of Eber-Conn. By doing so, CNB continued

to conceal the 2012 Action and Lester's self-dealing from Plaintiffs. A copy of the cover letter is attached as Exhibit E.

## Plaintiffs Discovered that Lester Acquired Eber-Conn After Learning that Defendants' Former Attorneys Had Sued Over the Transfer

61.     Plaintiffs first learned that Lester himself acquired Eber-Conn in June 2015, when Lisa Stein searched the internet for news about Eber Bros. and found an article published on May 29, 2015, in the Rochester Business Journal. A copy of the article is attached as Exhibit F.

62.     The article mentioned a lawsuit (the "Collection Action") that had been filed against Eber W&L, Eber Metro, Eber-Conn, and Alexbay by Eber W&L's former attorneys seeking to collect on a judgment that had been entered in the attorneys' favor for unpaid fees.

63.     After investigating further, Plaintiffs obtained a copy of the complaint in the Collection Action, which detailed the fraudulent conveyance of Eber-Conn to Lester. The complaint included four causes of action under New York Debtor and Credit Law. A copy of that complaint, which was filed on December 11, 2014, in New York Supreme Court, Monroe County, is attached hereto as Exhibit G.

64.     The Collection Action's detailed allegations support the conclusion that the transfer of Eber-Conn to Lester was a fraudulent conveyance and that the 2012 Action attempted to rubber stamp the fraudulent conveyance. But the 2012 Action withheld from the court material facts indicating that Eber-Conn was worth far more than the amount of the debt that was supposedly owed to Lester.

65.     The Collection Action was subsequently settled on undisclosed terms. A stipulation of discontinuance was filed with the court on November 12, 2015.

66.     Plaintiffs are aware of no facts suggesting that any of the allegations in the Collection Action were untrue.

67.     On the contrary, additional facts indicate that the Eber-Conn transfer was fraudulent, including, as alleged above, knowledge of Lester's inconsistent statements about debts owed to him; the false assertion that Alexbay did not know who had an ownership interest in Eber W&L; and the years of concealment since.

68.     Accordingly, Plaintiffs hereby incorporate the detailed allegations in paragraph 16 through 60 of the complaint in the Collection Action, as if fully set forth herein, including:

   a.   that on or about December 8, 2011, Lester Eber first tried to transfer Eber-Conn to Lester Eber, LLC (Alexbay) "for no consideration";

   b.   that Alexbay misrepresented the nature of a 2010 sale of six percent of Eber-Conn's equity as "arms' length" when in fact the purchaser was one of Lester's attorneys;

   c.   that Alexbay's reliance on the 2010 sale price to value Eber-Conn was unfounded not only because it was not arm's length, but also because there were two earlier transactions that Alexbay had omitted from its filings that reflected a value about *four times* larger than the amount of the allegedly outstanding debt; and

14

d.  that, therefore, the transfer of Eber Metro to Alexbay was far from

commercially reasonable and, in fact, a fraudulent conveyance.

*See* Exhibit G ¶¶ 16–60.

## Futility of Demand

69.    Before filing this lawsuit, Plaintiffs did not demand that Eber Bros.'

Board initiate suit against Lester because, to the best of Plaintiffs' knowledge, the

Board's only member is Lester. To the extent that any other Board members

existed, they were appointed and controlled by Lester. Accordingly, there is no

reasonable basis to believe that a demand to sue Lester would be acted upon.

## COUNT I

## Breach of Fiduciary Duty

70.    Plaintiffs incorporate the allegations contained in the paragraphs set

forth above as if fully set forth herein.

71.    Plaintiffs bring this claim individually as beneficiaries to the Trust and

derivatively as the beneficial owners of Eber Bros. and Eber W&L.

72.    As trustee of the Trust, Lester owed a fiduciary duty to the

beneficiaries of the Trust at all relevant times.

73.    As a senior executive of Eber Bros. and Eber W&L, Lester owed

fiduciary duties to the corporations and to corporations' shareholders.

74.    As set forth in detail above, Lester engaged in improper self-dealing

and diverted corporate assets by transferring Eber Metro and its controlling

interest in Eber-Conn to Alexbay, an entity that Lester controlled and solely owned.

15

75.     The previous New York state court finding—that the terms of the transfer of Eber-Conn were commercially reasonable under the Uniform Commercial Code—was procured improperly. Alexbay failed to provide the court with material information showing that the method of valuation pleaded in the complaint did not reflect a market value of Eber-Conn, as detailed by the complaint in the Collection Action.

76.     Lester acted knowingly, willfully, intentionally, and fraudulently to enrich himself, cover his tracks with a non-adversarial, fraudulently obtained judicial decision, and then conceal his conduct from Plaintiffs.

