UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DANIEL KLEEBERG, et al.,

                         Plaintiffs,

                  –against–                               16-cv-9517 (LAK)

LESTER EBER, et al..

                         Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-6-2017

**MEMORANDUM OPINION**

Appearances:

         Brian C. Brook
         Kari L. Parks
         CLINTON BROOK & PEED
         *Attorneys for Plaintiffs*

         William G. Bauer
         WOODS OVIATT GILMAN LLP
         *Attorneys for Defendant The Canandaigua Naitonal Bank and*
         *Trust Company*

         Robert B. Calihan
         CALIHAN LAW PLLC
         *Attorneys for Defendant Elliot W. Gumaer*

LEWIS A. KAPLAN, *District Judge.*

         This family dispute involves claims by the beneficiaries of a collective two-thirds

interest in a testamentary trust under the will of a long-deceased ancestor that they were done out

of their just desserts by misconduct of the co-trustees, most notably their uncle, the testator's sole surviving son. The plaintiffs assert, among others, claims of breach of fiduciary duty and fraudulent concealment based largely on their uncle's alleged self-dealing by which he is said to have appropriated to himself and his daughter the entire ownership of what has become of the family business over the decades. The matter is before the Court on the motions of The Canandaigua National Bank and Trust Company ("CNB"), a successor co-trustee of the trust, and one of its two other co-trustees, Elliot W. Gumaer, to dismiss the action or for other relief.[1]

*The Probate Exception to Diversity Jurisdiction*

Days *after* the commencement of this action, CNB filed a petition in the New York Surrogate's Court, Monroe County, for an order judicially settling its account, approving its resignation as co-trustee, and discharging it from any liability as successor co-trustee of the testamentary trust. It and Mr. Gumaer now seek dismissal – although complete diversity of citizenship exists and the requisite jurisdictional amount is claimed – based on the contention that this Court lacks subject matter jurisdiction by virtue of the so-called probate exception to diversity jurisdiction. The argument fails for at least two reasons.

To begin with, the Supreme Court in *Marshall v. Marshall*[2] sharply curtailed the probate exception. It held that[3]

"the probate exception reserves to state probate courts the probate or annulment of

---

[1]      Defendant Gumaer has joined in the motion. DI 48.

[2]      547 U.S. 293 (2006).

[3]      *Id.* at 311-12.

a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."

Our Circuit has followed this principle.[4]

CNB's Surrogate's Court petition does not seek to probate or annul a will. That court has not taken custody of any property. And while plaintiffs' tort claims seek to impose *in personam* liability on movants and their co-trustees, the adjudication of such claims – despite the fact that they are based on the actions of a co-trustee of a testamentary trust – would not trench improperly on powers of the Surrogate's Court with respect to "the administration of a decedent's estate." We need look no farther that the Second Circuit's decision in *Lefkowitz* for proof.

The *Lefkowitz* plaintiff sued The Bank of New York, executor of her parents' estates. In relevant part, she brought "*in personam* claims for breach of fiduciary duty (Count IV), aiding and abetting breach of fiduciary duty (Count V), fraudulent misrepresentation (Count VII), and fraudulent concealment (Count VIII)."[5] For each, she sought "damages from Defendants personally rather than assets or distributions from either estate."[6] The district court dismissed those claims under the probate exception. But the Circuit reversed, stating:[7]

"While the issues involved in [these] claims undoubtedly intertwine with the litigation proceeding in the probate courts, in addressing the claims, the federal court will not be asserting control of any *res* in the custody of a state court. A federal

---

[4]

    *Lefkowitz v. Bank of New York,* 528 F.3d 102, 106 (2d Cir. 2007).

[5]

    *Id.* at 107.

[6]

    *Id.* at 107-08.

[7]

    *Id.* at 108 (footnote, citations, alterations, and internal quotation marks omitted).

court properly exercises its jurisdiction to adjudicate rights in property in the custody of a state court where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court. The probate exception can no longer be used to dismiss widely recognized torts such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court. Accordingly, these claims may not be dismissed under the probate exception."

So too here. And this Court does not rest on this point alone.

It is significant that the Surrogate's Court action was commenced after this one, as that is an independently fatal flaw in CNB's argument. As the Supreme Court wrote not very long ago:[8]

"It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing."

In this case, Mr. Gumaer has been one of the co-trustees since the testator's death decades ago. CNB succeeded a predecessor as a co-trustee in 2007. So far as the record discloses, CNB never sought judicial settlement of its account after that date, even on an interim basis.[9] Yet five days after the commencement of this action, CNB petitioned the Surrogate's Court for settlement of its account for the period August 27, 2007 through December 27, 2016. Thus, even if this action now would be intertwined with or somehow "interfere" with the Surrogate's Court proceeding that CNB brought in reaction to the filing of this case, that was not the case at the time this action was filed, which was the determinative temporal point with respect to the existence of

---

[8]

*Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 570-71 (2004) (footnote, citation, and internal quotation marks omitted).

[9]

*See* DI 38-2, at ECF pp. 90-92.

federal jurisdiction.

