UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>Plaintiffs,<br><br>v.<br><br>LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; CANANDAIGUA NATIONAL CORPORATION d/b/a CANANDAIGUA NATIONAL BANK & TRUST; ELLIOT W. GUMAER, JR.; EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORPORATION; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; and WENDY EBER,<br><br>Defendants. | Civil Action No.  16-CV-9517(LAK) |

**DECLARATION OF BRIAN C. BROOK IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINDING OF DEFAULT OR, IN THE ALTERNATIVE, TO
COMPEL AND IMPOSE SANCTIONS**

1.      I, Brian C. Brook, am an attorney licensed to practice law in the State of New York and in this Court, among other jurisdictions; a partner in the law firm of Clinton Brook & Peed; and counsel of record for the Plaintiffs in the above-captioned case.

2.      I submit this declaration and the exhibits attached hereto in support of Plaintiffs' Motion for Finding of Default or, in the Alternative, to Compel and Impose Sanctions.

1

3. On February 10, 2017, CNB petitioned Monroe County Surrogate's Court for settlement of its account for the period of August 27, 2007 through December 27, 2016.

4. On May 22, 2017, the parties held their Rule 26(f) conference. I sent a draft joint discovery plan report to Defendants' counsel on May 24, 2017. After some back-and-forth on edits, counsel for most Defendants consented to filing the joint discovery plan. Counsel for CNB, however, failed to give his approval, or any comments at all, despite asking the other parties to f filing so he could provide comments.

5. Attached hereto as Exhibit 1 is a true and correct copy of a June 6, 2017 email from Brian Brook to William Bauer regarding Plaintiffs' decision to file the joint discovery plan without waiting for CNB any longer because it was already a day late due to CNB's request for more time.

6. Based on prior conversations with counsel for CNB, it is Plaintiffs' understanding that, in or about late May or early June 2017, the Surrogate's Court in Monroe County granted CNB's request to terminate the Allen Eber Trust and distribute the assets, including over $100,000 in investment assets to each of Plaintiffs. (Plaintiffs did not enter an appearance in the Surrogate's Court proceedings because they did not challenge the requested relief, which was functionally equivalent to Plaintiffs' request in this case to have the trustees removed and replaced.)

7. I have made repeated requests to CNB's counsel for copies of the final order(s) by the Surrogate Court, and although CNB has said that it was provide them, it has so far failed to do so.

8. Attached as Exhibit 2 is a true and correct copy of a June 7, 2017 letter from CNB's counsel of record to the Court's law clerk, requesting permission to "amend" its pending Motion to Dismiss to address new legal and factual issues arising out of the Monroe County Surrogate Court's judicial settlement of CNB's Final Account.

9. Attached as Exhibit 3 is a true and correct copy of a June 8, 2017 letter from Brian Brook to the Court opposing CNB's demand because, among other things, it violated the plain text of Rule 12.

10. Attached as Exhibit 4 is a true and correct copy of an email I sent Bauer on Friday, July 21, following up on our earlier phone call and, among other things, requesting that Bauer send me "a copy of all orders, judgments, and related documents entered in the surrogate court action."

11. Attached as Exhibit 5 is a true and correct copy of an email Bill Bauer sent me on July 27, stating, "[t]he paralegal who was assisting me yesterday on completing the documents was called away unexpectedly due to death in the family…I will pick up the ball today and get the responsive documents to you."

12. As of August 1, 2017, I have not received copies of any documents related to the surrogate court action from CNB or its counsel.

13. Attached as Exhibit 6 is a true and correct copy of a July 7, 2017 email to counsel forwarding an email exchange between Lisa Stein and Richard Hawks, wherein Stein had contacted the Trust manager to inquire about the status of the Trust assets. Hawks told Stein that her request was forwarded to CNB's in-house counsel.

