# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN,
and AUDREY HAYS,

                Plaintiffs,

      v.

LESTER EBER; ALEXBAY, LLC f/k/a
LESTER EBER, LLC; THE
CANANDAIGUA NATIONAL BANK
& TRUST COMPANY; ELLIOTT W.
GUMAER, JR.; EBER BROS. & CO.,
INC.; EBER BROS. WINE AND
LIQUOR CORP.; EBER BROS. WINE
& LIQUOR METRO, INC.; EBER-
CONNECTICUT, LLC; and WENDY
EBER,

                Defendants.

Civil Action No.  16-CV-9517 (LAK)

**SECOND AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays, as their Complaint against Defendants Lester Eber ("Lester"); Alexbay, LLC f/k/a Lester Eber, LLC ("Alexbay"); The Canandaigua National Bank and Trust Company ("CNB"); Elliot W. Gumaer, Jr. ("Gumaer"); Eber Bros. & Co., Inc. ("Eber Bros."); Eber Bros. Wine and Liquor Corporation ("Eber W&L"); Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"); Eber-Connecticut, LLC ("Eber-Conn"); and Wendy Eber ("Wendy"), allege as follows:

## NATURE OF THE ACTION

1. This action concerns unfair self-dealing and fraudulent concealment by individuals who were required by law to act as fiduciaries to the injured parties.

2. At all relevant times, Plaintiffs were beneficiaries or contingent remaindermen of a combined two-thirds interest in a testamentary trust created upon the death of their grandfather, Allen Eber (the "Trust").

3. The other third of the interest in the Trust was held by Allen Eber's only son, Lester Eber.

4. The Trust held all of the voting stock in the parent company for the Eber Bros. Wine and Liquor distribution business, which Allen Eber founded.

5. Lester was also a co-trustee of the Trust. He was entrusted with stewardship of the family business, serving as the President of Eber Bros. Wine and Liquor.

6. In 2012, Lester transferred the company's only remaining operating assets to himself without giving fair consideration to Eber Bros., thereby cutting Plaintiffs out of the family business without giving them a dime.

7. Aware that his self-dealing violated his fiduciary duties both as a corporate officer and director and as a co-trustee of the Trust, Lester concealed his transfer from Plaintiffs for years; orchestrated a sham adversary proceeding for the purpose of getting the seal of judicial approval on the transfer; and backdated a resignation from Eber Bros. Wine and Liquor to before he filed that sham lawsuit against his own company.

8.     Lester did not act alone, however. He had help from his daughter, Wendy Eber, who was also a senior executive of the wine and liquor business, and he had help from his co-trustees, Elliott "Mike" Gumaer ("Gumaer") and The Canandaigua National Bank and Trust Company ("CNB")—each of whom was supposed to be acting as a fiduciary to Plaintiffs.

9.     This lawsuit seeks damages and equitable relief for Defendants' breach of their fiduciary duties and fraudulent concealment of it from Plaintiffs.

## PARTIES

10.    Plaintiff Audrey Hays is a citizen of Colorado, with her primary residence in the city of Oak Creek. She is the only child of Mildred Boslov, who was one Allen Eber's two daughters. Mildred Boslov died in 1973, at which point Hays became a beneficiary of the Trust, holding a 1/3 interest in it.

11.    Plaintiffs Daniel Kleeberg and Lisa Stein are the children of Sally Kleeberg, who was Allen Eber's other daughter, and who had a 1/3 interest in the Trust. Prior to their mother's death in 2014, Daniel Kleeberg and Lisa Stein were contingent remaindermen of the Trust. After their mother's death, they became the beneficiaries by operation of law, pursuant to the terms of the Allen Eber will, which provided that Sally's 1/3 interest go to her issue *per stirpes*. Accordingly, they split their mother's 1/3 interest evenly, with each receiving a 1/6 interest. *See* Exhibit A (family tree illustrating the relationships at the time of filing).

12.    Plaintiff Daniel Kleeberg is a citizen of Florida, and at the time of filing has his primary residence in Lake Worth, Florida.

3

13.     Plaintiff Lisa Stein is a citizen of New Jersey, with her primary residence in Linwood, New Jersey.

14.     Defendant Lester Eber ("Lester") is a citizen of New York who, upon information and belief, spends most of his time residing in temporary quarters in Manhattan and frequently transacts business in Manhattan as an employee of Eber Bros.' former competitor, Southern Wine & Spirits. Lester also has a permanent residence at 15 Coral Way, Rochester, New York 14618. Lester was at various times an executive officer, manager, or director of the Defendant entities, and was a co-trustee of the Trust until its dissolution in 2017.

15.     Defendant Alexbay, LLC ("Alexbay") is a Connecticut limited liability company. When it was first registered in December 2011, it originally named Lester Eber, LLC and it changed its name in 2012. Its sole member is Lester Eber. On information and belief, its principal place of business is located at 30 Corporate Drive, North Haven, Connecticut, although it is and was at all relevant times controlled by Lester Eber, who frequently transacts Alexbay-related business relating in New York state, including in Manhattan.

