# CLINTON BROOK & PEED
NEW YORK | NEW JERSEY | WASHINGTON DC

**BRIAN C. BROOK**
BRIAN@CLINTONBROOK.COM

100 CHURCH STREET
8TH FLOOR
NEW YORK, NY 10007
TEL: (212) 256-1957

May 25, 2018

**By ECF**

The Honorable Katherine H. Parker
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Daniel Kleeberg et al. v. Lester Eber et al.,* 1:16-cv-09517-LAK-KHP
      **Letter Motion Requesting Discovery Conference**

Dear Judge Parker,

This firm represents the Plaintiffs in the above-named matter. I write to request that certain discovery matters be addressed at the upcoming case management conference, which is scheduled for May 30, 2018.

**Meet-and-Confer Requirement:** The parties have conferred extensively but cannot resolve this dispute among themselves, which is not uncommon when the issue is the assertion of privilege. The meet-and-confer efforts included extensive correspondence as well as a telephone conference with the Eber Defendants, plus separate discussion with Gumaer's counsel.

**Background:** Plaintiffs held two-thirds of the beneficial interest in a Trust that controlled the Eber Bros. wine and liquor distributorship business. Defendant Lester Eber ("Lester") held the remaining one-third interest. Lester was also one of three co-trustees of the Trust.

Defendant Elliott Gumaer (deceased) was another of the three co-trustees. He had been an attorney for Allen Eber, Lester's father who created the Trust upon his death. It is asserted by Defendants that Gumaer acted as an attorney for the Eber Bros business after he became a co-trustee, and that he was also a personal attorney Lester and his daughter, Defendant Wendy Eber.

As set forth more fully in the Second Amended Complaint, Plaintiffs' claims relate to the validity of several transactions between Lester and the Eber Bros. business and its subsidiaries. Among these transactions was a lawsuit that Lester filed against Eber Bros. in 2012 in order to obtain judicial approval for his plan to transfer the sole remaining operating assets of the family business from a Trust-controlled entity to a new LLC, Alexbay, that he created and owned by himself.

**Discovery Dispute:** Defendants are asserting the attorney-client privilege in an overbroad manner, which has resulted in them withholding documents on an on inadequate privilege log, and which will impair our ability to obtain discovery in depositions until this is resolved.

May 25, 2018 CLINTON BROOK & PEED
Page 2

As to the documents, Plaintiffs challenge the withholding of EB-00000713–741, and EB-00017666–670. Ex. A (Privilege Log). The privilege claims are inadequately supported in the first instance. Even if privilege did exist, it should either be deemed waived or subject to the "fiduciary exception" to attorney-client privilege because the individual Defendants were fiduciaries to Plaintiffs and to the corporate entities injured by their actions.

*Fiduciary Exception.* The "fiduciary exception" to the attorney-client privilege prevents a fiduciary from withholding legal advice concerning his fiduciary duties when disclosure is sought by the persons to whom he owed those fiduciaries duties. The fiduciary exception is plainly applicable here as it involves Defendants' fiduciary duties both to the Trust and to the corporations controlled by that Trust. *See Nama Holdings, LLC v. Greenberg Traurig LLP*, 18 N.Y.S.3d 1, 7–8 (1st Dept. 2015) ("[T]he fiduciary exception has been widely accepted throughout most of the United States in trustee-beneficiary and corporation-shareholder cases," including "[s]everal New York courts").

Here, the communications sought concern the fiduciaries' actions at the time *before* there was any open or apparent adversity. Quite the opposite, the fiduciary relationship created an affirmative duty to disclose material facts—the kinds of facts that were withheld from Plaintiffs. Evidence of what facts were known and what Defendants thought about them at the time they acted is critical to assessing whether they carried out their fiduciary duties in good faith.[1]

*Inadequate Support.* Despite asserting privilege over communications between themselves, Defendants refuse to identify who the client was (i.e., who the lawyers were purportedly representing). If Defendants' legal interests were clearly aligned and this were not a derivative case, it might be excusable. But the Eber Defendants comprise several distinct entities and two individuals; Lester resigned from one in 2012, but not others; and there has been litigation between these Defendants in the past—including in 2012, *at the time* of several withheld communications. At the same time, Lester supposedly resigned from the entity that he sued with another of his entities.[2] Under the circumstances, there is no good reason why Defendants should be permitted to withhold documents without identifying the specific claimed relationship between the parties to the various communications. *See* L.C.R. 26.2(a)(2)(A).

