

PAUL F. KENEALLY, PARTNER
(585) 258-2882
pkeneally@underbergkessler.com

May 29, 2018

**VIA E-FILING**

Hon. Katharine H. Parker
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

   Re: **Daniel Kleeberg, et al. v. Lester Eber, et al.**
     **Case No. 1:16-cv-09517**

Dear Magistrate Judge Parker:

   As you know, we represent the Eber defendants in the above-referenced matter and we respond to only the pertinent parts of Friday night's letter to the Court from plaintiffs' counsel ahead of our Scheduling Conference tomorrow, May 30, 2018.

   Despite the Eber defendants' production of thousands of documents, plaintiffs have not been able to come up with proof of the fraud they claim. The fact is that Lester Eber lost vast amounts of money trying to save the Eber companies in the face of crushing competition and losses. Indeed, Monroe County Supreme Court Justice Matthew Rosenbaum and Trustees The Canandaigua National Bank & Trust Company and Elliott Gumaer, Esq. carefully analyzed the 2012 foreclosure action and approved it (see attached letter to District Judge Kaplan submitted via email only for more detail). Apparently, plaintiffs have decided, therefore, to seek to review attorney-client privileged communications.

   The attorney-client privileged documents have been fully described in the extensive attorney-client privilege logs produced by the Eber defendants with date, author, recipients, subject matter and Bates number(s). All of the Eber defendants, including Lester Eber and Wendy Eber, like most family businesses, sought legal advice together. If plaintiffs' counsel thinks any of the Eber defendants' counsel had a conflict, he can raise that argument on motion or at trial if he can somehow find it admissible as to a claim at issue in the case, but it would not deprive the Eber defendants of the attorney-client privilege.[1]

---

[1] Similarly, Mr. Eber's accurately-dated resignation letter does not deprive him or the other Eber defendants of the attorney-client privilege.



Hon. Katharine H. Parker
May 29, 2018
Page 2


The fiduciary exception to the attorney-client privilege applies only when fiduciary issues are being discussed. See Lugosch v. Congel, 219 F. R.D. 220, 242-43 (N.D.N.Y. 2003). Thus, any production of documents wherein Mr. Gumaer was acting as Trustee does not waive the attorney-client privilege, and, at any rate, Mr. Gumaer's counsel cannot waive a privilege that belongs to the Eber defendants. Similarly, documents regarding Mr. Sturm were withheld as privileged by the Eber defendants only when they consisted of attorney-client communications. Exhibit E to plaintiffs' letter motion, produced by Mr. Gumaer, demonstrates the absence of fraud in this matter but is in fact privileged, should be deleted from the ECF system and plaintiffs should be precluded from using it in any manner.

Accordingly, plaintiffs have no basis to invade the Eber defendants' attorney-client privilege, and we are happy to discuss same with the Court tomorrow.

Respectfully,

Paul F. Keneally

PFK/ddd
Enclosure
cc.:    Donald W. O'Brien, Esq. *(via ECF and email)*
        Robert Calihan, Esq. *(via ECF and email)*
        Brian Brook, Esq. *(via ECF and email)*
        Laura Myers, Esq. *(via email)*
        Michael J. Adams, Esq. *(via email)*



underberg & kessler LLP

PAUL F. KENEALLY, PARTNER
(585) 258-2882
pkeneally@underbergkessler.com

May 1, 2017

<u>VIA EMAIL & FIRST-CLASS MAIL</u>

Hon. Lewis A. Kaplan                              <u>**CONFIDENTIAL AND FOR**</u>
United States District Court Judge                <u>**SETTLEMENT PURPOSES**</u>
United States Courthouse                          <u>**ONLY, WITHOUT PREJUDICE**</u>
500 Pearl Street
New York, New York 10007

> Re:   **Daniel Kleeberg, et. al. v. Lester Eber, et al.**
>        **Case No. 1:16-cv-09517**

Dear Judge Kaplan:

As you know, this firm represents defendants, Lester Eber, Alexbay LLC, Eber Bros. & Co., Inc., Eber Bros. Wine and Liquor Corporation, Eber Bros. Wine & Liquor Metro, Inc., Eber Connecticut LLC, and Wendy Eber (collectively "Eber Defendants"). Please allow this letter to serve as a Mediation Submission on behalf of the Eber Defendants in advance of the May 4, 2017 settlement conference (10:30 a.m.).

