# Exhibit A

# STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT is made and entered into as of the 30th day of May, 2010 by and among Polebridge Bowman Partners, LLC ("*Buyer*") and Eber Brothers Wine and Liquor Metro, Inc. ("*Seller*").

## WITNESSETH

WHEREAS, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, [_____] units of membership interest (the "*Units*") of Eber Connecticut, LLC (the "*Company*"), which represents 6% of the total outstanding equity interests of the Company, with such purchase to be upon and subject to the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements herein contained, the parties do hereby agree as follows:

## ARTICLE I - SALE OF UNITS

1.01  Upon the terms and subject to the conditions of this Agreement, Buyer shall purchase from Seller, and Seller shall sell, transfer, assign and deliver to Buyer, the Units.

## ARTICLE II - PURCHASE PRICE

2.01  The aggregate purchase price for the Units shall be $350,000.00, which shall be paid by delivery by Buyer to Seller of a Nonrecourse Promissory Note in the form attached hereto as **Exhibit A** (the "*Note*"), against delivery of certificate(s) evidencing the Units duly endorsed for transfer, or accompanied by duly executed stock transfer powers, free and clear of all liens, claims and encumbrances. The Note shall be secured by a pledge of the Units pursuant to a Stock Pledge Agreement in the form attached hereto as **Exhibit B** (the "*Pledge Agreement*").

## ARTICLE III - REPRESENTATIONS AND WARRANTIES OF SELLER

3.01  To induce Buyer to purchase the Units, Seller represents and warrants to Buyer as follows:

(a)  Seller has the right, power and authority to execute, deliver and perform this Agreement and the Pledge Agreement, and to consummate the transactions contemplated hereby and thereby, and this Agreement and the Pledge Agreement have been duly and validly executed and delivered by Seller and constitute Seller's legal, valid and binding obligation, enforceable in accordance with their respective terms. The transactions contemplated by this Agreement have been duly authorized by all necessary corporate action on the part of Seller. No consent of any third party is required for Seller's execution, delivery and performance of this Agreement.

(b)  Seller is a corporation duly organized, validly existing and in good standing under the laws of its state of incorporation and has all necessary corporate power to enter into the transactions contemplated by this Agreement. Company is a limited liability company duly organized, validly existing and in good standing under the laws of its state of organization, has all necessary limited liability company power to carry on its business as it is now being conducted, and is in good standing in each jurisdiction in which it is required to be so qualified.

Eber_HB00017259

EB-00020488

(c) Seller owns, of record and beneficially, valid title to the Units, and such Units are free and clear of all liens, claims and encumbrances. The Units are not subject to any right of first refusal or other rights or restrictions on transfer which would prevent the consummation of the purchase and sale of the Units from Seller to Buyer hereunder. The Company owns all right, title and interest to all of its assets and such assets are sufficient to conduct the business of the Company as it is now conducted or presently proposed to be conducted.

(d) No person is entitled to any finder, broker or other fee associated with the transactions contemplated by this Agreement.

(e) The Units have been validly issued and are fully-paid and non-assessable. The Company has only one class of membership interests and the Units represent 6% of the fully diluted equity interests of the company. There are no options, warrants, or other securities outstanding that are convertible into membership interests of the Company nor has the Company made any commitment to issue any of the foregoing. The Company has not issued any phantom rights, stock appreciation rights, or profits interests. The Company has no subsidiaries. ~~The Company has no outstanding indebtedness.~~ Except for any restrictions imposed by federal and state securities laws (and except for compliance with Article V of this Agreement), the transfer of the Units is not restricted.

(f) Company is taxed as a partnership for federal and state income tax purposes. Seller has paid all taxes owed by Seller in connection with its ownership of the Units. Buyer will not incur any tax liability for any periods that fall on or precede the date of this Agreement.

(g) There is no litigation pending or threatened against Company. There is no litigation pending or threatened against Seller which seeks to prevent or could have the effect of preventing the transactions contemplated by this Agreement. Company is in compliance with all laws, regulations and orders applicable to its business and has all licenses necessary to operate the business of the Company as it is now conducted or presently proposed to be conducted.

### ARTICLE IV - REPRESENTATIONS AND WARRANTIES OF BUYER

4.01 To induce Seller to sell the Units, Buyer represents and warrants to Seller as follows:

(a) Buyer has the right, power and authority to execute, deliver and perform this Agreement, the Note and the Pledge Agreement, and to consummate the transactions contemplated hereby and thereby, and this Agreement, the Note and the Pledge Agreement have been duly and validly executed and delivered by Buyer and constitute Buyer's legal, valid and binding obligation, enforceable in accordance with their respective terms. The transactions contemplated by this Agreement have been duly authorized by all necessary limited liability company action on the part of Buyer. No consent of any third party is required for Buyer's execution, delivery and performance of this Agreement.

(b) Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of its state of organization and has all necessary limited liability company power to enter into the transactions contemplated by this Agreement.

(c) Buyer is purchasing the Units for Buyer's own account, as principal, for investment purposes only and not with a view to resale, distribution or division. Buyer is an "accredited investor" as that term is defined under Rule 501 promulgated pursuant to the Securities Act of 1933.

-2-

## ARTICLE V – COVENANTS

5.01 To the extent that any taxes become due and payable by virtue of ownership of the Units relating to any period on or before the date of this Agreement, then Seller shall promptly pay such taxes and indemnify and hold Buyer harmless from any claim for taxes.

5.02 Seller will indemnify, defend and hold Buyer harmless against any breach of any Seller representation, warranty or covenant under this Agreement and any claim made by a third party against Buyer that results from any breach of any Seller representation, warranty or covenant under this Agreement. The right of indemnification hereunder will include the right to receive attorney's fees and costs incurred by Buyer in seeking a remedy under this Agreement or in defending a third party claim under this Agreement.

