UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

                Plaintiffs,

    v.

                              Civil Action No. 16-CV-9517(LAK)

LESTER EBER,
ALEXBAY, LLC f/k/a LESTER EBER, LLC,
CANANDAIGUA NATIONAL CORPORATION d/b/a
CANANDAIGUA NATIONAL BANK AND TRUST,
ESTATE OF ELLIOT W. GUMAER, JR.,
EBER BROS. & CO, INC.,
EBER BROS. WINE AND LIQUOR CORP.,
EBER BROS. WINE & LIQUOR METRO, INC.,
EBER CONNECTICUT, LLC, and
WENDY EBER,

                        Defendants.

---

**EBER DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF ATTORNEY-CLIENT PRIVILEGED DOCUMENTS AND IN SUPPORT OF CROSS-MOTION TO CLAW BACK ATTORNEY-CLIENT PRIVILEGED DOCUMENTS IMPROPERLY PRODUCED TO PLAINTIFFS BY CO-DEFENDANT GUMAER**

---

UNDERBERG & KESSLER LLP
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
(585) 258-2882

Paul F. Keneally, Esq., Of Counsel
Colin D. Ramsey, Esq., Of Counsel

## PRELIMINARY STATEMENT

Defendants, Lester Eber ("Lester"), Alexbay, LLC f/k/a Lester Eber, LLC, Eber Bros. & Co., Inc., Eber Bros. Wine and Liquor Corp., Eber Bros. Wine & Liquor Metro, Inc., Eber Connecticut, LLC and Wendy Eber ("Wendy") (collectively "Eber Defendants") submit this Memorandum of Law in opposition to the motion of plaintiffs to compel production of documents properly designated by the Eber Defendants as attorney-client privileged.   Plaintiffs' motion alleges that the Eber Defendants have improperly designated certain documents as privileged, or that there is an exception to the attorney-client privilege mandating production of certain withheld documents.

This Memorandum is also submitted in support of the Eber Defendants' cross-motion to claw back certain attorney-client privilege documents improperly disclosed by co-defendant Gumaer.

The Court has already indicated that it will conduct an *in camera* review of the challenged documents (which will be sent to the Court separately), and its August 10, 2018 Order confirmed that plaintiffs' motion is therefore moot.   Moreover, after a further review of the challenged documents and the law, consideration of the unique circumstances at issue, and sensitive to the burden an *in camera* review imposes on the Court, despite ongoing privilege concerns the Eber Defendants have decided to voluntarily produce some of the challenged documents (as noted on the privilege logs attached as Exhibit A).   However, this voluntary supplemental production should in no way be taken by plaintiffs as a waiver by the Eber Defendants of the attorney-client privilege.

Notwithstanding that plaintiffs' motion is moot, the Eber Defendants will address the allegations in the motion to aid in the Court's *in camera* review.  Put simply, the remaining documents withheld by the Eber Defendants are protected by the attorney-client privilege.

## STATEMENT OF FACTS

The "Facts" section of plaintiffs' Memorandum contains nearly four pages of mischaracterizations and outright falsehoods in support of their motion.  The Eber Defendants have no choice but to set forth an accurate rendition of the facts.

Plaintiffs had varying interests in a Trust ("the Trust") created on October 27, 1969 by Allen Eber, father of Audrey Hays, Sally Kleeberg and Lester Eber.  Prior to the 2017 termination of the Trust by the Monroe County Surrogate's Court, the Trustees were Lester Eber, Elliott W. Gumaer, Jr., and Canandaigua National Bank ("CNB").  Plaintiffs are the grandchildren of Allen Eber who inherited their respective interests in the Trust upon the deaths of Lester's sisters, Sally Kleeberg and Mildred Boslov.  Lester Eber and Audrey Hayes each had a 1/3 interest in the Trust, while Daniel Kleeberg and Lisa Stein had a 1/6 interest.

The Eber family has been involved in business of wine and liquor distribution for over 80 years – primarily in Rochester, New York.  There are a number of Eber entities.  Eber Bros. & Co., Inc. ("Eber Bros.") is a New York corporation founded in 1917.  Eber Bros. had been majority owned by the Trust since the 1970s, but has not been an operating entity since the late 1980s.

