**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DANIEL KLEEBERG, LISA STEIN,
and AUDREY HAYS,

               Plaintiffs,

    v.

LESTER EBER; ALEXBAY, LLC f/k/a
LESTER EBER, LLC;
CANANDAIGUA NATIONAL BANK
& TRUST COMPANY; ESTATE OF
ELLIOTT W. GUMAER, JR.; EBER
BROS. & CO., INC.; EBER BROS.
WINE AND LIQUOR CORP.; EBER
BROS. WINE & LIQUOR METRO,
INC.; EBER-CONNECTICUT, LLC;
and WENDY EBER,

               Defendants.

Civil Action No.  16-CV-9517(LAK)

---

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**
**THE EBER DEFENDANTS TO PROVIDE DISCOVERY IMPROPERLY**
**WITHHELD ON PRIVILEGE GROUNDS**

---

Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@clintonbrook.com

*Attorneys for Plaintiffs Daniel Kleeberg, Lisa
Stein, and Audrey Hays*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ...................................................................................................... 2

I.   Defendants' Opposition Briefing Fails to Adequately Address Plaintiffs'
     Motion to Compel, Simply Disregarding Most of It. .................................... 2

     A.   Communications with Gumaer Were Not Privileged ........................... 3

     B.   Defendants' Legal Conflict of Interest and Filing of Purported Litigation
          Precluded Them from Having Privileged Discussions. ...................... 5

     C.   Communications with Glenn Sturm ..................................................... 7

     D.   Defendants' Refusal to Identify the Client Has Consequences........... 7

II.  Defendants Have Not Demonstrated a Basis to Clawback Documents ............. 8

III. A Façade of Outrage and Indignation in Response to a Strawman Is No
     Basis to Accuse Counsel of Presenting a "Sanctionable" Argument. ............... 9

CONCLUSION.................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,

   306 F.R.D. 117 (S.D.N.Y. 2013) ................................................................... 4

*Bolton v. Weil, Gotshal & Manges LLP*,

   2005 WL 5118189 (N.Y. Sup., N.Y. Co. Sept. 16, 2005) ........................... 3

*Tekni-Plex, Inc. v. Meyner and Landis*,

   89 N.Y.2d 123 (1996) ................................................................................... 7

**Rules**

Fed. R. Civ. P. 26(b)(5) .................................................................................. 8

Fed. R. Evid. 502(b)(3) ................................................................................... 8

N.Y. R.P.C. 1.7(b)(4) ...................................................................................... 6

## PRELIMINARY STATEMENT

In their Preliminary Statement, Defendants claim that, given this Court's *in camera* review, Plaintiffs' Motion briefing is moot. Eber Br. 2.[1] It is not, especially since Defendants' Privilege Log is incomplete, and issues like waiver may not be apparent from the face of the documents. Plaintiffs' briefs provide essential context and guidance for this Court's *in camera* review and analysis.

For example, Plaintiffs' opening brief explained why it was critical to discern who the "client" was in the various withheld communications. Despite this, the Eber Defendants have once again refused to identify the client, and instead brush this issue off as mere corporate formality. Eber Br. 13. But this is not a situation where the corporate entities were all under common ownership (despite their names). Indeed, the central dispute in this case is about how Defendants divested Plaintiffs' of their ownership interest in the Connecticut business by transferring it from one Eber entity to another. If these corporate distinctions did not matter, we would not be in court.

Ultimately, it seems the Eber Defendants misunderstand not only the nature of Plaintiffs' claims, but also basic principles of attorney-client privilege, including their burden and the fact that privilege is to be narrowly construed because it impedes this Court's truth-seeking function. It is Defendants' burden to establish that a communication involved an attorney and a client, but they have essentially refused to do that. This refusal seems to stem from the fact that there were—and still are—

---

[1] Their brief begins on page 2 and omits tables of contents and authorities.

1

legal conflicts between the different entities. Plaintiffs assert derivative claims *on behalf of* EBWLC *against* Alexbay, because Alexbay took Eber Metro from EBWLC.

Privilege issues can be complex, and it appears that they simply do not understand it. This is combined with an usually sloppy privilege log, where clients are not identified because distinct corporate entities supposedly all shared the same counsel, even when they were suing each other. Under the circumstances, we cannot parse all the flaws in this Reply, but we respectfully request that the Court permit oral argument or further targeted submissions to the extent necessary.

