STATE OF NEW YORK
SUPREME COURT        COUNTY OF MONROE

ALEXBAY, LLC,

                                    Plaintiff,                    **SUMMONS**

          -vs.-                                            **Index No.:**

EBER BROS. WINE & LIQUOR CORP.;                            2012-1919

SOUTHERN WINE & SPIRITS
OF AMERICA, INC.;

EBER BROS. WINE & LIQUOR METRO, INC.;
     and

JOHN DOES 1 – 10, being fictitious names
intended to designate other entities or persons
claiming any interest in Eber Bros. Wine &
Liquor, Inc.'s "OWNERSHIP INTEREST IN
EBER BROS. WINE & LIQUOR METRO,
INC.";

                                    Defendants.

*[stamp: 2012 FEB 21 PM 2:37  MONROE COUNTY CLERK  FILED]*

To the above-named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a
copy of your Answer on the Plaintiff's attorneys within twenty (20) days after service of this
Summons, exclusive of the day of service (or within 30 days after the service is complete if
this Summons is not personally delivered to you within the State of New York); and in case of
your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint.

Trial is to be held in the County of Monroe; the venue of this matter is based upon
Defendants' principal place of business.

DATED:  21 February 2012              **UNDERBERG & KESSLER LLP**
        Rochester, New York.          *Attorneys for Plaintiff Alexbay, LLC*

                                      *[signature]*

                                      William E. Brueckner and Michael J. Beyma
                                      300 Bausch & Lomb Place
                                      Rochester, New York  14604
                                      585.258.2800

                                                          KSH00070

O:\Microsoft\UKE\Eber\Brothers\uce foreclosure\Summons.docx

**STATE OF NEW YORK**
**SUPREME COURT**        **COUNTY OF MONROE**

ALEXBAY, LLC,

Plaintiff,                          Index No.:

-vs.-                                           $2012-1919$

EBER BROS. WINE & LIQUOR CORP.;

SOUTHERN WINE & SPIRITS
OF AMERICA, INC.;

EBER BROS. WINE & LIQUOR METRO, INC.;
and

JOHN DOES 1 – 10, being fictitious names
intended to designate other entities or persons
claiming any interest in Eber Bros. Wine &
Liquor, Inc.'s "OWNERSHIP INTEREST IN
EBER BROS. WINE & LIQUOR METRO,
INC.";

Defendants.

## COMPLAINT FOR
## DETERMINATION OF 'COMMERCIAL REASONABLENESS'
## OF ACCEPTANCE OF COLLATERAL
## UNDER §9-627 of UNIFORM COMMERCIAL CODE

**AS AND FOR ITS COMPLAINT** against the Defendants herein, Plaintiff ALEXBAY,

LLC, by its attorneys Underberg & Kessler LLP, alleges and states as follows:

### OVERVIEW:

1.      By this action, Plaintiff, the secured creditor of a borrower in default, seeks a

determination, as provided under Uniform Commercial Code §9-627, that the enforcement of

the creditor's security interest, by the creditor's acceptance of certain collateral in full

satisfaction of the underlying obligation, are "commercially reasonable" and in good faith.

## THE PARTIES and the COLLATERAL:

2.      Plaintiff Alexbay, LLC ("*Alexbay*"), is a limited liability company organized and existing under the laws of the State of Connecticut, with an address for the transaction of business at 30 Corporate Drive, North Haven, Connecticut  06473.  As of the date of this Complaint, Alexbay is the holder of a certain promissory note executed by Eber Bros. Wine & Liquor Corp. and all the associated rights to the collateral that secures repayment of the debt memorialized by that promissory note.

3.      Defendant Eber Bros. Wine & Liquor Corp. ("*Eber Bros.*") is a corporation organized and existing under the laws of the State of New York, with an address for the transaction of business at 95 Allens Creek Drive, Suite 10, Building 2, Rochester, New York 14618.

