# CLINTON BROOK & PEED
NEW YORK | NEW JERSEY | WASHINGTON DC

**BRIAN C. BROOK**
BRIAN@CLINTONBROOK.COM

100 CHURCH STREET
8TH FLOOR
NEW YORK, NY 10007
TEL: (212) 256-1957

October 30, 2018

**By ECF**

The Honorable Katherine H. Parker
United States Magistrate Judge, S.D.N.Y.
500 Pearl Street
New York, NY 10007

Re: *Daniel Kleeberg et al. v. Lester Eber et al.,* 1:16-cv-09517-LAK-KHP
    **Letter Motion Requesting Pre-Motion Conference to Disqualify Counsel**

Dear Judge Parker,

This firm represents the Plaintiffs in the above-named matter. As discussed during the conference call on October 16, 2018, I write to request permission to file a motion to disqualify Paul Keneally from representing any Defendants, and to disqualify his firm, Underberg & Kessler ("U&K"), from continuing to represent those entities that are the direct victims here. This extraordinary request is not made lightly, but only after careful deliberation in light of facts that have come to light only in the last few months, demonstrating that Mr. Keneally and his firm should not be permitted to continue in this case.

   **A. Counsel's conflict of interest in concurrently representing corporations and their officers in derivative claims is enhanced by their direct involvement in the misconduct, the corporations' impact on the case, and failure to follow ethical rules**

The derivative claims asserted by Plaintiffs *on behalf of* Eber Bros. & Co., Inc. (EB&C") and Eber Bros Wine & Liquor Corp. ("EBWLC") seek to recover the Connecticut business for EBWLC from Alexbay, and they seek damages from Lester and Wendy Eber, including punitive damages based on the seriousness of their wrongdoing. *See* July 6, 2017 Op. at 7, ECF No. 57 (finding the Complaint sufficiently stated basis for punitive damages, even against bank co-trustee). This presents a significant conflict of interest for U&K, which represents all of those parties concurrently. *See* R.P.C. 1.13 Comment [14] ("[I]f the [derivative] claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 governs who should represent the directors and the organization."); *see also Lewis v. Shaffer Stores Co.,* 218 F.Supp. 238, 239-40 (S.D.N.Y. 1963).

Despite the inherent conflict, Plaintiffs did not seek to disqualify counsel earlier in the case for several reasons. First, there was a serious question as to Plaintiffs' standing to seek disqualification because, when first-filed, Plaintiffs' claims were *doubly* derivative: Plaintiffs interests in EB&C were derived indirectly, from being Trust beneficiaries. Second, there was a question about how to pay for independent counsel, given that EB&C and EBWLC had been depleted of assets. Third, any "independence" was dubious so long as the company was controlled entirely by the Defendant

co-trustees. Fourth, we had no specific reason to question counsel's integrity—lawyers are frequently required to take actions that are detrimental to their clients as part of their duties as officers of the court. In other words, we could not say that counsel's conflict of interest would impair the integrity of discovery.[1]

Since then, we have learned many facts that have materially altered the analysis, showing that U&K is more conflicted than we knew, that this conflict is more important to the litigation than expected, and that U&K has repeatedly disregarded the ethics rules in conflict situations.

### 1. U&K's hidden role in the 2012 transaction has been slow to uncover

As the Court knows, the primary issue in this case is whether a fraudulent conveyance occurred when EBWLC transferred its shares in Eber Metro (which controlled Eber-Connecticut) to Alexbay in June 2012. Until recently, Plaintiffs' understanding of U&K's role was that it had represented Alexbay *only*, and that the only U&K lawyers involved in it at that time were Michael Beyma and William Brueckner. This understanding was incorrect.

The first hint that our understanding was wrong came in May 2018, when we saw a document suggesting that Mr. Keneally was involved soon after the fact. We promptly sought additional discovery. *See* Pre-Motion Conference Request at 3 & n.5, ECF No. 98 (noting that "counsel of record was himself copied on a November 2012 memo" that had neither been produced nor logged by the Eber Defendants, and that "[t]his may be a sign of a much more significant discovery or ethical problem"). At the May 30, 2018 conference, a schedule was set for Plaintiffs to try to get the additional discovery through motion practice. *See* May 30, 2018 Scheduling Order, ECF No. 103. The Court also set the parties on a path towards a September 5, 2018 settlement conference. *Id*. Shortly after the conference, the Eber Privilege Log was amended to add another 39 communications involving Mr. Keneally in 2011–12 that were being withheld—even without seeing these documents, we can reasonably infer that Mr. Keneally was heavily involved in the challenged transfer of Eber Metro.

