# CLINTON BROOK & PEED
— NEW YORK | NEW JERSEY | WASHINGTON DC —

**BRIAN C. BROOK**
BRIAN@CLINTONBROOK.COM

100 CHURCH STREET
8TH FLOOR
NEW YORK, NY 10007
TEL: (212) 256-1957

October 31, 2018

**By ECF**

The Honorable Katherine H. Parker
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Daniel Kleeberg et al. v. Lester Eber et al.,* 1:16-cv-09517-LAK-KHP
      **Pre-Motion Conference Request Concerning Corporate Governance Matters**

Dear Judge Parker,

This firm represents the Plaintiffs in the above-named matter. I write to request that certain corporate governance matters be addressed at the upcoming status conference, scheduled for November 7, 2018.

**Summary:** Defendants Lester and Wendy Eber, and their counsel, have been engaging in a course of conduct to deny Plaintiffs their rights as shareholders in Eber Bros. & Co., Inc. ("EB&C"). First, they claimed to have lost the corporate stock register, and used that as excuse for not issuing new stock certificates to Plaintiffs following the dissolution of the Allen Eber Trust (the "Trust") last year. Second, they have repeatedly made up excuses to avoid holding the mandatory shareholder meeting for purposes of electing directors. Now, just within the last 24 hours, Lester informed us that he intends to *take* Plaintiffs' shares for himself through some extrajudicial process.

Defendants' latest threatened action must be stopped, as it would eliminate Plaintiffs' standing to pursue the derivative claims in this case on behalf of EB&C and its subsidiary, Eber Bros. Wine & Liquor Corp. ("EBWLC"). Such standing is a fundamental prerequisite both to Plaintiffs' substantive relief and to their motion to disqualify counsel—this Court's intervention is required. The Court has jurisdiction over all parties and the governance dispute in general, and so even though these matters could be addressed to New York State courts, they should be addressed by this Court, and promptly, to avoid substantially impeding the continued progress of this case.

Specifically, Plaintiffs ask this Court to (1) compel Wendy, as Secretary of EB&C, to record Plaintiffs' shares in accordance with the agreed-upon distribution of Trust assets; (2) compel EB&C to hold a shareholder meeting to elect directors; and (3) order Wendy and Lester to cease and desist from all other and further actions to affect the parties' ownership interests in or corporate governance powers over EB&C and EBWLC.

### A. When the Trust was dissolved, Plaintiffs and Lester were assigned EB&C shares

Plaintiffs held two-thirds of the beneficial interest in the Trust that controlled the Eber Bros. wine and liquor distributorship business. Lester held the remaining one-third interest. After this case was filed, former co-trustee Canandaigua National Bank ("CNB") petitioned the New York Surrogate's Court for Monroe County to dissolve the Trust and distribute its assets, including the Trusts' shares in EB&C.

Neither Plaintiffs nor Lester opposed dissolution of the Trust. Lester, as co-trustee, participated in the proceedings. And after a Decree for dissolution was issued by the court and CNB sent a final accounting showing the intended distribution of assets proposed by CNB, Lester did not object.

When CNB attempted to distribute the Trust's 1850 shares of EB&C Class A voting stock to Plaintiffs and Lester, Wendy claimed that she could not locate EB&C's stock book. *See* Ex. A (Letter dated Oct. 11, 2017 from CNB's counsel to counsel for Plaintiffs and Lester). Nonetheless, CNB executed Stock Powers and advised counsel for Plaintiffs and Lester that it did so. *Id*. CNB reiterated its request for information on where to send the executed Stock Powers and original stock certificates. No one on behalf of EB&C responded to CNB. Nor did Lester otherwise object.

### B. The Ebers have denied Plaintiffs' shareholder rights, including by asserting that Plaintiffs are not shareholders

Notwithstanding the Ebers' refusal to accept the validly executed Stock Powers, Plaintiffs have attempted to exercise their shareholder rights, including the right to elect directors. EB&C's bylaws require an annual shareholder meeting every August for the election of directors. Ex. B, section I(1). EB&C has not held this annual meeting in years, and certainly not in August 2018.

