
PAUL F. KENEALLY, PARTNER
(585) 258-2882
pkeneally@underbergkessler.com

November 5, 2018

**VIA ECF**

Hon. Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *Daniel Kleeberg, Lisa Stein and Audrey Hays v. Lester Eber, et al.*
            Civ. Action No.: 16-cv-09517-LAK-KHP

Dear Magistrate Parker:

As you know, this Firm represents the Eber Defendants in the above-referenced matter. Please allow this letter to serve as a response to the October 30, 2018 letter of Brian C. Brook, Esq., counsel for plaintiffs, requesting permission to file a motion to disqualify both myself, as well as Underberg & Kessler LLP ("U&K") as a whole, from representing the Eber Defendants.

1. **Mr. Brook violates the Court's September 13, 2018 Order and the document the Court ordered clawed-back for attorney-client privilege should be stricken from the Docket**

Mr. Brook blatantly disregards the Court's September 13, 2018 Order precluding use of a November 2012 attorney-client privileged document regarding the Article 9 proceeding (ECF No. 98). Mr. Brook's use of this document, which has been clawed-back as an attorney-client communication, is consistent with his pattern of objectionable behavior in this lawsuit. Accordingly, please accept this letter as a request to strike this privileged document from the Docket (again).

2. **Mr. Brook's attempt to disqualify U&K is tactical and based entirely on erroneous conjecture.**

Mr. Brook's letter is replete with inaccurate statements and pure supposition. However, on page 2 of his letter he recognizes his clients' principal argument in this litigation when he writes "the primary issue in this case is whether a fraudulent conveyance occurred when EBWLC transferred its shares in Eber Metro to Alexbay in June 2012."



Despite this recognition, he has departed from focusing on the legal allegations made by his clients, in favor of making spurious allegations of misconduct against both myself and U&K. This is a purely tactical strategy to try and force the Eber Defendants to expend extensive funds in obtaining new counsel at this late stage of the litigation. Such "sharp" practice is almost universally frowned upon by courts. *See Goodwine v. Lee*, 2014 U.S. Dist. LEXIS 124414 (S.D.N.Y. 2014)["Because motions to disqualify counsel are often interposed for tactical reasons, they are subject to a high standard of proof…Mere speculation will not suffice"].

If Mr. Brook's actions are countenanced, the Eber Defendants will be highly prejudiced, and be forced to incur substantial legal costs while new counsel gets up to speed on the case – mere weeks before depositions are proposed to commence. Where, as here, shareholders delay in seeking disqualification of Defendants' counsel due to a conflict, New York courts deny the requested relief. *Dukas v. Davis Aircraft Products Co. Inc.*, 123 A.D.2d 304, (App. Div. 2d 1986) (reversing trial court and denying Plaintiffs' motion due to the shareholders' "inordinate delay" of approximately eighteen months after the action was commenced).

### 3. U&K did not represent EBWLC in the Article 9 action.

Mr. Brook contends that his clients have asserted a derivative claim on behalf of Eber Bros. & Co. and Eber Bros. Wine & Liquor Corp. ("EBWLC") and that this presents a conflict of interest for U&K. However, the citation to comment 14 of Rules of Professional Conduct ("RPC") 1.1(3) states that a conflict "may" arise in such a situation. At the time of the 2012 Article 9 action at issue, U&K explicitly declined to represent EBWLC because of the conflict between EBWLC and Lester Eber and Alexbay. Rather, EBWLC was represented by Marino Fernandez, Esq. Mr. Brook's allegation that either U&K or I were surreptitiously representing EBWLC in connection with the Article 9 proceeding is baseless and wholly unsupported by the facts.

It is notable that Mr. Brook recognizes in his letter that plaintiffs' standing to seek disqualification is questionable at best. Despite this recognition, Mr. Brook freely levies *ad hominem* attacks on my integrity, and the integrity of U&K. Mr. Brook is essentially substituting vitriol for actual evidence of a conflict.

