

underberg & kessler LLP

PAUL F. KENEALLY, PARTNER
(585) 258-2882
pkeneally@underbergkessler.com

November 5, 2018

**VIA ECF**

Hon. Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:   *Daniel Kleeberg, Lisa Stein and Audrey Hays v. Lester Eber, et al.*
         Civ. Action No.: 16-cv-09517-LAK-KHP

Dear Magistrate Parker:

As you know, this Firm represents the Eber Defendants in the above-referenced matter. Please allow this letter to serve as a response to the October 31, 2018 letter of Brian C. Brook, Esq., counsel for plaintiffs, requesting that the Court address corporate governance matters at the upcoming status conference.

This is yet another inaccurate and hyperbolic attempt by Plaintiffs to exercise powers and interests they do not have, and to ask the Court to make determinations on issues which are not before it.

It is not true that the corporate stock register was "lost." The register is maintained by the corporate secretary, Wendy Eber, who is solely responsible for registering valid transfers of stock in it. Neither the Allen Eber Trust (the "Trust") nor CNB, as one of its trustees, has any responsibility or role in registering stock transfers. The corporate secretary never told CNB that the register was "lost". In any event, its request for the stock register is irrelevant.

According to UCC 8-207 Eber Bros. may treat a registered holder of its shares as the person exclusively entitled to vote, receive notifications and otherwise exercise all the rights and powers of an owner before due presentment for registration of transfer of one of its shares. Due presentment of the original stock certificates and stock powers duly signed by the Trust for the purported transfers to Plaintiffs has never been made to the Eber Bros. corporate secretary. The copies of stock powers purporting to transfer shares to Plaintiffs were not signed by a majority of the trustees of the Trust. The purported stock transfers of Eber Bros. shares to Plaintiffs were never registered.



Also, the purported October 2, 2017 transfers from the Trust to Plaintiffs were invalid because they did not comply with the Eber Bros. by-laws. A copy of the by-laws is attached as Exhibit A. Pursuant to Article XII of the by-laws, "A shareholder shall not transfer, sell or assign any shares of the corporation's stock without first personally delivering to the president or secretary written notice of a proposed transfer at least five (5) days before the effective date of transfer…"(emphasis added). Further, the by-laws provide that "No transfer of any stock shall be valid until such notice shall be given and the other shareholders have the opportunity to purchase the same as aforesaid." Here, notice of the Trust's purported October 2, 2017 transfer of shares to Plaintiffs was never personally delivered to the president or secretary of Eber Bros. as required by the plain language of the by-laws.

The October 11, 2017 letter from CNB's counsel to James Vazzana, Esq. does not qualify as sufficient notice under Article XII of Eber Bros.'s by-laws for two reasons. First, it was just mailed to Mr. Vazzana, who had been serving solely as Lester Eber's personal counsel as a trustee of the Trust and was not representing Eber Bros. at all. This fact is not, and cannot, be disputed by Plaintiffs.

Second, the October 11, 2017 letter sent to Mr. Vazzana was different from a similar letter from CNB's counsel dated October 11, 2017, and apparently sent to Mr. Brook. Copies of both letters are attached as Exhibit B. The letter sent to Mr. Vazzana had attached to it only stock certificates and stock powers for transfers of shares from the Trust to Lester Eber. It did NOT have attached to it any stock certificates or stock powers for purported transfers of the Trust's shares to Plaintiffs. The Eber Bros. corporate secretary had no obligation to register the purported transfer of shares from the Trust to Plaintiffs because neither she nor Lester Eber received the relevant stock certificates or executed stock powers for the purported October 2, 2017 transfers to Plaintiffs before October 27, 2018, if at all. On October 27, our office forwarded a copy of Mr. Brook's email correspondence dated October 26, 2018 to Wendy and Lester Eber. Mr. Brook's email included a copy of Plaintiffs' version of the October 11, 2017 letter from CNB. This is the first time the president and secretary of Eber Bros. ever saw Plaintiffs' stock certificates and stock powers.

Properly executing a stock transfer and making due presentment to the corporate secretary for registration of transfer is the Trust's and the Plaintiffs' responsibility, not the responsibility of the corporate secretary.

Even if Wendy and Lester Eber's email receipt of Plaintiffs' version of the October 11, 2017 CNB letter on October 27, 2018, were to constitute sufficient notice pursuant to Article XII of the by-laws, Lester Eber's right to purchase from the Trust the shares purported to be transferred to the Plaintiffs within the five day window provided in the by-laws was properly exercised. On October 30, 2018, Lester Eber gave written notice to the Trust of his intent to exercise his call right and purchase the shares the Trust proposed to transfer to Plaintiffs. Lester Eber's exercise of his



rights as a shareholder under the terms of the by-laws is not prohibited just because it hinders Plaintiffs' plans to wrest control of Eber Bros.

As previously noted, the corporate secretary determined that Audrey Hays' October 10, 2018 request to call a special shareholders meeting of Eber Bros. was deficient and could not serve as a valid request for a special meeting. As noted above, (a) Ms. Hays is not a shareholder of record and does not hold the required one third of the outstanding Eber Bros. shares; and (b) the purposes of the requested special meeting cited by Ms. Hays are, in each case, overly vague and do not specifically describe what shareholder action is intended to be proposed at a special meeting.

