UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN, and
AUDREY HAYS,

               Plaintiffs,

    v.

LESTER EBER; ALEXBAY, LLC f/k/a
LESTER EBER, LLC; CANANDAIGUA
NATIONAL BANK & TRUST
COMPANY; ESTATE OF ELLIOTT W.
GUMAER, JR.; EBER BROS. & CO.,
INC.; EBER BROS. WINE AND LIQUOR
CORP.; EBER BROS. WINE & LIQUOR
METRO, INC.; EBER-CONNECTICUT,
LLC; and WENDY EBER,

               Defendants.

Civil Action No.  16-CV-9517(LAK)

---

**REPLY IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL
THE EBER DEFENDANTS TO PROVIDE DISCOVERY IMPROPERLY
WITHHELD ON PRIVILEGE GROUNDS**

---

Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@clintonbrook.com

*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein,
and Audrey Hays*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.  The Ebers Cannot Evade the "Fiduciary Exception" Through Deception. .............................. 1

    A.  The Ebers Incredulously Contend that they Owed No Fiduciary Duties to Anyone But Creditors (i.e. their other victims). ...................................................................................... 2

    B.  The Revised Privilege Log Contains Demonstrably False Representations About the Clients in a Bad Faith Effort to Limit the Scope of the Fiduciary Exception. ..................... 3

    C.  A Document Produced Just Today Supports Finding EBWLC as the Real Client in Communications with Underberg and Glenn Sturm. ........................................................... 4

II. Regarding Gumaer, the Ebers Attack a Straw Man, and Would Have This Court Throw Out Foundational Principles of Trust Law. ..................................................................................... 5

    A.  Because the Ebers Knew that Gumaer Was a Trustee, They Could Not Reasonably Expect Him to Conceal Information from the Other Beneficiaries. .................................... 5

    B.  The Eber Bros. Business Is Definitely a Trust Asset. .......................................................... 7

    C.  Communications Were Not for the Sole Purpose of Obtaining Leal Advice. ..................... 8

III. The Ebers Waive any Opposition to Plaintiffs' Selective Waiver Argument. ......................... 8

    A.  Communications with Gumaer ............................................................................................ 8

    B.  The November 2012 Underberg Document ........................................................................ 9

IV. Review Pursuant to the Crime-Fraud Exception is Warranted. ............................................. 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Bolton v. Weil, Gotshal & Manges LLP*,
  2005 WL 5118189 (N.Y. Sup., N.Y. Co. Sept. 16, 2005) .......................................................... 6

*Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*,
  Civ. A. No. 12150, 1991 WL 277613 (Del. Ch.1991) ............................................................... 3

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  218 F.Supp.2d 369 (S.D.N.Y. 2002) ......................................................................................... 9

*Gortat v. Capala Bros., Inc.*,
  No. 07 Civ. 3629(JLG), 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ....................................... 9

*Hooks v. Forman Holt Eliades & Ravin LLC*,
  No. 11–cv-2767, 2012 WL 3322637 (S.D.N.Y. Aug. 13, 2012) ................................................ 9

*In re Adelphia Comm'ns Corp.*,
  323 B.R. 345 (Bankr. S.D.N.Y. 2005) ....................................................................................... 2

*In re Bank of New York Mellon*,
  4 N.Y.S.3d 204 (App. Div. 2015) .............................................................................................. 6

*In re Bear Stearns Litigation*,
  870 N.Y.S.2d 709 (N.Y.Sup. 2008) ........................................................................................... 2

*In re RSL COM PRIMECALL, Inc.*,
  01-11457(ALG), 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003) .................................. 3

*In re UBS AG Securities Litigation*,
  2012 WL 4471265 (S.D.N.Y. 2012) .......................................................................................... 9

*Jackson v. City of New York*,
  No. 10-cv-7889, 2013 WL 541510 (S.D.N.Y. 2013) ................................................................ 9

*Schaeffler v. United States*,
  806 F.3d 34 (2d Cir. 2015) ........................................................................................................ 8

