# Exhibit S

 

I, <u>ALLEN EBER</u>, of the Town of Brighton, Monroe County, New York, make, publish and declare this to be my Last Will and Testament:

<u>FIRST</u>:  I bequeath to my wife, Evelyn S. Eber, all my personal effects and other personal property, except cash, stocks, bonds, securities and choses in action; but if she does not survive me, I bequeath such articles to my children who survive me.

<u>SECOND</u>:  I am currently paying the monthly rental of

-2-

THIRD:  I bequeath to the following organizations in

FOURTH:  I bequeath to my friend,          , the sum

-3-

FIFTH:  I am currently paying the premiums on Mutual Life Insurance Co. of New York policies Nos. 780-05-28, 752-06-15, 918-82-35, 754-56-49 and 934-34-56, being policies on the lives of my grandchildren, Sally Kleeberg, Daniel Sanford Kleeberg, Audrey Nan Boslov, David G. Eber and Wendy Pamela Eber. I direct my Executor to prepay all unpaid premiums for said five policies as soon as practicable after my death so that all of said policies shall be fully paid.

SIXTH:  I bequeath to my following named relatives the

, Li

SEVENTH:  I bequeath to my friend and business associate, Richard H. Murnighan, Four hundred (400) shares and to my friend and business associate, Elmer J. LeFevre, One hundred and twenty (120) shares of my Class B non-voting common shares of Eber Bros. & Co., Inc., each of a par value of Ten dollars ($10.00) per share; provided, however, that if my sister-in-law, Rose Eber, shall survive me, such gifts of said shares shall become effective only upon her death.

I give and grant unto said Richard H. Murnighan the right and option to purchase from my estate Six hundred (600) shares and to said Elmer J. LeFevre the right and option to purchase from my estate Two hundred and forty (240) shares of my said Class B non-voting common stock of Eber Bros. & Co. Inc.,

-4-

at any time within twelve (12) months after my death; provided, however, that if my said sister-in-law, Rose Eber, shall survive me, such options shall not become effective nor exercisable until after her death; and if she shall survive me by more than eleven (11) months, such options may be exercised at any time within sixty (60) days after her death.

Eber Bros. & Co., Inc., owns all outstanding common stock of Eber Bros. Wine & Liquor Corp., and the value (probably cost) at which the investment of Eber Bros. & Co., Inc., in such common stock is carried on its books is substantially lower than the current value of such common stock as shown by the books of Eber Bros. Wine & Liquor Corp. The fiscal years of the two corporations do not coincide. The option price per share shall be one-half (1/2) the book value per share of the outstanding Class B non-voting common stock of Eber Bros. & Co., Inc., at the close of the last full fiscal year immediately preceding my death. The book value of all outstanding Class B non-voting common stock of Eber Bros. & Co., Inc., for the purpose of computing such option price, shall be determined by deducting from the value of such common stock, as shown by the books of Eber Bros. & Co., Inc., on that date, the amount at which its investment in the common stock of Eber Bros. Wine & Liquor Corp., is carried on the books of Eber Bros. & Co., Inc., and then adding to the remainder the value of such common stock of Eber Bros. Wine & Liquor Corp., as shown by the books of the latter corporation at the close of its last full fiscal year immediately preceding my death; and the sum thereof shall be divided by the number of shares of such common stock then outstanding in order to determine the book value per share.

The foregoing bequests of shares of my said Class B non-voting common stock of Eber Bros. & Co. Inc., and the foregoing options to purchase additional shares of said stock shall

-5-

be and hereby are conditioned, in the case of each of my said
associates, (a) upon his continuing to be an employee of at least
one of the Eber Companies at the time of my death and at the
time of such purchase and shall be void and of no effect as
respects either who shall not be so employed at such times; and
(b) that prior to receiving any shares of my said Class B non-
voting common stock of Eber Bros. & Co., Inc., each of my said
business associates, who shall be entitled to receive any such
shares hereunder, shall enter into an agreement with Eber Bros.
& Co., Inc., which shall be binding upon him and his personal
representative and distributees, in and by the terms of which he
shall grant to said corporation an irrevocable option to purchase
all shares of common stock of said corporation owned by him at
the time of his death and shall agree that in case he shall wish
to dispose of said shares of common stock at any time prior to
his death, he shall first offer all of said shares to said cor-
poration before otherwise selling or disposing of the same; the
price in either of such events to be seventy-five per cent (75%)
of the book value of said shares at the close of the last full
fiscal year of Eber Bros. & Co., Inc., immediately preceding the
death of said business associate or the offering by him of his
said shares to the corporation, as the case may be; the book
value of said shares of common stock of Eber Bros. & Co., Inc.,
to be determined for the purpose of computing such option price,
in the manner hereinbefore prescribed in this clause "SEVENTH"
with respect to the options granted to my said two business
associates upon my death; the other terms of which agreement
shall be prescribed by my said Executor.

