UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>     Plaintiffs,<br><br>  v.<br><br>LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; CANANDAIGUA NATIONAL BANK & TRUST COMPANY; ESTATE OF ELLIOTT W. GUMAER, JR.; EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; and WENDY EBER,<br><br>     Defendants. | Civil Action No.  16-CV-9517(LAK) |

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY UNDERBERG & KESSLER FROM REPRESENTING EBER BROS. & CO., INC AND EBER BROS. WINE AND LIQUOR CORP.**

---

        Brian C. Brook (BB 1980)
        CLINTON BROOK & PEED
        100 Church Street, 8th Floor
        New York, New York 10007
        Telephone: (212) 257-2334
        Facsimile: (646) 257-2887
        Brian@clintonbrook.com

        *Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTS ..................................................................................................................................... 1

    A.    Background on the Trust and Eber Bros. ................................................................. 1

    B.    With Help from U&K, Lester and Wendy Eber Took Eber-Conn ....................... 3

        1.    The "Arm's Length" Polebridge Bowman Transaction ................................. 3

        2.    First, Lester Tried to Take Eber-Conn for Himself for "No Consideration" ................... 3

        3.    Instead, Lester Sued EBWLC Supposedly to Foreclose on $3 million of Debt (the "Foreclosure Action") ............................................................. 5

    C.    Plaintiffs Asserted Derivative Claims on Behalf of EB&C and EBWLC ......................... 6

    D.    U&K Represents All the Eber Parties ................................................................. 6

ARGUMENT ........................................................................................................................... 7

I.    Plaintiffs Have Standing to Seek Disqualification .............................................................. 7

II.    Disqualification Is Warranted Because U&K Is Deeply Conflicted ................................... 8

III.    Independent Counsel Would Help Ensure that Discovery Is Completed in Good Faith ..... 11

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Fox v. Idea Sphere, Inc.*,
  2013 WL 1191743 (S.D.N.Y. 2013) .................................................................................. 9, 10

*Garlen v. Green Mansions, Inc.*,
  193 N.Y.S. 116 (N.Y. App. Div. 1959) ..................................................................................... 9

*Langer v. Garay*,
  293 N.Y.S.2d 783 (N.Y. App. Div. 1968) .................................................................................. 9

*MacKay v. Pierce*,
  446 N.Y.S.2d 403 (N.Y. App. Div. 1982) ................................................................................ 10

*McAlinden v. Wiggins*,
  543 F.Supp. 1004 (S.D.N.Y. 1982) ......................................................................................... 9

*Russo v. Zaharko*,
  385 N.Y.S.2d 105 (N.Y. App. Div. 1976) ............................................................................ 9, 10

*Scott v. New Drug Services, Inc.*,
  1990 WL 135932, 16 Del. J. Corp. L. 1561 (Del. Ch. 1990) ..................................................... 9

**Statutes**

N.Y. B.C.L. § 626(a) ......................................................................................................................... 8

**Rules**

N.Y.R.P.C. 1.13 ..................................................................................................................... 10, 11

N.Y.R.P.C. 1.7 ........................................................................................................... 7, 10, 11, 12

N.Y.R.P.C. 3.4 ............................................................................................................................. 11

Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein respectfully submit the following memorandum of law in support of their motion to disqualify Underberg & Kessler, LLP from representing Eber Bros. & Co., Inc. ("EB&C") and Eber Bros. Wine and Liquor Corporation ("EBWLC").

## PRELIMINARY STATEMENT

Underberg & Kessler, LLP ("U&K") faces an intractable conflict representing both the Ebers and the corporations that are alleged to be the direct victims of their malfeasance. The conflict is exacerbated by U&K's previously conflicted role, representing both sides of the 2012 transaction that Plaintiffs seek to unwind, for EBWLC's benefit.

To be sure, the upside of granting this motion is limited, at least so long as U&K's individual clients remain entrenched in their positions with EB&C and EBWLC. Even independent counsel can only advise, and cannot dictate. But, at the same time, the cost of granting the motion is also relatively limited. The primary function of counsel that is needed here is a lawyer who can convincingly demonstrate good faith compliance with discovery obligations.

