# EXHIBIT O

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement"), dated as of February 24, 2017 (the "Effective Date"), is between Eber Bros. Wine & Liquor Corp. ("EBWLC"), Eber Bros. & Co., Inc. ("Eber Bros."), Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), Eber-Connecticut, LLC d/b/a Slocum & Sons ("Eber-CT"), Lester Eber ("Mr. Eber"), Ellen Eber ("Mrs. Eber", and collectively with EBWLC, Eber Bros., Eber Metro, Eber-CT, Mr. Eber, and Mrs. Eber, the "Eber Parties"), and the Pension Benefit Guaranty Corporation ("PBGC", and collectively with the Eber Parties, the "Parties").

### Recitals

A. PBGC is a wholly owned United States government corporation and agency established under 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program created by Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2012, Supp. II 2014)("ERISA").

B. EBWLC sponsored the Eber Bros. Wine & Liquor Corp. Retirement Plan (the "Plan"), which is a single employer defined benefit pension plan covered by Title IV of ERISA.

C. Each of Eber Bros., Eber Metro, and Eber-CT was under common control with EBWLC and was member of EBWLC's "controlled group" within the meaning of 29 U.S.C. § 1301(a)(14) on April 30, 2010 (all of the foregoing, collectively with EBWLC, the "Eber Bros. Controlled Group Members").

D. On May 11, 2015, PBGC filed a complaint against EBWLC, the Plan's administrator, in the United States District Court for the Western District of New York to terminate the Plan, to establish April 30, 2010, as the Plan's termination date under 29 U.S.C. § 1348, and to have PBGC appointed as the statutory trustee of the Plan.

E. On January 19, 2016, the United States District Court for the Western District of New York entered an order granting all of the relief PBGC sought, terminating the Plan, setting the Plan's termination date as April 30, 2010 (the "Termination Date"), and appointing PBGC as statutory trustee of the Plan.

F. Upon termination of the Plan, each Eber Bros. Controlled Group Member became jointly and severally liable for all liabilities under Title IV of ERISA in connection with the Plan's termination including unfunded benefit liabilities, due and unpaid Plan contributions, premiums, and interest on each of the foregoing, totaling $7,985,670 as of August 31, 2016 (the "Title IV Liabilities").

G. On March 31, 2016, the Parties entered into a tolling agreement (the "Tolling Agreement"), tolling the running of all relevant limitations periods and other time-based defenses with respect to the Title IV Liabilities and any and all liens therefor, to allow the Parties more time to negotiate a resolution of the Title IV Liabilities without resorting to further litigation.

1

H. On June 16, 2016, the Parties amended the Tolling Agreement to extend the forbearance period and corresponding tolling period (such tolling period, as so extended, the "Prior Tolling Period") therein to allow the Parties additional time to negotiate a resolution of the Title IV Liabilities without resorting to further litigation.

I. The Parties were unable to reach an agreement before the tolling period expired on July 31, 2016.

J. On August 2, 2016, PBGC perfected statutory liens under 29 U.S.C. § 1368 against the Eber Bros. Controlled Group members in the amount of $2,187,500 (the "Recorded Liens").

K. On September 13, 2016, PBGC timely filed a complaint in the United States District Court for the District of Connecticut (the "Collection Complaint") to collect the Title IV Liabilities and to enforce the Recorded Liens.

L. EBWLC and Mr. Eber acknowledge that Mr. Eber is a participant in the Plan.

M. On the date hereof, Mr. Eber is a majority owner of EBWLC within the meaning of 29 C.F.R. § 4041.2.

N. On the Termination Date, Mrs. Eber was, and continues to be, Mr. Eber's legal spouse.

O. The Title IV Liabilities exceed the sum of the Settlement Payment (as defined below) and the value of benefits to which the Mr. Eber and Mrs. Eber are entitled under the Plan.

The Parties have reached an understanding to settle the Title IV Liabilities and avoid the cost of further litigation and accordingly agree as follows:

1. Cash Payment. Within three days after the Effective Date, the Eber Bros. Controlled Group Members shall pay $2,000,000 in cash (the "Settlement Payment") to PBGC by wire transfer in accordance with the instructions attached hereto as Exhibit A. Eber-CT shall confirm payment and provide documentary evidence of the Settlement Payment via email to Amador.Desiree@pbgc.gov and Gran.Christopher@pbgc.gov.

