UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>                    Plaintiffs,<br><br>   v.<br><br>LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; CANANDAIGUA NATIONAL BANK & TRUST COMPANY; ESTATE OF ELLIOTT W. GUMAER, JR.; EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; and WENDY EBER,<br><br>                    Defendants. | Civil Action No.  16-CV-9517(LAK) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO AMEND THEIR COMPLAINT**

Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@clintonbrook.com

*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY ....................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.    Permitting Amendment Would Advance the Interests of Justice ......................... 4

    A.    Corporate Governance Matters ............................................................... 5

    B.    Challenging Additional Transactions that Have Unjustly Entrenched and Enriched Lester and Wendy .......................................................................................... 6

II.    There Is No Just Reason to Deny Amendment ................................................... 7

    A.    Plaintiffs Did Not Unduly Delay Filing .................................................. 7

    B.    There Is No Prejudice .............................................................................. 8

    C.    The Amendments Are Offered in Good Faith Based on Facts .............. 10

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir.1993) .......................................................... 3, 8

*State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843 (2d Cir.1981) ............................................. 3

**Rules**

Fed. R. Civ. P. 15 ................................................................................................................ 3

Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein respectfully submit the following memorandum of law in support of their motion for leave to amend the Second Amended Complaint ("SAC"). A proposed Third Amended Complaint ("TAC") is attached.

## PRELIMINARY STATEMENT

The crux of this lawsuit is the Ebers' taking of the Eber Bros. operating business for themselves and leaving the Trust and its beneficiaries with nothing (the "Metro Transfer"). The proposed Third Amended Complaint ("TAC") annexed hereto does not lose sight of the Metro Transfer as the main focus. Through discovery, which is still ongoing, Plaintiffs have uncovered a lot more about how the Ebers engaged in transactions going back to 2010 to prepare for the Metro Transfer. Despite the convoluted series of transactions used to setup the Metro Transfer, the end result was classic self-dealing.

Many if not most of the new allegations are focused on ensuring that there is a comprehensive resolution and ultimately an effective judicial remedy. For example, some new claims seek to counter the Ebers' more recent efforts to divest Plaintiffs of their beneficial interest in the parent company that was previously held by the Trust. Because none of these proposed amendments will significantly prejudice Defendants (in the relevant procedural sense), they should be permitted.

## PROCEDURAL HISTORY[1]

In December 2016, the original Complaint asserted two principal substantive counts: Count I (Breach of Fiduciary Duty) and Count II (Fraudulent Concealment). Both of these were based on challenges to the Metro Transfer. It identified some of the ancillary transactions that set

---

[1] Because the Court has recently been briefed on several other motions, we will not repeat the essential facts from the current Second Amended Complaint here.

1

Lester up as a secured creditor so that he could take Eber Metro for himself in the ultimate Transfer. Compl. ¶ 49.

The initial scheduling order permitted the filing of amendments without further judicial action through March 31, 2018. Accordingly, even though discovery was still in its infancy, Plaintiffs filed a First Amended Complaint ("FAC") to ensure that the newly identified substantive issues were included in this case.

The FAC added a challenge to Lester's acquisition of personal interests in Slocum of Maine. FAC ¶¶ 92–94, 102. It also challenged the Consulting Agreement between Lester and Southern Wine & Spirits ("Southern"). *Id.* ¶¶ 61–63.

In addition to adding more transactions, the FAC focused more on Gumaer based on Plaintiffs learning that he was a director of the Eber Entities and had had substantial involvement in the Metro Transfer. *Id.* ¶ 116 Accordingly, the allegation was added that Gumaer's compensation should be stripped pursuant to the faithless servant doctrine. *Id.* ¶ 117.

The current operative pleading, the SAC, which was amended in response to concerns from Judge Kaplan about jurisdiction. As pertinent here, the SAC also expanded the scope of the Slocum of Maine challenge to include Wendy. SAC ¶¶ 117–18.

