UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN, and
AUDREY HAYS,

     Plaintiffs,

   v.

LESTER EBER; ALEXBAY, LLC f/k/a
LESTER EBER, LLC; CANANDAIGUA
NATIONAL BANK & TRUST
COMPANY; ESTATE OF ELLIOTT W.
GUMAER, JR.; EBER BROS. & CO.,
INC.; EBER BROS. WINE AND LIQUOR
CORP.; EBER BROS. WINE & LIQUOR
METRO, INC.; EBER-CONNECTICUT,
LLC; and WENDY EBER,

     Defendants.

Civil Action No.  16-CV-9517(LAK)

---

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO AMEND THEIR COMPLAINT**

---

Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@clintonbrook.com

*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein,
and Audrey Hays*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.   Plaintiffs Have Never Before Sought Leave to Amend, Nor Did They Engage in Undue Delay ........................................................................................................... 2

II.  Many of the Challenged Amendments Are Already Expressly Pleaded, While Many Others Are Just Additional Legal Authorities ..................................................... 4

III. The Statute of Limitations Arguments Are Wrong (and Premature) .................................... 5

    A.   The Fiduciary Tolling Rule ................................................................................ 5

    B.   Additional Tolling Rules Apply ......................................................................... 7

        1.   The Continuous Wrong Doctrine .............................................................. 7

        2.   Subsequent Acknowledgment Restarts the Clock ....................................... 8

        3.   The Discovery Rule ............................................................................... 9

    C.   There Is No Claim for Conversion ..................................................................... 9

IV.  Transactions Subsequent to the Complaint ...................................................................... 10

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir.1993) .................................................................................. 3

*Henry v Bank of America*,
  147 A.D.3d 599, 601 (N.Y. App. Div. 2017) ........................................................ 8

*In re Dissolution of Therm, Inc.*,
  18 N.Y.S.3d 739 (N.Y. App. Div. 2015) ............................................................... 5

*Lemle v. Lemle*,
  No. 601281/2007 (N.Y. Supr. Ct. N.Y. Cty. Apr. 20, 2017) (attached) ................... 7

*Mosab Const. Corp. v. Prospect Park Yeshiva, Inc.*,
  2 N.Y.S.3d 197 (App. Div. 2015) .......................................................................... 8

*People v. Ben*,
  55 A.D.3d 1306 (N.Y. App. Div. 2008) ................................................................. 6

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  14-CV-04394, 2016 WL 4613390 (S.D.N.Y. Aug. 31, 2016) ................................ 5

*Transport Workers Union of Am. Local 100 AFL-CIO v. Schwartz*,
  794 N.Y.S.2d 308, 17 A.D.3d 218 (N.Y. App. Div. 2005) .................................... 6

*Willensky v. Lederman*,
  13-CV-7026 KMK, 2015 WL 327843 (S.D.N.Y. Jan. 23, 2015) ........................... 6

*Zaref v. Berk & Michaels*,
  192 A.D.2d 346 (N.Y. App. Div. 1993) ................................................................. 6

**Statutes**

N.Y. C.P.L.R. § 213 ..................................................................................................... 9

N.Y. Gen. Oblig. L. § 17-101 ....................................................................................... 8

**Rules**

Fed. R. Civ. P. 15 ......................................................................................................... 10

Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein respectfully submit the following reply in support of their motion for leave to amend the Second Amended Complaint ("SAC"). An updated proposed Third Amended Complaint ("TAC") is attached.

### PRELIMINARY STATEMENT

The Ebers have woven quite the tangled web of transactions in an attempt to take the Eber Bros. family business for themselves. Because the Ebers were fiduciaries to Plaintiffs—and in some capacities, they still are—Plaintiffs have long sought an accounting from them for how they have conducted themselves in connection with the Allen Eber Trust and the Eber Bros. business it controlled. Now that Plaintiffs have obtained some of that accounting through the discovery process and identified more improper transactions, the Ebers seek to preclude amendment to include them. The Ebers' arguments must be rejected.

