**uk**
underberg & kessler LLP

PAUL F. KENEALLY, PARTNER
(585) 258-2882
pkeneally@underbergkessler.com

February 1, 2019

**VIA ECF**

Hon. Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *Daniel Kleeberg, Lisa Stein and Audrey Hays v. Lester Eber, et al.*
            Civ. Action No.: 16-cv-09517-LAK-KHP

Dear Magistrate Parker:

    As you know, this Firm represents the Eber Defendants in the above-referenced matter. There have been five (5) party depositions and at least one more and third-party depositions are to follow. We write to request that Defendants be permitted to move to compel Daniel Kleeberg to answer certain deposition questions about his conversation(s) with Mark Stein regarding the matters at issue in this lawsuit. These relatively few questions can be covered on the same day of one of the upcoming depositions.

    On December 19, 2018, Colin Ramsey of our office deposed Mr. Kleeberg. Relevant portions of the deposition transcript are annexed hereto as Exhibit A.

    During his deposition, Mr. Kleeberg admitted to discussing the 2012 "Alexbay" litigation at issue in this case with Mark Stein, Esq., Plaintiff Lisa Stein's husband. Despite Mr. Kleeberg's admissions that he did not retain Mark Stein and that he sought Mr. Stein's advice "brother-in-law to brother-in-law", Mr. Kleeberg refused to answer questions regarding his conversations with Mr. Stein at the direction of his counsel citing the attorney-client privilege.

    Mr. Kleeberg's belated assertion of attorney-client privilege is unfounded because Mr. Kleeberg first admitted that he did not have attorney-client relationship with Mr. Stein. *See Cheng Chang v. Pi*, 288 A.D.2d 378, 380 (2d Dep't 2001) ("The unilateral belief of a plaintiff alone does not confer upon him or her the status of a client. Rather, an attorney-client relationship is established where there is an explicit undertaking to perform a specific task"); *see also Hudson Val. Mar., Inc. v. Cortlandt*, 30 A.D. 3d 377, 378 (2d Dep't 2006) (affirming trial court decision that Plaintiff failed to demonstrate the existence of an attorney-client privilege). Here, Mr. Kleeberg explicitly admits he did not retain Mr. Stein and there was no undertaking by Mr. Stein for an explicit task.



Hon. Katharine H. Parker
February 1, 2019
Page 2

In fact, it seems Mr. Kleeberg was simply discussing a family business matter with his brother-in-law, who happens to be an attorney. Mr. Stein's status as an attorney does not imbue all conversations with his family with the confidentiality of attorney-client privilege. Defendants should be afforded the opportunity to depose Mr. Kleeberg about his conversations with Mr. Stein relevant to the issues in this lawsuit.

We respectfully request leave to file a motion to compel Mr. Kleeberg's deposition testimony about his conversations with Mr. Stein relevant to this matter.

Respectfully submitted,

Paul F. Keneally

PFK/ddd
Enclosures
cc:    Brian C. Brook, Esq. *(Via ECF)*
        Robert Calihan, Esq. *(Via ECF)*
        Michael J. Adams, Esq. *(Via ECF)*

# EXHIBIT A

1   about that 2012 Alexbay proceeding from Mark Stein?

2       A.   That I?

3       Q.   Yes.

4       A.   No, no.

5       Q.   Well, first of all, who is Mark Stein?

6       A.   Mark Stein is my brother-in- law, Lisa

7   Stein's husband.

8       Q.   Do you recall a conversation you had

9   with Mark separate and apart from the e-mail from

10  Lisa with these articles talking about this 2012

11  Alexbay transaction proceeding?

12      A.   Prior to this?

13      Q.   Yes.

14      A.   No.

15      Q.   What about subsequent to Lisa sending

16  you those articles?  Did you have any discussions

17  with Mark Stein?

18      A.   I brought it up to him just to see if

19  he had any inclination.

20      Q.   What do you recall Mark's response to

21  be?

22      MR. BROOK:  I'm going to object and instruct

23  the witness not to answer on the grounds of I

D. Kleeberg - Ramsey - 12/19/18

1    believe Mark Stein is an attorney and that he was
2    seeking legal advice in that situation.
3            BY MR. RAMSEY:
4        Q.   Well, let me ask you this.  Did you
5    retain Mark Stein as an attorney?
6        A.   No.
7        Q.   So you were asking him brother-in-law
8    to brother-in-law?
9            MR. BROOK:  Objection to the form.
10           BY MR. RAMSEY:
11       A.   Yes.
12       Q.   Okay, so what did Mr. Stein convey to
13   you in response to your questions?
14           MR. BROOK:  The same instruction, don't
15   answer.
16           MR. RAMSEY:  He just indicated he hadn't
17   retained him and he was asking him as a
18   brother-in-law.
19           MR. BROOK:  You put words in his mouth.  You
20   didn't ask him at all any sort of question that
21   would go to what was the nature of the advice that
22   he was seeking from him and why he was asking him
23   as opposed to someone else on the street or another

D. Kleeberg - Ramsey - 12/19/18

1   spoke with?
2       A.   His first name's Steve.  I can't
3   remember his last name.
4       Q.   Do you have Steve's contact information
5   anywhere in your records?
6       A.   I might.
7       Q.   I'll ask you to look through your
8   records.  If you have any contact information, give
9   it to your attorney, your current attorney.
10      A.   Okay.
11      MR. BROOK:  I can provide that to you if you
12  want.  I can tell you more about that because
13  that's how I got the case.
14      Off the record.
15      (Whereupon, an off-the-record discussion was
16  held.)
17      BY MR. RAMSEY:
18      Q.   Each version of the Complaint discusses
19  a 2012 transaction proceeding involving a company
20  known as Alexbay.  Are you familiar with that?
21      A.   Yes.
22      Q.   Do you recall a conversation you had
23  with Lester indicating that you had first learned

D. Kleeberg - Ramsey - 12/19/18

1  family member.
2      MR. RAMSEY: He just said he wasn't seeking
3  legal advice.
4      MR. BROOK: He did not say that. He said
5  that he did not retain him.
6      BY MR. RAMSEY:
7      A.  I did not say that I wasn't seeking
8  legal advice.
9      Q.  Okay, but you did say you didn't retain
10 Mr. Stein? You did not retain Mr. Stein?
11     A.  No.
12     Q.  Is there any document indicating that
13 he was going to serve as your lawyer for the
14 purpose of exploring what your sister had learned
15 vis-a-vis these articles?
16     A.  Any documents?
17     Q.  Yes.
18     A.  No.
19     Q.  Once again I'll ask what did Mr. Stein
20 convey to you in response to your questions to him
21 about these articles?
22     MR. BROOK: Same instruction, don't answer
23 that.

D. Kleeberg - Ramsey - 12/19/18

1       BY MR. RAMSEY:
2       Q.   All right, well, I don't want to have
3   to bring you back here, but let's note this in the
4   transcript and we'll let the judge decide on that.
5       Was the conversation that you had with Mr.
6   Stein before or after your airplane conversation
7   with the lawyer Steve?
8       MR. RAMSEY:  I'm not asking him for the
9   substance of anything, so --
10      MR. BROOK:  Answer.
11      Let the record reflect that the witness
12  looked at me.  He can answer the question as to the
13  timing of when things occurred.
14      That's fine, if you recall.
15      BY MR. RAMSEY:
16      A.   It was prior to my trip when I met this
17  attorney.
18      Q.   So your conversation with Steve
19  predated your conversation with Mr. Stein or vice
20  versa?
21      A.   Vice versa.
22      Q.   Okay, so it was the conversation with
23  Mr. Stein first and then happenstance you were on a