# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN, and
AUDREY HAYS,

                Plaintiffs,

      v.

LESTER EBER; ALEXBAY, LLC f/k/a
LESTER EBER, LLC; CANANDAIGUA
NATIONAL BANK & TRUST
COMPANY; ESTATE OF ELLIOTT W.
GUMAER, JR.; EBER BROS. & CO.,
INC.; EBER BROS. WINE AND LIQUOR
CORP.; EBER BROS. WINE & LIQUOR
METRO, INC.; EBER-CONNECTICUT,
LLC; and WENDY EBER,

                Defendants.

Civil Action No.  16-CV-9517(LAK)

---

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL THE EBER DEFENDANTS TO PROVIDE DISCOVERY IMPROPERLY WITHHELD ON PRIVILEGE GROUNDS

---

Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@brook-law.com

*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.   Lester Eber's Testimony Further Supports Requiring Disclosure Pursuant to the "Fiduciary
     Exception"................................................................................................................................ 1

II.  Repeated Reliance on Advice of Counsel Constitutes a Waiver ............................................. 3

     A.   Defendants Have Attempted to Justify Their Actions Based on the Advice of Counsel,
          Placing that Advice "At Issue" ...................................................................................... 4

     B.   Testifying that He Took Actions on the Advice of Counsel Is Selective Waiver ............. 6

     C.   Lester's Invitation for Plaintiffs to Ask His Lawyers Was an Explicit Waiver.................. 7

     D.   Lester's Actions to Divest Plaintiffs of Their Interests Were Initiated by Lawyers.......... 7

III. Brief Insights from the Further Revised Privilege Log ......................................................... 8

CONCLUSION................................................................................................................................ 8

i

# TABLE OF AUTHORITIES

## Cases

*Alpert v. 28 Williams St. Corp.*,
    63 N.Y.2d 557 (1984) ......................................................................................... 5

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
    738 F.Supp.2d 450 (S.D.N.Y. 2010) ................................................................ 5

*Deutsche Bank Trust Co. of Americas v Tri-Links Inv Trust*,
    837 N.Y.S.2d 15 (N.Y. App. Div. 1st Dept. 2007) ..................................... 4

*Garfinkle v. Arcata Nat. Corp.*,
    64 F.R.D. 688 (S.D.N.Y. 1974) ...................................................................... 6

*In re Bank of New York Mellon*,
    977 N.Y.S.2d 560 (Sup. Ct. N.Y. Co. 2013) ....................................... 1, 2, 3

*In re Croton River Club, Inc.*,
    52 F.3d 41 (2d Cir.1995) ................................................................................. 5

*In re Kenneth Cole Productions., Inc.*,
    27 N.Y.3d 268 (2016) ....................................................................................... 5

*Loguidice v. McTiernan*,
    2018 WL 4011584 (N.D.N.Y. Aug. 22, 2018) ............................................. 4

*Miteva v. Third Point Mgmt. Co., LLC*,
    218 F.R.D. 397 (S.D.N.Y. 2003) ................................................................... 5

*Russo v. Zaharko*,
    385 N.Y.S.2d 105, 108, 53 A.D.2d 663 (N.Y.A.D. 1976) ........................ 6

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ......................................................................... 4

## PRELIMINARY STATEMENT

Although Plaintiffs believe that the existing motion is more than sufficient for the Court to order disclosure of documents to Plaintiffs (especially pursuant to the fiduciary exception), the recent depositions offer yet more support for ordering disclosure. In addition, the motion should be amended to include the request to compel Defendants to answer deposition questions elaborating on the answers provided, or to compel the attorneys themselves to testify.

Ultimately, there are several ways to reach the same result: that actions taken in a fiduciary capacity are subject to full discovery, and that includes any advice of counsel. The record resulting from the depositions shows the inherent unfairness that would result from allowing Defendants to use privilege as a sword and a shield: by repeatedly claiming that their actions were taken on the advice of counsel, Defendants seek to use their lawyers' advice to justify their misconduct while concealing the actual substance of that advice and the basis for it.

## ARGUMENT

### I.   LESTER AND WENDY EBER'S TESTIMONY FURTHER SUPPORTS REQUIRING DISCLOSURE PURSUANT TO THE "FIDUCIARY EXCEPTION"

As we explained previously, the fiduciary exception applies to communications here because of Plaintiffs' interest in the Trust that controlled Eber Bros. & Co., Inc. ("EB&C") and its subsidiaries, including Eber Bros. Wine and Liquor Corp. ("EBWLC"), Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), and Eber-Connecticut, LLC ("Eber-Conn"). There are at least five factors considered by the courts when evaluating its applicability. *See* Pls. Br. 12. Lester's testimony substantially supports application of the fiduciary exception based on these factors.

