UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>  Plaintiffs,<br><br>  v.<br><br>LESTER EBER; ALEXBAY, LLC F/K/A LESTER EBER, LLC; CANANDAIGUA NATIONAL BANK & TRUST COMPANY; ESTATE OF ELLIOTT W. GUMAER, JR.; EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; AND WENDY EBER,<br><br>  Defendants. | Civil Action No.  16-CV-9517(LAK)(KHP) |

### DECLARATION OF BRIAN C. BROOK IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1. I, Brian C. Brook, am an attorney licensed to practice law in the State of New York and in this Court, among other jurisdictions. I am the principal of the law firm of Brook & Associates, PLLC, and have been counsel of record for the Plaintiffs in the above-captioned case since its initial filing in December 2016.

2. I submit this declaration and the exhibits attached hereto in support of Plaintiffs' Motion for Leave to Amend the Second Amended Complaint ("SAC"). Specifically, this declaration addresses the Court's question about Plaintiffs' diligence in pursuing amendments after the filing of the SAC on April 16, 2018.

1

## Overview of the Timeline

3.	The original Complaint has only been substantively amended once, with the filing of the First Amended Complaint ("FAC") on March 31, 2018, which was the Scheduling Order's deadline for submitting amended pleadings.

4.	On June 22, 2017, Plaintiffs served their first requests for production of documents on the Eber Defendants.

5.	On August 7, 2017, Plaintiffs served interrogatories on Lester Eber.

6.	Attached as Exhibit A is a true and correct excerpt of Lester Eber's responses to Daniel Kleeberg's first set of interrogatories, sent on October 3, 2017.

7.	Defendants first produced searchable documents responsive to Plaintiffs' document requests on September 29, 2017, approximately two weeks after this Court entered a stipulated protective order, ECF No. 67. The production consisted of 19,746 pages.

8.	On February 21, 2018, Defendant Elliott W. Gumaer, Jr. ("Gumaer") died. Plaintiffs' effort to substitute the estate as a party was not accomplished until May 1, 2018. ECF No. 95. The absence of a necessary party effectively prevented depositions from occurring in the original anticipated time frame of March or April 2018.

9.	On February 21, 2018, this Court entered a Consent Scheduling Order providing for a discovery end date of June 29, 2018.

10.	On April 2, 2018, after reviewing the FAC, District Judge Lewis A. Kaplan issued an order *sua sponte* directing Plaintiffs to file a further amended complaint to address concerns with respect to subject matter jurisdiction. ECF No. 87. The SAC was filed on April 16, 2018. ECF No. 88. The only changes from the FAC were to address Judge Kaplan's concerns.

11.	Plaintiffs tried to schedule depositions of Lester and Wendy Eber over a year ago, but Defendants refused to agree to a date that did not conflict with the undersigned's trial scheduled in another matter.

12. I was scheduled to begin a televised jury trial on May 14, 2018. Especially given the size of my firm, with only one other lawyer in the New York/New Jersey office, that case took up almost all of our time for several weeks beforehand. Nonetheless, according to our timekeeping software, from March 31, 2018 through May 14, 2018, I billed 53.2 hours to this case, and my contract attorney billed 47 hours to this case. My associate was completely preoccupied with the other matter, however. The significance of the trial is that it did limit our practical ability to review documents, and therefore we were more reliant on interrogatory responses

13. After the case settled after the first day of trial, *see* http://www.espn.com/nfl/story/_/id/23506027/settlement-reached-eli-manning-memorabilia-fraud-lawsuit, and taking some time off work (the first I had taken in over two years), my associate and I directed our primary focus to this case. According to our timekeeping software, from May 15 until November 7, 2018, (the date when the Court permitted Plaintiffs to make a motion for leave to amend), my associate billed 484.4 hours to this case, while I billed 178.1 hours. The majority of that time was spent on discovery matters, including reviewing and trying to understand the documents that were produced, without the benefit of depositions.

14. I communicated with defense counsel to try to schedule depositions of Lester and Wendy Eber over a year ago, but Defendants refused to agree to a date that did not conflict with the undersigned's trial scheduled in another matter. Moreover, the need to substitute the Gumaer Estate for the recently deceased Gumaer made scheduling depositions more difficult while that was unresolved.

15. Attached as Exhibit B is a true and correct copy of Plaintiffs' settlement conference summary that was sent to the email address for Magistrate Judge Katherine H. Parker by email at 1:16 AM on August 30, 2018.

16. A settlement conference was held on September 5, 2018 before Judge Parker. During the conference, Judge Parker indicated that Plaintiffs could not obtain their requested

relief without repaying Lester's loans. I stated Plaintiffs' position that, although the loans (if real) would no longer be deemed satisfied if the foreclosure transaction was unwound, it would be up to the corporation to decide what to do with the loans. I also stated that if Lester could not provide adequate support for the loans, the corporation would be justified in not paying them. In response, Judge Parker questioned Plaintiffs' understanding of corporate governance in this situation and indicated that the Court might order the repayment of Lester's loans as part of the ultimate judgment in this case. I do not recall specifically discussing the need for amendments to the complaint during the conference, even though it was an issue that I made sure to flag in the settlement conference summary sent beforehand.

