```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DANIEL KLEEBERG, et al.,

                              Plaintiffs,                16-CV-9517 (LAK) (KHP)

              -against-                                  OPINION AND ORDER

LESTER EBER, et al.,

                              Defendants.
-----------------------------------------------------------------X
```

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays and Defendant Lester Eber are beneficiaries to the testamentary trust created upon the death of Allen Eber (the "Trust").[1] (Doc. No. 135, 3.) The Trust held/holds certain assets, including all of the voting stock in the Eber Family's wine and liquor distribution business, Defendant Eber Bros. & Co., Inc. ("EB&C"). EB&C's direct and indirect subsidiaries are/were Eber Bros. Wine and Liquor Corporation ("EBWLC"), Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), and Eber-Connecticut, LLC ("Eber-CT") (collectively, the "Eber Entities"). Lester Eber, Intervenor Defendant Canandaigua National Corporation d/b/a Canandaigua National Bank & Trust ("CNB"), and Elliot Gumaer (who died during the pendency of this action), were trustees of the Trust. Lester Eber also served as an officer of all of the Eber Entities.

---

[1] Allen Eber's three children, Sally Kleeberg, Mildred Boslov, and Lester Eber, were the original beneficiaries of the Trust. (Doc. No. 88-1; *see also* Doc. No. 135, 3.) Upon Sally Kleeberg's death, her children, Lisa and Daniel, became beneficiaries of the Trust. (*Id.*) Likewise, upon Mildred Boslov's death, her daughter, Audrey, became a Trust beneficiary. (*Id.*)

Plaintiffs claim that Lester Eber, together with other Defendants, engaged in self-dealing in breach of his fiduciary duties to them, and deprived them of their inheritance by orchestrating the transfer of Eber-CT out of the Trust to a company that he created and privately holds, Defendant Alexbay, LLC.

In the summer of 2017, CNB petitioned the Surrogate's Court for Monroe County for an order terminating the Trust and distributing its assets to the beneficiaries proportionally to their respective interests in the Trust. Notice of the Petition was served on all co-trustees and beneficiaries, including Plaintiffs and Defendant Lester Eber.  The Surrogate's Court granted CNB's Petition.  In its Order, the Court noted that Lester Eber did not object to any aspect of the Petition.  Lester Eber also did not appeal the Order.  CNB subsequently made some minor adjustments to the final accounting of the Trust assets based on discussions with Lester Eber's attorneys and distributed some of those assets in October of 2017.

CNB, which was named as a Defendant in this action initially, reached a settlement with Plaintiffs and was dismissed with prejudice.  Defendants received information about the terms of the settlement and signed the Stipulation of Partial Dismissal as against CNB.  (Doc. No. 117.) In December of 2018, Lester Eber attempted to transfer the remaining shares of EB&C stock to himself from CNB.  CNB was then forced to intervene and rejoin this action due to the conflicting instructions it received about the distribution of EB&C stock from Plaintiffs and Lester Eber.   Plaintiffs also seek to amend their Second Amended Complaint to add claims concerning, *inter alia*, Lester's attempt to block the distribution of EB&C stock.  (Doc. No. 164.)

On April 4, 2019, Defendants noticed a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Deposition") that seeks information regarding the Trust and its

termination.[2]  The Deposition Notice seeks information about: (1) CNB's role in holding, voting, and transferring or otherwise handling any capital stock of EB&C; (2) all matters relating to the Surrogate's Court case and all matters relating to the transfer restrictions set forth in Article XII of the EB&C By-laws; (3) Administration of the EBWLC Pension Plan; (4) the terms of the CNB settlement agreement with Plaintiffs; and (5) the manner in which CNB verified that Lisa Stein and Daniel Kleeberg are successors in interest to Sally Kleeberg's rights as a Trust beneficiary and shareholder of EB&C.  Notably, Rick Hawkes, a former Trust officer from CNB, was already deposed in this matter for more than seven hours about CNB's administration and dissolution of the Trust, and Lester Eber had full notice of the Surrogate's Court proceeding and attended that proceeding with counsel.  Additionally, Defendants were provided the terms of Plaintiffs' settlement with CNB.

