USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_05/13/2019_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

DANIEL KLEEBERG, et al.,

                                Plaintiffs,

              -against-

LESTER EBER, et al.,

                              Defendants.

---------------------------------------------------------------X

**16-CV-9517 (LAK) (KHP)**

**OPINION AND ORDER**
**REGARDING PLAINTIFFS' SECOND**
**MOTION TO COMPEL AND**
**PLAINTIFFS' REDACTION MOTION**

**KATHARINE H. PARKER, United States Magistrate Judge:**

      There are two discovery-related motions pending before this Court.  The first is a

Motion to Compel filed by Plaintiffs, in which they claim that Defendants Lester Eber ("Lester"),

Wendy Eber ("Wendy"), Eber Bros. & Co., Inc. ("EB&C"), Eber Bros. Wine and Liquor

Corporation ("EBWLC"), Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), Eber-Connecticut,

LLC ("Eber-CT") (collectively, the "Eber Entities"), and Alexbay, LLC ("Alexbay" and, collectively

with the aforementioned Defendants, the "Eber Defendants") have improperly designated

certain documents as being protected by the attorney-client and work product privilege and

wrongfully withheld them from production.  (Doc. No. 193.)  The second is a letter motion in

which Plaintiffs object to the scope of redactions applied to filings they made that refer to a

document that was clawed back following inadvertent disclosure by Defendant Estate of Elliot

Gumaer (the "Redaction Motion").  They request that the redactions be removed and the

unredacted documents substituted in the docket filings.  (Doc. No. 153; *see also* Doc. Nos. 148

and 149.)

For the reasons discussed below, Plaintiffs' Motion to Compel is granted in part and denied in part, and Plaintiffs' Redaction Motion is granted.

## BACKGROUND

This case is at its heart a family dispute. Allen Eber, the family patriarch, started a successful family liquor distribution business. It operated in New York, Connecticut and elsewhere. He placed the business in a family trust for the benefit of his son, Lester Eber, his two daughters, and their respective children and heirs. Lester Eber took over for his father in running the business, and his daughter, Wendy Eber, has assisted him in running the business. Lester Eber also was appointed and remained a trustee of the family trust until 2017.

Over the years, the business faced financial difficulties and Lester Eber gave and loaned money to the business to keep it running, pay its debts, and settle a lawsuit. At this point, the only operating company that remains of the companies started by Allen Eber is the business located in Connecticut—Eber-CT. At some point, Lester Eber asked his sisters to contribute funds to keep the business going, but they declined. In or about 2011, Lester Eber formed Alexbay and assigned his personal interest in loans he made to the family business to his new company. In 2012, Alexbay filed suit against the family business to collect on the loans, resulting in a transfer of the Trust's interest in Eber-CT to Alexbay.

Lester's two sisters have passed away and their children (Plaintiffs) are now suing their uncle, contending that he engaged in self-dealing and deprived them of their inheritance by orchestrating the transfer of Eber-CT out of the Trust to his privately held company, Alexbay. More details about the facts of this long family saga and the complex transactions leading to this suit are provided below to give context for the Court's analysis of the pending Motions.

## I.    The Trust and the Eber Entities

Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays, and Defendant Lester Eber are beneficiaries to the testamentary trust created upon the death of Allen Eber (the "Trust").[1] (Doc. No. 135, 3.)  Wendy Eber, Lester's daughter, is a contingent beneficiary of the Trust and will become a beneficiary upon Lester's death.  (*Id.*)  Daniel and Lisa, who are siblings, each hold a one-sixth interest in the Trust, while Lester and Audrey each hold a one-third interest.  (Doc. No. 88 ¶ 43; *see also* Doc. No. 135, 12.)

The Trust holds certain assets, including all of the voting stock in the Eber Family's wine and liquor distribution business, EB&C.[2]  (Doc. No. 135, 4.)  EB&C is a New York Corporation that has been majority-owned by the Trust since the 1970s.  (Doc. No. 144, 3.)  EB&C owns a majority interest in its subsidiary, EBWLC, including all of EBWLC's voting shares of stock, and the Trust owns a minority interest in EBWLC.[3]  (Doc. No. 135, 4.)  Eber Metro is EBWLC's subsidiary and is wholly owned by EBWLC.  (*Id.*)  Eber-CT is Eber Metro's subsidiary.  (*Id.*)  As of 2010, Eber Metro owned a 79 percent stake in Eber-CT and Eber-CT was the sole remaining Eber Entity that continued operations as a liquor distributor.  (*Id.* at 3-4.)

---

[1] Allen Eber's three children, Sally Kleeberg, Mildred Boslov, and Lester Eber, were the original beneficiaries of the Trust.  (Doc. No. 88-1; *see also* Doc. No. 135, 3.)  Upon Sally Kleeberg's death, her children, Lisa and Daniel, became beneficiaries of the Trust.  (*Id.*)  Likewise, upon Mildred Boslov's death, her daughter, Audrey, became a Trust beneficiary.  (*Id.*)

[2] EB&C issued the following stock: 2,000 Preferred shares; 1,850 Class A Common shares; and 690 Class B Common shares.  (Doc. No. 135, 4.)  Of these shares, the Trust controls: 2,000 Preferred shares; 1,850 Class A Common shares; and 490 Class B Common shares.  (*Id.*)  Lester also owns 100 Class B Common shares.  (*Id.*)  Additionally, Sally owned 100 shares of Class B Common stock, although it is unclear whether those shares are now owned by Lisa and Daniel.

[3] EBWLC issued the following stock: 500 Preferred shares; 2,000 Class A Common shares; and 817 Class B Common shares.  Of these shares, EB&C owns: 250 Preferred; 2,000 Class A Common; and 438 Class B Common.  (Doc. No. 135, 4.)  The Trust owns the remaining 250 Preferred shares and 379 Class B Common shares.  (*Id.*)

The Trust was dissolved in 2017. However, the assets of the Trust have not been fully distributed, and the proper distribution of Trust assets is disputed.[4] Until the dissolution of the Trust in 2017, Lester Eber was co-trustee for the Trust with Defendant Gumaer and Intervenor Plaintiff Canandaigua National Corporation d/b/a Canandaigua National Bank & Trust ("CNB"). (*Id.*) Gumaer passed away in February 2018, after this lawsuit was filed, but his estate remains a defendant. (Doc. Nos. 81 and 95.)

## II.    The Eber Entities' Corporate Leadership, Attorneys, and Consultants

While serving as co-trustee of the Trust, Lester Eber also served as an officer to the Eber Entities. Lester Eber was president and director of EBWLC until February 1, 2012, when he resigned from those positions. (Doc. No. 135, 6; Doc. No. 136-4; Doc. No. 193-2, 48:04-23.) However, both prior to and after resigning from his positions with EBWLC, he held and continued to hold the positions of president and director of EB&C, Eber Metro, and Eber-CT. (Doc. No. 135, 3; *see also* Doc. No. 88 ¶ 19.)

Wendy Eber was the CFO and Secretary of EBWLC from approximately 2007 until 2012. (Doc. No. 88 ¶ 47; Doc. No. 193-2, 26:04-25, 47:06-48:23.) Wendy Eber replaced her father as president of EBWLC in February of 2012. (Doc. No. 135, 6; Doc. No. 136-4; Doc. No. 193-2, 48:04-23.) She subsequently resigned as president and director of EBWLC in 2014 but remained at the company as "assistant secretary." (Doc. No. 88 ¶ 20; Doc. No. 193-2, 48:24-49:16.) Plaintiffs aver that, as assistant secretary, Wendy Eber remained EBWLC's most senior

---

[4] CNB is currently holding the last remaining Trust assets to be distributed among the Trust Beneficiaries. (Doc. Nos. 187-189, 200, and 206.)

officer.  (Doc. No. 88 ¶ 20.)  In addition to being an officer of EBWLC, Wendy Eber also appears to have been CFO of Alexbay.  (Doc. No. 135, 21.)

Like Lester and Wendy Eber, Defendant Gumaer held various, concurrent roles.  While serving as a trustee of the Trust, he also served as a director of EB&C and its subsidiaries and a consultant for the Eber Entities.  (*Id*. at 4, 8; Doc. No. 136-16.)  According to the Eber Defendants, Gumaer also served as in-house counsel for the Eber Entities and a personal attorney to Lester and Wendy Eber for many years.  (Doc. No. 144, 9-10; *see also* Doc. No. 136-16.)

Glenn Sturm ("Sturm"), formerly a partner at the law firm of Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins"), served both as outside counsel to the Eber Entities and a strategic business consultant.  (Doc. No. 144, 14; Doc. No. 135, 4-5.)  In 2010, Sturm, through his private company Polebridge Bowman Partners, LLC ("Polebridge"), acquired a six percent stake in Eber-CT from Eber Metro.  (Doc. No. 135, 4.)  During his deposition, Lester Eber testified that the Eber Entities paid Sturm for his services by giving him the interest in Eber-CT.  (Doc. No. 193-1, 95:04-69:09.)

### III.    Lester's Loans to EBWLC and Eber Metro and the Foreclosure Action

Between 2002 and 2012, and while serving as president and director of all four Eber Entities and co-trustee of the Trust, Lester made personal cash loans to EBWLC and Eber Metro.  (Doc. No. 144, 4-5.)  The Eber Defendants maintain that Lester made these loans because no third parties were willing to issue loans to the Eber Entities, which badly needed capital.  (*Id.*)  The loans totaled approximately $3,579,645.00 and were secured against all of EBWLC's assets.  (*Id.*)  On February 10, 2011, EBWLC, Eber Metro, and Lester Eber entered into an agreement

(the "Debt Assumption Agreement"), whereby Eber Metro assumed all of EBWLC's obligations to Lester. (Doc. No. 144, 4-5.)

On December 8, 2011, Lester Eber, while serving as co-trustee of the Trust and president and director of the Eber Entities, allegedly attempted to transfer Eber Metro's 79 percent interest in Eber-CT to Alexbay for no consideration. (Doc. No. 135, 5; *see also* Doc. No. 144, 7.) This transfer was never effectuated. (Doc. No. 135, 5.) On January 18, 2012, fifteen days before he resigned as president and director of EBWLC, Lester Eber transferred his right, title, and interest in the loans to Alexbay. (Doc. No. 144, 7.) On February 21, 2012, Alexbay sued EBWLC and Eber Metro in the Supreme Court of the State of New York, Monroe County, to collect on the loans (the "Foreclosure Action"). (*Id*.; *see also* Doc. Nos. 136-7 and 136-8.) Rather than payment of funds (which the Eber Entities allegedly did not have), Alexbay sought Eber Metro's 79 percent interest in Eber-CT as satisfaction for the loan debt. (*Id.*) On May 1, 2012, the presiding judge in the Foreclosure Action issued an Order sanctioning the transfer of interest in Eber-CT from Eber Metro to Alexbay, deeming the transaction to be "commercially reasonable." (Doc. No. 161-2.) On or around June 6, 2012, Gumaer and Wendy Eber, as the sole board members of EBWLC, approved the transfer of Eber-Metro to Alexbay. (Doc. No. 161-8.) Lester Eber and Gumaer were trustees of the Trust at the time of this decision and also had roles in the various Eber Entities. Wendy Eber also may have been CFO of Alexbay at the time.

## IV. The Instant Action

On December 9, 2016, more than four years after the transfer of Eber-Ct to Alexbay, Plaintiffs commenced the instant action asserting claims of breach of fiduciary duty, fraudulent concealment, and aiding and abetting breach of fiduciary duty under New York Law. (Doc. No.

