USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/29/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

DANIEL KLEEBERG, et al.,

                               Plaintiffs,

                -against-

LESTER EBER, et al.,

                               Defendants.

-----------------------------------------------------------------X

                     **16-CV-9517 (LAK) (KHP)**

                     **OPINION AND ORDER**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

        Plaintiffs in this derivative action bring the instant Motion to disqualify the law firm of

Underberg & Kessler LLP ("U&K") from representing Nominal Corporate Defendant Eber Bros. &

Co., Inc. ("EB&C"), and its direct subsidiary, Eber Bros. Wine and Liquor Corporation ("EBWLC").

Plaintiffs allege that a conflict of interest exists due to U&K's concurrent representation of

EB&C and EBWLC and Corporate Officer Defendants Lester Eber and his daughter, Wendy Eber,

and Defendant Alexbay LLC ("Alexbay"), a corporation solely owned and controlled by Lester

Eber and for which Wendy Eber was CFO.  U&K also represents EBWLC's direct subsidiary,

Nominal Defendant Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), and its subsidiary,

Eber-Connecticut ("Eber-CT" and, together with EB&C, EBWLC, and Eber Metro, the "Eber

Entities"), however Plaintiffs have not sought to disqualify U&K from representing them in this

Motion.[1]

---

[1] Defendant Estate of Elliot Gumaer and Intervenor Plaintiff Canandaigua National Corporation d/b/a Canandaigua National Bank & Trust are represented by separate counsel.

Plaintiffs cite two primary bases for disqualification.  First, they argue that U&K is conflicted from representing EB&C and EBWLC due to its overriding duty of loyalty to Lester and Wendy Eber, arising from its representation of Alexbay in a prior lawsuit brought against EBWLC and Eber Metro, among others, to collect a debt purportedly owed to Alexbay, *i.e.*, Lester (the "Foreclosure Action").  As a result of the lawsuit, Eber Metro and its entire interest in Eber-CT was transferred to Alexbay.  Second, Plaintiffs allege that U&K has a personal interest in hiding certain ethical violations it committed in the Foreclosure Action from this Court.  Specifically, Plaintiffs contend that U&K covertly provided legal advice to EBWLC on matters concerning the Foreclosure Action while it was representing Alexbay and grossly undervalued Eber Metro and its interest in Eber-CT in court filings to ensure that Eber Metro would be transferred to Alexbay.

For their part, Defendants contend that no conflict of interest exists between the Eber Entities and its corporate officers and argue that Plaintiffs' Motion should be denied because: (1) Plaintiffs lack standing to seek disqualification; (2) the Motion is untimely; (3) the dual representation of corporations and their officers in derivative suits is permitted in the Second Circuit; (4) the Motion is tactically-motivated; and (5) EB&C and EBWLC will suffer prejudice if they are forced to obtain new counsel at this late stage of the litigation.  The Court assumes the reader's knowledge of this case from its numerous prior opinions and sets forth only those facts relevant to the instant Motion.[2]

---

[2] For additional background see *Kleeberg v. Eber*, No. 16-CV-9517(LAK)(KHP), 2019 WL 2223272 (S.D.N.Y. May 23, 2019) (Doc. No. 222) and *Kleeberg v. Eber*, No. 16-CV-9517 (LAK) (KHP), 2019 WL 2085412 (S.D.N.Y. May 13, 2019) (Doc. No. 216).

**BACKGROUND**

I.    **The Trust and the Eber Entities**

This case is a family dispute.  Allen Eber, the Eber family patriarch, founded a successful family liquor distribution business and placed the business in a testamentary trust for the benefit of his children and heirs (the "Trust").   Upon Allen Eber's death, his children, Sally Kleeberg, Mildred Boslov, and Lester Eber, each inherited a one third interest in the Trust. Lester Eber subsequently took the helm of the Eber Family business and, with Elliot Gumaer[3] ("Gumaer") and Intervenor Plaintiff Canandaigua National Corporation d/b/a Canandaigua National Bank & Trust ("CNB"), also became a co-trustee of the family Trust.  (Doc. Nos. 155, 4-5 and 156-9.)

When Sally Kleeberg and Mildred Boslov passed away, their children, Plaintiffs Daniel Kleeberg, Audrey Hays, and Lisa Stein, inherited their interest in the Trust and, thus, collectively purport to hold a two-thirds interest in the Trust's assets.  (Doc. No. 88 ¶ 2.)  The Trust was dissolved in 2017 by order of the New York Surrogate's Court, Monroe County.  (Doc. No. 162, 3; Doc. No. 156-9.)  At that time, the Trust held various assets, including  95 percent of the total stock and all of the voting stock in EB&C, the parent company of the Eber Family's liquor distribution business.  (Doc. No. 155, 4-5; Doc. Nos. 188 ¶¶ 3-4 and 188-1.)  EB&C holds approximately 78 percent of the total stock, and all of the voting stock in EBWLC.  (Doc. No. 155, 4-5.)  Additionally, the Trust held approximately 19 percent of EBWLC's stock.  (*Id.*)  Eber Metro was a direct subsidiary of EBWLC until June of 2012 and held a 79 percent stake in Eber-CT, the Eber Family's sole remaining operational business as of 2010.  (*Id.*)

---

[3] Elliot Gumaer passed away during the pendency of this action in early 2018.  (Doc. No. 83.)

