# Exhibit G

STATE OF NEW YORK
SUPREME COURT        COUNTY OF MONROE

_____

HARRIS BEACH PLLC,

                    Plaintiff,

                                                            **COMPLAINT**

        v.

EBER BROS. WINE & LIQUOR CORP.,                Index No.
ALEXBAY, LLC f/k/a LESTER EBER, LLC,
EBER BROS. WINE & LIQUOR METRO, INC., and     *2014-13623*
EBER-CONNECTICUT, LLC,

                    Defendants.

_____

        Plaintiff, Harris Beach PLLC ("HB"), as and for its Complaint against defendants Eber

Bros. Wine & Liquor Corp. ("Eber Bros."), Alexbay, LLC f/k/a Lester Eber, LLC ("Alexbay"),

Eber Bros. Wine and Liquor Metro, Inc. ("Eber Metro") and Eber-Connecticut, LLC ("Eber-

CT")(collectively, "Defendants") alleges as follows:

                            **THE PARTIES**

        1.      HB is a New York professional services limited liability company duly organized

and existing under the laws of the State of New York with its principal place of business located

at 99 Garnsey Road, Pittsford, New York.

        2.      Upon information and belief, Eber Bros. is domestic business corporation with its

principal place of business located at 95 Allens Creek Road, Suite 10, Building 2, Rochester,

New York.

        3.      Upon information and belief, Alexbay is a limited liability company organized

and existing under the laws of the State of Connecticut with its principal place of business

located at 30 Corporate Drive, North Haven, Connecticut.

HARRIS BEACH ⁵
ATTORNEYS AT LAW

4.      Upon information and belief, Eber Metro is a domestic business corporation with its principal place of business located at 95 Allens Creek Road, Suite 10, Building 2, Rochester, New York.

5.      Upon information and belief, Eber-CT is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 30 Corporate Drive, North Haven, Connecticut.

6.      Upon information and belief, at all relevant times except as stated below, Lester Eber ("Lester") was the President and director of Eber Bros.

7.      Upon information and belief, Lester is and at all relevant times was the Chief Executive Officer of Eber Bros.

8.      Upon information and belief, Wendy Eber ("Wendy"), Lester's daughter, was the Chief Financial Officer, Secretary, and a director of Eber Bros. until she resigned from those positions on March 31, 2014.

9.      Upon information and belief, Lester is and at all relevant times was the sole member and owner of Alexbay.

10.     Upon information and belief, Lester is and at all relevant times was the Chief Executive Officer of Eber Metro.

11.     Upon information and belief, Wendy is and at all relevant times was the Chief Financial Officer and a director of Eber Metro.

12.     Upon information and belief, Lester is and at all relevant times was the Chairman, Chief Executive Officer and manager of Eber-CT.

13.     Upon information and belief, Wendy is and at all relevant times was the President of Eber-CT.

HARRIS BEACH ╩
ATTORNEYS AT LAW

2

14.    Upon information and belief, at all relevant times except after the conveyance identified below, Eber Metro was wholly owned by Eber Bros.

15.    Upon information and belief, at all relevant times, Eber Metro has owned a 79% membership interest in Eber-CT.

## BACKGROUND

### A.    The Debt Obligations

16.    Upon information and belief, on or about August 15, 2005, Lester loaned Eber Bros. the sum of $1,500,000 pursuant to a promissory note (the "$1.5 million Note").

17.    In or about October, 2009, Lester extended a line of credit to Eber Metro, in an amount not to exceed $1,500,000 pursuant to a Line of Credit Note (the "LOC Note").

18.    On or about February 26, 2010, Eber Bros. executed a guaranty in favor of Lester with regard to the LOC Note only (the "LOC Guaranty").

19.    On or about February 26, 2010, Eber Bros. and Eber Metro executed a Security Agreement in favor of Lester whereby Eber Bros. and Eber Metro granted Lester a security interest in substantially all of their assets (the "Security Agreement").

20.    The Security Agreement only secured Lester as to repayment of the LOC Note.

21.    On or about February 11, 2011, pursuant to a Debt Assumption Agreement, Eber Metro assumed Eber Bros.' obligation under the $1.5 million Note (the "Assumption Agreement").

