UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DANIEL KLEEBERG, LISA STEIN,
and AUDREY HAYS,

                Plaintiffs,

     v.

LESTER EBER; ALEXBAY, LLC f/k/a
LESTER EBER, LLC; ESTATE OF ELLIOTT W.
GUMAER, JR.; and WENDY EBER

                Defendants,

   and

EBER BROS. & CO., INC.;
EBER BROS. WINE AND LIQUOR
CORPORATION; EBER BROS. WINE
& LIQUOR METRO, INC.; EBER-
CONNECTICUT, LLC; EBER-RHODE
ISLAND, LLC; EBER BROS.
ACQUISITION CORP.; EBER-METRO,
LLC; SLOCUM & SONS OF MAINE, INC.,

                Defendants.
_____

Civil Action No. 1:16-cv-09517

MEMORANDUM OF LAW IN SUPPORT OF THE ESTATE OF ELLIOT W. GUMAER
JR.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

                                          Robert B. Calihan
                                          CALIHAN LAW PLLC
                                          620 Reynolds Arcade Building
                                          16 East Main Street
                                          Rochester, New York 14614
                                          Tel: (585) 281-2593
                                          Fax: (866) 533-4206
                                          rcalihan@calihanlaw.com

**Table of Contents**

PRELIMINARY STATEMENT……………………………………………………………….3

STATEMENT OF FACTS………………………………………………………………………..4

ARGUMENT…………………………………………………………………………………...6

    I.    THE LEGAL STANDARD FOR SUMMARY JUDGMENT APPLICABLE HERE………………...……………………………………………………………....6

    II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CORE CLAIMS UNDER THE ROOKER-FELDMAN DOCTRINE………………………..…………………………………………...7

    III.    THE ESTATE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT DISMISSING COUNT I TO THE EXTENT IT IS BASED ON ALLEGED GUMAER SELF-DEALING, CONFLICTS OF INTEREST, USURPING CORPORATE OPPORTUNITIES, OR LESTER'S EXERCISE OF HIS SECURITY RIGHTS IN 2012……………………………………………..11

    IV.    THE ESTATE IS ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFFS' "BREACH OF FIDUCIARY- FAITHLESS SERVANT CLAIM"…………………………………………………………….13

    V.    SUMMARY JUDGMENT DISMISSING THE FRAUDULENT CONCEALMENT COUNT AGAINST THE ESTATE IS WARRATED……...15

    VI.    SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE PUNITIVE DAMAGES AND SURCHARGE CLAIMS AGAINST THE GUMAER ESTATE……………………………………………………….17

    VII.    THE ESTATE ADOPTS CERTAIN POINTS OF THE EBER DEFENDANTS' MEMORANDUM OF LAW…………………………………18

CONCLUSION……………………………………………………………………...……19

PRELIMINARY STATEMENT

This action arose out of the collapse of a family business. The collapse was caused by a competitor.  Plaintiffs had long benefited from that business, but were not involved in its management. That was the responsibility of defendant Lester Eber, the son of the founder, Allen Eber.  As Judge Kaplan wisely observed at the beginning of this lawsuit, these intrafamily disputes often become particularly bitter, as has happened here. Plaintiffs – beneficiaries of the Trust Allen Eber established to hold the family business – feel they were damaged through no fault of their own, and so sued all of the trustees of the Trust, including Elliot W. Gumaer, Jr, who had been Allen Eber's personal attorney. Allen Eber had directed in his will that Gumaer would serve as both a trustee of the Trust and director of the Eber companies held by the Trust. Which is what Gumaer did, carrying out Allen Eber's wishes.

Mr. Gumaer was alive at the start of this litigation, but severely debilitated by a series of strokes. His counsel never was able to discuss plaintiffs' allegations with him.  He has since died.[1] Not only is Mr. Gumaer not now able to speak for himself in defense of plaintiffs' claims, he was never able to address plaintiffs' allegations.  And as a result of his death, his estate is a defendant here, and plaintiffs are now trying to recover a substantial sum of money not from Gumaer, but from his widow and children who had no involvement in the failure of the Eber family business or its aftermath.

---

[1] The Estate reserves all of its evidentiary objections provided by the Deadman's Statue and doctrine.

