# EXHIBIT F

**EBER BROS. WINE & LIQUOR CORPORATION**
**155 Paragon Drive**
**Rochester, New York 14624**

July 5, 2007

Mr. Wayne Chaplin
Southern Wine & Spirits of America, Inc.
1600 NW 163rd Street
Miami, FL 33169

Re:   PW&S, LLC (d/b/a Postiy Wine & Spirits) and Delaware Importers, LLC

Dear Mr. Chaplin:

This letter will summarize our telephone conversations regarding the acquisition of PW&S, LLC ("Postiy") and Delaware Importers, LLC by Southern Wine & Spirits of America, Inc. ("SWS") or one of its affiliated entities.  Specifically, the parties agree as follows:

1.   Simultaneously with the execution of this letter, SWS will grant a limited guaranty to General Transportation Services, Inc. ("GTS") in accordance with the terms and conditions of the guaranty agreement annexed hereto (the "Guaranty").  The guaranty will be limited to $1.5 million and can be terminated at any time by either SWS or Eber Bros. Wine & Liquor Corporation ("EBWLC") by the delivery of $1.5 million to legal counsel for GTS, which sum will be held in escrow by said counsel.

   The parties hereto hereby acknowledge and agree that, to the extent SWS pays GTS any monies under the Guaranty, whether due to a claim made by GTS under the Guaranty or the placement of funds into escrow by SWS in accordance with the terms and conditions of said Guaranty, all amounts so paid by SWS shall be repaid to SWS by EBWLC and/or Eber Acquisition.  In connection therewith, the amounts due EBWLC and/or Eber Acquisition under any paragraph of this letter agreement shall be reduced on a dollar-for-dollar basis until all such sums have been repaid to SWS.

2.   EBWLC hereby grants SWS an option (the "Postiy Call Option") to purchase all of the assets of  Postiy (it being acknowledged and agreed that SWS shall assume no liabilities of Postiy other than the assumption of the office lease currently used in the operations of the Postiy business and the assumption of the employment agreement with Donald E. Postiy, which employment agreement terminates on December 31, 2007).

EB-00000008

Mr. Wayne Chaplin
July 5, 2007
Page 2

EBWLC hereby represents and warrants that, except for the obligations due Donald E. Postiy under the above-referenced employment agreement, no other sums are due Donald E. Postiy by Postiy.

In the event that SWS desires to exercise the Postiy Call Option, it shall give written notice thereof to EBWLC on or before July 30, 2007. In the event that the Postiy Call Option is exercised, the exercise price (all of which shall be due and payable at the closing) shall be an amount equal to two (2) times the commission revenue of Postiy for the trailing twelve month period ended June 30, 2007. So as to avoid any confusion or doubt, (i) the commission revenue will be decreased by the amount of commission received during said twelve (12) month period from suppliers that have terminated their relationship with Postiy on or before the closing date, (ii) the commission revenue to be included in the purchase price calculation shall be limited to commissions earned based on the number of cases of product sold, and (iii) the commission revenue will include that portion of total revenue characterized on the Income Statement of Postiy as "Revenue- Misc." to the extent that EBWLC can verify to the reasonable satisfaction of SWS that such revenue is actual revenue and not simply a reimbursement of expenses. In any event, in the event that SWS exercises the Postiy Call Option, the transaction shall be consummated in accordance with the terms and conditions of a purchase agreement to be agreed upon by the parties, and each of the parties hereto will use their respective best efforts to consummate the transaction on or before July 31, 2007.

