# EXHIBIT G

## CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is made and entered into effective the 30th day of August, 2007 ("Effective Date"), by and between Southern Wine & Spirits of Upstate New York, Inc., a New York corporation (the "Company") and Lester Eber (the "Consultant").

### WITNESSETH:

Whereas, Consultant possesses extensive knowledge and experience regarding the alcoholic beverage markets in the state of New York;

Whereas, the Company believes that Consultant's business advice will be extremely beneficial to the Company; and

Whereas, Consultant agrees to render services to Company, upon the terms and conditions hereafter stated.

Now, therefore, in consideration of the covenants and agreements herein made, the parties agree as follows:

1.  <u>Recitals</u>.  The above recitals are incorporated by reference herein and made a part hereof as if set forth verbatim.

2.  <u>Term</u>.  Subject to the provisions of Section 8 below, this Agreement shall be for a term of five (5) years, commencing on the Effective Date and ending August 29, 2012 (the "Term").

3.  <u>Duties</u>.

    (a)  Consultant agrees to consult with Company, on an as-needed basis for up to forty (40) hours per week, in connection with the alcoholic beverage industry in the State of New York, including but not limited to, providing strategic advice relating to the areas of developing and maintaining legislative relationships, insurance, supplier relationships, retailer relationships, and operational issues. Consultant shall have the title of "Senior Vice President – New York". In addition, if requested by Company, Consultant shall perform consulting services for Company's affiliates in the States of Ohio and Delaware on terms to be agreed upon.

    (b)  Consultant shall report to the General Manager of Southern Wine & Spirits of New York, Inc. on daily matters.  Further, Consultant shall be subject to the direction of the Chairman and President of Southern Wine & Spirits of America, Inc.

    (c)  Company shall have the right to reduce or entirely eliminate Consultant's duties hereunder so long as full payment is made pursuant to this Agreement.

(d) Company shall make an office available for Consultant in Company's Syracuse, New York location.

4. <u>Consulting Fee</u>.

(a) Consultant shall receive an annual fee of Six Hundred Thousand ($600,000) Dollars ("Consulting Fee") as the total compensation for Consultant's services hereunder. The Consulting Fee shall be paid over equal monthly installments of Fifty Thousand ($50,000) Dollars beginning on the Effective Date.

(b) In addition, from time to time, Company may pay a discretionary bonus to Consultant for extraordinary services, as determined in the sole discretion of Company.

5. <u>Independent Contractor: No Employee Benefits</u>.

(a) Consultant understands that as a result of providing consulting services, he will not be entitled to any benefits ordinarily payable to Company's employees, including, but not limited to, health insurance, life insurance and/or pension benefits. Consultant acknowledges that he is an independent contractor. Additionally, Consultant further acknowledges that he will pay ordinary income taxes due on the consulting fee, and will indemnify Company in the event that any payroll taxes are assessed against the Company in connection with the consulting fee.

(b) Consultant shall not be entitled to reimbursement of expenses in connection with his performance of this Agreement. Notwithstanding the foregoing, in the event that Company requests Consultant to take any action that would require Consultant to incur out-of-pocket expenses, Consultant shall notify Company in advance and Company shall arrange for the payment of such expenses to be made directly by Company.

6. <u>Restrictive Covenant</u>.

(a) Consultant agrees that, except as otherwise provided for in this Section 6, during the Term and for five (5) years thereafter, Consultant will not engage or participate, directly or indirectly, either as a principal, agent, employer, employee, consultant, stockholder (except for companies whose stock is publicly traded, in which Consultant does not own more than two percent of the outstanding stock), co-partner, co-venturer, member, officer, independent contractor, director or trustee of any person, partnership, entity, firm or corporation or in any other capacity whatsoever, in any Restricted Business Activity (as defined below) in any state where Southern Wine & Spirits of America, Inc., a Florida corporation, or any of its subsidiaries and/or affiliates (collectively with Company referred to as "Southern") conduct business ("Territory").

EB-00000703

The term "Restricted Business Activity" means:

(i) to engage in the business of, or acquire or own, manage, cooperate, finance, join, control or participate in the acquisition or ownership, management, operation, financing or control of, or be connected in any way in the wholesale sale, merchandising, brokerage, delivery and/or distribution of alcoholic beverages (including but not limited to wine, spirits and beer) and non-alcoholic beverages in the Territory (the "Business");

(ii) to consult with, advise or assist in any way which is competitive or adverse to Southern, whether or not for consideration, any person which is in any aspect of the Business, including, but not limited to, soliciting customers or otherwise serving as an intermediary for any such competitor and loaning money or rendering any other form of financial assistance to or engaging in any similar form of business transaction with any such competitor;

