# EXHIBIT B

EBER BROS. WINE & LIQUOR CORP.

RETIREMENT PLAN

EBER BROS. WINE & LIQUOR CORP., a New York corporation (the "Employer"), hereby continues, amends and restates in its entirety the EBER BROS. WINE & LIQUOR CORP. RETIREMENT PLAN (the "Plan") for the exclusive benefit of its Employees who are eligible to become Participants. By separate agreement with M & T Bank, as Trustee, the Employer has established a Trust to hold the assets of the Plan.

Restated as of June 1, 1994

EB-00035997

Table of Contents

|  |  | Page |
|---|---|---|
| ARTICLE I | – Introduction | 1 |
| ARTICLE II | – Definitions | 2 |
| ARTICLE III | – Participation and Service | 11 |
| ARTICLE IV | – Benefit Formula | 14 |
| ARTICLE V | – Retirement Income Benefits | 16 |
| ARTICLE VI | – Form of Benefit Payments | 23 |
| ARTICLE VII | – Death Benefits | 29 |
| ARTICLE VIII | – Employer Contributions | 31 |
| ARTICLE IX | – Trust Fund | 32 |
| ARTICLE X | – Administrative Committee and Other Fiduciaries | 33 |
| ARTICLE XI | – Amendments | 37 |
| ARTICLE XII | – Successor Employer and Merger or Consolidation of Plans | 38 |
| ARTICLE XIII | – Plan Termination | 40 |
| ARTICLE XIV | – Treasury Department Limitation on Benefits | 41 |
| ARTICLE XV | – Top-Heavy Provisions | 43 |
| ARTICLE XVI | – Miscellaneous | 47 |

EB-00035998

ARTICLE I

Introduction

The name of this Plan is the Eber Bros. Wine & Liquor Corp. Retirement Plan. Its purpose is to provide retirement benefits to the eligible Employees of Eber Bros. Wine & Liquor Corp., Rochester Liquor Corporation, Eber Bros. Wine & Liquor Syracuse, Inc., formerly M. Lichtman & Co., Inc., Eber Bros. Wine & Liquor Corp., Albany Division, formerly Graves & Rodgers and Monroe Display Company.

This Plan was originally established effective as of April 1, 1954. Because of the enactment of the Tax Reform Act of 1986 and other developments since the Plan was last restated, the Plan is amended and restated in its entirety, effective June 1, 1989, except in the case of any provision which itself contains a separate effective date. Effective as of June 1, 1988, salespeople at Rochester Liquor Corporation became eligible and their former plan with the Retail Clerks Union was merged into this Plan. Effective January 1, 1988, Employee contributions were discontinued and refunded. The effective date of this amendment is June 1, 1989, unless otherwise specifically stated.

No provision of this restated Plan shall operate to diminish or adversely affect the accrued benefits of any Participant determined immediately preceding the effective date of this restatement.

EB-00035999

- 2 -

## ARTICLE II

### Definitions

SECTION 2.1   "Accrued Benefit" means the annual benefit accrued at any particular point in time for each Participant as determined in accordance with Section 4.2.

SECTION 2.2   "Actuarial Equivalent" means the equivalent current value of the Article IV formula benefit determined pursuant to the tables appended to the Plan and, if not covered by such tables, in accordance with the 1971 TPF&C Forecast Mortality Table at 5 percent interest; provided, *5% Expense load* however, that in Plan Years beginning after December 31, 1984, for purposes of determining the present value of any lump sum payout not in excess of $25,000 under this Plan, the interest assumption shall be no greater than the rate that would have been used by the Pension Benefit Guaranty Corporation ("PBGC") as of the distribution date for purposes of determining the present value of a lump sum distribution for single employer plans terminating on that date.   If the lump sum payout exceeds $25,000 using the PBGC rate, the interest assumption used for valuing that portion of the lump sum in excess of $25,000 will be no greater than 120 percent of the rate that would have been used by the PBGC for purposes of determining the present value of a lump sum distribution for single employer plans terminating on the distribution date.

SECTION 2.3   "Actuary" means an enrolled actuary selected by the Committee.

SECTION 2.4   "Affiliated Company" means (1) a member of an affiliated service group within the meaning of Code section 414(m) of which the Employer is a member; (2) a member of a controlled group of corporations of which the Employer is a member; (3) an unincorporated business which is part of a group of trades or businesses (whether or not incorporated) under common control with the Employer as determined pursuant to section 414(c) of the Code; or (4) any other entity required to be aggregated with the Employer under Code section 414.   For purposes of this Section, a controlled group of corporations means a group defined under section 1563(a) of the Code determined without regard to Code sections 1563(a)(4) and 1563(e)(3)(C).

SECTION 2.5   "Annuity Starting Date" means the first day of the first period for which an amount is paid (not the date

EB-00036000

- 3 -

of election or the actual date of payment) as an annuity, or any other form, under the Plan.

SECTION 2.6 "Average Wage Base" means the average of the Social Security wage bases for the 35-year period ending with the year in which a Participant retires, terminates or becomes disabled, rounded down to the nearest $100.

Section 2.7 "Beneficiary" means any person designated by a Participant to receive any death benefit which shall be payable under this Plan.

SECTION 2.8 "Board" means the Board of Directors of Eber Bros. Wine & Liquor Corp.

SECTION 2.9 "Break in Service" means that an Employee fails to complete more than 500 Hours of Service during an Eligibility Computation Period or a Plan Year, whichever is applicable.

SECTION 2.10 "Code" means the Internal Revenue Code of 1986, as amended from time to time.

SECTION 2.11 "Committee" means the Administrative Committee appointed by the Board pursuant to Article X to administer the Plan.

SECTION 2.12 "Compensation" means in the case of salaried and hourly paid Participants, gross pay plus taxable fringe benefits as shown on Form W-2 each calendar year ended within each Year, and in the case of commission salespeople, 75% of all gross earnings, including taxable fringe benefits, during a calendar year but not including contributions made under this Plan, or, for Plan Years beginning after December 31, 1993, any amount in excess of $150,000 (adjusted for cost of living increases as permitted under the Code). This amount had been $200,000, as adjusted for Plan years beginning after December 31, 1988. Prior to January 1, 1994, in the case of commission salespeople at Eber Bros. Wine & Liquor Syracuse, Inc., 100 percent of gross earnings was included.

SECTION 2.13 "Contingent Annuitant" means the person designated by a Participant to receive lifetime monthly retirement income payments after the Participant's death in accordance with Article VI.

SECTION 2.14 "Deferred Retirement Date" means the first day of the month next following the month in which a Participant actually retires after the Normal Retirement Date.

EB-00036001

- 4 -

SECTION 2.15 "Disability" means a physical or mental condition which, in the judgment of the Committee, based on medical reports and other evidence satisfactory to the Committee, will permanently prevent an Employee from satisfactorily performing the usual duties for the Employer.

SECTION 2.16 "Early Retirement Date" means the first day of the month next following the month in which a Participant retires early pursuant to Section 5.2.

SECTION 2.17 "Election Period" means the 90-day period preceding the Annuity Starting Date during which a Participant can elect, with the consent of the spouse, to waive the Qualified Joint and Survivor Annuity or can elect to revoke such a waiver.

SECTION 2.18 "Eligibility Computation Period" means the twelve-consecutive-month period beginning with an Employee's Employment Date and each anniversary thereof.

SECTION 2.19 "Employee" means any person who is receiving remuneration for services rendered to the Employer, including any Leased Employee, or any person who would be receiving such remuneration except for a Leave of Absence.

SECTION 2.20 "Employer" means Eber Bros. Wine & Liquor Corp., Rochester Liquor Corporation, Eber Bros. Wine & Liquor Syracuse, Inc., formerly M. Lichtman & Co., Inc. (as of May 26, 1983), Eber Bros. Wine & Liquor Corp., Albany Division, formerly Graves & Rodgers (as of February 1, 1989) and Monroe Display Corporation.

SECTION 2.21 "Employment Date" means the date on which an Employee first performs an Hour of Service for the Employer or an Affiliated Company.

SECTION 2.22 "ERISA" means the Employee Retirement Income Security Act of 1974 as amended from time to time and regulations issued thereunder.

SECTION 2.23 "Final Average Compensation" means a Participant's average Compensation during the five highest consecutive calendar years out of the last ten Years of Participation. If a Participant has completed fewer than five calendar years, Final Average Compensation shall be the average Compensation for all completed calendar years.

SECTION 2.24 "Former Participant" means a Participant whose employment with the Employer has terminated, and who has a vested benefit under the Plan which has not been paid in full.

EB-00036002

- 5 -

SECTION 2.25 "Highly Compensated Employee" means an employee who is highly compensated as defined in Code section 414(q).  Subject to the special limitations and definitions contained in section 414(q), a Highly Compensated Employee is any employee who during the current or preceding Plan Year:

    (a)   was a five percent owner of the Employer;

    (b)   received compensation from the Employer in excess of $75,000 (in 1994 this figure has been indexed to $99,000);

    (c)   received compensation from the Employer in excess of $50,000 (in 1994 this figure is $66,000) and is in the top 20 percent of the Employer's employees ranked on the basis of compensation; or

    (d)   was at any time an officer of the Employer and received compensation in excess of 50% of the defined benefit dollar limitation for the Plan Year under Code section 415 (b)(1)(A) ($59,400 for 1994).

In making this determination, an employee who does not satisfy (b), (c) or (d) in the preceding Plan Year shall not be considered as satisfying (b), (c) or (d) for the current Plan Year unless the Participant meets the requirements of those subsections for the current year and is among the top 100 employees paid the greatest compensation during the current Plan Year.  For purposes of the Highly Compensated Employee definition, the term Employer includes any Affiliated Company. This Section's dollar limits shall be adjusted for cost of living increases as provided under the Code.

SECTION 2.26 "Hour of Service" means each hour for which an Employee is paid, or entitled to payment, during an applicable computation period in accordance with the following:

    (a)   Performance of Services.  An Hour of Service shall be credited for each hour that an Employee is paid or entitled to payment for the performance of services for the Employer.

    (b)   Leaves of Absence, etc.  An Hour of Service shall be credited for each hour during which no duties are performed but for which an Employee is paid or entitled to payment by the Employer (whether or not the employment relationship has terminated) for any other purpose, such as, but without

EB-00036003

- 6 -

limitation, payment due to vacation, holiday, illness, disability, layoff, jury duty or Leave of Absence. Credit shall also be given for any maternity or paternity leave (_i.e._, pregnancy of the Employee, birth or adoption of the Employee's child, or caring for the Employee's child immediately following birth or adoption) taken by an Employee. No more than 501 Hours of Service shall be credited under this provision, however, to an Employee on account of any single continuous period during which no services are performed for the Employer. In addition, no Hours of Service shall be credited with respect to payments made under a plan maintained by the Employer solely for complying with applicable workers' compensation, or disability insurance laws or to payments which reimburse an Employee for medical or medically-related expenses.

(c)  Back pay.  To the extent not credited for either of the preceding purposes, an Employee shall be credited with an Hour of Service for each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer. If back pay is made with respect to one of the purposes set forth in provision (b) above, the number of creditable Hours of Service shall be subject to the limitations set forth in that provision.

