UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN and AUDREY HAYS,<br><br>                                          Plaintiffs,<br><br>v.<br><br>LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC, ESTATE OF ELLIOTT W. GUMAER, JR. and WENDY EBER,<br><br>                                          Defendants,<br><br>and<br><br>EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER-CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS OF MAINE, INC., and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,<br><br>                                          Nominal Defendants. | Civil Action No.<br>16-CV-9517(LAK/KHP) |

## **EBER DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 56.1 of the Local Rules of the U.S. District Court for the Southern District of New York, Defendants, Lester Eber, Alexbay, LLC f/k/a Lester Eber, LLC, Wendy Eber (the "Eber Defendants") submit in support of their motion for summary judgment this statement of material facts as to which there is no genuine dispute.

1.     Defendant, Lester Eber ("Lester") began working for Nominal Defendant Eber Bros. & Co. Inc. ("Eber Bros."), a wine and liquor distributorship, in or about 1959. He eventually held the titles of President and Director of Eber Bros. Affidavit dated November 8, 2019 of Lester Eber ("L. Eber Affidavit") at ¶ 2.

2.      Lester's father, Allen Eber, the founder of Eber Bros., created a Testamentary Trust in his 1969 Will (the "Will") known as the Allen Eber Trust ("the Trust"). L. Eber Affidavit at ¶ 3.

3.      Lester served as Co-Trustee of the Trust, along with Elliott W. Gumaer, Jr., and an institutional trustee, eventually Canandaigua National Bank ("CNB"). L. Eber Affidavit at ¶ 4.

4.      Plaintiffs, Daniel Kleeberg, Lisa Stein and Audrey Hays were beneficiaries or contingent remaindermen of a combined two-thirds interest of the Trust. One-third of the interest in the Trust was held by Lester. Exhibit A to L. Eber Affidavit.

5.      Prior to its termination in June 2017, the Trust held a number of assets, most relevantly for the present dispute, all of the voting stock in Eber Bros. L. Eber Affidavit at ¶ 5.

6.      Nominal Defendant Eber Bros. Wine and Liquor Corp ("EBWLC"), is a subsidiary of Eber Bros. L. Eber Affidavit at ¶ 6.

7.      Lester became President of EBWLC, a position he held until he voluntarily resigned on February 1, 2012. L. Eber Affidavit at ¶ 6.

8.      Prior to the 2012 Foreclosure, Nominal Defendant Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro") was a wholly-owned subsidiary of EBWLC. L. Eber Affidavit at ¶ 7.

9.      Nominal Defendant Eber-Connecticut, LLC ("Eber CT"), is a subsidiary of Eber Metro, which owns 79% of Eber CT. L. Eber Affidavit at ¶ 8.

10.     Lester is the current CEO and Director of both Eber Metro and Eber CT. L. Eber Affidavit at ¶ 9.

2

11. Wendy Eber ("Wendy") was CFO and Secretary of EBWLC from approximately 2007 until 2012, at which time she became President. W. Eber Affidavit at ¶ 4.

12. Wendy is the current President of Eber CT. W. Eber Affidavit at ¶ 5.

13. Lester, without any obligation, voluntarily provided Plaintiffs and their immediate families with gifts and benefits. L. Eber Affidavit at ¶ 10.

14. Lester approved loans to Plaintiff Daniel Kleeberg that were never repaid. L. Eber Affidavit at ¶ 11, (Kleeberg transcript pp. 107-113).

15. Lester paid the health care expenses and health insurance costs for his sister, Sally Kleeberg. L. Eber Affidavit at ¶ 12.

16. Lester made payments to Trust beneficiaries when the Trust had no money to distribute. L. Eber Affidavit at ¶ 13.

17. Lester arranged for the Trust to distribute money on a monthly basis to Plaintiff, Lisa Stein and her daughter, to help with her daughter's medical expenses. L. Eber Affidavit at ¶ 13.

