UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN and AUDREY HAYS,

Plaintiffs,

v.

LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC,
ESTATE OF ELLIOTT W. GUMAER, JR. and WENDY EBER,

Defendants,

and

EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR
CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER-
CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS.
ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS
OF MAINE, INC., and CANANDAIGUA NATIONAL BANK &
TRUST COMPANY,

Nominal Defendants.

Civil Action No.
16-CV-9517(LAK/KHP)

## EBER DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

UNDERBERG & KESSLER LLP
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
(585) 258-2800

Paul F. Keneally, Esq.,
Colin D. Ramsey, Esq.,
Jillian K. Farrar, Esq.,
Of Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.    THE EBER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT THAT EBER BROS., EBWLC AND METRO WERE JOINTLY AND SEVERALLY LIABLE FOR THE EBWLC AND TEAMSTERS PENSION LIABILITIES. ...................................................... 3

    A.    The unfunded benefit liability under the EBWLC Retirement Plan, as of the time of the 2012 Foreclosure, was a "debt" of each of Eber Bros., EBWLC and Metro .......... 3

    B.    Eber Bros., EBWLC and Metro were jointly and severally liable for the EBWLC Plan underfunding. ..................................................................................................... 5

    C.    Eber Bros., EBWLC, and Metro were also jointly and severally liable for the Teamsters Fund employer withdrawal liability. ........................................................ 6

II.    PLAINTIFFS ARE BARRED FROM CHALLENGING THE N.Y. U.C.C. §§ 9-620 & 9-627 FORECLOSURE, JUDGE ROSENBAUM'S ORDER AND THE UNDERLYING DEBT PURSUANT TO THE *ROOKER-FELDMAN* DOCTRINE. .............................................. 6

    A.    The *Rooker-Feldman* doctrine precludes Plaintiffs' challenge of the Court-approved 2012 Foreclosure. ................................................................................................ 7

        1.    Plaintiffs lost or oppose the result in state court. ............................................. 7

        2.    The injuries Plaintiffs complain of are the result of the state court Order. ............. 8

        3.    Plaintiffs ask this Court to vacate Justice Rosenbaum's Order and seeks rescission of the underlying obligations. ......................................................... 9

        4.    The State Court Judgment preceded the commencement of the federal action. ... 9

    B.    The *Rooker-Feldman* doctrine also bars any challenges to the underlying debts. ... 10

    C.    Plaintiffs' only challenge to Justice Rosenbaum's Order Would Have Been in Monroe County Supreme Court. ............................................................................................ 12

III.    PLAINTIFFS' ATTACK ON JUSTICE ROSENBAUM'S ORDER AND THE UNDERLYING INDEBTEDNESS IS ALSO BARRED BY RES JUDICATA. ................. 12

IV.    THE 2012 FORECLOSURE TRANSFERRED TO ALEXBAY ALL OF EBWLC'S RIGHTS IN THE CAPITAL STOCK OF METRO IN FULL SATISFACTION OF ALEXBAY'S SECURED LOANS PURSUANT TO N.Y. U.C.C. § 9-620. ............................................. 14

V.    LOANS MADE BY LESTER EBER TO EBWLC AND METRO, THE GRANT AND PERFECTION OF AN ARTICLE 9 SECURITY INTEREST IN THE COLLATERAL SECURING SUCH LOANS, AND THE 2012 FORECLOSURE ARE NOT VOIDABLE BY PLAINTIFFS BY VIRTUE OF ANY "NO FURTHER INQUIRY" RULE APPLICABLE TO LESTER EBER AS A CO-TRUSTEE OF THE TRUST. .................................................. 16

VI.    LESTER EBER, AS A CO-TRUSTEE, OWED NO DUTY TO INFORM TRUST BENEFICIARIES OF THE PROPOSED 2012 FORECLOSURE. .................................. 20

i

VII.    THE EBER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFFS' FAITHLESS SERVANT CLAIMS ON BOTH THE MERITS AND BASED UPON THE STATUTE OF LIMITATIONS. ....................................................... 21

VIII.   THE ATTEMPT BY CNB, AS SOLE REMAINING CO-TRUSTEE OF THE TRUST, TO TRANSFER CAPITAL STOCK OF EBER BROS. TO PLAINTIFFS IN OCTOBER 2017 WAS INEFFECTIVE.................................................................................................... 23

IX.     MANY OF PLAINTIFFS' OTHER CLAIMS ARE TIME-BARRED.................................. 26

X.      COUNTS VI AND VII SHOULD BE DISMISSED AS DUPLICATIVE OF OTHER CLAIMS PLED BY PLAINTIFFS.............................................................................................. 27

XI.     PLAINTIFFS' COUNT X FOR COMMON LAW (EQUITABLE) INDEMNITY FAILS AS A MATTER OF LAW AND MUST BE DISMISSED ........................................................ 28

CONCLUSION.................................................................................................................... 29

## TABLE OF AUTHORITIES

<u>Case</u>                                                                                                       <u>Page</u>

*Ashby v. Polinsky*,
   2007 U.S. Dist. LEXIS 12692 (E.D.N.Y. Feb. 22, 2007)............................................ 10

*Brown v. Bedell*, 263 N.Y. 177 (1934) ............................................................................ 21

*Commission on Ecumenical Mission & Relations of United Presbyterian*
   *Church v. Roger Gray,* Ltd., 27 N.Y.2d 457 (1971) ................................................... 21

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)................................................ 11

*Dockery v. Cullen & Dykman*,
   90 F. Supp. 2d 233 (E.D.N.Y. 2000) ........................................................................ 11

*Doe v. Solera Capital LLC*,
   2019 U.S. Dist. LEXIS 55860 (S.D.N.Y. Mar. 31, 2019)............................................ 21

*Done v. Wells Fargo Bank, N.A.*,
   2009 U.S. Dist. LEXIS 84114 (E.D.N.Y. Aug. 7, 2009) ............................................. 11

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005)................................................................................................... 7

*Feliciano v. U.S. Bank Nat. Ass'n*,
   2014 U.S. Dist. LEXIS 88103 (S.D.N.Y. June 27, 2014) ........................................... 10

*Grewal v. Cuneo*,
   2016 U.S. Dist. LEXIS 8349 (S.D.N.Y. Jan. 25, 2016) ............................................. 22

*H&H Envtl. Sys. v. Evanston Ins. Co.*,
   2019 U.S. Dist. LEXIS 39700 (W.D.N.Y. 2019)........................................................ 28

*Hazel-Atlas Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944)....................................... 12

*Hoblock v. Albany County Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005) ......................................................................................... 7

*In re A.C.E. Elevator Co.*,
   347 B.R. 473 (Bankr. S.D.N.Y. 2006)......................................................................... 3

*In re Chateaugay Corp.*, 130 B.R. 690 (S.D.N.Y. 1991) ................................................. 3

*In re Chateaugay Corp.*, 115 B.R. 760 (Bankr. S.D.N.Y. 1990) ...................................... 4

*In re Estate of Rothko*, 43 N.Y.3d 305 (1977)................................................................. 17

*In re Finley, et al.*, 160 B.R. 882 (Bankr. S.D.N.Y. 1993)................................................. 3

*In re Kontaratos*, 10 B.R. 956 (Bankr. D. Me. 1981) ...................................................... 23

*Kaplan v. Bennett*, 465 F. Supp. 555 (S.D.N.Y. 1979).................................................... 8

*Keselman v. Webber*, 56 A.D.3d 728 (2d Dep't 2008)................................................... 26

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)................................................................................................... 8

*Matter of People of the State of New York, by Eliot Spitzer,
   as Attorney Gen. v. Applied Card Sys., Inc.*, 11 N.Y.3d 105 (2008) ........................ 12

*Matter of Tydings (Ricki Singer Grantor Trust)*,
   32 Misc. 3d 1204(A) (N.Y. Sur. Ct. 2011)............................................................... 19

*McCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369 (2011) ............................................ 29

*McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007) ........................................................... 8

*O'Brien v. Syracuse*, 54 N.Y.2d 353 (1981)................................................................. 13

*O'Hayer v. De St. Aubin*, 30 A.D.2d 419 (2d Dep't 1968) ........................................... 16

*O'Neill v. Hernandez*, 2010 U.S. Dist. LEXIS 33262 (S.D.N.Y. Mar. 25, 2010) ............. 12

*Papilsky v. Berndt*, 466 F.2d 251 (2d Cir. 1972) ........................................................... 8

*Parra v. Greenpoint Mortg. Co.*,
   2002 U.S. Dist. LEXIS 25281 (E.D.N.Y. Mar. 26, 2002)........................................... 11

*Pfotzer v. Amercoat Corp.,* 548 F.2d 51 (2d Cir. 1977) ............................................... 12

*Renz v. Beeman*, 589 F.2d 735 (2d Cir. 1978) ............................................................. 17

*Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) .................................................................. 7

*Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21 (1985)........................................... 28

*Ross v. Bernhard*, 396 U.S. 531 (1970)......................................................................... 8

*Saylor v. Lindsley*, 391 F.2d 965 (2d Cir. 1968)............................................................ 8

*SEC v. John E. Samuels & Co.*,
     1973 U.S. Dist. LEXIS 15588 (S.D.N.Y. Jan. 2, 1973) ............................................... 23

*Sofi Classic S.A. de C.V. v. Hurowitz*,
     444 F. Supp. 2d 231 (S.D.N.Y. 2006) ..................................................................... 27

*Swiatkowski v. Citibank*, 745 F. Supp. 2d 150 (E.D.N.Y. 2010) ........................................ 11

*Thibodeaux v. Pioneer Land Dev. & Realty Corp.*,
     420 So .2d 1162 (La.App. 5 Cir 1982) .................................................................... 26

*Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*,
     936 F. Supp. 2d 376 (S.D.N.Y. 2013) ..................................................................... 28

*United States SBA v. Feinsod*,
     347 F. Supp. 3d 147 (E.D.N.Y. 2018) ..................................................................... 28

*Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50 (S.D.N.Y. 1986) .................................... 12

*Ward v. Bankers Trust Co. of California, N.A.*,
     2011 U.S. Dist. LEXIS 32796 (E.D.N.Y. Mar. 29, 2011) ............................................ 11

*Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270 (1970) ........................................................... 13

*Webster v. Wells Fargo Bank, N.A.*,
     2009 U.S. Dist. LEXIS 120952 (S.D.N.Y. Dec. 23, 2009) ......................................... 10

*Willensky v. Lederman*,
     2015 U.S. Dist. LEXIS 8632 (S.D.N.Y. 2015) ......................................................... 26

*Zumpano v. Quinn*, 6 N.Y.3d 666 (2006) ........................................................................ 26

<u>Statutes</u>                                                                                          <u>Page</u>

11 U.S.C. § 101(5) ..................................................................................................... 3

11 U.S.C. § 101(12) ................................................................................................... 3

11 U.S.C. § 101(32) ................................................................................................ 3, 6

29 U.S.C. § 37 .......................................................................................................... 6

29 U.S.C. § 1002(3) ............................................................................................... 5, 6

29 U.S.C. § 1002(5) ................................................................................................... 6

29 U.S.C. § 1002(37)(A) ............................................................................... 6

29 U.S.C. § 1082 .......................................................................................... 4

29 U.S.C. § 1083 .......................................................................................... 4

29 U.S.C. § 1301(b)(1) .................................................................................. 6

29 U.S.C. § 1301-1461 .................................................................................. 5

29 U.S.C. § 1342 .......................................................................................... 5

29 U.S.C. § 1362(a) ...................................................................................... 5

N.Y. C.P.L.R. § 213(1) ................................................................................. 26

N.Y. C.P.L.R. § 213(7) ................................................................................. 26

N.Y. C.P.L.R. § 213(8) ................................................................................. 26

N.Y. C.P.L.R. § 214(3) ................................................................................. 26

N.Y. C.P.L.R. § 5015 ................................................................................... 12

N.Y. D.C.L. § 270 ..................................................................................... 3, 6

N.Y. D.C.L. § 271 ......................................................................................... 3

N.Y. D.C.L. § 275 ......................................................................................... 3

N.Y. U.C.C. § 1-304 ...................................................................................... 1

N.Y. U.C.C. § 8-204 ................................................................................... 26

N.Y. U.C.C. § 8-207 ................................................................................... 23

N.Y. U.C.C. § 8-301(1) ............................................................................... 23

N.Y. U.C.C. § 8-304 ................................................................................... 23

N.Y. U.C.C. § 8-309 ................................................................................... 24

N.Y. U.C.C. § 8-313(1) ............................................................................... 23

N.Y. U.C.C. § 9-102(28)(A) ......................................................................... 14

N.Y. U.C.C. § 9-102(43) ................................................................................................ 1

N.Y. U.C.C. § 9-102(73) ............................................................................................... 14

N.Y. U.C.C. § 9-620.............................................................................. 7, 13, 14, 15, 19, 20

N.Y. U.C.C. § 9-622................................................................................................... 15

N.Y. U.C.C. § 9-627.............................................................................................. 8,13, 19

## **PRELIMINARY STATEMENT**

This case is about Plaintiff family members erroneously blaming the Eber Defendants for the decimation of the family business by competitors and denying that Lester Eber was entitled to repayment, via a Court-approved foreclosure, of millions of dollars he loaned to the family business to try and save the failing business.

From its formation in 1934 until mid-2006, Eber Brothers Wine and Liquor Corp. ("EBWLC") was a wine and liquor distributor. Allen Eber, the founder of Eber Bros. & Co., Inc. ("Eber Bros.") – the parent company of EBWLC – and the father of Lester Eber and Plaintiff Audrey Hays, and the grandfather of Plaintiffs Daniel Kleeberg and Lisa Stein, created a testamentary trust in his 1969 will (the "Will") known as the Allen Eber Trust ("the Trust").

Lester Eber went to work for Eber Bros. in 1959, and eventually assumed responsibility for running the business. Lester Eber also served as Co-Trustee of the Trust, along with Elliott W. Gumaer, Jr., and an institutional trustee – ultimately Canandaigua National Bank ("CNB"). Prior to its termination on June 1, 2017, the Trust held a number of assets, most relevantly for the present dispute, all the voting stock in Eber Bros. On June 5, 2012, Eber Bros. was the parent of EBWLC, which in turn owned Eber Bros. Wine & Liquor Metro, Inc. ("Metro"). Metro was then the majority owner of Eber-Connecticut, LLC ("Eber CT") a/k/a Slocum and Sons, which operated a wine and liquor distribution business in Connecticut. Eber Bros., EBWLC and Metro are New York corporations. Eber CT is a Delaware limited liability company. *See* corporate structure charts annexed to the Affidavit of W. Eber at Exhibit A.

The business was successful for many years, but began experiencing significant difficulties in the early 2000s. Most notably, in or about 2005, Southern Wine & Spirits

1

("Southern"), the largest distributor of wine and liquor in the United States, entered the New York market.  Ultimately, Southern forced EBWLC and Metro out of business, and operations at EBWLC and Metro ceased in early 2007.

Thereafter, Eber CT was the only Eber entity still operating.  However, at that time, the business prospects of Eber CT remained uncertain.  Faced with multiple liabilities and creditors, all the Eber entities were in danger of being liquidated.  In an effort to save the family business, Lester Eber loaned over $3,000,000 to EBWLC and Metro as he was permitted to do by the express terms of the Trust.  Affidavit of Lester Eber sworn to November 8, 2019 ("L. Eber Aff.") at ¶ 30. These loans were secured by first priority security interests in the assets of EBWLC (i.e. all of the capital stock of Metro) and of Metro (i.e. a controlling interest in Eber CT).

