PLAINTIFF'S
EXHIBIT
1
817011 AF

## Sharon Greisberger

721-3331

**From:**   Sharon Greisberger
**Sent:**   Wednesday, November 22, 2006 9:13 AM
**To:**   George Hamlin
**Subject:** Eber account

Hi George,

I spoke with John Matteson last nigh and he shared some information with me regarding the relationship.

M&T has been Successor Trustee since 1991 when Marine Midland (HSBC) resigned. The account goes back to 1971 when Lester Eber's father died. There are 3 Co-trustees, M&T Bank, Lester Eber and Mike. M&T is not actively involved in running the business Lester handles the day to day affairs. There are 3 bene's of the trust, Lester, his sister and a niece.

The portfolio is made up of Eber Company stock, Eber Brothers Wine & Liquor and Eber Brothers Class B. The Class B shares are the voting shares and the trust has the majority of the shares. The rest of the portfolio is made up of AT&T stock, Exxon Mobil, and Vanguard Index fund. It also has Corporate and Muni Bonds. The total of this portion of the portfolio is between $500,000 and $600,000.00. M&T recently valued the company stock that is held in the portfolio at $25,000,000 to $30,000,000.00.

Eber Brothers has moved all of their commercial business to Wells Fargo. Not sure what happened with M&T Bank and that relationship. They still have all of their retail accounts at M&T. I know that M&T had the pension plan for Eber Brothers at one time. Not sure if that relationship still exists.

The fee structure that was agreed on back in 1991 with John and Bob Dell is a flat fee of $5,000.00 per year. The reasoning behind this is that the bank is really just managing part of the portfolio and has not been involved in the business. Upon the termination of the trust, M&T would be entitled to $100,000.00 plus 1% of non Eber assets. However, if Lester was to die first, the trust would continue on for the benefit of Lester's children, his sister and the niece. The business would probably be sold at that time and the bank would then take a 1% termination fee based on the proceeds of the sale of the business. The trust does not terminate until the death of both Lester and his sister. Lester is approximately 68 years old.

John did indicate that the business does have some cash flow problems. The sales for the company in 2005 were in excess of $600,000,000.00 He also shared with me that he thought that it would be best to have a male on the account with Lester. Apparently when the account was still at HSBC a women from their NYC office came up and tried to tell Lester how to run the business, which did not go over to well and that is when the account was moved to Central Trust Company. John is happy to meet with the administrator that will be assigned the account to bring them up to date regarding the account.

Let me know if I can do anything else to help with this account.

Have a good Thanksgiving,

Sharon Greisberger
Vice President and Trust
Administration Officer
585-419-0670 extension 50609
585-419-0616 fax number

**CNB00002**

12/14/2006



PLAINTIFF'S EXHIBIT

2

8/20/18  AF

PENGAD 800-631-6989

## Lester Eber

| | |
|---|---|
| **From:** | weber4@nyc.rr.com |
| **Sent:** | Wednesday, December 02, 2009 10:54 AM |
| **To:** | rhawks@cnbwealthstrategies.com |
| **Cc:** | Lester Eber |
| **Subject:** | Annual Letter |

Rick

I wanted to touch base with you concerning the annual letter that needs to be mailed out to the beneficiaries of the Trust and year end dividend payments. Please forward us a copy of the letter before it is mailed.

This year Lester will be sending out a letter to the beneficiaries and checks for the class A dividend.

I will forward you two checks for $1000 each for the class B dividend for Lester and Sally. Should I make these checks payable to CN bank?

Should you have any questions feel free to reach me at 203 234 6472.

Thank you,
Wendy
Sent from my Verizon Wireless BlackBerry

1



PLAINTIFF'S
EXHIBIT
4
876/18
PENGAD 800-631-6989

# THE CANANDAIGUA NATIONAL BANK
## AND TRUST COMPANY

**1150 Pittsford-Victor Road**
**Pittsford, NEW YORK 14534**

Richard H. Hawks, Jr.
Senior V.P. & Sr. Fiduciary Officer

(585) 419-0670 Ext. 36040
Fax (585) 394-4001

December 18, 2012

Mrs. Audrey Nan Boslov Hays
P.O. Box 126
La Huerta Ln Main Hse
Tesuque, NM 87574-0126

Re: Successor Co-Trustee u/w Allen Eber Residuary Trust

Dear Mrs. Nan Boslov Hays:

We are pleased to enclose our check no. 165084 in the amount of $5,586.33 representing your share of the 2012 annual trust income. A portion of the 2012 distribution to you from the trust will be tax exempt as the trust does hold some municipal bonds. You will receive a tax letter from the bank before the end of February advising you of the amount of taxable income you should report on your 2012 income tax return.

We also enclose a statement of assets that itemizes the stocks, bonds, and cash held in the trust as of November 30, 2012. The continuing low interest rate environment and soft economy has lead us to modify slightly our investment strategy. To continue providing reasonable income, we have increased our exposure to good well capitalized companies with strong dividend payouts. The Co-Trustees are investing to protect the current beneficiaries and the remainders interest.

The trust does hold various Eber Bros. securities. The focus with business limited to Connecticut has required the company to downsize and execute a modified business plan. The company will not be declaring and paying an annual dividend on its Class A, Class B, or Preferred stock this year. Earnings are being used to invest and improve the business.

Should you have any questions concerning this letter or the list of assets please contact me at (585) 393-6040.

As we enter this Holiday Season, I would like to wish you a very Merry Christmas and prosperous New Year.

Sincerely,

Richard H. Hawks, Jr.
Senior Vice President &
Sr. Fiduciary Officer

RHH:kll
Enclosures
C: Elliott W. Gumaer, Jr., Esq.





investing
in you

Canandaigua
National
Bank & Trust

Richard H. Hawks, Jr.
Senior Vice President &
Senior Fiduciary Officer
Wealth Strategies Group
72 South Main Street
Canandaigua NY 14424
585-394-4260 ext. 36040
800-724-2621 ext. 36040
**FAX** 585-394-4001
rhawks@cnbank.com

December 23, 2013

Mrs. Audrey Nan Boslov Hays
PO Box 126
La Huerta Ln Main Hse
Tesuque NM 87574-0126

Re: Successor Co-Trustee u/w Allen Eber Residuary Trust

Dear Mrs. Nan Boslov Hays:

We are pleased to enclose our check no. 177670 in the amount of $6,206.56 representing your share of the 2013 annual trust income. A portion of the 2013 distribution to you from the trust will be tax exempt as the trust does hold some municipal bonds. You will receive a tax letter from the bank before the end of February advising you of the amount of taxable income you should report on your 2013 income tax return.

We also enclose a statement of assets that itemizes the stocks, bonds, and cash held in the trust as of November 30, 2013. The continuing low interest rate environment and soft economy has lead us to modify slightly our investment strategy. To continue providing reasonable income, we have increased our exposure to good well capitalized companies with strong dividend payouts. We also invested in 3 fixed income funds. The Co-Trustees are investing to protect the current beneficiaries and the remainders interest.

Should you have any questions concerning this letter or the list of assets please contact me at (585) 393-6040.

As we enter this Holiday Season, I would like to wish you a very Merry Christmas and prosperous New Year.

Sincerely,

Richard H. Hawks, Jr.
Senior Vice President &
Sr. Fiduciary Officer

RHH:kll
Enclosures
C: Elliott W. Gumaer, Jr., Esq.

PLAINTIFF'S
EXHIBIT

PENGAD 800-631-6989

8/20118

**Lester Eber**

| | |
|---|---|
| **From:** | Wendy Eber |
| **Sent:** | Wednesday, January 02, 2013 5:34 PM |
| **To:** | Lester Eber |
| **Subject:** | Review Minutes from Meeting June 7th |
| **Attachments:** | Minutes from Meeting of the Trustees of the Trust of Allen Eber June 7th.docx |

Please review attached.

1

Minutes from Meeting of the Trustees of the Trust of Allen Eber June 7th, 2012

On June 7th, 2012 at 2:30 pm the Trustees of the Trust of Allen Eber which included Rick Hawks, Lester Eber and Elliot Gumaer had a conference call to discuss the change of control of Eber Bros. Metro Inc. Wendy Eber documented the discussion.

Elliot Gumaer described the recent judicial action regarding the change of control of Eber Bros. Metro Inc. including a detailed conversation about the Alex Bay, LLC suit vs. Eber Wine and Liquor Corp regarding the default of Eber Bros. Metro. Inc. to repay Alex Bay, LLC's loans to Eber Bros Wine and Liquor Corp. After extensive conversation concerning the details of the change of control of Eber Bros. Metro Inc. from Eber Bros. Wine and Liquor Corp. to Alex Bay, LLC Rick Hawks requested copies of the judicial decision, Summons and Complaint and a recent Balance Sheet for Eber Bros Wine and Liquor Corp.  A copy of all material was provided to the participants.