77.     Instead of acting for the benefit of the Trust, in which Lester had a one-third interest, Lester sought to take over the complete ownership interest in the Trust's remaining operating assets for himself.

78.     Lester failed to act for the benefit of the corporations for which he was the senior executive officer and a director (Eber Bros. and Eber W&L).

79.     The shareholders of Eber Bros. (and, by extension, its subsidiary Eber W&L) were directly and proximately harmed by Lester's self-dealing because their shares diminished in value.

80.     Accordingly, Lester has breached his fiduciary duty and is subject to (a) liability for damages to the corporations and to the Trust that he controlled, and (b) appropriate equitable relief.

81.     Under New York's faithless servant doctrine, a disloyal fiduciary or employee must repay all monies and other compensation received since the first disloyal act.

82.     Lester's disloyalty began by, at the latest, December 8, 2011, when he formed Lester Eber, LLC (i.e., Alexbay) and at about the same time submitted an application to the Connecticut Liquor Control Division for approval to transfer Eber Metro's controlling 79% interest in Eber-Conn to Lester Eber, LLC.

83.     Accordingly, among other damages, Lester must repay all compensation, profits, or other benefits he received from at least December 8, 2011, through the present.

84.     Because Alexbay, an entity completely controlled and dominated by Lester as the sole member, knowingly took the assets held by Eber W&L without giving fair and commercially reasonable value in consideration in exchange, and because it knew or should have known that doing so was unlawful under the circumstances, it is subject to this Court's equitable jurisdiction and a constructive trust should be imposed on it and all of its assets, including Eber Metro.

85.     As co-trustees for the Trust, Defendants CNB and Gumaer owed fiduciary duties to Plaintiffs, including the duty of care.

86.     CNB and Gumaer breached their fiduciary duties by, among other things, approving of the transfer of Eber-Conn to Lester's own company without engaging in reasonable diligence and given that the transaction was not arms-length and involved self-dealing.

87.     On information and belief, neither CNB nor Gumaer attempted to question the proposed transfer of Eber-Conn to Lester, nor did they attempt to obtain a third-party appraisal.

88.     On information and belief, although Gumaer has been a trustee since the beginning of the Trust, he has not actively managed or monitored the Trust for several years and yet has not sought to transfer his trustee responsibilities to someone else. Therefore, if Gumaer did not know about the transfer of Eber-Conn to Lester, or if he failed to question the transfer after learning about it (and especially if he failed to question it or disclose it to Plaintiffs after learning about the Collection Action), then his failure to actively manage, monitor, and protect the Trust's assets constituted a breach of the fiduciary duty of care.

89.     As an officer and director of Eber W&L, Wendy owed a fiduciary duty to act in the best interests of the shareholders, including Plaintiffs.

90.     By approving of the transfer of Eber Metro to Alexbay as detailed herein, and permitting that self-dealing to occur without obtaining a third-party appraisal or fairness opinion, Wendy breached her fiduciary duties of care and loyalty to the corporations she was required to serve and their shareholders.

91.     Because Wendy's actions were disloyal to Eber W&L, she was a faithless servant and must return all compensation, profits, and benefits that she received from the date of her first disloyal act.

92.     For these reasons, Defendants Lester, Wendy, CNB, and Gumaer have breached their fiduciary duties and are liable to Plaintiffs.

18

## COUNT II

## Fraudulent Concealment

93.     Plaintiffs incorporate the allegations contained in the paragraphs set forth above as if fully set forth herein.

94.     This claim for fraudulent concealment is brought by Plaintiffs both in their individual capacity and derivatively on behalf of the Trust and the corporations in which they are beneficial owners.

95.     Plaintiffs, as Trust beneficiaries and as passive beneficial shareholders in Eber Bros. (and beneficial owners of Eber W&L), relied on Lester to manage the Trust and the business affairs of Eber Bros. and its affiliates.

96.     As trustee of the Trust and as chief executive of Eber Bros. and Eber W&L, Lester owed a fiduciary duty to Plaintiffs.

97.     As a trustee of the Trust, CNB owed a fiduciary duty to Plaintiffs.

98.     As trustees, and under New York law, Lester and CNB were required to furnish annual statements to Plaintiffs. They purported to do so in or about December of each year for each of the years relevant to this matter.

99.     Alexbay's bringing the sham 2012 Action to obtain judicial approval for the transfer of Eber Metro and its interest in Eber-Conn to Alexbay was material information that Lester was obligated to disclose to Plaintiffs, given Plaintiffs' known ownership interest and that the transaction was not arms-length, and involved self-dealing since Alexbay was entirely owned and controlled by Lester.

100.    Lester failed to disclose the 2012 Action to Plaintiffs at any time, and still to this day has never advised Plaintiffs or their predecessors that he took Eber Metro and its controlling interest in Eber-Conn for himself.