      This point is well illustrated by *Chevalier v. Estate of Barnhart.*[10]  That was a diversity case in which the plaintiff asserted, among other claims, one for foreclosure on real estate, which "require[d] that the federal court assume *quasi in rem* jurisdiction of the property at issue."[11]  The defendant, who owned the real estate, subsequently died and a state probate court appointed an administrator.  But the Sixth Circuit held[12]

> "that the probate exception does not divest a federal court of subject-matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over the property at the time that the plaintiff files her complaint in federal court. Accordingly, the probate exception does not divest the federal courts of subject-matter jurisdiction to adjudicate Chevalier's foreclosure action because, at the time she filed the federal complaint, the property that she seeks to foreclose was not 'in the custody of a state probate court.'  Once jurisdiction vested in the federal courts, Barnhart's subsequent death and the admission of her estate to state probate court did not divest the federal court of subject-matter jurisdiction."

      Accordingly, the probate exception does not oust this Court of subject matter jurisdiction.[13]

## Colorado River *Abstention*

      CNB next argues that this Court should abstain in favor of the Surrogate's Court

---

[10]

  803 F.3d 789 (6th Cir. 2015).

[11]

  *Id.* at 802.

[12]

  *Id.* at 804 (quoting *Marshall*, 547 U.S. at 311).

[13]

  It is not clear whether CNB will attempt to proceed in the Surrogate's Court in light of this ruling or, should it do so, whether the Surrogate would permit such proceedings prior to resolution of this case or whether plaintiffs or other defendants here would seek relief from this Court.  This Court therefore does not now address the possibility that litigation, if unimpeded, might proceed in both courts.

proceeding under *Colorado River Water Conservation District v. United States*[14] and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*[15] It contends that the Court should do so because plaintiffs would have an opportunity in Monroe County to raise all of the claims they assert here.[16] In essence, the argument is what might be called Probate Exception Lite. The argument is unpersuasive on principles previously stated by this Court:[17]

> "*Colorado River* . . . made clear that federal courts have a virtually unflagging obligation to exercise the jurisdiction given them. The *Colorado River* Court, indeed, wrote that the circumstances permitting dismissal of a federal case in deference to a concurrent state proceeding 'are considerably more limited than the circumstances appropriate for abstention' on other grounds, characterizing them as 'exceptional.' While eschewing any hard and fast rule, *Colorado River* and *Moses H. Cone* together indicate that four principal factors inform the exercise of a district court's discretion in determining whether to defer in such a situation: (1) whether the state court has assumed jurisdiction over property, (2) the relative convenience of the fora, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained. *Moses H. Cone* indicated that the federal or state source of the rule of decision also is relevant. In any event, however, *'[o]nly the clearest of justifications will warrant dismissal'* of the federal action."

Most of these factors cut against dismissal or abstention here. In this case, the state court has not assumed jurisdiction over property. Litigation in this Court would be more convenient

---

[14] 424 U.S. 800 (1976).

[15] 460 U.S. 1 (1983).

[16] Plaintiffs dispute this, arguing that they would be unable raise several of their claims in the Surrogate's Court. *See* DI 44, at 10-11. They maintain that the two actions therefore are not "parallel," a prerequisite for *Colorado River* abstention. *See id.* at 10 (citing *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). Even assuming that this prerequisite is met – a doubtful proposition on this record – the Court would not exercise its discretion to abstain in this case for the reasons set forth below.

[17] *Prudential Securs. Inc. v. Arain,* 930 F. Supp. 151, 157-58 (S.D.N.Y. 1996) (quoting *Colorado River*, 424 U.S. at 818 and *Moses H. Cone*, 460 U.S. at 16) (emphasis in *Moses H. Cone*).

than in the Monroe County Surrogate's Court in Rochester, New York, for all of the parties save Lester Eber and CNB.[18]  This Court obtained jurisdiction before the filing of the Surrogate's Court proceeding.  While the avoidance of piecemeal litigation of course is an end to be desired, that fact sheds no light on whether this Court rather than the Surrogate's Court should be the one to "stand down."  The fact that New York law will supply the rule of decision, while pertinent, merits little weight, as federal courts in New York apply New York law all the time.

There is no clear justification for this Court to decline to exercise its "virtually unflagging obligation . . . to exercise the jurisdiction given" it.

*Conclusion*

The Court has considered all of movants' contentions, including that with respect to the sufficiency of the complaint as to punitive damages, and concluded that they lack merit. Accordingly, the motions to dismiss [DI 38, DI 48] are denied in all respects.

SO ORDERED.

Dated:        July 6, 2017

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[18]  According to CNB's Surrogate's Court petition, plaintiffs live in Florida, New Jersey and Colorado.  Although plaintiffs asserted in their complaint that Mr. Gumaer resides in New York, DI 1, at 4 ¶ 12, CNB's Surrogate's Court petition lists for Mr. Gumaer a Georgia address, DI 38-2, at ECF pp. 91-92 ¶ 18(a).  Air travel to New York City is more convenient than to Rochester for all of those resident outside the New York City.  New York City obviously is more convenient for the plaintiff resident in nearby New Jersey.