14. On or about July 11, 2017, in-house counsel for CNB contacted each of my clients directly without my knowledge.

15. Attached as Exhibit 7 is a true and correct copy of one of the emails sent by CNB's in-house counsel to one of my clients, Lisa Stein, including one of the attachments called a "Receipt and Release." The other two attachments contain sensitive financial and account information and are not being filed but can be made available to the Court if so desired.

16. As of August 1, 2017, CNB had not yet distributed the Trust assets as it had told the Surrogate's Court that it would do. Though I have asked CNB, on multiple occasions, whether it will distribute the assets without Plaintiffs signing general releases, CNB has refused to answer this question.

17. Attached as Exhibit 8 is a true and correct copy of an email I sent to Bill Bauer on Thursday, July 6, attempting to schedule a call to discuss, "[a]mong other things," "when [Plaintiffs] could expect [CNB's] initial disclosures."

18. On the afternoon of July 12, 2017, I spoke with Bill Bauer, counsel for CNB, by telephone, about CNB's failure to serve Initial Disclosures and its attempt to have my clients sign general releases without my knowledge. During the call, Mr.

Bauer advised that the releases had been sent by CNB's in-house counsel without his prior knowledge. He defended the actions of CNB's in-house counsel as supposedly ethical because the contact was related to the Surrogate's Court matter initiated by CNB after this lawsuit was filed. Plaintiffs never appeared in that proceeding, and did not retain undersigned counsel to represent them in that proceeding. I told Mr. Bauer that I disagreed with his assessment, because the sending of a general release was obviously intended to affect this litigation; and Mr. Bauer did not deny that CNB's in-house counsel was aware of this litigation. When I asked Bauer whether CNB would release the trust assets to Plaintiffs without a general release, he said he would "find out" and let us know; he never has.

19. Also during the July 12 call, Mr. Bauer stated his belief that Plaintiffs' claims in this case were no longer viable because Plaintiffs did not assert them in the Surrogate's Court case. He expressed dismay at the idea that Plaintiffs could choose the forum where to litigate their claims. I responded by saying that the Court had already decided these issues, and that such arguments were frivolous in light of the Court's denial of CNB's motion to dismiss. Moreover, I said that whatever CNB's views are of the collateral effect of the Surrogate's Court action, they do not excuse trying to circumvent me to get my clients to sign general releases.

20. On July 7, 2017, I served a deposition notice by mail on CNB for the deposition of Richard Hawks, who managed the Allen Eber Trust during the relevant time period. Although Hawks had told Lisa Stein that he was retired, he

communicated with her from a CNB email account, indicating that he may have still been employed by or otherwise still affiliated with CNB such that he was subject to being deposed on notice. The notice required Hawks to appear at a deposition at our midtown office on July 28, 2017. We received no objections or any other response to the notice. Neither Hawks nor CNB's counsel appeared at the noticed time and location.

21. Attached as Exhibit 9 is a true and correct copy of the deposition notice for CNB's Richard Hawks, as sent to CNB's counsel of record by mail on July 7, 2017.

22. CNB has not served its initial Rule 26(a) disclosures, which were due on June 16, 2017. CNB has never requested Plaintiffs' consent to extend CNB's deadline to serve Rule 26(a) disclosures.

23. CNB's Answer was due July 20, 2017. After CNB missed its deadline to Answer the Complaint, I reluctantly agreed not to object so long as CNB cured its defaults by July 26, 2017.

24. As of August 1, 2017, CNB has neither filed its Answer nor served it on Plaintiffs, and has not updated Plaintiffs regarding when CNB might file its Answer or explained why it has not filed it.

25. As of August 1, 2017, I have not heard from Bauer since his July 27 email saying he would "pick up the ball today and get the responsive documents to you" (Exhibit 5).

6

26.     Plaintiffs' assets continue to be held by CNB unless and until Plaintiffs agree to sign up their right to sue CNB in this action.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated:  New York, New York
        August 2, 2017

/s Brian C. Brook
Brian C. Brook