16.     Defendant The Canandaigua National Bank and Trust Company ("CNB") is a national banking association with its principal place of business at 72

South Main Street, Canandaigua, New York. CNB was a trustee of the Trust since approximately June 2007. [1]

17.     Elliot W. "Mike" Gumaer, Jr. ("Gumaer"), at the time this case was filed, was a citizen of Georgia with a primary residence at 228 W. 28th Street, Cottage 494, Sea Island, Georgia 31561. He was an attorney licensed to practice in New York since 1958, although that license was not maintained and he was, as a result, not authorized to practice law at the time this case was first filed. Gumaer was designated as a co-trustee of the Trust in Allen Eber's will and served in that capacity until the Trust was dissolved in 2017. Gumaer was also a director of Eber Bros. from 2000 to 2017, and a director of Eber W&L until at least 2014.[2]

18.     As a matter of law, CNB and Gumaer were responsible for all of the Trust's assets. As a practical matter, they appeared to divide responsibility between them, with CNB managing the Trust's passive investment assets and Gumaer supervising the operating assets (i.e., the family business).

19.     Defendant Eber Bros. & Co., Inc. ("Eber Bros.") is a New York corporation that first registered with the Department of State on June 25, 1917. On information and belief, it has an office for transacting business located at 95 Allens Creek Road, Building 2, Suite 10, Rochester, New York. At the time of filing, Eber

---

[1] The original Complaint named CNB's parent corporation, Canandaigua National Corp., which has been replaced in this Second Amended Complaint with the consent of counsel for CNB and its parent.

[2] Mr. Gumaer died on February 20, 2018, but he is still named as Defendant herein since the Court has not yet permitted substitution pursuant to Rule 25. At this time we have determined that there are two co-executors, his widow, Lucia Gumaer, and a former partner of his, Patrick D. Martin.

Bros.' only directors were Lester Eber and Gumaer. Lester has been the President of Eber Bros. at all relevant times.

20.     Defendant Eber Bros. Wine and Liquor Corporation ("Eber W&L") is a New York corporation. It was first registered with the Department of State on September 3, 1935. On information and belief, it has an office for transacting business at 95 Allens Creek Road, Building 2, Suite 10, Rochester, New York. On information and belief, Eber W&L is a wholly-owned subsidiary of Eber Bros. Lester Eber was President of Eber W&L until 2012, when he purported to resign. He was replaced by Wendy Eber, who resigned in 2014, at which point she because the "Assistant Secretary" of the company, but remained its senior-most officer. Gumaer served as a director of Eber W&L until 2014.

21.     Defendant Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro") is a New York corporation. It was first registered with the Department of State on June 20, 1996. On information and belief, it has an office for transacting business at 95 Allens Creek Road, Building 2, Suite 10, Rochester, New York,. On information and belief, Eber Metro is and was at the time of filing a wholly-owned subsidiary of Alexbay. Prior to June 2012, Eber Metro was a wholly-owned subsidiary of Eber W&L. On information and belief, since its New York operations ceased, Eber Metro has been primarily managed from Manhattan rather than Rochester given its proximity to Connecticut. On information and belief, since 2010, Eber Metro has held a controlling 79% interest in Eber-Conn.

22.     Defendant Eber-Connecticut, LLC ("Eber-Conn") is a Delaware limited liability company. It has been registered to do business in New York since March 8, 2006. Its principal place of business is located at 30 Corporate Drive, North Haven, Connecticut, although it is and was at all relevant times controlled by Lester and Wendy Eber, who frequently transacted business in Manhattan. Eber-Conn operates a wine and liquor distributorship in Connecticut under the trade name Slocum & Sons.

23.     Eber-Conn has since 2010 had three members: Alexbay, LLC; Poleridge Bowman Partners, LLC; and Eder-Goodman, LLC.

24.     Non-party Poleridge Bowman Partners, LLC ("Poleridge Bowman") is a Georgia limited liability company. On information and belief, its sole member is, and was at all relevant times, Glenn Sturm, who is, and at all relevant times was, an attorney with Nelson Mullins in Atlanta and a citizen of Georgia.

25.     Non-party Eder-Goodman, LLC is a Connecticut limited liability company. Its registered members are Richard M. Weiss and David G. Heller, both of whom are, and were at the time of filing, residents and citizens of Connecticut.

26.     Defendant Wendy Eber ("Wendy") is a citizen of New York who resides at 188 East 78th Street, Apartment 21A in Manhattan. Wendy is Lester Eber's daughter and Plaintiffs' first cousin. At all relevant times, Wendy represented herself as the President of Slocum & Sons (i.e., Eber-Conn). In 2012, Wendy was CFO and a director of Eber W&L. Since 2007, she has also served as Secretary and CFO of Eber Bros. Wendy also participated in the administration of the Trust by,

7

among other things, providing information to CNB for inclusion in annual letters to the beneficiaries.

27.     Non-party Slocum & Sons of Maine, Inc. is a Maine corporation, previously named TGH America, Inc., that is involved in the wine and liquor distribution business. Lester and Wendy each own half of the company, which they became involved with in 2012 outside the umbrella of the Eber Bros. companies controlled by the Trust.

## JURISDICTION AND VENUE

28.     This case implicates the Court's diversity jurisdiction.

29.     Plaintiffs are citizens of New Jersey, Colorado, and Florida, and it is their citizenship that matters only because Plaintiffs have standing to sue independent of any other person's interest.

30.     No claims are being asserted by any Plaintiff as a personal representative of any deceased person. Nor would any claims potentially be able to be asserted by the personal representative of a former beneficiary such as Sally Kleeberg, because her interest in the Trust was not part of her estate, but rather part of the Allen Eber estate, and the beneficial interest transferred to her children by operation of his will.