In addition, the evidence fails to support the assertion that Gumaer was retained as an attorney by any of the Eber Defendants. *See* Ex. B (in 2013, Gumaer referred to himself as "trustee/director and confid[a]nt"—*not* a lawyer). Gumaer retired from the practice of law many years ago.

---

[1] Here, not only is legal advice relating to a defendant's fiduciary duties being withheld, but Defendants are withholding communications *between* Lester and Gumaer, with Gumaer supposedly playing the role of attorney. This doubly implicates the fiduciary exception, because Gumaer was not just a lawyer providing advice relating to the Eber Bros. business (a Trust asset), but he was a direct fiduciary to Plaintiffs as a Director of Eber Bros and a co-trustee.

[2] Plaintiffs contend that Lester's resignation was a backdated sham, designed to retroactively protect Lester from liability for breaching his fiduciary duties. If Defendants insist it was not a sham, then they must accept that once Lester resigned, he could not continue to engage in privileged communications concerning the business except under limited circumstances that do not appear to exist here.

May 25, 2018
Page 3

CLINTON BROOK & PEED

Several communications in 2010 appear to relate to loans between Lester and Eber Bros. *See* Log at EB-00000713-733. Since Lester and Eber Bros. were on opposite sides of such transactions, the situation presented significant conflicts for an attorney attempting to represent both sides simultaneously. This exemplifies why parties must identify the client where not apparent.

An even more problematic situation is where there are communications involving Lester, Gumaer, and Wendy in March 2012—after he had resigned as Eber Bros. President and after Lester's Alexbay filed suit against Eber Bros. on February 21, 2012. EB-00000741. The existence of active litigation between the participants in the conversation precluded any reasonable expectation of confidentiality.

Numerous communications involve Glenn Sturm,[3] someone whom Lester has described as both an outside business advisor and lawyer. To the extent that Mr. Sturm was providing business advice, that is not privileged. If he was providing legal advice, there should be some documentation to support the scope of his engagement, but none has been produced. And even if he was providing retained legal advice, if that advice concerned Lester's duties as co-trustee, those communications fall within the "fiduciary exception" to the attorney-client privilege. The evidence produced certainly indicates that Sturm was advising Lester one way or another regarding his duties as a co-trustee. *See* Ex D at EB-00000740 (Outlook Calendar entry for 3/12/2012, Subject "Prep for Trustee Meeting," organized by Wendy Eber and including as attendees Glenn Sturm, Lester Eber, and Gumaer).[4]



*Waiver*. Some of the documents produced by Gumaer include apparent legal advice that was provided to Alexbay, LLC. Gumaer never had any position with Alexbay, which was legally adverse to the Eber Bros. companies to which Gumaer owed his fiduciary duty of loyalty. As noted, these were not logged by the Eber Defendants. To the extent that the Eber Defendants attempt to claim belatedly, however, that claim must be rejected because sharing the documents with Gumaer constituted an independent waiver of any privilege.

---

[3] Many names, including Sturm, did not appear on Defendants' earlier privilege log. Ex. C.

[4] The fact that this calendar entry shows that the Trust was being discussed among this group in early March 2012 gives us reason to doubt the Privilege Log's description of the following page, EB-00000741, as having to do with "bank relationship issues." Eber refused to provide even that terse description until after we had laid out our intention to assert the fiduciary exception. *In camera* review may be appropriate to determine whether the descriptions are accurate.

May 25, 2018                                                                                         **CLINTON BROOK & PEED**
Page 4

We thank the Court for its attention to this matter.

                                                                        Respectfully submitted,

                                                                        Brian C. Brook

(enclosures)

cc:     Robert B. Calihan, Esq.
       Paul F. Keneally, Esq.
       Daniel W. O'Brien, Jr., Esq.