<u>**Background**</u>

Plaintiffs, Daniel Kleeberg, Lisa Stein, and Audrey Hays, commenced this action against the Eber Defendants, as well as against Canandaigua National Corporation d/b/a Canandaigua National Bank & Trust ("CNB"), and Elliot W. Gumaer, Jr., alleging (1) breach of fiduciary duty, (2) fraudulent concealment, (3) aiding and abetting breach of fiduciary duty, and (4) accounting.

Plaintiffs have varying interests in a trust ("the Trust") created in the October 27, 1969 Will of the founder of the Eber Bros. wine and liquor distribution business, Allen Eber. The current trustees are Lester Eber (Allen Eber's son), Elliot W. Gumaer, Jr., and CNB. Plaintiffs are the grandchildren of Allen Eber, who inherited their respective interests in the Trust upon the deaths of Lester's sisters, Sally Kleeberg and Mildred Boslov. Lester Eber and Audrey Hays each has a 1/3 interest in the Trust, while Daniel Kleeberg and Lisa Stein each has 1/6 interests.



Hon. Lewis A. Kaplan
May 1, 2017
Page 2

CONFIDENTIAL AND FOR
SETTLEMENT PURPOSES
ONLY, WITHOUT PREJUDICE

## The Eber Entities

The Eber family has been involved in the business of wine and liquor distribution for over eighty (80) years, principally in Rochester, New York.   In order to understand the procedural history, it is necessary to distinguish the various Eber entities:

- Eber Bros. & Co., Inc. ("Eber Bros.") is a New York corporation founded in 1917. Eber Bros. has been majority owned by the Trust since the 1970's. Eber Bros. has not been an operating entity since the late 1980's.

- Eber Bros. Wine and Liquor Corporation ("Eber W&L") is a New York corporation that was founded in 1935, and previously operated as a wholesale wine and liquor distributor in Upstate New York.  It has not been an operating entity since 2007.  It is majority owned by Eber Bros., and Lester Eber and the Trust have minority interests.

- Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro") is a New York corporation founded in 1996, and previously operated as a wholesale wine and liquor distributor in downstate New York.  Eber Metro has not been an operating entity since 2004.  Prior to June 2012, Eber Metro was a wholly-owned subsidiary of Eber W&L. Following the June 2012 loan foreclosure proceeding and Judgment described below, Eber Metro became a wholly-owned subsidiary of Alexbay, LLC ("Alexbay"), and thereafter Eber W&L had no remaining equity interest in Eber Metro.

- Eber-Connecticut, LLC ("Eber-CT") is a Delaware limited liability company founded in 2005.  Eber-CT currently operates a wholesale wine and liquor business in Connecticut.  Since 2005, Eber Metro has held a controlling equity interest in Eber-CT.

- Alexbay is a Connecticut limited liability company founded in 2011.  Alexbay is wholly-owned by Lester Eber.

At no time have any of the Plaintiffs been a shareholder of Eber W&L, Eber Metro or Eber-CT.



Hon. Lewis A. Kaplan
May 1, 2017
Page 3

CONFIDENTIAL AND FOR
SETTLEMENT PURPOSES
ONLY, WITHOUT PREJUDICE

## Business Crisis

In 2005, Southern Wine and Spirits ("SWS"), the largest wine and liquor distributor in the United States with more than $11 billion in annual sales, entered the New York market. Through a coordinated series of aggressive and targeted actions, SWS caused irreparable harm to Eber W&L's business. As a result of these actions, Eber W&L's business began a downward spiral that the company was unable to reverse. Key employees and suppliers defected and these losses had a material adverse effect on the company's financial performance and liquidity. The company lost $34.5 million from 2006 to 2007. The company's lead lender, Wells Fargo, declared a default and moved quickly to force Eber W&L to liquidate its inventory, sell off other assets and wind down its business and operations. Although Eber-CT continued operating after Eber W&L went out of business, it endured significant struggles and incurred significant losses between 2007 and 2012.