5.03 Seller and Buyer agree that Buyer shall have the right to set off any damages incurred by Buyer relating to any breach of this Agreement against the principal and interest then due under the Note. Seller agrees that it shall take no action inconsistent with Buyer's right (including, but not limited to, claiming that Seller is entitled to receive the full principal and interest under the Note) once Buyer has delivered notice of set off to Seller. This right shall be in addition to any rights Buyer has at law or equity.

5.04 To the extent that Buyer proposes to sell all or a portion of the Units to a third party, then Buyer shall comply with the rights of refusal set forth in this Section. Upon receipt by Buyer of a bona fide written offer from a third party to purchase all or a portion of the Units, then Buyer shall submit a written notice to each of Wendy Eber, Seller and [EG] (the "*Proposed Sale Notice*") setting forth the material terms under which the proposed sale is to take place and offering to sell such amount of Units on the terms described therein. Ms. Eber shall have the first right to purchase all the Units set forth on the Proposed Sale Notice (and on the terms described therein). In order to accept the right of first refusal hereunder, Ms. Eber must provide written notice to Buyer, Seller and [EG] within 5 days of the receipt (as calculated under Section 6.02 below) of the Proposed Sale Notice. If Ms. Eber does not submit her notice of acceptance within the allotted time, then Seller shall have five additional days to submit a written notice to Buyer and [EG] that it wishes to accept a second right of first refusal and purchase all of the Units set forth in the Proposed Sale Notice (and on the terms described therein). If Seller does not submit its notice of acceptance within the allotted time, then [EG] shall have five additional days to submit a written notice to Buyer that [EG] wishes to accept a third right of refusal and purchase all of the Units set forth in the Proposed Sale Notice (and on the terms described therein). If any of Ms. Eber, Seller or [EG] deliver an acceptance notice under this provision, then the closing for the transaction shall take place on or before the 30th day following Buyer's receipt of the acceptance notice from the applicable party. If none of Ms. Eber, Seller or [EG] deliver an acceptance notice under this Section within the require timeframes or if any of Ms. Eber, Seller or [EG] fail to consummate the purchase of the Units within 30 days of their acceptance, then Buyer shall be permitted to consummate the sell of the Units to any party (but on terms no less favorable than set forth in the Proposed Sale Notice) for a period of 180 days after the expiration of the time periods for the receipt of acceptance notices hereunder.

5.05 Seller hereby appoints Buyer as its attorney-in-fact to execute any and all stock powers and other documents as may be necessary to transfer the ownership of the Units on the books and records of the Company. Seller acknowledges that the foregoing power of attorney is coupled with a material property interest of Buyer and cannot be rescinded. Seller agrees to take all action necessary (and to execute any documents as are reasonably requested by Buyer) to cause the transfer of the ownership of the Units on the books and records of the Company to be recorded, to cause a replacement certificate(s) in the name of Buyer and representing the Units to be issued, and to otherwise give effect to the transactions contemplated by this Agreement.

Eber_HB00017261

EB-00020490

## ARTICLE VI - MISCELLANEOUS

6.01 This Agreement, along with the Note and related Pledge Agreement, reflects the entire agreement of the parties with regard to the subject matter addressed hereunder and supersedes all prior understandings, whether oral or written. No amendment or modification of this Agreement shall be binding unless the same shall be in writing and executed by the parties hereto. This Agreement may be executed in one or more counterparts, each of which will be deemed an original. Both parties acknowledge their respective sophistication and ability to negotiate the terms of this Agreement, the Pledge Agreement and the Note. Therefore, no provision of this Agreement, the Pledge Agreement or Note shall be construed against a party on the grounds that the party drafted or had drafted any provision of the Agreement, the Pledge Agreement or Note. If any Section or part thereof shall for any reason be held or adjudged to be invalid, illegal or unenforceable by any court of competent jurisdiction, such Section or part thereof so adjudicated invalid, illegal or unenforceable shall be deemed separate, distinct and independent, and the remainder of this Agreement shall remain in full force and effect and shall not be affected by such holding or adjudication. The headings in this Agreement are for convenience only and do not impart meanings to their respective sections.

6.02 Any notices or other communications required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given and delivered when delivered in person, three days after mailed postage prepaid by registered or certified mail with return receipt requested, or one day after sent by overnight delivery service, in each case to the recipient at the address set forth next to its signature on the signature page hereto, or to such other address as to which the other party hereto has been subsequently notified in writing by such recipient.

6.03 This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Georgia without regard to its conflict of laws principles. Any dispute regarding this Agreement, the Pledge Agreement, or Note shall be resolved by the appropriate courts sitting in Fulton County, Georgia and each submits to the jurisdiction and venue of such courts and hereby waives any objection that the forum is inconvenient. This Agreement shall be binding upon the parties hereto and shall inure to the benefit of such parties and their successors and assigns. No waiver of any provision of this Agreement shall be valid unless set forth in writing and signed by the party against whom the waiver is sought. No single instance of waiver shall act as a future waiver of the same right on behalf of a party.

[*Signatures appear on the following page.*]

-4-

Eber_HB00017262

EB-00020491

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

**BUYER:**

POLEBRIDGE BOWMAN PARTNERS, LLC

Address: 201 17th St., NW
Suite 1700
Atlanta, Georgia 30363
Attn: Glenn W. Sturm

By: _____
Print Name: Glenn W. Sturm
Title: Sole Member and Manager

**SELLER:**

EBER BROTHERS WINE AND LIQUOR METRO, INC.

Address: 95 Allens Creek Rd Building 2 Suite 10
Rochester, NY 14618
Attn: Lester Eber

By: _____
Print Name: LESTER EBER
Title: President

- 5 -

Eber_HB00017263

EB-00020492