Eber Bros. Wine and Liquor Corp. ("Eber W&L") is a New York corporation that was founded in 1935 and previously operated as a wholesale wine and liquor distributor in Upstate New York.  It has not been an operating entity since 2007.  It is majority owned by Eber Bros., and Lester Eber and the Trust (prior to its dissolution) had minor interests.  The large and successful Eber W&L business is long-gone due to competitive pressures encountered since the early 2000's.

4

Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro") is a New York corporation founded in 1996, and previously operated as wholesale wine and liquor distributor in downstate New York.  Eber Metro has not been an operating entity since 2004.  Prior to June 2012, Eber Metro was a wholly owned subsidiary of Eber W&L.  Following the June 2012 stock assignment in lieu of foreclosure proceeding and the Order from Justice Rosenbaum of the Monroe County Supreme Court in that case, Eber Metro became a wholly-owned subsidiary of Alexbay, LLC ("Alexbay").  Thereafter, Eber W&L had no remaining equity interest in Eber Metro.

Eber Connecticut, LLC ("Eber-CT") is a Delaware limited liability company founded in 2005.  Eber-CT currently operates a wholesale wine and liquor business in Connecticut.  Since 2005, Eber Metro has held a controlling equity interest in Eber-CT.

Alexbay is a Connecticut limited liability company founded in 2011.  Alexbay is wholly-owned by Lester Eber.

Beginning in the early 2000s, the business of Eber W&L began a downward spiral that it was unable to reverse.  Key employees and suppliers defected, and these losses had a material adverse effect on the company's financial performance and liquidity.  As these business challenges mounted, between 2002 and 2012, Lester Eber voluntarily made cash loans to Eber W&L and Eber Metro for the purpose of enabling those entities to remain in business and pay various operating and other third party expenses and liabilities.  The loans were made pursuant to loan and security documentation entered into by the borrower entities and Lester Eber at the time of the loans.

The loans were secured by validly-perfected first priority UCC Article 9 Security Interests in all the assets of Eber W&L (i.e., Eber W&L's controlling equity interest in Eber

Metro) and of Eber Metro (i.e., Eber Metro's controlling equity interest in Eber-CT). Lester Eber had priority as a secured creditor over any claim by other secured and unsecured creditors, as well as all the stockholders, of Eber Bros. and Eber Metro, and the UCC filings to perfect his security interests were a matter of public record. The loans from Lester Eber were necessary as no third party lender was willing to make such loans.

More specifically, on or about October 1, 2002, Lester loaned Eber W&L the sum of $575,895.00. The loan was evidenced by a Promissory Note and was secured by a collateral security interest in all the assets of Eber W&L. Thereafter, on or about August 15, 2005, Lester loaned Eber W&L the additional sum of $1,503,750.00. This loan was also evidenced by a Promissory Note. On March 13, 2006, Eber W&L executed an "Amended and Restated Promissory Note" payable to Lester Eber which reiterated its obligation to repay the $575,895.00 loan and the $1,503,750.00 with interest at an annual rate of 9%.

Finally, in October 2009, Lester Eber agreed to loan Eber Metro "an amount not exceed $1,500,000.00" under a revolving line of credit. This loan was evidenced by a line of credit note.

On or about February 26, 2010, Eber W&L executed a Guarantee, agreeing to guarantee the repayment by Eber Metro of all its obligations to Lester Eber. The obligations under the Guarantee were confirmed in a Security Agreement executed by the parties on February 26, 2010, granting Lester Eber security interests in all Eber Bros. property. This agreement was reiterated in an Amended and Restated Security Agreement executed by the parties on February 10, 2011. Also on February 10, 2011, Eber Metro, Eber W&L and Lester Eber entered into a "Debt Assumption Agreement"

whereby Eber Metro assumed all of Eber W&L's obligations to Lester Eber under the March 13, 2006 Amended and Restated Promissory Note.

Plaintiffs were well aware of the financial struggles of the various Eber entities.  In the spring of 2010, Lester Eber wrote and spoke to Sally Kleeberg (the mother of plaintiffs Daniel Kleeberg and Lisa Stein) and to plaintiff Audrey Hayes advising them of the severe financial difficulties faced by the Eber businesses, and that the efforts to obtain outside financing had been unsuccessful.  Lester Eber further advised that he had voluntarily agreed to make additional cash loans to Eber Metro to allow the business to operate, and specifically advised that the additional loans were secured by Eber W&L's controlling equity interest in Eber Metro and Eber Metro's controlling equity interest in Eber-CT. Moreover, copies of the loan documentation were provided to both Sally Kleeberg and Audrey Hayes.  Critically, Lester Eber also offered both Sally Kleeberg and Audrey Hayes the opportunity to be a 1/3 participant in the $1.5 million loan.  However, both Sally Kleeberg and Audrey Hayes declined to participate.