## ARGUMENT

### I. DEFENDANTS' OPPOSITION BRIEFING FAILS TO ADEQUATELY ADDRESS PLAINTIFFS' MOTION TO COMPEL, SIMPLY DISREGARDING MOST OF IT.

The Eber Defendants' Opposition brief is full of indignation, but short on everything else. *See, e.g.*, Eber Br. 4–9 ("Statement of Facts" without a single citation). Despite contending that we had asserted "outright falsehoods"—a strong charge—it is unclear which of the relevant factual assertions they even dispute. Almost none of their "facts" have bearing on the key issues in this motion.

Their Argument fares no better, as it disregards key arguments and issues entirely. For example, the Eber Defendants fail to address the inadequacy of their privilege log and the importance of identifying the client in order to claim privilege. *See* Plaintiffs' Br. 8–11. They also ignore the crime-fraud exception. *See id.* at 20-23. Further, the fiduciary exception, *id.* at 18–20, is perfunctorily mischaracterized rather than ignored outright. *See* Eber Br. 10 (contending that the fiduciary exception

is the basis for disclosing Gumaer's communications to Plaintiffs, when that is based on the fact that Gumaer himself had direct fiduciary obligations to Plaintiffs).

### A. Communications with Gumaer Were Not Privileged

The Eber Defendants' communications with Gumaer relating to Trust assets, including the corporate entities, were not privileged. Even assuming all the requirements of a privileged communication could be met, because the Eber Defendants knew that Gumaer was a trustee with independent fiduciary duties to Plaintiffs, they could not have reasonably expected him to keep any relevant factual information a secret from Plaintiffs. The situation with Gumaer was analogous to a joint representation of multiple clients by a single attorney. *See, e.g.*, *Bolton v. Weil, Gotshal & Manges LLP*, 2005 WL 5118189, at *5 (N.Y. Sup., N.Y. Co. Sept. 16, 2005) ("[W]hen an attorney represents clients jointly, a client cannot reasonably expect that the attorney will keep information from the other clients.") (collecting authorities).

Although the Eber Defendants do acknowledge that a client's belief that a communication was privileged must be reasonable, *see, e.g.*, Eber Br. 12, they fail to appreciate the significance of Gumaer's position as trustee. It is thus ironic that they argue that we "fail to recognize or appreciate that Mr. Gumaer was not merely a Trustee . . . [but also] a long-time attorney for the Eber Defendants," *id.* at 10, because it is what Lester and Wendy Eber "recognize[d]" that matters. Because they undisputedly knew of Gumaer's fiduciary duties, they could not reasonably expect Gumaer to give preferences to Lester (a beneficiary) and Wendy (a remainderman) as against all the other Trust beneficiaries and remaindermen (Plaintiffs).

They also seem to contend that the business of the corporate entities controlled

3

by the Trust somehow did not implicate the Trust, *see, e.g.*, Eber Br. 11, Lester Aff. ¶ 12—a self-serving contention that lacks any logical or legal support. Indeed, all of these entities were Trust assets, while Lester was a beneficiary/co-trustee and Wendy was a contingent remainderman. Under the circumstances, all of the communications at issue appear to have concerned the Trust, at least indirectly if not directly.[2]

To the extent that there were communications with Gumaer where he was supposedly the lawyer, there is an additional, independently sufficient basis to find no privilege: Defendants cannot show that Gumaer was a licensed attorney at the time. *See Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 117, 119 (S.D.N.Y. 2013) ("[T]he attorney-client privilege generally applies only to communications with attorneys who are licensed to practice law."). The crux of the issue, then, is whether the Eber Defendants "reasonably believed" that Gumaer was still a licensed attorney during the relevant time. *Id.* at 120. Lester and Wendy's affidavits contain wholly conclusory assertions that are insufficient on this point. By contrast, they implicitly concede there was no engagement agreement. They identify no payments made to Gumaer for legal services.[3] And they admittedly retained other lawyers, such as Underberg & Kessler, to provide legal advice, rendering Gumaer's legal services redundant at best. It is therefore unlikely that communications with him were truly

---

[2] If the Eber Defendants had given any indication that Gumaer provided legal services that were unrelated to the Trust *or its assets*, and that there were communications that they sought to withhold as privileged, we would have likely agreed. The vague, conclusory assertions made to date, however, have fallen far short of the specificity required to sustain a challenged privilege assertion.