4.      Defendant Eber Bros. Wine & Liquor Metro, Inc. ("*Metro*") is a corporation organized and existing under the laws of the State of New York, with an address for the transaction of business at 95 Allens Creek Drive, Suite 10, Building 2, Rochester, New York 14618.  Metro is a wholly owned subsidiary of Eber Bros.: that is to say, Eber Bros. owns all of Metro's capital stock.  As its name suggests, Metro was formed to carry on business as a distributor of wine and liquor.

5.      Through a series of transactions defined in greater detail subsequently in this Complaint, Eber Bros. became indebted to Lester Eber in sums exceeding $3.2Million.  Under the terms of a contemporaneously executed security agreement, Eber Bros.' indebtedness to Lester Eber (the "*Original Secured Creditor*") was secured by a pledge of virtually all of Eber Bros.' assets, including (without limitation) Eber Bros.' ownership interest in Metro. The Original Secured Creditor's rights under the notes and security agreement were thereafter

---

EB-00017942

assigned by the Original Secured Creditor to Alexbay.  The capital stock of Metro, owned entirely by Eber Bros. and pledged to secure Eber Bros.' indebtedness and other obligations under the notes and security agreements, is the collateral that is the subject of this action (*"the Collateral"*).

6.      Upon information and belief, Southern Wine & Spirits of America, Inc. (*"Southern"*), is a corporation organized and existing under the laws of the State of Florida, with an address for the transaction of business at 166 N.W. 163rd Street, Miami, Florida, 33169.  Upon further information and belief, Southern may claim an interest as a secured creditor with respect to the Collateral, by virtue of a financing statement describing the Collateral:  that financing statement was filed with the New York State Secretary of State on or about on or about August 31, 2007.

7.      Metro is a co-obligor with respect to some or all of the Eber Bros.' obligations that are secured by the Collateral.

8.      "John Does 1 – 10" are unknown parties identified for the purpose of this action by fictitious names: those fictitious names being intended to designate any other entities or persons who may claim any interest in the Collateral.

### THE LOAN TRANSACTIONS:

#### A. The $576K Loan to Eber Bros.

9.      On or about October 1, 2002, the Original Secured Creditor loaned Eber Bros. $575,895.00.  The loan was evidenced by a promissory note, and was secured by a collateral security interest in "all of the assets of (Eber Bros.) in favor of (the Original Secured Creditor)."  Under the terms of the promissory note evidencing the indebtedness, all principal and interest due was to be paid in full no later than October 1, 2012.

*Alexbay, LLC. v. Eber Bros. Wine & Liquor Corp. et al.*
Index No.:                                  Complaint to Determine Commercial Reasonableness
                                            KSH00273 of 13

EB-00017943

10.     On or about March 13, 2006, Eber Bros. executed an "Amended and Restated Promissory Note" in the amount of $575,895.00, together with interest at an annual rate of nine percent. The note called for payment in full of the obligations to the Original Secured Creditor on or before March 13, 2016.

**B. The $1.5 Million Loan to Eber Bros.**

11.     On or about August 15, 2005, the Original Secured Creditor loaned Eber Bros. $1,503,750.00, and Eber Bros. executed a promissory note to memorialize the obligation to repay the loan. Shortly thereafter, on or about March 13, 2006, Eber Bros. executed an "Amended and Restated Promissory Note" payable to the Original Secured Creditor, and in that Amended and Restated Promissory Note agreed to repay the principal amount of the original loan, plus interest at an annual rate of nine percent.

12.     On or about February 11, 2011, Metro, Eber Bros. and the Original Secured Creditor entered into a "Debt Assumption Agreement" (*"the Debt Assumption Agreement"*) whereby Metro assumed all of Eber Bros.' obligations to the Original Secured Creditor under the March 13, 2006, Amended and Restated Promissory Note. At the time of Metro's assumption of those obligations, the remaining unpaid principal balance of the March 13, 2006, Amended and Restated Promissory Note was $1,434,710.68 plus accrued and unpaid interest. [A true and accurate copy of the Debt Assumption Agreement is attached to this Complaint as Exhibit A.]