### 2. Conduct concerning EB&C and EBWLC demonstrates material impairment

In response to our motion to compel, Defendants finally disclosed U&K's engagement agreements. These revealed—shockingly—that the only client to formally engage U&K before February 2017 was EBWLC—the entity that U&K sued on behalf of Alexbay in 2012. And it appears that EBWLC paid for the privilege. *See* 2d Mot. Compel Ex. N, ECF No. 136-14. Thus, astonishingly, it seems U&K represented multiple corporate clients—including Alexbay—without either formal engagements or conflict waivers.[2]

Even we were surprised by our discovery that Mr. Keneally was representing EBWLC while helping Lester take its sole remaining asset, including through litigation filed against EBWLC.

---

[1] Quite the opposite, we were initially impressed that U&K did not file a motion to dismiss, or even join in the meritless motion filed by CNB. This suggested that U&K was capable of objectively assessing the case and was not interested in delay tactics or needless motion practice.

[2] The fact that no waiver was signed is ultimately less troubling than Mr. Keneally's apparent failure to recognize that one was obviously necessary under the circumstances.

That he engaged in such conduct without adhering to any of the norms of the profession—including the mandatory written conflict waiver—is why we are considering going beyond disqualification, possibly asserting claims for malpractice or breach of fiduciary duty, assuming that the documents currently being withheld on privilege grounds support doing so.

Also unexpected is EBWLC's central role in this litigation.[3] Though a nominal defendant in these derivative claims, the adequacy of EBWLC's discovery responses—especially its assertions of privilege—is the central discovery dispute. EBWLC's counsel is responsible for making the initial cut of what documents are being produced, logged, or simply ignored. Put bluntly, however, U&K cannot be trusted to carry out its ethical duties with respect to the necessary discovery sought from EBWLC. *See generally* R.P.C. 3.4.[4]

As counsel for EBWLC, U&K is required to disclose evidence supporting Plaintiffs' claims of breach of fiduciary duties and fraud. But U&K also has a duty of loyalty to Wendy, Lester, and Alexbay. In addition, Mr. Keneally's conflict is worse than merely advancing the interests of some concurrent clients over others. His personal involvement in the fraudulent transfer means that he is also self-interested. A finding for EBWLC and against his other clients would impugn his action, and potentially result in malpractice liability to Alexbay or Lester.

### 3. No informed consent to concurrent representation has been provided

As demonstrated, there is a conflict of interest between EB&C and EBWLC, on one side, and Lester and Wendy Eber on the other. Per R.P.C. 1.7, this concurrent conflict required informed written consent. But U&K's engagement agreement with the Eber Defendants reveals that none has been obtained to date. *See* Dec. 13, 2016 Keneally Ltr. at 6, ECF No. 136-13 (2d Mot. Compel Ex. M) (boilerplate language: "we have found no apparent conflicts relative to the representation requested"). R.P.C. 1.13(d) requires the shareholders to provide such consent. Plaintiffs are now the majority shareholders in EB&C—they do not consent.[5]

### B. Paul Keneally Should be Disqualified Under the Attorney-Witness Rule

Paul Keneally, individually, should also be disqualified from representing the remaining Eber Defendants, because of his involvement as the primary lawyer involved in the 2012 fraudulent transfer. *See* R.P.C. 3.7. Mr. Keneally's name appears an astonishing 40 times on the Eber Privilege Log, and all of those entries are from 2011 to 2012—the time of the challenged transactions. By contrast, the other lawyers retained by Lester/Alexbay appear to have had far less involvement, including almost no written communications with Lester or Wendy Eber. Michael Beyma's name appears just three times; Bill Brueckner's name appears four times; and

---

[3] *See Scott v. New Drug Services, Inc.*, 1990 WL 135932, 16 Del. J. Corp. L. 1561 (Del. Ch. 1990) (It does not appear at this time that the corporation will be required or it will be in its interest to take an active role in this litigation. Therefore, I will decline to grant the disqualification sought on this ground at this time.").

[4] As noted in the motion to compel, the Privilege Log appears to contain numerous inaccurate descriptions. *See, e.g.*, ECF No. 135 at 5 n.1, 7, 21. And based on the documents that were produced after the first motion, it is clear that those documents were described in a manner that was, at best, misleading. *See, e.g.*, ECF No. 135-17 (Ex. Q).

[5] EB&C, in turn, is the majority shareholder in EBWLC. Unfortunately, as will be explained by separate pre-motion conference letter, U&K and Defendants have constituted a legally defective board and impeded Plaintiffs' efforts to exercise their basic legal rights as shareholders in EB&C to elect directors.

David Belt's name appears five times—though only three times during the relevant time period. For both Beyma and Brueckner's communications, Mr. Keneally was also involved in each of them.

Due to the continued withholding of documents concerning the specifics of Mr. Keneally's role in 2012, we are not yet in a position to say that U&K as a whole should be disqualified, as that would require a finding that his testimony is likely to be prejudicial to one or more of his clients.

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　Brian C. Brook

cc:　　Robert B. Calihan, Esq.
　　　　Paul F. Keneally, Esq.
　　　　Daniel W. O'Brien, Jr., Esq.