In the absence of the regular meeting being called, an in accordance with Section (I)(1) of the by-laws, on October 10, 2018, Audrey Hays requested a special shareholders' meeting be called by the Secretary, Wendy Eber.[1] *See* Ex. C. Notably, upon receiving that request, the Secretary, Wendy, was required to call a meeting. Unfortunately, Wendy refused to do so. Ex. D.

Among her excuses, Wendy asserted that "Ms. Hays is not a shareholder of record of Eber Bros." *Id*. This assertion is remarkable because her excuse for not accepting the Stock Powers executed by CNB was that the stock book was missing. If Wendy can tell who is a shareholder of record, then apparently the stock book has been "found." But rather than tell CNB and allow it to deliver the Stock Powers, the Ebers and their counsel have tried to prevent that entirely.

Yesterday, Lester sent CNB a "Notice" purporting to exercise a purchase right pursuant to EB&C's bylaws. Ex. E. The bylaw referenced requires a shareholder seeking to purchase shares to respond within five days of learning about the proposed transfer. Ex. B § XII(1). Lester's "Notice" was sent more than a year after he was advised that the Stock Powers were already executed. Thus, the "Notice" is, at best, incredibly untimely, and certainly inequitable.

---

[1] Because Audrey Hays owns over one-third of the outstanding voting shares (706 of 1850), Audrey Hays was within her power as a shareholder to request a special shareholders' meeting. Ex. B § I(1).

### C. This Court should intervene to protect Plaintiffs' shareholder rights, including their standing in this case

As the facts illustrate, Wendy Eber has improperly refused to comply with her basic corporate duties as Secretary of EB&C, including accepting and recording the executed Stock Powers, issuing new stock certificates, and calling shareholder meetings for the election of directors.

The consequences of Wendy's dereliction are that EB&C's management and its ownership are in a state of anarchy, completely unsettled, and her father, Lester, is trying to use the mayhem as a cover to stage a coup and usurp Plaintiffs' controlling interest in EB&C for himself.

Based on some comments by the Court during the last teleconference, we are concerned that the Ebers's *ex parte* correspondence to the Court attacked Plaintiffs for seeking to exercise their shareholder rights and vote in their own directors for EB&C—as if *Plaintiffs* were doing something wrong. Plaintiffs' actions to assert control of EB&C were not only clearly within their rights, but also a necessary step in order to capitalize on the equitable relief requested in the Second Amended Complaint.[2] By contrast, Defendants' actions to entrench themselves are illegal under the plain terms of the bylaws (and common sense).

Since Wendy will not act for EB&C as she should, Plaintiffs simply ask the Court to require EB&C to take the basic actions necessary to respect shareholder voting rights: for Plaintiffs' shares to be recognized and recorded, and for the annual shareholder meeting to be held promptly.

In addition, given all the mayhem created with respect to these corporate entities that defense counsel described as "defunct," we respectfully request that the Court issue a standing restraining order (a) preventing the Ebers from taking any further actions on behalf of either EB&C or EBWLC unless they receive permission from this Court or Plaintiffs, and (b) requiring EBWLC to hold its annual shareholder meeting (which is also long overdue) between 30 and 60 days after the EB&C shareholder meeting is held. These prophylactic measures should help avoid these unfortunate distractions from continuing to consume either this Court's or the parties' counsel's scarce time and resources.

We thank the Court for its attention to this matter.

                                                                  Respectfully submitted,

                                                                  Brian C. Brook

(enclosures)

---

[2] In the original Complaint, Plaintiffs sought appointment of a new trustee, who would then have control over the corporate entities. *See* Compl. at 23, ECF No. 1. After the Trust was dissolved, Plaintiffs removed that request. *See* SAC at 33–34, ECF No. 88. They did so because, based on the Surrogate Court proceedings, Plaintiffs themselves would have direct control through their majority shares in EB&C. There would be little point in recovering corporate assets if Lester and Wendy were left in charge to engage in more transactions to entrench themselves and frustrate Plaintiffs' rights as majority owners.

cc: Paul F. Keneally, Esq.
Robert B. Calihan, Esq.
Dan O'Brien, Esq. (counsel for Canandaigua National Bank, *by email*)