### 4. I played no substantive role in the Article 9 proceeding.

Put simply, Mr. Brook misunderstands (and misrepresents) my role in the 2012 proceeding at issue. Mr. Brook has repeatedly been advised that the attorneys at U&K handling that matter were Michael Beyma, Esq. and William Brueckner, Esq., experienced bankruptcy and creditor's rights attorneys. I was kept generally apprised of the representation given my relationship with the Eber family, but I played no substantive role in drafting the petition or prosecuting the action.



It is freely acknowledged that both I and other attorneys at U&K have represented the various Eber Defendants in a wide variety of matters over the years. However, I did not play any substantive role in the Article 9 proceeding. Mr. Brook's representation to the Court that he can "reasonably infer that Mr. Keneally was heavily involved in the challenged transfer of Eber Metro," is both untrue and inappropriate speculation not supported by any evidence.

### 5. Mr. Brook's letter concocts a conflict where none existed.

Similarly, Mr. Brook expresses shock that an engagement agreement exists between U&K and EBWLC dated May 20, 2011. Once again, it is not disputed that U&K has represented EBWLC at various times. However, U&K did not represent EBWLC in connection with the 2012 proceeding. Further, despite Mr. Brook's "shock," the services performed by U&K for the Eber defendants were of the same nature as the services previously rendered to the various Eber entities. *See* 22 N.Y.C.R.R. 1215.1.

Aside from Mr. Brook's blatantly tactical broadside to try and disqualify U&K, no individual or entity involved in the 2012 proceeding ever raised any issue of a conflict. Mr. Brook and his clients are obviously able to challenge the reasonableness or fairness of the transaction, but his disqualification scheme distracts from the real issues in this case, and is a waste of judicial time and resources.

### 6. Pursuant to Rule 3.7, I should not be disqualified.

Finally, Mr. Brook also seeks to disqualify me based upon the attorney witness rule. Once again, he relies upon the mere fact that my name appears at various times on the privilege log produced by the Eber Defendants. Mr. Brook incorrectly posits that because Michael Beyma and William Brueckner's names appear less often in the privilege log, I must have been heavily involved in the 2012 proceeding. Most of the entries on the privilege log showing my name were merely correspondence on which I was copied as the principal client contact.

Further, even if it is determined that I may be a necessary witness, my testimony would relate to an uncontested issue, as permitted by Rule 3.7(a)(1). While I had no role in drafting or prosecuting the Article 9 Petition, at the end of the day the nature and purpose of the Article 9 proceeding speaks for itself – and that would be the crux of my testimony.

Further, as alluded to above, pursuant to Rule 3.7(a)(3), a disqualification of me or U&K would work substantial hardship on the Eber Defendants. U&K has represented the Eber Defendants for many years, and has spent a significant amount of time in defending the present case. If one or more of the Eber Defendants is forced to retain new counsel, the time and legal costs for such counsel to get up to speed – especially with depositions starting literally in a matter of weeks – would be enormous. Again, this is the true motivation behind Mr. Brook's threatened disqualification motion. Mr. Brook apparently believes that forcing the Eber Defendants to incur



hundreds of thousands of dollars in additional and unnecessary legal fees will strengthen plaintiffs' leverage in any settlement negotiations.

    The Eber Defendants are entitled to counsel of their own choosing. Mr. Brook's various objections to discovery responses can certainly be dealt with by the Court without entertaining a disqualification motion intended as tactical leverage. Mr. Brook should heed his own advice and remember that the issue his clients have raised is whether the challenged transaction was fair and reasonable.

    I look forward to discussing the matter with the Court on November 7th.

Respectfully submitted,

Paul F. Keneally

PFK:ar

cc:    Daryoush Behbood, Esq. *(via ECF)*
        Robert Calihan, Esq. *(via ECF)*
        Michael J. Adams, Esq. *(via ECF)*