Properly requesting a special shareholder meeting is the responsibility of the requesting party, not the responsibility of the corporate secretary of Eber Bros.

To summarize, Plaintiffs' requests to the Court should be denied in full because:

(1)     the UCC and Eber Bros.'s by-laws govern the requirements for validly transferring shares and making due presentment to Eber Bros. for registration of such a transfer, but the Trust and the Plaintiffs did not follow those requirements;

(2)     the version of the October 11, 2017 CNB letter sent to Mr Vazzana does not constitute due presentment under UCC 8-207 or proper notice pursuant to Article XII of the by-laws since it does not have the stock certificates and stock powers for the purported transfers to Plaintiffs attached to it;

(3)     in the alternative, if the October 26, 2018 forwarding of Plaintiffs' version of the October 11, 2017 CNB letter regarding the purported transfers to Plaintiffs was somehow sufficient, Lester Eber validly exercised his call right within five days under the by-laws;

(4)     Ms. Hays' request for a special shareholders meeting was deficient for a number of reasons;

(5)     the corporate governance issues alleged by Plaintiffs are not before this Court under the current causes of action; and

(6)     an annual meeting for Eber Bros. Wine and Liquor Corporation and Eber Bros. Wine & Liquor Metro, Inc. took place on October 31, 2018, at which Lester Eber and Wendy Eber were elected directors until their successors are duly elected and qualified, so Plaintiffs' request on this point is moot.



I look forward to discussing the matter with the Court on November 7th.

Respectfully submitted,

Paul F. Keneally

PFK:ar

cc:     Daryoush Behbood, Esq. *(w/enc. via ECF)*
        Robert Calihan, Esq. *(w/enc. via ECF)*
        Michael J. Adams, Esq. *(w/enc. via ECF)*

# EXHIBIT

# "A"

# BY-LAWS

## OF

## EBER BROS. & CO., INC.

### ARTICLE I.  SHAREHOLDERS

### 1.  MEETINGS

The annual meeting of the shareholders shall be held during the month of August during each calendar year upon a day fixed by the Board of Directors for the election of directors and for the transaction of any other business which may properly come before the meeting.  Annual meetings shall be held at the office of the corporation, or at the office of the attorneys for the corporation, or at such other place, within or without the State of New York, as may be set by the Board of Directors.  Special meetings may be called at any time by any member of the Board of Directors or by the President, and shall be called by the Secretary at the written request of shareholders owning at least one-third of the outstanding shares of the corporation.  Such request shall state the purpose or purposes of the proposed meeting.

### 2.  NOTICE OF MEETING

Written notice of every meeting shall be delivered personally or mailed to each shareholder at his last known address.  Notice of every meeting shall state the place, date and hour of the meeting, and shall be mailed not less than ten days, nor more than fifty days, before the date of the meeting.  Notice of any special meeting shall state the purpose for which it was called.

### 3.  WAIVER OF NOTICE

Notice of meeting need not be given to any shareholder who submits a waiver of notice, either before or after the meeting.  The attendance of any shareholder at a meeting shall constitute a waiver by him of notice of the meeting unless, prior to the conclusion of the meeting, he protests the lack of such notice.

### 4.  QUORUM

The holders of a majority of the shares entitled to vote at meetings shall constitute a quorum for the transaction of any business.  Whenever a quorum is present, it shall not be broken by the subsequent withdrawal of any shareholders.  The shareholders present may adjourn any meeting despite the absence of a quorum from time to time until a quorum is present.

5. VOTING

Every shareholder of record shall be entitled to one vote for each share standing in his name on the record of shareholders. Except as otherwise provided by law, the vote of the majority of the votes cast by the shareholders present at the meeting shall be the act of the shareholders. Directors shall be elected by a plurality of the votes cast by the shareholders present at the meeting.

6. PROXIES

Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent without a meeting may authorize another person or persons to act for him by proxy. Every proxy must be in writing and signed by the shareholder or his attorney-in-fact. No proxy shall be valid after the expiration of eleven months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable at the pleasure of the shareholder executing it, except as otherwise provided by law.

7. WRITTEN CONSENT OF SHAREHOLDERS WITHOUT A MEETING

Any shareholder action permitted to be taken by vote may be taken without a meeting on written consent, setting forth the action so taken, and signed by the holders of all the outstanding shares entitled to vote thereon.

8. AGREEMENTS AS TO VOTING

An agreement between two or more shareholders, if in writing and signed by the parties, may provide that in exercising any voting rights the shares held by them shall be voted as provided in such agreement.

## ARTICLE II. DIRECTORS

1. AUTHORITY AND NUMBER

The business of the corporation shall be managed by its Board of Directors, each of whom shall be at least twenty-one years of age. The number of directors shall be at least three, who need not be shareholders, except that where all the shares of the corporation are owned beneficially and of record by less than three shareholders, the number of directors may be less than three but shall at least equal the number of shareholders.