**Other Authorities**

Restatement (Third) of Trusts § 78 (2007) ...................................................................................... 6

Restatement (Third) of Trusts § 79 (2007) ...................................................................................... 6

Restatement (Third) of Trusts § 82 (2007) ...................................................................................... 6

**PRELIMINARY STATEMENT**

It is often said that the attorney-client privilege cannot be used as a sword and a shield. The Eber Defendants are trying to do just that, and in many different ways. For example, they have selectively produced communications between the Ebers and Gumaer that they think are beneficial, while withholding others. *See* Pls. Br. 20–21. They do not even bother to defend this.

Instead, they employ an unfortunate game plan of distraction and deception. Part of this game plan involves an incomplete and misleading privilege log. After they avoided even identifying the client for months, this Court directed them to fix that and other defects, and directed them to provide a more detailed privilege log in almost every respect in a new Excel-format privilege log. Sept. 13, 2018 Order 3-4. These explicit directions were nearly completely disregarded.

Far from following instructions, the Ebers handwritten notations identify the "client(s)" for each withheld document. These conclusory assertions are inherently suspect, likely a self-serving effort to evade the fiduciary exception—and the truth. This is worse than just ignoring the Court's directives; such deception should not be condoned, let alone rewarded. Accordingly, most if not all of Plaintiffs' objections to the Privilege Log should be sustained and the underlying documents produced promptly.

**ARGUMENT**

I.  **THE EBERS CANNOT EVADE THE "FIDUCIARY EXCEPTION" THROUGH DECEPTION.**

As we explained in the opening brief, the fiduciary exception applies to a great many communications here because of Plaintiffs' interest in the Trust that controlled Eber Bros. & Co., Inc. ("EB&C") and its subsidiaries, including Eber Bros. Wine and Liquor Corp. ("EBWLC"), Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), and Eber-Connecticut, LLC ("Eber-

1


Conn"). Defendants try two things to evade the fiduciary exception: advancing frivolous legal argument and scribbling transparently false notations on their Privilege Log to try to mitigate the scope of the inevitable disclosure.[1]

### A. The Ebers Incredulously Contend that they Owed No Fiduciary Duties to Anyone But Creditors (i.e. their other victims).

The Ebers frivolously attempt to undermine corporate governance as we know it. They contend that corporate officers' and directors' fiduciary duties to shareholders evaporate when a company is insolvent. They rely on the "trust fund doctrine," which provides that directors and officers of an insolvent corporation have a fiduciary duty to creditors. But, as other courts have said, "[t]his does not imply that the fiduciary duties owed to the shareholders evaporate":

> The directors still have the "duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it" and are required to "engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation." But where the corporation's very existence is threatened, the scrutiny focused upon deal protection devices in various contexts may very well be directed to shareholder consideration as well.

*In re Bear Stearns Litigation*, 870 N.Y.S.2d 709, 737 (N.Y.Sup. 2008) (citations omitted) (relying on Delaware law, which is consistent with New York).

Simply put, the "trust fund doctrine" does not and did not absolve the Eber Defendants of their fiduciary obligations owed to Plaintiffs. That doctrine provides that once a corporation enters the "zone of insolvency," directors and officers owe fiduciary duties to the corporations' creditors *in addition* to its shareholders. *See, e.g.*, *In re Adelphia Comm'ns Corp.*, 323 B.R. 345, 386 n. 140 (Bankr. S.D.N.Y. 2005) ("Many courts, including the Second Circuit, this one, and the state courts from which the applicable principles have their origin, have said that when a corporation becomes

---

[1] They also make a blink-and-you-miss-it challenge to there being "colorable" claims self-dealing. Eber Br. 14. This "argument" is then ignored and never developed. Nonetheless, to the extent a response is necessary, Plaintiffs rely on the Facts section of their opening brief and Judge Kaplan's decision permitting punitive damage claims.