EIGHTH:  If my wife, Evelyn, survives me, I bequeath
to my Trustee, IN TRUST, an amount equal to one-half of my
adjusted gross estate as finally determined for Federal estate
tax purposes less the value for Federal estate tax purposes of

-6-

all items included in my gross estate which qualify for and are
allowed as an estate tax marital deduction and which pass or have
passed in a form which qualifies for the estate tax marital
deduction from me to my wife under other provisions of this Will
by right of survivorship with respect to jointly owned property,
under settlement arrangements relating to life insurance proceeds,
and otherwise than under this pecuniary bequest. The words
"adjusted gross estate", "gross estate" and "pass or have passed"
as used herein shall have the same meaning as such words shall
have under the provisions of the Internal Revenue Code in effect
at the time of my death.

When the computations necessary to determine the amount
of this pecuniary estate tax marital deduction gift are made,
values as finally determined for Federal estate tax purposes
shall control.

I direct that this legacy shall be satisfied only from
assets that qualify for the marital deduction under the provisions
of the Internal Revenue Code in effect at the time of my death, or
from the proceeds of such assets. I further direct (a) that this
legacy shall not be satisfied from property situate [within the
meaning of such Code or any United States estate tax convention
applicable to my estate] in a foreign country and subject to any
estate, inheritance, succession or other death tax imposed by a
foreign country or a possession or political subdivision thereof,
or the proceeds thereof; and (b) that no assets which may be
subject to both United States income and estate taxes and eligible
for a tax credit or deduction shall be used in satisfying this
legacy; provided, however, that assets described in "(a)" and
"(b)" hereof may be used to the extent that my estate shall not
include sufficient other property to satisfy this bequest.

Within the limitations of the preceding paragraph, I
direct that to the extent possible the legacy devised and

-7-

bequeathed by this "EIGHTH" shall be satisfied first by the
distribution to my Trustee of assets other than my stock of Eber
Bros. & Co., Inc.  To the extent that the assets comprising my
residuary estate other than my stock in Eber Bros. & Co., Inc.,
are insufficient to satisfy in full the legacy devised and be-
queathed by this "EIGHTH" my Executor shall distribute to my
Trustee in satisfaction thereof the appropriate number of my
shares of 6% non-cumulative preferred stock of Eber Bros. & Co.,
Inc.; and to the extent that such legacy is not fully satisfied
thereby, my Executor shall distribute to my Trustee in satisfac-
tion thereof the appropriate number of my shares of Class B non-
voting stock of Eber Bros. & Co., Inc., and, if such legacy is
still not fully funded, then such number of my shares of Class A
common stock of Eber Bros. & Co., Inc., as may be necessary to
fully fund said legacy.  It is my intention and wish that the
legacy devised and bequeathed by this "EIGHTH" shall not be
satisfied by the distribution of any of my Class A voting shares
of Eber Bros. & Co., Inc., unless all other assets of my estate
available for such purpose shall prove insufficient.

My Trustee shall divide this legacy into two (2) equal
parts, one to comprise and be known as the "Power of Appointment
Trust" and the other to comprise and be known as the "Estate
Trust".

I direct that in funding the equal part hereof herein
defined as the "Power of Appointment Trust" my Trustee shall
allocate to such trust assets other than my stock of Eber Bros.
& Co., Inc., and that to the extent that my stock of Eber Bros.
& Co., Inc., is necessary to fund such equal part that first my
shares of 6% cumulative preferred stock be used and then to the
extent necessary my shares of Class B common stock be used before
my Class A common stock is allocated to said "Power of Appoint-
ment Trust".  It is my intention and wish that the "Power of

-8-

Appointment Trust" herein created shall not be funded by the allocation of any of my Class A common stock of Eber Bros. & Co., Inc., unless all other assets devised and bequeathed to my Trustee by "EIGHTH" hereof shall be insufficient.

In funding the equal part hereof herein defined as the "Estate Trust" my Trustee shall allocate to such trust all assets remaining in "EIGHTH" hereof not hereinabove allocated to the "Power of Appointment Trust".