We note at the outset that this motion is limited to disqualifying U&K from representing EB&C and EBWLC. In accordance with the Court's instructions at the November 7, 2018 conference, the potential issue of whether Paul Keneally will be a necessary witness and whether that would result in disqualification from representing the other Eber Parties is being reserved until after this Court reviews the documents produced *in camera* and rules on the pending motion to compel production of a great many of those documents currently being withheld from Plaintiffs.

## FACTS

**A. Background on the Trust and Eber Bros.**

As alleged in more detail in the Second Amended Complaint, from 1970 until its

1

dissolution in 2017, there existed a testamentary trust (the "Trust") in which Plaintiffs (and their mothers before they passed) and Defendant Lester Eber ("Lester") were beneficiaries. The Trust was managed by three co-trustees: (1) Lester, (2) Elliott Gumaer ("Gumaer"), and a bank (originally Midland Marine Bank but, since 2007, Canandaigua National Bank ("CNB")). The Trust controlled the family's wine and liquor distributorship business.

Specifically, the Trust held all 1850 Class A voting shares in Eber Bros. & Co., Inc. ("EB&C"). EB&C is, at this point, just a holding company. It holds all of the common voting stock in Eber Bros. Wine and Liquor Corporation ("EBWLC"). Through EBWLC and its subsidiaries, Eber Bros. distributed wine and liquor throughout New York state and others until 2007, when EBWLC apparently ceased its active operations and became essentially a holding company—albeit one with a lot of liabilities, including pension obligations for its former employees.

Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), Inc. was a direct subsidiary of EBWLC until June 2012. And Eber Metro has held a controlling interest in Eber-Connecticut, LLC ("Eber-Conn") since 2005, when Eber Metro acquired the Slocum & Sons distributorship in Connecticut, Rhode Island, and Maine.[1] Specifically, Eber-Conn was merged with Slocum & Sons, Inc., with Eber-Conn as the surviving entity. As of approximately 2010, Eber-Conn was the only operating business in the Eber Bros. family. *See also* Ex. A (pre-2010 organizational chart).

In terms of corporate management, EB&C and its subsidiaries have generally been managed by Lester, Gumaer, and Lester's daughter, Wendy Eber ("Wendy"). All three served as directors, while only Lester and Wendy served as officers. Their exact roles in each entity

---

1 Similarly, Slocum & Sons of Rhode Island, Inc. was merged into Eber-Rhode Island, LLC. For reasons we do not understand, Slocum & Sons of Maine, Inc. was treated differently. It ended up being owned by Lester and Wendy Eber individually—it was not merged into a new Eber Metro-owned entity like Connecticut and Rhode Island. When we requested a copy of the Merger Agreement to shed some light on this, defense counsel claimed that the document could not be located. Brook Decl. ¶ 4 & Ex. B. Given the foundational importance of such a document, the Ebers' counsel's response is likely based on either misinformation or insufficient effort to try to locate the document.

apparently changed over time, though the reasons for the changes are far from clear. It appears that Lester was President or CEO of each entity at least until February 2012, when he resigned from EBWLC, apparently on the advice of counsel. *See* Ex. C (Response to Interrogatory No. 21: asserting "privilege" and refusing to state why he resigned).

### B. With Help from U&K, Lester and Wendy Eber Took Eber-Conn

Through a series of transactions starting in mid-2010, Lester ultimately took Eber-Conn away from the Eber Bros. family business and put it into Alexbay—a company that he owned himself. Subsequently, however, it seems that Wendy has also acquired part of the ownership interest in Eber-Conn, though we are still waiting to see what documentation exists on that.

*1. The "Arm's Length" Polebridge Bowman Transaction*

In May 2010, Eber Metro sold a portion of its equity interest in Eber-Conn to Polebridge Bowman Partners, LLC ("Polebridge"). This amounted to a six percent stake in Eber-Conn, for the purported purchase price of $350,000. However, no cash was actually received. Instead, Eber Metro simultaneously received a promissory note from Polebridge for the amount of $350,000. Ex. D. This was a roundtrip transaction with no real economic substance; in other words, a sham. Moreover, despite its name, Polebridge involved no "Partners" because the company was owned by one man alone: a lawyer/strategic consultant named Glenn Sturm. Sturm purportedly represented one or more of the Eber Parties.