2. Benefit Election. Within three days after the Effective Date, (a) Mr. Eber shall elect to forgo receipt of all future benefit payments to which he is entitled under the Plan and from PBGC, pursuant to 29 C.F.R. § 4041.47(d) and Section D.1 of PBGC Operating Policy 6.6-2 (an "Election") using the form attached hereto as Exhibit B; (b) Mrs. Eber shall consent to the Election in writing, with her consent witnessed by a notary public (the "Consent") using the form attached hereto as Exhibit B; and (c) Mr. Eber shall deliver the Election and the Consent to PBGC.

2

3. <u>Withdrawal of Collection Complaint</u>. Upon confirmation of receipt of the Settlement Payment, the Election and the Consent, PBGC shall, as soon as reasonably practicable, withdraw the Collection Complaint without prejudice.

4. <u>Withdrawal of Recorded Liens</u>. Upon the occurrence of the Release Date (as defined below), the security interest and lien of the PBGC in the assets of each of the Eber Controlled Group Members shall automatically terminate and be released and the PBGC shall, as soon as reasonably practicable after the Release Date, file notices withdrawing and otherwise confirming the release of the Recorded Liens, and any and all other liens with respect to Title IV Liabilities of the Eber Controlled Group Members, and take all actions and file all necessary and appropriate documents and instruments to effect such withdrawal and release.

5. <u>Release</u>. On the date 91 days after PBGC's receipt of the Settlement Payment and the Election and Consent, if no bankruptcy petition has been filed by or against the payor of the Settlement Payment prior to such date (such date, if any, satisfying this condition, the "<u>Release Date</u>"), PBGC will be deemed to have unconditionally and irrevocably released EBWLC and all other Eber Bros. Controlled Group Members from the Title IV Liabilities. But notwithstanding anything in this Agreement to the contrary, nothing in this Agreement releases any person or entity from any liability under Title I of ERISA, and PBGC expressly retains any and all claims with respect to such Title I liability.

6. <u>Continued Tolling; No Time-Based Defenses as of Effective Date.</u> The running of any and all applicable statutes of limitations, including, without limitation, 29 U.S.C. §§ 1303(e)(6) and 1368(d)(2), with respect to actions by PBGC against EBWLC or any other Eber Bros. Controlled Group Member to enforce and collect the Title IV Liabilities or to enforce any statutory liens is hereby tolled until the Release Date (the "<u>Additional Tolling Period</u>", and together with the Prior Tolling Period, the "<u>Tolling Period</u>"). Neither EBWLC nor any other Eber Bros. Controlled Group Member may use the Tolling Period or any portion thereof to assert or rely on the defense of a statute of limitations, the doctrines of waiver, laches, or estoppel, or any other doctrine or defense constituting an avoidance of PBGC's claims with respect to the Title IV Liabilities or any statutory liens that is based on the time within which such action was commenced by PBGC (any of the foregoing, a "<u>Time-Based Defense</u>"). Each Eber Bros. Controlled Group Member acknowledges and agrees that as of the Effective Date, it does not have any Time-Based Defense. The provisions of this Section 6 are continuing and will survive the termination of this Agreement.

7. <u>Governing Law</u>. Except to any extent preempted by federal law, the laws of the state of Connecticut (without giving effect to its principles of conflicts of law) govern all matters relating to this Agreement. Each Party (a) consents to the exclusive jurisdiction of the U.S. District Court for the District of Columbia and its appellate courts for all matters relating to this Agreement, (b) consents that any action or proceeding relating to this Agreement may be brought in any such court, and (c) waives any objection that it may now or hereafter have to the venue of any such action or proceeding in such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same.

3

8. Entire Agreement. Together with the Tolling Agreement, as amended, this Agreement (including all exhibits) constitutes the entire and final agreement between the Parties with respect to the matters provided for herein and therein and no other agreement or understanding exists between the Parties with respect to such matters.

9. Amendments. This Agreement may not be altered, amended, modified, or otherwise changed in any respect except by an instrument in writing executed by the Party to be charged thereby.

10. Execution; Delivery. This Agreement may be executed in one or more counterparts and by different Parties on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Delivery of an executed counterpart by emailed PDF file (to Wendy Eber at weber@slocumandsons.com for the Eber Parties; to Desiree Amador at amador.desiree@pbgc.gov for PBGC) will be equally as effective as delivery of an original executed counterpart.