Plaintiffs' desire for leave to amend further was first raised by teleconference on October 16, 2018. The request for leave to amend was more formally raised during the November 7, 2018 conference in connection with the relatively new issues concerning corporate governance. At the time, Plaintiffs indicated that they still needed more discovery from Defendants to be able to full flesh out the amended claims, but nevertheless agreed to submit this motion by November 30, 2018.

On November 28, 2018, Plaintiffs sent a draft of the proposed TAC to defense counsel. The cover email noted that it was partially incomplete since essential, long-awaited documents had only been received by Plaintiffs from the Ebers earlier that same day.

On November 29, 2018, counsel for the Ebers advised that they do not consent. They did not give any reasons for withholding consent other than having insufficient time to review it. On November 30, 2018, counsel for Gumaer's Estate advised that he, too, wanted more time to review.

## ARGUMENT

Rule 15 provides that when leave to amend is required, it should be "freely" granted by the District Court. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993); *see also State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981) ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."). In determining what constitutes prejudice, courts consider whether the amended pleading would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute." *Block,* 988 F.2d at 350. "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.*

Here, Plaintiffs seek to amend in good faith and the amendments will not unduly prejudice defendants.

I. **PERMITTING AMENDMENT WOULD ADVANCE THE INTERESTS OF JUSTICE**

By allowing Plaintiffs to amend their pleadings, the Court will help to ensure that Plaintiffs can obtain complete relief on the claims that they have previously pleaded. Unless Plaintiffs can pursue judicial recourse for Defendants' recent attempts at extra-judicial self-help, their actions will render these proceedings effectively moot. At the same time, the TAC will ensure that recently-discovered past wrongdoing, such as Lester's unjust enrichment from the Consulting Agreement with Southern, is not left uncorrected.

In addition to expanding the available relief and ensuring that this litigation is not an exercise in futility, permitting amendment will allow for some minor corrections or clarifications in the operative pleading. For example, the TAC clarifies which parties are actual versus nominal defendants. Other such changes include deletions of immaterial or repetitive allegations to conserve space, and corrections where the allegations are no longer believed to be accurate. Because there were quite a few such minor changes made for a variety of reasons, we do not attempt to address all of them in this brief.

In sum, the substantive amendments fall into the following categories:

1. Challenges to transactions that were ancillary or preparatory to the Metro Transfer.

2. Challenges to the Ebers' recent efforts to entrench themselves in control of Eber Bros.' corporate governance.

3. Challenges to additional improper transactions, most of which were at least referenced in the SAC.

4. Expanding on the substantive legal bases for the relief that was already sought in the SAC.

5. Removing or correcting factual assertions in the SAC that have been determined to have been incorrect or unnecessary to support the claims.

6. Removing claims against Canandaigua National Bank ("CNB"), which has settled out of the case.

7. Adding more Eber Entities[2] as nominal parties to ensure complete relief is possible.

These are precisely the sorts of amendments that courts routinely allow, and which actually help rather than prejudice defendants, because they provide a clearer roadmap of the plaintiffs' case.

### A. Corporate Governance Matters

As discussed at the last conference, a dispute has arisen about who has the voting rights in the shares of EB&C. It is our understanding that the Ebers take the position that all 1850 Class A voting shares in EB&C are still in the name of the Trust, even though Lester is a co-trustee and consented to entry of an Order for Judicial Settlement of Final Account and Termination of the Trust that required distribution of all Trust assets, including the EB&C shares, as follows:

To: Daniel Kleeberg (1/6 share)

To: Lisa Stein (1/6 share)

To: Audrey Hays (1/3 share)

To: Lester Eber (1/3 share)

Thus, Plaintiffs *should* now own 2/3 of the EB&C shares, and to the extent that they desired to do so, they should—together—be able to exercise control over EB&C accordingly.

Unfortunately, Lester and Wendy have engaged in a series of attempted transactions to try to entrench themselves in control of the Eber Entities even if Plaintiffs were to prevail on their current claims for equitable relief. *See* TAC ¶¶ 170–75, 306–53 (seeking to set aside transactions, hold new elections, and/or provide declaratory relief). Plaintiffs should be permitted to challenge those actions in this action because the resolution of them is essential to complete in

---

[2] The definition of "Eber Entities" and the abbreviations or acronyms used in the TAC are incorporated in this brief and are now consistent with the abbreviations and acronyms used by Plaintiffs in recent motion briefing.