The bulk of the Ebers' brief is predicated on statute of limitations arguments that completely flip the script on what the situation actually was. They argue that Plaintiffs should be held to the standard applicable to a "fiduciary plaintiff," even though it was *only* Defendants who were fiduciaries. Plaintiffs were at all relevant times mere beneficiaries. That is significant because New York tolls the statute of limitations for breach of fiduciary duty claims brought by a beneficiary so long as the fiduciary relationship remains. Here, that means the statute of limitations was tolled until at least June 2017, when the Trust was ordered to be terminated.

The Ebers' attempt to argue prejudice is only half-baked: stating unsupported conclusions that they wish were true. Their first and foremost point is to falsely contend that Plaintiffs have moved for leave to amend too many times already. The argument is based on case law dealing with *post-dismissal* amendments—an inapposite situation. Moreover, Plaintiffs have never before moved for leave to amend. The Ebers' opposition brief exemplifies lazy lawyering, at

best: Roughly a third is devoted to challenging claims that are *already expressly in the current complaint*. In short, nothing even close to a just reason to deny any part of Plaintiffs' motion.

## ARGUMENT

The opening brief identified the following categories of substantive amendments:

1. Challenges to transactions that were ancillary or preparatory to the Metro Transfer.

2. Challenges to the Ebers' recent efforts to entrench themselves in control of Eber Bros.' corporate governance.

3. Challenges to additional improper transactions, most of which were at least referenced in the SAC.

4. Expanding on the substantive legal bases for the relief that was already sought in the SAC.

5. Removing or correcting certain factual assertions in the SAC.

6. Removing claims against Canandaigua National Bank ("CNB").

7. Adding more Eber Entities[1] as nominal parties.

The Ebers apparently oppose all the amendments, without addressing most in any direct way. But by failing to address categories 5, 6, and 7 at all, the propriety of these amendment should be deemed conceded.

### I. PLAINTIFFS HAVE NEVER BEFORE SOUGHT LEAVE TO AMEND, NOR DID THEY ENGAGE IN UNDUE DELAY

The Ebers lead off with the false charge that Plaintiffs have "occupied the court with previously granted motions for amendment." Defs. Br. 3 (citing cases concerning ; *see also id.* at 4 ("serial movant"). Since this is our *first* motion to amend,[2] the Ebers have improperly "occupied the court with" inapposite case law and argument.

---

[1] The definition of "Eber Entities" and the abbreviations or acronyms used in the TAC are incorporated in this brief.

[2] The first amendment was permissive, while the second was requested by the Court. *See* Pls. Br. 2.

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993). Quite the opposite, denial of this motion would prejudice *Plaintiffs*, and the Ebers' arguments for doing so reflect bad faith *by them*.

In the opening brief, we explained that almost all of the challenged transactions are integral to the Ebers' long-term effort to take the family business for themselves and to freeze out Plaintiffs' interests in it. *See* Pls. Br. 5-9.  Plaintiffs offered specific explanations for why the new transactions would not expand the scope of discovery. In response, the Ebers merely state conclusions without bothering to address so much as a single transaction. *See* Defs. Br. 4-6. They completely disregard the Second Circuit's standard that requires them—as the nonmovants—to make the showing of prejudice. *Block*, 988 F.2d at 350. They merely tell the Court what to conclude; they show nothing.

The Ebers also attempt to argue delay, asserting that Plaintiffs "could have" amended some pleadings earlier. Defs. Br. 2, 4-5. They do not identify which allegations they purport to reference.[3] These generalized arguments invoke the inappropriate standard. The question is not whether Plaintiffs could have theoretically amended earlier, but whether Plaintiffs unreasonably *delayed* by not seeking amendment earlier *and* it would cause *undue prejudice* as a result. *See Block*, 988 F.2d at 350 ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.").

Considering that we are still trying to put the pieces together to understand what happened with so many of these transactions, we have arguably filed too soon, not too late.

---

[3] Just last Friday, the Ebers disclosed that Wendy now holds 9.1% of Eber Metro's shares. We have yet to receive any explanation for how Wendy has been acquiring these shares.