The second factor requires showing that the defendant made a decision on his attorney's advice. *In re Bank of New York Mellon*, 977 N.Y.S.2d 560, 566 (Sup. Ct. N.Y. Co. 2013). Lester's testimony repeatedly affirms that to have been the case. Lester Dep. 189 (transferred debts from

himself to Alexbay "on advice of counsel"); 196–97 (filed 2012 Foreclosure Action by Alexbay against EBWLC "on advice of counsel"); 204–06, 216 (omitted material facts from affidavit); 241 (allowed Line of Credit Note to default on "the advice of lawyers"); 267–68 (determining terms offered to other Trust beneficiaries to participate in Line of Credit Note).[1]

The third factor is that the information is "highly relevant to and may be the only evidence available on whether defendant's actions respecting the relevant transactions and proposals were in furtherance of the interests of the beneficiaries of the trust or primarily for his own interests in preserving and promoting the rewards and security of his own position as a corporate officer." *Bank of New York Mellon*, 977 N.Y.S.2d at 566. The utter dearth of explanation provided by Lester for why he undertook many of the corporate actions shows that this factor is met. *See, e.g.*, Lester Dep. 213 ("The lawyers handled" Wendy Eber's acquisition of 6% of Eber-CT); *see also id.* at 189, 196–97, 204–06, 241, 267–68.

Similarly, the third factor is met with respect to Wendy's decision to allow Eber Bros. to default on the debt to Lester and thereby allow Lester to take control of all of its assets. Her testimony was to pretend to have severe amnesia for any reasons behind what she did other than to state that she "relied on [her] lawyers." Eber Metro Dep. 91:15–16; *see also id.* at 87, 88, 90. She did not even try to extend the maturity date of the Line of Credit Note, even though Eber Bros. had successfully extended the maturity dates on other loans to avoid defaults. *See also* Lester Dep. 241 (testifying that he also allowed the Note to default rather than extending it because he "followed the advice of lawyers").

Relatedly, Wendy testified that she signed the Security Agreement with Lester, as well as

---

[1] The Court should note that we do not seek disclosure based on every assertion of advice of counsel. Rather, we limit this to advice that falls within the relevant framework of damaging transactions. *See, e.g.*, Eber Metro. Tr. 195:7–24 (invoking advice of counsel as the reason for not shutting Eber Metro down; a corporate decision that is not alleged to have harmed Plaintiffs and is therefore not challenged).

a duplicate copy of the Line of Credit Note with a *different date*, "on advice of counsel." *Id.* at 124:10–15, 129:10–14.[2] She could offer no other explanation for why she executed the same document twice with two different dates. *Id.* at 127–28. The issue is important, because the phony date on the second Line of Credit Note appears to have been used to make it appear (falsely) as if there was consideration to Eber Metro for executing the Security Agreement in February 2010 when, in fact, Lester had already executed the Line of Credit Note months earlier in October 2009. Falsifying the date on a document is persuasive evidence of fraudulent intent and bad faith, and it is hard to believe that a lawyer really advised Wendy to do that.[3]

The fourth factor is likewise supported by the testimony, because it makes clear that the legal advice was received with respect to "prospective actions by defendant, not advice on past actions." *Bank of New York Mellon*, 977 N.Y.S.2d at 566. By stating that actions were taken on the advice of counsel, Defendants necessarily received prospective advice about what they should do.[4] In short, the testimony confirms everything we expected it would about the proper application of the fiduciary exception.

## II.  REPEATED RELIANCE ON ADVICE OF COUNSEL CONSTITUTES A WAIVER

Even if this case did not involve fiduciaries, full disclosure would be mandated on the grounds of implied waiver, as the legal advice has been placed "at issue" and selective disclosed during deposition testimony.

---

[2] *See also id.* at 72, 76 (identifying lawyers as responsible for negotiating the terms of the Line of Credit Note).

[3] Wendy's testimony would also warrant applying the crime-fraud exception to pierce privilege, if in fact a lawyer did advocate falsifying a date on a document.