17. During the telephone conference with the Court on October 16, 2018, I stated that based on the privilege log alone and the recent discovery that Underberg & Kessler LLP ("U&K") had been representing EBWLC in certain matters at the same time that it filed a lawsuit on behalf of Alexbay against EBWLC, we were considering seeking to amend and to add U&K as a party as part of the amendments. This Court then stated that it believed it was too late to be adding new parties, and accordingly I then stated, at the minimum, there was likely a basis to disqualify counsel.

18. During the conference on November 7, 2018, the Court stated that it could not consider the new issues affecting Plaintiffs' standing as shareholders without an amended complaint, and Plaintiffs advised that they had other amendments to add at the same time.

**Transactions Added to the First Amended Complaint Based on Incomplete Information: The Consulting Agreement and Slocum of Maine**

19. Prior to filing this lawsuit, Plaintiffs were aware that Lester provided consulting work for Southern Wine & Spirits ("Southern"), with the understanding that it was a part of the overall settlement agreement reached between Eber Bros. Wine and Liquor Corporation ("EBWLC") and Southern. Beyond that, there were no details. Plaintiffs did not know that the

money was being paid directly to Lester, rather than to Eber Bros., the company he continued to work for. Nor did they know that the Consulting Agreement had not been approved by Eber Bros.

20. On July 24, 2018, Plaintiff Kleeberg issued a second set of interrogatories to Lester Eber. Lester responded to those interrogatories on August 27, 2018.

21. Attached as Exhibit C is a true and correct copy of Lester Eber's responses to Plaintiff Kleeberg's second set of interrogatories.

22. Based on my review of notes and emails in response to this Court's order, it appears that Plaintiffs discovered the key new facts about the Consulting Agreement as follows:

    a. On October 22, 2018, we discovered that Lester's consulting contract with Southern for some of the years after 2012 was only for $10,000 per year.

    b. On or shortly before November 26, 2018, we realized that the non-competition clause in Lester's Consulting Agreement was the only non-competition clause in any of the agreements between the Eber entities and Southern.

23. Regarding Slocum & Sons of Maine, Inc., attached as Exhibit D is a true and correct copy of the cover letter and enclosed document produced by the Ebers on January 18, 2019. This document was key for answering questions about how the Ebers acquiring that company, and it made it clear that they did it by taking an option purchase by Eber Metro and using it themselves, without consideration to Eber Metro.

### The 2017 Transactions

24. During the September 5, 2018 settlement conference, Paul Keneally, counsel for the Ebers, angrily defended the February 2017 distribution of new voting preferred shares to Lester as something necessitated by his paying fees on behalf of the EBWLC entity.

25. In fact, the documents produced by the Ebers indicate that no other entity besides EBWLC issued shares or provided any kind of compensation to Lester in consideration of his payment of attorneys' fees in this case.

### Lester's Loans

26. Attached as Exhibit E is a true and correct copy of excerpts from the deposition of Richard Harris Hawks, Jr., former trust officer for Canandaigua National Bank on August 20, 2018.

27. Attached as Exhibit F is a true and correct copy of the first four pages of Plaintiffs' Exhibit 6 as used during the deposition of Richard Hawks.

### The Preparatory Transactions

28. My associate and I met with our consulting expert accountant on November 8, 2018 (the day after the in-court conference) to discuss his findings and outstanding questions based on review of the accounting documents, most of which were produced on various dates over the summer in 2018.

29. Without revealing what our accounting consultant had to say, suffice it to say that it was after this November 8 meeting that I first appreciated the potential significance of the accounting transaction that seems to have erased debt owed by Eber Metro to EBWLC.

### Wendy Eber's 9.1% Interest in Eber Metro

30. Attached as Exhibit G is Wendy's response to Lisa Stein's interrogatories, which was sent to Plaintiffs on August 28, 2019. The response to Interrogatory 10 disclosed that Wendy had acquired an interest Eber Metro. Plaintiffs had not previously received any disclosures stating that Wendy held such an interest. We did not notice that the Ebers had explicitly disclosed

Wendy's interest in Eber Metro until several weeks after production, due to the volume of other materials produced at that same point and right before the settlement conference.

### Wendy Aiding and Abetting (Count VIII)

31. Attached as Exhibit H is a true and correct copy of a cover letter and two emails produced by the Eber Defendants on or about August 17, 2018 in response to Plaintiffs' motion to compel. Where there is white space, that appears to be redactions by Defendants. The black redactions are made out of privacy concerns for one of Plaintiff's relatives.

32. These emails were the impetus for adding Wendy Eber to the Aiding and Abetting Breach of Fiduciary Duty count, based on her influence as a non-trustee on the trustees' actions concerning the Trust. These emails revealed that Wendy was not just a scribe for trustee meetings (she had prepared minutes of some trustee meetings), but actually played a substantive role in deciding what facts should be disclosed to or withheld from Plaintiffs about Lester's dissipation of Trust assets.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: April 13, 2019

/s Brian C. Brook
Brian C. Brook