CNB seeks a protective order precluding the Noticed Deposition pursuant to Federal Rule of Civil Procedure 26(b)(2)(C).  It argues that the Notice seeks information that is not relevant to claims or defenses and/or is not proportional to the needs of the case given that Defendants already received information relating to most of the Notice topics and had a full opportunity to depose the person from CNB most knowledgeable about the Trust and its dissolution – Mr. Hawkes.  Plaintiffs also object to the Noticed Deposition for similar reasons.  The Court held a telephonic conference regarding the Motion on May 8, 2019, during which

---

[2] Rule 30(b)(6) permits a notice of deposition to be directed to an organization. Fed. R. Civ. P. 30(b)(6). The party seeking the deposition "must describe with *reasonable particularity* the matters for examination." *Id.* (emphasis added). The named organization then must designate one or more persons to testify on its behalf concerning the topics set forth in the deposition notice. *See id.* "The persons designated must testify about information *known or reasonably available to* the organization." *Id.* (emphasis added). Once a designated witness testifies on behalf of the company, the testimony is binding on the company. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999), *superseded by statute on other grounds as recognized by Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016); *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007).

the parties supplemented the arguments in their letter briefs. (Doc. Nos. 208, 209, and 213.) After hearing from the parties, the Court granted CNB's motion. The following sets forth the Court's reasoning.

## DISCUSSION

In evaluating any discovery dispute, the court must determine whether the information sought is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The party moving to compel bears the initial burden of demonstrating relevance and proportionality. *See Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16 Civ. 1805 (JPO)(JCF), 2017 WL 3055098, at *2–3 (S.D.N.Y. July 18, 2017).

Once relevance of the information sought or an adequate factual basis for the collateral issue discovery has been shown, the burden falls on the responding party to justify curtailing discovery. *See Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York,* 284 F.R.D. 132, 135 (S.D.N.Y. 2012). "In order to justify withholding relevant information, the party resisting discovery must show good cause, the standard for issuance of a protective order under Rule 26(c)." *Johnson*, 2017 WL 3055098, at *3 (internal quotation marks and citation omitted); *cf. State Farm Mut. Auto. Ins. Co. v. New*

*Horizont, Inc.*, 254 F.R.D. 227, 233 n.4 (E.D. Pa. 2008) (treating motion to compel and motion for protective order as "mirror-image[s]").

Under Rule 26(b)(2)(C):

> [T]he court must limit the frequency or extent of discovery when: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK)(JCF), 2013 WL 2355451, at *4 (S.D.N.Y. May 28, 2013) (internal quotation marks and citation omitted). In other words, "the court ultimately weighs the interests of both sides in fashioning an order." *See Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (citation omitted).

In this case, the protective order is warranted for several reasons. To start, Defendants had ample opportunity to obtain the information by discovery already conducted in this action through the deposition it took of CNB's witness, Rick Hawkes. Indeed, Hawkes already provided at least some information concerning Topics 1 (CNB's role in holding, voting and transferring or otherwise handling any capital stock of EB&C), 2 (all matters relating to the Surrogate's Court case, all matters relating to the transfer restrictions set forth in Article XII of the EB&C By-laws), and 5 (the manner in which CNB verified that Lisa Stein and Daniel Kleeberg are successors in interest to Sally Kleeberg's rights as a Trust beneficiary and shareholder of EB&C) in the Deposition Notice. In this regard, the Deposition Notice seeks information that is duplicative and therefore necessarily not proportional to the needs of this case.

On the call with the Court, Defendants claimed that they need information about what CNB did after Lester Eber asserted that CNB could not distribute shares of EB&C stock in the manner ordered by the Surrogate's Court. Specifically, Defendants argued that CNB might have information about the EB&C By-laws that is pertinent to Lester Eber's request that CNB transfer all EB&C shares to him rather than distributing a portion to Plaintiffs. However, Defendants are in possession of information regarding EB&C's corporate structure and By-laws. Indeed, Lester Eber, as an officer and president of the Eber Entities, is in the best position to explain the basis of his directions to and request of CNB. CNB has already provided all of the information it has regarding its understanding of the appropriate distribution of Trust assets and presented that information to the Surrogate's Court and provided witnesses to testify about this topic.

Defendants also have received information about Topic 4 (the terms of the CNB settlement agreement with Plaintiffs). Therefore, deposition testimony on this topic is also duplicative and not proportional to the needs of the case.

Finally, Defendants have not explained why Topic 3 (Administration of the EBWLC Pension Plan) is relevant to this action, which involves alleged self-dealing by Trust fiduciaries. There is no claim against CNB or any other party to this suit for breach of fiduciary duty in connection with the Pension Plan. Thus, deposition testimony on this topic is outside the scope of discovery permitted under Rule 26(b)(1).

## CONCLUSION

For all the above reasons, CNB's Motion for a Protective Order is granted. This resolves the issues raised in Docket Nos. 208, 209, and 213.

**SO ORDERED.**

DATED: May 9, 2019
New York, New York

_____
Katharine H. Parker
U.S. Magistrate Judge