1; *see also* Doc. No. 135, 3.)  Jurisdiction is based on diversity of citizenship.  Plaintiffs assert the claims individually, as beneficiaries of the Trust, and derivatively, as shareholders of EB&C and EBWLC.  (Doc. No. 88.)  Plaintiffs contend that Lester Eber secretly attempted to take control of Eber-CT for himself by first seeking to transfer Eber Metro's 79 percent stake in Eber-CT directly to himself and, when that attempt failed, turning to legal counsel "to concoct a less-obviously-flawed legal mechanism to take Eber-C[T] for himself and his daughter."  (Doc. No. 135, 5, 24.)  Plaintiffs also contend that Lester Eber conspired with his daughter and Gumaer  to engage in a series of transactions to allow him to take "EBWLC for himself."  (*Id*. at 5.)  Additionally, they allege that the Foreclosure Action was a "sham" because Wendy Eber and Gumaer, as officers of EBWLC, and Gumaer, as co-trustee of the Trust, simply allowed Lester to take Eber-CT without raising any defenses in that proceeding.  (Doc. Nos. 135, 6 and 136-6; *see also* Doc. No. 88 ¶ 7, ¶¶ 56-75.)  Finally, Plaintiffs maintain that Lester and Wendy Eber, together with Gumaer, concealed the fact that Eber-CT was transferred to Alexbay and out of the Trust's assets.  (Doc. No. 135*,* 7.)

In response, the Eber Defendants argue that the transfer of Eber-CT to Alexbay in full satisfaction of the loans Lester Eber made to EBWLC and Eber Metro were "commercially reasonable" because the value of the loans exceeded the value of Eber-CT.  (Doc. No. 144, 7.)  They also maintain that, in 2010, Lester Eber advised his sisters and co-beneficiaries of the Trust, Sally Kleeberg and Audrey Hayes, that he had made cash loans to Eber Metro and that "the additional loans were secured by [EBWLC's] controlling equity interest in Eber Metro and Eber Metro's controlling equity interest in Eber-CT."  (Doc. No. 144, 6.)  Finally, Defendants

contend that Lester Eber gave his sisters the opportunity to make cash loans to the struggling

Eber Entities, but that they declined the offer.  (*Id.*)

Throughout the discovery process, Plaintiffs have sought to uncover information to

confirm their suspicions that the Eber Defendants and Gumaer conspired, with the help of their

attorneys, to defraud Plaintiffs.  (*E.g.*, Doc. No. 135, 22-24.)  Plaintiffs filed their First Motion to

Compel on July 29, 2018, arguing that many of the documents listed in the Eber Defendants'

privilege log were being improperly withheld and fell outside the scope of the attorney-client

privilege because: (1) the documents did not discuss or convey legal advice; (2) the privilege

was waived; (3) the documents fell within the fiduciary exception to privilege; and/or (4) the

documents fell within the crime-fraud exception to privilege.  (Doc. No. 113.)

On August 19, 2018, the Eber Defendants filed an Opposition to the First Motion to

Compel and a Cross-Motion seeking to claw back certain documents produced by Defendant

Gumaer (the "Claw Back Motion").  (Doc. No. 120.)  In an Order dated September 13, 2018, the

Court denied Plaintiffs' Motion to Compel after the Eber Defendants agreed to produce some of

the challenged documents.  (Doc. No. 129.)  The Court instructed Plaintiffs to review the Eber

Defendants' supplemental production and granted Plaintiffs leave to file another motion to

compel in the event they believed the Eber Defendants continued to improperly withhold

documents.  (*Id.*)  The Court also granted the Eber Defendants' Claw Back Motion, in part.  (*Id.*)

Among other documents, the Eber Defendants clawed back a memorandum prepared by the

law firm Underberg and Kessler LLP ("U&K") on behalf of Alexbay, marked with bates numbers

GUM000131 and GUM000132 (the "Underberg Letter").

## PENDING MOTIONS

Plaintiffs filed their Second Motion to Compel on October 23, 2019, in compliance with the Court's September 13, 2018 Order, and made arguments similar to those included in their initial Motion to Compel. (Doc. No. 134.) Plaintiffs also submitted transcripts from the depositions of Lester and Wendy Eber, arguing that both Defendants waived any attorney-client privilege that may have applied to their communications with attorneys concerning the Foreclosure Action and the related preparatory transactions by putting those communications "at issue" during their depositions. (Doc. No. 193, 3-8.)

For their part, the Eber Defendants steadfastly deny that they are improperly withholding documents based on the attorney-client privilege and, for one document, also the work product doctrine. In compliance with the Court's September 13, 2018 Order, the Eber Defendants submitted an amended privilege log and the challenged documents for *in camera* review. (Doc. No. 129.) The documents submitted for *in camera* review fall within the following categories:

- Emails Concerning the Administration of the Trust;[5]

---

[5] Documents: EB-00000734; EB-00000735; EB-00000736; EB-00000737; EB-00026629; EB-00026630; EB-00026631; EB-00026632; EB-00026633; EB-00026634; EB-00026635; EB-00026636; EB-00026637; EB-00026650; EB-00026652; EB-00026653; EB-00026654; EB-00026655; EB-00026676; EB-00026677; EB-00026681; EB-00026682; EB-00026683; EB-00026694; EB-00026695; EB-00026696; EB-00031202; EB-00031204; EB-00031205; EB-00031206; EB-00031209; EB-00031210; EB-00031211; EB-00031212; EB-00031213; EB-00031214; EB-00031215; EB-00031216; EB-00031217; EB-00031220; EB-00031221; EB-00031222; EB-00031223; EB-00031224; EB-00031225; EB-0003122; EB-00031227; EB-00031228; EB-00031229; EB-00031230; EB-00031231; EB-00031239; EB-00031240; EB-00031245; EB-00031247; EB-00031248; EB-00031249; EB-00031250; EB-00031251; EB-00031252; EB-00031270; EB-00031271; EB-00031272; and EB-00031284. Defendants also claim work product privilege with respect to document EB-00026654.

- Emails Discussing the D-4, Harris Beach LLP ("HB"), and the Pension Benefit Guaranty Corporation ("PBGC") Litigations, and the EB&C Retirement Plan;[6]

- Emails Discussing CNB and Eber-CT;[7]

- Communications Regarding Alexbay and Involving Lester in His Individual Capacity;[8]

- Email Sent to Gumaer Regarding EBWLC Documents;[9] and

- The Underberg Letter.[10]

The second motion pending before the Court, the Redaction Motion, challenges the propriety of redactions of information pertaining to the Underberg Letter in three filings on the public docket (see Doc. Nos. 98, 135, and 138). As noted above, this Court previously held that the Underberg Letter was privileged and the redactions appropriate. Thus, Plaintiffs, in actuality, are seeking reconsideration of this Court's prior rulings through the Redaction Motion. The Underberg Letter has been resubmitted to the Court by Defendants and is listed on their privilege log as EB-00026647 and EB-00026648. The Eber Defendants also have submitted cover emails for the Underberg Letter not previously provided to the Court that

---

[6] Documents: EB-00026272; EB-00026273; EB-00026274; EB-00026275; EB-00026276; EB-00026277; EB-00026278; EB-00026279; EB-00026627; EB-00026628; EB-00026638; EB-00026639; EB-00026640; EB-00026641; EB-00026642; EB-00026643; EB-00026644; EB-00026664; EB-00026665; EB-00026666; EB-00026667; EB-00026668; EB-00026669; EB-00026670; EB-00026671; EB-00026672; EB-00026673; EB-00026674; and EB-00026675.

[7] Documents: EB-00000741; EB-00026289; EB-00026657; EB-00026658; EB-00026679; EB-00026680; EB-00026693; EB-00031199; EB-00031201; EB-00031241; and EB-00031246.

[8] Documents: EB-00000729; 00000730; EB-00000731; EB-00000738; EB-00000739; EB-00026651; and EB-00026663.

[9] Documents: EB-00000714; EB-00000715; EB-00000716; EB-00000717; EB-00000718; EB-00000719; EB-00000720; EB-00000721; EB-00000722; EB-00000723; EB-00000724; EB-00000725; EB-00000726; EB-00000727; and EB-00000728.

[10] Documents: EB-00026645; EB-00026646; EB-00026647; and EB-00026648.

supply further context for the Court's assessment of privilege and conclusion, as discussed below, that its prior ruling was in error. These cover emails are listed as EB-00026645 and EB-00026645 on the privilege log.

## LEGAL STANDARDS APPLICABLE TO THE MOTIONS

A number of legal rules pertaining to privilege are implicated by Plaintiffs' motions. Plaintiffs contend that that certain documents are not protected by the attorney-client privilege because they do not constitute communications between Defendants and their attorney and/or they do not constitute communications in which legal advice was sought or conveyed. Plaintiffs also argue that Defendants waived privilege as to certain documents by disclosing the communications to others outside of the attorney-client relationship by relying on legal advice as a defense and putting such advice at issue in the case, or by selectively producing certain privileged communications to their advantage and withholding privileged communications on the same subject that may be against their interest to disclose. Finally, Plaintiffs argue that some of the documents on the log fall under one of two exceptions to the privilege — the fiduciary exception and the crime-fraud exception.

### I. Attorney-Client Privilege

In diversity cases such as this, where state law governs the claims, the Court looks to state law for determining privilege. *E.g.*, *AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052(SHS)(HBP), 2008 WL 4067437, at *5 (S.D.N.Y. Aug. 28, 2008) (citations omitted) (applying New York law), *modified on reconsideration,* No. 07 Civ. 7052(SHS)(HBP), 2009 WL 1953039 (S.D.N.Y. July 8, 2009); *see also* Fed. R. Evid. 501. The parties agree that New York law governs.

"The elements of the attorney-client privilege under New York law are the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication." *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995) (citing *People v. Osorio,* 75 N.Y.2d 80, 82–84, 549 N.E.2d 1183, 1185 (1989)). Although the privilege was designed to promote full and frank communications between a client and counsel, and thereby "promote broader public interests in the observance of law and administration of justice," it is narrowly construed because the application of the privilege renders protected relevant information undiscoverable. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Hoopes v. Carota*, 142 A.D.2d 906, 908, 531 N.Y.S.2d 407, 409 (3d Dep't 1988) (explaining that the attorney-client privilege "constitutes an obstacle to the truth-finding process" and, thus, its "invocation should be cautiously observed to ensure that its application is consistent with its purpose" (internal quotation marks, alterations, and citations omitted)), *aff'd,* 74 N.Y.2d 716, 543 N.E.2d 73 (1989).

Here, the corporate Defendants have asserted privilege over a majority of the documents on the privilege log. "In New York, . . . the corporation and its current board of directors control the attorney-client privilege with regard to confidential communications [between the corporation and its counsel] arising out of general business matters." *People ex rel. Spitzer v. Greenberg*, 50 A.D.3d 195, 201, 851 N.Y.S.2d 196, 200–201 (1st Dep't 2008) (citing *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 136, 674 N.E.2d 663 (1996)). The attorney-client privilege typically applies to a company's communications with both its external and in-house lawyers. In situations where an in-house attorney wears "two hats" within a company

and, for example, acts both as an attorney and a business consultant, the court must ascertain which hat the attorney was wearing during the allegedly privileged communication. If the communication's purpose was to seek or convey legal advice, then the communication is privileged unless there has been a waiver of privilege or another exception to privilege applies. If the communication's predominant purpose was to seek or convey business advice, then it is not privileged. *See AIU Ins. Co.*, 2008 WL 4067437, at *11 (e-mails sent to employees by in-house counsel who was also vice president of the company were not privileged because they did not provide legal advice); *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 379, 581 N.E.2d 1055, 1061 (1991) ("[A] lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer . . . . The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." (citation omitted)).

The party asserting the privilege bears the burden of showing that it applies. *See, e.g.*, *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)) (privilege waived where inmate conveyed privileged information to his sister over a phone line he knew was being recorded); *Priest v. Hennessy*, 51 N.Y.2d 62, 69, 409 N.E.2d 983, 986 (1980) (attorney-client privilege did not apply where existence of attorney-client relationship was not shown); *Hoopes*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410 (exception to privilege applied where "defendant failed to advance a basis upon which the attorney-client privilege should appropriately be extended to the information sought").