## II.   The Eber Entities' Corporate Leadership

While he was co-trustee of the Trust, and continuing to date, Lester Eber has been president and director of EB&C, Eber Metro, and Eber-CT.  Lester was also president and director of EBWLC until around February 1, 2012, when he purportedly resigned.  (*Id*. at 6.) With the guidance of an attorney named Jerry Farrell, Lester formed Alexbay while he was an officer for the Eber Entities, including EBWLC, and co-trustee of the Trust.  (*Id*. at 3.) Additionally, during the relevant timeframe and continuing to date, Wendy Eber has been a director of EB&C, Eber Metro, and Eber-CT.  She also replaced Lester as president of EBWLC when he purportedly resigned in February of 2012.  (Doc. No. 135, 11; Doc. No. 155, 6.) Although she is no longer president of EBWLC, as assistant secretary for the corporation, she continues to be the highest-ranking officer for Eber-CT.  According to documents the Court ordered produced in connection with Plaintiffs' Second Motion to Compel, she also appears to have been CFO of Alexbay. *Kleeberg*, 2019 WL 2085412, *3 (Doc. No. 216).  Defendant Gumaer was also a director of the Eber Entities during the relevant timeframe.  (Doc. No. 155, 5.)

## III.   The Polebridge Transaction

Prior to May of 2011, Eber Metro owned an 85 percent stake in Eber-CT.  (*Id*. at 6.)  In May of 2011, Eber Metro sold 6 percent of its equity interest in Eber-CT to Polebridge Bowman Partners, LLC ("Polebridge") in exchange for a $350,000 promissory note (the "Polebridge Transaction").  Polebridge was solely owned by an attorney and strategic business consultant named Glenn Sturm ("Sturm"), who Plaintiffs allege had already been retained by the Eber Entities at the time of the Transaction.  (*Id.*)

IV. **The Eber Entities' Attorney-Client Relationship with U&K**

As officers for the Eber Entities, Lester and Wendy Eber and Gumaer directed various facets of the family business, such as mergers and acquisitions, the sale of Eber stock, and defending the Eber Entities in litigation. Consequently, Lester, Wendy, and Gumaer consulted numerous attorneys over the years, including U&K. Indeed, if Plaintiffs and Defendants can agree on anything, it is that U&K has a longstanding relationship with the Eber Entities. EBWLC began retaining U&K, at the latest, in or about May of 2011. (Doc. No. 156-8; Doc. No. 162, 14.) Plaintiffs allege that U&K defended EBWLC in litigations where it was sued by the law firm Harris Beach PLLC ("HB") for unpaid attorneys' fees and in another litigation referred to as the "D-4" litigation.[4] (Doc. No. 155, 16; Doc. No. 156-8.)

V. **The Foreclosure Action and the Transfer of Eber Metro to Alexbay**

While he was a co-trustee of the Trust and an officer for the Eber Entities, Lester Eber made cash loans to EBWLC and Eber Metro totaling approximately $3.5 million. (Doc. No. 155, 8; Doc. No. 162, 6-7.) Plaintiffs maintain that the loans Lester made to EBWLC and Eber Metro were predatory, while Defendants contend that Lester made those loans because no banks were willing to lend money to the Eber Entities, which badly needed the capital. (Doc. No. 155, 8; Doc. No. 162, 5.) Lester Eber subsequently perfected and secured those loans against EBWLC's controlling interest in Eber Metro (and, thus, its 79 percent interest in Eber-CT) by executing guaranty and surety agreements with EBWLC and Eber Metro (the "2010 Guaranty

---

[4] In its opinion deciding Plaintiffs' Second Motion to Compel, this Court found that these lawsuits were unrelated to the issues in the instant action. *Kleeberg*, 2019 WL 2085412, *21 (Doc. No. 216).

and Surety Agreements"). (Doc. No. 161-8.)  Lester then assigned his right to collect on the debt to Alexbay on or about January 18, 2012.  (Doc. No. 156-7, 9.)

On December 8, 2011, while he was president and director of the Eber Entities and co-trustee of the Trust, Lester attempted to transfer Eber Metro's 79 percent interest in Eber-CT to Alexbay allegedly for no consideration by filing an affidavit with the Connecticut Liquor Licensing Board stating: "I wish to transfer all of that 79 percent [of Eber-CT] that I own from Eber-Metro to Lester Eber LLC [now operating as Alexbay], an entity which will also be wholly owned by me.  This transfer is being done for no consideration, in that it is being done strictly for organizational purposes.  No money or other consideration will change hands." (Doc. No. 155, 6-7.)  Although the transaction was not effectuated, Plaintiffs allege that this attempted transfer was done "with legal assistance." (*Id*. at 7.)  Specifically, Plaintiffs point to the privilege log prepared by U&K on behalf of Lester and Wendy Eber, Alexbay, EB&C, EBWLC, Eber Metro, and Eber-CT (collectively, the "Eber Defendants") to allege that Lester Eber exchanged numerous email communications with U&K in the days following the transfer request.  (*Id.*)