22.    Pursuant to the Assumption Agreement, Lester released Eber Bros. from any further obligation to repay the $1.5 million Note.

### B.    The Underlying Collection Action for Money Damages

23.    On September 23, 2011, HB commenced an action (under Index No. 11-11436) in Monroe County Supreme Court against Eber Bros. for breach of contract and unjust enrichment

among other causes of action (the "Underlying Collection Action") which arose out of legal services HB provided to Eber Bros. in connection with its representation of Eber Bros. in a lawsuit brought by Wolf Concept, S.A.R.L. against Eber Bros.

24.     HB's complaint in the Underlying Collection Action seeks a money judgment in the amount of $710,314.82 for unpaid attorneys' fees and late charges, plus $45,580.96 for unpaid disbursements.

25.     On February 26, 2014, Hon. J. Scott Odorisi issued an Amended Judgment in favor of HB and against Eber Bros. on its breach of contract and unjust enrichment causes of action in the amount of $1,023,288.27, plus post-judgment interest (the "Amended Judgment").

26.     On March 4, 2014, based on the Amended Judgment, a judgment was entered in favor of HB and against Eber Bros. in the amount of $1,031,116.65 (the "Judgment").

27.     As of the date of this Complaint, no part of the Judgment has been paid.

**C.     Events Leading Up to the Fraudulent Conveyance**

28.     On December 8, 2011, two and a half months after the Underlying Collection Action was commenced, Lester formed Lester Eber, LLC ("LE") in Connecticut.

29.     Lester is the sole member and owner of LE.

30.     On or about December 8, 2011, Lester submitted an application to the State of Connecticut Liquor Control Division for approval to convey Eber Metro's controlling 79% interest in Eber-CT to LE (the "Application").

31.     In support of the Application, Lester submitted an Affidavit to the Connecticut Liquor Control Division stating that the proposed conveyance of Eber Metro's controlling interest in Eber-CT to LE was for no consideration.

32.     On January 12, 2012, LE formally changed its name to Alexbay, LLC.

HARRIS BEACH ⅜
ATTORNEYS AT LAW

4

33.     On or about January 18, 2012, Lester purportedly assigned his rights under the $1.5 million Note and Security Agreement to his company, Alexbay, pursuant to an Assignment of Note and Security Agreement (the "Assignment").

34.     The unsigned Assignment did not purport to assign the LOC Note or LOC Guaranty to Alexbay.

35.     By notice dated January 18, 2012, Alexbay notified Eber Bros. of its proposal to accept Eber Bros.' shares of common stock in Eber Metro (the "Eber Metro Shares") in full satisfaction of indebtedness allegedly owed to Alexbay under the $1.5 million Note and LOC Note (collectively, the "Notes").

36.     At no point in time did Eber Bros. ever owe any obligation to Alexbay – under the Notes or otherwise.

### D.     The Alexbay Action

37.     On February 21, 2012, less than five (5) months after the Underlying Collection Action was commenced, Alexbay commenced an action (under Index No. 2012-1919) in Monroe County Supreme Court against Eber Bros. and Eber Metro, among other defendants, seeking an order declaring Alexbay's acceptance of the Eber Metro Shares in full satisfaction of the debt allegedly owed under the Notes "commercially reasonable" under the Uniform Commercial Code (the "Alexbay Action").

38.     In Alexbay's Complaint and Lester's Affidavit, sworn to on March 14, 2012 ("Lester's Affidavit"), submitted to the Court for an order granting the relief sought in the Alexbay Action, Lester misrepresented to the Court that: (1) Eber Bros. owed a debt to Alexbay under the Notes in an amount which exceeded $3.650 million; and (2) the foregoing indebtedness owed by Eber Bros. to Alexbay was secured by a lien on all of Eber Bros.' assets, including the Eber Metro Shares.

39.     In Alexbay's Complaint and Lester's Affidavit submitted to the Court for an order granting the relief sought in the Alexbay Action, Lester misrepresented to the Court that the Eber Metro Shares were valued at $3.66 million.

40.     The basis for Lester's valuation of the Eber Metro Shares was a May 2010 acquisition by Polebridge Bowman Partners, LLC of six percent (6%) of the membership units in Eber-CT for the sum of $350,000 (the "Polebridge Bowman Two-Step").