STATEMENT OF FACTS

This dispute is well known to the Court. Allen Eber created a successful liquor distribution business in the early 20th century. At the time of his death, the stock of the holding company Eber Bros. & Co., was placed in a testamentary trust ("Trust"). Eber Bros & Co. held all of the stock of Eber Bros. Wine and Liquor Corporation ("EBWLC"), which in turn held all of the stock of Eber Bros Wine and Liquor Metro, Inc. ("Eber Metro").

Allen Eber's will created the Trust. (Affidavit of Lester Eber ("LE Aff.") at ¶ 3).  It appointed Allen's son Lester and Gumaer trustees (along with a bank) and expressly authorized them "to act as directors" of the Eber companies held in the Trust. (LE, Ex. A, "Twelfth" at p. 13; (o) at p. 17).

 In 2004 Southern Wine and Spirits of America, Inc. entered the Upstate New York market. (LE Aff. at ¶ 14). It destroyed the Eber business by recruiting its top salesmen for pay Eber could not afford to match.  Since then the Eber business has been fighting to stay afloat – a fight that continues today.

Among other challenges, the Eber business was always stretched for capital. Lester asked his sisters, Trust beneficiaries, for help saving the business. (Wendy Eber Affidavit ("WE Aff.") at ¶¶ 9-10 and LE Aff. at ¶¶ 32-35). They declined, probably wisely, to put their money at risk – so Lester used his own money, to the tune of over $3,000,000, to keep the business going. (LE Aff. at ¶ 29). Not surprisingly, Lester received security interests in substantially all of EBWLC's assets, including Eber Metro stock. Allen Eber had wisely foreseen the possibility that his son might have to loan the business money one day, and expressly authorized those loans in his will, which in relevant part authorized the trustees "to borrow money from itself [sic] or others for the

benefit of…any trust hereunder, and to secure the loan by pledge…of the property of my estate or any trust….") (LE Ex. A, ¶ 30).

By 2012, Lester had loaned EBWLC over $3,000,000, the business was still struggling, and EBWL was drowning in debt in addition to Lester's loans. EBWLC and Eber-Metro defaulted on his loans. Already in his mid-seventies, Lester became unwilling to continue to shoulder alone the risk no one in the family was willing to share. (LE Aff. at ¶ 36). He decided to exercise his security rights, by then assigned to Alexbay Inc. (LE Aff. at ¶ 37). An action was brought pursuant to NYUCC 9-620 and 9-627 in New York Supreme Court, Monroe County (Rosenbaum, J.). (LE Aff. at ¶ 45). The Court properly (there were no possible defenses) approved the acceptance of collateral (EBWLC's interest in Eber-Metro) in full satisfaction of the secured loans. ("State Court Order") (LE Aff. at ¶50).

Plaintiffs filed the first complaint in this action in late 2016. The complaint's fact allegations focused on the State Court Order, and went on to assert various claims arising out of it. (Dckt. No. 1). The defendants included Elliot Gumaer, and the claims asserted against him were for alleged breaches of fiduciary duty as trustee of the Trust and director of Eber companies.

Following extensive discovery, Elliot Gumaer's death, and an intervening Second Amended Complaint, plaintiffs filed a Third Amended Complaint ("TAC"). The TAC is difficult to parse. It consists of 398 separate paragraphs, not counting subparagraphs, ten separate counts, and 30 separate claims for relief none of which are linked to a specific count. Four of the Counts are against the Estate: "Count I – Breach of Fiduciary Duty – Improper Transactions", "Count II – Breach of Fiduciary Duty - Acting As Faithless Servants," "Count

VII Fraudulent Concealment" and "Count IX Accounting". The TAC's Request for Relief sections (q), (t), and (x) and (z) identify four forms of relief sought from the Estate:

> "Disgorgement of all amounts paid to Gumaer by the Trust or any of its controlled entities since the beginning of his disloyalty, which is alleged to have begun in January 2001."

> Punitive damages.

> "To the extent that any cause of action permits a reasonable certain remedy at law, compensatory damages"

> "An accounting from Gumaer's Estate for all transactions with and moneys paid by Lester, Wendy, the Trust, any Eber entity, Slocum of Maine, or any other wine-and-liquor-related entities owned or controlled by Lester or Wendy."

ARGUMENT

I.

THE LEGAL STANDARD FOR SUMMARY JUDGMENT APPLICABLE HERE

Pursuant to Fed. R. Civ. P. 56(c), a district court must grant summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327(1986).