3.   In addition to the foregoing, on or before July 31, 2007, SWS agrees to (i) pay EBWLC and/or Eber Bros. Acquisition Corp., a New York corporation and wholly-owned subsidiary of EBWLC ("Eber Acquisition"), an amount equal to $8.0 million, (ii) enter into a five (5) year consulting agreement with Lester Eber pursuant to which Mr. Eber will perform certain consulting services for Southern Wine & Spirits of Upstate New York, Inc. in exchange for a payment of $600,000 per year, and (iii) loan EBWLC an amount equal to $3.0 million (the "Loan"). The Loan will accrue interest at the prime rate as published in *The Wall Street Journal*, will be due and payable on December 31, 2007; provided, however, that all amounts due under the Loan will be accelerated and due and payable upon receipt by EBWLC or any of its affiliates of the proceeds from the first to occur of (aa) the sale of Eber Acquisition's fifty percent (50%) interest in Delaware Importers, LLC, and (bb) the sale of any ownership interest and/or sale of all or substantially all of the assets of Eber-Connecticut, LLC or Eber-Rhode Island, LLC, and will be collateralized by a pledge of all of Eber Acquisition's rights to the profits and/or other distributions of Delaware Importers, LLC. In connection with the foregoing, Eber Acquisition and EBWLC hereby represent and warrant that Eber Acquisition owns a fifty percent (50%) interest in Delaware Importers,

134782 871517.4

Mr. Wayne Chaplin
July 5, 2007
Page 3

LLC, and that the foregoing pledge represents a pledge of all profits and/or
distributions resulting from its ownership of said fifty percent (50%) interest.

At the closing of the transactions described in the preceding paragraph, (i) Eber
Acquisition shall assign its "ROED Call Option," as defined below, to SWS, (ii)
Eber Acquisition will grant SWS an option (the "Delaware Call Option") to
purchase the fifty percent (50%) interest of Delaware Importers, LLC owned by
Eber Acquisition on the terms and conditions described in paragraph 4 below, (iii)
Eber Bros. Wine & Liquor Metro, Inc. ('Eber Metro") will grant SWS a right of
first refusal with respect to the sale of any equity interest in, or the sale of all or
substantially all of the assets of, Eber-Connecticut, LLC and/or Eber-Rhode
Island, LLC in each of Eber-Connecticut, LLC and Eber-Rhode Island, LLC in
accordance with the terms and conditions described in paragraph 5 below, (iv) the
parties shall execute and file a joint stipulation of dismissal with prejudice
regarding the litigation between the parties currently pending in the Supreme
Court of New York, County of Monroe (the "Litigation"), and (vi) in connection
with the dismissal of the Litigation, each of the parties, and Mr. Eber individually,
shall execute general releases in favor of the other, and all related entities and
individuals named as parties in the litigation (to the extend said individuals also
execute a general release in favor of EBWLC and Mr. Eber) for all matters, only
excluding the obligations relating to the transactions contemplated under this
letter. For purposes of this letter agreement, the term "ROED Call Option" means
the option  previously granted to Eber Acquisition enabling it to acquire the fifty
percent (50%) ownership interest in Delaware Importers, LLC owned by ROED
Transition Company, Inc. in accordance with the terms and conditions of that
certain Amended and Restated Purchase Agreement, dated as of August 26, 2002,
and that certain Amended and Restated Limited Liability Company Agreement of
Delaware Importers, LLC.  A copy of the Purchase Agreement and the Limited
Liability Company Agreement are annexed hereto as Exhibit B and Exhibit C,
respectively.

4.      The terms of the Delaware Call Option would be as follows.  In the event that
        SWS desires to exercise the Delaware Call Option, it shall give written notice
        thereof to Eber Acquisition on or before August 31, 2007.  In the event that the
        Delaware Call Option is exercised, the exercise price (all of which shall be due
        and payable at the closing) shall be an amount equal to (a) fifty percent (50%) of
        the sum of (i) two (2) times the gross profit of Delaware Importers, LLC relating
        to all product of "Current Suppliers," as defined below, distributed by Delaware
        Importers, LLC during the twelve (12) month period ending on the last day of the
        month that is two (2) months immediately preceding the closing date, and (ii) the
        net tangible asset value (including cash, cash equivalents and accounts receivable)
        of Delaware Importers, LLC as of the last day of the month that is two (2) months