(iii) directly or indirectly, either alone or in cooperation with others, attempting to solicit, encourage or induce or solicit, encourage or induce Southern's vendors, suppliers or customers to terminate, curtail or restrict their relationship with Southern, in any way interfere with the relationship of Southern and its vendors, suppliers or customers, or attempt to provide the types of services or similar products offered by Southern to those of its customers;

(iv) directly or indirectly, either alone or in cooperation with others, attempt to hire, solicit or engage or hire, solicit or engage any person employed or contracted by Southern, to leave his or her employment or discontinue his or her engagement with Southern, whether or not the employment or contracting is full time or temporary, pursuant to a written or oral agreement, or for a determined period or at will;

(v) have any business relationship, in any capacity whatsoever that would interfere with, diminish or impair the valuable relationships that Southern has with any entity or otherwise take any action that would interfere with, diminish or impair the valuable relationships that Southern has with any entity; or

(vi) otherwise divert or attempt to divert from Southern any Business or Business opportunity whatsoever.

Notwithstanding the preceding, "Restricted Business Activity" shall not include: (i) any actions taken by Consultant in accordance with his duties under this Agreement; (ii) Consultant's continued direct or indirect ownership in Eber-Connecticut, LLC, Eber-Rhode Island, LLC, and/or Delaware Importers, LLC in each case only to the extent that such entities do not participate in the Business in the Territory; (iii) Consultant's participation in the continued wind-down and liquidation of Eber Bros. Wine & Liquor Corporation's operations in the State of New York, (iv) Consultant's participation in the continued wind-down and liquidation of Eber-Metro, LLC, (v) during the Term, Consultant's participation as

a "Passive Investor" in any import company and/or entity that is a supplier of wine or spirits to Southern, so long as such involvement does not materially interfere with Consultant's obligations under this Agreement, or (vi) during the five (5) year period after the Term, Consultant's involvement in any import company and/or entity that is a supplier of wine or spirits to Southern. For purposes of this Agreement, Consultant shall be deemed a "Passive Investor" with respect to any investment which (i) if in a publicly-held company, results in Consultant owning no more than 2% of the issued and outstanding capital stock of said entity, and (ii) if in a privately held entity, Consultant has no right to become a director of said entity and has no control, whether contractual or otherwise, in the day-to-day operations or strategic planning of said entity. In addition to the foregoing and in addition to any other remedies that Consultant may possess, in the event that Company, prior to a termination of the Agreement pursuant to Section 8 (a), (b) or (c), fails to make payment of any installment of the Consulting Fee under Section 4(a), and such failure is not cured within ten (10) days of written notice thereof, the covenants and restrictions imposed upon Consultant under this Section 6 shall terminate and be of no further force or affect whatsoever.

Notwithstanding anything herein to the contrary, the "Territory" shall include: (i) the State of Delaware; (ii) all other States where Southern currently conducts Business; and (iii) and any other State where Southern conducts Business after the date of this Agreement. In the event that Consultant is not in breach of this Agreement, clause (iii) of the previous sentence shall not apply if Consultant is engaged in the Business in such State after the date of this Agreement but prior to Southern conducting Business in such State.

(b) <u>Consideration for the Restrictive Covenant</u>. Consultant acknowledges that the payment hereunder for his services as a consultant shall be adequate consideration for his entering into this restrictive covenant.

(c) <u>Reformation by Court</u>. In the event that a Court of competent jurisdiction shall determine that any provision of this Agreement is invalid or more restrictive than permitted under the governing law of such jurisdiction, then such provision shall be interpreted and enforced as if it provided for the maximum restriction permitted under such governing law, and the provision, as determined by such Court, shall be incorporated herein by reference and treated as being a part of the restrictive covenant agreed to between the parties.

(d) <u>Acknowledgment that the Restrictions are Reasonable</u>. Consultant acknowledges that the restrictions contained herein are reasonable, and are reasonably related to the legitimate business interests of Southern.

(e) <u>Injunction</u>. Consultant recognizes that a breach of the covenants contained in this Section 6 will cause irreparable injury and damage to Southern, the monetary amount of which may be virtually impossible to ascertain. As a result, Consultant hereby acknowledges that Southern shall be entitled, without the necessity of proof of actual damages or inadequacy of legal remedy, to a temporary or permanent injunction from any court of competent jurisdiction enjoining and restraining any violation of any or all of the

EB-00000705

covenants contained in this Section 6 by Consultant, either directly or indirectly, and that such right to an injunction shall be cumulative, and is in addition to other remedies Southern may possess.

Notwithstanding the preceding, in the event of any breach or violation by Consultant of any of the provisions of this Section 6, the running of the time period described in subsection (a) above (but not the obligations under this Agreement) shall be tolled during the continuation of any breach or violation.

(f)   Independent Representation. Consultant represents and warrants that he has received representation from independent counsel prior to entering into this Agreement.