(d)  Military Service.  An Hour of Service shall be credited for each hour of the normally scheduled work hours for each work day during any period the Employee is on leave of absence from the Employer or any Affiliated Company for military service with the Armed Forces of the United States, but not to exceed the period required under the law pertaining to veterans' reemployment rights; provided that if the Participant fails to report for work at the end of such leave during which the Participant has employment rights, the Participant shall not receive credit for hours on such leave.

(e)  Computation and Crediting of Hours.  The Committee shall determine the number of creditable Hours of Service in any computation period on the basis of any records kept by the Employer that accurately reflect Hours of Service.  If any payments

EB-00036004

- 7 -

(including back pay awards) relate to any period for which no duties are performed, the number of creditable Hours of Service shall equal the number of regularly scheduled working hours upon which the payment is based.  If the payment is not calculated on the basis of units of time for which the hours may be determined, the number of creditable Hours of Service shall be equal to the amount of the payment divided by the Employee's most recent hourly rate of compensation before the period during which no duties are performed.  In no event, however, shall an Employee be credited with a greater number of Hours of Service than the number of regularly scheduled hours for the performance of services during the applicable period.

Hours of Service shall be credited to the computation period in which the services were performed, the period to which payments are made when no services are performed, or the period to which back pay awards relate, whichever is applicable.  Hours of Service pursuant to maternity/paternity leave shall be credited to the Employee in the Plan Year in which the absence from work begins only if the additional hours afforded would prevent the Participant from incurring a one year Break in Service; otherwise these hours shall be credited to the Participant in the Plan Year immediately following the date the Participant begins the absence from work.  The crediting of Hours of Service for reasons other than the performance of services and the crediting of Hours of Service to computation periods shall be made in accordance with 29 C.F.R. sections 2530.200b-2(b) and (c) which are hereby incorporated by this reference.

SECTION 2.27  "Investment Manager" means any individual or corporation appointed by the Board who (i) is registered as an investment adviser under the Investment Advisers Act of 1940; or (ii) is a bank, as defined in that Act; or (iii) is an insurance company qualified to manage, acquire or dispose of plan assets under the laws of more than one state and each individual or corporation acknowledges in writing that the Participant or the corporation, as the case may be, is a fiduciary with respect to the Plan.

EB-00036005

- 8 -

SECTION 2.28   "Leased Employee" means any person defined as such within the meaning of Code section 414(n). As of the date this document was executed, a Leased Employee means any person who is not an employee of the Employer but (1) who performs services for the Employer pursuant to an agreement between the Employer and another person, (2) who has performed such services for the Employer or for the Employer and related persons on a substantially full-time basis for a period of at least one year, and (3) such services are of a type historically performed, in the business of the Employer, by employees.

SECTION 2.29   "Leave of Absence" means any absence authorized by the Board provided that all persons under similar circumstances must be treated alike in the granting of such Leaves and provided further that the Participant returns within the period of authorized absence. An absence due to service in the Armed Forces of the United States shall be considered a Leave of Absence if the absence is caused by war or if the Employee is required to serve under the laws of conscription, provided that the Employee returns to employment with the Employer within the period provided by law.

SECTION 2.30   "Non-Highly Compensated Employee" means an Employee who is not a Highly Compensated Employee.

SECTION 2.31   "Normal Retirement Age" means 65. Effective for Plan Years beginning after December 31, 1987, in the case of any Employee who commences participation in the Plan within five years of 65, Normal Retirement Age means the fifth anniversary of the Participant's commencement of participation.

SECTION 2.32   "Normal Retirement Date" means the first day of the month coincident with or next following a Participant's Normal Retirement Age.

SECTION 2.33   "Participant" means an Employee participating in this Plan in accordance with the provisions of Section 3.1.

SECTION 2.34   "Plan" means the Eber Bros. Wine & Liquor Corp. Retirement Plan as set forth herein, as amended from time to time.

SECTION 2.35   "Qualified Joint and Survivor Annuity" means an annuity for the life of the Participant with a survivor annuity for the life of the Participant's spouse which is 50 percent of the amount which is payable during the joint lives of the Participant and the spouse and which is the actuarial equivalent of a single annuity for the life of the Participant.

EB-00036006

- 9 -

SECTION 2.36   "Qualified Pre-Retirement Survivor Annuity" means an annuity for the surviving spouse of a Participant in an amount equal to the amount payable to such surviving spouse if benefits had been paid as a Qualified Joint and Survivor Annuity.  If the Participant dies after the Early Retirement Date the benefit amount shall be determined as if the Participant had retired with an immediate Qualified Joint and Survivor Annuity on the day before the Participant's death.  In the case of a Participant who has any vested Accrued Benefit and who dies on or before the Early Retirement Date, the benefit amount shall be calculated as if the Participant had (a) separated from service on the date of death; (b) survived to the Early Retirement Date; (c) retired with an immediate Qualified Joint and Survivor Annuity on the Early Retirement Date; and (d) died on the day after what would have been the Early Retirement Date.

SECTION 2.37   "Trust" or "Trust Fund" means the Eber Bros. Wine & Liquor Corp. Retirement Trust, maintained in accordance with the terms of the trust agreements, as from time to time amended, which constitutes a part of this Plan.

SECTION 2.38   "Trustee" means M & T Bank or any other trustee appointed by the Board to administer the Trust.

SECTION 2.39   "Year" or "Plan Year" means the twelve-consecutive-month period ending each May 31.  The Plan Year shall be the accrual computation period, the vesting computation period and the limitation year as these terms are used in regulations issued pursuant to ERISA.

SECTION 2.40   "Year of Benefit Service" means any Plan Year during which the Participant completes at least 1,000 Hours of Service with the Employer.  Benefit Service began for Employees of Eber Bros. Wine & Liquor Syracuse, Inc., formerly M. Lichtman & Co. Inc. on June 1, 1984, and Eber Bros. Wine & Liquor Corp., Albany Division, formerly Graves & Rodgers on June 1, 1989.

SECTION 2.41   "Year of Vesting Service" means any Eligibility Computation Period or Plan Year during which an Employee completes at least 1,000 Hours of Service with the Employer or with an Affiliated Company.  Vesting Service began for Employees of Eber Bros. Wine & Liquor Syracuse, Inc., formerly M. Lichtman & Co., Inc. on May 26, 1983, and Eber Bros. Wine & Liquor Corp., Albany Division, formerly Graves & Rodgers on February 1, 1989.

*Elapsed time*

EB-00036007

- 10 -

SECTION 2.42  The masculine gender whenever used shall include the feminine and the singular shall include the plural, unless the context clearly indicates the contrary.

EB-00036008

- 11 -

## ARTICLE III

### Participation and Service

Eligibility

SECTION 3.1  Every Employee shall be eligible to become a Participant on the June 1 or December 1, coincident with or next following the completion of one year of Vesting Service during the Eligibility Computation Period.  An Employee who satisfies the age and service requirements of this Section but who separates from the service of the Employer prior to the entry date is not entitled to become a Participant on that entry date.

Notwithstanding the foregoing, this Plan does not cover any Leased Employee or any Employee who is a member of a unit covered by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining, unless coverage hereunder is so provided.

Inactive
Status

SECTION 3.2  Any Participant who fails to complete 1,000 Hours of Service with the Employer in any Plan Year, shall be treated as an inactive Participant for that Plan Year and shall not accrue a benefit for that Year.  In the event such Participant completes 1,000 Hours of Service with the Employer in a subsequent Plan Year, the Participant shall revert to active status with full rights and privileges under the Plan restored as of that Year.

Participation
and Service
upon Reem-
ployment

SECTION 3.3  Participation in the Plan shall cease as of the last day of the Plan Year in which a Participant has both terminated the employment with the Employer and has incurred a Break in Service, as this term is defined in Article II.

Upon the reemployment of any person who had previously separated from the service of the Employer and suffered a Break in Service, the following rules shall apply in determining the participation in the Plan and the credit, if any, for Years of Service completed prior to termination:

EB-00036009

- 12 -

(a)  Participation:

If the reemployed Employee had satisfied the eligibility requirements of Section 3.1 (whether or not the employee had become a Participant) prior to suffering a Break in Service, the employee may become a Participant on the first day of the month following the date of rehire.

If the reemployed Employee had not satisfied either the age or service requirements prior to suffering a Break in Service, the Participant must meet the requirements of Section 3.1 for participation in the Plan as if the Participant were a new Employee.  The date of rehire shall for this purpose be the Employee's new Employment Date.  If the employee had completed the service requirement prior to the Break in Service the employee may become a Participant on the first day of the month after satisfying the Plan's age requirement on or following the date of rehire.

(b)  Vesting credit for prior Years of Service:

In the case of a Participant whose prior employment terminated at a time when any portion of the Accrued Benefit had vested, all Years of Service attributable to the prior period of employment shall be reinstated as of the date of the reparticipation.

.  In the case of a reemployed Employee who was not a Participant in the Plan during the prior period of employment or whose prior employment terminated at a time when no portion of the Accrued Benefit had become vested, any Years of Service attributable to the prior period of employment shall be restored except in those cases where the number of consecutive one-year Breaks in Service equals or exceeds the greater of (1) five or (2) the aggregate number of pre-break Years of Service.

EB-00036010

- 13 -

Changes in
Status

Section 3.4  Where an Employee who has not
been eligible to participate becomes eligible, the
Employee shall be credited with Years of Vesting
Service for eligibility and vesting purposes from
the inception of employment.  When the reverse
occurs, i.e., a Participant ceases to be eligible
but continues as an Employee, Years of Vesting
Service will continue to be credited.

EB-00036011

- 14 -

## ARTICLE IV

### Benefit Formula

Calculation
of Benefit

SECTION 4.1  The annual rate of retirement income benefit commencing on a participant's Normal Retirement Date shall be the greater of (a) or (b) or, in the case of Rochester Liquor salespeople, (c):

(a)   The Participant's accrued benefit as of May 31, 1989, under the terms of the Plan on that date.

(b)   .80% of Final Average Compensation times Years of Benefit Service, Plus .55% of Final Average Compensation in excess of the Average Wage Base times years of Benefit Service up to a maximum of 35 years.

(c)   As to Rochester Liquor salespeople, (b) based on Years of Benefit Service from June 1, 1988, plus the benefit accrued as of May 31, 1988 under the Retail Clerk's Plan which has been merged with this Plan.

This annual rate is computed on the basis of the benefit being payable in the form of a straight life annuity.  The actual amount of accrual or monthly benefit shall depend on the actual form of payment being paid in accordance with Article VI which shall, in any event, be a benefit of actuarially equivalent value of the rate determined under this Section 4.1.

Accrued
Benefit

SECTION 4.2  A Participant's Accrued Benefit at any particular point in time shall equal the Section 4.1 formula benefit.

Section 401(a)
(17) Employees

SECTION 4.3  Notwithstanding any other provision in this Plan, for the purpose of applying the annual compensation limit under Code Section 401(a)(17), the family unit of an Employee, who is either a five percent owner of the Employer or is both a Highly Compensated Employee and one of the ten most highly compensated employees, will be treated as a single

EB-00036012

- 15 -

Employee with one Compensation, except for the purpose of determining the amount of contribution allowed under Code sections 402(g) and 415, in which cases the family unit will not be so aggregated.  For this purpose, "family unit" means the 401(a)(17) Employee, the Employee's spouse and lineal descendants who have not reached age 19 during the Plan Year.  The annual compensation limit will be allocated among the affected individuals in proportion to each such individual's Compensation as determined prior to the application of the limitation.