18. In approximately October 2004, Southern Wine and Spirits of America, Inc. ("Southern"), a national wine and liquor distributorship, entered the New York market. L. Eber Affidavit at ¶ 14, W. Eber Affidavit at ¶ 7.

19. Southern solicited and hired approximately 20 of EBWLC's key salespeople with knowledge of EBWLC's retail customer base, distribution network and business strategies. L. Eber Affidavit at ¶ 14.

20. Southern's entry into New York resulted in the Eber Entities exiting the New York market. W. Eber Affidavit at ¶ 7.

21. EBWLC sued Southern and previous EBWLC employees in the New York State Supreme Court, County of Monroe, Index No.: 135/05, for, *inter alia,* tortious interference, inducement of breach of fiduciary duty, unfair competition, and interference with prospective business advantage. The application for preliminary injunction was denied by the Hon. Kenneth R. Fisher. L. Eber Affidavit at ¶ 15.

22. Ultimately, EBWLC entered into a settlement agreement with Southern. L. Eber Affidavit at ¶ 15.

23. As a result of the impact of Southern's entry into the New York market on EBWLC, in March 2007, Wells Fargo put EBWLC's loans into default and classified the loans as a "workout", freezing all of EBWLC's working capital in order to pay down the outstanding loans. Even after the Wells Fargo loans were paid off, it declined to extend any further credit to any Eber entity. L. Eber Affidavit at ¶ 26.

24. Lester was hired by Southern in August of 2007 as a consultant and lobbyist at the specific request of Southern based on its needs. L. Eber Affidavit at ¶ 23 (Hager transcript, pp. 22-26).

25. Prior to August 2007, EBWLC and Metro had laid off all employees and ceased New York operations. L. Eber Affidavit at ¶ 16.

26. No Eber company ever did any consulting or lobbying work. L. Eber Affidavit at ¶ 18.

27. Between 2008 and 2012, the Eber Nominal Defendants (specifically Eber-Connecticut, LLC) continued to have serious financial problems and made numerous attempts to arrange new first lien debt financing with third-party lenders, without success. L. Eber Affidavit at ¶ 27.

4

28. Lester made a number of personal loans to the Eber companies evidenced by the following:

    A. October 1, 2002 and August 15, 2005: $2,079,645.00 in Notes to EBWLC which were amended and restated on March 13, 2006

    B. October 2009: $1.5 Million LOC Note to Eber Metro; Board Resolutions

    C. February 26, 2010: EBWLC Guaranty

    D. February 26, 2010: Security Agreement by EBWLC and Metro; Board Resolutions; Minutes

    E. February 11, 2011: Amended and Restated Security Agreement EBWLC and Metro

    F. February 11, 2011: Debt Assumption Agreement Between EBWLC, Metro (Metro assumed all of EBWLC's obligation under the $1.5 Million Note); Board Resolutions

    G. August 18, 2011: Metro Board Meeting Minutes

    H. January 18, 2012: Assignments (EBWLC & Metro) of Line of Credit Note and Security Agreement by and among Lester and Alexbay, LLC

    I. March 13, 2012: Joint Meeting Minutes for EBWLC and Metro.

L. Eber Affidavit at ¶ 29

29. The Will expressly permitted Lester, as a Co-Trustee, to make a secured loan to the Trust or the companies owned by it – and concomitantly, to enforce his security interest in the collateral. L. Eber Affidavit at ¶ 30.

30. Lester Eber wrote to Plaintiffs Sally Kleeberg and Audrey Hays on March 22, 2010 and April 2, 2010 explaining the dire financial situation faced by EBWLC. L. Eber Affidavit at ¶ 32.

31. The March 22, 2010 and April 2, 2010 correspondence from Lester to Sally Kleeberg and Audrey Hays explained that Lester had already loaned significant sums of

money, and additional sums would be needed to keep the Eber companies from going under. L. Eber Affidavit at ¶ 33.

32. Lester offered Sally Kleeberg and Audrey Hays the opportunity to participate in the loans on a 1/3 basis and both rejected Lester's offer to participate. L. Eber Affidavit at ¶ 34-35.