However, despite Lester Eber's loans, by early 2012, EBWLC and Metro were insolvent.  Lester Eber was no longer willing to voluntarily invest his own money in the family companies without hope of repayment. When EBWLC and Metro defaulted on their loans at the end of 2011, Alexbay, LLC ("Alexbay"), a company formed by Lester Eber, and to which he assigned his secured loans, commenced and received approval of a New York Supreme Court for a N.Y. U.C.C. § 9-620/§ 9-627 foreclosure (i.e., EBWLC's equity interest in Metro) in full satisfaction of the secured loans originally owed to Lester Eber ("2012 Foreclosure").

Plaintiffs, who affirmatively rejected Lester Eber's request to participate in the above-referenced loans to help save the companies from liquidation, now seek to, *inter alia*, rescind the Court-approved N.Y. U.C.C. § 9-620/§ 9-627 foreclosure.  For the

2

reasons stated below, Lester Eber, Wendy Eber and Alexbay are entitled to partial summary judgment as set forth below:

## ARGUMENT

I.   **THE EBER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT THAT EBER BROS., EBWLC AND METRO WERE JOINTLY AND SEVERALLY LIABLE FOR THE EBWLC AND TEAMSTERS PENSION LIABILITIES.**

The Eber Defendants are entitled to judgment as a matter of law that the pension liabilities for the Eber Bros. Wine & Liquor Corp. Retirement Plan ("EBWLC Plan") and the New York State Teamsters Conference & Retirement Fund ("Teamsters Fund") were debts of Eber Bros., EBWLC and Metro and the companies were jointly and severally liable for those debts.

**A. The unfunded benefit liability under the EBWLC Retirement Plan, as of the time of the 2012 Foreclosure, was a "debt" of each of Eber Bros., EBWLC and Metro.**

Under New York law (N.Y. Debtor and Creditor Law ("N.Y. D.C.L.") §§ 271(1) and 275), "debt" means any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. N.Y. D.C.L. § 270.  Under the U.S. Bankruptcy Code (11 U.S.C. § 101(32)), "debt" means liability on a claim, and "claim" means a right to payment, or a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. §§ 101(5) and (12).

The triggering event giving rise to a "claim" for pension benefit liability is not the termination of the pension plan, but rather the performance of labor by the [debtor's] employees. *See In re A.C.E. Elevator Co.*, 347 B.R. 473, 479-80 (Bankr. S.D.N.Y. 2006); *In re Finley, et al.*, 160 B.R. 882, 891-93 (Bankr. S.D.N.Y. 1993) citing *In re Chateaugay*

*Corp.*, 115 B.R. 760, 773-78 (Bankr. S.D.N.Y. 1990) (Findings of Fact; Conclusions of Law), *aff'd*, *In re Chateaugay Corp.*, 130 B.R. 690, 696-97 (S.D.N.Y. 1991) vacated by consent of the parties, 1993 U.S. Dist. LEXIS 21409 (June 7, 1993).

In 1954, the Eber Bros. Wine & Liquor Corp. Retirement Plan (the "EBWLC Plan") was adopted by EBWLC, as sponsor. *See* EBWLC Plan at 1 annexed as Exhibit B to the Affidavit of Wendy Eber sworn to November 8, 2019 ("W. Eber Aff."). The Plan required the accrual and payment of pension benefits and required EBWLC to make annual contributions to the EBWLC Plan to fund benefits thereunder. *See id.* at Articles III, IV and V. The EBWLC Plan sponsor and the members of its "controlled group," including Metro, were required to make certain minimum annual contributions to the Plan under 29 U.S.C. §§ 1082 and 1083.

Benefits Management Inc., EBWLC's independent actuary, calculated that, as of June 1, 2012, the termination liability of the Plan was $5,063,388. *See* Affidavit of Michael A. Gallagher, sworn to November 5, 2019 ("Gallagher Aff.") at 8.

Similarly, the employer withdrawal liability under the Teamsters Fund was also a debt of each of Eber Bros., EBWLC and Metro. On January 10, 2008, the Teamsters Fund assessed an employer withdrawal liability of $2,212,367.47 against the Eber "controlled group", which included Eber Bros., EBWLC and Metro. *See* Notice of Demand for Payment of Employer Withdrawal Liability dated January 10, 2008, from the Teamsters Fund to EBWLC annexed as Exhibit G to W. Eber Aff.

Given the foregoing, the Eber Defendants are entitled to judgment as a matter of law that the EBWLC Plan underfunding and Teamsters Fund withdrawal liability were debts of Eber Bros., EBWLC and Metro as of June 5, 2012.

**B. Eber Bros., EBWLC and Metro were jointly and severally liable for the EBWLC Plan underfunding.**

The EBWLC Plan was a "single employer defined benefit plan" subject to the termination insurance program established under Title IV of ERISA. 29 U.S.C. § 1002(3), (41) and §§ 1301-1461. On August 6, 2014, the Pension Benefits Guaranty Corporation ("PBGC") determined that termination of the EBWLC Plan was necessary because the Plan would be unable to pay benefits when due. *See* W. Eber Aff. at ¶ 17, Exhibit C.

"In any case in which a single-employer plan is terminated … by the [PBGC] under section 4042 (29 U.S.C. § 1342), any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability [which] shall be joint and several." 29 U.S.C. § 1362(a).

On January 19, 2016, the United States District Court for the Western District of New York established April 30, 2010 as the termination date of the EBWLC Plan. *See* Decision and Order of Michael A. Telesca dated January 19, 2016 ("WDNY Order") at pg. 17, annexed as Exhibit E to the W. Eber Aff. The District Court also found that EBWLC ceased operations by December 31, 2007 and terminated all its employees by May 31, 2009. Id. at 10-11. As of April 30, 2010, the EBWLC "controlled group" included Eber Bros., EBWLC, and Metro. *See 29 U.S.C. 1362(a)*. Put simply, as of the EBWLC Plan termination date, April 30, 2010, Eber Bros, EBWLC, and Metro were jointly and severally liable for the EBWLC Plan underfunding.

Accordingly, the Eber Defendants are entitled to summary judgement that as of June 5, 2012, Eber Bros., EBWLC and Metro were jointly and severally liable for the PBGC pension termination amount of $5,063,388.

### C. Eber Bros., EBWLC, and Metro were also jointly and severally liable for the Teamsters Fund employer withdrawal liability.

Similarly, Eber Bros., EBWLC, and Metro were jointly and severally liable for the Teamsters Pension Fund employer withdrawal liability as of June 5, 2012.

The Teamsters Fund was a "multi-employer employee benefit plan" as defined in Sections 3(3) and 37(A) of ERISA, 29 U.S.C. § 1002(3) and 37(A). W. Eber Aff. at ¶ 29. EBWLC was a participating employer in the Teamsters Fund as defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5). *Id.* at ¶ 30. For a multiemployer employee benefit plan, all businesses "which are under common control" are treated as a single employer for purpose of withdrawal liability and jointly and severally liable for the unfunded vested benefits. 29 U.S.C. § 1301(b)(1).

As previously discussed, the Teamsters Fund assessed Eber Bros and its "controlled group," which included Eber Bros., EBWLC, and Metro with an employer withdrawal liability of $2,212,367.47 in January 2008. W. Eber Aff. at ¶ 31. As of June 5, 2012, the remaining employer withdrawal liability to the Teamsters Fund of the Eber "controlled group" was approximately $1,421,029.95. See Amended Modification Agreement dated July 30, 2012, and Confession of Judgment, dated August 1, 2012, annexed as Exhibits H and I to the W. Eber Aff.

As of June 5, 2012, the employer withdrawal liability to the Teamster Fund was a joint and several "debt" of each of Eber Bros, EBWLC and Metro for purposes of each of N.Y. D.C.L. § 270 and 11 U.S.C. § 101(32).