EB-00000855

**Lester Eber**

| | |
|---|---|
| **From:** | Wendy Eber |
| **Sent:** | Thursday, October 25, 2012 3:36 PM |
| **To:** | sumner@stpcpa.com |
| **Cc:** | Lester Eber |
| **Subject:** | Lester's Loans |
| **Attachments:** | Scanned from a Xerox multifunction device001.pdf |

I have attached minutes from the meeting of the Officers for the Trust of Allen Eber from August 11, 2011 which summarizes everything for you. Additionally, see attached file, a portion of the $575,895 and $1,503,750 notes were paid off over the years, so the unpaid balance of these two loans was $1,222,710.68. On Feb 11, 2011 this loan was assumed by Eber Bros Metro Inc.

The other loan for $1.5 M was assumed by metro in Feb 26, 2010. I have attached a trial balance of the account. Let's discuss when you have a moment. Is there a good time tomorrow morning?

Wendy

-----Original Message-----
From: administrator@slocumandsons.com [mailto:administrator@slocumandsons.com]
Sent: Thursday, October 25, 2012 3:30 PM
To: Wendy Eber
Subject: Scanned from a Xerox multifunction device


Please open the attached document. It was scanned and sent to you using a Xerox multifunction device.

Attachment File Type: pdf

multifunction device Location: machine location not set
Device Name: K7258

For more information on Xerox products and solutions, please visit http://www.xerox.com

1

EB-00000856

Minutes from meeting of Officers for the Trust of Allen Eber

On August 18th, 2011 at 2:15  Elliot Gumaer, Lester Eber and  Richard Hawks, Trustees of the Trust of Allen Eber, met at the Canandaigua National Bank in Rochester, NY to discuss and ratify the actions of the subsidiaries as described below and discuss other Trust business.  Mr. Elliot Gumaer participated by conference call.  Wendy Eber was present to facilitate and document the discussion.

The trustees ratified three loans made by Lester Eber to Eber Brothers Metro Inc.  The first loan for $1,500,000 from October, 2009 between Eber Bros Wine and Liquor Corp. was assumed by Eber Metro Inc. on February 26, 2010.  It grants a secured interest in Metro's in assets and has an outstanding balance of $1,500,000 plus accrued interest.

The second loan from March 16, 2006, an obligation of Eber Brothers Wine and Liquor Corp. for the original principal amount of $1,503,750, and the third loan of $575,895 from March 16, 2006 (which replaces the original note dated October 1, 2002) of which $ 1,222,710.68 plus accrued interest is outstanding.  The loan for $1.503750 was amended in Feb 11th, 2011 to reflect Eber Bros. Metro, Inc. assumption of this debt and also the security agreement from Feb 26, 2010 was restated to reflect the change. Lester Eber made funds available after Feb 11, 2011 to Eber Bros Metro Inc. In consideration of Metro Inc.'s assumption of this debt and security interest in Eber Bros Metro Inc.

After a lengthy discussion about how all the income beneficiaries and third parties were offered the opportunity to participate in the February 26th, 2010 loan but, they all declined and that only based on Lester's goodwill he gave the money for the loan, the loans were ratified by Rick Hawks and Mike Gumaer.  Lester Eber abstained.  A copy of all the documents relating to the loan was provided to Richard Hawks.

Other business discussed was the performance of the Trust securities. Rick Hawks suggested the need to move 60 percent of the assets into equities which provided dividends.  Rick requested copies of the Operating Statement for Eber-CT to determine the value of the corporation.  They are hereto attached. Rick also discussed Sally Kleeberg's request for payment by the trust for her medical expenses and health insurance.  Based on her decision to decline from providing proof of need, she was denied her request.

2026 - Other Current Liability
2006 - N/P to Employee

| 2040 - Due to Affiliates | | Debit | Credit | Balance |
|---|---|---|---|---|
| 2066 - N/P LE L7 | | | | |
| | 8/31/2007 To Enter BB as of 8-31-07 | | 2,079,845.00 | 2,079,845.00 |
| 2100 - Personal Accounts | | | | |
| | 8/31/2007 To Enter BB as of 8-31-07 | 889,731.15 | | 889,731.15 |
| | 9/30/2007 To record Sept 2007 activity | | 383.21 | 889,342.14 |
| | 10/1/2007 To reverse Sept 2007 entry | | 284.35 | 889,042.20 |
| | 10/31/2007 GL Cross summary Oct-07 | 1,691.46 | | 890,795.35 |
| | 10/31/2007 JNB120 - To record payroll expense for the month | | 2,500.00 | 854,296.85 |
| | 11/30/2007 EVAC AP GL Cross November 2007 | 929.62 | | 855,164.57 |
| | 11/30/2007 Ref JN120 - To record payroll expense for the month | | 2,050.00 | 857,104.97 |
| | 12/31/2007 To record payroll expense for the month | | 2,050.00 | 855,164.97 |
| | 12/31/2007 GL Cross | 1,581.20 | | 856,746.17 |
| | 1/31/2008 GL Cross | 3,777.07 | | 860,523.24 |
| | 1/31/2008 To record payroll expense for the month | | 3,650.00 | 856,623.24 |
| | 2/29/2008 GL Cross | 9,574.01 | | 861,507.25 |
| | 2/29/2008 To record payroll expense for the month | | 2,650.00 | 858,897.25 |
| | 3/31/2008 GL Cross | 806.70 | | 859,998.00 |
| | 3/31/2008 To record payroll expense for the month | | 2,000.00 | 857,998.05 |
| | 4/30/2008 To record payroll expense for the month | | 1,500.00 | 858,488.05 |
| | 4/30/2008 GL Cross | 176.77 | | 855,888.80 |
| | 5/31/2008 To record payroll expense for the month | | 2,000.00 | 853,888.80 |
| | 5/31/2008 GL Cross | 960.15 | | 854,828.85 |
| | 7/31/2008 GL cross | 677.99 | | 855,286.84 |
| | 3/31/2009 Payable to L. Eber re. check from him to payoff balance of W. Eber $34,863.72 pmt from acct 1730... | | 12383.72 | 842,884.32 |
| | 7/30/2020 To record trade-in value of 2007 Volvo XC90 | 14,000 | | 856,884.32 |

1,223,710.48

Total of Lester Eber's Loans to Eber Bros Metro Inc.

Loan Oct 2009, Security Interest established Feb 2010,

| Deposit | Date | Description | Account | | |
|---|---|---|---|---|---|
| Deposit | 12/31/2009 | | | 212,000 | 212,000 |
| Deposit | 02/26/2010 | Loan from Lester Eber | 1073 · CRBT Operating Acct | 160,000.00 | 383,000.00 |
| Deposit | 03/31/2010 | Loan from Lester Eber | 1073 · CRBT Operating Acct | 156,000.00 | 637,000.00 |
| Deposit | 05/03/2010 | Deposit | 1073 · CRBT Operating Acct | 220,000.00 | 747,000.00 |
| Deposit | 07/22/2010 Lester Eber | Deposit | 1073 · CRBT Operating Acct | 30,000.00 | 767,000.00 |
| Deposit | 03/04/2011 Lester Eber | Loan from Lester Eber | 1073 · CRBT Operating Acct | 250,000.00 | 1,017,000.00 |
| Deposit | 04/06/2011 Lester Eber | Loan from Lester Eber | 1073 · CRBT Operating Acct | 50,000.00 | 1,067,000.00 |
| Deposit | 04/26/2011 Lester Eber | Loan from Lester Eber | 1073 · CRBT Operating Acct | 84,000.00 | 1,151,000.00 |
| Deposit | 05/26/2011 Lester Eber | Loan from Lester Eber | 1073 · CRBT Operating Acct | 82,000.00 | 1,166,000.00 |
| Deposit | 06/13/2011 Lester Eber | Loan from Lester Eber | 1073 · CRBT Operating Acct | 179,000.00 | 1,345,000.00 |
| Deposit | 07/06/2011 Lester Eber | Loan from Lester Eber | 1073 · CRBT Operating Acct | 272,000.00 | 1,617,000.00 |
| Deposit | 02/11/2011 Lester Eber | Advance of funds per Security Agreement 2-11-11 | 1073 · CRBT Operating Acct | 100,000.00 | 1,717,000.00 |
| Deposit | 10/07/2011 Lester Eber | | 1073 · CRBT Operating Acct | 46,000.00 | 1,763,000.00 |