101.    Had Lester or CNB disclosed the 2012 Action to Plaintiffs along with sufficient information about prior investments in Eber-Conn and its financial condition, Plaintiffs would have protested the transfer of Eber Metro to Lester and taken all available actions as the beneficial majority shareholders of Eber Bros. and Eber W&L to prevent the transfer from occurring. At the very least, they would have reduced the amount of the ownership interest in Eber-Conn that was conveyed in satisfaction of the alleged debt, by obtaining an independent appraisal of both the amount of debt owed to Lester, if any, and the value of Eber-Conn.

102.    Plaintiffs have suffered damages in the form of their lost ownership interest in the last remaining operations of the Eber Bros. wine and liquor business.

103.    On information and belief, Plaintiffs have suffered additional damages as a result of not receiving distributions or profits generated by Eber-Conn since its controlling interest was transferred to Lester's Alexbay.

104.    On information and belief, Plaintiffs have suffered further damages as a result of the concealment to the extent that an accounting from Lester and Alexbay shows that assets have been dissipated since the 2012 Action resulted in a transfer.

105.    For these reasons, Defendants Lester Eber and CNB are liable for fraudulent concealment.

20

106.     Further, because Lester's conduct served to transfer valuable assets to Alexbay at the expense of the other entities he was obligated to serve, Alexbay is liable under principles of *respondeat superior*.

## COUNT III

## Aiding and Abetting Breach of Fiduciary Duty

107.     Plaintiffs incorporate the allegations contained in the paragraphs set forth above as if fully set forth herein.

108.     Alexbay's filing of the sham 2012 Action and acceptance of Eber-Conn was critical to Lester's breach of fiduciary duty, as alleged above.

109.     Since Lester is and was at all relevant times the sole member of Alexbay, his knowledge and intentions are fairly imputed to Alexbay. Accordingly, Alexbay's involvement in Lester's scheme to fraudulently convey the controlling interest in Eber-Conn to Alexbay for his own benefit was knowing and willful. Alexbay specifically intended Lester's breach of fiduciary duty to succeed.

110.      For these reasons, even though Alexbay was not a fiduciary, it is liable for aiding and abetting Lester's breach of his fiduciary duties.

## COUNT IV

## Accounting

111.     Plaintiffs incorporate the allegations contained in the paragraphs set forth above as if fully set forth herein.

112.   The right to an accounting is premised on the existence of a fiduciary relationship and a breach of that duty respecting property in which the party seeking the accounting has an interest.

113.   Plaintiffs have an interest in the Trust, Eber Bros., and Eber W&L, and previously had an interest in Eber Metro and Eber-Conn.

114.   Lester, CNB, and Gumaer were, at all relevant times, fiduciaries to Plaintiffs because they were trustees for the Trust.

115.   Lester and Wendy were, at all relevant times, fiduciaries to Plaintiffs and to Eber Bros. and Eber W&L.

116.   Because they are fiduciaries to Plaintiffs, Lester, CNB, Gumaer, and Wendy are required to provide an accounting to Plaintiffs.

117.   As the wholly-owned entity of Lester that was used in connection with the transaction challenged in this case, Alexbay is also subject to an accounting, as are any similarly situated entities that may be discovered by Plaintiffs in the course of this accounting or through the discovery process as to other claims.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    Imposition of a constructive trust on the assets of Alexbay or any other entities controlled by or affiliated with any of Defendants, known or unknown, that can be traced to Eber-Conn;

22

d.     Rescission of all of the agreements related to the transfer of Eber Metro to Lester Eber, Alexbay, and any other affiliated persons or entities;

e.     An order returning the Eber Metro shares and the proportionate share of the proceeds from the Eber-Conn business since the date of transfer to an entity controlled by the Trust;

f.     Restitution to the Trust for any unjustified transfers, including all fees paid to CNB and Gumaer since January 2012 and any attorney's fees withdrawn from the Trust's assets in defense of this action;

g.     Surcharge against the trustees;

h.     Removal of Lester, CNB, and Gumaer as trustees and appointment of a replacement trustee for the Trust;

i.     An accounting from Lester, Wendy, CNB, Gumaer, Eber Bros., Eber W&L, Eber Metro, Eber-Conn, and Alexbay;

j.     Pre-judgment interest at the New York statutory rate of nine percent (9%);

k.     Post-judgment interest;

l.     An award of attorney's fees and costs; and

m.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.


Dated: December 9, 2016

Brian C. Brook (BB 1980)
Kari L. Parks (KP 1273)
CLINTON BROOK & PEED
641 Lexington Avenue, 13th Floor
New York, New York 10022
Telephone: (212) 328-9559
Facsimile: (212) 328-9560
Brian@ClintonBrook.com

*Attorneys for Plaintiffs*