31.     Audrey Hays has had standing to sue as a beneficiary of the Trust since 1973.

32.     Before 2014, Daniel Kleeberg and Lisa Stein had standing to sue as contingent remaindermen to the beneficial interest held by their mother. *See*

*Benjamin v. Morgan Guar. Trust Co. of New York*, 557 N.Y.S.2d 360, 363 (1st Dept. 1990) (interpreting Surrogate's Court Procedure Act § 2205 as granting contingent remaindermen of a testamentary trust standing to sue). Since 2014, they have had standing to sue as beneficiaries of the Trust.

33.    As detailed above, Defendants are citizens of New York, Connecticut, and Georgia. In the case of LLC Defendants, they are citizens of the states where their members are citizens. For Alexbay, its sole member is Lester Eber (New York). For Eber-Conn, its members are three LLCs, and those LLCs' individual members are citizens of New York, Connecticut, and Georgia.

34.    The amount in controversy exceeds the $75,000 jurisdictional minimum because this case seeks damages and equitable relief for Defendants' wrongful transfer of an entity worth at least approximately $10 million.

35.    Because there is complete diversity between Plaintiffs (Colorado, Florida, and New Jersey) and Defendants (New York, Connecticut, and Georgia), this Court therefore has jurisdiction under 28 U.S.C. § 1332.

36.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because at least one defendant resides in this district and, upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL COUNTS

37.    Allen Eber founded the Eber Bros. wine and liquor business nearly 100 years ago. He had three children: Sally Kleeberg, Mildred Boslov, and Lester Eber. *See* Exhibit A.

38.    As part of his will, Allen Eber created a testamentary trust to hold, maintain, and manage his residuary estate, including the family business for the benefit of his children and their heirs (the "Trust").

39.    Pursuant to the terms of his father's will, when his father died, Lester Eber became a co-trustee of the family's business assets, including the Eber Bros. wine and liquor business.

40.    The will named Gumaer and a bank as co-trustees with Lester.

41.    In 2007, CNB replaced the original bank as a trustee. CNB remained trustee at all times since until the trust was dissolved in 2017.

42.    Lester himself had only a one-third beneficial interest in the Trust's assets. Pursuant to the terms of the Allen Eber will, which governed the testamentary Trust, the other two-thirds interest belonged to Lester's two sisters, Sally and Mildred, and upon their deaths transferred to their issue then living *per stirpes*.

43.    Thus, at the time of this lawsuit's filing, the beneficiaries of the Trust and their respective interests were: Lester Eber (1/3); Audrey Hays (1/3); Daniel Kleeberg (1/6); and Lisa Stein (1/6).

44.     In addition to being a co-trustee of the Trust that controlled the equity of the family business entities, Lester held officer and director positions with the family business entities as well:

     a.   Lester is, and at all relevant times was, the President and a Director of the Board for Eber Bros.

     b.   Lester was President and a Director of Eber W&L from before 2000 until 2012, when he purportedly resigned.

45.     Lester brought his daughter, Wendy, into the family business and made her his heir apparent.

46.     Since 2007, Wendy has been the Chief Financial Officer (CFO) and Secretary of Eber Bros.

47.     Wendy was the CFO and Secretary of Eber W&L from 2007 until 2014. From 2012 to 2014, she was also President of Eber W&L. Since 2014, she has held the title of Assistant Secretary, but is in fact the company's most senior executive officer.

48.     Lester is, and at all relevant times was, in control of the controlling membership interest in Eber-Conn.

49.     Wendy is, and at all relevant times was, the President of Eber-Conn.

50.     Prior to its dissolution, the Trust held at least 94 percent of the total equity in Eber Bros., including 100 percent of the voting shares.

51.     Eber W&L is a wholly-owned subsidiary of Eber Bros.

11

52.     Before June 2012, Eber Metro was a wholly-owned subsidiary of Eber W&L.

53.     As of February 2012, Eber Metro held a 79% interest in Eber-Conn. Thus, the Trust indirectly held a controlling interest in Eber-Conn.

54.     From 2007 to 2012, the Eber Bros wine and liquor business—which once operated in New York, Delaware and Ohio—was limited to the state of Connecticut, through the Eber-Conn entity, which did business as Slocum & Sons.

55.     By the Fall of 2011, if not earlier, Lester had decided to divest his nieces and nephew of their interest in the family business, thereby leaving everything to him and eventually his daughter and heir.

**The Sham 2012 Action Resulting in Transfer of Eber Metro to "Alexbay"**

56.     Using a misleadingly-named holding corporation, Lester brought a sham, uncontested lawsuit against his own company to create the phony appearance of a legitimate, arms-length transfer of the Eber-Conn business to himself. Specifically, he sought judicial approval of Eber W&L's shares in Eber Metro to Alexbay—and with them, the controlling interest in Eber-Conn d/b/a Slocum & Sons.

57.     On February 21, 2012, Alexbay filed a complaint (the "2012 Action") against Eber W&L, Eber Metro, and Southern Wine & Spirits of America, Inc. ("Southern"), in New York Supreme Court, seeking a judicial declaration that it was "commercially reasonable" to transfer ownership of Eber Metro to Alexbay in full

satisfaction of debts that were supposedly owed to Alexbay by Eber Metro and Eber W&L.