## The Loans

Between 2002 and 2012, Lester Eber voluntarily made cash loans (the "Loans") to Eber W&L and Eber Metro for the purpose of enabling the Eber entities to remain in business and pay various operating and other third-party liabilities. The Loans were made pursuant to loan and security documentation entered into by the borrower entities and Lester Eber at the time of the Loans.

The Loans were secured by validly perfected first priority UCC Article 9 security interests in all the assets of Eber W&L (i.e., Eber W&L's controlling equity interest in Eber Metro) and of Eber Metro (i.e., Eber Metro's controlling equity interest in Eber-CT). Lester Eber had priority as a secured creditor over any claim by other secured and unsecured creditors of Eber Bros. and Eber Metro, and the UCC filings to perfect his security interest were a matter of public record (copies attached as Exhibit "A").

All the Loans were made on terms at least as favorable to the borrower entities as what would have been available from unaffiliated third-party lenders. No other third-party lender was willing to make such loans.

More specifically, on or about October 1, 2002, Lester loaned Eber W&L the sum of $575,895.00. The loan was evidenced by a Promissory Note, and was secured by a collateral security interest in all of the assets of Eber W&L.

On or about August 15, 2005, Lester loaned Eber W&L the additional sum of $1,503,750.00. This loan was also evidenced by a Promissory Note.



underberg & kessler LLP

Hon. Lewis A. Kaplan
May 1, 2017
Page 4

CONFIDENTIAL AND FOR
SETTLEMENT PURPOSES
ONLY, WITHOUT PREJUDICE

On March 13, 2006, Eber W&L executed an "Amended and Restated Promissory Note" payable to Lester Eber, reiterating its obligation to repay the $575,895.00 loan of October 1, 2002, and the $1,503,750.00 loan of August 15, 2005, with interest at an annual rate of nine percent.

Finally, in October 2009, Lester Eber agreed to loan Eber Metro "an amount not to exceed $1,500,000.00," under a revolving line of credit. This loan was evidenced by a Line of Credit Note.

**Debt Assumption Agreement and Guaranty**

On or about February 26, 2010, Eber W&L executed a Guaranty, agreeing to guarantee the repayment by Eber Metro of all of its obligations to Lester Eber. The obligations under the Guaranty were confirmed in a Security Agreement executed by the parties on February 26, 2010, granting Lester Eber a security interest in all of Eber Bros.' property. This agreement was reiterated in an Amended and Restated Security Agreement executed by the parties on February 10, 2011.

Also on February 10, 2011, Eber Metro, Eber W&L and Lester Eber entered into a "Debt Assumption Agreement" whereby Metro assumed all of Eber W&L's obligations to Lester Eber under the March 13, 2006 Amended and Restated Promissory Note.

**Notice to Plaintiffs**

In the Spring of 2010, Lester Eber wrote and spoke to Sally Kleeberg (Daniel Kleeberg and Lisa Stein's mother) and Audrey Hays advising them of the severe financial difficulties faced by the various Eber businesses, and that efforts to obtain outside financing had been unsuccessful (copies are attached as Exhibit "B").

Lester Eber further advised them that he had voluntarily agreed to make additional cash loans to Eber Metro in order to allow the Eber business to remain in business. He specifically advised them that his additional loans were secured by Eber W&L's controlling equity interest in Eber Metro and Eber Metro's controlling equity interest in Eber-CT. A copy of the loan documentation was provided to Sally and Audrey.

Critically, Lester offered both Audrey and Sally the opportunity to be 1/3 participants in the $1.5 million dollar loan. However, both Sally and Audrey declined to participate. Thereafter, Lester Eber followed up with additional letters to Sally and Audrey acknowledging their decision and thanking them for considering participating in the loan (copies are attached as Exhibit "C").



Hon. Lewis A. Kaplan
May 1, 2017
Page 5

CONFIDENTIAL AND FOR
SETTLEMENT PURPOSES
ONLY, WITHOUT PREJUDICE

Further, it should be noted that Daniel Kleeberg was an employee of Eber W&L from February 3, 1975 to August 31, 2007.  By 2006, his annual compensation package was in excess of $400,000.00.  After August 2007, he received a two year consulting fee of $7,500.00 per month (subsequently reduced to approximately $3,500.00 per month).  Additionally, in the early 2000s, Eber W&L loaned Mr. Kleeberg $339,065.73 – an amount he never paid back prior to declaring personal bankruptcy.