At an August 18, 2011 meeting of the Trustees of the Trust, a unanimous vote occurred to ratify the loans previously made by Lester Eber as described above.  The meeting minutes described the security arrangement for each loan, and noted that Sally Kleeberg and Audrey Hayes had been offered the opportunity to participate in the loans but declined to do so.  It should be noted that the ratification of the loans by the Trustees was entirely voluntary and not required by any provision of the New York Business Corporation Law.

As of December 31, 2011, the outstanding principal and interest on the loans was an aggregate of $3,650,682.48.  By that time, Eber W&L and Eber Metro had no business

operations and were generating no cash flow.  Eber W&L's only material asset was its controlling equity interest in Eber Metro, and Eber Metro's only material asset was its controlling equity interest in Eber-CT.  Eber W&L and Eber Metro failed to pay any of the principal or interest on the loans payable to Lester Eber.  On January 18, 2012, Lester Eber transferred all his right, title and interest in the loans and the definitive loan and security documentation to Alexbay.  On that same date, Alexbay sent Eber W&L and Eber Metro a notice pursuant to New York UCC 9-620 proposing to accept Eber W&L's entire controlling equity interest in Eber Metro, and Eber Metro's entire controlling equity interest in Eber-CT (79%) in full satisfaction of the loans.

Thereafter, on February 21, 2012, Alexbay commenced an action pursuant to New York UCC 9-627 seeking a judicial review of Alexbay's acceptance of Eber W&L's interest in Eber Metro in full satisfaction of the secured loan obligations owed to Alexbay, and the determination that such acceptance was "commercially reasonable."  A judicial determination of commercial reasonableness is not required by the UCC, but it was pursued by Alexbay out of an abundance of caution.

By judgment dated May 11, 2012, the Hon. Matthew A. Rosenbaum, New York State Supreme Court Monroe County, issued a declaratory judgment confirming that Alexbay's acceptance of Eber W&L's interest in Eber Metro was commercially reasonable given the amount of Lester Eber's loans.  In fact, the value of Eber W&L's interest in Eber Metro/Eber-CT at the time was approximately $2.3 million – far less than Lester Eber's $3.6 million in loans.

Further, it is clear that plaintiffs either do not realize or choose to ignore the fact that many of the debts of Eber Bros. were also contingent liabilities of Eber-CT.  Lester Eber had no obligation or liability to pay such contingent liabilities, but extended personal loans and made many payments outright nonetheless.  Further, in 2017 Lester Eber forfeited all his vested rights under the Eber W&L Pension Plan (worth $1.4 Million) in order to save the business.

Eber Bros., the only Eber entity directly held by the Trust, was not a party to any of the loans or security arrangements.  No action was required to be taken in connection with any of the loans by the Board of Directors of Eber Bros.  Similarly, under the New York BCL, no shareholder approval – including approval by the Trust as controlling shareholder of Eber Bros. – was required for any of the loans or security arrangements.  None of the actions taken by Lester Eber in connection with the loans and the related security arrangements were taken in his capacity as Trustee of the Trust.

## ARGUMENT

## POINT I

## THE EBER DEFENDANTS PROPERLY WITHHELD CERTAIN DOCUMENTS BASED UPON THE ATTORNEY-CLIENT PRIVILEGE

It is undisputed that an attorney-client privilege exists when it is demonstrated that (1) there was a communication between client and attorney; (2) that communication was intended to be [and was] kept confidential; and (3) the purpose was to obtain or provide legal advice.  United States v. Bergstein, 302 F. Supp3d 580, 584 (S.D.N.Y. 2018).

Here, plaintiffs' objections can be broken into essentially three categories: (1) objections to documents withheld involving communications between one or more of the Eber Defendants and Elliott Gumaer; (2) objections to documents withheld involving communications with Underberg & Kessler LLP; and (3) objections to documents withheld involving communications with Glenn Sturm, Esq.