[3] The Eber Defendants assert that they "paid Mr. Gumaer for his legal services," Eber Br. 12, but there is no evidence to support this, not even in the conclusory affidavits. Contrary to this assertion, it seems that Gumaer himself described the payments he received as being for his service as a "Director/Trustee/confid[a]nt"—not a lawyer. Brook Decl. Ex. K.

legal in nature, rather than about business matters, including corporate decisions since Gumaer was, also, a director of several Eber entities (another source of independent fiduciary duties to Plaintiffs, in this case as shareholders).

## B. Defendants' Legal Conflict of Interest and Filing of Purported Litigation Precluded Them from Having Privileged Discussions.

Communications Wendy Eber had with Underberg & Kessler, LLP regarding the 2012 Foreclosure Action are not privileged because Underberg was representing an adverse party (Alexbay) that was suing EBWLC, for which Wendy was then President. The existence of a lawsuit prevented any reasonable expectation of confidentiality, and thus any privilege from attaching.[4]

Defendants argue first that "there was no conflict as the parties were not adverse – all agreed that the assignment to Alexbay was commercially reasonable compensation for debts justly due and secured." Defendants' Br. 13. This argument is nonsensical. Defendants essentially argue that because all parties agreed to a resolution, there was no legal conflict, i.e. no conflict of interest. Of course, that is not how conflict of interest situations are analyzed. The issue here is whether there were conflicting legal interests—a conflicting legal interest in the context of privilege exists even if the adverse parties ultimately agree on a resolution.

Second, Defendants argue that Wendy Eber had various roles with the Eber entities, not just EBWLC, thus communications with counsel on behalf of the other Eber entities are privileged. This argument ignores the very allegations contained in

---

[4] Even if the communications could be privileged, they would still be subject to the fiduciary and crime-fraud exceptions.

Plaintiffs' Complaint. In sum, Defendants argue because Wendy Eber was on both sides of the transactions at issue, any communications had with Underberg, whether on behalf of Alexbay or the Eber entities, are privileged. To the extent the Court understands how this could be possible—and we do not—it would ipso facto trigger application of the crime-fraud exception, because this is tantamount to an admission that the Foreclosure Action was a sham without any real adversity—and without any independent legal advice.[5]

Third, Defendants argue that to the extent a conflict did exist, it was waived by the individual or entities involved. According to Defendants' discovery responses, there were no conflict waivers ever given, and certainly none in writing. It is well established that any conflict waivers *must* be in writing. *See* N.Y. R.P.C. 1.7(b)(4). Without any such writing existing, no conflict was ever waived.

Finally, Defendants argue that Plaintiffs do not have standing as they were not clients in the transaction(s) at issue. It is unclear whether "standing" is necessary here given that the issue is whether communications were privileged rather than disqualification of Underberg. But assuming arguendo that standing is necessary, Plaintiffs have standing to challenge counsel's unwaived conflict. Plaintiffs' principal claims against the Eber Defendants and Gumaer are derivative claims on behalf of EBWLC. Thus, Plaintiffs are standing in the shoes of EBWLC—which was

---

[5] Tellingly, the Eber Defendants do not address Marino Fernandez, the lawyer supposedly retained by EBWLC. Pl. Br. 6–7, 11. They want to elide his separate retention because it shows they knew, at the time, that there was a conflict. The fact that there were separate communications that did *not* involve Fernandez may, in and of itself, be evidence of whether his retention was part of the sham, since it would indicate that his appearance in the litigation was merely for show.

undisputedly a client or former client of Underberg & Kessler, as well as possibly many others. Accordingly, Plaintiffs have standing to raise these conflict issues.

### C. Communications with Glenn Sturm

Communications with Glenn Sturm regarding non-legal advice are not privileged. Defendants simply assert that all the communications with Mr. Sturm involved legal advice and are therefore privileged. But who was Sturm representing? They do not say.

### D. Defendants' Refusal to Identify the Client Has Consequences

As mentioned in our opening brief, we must know which corporate client is being represented to know if the fiduciary exception applies. By refusing to identify which corporate entity was supposedly the client in any of the communications, the Eber Defendants have arguably forfeited the chance to assert privilege *at all*. We have been unable to find any precedent to allow a party to claim privilege over communications without identifying the client. In the corporate client context, precision is often critical because it is the corporation that has the privilege, not the owner. Thus, without identifying the client, the Eber Defendants would effectively prevent the privilege from ever being waived, even if the corporate entities were subsequently taken over by new management. Thus, their position is conceptually contrary to New York law. *See, e.g.*, *Tekni-Plex, Inc. v. Meyner and Landis*, 89 N.Y.2d 123, 134 (1996) (holding that when new management takes over an existing company, it controls the privilege of the old management).