13.     The Debt Assumption Agreement expressly provides:

> Each of (Eber Bros.), Metro and (Original Secured Creditor) agree that the unpaid principal balance of the (Eber Bros.) Loan is, as of the date hereof, One Million Four Hundred Thirty-Four Thousand Seven Hundred Ten and 68/100 Dollars ($1,434,710.68) plus accrued and unpaid interest. … **(Eber Bros.) hereby irrevocably assigns to Metro all of (Eber Bros.') obligations to pay principal, interest and**

EB-00017944

other obligations and liabilities in respect of the (Eber Bros.) Loan,
and Metro agrees to be bound by the terms of the (Eber Bros.)
Note as if it were the "Maker" thereunder and promises to pay the
obligations evidenced thereby in accordance with the terms
thereof. (Original Secured Creditor) hereby consents to such
assignment by (Eber Bros.) and assumption by Metro.

(Emphasis added.)

C.  **The $1,500,000 Line of Credit to Metro**.

14.    In October, 2009, the Original Secured Creditor agreed to lend to Metro, and

Metro promised to repay the Secured Creditor, an amount not to exceed $1.5 Million under a

revolving line of credit (**"the Line of Credit Note"**).  Repayment of any amounts borrowed

and applicable interest was to be paid in full on or before December 31, 2011.  [A true and

accurate copy of the Line of Credit Note is attached to this Complaint as Exhibit B.]

15.    The Line of Credit Note expressly provides:

FOR VALUE RECEIVED, EBER BROS. WINE & LIQUOR METRO,
INC., ("Maker") a New York corporation ... hereby promises to pay to
the Order of (the Secured Creditor) ... the principal sum of ONE
MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS
($1,500,000.00) (the "Maximum Principal Amount") or such lesser or
greater amount as may be outstanding hereunder. ... This Note
evidences a revolving line of credit.  Accordingly, amounts hereunder
may be borrowed, repaid and re-borrowed provided that at no time shall
Maker permit the aggregate principal amount of all advances made
under this Note to exceed the Maximum Principal Amount.

D.  **Eber Bros.' Secured Guaranty of Metro's Obligations**.

16.    On or about February 26, 2010, Eber Bros. agreed to guaranty the repayment

by Metro of all its obligations to the Original Secured Creditor, then existing or thereafter

incurred (**"the EB Guaranty"**).  [A true and accurate copy of the EB Guaranty is annexed to

this Complaint as Exhibit C.]

17.    The EB Guaranty defines the term Guarantor to mean Eber Bros., and the term

Lender to mean the Original Secured Creditor, and it expressly provides:

---

*Alexbay, LLC, v. Eber Bros. Wine & Liquor Corp. et al.*     Complaint to Determine Commercial Reasonableness
Index No.:                                                    KSH Page 7 of 13

EB-00017945

For valuable consideration, **Guarantor hereby unconditionally guarantees and promises to repay promptly to Lender,** or order, in lawful money of the United States, **any and all Indebtedness to Lender** when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter. This Guaranty is cumulative and does not supersede and other outstanding guaranties, and the liability of Guarantor under this Guaranty is exclusive of Guarantor's liability under any other guaranties signed by Guarantor. ... **"Borrower" shall mean Eber Bros Wine & Liquor Metro, Inc. ... "Indebtedness" shall mean any and all debts liabilities, and obligations of the Borrower and Guarantor to Lender ... now or hereafter existing.**

(Emphasis added.)

18.  The EB Guaranty expressly ran to the benefit of the Original Secured Creditor's endorsees, successors, and assigns.

19.  By the terms of a certain Security Agreement executed by the parties on or about February 26, 2010, Eber Bros.' obligations under the EB Guaranty were secured by a grant to the Original Secured Creditor of a security interest in substantially all of Eber Bros.' property.  The agreement was subsequently reiterated in an Amended and Restated Security Agreement executed by the parties on or about February 10, 2011 (*"the Security Agreement"*).  Specifically included within the grant of the security interest were Eber Bros.' membership interests in Metro. [A true and accurate copy of the Security Agreement is annexed to this Complaint as Exhibit D.]