2. ELECTION AND TERM

At the annual meeting of shareholders, the directors shall be elected to hold office until their successors have been elected. Subject to the provisions of section 706 of the New York Business Corporation Law, any director may be removed with or without cause by

2

vote of a majority of the board of directors called for such purpose. Vacancies occurring in the Board of Directors shall be filled by the shareholders.

    3.    VACANCIES

        a.    Newly created directorships resulting from an increase in the number of directors and vacancies occurring in the board for any reason may be filled by vote of the board. If the number of the directors then in office is less than a quorum, such newly created directorships and vacancies may be filled by vote of a majority of the directors then in office.

        b.    The board may fill vacancies occurring in the board by reason of the removal of directors without cause.

        c.    A director elected to fill a vacancy shall hold office until the next meeting of shareholders at which the election of directors is the regular order of business, and until his successor has been elected and qualified.

    4.    COMMITTEES OF THE BOARD

    The board of directors, by resolution adopted by a majority of the entire board, may designate from among its members an executive committee and other committees, each consisting of three or more directors, and each of which, to the extent provided in such resolution, shall have all the authority of the board, except as to the following matters:

        a.    The submission to shareholders of any action that needs shareholders' approval under the Business Corporation Law of the State of New York.

        b.    The filling of vacancies in the board of directors or in any committee.

        c.    The fixing of compensation of any director for serving on the board or on any committee.

        d.    The amendment or repeal of the by-laws, or the adoption of new by-laws.

        e.    The amendment or repeal of any resolution of the board which by its terms shall not be so amendable or repealable.

    The board may designate one or more directors as alternate members of any such committee, who may replace any absent member or members at any meeting of such committee. Each such committee shall serve at the pleasure of the board of directors.

5. MEETINGS

The organizational meeting of the Board shall be held immediately after the annual meeting of the shareholders. Special meetings of the Board may be called at any time by the President or by any member of the Board, and shall be held at the office of the corporation or at the office of the attorneys for the corporation, or at such other place, within or without the State of New York, as may be set by the Board of Directors. Any member of the Board may attend and participate in a meeting of the Board or a Board committee by means of a conference telephoned or similar communications equipment allowing all persons participating in the meeting to hear each other simultaneously. Participation by such means shall constitute presence in person at such a meeting.

6. NOTICE OF MEETING

Written notice of any meeting shall be either delivered personally, mailed or telegraphed to each director and shall state the place, date and hour of the meeting. Such notice shall be made at least 48 hours before the date of any meeting.

7. WAIVER OF NOTICE

Notice of meetings needs not be given to any director who submits a signed waiver of notice, whether before or after the meeting, or who attends the meeting without protesting prior thereto, or at its commencement, the lack of notice to him.

8. QUORUM

A majority of the entire Board shall constitute a quorum.

9. VOTING

Except as otherwise provided by law, the vote of the majority of the directors present shall be the act of the Board.

10. ACTION WITHOUT A MEETING

Any director action permitted to be taken by vote may be taken without a meeting on written consent, setting forth the action to be taken and signed by all the directors of the corporation.

11. INTERESTED PARTIES

    a. No contract or other transaction between the corporation and one or more of its directors, or between the corporation and any other corporation, firm, association or other entity in which one or more of its directors are directors or officers, or are financially interested, shall be either void or voidable for this reason alone, or by reason alone that

4

such director or directors are present at the meeting of the Board of Directors which authorizes such contract or transaction, or that his or their votes are counted for such purposes:

(1) If the material facts as to such director's interest in such contract or transaction and as to any such common directorship, officership, or financial interest are disclosed in good faith or known to the board or committee, and the board or committee, and the board or committee approves such contract or transaction by a vote sufficient for such purpose without counting the vote of such interested director or, if the votes of the disinterested directors are insufficient to constitute an act of the board as defined in section 708 of the Business Corporation Law (Action by the board), by unanimous vote of the disinterested directors; or

(2) If the material facts as to such director's interest in such contract or transaction and as to any such common directorship, officership or financial interest are disclosed in good faith or known to the shareholders entitled to vote thereon, and such contract or transaction is approved by vote of such shareholders.

b. If such good faith disclosure of the material facts as to the director's interest in the contract or transaction and as to any such common directorship, officership or financial interest is made to the directors or shareholders, or known to the board or committee or shareholders approving such contract or transaction, as provided in paragraph (a) above, the contract for transaction may not be avoided by the corporation for the reasons set forth in said paragraph (a). If there was no such disclosure or knowledge, or if the vote of such interested director was necessary for the approval of such contract or transaction at a meeting of the board or committee at which it was approved, the corporation may avoid the contract or transaction unless the party or parties thereto shall establish affirmatively that the contract or transaction was fair and reasonable as to the corporation at the time it was approved by the board, a committee or the shareholders.

## 12. COMPENSATION

The Board of Directors shall have authority to fix the compensation of directors for services in any capacity.

## 13. LOANS TO DIRECTORS

No loan shall be made by the corporation to any director unless it is approved by a majority vote of all the shareholders. For this purpose, the shares of a director who would be the borrower shall not be shares entitled to vote.

14. MORTGAGE OF CORPORATE PROPERTY

The Board of Directors may authorize any mortgage or pledge of corporate property.