2

insolvent or enters into the zone of insolvency, the fiduciary duties of a corporation *expand* from its stockholders to its creditors.") (emphasis added); *see also In re RSL COM PRIMECALL, Inc.*, 01-11457(ALG), 2003 WL 22989669, at *7 (Bankr. S.D.N.Y. Dec. 11, 2003) ("Insolvency, however, changes the scope of a director's duties, and upon insolvency directors owe fiduciary duties to creditors or, stated differently, to the corporation and to all of its interested constituencies, including creditors *and shareholders*.") (emphasis added); *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, Civ. A. No. 12150, 1991 WL 277613, at *36 n. 55, (Del. Ch.1991) (explaining competing interests of shareholders and creditors that must be balanced by a director when corporation enters the "zone of insolvency").

In addition to advancing this frivolous legal position, the Ebers claim that it is "undisputed that Eber Bros and Eber W&L were insolvent" in 2012. Eber Br. 14. This is another false assertion. If that were undisputed, then Plaintiffs would not have filed a suit at all. The factual issue of whether or not a corporation is insolvent depends on the valuation of its assets and its liabilities; here, we dispute both—most notably the value of Eber-Conn and the amounts of debt supposedly owed to Lester, for which documentation is sorely lacking.

   **B.  The Revised Privilege Log Contains Demonstrably False Representations About the Clients in a Bad Faith Effort to Limit the Scope of the Fiduciary Exception.**

As noted above, the revised Privilege Log does not come close to providing the level of detail ordered by the Court. Instead, it looks like someone took all of five minutes and scribbled in some names and drew a few lines. All but one of the challenged entries characterize the clients as Lester and/or Wendy individually. Only sometimes are one or two corporate entities also listed. This is a transparent effort to manipulate the scope of the fiduciary exception by mischaracterizing corporate counsel. *See* Pls. Br. 2 ("[C]ommunications involving lawyers retained by EBWLC or another Trust-controlled entity are subject to disclosure pursuant to the 'fiduciary exception.'").

Indeed, the new notations are unreliable on their face. Consider, for example, the entries on the 12th page, covering EB-00026631–26638. ECF No. 144 at 30. The Ebers claim that the only clients for all of these were "Lester Eber + Wendy Eber." *Id*. Based on the surrounding descriptions alone,[2] this Court cannot credit that claim:

- EB-00026631–32 concerns a corporate bank loan, and the lawyers on the communication were from Harris Beach—a firm that only represented EBWLC.

- EB-00026633–37 concern "EBWLC draft document," which on its face sounds like a draft document for EBWLC, and thus is for the benefit of the corporation. Moreover, at least some of the lawyers involved were from Underberg & Kessler, which was then only formally engaged by EBWLC. Ex. M. Neither of the Underberg lawyers representing Alexbay were on the correspondence.

- EB-00026638 concerns "PBGC," which was a creditor of EBWLC. It is unlikely that this legal advice was solely for Lester and Wendy.

Some other recurring entries that are likely misleading about their contents include dozens of entries regarding "Harris Beach v. Eber" and "D4 v. Eber" where they claim the clients were Lester and Wendy Eber, even though they were not parties to those matters: Eber companies were.

We could do this with almost all of the Privilege Log, but that is not possible given space constraints; nor is it necessary: The burden is on the party asserting privilege. Here, Defendants' perfunctory and conclusory log, rife with falsehoods, falls far short of sustaining that burden.

### C. A Document Produced Just Today Supports Finding EBWLC as the Real Client in Communications with Underberg and Glenn Sturm.

Further undermining the notations about who the clients are is a document produced by the Ebers just today. The long-awaited General Ledger for EBWLC shows that it was EBWLC that was paying for the lawyers from Harris Beach, Underberg & Kessler, and Nelson Mullins (the firm in which Glenn Sturm was a partner). *See* Ex. T. It seems that, in addition to more regular payments

---

[2] In addition to being able to review the documents *in camera*, this Court should consider the lack of any documentary evidence put forward to show that there was at attorney-client relationship with Lester or Wendy individually prior to December 2016.