A - My Trustee shall hold, manage, invest and reinvest the "Power of Appointment Trust" as a separate trust for the benefit of my wife, shall collect the income thereof and shall pay the net income therefrom earned from and after the date of my death to my wife, or apply the same for her benefit, in annual or more frequent installments, so long as she shall live. As used in this "A" of "EIGHTH" the term "income" shall include all the income that may be required to qualify this "Power of Appointment Trust" for the marital deduction allowable in the Federal estate tax proceeding in my estate.

It is my wish that my wife shall receive at least Eighteen thousand dollars ($18,000.00) per year from the trust created by this "A" of "EIGHTH" and any additional amounts which may from time to time be necessary, advisable or expedient for her proper care and/or for the payment of any unusual expenses resulting from any extended illness, emergency or other extraordinary need; and to that end I do hereby expressly authorize and empower my Trustee, in its absolute and uncontrolled discretion, to pay to my wife from the principal of this trust, or apply for her benefit, such amounts as it shall from time to time consider advisable or expedient.

I hereby expressly provide that the Trustee of this separate trust created under "A" of "EIGHTH" shall not have any rights, powers, duties, authority, privileges or immunities,

-9-

whether or not discretionary, granted to my Executor or Trustee
by any other provisions of this Will if and to the extent that
such rights, powers, duties, authority, privileges or immunities
would disqualify for the marital deduction the legacy devised and
bequeathed to my Trustee by this "A" of "EIGHTH".

Upon the death of my wife, my Trustee shall distribute
the entire principal of this "Power of Appointment Trust" then
remaining as she shall appoint, in trust or otherwise, by her
Will which specifically refers to and exercises this power of
appointment (including the power in her to appoint the entire
principal to her estate) and if and to the extent that she shall
fail effectively to exercise such general power of appointment
then such principal shall be added to my residuary estate and
disposed of as therein provided.

B - My Trustee shall hold, manage, invest and
reinvest the "Estate Trust", collect the income therefrom and
accumulate the net income earned from and after the date of my
death, so long as my wife shall live, and upon her death shall
distribute the principal of this separate trust then remaining,
plus all accumulated income and any accrued or collected but un-
distributed net income, to her estate.  My Trustee is authorized
to pay to my wife, or apply for her benefit, such sums from the
accumulated income or principal of this "Estate Trust" as, in
its discretion, seems advisable for her maintenance and welfare,
provided, however, that no such payment or application shall be
made to or for the benefit of my wife unless and until the prin-
cipal of the "Power of Appointment Trust" hereinabove created is
exhausted.

As used in this "B" of "EIGHTH" the term "income" shall
include all the income that may be required to qualify this
"Estate Trust" for the marital deduction allowable in the Federal
estate tax proceeding in my estate.  I hereby expressly provide

-10-

that the Trustee of this separate "Estate Trust" shall not have
any rights, powers, duties, authority, privileges or immunities,
whether or not discretionary, granted to my Executor or Trustee
by any other provisions of this Will if and to the extent that
such rights, powers, duties, authority, privileges or immunities
would disqualify for the marital deduction the "Estate Trust"
created by this "B" of "EIGHTH".

So long as any part of this legacy shall remain unpaid,
my wife shall be entitled to receive such part of the income of
my estate as will equal three and one-half per cent (3-1/2%) per
annum from the date of my death on any unpaid part of said
legacy. Such interest shall be in lieu of any interest or other
income on this legacy. I direct that any income tax paid by my
Executor in respect of income attributable to this legacy, shall
be charged to and paid from the amount payable under this para-
graph in such equitable manner as my Executor shall determine.

My Executor is authorized to satisfy this legacy in
cash or in kind, or partly in cash and partly in kind, and any
property so distributed in kind shall be valued for that purpose
at its value on the date or dates of distribution to my Trustee
or on its basis to my estate for United States income tax pur-
poses, whichever shall be lower; provided, however, that I request
(but do not direct) that any distribution made in kind be made
with assets having a date of distribution value which does not
exceed (or exceeds by the smallest amount possible) their basis
for United States income tax purposes.