*2. First, Lester Tried to Take Eber-Conn for Himself for "No Consideration"*

Lester Eber, LLC (now, Alexbay, LLC) was formed on or about December 8, 2011, in the State of Connecticut. On that same date, Lester filed an affidavit with the Connecticut liquor licensing board, attesting—under penalty of perjury—to the following:

3

1. I make this affidavit from my own knowledge and belief. I understand that I am making this affidavit under penalty of false statement.
2. This affidavit is being made as part of an application to the Department of Consumer Protection Liquor Control Division to transfer stock in the entity known as Eber-CT. Eber-CT is the backer of LIW0000596.
3. Presently, 79 percent of Eber-CT is owned by me through an entity known as Eber Metro.
4. I wish to transfer all of that 79 percent that I own from Eber-Metro to Lester Eber LLC, an entity which will also be wholly owned by me.
5. This transfer is being done for no consideration, in that it is being done strictly for organizational purposes. No money or other consideration will change hands.

*Lester Eber* (signature)

Lester Eber

Ex. E. Although this is something that Lester presumably had been working on for a while, and with legal assistance, no documents on Defendants' Privilege Log appear to relate to these December 2011 events, suggesting either inaccurate subject matter descriptions, or significant omissions. According to the Ebers, the lawyer involved in forming Alexbay was named Jerry Farrell. Ex. F at 2 (misspelling the name "Ferrell"). Curiously, Mr. Farrell apparently had no written privileged communications with his client—at least according to the Ebers' Privilege Log.

At the same time, there are numerous entries for the days immediately following the date of Lester's affidavit. *See, e.g.*, EB-00026667 (Dec. 9, 2011). These discussions are with lawyers from U&K, including Paul Keneally. The Court will be able to look at the *in camera* documents it received to determine whether, as Plaintiffs suspect, the real strategic decision making behind Lester's moves in December 2011 occurred through discussions with Keneally and, perhaps, Sturm.

At some point in the following weeks, Lester Eber, LLC was renamed Alexbay, LLC—making it the first Eber-affiliated company to not have "Eber" in its name.

4

> 3. *Instead, Lester Sued EBWLC Supposedly to Foreclose on $3 million of Debt (the "Foreclosure Action")*[2]

After attempting to transfer Eber-Conn to himself for literally nothing back to the companies controlled by the Trust, Lester and his cohorts engaged in a series of transactions that suggest he used his lawyers to accomplish the same goal—taking EBWLC for himself—with at least the appearance of legitimacy.

On February 21, 2012, Alexbay filed a Summons and Complaint against EBWLC in Monroe County Supreme Court, Ex. G, with Eber-Metro named as a nominal defendant because the lawsuit sought to transfer all of Eber-Metro's shares from EBWLC (the Trust) to Alexbay (just Lester), supposedly to satisfy over $3 million in debt. Alexbay and Lester represented to the court that the amount of the debt was equivalent to or greater than the value of Eber Metro and its stake in Eber-Conn. It supported that representation by reference to the six-percent interest sale to Polebridge Bowman. Ex. G ¶¶ 32–36. The complaint asserted that Polebridge Bowman acquired its interest "in an arm's length transaction" that occurred through "the free market." *Id.* ¶¶ 33, 36.

Representing Alexbay was U&K; specifically, Mr. Keneally, along with Michael Beyma and William Brueckner. Ex. F at 2. Although only the latter two were counsel of record. Ex. G at 1. Mr. Keneally insists that he had no substantive involvement in the Foreclosure Action itself. ECF No. 142, at 3. But he stops short of disclaiming involvement in planning it, or in helping Lester come up with the overall strategy. The Foreclosure Action itself was just an attempt to put some gift wrapping and a bow on a transaction that was designed to defraud both EBWLC's other creditors and its shareholders. It is U&K's involvement behind closed doors in developing that strategy that is of primary concern—not what happened out in the open in a sham lawsuit.

---

[2] The Second Amended Complaint ¶¶ 55–75 contains additional detail. ECF No. 88.