11. Severability. If any provision in this Agreement is invalid, inoperative, or unenforceable, the remaining provisions of this Agreement will remain in effect if both the economic and legal substance of the transactions contemplated by this Agreement are not materially affected in any manner adverse to any Party. Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

12. Construction. The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party. Nor will any rule of construction that favors a non-draftsman be applied. A reference to any statute will be deemed also to refer to all rules and regulations promulgated under the statute, unless the context requires otherwise. Unless specifically otherwise provided or the context otherwise requires, the singular includes the plural and the plural the singular; the word "or" is deemed to include "and/or", the words "including", "includes", and "include" are deemed to be followed by the words "without limitation"; the words "herein", "hereof", "hereby", "hereunder", "herewith", and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited; and references to sections or exhibits are to those of this Agreement. Headings in this Agreement are included for convenience of reference only and do not constitute a part of this Agreement for any other purpose.

13. Notices. All notices, demands, instructions, and other communications required or permitted under this Agreement to any Party (a "Notice") must be in writing, will be effective upon receipt, and must be delivered by email or nationally recognized pre-paid overnight delivery service. Unless otherwise specified in a Notice sent or delivered in accordance with the foregoing provisions of this Section, Notices must be sent to the Parties as indicated below:

4

In the case of each Eber Party, to:

>Wendy Eber
>Eber-Connecticut, LLC
>(d/b/a Slocum & Sons)
>30 Corporate Drive
>North Haven, CT 06473
>weber@slocumandsons.com

In the case of PBGC to:

>Pension Benefit Guaranty Corporation
>Office of the Chief Counsel
>Attn: Desirée M. Amador
>1200 K Street NW, Suite 340
>Washington, D.C. 20005-4026
>amador.desiree@pbgc.gov

14. **Authorization.** Each Party represents and warrants that it is authorized to enter into this Agreement. Each signatory represents and warrants that he or she is authorized to execute this Agreement on behalf of the Party for whom he or she has signed.

15. **Advice of Counsel.** Each Party represents and warrants to the other Parties that it has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel with respect to this Agreement and all matters covered by it.

16. **No Third-Party Beneficiaries.** This Agreement is intended to be and is for the sole and exclusive benefit of the Parties and their respective successors and assigns. Nothing expressed or mentioned in or to be implied from this Agreement gives any other person or entity any legal or equitable right, remedy, or claim against the Parties under or in respect of this Agreement.

17. **Costs.** Each Party shall bear its own costs and expenses, including attorneys' fees, in connection with the preparation, execution, and delivery of this Agreement, and in connection with the consummation of the transactions contemplated hereby.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement below.

PENSION BENEFIT GUARANTY CORPORATION

By: _Kan K M_
Name: KARTARLS KHACRA
Title: DEPUTY CHIEF COUNSEL

EBER BROS. & CO., INC.

By: _Wendy Eber_
Name: Wendy Eber
Title: Authorized Signatory

EBER BROS. WINE & LIQUOR CORP.

By: _Wendy Eber_
Name: Wendy Eber
Title: Authorized Signatory

EBER BROS. WINE & LIQUOR METRO, INC.

By: _Wendy Eber_
Name: Wendy Eber
Title: Authorized Signatory

EBER-CONNECTICUT, LLC (d/b/a Slocum & Sons)

By: _Wendy Eber_
Name: Wendy Eber
Title: Authorized Signatory

LESTER EBER
Signature: _Lester Eber_

ELLEN EBER
Signature: _Ellen Eber_

6

PENSION BENEFIT GUARANTY CORPORATION

By: _____
Name:
Title:

EBER BROS. & CO., INC.

By: _____
Name: Wendy Eber
Title: Authorized Signatory

EBER BROS. WINE & LIQUOR CORP.

By: _____
Name: Wendy Eber
Title: Authorized Signatory

EBER BROS. WINE & LIQUOR METRO, INC.