5

order to avoid the Ebers from engaging in new misconduct even after unwinding the Metro Transfer and other transactions.

    **B. Challenging Additional Transactions that Have Unjustly Entrenched and Enriched Lester and Wendy**

For certain transactions, the TAC elaborates upon allegations in the SAC that were underdeveloped due to insufficient information at that time. This includes the allegations relating to Lester's Consulting Agreement with Southern, TAC ¶¶ 70–78, Lester and Wendy's acquisition of personal interests in Slocum & Sons of Maine, *id.* ¶¶ 79–87, and. In the case of the former, the theory of how it was harmful has changed such that Plaintiffs can now state a cognizable stand-alone challenge to it, both as a breach of fiduciary duty and a vehicle for Lester's unjust enrichment. *Id.* ¶¶ 188–91 (Count I – Breach of Fiduciary Duty); *id.* ¶¶ 295–97 (Count III – Unjust Enrichment).

For several other transactions, they certainly relate to the SAC's allegations but they were not expressly challenged or questioned with the clarity that the TAC provides. Examples include the transactions that occurred before Lester initiated the Metro Transfer in 2012, such as obtaining a security interest in Eber Metro. The significance of that as a breach of fiduciary duty has only become apparent recently, as we have plowed through the financial records and discovered that Eber Metro—the entity that owed money to Lester—also owed money to EBWLC. In fact, the books show over $10 million in debt—roughly three times the debt to Lester. But unlike the debts to Lester—which were securitized—the debts to EBWL were converted to capital and thus deprioritized. These actions placed Lester in a superior position to EBWLC and constituted a breach of fiduciary duty on their own that should be actionable given the expectation now that Plaintiffs are seeking equitable relief.

Indeed, until recently, because Plaintiffs had expected that a remedy at law through compensatory damages would be obtainable, attention was not focused on the relative priority or terms of Lester's loans. Now that equitable relief is almost certainly what will be sought, there is a high probability that, through rescission, Lester's loans might come back to life.

Upon resurrection of Lester's loans, significant questions would need to be answered, including whether Lester's loans should be given priority over the previously-booked debts to EBWLC. Another question would be whether Lester is entitled to have had interest accrue during the years since 2012. Accordingly, the parties and this Court will have to argue about the terms of the loans. For example, it is now apparent that Lester's loans from the company carried excessive interest rates, as high as 12.5%, plus additional penalties for being late. By challenging those rates, the TAC helps to ensure that the parties can effectively argue for a truly equitable remedy that takes into account the complexities of effectuating rescission of the Metro Transfer.

Wendy's acquisition of some of Alexbay's interest in Eber Metro, TAC ¶¶ 230–32, is a transaction that must be considered in order to afford Plaintiffs full relief. The existing pleadings seek disgorgement of Alexbay's shares in Eber Metro so that they can all be returned to EBWLC. We now have evidence that Wendy has since acquired some of those shares from Alexbay. Accordingly, the TAC now seeks disgorgement from Wendy so that EBWLC gets its full interest back. *Id*.

## II. THERE IS NO JUST REASON TO DENY AMENDMENT

In accordance with Second Circuit practice, the proposed amendment here should be permitted because there is no proper reason for denial.

### A. Plaintiffs Did Not Unduly Delay Filing

Plaintiffs' desire for leave to amend was first raised by teleconference on October 16, 2018. The request for leave to amend was more formally raised during the November 7, 2018

7

conference in connection with the relatively new issues concerning corporate governance. At the time, Plaintiffs indicated that they still needed more discovery from Defendants to be able to full flesh out the amended claims, but nevertheless agreed to submit this motion by November 30, 2018. Because much of the essential discovery for the anticipated amendments was only received recently—and some has still yet to be received—there can be no serious argument about the timeliness of this amendment.