## II.  MANY OF THE CHALLENGED AMENDMENTS ARE ALREADY EXPRESSLY PLEADED, WHILE MANY OTHERS ARE JUST ADDITIONAL LEGAL AUTHORITIES

Perhaps the most bizarre parts of the Ebers' opposition brief are where they argue that certain claims would be futile, even though they are already in the operative complaint. Part III of their brief challenges the faithless servant claims (Count II), but those claims are already stated in the current pleadings against Lester, Wendy, and Gumaer. Indeed, the claims against Lester and Wendy have appeared since the original Complaint. Compl. ¶¶ 81-83 (Lester); *id.* at 91 (Wendy). The faithless servant claims were simply separated from challenges to transactions for the sake of clarity. In other words, Count II of the TAC is expressly encompassed in Count I of the SAC.[4] The amendments merely adjust the existing claims to in light of disloyal conduct adduced through discovery; they do not add new faithless servant claims. The most significant effect is on Gumaer—by alleging that his disloyalty began in 2001 rather than 2012—but he did not oppose the amendment.

Part IV of the Ebers' brief argues that the fraudulent concealment claim is insufficient. But this, too, is already in the pleadings, so it is no basis to deny amendment. (To the extent that they argue that a showing of fraudulent concealment is necessary to toll the statute of limitations, that is incorrect for the reasons discussed in the following section.)

Part V of the Ebers' opposition challenges the availability of surcharge, but that is not a basis to oppose amendment because Plaintiffs have expressly sought a surcharge since Day One. *See* Compl. 23 (requesting "[s]urcharge against the trustees"); *see also* SAC 33 (same). The fact

---

[4] The substance of their attack on the faithless servant claims turns on the Ebers' persistent refusal to understand how a derivative claim works. They argue that the faithless servant doctrine cannot be invoked except by an employer, without recognizing that Lester, Wendy, and Gumaer were employed and compensated by the Eber Entities whose claims are asserted derivatively by Plaintiffs.

that the TAC spells out more clearly where surcharge is sought does not prejudice Defendants. If anything, it gives them additional clarity on Plaintiffs' existing claims.

The Ebers also make a passing reference to the fact that the TAC invokes statutory provisions not previously included in the complaint. Defs. Br. 5. While Counts V and VI concern the newly discovered and recent transactions, Count IV invokes B.S.C. § 720 as an additional basis to set aside the 2012 Metro Transfer itself. Count IV also covers ancillary and predicate transactions to the 2012 Transfer, such as the 2010 granting of a security interest to Lester— covering debt that was originally unsecured—a predicate transaction essential for Lester to claim later that he was a secured creditor foreclosing on collateral to his loans. There is no conceivable reason why Defendants would be unduly prejudiced by considering this statutory basis for setting aside transactions alongside the existing common law theories to do the same thing.

### III. THE STATUTE OF LIMITATIONS ARGUMENTS ARE WRONG (AND PREMATURE)

Although the Ebers invest many pages in arguing the statute of limitations, some of their arguments are completely backwards. They seek to treat Plaintiffs as if they were the fiduciaries rather than the beneficiaries. Def. Br. 7 (stating standard of diligence for "a fiduciary plaintiff"). The difference is crucial.

#### A.  The Fiduciary Tolling Rule

New York has adopted a "fiduciary tolling rule" that applies here. Breach of fiduciary duty claims are tolled until the fiduciary relationship in question is terminated or openly repudiated: "The statute of limitations for a claim alleging a breach of fiduciary duty is tolled until there has been an open repudiation by the fiduciary or the relationship has otherwise been clearly terminated." *In re Dissolution of Therm, Inc.*, 18 N.Y.S.3d 739, 740 (N.Y. App. Div. 2015); *see also Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 14-CV-04394, 2016 WL 4613390, at *17 (S.D.N.Y. Aug. 31, 2016) ("[T]he statute of limitations

does not commence running until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated.'"). Here, the TAC alleges that Lester and Gumaer remained trustees at least through mid-2017 when the Trust was ordered to be terminated. TAC ¶¶ 53–58. That is sufficient.[5]

Moreover, as beneficiaries, Plaintiffs were entitled to rely on the trustees to conduct diligence on the goings on in the Eber Bros. family business it controlled; they were not subject to any duties to inquire or conduct diligence themselves. This logic not only undergirds the fiduciary tolling rule, but also refutes the Ebers' arguments against invocation of tolling due to their concealment of critical facts.