[4] The depositions also support the fifth factor, which turns on the claims of self-dealing and conflict of interest being at least colorable, but for a variety of reasons—including because the 30(b)(6) deposition is still ongoing, and space constraints—we do not elaborate further at this time. Regardless, such a showing has already been made and may be further supported by considering the highlighted testimony, which at least makes clear that Defendants are eager to avoid taking personal responsibility for all the steps they took when they plundered the family business.

### A. Defendants Have Attempted to Justify Their Actions Based on the Advice of Counsel, Placing that Advice "At Issue"

Lester Eber repeatedly testified that he undertook the challenged transactions because he was acting on the advice of counsel. But he has evaded discovery and further questioning concerning the basis for that claim. Plaintiffs have no means to test whether Lester's claims are true, or if instead he is merely making up a good story. By testifying as he did, Lester cannot now evade the full scope of discovery and, eventually, cross-examination concerning the details of what the supposed advice he received was, and what the basis for that advice was. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications. This waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.") (internal citations omitted).

The advice from counsel is placed at issue by the testimony stating that it was at least one reason for taking the challenged actions. *See Loguidice v. McTiernan*, 2018 WL 4011584, at *9 (N.D.N.Y. Aug. 22, 2018) ([T]here is no authority holding that defendants had to rely solely on advice of counsel in making their determination in order for the legal advice to be considered 'at issue.'") (emphasis in original).

Because Lester and Wendy tried to use legal advice to "justify the decision" to engage in various corporate actions, the case is materially different than one where testimony merely indicated that advice of counsel was "considered." *See Deutsche Bank Trust Co. of Americas v Tri-Links Inv Trust*, 837 N.Y.S.2d 15, 27 (N.Y. App. Div. 1st Dept. 2007); *see also CFIP Master*

4

*Fund, Ltd. v. Citibank, N.A.*, 738 F.Supp.2d 450, 474 n.27 (S.D.N.Y. 2010) (suggesting waiver would be found when reliance is place on "the substance of the legal advice that was eventually provided"). Nor is this anything like a situation where counsel helped to explain an already-made decision. *See Miteva v. Third Point Mgmt. Co., LLC*, 218 F.R.D. 397 (S.D.N.Y. 2003) (holding that no waiver occurred where company's principal said that a "termination letter was written as it was on advice of counsel, [but] he did not selectively reveal any of the substance of the communication itself").

If Defendants respond to this brief by asserting that they do not intend to assert "advice of counsel" as a defense, the Court should disregard the assertion as elevating form over substance. Defendants cannot invoke magic words—claiming not to assert a defense—that nullify the effect of what their clients have said. Lester clearly stated—over and over again—that he undertook various challenged actions because he was acting on the advice of counsel. In light of Lester's testimony, the advice of counsel received in connection with the challenged transactions is necessarily "at issue" based on the burden shifting framework of the entire fairness test, which applies to such self-dealing transactions. *See, e.g.*, *In re Kenneth Cole Productions., Inc.*, 27 N.Y.3d 268, 275 (2016) (when common control over parties on both sides of a merger or acquisition transaction, the "inherent conflict of interest and the potential for self-dealing requires careful scrutiny of the transaction" and "the burden shifts to the interested [defendants] to prove good faith and the entire fairness of the merger") (quoting *Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 570 (1984)); *In re Croton River Club, Inc.,* 52 F.3d 41, 44 (2d Cir.1995) ("It is black-letter, settled law that when a corporate director or officer has an interest in a decision, the business judgment rule does not apply," which means that "the burden falls upon the board to demonstrate that its actions were reasonable and/or fair."); *Russo v. Zaharko*, 385 N.Y.S.2d 105, 108, 53 A.D.2d

663, 666 (N.Y.A.D. 1976) ("A party who occupies a fiduciary position in relation to a corporation has the burden of explaining all transactions fully and of showing that no advantage has been taken of his position."). Given the heavy burden they face, if the Ebers were to try to disclaim the advice-of-counsel defense, they would essentially be waiving their entire defense. Since they are not doing that, simply uttering words that they disclaim the advice of counsel defense should not be credited.[5]

By placing the legal advice received at issue to justify their actions, Defendants have necessarily waived privilege over all legal advice received concerning the transactions.