## II.     Waiver of the Attorney-Client Privilege

In addition to bearing the burden of establishing privilege, the party asserting privilege bears the burden of showing that privilege was not waived.  *Spectrum Sys. Int'l Corp.*, 78 N.Y.2d at 377, 581 N.E.2d at 1059; *Hoopes*, 142 A.D.2d at 909, 531 N.Y.S.2d at 409; *see also, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-07060(CM)(KHP), 2019 WL 1259382, at *6 (S.D.N.Y. Mar. 19, 2019).  There are three types of waiver at issue in this case, waiver by disclosure to a person outside of the attorney-client relationship, so-called "at issue" waiver, and selective waiver.

### A.   Waiver by Disclosure

Attorney-client privilege generally is waived if the holder of the privilege discloses or consents to disclosure of privileged communications to a third party.  *Osorio*, 75 N.Y.2d at 84, 549 N.E.2d at 1185; *New York Times Newspaper Div. of New York Times Co. v. Lehrer McGovern Bovis, Inc.*, 300 A.D.2d 169, 172, 752 N.Y.S.2d 642, 645–46 (1st Dep't 2002) ("Disclosure of a privileged document generally operates as a waiver of the privilege unless it is shown that the client intended to maintain the confidentiality of the document, [and] that reasonable steps were taken to prevent disclosure . . . ." (citations omitted)).  However, if the third party is an agent of the attorney or client, then the disclosure may not result in a waiver.  *Netherby Ltd. v. G.V. Trademark Investments, Ltd.*, 261 A.D.2d 161, 161, 689 N.Y.S.2d 488, 489 (1st Dep't 1999) (citing *Le Long v. Siebrecht*, 196 A.D. 74, 76, 187 N.Y.S. 150, 151 (2nd Dep't 1921)).

New York courts have developed a two-prong test to determine whether disclosure by a party to a purported agent of the party results in waiver of the attorney-client privilege. Although no formal agency agreement is required, the party asserting privilege must

demonstrate that when it disclosed the privileged communication to the purported agent: (1) it had a "'reasonable expectation of confidentiality under the circumstances,'" and (2) the disclosure "was necessary for the client to obtain informed legal advice." *Ross v. UKI Ltd.*, No. 02 Civ. 9297(WHP)(JCF), 2004 WL 67221, at *3 (S.D.N.Y. Jan. 15, 2004) (quoting *Osorio,* 75 N.Y.2d at 84, 549 N.E.2d at 1186). To meet the second prong of the test, the party asserting privilege must demonstrate "that the involvement of the third party [was] nearly indispensable or serve[d] some specialized purpose in facilitating the attorney-client communications." *Id.* (internal quotation marks and citation omitted). Likewise, a company's attorney may hire an outside consultant if needed to assist the attorney in rendering legal advice. Communications between the attorney and the consultant in this circumstance also will be protected by the attorney-client privilege and/or work product doctrine. *See, e.g., MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 93 A.D.3d 574, 574, 941 N.Y.S.2d 56, 58 (1st Dep't 2012) (communications prepared by consultants hired by plaintiff's counsel were protected by attorney-client and work product privilege because the communications were prepared in anticipation of litigation and advised plaintiff of the potential claims it could raise against defendant).

### B. At-Issue Waiver

Attorney-client privilege also can be waived if the privileged communications are placed "at-issue" in the litigation and a party asserts reliance on counsel as a defense to justify its actions. *Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 520 (S.D.N.Y. 2017) (denying request for disclosure of communications protected by attorney-client privilege where those communications would not be used as evidence). Courts will find that privileged

communications were put at issue where "[i]t would be unfair for a party who has asserted

facts that place privileged communications at issue to deprive the opposing party of the means

to test those factual assertions through discovery of those communications." *Id.* at 518; *see*

*also, e.g.*, *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("[A] party must *rely* on

privileged advice from his counsel to make his claim or defense." (emphasis in original));

*Pearlstein*, 2019 WL 1259382, at *7 (collecting cases);[11] *see also Deutsche Bank Tr. Co. of*

*Americas v. Tri-Links Inv. Tr.*, 43 A.D.3d 56, 64, 837 N.Y.S.2d 15, 23 (1st Dep't 2007) (if the mere

relevance of privileged communications to the parties' dispute could trigger at-issue waiver, the

"[attorney-client] privilege would have little effect" (citing *Long Is. Lighting Co. v. Allianz*

*Underwriters Ins. Co.,* 301 A.D.2d 23, 33, 749 N.Y.S.2d 488 (1st Dep't 2002))).

      Plaintiffs argue that because Lester and Wendy Eber testified at their depositions that

they relied on the advice of counsel to effectuate some of the transactions at issue in this case,

such as the Foreclosure Action, they waived attorney-client privilege as to any legal advice they

received in connection with those transactions.  (Doc. No. 193, 3-7.)  This argument is without

merit because it is well established that merely testifying that an attorney was consulted,

without revealing the substance of those communications, does not waive privilege.  Indeed,

this was precisely the issue in *Deutsche Bank Trust Company of Americas v. Tri-Links Investment*

*Trust*, an action in which the plaintiff sued the defendant to enforce an alleged right to

indemnification for the costs of defending and settling a prior lawsuit.  There, defendant's

attorneys asked the deponent whether he relied on the advice of counsel when deciding

---

[11] "The law in New York concerning the at-issue waiver theory parallels federal law."  *Windsor Sec., LLC*, 273 F. Supp. 3d at 518 (internal quotation marks and alterations omitted).

whether to approve the settlement at issue.  *Deutsche Bank Tr. Co. of Am.*, 43 A.D.3d at 68, 837 N.Y.S.2d at 26.  The deponent responded in the affirmative, and the defendant moved to compel disclosure of the underlying privileged communications.  *Id.*  On appeal, the New York Appellate Division for the First Department held that the deponent's testimony did not constitute a waiver of the attorney-client privilege because the deponent did not divulge the substance of the advice he received from counsel.  *Id.*, 43 A.D.3d at 68–69, 837 N.Y.S.2d at 26.

Here, like the deponent in *Deutsche Bank Trust Company of America,* Lester and Wendy Eber did not divulge the substance of the advice they received from their attorneys. Accordingly, the Court finds that the Eber Defendants did not waive attorney-client privilege by putting privileged communications at issue and will not further address this type of waiver below.

### C.  Selective Waiver

Lastly, attorney-client privilege can be waived when a party selectively produces privileged information that is beneficial to its case while withholding related privileged information that is damaging.  *Deutsche Bank Tr. Co. of Americas*, 43 A.D.3d at 64, 837 N.Y.S.2d at 23 (citing *Orco Bank v. Proteinas Del Pacifico,* 179 A.D.2d 390, 577 N.Y.S.2d 841 (1st Dep't 1992)).  The logic behind this rule is that parties should not be allowed to engage in gamesmanship that uses the attorney-client privilege as both a shield and a sword.  *Id*., 43 A.D.3d at 64, 837 N.Y.S.2d at 23.

Here, Plaintiffs argue that the Eber Defendants selectively waived attorney-client privilege by producing certain documents that appear to "cast blame on CNB for the fraudulent concealment of the 2012 transfer to Alexbay."  (Doc. Nos. 135, 20 and 136-17.)  The Court has

reviewed the documents cited by Plaintiffs and finds that no selective waiver occurred.
Instead, it appears that the Eber Defendants produced the documents in question because they
did not contain legal advice and are, thus, not privileged.  Accordingly, the Court finds that the
Eber Defendants did not waive attorney-client privilege through selective waiver and will not
further address the issue of selective waiver below.

III.    **Fiduciary Exception/"Real Client" Doctrine**

In certain situations, the party seeking to withhold documents on the basis of attorney-
client privilege cannot take advantage of the privilege due to its fiduciary position vis-à-vis the
party seeking the documents.  The so-called "real client" doctrine or fiduciary exception to
attorney-client privilege recognizes that some legal advice to a fiduciary concerning fiduciary
matters is for the ultimate benefit of the beneficiaries.   The communications, therefore, cannot
be withheld from the beneficiary when there is good cause for disclosure.  *Hoopes*, 142 A.D.2d
at 909–910, 531 N.Y.S.2d at 409–410.  The party seeking disclosure bears the burden of
demonstrating "good cause" for disclosure.  *Id.*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410.

The fiduciary exception first arose in the context of trust administration.  It has been
extended to apply to other situations, including to corporations in certain cases on the theory
that corporate management has duties that run to the benefit of the stockholders and, thus,
"cannot hide behind an 'ironclad veil of secrecy'" when its judgment is questioned.  *Beard v.
Ames*, 96 A.D.2d 119, 121, 468 N.Y.S.2d 253, 255–56 (4th Dep't 1983) (citing *Garner v.
Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir. 1970)); *see also generally United States v. Jicarilla
Apache Nation*, 564 U.S. 162, 190 (2011) (Sotomayor, J., dissenting) (noting the fiduciary
exception to attorney-client privilege is "now well recognized in the jurisprudence of both

federal and state courts, and has been applied in a wide variety of contexts"); *Pearlstein*, 2019 WL 1259382, at *9 ("The theory underlying the exception is that an attorney advising a fiduciary as to her fiduciary obligations to a trust is in actuality focused on the beneficiary of the trust.  In other words, the real client served by the legal advice is the beneficiary (not the fiduciary) and, hence, the privilege flows to the beneficiary.").  When the exception is raised in the context of a derivative action bought by shareholders of a corporation, the following factors are relevant to determining whether good cause for disclosure exists:

1) [T]he number of shareholder plaintiffs and percentage of stock they represent;

2) The bona fides of the shareholder plaintiffs;

3) Whether the claim raised is obviously colorable;

4) The apparent necessity or desirability of the shareholders having the information and the information's availability from other sources;

5) The nature of the shareholders' claim;

6) Whether the privileged communication relates to past or prospective actions;

7) Whether the privileged communication is advice concerning the litigation itself;

8) The extent to which the privileged communication is identified versus the extent to which the shareholders are blindly fishing; and

9) The risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

*Garner*, 430 F.2d at 1104; *see also Hoopes*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410

(applying *Garner* factors).

The exception does not apply to legal advice that is personal to the fiduciary. That is, when a fiduciary "solicit[s] advice from counsel solely in an individual capacity and at his own expense, as a defensive measure regarding potential litigation over his disputes with the trust beneficiaries," such communications are not subject to disclosure under the fiduciary exception. *In re Bank of New York Mellon*, 42 Misc. 3d 171, 179, 977 N.Y.S.2d 560, 566 (N.Y. Sup. Ct. 2013); *see also Stock v. Schnader Harrison Segal & Lewis LLP*, 142 A.D.3d 210, 220, 35 N.Y.S.3d 31, 38 (1st Dep't 2016) ("[W]here . . . the trustee consults counsel in order to defend itself against the conflicting claims of beneficiaries . . . the exception delineated in *Hoopes* is inapplicable.").

Defendants argue that the fiduciary exception to attorney-client privilege is inapplicable to the communications sought by Plaintiffs because EB&C and EBWLC were insolvent at the time the privileged communications took place and the "trust fund doctrine" establishes that directors owe a duty to their creditors, rather than their shareholders, to hold corporate assets in trust on their behalf. (Doc. No. 144, 14-15 (citing *RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 202 (S.D.N.Y. 2009), *aff'd sub nom., RSL Commc'ns PLC, ex rel. Jervis v. Fisher*, 412 F. App'x 337 (2d Cir. 2011); *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 308 (S.D.N.Y. 2006); and *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 549, 729 N.E.2d 683, 688 (2000)). Thus, the Eber Defendants appear to argue that Lester, as president and director of EB&C, Wendy as president of EBWLC, and Gumaer as director of EB&C and EBWLC, only owed fiduciary duties to creditors such as Alexbay (owned by Lester Eber). (Doc. No. 144, 15.) This argument ignores the fact that Lester Eber and Gumaer also owed fiduciary duties to Plaintiffs as trustees of the Trust. (*Id.*) For their part, Plaintiffs argue that the trust fund

doctrine expands, rather than shifts, corporate officers' and directors' fiduciary duties when a company is insolvent and cites to cases that rely on Delaware law. (Doc. No. 150, 2-3 (citing, *e.g.*, *In re Bear Stearns Litigation*, 870 N.Y.S.2d 709, 737 (N.Y. Sup. Ct. 2008)).