In February of 2012, shortly after Lester Eber purportedly resigned from the board of EBWLC, Alexbay sued EBWLC and Eber Metro, among others, to collect the debt allegedly owed to Alexbay (the "Foreclosure Action").  U&K represented Alexbay in the Foreclosure Action, while an attorney named Marino Fernandez represented EBWLC and Eber Metro.  (*Id*. at 5.)  In the Foreclosure Action, Alexbay sought an order for the New York Supreme Court, Monroe County stating that EWBLC could transfer its entire interest in Eber Metro, including Metro's 79 percent stake in Eber-CT, to Alexbay in full satisfaction of its debt to Alexbay (the "Metro Transfer") and that such a transfer would be "commercially reasonable."  (Doc. No. 156-7.)

To show that the transfer was "commercially reasonable," Alexbay, through its attorneys at U&K, alleged that Lester Eber had lent over $3.2 million to EBWLC and Eber Metro and that the debt, by virtue of the 2010 Guaranty and Surety Agreements, was secured against EBWLC's ownership interest in Eber Metro.  (*Id*. at 5-9.)  When it commenced the Foreclosure Action, Alexbay alleged that EBWLC owed more than $3.65 million.  (*Id*. at 10.)  Alexbay pointed to the Polebridge Transaction, in which Polebridge promised to pay $350,500 for a six percent stake in Eber-CT,  to show that "each one percent of the membership units in Eber[-CT] was worth approximately $58,333 in May, 2010."  (*Id*. at 12) (footnote omitted).  Alexbay alleged that, at the time of the Polebridge Transaction, Polebridge was unrelated to Alexbay or the Eber Entities, and that Eber Metro's sale of its 6 percent interest in Eber-CT to Polebridge was an "arms' length transaction" that occurred on the "free market."  (*Id.*)  Alexbay also maintained that Eber Metro's ownership interest in Eber-CT was its "only valuable asset," and was, thus, only as valuable as its interest in Eber-CT's stock, which was worth approximately $4.6 million.  (*Id*. at 12.)  Thus, Alexbay used the Polebridge Transaction to demonstrate that Eber Metro was worth approximately the same as the total debt owed to Alexbay.

Plaintiffs allege that Alexbay's valuation of Eber Metro and Eber-CT in the Foreclosure Action amounted to a material misrepresentation because the basis for the valuation – the $350,000 Polebridge promised to pay for a 6 percent interest in Eber-CT – was not an arm's length transaction because Sturm had a preexisting relationship with Lester and Wendy Eber, Gumaer, and the Eber Entities as an attorney and strategic consultant.  (Doc. No. 155, 6, 8.)  In sum, Plaintiffs allege that the Alexbay and U&K grossly undervalued Eber Metro's 79 percent interest in Eber-CT to ensure that the New York Supreme Court would approve the transfer for

Alexbay's benefit.  (*Id*. at 8.)  Plaintiffs cite to EB-00026664, an email chain identified in the Eber

Defendants' privilege log involving U&K, Sturm, and Lester and Wendy Eber to support their

theory that U&K knew that the Polebridge Transaction was not conducted at arm's length.

(Doc. No. 170, 12.)  Ultimately, Alexbay settled the Foreclosure Action with EBWLC and Eber

Metro by acquiring Eber Metro and its 79 percent stake in Eber-CT.  Wendy, as president and

director of EBWLC and Gumaer, as director of EBWLC, approved the transfer.  (Doc. No. 155, 2,

8.)

The Foreclosure Action is the heart of this case and was the catalyst for this lawsuit.

Indeed, essentially all of the factual allegations raised by Plaintiffs in this action arise from, and

purportedly culminated in, the Foreclosure Action, which Plaintiffs allege was a "sham" that

divested the Trust of its most valuable asset — Eber-CT.[5]

## VI.    Ongoing Discovery Disputes and Plaintiffs' Second Motion to Compel

Plaintiffs filed the instant Motion to Disqualify due to the Eber Defendants', and

particularly EBWLC's, purported non-compliance with their discovery obligations.  Although

Plaintiffs previously filed a Second Motion to Compel, which this Court granted in part and

denied in part, *Kleeberg v. Eber*, 2019 WL 2085412 (S.D.N.Y. May 13, 2019) (Doc. No. 216), they

maintain that no discovery motion will adequately ensure that U&K complies with its discovery

obligations with respect to EB&C and EBWLC.  Specifically, Plaintiffs allege that U&K is unlikely

to comply with its discovery obligations in this action due to its overriding duty of loyalty to

Lester and Wendy Eber arising from its representation of Alexbay in the Foreclosure Action.

---

[5] Plaintiffs initially also filed claims against CNB, but settled with CNB and voluntarily dismissed those claims.  (Doc. No. 117.)

(Doc. No. 155, 14.)  Plaintiffs further allege that U&K's representations to this Court that EB&C and EBWLC are "defunct" and "worthless" demonstrate that they are committed to advancing Lester and Wendy Eber's interests by aggressively asserting privilege over the documents Plaintiffs seek.  (*Id*. at 7, 11-13, 15.)