41.     Based on the Polebridge Bowman Two-Step, Lester and Alexbay asserted that each share of Eber-CT would be worth $58,333[1], which they sought to argue would mean that Eber Metro's remaining seventy nine percent (79%) would have been worth $5,833,300 at the time of the Polebridge Bowman Two-Step.

42.     Alexbay alleged in its Complaint that after the Polebridge Bowman Two-Step, Eber-CT "...has lost more than $1.2 Million and that, as a consequence, the value of all of [Eber-CT's] membership units was reduced to $4,633,300 by December 2011." Therefore, Alexbay asserted, Eber Metro's 79% interest in Eber-CT should be valued at **$3.66 million**.

43.     In Alexbay's Complaint and Lester's Affidavit submitted to the Court for an order granting the relief sought in the Alexbay Action, Lester misrepresented to the Court that the Polebridge Bowman Two-Step was an "arms' length transaction" and a "very recent arms' length sale [sic] on the open market", respectively.

44.     The Polebridge Bowman Two-Step was not an arms' length transaction because Polebridge Bowman's sole member and manager, Glenn Sturm, is one of Lester's attorneys, because the shuffling of the 6% ownership to Polebridge Bowman was undertaken to address

---

[1] Polebridge Bowman paid $350,000 for a six percent ownership interest, thus one share is worth $350,000 ÷ 6 = $58,333.

business exigencies, because the purchase price was on a non-recourse basis, and because Wendy Eber retained a proxy to vote Polebridge Bowman's membership units.

45.    Alexbay did not advise the Court of two (2) earlier arms' length transactions which indicate the value of the Eber Metro Shares.

46.    On January 28, 2008, Eder-Goodman, LLC ("Eder-Goodman"), a competitor of Eber-CT, paid Eber Metro the sum of $4.5 million for a fifteen percent (15%) interest in Eber-CT pursuant to a Purchase Agreement ("Eder-Goodman Acquisition").

47.    Based on the Eder-Goodman Acquisition, each membership unit of Eber-CT would be worth $300,000[2], indicating that Eber Metro's controlling seventy nine percent (79%) would then have been worth a minimum of **$23.7 million**.

48.    As further proof of the value of the Eber Metro Shares, on August 29, 2007, Southern Wine and Spirits of America, Inc. ("Southern"), another of Eber-CT's competitors, entered into a written letter agreement with Eber Bros., which agreement was approved by Eber Bros. board of directors, giving Southern an option to purchase a fifteen percent (15%) interest in Eber-CT for the sum of $3 Million ("Southern Agreement").

49.    Although Southern ultimately did not opt to purchase the interest, the authorization of Eber Bros. board to grant such option nonetheless reflects that each membership unit of Eber-CT would be worth $200,000[3], which would indicate that Eber Metro's controlling seventy nine percent (79%) interest in Eber-CT would be worth no less than **$15.8 million**.

---

[2] Eder-Goodman paid $4,500,000 for a fifteen percent ownership interest, thus one membership unit is worth $4,500,000 ÷ 15 = $300,000.

[3] Southern offered $3,000,000 for a 15% ownership interest, thus one membership unit is worth $3,000,000 ÷ 15 = $200,000.

50.    The Eder-Goodman Acquisition and the Southern Agreement are true "arms' length" transactions wherein competitors negotiated a fair value of membership units of Eber-CT, neither of which were brought to the Court's attention in the Alexbay Action.

51.    On May 11, 2012, Hon. Matthew Rosenbaum issued an order granting Alexbay's motion, which order declared Eber Bros.' proposed conveyance of its control of Eber-CT to Alexbay in full satisfaction of the indebtedness owed under the Notes "commercially reasonable."

52.    On June 5, 2013, Eber Bros. conveyed the Eber Metro Shares (and with them control of Eber-CT) to Alexbay.

53.    Eber Bros.' conveyance of the Eber Metro Shares to Alexbay rendered Eber Bros. was insolvent.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Debtor and Creditor Law §§ 273, 278 and 279)

54.    HB repeats and realleges each and every allegation contained in paragraphs "1" through "53" as though fully set forth herein.