Summary Judgment may be granted upon a showing of lack of factual basis for a claim:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner

6

> provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex Corp. v. Catrett, 477 US 317, 327 (1986)(emphasis supplied). Contention interrogatories are an efficient and effective means of defining the dispositive issues and determining whether a party has sufficient evidence to support a claim. Pasternak v. Kim, 2011 US Dist LEXIS 113998, at *7 (SDNY 2011)("essential purpose of contention interrogatories…to assist parties in narrowing and clarifying the disputed issues' in advance of summary judgment practice or trial."). Summary judgment must be granted where responses to contention interrogatories establish that a claim has not factual basis. Scheiner v. Wallace, 1996 US Dist LEXIS 16315, at *31 (SDNY 1996) (granting summary judgment where response to contention interrogatory established that the facts plaintiff was relying on did not support claim).

II.

THIS COURT LACKS SUBJECT MATTER JURISDICTION
OVER PLAINTIFFS' CORE CLAIMS UNDER THE
ROOKER-FELDMAN DOCTRINE

Federal court subject matter jurisdiction is the non-waivable prerequisite for any federal court action. Where, as here, the court lacks subject matter jurisdiction, the claims must be dismissed.

At its core, this Action is about the State Court Order. Two hundred of the TAC fact allegation paragraphs are devoted to that state court action. (TAC ¶¶ 112, 102-170, 194-225). Plaintiffs, suing derivatively, ask this Court to vacate the State Court Order, and grant "rescission of the Metro Transfer of Eber Metro to Alexbay". They contend they are entitled to that relief because, according to them the New York State court wrongly decided the application for Article 9 relief and the State Court Order was obtained as the result of fraud. See, e.g. TAC ¶¶ 12

(parties "colluding with each other"); ¶ 126 ("critical information was withheld from the court"); ¶ 128 ("lawyers affirmatively misrepresented" facts); ¶ 16 ("fraudulent conveyance").

Plaintiffs could have – indeed should have – made these arguments before the New York State court that issued the order plaintiffs challenge.  Hazel-Atlas Co. v. Hartford-Empire Co., 322 U.S. 238, 246-48, 88 L. Ed. 1250, 64 [**7] ("a claim of fraud against the court must be made in the tribunal allegedly defrauded"); Wagner Spray Tech Corp. v. Wolf, 113 FRD 50, 52 (SDNY 1986))("a claim of fraud against the court must be made in the tribunal allegedly defrauded"); Williams v. Vaughn, 2005 US Dist LEXIS 31743, at *6 (ED Pa 2005, No. 02-1077) ("district court cannot reconsider state court proceedings under Hazel-Atlas, and Williams only asserts that there was fraud upon the state court, Williams's motion is unavailing".)

If plaintiffs have standing to assert the derivative claim they assert here seeking to vacate that State Court Order, they had standing to seek to intervene in the 2012 state court action. They could have pursued an appeal as an aggrieved party pursuant to CPLR 5012, and they could have sought an order nunc pro tunc allowing them to pursue an appeal after the appeal deadline had run. See, e.g., Auerbach v. Bennett, 47 NY2d 619, 631 (1979). Based on the TAC allegations of fraud and newly discovered evidence quoted above, plaintiffs could have sought relief on behalf of the corporation seeking relief from the foreclosure judgment from the New York State court that issued the order pursuant to CPLR 5015 ("Relief From Judgment or Order") or under the court's inherent authority.

Instead of pursuing their state court remedies, plaintiffs elected to come to this court, and ask this Court to vacate the State Court Order. This they cannot do. Under the Rooker-Feldman doctrine, this Court lacks subject matter jurisdiction over the plaintiffs' attack on the order.

The Rooker-Feldman doctrine protects the Supreme Court's exclusive jurisdiction in the federal court system over appeals from state court judgments, and bars lower federal courts from exercising appellate jurisdiction over final state court judgments. Lance v. Dennis, 546 US 459, 463 (2006). Admittedly a narrow doctrine, it is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, (2005).