EB-00000010

Mr. Wayne Chaplin
July 5, 2007
Page 4

immediately preceding the closing date, <u>minus</u> (b) $4.0 million.  So as to avoid
any confusion or doubt, any amounts due and owing ROED Transition Company,
Inc. in connection with the exercise of the ROED Call Option (or the exercise by
ROED Transition Company, Inc. of the exercise of its "put" option) shall not be
included in the calculation of the net tangible asset value of Delaware Importers,
LLC. In the event that the Delaware Call Option is exercised, the transaction will
be consummated pursuant to the terms and conditions of an agreement to be
agreed upon by the parties and the closing would occur within five (5) business
days after all regulatory approvals are obtained. Each of the parties agree to use
their respective best efforts to provide all information needed to obtain regulatory
approval and, if at all possible, to consummate the transaction on or before
September 30, 2007. In the event that SWS does not elect to exercise the
Delaware Call Option on or before August 31, 2007, the option shall terminate
and be of no further force of effect; provided, however, that in such an event, (a)
Eber Acquisition would grant SWS an option to purchase its remaining interest in
Delaware Importers, LLC at any time after January 1, 2010 for an amount (the
"Subsequent Exercise Price") equal to fifty percent (50%) of the sum of (i) two
(2) times the gross profit of Delaware Importers, LLC relating to all product of
Current Suppliers distributed by Delaware Importers, LLC during the twelve (12)
month period ending on the last day of the month that is two (2) months
immediately preceding the closing of the transaction contemplated by the exercise
of said option by SWS and (ii) the net tangible asset value (including cash, cash
equivalents and accounts receivable) of the Delaware Importers, LLC as of the
last day of the month that is two (2) months immediately preceding said closing
date, and (b) SWS would grant Eber Acquisition an option to sell its remaining
interest in Delaware Importers, LLC to SWS at any time after January 1, 2010 for
an amount equal to the Subsequent Exercise Price. In either event, all of the
Subsequent Purchase Price would be due and payable at the closing.

For purposes of this letter, the term "Current Suppliers" shall mean those
suppliers that have not terminated their relationship with Delaware Importers,
LLC as of the closing date in question.

In connection with the foregoing, EBWLC and Eber Acquisition hereby represent
and warrant that, (i) other than amounts due ROED Transition Company, Inc. in
connection with the exercise of the ROED Call Option (or the exercise by ROED
Transition Company, Inc. of its "put" option), (ii) no other amounts will be due
and owing ROED Transition Company, Inc. by SWS relating to the ownership
interests of ROED Transition Company, Inc. in Delaware Importers, LLC, and
(iii) upon the termination of the employment agreements (which, by their
respective terms, will occur on the closing of the transactions contemplated by the
exercise of the ROED Call Option) between Delaware Importers, LLC and each

Mr. Wayne Chaplin
July 5, 2007
Page 5

of Roger B. Hart and Edward J. Stegemeier, respectively, no additional amounts will be due and owing either of them.

The parties hereto hereby acknowledge and agree that, upon exercise of the ROED Call Option, SWS will control the day-to-day operations and management of Delaware Importers, LLC.

5.   The parties agree that all amounts paid to EBWLC, Eber Acquisition or Eber Metro in connection with the transactions described above will, after the placement of $1.5 million in escrow in accordance with the provisions of paragraph 1 above, be used to satisfy the account payable obligations owed by EBWLC and Eber-Metro, LLC to those former suppliers of EBWLC and/or Eber-Metro, LLC.