7.   Confidentiality. For purposes of this Section 7, the term "Southern" shall not include Eber-Connecticut, LLC or Eber-Rhode Island, LLC.

(a)   Confidential Information. Consultant acknowledges that as a result of his affiliation with Southern, he has and will become informed of, and have access to, certain information which Southern deems valuable and confidential, including without limitation, the identity of clients or customers or identified potential clients or customers of Southern; Southern's financial information, methods of doing business, trade secrets, plans, pricing, contracts, agreements, licenses, descriptive materials describing the methods and procedures employed by Southern in the conduct of its business, information regarding Southern's management information systems, personnel information, computer records, written, typed or printed lists and other materials (collectively, "Confidential Information"). The term "lists" or its equivalent as used herein are not limited to a physical writing or compilation but also include any and all information whatsoever regarding the subject matter of the "list" whether or not such compilation has been reduced to writing. Consultant further agrees that even if such information is developed, contributed or acquired in whole or part by him, it is Southern's exclusive property to be held in trust by him for the sole benefit of Southern. Furthermore, except as required by law, or reasonably required in order for Consultant to perform his duties on behalf of Southern so long as such disclosure is not to the detriment of Southern, Consultant shall not at any time, use, reveal, report, publish, copy, transcribe, transfer or disclose to any person, corporation, or other entity, any of the Confidential Information without the prior written consent of Southern, except for information which legally and legitimately is or becomes available in the public domain. Consultant's obligations pursuant to this Section 7(a) shall survive the Term indefinitely.

(b)   Return of Confidential Information. Upon either the termination of this Agreement or the earlier request of Southern, Consultant shall promptly deliver to Southern, all Southern property and possessions, including but not limited to, any sales material, manuals, letters, notes, notebooks, reports, copies, sales reports, printouts, Confidential Information, and all other materials relating to Southern's business which are in Consultant's possession or control.

8. <u>Termination</u>. This Agreement may be terminated:

(a) By the mutual agreement of both parties;

(b) In the event Consultant dies or becomes disabled to the point of being unable to perform his duties for a period of at least 120 consecutive days;

(c) At the sole option of Company for "Cause". "Cause" shall mean: (i) the Consultant having been convicted of, or pleading guilty or nolo contendere to a felony; (ii) engaging in criminal or unethical conduct that in the reasonable judgment of Company may have a material adverse effect on Company's operations, its ability to conduct its business or its ability to maintain its licenses issued by regulatory authorities; (iii) in the event Consultant breaches any of the provisions of Sections 6 or 7 above; or (iv) in the event Consultant breaches any other material provision of this Agreement and such breach continues for more than ten (10) days following written notice to Consultant from Company of such breach.

If this Agreement is terminated as described in this Section 8, Consultant shall only be entitled to the pro-rata payment of the Consulting Fee described in Section 4 above, through the date of such termination. If this Agreement is terminated by Company for any reason other than death, disability (as defined above) or "Cause," Consultant shall continue to receive, and Company shall continue to pay the Consulting Fee due and owing hereunder for the remainder of the Term.

9. <u>Intentionally Omitted</u>.

10. <u>Representations and Warranties</u>. Consultant represents and warrants to Company that he is not under any contractual restrictions or other restrictions or obligations that are inconsistent with the execution of this Agreement, performance of his duties and the covenants hereunder, or the rights of Company pursuant to this Agreement.

11. <u>Notice</u>. All notices under this Agreement shall be in writing and shall be given by personal delivery, or by registered or certified United States mail, postage prepaid, return receipt requested, to the addresses set forth below:

To Company:

Wayne E. Chaplin
President and Chief Operating Officer
Southern Wine & Spirits of Upstate New York, Inc.
1600 N.W. 163 Street
Miami, Florida 33169

EB-00000707

With a copy to:

Robert G. Breier, Esq.
Breier, Seif, Herman & Silverman, P.A.
3000 Ponce de Leon Boulevard, Suite 1125
Coral Gables, Florida 33134

To Consultant:

Lester Eber
15 Coral Way
Rochester, New York 14618

With a copy to:

Patrick J. Dalton, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, New York 14534

or to such other person or persons or such other address or addresses as Consultant and Company, or their respective successors or assigns, may hereafter furnish to the other by notice similarly given. Notices, if personally delivered, shall be deemed to have been received on the date of delivery, and if given by registered or certified mail, shall be deemed to have been received on the fifth business day after mailing.

12. <u>Waiver</u>. The waiver by Company of a breach of any provisions of this Agreement by Consultant shall not operate or be construed as a waiver of any subsequent breach by Consultant.