EB-00036013

- 16 -

ARTICLE V

Retirement Income Benefits

Normal
Retirement

SECTION 5.1  A Participant who retires upon reaching the Normal Retirement Age shall be 100 percent vested in the retirement income benefit calculated pursuant to Section 4.1.  This benefit shall commence on the Participant's Normal Retirement Date unless a later date is chosen in accordance with the provisions of Section 6.4 and shall be paid in the form selected pursuant to the provisions of Article VI.

Early
Retirement

SECTION 5.2  A Participant who reaches age 55 and completes 5 Years of Service may elect early retirement.  For a person who elects early retirement, the annual rate of retirement income benefit commencing on the Normal Retirement Date shall be the Accrued Benefit under Article IV using the relevant facts as of the Early Retirement Date.  The Participant may elect (by notifying the Committee in writing) to receive such benefit prior to the Normal Retirement Date, in which case the benefit shall be reduced by five percent for each year that retirement precedes the Participant's Normal Retirement Date.

Deferred
Retirement

SECTION 5.3  A Participant who continues in employment after reaching Normal Retirement Age shall continue to accrue additional benefits after such Age.  The benefit commencing on the Deferred Retirement Date shall be computed under Article IV using the Compensation and service figures through the period ending on the actual retirement date.

Vested
Benefit

SECTION 5.4  If a Participant terminates employment with the Employer before reaching Early or Normal Retirement Age or before suffering a Disability, the Participant shall be eligible to receive a benefit equal to the vested amount of the Accrued Benefit.  The vested amount shall be determined in accordance with the following schedule:

EB-00036014

- 17 -

| Years of Vesting Service | Percent of Benefit Vested | Benefit Forfeited |
|---|---|---|
| Less than 5 | 0% | 100% |
| 5 or more | 100% | 0% |

For purposes of applying this schedule, a Participant shall be credited with one Year of Service for each Year of Service completed during a Plan Year.  If any Plan amendment changes the Plan's vesting schedule, each Participant in the Plan as of the date the new schedule is adopted shall have the vested percentage determined under the vesting schedule which provides him with the greatest vested benefit at any particular point in time.

Unless the vested benefit is paid out in accordance with the provisions of Section 5.5, such benefit shall be payable commencing at what would otherwise have been the Former Participant's Normal Retirement Date, except the Former Participant may elect (by notifying the Committee in writing) to receive such vested benefit starting with the first day of any month following the month in which the Participant would have been eligible for early retirement benefits under Section 5.2.  In the event payments are to commence prior to such Former Participant's Normal Retirement Date, the benefit shall be reduced by 5% for each year that retirement precedes the Participant's Normal Retirement Date.

Cash out of Accrued Benefit

SECTION 5.5  If a Participant terminates participation in the Plan at a time when the present value of the nonforfeitable Accrued Benefit attributable to Employer contributions is $3,500 or less, the present value of the entire nonforfeitable Accrued Benefit shall be paid in cash within one year of termination of participation.  No lump sum cash out of Accrued Benefits having a present value in excess of $3500 is permitted under this Plan except as may be permitted in accordance with the normal distribution options of Article VI.  Unless the Participant makes a repayment of the cash out distribution as provided below, all Years of

EB-00036015

- 18 -

Service and Years of Participation to which the cash out relates shall be disregarded in any subsequent determination of the Accrued Benefit under Article IV.

If an individual to whom this cash out provision applies later resumes participation in the Plan, the employee may repay the full amount of the cash out distribution plus interest from the date of distribution to the date of repayment, compounded annually at the rate of 5 percent (or such other rate as may be provided in ERISA regulations) per annum.  If such repayment is made within five years of the date the Participant terminated employment, the Accrued Benefit previously disregarded shall be restored.

Disability
Benefit

SECTION 5.6  A Participant who suffers a Disability shall be entitled to receive 100 percent of the Accrued Benefit.  This benefit shall be paid commencing either at what would have been the Participant's Normal Retirement Date or at an earlier date in an amount actuarially reduced in accordance with the same method used in Section 5.2 for adjusting early retirement benefits which are paid prior to Normal Retirement Age.

Normal Retire-
ment Benefit

SECTION 5.7  The amount of the normal retirement benefit provided shall be the greater of what a Participant or Former Participant could have received under the early retirement provisions of the Plan or the benefit commencing at the Normal Retirement Date.

Benefits Not
Affected by
Subsequent
Social
Security
Changes

SECTION 5.8  Any benefits which are being paid to a Participant, Former Participant, Beneficiary or Contingent Annuitant under this Plan and the vested benefit of a Participant or Former Participant who has separated from the service of the Employer shall not be decreased by reason of any post-separation increase in the benefit levels or the wage base under Title II of the Social Security Act effective after the later of September 2, 1974, or the date of first receipt of any benefit provided by this Plan.  In the case of a Participant who separates from the service of the Employer with a vested benefit and who returns to employment and participation in the Plan, the

EB-00036016

- 19 -

vested benefit shall not be decreased by reason of
any post-separation increase in Social Security
benefit levels or the wage base effective after
September 2, 1974, and during separation from
service which would decrease the benefits to which
the Participant would have been entitled had the
Participant not returned to service after the
separation.

Maximum
Benefit

　　　SECTION 5.9  The maximum annual benefit
(i.e., the benefit computed under Article IV)
payable under this Plan and all other defined
benefit plans of the Employer shall be limited to
the maximum amounts permitted under Code section
415.  In general, section 415 limits a
Participant's annual benefit to the lesser of
$90,000 or the Participant's average annual
compensation during the three consecutive Years of
Service as a Participant affording the highest
such average, or during all years if less than
three; provided that if the Participant has not
completed ten years of participation, such maximum
annual benefit shall be reduced in the ratio which
the number of the years of participation bears to
ten.  The maximum dollar limitation applies to a
benefit payable at the Social Security retirement
age and shall be adjusted in accordance with cost
of living increases in the amount determined by
the Commissioner of Internal Revenue.

　　　For any benefit payment which is to commence
after the Social Security retirement age, the
maximum dollar limitation shall be the actuarial
equivalent of the maximum dollar limitation at the
Social Security retirement age.  In computing
actuarial equivalency, the interest assumption
shall be the lesser of five percent or the percent
specified in the Plan's definition of Actuarial
Equivalent.

　　　For any benefit payment which is to commence
before the Social Security retirement age, the
maximum dollar limitation shall be reduced in
accordance with this paragraph.  The dollar
limitation for a Participant who has reached age
62 but not the Social Security retirement age
shall be reduced by 5/9 of 1 percent for each of
the first 36 months and 5/12 of 1 percent for each
additional month that the date the Participant's

EB-00036017

- 20 -

annuity starting date precedes the Social Security retirement age. For any benefits paid prior to age 62, the maximum dollar limit shall be further reduced for months prior to age 62 on an actuarial basis using for this purpose the actuarial assumptions set forth in the Plan's definition of Actuarial Equivalent.

Notwithstanding the foregoing, if a Participant's annual benefit does not exceed $10,000 and the Participant had not at any time participated in a defined contribution plan maintained by the Employer, the Participant may receive the full amount of such retirement income benefit without regard to the limitations provided in this Section.

For purposes of this Section, a Participant's compensation means the total remuneration paid to the Participant by the Employer during the Plan Year for personal services actually rendered, after the application of any salary reduction agreement the Participant may have entered into with the Employer, excluding Employer contributions to this Plan or any other plan of deferred compensation, amounts realized upon the exercise of a stock option or the lifting of restrictions on restricted stock, amounts realized upon a disqualifying disposition of stock acquired pursuant to an ISO or other qualified stock option or other amounts which receive special tax benefits provided in this Section.

Limits for Combined Plans

SECTION 5.10  If a person participates at any time in both a defined benefit plan and a defined contribution plan ever maintained by the Employer or any Affiliated Company, the sum of the defined benefit plan fraction and the defined contribution plan fraction for any Year may not exceed 1.0. For purposes of this Section, the defined contribution plan fraction for any Year is the person's annual additions, as defined in section 1 of the Code, in such Year and all prior Years of Service over the lesser of the following amounts for such Year and for each prior Year: (a) 1.25 times the dollar limitation of Code section 415(c)(1)(A) for the pertinent Year or (b) 1.4 times the amount that could be contributed under the percentage limitation of Code section

EB-00036018

- 21 -

415(c)(l)(B) for the individual.  The defined
benefit plan fraction for any Year is the person's
projected annual benefit under all defined benefit
plans maintained by the Employer and any
Affiliated Company over the lesser of the
following amounts for such Year and for each prior
Year:  (a) 1.25 times the dollar limitation of
Code section 415(b)(l)(A) for the pertinent Year
or (b) 1.4 times the amount that could be taken
into account under the percentage limitation of
Code section 415(b)(l)(B) for the individual.

The Committee shall monitor the contributions
and benefits with respect to each Participant
under all plans maintained by the Employer and any
Affiliated Company.  The Committee in its
discretion shall reduce any such contributions or
benefits to prevent the combined defined benefit
plan and defined contribution plan fractions from
exceeding 1.0.

Suspension
of Benefits

SECTION 5.11  Except as required to meet
the requirements of Section 6.4 that benefits
commence by the April of the year following the
year a Participant reaches age 70 1/2, neither a
Participant who continues working beyond Normal
Retirement Age nor a Participant who has commenced
receiving Plan benefits and is subsequently
reemployed by the Employer shall be entitled to
receive benefits from this Plan during the period
of employment with the Employer.  Any such
withholding of benefits shall apply only with
respect to any month during which the Participant
has 40 or more Hours of Service with the Employer
or an Affiliated Company which maintains this
Plan.

The Committee shall notify each Participant
to whom this suspension applies by personal
delivery or first class mail during the first
month in which payments are withheld that the
Participant's benefits are suspended.  Such
notification shall contain a description of the
specific reasons why benefit payments are being
suspended, a general description and a copy of
this Section and a statement that the applicable
Department of Labor regulations may be found in
section 2530.203-3 of Title 29 of the Code of
Federal Regulations.

EB-00036019

- 22 -

A Participant whose benefits have been suspended in accordance with this Section shall be entitled to have the benefit payments commence or resume, as the case may be, as of the first payment date following the Participant's cessation of employment.  The amount of such payment shall be the greater of (1) the benefit the Participant had been entitled to receive immediately prior to the suspension provided for in this Section, or (2) the benefit the Participant would be entitled to receive upon the ultimate cessation of employment taking into account, where required by the applicable benefits provisions, the service and compensation figures during the suspension. No actuarial adjustment shall be made to account for the period of suspension or the fact that benefits commence after Normal Retirement Age except, in the latter case, as may be provided for in the deferred retirement provisions of Section 5.3.

Notifi-
cation
to Par-
ticipants
of Benefits
and
Reductions

SECTION 5.12  Upon the written request of a Participant, once each Plan Year, the Committee shall notify each Participant of the following information concerning the participation in the Plan:  (1) the Accrued Benefit under the Plan; (2) the amount of his Accrued Benefit which is vested or, if no benefits have vested, the earliest date on which benefits can become vested; (3) any benefits that are forfeitable if the Participant dies before a certain date; and (4) any reduction in benefits required on account of the limits set forth in Sections 5.9 and 5.10 of the Plan.