33. Throughout 2011, the companies continued to perform poorly. L. Eber Affidavit at ¶ 36.

34. EBWLC and Metro failed to pay any of the principal or interest on the loans made by Lester Eber. W. Eber Affidavit at ¶ 38.

35. By the end of 2011, the outstanding principal and accrued but unpaid interest on Lester's loans was an aggregate $3,650,682.48. L. Eber Affidavit at ¶ 39.

36. The loans were the primary obligation of Eber Metro, but all of the loans were guaranteed by EBWLC assets and were secured by a validly-perfected first priority security interest. L. Eber Affidavit at ¶ 40.

37. Lester Eber assigned the loans to Alexbay LLC, a newly formed Connecticut limited liability company owned by Lester. L. Eber Affidavit at ¶ 41.

38. Eber Metro did not repay the sums due as required under the Line of Credit Note and Debt Assumption Agreement. L. Eber Affidavit at ¶ 44.

39. By late 2011, Lester stated that he no longer was willing to put more money into the companies. L. Eber Affidavit at ¶ 36.

40. On or about February 21, 2012, despite being under no obligation to do so, in order to foreclose, Alexbay filed an action in New York State Supreme Court, Monroe County, Index No.: 2012/1919 (the "Article 9 Action") under UCC §9-620 and §9-627,

seeking a judicial determination that Alexbay's acceptance of all Eber Bros. ownership interest in Eber Metro (and indirectly all of Eber Metro's 79% ownership interest in Eber CT), in full satisfaction of the loans then held by Alexbay was "commercially reasonable." L. Eber Affidavit at ¶ 45.

41. There is no requirement that Plaintiffs – or any of the Trust beneficiaries be notified of the UCC Article 9 action. L. Eber Affidavit at ¶ 46.

42. Lester resigned from EBWLC. L. Eber Affidavit at ¶ 38.

43. On May 24, 2012 the Court entered an Order Granting the Article 9 relief (the "Article 9 Order"). L. Eber Affidavit at ¶ 50.

44. EBWLC executed a Unanimous Written Consent consenting to the Article 9 Foreclosure and Alexbay executed an Agreement for Turnover on June 5, 2012. L. Eber Affidavit at ¶ 51.

45. Subsequent to 2012, Lester continued to make loans to Eber companies. L. Eber Affidavit at ¶ 52.

46. Lester paid $400,000 to settlement for a lawsuit brought by Harris Beach. L. Eber Affidavit at ¶ 53.

47. Lester and his wife also waived his personal pension entitlement from EBWLC with a value of approximately $1.4 million in order to settle the Eber Entities dispute(s) with the PBGC. L. Eber Affidavit at ¶ 54.

48. Plaintiff, Daniel Kleeberg, was able to keep his full Eber companies' pension benefit. L. Eber Affidavit at ¶ 55. (Kleeberg transcript, pp. 93-96).

## EBWLC RETIREMENT PLAN LIABILITY

49.     In 1954, the Eber Bros. Wine & Liquor Corp. Retirement Plan (the "EBWLC Plan") was adopted by EBWLC, as sponsor. W. Eber Affidavit at ¶ 12.

50.     The EBWLC Plan required the accrual and payment of pension benefits and required EBWLC to make annual contributions to the EBWLC Plan to fund benefits thereunder. W. Eber Affidavit at ¶ 13.

51.     The EBWLC Plan sponsor, and the members of its "controlled group," including Metro, were required to make certain minimum annual contributions to the EBWLC Plan. W. Eber Affidavit at ¶ 14.

52.     Benefits paid under the EBWLC Plan were expensed annually for financial accounting purposes. W. Eber Affidavit at ¶ 15.

53.     The EBWLC Plan was a "single employer defined benefit plan" subject to the termination insurance program established under Title IV of ERISA. 29 U.S.C.S. § 1002(3), (41) and §§ 1301-1461. W. Eber Affidavit at ¶ 16.