### II.   PLAINTIFFS ARE BARRED FROM CHALLENGING THE N.Y. U.C.C. §§ 9-620 & 9-627 FORECLOSURE, JUDGE ROSENBAUM'S ORDER AND THE UNDERLYING DEBT PURSUANT TO THE *ROOKER-FELDMAN* DOCTRINE.

## A. The *Rooker-Feldman* doctrine precludes Plaintiffs' challenge of the Court-approved 2012 Foreclosure.

The *Rooker-Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). Pursuant to this doctrine, federal district courts are empowered to exercise only original, not appellate, jurisdiction. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84, 291-92 (2005); *Hoblock*, 422 F.3d at 85.

The Second Circuit in *Hoblock* set out a four-part test to determine if the *Rooker-Feldman* doctrine is applicable: (1) the District Court plaintiffs lost or oppose the result in state court; (2) plaintiffs complain of injuries caused by the state court judgment; (3) plaintiffs invite the District Court to review and reject the state court judgment; and (4) the state court judgment preceded the commencement of the federal action. *See Hoblock*, 422 F.3d at 85. Each of the four elements is satisfied in this case.

### 1. Plaintiffs lost or oppose the result in state court.

On May 23, 2012, Justice Rosenbaum of the New York State Supreme Court ruled in Alexbay's favor by approving the commercial reasonableness of the N.Y. U.C.C. § 9-620 foreclosure, whereby Alexbay accepted EBWLC's interest in the capital stock of Metro in full satisfaction of the outstanding secured loans that had been assigned to Alexbay by Lester Eber (the "2012 Foreclosure"). See Notice of Entry of Order Granting Article 9 relief annexed as Exhibit M to the Affidavit of Lester Eber sworn to November 8,

2019 ("L. Eber Aff."). In rendering his Decision, Justice Rosenbaum determined that the 2012 Foreclosure was "commercially reasonable" pursuant to N.Y. U.C.C. § 9-627.[1] *Id.*

Here, the derivative claims brought by Plaintiffs are claims brought on behalf of, and thus by, EBWLC and Metro. *See* Third Amended Complaint ("TAC") at ¶ 179. "The claim pressed by the stockholder against directors or third parties 'is not his own but the corporation's.'" *Ross v. Bernhard*, 396 U.S. 531, 538 (1970) quoting *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947). "Although named a defendant, [the corporation] is the real party in interest, [with] the stockholder being at best the nominal plaintiff." *Ross*, 396 U.S. at 531. "To determine whether the parties are identical, the court looks to the identity of the real party in interest, the corporation, rather than to the identity of the nominal party seeking to champion the corporate claim." *Kaplan v. Bennett*, 465 F. Supp. 555, 560 (S.D.N.Y. 1979) citing *Papilsky v. Berndt*, 466 F.2d 251, 252-56 (2d Cir. 1972), cert. denied, 409 U.S. 1077 (prior determination not on the merits); *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968).

## 2. The injuries Plaintiffs complain of are the result of the state court Order.

The key inquiry under this tenant is whether there is a "causal relationship between the state court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007).

Here, Plaintiffs allege in the TAC that Justice Rosenbaum's Order damaged them in numerous ways. A copy of Alexbay's Summons and Complaint is annexed as Exhibit L to the L. Eber Aff. In fact, the TAC, includes an entire section dedicated to the 2012

---

[1] The N.Y. U.C.C. does not define "commercially reasonable" but the notion is included in the definition of good faith which means honesty in fact and the observance of reasonable commercial standards of fair dealing. N.Y. U.C.C. § 9-102(43).

Foreclosure. See TAC at ¶¶102-119, 194-219, 298. The crux of Plaintiffs' claims is that Justice Rosenbaum's Order approving the 2012 Foreclosure divested Plaintiffs of their beneficial interest, as beneficiaries of the Trust, in Metro and Eber CT. Plaintiffs' claims meet the second prong of the test for dismissal pursuant to the *Rooker-Feldman* doctrine.

### 3. Plaintiffs ask this Court to vacate Justice Rosenbaum's Order and seeks rescission of the underlying obligations.

The TAC seeks to vacate Justice Rosenbaum's Order and "[r]ecission of the Metro Transfer of Eber Metro to Alexbay and all of the agreements related to it, including an order returning the Eber Metro shares to EBWLC." TAC at 21, ¶ g.

Moreover, the TAC also seeks: (1) "An order voiding the transaction(s) that effectuated the conversion of EBWLC debt assets into additional paid in capital;" (2) "Rescission of the February 26, 2010 Guaranty and Security Agreements, and any subsequent amendments thereto;" (3) "imposition of a constructive trust on Eber Metro and Eber CT, made retroactive to June 5, 2012;" (4) "Imposition of a constructive trust on the assets of Alexbay…;" (5) "Disgorgement by Alexbay of any moneys received from Eber Metro or any of its affiliates since June 5, 2012". TAC at 65-66, ¶¶ i, j, m, o, v. Put simply, all of this requested relief explicitly or implicitly ask this Court to review and reject Justice Rosenbaum's Order and thus the third element is satisfied.

### 4. The State Court Judgment preceded the commencement of the federal action.

There is no dispute that the fourth prong of the *Rooker-Feldman* test concerning timing has been met. Justice Rosenbaum's Order was signed May 23, 2012, four and a half years prior to the commencement of the current action.

Given that all four (4) prongs of the Rooker Feldman test have been met, the Eber Defendants are entitled to summary judgment dismissing all claims seeking to challenge or invalidate Justice Rosenbaum's Order.

**B. The *Rooker-Feldman* doctrine also bars any challenges to the underlying debts.**

In addition, Plaintiffs' allegations concerning the validity of the underlying debts is also barred by the *Rooker-Feldman* doctrine.   Justice Rosenbaum's Order effectively confirmed the validity of the debts to Alexbay. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the [debt] was valid." *Webster v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. LEXIS 120952 at *24, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), *aff'd* sub nom. as amended (Jan. 24, 2012) *Webster v. Penzetta*, 458 Fed. Appx. 23, 25 (2d Cir. 2012); *see also Feliciano v. U.S. Bank Nat. Ass'n*, 2014 U.S. Dist. LEXIS 88103 at *11-15 & n. 7, 2014 WL 2945798, at *2-4 & n. 7 (S.D.N.Y. June 27, 2014) (holding that plaintiffs' claims for wrongful foreclosure were barred by *Rooker-Feldman* doctrine).

Here, as in *Webster* and *Feliciano*, Plaintiffs ask the Court to void the underlying debt obligations of EBWLC and Metro to Alexbay, and the series of transactions leading to Justice Rosenbaum's Order – which makes clear that the debt owed to Alexbay was valid and enforceable.  Any order or judgment by this Court reviewing or rejecting Justice Rosenbaum's Order—including the validity of the underlying debt would violate the *Rooker-Feldman* doctrine.

The "courts in this Circuit ha[ve] consistently held that any attack on a judgment of foreclosure is barred by the *Rooker-Feldman* doctrine." *Ashby v. Polinsky*, 2007 U.S. Dist. LEXIS 12692 at *1, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal

quotation marks and citation omitted), *aff'd*, 328 Fed. Appx. 20 (2d Cir. 2009); *see also Done v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. LEXIS 84114 at *5-9, 2009 WL 2959619, at *3 (E.D.N.Y. Aug. 7, 2009); *Ward v. Bankers Trust Co. of California, N.A.*, 2011 U.S. Dist. LEXIS 32796 at *12-21, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011).