Total Outstanding, March 13, 2006 Loan   1,222,710.68

Combined Loans Total   2,985,710.68

EB-00000859

1,763,000 - 2009, src FEG2010    out

3) 13,200 (2) 1,503,750
3) 13, 2006 + 575,895
= 2,079,645

1,227,710. Eber Wine & Liquor Corp.
**Transactions by Account**
2,985,710.68    All Transactions

11:21 AM
07/19/11
Accrual Basis

| Type | Date | Num | Adj | Name | Memo | Clr | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **2029 · Other Current Liability** | | | | | | | | | | |
| 2035 · N/P to Employee | | | | | | | | | | |
| General Journal | 09/31/2008 | 420 | | | Payable to L. Eber re, check from him to payoff balance of W. Eber $34,363.72 p... | | 1873 · CHBT O... | | 12,363.72 | 12,363.72 |
| General Journal | 12/31/2008 | 627 | | | JV to record special deposit - LS check 5843 deposited 12/4/08 | | 1873 · CHBT O... | | 200,000.00 | 212,363.72 |
| General Journal | 12/31/2008 | 627 | | | JV to record special deposit - LS check 3838 deposited 12/18/08 | | 1873 · CHBT O... | | 12,000.00 | 224,363.72 |
| General Journal | 07/30/2010 | 377 | | | To record trade-in value of 2007 Volvo XC90 | | 3850 · Gain on ... | 14,000.00 | | 210,363.72 |
| General Journal | 02/11/2011 | 685 | | | To zero EWLC Loan that is assumed by Metro Inc 2/11/2011 | | 1724 · Due Fro... | 210,363.72 | | 0.00 |
| Total 2035 · N/P to Employee | | | | | | | | 224,363.72 | 224,363.72 | 0.00 |
| Total 2029 · Other Current Liability | | | | | | | | 224,363.72 | 224,363.72 | 0.00 |
| **2045 · Due to Affiliate** | | | | | | | | | | |
| 2046 · N/P LS LT | | | | | | | | | | |
| General Journal | 08/31/2007 | 2 | | | To Enter BB as of 8-31-07 | | 3320 · Paid Dis... | | 2,679,845.00 | 2,679,845.00 |
| General Journal | 02/11/2011 | 693 | | | To zero EWLC Loan that is assumed by Metro Inc 2/11/2011 | | 1724 · Due Fro... | 2,679,845.00 | | 0.00 |
| Total 2046 · N/P LS LT | | | | | | | | 2,679,845.00 | 2,679,845.00 | 0.00 |
| **2100 · Personal Accounts** | | | | | | | | | | |
| General Journal | 08/31/2007 | 2 | | | To Enter BB as of 8-31-07 | | 3320 · Paid Dis... | 900,731.35 | | -900,731.35 |
| General Journal | 09/30/2007 | 4 | | | To record Sept 2007 activity | | 1600 · WFF Op... | | 300.31 | -935,342.14 |
| General Journal | 10/01/2007 | 11 | | | To reverse Sept 2007 entry | | 4180 · Postage ... | | 281.35 | -950,043.80 |
| General Journal | 10/31/2007 | 29 | Misc. Cus... | | GL Cross summary Oct-07 | | 1233 · Acct. Re... | 1,891.48 | | -950,732.18 |
| General Journal | 10/31/2007 | 40 | | | JV#120 - To record payroll expense for the month | | 4090 · Shipping... | | 2,000.00 | -926,224.35 |
| General Journal | 11/30/2007 | 68 | Misc. Cus... | | EWLC AP GL Cross November 2007 | | 1201 · Account... | 826.62 | | -938,164.97 |
| General Journal | 11/30/2007 | 62 | | | Ref JV120 - To record payroll expense for the month | | 4000 · Shipping... | | 2,000.00 | -957,164.97 |
| General Journal | 12/31/2007 | 131 | | | To record payroll expense for the month | | 4000 · Shipping... | | 2,000.00 | -955,164.97 |
| General Journal | 12/31/2007 | 125 | | | GL Cross | | 1320 · Building | 1,891.20 | | -936,746.17 |
| General Journal | 01/31/2008 | 183 | | | GL Cross | | 1719 · A/R Eber | 3,377.07 | | -960,623.34 |
| General Journal | 01/31/2008 | 186 | | | To record payroll expense for the month | | 4090 · Shipping... | | 2,000.00 | -938,929.24 |
| General Journal | 02/29/2008 | 200 | | | GL Cross | | 1150 · Deposits... | 3,574.01 | | -951,987.23 |
| General Journal | 02/29/2008 | 206 | | | To record payroll expense for the month | | 4270 · Office S... | | 2,000.00 | -938,987.23 |
| General Journal | 03/31/2008 | 235 | | | GL Cross | | 1719 · A/R Eber | 395.76 | | -950,990.90 |
| General Journal | 03/31/2008 | 237 | | | To record payroll expense for the month | | 4270 · Office S... | | 2,000.00 | -957,983.89 |
| General Journal | 04/30/2008 | 269 | | | To record payroll expense for the month | | 4270 · Office S... | | 2,000.00 | -946,483.88 |
| General Journal | 04/30/2008 | 262 | | | GL Cross | | 1719 · A/R Eber | 176.77 | | -935,889.90 |
| General Journal | 05/31/2008 | 302 | | | To record payroll expense for the month | | 4270 · Office S... | | 2,000.00 | -953,989.90 |
| General Journal | 06/30/2008 | 395 | | | GL Cross | | 1719 · A/R Eber | 850.25 | | -954,620.05 |
| General Journal | 07/31/2008 | 327 | | | GL cross | | -SPLIT- | 877.50 | | -905,290.04 |
| General Journal | 02/11/2011 | 693 | | | To zero EWLC Loan that is assumed by Metro Inc 2/11/2011 | | 1724 · Due Fro... | | 905,290.04 | 0.00 |
| Total 2100 · Personal Accounts | | | | | | | | 973,488.09 | 973,488.09 | 0.00 |
| Total 2045 · Due to Affiliate | | | | | | | | 2,895,139.80 | 2,895,139.80 | 0.00 |
| **TOTAL** | | | | | | | | 3,177,404.32 | 3,177,404.32 | 0.00 |

(handwriting) Contra liability

(handwriting) EV nner

(handwriting) Health Insurance

Health insurance co-pd w/ paycheck th/loan    1.434

Liability    – | +
Contra Liability    + | –

• Description of $1,503,750.00   Bonus
  . By Directors
• Collect
. Detail.

210,363
+2,079,645
- 855,298
----------
1,434,900 7c

Minutes from meeting of the Board of Eber Bros. Wine and Liquor Metro Inc. August 18, 2011

On August 18th, 2011 at 2:15 the board of directors for Eber Brothers Wine and Liquor Metro Inc. which include Elliot Gumaer, Lester Eber and Wendy Eber, met at the Canandaigua National Bank in Rochester, NY to discuss and ratify the actions of the subsidiaries as described below. Mr. Elliot Gumaer participated by conference call. Wendy Eber documented the discussion.

The trustees ratified three loans made from Lester Eber to Eber Brothers Wine and Liquor Corp. The first loan for $1,500,000 from October, 2009 was assumed by Eber Metro Inc. on February 26, 2010. Eber Metro Inc. granted a secured interest in Metro's assets to secure this loan. This secured loan has an outstanding balance of $1,500,000 plus accrued interest.

The second loan from March 16, 2006, an obligation of Eber Brothers Wine and Liquor Corp. to Lester Eber for the original principal amount of $1,503,750. The third loan of $575,895 from March 16, 2006 (which replaced the original note dated October 1, 2002) of which $ 1,222,710.68 plus accrued interest is outstanding. The loan for $1.503750 was amended in Feb 11th, 2011 to reflect Eber Bros. Metro, Inc. assumption of this debt. Also the security agreement from Feb 26, 2010 was restated to reflect Eber Bros. Metro Inc. assumption of this debt. Lester Eber made funds available after Feb 11, 2011 to Eber Bros Metro Inc. inconsideration of Metro Inc.'s assumption of this debt and security interest in Eber Bros Metro Inc.

After a lengthy discussion about how all the income beneficiaries and third parties were offered the opportunity to participate in the February 26th, 2010 loan but, they all declined and that only based on Lester's goodwill he gave the money for the loan, the loans were ratified by Wendy Eber and Mike Gumaer. Lester Eber abstained. A copy of all the documents relating to the loan was provided to the participants.