58.     A copy of the 2012 Action summons and complaint (without exhibits) is attached as Exhibit B.

59.     In the 2012 Action, Alexbay claimed that Eber Metro's 79% interest in Eber-Conn was "Collateral" for debts owed to an "Original Secured Creditor" (i.e., Lester) that were supposedly assigned to Alexbay about a month before it filed the 2012 Action.

60.     The 2012 Action alleged that there had been a default on some (but not all) of the debt; specifically, a line of credit note.

61.     According to the 2012 Action complaint, Southern was named as a defendant because it "may claim an interest as a secured creditor with respect to the Collateral…"

62.     The 2012 Action also listed "John Does 1–10" as defendants, which the caption described as "fictitious names intended to designate other entities or persons claiming any interest in Eber Bros. Wine & Liquor, Inc.'s 'OWNERSHIP INTEREST IN EBER BROS. WINE & LIQUOR METRO, INC.'"

63.     Alexbay's assertion that it did not know whether any "other entities or persons" claimed an ownership interest in Eber Metro was false and misleading because Alexbay was owned entirely by Lester.

64. Thus, by including the "John Doe" defendants as described, Lester evinced his knowledge that Eber Bros., the Trust, and Plaintiffs were necessary parties to the 2012 Action.

65. Neither Lester nor anyone else associated with him or any other trustee informed Plaintiffs about the 2012 Action, however.

66. On March 15, 2012, Alexbay filed a motion seeking a determination that Alexbay's acceptance of all of Eber W&L's shares in Eber Metro in full satisfaction of the alleged debt was commercially reasonable under the Uniform Commercial Code ("UCC").

67. No opposition to Alexbay's motion was filed.

68. In the Complaint for the 2012 Action, Alexbay (i.e. Lester) asserted that the value of all of the equity in Eber-Conn was $4,633,300 as of December 31, 2011. It made this assertion based on an implied valuation that occurred through a sale of 6% of Eber-Conn's equity in 2010.

69. Neither Lester nor anyone from Eber W&L informed the Court that Eber-Conn's audited financial statements valued its members equity significantly higher.

70. According to Eber-Conn's audited financial statements, the equity value of Eber-Conn as of May 31, 2011 had been $5,699,031.

71. According to Eber-Conn's audited financial statements, the equity value of Eber-Conn as of May 31, 2012 was $5,335,899.

72. On May 11, 2012, the court granted Alexbay's unopposed motion.

14

73.     On June 6, 2012, Wendy Eber, acting as a Director of Eber W&L, approved the transfer of Eber W&L's shares in Eber Metro to Alexbay.

74.     On June 9, 2012, Gumaer, acting as a Director of Eber W&L, approved the transfer of Eber W&L's shares in Eber Metro to Alexbay.

75.     Even though Eber W&L's board had not yet approved the transaction, on June 5, 2012, all shares in Eber Metro were transferred to Alexbay, and with them the controlling interest in Eber-Conn.

### The Supposed Debts Owed to Lester

76.     In the 2012 Action, Alexbay alleged that the following agreements had been executed, creating a total debt in excess of $3.650 million:

a.  On October 1, 2002, Lester loaned Eber W&L $575,895 pursuant to a promissory note;

b.  On August 15, 2005, Lester loaned Eber W&L the sum of $1,503,750 pursuant to a promissory note;

c.  On March 13, 2006, the two promissory notes were combined into an amended and restated promissory note with a principal balance of $1,434,710.68;

d.  In October 2009, Lester extended a line of credit to Eber Metro of up to $1,500,000 pursuant to a Line of Credit Note;

e.  On February 26, 2010, Eber W&L guaranteed Eber Metro's payments on the line of credit note to Lester;

    f.  On February 26, 2010, a security agreement gave Lester a secured interest in substantially all of Eber W&L's assets;

    g.  On February 10, 2011, the security agreement was amended to specifically include Eber W&L's shares in Eber Metro, and thus its 79% interest in Eber-Conn;

    h.  On February 11, 2011, pursuant to a debt assumption agreement, Eber Metro assumed Eber W&L's obligations under the amended promissory note.

77.    In fact, the purported loans by Lester to Eber Bros. were fictitious or exaggerated, and the representations made by Defendants to the New York state court were false.

78.    Attached as Exhibit C is a letter, dated April 2, 2010, sent by Lester to Sally Kleeberg on Eber W&L letterhead.

79.    According to the letter, Lester represented that he had loaned only "approximately $500,000" to the business, including Eber W&L and Eber Metro.

80.    In 2007, Eber Bros. W&L entered into a broad settlement agreement with Southern that resulted in a substantial payment of many millions of dollars to Eber W&L. With this money, Eber W&L repaid its outstanding debts and ceased to actively operate a wine and liquor distributorship business in New York, Delaware and Ohio.

81.    On information and belief, in connection with the agreement with Southern, Eber W&L satisfied all of its outstanding debts to Lester in 2007.

16

82.     To the extent that money was not transferred directly to Lester, Eber W&L nonetheless allowed Lester to accept a lucrative consulting position with Southern that has allowed him personally to be paid several million dollars by Southern in the years since. Such a direct personal benefit to Lester must have eliminated his outstanding debt because, in the absence of any otherwise apparent consideration, it would have constituted a significant breach of fiduciary duty, including the duty of loyalty, for Lester to accept the position at such lucrative payment terms that could have otherwise inured to the benefit of Eber W&L and its shareholders.