Sally Kleeberg (mother of Lisa Stein and Daniel Kleeberg) also received a salary while Eber W&L was operating, and continued to receive monthly payments of $7,500 after 2007.  In addition, Eber W&L paid for various medical and other expenses after 2007.  After Eber W&L closed, Lester Eber continued personally pay for Sally Kleeberg's medical expenses until January 2011.  These expenses totaled more than $15,000.00.

## 2011 Ratification by Trustees

At an August 18, 2011 meeting of the trustees of the Trust, the trustees unanimously voted to ratify the Loans previously made by Lester Eber to the Eber entities described above.  The meeting minutes described the security arrangements for each Loan. In addition, the meeting minutes note that the beneficiaries (i.e., Sally and Audrey) were offered the opportunity to participate in the Loans, but they declined to do so.

The ratification of the Loans by the trustees was entirely voluntary and was not required by any provision of the New York Business Corporation Law.

## 2012 Default and Demand for Payment

As of December 31, 2011, the outstanding principal of, and accrued but unpaid interest on, the Loans was an aggregate of $3,650,682.48.  By that time, Eber W&L and Eber Metro had no business operations and were generating no cash flow at all.  Eber W&L's only material asset was its controlling equity interest in Eber Metro. Concomitantly, Eber Metro's only material asset was its controlling equity interest in Eber-CT.

Eber W&L and Eber Metro failed to pay any of the principal of, or interest on, the Loans payable to Lester Eber on the dates on which such payments were due in accordance with the definitive loan and security documentation for such Loans.

On January 18, 2012, Lester Eber transferred all his right, title and interest in the Loans and the definitive loan and security documentation therefor to Alexbay.



Hon. Lewis A. Kaplan
May 1, 2017
Page 6

CONFIDENTIAL AND FOR
SETTLEMENT PURPOSES
ONLY, WITHOUT PREJUDICE

On January 18, 2012, Alexbay sent Eber W&L and Eber Metro a Notice, pursuant to New York UCC Sec 9-620, proposing to accept Eber W&L's entire controlling equity interest in Eber Metro, and Eber Metro's entire controlling equity interest in Eber-CT, (i.e., the collateral the securing repayment of the Loans), in full satisfaction of the Loans.

**UCC Section 9-627 Proceeding**

On February 21, 2012, Alexbay commenced an action pursuant to New York UCC Section 9-627, seeking a judicial review of Alexbay's acceptance of Eber W&L's interest in Eber Metro (i.e., the collateral securing the Loan obligations to Alexbay) in full satisfaction of the secured Loan obligations owed to Alexbay, and a determination that such acceptance was "commercially reasonable".

Such determination was not required by the UCC, but it was pursued out of an abundance of caution.

By Judgment dated May 11, 2012, the Hon. Matthew A. Rosenbaum, New York State Supreme Court, Monroe County, issued a Declaratory Judgment confirming that Alexbay's acceptance of Eber W&L's interest in Eber Metro was "commercially reasonable" (copy attaches as Exhibit "D").

The entire UCC Section 9-627 proceeding in the New York State Supreme Court was, and has always been, a matter of public record.

On June 5, 2012, Eber W&L, Eber Metro and Alexbay entered into an Agreement for turnover pursuant to which all the capital stock of Eber Metro (i.e., the collateral securing the Loans owing to Alexbay) was transferred to Alexbay pursuant to the terms of the definitive Loan and security documentation.

Subsequently, Lester Eber had conversations with both Daniel Kleeberg and Sally Kleeberg regarding the sale.

**Board Approvals**

All of the Loans and other related transactions and security arrangements were duly authorized by a unanimous vote of the Board of Directors of the relevant borrower entity. Lester Eber resigned as Director and President of Eber W&L effective February 1, 2012. In each instance prior to his resignation, Lester Eber abstained from voting on such transactions as a Director of the borrower entity.