**Gumaer**

Plaintiffs incorrectly assert that Mr. Gumaer's position as Trustee renders the attorney-client privilege wholly inapplicable to the Eber Defendants, based primarily upon the fiduciary exception recognized in New York.  See In re Bank of New York Mellon, 977 N.Y.S.2d 560 (N.Y. Co. 2013).  However, plaintiffs' fail to recognize or appreciate that Mr. Gumaer was not merely a Trustee.  Rather, he was also a long-time attorney for the Eber Defendants on a host of matters having nothing to do with the Trust.

As set forth in the accompanying Affidavits of Lester Eber and Wendy Eber, prior to his death last year, Mr. Gumaer served as an attorney for both of them, individually, as well as many of the Eber Defendants, since the 1960's.

The Eber Defendants relied on Mr. Gumaer for confidential legal advice involving a myriad of matters having nothing to do with the Trust or Mr. Gumaer's role as Trustee. Certainly, there were also communications involving the Trustee that were not privileged – which were not withheld or will be produced as noted above.  However, plaintiffs contend that essentially every communication between the Eber Defendants and Mr. Gumaer – regardless of whether the Trust was the subject of such communication – must be disclosed based upon his position as Trustee.  That is simply not the state of the law. The Eber Defendants regularly relied upon Mr. Gumaer for legal advice unrelated to the Trust.  Communications relating to such legal advice have been properly withheld by the Eber Defendants.

Plaintiffs further argue that communications with Mr. Gumaer are subject to disclosure because he was allegedly not a practicing attorney during the operative time period.  As set forth in the Affidavits of both Wendy Eber and Lester Eber, they were unaware that Mr. Gumaer was not licensed to practice law during the time period at issue – and do not currently know if the allegation is accurate.  Further, they both attest that Mr. Gumaer never advised them that he was not a licensed or "practicing" attorney, or that they should not consider him to be their lawyer.  This good faith belief is fatal to plaintiffs' argument on this point.

Under New York law, in order for attorney-client privilege to apply, there must be an attorney-client relationship. The formation of an attorney-client relationship hinges upon the client's [reasonable] belief that he is consulting an attorney in that capacity and his manifested intention to seek professional legal advice." See Merck Eprova AG v.

ProThera, 670 F.Supp.2d 201, 210 (S.D.N.Y. 2009).  No special formality is required to demonstrate the establishment of that relationship. See id.

Courts have generally considered six factors in assessing whether an attorney-client relationship existed: "1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the [client] in one aspect of the matter (e.g., a deposition); 5) whether the attorney excluded the individual from some aspect of [the] litigation in order to protect another (or a) client's interest; [and] 6) whether the purported client believes that the attorney was representing him and whether this belief was reasonable." First NBC Bank v. Murex, LLC, 259 F. Supp. 3d 38, 61–62 (S.D.N.Y. 2017).

Here, the Eber defendants paid Mr. Gumaer for his legal services; Mr. Gumaer provided legal advice and recommendation in return for such payments; such communications were kept confidential; and the Eber Defendants had a good faith belief that that Mr. Gumaer was acting as their attorney.   It is clear that that the relationship between Mr. Gumaer and the Eber Defendants (exclusive of his role as Trustee), was one of attorney-client and is entitled to the attendant privilege.

**Underberg & Kessler LLP**

Plaintiffs' allegations with respect to communications with Underberg & Kessler LLP also fail.  As set forth in the Affidavits of Wendy Eber and Lester Eber, Underberg & Kessler LLP has been retained at various times over the years to represent both Wendy

and Lester, as well as a number of the Eber Defendants in a variety of matters.[1]  Plaintiffs essentially allege that the Eber Defendants failed to follow corporate formalities in the retention of Underberg & Kessler LLP (and other attorneys), and that the attorney-client privilege was somehow lost or waived as a result.

However, other than plaintiffs' unsupported assertions, there is no evidence to support the contention that the Eber Defendants failed to follow corporate formalities in their retention of Underberg & Kessler LLP, or that there was a waiver of any privilege.

For example, plaintiffs contend that communications between Lester Eber or Wendy Eber with Underberg & Kessler LLP surrounding the UCC Article 9 sale are purportedly not privileged because the interests of Alexbay were adverse to the interests of one or more of the other Eber entities.

First, there was no conflict as the parties were not adverse – all agreed that the assignment to Alexbay was commercially reasonable compensation for debts justly due and secured.  Second, plaintiffs fail to mention that while Wendy Eber was President of Eber W&L, she also had roles with the various other Eber entities.   Accordingly, communications with counsel on behalf of other Eber entities are still privileged. Third, to the extent a conflict ever did exist, it was waived by the individual or entity with the right to assert it because the transaction was completely appropriate and reasonable.  Finally, plaintiffs do not have standing to raise a potential conflict retroactively in this litigation, as they were not the clients in the transaction(s) at issue.