Defendants' position also makes it difficult if not impossible to determine when privilege is waived through disclosure, even though it is part of their burden to show

that the privilege has not been waived. We do not want to prevail on this motion by default—we think our other arguments are sufficient—but the Eber Defendants' refusal to meet their initial burden seems hard to ignore because it makes our response—and this Court's evaluation—unduly challenging.

At the minimum, the Eber Defendants have waived any argument that there were any communications to which the fiduciary exception would not apply because it involved an entity in which our clients lacked an interest. Instead, the Court should presume that all communications involved an entity in which Plaintiffs had an interest and were thus owed fiduciary duties.

## II. DEFENDANTS HAVE NOT DEMONSTRATED A BASIS TO CLAWBACK DOCUMENTS

To clawback an inadvertently produced document, a party must provide sufficient disclosure to support the privilege claim. *See* Fed. R. Evid. 502(b)(3) (referencing Fed. R. Civ. P. 26(b)(5)(B), which requires disclosing "the basis" for the privilege claim); Fed. R. Civ. P. 26(b)(5)(A) (requiring disclosure of information necessary to assess claim). Defendants have failed to satisfy this basic requirement.

For example, as to the November 2012 Underberg letter, the Eber Defendants have failed to even acknowledge that this communication was shared with Gumaer, let alone provide an explanation for how such further disclosure did not waive the privilege. This, of course, goes back to the larger problem of refusing to identify the client, which in the case of this document appears (on the face of the document only, not the log) to be Alexbay—a company which Gumaer never represented nor could he have represented without obtaining written conflict waivers. Indeed, Gumaer was a director of EBWLC—the company that Alexbay *sued* to take away Eber Metro, and

with it, the controlling interest in Eber-Connecticut.

Even without the disclosure to Gumaer, the Underberg letter likely falls within the crime-fraud exception because it shows that Underberg was helping Wendy breach her fiduciary duties as President of EBWLC.

The Eber Defendants' diverse and conflicting legal interests should not be ignored when the very crux of this lawsuit is that one Eber Defendant (Alexbay) took property belonging to another (EBWLC). The fact is that the Eber Defendants recognized the conflict at the time, and that is why they backdated a "resignation" by Lester Eber from EBWLC. Even now, Lester implicitly acknowledges that this resignation prevented him from engaging in privileged communications relating to EBWLC. Lester Aff. ¶ 6. And yet, because the Eber Defendants obfuscate the issue of which entity or person was being represented in any particular communication, they hope to drape the blanket of privilege over *all* the communications. This Court should not allow them to do so.

### III. A FAÇADE OF OUTRAGE AND INDIGNATION IN RESPONSE TO A STRAWMAN IS NO BASIS TO ACCUSE COUNSEL OF PRESENTING A "SANCTIONABLE" ARGUMENT.

At their most incredulous point, the Eber Defendants contend that our waiver argument concerning the Underberg Letter was potentially "sanctionable." This serious accusation is unsupported, but it is worth noting because it simultaneously illustrates a dangerous propensity for overstatement, a willingness to mischaracterize their own actions, a desire to elevate form over substance (when convenient), and a fundamental misapprehension of how privilege works.

Breaking it down, it seems that the Eber Defendants believe that they cannot

*possibly* have waived privilege by opining on the import of the Underberg Letter since they "<u>explicitly asserted</u> privilege" in the same letter. Eber Br. 15 (emphasis in original). But this is a textbook example of using privilege as a sword and a shield, since they simultaneously asserted that the document "demonstrates the absence of fraud…" ECF No. 99 at 2. The Eber brief attempts to downplay this affirmative assertion about the document's content as a mere "reference[]" to the document. Eber Br. 15. On the contrary, this was advocacy; it was an assertion about the document's contents *and* its importance—*and* it was made on the public docket, where it remains.

Not unlike Rudy Giuliani taking to the airwaves to claim that an audio recording exonerated the President, by characterizing the contents of the communication, they necessarily waived any claim of privilege over it. They wanted the Court and Plaintiffs to know that they think the document helps their defense, and like so many other things, that decision has consequences.

## CONCLUSION

The Court should grant Plaintiffs' Motion to Compel.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, NY 10007
Tel./Fax: (212) 257-2334
Brian@clintonbrook.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: August 27, 2018