20.  The Security Agreement defines the term "Parent" to mean Eber Bros.; defines the term "Metro" in the same manner as this Complaint; defines "Debtor" to include Eber Bros. and Metro; and defines "Secured Party" as the Original Secured Creditor.  The Security Agreement expressly provides:

**Debtor hereby assigns and grants to Secured Party a security interest in** the following described property now owned or hereafter acquired by Debtor ... All instruments, notes, chattel papers, documents, certificates of deposit, **securities and investment property of every**

*Alexbay, LLC, v. Eber Bros. Wine & Liquor Corp. et al.*     Complaint to Determine Commercial Reasonableness
Index No.:                                                   Page 6 of 13
KSH00876

EB-00017946

**type.** The Collateral shall include all liens, security agreements, leases and other contracts securing or otherwise relating to the foregoing. ... **The shares of common stock and preferred stock, or partnership, membership and other ownership interests, now or hereafter owned by Debtor, including, without limitation ...any ownership interests in Metro now or hereafter owned by Parent** ... .

(Emphasis added).

### E. The Default and the Assignment to Alexbay.

21.    Metro did not repay the sums due to the Original Secured Creditor as required under the Line of Credit Note, and is in default of its obligations under the Line of Credit Note. Metro did not repay the sums due to the Original Secured Creditor as required by the Debt Assumption Agreement, and is in default of its obligations under the Debt Assumption Agreement.

22.    Accordingly, as permitted under the terms of the EB Guaranty, the Original Secured Creditor has made demand for payment by Eber Bros. of the sums due from Metro. Despite demand duly made, Eber Bros. has failed to pay the Original Secured Creditor those sums.

23.    As a consequence of Eber Bros.' failure to pay the Original Secured Creditor the sums Metro owes the Original Secured Creditor, Eber Bros. is in default of its obligations under the EB Guaranty.

24.    On or about January 18, 2012, the Original Secured Creditor irrevocably granted, assigned and transferred all his right, title and interest in the Debt Assumption Agreement, the Line of Credit Note, and the Metro Security Agreement to Alexbay. [True and accurate copies of the assignments are collectively annexed to this Complaint as Exhibit E.]

*Alexbay, LLC. v. Eber Bros. Wine & Liquor Corp. et al.*
Index No.:                                                      Complaint to Determine Commercial Reasonableness
                                                                KSH Page 7 of 13

EB-00017947

## PROPOSED ACCEPTANCE OF COLLATERAL:

25.     Alexbay has proposed to accept Eber Bros.' stock in Metro in full satisfaction
of all Eber Bros. obligations to Alexbay, as assignee, under the EB Guaranty and the Security
Agreement.

26.     By notice dated January 18, 2012, and as authorized by UCC 9-620, Alexbay
notified Eber Bros. of its proposal to accept the Collateral in full satisfaction of Eber Bros.
obligation to Alexbay. [A true and accurate copy of Alexbay's notice to Eber Bros. is
annexed to this Complaint as Exhibit F.]

### THE AMOUNT OF THE INDEBTEDNESS and
### the VALUE OF THE COLLATERAL:

27.     As of December 31, 2011, Metro's indebtedness to the Original Secured
Creditor under the Debt Assumption Agreement was $1,951,874.26 (plus interest accruing at
9% per annum).

28.     As of December 31, 2011, Metro's indebtedness to the Original Secured
Creditor under the Line of Credit Note was $1,698,808.22 (plus interest accruing at 12 ½%
per annum).

29.     As a consequence of all the foregoing, Metro's indebtedness to Alexbay
currently exceeds $3.650 Million.  By virtue of the EB Guaranty, Eber Bros. obligation to
Alexbay also exceeds $3.650 Million.