## ARTICLE III. OFFICERS

1. NUMBER

The officers of the corporation shall be a President, Secretary and a Treasurer, each of whom shall be elected by the Board. Other officers such as one or more Vice Presidents and a Chairman of the Board may be elected by the Board. Any two or more offices may be held by the same person, except the offices of President and Secretary. When all of the issued and outstanding stock of the corporation is owned by one person, such person may hold all or any combination of officers.

2. ELECTION AND TERM

The officers shall be elected at the organizational meeting of the Board, and shall hold office until their successors are elected. Any officer elected may be removed by the Board with or without cause. Any vacancy in office may be filled by the Board for the unexpired portion of the term.

3. PRESIDENT

The President shall be the chief executive officer of the corporation, and shall have general supervision and control of the business of the corporation. He shall preside at all meetings of the shareholders. He shall make reports to the directors and the shareholders, and shall perform all such other duties as are incident to his office, and as are properly required of him by the Board.

4. VICE PRESIDENT

    a.    The Vice-President/Finance shall possess the powers and may perform the duties of the President in his absence or disability, and he shall perform such other duties as may be prescribed from time to time by the Board of Directors.

    b.    The other Vice-Presidents shall possess such powers and may perform the duties as may be assigned to them by the Board of Directors.

    c.    In the absence or disability of the President and Vice-President\Finance, the other Vice-President designated by the Board of Directors or the President shall perform the duties and exercise the powers of the President.

6

d.   A Vice-President may sign and execute contracts and other obligations and execute contracts pertaining to the regular course of his duties.

## 5.   SECRETARY

The Secretary shall keep the minutes of the meetings of the board of directors, and the minutes of all meetings of the shareholders, and also, unless otherwise directed, the minutes of all meetings of committees in books provided for that purpose. He shall give, or cause to be given, notice of all meetings of shareholders and directors, and all other notices required by law or by these by-laws, and in case of his absence or refusal to do so, any such notice may be given by any person thereunto directed by the president or by the directors or shareholders upon whose requisition the meeting is called. He shall have charge of the corporate books and records. He shall have custody of the seal of the corporation and affix the same to all instruments requiring it when authorized by the directors or the president, and attest the same. He shall file all written requests that notices be mailed to shareholders at the address other than that which appears on the record of shareholders. He shall sign with the president or vice president all certificates representing shares of the corporation. And he shall, in general perform all duties incident to the office of secretary.

## 6.   TREASURER

The Treasurer shall have charge of, and be responsible for, the funds of the corporation. He shall have charge of, and be responsible for, keeping correct and complete books and records of account. He shall perform all duties incident to his office, and that are properly required of him by the Board. If required by the Board, the Treasurer shall give bond for the faithful discharge of his duties in such amount and with such surety as the Board shall determine.

## ARTICLE IV.  DUTY OF OFFICERS AND DIRECTORS

Directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. In discharging their duties, directors and officers, when acting in good faith, may rely upon financial statements of the corporation represented to them to be correct by the President or the officer of the corporation having charge of its books of accounts, or stated in a written report by an independent public or certified public accountant or firm or such accountants to reflect the financial condition of such corporation.

## ARTICLE V.  INDEMNITY

### 1.  ACTIONS OTHER THAN ONE BY OR IN THE RIGHT OF THIS CORPORATION

This corporation shall indemnify any person made, or threatened to be made, a party to an action or proceeding (other than one by or in the right of this corporation to procure a judgment in its favor) whether civil or criminal, including an action by or in the right of any other corporation, or any type or kind, domestic or foreign, or any partnership, joint venture trust, employee benefit plan or other enterprise, which any director or officer of the corporation served in any capacity at the request of the corporation, by reason of the fact that such person, his testator or intestate, was a director or officer of the corporation or served such other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise in any capacity, against judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding, or any appeal therein, if such director or officer acted in good faith for a purpose which he reasonably believed to be in or, in the case of service for any other corporation or any partnership, joint venture, trust, employee benefit plan or other enterprise not opposed to, the best interests of the corporation and, in criminal actions or proceedings, in addition, he had no reasonable cause to believe that his conduct was unlawful.

### 2.  ACTIONS BY OR IN THE RIGHT OF THIS CORPORATION

This corporation shall indemnify any person made, or threatened to be made, a party to an action by or in the right of this corporation to procure a judgment in its favor by reason of the fact that such person, his testator or intestate, is or was a director or officer of this corporation, or is or was serving at the request of this corporation as a director or officer of any other corporation of any type or kind, domestic or foreign, or any partnership, joint venture, trust, employee benefit plan or other enterprise, against amounts paid in settlement and reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense or settlement of such action, or in connection with an appeal therein, if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in, or, in the case of service for any other corporation or any partnership, joint venture, trust employee benefit plan or other enterprise, not opposed to, the best interests of the corporation. This corporation shall not indemnify such person in respect of (i) a threatened action, or a pending action which is settled or otherwise disposed of, or (ii) any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation, unless and only to the extent that the court in which the action was brought, or, if no action was brought, any court of competent jurisdiction, determines that upon application that, in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnify for such portion of the settlement amount and expenses as the court deems proper.