4

of smaller amounts, Underberg & Kessler was paid $275,000 just a few months before Lester Eber formed Lester Eber, LLC and tried to take Eber-Conn "for no consideration." Pls. Br. 5; Ex. C.

So, the actual documentary evidence is compelling and one-sided: It shows that EBWLC was the only "person" that engaged or paid for Underberg through at least May 31, 2012. See Exs. M (Underberg engagement agreement); T (General Ledger showing payments by EBWLC); U (accounting document showing Underberg balances fully paid by EBWLC); V (accountant email showing that amount paid by Eber Metro was for legal costs incurred by EBWLC). And unlike the uncertified Privilege Log notations, this evidence is credible. Accordingly, the communications with Underberg rightly belong to EBWLC, and are subject to the fiduciary exception.

Similarly, the communications with Sturm should also be disclosed, because the credible evidence shows that EBWLC was the only party that paid his firm for legal services. *See* Ex. T.[3]

## II. REGARDING GUMAER, THE EBERS ATTACK A STRAW MAN, AND WOULD HAVE THIS COURT THROW OUT FOUNDATIONAL PRINCIPLES OF TRUST LAW.

Lester and Wendy cannot and do not deny that they knew Gumaer was a trustee with fiduciary duties to all the Trust beneficiaries, and that he was obligated to treat them equally and disclose information to all of them. Instead, they do no more than merely *assume* that the Eber. Bros. business was not something subject to Gumaer's duties as a trustee—this is incorrect.

### A. Because the Ebers Knew that Gumaer Was a Trustee, They Could Not Reasonably Expect Him to Conceal Information from the Other Beneficiaries.

The situation with Gumaer was analogous to a joint representation of multiple clients by a single attorney: "[W]hen an attorney represents clients jointly, a client cannot reasonably expect

---

[3] To the extent that the Sturm communications concern anything having to do with the Polebridge Bowman transaction, Pls. Br. 4–5, those must be disclosed. Not only was that a business transaction, but it was one where its legitimacy was placed directly "at issue" when Lester Eber relied on it to support his valuation of Eber-Conn in the 2012 Foreclosure Action. Pls. Br. 6. Arguably the entire Sturm relationship was placed at issue by claiming that the transaction with him was arm's length. At the minimum, any discussions with Sturm relating to that transaction or the value of Eber-Connecticut must be disclosed because to allow them to conceal those records would be fundamentally unfair—a classic instance of using privilege as a sword and a shield.

that the attorney will keep information from the other clients." *Bolton v. Weil, Gotshal & Manges LLP*, 2005 WL 5118189, at *5 (N.Y. Sup., N.Y. Co. Sept. 16, 2005) (collecting authorities). The same principle applies to a trustee, who is under numerous duties that are fundamentally the same as those imposed on attorney. If anything, the expectation of disclosure is greater since, unlike a lawyer, privilege does not attach to a trustee's communications with co-trustees or beneficiaries.

The law concerning trustees' duties illustrates why Gumaer's communications with the Ebers relating to Trust assets—including Eber Bros. and its subsidiaries—cannot justly be withheld. New York courts look to the Restatement of Trusts for guidance. *See, e.g.*, *In re Bank of New York Mellon*, 4 N.Y.S.3d 204, 208 (App. Div. 2015). The Restatement shows why this Court cannot permit secret communications between co-trustees under the guise that one trustee was a personal lawyer for the other.[4] Holding otherwise would create a giant loophole in trust law.

"Whether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter." Restatement (Third) of Trusts § 78 (2007) ("Duty of Loyalty"). *See also id.* § 82 ("Duty to Furnish Information to Beneficiaries"). In addition, a trustee must treat all beneficiaries equally. *See id.* § 79 ("Duty of Impartiality" requires trustees to avoid conflicts that result in preferring on beneficiary over another). Allowing a trustee to communicate with one beneficiary to the exclusion of the others is inherently contradictory to this principle, especially when the discussions ultimately concern a transaction that results in one beneficiary taking a trust asset for himself. Indeed, permitting such communications would substantially inhibit harmed beneficiaries from even learning about whether a trustee was acting

---

[4] To be clear, this would not preclude co-trustees from getting confidential legal advice from an independent lawyer retained by them (independent, meaning the lawyer cannot be a fiduciary to trust beneficiaries). Nor does it mean that communications cannot be secret as against third parties. But as to trust beneficiaries, there cannot be secret discussions between co-trustees on matters affecting trust assets.