NINTH: All of the rest, residue and remainder of my
estate, real or personal, of whatever nature and wherever located,
to which I shall be in any way entitled at the time of my death,
including any legacy which may lapse or be invalid or for any
other reason fail to take effect (but excluding any property over
which I may have at the time of my death any power of appointment

-11-

or disposal, it being my express intention not to exercise any such power by this "NINTH"), shall be disposed of as follows:

I devise and bequeath my residuary estate to my Trustee, IN TRUST, to hold, manage, invest and reinvest the same, to collect the income therefrom and to pay over the entire net income, at least quarter-annually throughout the term of this trust, to my three children, Mildred Boslov, Sally Kleeberg and Lester Eber, or apply the same for their benefit, in equal shares. In case any of my three children shall predecease me or shall die prior to the termination of this trust, then, after the death of such child, or after my death if any such child shall predecease me, the income shall be paid to, or applied for the benefit of, my lineal descendants living from time to time throughout the term of this trust, per stirpes. This trust shall continue throughout the lives of my three children and shall terminate upon the death of the last survivor thereof; provided, however, that in case all, or substantially all, my stock of Eber Bros. & Co., Inc., shall be theretofore sold, my Trustee may, in its absolute discretion, sooner terminate this trust and distribute the corpus thereof then remaining; and further provided that in case none of my children shall survive my sister-in-law, Rose Eber, and all, or substantially all, my stock of Eber Bros. & Co., Inc., shall not have been sold prior to the death of the last survivor of my said children, this trust shall continue until after the death of my said sister-in-law.

Upon the termination of this trust, I devise and bequeath the corpus thereof then remaining to my then living lineal descendants, per stirpes.

I authorize and empower my Trustee to pay to any income beneficiary under this "NINTH" such amounts of principal as it, in its absolute discretion, may deem necessary or advisable for the care, maintenance or welfare of any such beneficiary or

-12-

member of his or her family, provided, however, that any such principal payments shall be charged against the trust from which such beneficiary shall then be entitled to receive income and shall be adjusted equitably, as determined by my Trustee, in its absolute discretion, upon final distribution of the corpus of such trust.

TENTH: Notwithstanding any of the foregoing provisions of this Will, if any portion of my estate (including the income from any trust hereunder) shall at any time be or become payable or distributable to a minor or an incompetent because of the provisions of this Will or the authorizations contained herein, or by operation of law, such interest shall vest in absolute ownership in such minor or incompetent and:

A - my Executor or Trustee, as the case may be, is authorized in its absolute discretion and without authorization by any court during such minority or incompetency:

1 - to defer payment or distribution of the whole or any part of such interest and, in the meantime, to hold, manage, invest and reinvest the same, to collect the income therefrom and to pay to, or apply for the benefit of, such minor or incompetent so much of the net income and principal thereof as such Executor or Trustee, in its discretion, deems advisable for the maintenance, education and welfare of such minor or incompetent, accumulating the income not so paid or applied. The principal thereof and any accumulated income shall be paid or distributed to such minor when such minor reaches the age of twenty-one (21) years, or to such incompetent or his or her committee or other legal representative at any time.

2 - to permit a minor or incompetent to have the use or possession of any real or tangible personal property.

B - my Executor and Trustee shall be entitled to receive compensation with respect to any property held for any

-13-

minor or incompetent pursuant to the provisions hereof at the same rate and in the manner payable to testamentary trustees.

C - my Executor and Trustee shall not be required to render annual accounts to any court nor to furnish a bond or other obligation for the faithful performance of its duties.

ELEVENTH:  As stated above, it is my wish that my voting control of Eber Bros. & Co., Inc., can be retained and, subject to that primary wish, I hope that my interests in certain other close corporations can also be retained and that my son, Lester, may have an opportunity to participate in the management thereof.  I accordingly expressly authorize my Executor to retain and transfer to my Trustee and my Trustee to retain my stock of Eber Bros. & Co., Inc., and my interests in any other close corporations or in any unincorporated business with which I may be connected at the time of my death, and, although this shall not be deemed a direction to retain such corporate stocks or business interests, I, nevertheless, direct that neither my Executor nor my Trustee shall be responsible or accountable for any loss to my estate resulting from the retention of any such corporate stocks or business interests, provided only that it shall have acted in good faith.

TWELFTH:  I nominate my son, Lester, my attorney, Elliott W. Gumaer, jr., and Marine Midland Trust Company of Rochester, of Rochester, New York, Executors hereof and Trustees of the trusts created under "EIGHTH" and "NINTH" hereof.  In the event Elliott W. Gumaer, jr., does not survive me, or fails to qualify or ceases to act as such Executor or Trustee prior to completing the administration of my estate or of the trusts created hereunder, then in such event I nominate my attorney, Sterling L. Weaver, Executor hereof or Trustee hereunder as the case may be.  I direct that my son shall serve in each such fiduciary capacity without compensation.  I direct that no

-14-

individual Executor or Trustee acting hereunder shall be required
to furnish bond or other security in such capacity in any juris-
diction.