### C. Plaintiffs Asserted Derivative Claims on Behalf of EB&C and EBWLC

In December 2016, based on some of the above-described conduct (much was not yet known), the original Complaint asserted two principal substantive counts: Count I (Breach of Fiduciary Duty) and Count II (Fraudulent Concealment). It expressly stated that Plaintiffs were asserting those claims "derivatively" on behalf of EB&C and EBWLC. *See* Compl. ¶ 71 (stating that Plaintiffs bring the breach of fiduciary duty claim "derivatively as the beneficial owners" of EB&C and EBWLC); *id.* ¶ 94 (same as to fraudulent concealment claim).[3]

Notably, EB&C and EBWLC are not the only nominal defendants named in the Complaint. Both Eber Metro and Eber-Conn are also named as defendants, even though they are not alleged to have done anything wrong, because fashioning equitable relief could require their participation. Alexbay, LLC, was different, however. The Complaint asserted an aiding and abetting breach of fiduciary duty count against Alexbay, which was impliedly derivative since it was based on the expressly-derivative Count I. Compl. ¶¶ 107–10

To summarize what arguably should have been made clear in the case caption, the actual defendants who are alleged to have engaged in wrongdoing and stand to lose something in this case are Lester, Wendy, Gumaer, CNB, and Alexbay. The remaining entities—EB&C, EBWLC, Eber Metro, and Eber-Conn—are merely nominal defendants.

### D. U&K Represents All the Eber Parties

CNB and Gumaer each retained independent counsel. All the other named defendants retained U&K: both nominal—EB&C, EBWLC, Eber Metro, Eber-Conn—and actual—Lester, Wendy, and Alexbay (together, the "Eber Parties"). Unlike the other Defendants, the Eber Parties

---

[3] After the Trust was terminated in mid-2017 and after receiving some initial discovery, Plaintiffs amended their pleadings. The Second Amended Complaint ("SAC") continues to expressly assert derivative claims on behalf of the corporate entities. *See* SAC ¶¶ 120, 147.

did not move to dismiss the Complaint.

At the time this lawsuit was filed, Plaintiffs only knew U&K as the firm that had represented Alexbay in the Foreclosure Action. In the course of discovery, we have learned that Underberg & Kessler had been previously retained by EBWLC in May 2011 to represent it in a litigation matter, with Paul Keneally apparently as lead counsel. *See* Ex. H. Shortly thereafter, attorneys from the same firm, William Brueckner and Michael Beyma, represented Alexbay in suing EBWLC in the Foreclosure Action. *See* Ex. G (Summons dated Feb. 21, 2012). Although it was not apparent from the public filings, it seems that the Alexbay legal team included Mr. Keneally. *See, e.g.*, Privilege Log[4] at EB-00026272-73; EB-00026637; EB-00026651; EB-00026657. At the same time that Underberg was suing EBWLC, Underberg was also drafting documents for EBWLC, *see* Privilege Log at EB-00026637, and engaging in "privileged" communications with Wendy about it, even though she was the President of EBWLC who was tasked with evaluating the transfer. There apparently was no separate engagement for the Alexbay matter, nor any written conflict waiver, as required by New York Rules of Professional Responsibility. *See* N.Y.R.P.C. 1.7(b)(4).

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING TO SEEK DISQUALIFICATION

Plaintiffs have standing to assert the conflict to disqualify counsel because they can assert it derivatively, on behalf of EB&C and EBWLC, as shareholders of EB&C, which controls EBWLC.

As the Court is aware, questions have arisen concerning who has the voting rights in the

---

[4] Because we understand that a new, electronic privilege log will be delivered shortly, we do not again attach a copy of the Privilege Log to this motion.

shares of EB&C. It is our understanding that the Ebers take the position that all 1850 Class A voting shares in EB&C are still in the name of the Trust. This, even though Lester is a co-trustee and consented to entry of an Order for Judicial Settlement of Final Account and Termination of the Trust. *See* Ex. I at 1 (showing that Lester entered an appearance through counsel). That Order expressly required CNB, in its capacity as co-trustee, "to pay the remaining cash and to transfer, assign, and deliver the other remaining assets as shown in the account as follows":

> To: Daniel Kleeberg (1/6 share)
> To: Lisa Stein (1/6 share)
> To: Audrey Hays (1/3 share)
> To: Lester Eber (1/3 share)

*Id.* at 3. Thus, Plaintiffs now own 2/3 of the EB&C shares.