By: _____
Name: Wendy Eber
Title: Authorized Signatory

EBER-CONNECTICUT, LLC (d/b/a Slocum & Sons)

By: _____
Name: Wendy Eber
Title: Authorized Signatory

LESTER EBER

Signature: *Lester Eber*

ELLEN EBER

Signature: *Doris Ellen Eber*

EB-00017677

## EXHIBIT A

### TRANSFER INSTRUCTIONS – State Street Bank & Trust (#3801)

**CASH:**

**FEDERAL WIRE or ACH Transfer**\*
State Street Bank and Trust Company
Boston, Massachusetts
ABA# ▮▮▮▮
Account Number: ▮▮▮▮
Account Name: PBGC State Street
F/F/C Account Number: ▮▮▮
F/F/C Account Name: PBGC Holding Account
Please Ref: Plan name and PBGC Case # in comments section

\*When transferring funds by the federal wire system, State Street Bank should be notified prior to the actual transfer. The PBGC Plan Name and Case Number must be in the comments section of the wire to assure proper credit. Wires sent without this identifying information may be returned. Mr. Boris Getselman can be reached at 202-326-4000 (x-3002) to confirm the transfer. Please send an email identifying the wire amount, plan name, and PBGC case # prior to the date of wire transfer to BGetselman@statestreet.com.

## EXHIBIT B

## ELECTION TO FORGO RECEIPT OF PENSION BENEFIT

I, Lester Eber, am the majority owner of 100% of the issued and outstanding voting stock of Eber Bros. Wine & Liquor Corp. (the "Contributing Sponsor"), which at all relevant times sponsored the Eber Bros. Wine & Liquor Corp. Retirement Plan (the "Plan"). I am also a participant in the Plan. Pursuant to 29 C.F.R. §4041.47(d), Section D.1 of PBGC Operating Policy 6.6-2, and the Settlement Agreement, effective February 24, 2017, between the Pension Benefit Guaranty Corporation, the Contributing Sponsor, Eber Bros. & Co., Inc., Eber Bros. Wine & Liquor Metro, Inc., Eber-Connecticut, LLC d/b/a Slocum & Sons, Ellen Eber, and myself, I hereby forgo receipt of all future payments of the benefit to which I am entitled under the Plan and from PBGC, beginning on the date of this election. I understand that I may not revoke this election.

Signature: _Lester Eber_     Date: February 22, 2017
Lester Eber

## SPOUSE'S CONSENT TO ELECTION TO FORGO RECEIPT OF PENSION BENEFIT

I, Ellen Eber, am married to Lester Eber, the majority owner of the Contributing Sponsor. I consent to my spouse's above-election to forgo receipt of all future payments of the benefit to which he is entitled under the Plan and from PBGC, beginning on the date of this election. I understand that I may not revoke this consent and that I will not be entitled to any survivor benefits from the Plan in the event I survive my spouse.

Social Security Number: ███████

Spouse's full name (Print): Doris Ellen Eber

Spouse's Signature: _Doris Ellen Eber_

Date: February 22, 2017

2

**EXHIBIT B**

To be completed by Notary Public, witnessing the preceding signatures in this Exhibit B:

STATE OF ~~CONNECTICUT~~ New York ⓟ
COUNTY OF Nassau :

Subscribed and sworn to before me at 318 Underhill Blvd. Syosset, NY ⓟ ~~Connecticut~~ this 22nd day of February, ~~2016.7~~ ⓟ

_____
NOTARY PUBLIC

My commission expires April 18, 2019.

KAREN E KEEGAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01KE6239535
Qualified in Suffolk County
My Commission Expires April 18, 2019

2

CONFIDENTIAL

INDEMNIFICATION AGREEMENT dated as of February 24, 2017 (this "Agreement"), between PENSION BENEFIT GUARANTY CORPORATION ("PBGC"), and LESTER EBER ("Eber", and, collectively, the "Parties").

Reference is made to the Settlement Agreement dated as of February __, 2017, between PBGC and Eber and the other parties signatory thereto (the "Settlement Agreement"). Unless otherwise defined herein, defined terms used herein will have the meanings assigned thereto in the Settlement Agreement.

1. Indemnification. In consideration of the covenants, representations and warranties of PBGC set forth herein and in the Settlement Agreement, Eber agrees to indemnify and hold harmless PBGC for any Loss incurred by PBGC. For purposes of this Agreement, "Loss" means all or any portion of the $2,000,000 in cash paid to PBGC by the payor of the Settlement Payment pursuant to Section 1 of the Settlement Agreement that is recovered from PBGC by such payor or any bankruptcy trustee or estate therefor or by any creditor of such payor or estate as a preferential transfer or fraudulent conveyance by such payor under the Federal Bankruptcy Code or any similar applicable state law.

2. Termination. On the Release Date, this Agreement will be deemed to be unconditionally and irrevocably terminated, and shall thereafter be void and of no further effect, without any further action by either Party.