### B. There Is No Prejudice

The Second Circuit has said, "In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. Under this standard, there is no prejudice to Defendants from permitting amendment. Plaintiffs do not seek to modify the current scheduling order based on the amendments. Nor are there any actual defendants being added to the case, so there will not be any delay while a new party tries to catch up.

Substantively, although the TAC is considerably longer, it is important to recognize that the scope of discovery and trial will not be expanded significantly by permitting amendment. Most of the new allegations concern transactions that Plaintiffs intend to challenge *regardless* of whether amendment is permitted. That is because these transactions are all intertwined in one way or another with the Metro Transfer that is at the heart of the original Complaint. As to those challenged transactions, the TAC thus only expands the scope of relief available—not the scope of discovery or issues required to be resolved.

The transactions that would be litigated regardless of amendment due to their relevance to the 2012 Metro Transfer are:

1. The legitimacy of and impetus for the Preparatory Transactions that preceded the Metro Transfer is essential to both sides' cases concerning the Metro Transfer. TAC ¶¶ 144–54, 218–23 (seeking rescission).

2. The Polebridge Transaction is likewise essential because it was the basis for Lester's contention that the Metro Transfer was commercially reasonable. TAC ¶¶ 88–95, 233–51 (seeking disgorgement from Wendy, who subsequently acquired its interest in Eber-CT).

3. Lester's Consulting Agreement with Southern will be, at a minimum, used to show how he acquired the funds to loan money to Eber Metro. TAC ¶¶ 70–78, 188–91 (seeking disgorgement).[3]

4. Lester's loans themselves will be examined in detail, including to contrast their terms with the terms of the Polebridge loan that funded the Polebridge Transaction. TAC ¶¶ 102, 252–61 (seeking reformation of them).

5. Lester's acquisition of 750 preferred shares in EBWLC after the lawsuit was filed will be used to show his culpable state of mind, and that Wendy was his willing co-conspirator. TAC ¶¶ 265–73, 302–05 (seeking to set it aside); *id.* ¶ 351 (seeking declaratory judgment).

Since discovery has already been conducted on these transactions to get us to the point to be able to challenge them, allowing these amendments will not expand the scope of discovery at all, not the scope of trial to any significant degree.

The corporate governance issues that affect Plaintiffs' beneficial ownership of shares in EB&C are likewise essential to resolve because they affect their continued standing to pursue derivative claims on behalf of EB&C and EBWLC. Accordingly, there is no practice way to avoid deciding at least some of these issues.

The challenge to Harris Beach's assignment of its claims to Lester will involve an extremely discrete legal issue arising out of the settlement of a prior fraudulent conveyance lawsuit that was focused on the Metro Transfer. TAC ¶¶ 262–64. The legal issue is whether Lester could, as a fiduciary, take assignment of Harris Beach's claims against the companies for

---

[3] In addition, this is already part of this case, appearing in the SAC under a different theory. SAC ¶¶ 80–82.

9

which he is a fiduciary in lieu of obtaining a standard release. This will not affect discovery at all and can likely be resolved on the briefs as a matter of law without trial.

As to Gumaer, there is nothing substantially different in the TAC versus the SAC, since the SAC already seeks to apply the faithless servant doctrine to Gumaer. The main difference is that we have since uncovered the engagement agreement with Lester and seen that he was indeed representing Lester personally since 2001. TAC ¶¶ 283–93. The TAC retains the more limited application of the faithless servant doctrine that was alleged in the SAC, as an alternative. *Id.* ¶ 294. Since the scope of Gumaer's representation is already being actively litigated, expanding this claim will work no prejudice.

### C.  The Amendments Are Offered in Good Faith Based on Facts

All of the amendments are based on either facts adduced through the discovery process or recent events concerning the governance of EB&C. None of the new allegations are offered for any improper purpose, such as to prolong this litigation or increase the parties' costs.

### CONCLUSION

The Court should grant Plaintiffs leave to amend their complaint and to file the proposed Third Amended Complaint.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, NY 10007
Tel./Fax: (212) 257-2334
Brian@clintonbrook.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: November 30, 2018