Helpfully, the Ebers concede that most of Plaintiffs' claims are essentially breach of fiduciary duty claims and thus subject to the fiduciary tolling rule. Defs. Br. 9 ("Counts I, II, III, IV, V, and VII of the proposed TAC rely to varying degrees upon theories of breach of fiduciary duty.").

The fiduciary tolling rule generally applies when there are primarily equitable claims and relief, even if some compensatory damages are also sought. *See Transport Workers Union of Am. Local 100 AFL-CIO v. Schwartz*, 794 N.Y.S.2d 308, 17 A.D.3d 218, 218 (N.Y. App. Div. 2005) ("The Commercial Division properly found that the first and fourth causes of action, alleging breach of fiduciary duty and seeking damages and an accounting and disgorgement of commissions, were timely as to the Schwartz defendants because they had a continuous fiduciary relationship with plaintiffs until 2000.") (citing *Zaref v. Berk & Michaels*, 192 A.D.2d 346, 348 (N.Y. App. Div. 1993)); *People v. Ben*, 55 A.D.3d 1306, 1308 (N.Y. App. Div. 2008)

---

[5] Because the burden is on the defendant seeking to invoke the statute of limitations defense, it is not necessary for Plaintiffs to plead that the defense does not apply, i.e. that open repudiation did not occur earlier. *See Willensky v. Lederman*, 13-CV-7026 KMK, 2015 WL 327843, at *10 (S.D.N.Y. Jan. 23, 2015) ("It is the burden of the party 'seeking the benefit of the Statute of Limitations defense' to prove that an open repudiation has occurred.").

("reject[ing] [the] contention that the tolling rule in question applies only to equitable claims"). Here, Plaintiffs seek primarily equitable relief, including an accounting (which has to some extent been provided merely through the discovery process) to ascertain the full scope of Defendants' breaches. Courts have recognized that this context of beneficiaries seeking to uncover past wrongs by fiduciaries is precisely where the fiduciary tolling rule most clearly applies. *See Lemle v. Lemle*, No. 601281/2007 (N.Y. Supr. Ct. N.Y. Cty. Apr. 20, 2017) (unpublished; attached) ("Because plaintiff primarily seeks an accounting, and pursues damages as an incident to the outcome of that claim, I apply the open repudiation doctrine to plaintiffs breach of fiduciary duty claim.").

That is the bulk of what Plaintiffs seek, with traditional compensatory damages sought only in the alternative. Indeed, because they do not seek reimbursement for amounts Where the request is intertwined with a request for an accounting, the statute of limitations is tolled. The purpose of the accounting is to find out information about what went wrong and where the money went. It would be ineffective and pointless if an accounting revealed problems but there was no opportunity to obtain relief.

### B. Additional Tolling Rules Apply

Even if the fiduciary tolling rule did not apply, there are other established bases for tolling the statute of limitations. The Court need not rule on these definitively to hold that the claims are not clearly futile and thus the statute of limitations does not prevent amendment.

#### 1. *The Continuous Wrong Doctrine*

With respect to the predicate transactions that led to the ultimate transfer of Eber Metro to Alexbay, the statute of limitations is no bar as to any claims because the transfer itself was the last act in a series of continuing wrongs. "The continuous wrong doctrine is an exception to the general rule that the statute of limitations runs from the time of the breach though no damage

occurs until later." *Henry v Bank of America*, 147 A.D.3d 599, 601 (N.Y. App. Div. 2017) (internal quotation marks and citation omitted). "The doctrine is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Id*. (internal quotation marks and citation omitted).

Since the Ebers fail to address particular claims, it is hard to know whether they contend, for example, that Lester's loans are outside the statute of limitations because they were executed before December 2010. That would be incorrect, since the initial loan documents were just the first steps in connection with misconduct that continued through 2012, when Lester assigned the loans to Alexbay and then sought to enforce them. At the same time, Wendy and Gumaer failed to put up a fight on behalf of EBWLC, including by challenging the excessive interest rates that were a product of self-dealing.