### B.  Testifying that He Took Actions on the Advice of Counsel Is Selective Waiver

This is not a situation when a witness merely testified that he considered the advice of counsel before taking an action. Far from it. Lester testified that he took certain actions because his lawyers supposedly told him to do so. Thus, Lester has disclosed the lawyers' ultimate advice: They told him to do "x" and he did "x." Having disclosed his lawyers' ultimate legal advice, Lester cannot fairly conceal the evidence of what the basis for that advice was. Allowing him to do so would be the textbook example of allowing a party to use privilege as a sword and shield. *See Garfinkle v. Arcata Nat. Corp.*, 64 F.R.D. 688, 689 (S.D.N.Y. 1974) ("Defendant has clearly injected the opinion letter into this case as a relevant matter and plaintiff is entitled to probe into the circumstances surrounding the issuance of the letter. He cannot be limited to the letter itself— the finished product. He is entitled to know how the letter came into being. Plaintiff argues appropriately that defendant simply cannot use the letter as both a sword and a shield.").

Left as is, the record makes it seem like Lester obtained advice that he actions were legal. But legal under what legal framework? Perhaps the legal advice was merely concerning avoidance of debts and did not consider Lester's duties to corporate shareholders or trust beneficiaries. If so,

---

[5] The fiduciary exception applies regardless of whether they invoke this defense.

the import of his reliance on counsel would be markedly different. Plaintiffs are entitled to know. The full record might undermine Lester's reliance on the advice of counsel in other ways. For instance, if Lester misrepresented facts to his lawyer to obtain that advice, it would divest him of relying on advice of counsel to show good faith and avoid potential punitive damages.

### C.  Lester's Invitation for Plaintiffs to Ask His Lawyers Was an Explicit Waiver

Lester not only relied on advice of counsel to justify his actions, he also directed Plaintiffs to ask his lawyer. Lester Dep. 128, 139, 140, 178, 179, 185, 243. Since the ability to waive the attorney-client privilege belongs to the client and not to counsel, Lester's response inviting inquiry of his lawyers should be deemed a waiver.

Lester's testimony regarding his affidavit to the New York Supreme Court to obtain its approval for the 2012 Metro Transfer is particularly notable. *Id.* at 204–06. Lester disclaimed personally responsibility for the false and misleading statements in it. *Id.* at 206:9–15 ("I suggest you talk to the lawyers … It wasn't me.").

### D.  Lester's Actions to Divest Plaintiffs of Their Interests Were Initiated by Lawyers

Separate from matters appearing on the privilege log, several transactions engaged in after the filing of this lawsuit were the subject of inquiry during Lester's deposition, including attempts to dilute and divest Plaintiffs' interests in the Eber Bros. companies. Such actions by Lester to acquire interests in EB&C—an entity he claimed to be worthless—begged lots of questions. But when questioned about why he pursued shares in a supposedly worthless company, Lester's only response was to invoke the advice of counsel. *See* Lester Dep. 138–41, 178 ("Q. Why did you want to have 750 shares of voting preferred stock in [EBWLC]? A. I think you would have to ask my lawyer."). This is simultaneously an express and implied waiver, insofar as he is inviting inquiry

of his lawyer and also justifying his action by reliance on the advice he professes to have received.[6]

### III. BRIEF INSIGHTS FROM THE FURTHER REVISED PRIVILEGE LOG

In the Reply, Plaintiffs noted that the Revised Privilege Log contained demonstrably false representations about which clients were involved. Reply 3–4. When Defendants further revised their privilege log, the identified clients changed. Plaintiffs have not previously had the opportunity to comment on that. Most notably, now most of the privileges asserted belong to EBWLC, and as such are readily subject to the fiduciary exception, especially when they concern prospective acts.

In addition, in situations where Lester was identified as the privilege-holder, *e.g.* EB000729, his act of forwarding legal advice from his personal attorneys to Wendy constituted a waiver of the privilege, especially since she was an officer and director of EBWLC and her knowledge of what Lester was considering as a creditor is not something she can justly conceal.

### CONCLUSION

The Court should grant Plaintiffs' Motion to Compel.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, NY 10007
Tel./Fax: (212) 257-2334
Brian@brook-law.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: February 25, 2019

---

[6] Considering together (a) the TAC claims to secure Plaintiffs' interests in EB&C and EBWLC, (b) the motion to disqualify, and (c) the instant motion to compel, they are all interrelated. If and when Plaintiffs can secure and vote their majority interest in EB&C, they can select their own counsel and waive the privilege that is held by EBWLC. *See infra* § III (latest Privilege Log shows most communications belong to EBWLC). Thus, it is clear why Defendants are desperate to delay adjudication of Plaintiffs' basic shareholder rights: because it is yet another avenue to open up the floodgates to discover the truth.