Without reaching the issue of whether the trust fund doctrine affects the applicability of the fiduciary exception to attorney-client privilege, the Court finds the Eber Defendants' argument unpersuasive for the simple reason that they failed to provide specific facts or documentation that could lead the Court to conclude that the Eber Entities were, in fact, insolvent when the at-issue communications took place. *RSL Communications PLC v. Bildirici*, cited by Defendants, holds that a corporation must actually be insolvent, and not simply experiencing significant financial difficulties, for the trust fund doctrine to apply. Indeed, in that case, the court held that defendants did not owe an unlimited duty of care to creditors while in the "zone of insolvency," the thirty to sixty-day period prior to becoming insolvent. *RSL Communications PLC*, 649 F. Supp. 2d at 202–203.

Here, the Eber Defendants conclude, without submitting any supporting documentation, that EB&C and EBWLC were insolvent during the period at issue. (Doc No. 144, 3.) To support this assertion, the Eber Defendants aver that the Eber Entities had ceased operations and had no cash flow during the relevant time period. (*Id.*) Clearly, such bare assertions are patently insufficient to meet their burden of showing insolvency under the trust fund doctrine. *See, e.g.*, *RSL Commc'ns PLC*, 649 F. Supp. 2d at 202–203. Moreover, the question of whether the Eber Entities were insolvent during the relevant timeframe is a hotly contested issue of fact in this action. (Doc. No. 155, 8.) Accordingly, because the Eber

Defendants did not make any showing that the Eber Entities were, in fact, insolvent, the trust fund doctrine is inapplicable to the instant discovery dispute.

There is no question that Lester and Wendy Eber and Gumaer stood in fiduciary capacities vis-à-vis the Plaintiffs.  There also is no question that the fiduciary exception has been found to apply to communications between lawyers and trustees of family trusts and between lawyers and officers of family businesses placed in family trusts.  *See, e.g.*, *Hoopes*, 142 A.D.2d 906, 531 N.Y.S.2d 407.  Therefore, the critical issue in determining whether the fiduciary exception requires disclosure of the documents on Defendants' privilege log turns on whether Plaintiffs have demonstrated good cause for disclosure.  As discussed below, they have demonstrated good cause as to certain categories of documents but not others.

## IV.    Crime-Fraud Exception

The crime-fraud exception to the attorney-client privilege applies to otherwise privileged communications made in furtherance of a crime.  *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) (citing *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986));[12] *In re New York City Asbestos Litig.*, 109 A.D.3d 7, 10, 966 N.Y.S.2d 420, 422 (1st Dep't 2013).  It is well established that "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.'" *Amusement Indus., Inc.*, 293 F.R.D. at 425 (quoting *Clark v. United States,* 289 U.S. 1, 15 (1933)).  However, for the crime-fraud exception to apply, the at issue communications must have been made in furtherance of

---

[12] Because the same legal standards apply under the New York and federal crime-fraud doctrines, courts deciding whether the crime-fraud doctrine applies under New York law may rely on both New York and federal law.  *E.g.*, *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 425 (S.D.N.Y. 2013).

a crime or fraud.  Indeed, as explained in *Richard Roe*, 68 F.3d 38, 40, expanding the crime-fraud exception to include all communications that only contain evidence of a crime would make the attorney-client privilege "virtually worthless."

The party seeking disclosure of protected information via the crime-fraud exception bears the burden of demonstrating that probable cause exists to believe that a crime or fraud has been attempted or committed and that the privileged communications furthered such crime or fraud.  *E.g.*, *Pearlstein*, 2019 WL 1259382, at *9; *In re New York City Asbestos Litig.*, 109 A.D.3d at 10, 966 N.Y.S.2d at 422.  Here, probable cause "requires that a 'prudent person' have a 'reasonable basis' for believing that the objective of the client's communication with the attorney was to further a fraudulent scheme."  *Amusement Indus., Inc.*, 293 F.R.D. at 426–27 (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1039 (2d Cir. 1984) then citing *In re Fresh Del Monte Pineapple,* No. 04MD1628(RMB)(MHD), 2007 WL 64189, at *3 (S.D.N.Y. Jan. 4, 2007)), *aff'd,* 407 Fed. App'x 520 (2d Cir. 2010)); *see also Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 242 F.R.D. 248, 250 (S.D.N.Y. 2007) (crime-fraud exception applied to email defendant's mother sent an attorney asking him to alter and backdate board minutes to show that a certain individual was an authorized signatory for contracts).  Courts examining documents *in camera* have the discretion to determine whether the crime-fraud exception applies.  *See, e.g.*, *Pearlstein*, 2019 WL 1259382, at *9 (crime-fraud privilege did not apply where the documents submitted *in camera* failed to demonstrate a "substantial possibility that a fraud was committed or that Defendants used the communications with counsel to commit a crime or fraud").

Plaintiffs assert that the crime-fraud exception to privilege applies to certain documents listed in Defendants' privilege log. This Court does not need to reach applicability of this exception for the documents it is requiring Defendants to produce because they are either not privileged, the privilege has been waived or the fiduciary exception applies. As to the remaining documents where the Court is sustaining Defendants' assertion of privilege, the Court has carefully reviewed the challenged documents *in camera* and found nothing in those documents to suggest that a substantial possibility exists that the communications were made to perpetuate a crime or a fraud. Therefore, the crime-fraud exception does not apply to these documents, and the Court will not address this exception further in the analysis below.

## V.     Work Product Doctrine

There is only one document on the privilege log that Defendants contend is protected by the work product doctrine. "Unlike the attorney-client privilege, the work product protection in diversity cases is governed by federal law." *Bowne of New York City, Inc.*, 161 F.R.D. at 264 (S.D.N.Y. 1995) (citing *Fine v. Facet Aerospace Prods. Co.,* 133 F.R.D. 439, 444–45 (S.D.N.Y. 1990)). The work product doctrine protects documents and tangible things prepared by a party or their attorney in anticipation of litigation. Fed. R. Civ. P. 26(b)(3); *see also Pearlstein*, 2019 WL 1259382, at *5. The crucial factor courts should consider when determining whether the work product doctrine applies to particular documents or materials is whether they were prepared with "'with an eye toward' or 'in anticipation of' or 'because of the prospect of litigation.'" *Pearlstein*, 2019 WL 1259382, at *5 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510, 510–11 (1947)); *see also Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y.

2010) ("The mere possibility of litigation is insufficient to obtain work-product protection."

(internal quotation marks and citation omitted)).

With the above standards in mind, the Court's analysis of the parties' privilege

arguments is set forth below.

## DISCUSSION

### I.  Adequacy of Defendants' Privilege Log

In their moving brief, Plaintiffs argued that the Eber Defendants' privilege log is deficient

because it omitted information regarding the identity of the clients seeking and receiving legal

advice from their privilege log.  (Doc. No. 135, 14.)  Defendants provided the missing

information in their Opposition Brief.  (Doc. No. 144-1.)  Plaintiffs have not argued, and the

Court does not find, that the deficiencies in Defendants' privilege log rise to the level of flagrant

disregard for the local and federal rules warranting forfeiture of all of Defendants' claims of

attorney-client privilege.  *See Grand River Enter. Six Nations, Ltd. v. Pryor*, No. 02 Civ.

5068(JFK)(DFE), 2008 WL 4703114, at *1 (S.D.N.Y. Oct. 23, 2008).  Additionally, the Eber

Defendants' privilege log complies with the Court's September 13, 2018 Order directing

Defendants to submit a privilege log for *in camera* review containing the following information:

(1) The author of the document with their title (including whether they are an attorney); (2)

sender with title; (3) recipient(s) with titles; (4) subject matter; (5) privilege(s) asserted (*i.e.*,

attorney-client and/or work product); and (6) the basis for the assertion of privilege sufficient

for the Court to evaluate the validity of that claim.  (Doc No. 129, 2) (citing S.D.N.Y. Local Civ. R.

26.2(a)(2)(A)).  Accordingly, at least on its face, Defendants' privilege log complies with the

applicable federal and local rules and Plaintiffs' complaints regarding the purported deficiencies in Defendants' privilege log are without merit.

## II.    Whether an Attorney-Client Relationship Existed With Gumaer and Sturm

In this case, whether an attorney-client relationship existed is a key component of the privilege analysis for some of the documents at issue.  There are two individuals who Defendants claim were acting as attorneys when providing advice and claim privilege on this basis: Gumaer and Sturm.  Plaintiffs challenge these assertions on the grounds that both individuals acted as business consultants and not attorneys.  They also argue that Gumaer was not licensed to practice law at the time of the at-issue communications.

Under New York law, "the relationship of an attorney and client is contractual, and the rules governing contractual formation determine whether such a relationship has been created." *Kubin v. Miller*, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992) (citing *Hashemi v. Shack,* 609 F. Supp. 391, 393 (S.D.N.Y. 1984)) (applying New York law).  A formal contract is not a prerequisite to forming an attorney-client relationship.  *Id.*  When no written agreement exists, "it is necessary to look to the words and actions of the parties to ascertain if an attorney-client relationship was formed." *C.K. Indus. Corp. v. C .M. Indus. Corp.,* 213 A.D.2d 846, 848, 623 N.Y.S.2d 410 (3d Dep't 1995).  For example, courts may consider whether the client and attorney shared "regular communications relating to the subject matter of the representation" and whether the parties engaged in activity "in furtherance of the objective of the retention." *Makhoul v. Watt*, No. 11–CV–05108 (PKC)(VMS), 2014 WL 977682, at *6 (E.D.N.Y. Mar. 12, 2014) (citation and internal quotation marks omitted) (applying New York law).  Courts also will consider whether the attorney provided legal advice and publicly held himself out as an

attorney to the purported client.  *Sang Lan v. Time Warner, Inc.*, No. 11 CIV. 2870(AT), 2014 WL

764250, at *8 (S.D.N.Y. Feb. 25, 2014) (applying New York law).

Courts in this District also consider the following six factors to determine whether an

attorney-client relationship exists:

1) Whether a fee arrangement was entered into or a fee paid;

2) Whether a written contract or retainer agreement exists indicating that the attorney accepted representation;

3) Whether there was an informal relationship whereby the attorney performed legal services gratuitously;

4) Whether the attorney actually represented the individual in one aspect of the matter (*e.g.*, at a deposition);

5) Whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; and

6) Whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

*Medical Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 307–11 (S.D.N.Y.

2008) (citing *First Hawaiian Bank v. Russell & Volkening*, Inc., 861 F. Supp. 233, 238 (S.D.N.Y.

1994) (applying New York law)) (attorney did not act as general counsel where he was paid for

working on discrete matters and long periods of time elapsed between projects).  A "client's"

subjective belief that an individual is their attorney, without more, is insufficient to show that

an attorney-client relationship exists.  *E.g.*, *Kubin*, 801 F. Supp. at 1115.

The attorney-client privilege typically is restricted to communications with licensed

attorneys.  *E.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 117, 119 (S.D.N.Y.), *aff'd,* 982 F.