The instant Motion to Disqualify overlaps with Plaintiffs' Second Motion to Compel because Plaintiffs insist that the Eber Defendants' privilege log demonstrates that U&K is purposely withholding relevant, non-privileged, and crucial information from Plaintiffs, in violation of its ethical obligations.  Although they had not yet had an opportunity to review the documents identified in the Eber Defendants' log when they made the instant Motion, Plaintiffs' Motion relies upon their assumptions regarding purported discrepancies in the log. For example, Plaintiffs speculate  that certain documents, such as communications between Lester Eber and the attorney who helped him incorporate Alexbay, Jerry Farrell, exist and were never identified by the Eber Defendants.  (*Id*. at 7, 17.)  They also make the general allegation that certain documents are not accurately described in the log.  (*Id*. at 14 n.10.)  Additionally, Plaintiffs surmise that certain communications that took place on or about December 9, 2011 between Lester and Wendy Eber and U&K attorney Paul Keneally ("Keneally") concern Lester Eber's initial attempt to transfer Eber Metro's 79 percent interest in Eber-CT to himself and that U&K may have advised Lester Eber in connection with that attempt.  (*Id*. at 7.)  Plaintiffs also contend that other privileged documents identified in the log suggest that, although he did not formally appear in the Foreclosure Action, Keneally helped represent Alexbay behind closed doors.  (*Id*. at 10.)  Plaintiffs allege that Keneally's involvement in the Foreclosure action is significant because he is counsel of record for the Eber Defendants in this action.

9

Plaintiffs also maintain that particular documents identified in the log show that U&K was drafting documents for EBWLC while it was representing Alexbay in the Foreclosure Action and that U&K did not obtain conflict waivers from EBWLC and EB&C as required by the New York Rules of Professional Conduct ("NYRPC").  (*Id*. at 7, 10.)  Then, Plaintiffs go one step further to allege, as they did in their Second Motion to Compel, that U&K also surreptitiously gave EBWLC legal advice in connection with the Foreclosure Action and, thus, represented both sides of the Foreclosure Action.  (*Id.*)  Plaintiffs claim that due to their purported dual representation of Alexbay and EBWLC in the Foreclosure Action and the misrepresentations they made to the New York Supreme Court in undervaluing Eber Metro, U&K is conflicted from representing EB&C and EBWLC in this action because it has an incentive to hide its fraud in the Foreclosure Action from this Court.  (*Id*. at 15.)

In support of its allegation that U&K represented both Alexbay and EBWLC in the Foreclosure Action, Plaintiffs cite to the following bates-numbered documents in the Eber Defendants' privilege log, which the Court recently ordered Defendants to produce: EB-00026272-73 (discussing the lawsuit brought by HB against EBWLC for unpaid attorneys' fees); EB-00026637 (draft of unanimous written consent of EBWLC's board of directors to allow Lester Eber to resign as president and director of EBWLC and appointing Wendy as president of EBWLC); EB-00026651 (forwarding pleadings from the Foreclosure Action); and EB-00026657 (discussing a restraining notice).  (*Id*. at 4, 7); *see also Kleeberg*, 2019 WL 2085412, *17, *21, *24.  Plaintiffs also cite to EB-00026667, which the Court found was protected by the attorney-client privilege because it concerned a litigation unrelated to the issues in this case.  (Doc. No. 155, 7); *see also Kleeberg*, 2019 WL 2085412, *22.  Plaintiffs also contend that the Eber

Defendants have blatantly shirked their discovery obligations by, *inter alia*, failing to comply with this Court's November 7, 2018 Order, which directed them to provide Plaintiffs with the identities of all persons who currently hold equity or ownership interest in the Eber Entities or Alexbay and the type and amount of each such equity interest and the percentage of total voting power within each company held by each individual.  (Doc. No. 170, 6; *see also* Doc. No. 146.)

For its part, U&K vehemently denies that it represented EBWLC in any aspect of the Foreclosure Action.  (Doc. No. 162, 14-15.)  U&K elaborates that, although it exchanged communications with EBWLC during the same timeframe that it represented Alexbay, those communications were unrelated to the Foreclosure Action and U&K's representation of Alexbay.  (*Id*. at 14-15.)  U&K further alleges that it has complied with its discovery obligations in this action.  (*Id*. at 9.)

## DISCUSSION

### I.   LEGAL STANDARD

Motions to disqualify counsel are "committed to the discretion of the district court." *Fox v. Idea Sphere*, Inc., No. 12-cv-1342 (CM), 2013 WL 1191743, at *22 (S.D.N.Y. Mar. 21, 2013) (internal quotation marks and citation omitted).  The court's power to disqualify is derived from federal courts' "inherent power to preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (internal quotation marks and citation omitted).  Courts in the Second Circuit typically disfavor motions to disqualify counsel because they interfere with the parties' ability to select their counsel of choice and are often interposed for tactical reasons.  *Fox*, 2013 WL 1191743, at *22 (citing *Evans v. Artek Sys.*

*Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)); *see also H&H Acquisition Corp. v. Financial Intranet Holdings*, No. 98 Civ. 5269 (BSJ), 2000 WL 502869, at *1 (S.D.N.Y. Apr. 27, 2000) (disqualification motions "tend to derail the efficient progress of litigation"). Thus, when deciding a motion to disqualify, courts must strike a delicate balance between each litigant's interest in freely choosing its own counsel and ensuring that the underlying trial is not tainted. *H&H Acquisition Corp.*, 2000 WL 502869, at *2 (citing *Felix v. Balkin*, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999)).