55.    HB is, and at all times relevant was, a creditor of Eber Bros.

56.    Upon information and belief, Eber Bros.' conveyance of the Eber Metro Shares to Alexbay was not made in good faith.

57.    Upon information and belief, Eber Bros.' conveyance of the Eber Metro Shares to Alexbay was not for fair equivalent value.

58.    Upon information and belief, Eber Bros.' conveyance of the Eber Metro Shares to Alexbay was not for fair consideration as that term is defined under New York Debtor and Creditor Law ("DCL") § 272.

HARRIS BEACH ᴾᴸᴸᶜ
ATTORNEYS AT LAW

8

59.     Upon information and belief, Eber Bros.' conveyance of the Eber Metro Shares to Alexbay rendered it insolvent as that term is defined under DCL § 271.

60.     Based on the foregoing, Eber Bros.' conveyance of the Eber Metro Shares to Alexbay is fraudulent as to HB pursuant to DCL § 273.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Debtor and Creditor Law §§ 273-a, 278 and 279)

61.     HB repeats and realleges each and every allegation contained in paragraphs "1" through "60" as though fully set forth herein.

62.     Upon information and belief, Eber Bros.' conveyance of the Eber Metro Shares to Alexbay was made without fair consideration as that term is defined under DCL § 272.

63.     Eber Bros.' conveyed the Eber Metro Shares to Alexbay when it was a defendant in an action for money damages brought by HB.

64.     Eber Bros. has failed to satisfy the Judgment obtained by HB in the Underlying Collection Action for money damages.

65.     Based on the foregoing, Eber Bros.' conveyance of the Eber Metro Shares to Alexbay is fraudulent as to HB under DCL § 273-a.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Debtor and Creditor Law §§ 276, 278 and 279)

66.     HB repeats and realleges each and every allegation contained in paragraphs "1" through "65" as though fully set forth herein.

67.     Upon information and belief, Eber Bros. conveyed the Eber Metro Shares to Alexbay with actual intent to hinder, delay, and defraud its creditors, including HB.

68.     Based on the foregoing, Eber Bros.' conveyance of its Metro shares to Alexbay is fraudulent as to HB under DCL § 276.

HARRIS BEACH ⅊
ATTORNEYS AT LAW

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### (New York Debtor and Creditor Law § 276-a)

69.     HB repeats and realleges each and every allegation contained in paragraphs "1" through "68" as though fully set forth herein.

70.     DCL § 276-a supplies enhanced remedies to creditors who demonstrate that adverse parties have engaged in a conveyance with actual intent to hinder, delay or defraud.

71.     The enhanced remedies under DCL § 276-a include the availability of an award of attorneys' fees of the creditor.

72.     HB is entitled to recover its reasonable attorneys' fees on the grounds that the Defendants have made a fraudulent conveyance with actual intent to hinder, delay, or defraud HB under DCL § 276-a.

73.     Accordingly, HB is entitled to an award of its attorneys' fees against the Defendants pursuant to DCL § 276-a with regard to fees incurred in connection with this action.

**WHEREFORE**, Plaintiff, Harris Beach PLLC, respectfully demands judgment against the Defendants as follows:

(a)     On its First Cause of Action, an order: (1) declaring Eber Bros.' conveyance of the Eber Metro Shares to Alexbay fraudulent as to HB under DCL § 273; (2) setting aside the conveyance, or in the alternative, disregarding the conveyance and allowing HB to execute upon the Eber Metro Shares pursuant to DCL § 278; (3) restraining the Eber Metro Shares and membership units of Eber-CT until further order of the Court pursuant to DCL § 279; (4) restraining and enjoining until further order of this Court the defendants, their officers, directors, employees and all those working in con cert with them, including without limitation their directors,

officers, agents, employees, attorneys and accountants are hereby enjoined and restrained (i) from conveying, transferring, selling, pledging, or otherwise encumbering, either directly or indirectly, the shares of Eber Metro and/or the membership units of Eber-CT; (ii) from voting or otherwise acting, either directly or indirectly, to authorize the conveyance, transfer, sale, pledge, or other encumbrance either directly or indirectly, the shares of Eber Metro and/or the membership units of Eber-CT; (iii) from conveying, transferring, selling, pledging, or otherwise encumbering, either directly or indirectly, the operating assets of Eber Metro and/or Eber-CT; or (iv) from voting or otherwise acting, either directly or indirectly, to authorize the conveyance, transfer, sale, pledge, or other encumbrance either directly or indirectly, the operating assets of Eber Metro and/or Eber-CT.; and/or (5) appointing a receiver for defendants Eber Bros., Eber Metro, Alexbay and Eber-CT pending further Order of this Court;