Rooker-Feldman applies here. Plaintiffs complained of injury – the transfer of Eber Metro – that was caused by the 2012 Foreclosure Judgment, and are seeking this court's review and rejection of that State Court Order. The doctrine has consistently and repeatedly been applied to bar federal district court review of foreclosure judgments issued by state courts – even in the face of fraud allegations. See, e.g., Swiatkowski v. Bank of America, NT & SA, 103 F. App'x 431, 432 (2d Cir. 2004) (affirming district court's "holding that under the Rooker-Feldman doctrine, the [district] court lacked subject matter jurisdiction: even reading the complaint liberally, [plaintiffs'] lawsuit was effectively seeking to re-litigate a judgment of foreclosure entered against them by the state court"); Billie v. Aurigremma, 2013 U.S. Dist. LEXIS 171329 (D.Conn., 2013) ("any claims contesting the validity of the state court foreclosure judgment are precluded by the Rooker-Feldman doctrine"); Aluria v. Jurgelas, 2013 U.S. Dist. LEXIS 73078, (D.Conn., 2013) ("Plaintiff's action invites this court to review and reject the judgment rendered in the foreclosure action prior to plaintiff's commencement of this action;" and "[t]hus, plaintiff['] s challenge to a judgment of foreclosure issued by the state superior court satisfies the Rooker-Feldman factors, and the Court lacks subject matter jurisdiction to resolve plaintiff's request for relief.").

Plaintiffs are likely to contend they were not "state court losers" because they were not parties to the 2012 state court action. That argument fails because plaintiffs seek to reverse the State Court Order on behalf of EBWL. The injury – the loss of Eber-Metro - was suffered by its parent, EBWL, so any claim for damages involving that transfer is a classic derivative (or double derivative) claim. See, e.g., Strougo v. Bassini, 282 F.3d 285 286 ("alleged shareholder injuries deriving from diminution of corporate assets" are "quitessentially remedial by shareholders only through derivative action"); In re Sr. Cottages of Am., 482 F.3d 997, 1002.  Plaintiffs are suing derivatively and not in their own right: "derivative claims against corporate directors belong to the corporation itself." Auerbach v. Bennett, 47 NY2d 619, 631 (1979). As the New York Court of Appeals explained over a century ago:

> Suing as a stockholder the plaintiff's right of action is a derivative one. He sues, not primarily in his own rights, but in right of the corporation. The wrongs of which he complains are wrongs to the corporation. They were not aimed at him and did not involve his personal, individual rights. He suffers as a member of the corporation, and it is the party to sue for and recover damages for the wrongs, or equitable relief against the frauds alleged. The complaint is that all the alleged frauds running through twelve years in the end culminated in final wrong and injury to the corporation, and for relief on account of such wrong and injury a stockholder could only sue in case the corporation upon his demand, or what is equivalent thereto, refused or neglected to sue.
> (*Hawes* v. *Oakland*, 104 U.S. 450.) And in such an action any defense which a defendant would have if the corporation itself were the actual plaintiff, may be interposed to bar the stockholder.

Alexander v. Donohoe, 143 NY 203, 211 (1894). As the US Supreme Court stated: "The claim pressed by the stockholder against directors or third parties 'is not his own but the corporation's'" Ross v. Bernhard, 396 U.S. 531 (1970).

The absence of subject matter jurisdiction does not only apply to plaintiffs' direct challenges to the order, but to all of plaintiffs' claims involving events "intertwined" with the order. As demonstrated by Plaintiffs' Responses to Contention Interrogatories, each of those post

10

foreclosure claims can only be asserted if the foreclosure judgment is vacated; plaintiffs cannot assert any of those post foreclosure claims unless the Eber Metro shares remained the property of EBWLC. Thus in order to succeed on any of those claims, plaintiffs must first have this Court rule that the foreclosure judgment was invalid, and the Eber-Metro shares remain with EBWLC.

Rooker-Feldman bars the Court's exercise of subject matter over plaintiffs' derivative claims involving pre-2012 events as well. In order to have standing to assert a derivative claim, the plaintiffs must have been shareholders at the time of the event giving rise to the claim and throughout the actual litigation. Plaintiffs cannot satisfy the second prong of this requirement for their pre-2012 claims unless this Court vacates the state court foreclosure judgment, which it lacks the subject matter jurisdiction to do.

III.

THE ESTATE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT DISMISSING COUNT I TO THE EXTENT IT IS BASED ON ALLEGED GUMAER SELF-DEALING, CONFLICTS OF INTEREST, USURPING CORPORATE OPPORTUNITIES, OR LESTER'S EXERCISE OF HIS SECURITY RIGHTS IN 2012

Plaintiffs have asserted two Counts expressly designated "Breach of Fiduciary Duty" counts: Count I for "Improper Transactions" and Count II for "Acting as Faithless Servants". While both Counts allege fiduciary duty breaches, Count I specifies that it is for the breach of a fiduciary's "core duty of loyalty". (TAC ¶ 185). It then breaks out the duty of loyalty into three prongs, stating that the duty "precludes self-dealing, conflicts of interest, and usurping corporate opportunities." (Id.).