6.   In recognition of the time, expense and effort to be incurred by SWS and pursuant to the transactions contemplated hereby, (i) EBWLC agrees on behalf of EBWLC and its affiliates that, for so long as SWS has any rights under the Postiy Call Option, EBWLC and its stockholders, members, directors, officers, employees, representatives or agents will not, directly or indirectly, initiate, solicit, negotiate, accept or discuss with any third party any inquiry, proposal or offer relating to an investment in or a purchase of the assets of Postiy or the purchase of the ownership interests of Postiy, and (ii) EBWLC agrees on behalf of EBWLC and its affiliates that, for so long as SWS has any rights under the Delaware Call Option, EBWLC and its stockholders, members, directors, officers, employees, representatives or agents will not, directly or indirectly, initiate, solicit, negotiate, accept or discuss with any third party any inquiry, proposal or offer relating to an investment in or a purchase of the assets of Delaware Importers, LLC or the purchase of the ownership interests of Delaware Importers, LLC.

7.   The terms and conditions of this letter, including its existence, will remain confidential, subject to the Confidentiality Agreement, dated effective October 26, 2006.  Additionally, neither EBWLC, any of its affiliates, nor SWS or any of its affiliates, will disclose to anyone (other than their respective attorneys, accountants, financial institutions and suppliers) their negotiations or any information concerning the contemplated transaction until agreed to by SWS.

8.   Any and all controversies arising out of or relating to this letter agreement shall be resolved by final and binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association for complex cases, and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof.  Notwithstanding anything to the contrary, the Commercial Arbitration Rules shall be modified as follows:

EB-00000012

Mr. Wayne Chaplin
July 5, 2007
Page 6

    (a)    The place of hearing shall be Syracuse, New York.

    (b)    The arbitration shall be before a panel of three (3) arbitrators.  EBWLC on the one hand, and SWS on the other hand, shall each select one (1) arbitrator.  The two (2) arbitrators then selected, shall select the third (3rd) arbitrator.

    (c)    The Arbitrators shall be governed by the laws of the State of New York.

    (d)    The Arbitrators' award shall be made within thirty (30) days after the hearing.

    (e)    No party shall waive the right to arbitration.

    (f)    The Arbitrators shall award all costs and attorneys' fees to the prevailing party, including reimbursement of the Arbitrators' fees.

    (g)    The parties intend to resolve all of their disputes as expeditiously as possible in a single, binding arbitration.  Thus, if a dispute arises over this letter agreement at the same time that there is a pending issue arising out of or related to any related document, the Arbitrators shall endeavor to consolidate all disputes into a single arbitration proceeding, unless the posture of the proceedings would make consolidation a manifest waste of party resources or would impose an undue hardship on one of the parties.

9.    The terms and conditions set forth in this letter agreement, except to the extent expressly set forth herein, shall be binding on each of the parties hereto, their successors and/or assigns.

10.    EBWLC agrees to cooperate, and to cause its subsidiaries to cooperate, and to take all steps necessary to cause Delaware Importers, LLC (and any other limited liability company that SWS acquires an interest in in accordance with the transactions contemplated hereunder) to make an election under Section 754 of the Internal Revenue Code of 1986, as amended (or similar election) so as to enable SWS to obtain a stepped up basis for tax purposes.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

EB-00000013

Mr. Wayne Chaplin
July 5, 2007
Page 7

If you are in agreement with the terms and conditions set forth in this letter, please evidence your agreement by signing this letter in the space provided below.

Sincerely,

Lester Eber
President

Accepted and agreed to this ___ day of July, 2007.

SOUTHERN WINE & SPIRITS OF AMERICA, INC.

By: _____
     Wayne Chaplin, President and Chief Operating Officer

EB-00000014

Mr. Wayne Chaplin
July 5, 2007
Page 7

If you are in agreement with the terms and conditions set forth in this letter, please evidence your
agreement by signing this letter in the space provided below.

Sincerely,

Lester Eber
President

Accepted and agreed to this $5$ day of July, 2007.

SOUTHERN WINE & SPIRITS OF AMERICA, INC.

By: ~~Wayne Chaplin, President and Chief Operating Officer~~

Lee F. Hager  EVP, Secty CAO