13. <u>Assignment</u>. An assignment to an entity in which Company has a majority ownership interest is expressly permitted, and Consultant agrees to be bound by the terms of this Agreement following any such assignment, provided it does not materially change the extent or nature of the services provided by Consultant. No such assignment shall relieve Company of its obligations hereunder. With the exception of an assignment permitted in accordance with the preceding sentence, this Agreement is personal and may not be assigned or delegated by either party without first obtaining the written consent of the other. Notwithstanding any provision to the contrary set forth herein, all of the obligations of Company hereunder shall be guaranteed by Southern Wine & Spirits of America, Inc.

14. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors and permitted assigns. Notwithstanding the preceding to the contrary, this Section shall not be construed to provide for any assignment that is prohibited by Section 13 above. The parties agree that the remedy at law for any actual or threatened breach of this Agreement by either would be inadequate

EB-00000708

and that both shall be entitled to specific performance hereof or injunctive relief, or both, by temporary or permanent injunction or other appropriate judicial remedy, writ or order, in addition to any damages which both parties may legally be entitled to recover.

15. **Amendments**. No amendments or additions to this Agreement shall be binding unless in writing and signed by both parties.

16. **Applicable Law**. This Agreement shall be construed and enforced in accordance with the local laws of the State of New York. With respect to any matter, hereunder which may be instituted in federal or state courts, the parties hereto consent to and submit to the jurisdiction of the federal and state courts located in the State of New York, and agree that any such action or suit shall be brought by the parties in any federal or state court established or sitting in Onondaga County, New York. The parties shall not raise in connection therewith and hereby waive any defenses based upon the venue, the inconvenience of the forum, the lack of personal jurisdiction, or the like in any such action or suit brought in the State of New York.

17. **Headings**. The section headings used in this Agreement are included solely for convenience and shall not affect, nor be used in connection with, the interpretation of this Agreement.

18. **Severability**. The invalidity of any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Agreement shall not affect the enforceability of the remaining portions of this Agreement or any part thereof, all of which are inserted conditionally on their being valid in law, and, in the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Agreement shall be declared invalid by a court of competent jurisdiction, then, except to the extent that Section 6(c) hereof provides otherwise, this Agreement shall be construed as if such invalid word or words, phrase or phrases, sentence or sentences, clause or clauses, section or sections, or subsection or subsections, had not been inserted.

19. **Costs and Attorney's Fees**. The parties agree that in the event it becomes necessary for any party to institute litigation or to obtain the services of an attorney in order to enforce its rights under the terms of this Agreement, then, in that event, the prevailing party, as determined by an arbitrator or a court of competent jurisdiction, shall be entitled to recover reasonable attorney's fees expended and the costs of such litigation, including appellate litigation, from the non-prevailing party.

20. **Counterparts**. This Agreement may be executed in one or more counterparts, all of which taken together, shall constitute one and the same Agreement. Faxed signatures shall be deemed an original for purposes of the Agreement.

21 **Construction**. For purposes of this Agreement, no party shall be construed as the drafter of this Agreement. The parties expressly agree that the language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their

EB-00000709

mutual intent, and no provision of this Agreement should be construed against or interpreted to the advantage of any party hereto by any judicial authority or arbitrator by reason of such party having been deemed to have structured or dictated such provision.

22. <u>Entire Agreement</u>. This Agreement contains the entire agreement of the parties relating to Consultant's relationship with the Company for the Term.

In Witness Whereof, the parties hereto have executed this Agreement effective as of the date and year first written above.

**COMPANY:**

SOUTHERN WINE & SPIRITS OF UPSTATE NEW YORK, INC.

By: _____
Its: _____

**CONSULTANT:**

_____
LESTER EBER

The undersigned hereby guarantees each and every obligation of Southern Wine & Spirits of Upstate New York, Inc. ("Company") under the Consulting Agreement, made and entered into effective August 30, 2007, by and between Company and Lester Eber.

SOUTHERN WINE & SPIRITS OF AMERICA, INC.

By: _____
Its: _____

EB-00000710

mutual intent, and no provision of this Agreement should be construed against or interpreted to the advantage of any party hereto by any judicial authority or arbitrator by reason of such party having been deemed to have structured or dictated such provision.

22. · Entire Agreement. This Agreement contains the entire agreement of the parties relating to Consultant's relationship with the Company for the Term.

In Witness Whereof, the parties hereto have executed this Agreement effective as of the date and year first written above.
COMPANY:

SOUTHERN WINE & SPIRITS OF UPSTATE NEW YORK, INC.

By: _____
Its: _____


CONSULTANT: *Lester Eber* (signature)
_____
LESTER EBER



The undersigned hereby guarantees each and every obligation of Southern Wine & Spirits of Upstate New York, Inc. ("Company") under the Consulting Agreement, made and entered into effective August 24, 2007, by and between Company and Lester Eber.

SOUTHERN WINE & SPIRITS OF AMERICA, INC.

By: _____

Its: _____

EB-00000711