EB-00036020

- 23 -

## ARTICLE VI

### Form of Benefit Payments

Normal Form
of Payment

SECTION 6.1  The normal form of payment
of retirement income benefits shall be monthly
installments determined as follows:

Unmarried
Participant

(a)  If the Participant is not married
when the Participant becomes eligible to
receive any benefits under this Plan, the
retirement income benefit shall be payable in
the form of a straight life annuity.  Under
such annuity, retirement income payments will
be made monthly during the Participant's
lifetime with no further payments on the
Participant's behalf after the Participant's
death.  The amount of benefit payable in this
form shall be the Actuarial Equivalent of the
benefit determined under Article IV.

Married
Participant

(b)  If the Participant is married when
he becomes eligible to receive any benefits
under this Plan, the normal form of benefit
shall be a Qualified Joint and Survivor
Annuity.  The amount of benefit payable in
this form shall be the Actuarial Equivalent
of the benefit determined under Article IV.

Election of
Optional
Method of
Payment

(c)  In accordance with the terms of
this subsection, a Participant may elect not
to receive the benefit in the normal form of
payment and elect instead one of the optional
forms of benefits set forth in Section 6.2.
This election, once made, may be revoked with
the written consent of the Participant's
spouse (and reelected if the Participant
chooses with the written consent of the
spouse) at any time prior to the commencement
of benefits or Participant's date of death.
The Committee shall provide each Participant,
not less than nine months before the date
benefit payments actually commence, a
retirement application form describing the
normal and optional forms of benefit
payments, including their relative financial
effects in terms of dollars per annuity
payment on the Participant.  The form shall

EB-00036021

- 24 -

indicate the Participant's right to waive a
survivor annuity and the spouse's right to
consent to such waiver or refuse such
consent.  This form shall provide a place for
the Participant to indicate the Annuity
Starting Date, the election of the normal or
an optional method of payment and the
Beneficiary or Contingent Annuitant,
whichever is applicable.  The completed form
shall be signed by the Participant and bear
the written consent of the spouse.  The
spouse's consent shall acknowledge the effect
of the election and the form shall either be
notarized or be witnessed by a Plan
representative and must be returned to the
Committee within the Election Period.
Failure to obtain the spouse's consent or to
designate an optional form of payment or the
revocation of a previously designated
optional method shall result in the
Participant's receiving the benefits in the
normal form of payment unless another
election is made within the Election Period.

In the event of the death of a
Participant before the Early or Normal
Retirement Date, no optional benefit shall be
paid.

Optional Forms
of Benefits

SECTION 6.2  The optional benefits, all
of Actuarial Equivalent value, which a
Participant may elect pursuant to
Section 6.1(c) are as follows:

OPTION A: · A retirement income payable
monthly during the life with the
provision that in the event of the
Participant's death prior to receiving
60, 120 or 180 monthly installments, the
remainder thereof shall be paid to the
Beneficiary.

EB-00036022

- 25 -

OPTION B:  A retirement income payable
during the Participant's life with the
provision that after the Participant's
death such income shall continue during
the life of, and shall be paid to, a
Contingent Annuitant.  (100% Joint and
Survivor)

OPTION C:  A retirement income payable
in a lump sum equal to the Actuarial
Equivalent necessary to provide the
Participant's Normal Retirement Income.
(Lump Sum)

OPTION D:  A retirement income payable
during the Participant's life with the
provision that after the Participant's
death an income at 1/2 the rate of the
income shall be continued during the
life of, and shall be paid to, a
Contingent Annuitant.  (50% Joint and
Survivor)

OPTION E:  In the case of a married
Participant, a straight life annuity.

**Facility of Payment**

SECTION 6.3  If the Committee shall
find that any person to whom a benefit is payable
from the Plan is unable to care for the
Participant's affairs, any payment due (unless a
prior claim therefor shall have been made by a
duly appointed guardian, committee or legal
representative) may be paid to the spouse, child,
parent or to any person deemed by the Committee to
have incurred expense for such person otherwise
entitled to payment.  Any such payment shall
discharge the liability of the Plan therefor.

**Time of Benefit Payments**

SECTION 6.4  In the event benefits
become payable to a Participant or, in the
event of the Participant's death, become payable
to the Beneficiary, the Committee shall consult
with the Participant or the Beneficiary, as the
case may be, concerning the manner and the timing
of benefit payments.  Based on such consultation
and any other pertinent factors, the Committee
shall direct the Trustee in writing concerning the
manner and timing of benefits to the recipient.

EB-00036023

- 26 -

Payments shall normally begin by the April 1 following the calendar year during which the Participant dies, suffers a Disability or reaches the Normal, Early or Deferred Retirement Date, as the case may be, and has terminated employment with the Employer or an Affiliated Company. Notwithstanding the above, benefit payments must commence no later than the April 1 following the calendar year in which a Participant attains age 70 1/2 even if the Participant continues in employment with the Employer.  In no event shall payments begin later than sixty days after the close of the Plan Year in which the latest of the following occurs:  (1) the Participant's attainment of age 65; (2) the termination of the Participant's service with the Employer; (3) the 5th anniversary of the Participant's commencement of participation in this Plan; or (4) for a Participant who commences participation in the Plan within five years of age 65, the fifth anniversary of the Participant's commencement of participation in the Plan; or (5) the date specified in writing to the Committee by the Participant (but not later than the year in which the Participant attains age 70 1/2). Notwithstanding any direction by the Participant to the contrary, all payments must be payable pursuant to a schedule whereby the Participant's entire interest in the Plan is paid over a period that does not extend beyond the life of the Participant or over the lives of the Participant and any individual the Participant has designated as the Beneficiary (or over the life expectancies of the Participant and the designated individual Beneficiary).  In addition, unless the benefit is payable as a Qualified Joint and Survivor Annuity with the Participant's spouse as the contingent annuitant, the payment method selected must provide that more than 50 percent of the present value of the payments projected to be paid to the Participant and the Beneficiary will be paid to the Participant during the Participant's life expectancy.

Notwithstanding anything herein to the contrary, benefits shall not commence unless (a) the benefit is to be paid in the form of a Qualified Joint and Survivor Annuity or a Qualified Pre-Retirement Survivor Annuity payable

EB-00036024

- 27 -

upon the later of the Participant's Normal
Retirement Age or age 62, or (b) the Participant
and the Participant's spouse, if applicable, have
consented in writing to the distribution.

In the event of the death of a Participant,
Former Participant or Beneficiary while benefits
are being paid under a schedule which meets the
requirements of this Section payments shall
continue pursuant to a schedule which is at least
as rapid as the period selected.

In the event of the death of a Participant or
Former Participant before benefit payments have
commenced, any death benefit shall be distributed
within five years of death unless the following
conditions are met:

(i)   payments are made to an individual
Beneficiary designated by the Participant;

(ii)   payments are made for the life of
such individual Beneficiary or over a period
not extending beyond the Participant's life
expectancy; and

(iii)  payments commence within one year
of death.

If the designated beneficiary is the Participant's
spouse, payments shall commence within a
reasonable period after the death of the
Participant, but may be delayed until the date the
Participant would have attained age 70 1/2, if the
spouse so elects.  If the spouse dies before
payments begin, the rules of this paragraph shall
be applied as if the spouse were the Participant.

Notwithstanding this Section or any other
provision of the Plan to the contrary, effective
for Plan Years commencing after December 31, 1984,
all distributions shall be made in accordance with
regulations under Code section 401(a)(9),
including Treasury Regulation 1.401(a)(9)-2 and
the provisions reflecting section 401(a)(9) shall
override any distribution options in the Plan that
may be inconsistent with section 401(a)(9).

EB-00036025

- 28 -

QDROs      SECTION 6.5  Benefits shall be payable under this Plan to an alternate payee pursuant to the terms of any qualified domestic relations order. The Committee has the responsibility for determining if a domestic relations order is qualified and whether its payment terms are consistent with the terms of the Plan.

Rollover
Distributions     SECTION 6.6  A Participant may elect, at the time and in the manner prescribed by the Committee, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the Participant in a direct rollover.

An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under section 401(a)(9) of the Code; and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

An eligible retirement plan is an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified trust described in section 401(a) of the Code, that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

EB-00036026

- 29 -

## ARTICLE VII

### Death Benefits

Intent of
Plan

     SECTION 7.1  This Plan is designed primarily to provide retirement income.  There are, however, the circumstances set forth in the following Sections under which death benefits are payable from this Plan.

Contingent
Annuity

     SECTION 7.2  Upon the death of a Participant who was receiving the benefit in the form of a contingent annuity, the Contingent Annuitant shall receive the payments designated for the Contingent Annuitant.  If the benefit was in the form of a life annuity with a fixed number of payments guaranteed, the Beneficiary shall receive the remainder of the guaranteed benefit payments.

Pre-retirement
Spouse's
Benefit

     SECTION 7.3  Upon the death of a married Participant before retirement but after becoming vested in any part of the Accrued Benefit, the surviving spouse shall be entitled to receive a Qualified Pre-Retirement Survivor Annuity.  In the case of a Participant who had attained the Early Retirement Date on or before the date of death, this benefit shall commence on the first day of the month next following the date of death.  In other cases the benefit shall commence on the first day of the month following what would have been the Participant's Early Retirement Date.

     At any time during the period which begins on the first day of the Plan Year in which the Participant attains age 35 and ending on the date of the Participant's death, a Participant shall have the right to waive the Qualified Pre-Retirement Survivor Annuity and select, if otherwise available under the terms of this Plan, an alternative form of benefit.  Any such waiver shall be in writing, shall contain the written consent of the Participant's spouse and shall be either notarized or witnessed by a Plan representative.  This election, once made, may be revoked with the written consent of the

EB-00036027

- 30 -

Participant's spouse (and reelected if the
Participant chooses with the written consent of
the spouse) at any time prior to the Participant's
date of death.

Designation
of Bene-
ficiary

SECTION 7.4  Each Participant may from
time to time designate any person or persons
(who may be designated contingently or
successively and who may be an entity other than a
natural person) who shall be entitled to receive
any death benefits payable to a Beneficiary under
this Plan.  A married Participant may designate as
Beneficiary someone other than the spouse only
with the spouse's written consent that is either
notarized or witnessed by a Plan representative.
Each Beneficiary designation shall be on a form
prescribed by the Committee and will be effective
only when filed with the Committee during the
Participant's lifetime.  Each Beneficiary
designation filed with the Committee will cancel
all Beneficiary designations previously filed with
the Committee.  The revocation of a Beneficiary
designation, no matter how effected, shall not,
except in the case of a spouse, require the
consent of any designated Beneficiary.

If any unmarried Participant fails to
designate a Beneficiary in the manner provided
above, or if the Beneficiary predeceases the
Participant, the Committee, in its discretion, may
direct the Trustee to distribute the benefits
otherwise payable to a named Beneficiary to
either:

(a)   Any one or more or all of the next of kin
      (including the surviving spouse) of such
      Participant in such proportions as the
      Committee determines; or

(b)   The estate of either the Participant or the
      Participant's named Beneficiary.

EB-00036028

- 31 -

## ARTICLE VIII

### Employer Contributions

Employer
Contribu-
tions

SECTION 8.1   The Employer shall contribute such amounts as it determines to be required for the purpose of meeting the costs of the Plan. The contributions will be determined by annual actuarial valuations on the basis of such actuarial methods and assumptions as are adopted by the Committee after consultation with an Actuary.   The Employer shall comply with the applicable minimum funding standards provided in section 412 of the Code.