54.     The EBWLC Board believed that the termination liability of the EBWLC Plan was a "debt" of EBWLC, as plan sponsor, because of its obligations under the Plan itself. W. Eber Affidavit at ¶ 41.

55.     On August 6, 2014, the Pension Benefits Guaranty Corporation ("PBGC") determined that termination of the EBWLC Plan was necessary because the EBWLC Plan would be unable to pay benefits when due. W. Eber Affidavit at ¶ 17.

56.     By letter dated March 29, 2016, the PBGC demanded immediate payment of $6,237,920 for unfunded benefit liabilities and other related amounts. W. Eber Affidavit at ¶ 19.

57. The March 29, 2016 letter confirmed that Metro was part of the "control group," and thus liable for the debt. W. Eber Affidavit at ¶ 19.

58. On January 19, 2016, the United States District Court for the Western District of New York established April 30, 2010 as the termination date of the EBWLC Retirement Plan. W. Eber Affidavit at ¶ 20.

59. The January 19, 2016 Order also held, as a matter of law, that EBWLC ceased operations by December 31, 2007, and terminated all its employees by May 31, 2009. W. Eber Affidavit at ¶ 21.

60. The January 19, 2016 Order also held as a matter of law that "as of April 30, 2010, the [EBWLC] 'controlled group' included…Eber Metro..." W. Eber Affidavit at ¶ 22.

61. EBWLC's independent actuary, calculated that, as of June 1, 2012, the termination liability of the EBWLC Plan was $5,063,388. Affidavit of Michael A. Gallagher, dated November 5, 2019 ("Gallagher Affidavit") at ¶ 8.

62. Mr. Gallagher calculated that EBWLC would have needed $9,823,177 as of June 1, 2012 to satisfy the EBWLC Plan's liability for all benefits to all participants, but only had $4,759,789 in trust assets held by Canandaigua National Bank ("CNB"). W. Eber Affidavit at ¶ 24; Gallagher Affidavit at ¶ 6-7.

63. The EBWLC Plan was thus underfunded as of 2012 by $5,063,388. W. Eber Affidavit at ¶ 25; Gallagher Affidative at ¶ 8.

64. As of the termination date, i.e. April 30, 2010, Eber Bros., EBWLC and Metro were jointly and severally liable for the underfunded EBWLC Plan. W. Eber Affidavit at ¶ 27.

9

## **TEAMSTERS RETIRMENT FUND LIABILITY**

65. Eber Bros., EBWLC and Metro were also jointly and severally liable for liabilities to the New York State Teamsters Conference & Retirement Fund (the "Teamsters Fund"). W. Eber Affidavit at ¶ 28.

66. On January 10, 2008, the Teamsters Fund assessed an employer withdrawal liability of $2,212,367.47 against the Eber "controlled group", which included Eber Bros., EBWLC and Metro. W. Eber Affidavit at ¶ 31.

67. As of June 1, 2012, the remaining employer withdrawal liability to the Teamsters Fund of the Eber "controlled group" was approximately $1,421,029.95. W. Eber Affidavit at ¶ 32.

68. On August 1, 2012, EBWLC executed a Confession of Judgment regarding that amount. W. Eber Affidavit at ¶ 33.

DATED: Rochester, New York
November 8, 2019

UNDERBERG & KESSLER LLP

By: /s/ Paul F. Keneally
Paul F. Keneally, Esq.
Colin D. Ramsey, Esq.
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
585-258-2882

TO: Brian C. Brook, Esq.
Brook & Associates, PLLC
*Attorneys for Plaintiffs*
100 Church Street, Floor 8
New York, New York 10007
212-256-1957

10

CC:  Robert Calihan, Esq.
Calihan Law PLLC
*Attorneys for Defendant Estate of*
*Elliott W. Gumaer, Jr.*
16 East Main Street, Suite 620
Rochester, New York 14614

Donald O'Brien, Esq.
Woods Oviatt Gilman, LLP
*Attorneys for Nominal Defendant*
*Canandaigua National Bank & Trust Company*
1900 Bausch & Lomb Place
Rochester, New York 14604