Even challenges to foreclosure judgments that were allegedly procured by fraud (as Plaintiffs have falsely alleged) are precluded. *See, e.g., Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 164-65 (E.D.N.Y. 2010), *aff'd*, 446 Fed. Appx. 360, 361 (2d Cir. 2011) (finding *Rooker-Feldman* doctrine applied to allegations that defendants engaged in fraud to obtain the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); *Parra v. Greenpoint Mortg. Co.*, 2002 U.S. Dist. LEXIS 25281 at *5-6, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker-Feldman*"); *Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

Read fairly, the bulk of the TAC seeks rescission of the 2012 Foreclosure, which Justice Rosenbaum found commercially reasonable, and the underlying debt, which the state court Order recognized as valid. Such relief would run afoul of the *Rooker-Feldman* doctrine, and this Court should decline Plaintiffs' invitation to substitute its judgment for the judgment of the state court. Accordingly, the Eber Defendants are entitled to judgment as a matter of law that Justice Rosenbaum's Order remains in full force and effect, and that the debt owed to Alexbay from Metro and EBWLC was valid and enforceable.

## C. Plaintiffs' only challenge to Justice Rosenbaum's Order Would Have Been in Monroe County Supreme Court.

Finally, even if the *Rooker-Feldman* doctrine is inapplicable, this Court is still bound by Justice Rosenbaum's Order.   The proper venue for Plaintiffs to have challenged Justice Rosenbaum's Order was in the Monroe County Supreme Court.   "[A] claim of fraud against the court must be made in the tribunal allegedly defrauded." *Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50, 52 (S.D.N.Y. 1986) citing *Hazel-Atlas Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246-48 (1944); *Pfotzer v. Amercoat Corp.,* 548 F.2d 51, 52-53 (2d Cir. 1977). To vacate a state court judgment on the basis of fraud upon the court, the proper procedure is a motion pursuant to Section 5015 of the New York Civil Practice Law and Rules ("§ 5015"). Section 5015 provides:

> "The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person … upon the ground of … fraud, misrepresentation, or other misconduct of an adverse party."

N.Y. C.P.L.R. § 5015.  Where a party alleges fraud on the court as a means to challenge a state court decision in federal court, the claim is barred. *O'Neill v. Hernandez*, 2010 U.S. Dist. LEXIS 33262, at *42 (S.D.N.Y. Mar. 25, 2010).

## III.   PLAINTIFFS' ATTACK ON JUSTICE ROSENBAUM'S ORDER AND THE UNDERLYING INDEBTEDNESS IS ALSO BARRED BY RES JUDICATA.

It is settled in New York that "*res judicata*," or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if: (1) there is a judgment on the merits rendered by a court of competent jurisdiction, and (2) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Matter of People of the State of New York, by Eliot Spitzer, as Attorney Gen. v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008) (internal quotation

marks and citation omitted), *cert. denied*, 555 U.S. 1136 (2009).  Privity includes "those who are successors to a property interest," and along those lines, "a person may be bound by a prior judgment to which he was not a party of record."  *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970).

New York follows a "transactional analysis approach in deciding res judicata issues." *O'Brien v. Syracuse*, 54 N.Y.2d 353, 357 (1981).   Under the transactional approach, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Id.*

Here, Count I of the TAC is barred by *res judicata* to the extent it seeks rescission and/or modification of Justice Rosenbaum's Order and the underlying debt obligations. There can be no dispute that there was a final judgment on the merits pursuant to Justice Rosenbaum's Order approving the N.Y. U.C.C. § 9-620/§ 9-627 foreclosure.

As discussed above, EBWLC and Metro were the actual plaintiffs for purposes of the derivative claims.  Accordingly, Plaintiffs are in privity with the parties in the State Court action.   Put another way, Plaintiffs' derivative claims are based on their status as successors to the Allen Eber Trust's property interest in the Eber entities.  Plaintiffs, as successors to the Trust's property interest in EBWLC and Metro – parties to the Alexbay case – are therefore bound by Justice Rosenbaum's Order even though they were not individually parties of record.

IV.   **THE 2012 FORECLOSURE TRANSFERRED TO ALEXBAY ALL OF EBWLC'S RIGHTS IN THE CAPITAL STOCK OF METRO IN FULL SATISFACTION OF ALEXBAY'S SECURED LOANS PURSUANT TO N.Y. U.C.C. § 9-620.**

Even if the doctrines of Rooker-Feldman, Res Judicata and claims of fraud against the court must be brought in the defrauded tribunal are not applicable to the matter at bar, the Eber Defendants are still entitled to judgment as a matter of law that the 2012 Foreclosure transaction was valid and cannot be rescinded.[2]

New York's Uniform Commercial Code provides a mechanism for creditors like Alexbay and debtors like EBWLC and Metro to efficiently transfer the debtor's interest in collateral to the secured creditor in satisfaction of the creditor's debt. *See* N.Y. U.C.C. § 9-620 (cmt. 2). Pursuant to N.Y. U.C.C. § 9-620(a), a person in whose favor a security interest has been created under a security agreement (N.Y. U.C.C. § 9-102(73)) may accept collateral in full satisfaction of the obligation it secures if (a) the secured obligation is in default (N.Y. U.C.C. § 9-620(c)), (b) the debtor (i.e. owner of the collateral foreclosed on N.Y. U.C.C. § 9-102(28)(A)) agrees to the terms of the acceptance of collateral in full satisfaction of the obligation it secures (N.Y. U.C.C. § 9-620(c)(2)), (c) the secured party consents to the acceptance of the collateral (N.Y. U.C.C. § 9-620(b)(1)), and (d) objections to the foreclosure are not received from certain creditors. N.Y. U.C.C. 9-620(a)(2).

A secured party's acceptance of collateral in full satisfaction of the obligation it secures "transfers to the secured party all of a debtor's rights in the collateral" (N.Y.

---

[2] N.Y. U.C.C. § 9-620 is evaluated under the standard of good faith. "[T]he doctrine of good faith merely directs a court towards interpreting contracts in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached." N.Y. U.C.C. § 1-304, cmt. 1. As noted above, Justice Rosenbaum already found the 2012 Foreclosure to be commercially reasonable akin to good faith.

U.C.C. § 9-622(b)), and "terminates any other subordinate interest" (N.Y. U.C.C. § 9-622(a)(4)).  Subordinate interests are thereby terminated even if the secured party fails to comply with Article 9.  N.Y. U.C.C. § 9-622(b)).

Here, there is no dispute that the conditions required by N.Y. U.C.C. § 9-620 were met.  Accordingly, on this basis as well, the Eber Defendants are entitled to judgment as a matter of law that the N.Y. U.C.C. § 9-620 transaction cannot be rescinded.

Alexbay was a secured creditor of EBWLC and Metro.  As of January 18, 2012, Alexbay was the holder, pursuant to an Assignment of Note and Security Agreement, dated January 18, 2012, of a debt owed to Lester Eber as evidenced by an August 15, 2005 Promissory Note in the principal amount of $1,503,750.00 (the "2005 Note"), which was amended and restated on March 13, 2006 and part of a Debt Assumption Agreement dated February 11, 2011 ("Debt Assumption Agreement").  *See* L. Eber Aff. at ¶ 29.  Additionally, as of January 18, 2012, Alexbay, was pursuant to an Assignment of Line of Credit Note and Security Agreement, dated January 18, 2012, the holder of a debt owed to Lester Eber as evidenced by a February 26, 2010 Line of Credit Note to Metro in the maximum principal amount of $1,500,000.00, which was unconditionally guaranteed by EBWLC ("Line of Credit Note").  *See id.* On February 11, 2011, Metro, EBWLC and Lester Eber entered into an Amended and Restated Security Agreement dated February 11, 2011 granting Lester Eber a first priority security interest in substantially all of EBWLC's and Metro's assets. *See id.*  As set forth above, the validity of these debts and security agreements were confirmed by Justice Rosenbaum's order.

As of January 18, 2012, EBWLC and Metro were in default under the terms of the 2005 Note and the Line of Credit Note. L. Eber Aff. ¶ 44; W. Eber Aff. at ¶ 38. The Line

of Credit Note matured on December 31, 2011 and was unpaid. *Id.* The 2005 Note was in default because a cross-default provision therein created a default under the 2005 Note when the Line of Credit Note went into default. *Id.*

On June 5, 2012, after receiving judicial confirmation of the commercial reasonableness of the transaction, EBWLC consented to Alexbay's acceptance of EBWLC's ownership interest in Metro in full satisfaction of the debt owed to Alexbay. *See* W. Eber Aff. at ¶ 40.