Minutes from meeting of the Board of Eber Bros. Wine and Liquor Corp.   August 18, 2011

On August 18th, 2011 at 2:15 the board of directors for Eber Brothers Wine and Liquor Corp. which include Elliot Gumaer, Lester Eber and Wendy Eber, met at the Canandaigua National Bank in Rochester, NY to discuss and ratify the actions of the subsidiaries as described below.   Mr. Elliot Gumaer participated by conference call.   Wendy Eber documented the discussion.

The trustees ratified three loans made from Lester Eber to Eber Brothers Wine and Liquor Corp.   The first loan for $1,500,000 from October, 2009 was assumed by Eber Metro Inc. on February 26, 2010. Eber Metro Inc. granted a secured interest in Metro's assets to secure this loan. This secured loan has an outstanding balance of $1,500,000 plus accrued interest.

The second loan from March 16, 2006, an obligation of Eber Brothers Wine and Liquor Corp. to Lester Eber for the original principal amount of $1,503,750. The third loan of $575,895 from March 16, 2006 (which replaced the original note dated October 1, 2002) of which $ 1,222,710.68 plus accrued interest is outstanding. The loan for $1.503750 was amended in Feb 11th, 2011 to reflect Eber Bros. Metro, Inc. assumption of this debt. Also the security agreement from Feb 26, 2010 was restated to reflect Eber Bros. Metro Inc. assumption of this debt. Lester Eber made funds available after Feb 11, 2011 to Eber Bros Metro Inc. inconsideration of Metro Inc.'s assumption of this debt and security interest in Eber Bros Metro Inc.

After a lengthy discussion about how all the income beneficiaries and third parties were offered the opportunity to participate in the February 26th, 2010 loan but, they all declined and that only based on Lester's goodwill he gave the money for the loan, the loans were ratified by Wendy Eber and Mike Gumaer.   Lester Eber abstained.   A copy of all the documents relating to the loan was provided to the participants.

EB-00000862

Minutes from meeting of the Officers of the Trust of Allen Eber August 18, 2011

On August 18th, 2011 at 2:15 Elliot Gumaer, Lester Eber and Richard Hawks, Trustees of the Trust of Allen Eber, met at the Canandaigua National Bank in Rochester, NY to discuss and ratify the actions of the subsidiaries as described below and discuss other Trust business.   Mr. Elliot Gumaer participated by conference call. Wendy Eber was present to facilitate and document the discussion.

The trustees ratified three loans made from Lester Eber to Eber Brothers Wine and Liquor Corp. The first loan for $1,500,000 from October, 2009 was assumed by Eber Metro Inc. on February 26, 2010. Eber Metro Inc. granted a secured interest in Metro's assets to secure this loan. This secured loan has an outstanding balance of $1,500,000 plus accrued interest.

The second loan from March 16, 2006, an obligation of Eber Brothers Wine and Liquor Corp. to Lester Eber for the original principal amount of $1,503,750. The third loan of $575,895 from March 16, 2006 (which replaced the original note dated October 1, 2002) of which $ 1,222,710.68 plus accrued interest is outstanding. The loan for $1.503750 was amended in Feb 11th, 2011 to reflect Eber Bros. Metro, Inc. assumption of this debt. Also the security agreement from Feb 26, 2010 was restated to reflect Eber Bros. Metro Inc. assumption of this debt. Lester Eber made funds available after Feb 11, 2011 to Eber Bros Metro Inc. inconsideration of Metro Inc.'s assumption of this debt and security interest in Eber Bros Metro Inc.

After a lengthy discussion about how all the income beneficiaries and third parties were offered the opportunity to participate in the February 26th, 2010 loan but, they all declined and that only based on Lester's goodwill he gave the money for the loan, the loans were ratified by Rick Hawks and Mike Gumaer. Lester Eber abstained. A copy of all the documents relating to the loan was provided to Richard Hawks.

Other business discussed was the performance of the Trust securities. Rick Hawks suggested the need to move 60 percent of the assets into equities which provided dividends.  Rick requested copies of the Operating Statement for Eber-CT to determine the value of the corporation. They are hereto attached. Rick also discussed Sally Kleeberg's request for payment by the trust for her medical expenses and health insurance. Based on her decision to decline from providing proof of need, she was denied her request.

EB-00000863

PLAINTIFF'S EXHIBIT 8 8720118

**AFFIDAVIT**

1. I make this affidavit from my own knowledge and belief. I understand that I am making this affidavit under penalty of false statement.

2. This affidavit is being made as part of an application to the Department of Consumer Protection Liquor Control Division to transfer stock in the entity known as Eber-CT. Eber-CT is the backer of LIW0000596.

3. Presently, 79 percent of Eber-CT is owned by me through an entity known as Eber Metro.

4. I wish to transfer all of that 79 percent that I own from Eber-Metro to Lester Eber LLC, an entity which will also be wholly owned by me.

5. This transfer is being done for no consideration, in that it is being done strictly for organizational purposes. No money or other consideration will change hands.

_Lester Eber_

Lester Eber

Personally appeared Lester Eber, who subscribed and swore to the truth of the foregoing affidavit this 8th day of December, 2011.

EB-00020413



investing
in you

Canandaigua
National
Bank & Trust

PLAINTIFF'S
EXHIBIT
9
8/20/18    AF

Richard H. Hawks, Jr.
Senior Vice President &
Senior Fiduciary Officer
Wealth Strategies Group
72 South Main Street
Canandaigua NY 14424
585-394-4260 ext. 36040
800-724-2621 ext. 36040
FAX 585-394-4001
rhawks@cnbank.com

February 24, 2016

Mr. Lester Eber
95 Allens Creek Rd Ste 2
Rochester, NY 14618-3250

Elliot W. Gumaer, Jr
PO Box 30478
Sea Island GA 31561

*Re: Allen Eber Residuary Trust*

Dear Mr. Eber and Mr. Gumaer,

The Allen Eber Residuary Trust (the "Trust") currently holds 1,850 shares of Eber Bros. & Co. Cl. A stock, 290 shares of Eber Bros. & Co. Cl. B stock, and 2,000 shares of Eber Bros. & Co. 6% Non-Cumulative Pfd. While there are currently values associated on these assets, they are not current. The Trust also holds approximately $600k of other marketable securities.

M&T Bank Corporation settled its Trustee accounting ending on December 31, 2006, and the accounting included 250 shares of Eber Bros. Wine & Liquor Pfd and 379 shares of Eber Bros. Wine & Liquor Cl. B in its holdings. Eber Bros. & Co. was the majority owner of Eber Bros. Wine & Liquor, which ceased as an operating company in April of 2007 and was sold to Southern Wine & Liquor prior to the transfer of the trust assets to CNB as Successor Trustee. CNB accepted the various shares of Eber Bros. & Co. described above in September of 2007, but did not receive any shares of Eber Bros. Wine & Liquor as the corporation had already been sold.

Because Eber Bros. & Co. was essentially an inactive corporation, formal valuations were not provided to CNB. Lester Eber was the source of the value attributed to the shares of Eber Bros. & Co. Subsequent to the sale of Eber Bros. Wine & Liquor, the Pension Benefit Guaranty Corp. successfully sued to assume the role of statutory trustee of the Eber Bros. Wine & Liquor Corp. Retirement Plan, as the company ceased to make minimum funding contributions to the defined benefit plan within two years after the company was sold.

We believe that there are no corporate assets to substantiate the values attributed to the shares of Eber Bros. & Co. stock currently remaining in the Trust. We believe the Eber Bros. & Co. stock to have a zero value.

EB-00026322

It is clear from the terms of the Trust that the purpose of the Trust was to hold the shares of Eber Bros. & Co. stock for so long as it was a going concern. Article NINTH of the Last Will and Testament of Allen Eber states, in part:

> This trust shall continue throughout the lives of my three children and shall terminate on the death of the last survivor thereof; provided, however, that in case all, or substantially all, my stock in Eber Bros. & Co., Inc. shall be theretofore sold, my Trustee may, in its absolute discretion, sooner terminate this trust and distribute the corpus then remaining. . .

In our view, the purpose of the Trust has been exhausted under the circumstances surrounding the Eber Bros. & Co. stock. We propose to petition the Monroe County Surrogate's Court to settle the account of CNB, Lester Eber and Elliot W. Gumaer, Jr. as Trustees of the Trust, and distribute the remaining assets to the remaindermen of the Trust or such other distribution as determined by the Court. We are currently preparing an accounting. The remaindermen will be parties to the proceeding and will have an opportunity to review and either approve or object to the accounting and the proposed distribution.

We ask that you review this proposal and respond with your comments. If you agree with this direction, please sign and return the copy of this letter and we will proceed in this direction.