83.     In the 2012 Action, Alexbay alleged that Lester assigned the $1.5 Million Note and the LOC Note to Alexbay on February 11, 2012—just ten days before Alexbay filed the 2012 Action.

84.     Alexbay attached as an exhibit to the 2012 Action the purported assignment agreement—which was unsigned.

85.     On information and belief, Lester had not in fact executed the assignment before Alexbay filed the 2012 Action.

### Defendants' Concealment of the Transfer

86.     None of the Plaintiffs, nor any their immediate family members, have been employed by, or otherwise knowledgeable of the business affairs of, any Defendants since 2007.

87.     CNB failed to disclose this transfer in any of its annual statements and in fact affirmatively suggested that Eber-Conn was still part of the Trust's assets.

88.     For example, on December 18, 2012, CNB sent an annual statement to Plaintiff Hays that included the following paragraph in the cover letter:

> The trust does hold various Eber Bros. securities. The focus with business limited to Connecticut has required the company to downsize and execute a modified business plan. The company will not be declaring and paying an annual dividend on its Class A, Class B, or Preferred stock this year. Earnings are being used to invest and improve the business.

Exhibit D (December 18, 2012, cover letter).

89.     CNB's December 18, 2012, letter was misleading because it stated that the business was "limited to Connecticut" and had been required to "downsize and execute a modified business plan." These statements implied that the Trust had a continuing interest in Eber-Conn, even though months earlier it was determined that Eber-Conn would be transferred to Lester alone.

90.     CNB's December 23, 2013, cover letter for its next annual statement for the Trust simply omitted any mention of an operating business. Nor did it mention anything about the disposition of Eber-Conn. By doing so, CNB continued to conceal the 2012 Action and Lester's self-dealing from Plaintiffs. A copy of the cover letter is attached as Exhibit E.

#### Plaintiffs Discovered that Lester Acquired Eber-Conn After Learning that Defendants' Former Attorneys Had Sued Over the Transfer

91.     Plaintiffs first learned that Lester himself acquired Eber-Conn in June 2015, when Lisa Stein searched the internet for news about Eber Bros. and found an article published on May 29, 2015, in the Rochester Business Journal. A copy of the article is attached as Exhibit F.

18

92.     The article mentioned a lawsuit (the "Collection Action") that had been filed against Eber W&L, Eber Metro, Eber-Conn, and Alexbay by Eber W&L's former attorneys seeking to collect on a judgment that had been entered in the attorneys' favor for unpaid fees.

93.     After investigating further, Plaintiffs obtained a copy of the complaint in the Collection Action, which detailed the fraudulent conveyance of Eber-Conn to Lester. The complaint included four causes of action under New York Debtor and Credit Law. A copy of that complaint, which was filed on December 11, 2014, in New York Supreme Court, Monroe County, is attached hereto as Exhibit G.

94.     The Collection Action's detailed allegations support the conclusion that the transfer of Eber-Conn to Lester was a fraudulent conveyance and that the 2012 Action attempted to rubber stamp the fraudulent conveyance. But the 2012 Action withheld from the court material facts indicating that Eber-Conn was worth far more than the amount of the debt that was supposedly owed to Lester.

95.     The Collection Action was subsequently settled on undisclosed terms. A stipulation of discontinuance was filed with the court on November 12, 2015.

96.     Plaintiffs are aware of no facts suggesting that any of the allegations in the Collection Action were untrue.

97.     On the contrary, additional facts indicate that the Eber-Conn transfer was fraudulent, including, as alleged above, knowledge of Lester's inconsistent statements about debts owed to him; the false assertion that Alexbay did not know who had an ownership interest in Eber W&L; the fact that the GAAP book value of

Eber-Conn's equity at the time of transfer was significantly higher than the value stated in the 2012 Action court papers; the fact that Lester secretly resigned from Eber W&L at the same time; and the years of concealment since.

98.     Accordingly, Plaintiffs hereby incorporate the detailed allegations in paragraph 16 through 60 of the complaint in the Collection Action, as if fully set forth herein, including without limitation:

    a.  that on or about December 8, 2011, Lester Eber first tried to transfer Eber-Conn to Lester Eber, LLC (Alexbay) "for no consideration";

    b.  that Alexbay misrepresented the nature of a 2010 sale of six percent of Eber-Conn's equity as "arms' length" when in fact the purchaser was one of Lester's attorneys;

    c.  that Alexbay's reliance on the 2010 sale price to value Eber-Conn was unfounded not only because it was not arm's length, but also because there were two earlier transactions that Alexbay had omitted from its filings that reflected a value about *four times* larger than the amount of the allegedly outstanding debt; and

    d.  that, therefore, the transfer of Eber Metro to Alexbay was far from commercially reasonable and, in fact, a fraudulent conveyance.

*See* Exhibit G ¶¶ 16–60.

**Futility of Demand**

99.     Before filing this lawsuit, Plaintiffs did not demand that Eber Bros.' Board initiate suit against Lester because, to the best of Plaintiffs' knowledge at the time, the Board's only member was Lester. To the extent that any other Board members existed, they were appointed and controlled by Lester. Accordingly, there was no reasonable basis to believe that a demand to sue Lester would be acted upon.