Hon. Lewis A. Kaplan
May 1, 2017
Page 7

CONFIDENTIAL AND FOR
SETTLEMENT PURPOSES
ONLY, WITHOUT PREJUDICE

Eber Bros., the only Eber entity directly held by the Trust, was not a party to any of the Loans or security arrangements. No action at all was required to be taken in connection with any thereof by the Board of Directors of Eber Bros. to approve such transactions.

Under the New York Business Corporation Law, no shareholder approval, including approval by the Trust as controlling shareholder of Eber Bros., was required for any of the Loans or security arrangements.

The exercise by Lester Eber and Alexbay of their rights with respect to the foreclosure of the Loans was accomplished pursuant to the provisions of the respective Loan and security documentation previously agreed to between Lester Eber and the relevant borrower entities and pursuant to the relevant provisions of Article 9 of the New York UCC.

None of the actions taken by Lester Eber in connection with the Loans and the related security arrangements was taken in his capacity as a trustee of the Trust. The 2011 ratification of the Loans by the trustees was entirely voluntary and not required by law.

**The Complaint**

The Complaint alleges that the 2012 UCC Article 9 proceeding was "a sham lawsuit" brought solely by Lester Eber to obtain a controlling share of the Eber-CT. It alleges that plaintiffs were not informed of the 2012 action, and that the judicially-approved transfer of all shares of Eber Metro to Alexbay was somehow fraudulent.  The Complaint further asserts that the Eber Defendants artificially diminished the value of Eber-CT in connection with the Article 9 proceeding.

Finally, the Complaint alleges that Lester Eber breached his fiduciary duties to the beneficiaries of the Trust, and engaged in self-dealing and diverted corporate assets by transferring Eber Metro to Alexbay.

**Defenses**

The Eber Defendants wholly deny the allegations in the Complaint, as each of above-referenced transactions was entirely valid.

Despite Plaintiffs' allegations to the contrary, there was nothing inappropriate or fraudulent about either the UCC action as a whole, or the attendant valuation of Eber-CT, which Judge Rosenbaum found to be commercially reasonable.  As noted, Plaintiffs were asked to make loans like the ones Lester Eber made and chose not to do so.



Hon. Lewis A. Kaplan
May 1, 2017
Page 8

CONFIDENTIAL AND FOR
SETTLEMENT PURPOSES
ONLY, WITHOUT PREJUDICE

Further, even if there were any basis for any sort of a reversal of the UCC foreclosure, Alexbay would then again be owed the Loans, which would be secured by validly perfected security interests in the assets of Eber W&L and Eber Metro and would be entitled to repayment ahead of all other creditors.

Finally, Plaintiffs have a statute of limitations problem. A claim alleging breach of fiduciary duties must be brought within three (3) years. Obviously, this lawsuit was not brought within that time period. Plaintiffs are expected to argue that they were aware of the alleged breach, but that argument is unavailing given Lester Eber's multiple conversations with them and the public nature of all relevant proceedings.

I look forward to discussing this matter with the Court.

Very truly yours,

Paul F. Keneally

PFK/cdr/ddd
Enclosures
cc.:   Robert Calihan, Esq. *(via email)*
       William Bauer, Esq. *(via email)*
       Brian Brook, Esq. *(via email)*

# EXHIBIT "A"

Party Names: **AS AGENT**

SANTA MONICA, CA 90404, USA

| File no. | File Date | Lapse Date | Filing Type | Pages | Image |
|---|---|---|---|---|---|
| 200602230174421 | 02/23/2006 | 02/23/2011 | Financing Statement | 1 | View |
| 200706298264903 | 06/29/2007 | 02/23/2011 | Financing Statement Amendment | 1 | View |
| 200708230681646 | 08/23/2007 | 02/23/2011 | Termination | 1 | View |

| | | | | | | |
|---|---|---|---|---|---|---|
| 18. | Debtor Names: | EBER BROS. WINE & LIQUOR CORPORATION | | 155 PARAGON DRIVE, ROCHESTER, NY 14624, USA | | |
| | Secured Party Names: | SOUTHERN WINE & SPIRITS OF AMERICA, INC. | | 166 N.W. 163RD STREET, MIAMI, FL 33169, USA | | |