---

[1] Copies of retainer agreements between the Eber Defendants and Underberg & Kessler are attached as Exhibit B.

**Glenn Sturm**

Plaintiffs admit that Mr. Sturm was a practicing lawyer and that there was no fiduciary relationship between Mr. Sturm and the Eber Defendants.  However, plaintiffs allege that because Mr. Sturm also acted as an advisor for the Eber Defendants, some of the communications with Mr. Sturm are being improperly withheld.  This is false. Communications involving Mr. Sturm that have been withheld on privilege grounds relate to legal advice given by Mr. Sturm.

Plaintiffs' mere conjecture to the contrary is not a basis to invade privilege.


## POINT II

## THE EBER DEFENDANTS ARE ENTITLED TO CLAW BACK PRIVILEGE DOCUMENTS IMPROPERLY PRODUCED BY CO-DEFENDANT GUMAER

On May 31, 2018, the Eber Defendants, with the Court's permission, made a letter motion [ECF 104] to seal documents improperly produced to plaintiffs by co-defendant Gumaer.  That motion was granted [ECF 105].  The Eber Defendants now seek to claw back that and other improperly disclosed documents permanently, and prevent plaintiffs from utilizing or referencing them in any manner.  See FRE 502(b); United States v. Wells Fargo Bank, N.A., 2015 U.S. Dist. LEXIS 113546 at *2 (S.D.N.Y. 2015).  The law is clear that no waiver results from inadvertent disclosure of privileged documents if the privilege holder took reasonable steps to prevent disclosure and promptly took reasonable steps to rectify the error. Id.

Here, the Eber Defendants always treated that documents at issue as privileged, and acted promptly after learning that they were improperly disclosed by co-defendant Gumaer.  Accordingly, they are entitled to claw back the following documents:

- November 7, 2012 letter from Underberg & Kessler to Wendy Eber and Glenn Sturm, Esq. [Bates No. GUM000131-132].

- December 8, 2011 email from Wendy Eber to Mr. Gumaer and Lester Eber [Bates No. GUM000236].

- December 17, 2009 email string between Wendy Eber, Lester Eber, Mr. Gumaer, and Patrick Dalton, Esq. [Bates No. GUM000177]

- Undated Notes of Mr. Gumaer regarding PBGC [Bates No. GUM000189 and GUM000328].

Copies of these documents are attached as Exhibit C.

The November 7, 2012 letter is clearly conveying legal advice regarding the loans that plaintiffs are challenging in this litigation.  This document should never have been disclosed.

Further, plaintiffs' outrageous allegation at page 18, footnote 8 of their Memorandum that privilege was waived with respect to this communication is patently false.  Plaintiffs claim that because the November 7, 2012 letter was <u>referenced</u> in the May 29, 2018 letter of Paul Keneally, Esq. (ECF No. 99), privilege was somehow waived.  To the contrary, Mr. Keneally <u>explicitly asserted</u> privilege in the May 29, 2018 letter.  Plaintiffs' allegation of waiver is at best disingenuous, at worst sanctionable.

Similarly, the December 8, 2011 email, and the December 17, 2009 email, string both involve discussions of legal matters unrelated to the Trust.  While the relevance of

15

those emails to this litigation is questionable at best, the attorney-client privilege should still be honored.

Finally, Mr. Gumaer's handwritten notes are also privileged.  They were taken in the context of meeting to discuss legal issues facing one or more of the Eber Defendants, and should be protected by both the attorney-client privilege and the work product doctrine.  Further, once again the notes do not involve the Trust.

**CONCLUSION**

The Eber Defendants are confident that the Court's *in camera* review will lead to the conclusion that plaintiffs are not entitled to the privileged documents that they are currently seeking.  Further, the Eber Defendants are entitled to an Order clawing back privileged documents that were improperly produced to plaintiffs by co-defendant Gumaer.


DATED:  August 17, 2018
        Rochester, New York


UNDERBERG & KESSLER LLP

By: _____
    Paul F. Keneally, Esq., Of Counsel
    *Attorneys for Eber Defendants*
    300 Bausch & Lomb Place
    Rochester, New York 14604
    (585) 258.2882


17