30.     Metro does not presently operate and it conducts no business activity.  It has
not generated profit of any kind in several years.  Metro has no cash reserves other than those
required in the ordinary course of its business.  Metro has no tangible assets:  its only
intangible asset of any significant value, indeed its only valuable asset of any kind, is Metro's

_Alexbay, LLC. v. Eber Bros. Wine & Liquor Corp. et al._
Index No.:                                          Complaint to Determine Commercial Reasonableness
                                                    KSH0006388 of 13

EB-00017948

ownership of a partial interest in yet another company, Eber-Connecticut, LLC ("*EberConn*").

31.     EberConn is a limited liability company formed under the laws of the State of Delaware.

32.     Metro owns seventy-nine percent (79%) of the membership units in EberConn. Other owners of EberConn are Eder Goodman, LLC, which owns fifteen percent (15%) of the membership units in EberConn, and Polebridge Bowman, LLC ("*Polebridge Bowman*"), which owns six percent (6%) of the membership units of EberConn.

33.     Polebridge Bowman is a party unrelated to the Original Secured Creditor, to Eber Bros., to Metro, and/or to EberConn. Polebridge Bowman acquired its ownership interest in EberConn in May, 2010, in an arms' length transaction, and became a new member of EberConn by virtue of that acquisition. The membership units Polebridge Bowman acquired were sold to it by Metro.

34.     Under the terms of the operating agreement that governs EberConn's corporate affairs, existing members are provided a right of first refusal that permits existing members to acquire any membership units proposed for sale to a potential new member, on the same terms that are proposed for sale to the potential new member. By operation of that right of first refusal, before Polebridge Bowman could acquire its membership units from Metro, Eder-Goodman had to decline to purchase those membership units on the terms Polebridge Bowman proposed for the purchase.

35.     Polebridge Bowman acquired its ownership of six percent (6%) in EberConn in May 2010 for $350,000. Eder-Goodman consented to the sale of Metro's membership units at that price.

*Alexbay, LLC, v. Eber Bros. Wine & Liquor Corp. et al.*          Complaint to Determine Commercial Reasonableness
Index No.:                                                                    Page 9 of 13
                                                                              KSH00079

EB-00017949

36.    No other sale or purchase of any interest in EberConn has occurred since. Accordingly, Polebridge Bowman's acquisition of its ownership interest in EberConn represents the best evidence of the current value of ownership rights in EberConn:  it is the last time the free market has spoken with respect to the value of EberConn's membership units.

37.    As established by Polebridge Bowman's acquisition, each one percent of the membership units in EberConn was worth approximately $58,333 in May, 2010.[1] Accordingly, at that time, the value of all of EberConn's membership units was $5,833,300.

38.    Since the Polebridge Bowman acquisition, EberConn has lost more than $1.2 Million.  As a consequence, the value of all of EberConn's membership units was reduced to $4,633,300 by December 2011.

39.    Thus, as of December, 2011, Metro's ownership of 79% of the ownership units in EberConn has a value of approximately $3.660 Million.[2]  That ownership interest is Metro's only valuable asset, and effectively establishes the value of the Collateral.  The Collateral has a value of approximately $3.660 Million.

40.    Valuation of the Collateral at $3.660 Million does not apply any discount for lack of marketability, partial ownership, costs of sale or other applicable factors that might reduce the Collateral's value.  Moreover, because Metro's business as a wine and liquor distributor is highly regulated, requiring business owners to have proper licensing, there are significant barriers to entry to the ownership of Metro, and there are reasonable justifications for valuation of the Collateral at less than $3.660 Million.

---

[1]    Polebridge Bowman paid $350,000 for a six percent ownership interest.  $350,000 \div 6 = 58,333$.

[2]    $4,633,300 \times 0.79 = 3,660,307.00$.

*Alexbay, LLC, v. Eber Bros. Wine & Liquor Corp. et al.*
Index No.:

Complaint to Determine Commercial Reasonableness
Page 11 of 13

EB-00017950

41.     Therefore, by and through acceptance of the Collateral in full satisfaction of
Eber Bros. obligations to Alexbay, Alexbay will accept a value of approximately $3.660
Million in full satisfaction of an obligation of $3.650 Million, plus continually accruing
interest.