ACA:C:\WPFILES\CORP\CLIENTS\EBER\EB&C-BY.LAW

3. ACTS COMMITTED IN BAD FAITH OR THE RESULT OF DELIBERATE DISHONESTY

No indemnification shall be made to or on behalf of any director or officer if a judgment or other final adjudication adverse to the director or officer establishes that his acts were committed in bad faith or were the result of active deliberate dishonesty and were material to the cause of action so adjudicated, or that he personally gained in fact a financial profit or other advantage to which he was not legally entitled.

4. AUTHORIZATION

Unless ordered by a court, indemnification shall be made by the corporation only if authorized in the specific case (i) by the board acting by a quorum consisting of directors who are not parties to such action or proceeding upon a finding that the director or officer has met the standard of conduct set forth in subparagraph 1 or 2 above, or (ii) if a quorum is not obtainable or even if obtainable, a quorum of disinterested directors so directs (A) by the board upon the opinion in writing of independent legal counsel the indemnification is proper in the circumstances because the applicable standard of conduct has been met by such director or officer or (B) by the shareholders upon a finding that the director or officer has met the applicable standard of conduct.

5. EXTENT OF INDEMNIFICATION

This bylaw provision is intended to indemnify the officers and directors of this corporation to the fullest extent permitted under the New York Business Corporation Law.

**ARTICLE VI. SHARES**

1. CERTIFICATE REPRESENTING SHARES

The shares of the corporation shall be represented by certificates in the form attached to these ByLaws and shall be numbered consecutively. The certificates shall be signed by the president or a vice-president and the secretary or an assistant secretary or the treasurer or an assistant treasurer of the corporation, and may be sealed with the seal of the corporation or facsimile thereof. The signatures of the officers upon a certificate may be facsimiles if the certificate is countersigned by a transfer agent or registered by a registrar other than the corporation itself or its employee. In case any officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be an officer before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer at the date of issue. Each certificate shall state upon the face thereof: (1) That the corporation is formed under the laws of this state. (2) The name of the person or persons to whom issued. (3) The number and class of shares, and the designation of the series, if any, which such certificate represents.

### 2. LOST, DESTROYED AND STOLEN SHARE CERTIFICATES

Any person claiming a certificate representing shares to be lost, apparently destroyed or wrongfully taken shall make an affidavit or affirmation of that fact and advertise the same in such manner as the board of directors may require, and shall give the corporation an indemnity bond in such form and with one or more sureties satisfactory to the board, in such amount as the board may determine, which shall be at least double the par value of the shares represented by said certificate, to protect it or any person injured by the issue of the new certificate from any liability or expense which it or they may incur by reason of the original certificate remaining outstanding , whereupon a new certificate may be issued of the same tenor and for the same number of shares as the one alleged to be lost, destroyed or wrongfully taken if the claimant so requests prior to notice to this corporation that the lost, apparently destroyed or wrongfully taken certificate has been acquired by a bona fide purchaser.

## ARTICLE VII.  FINANCE

### 1.  BANK ACCOUNTS

The funds of the corporation shall be deposited in such banks as the Board shall designate, and shall be drawn only by check signed by properly designated officers as shown on the corporate banking resolution.

### 2.  LOANS

No loans shall be contracted on behalf of the corporation, and no bonds or notes shall be issued, unless authorized by the Board or made by properly designated officers as shown on the corporate borrowing resolution.

## ARTICLE VIII.  FISCAL YEAR

The fiscal year of the corporation shall begin June 1st and end May 31st of the next succeeding year.

## ARTICLE IX.  SEAL

The seal of the corporation shall be in the form of a circle and shall bear the name of the corporation and the year of the corporation, and the words "Corporate Seal" and "New York".  An example of the corporate seal is impressed on the margin of this page.

# ARTICLE X.  REIMBURSEMENT BY OFFICERS

Any payments made to an officer of the corporation such as a salary, commission, bonus, interest, or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer to the corporation to the full extent of such disallowance.  It shall be the duty of the directors, as a Board, to enforce payment by the officer, subject to the determination of the directors, proportionate amounts may be withheld from his future compensation payments until the amount owed to the corporation has been recovered.

# ARTICLE XI.  AMENDMENT

The By-Laws may be amended or repealed by vote of the shareholders entitled to vote for the election of directors at an annual meeting or at a special meeting called for that purpose, provided that written notice of the date, time and purpose of such annual or special meeting shall be given, and such notice shall set forth the alterations, amendments or changes which are proposed to be made in such By-Laws.  Only such changes as have been specified in the written notice shall be made.  If, however, all the stockholders shall be present at any regular or special meeting, or those not present consent in writing to the proposed amendment, these By-Laws may be amended by a unanimous vote, without any previous written notice.

# ARTICLE XII.  TRANSFER RESTRICTION

## 1.   RESTRICTION

A shareholder shall not transfer, sell or assign any shares of the corporation's stock without first personally delivering to the president or secretary written notice of a proposed transfer at least five (5) days before the effective date of transfer, stating the terms of the proposed transfer.  Any other shareholder may, but is not required to, give notice within said five day period to the transferring shareholder of said other shareholder's intent to purchase the shares for a price equal to the book value thereof as appears by the books of the corporation of the end of the immediately preceding fiscal year.