6

with improper partiality towards one beneficiary over another.

In other words, it would substantially undermine trust law practice and policy to permit the Ebers to withhold their communications with Gumaer on the grounds asserted. Lester cannot and does not reasonably claim to have expected otherwise, especially not when Gumaer's engagement letter was explicit about this being a joint fiduciary situation. Ex. P. That one single document covers both the continued trustee relationship as well as the personal representation of Lester (which may or may not have continued for very long after Gumaer's retirement in 2001). This makes the joint representation analogy all the more appropriate.

### B. The Eber Bros. Business Is Definitely a Trust Asset.

Much of the Ebers' opposition is premised on a demonstrably false supposition: that the Eber Bros. business did not implicate Gumaer's or Lester's duties as trustees.[5] That is nonsense because the Trust controlled all of the voting shares in Eber Bros., and thus also controlled its subsidiaries. Unsurprisingly, the Ebers cite no legal precedent for the exception they seek.

The Allen Eber Will, which created the Trust, makes it absolutely clear that the Eber Bros. business is not just a Trust asset, but the very centerpiece of the Trust itself. *See* Ex. S. It provides that the co-trustees, including Gumaer, are expressly empowered to vote the Eber Bros. stock and manage the Eber Bros. business. *Id.* at 17 (Section O). More tellingly, the co-trustees are expressly empowered to "act as directors and/or officers" of Eber Bros. and related businesses. *Id*. Thus, the Ebers' illogical and unsupported attempt to exclude communications about the Eber Bros. business from the scope of fiduciary duties owed to Plaintiffs fails.

But there is more. The Trust may be terminated before Allen Eber's children's deaths only if all or substantially all of the Eber Bros. stock is sold. *Id.* at 11. This indicates that one of the

---

[5] This supposition appears in more sections than just that affecting Gumaer, but it fails all the same.

7

main purposes for creating the Trust was to manage the Eber Bros. business. Moreover, the Allen Eber will contains an exculpatory clause, limiting the liability of trustees for loss of value in Eber Bros. as long as they "acted in good faith." *Id.* at 13. Given the presumed need to ascertain the co-trustees' state of mind in order to determine whether they are liable, the Trust formation document supports the conclusion that co-trustees' discussions about the management of the Eber Bros. business was intended to be open to the beneficiaries.

### C. Communications Were Not for the Sole Purpose of Obtaining Leal Advice.

Gumaer's role as trustee and director of several Eber entities also makes it unlikely that communications with him were "solely" for the purpose of obtaining or providing legal advice, as they must be. *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) ("Communications that are made for purposes of evaluating the commercial wisdom of various options as well as in getting or giving legal advice are not protected.").

### III. THE EBERS WAIVE ANY OPPOSITION TO PLAINTIFFS' SELECTIVE WAIVER ARGUMENT.

#### A. Communications with Gumaer

In our opening brief, we argued that even if communications between the Ebers and Gumaer about the transactions at issue in this case could be privileged, the Ebers' production of certain of those communications constitutes a waiver that requires production of the withheld documents on the same subject matter. See Pls. Br. 20–21 (Section II(G)). The Ebers decline to respond to this argument at all.

The Ebers' failure to respond should be deemed a concession and the Court should, accordingly, through its *in camera review*, ensure that all documents on the same subject matter be disclosed.[6] Courts regularly consider an "argument not addressed in an opposition brief" to be

---

[6] For many reasons, neither Plaintiffs nor this Court can rely on the Privilege Log descriptions.