      I request that my Executor and Trustee associate itself
in any discussions concerning the continuing operation, sale or
liquidation of any business or businesses controlled by me at the
time of my death, with my cousin, William Eber.

      I grant to my Executor and Trustee and its successor
or successors, the following powers in addition to those else-
where herein granted or conferred by law, with respect to all
property, real or personal, owned by me at my death or at any
time forming part of my estate or any trust hereunder, including
accumulated income and property held under a power in trust,
until the final distribution thereof:

      A - To retain any such property, including shares
of stock of my corporate Executor and Trustee or shares of stock
of a corporation having voting control of such Executor and
Trustee, as an investment without regard to the proportion which
it and other property of a similar character held hereunder may
bear to my entire estate or the trust in which such property is
held and whether or not such property is of the class in which
trustees are authorized by law or rule of court to invest trust
funds;

      B - To sell, exchange or otherwise dispose of any
such property at public or private sale, wholly or partly on
credit or for cash or for any other consideration including
stocks, bonds or other obligations and to grant options for the
purchase, exchange or other disposition thereof;

      C - To invest and reinvest in property of any
character, real or personal, located in or outside New York State,
including, but not limited to, bonds, notes, debentures, mort-
gages, leases, common and preferred stocks, undivided interests

-15-

and legal and discretionary common trust funds, without being
limited to investments authorized by law or rule of court for
trust funds, and without regard to the proportion which all such
property and other property of a similar character held hereunder
may bear to my entire estate or the trust in which such property
is held;

D - To exercise or sell any options and any con-
version, subscription, voting and other rights pertaining to
any such property and to grant proxies, discretionary or other-
wise, in respect thereof;

E - To consent to and participate in any plan of
reorganization, consolidation, merger, combination, recapitaliza-
tion, reclassification, liquidation or other plan and to consent
to any contract, lease, mortgage, purchase, sale or other action
by any corporation;

F - To deposit any such property with any protec-
tive, reorganization or similar committee, to delegate discretion-
ary power thereto, to pay part of such committee's expenses and
compensation and any assessments levied with respect to such
property and, in its discretion, to charge such expenses, compen-
sation and assessments to principal or income;

G - To manage any real property in the same manner
as though the absolute owner thereof, including, but not limited
to, the power to lease the same without application to any court,
for any term of five years or more or less, although such term
may extend beyond the period of administration of my estate or
any trust hereunder, with options for renewals and the purchase
or disposal of buildings thereon or to be placed thereon and to
make agreements other than those specifically mentioned; to make
ordinary or extraordinary repairs and alterations to any build-
ing, to raze old buildings and to erect new buildings and make
other improvements; to insure against loss by fire or other casu-

-16-

alties; to subdivide and plot any such property; to abandon such
property, to refrain from paying taxes and maintenance charges
thereon and to convey any such property without consideration;
to partition any such property, even though it may hold an
interest in the same property in its own right or in some other
capacity; to extend any existing mortgage; to borrow upon the
security of any such property, and to execute mortgages as
security therefor;

H - To borrow money from itself or others for the
benefit of my estate or any trust hereunder, and to secure the
loan by pledge or mortgage of the property of my estate or any
trust and to renew existing loans;

I - To extend the time of payment of any obliga-
tion held hereunder and to compromise, settle, arbitrate or
abandon any claim in favor of or against my estate or any trust
hereunder;

J - To cause any securities or other property held
hereunder to be registered in the name of a nominee or in its own
name, without the addition of any word or words showing its
fiduciary capacity;

K - To make any division or distribution required
hereunder in cash or in other property, real or personal, or un-
divided interests therein, or partly in cash and partly in such
other property, and pro rata or otherwise as to any particular
asset;

L - To abandon property which it determines not
to be worth protecting;

M - To receive additional property from any
source and add it to and mingle it with the trust or trusts
created hereunder;

N - To sell to Eber Bros. & Co., Inc., and/or
Eber Bros. Wine & Liquor Corp., for redemption or other purpose,

-17-

sufficient of my shares of stock in said corporations to produce
a sum not in excess of (1) the amount of estate, inheritance,
legacy and succession taxes (including any interest collected as
a part of such taxes) imposed because of my death, and (2) the
amount of funeral and administration expenses allowable as
deductions in determining the amount of Federal estate tax
imposed because of my death;