Regardless of whether they have voting rights, Plaintiffs have standing to assert derivative claims on behalf of EB&C and, thus, its subsidiary, EBWLC, too. *See* N.Y. B.C.L. § 626(a) ("An action may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor, by a holder of shares or of voting trust certificates of the corporation or of a beneficial interest in such shares or certificates."). Even if the shares are still in the name of the Trust, Plaintiffs still have "a beneficial interest in such shares" and thus can stand in the shoes of the corporation to file suit.

## II. DISQUALIFICATION IS WARRANTED BECAUSE U&K IS DEEPLY CONFLICTED

U&K is undoubtedly a zealous advocate for Lester and Wendy. When lead counsel Paul Keneally speaks about the case, it is clear that he is fighting hard to advance their interests.

The problem arises when it comes to EB&C and EBWLC. Mr. Keneally refers to these entities as "defunct" and "worthless," even though he and his firm are currently counsel of record for those corporations, too.[5] He does so because it advances Lester's and Wendy's interests. If

---

[5] Also, for the record, both companies are still active according to the New York Department of State. *See* Ex. J.

8

Plaintiffs' claims prevail, then EB&C and EBWLC will be far from "defunct" and will have considerable potential value, even if putting a precise dollar amount on it is difficult.

This situation presents an "inherent conflict." *See Fox v. Idea Sphere, Inc.*, 2013 WL 1191743, at *22 (S.D.N.Y. 2013) ("There is thought to be an 'inherent conflict' between a corporation and its shareholders, officers, or directors in a derivative action, because, in essence, the plaintiff alleges that those shareholders, officers, or directors harmed the corporation, and thus the corporation's interests are directly opposed to its codefendants'.") (quoting *McAlinden v. Wiggins*, 543 F.Supp. 1004, 1006 (S.D.N.Y. 1982) ("[J]oint representation in a derivative suit is frowned upon due to the inherent conflict between the corporation and its [officers accused of wrongdoing].")). Specifically, Plaintiffs want Eber Metro to be transferred back to EBWLC from Alexbay, meaning if Plaintiffs win, EBWLC wins and the Ebers lose; but if the Ebers win, EBWLC loses. Accordingly, U&K's representation of EBWLC presents an actual, concurrent conflict.

Courts have found that the existence of such an actual conflict, alone, is enough to require disqualification if the corporation is playing an active role in the litigation. *See Russo v. Zaharko*, 385 N.Y.S.2d 105, 108 (N.Y. App. Div. 1976) ("Although in a derivative action the corporation is usually a passive litigant, in particular cases the relief sought may require an appearance and answer by the corporate defendant. Such appearance must be by independent counsel whose interests will not conflict with those of the individual defendants."); *Langer v. Garay*, 293 N.Y.S.2d 783, 784 (N.Y. App. Div. 1968) (same); *Garlen v. Green Mansions, Inc.*, 193 N.Y.S. 116, 117 (N.Y. App. Div. 1959) (same).[6] These courts apparently believed the conflict—

---

[6] *See also Scott v. New Drug Services, Inc.*, 1990 WL 135932, 16 Del. J. Corp. L. 1561 (Del. Ch. 1990) ("It does not appear at this time that the corporation will be required or it will be in its interest to take an active role in this litigation. Therefore, I will decline to grant the disqualification sought on this ground at this time.").

essentially representing opposite sides—to be too stark to be capable of waiver.[7] *See* N.Y.R.P.C. 1.7(b)(3) (prohibiting representation where one client (corporation) asserts a claim against another client (individual officer)).

Other courts have at least considered the possibility that informed consent for a conflict waiver might be possible. *See, e.g., Fox*, 2013 WL 1191743, at *25 (in a non-derivative lawsuit, assuming arguendo that there were a concurrent conflict of interest, looking to N.Y.R.P.C. 1.13 and finding compliance with it). Rule of Professional Conduct 1.13(d) speaks precisely to the situation of representing an organization and its officers:

> (d) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the concurrent representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

N.Y.R.P.C. 1.13(d). The Rule itself is written broadly to cover all situations and not just derivative litigation. For derivative claims like these, the commentary makes clear that Rule 1.7 is implicated, and thus—at the minimum—informed consent must be obtained. *See* N.Y.R.P.C. 1.13 Comment [14] ("[I]f the [derivative] claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 governs who should represent the directors and the organization.").