3. Entire Agreement. Together with the Tolling Agreement, as amended, and the Settlement Agreement (including all exhibits), this Agreement constitutes the entire and final agreement between the Parties with respect to the matters provided for herein and therein and no other agreement or understanding exists between the Parties with respect to such matters.

4. Amendments. This Agreement may not be altered, amended, modified, or otherwise changed in any respect except by an instrument in writing executed by the Party to be charged thereby.

5. Execution; Delivery. This Agreement may be executed in one or more counterparts and by different Parties on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Delivery of an executed counterpart by emailed PDF file to the Parties pursuant to Section 8 will be equally as effective as delivery of an original executed counterpart.

6. Severability. If any provision in this Agreement is invalid, inoperative, or unenforceable, the remaining provisions of this Agreement will remain in effect if both the economic and legal substance of the transactions contemplated by this Agreement are not materially affected in any manner adverse to any Party. Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

7. Construction. The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party. Nor will any rule of construction that favors a non-draftsman be applied. A reference to any statute will be deemed also to refer to all rules and regulations promulgated under the statute, unless the context requires otherwise. Unless specifically otherwise provided or the context otherwise requires, the singular includes the plural and the plural the

singular; the word "or" is deemed to include "and/or", the words "including", "includes", and "include" are deemed to be followed by the words "without limitation"; the words "herein", "hereof", "hereby", "hereunder", "herewith", and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited; and references to sections or exhibits are to those of this Agreement. Headings in this Agreement are included for convenience of reference only and do not constitute a part of this Agreement for any other purpose.

8. Notices. All notices, demands, instructions, and other communications required or permitted under this Agreement to any Party (a "Notice") must be in writing, will be effective upon receipt, and must be delivered by email or nationally recognized pre-paid overnight delivery service. Unless otherwise specified in a Notice sent or delivered in accordance with the foregoing provisions of this Section, Notices must be sent to the Parties as indicated below:

In the case of Eber, to:

Lester Eber
Eber-Connecticut, LLC
(d/b/a Slocum & Sons)
30 Corporate Drive
North Haven, CT 06473
leber@slocumandsons.com

In the case of PBGC to:

Pension Benefit Guaranty Corporation
Office of the Chief Counsel
Attn: Desirée M. Amador
1200 K Street NW, Suite 340
Washington, D.C. 20005-4026
amador.desiree@pbgc.gov

9. Authorization. Each Party represents and warrants that it is authorized to enter into this Agreement. Each signatory represents and warrants that he or she is authorized to execute this Agreement on behalf of the Party for whom he or she has signed.

10. Advice of Counsel. Each Party represents and warrants to the other Party that it has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel with respect to this Agreement and all matters covered by it.

11. No Third-Party Beneficiaries. This Agreement is intended to be and is for the sole and exclusive benefit of the Parties and their respective successors and assigns. Nothing expressed or mentioned in or to be implied from this Agreement gives any other person or entity any legal or equitable right, remedy, or claim against the Parties under or in respect of this Agreement.

12. Costs. Each Party shall bear its own costs and expenses, including attorneys' fees, in connection with the preparation, execution, and delivery of this Agreement, and in connection with the consummation of the transactions contemplated hereby.

IN WITNESS WHEREOF, PBGC has caused this Agreement to be executed, and Eber has executed this Agreement as of the date above written.

2

PENSION BENEFIT GUARANTY CORPORATION

By: _____
Name: KARTAR KHALSA
Title: DEPUTY CHIEF COUNSEL

_____
Name: Lester Eber

3

EB-00017683

VIA EMAIL

Citizens Bank, National Association
Corporate Banking Division
209 Church Street
New Haven, CT 06510
Attn: Anthony Castellon, Senior Vice President
anthony.castellon@citizensbank.com

FEB 2 4 2017

       Re: Lien Subordination Agreement

Dear Mr. Castellon:

This letter agreement ("Agreement") sets forth the agreement between the Pension Benefit Guaranty Corporation ("PBGC") and Citizens Bank, National Association ("Lender", and collectively with PBGC, the "Parties") regarding the lien priorities of PBGC and Lender in all assets owned by Eber-Connecticut, LLC ("Borrower").