   2.   *Subsequent Acknowledgment Restarts the Clock*

As to contracts involving debts, New York specifically carves out a basis for resetting the clock based on subsequent acknowledgment of the debt. Accordingly, Plaintiffs' challenge to the May 2010 Polebridge Transaction—which involved issuance of a sham $350,000 promissory note[6]—is still timely under N.Y. Gen. Oblig. L. § 17-101.  Indeed, any document containing a signature by the person acknowledging the contractual obligation at issue restarts the clock for bringing a contract-related claim pursuant to this statute. As the TAC states, the Note in the Polebridge Transaction was executed in May 2016—just two-and-a-half years ago, and mere months before the original Complaint was filed. TAC ¶ 235. That amendment contains everything necessary to restart the clock. *See Mosab Const. Corp. v. Prospect Park Yeshiva, Inc.*, 2 N.Y.S.3d 197 (App. Div. 2015) ("To constitute an acknowledgment of a debt, a writing must

---

[6] The Polebridge Transaction documents are dated "as of" May 30 and 31, 2010. Such language indicates backdating, which presents a fact issue in and of itself.

recognize an existing debt and contain nothing inconsistent with an intention on the part of the debtor to pay it.").[7]

### 3. The Discovery Rule

The statute of limitations may also be tolled as a result of fraudulent concealment, i.e. the discovery rule. *See, e.g.*, N.Y. C.P.L.R. § 213(8) (statute of limitations as to fraud claims is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."). As to the Southern Consulting Agreement payments, Plaintiffs allege that Lester concealed the material facts about the true nature of the agreement, which was not compensation for actual services performed by Lester, but rather compensation for Eber Bros. no longer competing with Southern. Moreover, Lester affirmatively misled Kleeberg, by making him believe that the non-competition agreement with Southern precluded Kleeberg from using the Eber trade name.

Given that the Ebers fail to argue about any particular transactions in their conclusory brief, Plaintiffs will not take up more of this brief to address every possible transaction, especially not when the fiduciary tolling rule covers every transaction before mid-2017.

## C. There Is No Claim for Conversion

The Ebers concede that a six-year statute of limitations applies to almost all of Plaintiffs' claims. Def. Br. 6. But they assert a three-year statute applies to conversion claims. *Id.* Plaintiffs do not allege any claims for conversion. *What on earth are they talking about?*

---

[7] It is doubtful that relief with respect to the 2010 Transaction itself is even necessary given that the Polebridge interest in Eber-CT was transferred to Wendy after this lawsuit was filed. According to documents that were apparently backdated, the transfer occurred in February 2017. TAC ¶¶ 246–49. Thus, the relief Plaintiffs seek—return of the Polebridge shares to Eber Metro—can be obtained by invalidating the subsequent 2017 transaction.

#### IV. TRANSACTIONS SUBSEQUENT TO THE COMPLAINT

Although the Ebers purport to oppose everything, they do not present any discernable arguments about the claims based on transactions that occurred subsequent to the filing of the Complaint. Such transactions should be included pursuant to Rule 15(d), which allows this Court to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

Certainly, the very recent conduct concerning Plaintiffs' interests in EB&C—some of which occurred on Monday *this week*—is within the scope of this Rule. *See* TAC Count X (added after events subsequent to first filing this motion). Other transactions purportedly occurred prior to the filing of the current Second Amended Complaint, such as in February 2017. But because Plaintiffs did not discover them until after the SAC was filed, they should be allowed under the same general rule.

Resolving the ownership of EB&C is essential to the Court's jurisdiction because it affects' Plaintiffs standing. Thus, denying leave to amend would prejudice Plaintiffs and potentially give a windfall to Defendants.

\* \* \*

The Ebers fall far short of showing prejudice, bad faith, or futility. The amendments will make it easier for the parties and this Court to follow the complex set of facts that the Ebers have foisted upon us. The TAC is longer, to be sure, but it is much sharper and more effective an instrument for ensuring a just outcome in these proceedings.

#### CONCLUSION

The Court should grant Plaintiffs leave to amend their complaint and to file the updated proposed Third Amended Complaint.

Respectfully submitted,


/s Brian C. Brook
Brian C. Brook (BB 1980)
CLINTON BROOK & PEED
100 Church Street, 8th Floor
New York, NY 10007
Tel./Fax: (212) 257-2334
Brian@clintonbrook.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: December 21, 2018