Supp. 2d 260 (S.D.N.Y. 2013).  Nonetheless, courts have found that communications with non-

attorneys may be privileged in limited circumstances where a client seeks legal advice from an individual who they reasonably, but mistakenly, believe is a licensed attorney. *Compare id.* at 120 (communications with an individual who was not licensed to practice law were not privileged because he had never been licensed to practice in any jurisdiction and there was no evidence showing that he held himself out as an attorney) *with Gucci America, Inc. v. Guess?, Inc.*, No. 09 Civ. 4373(SAS), 2011 WL 9375, at *2 (S.D.N.Y. Jan. 3, 2011)) (although his status was "inactive," communications with an individual who had graduated from law school, been admitted to practice in multiple jurisdictions, and provided services that were legal in nature were privileged). This "reasonable belief" test applies to corporations and individuals alike. *Gucci Am., Inc.*, 2011 WL 9375, at *6 ("To require businesses to continually check whether their in-house counsel have maintained active membership in bar associations before confiding in them simply does not make sense."). Courts will analyze the available evidence to determine whether a client reasonably believed that an unlicensed individual was, in fact, authorized to practice law. *Id.* at *5.

Gumaer retired as a partner from Nixon Peabody LLP in 2001. (Doc. No. 135, 8.) Plaintiffs posit that Gumaer likely allowed his license to lapse when he retired, pointing to a letter sent by Gumaer upon his retirement to Lester Eber (the "2001 Letter"). (Doc. No. 136-16.) The letter states that, following Gumaer's retirement from Nixon Peabody LLP, "the [Eber Entities] shall select whatever counsel we believe will most effectively represent our interests . . . ." (*Id.* at 2.) The letter further states that, going forward, Gumaer will be paid an "annual consulting fee" for his work on behalf of the Eber Entities. (*Id.* at 3.) In another email cited by Plaintiffs, dated October of 2013, Gumaer discusses his continued role as

"Director/Trustee/confident" and asks when his next installment payment will be made.  (Doc. No. 136-11.)

For their part, the Eber Defendants maintain that Gumaer was counsel for the Eber Entities and a personal attorney to Lester and Wendy Eber since the 1970s and, to their knowledge, licensed to practice law at all relevant times.  (Doc. No. 144, 9.)  To the extent Gumaer was not, in fact, licensed to practice law, Defendants argue that they reasonably believed that Gumaer was a licensed attorney during the relevant timeframe.  Both Lester and Wendy Eber submitted affidavits in which they aver that Gumaer provided the Eber Entities with legal advice, separate from his role as trustee, and that they believed he was an attorney. (Doc. Nos. 120-1 ¶¶ 11-12 and 120-2 ¶ 3.)  Lester Eber also attests that Gumaer acted as his and his daughter's personal attorney, and that EBWLC and Eber-CT paid Gumaer's fees.  (Doc. No. 120-1 ¶ 11.)

No party submitted evidence to conclusively show whether Gumaer maintained his license to practice law after he retired from his firm in 2001.  However, it is undisputed that Gumaer was licensed to practice law when he was initially hired by Defendants and while a partner at Nixon Peabody LLP.  Additionally, in the 2001 Letter, Gumaer unequivocally continued to hold himself out as a licensed attorney by offering to continue acting as "counsel to [Lester] personally."  (Doc. No. 136-16, 3.)   Absent any contradictory evidence showing that Lester and Wendy Eber knew or should have known that Gumaer was no longer licensed  to practice law, the available evidence shows, at a minimum, that the Eber Defendants reasonably believed Gumaer continued to be a licensed attorney after he left his firm.  *E.g.*, *Gucci Am., Inc.*, 2011 WL 9375, at *5–6 (it would be unreasonable to require a party to continuously verify

whether its attorney was licensed to practice law).  Accordingly, Plaintiffs' argument that the attorney-client privilege does not apply to communications involving Gumaer simply because he was not a licensed attorney is without merit.

Whether Gumaer in fact *acted* as an attorney on behalf of the Eber Entities following his retirement from Nixon Peabody LLP is another question.  In the 2001 Letter, Gumaer wrote, "I shall continue to serve as consultant to the Companies and as counsel to you, personally and as Chief Executive Officer."  (Doc. No. 136-16, 3.)   This letter is ambiguous as to its meaning.  It can be read to support Plaintiffs' claim that Gumaer stepped away from his role as attorney for the Eber Entities after he retired from Nixon Peabody LLP.   Defendants have not countered Plaintiffs' argument by producing a written agreement between Gumaer and the Eber Entities showing that he acted as an attorney as well a consultant following his departure from Nixon Peabody LLP.   Because a formal contract is not a prerequisite to establishing an attorney-client relationship, the fact that the Eber Entities did not enter into a formal contract with Gumaer to retain him as counsel after he left Nixon Peabody LLP is not dispositive.  *E.g.*, *Kubin*, 801 F. Supp. at 1115.  But the other factors courts consider when determining whether an attorney-client relationship exists weigh against finding such a relationship.

To start, contrary to what Defendants argue, the only payments made to Gumaer appear to have been for consulting, not legal, services.  (Doc. No. 136-16, 3; Doc. No. 193-1, 254:03-257:13); *see also Spectrum Sys. Int'l Corp*, 78 N.Y.2d 371, 377–78, 581 N.E.2d 1055, 1060 (nature of pay is relevant inquiry).  Lester Eber testified during his deposition that he agreed to the terms of the 2001 Letter pursuant to which the Eber Companies paid Gumaer an annual *consulting fee* of $40,000.00.  (Doc. No. 136-16, 3; Doc. No 193-1, 254:03-257:11.)  Notably, no

legal services invoices have been provided for the Court's consideration.  Rather, emails

provided to the Court in which Gumaer requests payment from the Eber Entities show that

Gumaer characterized his fee to be for consulting work, not legal services.  *E.g.*, EB-00031246.

In other emails in which law firm attorneys provide advice to the Eber Entities, Gumaer appears

to have *received* that advice in his capacity as *a director of EBWLC or as a trustee*.  For example,

in one email, Wendy asked an outside attorney to forward a document to Gumaer and wrote,

"He is a trustee of Eber Bros and the Trust of Allen Eber.  He was with Nixon Peabody for many

years." EB-00026651.   Although this email states that Gumaer *was* a partner at Nixon Peabody

LLP, nothing in the email suggests that Gumaer was acting as the Eber Defendants' in-house

counsel at the time the email was sent.  *E.g.*, *Sang Lan*, 2014 WL 764250, at *8 (when

determining whether an attorney-client relationship exists, courts consider whether the

attorney held himself out as an attorney and provided legal services).  All of these documents

belie any claim that Gumaer performed legal services for the Eber Entities after 2001.

　　　　As explained above, a person's subjective belief that an attorney-client relationship

exists, alone, is typically insufficient to show that such a relationship exists.  *Kubin*, 801 F. Supp.

at 1115.  Here, in light of the additional context gleaned from the *in camera* documents and

deposition testimony from Lester and Wendy Eber, the Court concludes that any

communications that are purportedly privileged solely on the basis that Gumaer was acting as

an attorney and providing legal advice are not in fact protected by the attorney-client privilege.

Alternatively, as discussed below, many of the communications in which Gumaer took part are

not privileged because they do not convey or request legal advice or fall under the fiduciary

exception to the attorney-client privilege.

Plaintiffs also allege that communications with Sturm may not be privileged because the Eber Defendants did not have an engagement letter with him and he was acting as a strategic consultant. (Doc. 135, 9, 24.) For their part, Defendants maintain that Sturm did, in fact, act as an attorney for the Eber Defendants. (Doc. No. 144, 14.) As discussed at length above, an attorney-client relationship may exist even where there is no written engagement. Upon reviewing the *in camera* documents and the deposition transcripts, the Court is sufficiently satisfied that Sturm held himself out as an attorney, conceivably while also possibly acting as a strategic consultant for Eber-CT, Eber Metro, and perhaps some of the other Eber Entities. *E.g.*, EB-00031227 (appears to refer to Sturm as "counsel"); (Doc. No. 193-2, 13:20-15:23) (deposition of Wendy, where she states that Sturm was a political consultant and attorney for the Eber Entities and that the Entities made payments on his behalf to the law firm Nelson Mullins). Thus, absent waiver or exceptions to privilege, communications in which Sturm was consulted by the Eber Defendants for legal advice are protected by the attorney-client privilege.

## III. Ruling on the *In Camera* Documents

The Court next addresses the documents listed in the Eber Defendants' privilege log pursuant to the categories described below.[13]

### A. Emails Concerning the Administration of the Trust

The documents in this category fall into two separate subcategories: (1) emails that neither seek nor convey legal advice and (2) documents that fall within the fiduciary exception

---

[13] The Court only analyzed the documents provided by the Eber Defendants. To the extent Defendants claimed that certain emails were privileged and failed to include the relevant attachments, the Court analyzed the cover email provided. Where the cover email did not support a basis for privilege, any privilege that may have applied to the attachment is deemed waived. Also, the Court does not address EB-00026661 and EB-00026662, which Defendants indicated were already voluntarily produced.

to privilege.  Accordingly, Defendants are instructed to produce the documents listed below in their entirety.

### i. Emails That Neither Seek Nor Convey Legal Advice[14]

Over half of the of the bates-stamped pages submitted by the Eber Defendants for *in camera* review fall outside the scope of attorney-client privilege because they clearly neither seek nor convey legal advice.  It appears that these emails were marked privileged based on the presumption that, where an attorney (or someone who is presumed to be an attorney) is included on an email chain, the entire communication is privileged.  That is clearly not the law. *See, e.g.*, *Pearlstein*, 2019 WL 1259382, at *4; *Hoopes*, 142 A.D.2d at 909, 531 N.Y.S.2d at 409.

A number of the communications in this subcategory concern scheduling.  It is well established that communications scheduling calls with counsel are not privileged where the substance of any legal advice rendered is not discussed.  *E.g.*, *Hoopes*, 142 A.D.2d at 909, 531 N.Y.S.2d at 409.  For example, in EB-00026631 and EB-00026632, Lester Eber emails Gumaer, Wendy Eber, and attorney Patrick Dalton to schedule a call "to talk about C.N.B."  These communications are not privileged because they do not convey the substance of any legal advice rendered.  For the same reason, EB-00026683, EB-00026694, EB-00026695,[15] EB-

---

[14] Documents: EB-00026631; EB-00026632; EB-00026633; EB-00026634; EB-00026635; EB-00026636; EB-00026637; EB-00026650; EB-00026652; EB-00026655; EB-00026681; EB-00026682; EB-00026683; EB-00026694; EB-00026695; EB-00026696; EB-00031202; EB-00031204; EB-00031205; EB-00031206; EB-00031209; EB-00031210; EB-00031211; EB-00031213; EB-00031214; EB-00031215; EB-00031216; EB-00031217; EB-00031220; EB-00031221;  EB-00031222; EB-00031223; EB-00031224; EB-00031225; EB-00031226; EB-00031227; EB-00031228; EB-00031229; EB-00031230; EB-00031231; EB-00031239; EB-00031240; EB-00031245; EB-00031247; EB-00031248; EB-00031249; EB-00031250; EB-00031251;  EB-00031252; EB-00031270; EB-00031271;  EB-00031272; and EB-00031284.

[15] In this email Lester Eber asks Sturm, "What is your advice?"  However, because the Eber Defendants did not provide context to the Court that would indicate that Lester Eber was seeking legal rather than business advice, they have not met their burden of demonstrating that the communication is privileged.  Additionally, to the extent this email concerns CNB, as stated in the Eber Defendants' privilege log, this email falls within the scope of the fiduciary exception because it concerns fiduciary duties and the administration of the Trust.  See *infra*.

00031216, and EB-00031217 are not privileged. The same rule applies to communications discussing fee arrangements with counsel, such as those in EB-00026632, or discussions pertaining to the hiring of counsel such as those in EB-00031247 and EB-00031248. Likewise, emails that merely forward non-privileged factual information to attorneys/consultants without expressly seeking or receiving legal advice are not privileged. EB-00031204, EB-00031206, EB-00031211, EB-00031214, EB-00031215, EB-00031220, EB-00031221, EB-00031222, EB-00031223, EB-00031224, EB-00031271, and EB-00031272 all fall in this category.