The party seeking disqualification bears the burden of meeting a high standard of proof to show that disqualification is appropriate. *Felix*, 49 F. Supp. 2d at 267 (internal quotation marks and citation omitted). If the party moving for disqualification makes specific allegations that raise doubts about whether a conflict exists, such doubt should be resolved in favor of disqualification. *Id.* However, a party that merely articulates a suspicion of or future potential for conflict rather than a "real risk that the trial will be tainted," will fail to meet its burden. *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (internal quotation marks, alteration, and citation omitted). Because ethical violations can typically be addressed by federal and state disciplinary mechanisms, a court should only disqualify an attorney when his or her conduct will taint the underlying trial. *Hempstead Video, Inc.*, 409 F.3d at 132 (citing *Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

Where a conflict of interest is alleged, the test that will determine whether disqualification is appropriate depends on whether the representation is "concurrent" or "successive." *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 208 (S.D.N.Y. 2009).

Here, Plaintiffs allege that U&K is conflicted due to its concurrent representation of Lester and Wendy Eber and Alexbay, on the one hand, and EB&C and EBWLC on the other.[6]  Concurrent representation involves the simultaneous representation of an existing client in a matter adverse to another client and is, in many circumstances, *prima facie* improper.  *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (citations omitted) (affirming disqualification of plaintiff's counsel where the same law firm had previously advised the defendant's parent  corporation on compliance matters concerning its affiliates.)

Despite the impropriety of concurrent representation, both the Second Circuit and New York courts reject the routine disqualification of attorneys representing both companies and their officers in derivative actions.  *See, e.g.*, *Obeid ex rel. Gemini Real Estate Advisors v. La Mack*, No. 14 CV 6498 (LTS)(MHD), 2015 WL 7180735, at *2 (S.D.N.Y. Nov. 9, 2015); *Stilwell Value Partners IV, L.P. v. Cavanaugh*, 123 A.D.3d 641, 641–42, 999 N.Y.S.2d 418, 419 (1st Dep't 2014).  Part of the reasoning behind the exception is that corporations named in derivative suits are typically passive litigants that take no active role in the litigation by, for example, asserting counterclaims or cross-claims.  *See, e.g.*, *H&H Acquisition Corp.*, 2000 WL 502869, at *3.  Of course, there is always a chance that a conflict may arise during a litigation if the corporate entities become active participants by asserting claims or making a motion.  *See id*.  However, here, the Eber Entities have not asserted any claims against any party or made any motions.

---

[6] Plaintiffs do not argue that successive representation applies.  The test for whether a conflict exists in that context is that: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Artek Sys. Corp.,* 715 F.2d at 791 (citations omitted).

Where, as here, the companies in question are closely held, courts should also evaluate the practical implications of granting a motion to disqualify. *Obeid*, 2015 WL 7180735, at *2 (where the same law firm represented a closely-held corporation and its officers in a derivative suit, "a mandated change of counsel would not improve matters"); *Evans v. Perl*, 19 Misc. 3d 1119(A), 862 N.Y.S.2d 814 (Sup. Ct. N.Y. Cty. 2008) (dual representation of closely held corporations and their officers does not automatically require disqualification because "management and the business entities they control are virtually indistinguishable").

Courts may consider a motion to disqualify at any point during a litigation. However, where the motion is delayed, the movant must meet a high standard of proof to show that it is not tactically motivated. Compare *Prevezon Holdings Ltd.*, 839 F.3d 227 at 242 (in a case where plaintiff alleged fraud, the court granted a motion to disqualify defendant's attorney filed on the eve of trial because the defendant delayed raising a defense that another company, that was previously represented by the same counsel, committed the fraud) with *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449 (S.D.N.Y. 2000) (denying motion to disqualify where the movant knew about the purported conflict of interest but delayed bringing the motion until the court issued a scheduling order and accelerated the trial date).

Although federal district courts in New York have the discretion to consider various sources of law, including the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the NYRPC, they are not required to strictly adhere to them. *See, e.g.*, *Blue Planet Software, Inc. v. Games Intern., LLC*, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004). Moreover, it is well established that state disciplinary rules should not to be mechanically applied and violations of professional ethics should not automatically result in the

disqualification of counsel.  *Schmidt v. Magnetic Head Corp*., 101 A.D.2d 268, 277, 476 N.Y.S.2d

151, 156 (2nd Dep't 1984) (citations omitted).

Plaintiffs also cite to NYRPC 1.7, 1.13(d), and 3.4 to allege that U&K is conflicted from

representing EB&C and EBWLC in this action.  NYRPC  1.7 provides, in relevant part, that "a

lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the

representation will involve the lawyer in representing differing interests; or . . . there is a

significant risk that the lawyer's professional judgment on behalf of a client will be adversely

affected by the lawyer's own financial, business, property or other personal interests."  The

NYRPC provides an exception to this Rule where the lawyer reasonably believes that he or she

"will be able to provide competent and diligent representation to each affected client," "each

affected client gives informed consent, confirmed in writing," and the representation is "not

prohibited by law" and "does not involve the assertion of a claim by one client against another .