(b)     On its Second Cause of Action, an order: (1) declaring Eber Bros.' conveyance of the Eber Metro Shares to Alexbay fraudulent as to HB under DCL § 273-a; (2) setting aside the conveyance, or in the alternative, disregarding the conveyance and allowing HB to execute upon the Eber Metro Shares pursuant to DCL § 278; (3) restraining the Eber Metro Shares and membership units of Eber-CT until further order of the Court pursuant to DCL § 279; (4) restraining and enjoining until further order of this Court the defendants, their officers, directors, employees and all those working in con cert with them, including without limitation their directors,

officers, agents, employees, attorneys and accountants are hereby enjoined and restrained (i) from conveying, transferring, selling, pledging, or otherwise encumbering, either directly or indirectly, the shares of Eber Metro and/or the membership units of Eber-CT; (ii) from voting or otherwise acting, either directly or indirectly, to authorize the conveyance, transfer, sale, pledge, or other encumbrance either directly or indirectly, the shares of Eber Metro and/or the membership units of Eber-CT; (iii) from conveying, transferring, selling, pledging, or otherwise encumbering, either directly or indirectly, the operating assets of Eber Metro and/or Eber-CT; or (iv) from voting or otherwise acting, either directly or indirectly, to authorize the conveyance, transfer, sale, pledge, or other encumbrance either directly or indirectly, the operating assets of Eber Metro and/or Eber-CT.; and/or (5) appointing a receiver for defendants Eber Bros., Eber Metro, Alexbay and Eber-CT pending further Order of this Court;

(c)    On its Third Cause of Action, an order: (1) declaring Eber Bros.' conveyance of the Eber Metro Shares to Alexbay fraudulent as to HB under DCL § 276; (2) setting aside the conveyance, or in the alternative, disregarding the conveyance and allowing HB to execute upon the Eber Metro Shares pursuant to DCL § 278; (3) restraining the Eber Metro Shares and membership units of Eber-CT until further order of the Court pursuant to DCL § 279; (4) restraining and enjoining until further order of this Court the defendants, their officers, directors, employees and all those working in con cert with them, including without limitation their directors,

officers, agents, employees, attorneys and accountants are hereby enjoined and restrained (i) from conveying, transferring, selling, pledging, or otherwise encumbering, either directly or indirectly, the shares of Eber Metro and/or the membership units of Eber-CT; (ii) from voting or otherwise acting, either directly or indirectly, to authorize the conveyance, transfer, sale, pledge, or other encumbrance either directly or indirectly, the shares of Eber Metro and/or the membership units of Eber-CT; (iii) from conveying, transferring, selling, pledging, or otherwise encumbering, either directly or indirectly, the operating assets of Eber Metro and/or Eber-CT; or (iv) from voting or otherwise acting, either directly or indirectly, to authorize the conveyance, transfer, sale, pledge, or other encumbrance either directly or indirectly, the operating assets of Eber Metro and/or Eber-CT.; and/or (5) appointing a receiver for defendants Eber Bros., Eber Metro, Alexbay and Eber-CT pending further Order of this Court;

(d)    On its Fourth Cause of Action, as against Defendants, awarding HB its reasonable attorneys' fees, costs and disbursements pursuant to DCL § 276-a; and

(e)    For such further and other relief as may be just, proper, and equitable.

Dated: Pittsford, New York
       December 11, 2014

**HARRIS BEACH PLLC**

By: _____
Douglas A. Foss, Esq.
Kevin Tompsett, Esq.
*Attorneys for the Plaintiff*
99 Garnsey Road
Pittsford, New York 14534
(585) 419-8800

2014 DEC 11 PM 3:59
MONROE COUNTY CLERK
FILED

254264 2386927v4

HARRIS BEACH
ATTORNEYS AT LAW