Nowhere in the TAC is Gumaer alleged to have been involved in self-dealing or usurpation of corporate opportunity. The TAC does allege he had a conflict of interest because he allegedly was Lester's lawyer while also serving as trustee and Eber companies' director.

11

(See, e.g. TAC ¶ 287). That claim is subject to summary judgment dismissal because this Court has found that Gumaer had not represented Lester as an attorney since 2001. (May 13, 2019 Order, Dckt. 216). The Order started by including Lester and Wendy within the defined term "Eber Entities", and after a thorough review of relevant documents and deposition testimony found "Gumaer was not acting as an attorney for the Eber Entities after 2001…." That finding is law of the case and, absent extraordinary circumstances, is not subject to change. Gayle v. Harry's Nurses Registry, Inc., 2012 US Dist LEXIS 28157, at *22, n 13 (EDNY Mar. 1, 2012)("In assessing Plaintiffs' instant motion, the court relies in part on the findings of fact and determinations of law in prior orders, which are the law of the case"); Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F3d 147, 167 (2d Cir 2003)("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

Count I also focuses on Lester's exercise of his security rights in 2012 in connection with his over $3,000,000 in loans. (TAC ¶¶ 194-219). As noted above, Lester's father had foreseen the possible need for such actions, and had expressly provided for them in his will. (LE Aff. Ex. A, Will, Twelfth (H) at p. 16). Because Lester's exercise of the authority provided him by his father in his will does not constitute a wrongful act, see e.g. Carey v. Cunningham, 191 AD2d 336 (1st Dept. 1993), any involvement in that act cannot have breached Gumaer's fiduciary duties. That portion of Count I against the Estate should be dismissed as well.

IV.

THE ESTATE IS ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFFS' "BREACH OF FIDUCIARY- FAITHLESS SERVANT CLAIM"

The Estate is entitled to summary judgment dismissing Count II - "Breach of Fiduciary Duty-Faithless Servant". That Count seeks disgorgement of compensation paid him. (TAC ¶¶ 291-293). The Faithless Servant claim against the Estate is based on Gumaer's alleged representation of Lester as an attorney. (TAC ¶¶ 282-289). As noted above, it is now the law of the case that Gumaer did not represent Lester after 2001. That law of the case finding alone warrants summary judgment dismissing Count II.

The TAC's Request for Relief section (q) seeks disgorgement of all amounts paid Gumaer "since the beginning of his disloyalty, which is alleged to have begun in January 2001." That specific Request for Relief should also be dismissed for the same reason.

Plaintiffs are not entitled to disgorgement under the faithless servant doctrine for two other reasons. First, the faithless servant doctrine does not apply to directors or trustees. Not surprisingly, the doctrine only applies to "servants" – thus its name. Employees are servants; directors and trustees are not. The doctrine is rooted in principles of agency. See, e.g., <u>Phansalkar v. Andersen Weinroth & Co., L.P.</u>, 344 F.3d 184, 200 (2d Cir 2003)) ("Under New York law, an agent is obligated 'to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'"); <u>Feiger v. Iral Jewelry, Ltd.</u>, 41 N.Y.2d 928, 928 (1977) ("One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally entitled to recover his compensation, whether commissions or salary").

While employees are agents, and thus subject to the faithless servant doctrine, trustees and directors are not agents. As the Supreme Court explained over a century ago:

> A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal.

Taylor v. Davis' Adm'x, 110 US 330, 334-335 (1884). Accord Brown v. Bedell, 263 NY 177, 186 (1934) ("A trustee is a principal, not an agent in the management of the trust property."). Similarly, a director is neither a servant nor an agent. Commn. On Ecumenical Mission & Relations of United Presbyt. Church v. Roger Gray, Ltd., 27 N.Y.2d 457, 462 (1971) ("Although an employee is an agent of his employer, a corporate director is not an agent of the corporation. Corporate officer or director is not an "agent" within the meaning of the Statute of Frauds"); NY Dock Co. v. McCollum, 173 Misc. 106, 109 (Sup Ct, Onondaga County 1939) ("In spite of casual language in many opinions, a director of a corporation is not an agent either of the corporation or of its stockholders.").