Employee
Contribu-
tions

SECTION 8.2   Employee contributions were discontinued as of January 1, 1988, and all accumulated contributions were distributed to Participants.

Diversion from
Employees'
Benefit
Prohibited

SECTION 8.3   All contributions by the Employer are for the exclusive benefit of Participants and any other person entitled to benefits under the Plan.   Prior to the satisfaction of all liabilities with respect to such Participants and other persons, no amounts arising from the Employer's contributions will revert to the Employer.

Return of
Erroneous
Contribu-
tions

SECTION 8.4   Notwithstanding Section 8.3, upon the Committee's request any contribution which was made by a mistake of fact or which is disallowed as a deduction under the Code, or which is made for a Year in which in the Plan is held not to be initially qualified under the Code, shall be returned to the Employer within one year after the payment of the contribution, the disallowance of the deduction (to the extent disallowed) or the denial of the initial qualification, whichever is applicable. All contributions to this Plan are made contingent upon their being deductible under the Code.

Funding
Policy

SECTION 8.5   The Committee shall from time to time communicate the liquidity and other needs of the Plan to the Trustee.

EB-00036029

- 32 -

ARTICLE IX

Trust Fund

All contributions under this Plan shall be paid to the Trustee and deposited in the Trust Fund. The assets in the Trust Fund, including investment income, shall be held and invested by the Trustee or, if one has been appointed, by an Investment Manager in accordance with the terms of the trust agreement or investment manager agreement as the case may be. Benefits payable under this Plan shall be provided from the Trust Fund as the circumstances require. All assets of the Trust Fund, including investment income, shall be retained for the exclusive benefit of Participants, Former Participants, Contingent Annuitants and Beneficiaries and shall be used to pay benefits to such persons or to pay administrative expenses of the Plan and Trust Fund to the extent not paid by the Employer and shall not revert to or inure to the benefit of the Employer.

EB-00036030

- 33 -

## ARTICLE X

### Administrative Committee and Other Fiduciaries

Appointment
of
Committee

SECTION 10.1  The Board shall appoint an Administrative Committee to administer the Plan.  Any person, including an employee of the  Employer or an Affiliated Company, is eligible for appointment as a member of the Committee.  Such members shall serve at the pleasure of the Board.  Any member may resign by delivering the written resignation to the Board. Vacancies in the Committee arising by resignation, death, removal or otherwise, shall be filled by the Board.

Named Fidu-
ciary and
Plan
Adminis-
trator

SECTION 10.2  The Committee shall be the named fiduciary and plan administrator as these terms are used in ERISA.  The Committee shall appoint one of its members as secretary who shall also be the agent for the service of legal process.

Powers and
Duties of
Committee

SECTION 10.3  The Committee shall administer the Plan in accordance with its terms and shall have all powers necessary to carry out the provisions of the Plan, except such powers as are specifically reserved to the Board or some other person.  The Committee's powers include the power to make and publish such rules and regulations as it may deem necessary to carry out the provisions of the Plan.  The Committee shall, in its sole discretion, interpret the Plan and shall determine all questions arising in the administration, interpretation, and application of the Plan, including the determination of all benefits payable under the Plan.  Any such determination by the Committee shall be conclusive and binding on all persons.

Operation of
Committee

SECTION 10.4  The Committee shall act by a majority of its members at the time in office, and such action may be taken either by a vote at a meeting or without a meeting.  If previous written instructions are given by a majority of the Committee, action may be taken with the signature of one member of the Committee.  Any action

EB-00036031

- 34 -

taken without a meeting shall be reflected in a written instrument signed by a majority of the members of the Committee. A member of the Committee who is also a Participant shall not vote on any question relating specifically to himself. Any such question shall be decided by the majority of the remaining members of the Committee. The Committee may authorize any one or more of its members to execute any document or documents on behalf of the Committee, in which event the Committee shall notify the Trustee and the Investment Manager in writing of such action and the name or names of its member or members so designated. The Trustee and the Investment Manager thereafter shall accept and rely upon any document executed by such member or members as representing action by the Committee until the Committee shall file with the Trustee and the Investment Manager a written revocation of such designation. The Committee may adopt such by-laws or regulations as it deems desirable for the conduct of its affairs. The Committee shall keep a record of all its proceedings and acts and shall keep all such books of account, records, and other data as may be necessary for the proper administration of the Plan.

Power to
Appoint
Advisers

SECTION 10.5  The Committee may appoint such Actuaries, accountants, attorneys, specialists, and other persons as it deems necessary or desirable in connection with the administration of this Plan. Such accountants and attorneys may, but need not, be accountants and attorneys for the Employer. The Committee shall be entitled to rely upon any opinions or reports which shall be furnished to it by any such Actuary, accountant, attorney or other specialist.

Expenses of
Committee

SECTION 10.6  The members of the Committee shall serve without compensation for services as such, but all reasonable expenses of the Committee shall be paid by the Employer. Such expenses shall include any expenses incident to

EB-00036032

- 35 -

the functioning of the Committee, including, but not limited to, fees of Actuaries, accountants, attorneys, and other specialists, and other costs of administering the Plan.

Duties of Fiduciaries

SECTION 10.7  All fiduciaries under the Plan and Trust shall act solely in the interests of the Participants and their Beneficiaries and in accordance with the terms and provisions of the Plan and Trust insofar as such documents are consistent with ERISA, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.  Any person may serve in more than one fiduciary capacity with respect to the Plan and Trust.

Liability of Members

SECTION 10.8  No member of the Committee shall incur any liability for any action or failure to act, excepting only liability for the Participant's own breach of fiduciary duty.  To the extent not covered by insurance, the Employer shall indemnify each member of the Committee and any employee acting on its behalf against any and all claims, loss, damages, expense, and liability arising from any action or failure to act under this Plan.

Allocation of Responsibility

SECTION 10.9  The Board, Committee, Trustee, and Investment Manager possess certain specified powers, duties, responsibilities and obligations under the Plan and Trust.  It is intended under this Plan that each be responsible solely for the proper exercise of its own functions and that each shall not be responsible for any act or failure to act of another, unless otherwise responsible as a breach of its own fiduciary duty.  Generally, the Board shall be responsible for appointing the Committee, the Trustee and the Investment Manager and for their removal, and for amending and terminating the Plan and trust agreement.  The Committee is responsible for administering the Plan as described herein. The Trustee or the Investment Manager, as the case may be, is responsible for the management and control of the assets of the Plan as specifically provided in the trust agreement or investment

EB-00036033

- 36 -

manager agreement.  The Board and Committee may
designate persons, including committees, other
than named fiduciaries to carry out fiduciary
responsibilities (other than trustee
responsibilities as defined in section 405(c)(3)
of ERISA) under the Plan.

Claims Review        SECTION 10.10  The Committee shall
Procedure        maintain a procedure under which any Participant
or Beneficiary (hereinafter called "claimant")
whose claim for benefits under the Plan has been
denied will receive written notice which clearly
sets forth the specific reason or reasons for such
denial, the specific Plan provision or provisions
on which the denial is based, any additional
information necessary for the claimant to perfect
the claim, if possible, an explanation of why such
additional information is needed, and an
explanation of the Plan's claims review procedure.
Said procedure should allow a claimant at least 60
days after receipt of the written notice of denial
to request a review of such denied claim, and the
Committee shall make its decision based on such
review within 60 days (120 days if special
circumstances require more time) of its receipt of
the request for review.  The decision on review
shall be in writing and shall clearly describe the
reasons for the Committee's decision.

EB-00036034

- 37 -

## ARTICLE XI

### Amendments

The Board reserves the right to make any amendments to
this Plan which do not cause any part of the Plan's assets to be
used for, or diverted to, any purpose other than the exclusive
benefit of Participants, Former Participants, Contingent
Annuitants, or Beneficiaries, provided, however, that the Board
may make any amendment it determines to be necessary or
desirable, with or without retroactive effect, to comply with
applicable laws.  Except in the case where approved by the
Secretary of Labor because of substantial business hardship, as
provided in section 412(c)(8) of the Code, no amendment shall be
made to the Plan if it would decrease the Accrued Benefit of any
Participant, eliminate or reduce an early retirement benefit or a
retirement-type subsidy or eliminate an optional form of benefit
as may be provided in regulations under Code section 411(d)(6).

EB-00036035

- 38 -

ARTICLE XII

Successor Employer and Merger or
Consolidation of Plans

Successor
Employer

SECTION 12.1   In the event of the
dissolution, merger, consolidation or
reorganization of the Employer, provision may be
made by which the Plan and Trust will be continued
by the successor, and, in that event, such
successor shall be substituted for the Employer
under the Plan.  The substitution of the successor
shall constitute an assumption of Plan liabilities
by the successor and the successor shall have all
of the powers, duties and responsibilities of the
Employer under the Plan.

Plan Assets

SECTION 12.2   In the event of any merger or
consolidation of the Plan with, or transfer in
whole or part, of the assets and liabilities of
the Trust after September 2, 1974, to another
trust held under any other plan of deferred
compensation maintained or to be established for
the benefit of all or some of the Participants of
this Plan, the assets of the Plan applicable to
such Participants shall be transferred to the
other trust only if:

(a)   each Participant would (if either this Plan
or the other plan then terminated) receive a
benefit immediately after the merger,
consolidation or transfer which is equal to
or greater than the benefit the Participant
would have been entitled to receive
immediately before the merger, consolidation
or transfer (if this Plan had then
terminated);

(b)   resolutions of the Boards of Directors of the
Employer under this Plan, and of any new or
successor employer of the affected
Participants, shall authorize such transfer
of assets; and, in the case of the new or
successor employer of the affected
Participants, its resolutions shall include

EB-00036036

- 39 -

an assumption of liabilities with respect to such Participants' inclusion in the new employer's plan; and

(c)   such other plan and trust are qualified under sections 401(a) and 501(a) of the Code.

EB-00036037

- 40 -

ARTICLE XIII

Plan Termination

Right to
Terminate

SECTION 13.1  In accordance with the
procedures set forth in this Article, and
consistent with the provisions of title IV of
ERISA, the Board may terminate this Plan at any
time.  In the event the Plan is terminated or
partially terminated, whether by formal action or
in actual operation, the funded Accrued Benefits
of all affected Participants shall become fully
vested, and shall be distributed to Participants
in accordance with the modes of distribution
provided in Article VI.

Partial
Termination

SECTION 13.2  Upon termination of the
Plan with respect to a group of Participants which
constitutes a partial termination of the Plan, the
Accrued Benefits of all affected Participants
shall become fully vested.  The Trustee shall, in
accordance with the directions of the Committee,
allocate and segregate for the benefit of the
Participants or Former Participants with respect
to which the Plan is being terminated the
proportionate interest of such Participants in the
Trust Fund.

Allocation
of the
Plan's
Assets

SECTION 13.3  If the Plan is to be
terminated, by written notice or in actual
operation, it shall first be amended to
provide for the allocation of the Plan's assets
among Accrued Benefits in accordance with the
priorities established by section 4044 of ERISA
and regulations thereunder.  Any excess assets
remaining after all liabilities of the Plan to
Participants and their Beneficiaries have been
satisfied shall be distributed to the Employer.
In the event that Plan liabilities exceed Plan
assets, the Employer's liability shall be limited
to paying only such additional amounts which when
added to existing Plan assets may be required to
pay benefits which are guaranteed by the Pension
Benefit Guaranty Corporation under section 4022 of
ERISA.