Accordingly, on this alternative basis the Eber Defendants are entitled to judgment as a matter of law that the 2012 Foreclosure cannot be rescinded.

### V. LOANS MADE BY LESTER EBER TO EBWLC AND METRO, THE GRANT AND PERFECTION OF AN ARTICLE 9 SECURITY INTEREST IN THE COLLATERAL SECURING SUCH LOANS, AND THE 2012 FORECLOSURE ARE NOT VOIDABLE BY PLAINTIFFS BY VIRTUE OF ANY "NO FURTHER INQUIRY" RULE APPLICABLE TO LESTER EBER AS A CO-TRUSTEE OF THE TRUST.

New York law is clear that,

> "...the rule of undivided loyalty due from a trustee (citations omitted) may be relaxed by a settlor by appropriate language in the trust instrument in which he, either expressly or by necessary implication, recognizes that the trustee may have interests potentially in conflict with the trust (citations omitted); ... the law interposes to require that the trustee always exercise good faith in his administration...."

*O'Hayer v. De St. Aubin*, 30 A.D.2d 419, 423 (2d Dep't 1968) (upholding the purchase of a controlling interest in family company owned by a trust, where co-trustee, son of settlor, purchased stock as authorized by broad powers of administration in the trust instrument). "It is true that even a trustee's duty of 'utmost loyalty' can be reduced by means of

language in the trust instrument permitting certain transactions involving self-interest."
*Renz v. Beeman*, 589 F.2d 735, 744 (2d Cir. 1978) (citations omitted). Such language
"does reduce the standard of duty to one of good faith and permits a court to weight the
merits of the transaction. *Id.* at 744-45.

The "no further inquiry" rule is not a standard of conduct in and of itself, but only
an aid to the enforcement of a standard of conduct. *See also In re Estate of Rothko*, 43
N.Y.3d 305, 318-19 (1977) (holding that the lower court properly considered the issue of
fairness regarding the trustee's transactions instead of merely applying the "no further
inquiry" rule, even though no express authority to undertake the disputed transaction
existed in the will).

In creating the Trust under his Will, and appointing his son, Lester Eber, a Co-
Trustee, Allen Eber was cognizant of the operation and continuation of the family
corporations in which his fortune was invested under the management of his son. To that
end, Lester, Elliott W. Gumaer, Jr. and a bank (ultimately CNB) were appointed Co-
Trustees of the Trust. Absolutely no intent was expressed (or implied) in the Will that
Plaintiffs would ever have a role in management or as trustees of the Trust. *See* Will,
Article ELEVEN and TWELVE, attached as Exhibit A to L. Eber Aff..

Allen Eber's intent is further evidenced in Article TWELVE of the Will, which
expressly grants to the Co-Trustees extensive powers with respect to the Trust assets,
stating:

> "I grant to my …Trustee … the following powers in addition to
> those … conferred by law, with respect to all property …
> forming part of any trust hereunder…: B – To … dispose of any
> [Trust] property … for any … consideration including other
> obligations…; E - To ...participate in any plan of reorganization,
> … recapitalization … or other plan …; **H - To borrow money**

> **from itself or others for the benefit of my …trust hereunder, and to secure the loan by pledge … of the property of any trust…**; I – to … compromise, settle, arbitrate or abandon any claim … against … any trust hereunder; … O - To continue the operation of any business … for such period of time as it may deem advisable, at the risk of my general estate and without liability on its part; to take part in the management of such business; to select and vote for directors and/or officers thereof; to act as directors and/or officers thereof; … and to act with respect to any other matter in connection therewith which my …Trustee deems advisable…."

Clause H of Article TWELVE expressly permits Lester Eber, as a Co-Trustee, to make a secured loan to the Trust or the companies owned by it. By clear implication, this provision permits Lester to enforce his security interest in the collateral (i.e., the capital stock of Metro) securing the Loans. Therefore, all Loans, the Security Agreement and the Guaranty, and the express terms of each thereof, were (and are) not voidable by Plaintiffs.

It must be noted that the making of secured loans by Lester Eber, as a Co-Trustee of the Trust, is not without precedent. From 2008 to 2017, CNB (i.e., a Co-Trustee) made multiple secured loans to Eber CT. Similarly, from 1991 to 2006, M&T Bank Corporation, then the third Co-Trustee of the Trust, made a secured loan to EBWLC. Prior to 1991, Marine Midland Bank, the original third Co-Trustee, also made a secured loan to EBWLC. Obviously, none of those banks/Co-Trustees would have made secured loans to the Eber companies unless those secured loans were not voidable under any "no further inquiry" rule.

It is undisputed that Lester Eber was not directly or indirectly involved in drafting or creating the Will. To that end, he was entitled to rely upon the explicit provisions of Article TWELVE in making the loans. Under these circumstances, Lester, as Co-Trustee,

cannot be held liable for acts specified in that Article.  *Matter of Tydings (Ricki Singer Grantor Trust)*, 32 Misc. 3d 1204(A) at 6 (N.Y. Sur. Ct. 2011).

Even assuming, for the purpose of argument, that the 2012 Foreclosure involved a conflict of interest on Lester Eber's part, it did not involve self-dealing.  Lester Eber's involvement in the 2012 Foreclosure was purely as the beneficial owner (through Alexbay) of the loans, which were then in default.

Lester Eber had no involvement in the consent process for the 2012 Foreclosure by the Boards of Directors of EBWLC and Metro pursuant to NY UCC § 9-620/§ 9-627.[3]

Moreover, in connection with the original Board approval of each of the loans made by Lester Eber to the Eber companies (and the related security documentation and guaranty), Lester Eber abstained from voting on each such approval.

Similarly, on August 18, 2011, CNB and Elliott Gumaer, as Co-Trustees of the Trust, ratified the loans, while Lester Eber abstained from such ratification.  *See* August 18, 2011 Board Meeting Minutes attached to L. Eber Aff. at Exhibit I. The Co-Trustees' ratification of the loans was entirely voluntary and not required by the Will or any provision of New York law.  Any action by the Co-Trustees to influence the consent process of the Boards of EBWLC or Metro to the 2012 Foreclosure could not have been effective without the affirmative consent of two of the three Co-Trustees. *See* N.Y. Estates Powers and Trusts Law § 10-10.7.

Finally, Wendy Eber is not subject to any "no further inquiry" rule. The "no further inquiry" rule potentially relates only to the acts and omissions of co-trustees of a trust. *See In re Parisi*, 111 A.D.3d 941 (2d Dep't 2013).  It does not apply to the acts and

---

[3] Lester resigned from the Board of EBWLC effective February 1, 2012.

omissions of the officers and directors of companies who are not also trustees of the trust at issue.  It is undisputed that Wendy Eber was never a Co-Trustee.

The Eber Defendants are entitled to Summary Judgement that "no further inquiry" rule does not apply because Lester Eber's actions were authorized by the Trust and Wendy Eber never served as a Trustee.

## VI.   LESTER EBER, AS A CO-TRUSTEE, OWED NO DUTY TO INFORM TRUST BENEFICIARIES OF THE PROPOSED 2012 FORECLOSURE.

Under New York law, a trustee of a testamentary trust does not have a duty of disclosure to the trust beneficiaries about a proposed transaction in the absence of an express requirement in the trust instrument, an applicable statute or in response to an express request for information by the beneficiaries.  Here, none of these circumstances existed.

Put simply, there is no provision in the Trust instrument that requires Lester Eber, as a Co-Trustee, to inform Plaintiffs, as beneficiaries, about any transaction proposed to be undertaken by the Co-Trustees.

Further, there is no statute that requires such disclosure. More specifically, the Uniform Probate Code and the Uniform Trust Act, which require disclosures to trust beneficiaries in certain circumstances, have not been adopted by the State of New York. As such, the duty of a trustee in New York is significantly narrower than it is in other states.