Should you have questions please call or email me.

Sincerely,

Richard H. Hawks, Jr.
Senior Vice President & Trust Officer
Canandaigua National Bank as Co-Trustee
of Eber Residuary Trust

Approve process of Petitioning Court for
Settlement of Trust

_____
Lester Eber – Co-Trustee

Approve process of Petitioning Court for
Settlement of Trust

_____
Elliot W. Gumaer, Jr.

EB-00026323

## Current Corporate Structure of Eber Bros. Wine and Liquor Corporation and its Operating Affiliates



134782 1235587.1



PLAINTIFF'S
EXHIBIT
11
1 | 23 | 19
PENGAD 800-631-6989

Summary of Lester Eber's Payments for Liabilites of EBER Bros. W and L Corp.

| Date | Check # | Amount | Description of Funds |
|------|---------|--------|----------------------|
| 3/31/2006 | NA | $1,222,710.68 | EWLC Loan |
| 12/2/2009 | 543 | $200,000.00 | EBWLC- Loan |
| 12/18/2009 | 559 | $12,000.00 | EBWLC- Loan |
| 2/18/2010 | 106 | $100,000.00 | EBWLC- Loan |
| 2/18/2010 | 108 | $50,000.00 | EBWLC- Loan |
| 3/11/2010 | 104 | $165,000.00 | EBWLC- Loan |
| 6/8/2010 | 105 | $220,000.00 | EBWLC- Loan |
| 7/22/2010 | 107 | $20,000.00 | EBWLC- Loan |
| 2/11/2011 | 916 | $10,000.00 | EBWL Metro Inc Loan |
| 3/12/2011 | 112 | $150,000.00 | EBWL Metro Inc Loan |
| 3/12/2011 | 934 | $100,000.00 | EBWL Metro Inc Loan |
| 4/8/2011 | 1017 | $50,000.00 | EBWL Metro Inc Loan |
| 4/22/2011 | 1026 | $64,000.00 | EBWL Metro Inc Loan |
| 5/25/2011 | 993 | $32,000.00 | EBWL Metro Inc Loan |
| 6/8/2011 | 1000 | $179,000.00 | EBWL Metro Inc Loan |
| 7/8/2011 | 1010 | $275,000.00 | EBWL Metro Inc Loan- Wolf Concepts Settlement |
| 10/7/2011 | 1087 | $46,000.00 | EBWL Metro Inc Loan |
| 10/24/2011 | 1093 | $25,000.00 | EBWL Metro Inc Loan |
| 12/25/2011 | 815 | $15,000.00 | EBWL Metro Inc Loan |
| 2/26/2012 | 1175 | $20,000.00 | EBWL Metro Inc Loan |
| 3/14/2012 | 1188 | $203,000.00 | EBWL Metro Inc Loan |
| 4/16/2012 | 1214 | $5,000.00 | EBWL Metro Inc Loan |
| 5/10/2012 | 1288 | $10,000.00 | EBWL Metro Inc Loan |
| 2012 | various | $100,000.00 | D-4 Settlement |
| 7/1/2013 | wire | $653,134.00 | Teamsters Pension Withdrawal Liability Settlement |
| 10/1/2016 | wire | $400,000.00 | Harris Beach Settlement |
| 2016 | wire | $27,500.00 | Benderson Lease Settlement |
| 2/28/2017 | NA | $1,400,000.00 | Lester and Ellen Eber's Pension Benefit- approx value to Settle DB Plan |
| 2014 – 2017 | Various | $325,450.00 | Legal fees for Defined Benfit Pension and Teamsters Pension liability |
| 2013-2016 | Various | $504,453.00 | Legal fees for Wolf Concepts and HB litigation and Adm fees for EBWLC |
| Total | | $6,584,247.68 | |

Lester personally guaranteed the CNBank loan from 2007 to 2017 while securing loan with $500,000 CD and $120,000 of pledged assets.



PLAINTIFF'S
EXHIBIT
12
1/23/19
PENGAD 800-631-6989

EB-00020333

## LINE OF CREDIT NOTE

$1,500,000                                                              October ___, 2009

FOR VALUE RECEIVED, EBER BROS. WINE & LIQUOR METRO, INC., a New York corporation with an address at 155 Paragon Drive, Rochester, New York 14625 ("Maker"), hereby promises to pay to the order of LESTER EBER, an individual with an address at 155 Paragon Drive, Rochester, New York 14625 ("Holder"), the principal sum of ONE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($1,500,000.00) (the "Maximum Principal Amount") or such lesser or greater amount as may be outstanding hereunder.

1.     Line of Credit. This Note evidences a revolving line of credit. Accordingly amounts hereunder may be borrowed, repaid and re-borrowed provided that at no time shall Maker permit the aggregate principal amount of all advances made under this Note to exceed the Maximum Principal Amount.

2.     Interest Rate. All amounts outstanding under this Note shall bear interest at a rate equal to twelve and one half percent (12.5%) per annum. Upon the occurrence of an Event of Default (whether or not the Holder has accelerated payment of the outstanding balance due hereunder), or after maturity or after judgment has been rendered with respect to the obligations hereunder, the unpaid principal balance, at the option of Holder, shall bear interest at a rate equal to fifteen percent (15%). The right of the Holder to receive such increased rate of interest shall not constitute a waiver of any other right or remedy of the Holder. All interest shall be calculated based on 360 day year and the actual number of days elapsed.

3.     Payments. Accrued interest will be due and payable in arrears on December 1, 2009 and on the first day of each March, June, September and December thereafter (each an "Interest Payment Date") and on the Maturity Date, as hereinafter defined. Notwithstanding the foregoing, on each Interest Payment Date, at the request of Maker all or such portion of the interest then due and owing specified by Maker shall be added to the principal amount hereof instead of paying such interest in cash, whereupon such amount will bear interest at rate per annum specified herein. Maker hereby agrees, upon the request of Holder, to amend this Note and execute one or more new notes in the form hereof to reflect any increase in the principal sum hereof resulting from the addition of the accrued interest to the principal; provided, however that the failure to so amend this Note or to enter into one or more new notes shall not relieve Maker of its obligation to pay such accrued interest in accordance with the terms hereof. All amounts remaining outstanding hereunder, including all principal and interest, shall become due and payable in full on December 31, 2011 (the "Maturity Date").

4.     Late Charge. If the entire amount of any required payment is not paid in full within five (5) days after the same is due, the Maker shall pay to Holder a late fee equal to two percent (2%) of the amount of the payment that remains unpaid.

5.     Prepayment. Maker shall have the option of paying the amounts outstanding under this Note to Holder, in full or part, at any time and from time to time without any premium or penalty.

134782 1237719.1


PLAINTIFF'S EXHIBIT
13
1/23/19
PENGAD 800-631-6989

KSH00001

6.   Request for Advances; Discretionary Facility.   At any time and from time to time Maker may make a request for a loan that specifies (a) the amount requested as the principal amount of such loan and (b) the business day of Holder on which such loan is requested to be made which shall not be less than three (3) days from the date of such notice. The decision whether to honor such loan request and make such loan shall be in the sole discretion of Holder. Holder may treat as made by Maker and rely upon, and Maker shall be bound by, any loan request that Holder in good faith believes to be valid and to have been made in the name or on behalf of Maker by any officer of Maker, and Holder shall not incur any liability to Maker or any other person as a direct or indirect result of honoring such loan request and making such loan.

7.   Events of Default/Remedies.   At the option of Holder, all amounts outstanding under this Note shall become immediately due and payable in full, without further presentment, protest, notice, or demand, upon the happening of any Event of Default. Upon the occurrence of an Event of Default, Holder shall be entitled to exercise any legal or equitable right which he or it may have, and may proceed to protect and enforce its rights by any other appropriate proceedings. The following events shall constitute "Events of Default" under this Note:

    a.   *Nonpayment.*   Failure of Maker to make any payment of any type within fifteen (15) days after the same becomes due and payable.

    b.   *Financial Difficulties.*   Financial difficulties of Maker as evidenced by:

        i.   the filing of a voluntary or involuntary petition in bankruptcy, or under any chapters of the Bankruptcy Code, or under any federal or state statute providing for the relief of debtors;

        ii.   making an assignment for the benefit of creditors;

        iii.   consenting to the appointment of a trustee or receiver for all or a major part of any of Maker's property;

        iv.   the entry of a court order appointing a receiver or a trustee for all or a major part of Maker's property; or

        v.   the admission by Maker in writing of the Maker's inability to pay its debts as they become due.

    c.   *Change of Control.*   Maker enters into any agreement pursuant to which Maker will sell all or substantially all of the assets of Maker, or upon the closing of any transaction or series of related transactions in which more than fifty percent (50%) of the issued and outstanding shares of capital stock of the Maker are issued to, or acquired by, any one or more persons or entities who are not shareholders of the Maker as of the date of this Note.

    d.   *Cease Operations.*   Maker ceases all ongoing business operations.

    e.   *Sale of Eber-Connecticut, LLC.*   Eber-Connecticut, LLC ("Eber-CT")

2

KSH00002

EB-00017872

enters into any agreement pursuant to which Eber-CT will sell all or substantially all of the assets of Eber-CT, or upon the closing of any transaction or series of related transactions in which more than fifty percent (50%) of the issued and outstanding units of membership interest of the Maker are issued to, or acquired by, any one or more persons or entities who are not controlled by or under common control with the Maker;

8.   Expenses. Maker shall pay to Holder all amounts incurred by Holder, including without limitation attorneys' fees and disbursements, in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights hereunder, whether or not any legal proceeding ins commenced.