**Events Since the Initial Complaint Was Filed**

100.     In 2017, after this lawsuit was filed, CNB brought an action in the Surrogate's Court for Monroe County, New York, to dissolve the Trust and distribute its assets.

101.     CNB's filings in the Surrogate's Court did not raise or address any of the issues of breach of fiduciary duty or fraudulent concealment that were presented by the Initial Complaint in this action.

102.     Plaintiffs did not enter an appearance in the Surrogate's Court proceeding and did not oppose the request to terminate the Trust early, as it was in their interest to remove Defendants' ability to continue to control their assets that were held by the Trust.

103.     After the Surrogate's Court approved CNB's accounting and dissolved the Trust, CNB was required to distribute the assets that had been held in the Trust. Prior to distributing the former Trust assets to Plaintiffs, however, CNB's in-house counsel sought to compel them to sign general releases as to CNB that would

have potentially resulted in dismissal of the claims against CNB in this action. CNB's counsel did not communicate this request to Plaintiffs' counsel of record. Plaintiffs informed their counsel about CNB's demand. Through their counsel, Plaintiffs refused the request.

104.    In reviewing the discovery produced by Defendants in this action (even though that review is still ongoing and depositions have not yet occurred), Plaintiffs have learned of additional facts, including:

105.    In February or March 2012, Lester resigned from his position as President of Eber W&L. Lester backdated his resignation to February 1, 2012 (i.e., making it so he supposedly resigned before filing the 2012 Action to foreclose on the Eber Metro shares).

106.    In late March 2012, Wendy and Gumaer signed a corporate document purporting to approve Lester's resignation on February 1, 2012. Notably, the approval document was backdated to "as of February 28, 2012."

107.    According to Defendants, Gumaer supposedly represented Lester and Wendy personally at the same time that they constituted the entire Board of Directors for Eber Bros. and its subsidiaries. Accordingly, they have asserted attorney-client privilege as grounds to withhold several emails among the corporate directors that are material to this action.

108.    One of the withheld emails is dated March 9, 2012—a date when, according to the documents they signed (potentially weeks later) Lester was no

longer the President of Eber W&L, and was in fact suing that company to take Eber Metro and Eber-Conn from it.

109.   To the extent that Gumaer was representing Wendy and Lester even at the time when Lester was suing Eber W&L, it was an egregious conflict of interest, and one that was not waivable. And even if it could have been somehow been waived, at no time was an independent person asked to sign a conflict waiver permitting that representation.

110.   Plaintiffs have also recently learned that CNB concealed its own conflict of interest.

111.   CNB was itself the largest creditor of Eber-Conn, to the tune of an approximately $4 million loan.

112.   CNB did not disclose to Plaintiffs, or to Sally Kleeberg prior to her death, the fact that CNB was a creditor of Eber-Conn at all, much less that it was the largest creditor.

113.   In 2013—the year after the transfer to Lester—Eber-Conn made its first distribution to its members in years. The amount distributed was $133,920. Had the Eber Metro shares not been transferred to Alexbay, this would have yielded $105,796.80 to Eber W&L.

114.   In 2012, Lester personally began receiving income from Slocum & Sons of Maine, Inc. ("Slocum of Maine"), a company that is related to Eber-Conn, which does business as Slocum & Sons in Connecticut. Lester did so even though he

continued to act as a co-trustee of the Trust and controlled the historical family wine and liquor business.

115.    Lester knew that the Allen Eber Will had made clear that the family wine and liquor business was supposed to continue and be held in the Trust so long as Lester was alive and continued to manage a wine and liquor business.

116.    Lester never presented the opportunity to earn income in Maine to Eber Bros., Eber W&L, or any of his co-trustees.

117.    Lester did however involve his own daughter, Wendy, in Slocum of Maine. She owns 50 percent of the shares, while Lester owns the other 50 percent.

118.    Upon information and belief, unlike Lester, who purported to resign from Eber W&L, Wendy remained an employee there while she was at the same time becoming involved in Slocum of Maine.

## COUNT I

### Breach of Fiduciary Duty

119.    Plaintiffs incorporate the allegations contained in the paragraphs set forth above as if fully set forth herein.

120.    Plaintiffs bring this claim individually as former beneficiaries to the Trust and derivatively as the owners of Eber Bros. and Eber W&L.

121.    As trustee of the Trust, Lester owed a fiduciary duty to the beneficiaries of the Trust at all relevant times.

122.    As a senior executive of Eber Bros. and Eber W&L, Lester owed fiduciary duties to the corporations and to corporations' shareholders.

24

123.    As set forth in detail above, Lester engaged in improper self-dealing and diverted corporate assets by transferring Eber Metro and its controlling interest in Eber-Conn to Alexbay, an entity that Lester controlled and solely owned.

124.    The previous New York state court finding—that the terms of the transfer of Eber-Conn were commercially reasonable under the Uniform Commercial Code—was procured improperly. Alexbay failed to provide the court with material information showing that the method of valuation pleaded in the complaint did not reflect a market value of Eber-Conn, as detailed by the complaint in the Collection Action.