| File no. | File Date | Lapse Date | Filing Type | Pages | Image |
|---|---|---|---|---|---|
| 200708310704958 | 08/31/2007 | 08/31/2012 | Financing Statement | 1 | View |

| | | | | | | |
|---|---|---|---|---|---|---|
| 19. | Debtor Names: | EBER BROS. WINE AND LIQUOR CORPORATION | | 155 PARAGON DRIVE, ROCHESTER, NY 14624, USA | | |
| | Secured Party Names: | EBER, LESTER | | 155 PARAGON DRIVE, ROCHESTER, NY 12624, USA | | |

| File no. | File Date | Lapse Date | Filing Type | Pages | Image |
|---|---|---|---|---|---|
| 201002220094199 | 02/22/2010 | 02/22/2015 | Financing Statement | 1 | View |



\* Images marked NA are not available on this webpage.

[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

Page 1

**Party Names:** EBER, LESTER

155 PARAGON DRIVE, ROCHESTER, NY 12624, USA

| File no. | File Date | Lapse Date | Filing Type | Pages | Image |
|---|---|---|---|---|---|
| 2010022200094202 | 02/22/2010 | 02/22/2015 | Financing Statement | 1 | View |

Back     View First Page(s)

\* Images marked NA are not available on this webpage.

[ Division of Corporations, State Records and UCC Home Page ]  [ NYS Department of State Home Page ]

http://appsext7.dos.ny.gov/pls/ucc_public/web_inhouse_search.print_ucc1_list

1/20/2012

203447

2010 FEB 22 P. 4:30

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER [optional]
   William R. Gaines, Esq.                    404-322-6518
B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

   Nelson Mullins Riley & Scarborough LLP
   201 17th Street NW
   Suite 1700
   Atlanta, GA 30363

**DRAWDOWN
DELANEY #30**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| EBER BROS. WINE AND LIQUOR METRO, INC. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 155 PARAGON DRIVE | CITY ROCHESTER | | STATE NY | POSTAL CODE 14624 | COUNTRY USA |
| ADD'L INFO RE 1e. TYPE OF ORGANIZATION ORGANIZATION DEBTOR   corporation | 1f. JURISDICTION OF ORGANIZATION New York | | | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| ADD'L INFO RE 2e. TYPE OF ORGANIZATION ORGANIZATION DEBTOR | 2f. JURISDICTION OF ORGANIZATION | | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME EBER | FIRST NAME LESTER | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 155 PARAGON DRIVE | CITY ROCHESTER | | STATE NY | POSTAL CODE 14624 | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

All assets of the Debtor whether now owned or hereafter acquired or arising.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
to be filed with NY Secretary of State.

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
**FORM SHOULD BE TYPEWRITTEN OR COMPUTER GENERATED**

**FILING NUMBER: 201002220094202**

| File no. | File Date | Lapse Date | Filing Type | Pages | Image |
|---|---|---|---|---|---|
| 200708310704958 | 08/31/2007 | 08/31/2012 | Financing Statement | 1 | View |

19. Debtor Names: EBER BROS. WINE AND LIQUOR CORPORATION

155 PARAGON DRIVE, ROCHESTER, NY 14624, USA

Secured Party Names: EBER, LESTER

| File no. | File Date | Lapse Date | Filing Type | Pages | Image |
|---|---|---|---|---|---|
| 201002220094199 | 02/22/2010 | 02/22/2015 | Financing Statement | 1 | View |

155 PARAGON DRIVE, ROCHESTER, NY 12624, USA

Back   View First Page(s)

* Images marked NA are not available on this webpage.

[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

:03446          2010 FEB 22  : 4:30

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
William R. Gaines, Esq.          404-322-6518

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Nelson Mullins Riley & Scarborough LLP
201 17th Street NW
Suite 1700
Atlanta, GA 30363

**DRAWDOWN
DELANEY #30**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| EBER BROS. WINE AND LIQUOR CORPORATION | | | | | |

OR **1b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 155 PARAGON DRIVE | ROCHESTER | NY | 14624 | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION |
|---|---|---|
| | corporation | New York |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR **2b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION |
|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR **3b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX
EBER | LESTER | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 155 PARAGON DRIVE | ROCHESTER | NY | 14624 | |

**4. This FINANCING STATEMENT covers the following collateral:**

All assets of the Debtor whether now owned or hereafter acquired or arising.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum    [if applicable]   | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
to be filed with NY Secretary of State.