**THE PROCEDURES FOR ACCEPTING THE COLLATERAL:**

42.     As required under UCC §9-620, Alexbay has provided Eber Bros. notice of its
intent to accept the Collateral in full satisfaction of Eber Bros.' obligations under the EB
Guaranty and Security Agreement.

43.     Upon information and belief, Southern filed a financing statement with the
New York State Department of State on or about August 31, 2007, under File Number
200708310704958, by which it may claim an interest in the Collateral.  As required under
UCC §9-621(a), and by virtue of this action, Southern has been provided notice of Alexbay's
intention to accept the Collateral in full satisfaction of Eber Bros.' obligations under the EB
Guaranty and Security Agreement.

44.     The Original Secured Creditor's financing statement with respect to the
Collateral was filed on February 22, 2010.

45.     Upon information and belief, no other person holds any interest in the
Collateral subordinate to Alexbay's interest.

46.     By virtue of this action, Metro has been provided notice of Alexbay's intention
to accept the Collateral in full satisfaction of Eber Bros.' obligations under the EB Guaranty
and the Security Agreement.

*Alexbay, LLC. v. Eber Bros. Wine & Liquor Corp. et al.*
Index No.:

Complaint to Determine Commercial Reasonableness
KSH 00006 1 of 13

EB-00017951

47.     As a consequence of all the foregoing, Alexbay's acceptance of the Collateral in full satisfaction of Eber Bros.' obligations under the EB Guaranty and Security Agreement: (i) it is authorized by relevant provisions of the Uniform Commercial Code; (ii) it complies with all procedures required of the Uniform Commercial Code; and (iii) by its satisfaction in full of the obligations of Eber Bros under the EB Guaranty and Security Agreement, it gives fair and reasonable consideration for the Collateral.

48.     Accordingly, Alexbay's acceptance of the Collateral in full satisfaction of Eber Bros. obligations under the EB Guaranty and Security Agreement is "commercially reasonable" as the term is used in Section 9-627 of the Uniform Commercial Code.

### PROCEDURAL PREREQUSITES:

49.     Section 9-627(c) of the Uniform Commercial Code provides, in pertinent part:

A collection, enforcement, disposition, or acceptance is commercially reasonable if it has been approved: in a judicial proceeding ... .

50.     CPLR Section 3001 provides, in pertinent part:

Declaratory judgment. The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed.

51.     Alexbay requests that the acceptance of its collateral be "approved in a judicial proceeding." Its proposal to accept the Collateral presents a justiciable controversy among the parties to this action. The Court's determination of the "commercial reasonableness" of the proposed acceptance will determine the rights and other legal relations of the parties to that controversy.

52.     No previous request has been made for the relief requested in this action.

//

//

---

_Alexbay, LLC. v. Eber Bros. Wine & Liquor Corp. et al_.
Index No.:

Complaint to Determine Commercial Reasonableness
KSH Page 12 of 13

EB-00017952

//

//

**WHEREFORE, Plaintiff Alexbay LLC** requests that this Court determine, adjudge, and order, that Alexbay LLC's acceptance, as a secured creditor, of Eber Bros. Wine & Liquor Corporation's ownership interests in Eber Bros. Wine & Liquor Metro, LLC, (which ownership interests serve as collateral securing the obligations of Eber Bros. Wine & Liquor Corporation's obligations to Alexbay LLC) in full satisfaction of the secured obligations owed to Alexbay LLC, is "commercially reasonable," together with such other and further relief as the Court may deem just and reasonable.

DATED:   21 February 2012
         Rochester, New York.

**UNDERBERG & KESSLER LLP**
*Attorneys for Plaintiff Alexbay, LLC*

William E. Brueckner and Michael J. Beyma
300 Bausch & Lomb Place
Rochester, New York  14604
585.258.2800

*Alexbay, LLC, v. Eber Bros. Wine & Liquor Corp. et al.*
Index No.:

Complaint to Determine Commercial Reasonableness
KSH00083 of 13