## 2.   VALIDITY OF TRANSFER

No transfer of any stock shall be valid until such notice shall be given and the other shareholders have the opportunity to purchase the same as aforesaid.

## 3.   CLOSING

If any other shareholder elects to purchase the shares of a transferring shareholder, the closing on said purchase and sale shall take place at the office of the corporation

not later than ninety (90) days of the date of such notice of intent to purchase. If no other shareholder elects to purchase the share of a transferring shareholder, then the transferring shareholder is free to transfer said stocks to the same person named in and on the terms set forth in the notice at a time not later than one hundred eighty (180) days of the date of the original notice.

ACA:C:\WPFILES\CORP\CLIENTS\EBER\EB&C-BY.LAW

# EXHIBIT

# "B"

700 Crossroads Building
2 State Street, Rochester, New York 14614
P 585.987.2800    F 585.454.3968

Writer's Direct Dial Number: 585.987.2834
Writer's Direct Fax Number: 585.987.2934
Email: llarocca@woodsoviatt.com



ATTORNEYS
woodsoviatt.com

1900 Main Place Tower
Buffalo, New York 14202
P 716.248.3200    F 716.854.5100

October 11, 2017

James G. Vazzana, Esq.
Wiedman, Vazzana, Corcoran & Volta, P.C.
5 S. Fitzhugh Street, Room 230
Rochester, New York 14614

Brian C. Brook, Esq.
Clinton Brook & Peed
641 Lexington Avenue, 13th Floor
New York, NY 10022

     **Re:**   **Transfer of Eber Bros. & Co., Inc. stock**

Dear Jim and Brian:

    Enclosed please find your clients' respective copies of the Stock Powers transferring their shares of Eber Bros. & Co., Inc. pursuant to Canandaigua National Bank and Trust Company's distribution schedule. As the Bank never had possession of the company's stock book or other corporate documents and, despite request, the Bank has not been provided with the same, we were required to complete these transfers via these Stock Powers as opposed to issuing new stock certificates. We are currently retaining the original Stock Powers which I have affixed to each original Stock Certificate that the Bank received when it became Successor Co-Trustee. We will continue to do so unless and until such time as we are advised as to whom these originals should be provided given the apparent inability to locate the company's stock book and affiliated records. It is my understanding that the securities were transferred to your clients' respective financial institutions on September 29th and that the remaining assets were electronically transferred last week as well.

                    Very truly yours,

                    WOODS OVIATT GILMAN LLP

                    *Lorisa D. LaRocca*

                    Lorisa D. LaRocca
                 Please direct responses to Rochester Office

LDL/ldl/kdk
Enclosures
cc:   Rita Nischal, Esq.
      William G. Bauer, Esq.

{5491869: }

*The art of representing people*®

9TC# 00835540

NUMBER P 6

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

SHARES 2000

FULLY PAID AND NON ASSESSABLE

PREFERRED

# EBER BROS. & CO., INC.

AUTHORIZED TO ISSUE 10,000 SHARES
2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1,850 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6,150 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

This Certifies that Co-Tr. U/W Allen Eber Rossiway is the owner of Two thousand 6% NON-CUMULATIVE PREFERRED SHARES

Par Value $100 Each of EBER BROS. & CO., INC.

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. A statement of the designations, preferences, privileges and voting powers or restrictions or qualifications of the shares of each class of stock is printed upon the back hereof and made part hereof with the same force and effect as if herein at length fully set forth, and this Certificate and the shares represented thereby are issued and shall be held subject to all of the provisions of the Certificate of Incorporation, By-Laws and Amendments.

In Witness Whereof, the Corporation has caused this Certificate to be signed by its duly authorized officers and its corporate seal to be hereunto affixed this 6th day of September 1984

Stanley S. Otts
SECRETARY-TREASURER

Lester Eber
PRESIDENT

978 652 001

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Lester Eber Seven Hundred Sixty Five (765) shares of the total Two Thousand (2000) shares issued, $100 par value, of the 6% non-cumulative preferred shares of Eber Bros. & Co., Inc., a New York corporation (the "**Corporation**"), standing in his name on the books of the Corporation represented by Certificate Numbered P6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: Oct. 2 , 2017

Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: Rebecca M Leusch

Print Name: Rebecca M. Leusch

~~~~0255440~~

FULLY PAID AND NON-ASSESSABLE

CLASS A COMMON

NUMBER A 6

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

SHARES 1850

# EBER BROS. & CO., INC.

AUTHORIZED TO ISSUE 10,000 SHARES
2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1,850 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6150 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

This Certifies that Lester Eber, Elliott W. Gumaer, Jr., Central Trust Company "Co - tr. U/W Allen Eber/Residuary" is the owner of One Thousand Eight Hundred and Fifty CLASS A VOTING COMMON SHARES

Par Value $10 Each of EBER BROS. & CO., INC.

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. A statement of the designations, preferences, privileges and voting powers, or restrictions or qualifications of the shares of each class of stock is printed upon the back hereof and made part hereof with the same force and effect as if herein at length fully set forth, and this Certificate and the shares represented thereby are issued and shall be held subject to all of the provisions of the Certificate of Incorporation, By-Laws and Amendments.

In Witness Whereof, the Corporation has caused this Certificate to be signed by its duly authorized officers and its corporate seal to be hereunto affixed this 10th day of May 1991

Stanley Scott
SECRETARY-TREASURER

Lester Eber
PRESIDENT

278652102
~~~~