8

"waived"—essentially a "conce[ssion] through silence." *See In re UBS AG Securities Litigation*, 2012 WL 4471265, at *11 (S.D.N.Y. 2012) (citing *Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629(JLG), 2010 WL 1423018, at *11 (E.D.N.Y. Apr. 9, 2010); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,* 218 F.Supp.2d 369, 392–393 & n. 116 (S.D.N.Y. 2002)).[7]

Of course, there is no waiver if this Court holds that communications between the Ebers and Gumaer are not privileged in the first place: Producing a non-privileged document cannot amount to waiving privilege.

### B.  The November 2012 Underberg Document

The Ebers criticize Plaintiffs for making mere "*reference* to Underberg & Kessler's November 2012 internal file memo discussing the Article 9 proceeding," even though they themselves try to claim (just inches down the page) that they did not waive privilege over that document because they merely "<u>referenced</u>" that communication in a letter to this Court. Eber Br. 12 (italics added; underlining in original). This is a classic example of using privilege as a sword and a shield. In fact, what the Ebers did was much more than merely "reference[]" the document: They discussed its contents by discussing what the document "demonstrates." *See* Pls. Br. 22 n.12.

In addition, we note that the Underberg document was produced by Gumaer's counsel. The Privilege Log is demonstrably incomplete for this document. It fails even to acknowledge that the document was disclosed to Gumaer; nor does it identify the purported client, as required. *See* ECF No. 144 at 31 (Log page 12). The Court should review the document itself and conclude that its disclosure to Gumaer was a waiver of any privilege over it, at least with respect to Plaintiffs, in

---

[7] *See also, e.g.*, *Jackson v. City of New York*, No. 10-cv-7889, 2013 WL 541510, at *6 (S.D.N.Y. 2013) ("Plaintiff does not respond to Defendants' arguments relating to the Waiver and the Stipulation and, as a result, Defendants' position is sustained.") (citing *Hooks v. Forman Holt Eliades & Ravin LLC,* No. 11–cv-2767, 2012 WL 3322637, at *7 (S.D.N.Y. Aug. 13, 2012) ("[T]o the extent Plaintiffs have failed to respond to the arguments raised by Defendants in their briefing ... Plaintiffs have effectively waived this claim.")).

light of Gumaer's duties of disclosure to them. *See supra* § 2(A).

### IV. REVIEW PURSUANT TO THE CRIME-FRAUD EXCEPTION IS WARRANTED.

In opposing the applicability of the crime-fraud exception, the Ebers contend—without any hint of irony—that Plaintiffs' have merely presented "conclusions" without "actual evidence." Eber Br. 16. But Plaintiffs attached numerous exhibits to their motion to support the statement of facts, which laid out the basis for concluding that malfeasance occurred. By contrast, the Ebers offer no evidence whatsoever—just a serious of conclusory assertions.

For example, they avoid saying anything about Lester's demonstrable lie to the N.Y. Supreme Court when he claimed that he was valuing the Eber-Conn business based on an "arm's length" transaction—when in fact the counterparty was a lawyer representing either him personally or his company, and the transaction was financed with a sham promissory note issued by Eber Metro itself. *See* Pls. Br. 4–6; Exs. A, B, G. Nor do the Ebers say anything about the recently produced evidence showing that they intentionally concealed the 2012 transfer from Plaintiffs. *See* Pls. Br. 7; Exs. Q, R. Their silence speaks volumes. To the extent that there are any privileged documents that do not fall within the fiduciary exception or subject matter waiver, the Court should review the documents carefully to see if they support a finding that the legal advice was in furtherance of fraud or a breach of fiduciary duty. *See* Pls. Br. 23.

## CONCLUSION

The Court should grant Plaintiffs' Motion to Compel.

                        Respectfully submitted,

                        /s Brian C. Brook
                        Brian C. Brook (BB 1980)
                        CLINTON BROOK & PEED
                        100 Church Street, 8th Floor
                        New York, NY 10007
                        Tel./Fax: (212) 257-2334
                        Brian@clintonbrook.com

                        *Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: November 13, 2018

11