   O - To continue the operation of any business in
which I am engaged at the time of my death whether through stock
ownership or otherwise for such period of time as it may deem
advisable, at the risk of my general estate and without personal
liability on its part; to take part in the management of such
business; to select and vote for directors and/or officers
thereof; to act as directors and/or officers thereof, either
individually or through an officer or officers of my corporate
Executor and Trustee; to take such steps with respect to naming
or changing officers constituting or reconstituting the managing
and/or operating personnel thereof as it deems proper and to act
with respect to any other matter in connection therewith which
my Executor or Trustee deems advisable;

   P - To file a joint return of income with my
spouse for any taxable year or period ending at or prior to
January 1 of the year following my death, for which such a return
may be filed, pursuant to any Federal or State law making pro-
vision for the division of taxable income between spouses, and
to pay from my estate any part or all of the tax due upon any
such return of income or any adjustment or restatement thereof;

   Q - To consent, pursuant to any Federal or State
law making provision for the division of taxable gifts between
spouses, to any gift made by me or by my spouse prior to my
death, so that it shall be considered as made one-half by me
and one-half by my spouse; and if such consent be given to file

-18-

proper returns accordingly and to pay from my estate any and
all liability for gift tax upon any such gift;

      R - To do all such acts, take all such proceedings
and exercise all such rights and privileges, although not herein-
before specifically mentioned, with relation to any such property,
as though the absolute owner thereof, and in connection therewith
to make, execute and deliver any instruments and to enter into
any covenants or agreements binding my estate or any trust here-
under.

      Whenever, pursuant to any provision of this Will, my
Executor or Trustee is required or permitted to pay to or apply
for the benefit of a minor any legacy or the income or principal
of any trust fund or share, my Executor or Trustee may make such
payment or application by paying the same directly to such minor
or to the parent or guardian of such minor or to the person with
whom such minor resides, and the receipt of such parent or guar-
dian or such person with whom such minor resides shall be a full
and complete discharge and acquittance to my Executor or Trustee
to the extent of the payments to them.

      THIRTEENTH:  With respect to all trusts hereunder
except the trusts created under "EIGHTH" hereof, dividends and
other distributions due to stock ownership received by my
Executor or Trustee shall be treated as follows:

      A - Dividends, except liquidating dividends,
payable only in cash, whether ordinary or extraordinary, shall
be income;

      B - All capital gains distributions shall be
principal;

      C - All other dividends or distributions shall
be allocated to principal except as and to the extent that my
Executor or Trustee shall determine that such dividends or
distributions were made partially or wholly in lieu of what would

-19-

be declared as a regular cash dividend without regard to statutory presumptions. My Executor or Trustee shall be entitled to rely upon any information received from any corporation relating to any such dividend or distribution and the determination of my Executor or Trustee shall be binding and conclusive upon all persons interested in the trusts created hereunder and shall not be subject to judicial review.

FOURTEENTH: I direct that all estate, inheritance and transfer taxes and succession duties imposed upon or in respect to my entire taxable estate shall be charged to and paid from my residuary estate.

Whenever my Executor is given (a) a choice of dates as of which to value property for estate tax purposes, or (b) a choice to treat or use an item either as an income tax deduction or an estate tax deduction, or (c) the right, if any, to elect to pay all or part of an estate tax in installments with interest, my Executor may make such choice or election as to it, in its sole and uncontrolled discretion, shall seem advisable, regardless of the resulting effect on other provisions of my Will or any person interested in the amount of such taxes, and any person adversely affected by such choice or election shall not be entitled to any reimbursement or adjustment by reason thereof.

FIFTEENTH: If my wife and I shall die under such circumstances that there is no sufficient evidence that we died otherwise than simultaneously, I direct that for the purposes of this Will she shall be deemed to have survived me.

SIXTEENTH: The neuter gender whenever used herein shall include the masculine and feminine and the singular shall include the plural wherever necessary or appropriate.

LASTLY: I hereby revoke all former Wills and Codicils by me made.

-20-

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _27th_ day of _OCTOBER_, in the year One thousand nine hundred and sixty-nine.

_Allen Eber_(L.S.)

The foregoing instrument was on the day of the date thereof subscribed by ALLEN EBER, the Testator named therein, in our presence and in the presence of each of us, and he at the same time declared to us that the said instrument was his Last Will and Testament, and we at his request and in his presence and in the presence of each other have subscribed our names as witnesses thereto on the said _27th_ day of _October_, 1969.

_Elizabeth Murray_ residing at _Rochester, New York_

_Helen Siebens_ residing at _Penn Yan, New York_