Here, there has not even been the semblance of informed consent. Per R.P.C. 1.7, which is

---

[7] Filing a motion to dismiss is one way that courts have found a corporation to take an "active role" that warrants disqualifying corporate counsel. *See, e.g., MacKay v. Pierce*, 446 N.Y.S.2d 403, 404 (N.Y. App. Div. 1982) ("In view of the active role the corporate defendant has taken in seeking to dismiss this action brought for its benefit, it would be better served by having the advice of independent counsel.") (citing *Russo*, 385 N.Y.S.2d 105). Here, none of the Eber Parties filed a motion to dismiss. Active participation has only come into play in connection with discovery, where the Ebers' counsel has been unusually non-cooperative about even the simplest things, like giving a name to the "shipping company" that they repeatedly referenced during the last conference—a name that we are still awaiting.

referenced by R.P.C. 1.13, the concurrent conflict between EBWLC and Lester/Wendy/Alexbay required informed consent, confirmed in writing. N.Y.R.P.C. 1.7. But U&K's engagement agreement with the Eber Defendants reveals that none has been obtained to date. *See* Dec. 13, 2016 Keneally Ltr. at 6, ECF No. 136-13 (2d Mot. Compel Ex. M) (boilerplate language: "we have found no apparent conflicts relative to the representation requested"). In any event, according to R.P.C. 1.13(d), the required consent could not be obtained.[8] That Rule requires either an independent officer (one not subject to the joint representation) or the shareholders to provide such consent. The only officers of EB&C or EBWLC are Lester or Wendy, and they are excluded; the shareholders means Plaintiffs, because they are now the majority shareholders in EB&C—they do not consent.[9]

### III. INDEPENDENT COUNSEL WOULD HELP ENSURE THAT DISCOVERY IS COMPLETED IN GOOD FAITH

Though a nominal defendant in these derivative claims, the adequacy of EBWLC's discovery responses—especially its assertions of privilege—is the central discovery dispute. EBWLC's counsel is responsible for making the initial cut of what documents are being produced, logged, or simply ignored. Put bluntly, however, U&K cannot be trusted to carry out its ethical duties with respect to the necessary discovery sought from EBWLC. *See generally* N.Y.R.P.C. 3.4.[10]

---

[8] In briefing on the motion to compel, the Ebers have argued that Wendy and Lester were capable of consenting to the conflict when U&K represented Alexbay in suing EBWLC, even though EBWLC was then a current client of U&K. ECF No. 144 at 13 ("[T]o the extent a conflict ever did exist, it was waived by the individual or entity with the right to assert it.").

[9] EB&C, in turn, is the majority shareholder in EBWLC. In theory, Lester might try to use his entrenched position in EB&C to "vote" its shares and thereby approve the joint representation on behalf of EBWLC's shareholders. But there is no reason to think that the rule would permit elevating form over substance like that. By directing the inquiry to the shareholders, the point was to ensure that informed consent is obtained from someone other than the person in whose interest it would be to have conflicted counsel.

[10] As noted in the motion to compel, the Privilege Log appears to contain numerous inaccurate descriptions. *See, e.g.*, ECF No. 135 at 5 n.1, 7, 21. And based on the documents that were produced after the first motion, it is clear that those documents were described in a manner that was, at best, misleading. *See, e.g.*, ECF No. 135-17 (Ex. Q).

11

As counsel for EBWLC, U&K is *required* to disclose evidence supporting Plaintiffs' claims of breach of fiduciary duties and fraud—and doing so would not only be ethical, it would also benefit EBWLC by giving it some hope of no longer being "defunct" and asset-less. But U&K also has a duty of loyalty to Wendy, Lester, and Alexbay, which would encourage zealous counsel to fight discovery tooth and nail, and perhaps stonewall things in the hope that Plaintiffs' counsel just cannot pick up all of the loose ends.