Borrower obtained (i) a term loan in the original principal amount of $2,939,158.92 on January 31, 2013 (the "Term Loan") from The Canandaigua National Bank and Trust Company (the "Assignor") as evidenced by that certain $2,939,158.92 Promissory Installment Note dated January 31, 2013 made by Borrower in favor of Assignor (the "Term Note") and (ii) a demand loan in the original principal amount of $500,000 on January 31, 2013 (the "Demand Loan" and, collectively with the Term Loan, the "Existing Loans") from Assignor as evidenced by that certain $500,000 Promissory Demand Note dated January 31, 2013 made by Borrower in favor of Assignor (the "Demand Note" and, collectively, with the Term Note, the "Existing Notes").

Assignor is assigning the Existing Loans, together with all documents, agreements, instruments, liens, security interests and collateral evidencing, securing and otherwise relating to such Existing Loans, to Lender pursuant to a separate Loan Purchase and Assignment Agreement of even date herewith (the "Loan Purchase Agreement"). Borrower and Lender have agreed to enter into an Amended and Restated Credit Agreement, of even date herewith (the "Restated Credit Agreement"), to (i) amend and restate the terms and conditions of the Existing Loans, (ii) continue such Existing Loans as revolving credit loans and (iii) provide for the extension of certain additional loans, advances, and extensions of credit to Borrower, including a concurrent advance that will be used to satisfy Borrower's Title IV Liabilities as provided in the Settlement Agreement (as defined below) and certain costs and expenses of Borrower relating thereto and to the Restated Credit Agreement.

On August 2, 2016, PBGC perfected statutory liens under 29 U.S.C. § 1368 against all of the Borrower's assets in the amount of $2,187,500 ("PBGC Lien"). On September 13, 2016, PBGC timely filed a complaint in the United States District Court for the District of Connecticut against the Borrower to enforce the PBGC Lien and collect liabilities owed to PBGC under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2012, Supp. II 2014)("Title IV Liabilities"). PBGC and Borrower have entered into a certain Settlement Agreement, of even date herewith (the "Settlement Agreement"), to resolve Borrower's Title IV Liabilities, including the PBGC Lien, and to provide for the release by PBGC of the PBGC Lien upon the expiration of ninety-one (91) days after the payment in full of said Title IV Liabilities by Borrower as long as no bankruptcy proceeding is filed against the maker of such payment during such ninety-one (91) day period.

For valid consideration, and in consideration of the mutual covenants contained herein, and intending to be legally bound, the Parties agree as follows:

(1) Notwithstanding any provisions of federal or state law to the contrary, or the time or date of any loans or advances made by the Lender, the PBGC Lien shall be, in all respects, subordinate and junior in priority to any and all liens and security interests of the Lender in or on all of the Borrower's assets under Loan Purchase Agreement, the Restated Credit Agreement and the Security Documents (as such term is defined in the Restated Credit Agreement) to the extent of $4,500,000 of principal (plus unpaid interest, charges, costs and expenses, in each case accruing in respect of or attributable to such principal) (the "Subordination Cap"). This Agreement is intended to effect a lien subordination only and is not intended in any way to subordinate in right of payment Borrower's payment obligations to PBGC under the Settlement Agreement to any payment obligations of Borrower to Lender, whether under the Existing Notes, the Restated Credit Agreement or otherwise.

(2) Each Party represents and warrants that (a) its execution, delivery, and performance of its obligations under this Agreement have been duly authorized by all necessary corporate action, (b) this Agreement has been duly executed by its authorized officer or other authorized representative, and (c) this Agreement, once fully executed by both Parties, will constitute a legal, valid, and binding contract and agreement of it enforceable by the other Party, and only by such other Party, against it in accordance with its terms. Each person signing this Agreement on behalf of a Party represents and warrants that he or she is authorized to do so and to bind such Party hereunder.

Please acknowledge your acceptance of and agreement with the foregoing by signing in the space indicated below. This letter may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall be deemed to be one and the same agreement or document. A signed copy of this letter transmitted by facsimile, email or other means of electronic transmission shall also be deemed to have the same legal effect as delivery of an originally executed copy of this letter for all purposes.

[remainder of page left blank; signature page follows]

2

PENSION BENEFIT GUARANTY CORPORATION

By: *[signature]*
Name: KARSAN SEHMSA
Title: DEPUTY CHIEF COUNSEL

CITIZENS BANK, NATIONAL ASSOCIATION

By: *[signature]*
Name: Anthony Castollon
Title: SVP

3

EB-00017686