A communication that discusses a draft of a document is not automatically subject to attorney-client privilege where neither the draft itself nor the related emails seek or convey legal advice. For example, email chains that discuss drafts of letters that were going to be sent to the Trust beneficiaries and do not discuss legal advice are not privileged. *See* EB-00031210; EB-00031225; EB-00031230; and EB-00031231. The same is true for communications that relay business strategy rather than legal advice. *See* EB-00031205 (discussing a draft letter addressed to Sally Kleeberg concerning the use of principal from the Trust to assist her with heath care costs) and EB-00031270 (discussing draft of letter to be sent to the Trust beneficiaries). The same principals apply to drafts of financial presentations that do not convey legal advice. *See* EB-00031250.

Emails discussing drafts of board minutes and the board minutes themselves are not privileged, unless they expressly discuss legal advice. For example, in EB-00031226 and EB-00031227, Wendy Eber emailed Lester Eber a copy of board minutes for his review and included Sturm on the email. The Board minutes themselves merely state that Lester Eber's counsel "reviewed the Company's organizational documents and various other documents with

the directors" as well as "certain facts concerning the Eber Connecticut LLC subsidiary and the actions of its members that bore on the Company's various obligations."  This information is not privileged because it does not disclose the substance of any privileged communications between Lester Eber and his personal attorney (and disclosure of such confidential information would have likely resulted in the waiver of attorney-client privilege in any event) and because it appears the subject matter of the communication was purely factual.

EB-00031284 is a cover email to which board minutes may have been attached. However, the attachment does not appear in the Eber Defendants' privilege log.  The email and the attachment should be produced because Defendants have not met their burden of showing that the attorney-client privilege applies to either the email or the attachment.  *See also* EB-00026682 and EB-00026696.

Similarly, in EB-00026650, an administrative assistant from U&K forwarded a document pertaining to the "Unanimous Written Consent of the Board of Directors" of EBWLC and includes various attorneys from U&K, the firm Hurwitz, Sagarin, Slosserg & Knuff LLC, and Nelson Mullins as well as Wendy Eber on the email chain.  Because the Eber Defendants did not submit the actual document for *in camera* review and did not provide any additional context to support the argument that this communication is privileged, they failed to meet their burden of showing that the communication is protected by the attorney-client privilege.

As discussed above, communications that solely discuss business strategy and administration, without conveying legal advice, are not privileged.  Moreover, the attorney-client privilege does not apply to underlying facts.  *Spectrum Sys. Int'l Corp.*, 78 N.Y.2d at 377, 581 N.E.2d at 1060.  A number of the documents on the privilege log are not privileged for

these reasons.  For example, in EB-00031209, Lester Eber wrote the following message to Gumaer: "Mike you have to push your daughter to get us out of this.  I have $500,000 and a personal guarantee with them.  There [SIC] loan is only 25% of our inventory."  As discussed *supra*, Gumaer was not acting as an attorney for the Eber Entities after 2001 when this communication occurred.  Moreover, even if Gumaer had been an attorney for the Eber Entities, this email would not be privileged because it does not seek or convey legal advice, but merely seems to discuss business matters relating to the Eber Entities.  *See, e.g.*, *Spectrum Sys. Int'l Corp.*, 78 N.Y.2d at 379, 581 N.E.2d at 1061.  Indeed, many of the communications between the Eber Defendants and their counsel/consultants relate to the issue of securing loans and the Eber Entities' financial performance.  Because such discussions are not legal in nature, they are not privileged.  *See* EB-00026681; EB-00031213; EB-00031228; EB-00031229; EB-00031239; EB-00031240; EB-00031245; EB-00031249; EB-00031251; and EB-00031252.

Communications that discuss and exchange routine administrative paperwork are not privileged where no legal advice is conveyed.  *See, e.g.*, *Spectrum Sys. Int'l Corp.*, 78 N.Y.2d at 379, 581 N.E.2d at 1061.  For example, in EB-00026633, Wendy Eber instructed a paralegal at U&K, to "substitute my name for Elliot Gumaer as president since I will be replacing Lester as president."  The paralegal made the requested change and emailed the document back to Wendy Eber, and Wendy subsequently forwarded the document to Gumaer and asked him to sign and return the document to Janet Lissow, an administrative assistant employed by EBWLC.[16]  No attorneys were included in the email chain.  Although the paralegal was acting as

---

[16] Although Lissow is listed in the Eber Defendants' privilege log as Lester Eber's administrative assistant (suggesting she was his personal assistant), documents provided to the Court indicate that Lissow was employed by EBWLC.  *See* EB-00000714 and EB-00026274.

an agent of U&K, this communication is not privileged because it does not seek or convey legal advice. Rather, the paralegal simply completed an administrative task at Wendy Eber's direction. This type of communication and their attachments fall outside the ambit of attorney-client privilege. *See also* EB-00026634; EB-00026635; EB-00026636; and EB-00026637.

In EB-00026652, Gumaer states that he recently learned about the "Alexbay Matter" from U&K and discusses the optics of the Foreclosure Action. As explained above, this communication is not privileged because Gumaer was not an attorney for the Eber Entities at the time he sent the email and the email also does not convey legal advice.

EB-00026655 discusses the administration of the Trust and the impact that Lester Eber's attempt to secure the loans he made to EBWLC had on CNB's relationship with EBWLC and Wendy and Lester Eber. In the email, Gumaer questions whether it is ethical for CNB to decline to provide the Trust six months to a year to establish a new banking relationship. This email is not privileged because Gumaer was not an attorney for EBWLC. In the subsequent email, Wendy Eber asks Gumaer to call Sturm, which is also not a privileged communication because the subject does not appear to be one where legal advice is sought and Defendants have not otherwise demonstrated why privilege should attach to this document.

Finally, in EB-00031202, Lester and Wendy Eber and Gumaer discuss the valuation of the EB&C stock held in the Trust and the need to discuss the matter with Rick Hawks of CNB. This email is not privileged because it does contain or discuss legal advice and no attorneys are included in the chain.

ii.  <u>Emails Subject to the Fiduciary Exception to Attorney-Client</u>
        <u>Privilege</u>[17]

Some of the emails in the Eber Defendants' privilege log are not privileged because they seek legal advice regarding the administration of the Trust and/or Trust assets and, thus, squarely fall within the fiduciary exception to privilege. *Hoopes v. Carota* provides a helpful analysis of the fiduciary exception to attorney-client privilege in instances where, as here, the defendant owed fiduciary duties to the plaintiffs as both an officer of a company and trustee of a trust that owns stock in the same company. Like the Plaintiffs in this action, the plaintiffs in *Hoopes* were beneficiaries of a trust that owned stock in a corporation owned by their family. They sued the corporation's president, who was also a trustee of the trust, for alleged self-dealing and acting with conflict of interest by: (1) doubling his and another officer's salary; (2) obtaining long-term employment contracts for other corporate officers; and (3) discouraging merger possibilities that would have benefited stockholders but would have been less favorable to management. *Id.* at 910, 410.

During a deposition, the defendant asserted attorney-client privilege and refused to answer questions regarding: (1) whether he consulted his present attorneys regarding his participation, as a trustee, in a proposed leveraged buyout and information regarding his communications with his attorneys and their advice on that topic; (2) whether he sought such advice individually or as a trustee; (3) any legal opinions he sought, either as an individual or a trustee, on any trust or corporate matters; (4) whether he sought legal advice as to any proposed sale, merger or acquisition of the corporation; and (5) the fee arrangements for the

---

[17] Documents: EB-00000734; EB-00000735; EB-00000736; EB-00000737; EB-00026629; EB-00026630; EB-00026653; EB-00026654; EB-00026676; EB-00026677; and EB-00031212.

payment of his legal fees in the action and another officer's legal fees in a parallel action commenced by plaintiffs to remove him as a trustee. *Id.*, 142 A.D.2d at 908, 531 N.Y.S.2d at 409. Plaintiffs then sought to compel the defendant's testimony on those topics, and their motion was granted by the New York Supreme Court. The defendant then appealed to the Appellate Division, Third Department.

In determining whether the information defendant sought to protect from disclosure was privileged, the Appellate Division explained:

> The salient factor . . . is that defendant, both in his capacity as a trustee and as a corporate officer and director, was the fiduciary of plaintiffs. In any of these roles, defendant was not entitled to shield absolutely from his beneficiaries the communications between him and his attorneys regarding pertinent affairs of the trust and of the corporation (which, in any event, are inextricably intertwined where, as here, the corpus of the trust consists of the majority of the voting shares of the corporate stock).

*Id.*, 142 A.D.2d at 909, 531 N.Y.S.2d at 409 (citations omitted). The court then applied the *Garner* factors and found that the plaintiffs demonstrated the requisite good cause for disclosure pursuant to the fiduciary exception. *Id.*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410. Specifically, the court reasoned that the following factors weighed in favor of disclosure:

1) The identity of interests regarding disclosure among the plaintiff-beneficiaries;

2) plaintiffs may have been directly affected by decisions defendant may have made on his attorneys' advice;

3) the information sought was highly relevant and may have been the only evidence available on whether defendant's actions were made in furtherance of the interests of the beneficiaries of the trust or primarily for his own interests as a corporate officer;

4) the communications sought pertained to prospective rather than past actions; and

5) the plaintiffs' claims of self-dealing and conflict of interest were at least colorable.

*Id.* In compelling disclosure, the court also noted that the defendant failed to make any showing that would weigh in favor of applying the attorney-client privilege to the information sought. *Id.* For example, defendant made no showing that the purportedly privileged information was solicited solely in defendant's individual capacity and at his own expense, as a defensive measure regarding potential litigation over his disputes with the trust beneficiaries. *Id.* Accordingly, the court ordered that the New York Supreme Court's decision be affirmed in all respects.

Similar to the plaintiffs in *Hoopes*, here, Plaintiffs are beneficiaries of the Trust, which owns approximately 95 percent of EB&C and all of its voting stock. (Doc. No. 135, 4.) EB&C owns approximately 81 percent of the stock in EBWLC, and the Trust directly owns approximately 19 percent of EBWLC's stock. (*Id.*) Thus, because the corpus of the Trust consists of all of EB&C's voting stock and a significant percentage of EBWLC's stock, it is clear that Lester Eber and Gumaer were fiduciaries of Plaintiffs as both co-trustees of the Trust and as officers of EB&C and EBWLC. Likewise, Wendy Eber was a fiduciary to Plaintiffs in some respects as an officer of both EB&C and EBWLC.

Looking to the other applicable *Garner* factors, it is clear that Plaintiffs' claims of self-dealing meet the minimal threshold of being colorable. Moreover, it is unlikely that Plaintiffs would have access to evidence relevant to the question of whether Defendants acted to further Plaintiffs' or their own self-interest through the manner in which they managed the Trust,

EB&C, and EBWLC from other sources.  The Eber Defendants sought advice from many different attorneys in the course of administering the Trust and running the various Eber Entities.  Those communications that relate to decisions that directly affected Plaintiffs may be highly relevant and are discoverable pursuant to the fiduciary exception to the attorney-client privilege.  For example, the communications concerning the loans Lester Eber made to EBWLC, which ultimately resulted in the execution of the Debt Assumption Agreement between EBWLC, Eber Metro, and Lester Eber (Doc. No. 144, 4-5) and allowed Alexbay to acquire a 79 percent stake in Eber-CT, are highly relevant to the allegations at the heart of this case. (Doc. No. 135, 5, 24.)

Notably, the Eber Defendants offer no defense to the fiduciary exception to attorney-client privilege apart from their argument pursuant to the trust fund doctrine, which the Court already explained is without merit.  Thus, communications in which Lester or Wendy Eber or Gumaer are soliciting legal advice on behalf of the Trust, EB&C or EBWLC are subject to the fiduciary exception to attorney-client privilege where the communications are discussing prospective actions as fiduciaries and relate to the transactions at issue in this case.