. . in the same litigation . . . ."  NYRPC 1.7(b)(1)-(4).  NYRPC 1.13(d) provides that "[a] lawyer

representing an organization may also represent any of its directors, officers, employees,

members, shareholders . . . .  If the organization's consent to the concurrent representation is

required by Rule 1.7, the consent shall be given by an appropriate official of the organization

other than the individual who is to be represented, or by the shareholders."  Finally, NYRPC 3.4

prohibits lawyers from, *inter alia*, suppressing evidence and knowingly engaging in illegal

conduct.  (Doc. No. 155, 11.)

II.   **ANALYSIS**

   a.   <u>Standing and Timeliness of the Motion to Disqualify</u>

As demonstrated by the case law cited above, Plaintiffs have standing to make the instant Motion by virtue of being parties to this action and asserting derivative claims on behalf of the Eber Entities.  *See, e.g.*, *Artek Sys. Corp.*, 715 F.2d 788 (remanding denial of motion to disqualify made by shareholder who asserted derivative claims against a corporation and its directors).  The Eber Defendants argue that Plaintiffs lack standing to seek U&K's disqualification because Plaintiffs will "never have control over any of the Eber entities to have standing to assert their false conflict claims."  (Doc. No. 162, 13.)  This argument relies on questions of fact that go to the merits of Plaintiffs' claims and cannot be considered by the Court at this stage of the litigation.

The Eber Defendants also contend that Plaintiffs' Motion is untimely and should be denied because Plaintiffs knew from the time they commenced this action that U&K represented Alexbay in the Foreclosure Action.  (*Id*. at 9-11.)  However, Defendants misconstrue Plaintiffs' arguments.  Plaintiffs' bases for seeking disqualification arise from information gleaned from the privilege log the Eber Defendants produced to Plaintiffs shortly before they sought leave to file this Motion.  (Doc. No. 155, 5, 15.)  Thus, the Court is satisfied that Plaintiffs' Motion is timely.

   b.   <u>U&K's Purported Loyalty to Lester and Wendy Eber Arising From the Foreclosure Action</u>

Plaintiffs make the serious allegation that U&K is motivated by its loyalty to Lester and Wendy Eber and Alexbay to suppress evidence from disclosure and "fight tooth and nail" to prevent Plaintiffs from accessing relevant communications.  (*Id*. at 15; Doc. No. 170, 6.)

16

However, Plaintiffs, to some extent, appear to conflate zealous advocacy and the assertion of attorney-client privilege with the suppression of evidence.  (Doc. No. 155, 15.)  Many of the documents identified in the Eber Defendants' privilege log and examined by the Court *in camera* asserted attorney-client privilege on behalf of EBWLC because the communications were between Lester and Wendy Eber and their alleged in-house attorney, Gumaer.[7]  This assertion of privilege makes sense because, under New York law, a corporation and its officers control attorney-client privilege with respect to confidential communications between the corporation and its counsel.  *See, e.g.*, *People ex. rel. Spitzer v. Greenberg*, 50 A.D.3d 195, 201, 851 N.Y.S.2d 196, 200–201 (1st Dep't 2008) (citation omitted).  In other words, it was not inappropriate for U&K to withhold those documents from disclosure where it had at least a colorable basis to believe that the documents were protected by the attorney-client privilege.

Plaintiffs also speculate that some relevant documents may exist but have simply been ignored and omitted from the Eber Defendants' privilege log.  (Doc. 155, 7, 14-15.)  However, absent any evidence of wrongdoing, the Court cannot simply give credence to these accusations.  As explained *supra*, the party seeking disqualification bears a high burden of proof to show that disqualification is appropriate.  To meet that burden, the party seeking disqualification must make *specific* allegations that show that an irremediable conflict of interest exists.  *E.g.*, *Artek Sys. Corp.*, 715 F.2d at 794 (remanding grant of disqualification motion and ordering an evidentiary hearing to evaluate veracity of the factual bases for disqualification).  For the reasons explained above, the Court finds that Plaintiffs have not met

---

[7] Although the Eber Defendants claimed that Gumaer was the Eber Entities' in-house counsel, this Court held that they failed to meet their burden of showing that he was, in fact, their in-house counsel.  *Kleeberg*, 2019 WL 2085412, *15 (Doc. No. 216).

their high burden of showing that a basis exists to disqualify U&K from representing EB&C and

EBWLC due to U&K's alleged loyalty to Lester and Wendy Eber.

      c.   <u>U&K's Alleged Personal Interest in the Foreclosure Action</u>

      Plaintiffs have not demonstrated that U&K represented both Alexbay and EBWLC in the