The difference between a general breach of fiduciary duty claim and a faithless servant claim is important because different measures of damages are recoverable: under a faithless servant claim the plaintiff/principal is usually entitled to recover some portion of compensation paid the employee provided his faithlessness has permeated his performance even where the faithless performance did not cause the employer actual damages. Under a general breach of fiduciary duty claim only actual damages are recoverable. See, e.g., Webb v. Robert Lewis Rosen Assoc., 2003 US Dist LEXIS 23160, at *23 (SDNY 2003) ("However, while a breach of fiduciary duty claim requires a showing of damages, an alternative agency principle, the

14

faithless servant doctrine, provides an additional mechanism for relief, notwithstanding that Webb suffered no damage."); Gibbs v. Breed, Abbott & Morgan, 181 Misc. 2d 346 (Sup. Ct. NY County 1999) (awarding departing law firm partners the compensation owed them by the firm, while awarding firm counterclaim damages against the same departing partners based on the damage they had caused the firm by breaching their fiduciary duty of care.)

Finally, there can be no breach of fiduciary claim – faithless servant or otherwise – based on Gumaer serving simultaneously as trustee and director since those dual roles were expressly authorized by the Will.

V.

### SUMMARY JUDGMENT DISMISSING THE FRAUDULENT CONCEALMENT COUNT AGAINST THE ESTATE IS WARRATED

Plaintiffs' fraudulent concealment claim – Count VII – is a breach of fiduciary duty claim. "In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." Kurtzman v. Bergsten, 40 AD3d 588, 590 (2d Dept 2007). In addition, "the proponent of a claim for a breach of fiduciary duty must, at a minimum, establish that the offending parties' actions were 'a substantial factor' in causing an identifiable loss" Millbank, Tweed, Hadley & McCloy v. Chan Cher Boon, 13 F3d 537, 543 (2d Cir. 1994).

Count VII appears to seek compensatory damages, punitive damages, and equitable relief. The Estate cannot provide equitable relief, and it is entitled to summary judgment dismissing the punitive damages claim against it as shown below. The Estate is entitled to the dismissal of this claim to the extent it seeks compensatory damages with respect to all five concealment incidents identified in plaintiffs' response to the Contention Interogatories. The Estate's Contention Interrogatories Requst No. 1 stated "Identify each act on the part of Gumaer

which you contend …entitles plaintiffs to relief from the Estate….." Although plaintiffs objected to other of the Requests, they answered this Request without any objection. Plaintiffs identified five instances of alleged failure to disclose. The first two acts were failure to disclose that Gumaer was Lester's personal attorney and failure to disclose that Gumaer was Wendy Eber's attorney. (Response No.1 (b) &(c)). As noted above, this Court's Order has already established that Gumaer was not their attorney. Moreover, Contention Interrogatory No. 5 asked plaintiffs to identify the damages they suffered as the result of each act identified in response to Request No. 1 for the alleged failures to disclose Gumaer's alleged – but in fact non-existent - representation of Lester and Wendy, plaintiffs admitted "no direct damages."

Response No. 1 also identified two failures to disclose that the foreclosure had occurred and Eber-Metro was no longer a trust asset. (Response No. 1 (k) & (l)). Essentially, plaintiffs contend they were damaged by the failure to disclose they were damaged, which is not a cognizable damage.

The remaining concealment act identified was the failure to disclose the Alexbay's UCC Article 9 proposal before it occurred. (Response No. 1 (i)).[2] However, in order to prevail on that final contention, the Court must review the New York State proceeding and decide the court order must be vacated, for if the order had been properly granted, whether the plaintiffs had known about the state court proceeding ahead of time would be irrelevant and there could have been no damages from concealment of the action from them. Because under Rooker-Feldman

---

[2] The Response also states that "Gumaer conspired with Lester and Wendy to conceal information from the other Trust beneficiaries". Given that the Request was to identify "each act" by Gumaer that plaintiffs contend entitled them to relief from the Estate, and the "essential purpose" of contention interrogatories is to narrow and clarify the issues in advance of summary judgment, Pasternak v. Kim, 2011 US Dist LEXIS 113998, at *7 (SDNY 2011), this last response should be disregarded.

and principles of preclusion this Court cannot in effect vacate the state court foreclosure judgment, this final prong of plaintiffs concealment claim against the Estate also warrants summary dismissal on Rooker-Feldman grounds.