EB-00036038

- 41 -

ARTICLE XIV

<u>Treasury Department
Limitation on Benefits</u>

Except as otherwise permitted in this Article, benefit payments to a "restricted employee" shall not exceed the periodic amounts payable under a single life annuity that is actuarially equivalent to the employee's entire Plan benefit.  This limit shall not apply if either of the following is true:

(1)   Immediately after a payment of a benefit to the restricted employee, Plan assets equal at least 110 percent of the Plan's current liabilities.

(2)   The value of the benefit paid is less than one percent of the Plan's current liabilities.

For this purpose, "benefits" means all accrued and other Plan benefits; "benefits paid" includes regular payments, and death and disability payments; and "restricted employee" means one of the highest-paid 25 of the current and former Highly Compensated Employees with benefits under the Plan.

Benefits may be paid to a restricted employee in a lump sum or in faster installments  if the following conditions are met:

(1)   Before receiving any payments, the restricted employee agrees in writing to repay the actuarial value of the amounts by which the payments exceed the amounts otherwise allowed under subsection (a) if the Plan is terminated at a time when neither of the tests (1) and (2) in subsection (a) are met.

(2)   The employee guarantees repayment under (1) by fulfilling the following conditions:

(i)   Providing security acceptable to the Committee equal to 125 percent of the amount that would have to be repaid if the Plan terminated on the date of distribution.

(ii)  Agreeing to keep the security arrangement in effect and to provide additional security from time to time as may be needed to restore the security to the 125 percent level if the

EB-00036039

- 42 -

market value of the security ever becomes
less than 110 percent of the repayable
amount.

EB-00036040

- 43 -

ARTICLE XV

Top-Heavy Provisions

Rules to
Apply if
Plan Top-
Heavy

SECTION 15.1  Notwithstanding any other relevant provision of this Plan to the contrary, the following rules will apply for any Plan Year that the Plan becomes "top-heavy" (as defined in Section 15.2):

(a)  Vesting.  Except to the extent they are more favorable to Participants at any point in time, the Plan's normal vesting provisions shall be disregarded and in their place an employee will become vested at the rate of 20 percent after two Years of Service and 20 percent each year thereafter until 100 percent vesting is achieved after six Years of Service.

(b)  Minimum Benefit and Accrual.  For each Year the Plan is deemed "top-heavy" each Participant who is a non-key employee shall have a minimum formula benefit and Accrued Benefit equal to the lesser of:

(i)  20 percent of such non-key employee's average compensation; or

(ii)  2 percent of the average compensation times the Years of Service. Such benefit shall be in the form of a life annuity, and shall be provided for each non-key employee, regardless of the number of Hours of Service and the level of Compensation for the year.  For the purposes of making this computation, the term "average compensation" means the average of the five consecutive Plan Years during which such Participant has the greatest aggregate compensation from the Employer.  Compensation means the compensation of the Participant from the Employer for the year.

EB-00036041

- 44 -

(c)  <u>Limitation on Benefits</u>.  In applying the dollar limitations under section 415(e) of the Code, the 1.25 limitation shall be supplanted by a 1.0.

(d)  <u>Maximum Compensation</u>.  The maximum annual compensation of each employee that may be taken into account under the Plan shall not exceed $200,000 (or such larger amount based on cost of living adjustments as may be permitted under the Code).

Top-Heavy
Defini-
tion

<u>SECTION 15.2</u>  For purposes of this Section, the Plan will be considered "top-heavy" if on any given determination date (the last day of preceding Plan Year or, in the case of the Plan's first year, the last day of such Year) the sum of the present value of the total accrued benefits for key employees is more than 60 percent of the present value of the total accrued benefits of all employees.  The present value shall include distributions made during any given Plan Year containing the determination date and the preceding four Plan Years but shall not include the present value of the benefits for any person who has not received any compensation from the Employer or who has not performed any services for the Employer at any time during the five-year period ending on the determination date.  The method of determining the top-heavy ratio shall be made in accordance with Code section 416.

In making the top-heavy calculation, (a) all the Employer's plans in which a key employee participates shall be aggregated with all other Employer plans which enable a plan in which a key employee participates to satisfy the Code's non-discrimination requirements; and (b) all Employer plans not included in subparagraph (a), above, may be aggregated with the Employer's plans included in subparagraph (a), above, if all of the aggregated plans would be comparable and satisfy the Code's non-discrimination requirements.

EB-00036042

- 45 -

Key
Employee
Defini-
tion

SECTION 15.3  A key employee is any
employee or former employee who at any time
during the Plan Year or the four preceding
Plan Years is such within the meaning of Code
section 416.  As of the effective date, the term
key employee includes the following individuals:

(i)  an officer (but not more than 50 persons
or, if lesser, the greater of 3 or 10 percent of
employees and not including persons who earn
150 percent or less of the dollar limitation for
contributions to defined contribution plans as
specified in Code section 415(c)(1)(A));

(ii)  one of the 10 employees owning the
largest interests of the Employer (and having an
annual compensation from the Employer which is at
least equal to the dollar limitation for
contributions to defined contribution plans as
specified in Code section 415(c)(1)(A));

(iii)  a five-percent owner of the Employer;
and

(iv)  a one-percent owner of the Employer
whose annual compensation from the Employer
exceeds $150,000.

Relationship
of the Normal
and the Top-
Heavy
Vesting
Schedules

SECTION 15.4  If the Plan's top-heavy
status changes and this change alters the
Plan's normal vesting schedule, no
Participant's vested accrued benefit
immediately prior to such change in status
shall be diminished on account of the change in
the vesting schedule.  In addition, the vesting
for each Participant in the Plan at the time of
the change in status shall be determined under
whichever schedule provides the greatest vested
benefit at any particular point in time.

Partici-
pation in
Other Plans

SECTION 15.5  A non-key employee who
participates in both this Plan and another
top-heavy defined contribution plan maintained by
the Employer, shall not be entitled to receive
minimum benefits and/or minimum contributions
under all such plans.  Instead, the Employee shall
only receive the minimum benefit under Section
15.1(b) of this Plan.  If the Employer maintains
another top-heavy defined benefit plan, minimum

EB-00036043

- 46 -

benefits shall only be provided under one of such
plans as may be determined by the Committee.

EB-00036044

- 47 -

ARTICLE XVI

Miscellaneous

Nonguarantee
of Employ-
ment

SECTION 16.1  Nothing contained in this
Plan shall be construed as a contract of
employment between the Employer and any Employee,
or as a right of any Employee to be continued in
the employment of the Employer, or as a limitation
on the right of the Employer to discharge any of
its Employees, with or without cause.

Right to
Plan Assets

SECTION 16.2  No Participant, Former
Participant, Contingent Annuitant or Beneficiary
shall have any right to, or interest in, any
assets of the Plan upon termination of employment
or otherwise, except as provided from time to time
under this Plan, and then only to the extent of
the benefits payable under the Plan to such
Participant, Former Participant, Contingent
Annuitant or Beneficiary out of the assets of the
Plan.  All payments of benefits provided for in
this Plan shall be made solely out of the assets
of the Plan.

Nonalienation
of Benefits

SECTION 16.3  Benefits payable under
this Plan shall not be subject in any manner to
anticipation, alienation, sale, transfer,
assignment, pledge, encumbrance, charge,
garnishment, execution, or levy of any kind,
either voluntary or involuntary, including any
such liability which arises from the Participant's
bankruptcy prior to actually being received by the
person entitled to the benefit under the terms of
the Plan.  Any attempt to anticipate, alienate,
sell, transfer, assign, pledge, encumber, charge
or otherwise dispose of any right to benefits
payable hereunder, shall be void.  The Plan shall
not in any manner be liable for, or subject to,
the debts, contracts, liabilities, engagements or
torts of any person entitled to benefits
hereunder.  Nothing in this Section shall preclude
payment of Plan benefits pursuant to a qualified
domestic relations order as defined in Code
section 414(p).

EB-00036045

- 48 -

Governing Law      SECTION 16.4  To the extent not preempted by
                   federal law, this Plan shall be interpreted and
                   enforced in accordance with the laws of New York.


        IN WITNESS WHEREOF, the Employer has caused its duly
authorized officer to execute this Plan document on its behalf
this *22* day of *December*   , 1994.


                    EBER BROS. WINE & LIQUOR CORP.



                    By *Stanley S Otto*


                    Its *Treasurer*

ROC09:14576

EB-00036046

EB-00036047

Summary Plan Description
Eber Bros. Wine & Liquor Corporation
Retirement Plan

YOUR RETIREMENT PLAN

December 1995

EB-00036048

The Eber Bros. Wine & Liquor Corporation Retirement Plan has been amended and restated in its entirety to be completely up-to-date.

Employees of Eber Bros. Wine & Liquor Corp., Rochester Liquor Corporation, Eber Bros. Wine & Liquor Syracuse, Inc., formerly M. Lichtman & Co., Inc., Eber Bros. Wine & Liquor Corp., Albany Division, Eber Bros. Wine & Liquor, Paramount Division and Monroe Display Company are covered by this Plan.

The Plan is designed to help you prepare for your own and your family's financial security after you retire. It provides normal retirement benefits at age 65; early retirement benefits between the ages of 55 and 65 for qualified participants; and retirement benefits for participants who leave the Company with five or more years of service. It also provides for a special pension to the surviving spouses of eligible married participants.

Please take the time to read this description carefully. The various provisions that determine and affect your pension rights and benefits are described on the following pages.

The effective date of the latest amendment is December 31, 1995.