Moreover, even if Plaintiffs had known of the 2012 Foreclosure, they would have had no standing, as beneficiaries to shareholder trust, to intervene in Alexbay's action nor object to the N.Y. U.C.C. § 9-620 transaction.  *See generally* N.Y. U.C.C. Art. IX.

Accordingly, the Eber Defendants are entitled to summary judgment that Lester Eber, as a Co-Trustee, had no duty to inform Plaintiffs of the proposed 2012 Foreclosure.

**VII.   THE EBER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFFS' FAITHLESS SERVANT CLAIMS ON BOTH THE MERITS AND BASED UPON THE STATUTE OF LIMITATIONS.**

Plaintiffs' claim of breach of fiduciary duty under the faithless servant doctrine fails as a matter of law against Lester Eber in his capacity as a Co-Trustee of the Trust and corporate director.   An agency relationship is required under the faithless servant doctrine.   Trustees and corporate directors are not agents.   *See Brown v. Bedell*, 263 N.Y. 177, 196 (1934) and *Commn. On Ecumenical Mission & Relations of United Presbyt. Church v. Roger Gray,* Ltd., 27 N.Y.2d 457, 462 (1971).

Where an employee is "faithless in the performance of [his] services he is generally disentitled to recover [his] compensation." *Doe v. Solera Capital LLC*, 2019 U.S. Dist. LEXIS 55860 at *24 (S.D.N.Y. Mar. 31, 2019) (internal citations omitted).

In New York, there are two standards under which an employee's conduct can be found to warrant forfeiture under the faithless servant doctrine.   Under the first standard, an employee can be found to be faithless where "the misconduct and unfaithfulness substantially violates the contract of service such that it permeates the employee's service in its most material and substantial part." *Id.* (internal citations omitted).   A single act of disloyalty has been deemed insufficient to warrant forfeiture under this standard. *Id.*

The second standard requires "misconduct that rises to the level of a breach of a duty of loyalty or good faith." *Id.* at *25.   The SDNY has determined that finding a breach of the duty of loyalty is "limited to cases where the employee, acting as the agent of the

employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Grewal v. Cuneo*, 2016 U.S. Dist. LEXIS 8349 at *21-22 (S.D.N.Y. Jan. 25, 2016).

Here, Lester Eber is entitled to summary judgment dismissing the TAC's second cause of action alleging he was a faithless servant.

The Record also wholly contradicts Plaintiffs' claim. EBWLC and Metro laid off all their employees in or around March 2007 after Southern put EBWLC and Metro out of business. Lester Eber Aff. at 21.   Lester Eber's consulting and lobbying agreement with Southern was not signed until August 2007.   Lester could not usurp a corporate opportunity, or act as a faithless servant, of entitities that had no employees and had ceased all operations months prior.

Moreover, EBWLC and Metro had been wine and liquor distributors, not consultants or lobbyists. *See* L. Eber Aff. at ¶ 18.  Critically, Lee Hager, Executive VP of Southern, testified that Southern was simply not interested in entering into a Consulting Agreement with EBWLC or Metro. *See* L. Eber Aff. at ¶ 22. Mr. Hager testified:

> "[i]ts a hundred percent typica[l] that we enter these things, you know, on what I will describe as an individual and personal contract basis…why would I want to be bound to a corporation for consulting? These are personal services." See L. Eber Aff. at ¶ 23.

Contrary to Plaintiffs' allegations, there was no corporate opportunity to usurp. EBWLC and Metro could have no "tangible expectancy" in any future business opportunity because both companies were out of business – empty shells with significant liabilities in August 2007 with no intention of starting any new business.

Lester Eber is entitled to judgment as a matter of law dismissing Plaintiffs' faithless servant claims.

VIII.   **THE ATTEMPT BY CNB, AS SOLE REMAINING CO-TRUSTEE OF THE TRUST, TO TRANSFER CAPITAL STOCK OF EBER BROS. TO PLAINTIFFS IN OCTOBER 2017 WAS INEFFECTIVE.**

At all relevant times, 1850 shares of voting common stock, 290 shares of nonvoting common stock and 2000 shares of preferred stock of Eber Bros. (the "Eber Bros. Shares") have been registered in the name "Lester Eber, Elliott W. Gumaer, Jr. Central Trust Company, Co-tr U/W Allen Eber Residuary" (CNB is the successor Co-Trustee to Central Trust Company and the sole remaining Co-Trustee for the Trust).

Before due presentment to Eber Bros. for registration of transfer of the Eber Bros. Shares to any new registered owner, Eber Bros. is entitled to treat the existing registered owner as the person exclusively entitled to vote, receive notifications, and otherwise exercise all the rights and powers of an owner. *See* N.Y. U.C.C. § 8-207.

Title and rights to securities vest in a purchaser at the time of delivery. *See* N.Y. U.C.C. § 8-301(1). Delivery occurs when the purchaser or a person designated by him acquires possession of a security. N.Y. U.C.C. § 8-313(1); § 8-304, Cmts. 3 and 4. "Nothing less than physical delivery to the purchaser or his agent will complete the exchange of securities and thereby vest title in the purchaser." *SEC v. John E. Samuels & Co.*, 1973 U.S. Dist. LEXIS 15588 at *4 (S.D.N.Y. Jan. 2, 1973); *In re Kontaratos*, 10 B.R. 956, 962, 963 (Bankr. D. Me. 1981). The issuer has nothing to do with the transfer itself.

Title to the Eber Bros. Shares was not transferred by the current registered owner in October 2017 or thereafter since there was never any physical delivery of possession of the stock certificates by the current registered owner to anyone.

The presence of an endorsement or stock power without delivery of the certificate has no effect on title. N.Y. U.C.C. § 8-309. CNB's letter dated October 11, 2017, stating that it was "...required to complete these transfers via these Stock Powers ...." is clearly wrong. *See* Exhibit 7 to CNB's Intervenor Complaint, Dkt. 206-1.

None of the communications between CNB, the sole remaining Co-Trustee, and the Trust beneficiaries in 2017 (a) purporting to be an effective notice of a proposed transfer of the Eber Bros. Shares under By-laws, Article XII, section 1, or (b) purporting to complete an effective transfer of the Eber Bros. Shares on October 2, 2017, are relevant because more than 180 days have elapsed since all these acts of the Co-Trustee occurred and no effective transfer of the Eber Bros. shares has occurred. "...transferring shareholder is free to transfer said shares to the same person and on the terms set forth in the notice at a time not later than one hundred eighty (180) days of the date of the original notice." *See* By-laws of Eber Bros. & Co., Inc. at pg. 12, Article XII annexed as Exhibit A to Dkt 143.

The terms of CNB's proposed transfer of Eber Bros. Shares in October 2017, which were required to be set forth in a valid notice under By-laws, Article XII, were clearly wrong. *See id.* CNB's Petition for Judicial Settlement of Final Account dated February 15, 2017, and the related Final Account of Trustee (which CNB admits Lester Eber had no involvement in preparing), and the Order of Judicial Settlement of Final Account dated June 1, 2017, required that the Eber Bros. Shares be distributed (a) one third to Lester Eber, (b) one third to Audrey Hays (heir to Mildred Boslov), and (c) one sixth to Lisa Stein and one sixth to Daniel Kleeberg (heirs to Sally Kleeberg). *See* Order for Judicial Settlement of Final Account of Successor Co-Trustee, Resignation and Discharge of Co-

24

Trustee and Termination of Trust ("Order for Judicial Settlement") attached as Exhibit 1 to CNB's Intervenor Complaint, Dkt. 206-1.