9.   Holder's Records Conclusive. Holder shall maintain a record of the date and original principal amount of each advance made by him hereunder and the date and amount of each payment to be applied to the outstanding principal amount of this Note. Such records shall be conclusive evidence of the outstanding principal amount under this Note and of all advances hereunder, absent manifest error. No failure by Holder to make any such annotation in its records shall affect Maker's obligation to pay the principal and interest of each advance or any other obligation of Maker hereunder.

10.   Subordination. All amounts outstanding under this Note are subordinate to any and all amounts owed by the Maker to The Canandaigua National Bank and Trust Company.

11.   Miscellaneous. The terms of this Note cannot be changed, nor may this Note be discharged in whole or in part, except by a writing executed by Holder. No delay or omission by Holder in exercising any rights hereunder shall operate as a waiver of such rights. This Note shall be governed by and construed under the laws of the State of New York.

IN WITNESS WHEREOF, Maker has duly executed this Note as of the day and year first above written.

EBER BROS. WINE & LIQUOR METRO, INC.

By: _____
Lester Eber, Chief Executive Officer

By: _____
Wendy Eber, Chief Financial Officer

Accepted:

_____
Lester Eber

134782-1237719.1

3

KSH00003

EB-00017873

# STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT is made and entered into as of the 30th day of May, 2010, by and among **Polebridge Bowman Partners, LLC** ("*Buyer*") and **Eber Brothers Wine and Liquor Metro, Inc.** ("*Seller*").

## W I T N E S S E T H:

**WHEREAS,** Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, [_____] units of membership interest (the "*Units*") of Eber Connecticut, LLC (the "Company"), which represents 6% of the total outstanding equity interests of the Company, with such purchase to be upon and subject to the terms and conditions contained herein.

**NOW, THEREFORE,** in consideration of the mutual representations, warranties, covenants and agreements herein contained, the parties do hereby agree as follows:

## ARTICLE I - SALE OF UNITS

1.01  Upon the terms and subject to the conditions of this Agreement, Buyer shall purchase from Seller, and Seller shall sell, transfer, assign and deliver to Buyer, the Units.

## ARTICLE II - PURCHASE PRICE

2.01  The aggregate purchase price for the Units shall be $350,000.00, which shall be paid by delivery by Buyer to Seller of a Nonrecourse Promissory Note in the form attached hereto as **Exhibit A** (the "*Note*"), against delivery of certificate(s) evidencing the Units duly endorsed for transfer, or accompanied by duly executed stock transfer powers, free and clear of all liens, claims and encumbrances. The Note shall be secured by a pledge of the Units pursuant to a Stock Pledge Agreement in the form attached hereto as **Exhibit B** (the "*Pledge Agreement*").

## ARTICLE III - REPRESENTATIONS AND WARRANTIES OF SELLER

3.01  To induce Buyer to purchase the Units, Seller represents and warrants to Buyer as follows:

(a)  Seller has the right, power and authority to execute, deliver and perform this Agreement and the Pledge Agreement, and to consummate the transactions contemplated hereby and thereby, and this Agreement and the Pledge Agreement have been duly and validly executed and delivered by Seller and constitute Seller's legal, valid and binding obligation, enforceable in accordance with their respective terms. The transactions contemplated by this Agreement have been duly authorized by all necessary corporate action on the part of Seller. No consent of any third party is required for Seller's execution, delivery and performance of this Agreement.

(b)  Seller is a corporation duly organized, validly existing and in good standing under the laws of its state of incorporation and has all necessary corporate power to enter into the transactions contemplated by this Agreement. Company is a limited liability company duly organized, validly existing and in good standing under the laws of its state of organization, has all necessary limited liability company power to carry on its business as it is now being conducted, and is in good standing in each jurisdiction in which it is required to be so qualified.

PLAINTIFF'S EXHIBIT

**14**

EB-00023029

(c)  Seller owns, of record and beneficially, valid title to the Units, and such Units are free and clear of all liens, claims and encumbrances.  The Units are not subject to any right of first refusal or other rights or restrictions on transfer which would prevent the consummation of the purchase and sale of the Units from Seller to Buyer hereunder.  The Company owns all right, title and interest to all of its assets and such assets are sufficient to conduct the business of the Company as it is now conducted or presently proposed to be conducted.

(d)  No person is entitled to any finder, broker or other fee associated with the transactions contemplated by this Agreement.

(e)  The Units have been validly issued and are fully-paid and non-assessable.  The Company has only one class of membership interests and the Units represent 6% of the fully diluted equity interests of the company.  There are no options, warrants, or other securities outstanding that are convertible into membership interests of the Company nor has the Company made any commitment to issue any of the foregoing.  The Company has not issued any phantom rights, stock appreciation rights, or profits interests.  The Company has no subsidiaries.  ~~The Company has no outstanding indebtedness.~~  Except for any restrictions imposed by federal and state securities laws (and except for compliance with Article V of this Agreement), the transfer of the Units is not restricted.

(f)  Company is taxed as a partnership for federal and state income tax purposes.  Seller has paid all taxes owed by Seller in connection with its ownership of the Units.  Buyer will not incur any tax liability for any periods that fall on or precede the date of this Agreement.

(g)  There is no litigation pending or threatened against Company.  There is no litigation pending or threatened against Seller which seeks to prevent or could have the effect of preventing the transactions contemplated by this Agreement.  Company is in compliance with all laws, regulations and orders applicable to its business and has all licenses necessary to operate the business of the Company as it is now conducted or presently proposed to be conducted.

## ARTICLE IV - REPRESENTATIONS AND WARRANTIES OF BUYER

4.01  To induce Seller to sell the Units, Buyer represents and warrants to Seller as follows:

(a)  Buyer has the right, power and authority to execute, deliver and perform this Agreement, the Note and the Pledge Agreement, and to consummate the transactions contemplated hereby and thereby, and this Agreement, the Note and the Pledge Agreement have been duly and validly executed and delivered by Buyer and constitute Buyer's legal, valid and binding obligation, enforceable in accordance with their respective terms.  The transactions contemplated by this Agreement have been duly authorized by all necessary limited liability company action on the part of Buyer.  No consent of any third party is required for Buyer's execution, delivery and performance of this Agreement.

(b)  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of its state of organization and has all necessary limited liability company power to enter into the transactions contemplated by this Agreement.

(c)  Buyer is purchasing the Units for Buyer's own account, as principal, for investment purposes only and not with a view to resale, distribution or division.  Buyer is an "accredited investor" as that term is defined under Rule 501 promulgated pursuant to the Securities Act of 1933.

- 2 -

EB-00023030

## ARTICLE V – COVENANTS

5.01   To the extent that any taxes become due and payable by virtue of ownership of the Units relating to any period on or before the date of this Agreement, then Seller shall promptly pay such taxes and indemnify and hold Buyer harmless from any claim for taxes.

5.02.   Seller will indemnify, defend and hold Buyer harmless against any breach of any Seller representation, warranty or covenant under this Agreement and any claim made by a third party against Buyer that results from any breach of any Seller representation, warranty or covenant under this Agreement. The right of indemnification hereunder will include the right to receive attorney's fees and costs incurred by Buyer in seeking a remedy under this Agreement or in defending a third party claim under this Agreement.

5.03   Seller and Buyer agree that Buyer shall have the right to set off any damages incurred by Buyer relating to any breach of this Agreement against the principal and interest then due under the Note. Seller agrees that it shall take no action inconsistent with Buyer's right (including, but not limited to, claiming that Seller is entitled to receive the full principal and interest under the Note) once Buyer has delivered notice of set off to Seller.  This right shall be in addition to any rights Buyer has at law or equity.