125.    By attempting to backdate a resignation to before he filed the 2012 Action (a resignation he concealed for years afterwards), Lester essentially admitted that he breached his fiduciary duties as an officer and director of Eber W&L. Nonetheless, he remained both a co-trustee of the Trust and President of Eber Bros., which was the controlling shareholder of the closely-held Eber W&L, and as such continued to have fiduciary duties regardless of the true date of his secret resignation.

126.    Lester further breached his fiduciary duty of loyalty by usurping a corporate opportunity. Specifically, by pursuing a wine and liquor business in the state of Maine when that was the family business operated by Eber Bros. and he was required to bring that corporate opportunity to Eber Bros.

127. Lester acted knowingly, willfully, intentionally, and fraudulently to enrich himself, cover his tracks with a non-adversarial, fraudulently obtained judicial decision, and then conceal his conduct from Plaintiffs.

128. Instead of acting for the benefit of the Trust, in which Lester had a one-third interest, Lester sought to take over the complete ownership interest in the Trust's remaining operating assets for himself.

129. Lester failed to act for the benefit of the corporations for which he was the senior executive officer and a director (Eber Bros. and Eber W&L).

130. The shareholders of Eber Bros. (and, by extension, its subsidiary Eber W&L) were directly and proximately harmed by Lester's self-dealing because their shares diminished in value.

131. Accordingly, Lester has breached his fiduciary duty and is subject to (a) liability for damages to the corporations and to the former beneficiaries of the Trust that he controlled, and (b) appropriate equitable relief.

132. Under New York's faithless servant doctrine, a disloyal fiduciary or employee must repay all monies and other compensation received since the first disloyal act.

133. Lester's disloyalty began by, at the latest, December 8, 2011, when he formed Lester Eber, LLC (i.e., Alexbay) and at about the same time submitted an application to the Connecticut Liquor Control Division for approval to transfer Eber Metro's controlling 79% interest in Eber-Conn to Lester Eber, LLC.

134.    Accordingly, among other damages, Lester must repay all compensation, profits, or other benefits he received from at least December 8, 2011, through the present.

135.    Because Alexbay, an entity completely controlled and dominated by Lester as the sole member, knowingly took the assets held by Eber W&L without giving fair and commercially reasonable value in consideration in exchange, and because it knew or should have known that doing so was unlawful under the circumstances, it is subject to this Court's equitable jurisdiction and a constructive trust should be imposed on it and all of its assets, including Eber Metro.

136.    Lester's interests in and income derived from Slocum of Maine must likewise be placed under a constructive trust for the benefit of Eber Bros.

137.    As co-trustees for the Trust, Defendants CNB and Gumaer owed fiduciary duties to Plaintiffs, including the duty of care.

138.    Gumaer owed further fiduciary duties to Eber W&L as he was director of its board of directors.

139.    CNB and Gumaer breached their fiduciary duties by, among other things, approving of the transfer of Eber-Conn to Lester's own company without engaging in reasonable diligence and given that the transaction was not arms-length and involved self-dealing.

140.    In particular, Gumaer explicitly approved the transaction without appearing to question the valuation used in the 2012 Action, even though Eber-Conn's own internal financial records reported a book value (which oftentimes

understates the fair market value) at a significantly higher valuation than that presented to justify the transfer of Eber Metro to Alexbay.

141.    Because Gumaer's actions were disloyal to Eber W&L and to Plaintiffs, he was a faithless servant and is required to repay all compensation he received since the first date of his disloyalty. On information and belief, Gumaer was paid $22,000 per year for his services to Eber W&L and to the Trust.

142.    As an officer and director of Eber W&L, Wendy owed a fiduciary duty to act in the best interests of the shareholders, including Plaintiffs.

143.    By approving of the transfer of Eber Metro to Alexbay as detailed herein, and permitting that self-dealing to occur without obtaining a third-party appraisal or fairness opinion, and especially when as CFO she knew that the book value alone was higher than that being represented to the Court, Wendy breached her fiduciary duties of care and loyalty to the corporations she was required to serve and their shareholders.

144.    Because Wendy's actions were disloyal to Eber W&L, she was a faithless servant and must return all compensation, profits, and benefits that she received from the date of her first disloyal act.

145.    For these reasons, Defendants Lester, Wendy, CNB, and Gumaer have breached their fiduciary duties and are liable to Plaintiffs.

## COUNT II

## Fraudulent Concealment

146.    Plaintiffs incorporate the allegations contained in the paragraphs set forth above as if fully set forth herein.

147.    This claim for fraudulent concealment is brought by Plaintiffs both in their individual capacity and derivatively on behalf of the Trust and the corporations in which they are beneficial owners.

148.    Plaintiffs, as Trust beneficiaries and as passive beneficial shareholders in Eber Bros. (and beneficial owners of Eber W&L), relied on Lester to manage the Trust and the business affairs of Eber Bros. and its affiliates.

149.    As trustee of the Trust and as chief executive of Eber Bros. and Eber W&L, Lester owed a fiduciary duty to Plaintiffs.

150.    As a trustee of the Trust, CNB owed a fiduciary duty to Plaintiffs.

151.    As trustees, and under New York law, Lester and CNB were required to furnish annual statements to Plaintiffs. They purported to do so in or about December of each year for each of the years relevant to this matter.

152.    Alexbay's bringing the sham 2012 Action to obtain judicial approval for the transfer of Eber Metro and its interest in Eber-Conn to Alexbay was material information that Lester was obligated to disclose to Plaintiffs, given Plaintiffs' known ownership interest and that the transaction was not arms-length, and involved self-dealing since Alexbay was entirely owned and controlled by Lester.