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

FORM SHOULD BE TYPEWRITTEN OR COMPUTER GENERATED

## FILING NUMBER: 201002220094199

# EXHIBIT

# "B"

Confidential

# EBER BROS. WINE & LIQUOR CORP.
Corporate Office
95 Allens Creek Rd., Bldg 2 Ste 10, Rochester, New York 14618
Phone: (585) 360-4240    Fax: (585) 360-4211

April 2, 2010

Dear Audrey,

It was good talking to you. As I told you I am writing you to discuss with you the financial condition of the company, our capital needs and to offer you the opportunity to participate in a plan to provide capital to help the business.

As you know, the family business has experienced significant difficulties over the past few years. During that time we have liquidated several businesses and done our best to meet the company's financial obligations while operating a financially viable business. It hasn't been easy.   Over the past few years I have cut my salary by over 50% and made every other cut I believed we could make while retaining a financially viable business.

Today we have one operating business that is substantially smaller than the original company.  We believe that our Connecticut operation has the potential to be the foundation for the renewal of our business.  But, our Connecticut business and its parent company are facing several financial issues.  They both have liquidity issues and in order to meet our financial needs we have looked for outside financial support from several banks.  Importantly they all have turned down our loan requests.

As a result of the businesses financial needs, Connecticut's growth opportunities and our failure to find a financial institution to provide us with an adequate financial option I offered to personally loan the company the capital it needed to meet its projected obligations this year.  The amount of the loan is $1.5 million dollars.  The loan is secured by the EBWL and Metro's equity interest in our Connecticut business.  The board of directors recently approved the loan documents as well as our security arrangements.

For the next 30 days I will offer you the opportunity to participate in the loan.  If you desire to participate you would be responsible for funding 1/3 of any advances to the company.  To date I have advanced the company approximately $500,000.  Therefore if you decide to participate in the loan you would be required to remit to me approximately $167,000 to reimburse me for my advances.  Future advances would be in minimum increments of approximately $50,000 for each of us and could be done on a monthly basis.

I encourage you to review a copy of the loan documents, which I have attached to this letter.  We have made substantial progress but are still in a loss position.  Please discuss this opportunity with your financial and legal advisors.  If you wish to move forward with the loan, please sign the enclosed confidentiality agreement and I will send you the company financial statements.  Finally, please let me know if you would like any additional information about Eber Connecticut LLC.

Sincerely, Love,

Lester Eber

*Confidential*

# EBER BROS. WINE & LIQUOR CORP.
Corporate Office
95 Allens Creek Rd., Bldg 2  Ste 10, Rochester, New York  14618
Phone: (585) 360-4240     Fax: (585) 360-4211

April 2, 2010

Dear Sally,

It was good talking to you.  As I told you I am writing you to discuss with you the financial condition of the company, our capital needs and to offer you the opportunity to participate in a plan to provide capital to help the business.

As you know, the family business has experienced significant difficulties over the past few years.  During that time we have liquidated several businesses and done our best to meet the company's financial obligations while operating a financially viable business.  It hasn't been easy.  Over the past few years I have cut my salary by over 50% and made every other cut I believed we could make while retaining a financially viable business.

Today we have one operating business that is substantially smaller than the original company.  We believe that our Connecticut operation has the potential to be the foundation for the renewal of our business.  But, our Connecticut business and its parent company are facing several financial issues.  They both have liquidity issues and in order to meet our financial needs we have looked for outside financial support from several banks.  Importantly they all have turned down our loan requests.

As a result of the businesses financial needs, Connecticut's growth opportunities and our failure to find a financial institution to provide us with an adequate financial option I offered to personally loan the company the capital it needed to meet its projected obligations this year.  The amount of the loan is $1.5 million dollars.  The loan is secured by the EBWL and Metro's equity interest in our Connecticut business.  The board of directors recently approved the loan documents as well as our security arrangements.