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Lester Eber Seven Hundred and Six (706) shares of the total One Thousand Eight Hundred Fifty (1850) shares issued, $10 par value, of the Class A voting common shares of Eber Bros. & Co., Inc., a New York corporation (the **"Corporation"**), standing in his name on the books of the Corporation represented by Certificate Numbered A6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _Oct. 2_____, 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: _Rebecca M. Leusch_____

Print Name: _Rebecca M. Leusch_____

CLASS B COMMON

# EBER BROS. & CO., INC.

### AUTHORIZED TO ISSUE 10,000 SHARES

2000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1350 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6650 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

CLASS B NON-VOTING COMMON SHARES

**This Certifies that**

LESTER EBER, ELLIOTT W. GUMAER, JR. & M & T BANK
CO. TRUSTEES, U/W ALLEN EBER, PRESIDENT

*is the holder of* TWO HUNDRED NINETY SHARES

*Transferable only on the books of the Corporation* EBER BROS. & CO., INC.

FULLY PAID AND NON-ASSESSABLE

DECEMBER

SECRETARY                    PRESIDENT

No.                    B 663

379652916

## STOCK POWER

**FOR VALUE RECEIVED,** Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Lester Eber One Hundred Eleven (111) shares of the total Two Hundred Ninety (290) shares issued, $10 par value, of the Class B non-voting common shares of Eber Bros. & Co., Inc., a New York corporation (the "**Corporation**"), standing in his name on the books of the Corporation represented by Certificate Numbered B68 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: October 2 , 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by:   _____

Print Name:   Rebecca M. Leusch

{5472004: }

700 Crossroads Building
2 State Street, Rochester, New York 14614

P 585.987.2800   F 585.454.3968

Writer's Direct Dial Number: 585.987.2834
Writer's Direct Fax Number: 585.987.2934
Email: llarocca@woodsoviatt.com



**WOODS OVIATT GILMAN** LLP

ATTORNEYS
woodsoviatt.com

October 11, 2017

James G. Vazzana, Esq.
Wiedman, Vazzana, Corcoran & Volta, P.C.
5 S. Fitzhugh Street, Room 230
Rochester, New York 14614

Brian C. Brook, Esq.
Clinton Brook & Peed
641 Lexington Avenue, 13th Floor
New York, NY 10022

Re:    Transfer of Eber Bros. & Co., Inc. stock

Dear Jim and Brian:

Enclosed please find your clients' respective copies of the Stock Powers transferring their shares of Eber Bros. & Co., Inc. pursuant to Canandaigua National Bank and Trust Company's distribution schedule. As the Bank never had possession of the company's stock book or other corporate documents and, despite request, the Bank has not been provided with the same, we were required to complete these transfers via these Stock Powers as opposed to issuing new stock certificates. We are currently retaining the original Stock Powers which I have affixed to each original Stock Certificate that the Bank received when it became Successor Co-Trustee. We will continue to do so unless and until such time as we are advised as to whom these originals should be provided given the apparent inability to locate the company's stock book and affiliated records. It is my understanding that the securities were transferred to your clients' respective financial institutions on September 29th and that the remaining assets were electronically transferred last week as well.

Very truly yours,

WOODS OVIATT GILMAN LLP

*Lorisa D. LaRocca*

Lorisa D. LaRocca
Please direct responses to Rochester Office

LDL/ldl/kdk
Enclosures
cc:    Rita Nischal, Esq.
       William G. Bauer, Esq.

{5491869: }          *The art of representing people®*



# CLASS A COMMON

## EBER BROS. & CO., INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

AUTHORIZED TO ISSUE 10,000 SHARES

2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1,560 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6,160 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

**CLASS A VOTING COMMON SHARES**

This Certifies that Lester Eber, Elliott W. Gumaer, Jr., Central Trust Company "Co - tr. U/w Allen Eber/Residuary" is the

owner of One Thousand Eight Hundred and Fifty

Par Value $10 Each of **EBER BROS. & CO., INC.**

May 10th 19

_____          _____
SECRETARY-TREASURER                        PRESIDENT

FULLY PAID AND NON-ASSESSABLE

078653162

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Daniel Kleeberg Three Hundred One (301) shares of the total One Thousand Eight Hundred Fifty (1850) shares issued, $10 par value, of the Class A voting common shares of Eber Bros. & Co., Inc., a New York corporation (the **"Corporation"**), standing in his name on the books of the Corporation represented by Certificate Numbered A6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _October 2_, 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: _Rebecca m Leusch_

Print Name: _Rebecca M. Leusch_

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Lisa Stein One Hundred Thirty Seven (137) shares of the total One Thousand Eight Hundred Fifty (1850) shares issued, $10 par value, of the Class A voting common shares of Eber Bros. & Co., Inc., a New York corporation (the "**Corporation**"), standing in her name on the books of the Corporation represented by Certificate Numbered A6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _October 2_ , 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: _____