In addition, U&K's conflict is worse than merely advancing the interests of some concurrent clients over others. Its direct involvement in the fraudulent transfer means that it is also self-interested. *See* N.Y.R.P.C. 1.7 Comment [10] ("The lawyer's own financial, property, business or other personal interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."). Here, a major part of Plaintiffs' case is going to be demolishing the lies that U&K put before the New York Supreme Court in the 2012 Foreclosure Action. *See supra* Facts § B(3). Those lies not only deprive the Ebers of a potential defense (relying on the court's holding), but also affirmatively support the finding that the Ebers and their accomplices acted with malicious intent when they looted EBWLC of its one and only asset.

\* \* \*

As a practical matter, this motion should not be necessary, because Plaintiffs should be able to select counsel for the corporations that they own. Plaintiffs own two-thirds of the voting shares of EB&C, and are therefore supposed to be able to control EB&C and EBWLC. But the roadblocks put up by U&K to advance the interest of the Ebers, without regard for their corporate clients, will likely delay Plaintiffs' ability to elect the directors of their choosing until after the

close of discovery. In the meantime, there are serious issues about the accuracy and completeness of the documents produced by or on behalf of EBWLC. The Court is aware of some of the issues, including a poorly prepared Privilege Log with demonstrable inaccuracies rampant throughout. That log only looks worse after U&K tried to add a column for the supposed client that self-servingly omits EBWLC as the client throughout, even though it was paying the legal fees, and when the "Subject" was supposedly litigation matters in which EBWLC was the sole defendant (e.g., Harris Beach v. Eber, D-4 v. Eber).

Ultimately, it is not anticipated that new counsel would do all that much, except be in a position to ensure that documents have been preserved and searched appropriately. Plaintiffs have no desire to see costs unnecessarily incurred. But at the same time, the integrity of these proceedings is in question, especially when the Court considers not only U&K's "inherent conflict" in its joint representation, but also U&K's potential desire to protect itself given that it was involved in the underlying transaction and is demonstrably desperate to win this case.

That desperation arguably reached a fever pitch last week, when U&K argued that EBWLC's officers and directors owed no fiduciary duties to Plaintiffs. ECF No. 144, at 14–15. We explained in our reply brief why that is absurd as a matter of law and will not rehash it here. But what is relevant, because it illustrates why the conflict is so dangerous to the integrity of these proceedings, is this: In their Answer, the Eber Parties admitted that Lester and Wendy owed fiduciary duties to Plaintiffs by virtue of the corporate relationships. *See* Compl. ¶ 73 ("As a senior executive of [EB&C] and [EBWLC], Lester owed fiduciary duties to the corporations and to corporations' shareholders."); *id.* ¶ 89 ("As an officer and director of [EBWLC], Wendy owed a fiduciary duty to act in the best interests of the shareholders, including Plaintiffs."); Eber Answer ¶ 2, ECF No. 42 (admitting Compl. ¶¶ 73, 89); *see also id.* ¶ 10 ("Eber Defendants admit Lester

13

Eber and Wendy Eber have certain fiduciary obligations….").

It is worth noting that there is some overlap between this motion and the motion to compel, in that the accuracy of the Privilege Log will be less concerning if we are able to review the documents. But even if this Court were to permit Plaintiffs to inspect EBWLC's logged documents pursuant to the fiduciary exception, that would not do enough to ensure that counsel is acting with appropriate candor. There may be other documents that were, for one reason or another, not logged at all. Without a doubt, the degree to which U&K has allowed its individual clients to engage in unsupervised document searching and collection is a significant cause for concern. But these concerns are articulated to show why Plaintiffs see upside in pursuing this relief. We are not asking this Court to sanction U&K or find any of its prior discovery conduct improper. We only ask that independent counsel be retained to take another look and ensure that all of EBWLC's records have been thoroughly searched and, if withheld, described with reasonable accuracy.

## CONCLUSION

The Court should disqualify Underberg & Kessler from representing Eber Bros. & Co., Inc. and Eber Bros. Wine and Liquor Corporation.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, NY 10007
Tel./Fax: (212) 257-2334
Brian@clintonbrook.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: November 16, 2018

14