For example, documents EB-00000734 and EB-00000735 include an email chain between Sturm, other attorneys at the Nelson Mullins law firm, and Wendy Eber discussing the loan documents that would be used to effectuate Lester Eber's loans to EBWLC, *i.e.* the Line of Credit Note, Security Agreement, Guaranty, Stock Power, UCC Financing Statements, and Authorizing Resolutions.  In the top email, EB-00000734, Wendy Eber expressly notes that copies of these loan documents would be sent to former Trust beneficiary Sally Kleeberg and current Trust beneficiary Plaintiff Audrey Hayes.  Thus, these communications concern EBWLC and the Trust, concern a transaction that led to the allegedly improper disposition of Trust

assets, and are not available elsewhere. Accordingly, they fall within the scope of the fiduciary exception and are not privileged. *See also* EB-00026629 and EB-00026630 (discussing the loan documents). Any attachments to these communications that were not provided to the Court also must be produced.

In EB-00000736 and EB-00000737, Sturm, as well as attorneys Will Gaines and Patty Byrd, and Wendy Eber discuss the "loan documents," the membership of the Board of EBWLC, and the possibility of "carv[ing] out the Eber-CT membership interests from the collateral in [Eber-]Metro's security agreement." For the same reasons discussed above, communications regarding the loans Lester Eber made to EBWLC are subject to disclosure pursuant to the fiduciary exception to privilege.

In EB-00026653, Wendy Eber circulates a term sheet to Gumaer and attorneys Pat Dalton and Justin P. Runke. The term sheet, EB-00026654, is dated May 26, 2010 and was prepared by Sturm. The document is addressed to attorney Pat Dalton from HB and Lester and Wendy Eber, and concerns Eber-CT. HB and Sturm both had attorney-client relationships with the Eber Entities and, thus, because Lester and Wendy Eber and Gumaer appear to have received the term sheet in their capacities as officers of the Eber Entities, the term sheet and emails are subject to the attorney-client privilege.[18] Nevertheless, the fiduciary exception applies to this email chain and the attached term sheet because the subject matter of the email chain and the term sheet directly concerned "the fiduciary relationship under the Eber Trust."

---

[18] Although the Eber Defendants also argue that this document is also protected by the work product doctrine, the Court finds this argument unpersuasive because Defendants have not met their burden of showing that this document was prepared in anticipation of litigation. *See, e.g.*, *Pearlstein*, 2019 WL 1259382, at *5.

Indeed, the term sheet discusses the potential transfer of a six percent stake in Eber-CT to a new company ("NewCo") and that Wendy Eber will have the right of first refusal to purchase the "entire equity from NewCo."  In the cover email, Gumaer expresses concern that such an arrangement may benefit Wendy Eber at the expense of the Trust beneficiaries.  Thus, the entire email chain falls within the fiduciary exception to privilege because it concerns the fiduciary duties owed to Plaintiffs as beneficiaries of the Trust, is not available elsewhere, and relates to the disposition of Trust assets at issue in this case.

In EB-00026676 and EB-00026677, Wendy and Lester Eber discuss the terms of a non-disclosure agreement with various attorneys from the law firm Nelson Mullins, including Sturm.[19]  As explained in the emails, the confidentiality agreement, which concerns the release of EBWLC's financial statements, were going to be sent to Trust beneficiaries Sally Kleeberg and Audrey Hayes.  The Court concludes, for the same reasons discussed above, that these communications are not privileged because they contain information that concerns the execution of fiduciary duties that affected the Trust beneficiaries and shareholders of EBWLC, and are, thus, subject to the fiduciary exception.

Finally, EB-00031212 is a communication between Wendy Eber and EBWLC attorney, Jim Vazzana, that discusses the distribution of Trust assets and the payment of legal fees.  The email, thus, consists of communications that are either not privileged at all, *i.e.* the discussion of legal fees, or that fall squarely within the fiduciary exception to privilege because they concern the administration of the Trust and the disposition of Trust assets.

---

[19] The confidentiality agreements were not submitted to the Court for *in camera* review.

### B. Emails Discussing the D-4, HB, and PBGC Litigations, and the EB&C Retirement Plan[20]

The documents in this category include communications concerning three lawsuits against the Eber Entities: The "D-4" litigation, the HB litigation involving HB's claim for unpaid attorneys' fees, and the PBGC litigation involving claims concerning the Eber Entities' underfunded pension plan. The documents also include emails concerning the administration of the Eber Entities' employee retirement plan. Several of the emails in this category are not protected by the attorney-client privilege because they neither seek nor convey legal advice. As explained above, email communications that merely seek to schedule a call regarding a legal matter are not privileged so long as they do not convey or seek legal advice. *E.g.*, *Hoopes*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410. Here, the email bates stamped EB-00026675 is not privileged because it only concerns the scheduling of a conference in the so-called "D-4 Action." EB-00026272 and EB-00026273 include communications dated February 29, 2012 between U&K, Wendy Eber, and Sturm forwarding pleadings in a lawsuit commenced by HB against EBWLC to recover unpaid attorneys' fees. These emails also are not privileged because they do not convey legal advice.

However, the remaining documents in this category are privileged and are not subject to the fiduciary exception. All are communications involving legal actions against the Eber Entities and the Entities' legal strategies in those actions or legal advice concerning their provision and administration of employee benefits. Plaintiffs have not met their burden of

---

[20] Documents: EB-00026272; EB-00026273; EB-00026274; EB-00026275; EB-00026276; EB-00026277; EB-00026278; EB-00026279; EB-00026627; EB-00026628; EB-00026638; EB-00026639; EB-00026640; EB-00026641; EB-00026642; EB-00026643; EB-00026644; EB-00026664; EB-00026665; EB-00026666; EB-00026667; EB-00026668; EB-00026669; EB-00026670; EB-00026671; EB-00026672; EB-00026673; EB-00026674; and EB-00026675.

demonstrating good cause to apply the fiduciary exception to override attorney-client privilege with respect to these documents. *See, e.g.*, *Hoopes*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410. None of these communications concern issues that directly impact the Trust beneficiaries or are material to the issues in this case. Thus, they are unlike the communications discussed above where good cause exists to apply the fiduciary exception. Thus, the following communications remain privileged:

- <u>D-4</u>: EB-00026664 and EB-00026665;

- <u>HB</u>: EB-00026274; EB-00026275; EB-00026276; EB-00026277; EB-00026278; EB-00026279; EB-00026667; EB-00026672; EB-00026673; and EB- 00026674;

- <u>D4/HB</u>: EB-00026670;

- <u>EB&C Retirement Plan</u>: EB-00026627; EB-00026628; and EB-00026671;[21] and

- <u>PBGC</u>: EB-00026638; EB-00026639; EB-00026640; EB-00026641; EB-00026642; EB-00026643; EB-00026644; EB-00026666; EB-00026668; and EB-00026669.

### C. *Emails Discussing CNB and Eber-CT*[22]

Several of the email chains in this category are not privileged because they do not convey legal advice. *See* EB-00000741 (discussing relationship between the Trust and CNB and upcoming call with Sturm); and EB-00031199 (scheduling a call); EB-00031201 (scheduling a call). In another email chain, EB-00026679 and EB-00026680, Sturm purportedly circulated a

---

[21] In their privilege log submitted to the Court *in camera*, the Eber Defendants note that EB-00026649, which pertains to the New York State Teamsters Conference Pension & Retirement Fund, was inadvertently withheld and would be produced. Accordingly, the Court will not analyze this document for privilege.

[22] Documents: EB-00000741; EB-00026289; EB-00026657; EB-00026658; EB-00026679; EB-00026680; EB-00026693; EB-00031199; EB-00031201; EB-00031241; and EB-00031246.

draft letter addressed to Sally Kleeberg to Lester and Wendy Eber and Gumaer. The subsequent emails in the chain exclude Sturm and only include Lester, Wendy, and Gumaer, and discuss the monies owed by the Eber Entities to CNB and the changes the Eber Entities should make to the loan terms. Because EB-00026679 and EB-00026680 do not contain or seek legal advice, they are not privileged. They and their attachments must be produced.

EB-00026289 is a communication between two EBWLC attorneys, John Herbert and Edward Hourihan, and Wendy Eber in which they discuss an "Eber Bank Agreement." This communication is protected by the attorney-client privilege because it discusses legal advice, there has been no waiver of privilege, and Plaintiffs have not demonstrated good cause to require disclosure under the fiduciary exception rule because it does not appear to directly concern the Trust or the transactions giving rise to the instant action and is not highly relevant to this action.

EB-00026657 and EB-00026658 are emails dated October 25, 2012 between and among Lester and Wendy Eber and attorneys at U&K discussing a "restraining notice." The Eber Defendants' privilege log states that U&K are included as attorneys for EBWLC, Wendy Eber as CFO of EBWLC, and Lester Eber is included in the chain as the "former President of EBWLC." Defendants have not explained why Lester Eber needed to be included on the email as a former employee. Nor does the text of the communication appear to involve legal advice. Thus, the Court concludes that Defendants have failed to adequately explain why privilege applies and, alternatively, why privilege has not been waived by including Lester Eber in the communication. *See, e.g.*, *People ex. rel. Spitzer*, 50 A.D.3d at 201, 851 N.Y.S.2d at 200–201 ("[T]he corporation

and its current board of directors control the attorney-client privilege with regard to confidential communications . . . . (citation omitted)).

EB-00026693 is an email between and among Gumaer, Wendy, and Lester Eber that appears to concern CNB. The email does not discuss any legal advice and, as such, the attorney-client privilege does not apply. The same is true of EB-00031241, which pertains to a proposal received from CNB concerning waivers for the completion of financial statements.

EB-00031246 is an email between Gumaer and Wendy Eber in which Gumaer tells Wendy that he is interested in learning about the amortization of pending loans concerning Eber-CT and CNB, and expressly states that he is interested in learning more about the relevant discussions between Eber-CT's counsel and CNB. This email is not privileged because it does not discuss or convey any legal advice.

### D. Communications Regarding Alexbay and Involving Lester in His Individual Capacity[23]

Although EB-00026663 is a communication between and among U&K, Lester and Wendy Eber, it is not privileged because it does not contain any legal advice and solely discusses the receipt of the court order in the Foreclosure Action and attaches a copy.[24]

EB-00000729, EB-00000730, and EB-00000731 contain emails exchanged between attorneys David Belt and Russel Green, from the law firm of Hurwitz, Sagarin, Slossberg & Knuff LLC, and Lester Eber regarding loans Lester made to EBWLC. In the privilege log submitted to the Court for *in camera* review, the Eber Defendants allege that this email chain provided Lester

---

[23] Documents: EB-00000729; EB-00000730; EB-00000731; EB-00000738; EB-00000739; EB-00026651; and EB-00026663.

[24] The lower communication in this chain was voluntarily produced in EB-00026661 and EB-00026662.

Eber with legal advice in his individual capacity.  However, to the extent these communications may have been protected by attorney-client privilege, that privilege was waived because Lester forwarded the communication between himself and his attorneys to Wendy Eber and she, in turn, forwarded the communication to Janet Lissow.  *See, e.g.*, *Osorio*, 75 N.Y.2d at 84, 549 N.E.2d at 1185 (the attorney-client privilege is waived if the holder of the privilege voluntarily discloses the privileged communication to a third party).  The Eber Defendants did not present any facts to show that Wendy Eber and Lissow[25] have an agency relationship with Lester Eber in his individual capacity that would preserve privilege.  *See, e.g.*, *Netherby Ltd,* 261 A.D.2d at 161, 689 N.Y.S.2d at 489 (presence by third-parties does not waive privilege where an agency relationship exists).  Accordingly, the Eber Defendants failed to meet their burden of showing that the attorney-client privilege has not been waived with respect to this communication.