Foreclosure Action and misrepresented the nature of the Polebridge Transaction to the court in

that Action.  Plaintiffs' allegations are premised on their review of the Eber Defendants'

privilege log, rather than the underlying documents themselves, and the cited documents do

not support Plaintiffs' assertions.  (Doc. No. 155, 4, 7, 10.)  For example, several of the

documents identified in the Eber Defendants' log that Plaintiffs claim demonstrate that U&K

represented EBWLC in connection with the Foreclosure Action are completely unrelated to that

Action.  *Kleeberg*, 2019 WL 2085412, at *21 (discussing EB-00026272, EB-000262723, and EB-

00026667).  In another communication cited by Plaintiffs, Wendy Eber introduced Gumaer to

an attorney at U&K via email and asked him to forward Gumaer a copy of Alexbay's Complaint

in the Foreclosure Action.  *Id*. at *24 (discussing EB-00026651).  This document falls far short of

showing that U&K was providing legal advice to EBWLC with respect to the Foreclosure Action.

      EB-00026637 is a draft of the unanimous written consent of EBWLC's board of directors

that allowed Lester Eber to resign as president and director of EBWLC and appointed Wendy as

president of EBWLC.  *Id*.  Although this document concerns Lester Eber's resignation from

EBWLC, which Plaintiffs allege was related to his decision to sue EBWLC through Alexbay, this

document, standing alone, does not show that U&K was advising the parties on both sides of

the Foreclosure Action.  Plaintiffs also cite to EB-00026664, an email dated January 20, 2012, to

allege that U&K knew that the Polebridge Transaction was not an arm's length transaction and,

thus, lied to the court in the Foreclosure Action to undervalue Eber Metro and Eber-CT for Alexbay's benefit.[8]  (Doc. No. 170, 12.)  However, as explained in this Court's Opinion on Plaintiffs' Second Motion to Compel, this document pertains to the D-4 litigation and appears to be unrelated to the Foreclosure Action.  *Kleeberg*, 2019 WL 2085412, *22 (Doc. No. 216). Finally, Plaintiffs cite to EB-00026657 to argue that Keneally helped represent Alexbay in the Foreclosure action.  (Doc. No. 155, 10.)  However, the communications in that chain concern a restraining notice and are dated October 25, 2012, months after the court ruled in Alexbay's favor in the Foreclosure Action.

In sum, Plaintiffs have not met their high burden of showing that U&K has a personal interest in suppressing evidence in this action and, as such, the Court finds that no conflict exists on that basis.  Thus, the Court will not further consider whether NYRPC 1.7(a)(2), which prohibits lawyers from representing a client where their judgment on that client's behalf may be affected by their personal interests, and NYRPC 3.4, which prohibits attorneys from suppressing and concealing evidence, apply to this Motion.  That being said, the Court is troubled by Plaintiffs' assertion that the Eber Defendants have not been complying with their discovery obligations and, specifically, the allegation that they failed to comply with this Court's November 7, 2018 Order requiring them to provide Plaintiffs with: "(1) the identities of all persons who currently hold any kind of equity or ownership interest in any of the Eber Companies or Alexbay, LLC; and (2) the type and amount of each such equity interest as well as the percentage of total voting power within each company held by each person."  (Doc. No.

---

[8] Plaintiffs also cited to EB-0002627, but that number does not correspond to any document in the Eber Defendants' log.  (Doc. No. 170, 12.)

146.)  The Eber Defendants are hereby directed to file a letter on ECF by no later than **June 7, 2019**, confirming whether they complied with this Order.

        d.   Applying the Disqualification Standard in Derivative Suits Involving Closely Held Corporations

It is clear that U&K's concurrent representation of Lester and Wendy Eber and the Eber Entities presents a conflict of interest because Plaintiffs have accused Wendy and Lester of defrauding the Eber Entities.  However, as explained above, courts in the Second Circuit may allow the same counsel to concurrently represent corporations and their officers in derivative suits so long as the corporations remain passive litigants.[9]  *H&H Acquisition Corp.*, 2000 WL 502869, at *3; *see also Evans*, 19 Misc. 3d 1119(A), 862 N.Y.S.2d 814.

Here, Plaintiffs concede that EB&C and EBWLC, like the other Eber Entities, are only Nominal Defendants in this action and that it is unlikely that either will move or appear in this action. (Doc. No. 155, 9; Doc. No. 170, 7-8.)  Indeed, this Court recently granted Plaintiffs leave to file their Third Amended Complaint ("TAC"), where they expressly amended their operative complaint to clarify that the Eber Entities, including EB&C and EBWLC, are only Nominal Defendants.  *Kleeberg*, 2019 WL 2223272, *17 (Doc. No. 222).  Yet, Plaintiffs appear to argue that EB&C and EBWLC have been, in essence, transformed into active litigants due to U&K's purported failure to comply with its discovery obligations concerning EBWLC.  (Doc. No. 155, 4,

---

[9] Although EB&C and EBWLC filed an Answer jointly with the other Eber Defendants,  Plaintiffs do not argue that this transformed them into active litigants.  Likewise, although Plaintiffs acknowledge that the Eber Defendants did not move to dismiss this proceeding, they do not argue that this decision somehow harmed EB&C and EBWLC.  Both Gumaer and CNB moved to dismiss this action and argued that the Court lacks subject-matter jurisdiction to adjudicate the instant case due to the probate exception to diversity jurisdiction.  Both motions were denied by the Honorable Judge Lewis A. Kaplan.  (Doc. No. 57.)