But all damages claims arising from the 2012 foreclosure, including the alleged concealment of the foreclosure, must be dismissed for an additional reasons. As noted above, the Will expressly authorized the trustees, including Lester, to loan the trust money and take a security interest in trust property in connection with any such loan.

VI.

SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE PUNITIVE DAMAGES AND SURCHARGE CLAIMS AGAINST THE GUMAER ESTATE

In New York State, "there is a strong policy against the assessment of punitive damages against an estate on account of wrongful conduct of the decedent," Flaum v. Birnbaum, 177 A.D.2d 170, 176 (4th Dep't 1992); Gordon v. Nathan, 43 A.D.2d 917 (1st Dep't 1974). Punitive damages in a breach of fiduciary duty action generally are awarded only where the defendant has exhibited a "high degree of moral turpitude." See, e.g. Gibbs v. Breed Abbott & Morgan, 181 Misc. 2d 346 (New York County Supreme County 1999).

Plaintiffs' Responses to the Estates Contention Interrogatories identify the alleged actions and inactions by Elliot Gumaer that plaintiffs claim entitle them to recover "relief" from the Gumaer estate. Those acts generally involve approving corporate transactions plaintiffs complain of, failing to make certain disclosures to plaintiffs, and holding positions with allegedly conflicting loyalties, which the Court has found did not occur. As demonstrated above, those acts did not damage plaintiffs and were not improper. The only evidence of Elliot Gumaer receiving anything of value in connection with his services to the Trust and Eber companies was the

relatively modest $40,000/year he received for a number of years for his combined services as trustee, consultant, and director with that compensation apparently decreasing to $20,000/year starting in or around 2012.

Such allegedly wrongful conduct, even if it did violate Gumaer's duty to the plaintiffs (it did not) does not involve "a high degree of moral turpitude". When combined with the strong New York State policy against awarding punitive damages against an estate, these undisputed facts collectively entitle the estate to summary judgment dismissing the punitive damages claim against it.

## VII.

## THE ESTATE ADOPTS CERTAIN POINTS OF THE EBER DEFENDANTS' MEMORANDUM OF LAW

In an effort to avoid unnecessary duplication of effort, the Estate adopts the following portions of Eber Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment, together with the supporting affidavits, Statement of Undisputed Facts, and relevant portions of the Eber Defendants' Notice of Motion:

> The Eber Defendants are Entitled to Summary Judgment that EBWLC and Metro were jointly and Severally Liable for the Teamsters and EBWLC Pension Liabilities. (Eber Defendants Memorandum of Law ("Mem."), Point I.
>
> Plaintiffs' Attack on Justice Rosenbaum's Order and the Underlying Indebtedness is also barred by Res Judicata. Mem. Point III.
>
> The 2012 Foreclosure Transferred to Alexbay all of EBWLC's Rights in the Capital Stock of Metro in Full Satisfaction of Alex bay's Secured Loans Pursuant to N.Y. U.C.C. §9-620. Mem. Point IV.
>
> Loans Made by Lester Eber to EBWLC and Metro, the Grant and Perfection of an Article 9 Security Interest in the Collateral Securing Such Loans, and the 2012 Foreclosure are not Voidable by Plaintiffs by Virtue of an "No Further Inquiry" Rule Applicable to Lester Eber as a Co-Trustee of the Trust. Mem. Point V.

Lester Eber, as a Co-Trustee, owed No Duty to Inform Trust Beneficiaries of the Proposed 2012 Foreclosure. Mem. Point VI.

Many of Plaintiffs' Other Claims are Time-Barred. Mem. Point IX.

## CONCLUSION

For the reasons set forth above, in the Estate's accompanying submissions, and in the summary judgement submissions of the Eber Co-defendants of today's date, the relief requested herein should be granted in all respects.

Dated: November 8, 2019  
      Rochester, New York

CALIHAN LAW PLLC

/s/ Robert B. Calihan  
Robert B. Calihan  
CALIHAN LAW PLLC  
620 Reynolds Arcade Building  
16 East Main Street  
Rochester, New York 14614  
Tel: (585) 281-2593  
Fax: (866) 533-4206  
rcalihan@calihanlaw.com