EB-00036049

# TABLE OF CONTENTS

Page

When Plan Participation Begins . . . . . . . . . . . . . . .   1

Your Service and Participation . . . . . . . . . . . . . . .   2
    Vesting Service . . . . . . . . . . . . . . . . . . . .   2
    Benefit Service . . . . . . . . . . . . . . . . . . . .   2
    Change in Employee Status . . . . . . . . . . . . . . .   3

When You May Retire . . . . . . . . . . . . . . . . . . . .   4
    Normal Retirement . . . . . . . . . . . . . . . . . . .   4
    Early Retirement . . . . . . . . . . . . . . . . . . . .   4
    Deferred Retirement . . . . . . . . . . . . . . . . . .   4

How Plan Benefits are Calculated . . . . . . . . . . . . . .   5
    Compensation Means . . . . . . . . . . . . . . . . . . .   5

Normal Retirement Benefit . . . . . . . . . . . . . . . . .   6

How Your Benefit is Paid . . . . . . . . . . . . . . . . . .   7
    Straight Life Annuity . . . . . . . . . . . . . . . . .   7
    Contingent Annuitant . . . . . . . . . . . . . . . . . .   7
    Period Certain . . . . . . . . . . . . . . . . . . . . .   7
    Lump Sum . . . . . . . . . . . . . . . . . . . . . . . .   8

Normal Method of Benefit . . . . . . . . . . . . . . . . . .   9

Death Benefits . . . . . . . . . . . . . . . . . . . . . . .  10
    Preretirement Spouse's Death Benefit . . . . . . . . . .  10
    Postretirement Death Benefits . . . . . . . . . . . . .  10

Retirement Income Example . . . . . . . . . . . . . . . . .  11

Your Right to Benefits . . . . . . . . . . . . . . . . . . .  12

Insured Benefits . . . . . . . . . . . . . . . . . . . . . .  12

If You Become Disabled . . . . . . . . . . . . . . . . . . .  12

Reemployment . . . . . . . . . . . . . . . . . . . . . . . .  14
    Participation . . . . . . . . . . . . . . . . . . . . .  14
    Service . . . . . . . . . . . . . . . . . . . . . . . .  14

Claiming Your Benefits . . . . . . . . . . . . . . . . . . .  16

If Your Claim is Denied . . . . . . . . . . . . . . . . . .  16

Other Things You Should Know . . . . . . . . . . . . . . . .  17
    Plan Administration . . . . . . . . . . . . . . . . . .  17
    The Company's Contributions . . . . . . . . . . . . . .  17
    Type of Plan . . . . . . . . . . . . . . . . . . . . . .  18
    IRS Approval . . . . . . . . . . . . . . . . . . . . . .  18
    Plan Identification Numbers . . . . . . . . . . . . . .  18

EB-00036050

Plan Year . . . . . . . . . . . . . . . . . . . 18
Future of the Plan . . . . . . . . . . . . . . . 18
Agent For Legal Process . . . . . . . . . . . . 18
Your Legal Rights . . . . . . . . . . . . . . . 20

EB-00036051

## WHEN PLAN PARTICIPATION BEGINS

If you were a participant in the Plan prior to June 1, 1988, you remain a participant. If not, you are eligible to participate in the Retirement Plan after completing one year of service which is defined as the completion of 1,000 hours of service during your first 12 months of employment, provided you are not in a unit covered by a collective bargaining agreement. If you meet this requirement, Plan participation begins on the following June 1 or December 1. June 1 to May 31 is called the Plan Year.

In addition to time actually spent working at your job, hours of service include

-- paid vacation and holidays;

-- paid sick leave and disability leave;

-- periods of layoff;

-- periods of jury duty;

-- military duty;

-- hours for which back pay is awarded or agreed to; and

-- authorized paid leaves of absence.

You will be notified by the Administrative Committee when you become eligible to participate.

Prior to January 1, 1988, employee contributions were required. This is no longer the case and all such contributions have been returned to those who had previously contributed.

EB-00036052

- 2 -

## YOUR SERVICE AND PARTICIPATION

A careful record is kept of your service in order to determine

-- <u>when</u> you have earned a vested or nonforfeitable right to your Plan benefit, and

-- the <u>amount</u> of benefit to which you are entitled under the Plan.

There are two types of service:  Vesting Service and Benefits Service.

<u>Vesting Service</u>

Your <u>Vesting Service</u> is the basis for determining when you have earned a vested right to your Plan benefit.  To be vested in the Plan means that you have a nonforfeitable right to benefits due you under the Plan -- even if you leave the Company before retirement.

You become fully (100%) vested in your Plan benefit when you have been credited with five (5) years of Vesting Service or when you attain normal retirement age (which is the later of age 65 or the fifth anniversary of when Plan participation started).

You earn a <u>year of Vesting Service</u> for every Plan Year -- beginning with the Plan Year that includes your employment date -- during which you are credited with at least 1,000 hours of service, as defined on page 1.  Employees of the former M. Lichtman & Co., Inc. and Graves & Rodgers have earned Vesting Service since May 26, 1983, and February 1, 1989, respectively.  Employees of the Paramount Division have earned Vesting Service since November 21, 1994.

If you leave the Company before you are vested, you will not be entitled to receive any benefit from the Plan.

<u>Benefit Service</u>

Your <u>Benefit Service</u> is the basis for determining the <u>amount</u> of the Plan benefit to which you are entitled.

EB-00036053

- 3 -

Benefit Service means the same as Vesting Service except there are different starting dates for certain employees as indicated below:

| Employees | Earliest Benefit Service Start Date |
|-----------|-------------------------------------|
| Eber Bros. Wine & Liquor Syracuse, Inc. (M. Lichtman) | June 1, 1984 |
| Rochester Liquor Salespeople | June 1, 1988 |
| Eber Bros. Wine & Liquor, Albany Division (Graves & Rodgers) | June 1, 1989 |
| Eber Bros. Wine & Liquor, Paramount Division | December 1, 1995 |

## Change in Employee Status

If, after you become a Plan participant, your employee status changes to that of a class of employees not eligible to participate in the Plan, your plan participation will cease. However, you will continue to earn credit for years of service for <u>vesting</u> purposes.

If the reverse should occur -- that is, if a nonligible employee's status changes to that of a class of employees eligible to participate -- that employee will receive credit for <u>past</u> years of service for purposes of vesting and for determining the employee's eligibility to participate in the Plan (as discussed under "When Plan Participation Begins" on page 1).

Since only <u>active</u> Plan participants may accrue benefits under the Plan, years of service as a nonligible employee are <u>not included</u> when retirement benefits are calculated.

EB-00036054

- 4 -

WHEN YOU MAY RETIRE

Normal Retirement

Your normal retirement date is the first day of the
month that coincides with or follows your 65th birthday or, if
you were within 5 years of age 65 when you were hired, your
normal retirement date is the first day of the month that
coincides with or follows your fifth anniversary of employment.
If you retire then, your Plan benefit will start on your normal
retirement date and will continue to be paid monthly thereafter
until the month of your death.

Early Retirement

You may retire early anytime after age 55, provided
you have completed at least five (5) years of service.  Your
early retirement date will be the first day of the month that
coincides with or follows the date you retire.  You may elect
to begin receiving your Plan benefit on your early retirement
date or anytime thereafter up to your normal retirement date.

If you elect to begin receiving your monthly benefit
at any time prior to age 65, this benefit will be reduced by
5 percent for each year before age 65 payment is to begin.  The
reason for this reduction is that your retirement income
benefits will be payable to you over a longer period of time
than if they began at age 65.

Deferred Retirement

If you wish, you may postpone your retirement beyond
age 65.  Your deferred retirement date is that date on which
you actually retire.  A deferred retirement benefit is
calculated by using the factors relevant at that time, namely
Compensation, Benefit Service and the Average Wage Base.

EB-00036055

## HOW PLAN BENEFITS ARE CALCULATED

Income from the Retirement Plan is based on your years of Benefit Service and your Final Average Compensation (up to and in excess of the Average Social Security Wage Base).

As explained on page 2, your years of Benefit Service are the years during which you earn service credit for benefit purposes.

Compensation Means

        --    for salaried and hourly-paid participants: gross pay plus taxable fringe benefits as shown on Form W-2 each year;

        --    for commission salespeople:  75% of gross earnings for a calendar year, including taxable fringe benefits.

Final Average Compensation means your compensation averaged over your five consecutive calendar years out of the last ten years producing the highest average up to and including your final year.

The Average Social Security Wage Base is the average of the maximum amount of annual earnings on which Social Security taxes are paid for the 35-year period ending with the year in which you retire, terminate or become disabled, rounded down to the nearest $100.  For 1995, this amount is $25,900. The wage base increases as the cost of living rises.  Benefits from the Retirement Plan are paid in addition to the Social Security income you receive at retirement.  As you know, the Company matches the amount you pay into Social Security -- dollar for dollar -- during your working years.

EB-00036056

- 6 -

### NORMAL RETIREMENT BENEFIT

When you retire at 65, your normal retirement benefit, if paid as a straight life annuity, will be equal to the greatest of (a), (b) or, in the case of Rochester Liquor Salespeople, (c):

(a)   Your accrued benefit on May 31, 1989, under the terms of the Plan on that date.

(b)   .80% of Final Average Compensation times Benefit Service, plus .55% of Final Average Compensation in excess of the Average Social Security Wage Base times Benefit Service up to a maximum of 35 years.

(c)   Rochester Liquor Salespeople receive a benefit consisting of 2 parts:  (1) a benefit based on (b) using Benefit Service after June 1, 1988, and (2) the benefit accrued to June 1, 1988, under the Retail Clerks Plan which has been merged into this Plan.

The normal retirement benefit determined in accordance with the above formula will be adjusted to reflect the method of payment under which you elect to receive your annual benefit, if that method is any form other than a Straight Life annuity.  (See below for a description of the methods of payment available under the Plan.)

EB-00036057

- 7 -

## HOW YOUR BENEFIT IS PAID

In order to give you maximum flexibility in planning your retirement, the Plan offers several forms in which your benefit can be paid.  If you do not elect a method of payment in writing, the Plan establishes a normal method for you. These normal forms are explained on page 9.

The following are the options you may select under the Plan:

Straight Life Annuity

Under this form you will receive the full amount of your retirement benefit in monthly installments.  Payments will begin on the first day of the month following your retirement date and will continue for as long as you live.  At your death, all payments cease.

Contingent Annuitant

Under this option, you choose to have your full retirement benefit reduced in order to provide a lifetime income for someone else after your death.  You may name anyone you wish as your contingent annuitant.  After your death, your contingent annuitant would receive the amount of monthly benefit selected for the remainder of his or her lifetime. This amount can be the same or half of the benefit paid while you both are alive.

Period Certain

This method of payment would reduce your full retirement benefit in order to guarantee payments for a period of time after your death to the beneficiary you designate.  You may elect a five-year, ten-year, or 15-year period certain. This means you will receive a reduced benefit for your lifetime and, if your death occurs prior to the end of the period you selected, the same monthly benefit would continue to be paid to your beneficiary for the remainder of the period.

If you live beyond the selected period, your monthly payments would continue for your lifetime.  However, at your death there would be no payment to your beneficiary.

- 8 -

<u>Lump Sum</u>

      This option is available at retirement for that
portion of your benefit that was earned on December 31, 1995.
If you choose this option, the portion of your benefit that
accrues after 1995 will be payable in one of the other options
you select.

EB-00036059

- 9 -

## NORMAL METHOD OF PAYMENT

As explained on page 7, a normal method of payment is established for Plan participants.

If you are <u>single</u> when you retire, your normal form of payment is the <u>Straight Life Annuity</u>. If you are <u>married</u> when you retire, your normal form of payment is the <u>50% Contingent Annuitant</u> form, with your spouse as the contingent annuitant. Thus, if you predecease your spouse, your spouse will receive for life 50% of the reduced retirement income you had been receiving each month.

At least three months before your normal retirement date, you will be notified by the Administrative Committee regarding the normal method of payment and other options available, together with an explanation of how the options would affect your benefit. You will then have 90 days in which to elect your option in writing (or accept the normal form).

If you wish to receive your retirement income under any method other than the normal one established for you, you must submit your election in writing to the Administrative Committee at any time prior to early or normal retirement. If you are married, you can elect not to receive the 50% Contingent Annuitant form if your spouse consents in a writing which acknowledges the effect of such election and which is witnessed by a Plan representative or notarized.

If you do not elect an optional method of payment in writing, your benefit will be paid under the normal form.

If you revoke your election of an optional form of payment, your benefit will be paid under the normal form unless you make another election prior to your retirement date with the proper consent.

Any optional form of payment will be automatically cancelled if you die before retirement, at which time the death benefit provisions of the Plan become effective.

EB-00036060

- 10 -

## DEATH BENEFITS

Although the Plan has been designed primarily to provide retirement income, there are circumstances under which death benefits are payable.  These benefits are described below.