Yet, thereafter, CNB failed to comply with this requirement. Not once, but twice (July 12 and August 1, 2017) after the Order of Judicial Settlement of Final Account was issued by the Surrogate's Court on June 1, 2017, CNB proposed allocations of the Eber Bros. Shares for distribution to the Trust beneficiaries that were clearly wrong. *See* Exhibit 2 to CNB Intervenor Complaint, Dkt. 206-1; Exhibit A to W. Eber Aff. at Chart C . CNB had no discretion to allocate the Eber Bros. Shares other than in equal shares (particularly since, pursuant to an independent valuation report, they assigned a zero value to the shares). *See* Order of Judicial Settlement, Dkt 206-1.

On October 27, 2018, Lester Eber's counsel received an email from Plaintiffs' Counsel attaching a photocopy of the stock certificates for Eber Bros. Shares proposed to be transferred to Lisa Stein, Daniel Kleeberg and Audrey Hays and of related stock powers dated October 2, 2017 (**more than a year earlier**).  Lester Eber had never seen this communication before October 27, 2018. Even though this email was ineffective for any purpose under N.Y. U.C.C. Article 8 or By-laws, Article XII, Lester Eber gave a protective notice to CNB on October 30, 2018, exercising his right to buy these Eber Bros. Shares for the purchase price determined by the express terms of By-laws, Article XII. See By-laws at 11-12. CNB has failed to honor this exercise by Lester Eber.  *See* Exhibit 4 to CNB Intervenor Complaint, DKT 206-1.

Any transfer of the Eber Bros. Shares to Plaintiffs must now comply with N.Y. U.C.C. Article 8, and the transfer restrictions in Article XII of the Eber Bros. By-laws.

Article XII of the By-laws was adopted by Eber Bros. on June 21, 1996, with the written consent of a majority of the then Co-Trustees of the Trust, and is binding on the Trust. N.Y. EPT § 10-10.7. The transfer restriction is binding on CNB since it has actual knowledge of it. N.Y. U.C.C. § 8-204.  Actual knowledge is tested at the time of the securities transfer. *Thibodeaux v. Pioneer Land Dev. & Realty Corp.*, 420 So .2d 1162, 1166 (La.App. 5 Cir 1982).

## IX.   MANY OF PLAINTIFFS' OTHER CLAIMS ARE TIME-BARRED.

A claim for breach of fiduciary duty must have occurred within six years from a plaintiff's commencement of the action. N.Y. C.P.L.R. § 213 (1), (7), (8).  The statute of limitations for a cause of action for conversion or unjust enrichment is three years. N.Y. C.P.L.R. § 214 (3). A plaintiff bears the burden of establishing equitable tolling, and a defendant must have engaged in affirmative wrongdoing for the purpose of delaying the plaintiff's commencement of an action. *See Willensky v. Lederman*, 2015 U.S. Dist. LEXIS 8632 at *21-22, *26-29, *34-35, *38 (S.D.N.Y. 2015).  A plaintiff's burden is proving that "specific actions by [a] defendant[] somehow kept [the plaintiff] from timely bringing suit." *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006).

A fiduciary plaintiff must illustrate his reasonable and due diligence in acting, investigating, and discovering a defendant's misconduct before a court will permit that plaintiff's reliance on equitable tolling. *See Lederman*, 2015 U.S. Dist. LEXIS 8632 at *16-17, *22. A passive fiduciary cannot rely upon later discovery of facts that he wishes to incorporate into a claim unless he establishes that he has exercised due diligence in efforts toward timely discovering those facts.  A fiduciary plaintiff has "a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the [s]tatute of [l]imitations." *Lederman*, 2015 U.S. Dist. LEXIS 8632 at *35 quoting *Keselman v. Webber*,

56 A.D.3d 728, 868 (2d Dep't 2008).   A plaintiff who fails to establish his diligent investigative efforts will not benefit from equitable tolling.

Plaintiffs demonstrate no entitlement to equitable tolling.  They do not assert that Defendants engaged in conduct either dissuading or preventing them from commencing a timely action. Plaintiffs admit that they never engaged in diligent oversight or inquiry into Defendants' decision-making and management. Plaintiffs describe themselves as "passive" in their duties with respect to the Trust, Eber Bros. and EBWLC. TAC at 355. Plaintiffs never detail any attempts at reasonable and due diligence to evaluate the business decisions and transactions for which they seek relief.

Plaintiffs commenced this action in December 2016.  Accordingly, the Court lacks subject-matter jurisdiction to permit breach of fiduciary duties claims based upon events that occurred before December 2010.  Counts I, II, III, IV, V, and VII of the TAC rely to varying degrees upon theories of breach of fiduciary duty.  Count I invokes events from 2007, 2009, and 2010.  Count II relies upon facts from 2005, 2007, and 2010.  The TAC also demands relief for conduct as far back as 2001.

Plaintiffs also rely on untimely theories of conversion and unjust enrichment. TAC at 85, 94, 192-93.  With respect to these causes of action, facts prior to December 2013 may not be considered.

## X.   COUNTS VI AND VII SHOULD BE DISMISSED AS DUPLICATIVE OF OTHER CLAIMS PLED BY PLAINTIFFS.

The Court should dismiss Count VI in the TAC as duplicative of Counts I, II, IV, and V.  Count VI seeks declaratory relief related to issues that are the subject of Counts I, II, IV and V (breach of fiduciary duty, BCL § 720 and BCL § 619).  Put another way, a plaintiff who pleads a claim in one cause of action may not also seek declaration of that

right in a separate cause of action. Count VI impermissibly "seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006); *see also H&H Envtl. Sys. v. Evanston Ins. Co.*, 2019 U.S. Dist. LEXIS 39700 at *11-12 (W.D.N.Y. 2019) (interpreting the Declaratory Judgment Act to require dismissal of actions for declaratory judgment duplicative of claims for substantive relief). Accordingly, Count VI should be dismissed.

Similarly, Count VIII should be dismissed against Wendy Eber. Count VIII, alleging a claim for aiding and abetting breach of fiduciary duty and fraudulent concealment, is duplicative of Counts I and II. An aiding and abetting breach of fiduciary duty claim is duplicative where there is a claim for alleged breach of fiduciary duty against the same defendant(s) regarding the same transaction. *United States SBA v. Feinsod*, 347 F. Supp. 3d 147, 168 (E.D.N.Y. 2018) citing *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 412-13 (S.D.N.Y. 2013).

Counts I and II of the TAC clearly make claims for breach of fiduciary duty against Wendy Eber. Accordingly, the redundant cause of action in Count VIII alleging that she aided and abetted those alleged breaches of fiduciary duty must be dismissed.

## XI.  PLAINTIFFS' COUNT X FOR COMMON LAW (EQUITABLE) INDEMNITY FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

"[A]n indemnity cause of action can be sustained only if the...defendant ha[s] breached a duty to plaintiff and also if some duty to indemnify exists between them." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24 (1985).

There is no implied duty of indemnification between Plaintiffs and Lester Eber and Wendy Eber related to Plaintiffs' independent decision to indemnify CNB for its legal

expenses. Plaintiffs voluntarily made that decision in its agreement with CNB.  It was not required of Plaintiffs because of any control, supervision or negligence of Lester or Wendy Eber.  *See McCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369 (2011) ("a party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence or actual supervision on its own part") Plaintiffs' Count X for Common Law (Equitable) Indemnity must be dismissed as a matter of law.

The Eber Defendants adopt and incorporate by reference the moving papers of the Estate of Elliott W. Gumaer, Jr.

## CONCLUSION

For all of the foregoing reasons, the Eber Defendants' motion for partial summary judgment should be granted.

DATED:      November 8, 2019
              Rochester, New York

                       UNDERBERG & KESSLER LLP


                    By: */s/ Paul F. Keneally, Esq.*
                       Paul F. Keneally, Esq., Of Counsel
                       Colin D. Ramsey, Esq., Of Counsel
                       Jillian K. Farrar, Esq., Of Counsel
                       *Attorneys for Eber Defendants*
                       300 Bausch & Lomb Place
                       Rochester, New York 14604
                       (585) 258.2800