5.04   To the extent that Buyer proposes to sell all or a portion of the Units to a third party, then Buyer shall comply with the rights of refusal set forth in this Section.  Upon receipt by Buyer of a bona fide, written offer from a third party to purchase all or a portion of the Units, then Buyer shall submit a written notice to each of Wendy Eber, Seller and [EG] (the "***Proposed Sale Notice***") setting forth the material terms under which the proposed sale is to take place and offering to sell such amount of Units on the terms described therein.  Ms. Eber shall have the first right to purchase all the Units set forth on the Proposed Sale Notice (and on the terms described therein).  In order to accept the right of first refusal hereunder, Ms. Eber must provide written notice to Buyer, Seller and [EG] within 5 days of the receipt (as calculated under Section 6.02 below) of the Proposed Sale Notice.  If Ms. Eber does not submit her notice of acceptance within the allotted time, then Seller shall have five additional days to submit a written notice to Buyer and [EG] that it wishes to accept a second right of first refusal and purchase all of the Units set forth in the Proposed Sale Notice (and on the terms described therein).  If Seller does not submit its notice of acceptance within the allotted time, then [EG] shall have five additional days to submit a written notice to Buyer that [EG] wishes to accept a third right of refusal and purchase all of the Units set forth in the Proposed Sale Notice (and on the terms described therein).  If any of Ms. Eber, Seller or [EG] deliver an acceptance notice under this provision, then the closing for the transaction shall take place on or before the 30th day following Buyer's receipt of the acceptance notice from the applicable party.  If none of Ms. Eber, Seller or [EG] deliver an acceptance notice under this Section within the require timeframes or if any of Ms. Eber, Seller or [EG] fail to consummate the purchase of the Units within 30 days of their acceptance, then Buyer shall be permitted to consummate the sell of the Units to any party (but on terms no less favorable than set forth in the Proposed Sale Notice) for a period of 180 days after the expiration of the time periods for the receipt of acceptance notices hereunder.

5.05.   Seller hereby appoints Buyer as its attorney-in-fact to execute any and all stock powers and other documents as may be necessary to transfer the ownership of the Units on the books and records of the Company.  Seller acknowledges that the foregoing power of attorney is coupled with a material property interest of Buyer and cannot be rescinded.  Seller agrees to take all action necessary (and to execute any documents as are reasonably requested by Buyer) to cause the transfer of the ownership of the Units on the books and records of the Company to be recorded, to cause a replacement certificate(s) in the name of Buyer and representing the Units to be issued, and to otherwise give effect to the transactions contemplated by this Agreement.

EB-00023031

## ARTICLE VI - MISCELLANEOUS

6.01  This Agreement, along with the Note and related Pledge Agreement, reflects the entire agreement of the parties with regard to the subject matter addressed hereunder and supersedes all prior understandings, whether oral or written.  No amendment or modification of this Agreement shall be binding unless the same shall be in writing and executed by the parties hereto.  This Agreement may be executed in one or more counterparts, each of which will be deemed an original.  Both parties acknowledge their respective sophistication and ability to negotiate the terms of this Agreement, the Pledge Agreement and the Note.  Therefore, no provision of this Agreement, the Pledge Agreement or Note shall be construed against a party on the grounds that the party drafted or had drafted any provision of the Agreement, the Pledge Agreement or Note.  If any Section or part thereof shall for any reason be held or adjudged to be invalid, illegal or unenforceable by any court of competent jurisdiction, such Section or part thereof so adjudicated invalid, illegal or unenforceable shall be deemed separate, distinct and independent, and the remainder of this Agreement shall remain in full force and effect and shall not be affected by such holding or adjudication.  The headings in this Agreement are for convenience only and do not impart meanings to their respective sections.

6.02  Any notices or other communications required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given and delivered when delivered in person, three days after mailed postage prepaid by registered or certified mail with return receipt requested, or one day after sent by overnight delivery service, in each case to the recipient at the address set forth next to its signature on the signature page hereto, or to such other address as to which the other party hereto has been subsequently notified in writing by such recipient.

6.03  This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Georgia without regard to its conflict of laws principles.  Any dispute regarding this Agreement, the Pledge Agreement or Note shall be resolved by the appropriate courts sitting in Fulton County, Georgia and each submits to the jurisdiction and venue of such courts and hereby waives any objection that the forum is inconvenient.  This Agreement shall be binding upon the parties hereto and shall inure to the benefit of such parties and their successors and assigns. No waiver of any provision of this Agreement shall be valid unless set forth in writing and signed by the party against whom the waiver is sought.  No single instance of waiver shall act as a future waiver of the same right on behalf of a party.

*[Signatures appear on the following page.]*

EB-00023032

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first above written.

**BUYER:**

POLEBRIDGE BOWMAN PARTNERS, LLC

By: _____

Print Name: Glenn W. Sturm

Title: Sole Member and Manager

Address:    201 17th St., NW
Suite 1700
Atlanta, Georgia 30363
Attn: Glenn W. Sturm

**SELLER:**

EBER BROTHERS WINE AND LIQUOR METRO, INC.

By: _____

Print Name: LESTER EBER

Title: President

Address:    95 Allens Creek Rd Building 2 Suite 10
Rochester, NY 14618
Attn: Lester Eber

- 5 -

EB-00023033

**EXHIBIT A**
**NOTE**

(See attached.)

EB-00023034

**EXHIBIT B**
**PLEDGE AGREEMENT**

(See attached.)

EB-00023035

## UNIT PLEDGE AGREEMENT

**THIS UNIT PLEDGE AGREEMENT** is made and entered into as of the 30th day of May, 2010, by and between **PoleBridge Bowman Partners, LLC** ("*Pledgor*") and **Eber Brothers Wine and Liquor Metro, Inc.** ("*Secured Party*").

### W I T N E S S E T H :

**WHEREAS,** Pledgor has purchased from Secured Party certain units of membership interest (the "*Units*") representing 6% of the outstanding equity interests of Eber Connecticut, LLC (the "*Company*"); and

**WHEREAS,** as consideration for the purchase of the Units, Pledgor has delivered a Nonrecourse Promissory Note of even date herewith (the "*Note*") to Secured Party in the principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00); and

**WHEREAS,** to secure the payment of all obligations of Pledgor under the Note, Pledgor has agreed to pledge to secured party, and to grant Secured Party a security interest in, all of the Units;

**NOW, THEREFORE,** for and in consideration of the premises and the agreements and covenants contained herein, the parties hereto agree as follows:

i)      **Security Interest.**  Pledgor hereby grants and assigns to Secured Party, its successors and assigns, a continuing security interest in and security title to the Units, together with all dividends, cash, options, warrants, rights, instruments and other property or proceeds from time to time received, receivable or otherwise distributed in respect of, or in exchange or substitution for, any or all of the Units (all of which shall be included in the term "Units").  Concurrently herewith Pledgor has delivered to Secured Party a certificate(s) representing the Units and stock powers endorsed in blank, as security for payment of all obligations of Pledgor to Secured Party under the Note, or any extension, renewal, amendment or modification thereof.   Beneficial ownership of the Units, including, without limitation, all voting, consensual and dividend rights, shall remain in Pledgor until the occurrence of a Default pursuant to Section iii) hereof.

ii)      **Warranty.**  Pledgor hereby represents and warrants to Secured Party that it owns the Units free and clear of all liens, claims and encumbrances, except for the security interest created hereby.

iii)      **Default.**  Upon the occurrence of an Event of Default under the Note, or if Pledgor shall fail to perform or observe any provision of this Agreement and such failure shall continue for thirty (30) days after notice is given by Secured Party to Pledgor of such failure (any of such occurrences being hereinafter referred to as a "Default"), Secured Party shall be entitled, without limitation, to exercise the following rights, which Pledgor hereby agrees to be commercially reasonable:

(a)      to receive all amounts payable in respect of the Units otherwise payable to Pledgor, and to exercise all of the rights, powers and remedies of Pledgor with respect to such payments;

(b)      to transfer all or any part of the Units into Secured Party's name or the name of its nominee or nominees;

EB-00023036

(c)     to vote all or any part of the Units (whether or not transferred into the name of secured party) and give all consents, waivers and ratifications in respect of the Units and otherwise act with respect thereto as though it were the outright owner thereof;