153.   Lester failed to disclose the 2012 Action to Plaintiffs at any time, and still to this day has never advised Plaintiffs or their predecessors that he took Eber Metro and its controlling interest in Eber-Conn for himself.

154.   Had Lester or CNB disclosed the 2012 Action to Plaintiffs along with sufficient information about prior investments in Eber-Conn and its financial condition, Plaintiffs would have protested the transfer of Eber Metro to Lester and taken all available actions as the beneficial majority shareholders of Eber Bros. and Eber W&L to prevent the transfer from occurring. At the very least, they would have reduced the amount of the ownership interest in Eber-Conn that was conveyed in satisfaction of the alleged debt, by obtaining an independent appraisal of both the amount of debt owed to Lester, if any, and the value of Eber-Conn.

155.   Lester also failed to disclose that he began to pursue wine and liquor distributorship business opportunities in Maine, keeping the income generated therefrom entirely for himself.

156.   Lester also failed to disclose to Plaintiffs that he purported to resign from Eber W&L in 2012.

157.   Plaintiffs have suffered damages in the form of their lost ownership interest in the last remaining operations of the Eber Bros. wine and liquor business.

158.   Plaintiffs have suffered additional damages as a result of not receiving distributions from Eber-Conn since its controlling interest was transferred to Lester's Alexbay.

159. On information and belief, Plaintiffs have suffered further damages as a result of the concealment to the extent that an accounting from Lester and Alexbay shows that assets have been dissipated since the 2012 Action resulted in a transfer.

160. For these reasons, Defendants Lester Eber and CNB are liable for fraudulent concealment.

161. Further, because Lester's conduct served to transfer valuable assets to Alexbay at the expense of the other entities he was obligated to serve, Alexbay is liable under principles of *respondeat superior*.

## COUNT III

## Aiding and Abetting Breach of Fiduciary Duty

162. Plaintiffs incorporate the allegations contained in the paragraphs set forth above as if fully set forth herein.

163. Alexbay's filing of the sham 2012 Action and acceptance of Eber-Conn was critical to Lester's breach of fiduciary duty, as alleged above.

164. Since Lester is and was at all relevant times the sole member of Alexbay, his knowledge and intentions are fairly imputed to Alexbay. Accordingly, Alexbay's involvement in Lester's scheme to fraudulently convey the controlling interest in Eber-Conn to Alexbay for his own benefit was knowing and willful. Alexbay specifically intended Lester's breach of fiduciary duty to succeed.

165. For these reasons, even though Alexbay was not a fiduciary, it is liable for aiding and abetting Lester's breach of his fiduciary duties.

31

## COUNT IV

### Accounting

166.    Plaintiffs incorporate the allegations contained in the paragraphs set forth above as if fully set forth herein.

167.    The right to an accounting is premised on the existence of a fiduciary relationship and a breach of that duty respecting property in which the party seeking the accounting has an interest.

168.    Plaintiffs have an interest in Eber Bros. and Eber W&L, and previously had an interest in Eber Metro, Eber-Conn, and the Trust.

169.    Lester, CNB, and Gumaer were, at all relevant times, fiduciaries to Plaintiffs because they were trustees for the Trust.

170.    Lester, Wendy, and Gumaer were, at all relevant times, fiduciaries to Plaintiffs and to Eber Bros. and Eber W&L.

171.    CNB has provided an accounting that details all of the fees it received from the Trust and its disposition of remaining Trust assets.

172.    Lester, Gumaer, and Wendy are required to provide an accounting of their profits to Plaintiffs because they were fiduciaries.

173.    The accounting demand necessarily includes legal entities that are wholly-owned or at least controlled by Lester and Wendy, including but not limited to Alexbay and Slocum & Sons of Maine, Inc.

## REQUEST FOR RELIEF

174.   WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.   Compensatory damages;

b.   Punitive damages;

c.   Imposition of a constructive trust on the assets of Alexbay, on the proceeds received by Lester and Wendy from Slocum of Maine, and on any other assets held by persons or entities controlled by or affiliated with any of Defendants, known or unknown, that can be traced to Eber-Conn;

d.   Rescission of all of the agreements related to the transfer of Eber Metro to Lester Eber, Alexbay, and any other affiliated persons or entities;

e.   An order returning the Eber Metro shares and the proportionate share of the proceeds from the Eber-Conn business since the date of transfer to an entity controlled by the Trust;

f.   Restitution for any unjustified transfers out of Trust funds, including all fees paid to CNB and Gumaer since January 2012 and any attorney's fees withdrawn from the Trust's assets in defense of this action;

g.   Surcharge against the trustees;

h. An accounting from Lester, Wendy, Gumaer, Eber Bros., Eber W&L, Eber Metro, Eber-Conn, and Alexbay;

i. Pre-judgment interest at the New York statutory rate of nine percent (9%);

j. Post-judgment interest;

k. An award of attorney's fees and costs; and

l. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

175. Plaintiffs demand a jury trial on all issues so triable.

Dated: April 16, 2018

/s Brian C. Brook

_____

Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, NY 10007
(212) 257-2334
Brian@ClintonBrook.com

*Attorney for Plaintiffs*