For the next 30 days I will offer you the opportunity to participate in the loan.  If you desire to participate you would be responsible for funding 1/3 of any advances to the company.  To date I have advanced the company approximately $500,000.  Therefore if you decide to participate in the loan you would be required to remit to me approximately $167,000 to reimburse me for my advances.  Future advances would be in minimum increments of approximately $50,000 for each of us and could be done on a monthly basis.

I encourage you to review a copy of the loan documents, which I have attached to this letter.  We have made substantial progress but are still in a loss position.  Please discuss this opportunity with your financial and legal advisors.  If you wish to move forward with the loan, please sign the enclosed confidentiality agreement and I will send you the company financial statements.  Finally, please let me know if you would like any additional information about Eber Connecticut LLC.

Sincerely,

Lester Eber

# EXHIBIT

# "C"

# EBER BROS. WINE & LIQUOR CORP.

Corporate Office
95 Allens Creek Rd., Bldg 2  Ste 10, Rochester, New York  14618
Phone: (585) 360-4240    Fax: (585) 360-4211

April 27, 2010

Dear Audrey,

Thank you, for taking the time to discuss the company and for considering participating in the secured loan to the company. I understand and respect your decision to not participate.

Again thank you, I look forward to talking to you again soon. Hope abel & your dad are doing better.

Love,

Lester

# EBER BROS. WINE & LIQUOR CORP.

Corporate Office
95 Allens Creek Rd., Bldg 2  Ste 10, Rochester, New York  14618
Phone: (585) 360-4240     Fax: (585) 360-4211

April 27, 2010

Dear Sally,

Thank you, for taking the time to discuss the Company and for considering Participating in the secured loan to the company. I understand and respect your decision to not participate.

Again thank you, & look forward to talking to you again soon,

Love,

Lester

# EXHIBIT

# "D"

RECEIVED

2012 MAY 23  PM 2: 26

MONROE C   N   CLERK

At a Term of this Court held in and for the County of Monroe at the Monroe County Supreme Court, Commercial Part, 545 Hall of Justice, Rochester, NY 14614 on the 10th day of May, 2012.

PRESENT:   HON. MATTHEW A. ROSENBAUM, J.S.C.
            Supreme Court Justice Presiding

STATE OF NEW YORK
SUPREME COURT            COUNTY OF MONROE

---

ALEXBAY, LLC,                                                    **ORDER**

                                    Plaintiff,              Index No.: 2012-1919

        -vs.-

EBER BROS. WINE & LIQUOR CORP.;
SOUTHERN WINE & SPIRITS OF AMERICA, INC.;
EBER BROS. WINE & LIQUOR METRO, INC.; and
JOHN DOES 1 – 10, being fictitious names intended to
designate other entities or persons claiming any
interest in Eber Bros. Wine & Liquor, Inc.'s
"OWNERSHIP INTEREST IN EBER BROS. WINE &
LIQUOR METRO, INC.";

                                    Defendants.

---

        Plaintiff, Alexbay, LLC, having brought a Motion seeking an Order

determining that Plaintiff's proposed acceptance of certain collateral, in full satisfaction

of an obligation owed to Plaintiff, is "commercially reasonable" as the term is defined in

the Uniform Commercial Code; and awarding such other and further relief as the Court

deems just, equitable and proper,

NOW UPON reading the Notice of Motion dated March 15, 2012, on behalf of Plaintiff in support of the Motion, together with the Affidavit of Lester Eber, sworn to the 14th day of March, 2012, together with exhibits thereto, in support of Plaintiff's Motion, and having no opposition thereto, it is hereby

ORDERED, that part of Plaintiff's Motion seeking a determination that Alexbay's acceptance of certain collateral in full satisfaction of Eber Bros' obligation is "Commercially Reasonable" under the Uniform Commercial Code is GRANTED, and it is further

ORDERED, that part of Plaintiff's Motion seeking dismissal of Defendant Southern Wine & Spirits of America, Inc. from this action is GRANTED.

Dated:   May \_\_\_\_, 2012

HON. MATTHEW A. ROSENBAUM
Supreme Court Justice

ENTERED: \_\_5/23/12\_\_\_\_

2