Print Name: _____Rebecca M. Leusch_____

**STOCK POWER**

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Audrey Hays Seven Hundred and Six (706) shares of the total One Thousand Eight Hundred Fifty (1850) shares issued, $10 par value, of the Class A voting common shares of Eber Bros. & Co., Inc., a New York corporation (the **"Corporation"**), standing in her name on the books of the Corporation represented by Certificate Numbered A6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _____, 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: _____

Print Name: _____



**CLASS B COMMON**



## EBER BROS. & CO., INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

**AUTHORIZED TO ISSUE 10,000 SHARES**

2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1,850 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6,150 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

**This Certifies that** LESTER EBER, ELLIOTT W. GUMAER, JR.; M & T BANK
CO-TRUSTEES U/W ALLEN EBER RESIDUARY

*owner of* TWO HUNDRED NINETY **CLASS B NON-VOTING COMMON SHARES**

Par Value $10 Each of **EBER BROS. & CO., INC.**

transferable only on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of the Certificate properly endorsed. Unless and until the Corporation has exercised its option to purchase and redeem or retire all of the shares of Class B Non-Voting Common Shares upon the terms and in the manner provided by the Certificate of Incorporation, this Certificate and the shares represented hereby are transferable only upon compliance with the conditions and in the manner provided for and referred to in the Certificate of Incorporation. By the acceptance hereof the holder assents to and agrees to be bound by all the provisions of the Certificate of Incorporation.

In Witness Whereof, the Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with its corporate seal.

this 2nd day of DECEMBER 19 97

SECRETARY, TREASURER

PRESIDENT

FULLY PAID AND NON-ASSESSABLE

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Daniel Kleeberg Forty Seven (47) shares of the total Two Hundred Ninety (290) shares issued, $10 par value, of the Class B non-voting common shares of Eber Bros. & Co., Inc., a New York corporation (the **"Corporation"**), standing in his name on the books of the Corporation represented by Certificate Numbered B68 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: Oct. 2 , 2017

Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by:

Print Name: Rebecca M. Leusch

{5472004: }

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Lisa Stein Twenty One (21) shares of the total Two Hundred Ninety (290) shares issued, $10 par value, of the Class B non-voting common shares of Eber Bros. & Co., Inc., a New York corporation (the "**Corporation**"), standing in her name on the books of the Corporation represented by Certificate Numbered B68 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _Oct. 2_____, 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company


Witnessed by: _____

Print Name: _Rebecca M. Leusch_____

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Audrey Hays One Hundred Eleven (111) shares of the total Two Hundred Ninety (290) shares issued, $10 par value, of the Class B non-voting common shares of Eber Bros. & Co., Inc., a New York corporation (the **"Corporation"**), standing in her name on the books of the Corporation represented by Certificate Numbered B68 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: October 2, 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: _____

Print Name: Rebecca M. Leisch

PREFERRED

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

# EBER BROS. & CO., INC.

AUTHORIZED TO ISSUE 10,000 SHARES

2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1,800 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6,100 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

This Certifies that ____ Wm Alex Rubberoy ____ is the owner of Two Thousand

6% NON-CUMULATIVE PREFERRED SHARES

Par Value $100 Each of EBER BROS. & CO., INC.



_____
SECRETARY-TREASURER

_____
PRESIDENT

FULLY PAID AND NON-ASSESSABLE

# STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Daniel Kleeberg Three Hundred Twenty Four (324) shares of the total Two Thousand (2000) shares issued, $100 par value, of the 6% non-cumulative preferred shares of Eber Bros. & Co., Inc., a New York corporation (the "**Corporation**"), standing in his name on the books of the Corporation represented by Certificate Numbered P6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _____Oct 2_____ , 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: _____

Print Name: _____Rebecca M. Leusch_____

# STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Lisa Stein One Hundred Forty Seven (147) shares of the total Two Thousand (2000) shares issued, $100 par value, of the 6% non-cumulative preferred shares of Eber Bros. & Co., Inc., a New York corporation (the "**Corporation**"), standing in her name on the books of the Corporation represented by Certificate Numbered P6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: ___Oct. 2___, 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company

Witnessed by: _____

Print Name: ___Rebecca M. Leusch___

## STOCK POWER

**FOR VALUE RECEIVED**, Canandaigua National Bank and Trust Company, in its capacity as Co-Trustee of the Trust U/W of Allen Eber hereby sells, assigns and transfers unto Audrey Hays Seven Hundred Sixty Four (764) shares of the total Two Thousand (2000) shares issued, $100 par value, of the 6% non-cumulative preferred shares of Eber Bros. & Co., Inc., a New York corporation (the "**Corporation**"), standing in her name on the books of the Corporation represented by Certificate Numbered P6 herewith, and does hereby irrevocably constitute and appoint the Corporation to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _____Oct. 2____, 2017

_____
Rita Nischal, Vice-President
Canandaigua National Bank and Trust Company


Witnessed by: _____

Print Name: _____Rebecca M. Leusch_____

{5472027: }