In EB-00000738 and EB-00000739, attorney David Belt provides Lester Eber with legal advice shortly before Alexbay commenced the Foreclosure Action and attaches drafts of documents pertaining to the loans Lester made to EBWLC.[26]  Lester Eber forwarded this email chain to Lissow, which resulted in waiver of the privilege because, as explained above, Lissow was an employee of EBWLC.

EB-00026651 is an email dated March 12, 2012 in which an attorney from U&K discusses documents that will presumably be filed in the Foreclosure Action.  Lester and Wendy Eber and Sturm are also included in the email.  Wendy Eber subsequently forwards the email to

---

[25] Lissow was employed by EBWLC.  *See* EB-00000714 and EB-00026274.

[26] Although the Eber Defendants did not submit copies of the documents that were attached to this email chain to the Court for *in camera* inspection, the Court infers from the body of the email chain that copies of the notices that were sent to EBWLC and Eber Metro in advance of the Foreclosure Action are also attached to this email chain.

Gumaer and asks an attorney from U&K to forward "a copy of Lester's complaint" to Gumaer.

The Eber Defendants' privilege log identifies Wendy Eber as the CFO of EBWLC, the U&K

attorney as attorney for Alexbay, Gumaer as an attorney for EBWLC, and Lester Eber as the

former president of EBWLC.  Because EBWLC and Alexbay were adversaries in the Foreclosure

Action, communications between parties acting on behalf of Alexbay and parties acting on

behalf of EBWLC would not be privileged.  Even assuming, *arguendo*, that Defendants alleged

that U&K, Sturm, Lester, and Wendy Eber participated in this communication on behalf of

Alexbay, disclosure to Gumaer would constitute a waiver of privilege because he was not an

attorney for or an agent of Alexbay.[27]  Accordingly, the Eber Defendants waived privilege with

respect to EB-00026651.

### E.   Email Sent to Gumaer Regarding EBWLC Documents[28]

EB-00000714 is an email Lissow sent Gumaer where she wrote, "I have attached some

documents that Mr. Eber would like you to look over and is asking for your comments."  A copy

of an undated security agreement between EBWLC, Eber Metro, and Lester Eber is attached to

the cover email as EB-00000715 through EB-00000728.  The cover email also indicates that

additional documents were attached to the email and that letters and copies of the documents

would be mailed to former Trust beneficiary Sally Kleeberg and current Trust beneficiary

Plaintiff Audrey Hayes.[29]

---

[27] In fact, in an email dated March 13, 2012, Gumaer stated that he learned of "the [Alexbay] matter yesterday afternoon in the email from Underberg."  EB-00026652.

[28] Documents: EB-00000714; EB-00000715; EB-00000716; EB-00000717; EB-00000718; EB-00000719; EB-00000720; EB-00000721; EB-00000722; EB-00000723; EB-00000724; EB-00000725; EB-00000726; EB-00000727; and EB-00000728.

[29] These additional documents were not included in the *in camera* submission and, thus, were not examined by the Court.

The security agreement purports to grant Lester Eber an interest in EBWLC's and Eber Metro's collateral in exchange for a line of credit "in the maximum principal amount of $1,500,000." EB-00000717. The Eber Defendants claim that these documents are all protected by the attorney-client privilege because Lester Eber, as President of EBWLC, was seeking legal advice from Gumaer, as in-house counsel for EBLWC. However, as explained above, Gumaer was not acting as an attorney for EBWLC at the time the communication was made. Even if Gumaer had been acting as an attorney on behalf of EBWLC at the time this communication was made, disclosure of these documents would, nonetheless, be warranted pursuant to the fiduciary exception to attorney-client privilege because Plaintiffs are beneficiaries of the Trust that owns all the voting shares in EB&C and almost 20 percent of the shares of EBWLC. Moreover, as co-trustees of the Trust, Lester Eber and Gumaer both owed fiduciary duties to Plaintiffs with respect to the administration of the Trust. Thus, for the same reasons discussed above, Plaintiffs have a particularly strong interest in obtaining information regarding the loans Lester Eber made to EBWLC because one of their claims in this action is that Lester Eber made predatory loans to the EBLWC in order to take Eber-CT for himself. Accordingly, these emails are not privileged.

### F. The Underberg Letter[30]

EB-00026645, EB-00026646, EB-00026647, and EB-00026648 all appear to pertain to the Underberg Letter. In EB-00026645, Wendy Eber forwards a memorandum to Gumaer that explains "the reason for the security agreement." She also notes in the body of the email that they (presumably Wendy and Lester Eber) have been working with CNB to reduce the

---

[30] Documents: EB-00026645; EB-00026646; EB-00026647; and EB-00026648.

amortization schedule for certain loans, but that Lester will need to remit securities of $120,000 to CNB to reduce the payments.  In their privilege log, the Eber Defendants claimed that Wendy Eber sent this email as "secretary and CFO of EBWLC" to Gumaer as "attorney for EBWLC."  As explained at length above, this email is not privileged because Gumaer was not an attorney for EBWLC.  Moreover, even if Gumaer had served as in-house counsel to the Eber Entities when he received this communication, it would be subject to the fiduciary exception to attorney-client privilege because it discusses a loan arrangement with CNB that implicates the Trust and the Plaintiffs' rights in it.  *See Hoopes*, 142 A.D.2d at 909–910, 531 N.Y.S.2d at 409–410; *see also Pearlstein*, 2019 WL 1259382, at *9.

Defendants did not expressly indicate in their privilege log whether the Underberg Letter was attached to this email, but given that the email states that the attached memorandum discusses a security agreement and the fact that the Underberg Letter concerns the perfection of Lester Eber's security interest in his loans, the Court infers that the Underberg letter was attached to EB-00026645.  It also appears that the Underberg Letter was attached to EB-00026646, and that cover email itself is not privileged because it does not seek or convey legal advice.

Finally, the Court has reexamined the Underberg Letter, EB-00026647 and EB-00026648. The Court previously concluded that the memorandum was privileged because it was prepared by U&K with respect to Alexbay and was addressed to Wendy Eber, as CFO for Alexbay, and Sturm, presumably in some capacity on behalf of Alexbay.[31]  However, the Court now has

---

[31] The Eber Defendants' privilege log does not specify whether Sturm was representing Alexbay or one of the Eber Entities for the purposes of this transaction.

emails — not previously produced by Defendants — showing that the letter was disclosed to Gumaer — a person outside the attorney-client relationship. Defendants have provided no information demonstrating that Gumaer was an attorney for Alexbay. The Court is troubled that these emails were not previously provided, as it is Defendants' burden to demonstrate there was no waiver of the attorney-client privilege and the failure to provide these emails appears to have been an effort to conceal a waiver. *See, e.g.*, *Ross*, 2004 WL 67221, at *3; *Sieger*, 60 A.D.3d at 662–63, 874 N.Y.S.2d at 538. Accordingly, the Court concludes, based on the additional information provided, that its prior decision regarding the Underberg Letter must be changed, as Wendy Eber, as an officer of Alexbay, waived privilege by disclosing the Letter to Gumaer.

IV.     **The Redaction Motion**

Plaintiffs ask that references to the Underberg Letter in filings on the docket be unredacted. Because the Underberg Letter is not privileged, the Redaction Motion is granted in its entirety.

**CONCLUSION**

For all the reasons set forth above, Plaintiffs' Second Motion to Compel is GRANTED IN PART and DENIED IN PART. For the parties' convenience, the Court has attached a chart reflecting its decisions with respect to each document on the privilege log. By May 24, 2019, Defendants shall produce those documents that are not protected by privilege. With respect to the Redaction Motion and the redactions applied to the documents filed at docket entries 98, 135, and 138, the Court's Order at docket entry number 148 is hereby MODIFIED. Plaintiffs' counsel is directed to file unredacted versions of the documents filed at docket entries 98, 135,

and 138 on ECF to allow the Clerk of Court to substitute them for the redacted versions of those documents currently on ECF.

**SO ORDERED.**

DATED:      New York, New York
            May 13, 2019

_____
KATHARINE H. PARKER
United States Magistrate Judge

| Bates Number | Privilege Asserted | Ruling |
|---|---|---|
| EB-00000741 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00000714-EB-00000728 | Attorney Client Privilege - EBWLC | NP, not legal advice or fiduciary exception |
| EB-00000729-EB-00000731 | Attorney Client Privilege - L. Eber, personal capacity | NP, waiver |
| EB-00000734-EB-00000735 | Attorney Client Privilege - EBWLC | NP, fiduciary exception |
| EB-00000736-EB-00000737 | Attorney Client Privilege - EBWLC | NP, fiduciary exception |
| EB-00000738-EB-00000739 | Attorney Client Privilege - Alexbay | NP, waiver |
| EB-00026272-EB-00026273 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026274 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026275-EB-00026279 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026289 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026627-EB- 00026628 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026629-EB-00026630 | Attorney Client Privilege - EBWLC and Eber Metro | NP, fiduciary exception |
| EB-00026631-EB-00026632 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026633 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026634-EB-00026636 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026637 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026638-EB-00026639 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026640-EB-00026642 | Attorney Client Privilege EBWLC | ACP |
| EB-00026643-EB-00026644 | Attorney Client Privilege EBWLC | ACP |
| EB-00026645 | Attorney Client Privilege - EBWLC | NP, waiver |

| | | |
|---|---|---|
| EB-00026646 | Attorney Client Privilege - EBWLC | NP, waiver |
| EB-00026647- EB- 00026648 | Attorney Client Privilege | NP, waiver |
| EB-00026649 | Attorney Client Privilege | Inadvertently withheld by Defendants. |
| EB-00026650 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026651 | Attorney Client Privilege - EBWLC | NP, not legal advice or waiver |
| EB-00026652 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026653 | Attorney Client Privilege - EBWLC | NP, fiduciary exception |
| EB-00026654 | Attorney Client Privilege/Attorney Work Product - EBWLC | NP, fiduciary exception |
| EB-00026655 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026657- EB- 00026658 | Attorney Client Privilege - EBWLC | NP, not legal advice or waiver |
| EB-00026661- EB-00026662 | Attorney Client Privilege - Alexbay | Inadvertently withheld by Defendants. |
| EB-00026663 | Attorney Client Privilege - Alexbay | NP, not legal advice |
| EB-00026664 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026665 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026666 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026667 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026668- EB-00026669 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026669- EB-00026670 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026671- EB-00026674 | Attorney Client Privilege - EBWLC | ACP |
| EB-00026675 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026676- EB-00026677 | Attorney Client Privilege - EBWLC | NP, fiduciary exception |

| | | |
|---|---|---|
| EB-00026679-EB-00026680 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026681 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026682 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026683 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026693 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026694 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026695 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00026696 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031199 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031201 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031202 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031204 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031205 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031206 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031209 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031210 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031211 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031212 | Attorney Client Privilege - EBWLC | NP, not legal advice and fiduciary exception |
| EB-00031213 | Attorney Client Privilege - Eber-CT | NP, not legal advice |
| EB-00031214 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031215 | Attorney Client Privilege - EBWLC | NP, not legal advice |
| EB-00031216-EB-00031217 | Attorney Client Privilege - EBWLC | NP, not legal advice |

| | | |
|---|---|---|
| EB-00031220-<br>EB-00031224 | Attorney Client<br>Privilege - Eber Metro | NP, not legal advice |
| EB-00031225 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031226-<br>EB-00031227 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031228-<br>EB-00031229 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031230-<br>EB-00031231 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031239-<br>EB-00031240 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031241 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031245 | Attorney Client<br>Privilege - Eber-CT | NP, not legal advice |
| EB-00031246 | Attorney Client<br>Privilege - Eber-CT | NP, not legal advice |
| EB-00031247 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031248 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031249 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031250 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031251 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031252 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031270 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031271-<br>EB-00031272 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |
| EB-00031284 | Attorney Client<br>Privilege - EBWLC | NP, not legal advice |