14; Doc. No. 170, 4-5.)  This is a novel argument that is unsupported by the governing case law in this Circuit.

Plaintiffs also argue that NYRPC 1.7 and 1.13(d) require that the corporate officers and corporations in a derivative suit give informed consent for concurrent representation and that such consent must be provided on behalf of the corporation by someone other than the officers being sued.  (Doc. No. 155, 13-14.)  They further contend that because Lester and Wendy Eber are the only corporate officers at EB&C and EBWLC with the authority to grant such a waiver, the authority to waive conflicts is vested in Plaintiffs and they will not give their consent.  (*Id.* at 13-14.)  Although the Court agrees that Lester and Wendy Eber cannot waive conflicts on behalf of themselves and the Eber Entities, it, nevertheless, finds this argument unpersuasive because, while this Court may consider state ethical rules in reaching a decision, it is not required to consider them or automatically disqualify counsel due to a violation.  *See generally, e.g.*, *Blue Planet Software, Inc.*, 331 F. Supp. 2d at 275; *see also Evans*, 862 N.Y.S.2d 814 (declining to disqualify counsel representing both the defendant corporations and the individual defendant who managed those corporations, despite the fact that the individual could not waive conflicts).

Courts in this district and in New York State recognize that special considerations should be weighed when determining whether counsel representing closely held corporations and their officers is should be disqualified.  Specifically, the test is: (1) whether truly independent counsel could be retained if current counsel is disqualified and (2) whether the plaintiffs have a significant investment in the defendant corporations.  *Evans*, 19 Misc. 3d 1119(A), 862 N.Y.S.2d 814; *see also Obeid ex rel. Gemini Real Estate Advisors*, 2015 WL 7180735, at *2

21

(disqualification is not warranted where "mandated change of counsel would not improve matters, and . . . there is no demonstrated meaningful threat to the integrity of the trial from the challenged joint representation . . . ."). It makes sense that closely held corporations are treated differently from large public corporations, which usually have officers and a board of directors with decision making ability independent of those persons whose actions are being challenged and the plaintiffs in those actions are typically nominal shareholders. *Evans*, 19 Misc. 3d 1119(A), 862 N.Y.S.2d 814.

In a similar derivative suit, *Evans v. Perl*, 19 Misc. 3d 1119(A), 862 N.Y.S.2d 814 (Sup. Ct. N.Y. Cty. 2008), the court declined to disqualify counsel representing a trustee and the closely held companies she managed. The court explained that because the corporations were closely held, any counsel hired to represent them would be directed by the trustee-defendant. Thus, a change of counsel would have no practical impact on protecting the integrity of the underlying legal proceedings. The court in *Evans* also reasoned that because the plaintiff's interest in the corporations was significant, she (and her guardian ad litem) would continue to zealously advocate on her behalf. Finally, the court acknowledged that requiring the business defendants, many of which were no longer operational, to acquire new counsel would be costly while providing no tangible benefit.

From the outset, Plaintiffs concede that "the upside of granting this motion is limited" because if the Court disqualifies U&K, Lester and Wendy Eber will select the new counsel. (Doc. No. 155, 4.) They also contend that because EB&C and EBWLC are passive litigants, retaining new counsel will not impose significant additional costs because all the new counsel will do is review EBWLC's records and "convincingly demonstrate good faith compliance with discovery

obligations." (*Id.*)  For their part, the Eber Defendants argue that hiring new counsel would impose a significant hardship on EB&C and EBWLC due to the complexity of the case and costs associated with educating new counsel.  (Doc. No. 162, 10.)

Applying the reasoning from *Evans*, the Court finds that Plaintiffs have failed to meet their high burden of showing that disqualification is warranted.  Indeed, it is clear that requiring the appointment of new counsel at this stage would do nothing to remove any potential taint from the underlying proceedings in this action because that counsel would continue to act at Lester and Wendy Eber's behest.  Additionally, because Plaintiffs purport to have a two-thirds interest in the Trust's assets, they have a significant interest in both EB&C and EBWLC and will, no doubt, continue to vigorously litigate this action.  Finally, the Court finds that requiring EB&C and EBWLC to retain new counsel, at this stage, would pose a significant financial burden on EB&C and EBWLC, particularly in light of the fact that they have no cash flow and are no longer operational.  Indeed, because many thousands of pages of documents have already been produced in connection with Plaintiffs' discovery requests, requiring EB&C and EBWLC to retain new counsel to re-review all of EBWLC's records (Doc. No. 155, 17) would be time-consuming and costly and provide no tangible benefit.

## **CONCLUSION**

For all the reasons set forth above, Plaintiffs' Motion to Disqualify U&K (Doc. No. 154) is DENIED.  The Eber Defendants are hereby directed to file a letter on ECF by no later than **June 7, 2019**, confirming whether they complied with this Court's Order dated November 7, 2018. (Doc. No. 146.)

**SO ORDERED.**

DATED:     May 29, 2019
           New York, New York

KATHARINE H. PARKER
United States Magistrate Judge