### Preretirement Spouse's Death Benefit

If you have 5 years of service -- your spouse is automatically eligible for a death benefit under the Retirement Plan.

Should you die before retirement and had qualified for this benefit, the benefit payable to your surviving spouse would be 50% of the reduced monthly benefit that you would have received had you retired on the date of your death with a 50% Contingent Annuitant option in effect.  Your spouse's benefit would begin on the first day of the month following the later of the date of your death or your 55th birthday and would continue for his or her lifetime.

### Postretirement Death Benefits

If you should die after beginning to receive plan benefits, your beneficiary or contingent annuitant will receive the death benefit, if any, provided under the method of payment you selected at retirement.

EB-00036061

- 11 -

RETIREMENT INCOME EXAMPLE

Let's look at an example of how a retirement benefit is calculated under the Plan.

An <u>unmarried</u> employee retires on June 1, 1995, at age 65, with a total of 35 years of Benefit Service.

The employee's final average compensation is $30,000. Here's how the Plan formula would work, assuming that (b) in the formula operative:

```
.80% x $30,000 x 35                              = $ 8,400.00
.55% x ($30,000 - $25,900) or $4,100 x 35 =         789.25
            Annual Benefit                   = $ 9,189.25
```

Of course, if the employee's accrued benefit as of May 31, 1989, is more, that would be the benefit.  In the case of Rochester Liquor Salespeople, the (c) part of the formula is used.

This is the <u>annual</u> amount this employee would receive under the straight life annuity.  The employee can elect another option, and if married, the form will be the 50% Contingent Annuitant Form.

<u>Remember</u>, your primary Social Security benefit is in addition to your retirement benefit under the Plan.

EB-00036062

- 12 -

### YOUR RIGHT TO BENEFITS

Plan benefits are intended only for you and for your spouse or beneficiary. They <u>cannot</u> be assigned, attached or seized by any creditors.

### INSURED BENEFITS

Certain benefits under this Plan are insured by the Pension Benefit Guaranty Corporation (PBGC) in the event the Plan terminates. Generally, the PBGC guarantees most vested normal retirement benefits and certain disability and spouses' pensions. However, the PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of plan termination. However, if a plan has been in effect less than five years before it terminates, or if benefits have been increased within the five years before plan termination, the whole amount of the plan's vested benefits or the benefit increase may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is adjusted periodically.

This insurance protection is made possible by premiums paid to the PBGC each year by employers, including Eber Bros. For more information on insurance and its limitations, ask the Plan Administrator or the PBGC. Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 2020 K Street, NW, Washington, D.C. 20006. Or you can call (202) 254-4817.

### IF YOU BECOME DISABLED

If you become <u>permanently disabled</u> at any time prior to your normal retirement date, you are entitled to receive benefits from the Retirement Plan. A <u>permanent disability</u> is a physical or mental condition which entitles you to receive Social Security Disability Benefits and which, in the opinion of one or more licensed physicians selected by the Administrative Committee, will permanently prevent you from performing the usual duties of your job.

The amount of your disability retirement benefit will be based on your compensation and years of participation at the time you terminated employment. If you elect to begin receiving Plan benefits before age 65, your monthly payments

EB-00036063

- 13 -

would be reduced as they are at early retirement to reflect the
longer period of time benefits are expected to be paid to you.

EB-00036064

- 14 -

## REEMPLOYMENT

If you leave the Company and are subsequently reemployed, your eligibility to resume participation in the Plan and your previously accrued service would be treated in the following ways:

Participation

If you were a participant in the Plan on your termination date, your Participation resumes immediately on the date you return to employment with the Company.

If you were not a participant when you left the Company, you will be treated as a new employee under the Plan. In order to begin Plan participation, you must first meet the one-year eligibility requirement described on page 1.

Service

When you are reemployed, you may regain your previous service under the Plan, depending on the amount of service you have accrued at your termination, the length of your break in service, and whether you were a vested participant when you left. Depending on your individual situation, here is what would happen:

1. If you are reemployed before incurring a break in service, your prior years of service will be reinstated as of the date of your reemployment.

   A break in service occurs at the end of a Plan Year during which you have not completed at least 500 hours of service. For example, if you terminated employment in August, having completed only 340 hours of service, you would incur a break in service on the following May 31.

2. If you were vested in the Plan at the time you incurred a break in service, your years of service from your prior period of employment will be reinstated on the date of your reemployment.

3. If you were not vested or were not a participant at the time you incurred a break in service.

   -- If the length of your break in service is less than the number of years of service from your prior period of employment or 5

EB-00036065

- 15 -

years, whichever is longer, your prior
service will be reinstated on the date of
your reemployment;

-- If the length of your break in service
   equals or exceeds the longer of 5 years or
   your prior service, your service prior to
   the break is not reinstated.  Your prior
   service will not count toward either your
   eligibility or your vesting.

- 16 -

## CLAIMING YOUR BENEFITS

Plan benefits at normal retirement will be paid automatically.  However, you must apply for early retirement income.  You must inform the Administrative Committee in writing at least 90 days before you want your early retirement income to begin.

## IF YOUR CLAIM IS DENIED

If all or part of any claim for Plan benefits is denied, you will receive notice of the denial from the Administrative Committee within 90 days (or, if special circumstances require an extension, within 180 days).  This notice will include

-- the specific reason for the denial;

-- the specific Plan provisions on which the denial is based;

-- any additional information required to reconsider the claim and an explanation of why this information is needed; and

-- an explanation of the Plan's claim review procedures.

You or your representative have the right to review all documentation pertaining to the decision.  If you disagree with the decision, you may file a written appeal with the Administrative Committee within one year.  The Administrative Committee will then reconsider the claim and give written notice of its decision within 60 days, unless special circumstances require an extension of time for processing.  In this case, the time limit will not be later than 120 days.

This second notice will include the reason for the decision, with specific references to pertinent Plan provisions.  All interpretations, determinations and decisions of the Administrative Committee will be final and binding.  If you need assistance with this procedure, contact the Vice President of Finance.

EB-00036067

- 17 -

Other Things You Should Know

PLAN ADMINISTRATION

The Plan is administered by the Administrative Committee, appointed by the Board of Directors.  The Committee has full responsibility for administering the terms and provisions of the Plan in a fair and equitable manner for all Plan participants.

The address and telephone number of the Committee are:

Administrative Committee
Eber Bros. Wine & Liquor Corp.
3200 Monroe Avenue
Rochester, New York 14618
(716) 586-7700

Day-to-day management of the Trust Fund of the companies has been delegated to the Plan Trustee which is

M&T Bank
44 Exchange Street
Rochester, NY  14614

Under the terms of the formal trust agreement, the Trustees are authorized to receive, hold, invest and reinvest Plan contributions, interest dividends and other income.

At the direction of the Administrative Committee, the Trustees make payments from the Trust Fund to participants or beneficiaries.  No part of the Trust Fund can be diverted or used for any purpose except the exclusive benefit of the participants or beneficiaries of the Retirement Plan.

All Plan benefits are paid by the Trustees from the available funds in the Trust Fund.

THE COMPANY'S CONTRIBUTIONS

Based on professional actuarial advice, and at the discretion of the Administrative Committee, the Company makes contributions to the Trust Fund in an amount designed to meet or exceed minimum funding requirements under the Employee Retirement Income Security Act of 1974.

EB-00036068

- 18 -

## TYPE OF PLAN

The Plan is classified by the Department of Labor as a "defined benefit" pension plan.

## IRS APPROVAL

The Retirement Plan and Trust is subject to continuing approval of the Internal Revenue Service and may be amended to comply with future regulations.

## PLAN IDENTIFICATION NUMBERS

You should refer to the Employer Identification Number (EIN) and the Plan Number (PN) in any formal correspondence about the Plan.  The Employer Identification Number is 16-0417450.  The Plan Number is 001.

## PLAN YEAR

The Plan Year begins on June 1 and ends on May 31. Plan records are kept on a Plan Year basis.

## FUTURE OF THE PLAN

The Company intends to continue the Retirement Plan indefinitely, but reserves the right to change, amend or terminate it, should that ever become necessary.  However, no amendment would ever be made that would reduce the accrued benefit of any participant at any time.  Should the Plan be terminated all participants become vested in their accrued benefits but only to the extent of the Plan's funding.  The insurance provided by the PBGC is described on page 14.

## AGENT FOR LEGAL PROCESS

Legal process may be served on the Plan Administrator by directing such service to:

        Secretary of the Administrative Committee
        Eber Bros. Wine & Liquor Corp.
        3200 Monroe Avenue
        Rochester, New York 14618
        (716) 586-7700

Process may also be served on the Plan Trustee,

EB-00036069

- 19 -

listed on page 17.

EB-00036070

## YOUR LEGAL RIGHTS

Your Retirement Plan is covered by the Employee
Retirement Income Security Act of 1974 (ERISA), which was
designed to protect employees' rights under their benefit
plans.  As a participant in the Plan, you have the right to
examine, without charge, the official Plan document, the annual
report of Plan operations and the Plan description as filed
with the Department of Labor.  This information is available
for your review at the Corporate offices, 3200 Monroe Avenue,
Rochester, New York 14618, during regular working hours.

Personal copies may be obtained upon written request
to the Vice President of Finance, 3200 Monroe Avenue,
Rochester, New York 14618.  A reasonable charge for
reproduction may be made.  In addition, once each year you will
receive a summary of the financial report of Plan operations.

If you request materials for review, and do not
receive them within 30 days, you may file suit in a federal
court.  If you do this, the court may require the Plan
Administrator to pay you up to $100 a day until you do receive
the materials -- unless the materials were not sent because of
reasons beyond the Administrator's control.

The procedure to follow if you wish to file a claim
for Plan benefits is described on page 16.  If your claim for
benefits is denied, in whole or in part, you will receive a
written explanation of the reason for the denial.  You have the
right to review all documentation pertaining to this decision.
If you feel that your claim for benefits has been ignored or
improperly denied, you again have the right to file suit in a
state or federal court.

ERISA also permits you to request a statement -- once
each year -- about your rights to a pension, what your benefits
would be at normal retirement, whether you have a vested right
to benefits (see page 2) and, if not, how long you must work to
become vested.

You also have the right to expect fiduciaries -- the
people who are responsible for the management of the Plan -- to
act solely and prudently in the interests of Plan participants.
If it should happen that Plan fiduciaries have misused the Plan
money, or if you are discriminated against for asserting your
rights, you may seek assistance from the U.S. Department of
Labor, or you may file suit in a federal court.

It is important to remember that, in any court case,
the court will decide who should pay court costs and legal
fees.  If you win your case, the court may order the person you

EB-00036071

- 21 -

have sued to pay these costs and fees.  It is possible, however, that you will lose the case.  If you lose, the court may order you to pay court costs and legal fees.  This could happen, for example, if the court decides that your claim is frivolous.

Therefore -- and in your own best interests -- the Company urges you to bring to its immediate attention any questions or problems you may have with regard to your benefits.  We are committed to ensuring proper treatment and full disclosure of all pertinent information to Plan participants.  You need not fear that you will be fired or discriminated against in any way due to any attempt to obtain your benefits or exercise your legal rights.

If you have any questions about the Plan, you should contact the Plan Administrator.  If you have any questions about this statement, or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

EB-00036072