(d)     at any time or from time to time to sell, assign and deliver, or grant options to purchase, all or any part of the Units in one or more blocks, or any interest therein, at any public or private sale at any exchange or elsewhere, without demand of performance, advertisement or notice of intention to sell or of the time or place of sale or adjournment thereof (all of which are hereby expressly and irrevocably waived by Pledgor), for cash, on credit or for other property, for immediate or future delivery without any assumption of credit risk, and for such price or prices and on such terms as Secured Party in its sole discretion may determine; Pledgor agrees that to the extent that notice of sale shall be required by law that at least five (5) business days' notice to Pledgor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification; Secured Party shall not be obligated to make any sale of the Units regardless of notice of sale having been given; Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and any such sale may, without further notice, be made at the time and place to which it was so adjourned; Pledgor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Units, whether before or after sale hereunder, and all rights, if any, of marshalling the Units; at any such sale, unless prohibited by applicable law, Secured Party may bid for and purchase all or any part of the Units so sold free from any such right or equity of redemption; and Secured Party shall not be liable for failure to collect or realize upon any or all of the Units or for any delay in so doing nor shall any of them be under any obligation to take any action whatsoever with regard thereto;

(e)     generally, to take all such other action as Secured Party in its sole discretion may determine as incidental or conducive to any of the matters or powers mentioned in the foregoing provisions of this Section 3 and which Secured Party may or can do lawfully and to use the name of Pledgor for the purposes aforesaid and in any proceedings arising therefrom.

iv)     **Application of Proceeds.** The proceeds of the public or private sale or other disposition shall be applied (a) to the costs incurred in connection with the sale; (b) to any unpaid interest which may have accrued on any obligations secured hereby; and (c) to any unpaid principal on any obligations secured hereby, and any remaining proceeds shall be paid over to Pledgor or others as provided by law. In the event the proceeds of the sale or other disposition of the Units are insufficient to pay such costs, interest and principal, Pledgor shall not be personally liable to Secured Party for any such deficiency.

v)     **Additional Rights of Secured Party.** In addition to its rights and privileges under this Agreement, secured party shall have all the rights, powers and privileges of a secured party under the Georgia Uniform Commercial Code.

vi)     **Return of Units to Pledgor.** Upon payment in full of all principal and interest on the Note, this Agreement shall terminate and Secured Party shall return to Pledgor all of the then remaining Units.

vii)     **Notices.** Any notices or other communications, required or permitted by this Agreement shall be in writing and made pursuant to the notice provision of that certain purchase agreement by and between Pledgor and Secured Party dated as of an even date therewith.

viii)     **Applicable Law; Binding Agreement**.  The provisions of this Agreement shall be construed and interpreted, and all rights and obligations of the parties hereto determined, in accordance with the laws of the State of Georgia, without regard to its conflict of law principles.  This Agreement, together with all documents referred to herein, constitutes the entire agreement between Pledgor and Secured Party with respect to the matters addressed herein and may not be modified except by a writing executed by Secured Party and Pledgor.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which, taken together, shall constitute one and the same instrument.

ix)     **Severability**.  If any Section or part thereof shall for any reason be held or adjudged to be invalid, illegal or unenforceable by any court of competent jurisdiction, such Section or part thereof so adjudicated invalid, illegal or unenforceable shall be deemed separate, distinct and independent, and the remainder of this Agreement shall remain in full force and effect and shall not be affected by such holding or adjudication.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**PLEDGOR:**

POLEBRIDGE BOWMAN PARTNERS, LLC
By: _____
Print Name: Glenn W. Sturm
Title: Sole Member and Manager

**SECURED PARTY:**

EBER BROTHERS WINE AND LIQUOR METRO, INC.
By: _____
Print Name: _____LESTER EBER_____
Title: _____President_____

EB-00023038

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED**, the undersigned, **Polebridge Bowman Partners, LLC** (hereinafter referred to as the "*Assignor*"), has fully and irrevocably granted, assigned and transferred and hereby does fully and irrevocably grant, assign and transfer (subject to the terms of the unit pledge agreement dated as of even date herewith signed by Assignor and Assignee) to **Eber Brothers Wine and Liquor Metro, Inc.** and its successors, transferees and assigns (hereinafter collectively referred to as the "*Assignee*") _____ units of membership interest of Eber Connecticut, LLC (the "*Company*") represented by **Certificate No.(s)_____** and standing in Assignor's name on the Company's books and records.

Assignor hereby irrevocably appoints Assignee to be Assignor's true and lawful attorney-in-fact, with full power of substitution, and empowers Assignee, for and in the name and stead of Assignor, to transfer such shares on the books of the Company. Assignor acknowledges that this appointment is coupled with an interest and shall not be revocable by Assignor for any reason.

**IN WITNESS WHEREOF**, the undersigned has executed and sealed this power as of the 30th day of May, 2010.

ASSIGNOR:

POLEBRIDGE BOWMAN PARTNERS, LLC

By: _____

Print Name: Glenn W. Sturm

Title: Sole Member and Manager

EB-00023039

## NONRECOURSE PROMISSORY NOTE

$350,000.00                                                    May 30, 2010
                                                              Atlanta, Georgia

      **Polebridge Bowman Partners, LLC** (hereinafter referred to as "Debtor"), for value received, hereby promises to pay to the order of **Eber Brothers Wine and Liquor Metro, Inc.** (hereinafter referred to as "Payee"), the principal sum of **THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00)**, with simple interest from the date hereof on the unpaid principal balance outstanding at the rate of two percent (2%) per annum. Interest shall be computed daily on the basis of a 360-day year, by multiplying the principal amount outstanding by the interest rate and dividing the product so obtained by 360. The principal hereof and the interest thereon are payable at Payee's principal place of business set forth on the purchase agreement dated as of the date hereof (the "Purchase Agreement"), or at such other place as Payee may from time to time designate to Debtor in writing, in coin or currency of the United States of America.

      Accrued interest shall be due and payable by Debtor on the maturity date.

      If not sooner paid, all principal outstanding and all interest accrued and unpaid thereon shall be due and payable on May 29, 2015, the maturity date.

      Debtor reserve the right to make prepayments of principal at any time, without premium or penalty. Each prepayment, when paid, shall be applied first to accrued interest and then to the reduction of the unpaid principal balance hereof.

      If any of the following events (an "Event of Default") shall occur and be continuing for any reason whatsoever (and whether such occurrence shall be voluntary or involuntary or come about or be effected by operation of law or otherwise), then this Note shall thereupon be and become, forthwith due and payable, without any further notice or demand of any kind whatsoever, all of which are hereby expressly waived:

      (a)     If Debtor defaults in the payment of principal or interest on this Note on the maturity date;

      (b)     If Debtor makes an assignment for the benefit of creditors or admits in writing its inability to pay its debts generally as they become due;

      (c)     If an order, judgment or decree is entered adjudicating Debtor bankrupt or insolvent (and such order, judgment or decree remains unstayed for more than 30 days);

      (d)     If Debtor petitions or applies to any tribunal for the appointment of a trustee or receiver of Debtor, or of any substantial part of the assets of Debtor, or commences any proceedings relating to Debtor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect; or

      (e)     If any such petition or application is filed, or any such proceedings are commenced, against Debtor, and Debtor by any act indicates its approval thereof, consent thereto, or acquiescence therein, or an order is entered appointing any such trustee or receiver, or approving the petition in any such proceedings, and such order remains unstayed and in effect for more than ninety (90) days.

      This Note is being executed and delivered pursuant to, and is subject to the terms and conditions of, the Purchase Agreement, and this Note is secured by a pledge of the Units pursuant to that certain unit pledge

EB-00023040

agreement by and between Debtor and Payee of even date herewith. **Notwithstanding anything to the contrary contained in this Note or in the unit pledge agreement, in any action or proceeding brought to enforce the obligation of Debtor to pay any indebtedness evidenced hereby, the judgment or decree shall be enforceable against Debtor only to the extent of the interest of Debtor in the property described in the unit pledge agreement, and any such judgment shall not be subject to execution on, nor be a lien on, any assets of Debtor other than its interest in said property, it being specifically understood and agreed that Debtor shall have no personal liability for the payment of this Note and that Payee shall look only to the property described in the unit pledge agreement for the payment of the indebtedness evidenced hereby.**

This Note represents a loan and extension of credit to Debtor made by Payee and shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its conflict of laws principles.

Except as otherwise provided herein, demand, presentment, dishonor, protest and notice of dishonor or protest are hereby waived by Debtor.

All notices, requests, demands and other communications to Debtor and Payee hereunder shall made in accordance with the notice provision of the Purchase Agreement.

**IN WITNESS WHEREOF,** Debtor has executed this Note as of the date first set forth above.

DEBTOR:

POLEBRIDGE BOWMAN PARTNERS, LLC

By: _____

Print Name: Glenn W. Sturm
Title: Sole Member and Manager

-2-

EB-00023041