DOC. NO.
ACCT. NO. 6QB- 5544Q

_deed 7/24/70_

I, <u>ALLEN EBER</u>, of the Town of Brighton, Monroe County, New York, make, publish and declare this to be my Last Will and Testament:

<u>FIRST</u>: I bequeath to my wife, Evelyn S. Eber, all my personal effects and other personal property, except cash, stocks, bonds, securities and choses in action; but if she does not survive me, I bequeath such articles to my children who survive me.

<u>SECOND</u>: I am currently paying the monthly rental of the apartment occupied by my friend, Frances Flanigan, at Plymouth Gardens, Inc., 1400 South Plymouth Avenue, Rochester, New York. In order that after my death provision for her rooming accomodations may be made, I bequeath the sum of Two thousand five hundred dollars ($2,500.00) to Marine Midland Trust Company of Rochester, of Rochester, New York, IN TRUST, to hold, manage, invest and reinvest the same, to collect the income therefrom, and, monthly from and after the date of my death, to pay from the income of said trust (and from the principal thereof as required) such sums as it shall deem necessary and advisable for the rental of such apartment. If Frances Flanigan shall move from her present apartment, my Trustee shall pay from the income and principal of this trust such sums as it shall deem necessary and advisable as rental for the rooming accommodations into which she shall move. In no event, however, shall more than Seventy-five dollars ($75.00) per month be paid to, or for the benefit of, Frances Flanigan in satisfying the terms of this bequest. Upon the death of said Frances Flanigan after my death the principal of this trust then remaining shall be added to my residuary estate and disposed of as therein provided.

I direct that the legacy provided by this "SECOND" shall be paid by my Executor as soon after the probate of my Will as practicable.

RECEIVED JUN 80

Page 10
TRUST

PLAINTIFF'S
EXHIBIT
132

-2-

THIRD: I bequeath to the following organizations in which I have had an interest for many years, the sum set after the name of each:

A - To the Jewish Home for the Aged, 1162 St. Paul Street, Rochester, New York, Five thousand dollars ($5,000.00);

B - To Congregation Beth Israel (Leopold Street Synagogue), located on Leopold Street, Rochester, New York, if still functioning, Two hundred and fifty dollars ($250.00);

C - To Temple Beth-El, 139 North Winton Road, Rochester, New York, Five thousand dollars ($5,000.00).

D - To Rabbinical College, Rehovot, Israel, if still functioning, in memory of its former Dean, Rabbi Z. I. Meltzer, One thousand dollars ($1,000.00);

E - To Beth Medrash Govoha of America, presently located at 617 Sixth Avenue, Lakewood, New Jersey, One thousand five hundred dollars ($1,500.00), in memory of Rabbi Aaron Kotler;

F - To Shriners Hospitals for Crippled Children, Two thousand five hundred dollars ($2,500.00);

G - To Brandeis University, located at Waltham, Massachusetts, Two thousand dollars ($2,000.00);

H - To The University of Rochester, located at Rochester, New York, Two thousand dollars ($2,000.00);

I - To Community Chest of Rochester and Monroe County, Inc., located at 70 North Water Street, Rochester, New York, Two thousand five hundred dollars ($2,500.00).

FOURTH: I bequeath to my friend, Ross Pino, the sum of Five thousand dollars ($5,000.00); provided, however, he shall be in the employ of at least one of the Eber Companies at the time of my death. This legacy shall be void and of no effect if said Ross Pino shall not be so employed at the date of my death.

CNB0000518

-3-

FIFTH:  I am currently paying the premiums on Mutual Life Insurance Co. of New York policies Nos. 780-05-28, 752-06-15, 918-82-35, 754-56-49 and 934-34-56, being policies on the lives of my grandchildren, ~~Sally~~ Kleeberg, Daniel Sanford Kleeberg, Audrey Nan Boslov, David G. Eber and Wendy Pamela Eber. I direct my Executor to prepay all unpaid premiums for said five policies as soon as practicable after my death so that all of said policies shall be fully paid.

SIXTH:  I bequeath to my following named relatives the sum set after the name of each:

A - To my nephew, Simon Pogal, One thousand dollars ($1,000.00);

B - To my nephew, Bernard M. Pogal, One thousand dollars ($1,000.00);

C - To my niece, Lillian Pogal Bernstein, One thousand five hundred dollars ($1,500.00).

If either of my said nephews or my said niece shall predecease me leaving issue who shall survive me, the bequest to said nephew or niece shall be paid to his or her issue.

SEVENTH:  I bequeath to my friend and business associate, Richard H. Murnighan, Four hundred (400) shares and to my friend and business associate, Elmer J. LeFevre, One hundred and twenty (120) shares of my Class B non-voting common shares of Eber Bros. & Co., Inc., each of a par value of Ten dollars ($10.00) per share; provided, however, that if my sister-in-law, Rose Eber, shall survive me, such gifts of said shares shall become effective only upon her death.

I give and grant unto said Richard H. Murnighan the right and option to purchase from my estate Six hundred (600) shares and to said Elmer J. LeFevre the right and option to purchase from my estate Two hundred and forty (240) shares of my said Class B non-voting common stock of Eber Bros. & Co. Inc.,

CNB0000519

-4-

at any time within twelve (12) months after my death; provided, however, that if my said sister-in-law, Rose Eber, shall survive me, such options shall not become effective nor exercisable until after her death; and if she shall survive me by more than eleven (11) months, such options may be exercised at any time within sixty (60) days after her death.

Eber Bros. & Co., Inc., owns all outstanding common stock of Eber Bros. Wine & Liquor Corp., and the value (probably cost) at which the investment of Eber Bros. & Co., Inc., in such common stock is carried on its books is substantially lower than the current value of such common stock as shown by the books of Eber Bros. Wine & Liquor Corp. The fiscal years of the two cor- porations do not coincide. The option price per share shall be one-half (1/2) the book value per share of the outstanding Class B non-voting common stock of Eber Bros. & Co., Inc., at the close of the last full fiscal year immediately preceding my death. The book value of all outstanding Class B non-voting common stock of Eber Bros. & Co., Inc., for the purpose of computing such option price, shall be determined by deducting from the value of such common stock, as shown by the books of Eber Bros. & Co., Inc., on that date, the amount at which its investment in the common stock of Eber Bros. Wine & Liquor Corp., is carried on the books of Eber Bros. & Co., Inc., and then adding to the remainder the value of such common stock of Eber Bros. Wine & Liquor Corp., as shown by the books of the latter corporation at the close of its last full fiscal year immediately preceding my death; and the sum thereof shall be divided by the number of shares of such common stock then outstanding in order to determine the book value per share.

The foregoing bequests of shares of my said Class B non-voting common stock of Eber Bros. & Co. Inc., and the fore- going options to purchase additional shares of said stock shall

CNB0000520

-5-

be and hereby are conditioned, in the case of each of my said associates, (a) upon his continuing to be an employee of at least one of the Eber Companies at the time of my death and at the time of such purchase and shall be void and of no effect as respects either who shall not be so employed at such times; and (b) that prior to receiving any shares of my said Class B non-voting common stock of Eber Bros. & Co., Inc., each of my said business associates, who shall be entitled to receive any such shares hereunder, shall enter into an agreement with Eber Bros. & Co., Inc., which shall be binding upon him and his personal representative and distributees, in and by the terms of which he shall grant to said corporation an irrevocable option to purchase all shares of common stock of said corporation owned by him at the time of his death and shall agree that in case he shall wish to dispose of said shares of common stock at any time prior to his death, he shall first offer all of said shares to said corporation before otherwise selling or disposing of the same; the price in either of such events to be seventy-five per cent (75%) of the book value of said shares at the close of the last full fiscal year of Eber Bros. & Co., Inc., immediately preceding the death of said business associate or the offering by him of his said shares to the corporation, as the case may be; the book value of said shares of common stock of Eber Bros. & Co., Inc., to be determined for the purpose of computing such option price, in the manner hereinbefore prescribed in this clause "SEVENTH" with respect to the options granted to my said two business associates upon my death; the other terms of which agreement shall be prescribed by my said Executor.

EIGHTH: If my wife, Evelyn, survives me, I bequeath to my Trustee, IN TRUST, an amount equal to one-half of my adjusted gross estate as finally determined for Federal estate tax purposes less the value for Federal estate tax purposes of

CNB0000521

-6-

all items included in my gross estate which qualify for and are allowed as an estate tax marital deduction and which pass or have passed in a form which qualifies for the estate tax marital deduction from me to my wife under other provisions of this Will by right of survivorship with respect to jointly owned property, under settlement arrangements relating to life insurance proceeds, and otherwise than under this pecuniary bequest.  The words "adjusted gross estate", "gross estate" and "pass or have passed" as used herein shall have the same meaning as such words shall have under the provisions of the Internal Revenue Code in effect at the time of my death.

When the computations necessary to determine the amount of this pecuniary estate tax marital deduction gift are made, values as finally determined for Federal estate tax purposes shall control.

I direct that this legacy shall be satisfied only from assets that qualify for the marital deduction under the provisions of the Internal Revenue Code in effect at the time of my death, or from the proceeds of such assets.  I further direct (a) that this legacy shall not be satisfied from property situate [within the meaning of such Code or any United States estate tax convention applicable to my estate] in a foreign country and subject to any estate, inheritance, succession or other death tax imposed by a foreign country or a possession or political subdivision thereof, or the proceeds thereof; and (b) that no assets which may be subject to both United States income and estate taxes and eligible for a tax credit or deduction shall be used in satisfying this legacy; provided, however, that assets described in "(a)" and "(b)" hereof may be used to the extent that my estate shall not include sufficient other property to satisfy this bequest.

Within the limitations of the preceding paragraph, I direct that to the extent possible the legacy devised and

CNB0000522

-7-

bequeathed by this "EIGHTH" shall be satisfied first by the distribution to my Trustee of assets other than my stock of Eber Bros. & Co., Inc.  To the extent that the assets comprising my residuary estate other than my stock in Eber Bros. & Co., Inc., are insufficient to satisfy in full the legacy devised and bequeathed by this "EIGHTH" my Executor shall distribute to my Trustee in satisfaction thereof the appropriate number of my shares of 6% non-cumulative preferred stock of Eber Bros. & Co., Inc.; and to the extent that such legacy is not fully satisfied thereby, my Executor shall distribute to my Trustee in satisfaction thereof the appropriate number of my shares of Class B nonvoting stock of Eber Bros. & Co., Inc., and, if such legacy is still not fully funded, then such number of my shares of Class A common stock of Eber Bros. & Co., Inc., as may be necessary to fully fund said legacy.  It is my intention and wish that the legacy devised and bequeathed by this "EIGHTH" shall not be satisfied by the distribution of any of my Class A voting shares of Eber Bros. & Co., Inc., unless all other assets of my estate available for such purpose shall prove insufficient.

My Trustee shall divide this legacy into two (2) equal parts, one to comprise and be known as the "Power of Appointment Trust" and the other to comprise and be known as the "Estate Trust".

I direct that in funding the equal part hereof herein defined as the "Power of Appointment Trust" my Trustee shall allocate to such trust assets other than my stock of Eber Bros. & Co., Inc., and that to the extent that my stock of Eber Bros. & Co., Inc., is necessary to fund such equal part that first my shares of 6% cumulative preferred stock be used and then to the extent necessary my shares of Class B common stock be used before my Class A common stock is allocated to said "Power of Appointment Trust".  It is my intention and wish that the "Power of

CNB0000523

-8-

Appointment Trust" herein created shall not be funded by the allocation of any of my Class A common stock of Eber Bros. & Co., Inc., unless all other assets devised and bequeathed to my Trustee by "EIGHTH" hereof shall be insufficient.

In funding the equal part hereof herein defined as the "Estate Trust" my Trustee shall allocate to such trust all assets remaining in "EIGHTH" hereof not hereinabove allocated to the "Power of Appointment Trust".

A - My Trustee shall hold, manage, invest and reinvest the "Power of Appointment Trust" as a separate trust for the benefit of my wife, shall collect the income thereof and shall pay the net income therefrom earned from and after the date of my death to my wife, or apply the same for her benefit, in annual or more frequent installments, so long as she shall live. As used in this "A" of "EIGHTH" the term "income" shall include all the income that may be required to qualify this "Power of Appointment Trust" for the marital deduction allowable in the Federal estate tax proceeding in my estate.

It is my wish that my wife shall receive at least Eighteen thousand dollars ($18,000.00) per year from the trust created by this "A" of "EIGHTH" and any additional amounts which may from time to time be necessary, advisable or expedient for her proper care and/or for the payment of any unusual expenses resulting from any extended illness, emergency or other extra-ordinary need; and to that end I do hereby expressly authorize and empower my Trustee, in its absolute and uncontrolled discretion, to pay to my wife from the principal of this trust, or apply for her benefit, such amounts as it shall from time to time consider advisable or expedient.

I hereby expressly provide that the Trustee of this separate trust created under "A" of "EIGHTH" shall not have any rights, powers, duties, authority, privileges or immunities,

CNB0000524

-9-

whether or not discretionary, granted to my Executor or Trustee
by any other provisions of this Will if and to the extent that
such rights, powers, duties, authority, privileges or immunities
would disqualify for the marital deduction the legacy devised and
bequeathed to my Trustee by this "A" of "EIGHTH".

Upon the death of my wife, my Trustee shall distribute
the entire principal of this "Power of Appointment Trust" then
remaining as she shall appoint, in trust or otherwise, by her
Will which specifically refers to and exercises this power of
appointment (including the power in her to appoint the entire
principal to her estate) and if and to the extent that she shall
fail effectively to exercise such general power of appointment
then such principal shall be added to my residuary estate and
disposed of as therein provided.

B - My Trustee shall hold, manage, invest and
reinvest the "Estate Trust", collect the income therefrom and
accumulate the net income earned from and after the date of my
death, so long as my wife shall live, and upon her death shall
distribute the principal of this separate trust then remaining,
plus all accumulated income and any accrued or collected but un-
distributed net income, to her estate. My Trustee is authorized
to pay to my wife, or apply for her benefit, such sums from the
accumulated income or principal of this "Estate Trust" as, in
its discretion, seems advisable for her maintenance and welfare,
provided, however, that no such payment or application shall be
made to or for the benefit of my wife unless and until the prin-
cipal of the "Power of Appointment Trust" hereinabove created is
exhausted.

As used in this "B" of "EIGHTH" the term "income" shall
include all the income that may be required to qualify this
"Estate Trust" for the marital deduction allowable in the Federal
estate tax proceeding in my estate. I hereby expressly provide

CNB0000525

-10-

that the Trustee of this separate "Estate Trust" shall not have
any rights, powers, duties, authority, privileges or immunities,
whether or not discretionary, granted to my Executor or Trustee
by any other provisions of this Will if and to the extent that
such rights, powers, duties, authority, privileges or immunities
would disqualify for the marital deduction the "Estate Trust"
created by this "B" of "EIGHTH".

So long as any part of this legacy shall remain unpaid,
my wife shall be entitled to receive such part of the income of
my estate as will equal three and one-half per cent (3-1/2%) per
annum from the date of my death on any unpaid part of said
legacy. Such interest shall be in lieu of any interest or other
income on this legacy. I direct that any income tax paid by my
Executor in respect of income attributable to this legacy, shall
be charged to and paid from the amount payable under this para-
graph in such equitable manner as my Executor shall determine.

My Executor is authorized to satisfy this legacy in
cash or in kind, or partly in cash and partly in kind, and any
property so distributed in kind shall be valued for that purpose
at its value on the date or dates of distribution to my Trustee
or on its basis to my estate for United States income tax pur-
poses, whichever shall be lower; provided, however, that I request
(but do not direct) that any distribution made in kind be made
with assets having a date of distribution value which does not
exceed (or exceeds by the smallest amount possible) their basis
for United States income tax purposes.

NINTH: All of the rest, residue and remainder of my
estate, real or personal, of whatever nature and wherever located,
to which I shall be in any way entitled at the time of my death,
including any legacy which may lapse or be invalid or for any
other reason fail to take effect (but excluding any property over
which I may have at the time of my death any power of appointment

CNB0000526

-11-

or disposal, it being my express intention not to exercise any such power by this "NINTH"), shall be disposed of as follows:

I devise and bequeath my residuary estate to my Trustee, IN TRUST, to hold, manage, invest and reinvest the same, to collect the income therefrom and to pay over the entire net income, at least quarter-annually throughout the term of this trust, to my three children, Mildred Boslov, Sally Kleeberg and Lester Eber, or apply the same for their benefit, in equal shares. In case any of my three children shall predecease me or shall die prior to the termination of this trust, then, after the death of such child, or after my death if any such child shall predecease me, the income shall be paid to, or applied for the benefit of, my lineal descendants living from time to time throughout the term of this trust, per stirpes. This trust shall continue throughout the lives of my three children and shall terminate upon the death of the last survivor thereof; provided, however, that in case all, or substantially all, my stock of Eber Bros. & Co., Inc., shall be theretofore sold, my Trustee may, in its absolute discretion, sooner terminate this trust and distribute the corpus thereof then remaining; and further provided that in case none of my children shall survive my sister-in-law, Rose Eber, and all, or substantially all, my stock of Eber Bros. & Co., Inc., shall not have been sold prior to the death of the last survivor of my said children, this trust shall continue until after the death of my said sister-in-law.

Upon the termination of this trust, I devise and bequeath the corpus thereof then remaining to my then living lineal descendants, per stirpes.

I authorize and empower my Trustee to pay to any income beneficiary under this "NINTH" such amounts of principal as it, in its absolute discretion, may deem necessary or advisable for the care, maintenance or welfare of any such beneficiary or

CNB0000527

-12-

member of his or her family, provided, however, that any such principal payments shall be charged against the trust from which such beneficiary shall then be entitled to receive income and shall be adjusted equitably, as determined by my Trustee, in its absolute discretion, upon final distribution of the corpus of such trust.

TENTH: Notwithstanding any of the foregoing provisions of this Will, if any portion of my estate (including the income from any trust hereunder) shall at any time be or become payable or distributable to a minor or an incompetent because of the provisions of this Will or the authorizations contained herein, or by operation of law, such interest shall vest in absolute ownership in such minor or incompetent and:

A - my Executor or Trustee, as the case may be, is authorized in its absolute discretion and without authorization by any court during such minority or incompetency:

1 - to defer payment or distribution of the whole or any part of such interest and, in the meantime, to hold, manage, invest and reinvest the same, to collect the income therefrom and to pay to, or apply for the benefit of, such minor or incompetent so much of the net income and principal thereof as such Executor or Trustee, in its discretion, deems advisable for the maintenance, education and welfare of such minor or incompetent, accumulating the income not so paid or applied. The principal thereof and any accumulated income shall be paid or distributed to such minor when such minor reaches the age of twenty-one (21) years, or to such incompetent or his or her committee or other legal representative at any time.

2 - to permit a minor or incompetent to have the use or possession of any real or tangible personal property.

B - my Executor and Trustee shall be entitled to receive compensation with respect to any property held for any

CNB0000528

-13-

minor or incompetent pursuant to the provisions hereof at the same rate and in the manner payable to testamentary trustees.

C - my Executor and Trustee shall not be required to render annual accounts to any court nor to furnish a bond or other obligation for the faithful performance of its duties.

ELEVENTH:  As stated above, it is my wish that my voting control of Eber Bros. & Co., Inc., can be retained and, subject to that primary wish, I hope that my interests in certain other close corporations can also be retained and that my son, Lester, may have an opportunity to participate in the management thereof.  I accordingly expressly authorize my Executor to retain and transfer to my Trustee and my Trustee to retain my stock of Eber Bros. & Co., Inc., and my interests in any other close corporations or in any unincorporated business with which I may be connected at the time of my death, and, although this shall not be deemed a direction to retain such corporate stocks or business interests, I, nevertheless, direct that neither my Executor nor my Trustee shall be responsible or accountable for any loss to my estate resulting from the retention of any such corporate stocks or business interests, provided only that it shall have acted in good faith.

TWELFTH:  I nominate my son, Lester, my attorney, Elliott W. Gumaer, jr., and Marine Midland Trust Company of Rochester, of Rochester, New York, Executors hereof and Trustees of the trusts created under "EIGHTH" and "NINTH" hereof.  In the event Elliott W. Gumaer, jr., does not survive me, or fails to qualify or ceases to act as such Executor or Trustee prior to completing the administration of my estate or of the trusts created hereunder, then in such event I nominate my attorney, Sterling L. Weaver, Executor hereof or Trustee hereunder as the case may be.  I direct that my son shall serve in each such fiduciary capacity without compensation.  I direct that no

CNB0000529

-14-

individual Executor or Trustee acting hereunder shall be required to furnish bond or other security in such capacity in any jurisdiction.

I request that my Executor and Trustee associate itself in any discussions concerning the continuing operation, sale or liquidation of any business or businesses controlled by me at the time of my death, with my cousin, William Eber.

I grant to my Executor and Trustee and its successor or successors, the following powers in addition to those elsewhere herein granted or conferred by law, with respect to all property, real or personal, owned by me at my death or at any time forming part of my estate or any trust hereunder, including accumulated income and property held under a power in trust, until the final distribution thereof:

A - To retain any such property, including shares of stock of my corporate Executor and Trustee or shares of stock of a corporation having voting control of such Executor and Trustee, as an investment without regard to the proportion which it and other property of a similar character held hereunder may bear to my entire estate or the trust in which such property is held and whether or not such property is of the class in which trustees are authorized by law or rule of court to invest trust funds;

B - To sell, exchange or otherwise dispose of any such property at public or private sale, wholly or partly on credit or for cash or for any other consideration including stocks, bonds or other obligations and to grant options for the purchase, exchange or other disposition thereof;

C - To invest and reinvest in property of any character, real or personal, located in or outside New York State, including, but not limited to, bonds, notes, debentures, mortgages, leases, common and preferred stocks, undivided interests

CNB0000530

-15-

and legal and discretionary common trust funds, without being
limited to investments authorized by law or rule of court for
trust funds, and without regard to the proportion which all such
property and other property of a similar character held hereunder
may bear to my entire estate or the trust in which such property
is held;

D - To exercise or sell any options and any con-
version, subscription, voting and other rights pertaining to
any such property and to grant proxies, discretionary or other-
wise, in respect thereof;

E - To consent to and participate in any plan of
reorganization, consolidation, merger, combination, recapitaliza-
tion, reclassification, liquidation or other plan and to consent
to any contract, lease, mortgage, purchase, sale or other action
by any corporation;

F - To deposit any such property with any protec-
tive, reorganization or similar committee, to delegate discretion-
ary power thereto, to pay part of such committee's expenses and
compensation and any assessments levied with respect to such
property and, in its discretion, to charge such expenses, compen-
sation and assessments to principal or income;

G - To manage any real property in the same manner
as though the absolute owner thereof, including, but not limited
to, the power to lease the same without application to any court,
for any term of five years or more or less, although such term
may extend beyond the period of administration of my estate or
any trust hereunder, with options for renewals and the purchase
or disposal of buildings thereon or to be placed thereon and to
make agreements other than those specifically mentioned; to make
ordinary or extraordinary repairs and alterations to any build-
ing, to raze old buildings and to erect new buildings and make
other improvements; to insure against loss by fire or other casu-

CNB0000531

-16-

alties; to subdivide and plot any such property; to abandon
property, to refrain from paying taxes and maintenance charges
thereon and to convey any such property without consideration;
to partition any such property, even though it may hold an
interest in the same property in its own right or in some other
capacity; to extend any existing mortgage; to borrow upon the
security of any such property, and to execute mortgages as
security therefor;

H - To borrow money from itself or others for the
benefit of my estate or any trust hereunder, and to secure the
loan by pledge or mortgage of the property of my estate or any
trust and to renew existing loans;

I - To extend the time of payment of any obliga-
tion held hereunder and to compromise, settle, arbitrate or
abandon any claim in favor of or against my estate or any trust
hereunder;

J - To cause any securities or other property held
hereunder to be registered in the name of a nominee or in its own
name, without the addition of any word or words showing its
fiduciary capacity;

K - To make any division or distribution required
hereunder in cash or in other property, real or personal, or un-
divided interests therein, or partly in cash and partly in such
other property, and pro rata or otherwise as to any particular
asset;

L - To abandon property which it determines not
to be worth protecting;

M - To receive additional property from any
source and add it to and mingle it with the trust or trusts
created hereunder;

N - To sell to Eber Bros. & Co., Inc., and/or
Eber Bros. Wine & Liquor Corp., for redemption or other purpose,

CNB0000532

sufficient of my shares of stock in said corporations to produce a sum not in excess of (1) the amount of estate, inheritance, legacy and succession taxes (including any interest collected as a part of such taxes) imposed because of my death, and (2) the amount of funeral and administration expenses allowable as deductions in determining the amount of Federal estate tax imposed because of my death;

O - To continue the operation of any business in which I am engaged at the time of my death whether through stock ownership or otherwise for such period of time as it may deem advisable, at the risk of my general estate and without personal liability on its part; to take part in the management of such business; to select and vote for directors and/or officers thereof; to act as directors and/or officers thereof, either individually or through an officer or officers of my corporate Executor and Trustee; to take such steps with respect to naming or changing officers constituting or reconstituting the managing and/or operating personnel thereof as it deems proper and to act with respect to any other matter in connection therewith which my Executor or Trustee deems advisable;

P - To file a joint return of income with my spouse for any taxable year or period ending at or prior to January 1 of the year following my death, for which such a return may be filed, pursuant to any Federal or State law making provision for the division of taxable income between spouses, and to pay from my estate any part or all of the tax due upon any such return of income or any adjustment or restatement thereof;

Q - To consent, pursuant to any Federal or State law making provision for the division of taxable gifts between spouses, to any gift made by me or by my spouse prior to my death, so that it shall be considered as made one-half by me and one-half by my spouse; and if such consent be given to file

CNB0000533

proper returns accordingly and to pay from my estate any and
all liability for gift tax upon any such gift;

R - To do all such acts, take all such proceedings
and exercise all such rights and privileges, although not herein-
before specifically mentioned, with relation to any such property,
as though the absolute owner thereof, and in connection therewith
to make, execute and deliver any instruments and to enter into
any covenants or agreements binding my estate or any trust here-
under.

Whenever, pursuant to any provision of this Will, my
Executor or Trustee is required or permitted to pay to or apply
for the benefit of a minor any legacy or the income or principal
of any trust fund or share, my Executor or Trustee may make such
payment or application by paying the same directly to such minor
or to the parent or guardian of such minor or to the person with
whom such minor resides, and the receipt of such parent or guar-
dian or such person with whom such minor resides shall be a full
and complete discharge and acquittance to my Executor or Trustee
to the extent of the payments to them.

THIRTEENTH: With respect to all trusts hereunder
except the trusts created under "EIGHTH" hereof, dividends and
other distributions due to stock ownership received by my
Executor or Trustee shall be treated as follows:

A - Dividends, except liquidating dividends,
payable only in cash, whether ordinary or extraordinary, shall
be income;

B - All capital gains distributions shall be
principal;

C - All other dividends or distributions shall
be allocated to principal except as and to the extent that my
Executor or Trustee shall determine that such dividends or
distributions were made partially or wholly in lieu of what would

CNB0000534

-19-

be declared as a regular cash dividend without regard to statutory presumptions. My Executor or Trustee shall be entitled to rely upon any information received from any corporation relating to any such dividend or distribution and the determination of my Executor or Trustee shall be binding and conclusive upon all persons interested in the trusts created hereunder and shall not be subject to judicial review.

FOURTEENTH: I direct that all estate, inheritance and transfer taxes and succession duties imposed upon or in respect to my entire taxable estate shall be charged to and paid from my residuary estate.

Whenever my Executor is given (a) a choice of dates as of which to value property for estate tax purposes, or (b) a choice to treat or use an item either as an income tax deduction or an estate tax deduction, or (c) the right, if any, to elect to pay all or part of an estate tax in installments with interest, my Executor may make such choice or election as to it, in its sole and uncontrolled discretion, shall seem advisable, regardless of the resulting effect on other provisions of my Will or any person interested in the amount of such taxes, and any person adversely affected by such choice or election shall not be entitled to any reimbursement or adjustment by reason thereof.

FIFTEENTH: If my wife and I shall die under such circumstances that there is no sufficient evidence that we died otherwise than simultaneously, I direct that for the purposes of this Will she shall be deemed to have survived me.

SIXTEENTH: The neuter gender whenever used herein shall include the masculine and feminine and the singular shall include the plural wherever necessary or appropriate.

LASTLY: I hereby revoke all former Wills and Codicils by me made.

CNB0000535

-20-

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 27th day of OCTOBER, in the year One thousand nine hundred and sixty-nine.

_Allen Eber_ (L.S.)

The foregoing instrument was on the day of the date thereof subscribed by ALLEN EBER, the Testator named therein, in our presence and in the presence of each of us, and he at the same time declared to us that the said instrument was his Last Will and Testament, and we at his request and in his presence and in the presence of each other have subscribed our names as witnesses thereto on the said 27th day of October, 1969.

_____ residing at _____

_____ residing at _____

CNB0000536

# BY-LAWS

## OF

## EBER BROS. & CO., INC.

### ARTICLE I.  SHAREHOLDERS

1.  MEETINGS

The annual meeting of the shareholders shall be held during the month of August during each calendar year upon a day fixed by the Board of Directors for the election of directors and for the transaction of any other business which may properly come before the meeting.  Annual meetings shall be held at the office of the corporation, or at the office of the attorneys for the corporation, or at such other place, within or without the State of New York, as may be set by the Board of Directors.  Special meetings may be called at any time by any member of the Board of Directors or by the President, and shall be called by the Secretary at the written request of shareholders owning at least one-third of the outstanding shares of the corporation.  Such request shall state the purpose or purposes of the proposed meeting.

2.  NOTICE OF MEETING

Written notice of every meeting shall be delivered personally or mailed to each shareholder at his last known address.  Notice of every meeting shall state the place, date and hour of the meeting, and shall be mailed not less than ten days, nor more than fifty days, before the date of the meeting.  Notice of any special meeting shall state the purpose for which it was called.

3.  WAIVER OF NOTICE

Notice of meeting need not be given to any shareholder who submits a waiver of notice, either before or after the meeting.  The attendance of any shareholder at a meeting shall constitute a waiver by him of notice of the meeting unless, prior to the conclusion of the meeting, he protests the lack of such notice.

4.  QUORUM

The holders of a majority of the shares entitled to vote at meetings shall constitute a quorum for the transaction of any business.  Whenever a quorum is present, it shall not be broken by the subsequent withdrawal of any shareholders.  The shareholders present may adjourn any meeting despite the absence of a quorum from time to time until a quorum is present.

PLAINTIFF'S
EXHIBIT

133

5.   VOTING

Every shareholder of record shall be entitled to one vote for each share standing in his name on the record of shareholders.  Except as otherwise provided by law, the vote of the majority of the votes cast by the shareholders present at the meeting shall be the act of the shareholders.  Directors shall be elected by a plurality of the votes cast by the shareholders present at the meeting.

6.   PROXIES

Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent without a meeting may authorize another person or persons to act for him by proxy.  Every proxy must be in writing and signed by the shareholder or his attorney-in-fact. No proxy shall be valid after the expiration of eleven months from the date thereof unless otherwise provided in the proxy.  Every proxy shall be revocable at the pleasure of the shareholder executing it, except as otherwise provided by law.

7.   WRITTEN CONSENT OF SHAREHOLDERS WITHOUT A MEETING

Any shareholder action permitted to be taken by vote may be taken without a meeting on written consent, setting forth the action so taken, and signed by the holders of all the outstanding shares entitled to vote thereon.

8.   AGREEMENTS AS TO VOTING

An agreement between two or more shareholders, if in writing and signed by the parties, may provide that in exercising any voting rights the shares held by them shall be voted as provided in such agreement.

## ARTICLE II.  DIRECTORS

1.   AUTHORITY AND NUMBER

The business of the corporation shall be managed by its Board of Directors, each of whom shall be at least twenty-one years of age.  The number of directors shall be at least three, who need not be shareholders, except that where all the shares of the corporation are owned beneficially and of record by less than three shareholders, the number of directors may be less than three but shall at least equal the number of shareholders.

2.   ELECTION AND TERM

At the annual meeting of shareholders, the directors shall be elected to hold office until their successors have been elected.  Subject to the provisions of section 706 of the New York Business Corporation Law, any director may be removed with or without cause by

2

vote of a majority of the board of directors called for such purpose. Vacancies occurring in the Board of Directors shall be filled by the shareholders.

3. VACANCIES

    a. Newly created directorships resulting from an increase in the number of directors and vacancies occurring in the board for any reason may be filled by vote of the board. If the number of the directors then in office is less than a quorum, such newly created directorships and vacancies may be filled by vote of a majority of the directors then in office.

    b. The board may fill vacancies occurring in the board by reason of the removal of directors without cause.

    c. A director elected to fill a vacancy shall hold office until the next meeting of shareholders at which the election of directors is the regular order of business, and until his successor has been elected and qualified.

4. COMMITTEES OF THE BOARD

    The board of directors, by resolution adopted by a majority of the entire board, may designate from among its members an executive committee and other committees, each consisting of three or more directors, and each of which, to the extent provided in such resolution, shall have all the authority of the board, except as to the following matters:

    a. The submission to shareholders of any action that needs shareholders' approval under the Business Corporation Law of the State of New York.

    b. The filling of vacancies in the board of directors or in any committee.

    c. The fixing of compensation of any director for serving on the board or on any committee.

    d. The amendment or repeal of the by-laws, or the adoption of new by-laws.

    e. The amendment or repeal of any resolution of the board which by its terms shall not be so amendable or repealable.

    The board may designate one or more directors as alternate members of any such committee, who may replace any absent member or members at any meeting of such committee. Each such committee shall serve at the pleasure of the board of directors.

5.   MEETINGS

The organizational meeting of the Board shall be held immediately after the annual meeting of the shareholders.  Special meetings of the Board may be called at any time by the President or by any member of the Board, and shall be held at the office of the corporation or at the office of the attorneys for the corporation, or at such other place, within or without the State of New York, as may be set by the Board of Directors.  Any member of the Board may attend and participate in a meeting of the Board or a Board committee by means of a conference telephoned or similar communications equipment allowing all persons participating in the meeting to hear each other simultaneously.  Participation by such means shall constitute presence in person at such a meeting.

6.   NOTICE OF MEETING

Written notice of any meeting shall be either delivered personally,  mailed or telegraphed to each director and shall state the place, date and hour of the meeting.  Such notice shall be made at least 48 hours before the date of any meeting.

7.   WAIVER OF NOTICE

Notice of meetings needs not be given to any director who submits a signed waiver of notice, whether before or after the meeting, or who attends the meeting without protesting prior thereto, or at its commencement, the lack of notice to him.

8.   QUORUM

A majority of the entire Board shall constitute a quorum.

9.   VOTING

Except as otherwise provided by law, the vote of the majority of the directors present shall be the act of the Board.

10.   ACTION WITHOUT A MEETING

Any director action permitted to be taken by vote may be taken without a meeting on written consent, setting forth the action to be taken and signed by all the directors of the corporation.

11.   INTERESTED PARTIES

a.   No contract or other transaction between the corporation and one or more of its directors, or between the corporation and any other corporation, firm, association or other entity in which one or more of its directors are directors or officers, or are financially interested, shall be either void or voidable for this reason alone, or by reason alone that

4

such director or directors are present at the meeting of the Board of Directors which authorizes such contract or transaction, or that his or their votes are counted for such purposes:

(1)   If the material facts as to such director's interest in such contract or transaction and as to any such common directorship, officership, or financial interest are disclosed in good faith or known to the board or committee, and the board or committee, and the board or committee approves such contract or transaction by a vote sufficient for such purpose without counting the vote of such interested director or, if the votes of the disinterested directors are insufficient to constitute an act of the board as defined in section 708 of the Business Corporation Law (Action by the board), by unanimous vote of the disinterested directors; or

(2)   If the material facts as to such director's interest in such contract or transaction and as to any such common directorship, officership or financial interest are disclosed in good faith or known to the shareholders entitled to vote thereon, and such contract or transaction is approved by vote of such shareholders.

b.   If such good faith disclosure of the material facts as to the director's interest in the contract or transaction and as to any such common directorship, officership or financial interest is made to the directors or shareholders, or known to the board or committee or shareholders approving such contract or transaction, as provided in paragraph (a) above, the contract for transaction may not be avoided by the corporation for the reasons set forth in said paragraph (a).  If there was no such disclosure or knowledge, or if the vote of such interested director was necessary for the approval of such contract or transaction at a meeting of the board or committee at which it was approved, the corporation may avoid the contract or transaction unless the party or parties thereto shall establish affirmatively that the contract or transaction was fair and reasonable as to the corporation at the time it was approved by the board, a committee or the shareholders.

12.   COMPENSATION

The Board of Directors shall have authority to fix the compensation of directors for services in any capacity.

13.   LOANS TO DIRECTORS

No loan shall be made by the corporation to any director unless it is approved by a majority vote of all the shareholders.  For this purpose, the shares of a director who would be the borrower shall not be shares entitled to vote.

14.   MORTGAGE OF CORPORATE PROPERTY

The Board of Directors may authorize any mortgage or pledge of corporate property.

## ARTICLE III.  OFFICERS

1.   NUMBER

The officers of the corporation shall be a President, Secretary and a Treasurer, each of whom shall be elected by the Board.  Other officers such as one or more Vice Presidents and a Chairman of the Board may be elected by the Board.  Any two or more offices may be held by the same person, except the offices of President and Secretary.  When all of the issued and outstanding stock of the corporation is owned by one person, such person may hold all or any combination of officers.

2.   ELECTION AND TERM

The officers shall be elected at the organizational meeting of the Board, and shall hold office until their successors are elected.  Any officer elected may be removed by the Board with or without cause.  Any vacancy in office may be filled by the Board for the unexpired portion of the term.

3.   PRESIDENT

The President shall be the chief executive officer of the corporation, and shall have general supervision and control of the business of the corporation.  He shall preside at all meetings of the shareholders.  He shall make reports to the directors and the shareholders, and shall perform all such other duties as are incident to his office, and as are properly required of him by the Board.

4.   VICE PRESIDENT

a.   The Vice-President/Finance shall possess the powers and may perform the duties of the President in his absence or disability, and he shall perform such other duties as may be prescribed from time to time by the Board of Directors.

b.   The other Vice-Presidents shall possess such powers and may perform the duties as may be assigned to them by the Board of Directors.

c.   In the absence or disability of the President and Vice-President\Finance, the other Vice-President designated by the Board of Directors or the President shall perform the duties and exercise the powers of the President.

ACA:C:\WPFILES\CORP\CLIENTS\EBER\EB&C-BY.LAW

d.   A Vice-President may sign and execute contracts and other obligations and execute contracts pertaining to the regular course of his duties.

5.   SECRETARY

The Secretary shall keep the minutes of the meetings of the board of directors, and the minutes of all meetings of the shareholders, and also, unless otherwise directed, the minutes of all meetings of committees in books provided for that purpose.  He shall give, or cause to be given, notice of all meetings of shareholders and directors, and all other notices required by law or by these by-laws, and in case of his absence or refusal to do so, any such notice may be given by any person thereunto directed by the president or by the directors or shareholders upon whose requisition the meeting is called.  He shall have charge of the corporate books and records.  He shall have custody of the seal of the corporation and affix the same to all instruments requiring it when authorized by the directors or the president, and attest the same.  He shall file all written requests that notices be mailed to shareholders at the address other than that which appears on the record of shareholders.  He shall sign with the president or vice president all certificates representing shares of the corporation.  And he shall, in general perform all duties incident to the office of secretary.

6.   TREASURER

The Treasurer shall have charge of, and be responsible for, the funds of the corporation.  He shall have charge of, and be responsible for, keeping correct and complete books and records of account.  He shall perform all duties incident to his office, and that are properly required of him by the Board.  If required by the Board, the Treasurer shall give bond for the faithful discharge of his duties in such amount and with such surety as the Board shall determine.

## ARTICLE IV.   DUTY OF OFFICERS AND DIRECTORS

Directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions.  In discharging their duties, directors and officers, when acting in good faith, may rely upon financial statements of the corporation represented to them to be correct by the President or the officer of the corporation having charge of its books of accounts, or stated in a written report by an independent public or certified public accountant or firm or such accountants to reflect the financial condition of such corporation.

## ARTICLE V.  INDEMNITY

1.    ACTIONS OTHER THAN ONE BY OR IN THE RIGHT OF THIS CORPORATION

This corporation shall indemnify any person made, or threatened to be made, a party to an action or proceeding (other than one by or in the right of this corporation to procure a judgment in its favor) whether civil or criminal, including an action by or in the right of any other corporation, or any type or kind, domestic or foreign, or any partnership, joint venture trust, employee benefit plan or other enterprise, which any director or officer of the corporation served in any capacity at the request of the corporation, by reason of the fact that such person, his testator or intestate, was a director or officer of the corporation or served such other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise in any capacity, against judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding, or any appeal therein, if such director or officer acted in good faith for a purpose which he reasonably believed to be in or, in the case of service for any other corporation or any partnership, joint venture, trust, employee benefit plan or other enterprise not opposed to, the best interests of the corporation and, in criminal actions or proceedings, in addition, he had no reasonable cause to believe that his conduct was unlawful.

2.    ACTIONS BY OR IN THE RIGHT OF THIS CORPORATION

This corporation shall indemnify any person made, or threatened to be made, a party to an action by or in the right of this corporation to procure a judgment in its favor by reason of the fact that such person, his testator or intestate, is or was a director or officer of this corporation, or is or was serving at the request of this corporation as a director or officer of any other corporation of any type or kind, domestic or foreign, or any partnership, joint venture, trust, employee benefit plan or other enterprise, against amounts paid in settlement and reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense or settlement of such action, or in connection with an appeal therein, if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in, or, in the case of service for any other corporation or any partnership, joint venture, trust employee benefit plan or other enterprise, not opposed to, the best interests of the corporation. This corporation shall not indemnify such person in respect of (i) a threatened action, or a pending action which is settled or otherwise disposed of, or (ii) any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation, unless and only to the extent that the court in which the action was brought, or, if no action was brought, any court of competent jurisdiction, determines that upon application that, in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnify for such portion of the settlement amount and expenses as the court deems proper.

ACA:C:\WPFILES\CORP\CLIENTS\EBER\EB&C-BY.LAW

3.   ACTS COMMITTED IN BAD FAITH OR THE RESULT OF DELIBERATE DISHONESTY

No indemnification shall be made to or on behalf of any director or officer if a judgment or other final adjudication adverse to the director or officer establishes that his acts were committed in bad faith or were the result of active deliberate dishonesty and were material to the cause of action so adjudicated, or that he personally gained in fact a financial profit or other advantage to which he was not legally entitled.

4.   AUTHORIZATION

Unless ordered by a court, indemnification shall be made by the corporation only if authorized in the specific case (i) by the board acting by a quorum consisting of directors who are not parties to such action or proceeding upon a finding that the director or officer has met the standard of conduct set forth in subparagraph 1 or 2 above, or (ii) if a quorum is not obtainable or even if obtainable, a quorum of disinterested directors so directs (A) by the board upon the opinion in writing of independent legal counsel the indemnification is proper in the circumstances because the applicable standard of conduct has been met by such director or officer or (B) by the shareholders upon a finding that the director or officer has met the applicable standard of conduct.

5.   EXTENT OF INDEMNIFICATION

This bylaw provision is intended to indemnify the officers and directors of this corporation to the fullest extent permitted under the New York Business Corporation Law.

## ARTICLE VI.  SHARES

1.   CERTIFICATE REPRESENTING SHARES

The shares of the corporation shall be represented by certificates in the form attached to these ByLaws and shall be numbered consecutively.  The certificates shall be signed by the president or a vice-president and the secretary or an assistant secretary or the treasurer or an assistant treasurer of the corporation, and may be sealed with the seal of the corporation or facsimile thereof.  The signatures of the officers upon a certificate may be facsimiles if the certificate is countersigned by a transfer agent or registered by a registrar other than the corporation itself or its employee.  In case any officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be an officer before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer at the date of issue.  Each certificate shall state upon the face thereof:  (1) That the corporation is formed under the laws of this state.  (2)  The name of the person or persons to whom issued.  (3)  The number and class of shares, and the designation of the series, if any, which such certificate represents.

9

## 2.    LOST, DESTROYED AND STOLEN SHARE CERTIFICATES

Any person claiming a certificate representing shares to be lost, apparently destroyed or wrongfully taken shall make an affidavit or affirmation of that fact and advertise the same in such manner as the board of directors may require, and shall give the corporation an indemnity bond in such form and with one or more sureties satisfactory to the board, in such amount as the board may determine, which shall be at least double the par value of the shares represented by said certificate, to protect it or any person injured by the issue of the new certificate from any liability or expense which it or they may incur by reason of the original certificate remaining outstanding , whereupon a new certificate may be issued of the same tenor and for the same number of shares as the one alleged to be lost, destroyed or wrongfully taken if the claimant so requests prior to notice to this corporation that the lost, apparently destroyed or wrongfully taken certificate has been acquired by a bona fide purchaser.

## ARTICLE VII.   FINANCE

### 1.    BANK ACCOUNTS

The funds of the corporation shall be deposited in such banks as the Board shall designate, and shall be drawn only by check signed by properly designated officers as shown on the corporate banking resolution.

### 2.    LOANS

No loans shall be contracted on behalf of the corporation, and no bonds or notes shall be issued, unless authorized by the Board or made by properly designated officers as shown on the corporate borrowing resolution.

## ARTICLE VIII.   FISCAL YEAR

The fiscal year of the corporation shall begin June 1st and end May 31st of the next succeeding year.

## ARTICLE IX.   SEAL

The seal of the corporation shall be in the form of a circle and shall bear the name of the corporation and the year of the corporation, and the words "Corporate Seal" and "New York".  An example of the corporate seal is impressed on the margin of this page.

ACA:C:\WPFILES\CORP\CLIENTS\EBER\EB&C-BY.LAW

## ARTICLE X.   REIMBURSEMENT BY OFFICERS

Any payments made to an officer of the corporation such as a salary, commission, bonus, interest, or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer to the corporation to the full extent of such disallowance.  It shall be the duty of the directors, as a Board, to enforce payment by the officer, subject to the determination of the directors, proportionate amounts may be withheld from his future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE XI.   AMENDMENT

The By-Laws may be amended or repealed by vote of the shareholders entitled to vote for the election of directors at an annual meeting or at a special meeting called for that purpose, provided that written notice of the date, time and purpose of such annual or special meeting shall be given, and such notice shall set forth the alterations, amendments or changes which are proposed to be made in such By-Laws.  Only such changes as have been specified in the written notice shall be made.  If, however, all the stockholders shall be present at any regular or special meeting, or those not present consent in writing to the proposed amendment, these By-Laws may be amended by a unanimous vote, without any previous written notice.

## ARTICLE XII.   TRANSFER RESTRICTION

1.    RESTRICTION

A shareholder shall not transfer, sell or assign any shares of the corporation's stock without first personally delivering to the president or secretary written notice of a proposed transfer at least five (5) days before the effective date of transfer, stating the terms of the proposed transfer.  Any other shareholder may, but is not required to, give notice within said five day period to the transferring shareholder of said other shareholder's intent to purchase the shares for a price equal to the book value thereof as appears by the books of the corporation of the end of the immediately preceding fiscal year.

2.    VALIDITY OF TRANSFER

No transfer of any stock shall be valid until such notice shall be given and the other shareholders have the opportunity to purchase the same as aforesaid.

3.    CLOSING

If any other shareholder elects to purchase the shares of a transferring shareholder, the closing on said purchase and sale shall take place at the office of the corporation

ACA:C:\WPFILES\CORP\CLIENTS\EBER\EB&C-BY.LAW

not later than ninety (90) days of the date of such notice of intent to purchase.  If no other shareholder elects to purchase the share of a transferring shareholder, then the transferring shareholder is free to transfer said stocks to the same person named in and on the terms set forth in the notice at a time not later than one hundred eighty (180) days of the date of the original notice.

ACA:C:\WPFILES\CORP\CLIENTS\EBER\EB&C-BY.LAW



# CLASS A COMMON

**EBER BROS. & CO., INC.**

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

AUTHORIZED TO ISSUE 10,000 SHARES

2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1,850 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6,150 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

This Certifies that

Lester Eber, Elliott W. Gumaer, Jr., Central Trust Company "Co — tr U/W Allen Eber/Residuary"

is the

owner of One Thousand Eight Hundred and Fifty

CLASS A VOTING COMMON SHARES

Par Value $10 Each of EBER BROS. & CO., INC.

SHARES 1850

NUMBER 18

FULLY PAID AND NON-ASSESSABLE

SECRETARY-TREASURER

PRESIDENT

PLAINTIFF'S EXHIBIT 134





CLASS B COMMON

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

# EBER BROS. & CO., INC.

AUTHORIZED TO ISSUE 10,000 SHARES

2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH

1,850 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH

6,150 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

**This Certifies that** LESTER EBER, ELLIOTT W. GUMAER, JR., M & T BANK, CO-TRUSTEES U/W ALLEN EBER RESIDUARY

is the

CLASS B NON-VOTING COMMON SHARES

owner of TWO HUNDRED NINETY

Par Value $10 Each of EBER BROS. & CO., INC.

*transferable only on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. Statement of the designations, preferences, privileges, and voting powers or restrictions or qualifications of the shares of each class of stock or series thereof authorized to be issued and of the variations in the relative rights and preferences between the shares of each such series so far as the same have been fixed and determined. By Unanimous Consent of the holders of the Certificate of Incorporation to the holder upon request, this Certificate is to be signed by its duly authorized officers and sealed with its seal of said...*

In Witness Whereof the Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with its seal of said.

This 2nd day of DECEMBER 19 97

Robert A. Eller
SECRETARY-TREASURER

Lester Eber
PRESIDENT

FULLY PAID AND NON-ASSESSABLE



# PREFERRED

## EBER BROS. & CO., INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

AUTHORIZED TO ISSUE 10,000 SHARES

2,000 6% NON-CUMULATIVE PREFERRED SHARES, PAR VALUE $100 EACH
1,850 CLASS A VOTING COMMON SHARES, PAR VALUE $10 EACH
6,150 CLASS B NON-VOTING COMMON SHARES, PAR VALUE $10 EACH

6% NON-CUMULATIVE PREFERRED SHARES

**This Certifies that** C. L. VIP Allen Employment Ltd

owned Two Thousand

Par Value $100 Each of EBER BROS. & CO., INC.

SHARES 2,000

NUMBER P 6

PRESIDENT

SECRETARY-TREASURER

FULLY PAID AND NON-ASSESSABLE

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

FINAL ACCOUNTING OF THE CANANDAIGUA
NATIONAL BANK AND TRUST COMPANY, AS
SUCCESSOR CO-TRUSTEE OF RESIDUARY TRUST
UNDER WILL OF ALLEN EBER DATED OCTOBER 27,
1969

**PETITION FOR JUDICIAL SETTLEMENT OF FINAL ACCOUNT OF SUCCESSOR CO-TRUSTEE, RESIGNATION AND DISCHARGE OF CO-TRUSTEE AND TERMINATION OF TRUST**

File No. 1970-1952

TO THE SURROGATE'S COURT, COUNTY OF MONROE

It is respectfully alleged:

1.     The name, and address of the Petitioner, the type and date of letters issued, if any, and the amount and surety of Petitioner's bond, if any, are as follows:

| Name | | | |
|---|---|---|---|
| The Canandaigua National Bank and Trust Company | | | |
| Address: Street and Number | | | |
| 1150 Pittsford Victor Road | | | |
| City, Village or Town | State | Zip Code | Country |
| Pittsford | New York | 14534 | United States |
| County | | Telephone Number | |
| Mailing Address | | | |
| City, Village or Town | State | Zip Code | Country |
| Type of Letters Issued | | | Date Letters Issued |
| Amount of Bond | | Name of Surety | |

2.     The Petitioner presents and renders herewith a verified final account of the Petitioner's proceedings as Co-Trustee in this trust, for the period August 27, 2007 to December 27, 2016 showing the gross value of assets, including principal and income, to be the sum of $691,566.52.

3.     Allen Eber created a Testamentary Trust Under Will dated October 27, 1969, for the primary benefit of his wife, Evelyn S. Eber, with the residuary of the Trust to benefit his three children, Mildred Boslov, Sally Kleeberg and Lester Eber, or their lineal descendants in the event that any child died prior to termination of the Trust.

4.     Mildred Boslov previously died and her 1/3 interest in the Trust was inherited by her only child, Audrey Hays.

5.     Sally Kleeberg previously died and her 1/3 interest in the Trust was inherited by her two children, Daniel Kleeberg (1/6) and Lisa Stein (1/6).

6.     The original co-Trustees of the Trust were Lester Eber, Elliott W. Gumaer, Jr., and Marine Midland Trust Company of Rochester. Due to subsequent mergers and acquisitions, Marine Midland Trust Company of Rochester became M&T Bank.

7.     M&T Bank petitioned the Court for judicial settlement of its Intermediate Account for the period

{4754512; }

-1-

PLAINTIFF'S EXHIBIT

**135**

May 9, 1991 through December 31, 2006. The Trust assets were subsequently transferred to Petitioner's control on August 27, 2007.

8. Upon information and belief, the Intermediate Account was subsequently settled by Order of this Court.

9. The Petitioner now seeks to resign as Co-Trustee of the Trust and judicially settle the account.

10. The Petitioner has been primarily responsible for managing the cash and marketable securities in the Trust. Although the stock of Eber Bros. & Co., Inc. is held in the Trust, the day to day operation of the business and that of its subsidiaries has been/was primarily managed by Co-Trustee Lester Eber.

11. Although the Trust is not scheduled to terminate until the death of the last surviving beneficiary, pursuant to Article Ninth of the Will (page 11), in case all, or substantially all of the decedent's stock in Eber Bros. & Co., Inc. is sold, the Trustees, in their absolute discretion, can terminate the Trust and distribute the residuary of the Trust to the beneficiaries.

12. The Petitioner believes that the Trust can and should be terminated at this time based upon its belief that the Eber Bros. & Co., Inc. stock has no (or nominal) monetary value.

13. Upon information and belief, Eber Bros. & Co., Inc.'s only assets were controlling interests in Eber Bros. Wine & Liquor Corp. ("W&L") and Monroe Display Company, Inc. Empire Valuation was retained for purposes of providing a valuation of the W&L company (which was sold prior to the Petitioner becoming Successor Trustee and was never an asset of the Trust) and as set forth on the valuation, a copy of which is attached hereto as Exhibit "A", Empire Valuation has concluded that the stock of W&L has no value.

14. Further, upon information and belief, Monroe Display Company, Inc. has not had active operations for many years, if ever, and has no assets.

15. Upon information and belief, Eber Bros. & Co., Inc. has no independent value apart from any values attributed to the W&L and Monroe Display Company, Inc. entities.

16. Accordingly, the Petitioner believes that the Eber Bros. & Co., Inc. stock held by the Trust has no/nominal value and therefore, the Trust should be subject to termination and final distribution.

17. Neither Lester Eber nor Elliott W. Gumaer, Jr, as Co-Trustees, have participated in the preparation and/or review of the Accounting.

18. The names and post-office addresses of all persons and parties interested in this proceeding who are required to be cited under the provisions of Surrogate's Court Procedure Act, § 2210, or otherwise, or concerning whom or which the Court is required to have information, are set forth in subdivision (a) or (b):

(a) All persons and parties so interested herein who are of full age and sound mind, or which are corporations or associations, are as follows:

| Name | Nature of Interest | Post Office Address City, Village or Town, State, ZIP, Country |
|---|---|---|
| Lester Eber | Income Beneficiary & Co-Trustee | 95 Allens Creek Rd., Ste 2 Rochester NY 14618 |
| Daniel Kleeberg | Income Beneficiary | 6957 Pisano Drive Lake Worth FL 33467 |
| Lisa Stein | Income Beneficiary | 104 Holly Lane Linwood NJ 08221 |

| Name | Nature of Interest | Post Office Address City, Village or Town, State, ZIP, Country |
|---|---|---|
| Audrey Hays | Income Beneficiary | 26725 Henderson Park Road Oak Creek CO 80467 |
| Elliott W. Gumaer, Jr. | Co-Trustee | 228 W. 28th Street Cottage 494 Sea Island GA 31561 |

(b) All persons so interested herein who are infants or incompetent or persons believed to be mentally incapable to adequately protect their rights, or persons whose existence, identity, or whereabouts are unknown (including persons who are virtually represented under SCPA Section 315) are as follows:

[X] None

19. There are no persons interested in this proceeding other than those above mentioned.

20. No prior application has been made to this or any other court for the relief requested in this Petition.

WHEREFORE the Petitioner prays that the Final Account be judicially settled, and that process be issued to all necessary parties who have not appeared to show cause why the relief requested should not be granted; and that an Order be granted judicially settling the account, approving the Petitioner's resignation as Trustee and discharging the Petitioner from any liability as Successor Trustee of the Trust.

Dated: _Feb 15_, 2017

The Canandaigua National Bank and Trust Company

Name of Corporate Petitioner

By _____
Signature

Rita Nischal

Print Name

Vice President - Trust Officer

Title

(4754512: )

-3-

**VERIFICATION**

*For use when a petitioner is a bank or trust company*

STATE OF NEW YORK     ss.:
COUNTY OF MONROE

    I, the undersigned, Rita Nischal of The Canandaigua National Bank and Trust Company, being duly sworn, say:

    I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

The Canandaigua National Bank and Trust Company
_____
Name of Bank or Trust Company

By     _____
                Signature

Rita Nischal
_____
Print Name

Vice President
_____
Title

Sworn to before me this 15ᵗʰ day of
February _____, 2017

_____
Notary Public
Commission Expires:
(Affix Notary Stamp or Seal)

AMY KATHERINE BOYD
Notary Public, State of New York
Monroe County
Commission Expires March 25, 2017

_____
Signature of Attorney

Lorisa D. LaRocca
Attorney Name

Woods Oviatt Gilman LLP
Firm

585.987.2834
Telephone

700 Crossroads Building, 2 State Street, Rochester, NY 14614
Address

SURROGATE'S COURT
STATE OF NEW YORK    COUNTY OF MONROE

---

IN THE MATTER OF THE ACCOUNT OF
CANANDAIGUA NATIONAL BANK AND TRUST
COMPANY, AS SUCCESSOR CO-TRUSTEE OF THE
RESIDUARY TRUST UNDER WILL OF ALLEN EBER
DATED OCTOBER 27, 1969.

FINAL ACCOUNT
OF TRUSTEE

File No. 1970-1952

---

TO THE SURROGATE'S COURT OF THE COUNTY OF MONROE:

The undersigned hereby renders an account of the proceedings as follows:  period of account
from August 27, 2007 to December 27, 2016.  This is a first and final account containing the
following schedules.

## PRINCIPAL

| | | |
|---|---|---|
| Schedule A | Principal Received............................................................ | 4 |
| Schedule AA | Subsequent Receipts of Principal...................................... | 6 |
| Schedule A-1 | Realized Increases........................................................ | 7 |
| Schedule B | Realized Deceases......................................................... | 9 |
| Schedule C | Administration Expenses................................................. | 11 |
| Schedule C-1 | Unpaid Administration Expenses...................................... | 17 |
| Schedule E | Distributions of Principal............................................... | 18 |
| Schedule F | New Investments, Exchanges and Stock Distributions............ | 24 |
| Schedule G | Principal Remaining on Hand........................................... | 33 |

## INCOME

| | | |
|---|---|---|
| Schedule AA-1 | Income Received.......................................................... | 35 |
| Schedule A-2 | Income Collected......................................................... | 36 |
| Schedule A-3 | Realized Increases........................................................ | 58 |
| Schedule B-1 | Realized Decreases....................................................... | 59 |
| Schedule C-2 | Administration Expenses Chargeable to Income..................... | 60 |
| Schedule E-1 | Distributions of Income................................................. | 65 |
| Schedule F-1 | New Investments, Exchanges and Stock Distributions............. | 69 |
| Schedule G-1 | Income Remaining on Hand............................................. | 70 |

## OTHER

| | | |
|---|---|---|
| Schedule H | Interested Parties......................................................... | 71 |
| Schedule I-1 | Computation of Commissions Due on Termination................. | 72 |
| Schedule J | Other Pertinent Facts and Cash Reconciliation...................... | 73 |
| Schedule K | Estate Taxes Paid and Allocation of Estate Taxes................... | 75 |

{4802319: }

### Residuary TUW Allen Eber
### Schedule G
### Statement of Principal Remaining On Hand

|  |  | Market Value 12/27/2016 |  | Inventory Value |
|---|---|---|---|---|
| | **Cash and Cash Equivalents** | | | |
| | First American Treasury Obligations Fund Cl Z | $ 35,523.28 | $ | 35,523.28 |
| | **Total Cash and Cash Equivalents** | $ 35,523.28 | $ | 35,523.28 |

| **No. of Shares** | **Stocks** | | | |
|---|---|---|---|---|
| 1,000 | AT&T Inc. | $ 42,730.00 | $ | 37,918.00 |
| 80 | Chemours Co | 1,842.40 | | 916.94 |
| 300 | Clorox Co | 36,270.00 | | 18,699.00 |
| 400 | Du Pont De Nemours Ei Co. | 29,972.00 | | 17,923.06 |
| 2,000 | Eber Bros & Co 6% Non-Cumulative | 0.00 | | 0.00 |
| 1,850 | Eber Bros & Co Class A | 0.00 | | 0.00 |
| 290 | Eber Bros & Co Class B | 0.00 | | 0.00 |
| 2,190 | Exxon-Mobil Corp | 198,654.90 | | 187,661.10 |
| 500 | Lilly Eli & Co | 36,895.00 | | 17,110.00 |
| 300 | Lockheed Martin Corp Com | 74,877.00 | | 20,751.00 |
| 800 | Microsoft Corporation | 50,592.00 | | 20,320.00 |
| 886 | Pfizer Inc. | 28,777.28 | | 15,518.29 |
| | **Total Stocks** | $ 500,610.58 | $ | 336,817.39 |

| **No. of Shares** | **Mutual Funds** | | | |
|---|---|---|---|---|

**Schedule G**

## Schedule G (Continued)

|                  |                                      |   | Market Value 12/27/2016 |    | Inventory Value |
|------------------|--------------------------------------|---|------------------------:|----|----------------:|
| No. of<br>Shares | **Mutual Funds**                     |   |                         |    |                 |
| 3,591.954        | Dodge & Cox Income Fund              | $ | 48,599.14               | $  | 50,000.00       |
| 3,598.269        | Franklin Templeton Global<br>Bond Inst |   | 43,323.16             |    | 48,792.52       |
| 4,122.012        | Vanguard Int Term Bd Index<br>Admiral |   | 46,042.87             |    | 50,000.00       |
|                  | **Total Mutual Funds**               | $ | 137,965.17              | $  | 148,792.52      |
|                  | **Total Schedule G**                 | $ | 674,099.03              | $  | 521,133.19      |
|                  | **Unrealized Increases**             |   |                         | $  | 163,793.19      |
|                  | **Unrealized Decreases**             |   |                         | $  | 10,827.35       |

**Schedule G (Continued)**

**Dividend**

**Du Pont De Nemours Ei Co. (Continued)**

| | | | | |
|---|---|---|---|---|
| 06/12/2014 | Dividend on 400 Shares | $ | 180.00 | |
| 09/12/2014 | Dividend on 400 Shares | | 188.00 | |
| 12/12/2014 | Dividend on 400 Shares | | 188.00 | |
| 03/13/2015 | Dividend on 400 Shares | | 188.00 | |
| 06/12/2015 | Dividend on 400 Shares | | 196.00 | |
| 09/11/2015 | Dividend on 400 Shares | | 152.00 | |
| 12/15/2015 | Dividend on 400 Shares | | 152.00 | |
| 03/14/2016 | Dividend on 400 Shares | | 152.00 | |
| 06/10/2016 | Dividend on 400 Shares | | 152.00 | |
| 09/12/2016 | Dividend on 400 Shares | | 152.00 | |
| 12/14/2016 | Dividend on 400 Shares | | 152.00 | |
| | | | | $ 4,080.00 |

**Eber Bros & Co 6% Non-Cumulative**

| | | | | |
|---|---|---|---|---|
| 12/10/2007 | Dividend on 2,000 Shares | $ | 12,000.00 | |
| 12/08/2008 | Dividend on 2,000 Shares | | 12,000.00 | |
| | | | | 24,000.00 |

**Eber Bros & Co Class A**

| | | | | |
|---|---|---|---|---|
| 12/10/2007 | Dividend on 1,850 Shares | $ | 9,250.00 | |
| 12/08/2008 | Dividend on 1,850 Shares | | 9,250.00 | |
| | | | | 18,500.00 |

**Eber Bros & Co Class B**

| | | | | |
|---|---|---|---|---|
| 12/10/2007 | Dividend on 290 Shares | $ | 1,450.00 | |
| 12/08/2008 | Dividend on 290 Shares | | 1,450.00 | |
| | | | | 2,900.00 |

**Exxon-Mobil Corp**

| | | | | |
|---|---|---|---|---|
| 12/11/2007 | Dividend on 2,190 Shares | $ | 766.50 | |
| 03/10/2008 | Dividend on 2,190 Shares | | 766.50 | |

**Schedule A-2 (Continued)**

Allen Eber Trust
Schedule J
Statement of Other Pertinent Facts

1. Allen Eber created a Testamentary Trust under Will dated October 27, 1969 (the "Trust"), for the primary benefit of his wife, Evelyn S. Eber, with the residuary of the Trust to benefit his three children, Mildred Boslov, Sally Kleeberg and Lester Eber, or their lineal descendants in the event of such child's death prior to termination of the Trust.

2. Mildred Boslov previously died and her one-third interest in the Trust was inherited by her only child, Audrey Hays.

3. Sally Kleeberg previously died and her one-third interest in the Trust was inherited by her two children, Daniel Kleeberg (one-sixth) and Lisa Stein (one-sixth).

4. The original Co-Trustees of the Trust were Lester Eber, Elliott W. Gumaer, Jr.., and Marine Midland Trust Company of Rochester. Due to subsequent mergers and acquisitions, Marine Midland Trust Company of Rochester became M&T Bank.

5. M&T Bank petitioned the Court for judicial settlement of its Intermediate Account for the period May 9, 1991 through December 31, 2006. The Trust assets were subsequently transferred to Petitioner's control on August 27, 2007.

6. Petitioner has been primarily responsible for managing the cash and marketable securities in the Trust. Although the stock of Eber Bros. & Co., Inc. is held in the Trust, the day to day operation of the business, and its subsidiaries, was primarily managed by Co-Trustee, Lester Eber.

7. As the Court may be aware, Eber Bros. & Co., Inc. had a subsidiary named Eber Bros Wine & Liquor. Shares of Eber Bros. Wine & Liquor were also previously held in the Trust during our predecessor, M&T Bank's tenure as Co-Trustee, but were sold prior to Petitioner's taking over as Successor Co-Trustee. Therefore, no shares in Eber Bros. Wine & Liquor were received by the Petitioner.

8. Upon information and belief, Eber Bros. & Co., Inc. ceased active operations in or about 2007.

9. Schedule "G" of the Accounting shows the market values of the Eber Bros. & Co., Inc. stock interests as follows:

73

| 2000 Shares | Eber Bros. & Co. 6% Non-Cumulative | $0.00 |
| 1850 Shares | Eber Bros & Co. Class A | $0.00 |
| 290 Shares | Eber Bros & Co. Class B | $0.00 |

10. Empire Valuation was retained for the purpose of providing a valuation of Eber Bros. & Co., Inc. stock. A copy of the valuation which was received is attached to the Petition for Judicial Settlement as Exhibit "A". This valuation confirms that the stock has no value and serves as the basis for the zero values set forth on Schedule "G".

11. Based upon the valuation showing that the Eber Bros. & Co., Inc. stock has no value, Petitioner asserts that the Trust can and should be terminated at this time.

12. Although the Trust is not scheduled to terminate until the death of the last surviving beneficiary pursuant to Article Ninth of the Will, in case all, or substantially all of the decedent's stock in Eber Bros. & Co., Inc. is sold, the Trustees, in their absolute discretion, can terminate the Trust and distribute the residuary of the Trust to the beneficiaries.

13. Given the lack of monetary value attributable to the Eber Bros. & Co., Inc. stock held by the Trust, termination and distribution of the Trust assets is proper.

14. Petitioner has prepared this Accounting on its own behalf as Successor Co-Trustee. Neither Lester Eber nor Elliott W. Gumaer, Jr., as Co-Trustees, have participated in the preparation of this Accounting and, as such, are both included as interested parties to be served pursuant to paragraph 14 of the Petition for Judicial Settlement.

15. The amount of attorneys' fees to be paid by Petitioner to Woods Oviatt Gilman LLP will be determined at the conclusion of this proceeding and shall be subject to approval by the Court.

AFFIDAVIT OF ACCOUNTING PARTY

STATE OF NEW YORK )
COUNTY OF MONROE ) ss:

    RITA NISCHAL, a Vice-President at Canandaigua National Bank and Trust Company, being duly sworn, says: that the schedules of the estate reported herein are true and complete and include all money and property of any kind, and all increment thereon, which have come into the hands of any of the accounting parties or have been received by any other persons for the use of any accounting party by order of authority of such accounting party, and include all indebtedness due by any accounting party to the estate whether discharged or not; that the moneys stated in the account as collected were all that could be collected; that all claims for credit for losses or decreases of value of assets are correctly reported; that the reported payments out of estate assets for funeral and administration expenses were actually made and made in the amounts scheduled; that the reported payments to creditors and beneficiaries were actually made at the dates and in the amounts scheduled; that no payments have been made by any accounting party on any fiduciary's claims against the estate except after prior approval and allowance by the Surrogate; that all receipts and disbursements are correctly and fully reported and scheduled; that the accounting parties do not know of any error in the account or in any schedule thereof or of any matter or thing relating to the estate omitted therefrom to the prejudice of rights of any creditor or of any person interested in the estate; and that the schedule of commissions has been computed in conformity with the statute regulating commissions and the Rules of the Surrogate's Court applicable thereto.

                            CANANDAIGUA NATIONAL BANK AND
                            TRUST COMPANY SUCCESSOR CO-TRUSTEE

                    By: _____
                        Rita Nischal, Vice-President

Sworn to before me on
_February___ 6_____, 2017.

_____
Notary Public

RAMONA GREEN
Notary Public, State of New York
Monroe County Reg. #01GR6033242
Commission Expires 11/15/2017

Woods Oviatt Gilman LLP
Lorisa D. LaRocca, Esq.
700 Crossroads Building, 2 State Street
Rochester NY 14614
5858.987.2849

{4802319: }

## LaRocca, Lorisa D.

| | |
|---|---|
| **From:** | Jim Vazzana <jgvazzana@frontiernet.net> |
| **Sent:** | Friday, January 27, 2017 11:37 AM |
| **To:** | LaRocca, Lorisa D. |
| **Cc:** | 'Wendy Eber'; 'Lester Eber' |
| **Subject:** | FW: Eber/CNB |
| **Attachments:** | Eber Bros Report FINAL[3].pdf |

Dear Lorisa,

Attached hereto is a copy of the Appraisal for Eber Brothers Wine and Liquor Corporation.

Sincerely,

Jim

James G. Vazzana, Esq.

Wiedman, Vazzana, Corcoran & Volta, P.C.
5 South Fitzhugh Street
Rochester, New York 14614


Disclaimer/Confidentiality Notice:
      This transmission, including any attachments, is intended to be delivered and designated solely for delivery to the names addressee(s) and may contain information that is confidential, propriety, attorney work product and/or attorney/client privileged matter. Any unauthorized review, use, disclosure, copying, distribution or the taking of any action because of this information is prohibited.  Any unauthorized person or unintended recipient of this electronic communication is strictly prohibited from using, disclosing, copying, distributing and/or taking any action in connection with the same and should immediately notify the sender of this matter and immediately delete the electronic communication and send an email to the sender and the sender by telephone (585) 454-5850 extension 115 to obtain instructions as to the disposal of the transmitted material.  In no event shall this material be read, used, copies, reproduced, stored or retained by anyone other than the named addressee(s), except with the express written consent of the sender or the named addressee(s).


**From:** Wendy Eber [mailto:weber@slocumandsons.com]
**Sent:** Thursday, January 26, 2017 10:01 PM
**To:** Jim Vazzana <jgvazzana@frontiernet.net>; Lester Eber <leber@slocumandsons.com>
**Subject:** Re: Eber/CNB

Jim,
See attached.

Wendy


PLAINTIFF'S
EXHIBIT
**136**

1

CNB-PL0033

# Eber Bros Wine & Liquor Corporation

## Valuation of a 100% Interest

As of January 12, 2017



# Table of Contents

Executive Summary ...................................................................................................... 2

Valuation Standards ..................................................................................................... 2

Sources of Information ................................................................................................. 3

Business Profile ........................................................................................................... 3

    A.   Description of Assets and Liabilities ................................................................. 4

Valuation Overview ..................................................................................................... 5

    A.   General Valuation Methods ............................................................................... 5

    B.   Outline of Valuation Process ............................................................................ 6

Valuation of EWLC ..................................................................................................... 6

    A.   Adjusted Book Value ....................................................................................... 6

Valuation Summary ..................................................................................................... 7

Valuation Addenda

Valuation Exhibits

CNB-PL0035



**EMPIRE**
VALUATION CONSULTANTS, LLC

**PRIVATE & CONFIDENTIAL**

January 25, 2017

Ms. Wendy Eber
Eber Bros. Wine and Liquor
95 Allens Creek Road, Building 2, Suite 10 and 11
Rochester, New York 14618

Dear Ms. Wendy Eber:

You have engaged Empire Valuation Consultants, LLC ("Empire") to estimate the fair market value of a 100% interest (the "Interest") in Eber Bros Wine & Liquor Corporation ("EWLC" or the "Company") as of January 12, 2017 (the "Valuation Date"). It is our understanding that you will use this valuation to assist you in closing the Trust of Allen Eber.

Empire's estimate of fair market value for the Interest does not constitute a fairness opinion, nor is it a recommendation for either a potential buyer or a potential seller to transact at any particular price. A buyer or seller of the Interest will be solely responsible for conducting their own due diligence.

For purposes of this report, fair market value is defined in accordance with Treasury Regulations established for income, estate and gift taxes as the price at which ownership interests would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

At your request, this report has been prepared as a Restricted Appraisal Report as defined in Standards Rule 10 of The Appraisal Foundation's Uniform Standards of Professional Appraisal Practice ("USPAP"), which specifically applies to the preparation of valuation reports of business interests. As such, this report is for your exclusive use and the estimates and conclusions set forth herein may not be understood properly without additional information in Empire's work files.

CNB-PL0036

Ms. Wendy Eber
January 25, 2017
Page 2

## Executive Summary

Subject to the attached Statement of Limiting Conditions, the Interest had no value as of the Valuation Date. The primary valuation method employed was the adjusted book value method, a variant of the asset approach. A full description of how the valuation was performed is provided later in this report.

## Valuation Standards

Again, this report is a Restricted Appraisal Report as defined in Standards Rule 10 of The Appraisal Foundation's Uniform Standards of Professional Appraisal Practice ("USPAP"), which specifically applies to the preparation of valuation reports of business interests.

Since the Company is closely-held, with no public market for its ownership interests, this appraisal was conducted according to guidelines established by the Internal Revenue Service ("IRS"), and in conformity with the American Society of Appraisers' Principles of Appraisal Practice and Code of Ethics, together with other standards that were deemed relevant to this engagement.

This appraisal considered all pertinent factors outlined in USPAP Standards Rule 9 and IRS Revenue Ruling 59-60, including, but not limited to, the following:

- the nature and history of EWLC;

- the financial and economic conditions affecting the general economy, the Company, and its industry;

- the past results, current operations, and future prospects of EWLC;

- the earning capacity and dividend-paying capacity of the Company;

- the economic benefit to the Company of both its tangible and intangible assets;

- the market price of actively traded interests in public entities engaged in the same or similar lines of business as EWLC, as well as sales of ownership interests in entities similar to the Company;

- the prices, terms, and conditions of past sales of ownership interests in EWLC; and

- the impact on the value of ownership interests in EWLC resulting from the existence of buy-sell and option agreements, investment letter stock restrictions, restrictive shareholders agreements, or other such agreements.



EMPIRE
VALUATION CONSULTANTS

CNB-PL0037

Ms. Wendy Eber
January 25, 2017
Page 3

## Sources of Information

Information used in determining the fair market value of the Interest was provided by the documents and sources listed below:

- Copies of the Company's federal income tax returns for the years ended May 31, 2012 through 2016;[1]

- Copy of the Company's by-laws, dated March 13, 2006;

- Copy of the Company's internally prepared balance sheet at the Valuation Date;

- Copy of the Demand for Payment of Statutory Liability (the "Demand") from Pension Benefit Guaranty Corporation ("PBGC");

- Copy of the IRS Notice dated September 5, 2016 (the "Notice");

- Copy of the statement from Colin D. Ramsey of Underberg & Kessler LLP addressing the lawsuit by Daniel Kleeberg, Lisa Stein, and Audrey Hayes (the "Lawsuit Letter");

- Conversations and correspondence with Wendy Eber and Sumner Pearsall, CPA (collectively "Management"); and

- Other reviews, analyses, and research as were deemed necessary.

Empire assumes that all information provided to us by the Company or its representatives in the context of an analysis is true, complete and correct in all material respects. Changes to any of this information provided to Empire, could have a material impact on our valuation conclusion.

## Business Profile

EWLC is a corporation formed July 1, 1935 pursuant to the laws of the state of New York. EWLC was a wine and liquor distributor based in Upstate New York. The Company had a long history of operations until 2005 when Southern Wine & Spirits of America, Inc., a large competitor entered the market and put EWLC out of business. As part of its business, the Company had an employee benefit retirement plan (the "Pension Plan").

After 2007, the Company ceased the majority of sales. Operating expenses reduced dramatically through 2013. There was no income statement or balance sheet activity in 2014

---

[1] All references to fiscal years for the Company are for the years ended May 31, unless otherwise noted.

EMPIRE
VALUATION CONSULTANTS

Ms. Wendy Eber
January 25, 2017
Page 4

or 2015. The Company wrote off all assets and liabilities in 2016 which accounts for the activity on the income statement and is reflected on the balance sheet.

For the fiscal year ended May 31, 2016, EWLC recorded a pre-tax loss of $469,000. At May 31, 2016, the book value of the Company's assets and shareholders' equity were each $0.

According to Management, the Company has not had any operations since 2007 and is not expected to generate any revenue going forward.

## A.   Description of Assets and Liabilities

At the Valuation Date according to the Company's internally prepared balance sheet, EWLC had no assets. According to Management, EWLC had two existing liabilities and one potential liability. The first was the liability to PBGC detailed in the Demand. The second was the liability assessed by the IRS detailed in the Notice. The balances presented on the Company's internally prepared balance sheet for the Valuation Date are supported by the balances outlined in the Demand and the Notice.

After a ruling by the District Court of Western New York in January 2016, PBGC became the trustee of the Pension Plan. For reference, PBGC is a wholly owned government corporation established to administer the pension plan termination insurance program under the Employee Retirement Income Security Act of 1974. In September 2016, according to the Demand, PBGC was awarded $7.3 million in a lawsuit brought against the Company in the District Court of Connecticut. This amount was to cover the unfunded balance of the Pension Plan. The PBGC has put a lien in the amount of $2.2 million against EWLC and Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), an EWLC affiliated company. EWLC is liable for $7.3 million, the full amount of the liability. This is the amount of the statutory liability to PBGC as of the Valuation Date. Note, the lawsuit is a joint and several liability of the Company along with some affiliated companies. Additionally, the Company has been trying to negotiate the amount of the liability. As such, the $7.3 million represents the maximum amount possibly due by the Company.

Additionally, the IRS assessed $232,000 on September 5, 2016 for excise taxes on payments that were not properly made to the Pension Plan for the tax period ended May 31, 2013. This is the amount of the payment due to the IRS as of the Valuation Date.

Lastly, in addition to the aforementioned liabilities, another potential liability may exist per the Lawsuit Letter. A lawsuit was brought by Daniel Kleeberg, Lisa Stein, and Audrey Hayes against Lester Eber, Wendy Eber, EWLC, and other corporations owned by the Ebers. The lawsuit was filed on December 9, 2016. As of the Valuation Date, EWLC has not been served. The lawsuit alleges a breach of fiduciary duties by the defendants. The lawsuit is uncertain and potentially non-existent. As such, no adjustment was made for the potential liability from the lawsuit.

EMPIRE
VALUATION CONSULTANTS

Ms. Wendy Eber
January 25, 2017
Page 5

## Valuation Overview

The purpose of the valuation section is to incorporate the information considered and/or presented previously into a quantitative representation, thus assigning a value to the ownership privileges of the closely-held entity. The valuation methodology reflects the analyst's expectation of how free and open capital markets would assign value to the economic activities of the business asset under analysis.

### A. General Valuation Methods

Generally, there are three commonly used approaches to determine the value of a company. These three approaches are the Income, Market and Asset (or Cost) Approaches. The nature of the business, industry, and economic circumstances of the particular company/asset being valued at the specific valuation date, as well as the availability of data will dictate which approach(es) will ultimately be used in determining the company's/asset's value.

The **Income Approach** uses valuation techniques to estimate value based on an expected stream of benefits, such as earnings or cash flow. Two common methods under this approach are the capitalization of benefits method, which is based on adjusted historical results, and the discounted future benefits method. In the capitalization of benefits method, a representative benefit level is divided by an appropriate capitalization factor to convert the benefit to a value.[2] In the discounted future benefits method, benefits are estimated for each of several future periods. These benefits are converted to value by applying an appropriate discount rate and using present value calculations.

The **Market Approach** uses prices and other relevant information generated by market transactions involving guideline companies. For example, valuation techniques consistent with the market approach often use market multiples derived from a set of guideline companies. Multiples might lie in ranges with a different multiple for each guideline company. The selection of where within the range the appropriate multiple falls requires judgment, considering factors specific to the measurement (qualitative and quantitative).

The **Asset (or Cost) Approach** determines the value of a business based on the value of its assets net of liabilities. Typically the asset-based approach should be considered in valuations conducted at the enterprise level or involving:

- When valuing an investment or real estate holding company; or

- When the market value of an entity's net assets materially exceeds the value derived under the income or market approaches.

---

[2] This is the inverse of applying valuation multiples in a market approach.

EMPIRE
VALUATION CONSULTANTS

CNB-PL0040

Ms. Wendy Eber
January 25, 2017
Page 6

## B.  Outline of Valuation Process

The asset accumulation method ("AAM"), a variant of the asset approach, was the primary valuation method employed to value the Company. It requires restatement of an entity's assets and liabilities in order to reflect their estimated market values at the Valuation Date. The application of the AAM results in either the adjusted net asset value ("NAV") or the adjusted book value ("ABV"). ABV, unlike traditional NAV, does not recognize the costs that would necessarily be incurred in converting a company's tangible assets into cash. Note that, by definition, utilization of the AAM results in a fully controlling and fully marketable value.

An income and market approaches were not employed since EWLC was no longer operating. As a result, it was considered that the AAM was the most appropriate valuation method in this situation.

In performing the AAM, the following steps were taken.

1.  The Company's balance sheet items were adjusted to reflect their market values.

2.  The pro rata ABV attributable to the Interest was calculated.

No discounts for lack of control ("DLOC") or lack of marketability ("DLOM") were applied. DLOC was not applied as the Interest is a fully controlling interest of the Company. DLOM was not applied as the Company's liabilities must be fully satisfied.

## Valuation of EWLC

### A.  Adjusted Book Value

Determination of EWLC's ABV began by using the Company's May 31, 2016 balance sheet per the Company's tax return. As noted previously, determination of ABV requires that each asset and liability of the subject entity be adjusted to their estimated market value as of the Valuation Date. Specific adjustments applied are presented in Exhibit D and discussed below.

- The statutory liability to PBGC was adjusted to the value per the Demand received by the Company.

- The liability to the IRS was adjusted to the value per the Notice received by Company.

- Owner's equity was adjusted by the net amount of the adjustments described above.

Again, the Company has no assets. Given the above adjustments, the Company's ABV was negative $7,523,847 at the Valuation Date. See Exhibit D. It should be noted that even if the PBGC liability is adjusted down or paid in full by an affiliated company, the Company

EMPIRE
VALUATION CONSULTANTS

CNB-PL0041

Ms. Wendy Eber
January 25, 2017
Page 7

still has a negative ABV. As such, Empire has concluded that the Company has no value at the Valuation Date.

## Valuation Summary

Given the foregoing review and analysis, and subject to the attached Statement of Limiting Conditions, it is our estimate that the Interest had no value as of January 12, 2017. We understand that the valuation will be used to assist you in closing the Trust of Allen Eber.

This appraisal is not intended for any other purpose nor for any other users and the sharing of the contents herein is not permitted without the express written consent of Empire Valuation Consultants, LLC. Empire has no obligation to update this appraisal for information that comes to our attention after the date of this report.

Respectfully submitted,

**Empire Valuation Consultants, LLC**


Anthony M. Venette, CPA
Valuation Consultant


Jeffery T. Schultz
Manager


R. Scott Brace, Jr., ASA
Managing Director

**EMPIRE**
VALUATION CONSULTANTS

CNB-PL0042

## STATEMENT OF LIMITING CONDITIONS

1. Financial statements and other related information provided by or on behalf of the client entity or its representatives, in the course of this engagement, have been accepted without any verification as fully and correctly reflecting the enterprise's business conditions and operating results for the respective periods, except as specifically noted herein. Empire Valuation Consultants, LLC has not audited, reviewed, or compiled the financial information provided to us and, accordingly, we express no audit opinion or any other form of assurance on this information.

2. Public information and industry and statistical information have been obtained from sources we believe to be reliable. However, we make no representation as to the accuracy or completeness of such information and have performed no procedures to corroborate the information. Information used was limited to that available on or before the Valuation Date, or which could be reasonably ascertained as of that date. We reserve the right to make such adjustments to the valuation herein reported as may be required by consideration of additional or more reliable data that may become available subsequent to the issuance of this report.

3. We do not provide assurance on the achievability of the results forecasted by the client entity because events and circumstances frequently do not occur as expected; differences between actual and expected results may be material; and achievement of the forecasted results is dependent on actions, plans, and assumptions of management.

4. The conclusion of value arrived at herein is based on the assumption that the current level of management expertise and effectiveness would continue to be maintained, and that the character and integrity of the enterprise through any sale, reorganization, exchange, or diminution of the owners' participation would not be materially or significantly changed.

5. This report and the conclusion of value arrived at herein are for the exclusive use of our client for the sole and specific purposes as noted herein. They may not be used for any other purpose or by any other party for any purpose. Furthermore the report and conclusion of value are not intended by Empire Valuation Consultants, LLC and should not be construed by the reader to be investment advice in any manner whatsoever. The conclusion of value represents the considered opinion of Empire Valuation Consultants, LLC, based on information furnished to them by the client entity and other sources.

6. Neither all nor any part of the contents of this report (especially the conclusion of value, the identity of any valuation specialist(s), or the firm with which such valuation specialists are connected or any reference to any of their professional designations) should be disseminated to the public through advertising media, public relations, news media, sales media, mail, direct transmittal, or any other means of communication without the prior written consent and approval of Empire Valuation Consultants, LLC.

CNB-PL0043

7. Future services regarding the subject matter of this report, including, but not limited to testimony or attendance in court, shall not be required of Empire Valuation Consultants, LLC unless previous arrangements have been made in writing.

8. Empire Valuation Consultants, LLC is not an environmental consultant or auditor, and it takes no responsibility for any actual or potential environmental liabilities. Any person entitled to rely on this report, wishing to know whether such liabilities exist, or the scope and their effect on the value of the property, is encouraged to obtain a professional environmental assessment. Empire Valuation Consultants, LLC does not conduct or provide environmental assessments and has not performed one for the subject property.

9. Empire Valuation Consultants, LLC has not determined independently whether the client entity is subject to any present or future liability relating to environmental matters (including, but not limited to CERCLA/Superfund liability) nor the scope of any such liabilities. Empire Valuation Consultants, LLC's valuation takes no such liabilities into account, except as they have been reported to Empire Valuation Consultants, LLC by the client entity or by an environmental consultant working for the client entity, and then only to the extent that the liability was reported to us in an actual or estimated dollar amount. Such matters, if any, are noted in the report. To the extent such information has been reported to us, Empire Valuation Consultants, LLC has relied on it without verification and offers no warranty or representation as to its accuracy or completeness.

10. Empire Valuation Consultants, LLC has not made a specific compliance survey or analysis of the subject property to determine whether it is subject to, or in compliance with, the Americans with Disabilities Act of 1990, and this valuation does not consider the effect, if any, of noncompliance.

11. No change of any item in this appraisal report shall be made by anyone other than Empire Valuation Consultants, LLC, and we shall have no responsibility for any such unauthorized change.

12. Unless otherwise stated, no effort has been made to determine the possible effect, if any, on the subject business due to future Federal, state, or local legislation, including any environmental or ecological matters or interpretations thereof.

13. If prospective financial information approved by management has been used in our work, we have not examined or compiled the prospective financial information and therefore, do not express an audit opinion or any other form of assurance on the prospective financial information or the related assumptions. Events and circumstances frequently do not occur as expected and there will usually be differences between prospective financial information and actual results, and those differences may be material.

14. We have conducted interviews with the current management of the client entity concerning the past, present, and prospective operating results of the company, as applicable for this analysis.

CNB-PL0044

15. Except as noted, we have relied on the representations of the owners, management, and other third parties concerning the value and useful condition of all equipment, real estate, investments used in the business, and any other assets or liabilities, except as specifically stated to the contrary in this report. We have not attempted to confirm whether or not all assets of the business are free and clear of liens and encumbrances or that the client entity has good title to all assets.

16. The fee established for the formulation and reporting of these conclusions is not contingent upon the value or other opinions presented.

17. Neither the appraiser nor any officer or employee of Empire Valuation Consultants, LLC has any interest in the property appraised.

18. We assume that there are no hidden or unexpected conditions of the assets valued that would adversely affect value.

19. No opinion is intended for matters which require legal or specialized expertise, investigation or knowledge, beyond that customarily employed by appraisers.

Addendum 2

# CERTIFICATION OF APPRAISERS

We the appraisers certify that, to the best of our knowledge and belief:

1. Our analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

2. All statements of fact contained in this report are true and correct.

3. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, unbiased professional analyses, opinions, and conclusions.

4. Neither Empire nor any of its employees has, to the best of our knowledge, either a present or intended financial interest in the entity that is the subject of this report, in any affiliates that may exist, or with respect to the parties involved.

5. Empire has not performed services as an appraiser regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

6. We have no bias with respect to the entity that is the subject of this report or to the parties involved with this assignment.

7. Empire's engagement in this assignment was not contingent upon developing or reporting predetermined results.

8. The professional fee paid to Empire for the preparation of this report is not contingent upon its conclusion, including: developing or reporting a predetermined value or direction of value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

9. No one provided significant business appraisal assistance to the persons signing this certification, unless specifically stated herein.

The American Society of Appraisers has a mandatory recertification program for all of its Accredited Senior Appraisers. The senior members signing below, designated by the "ASA," are in compliance with that program.

Anthony M. Venette, CPA
Valuation Consultant

Jeffery A. Schultz
Manager

R. Scott Brace, Jr., ASA
Managing Director

January 3, 2017

Addendum 3-1

# EMPIRE VALUATION CONSULTANTS, LLC
www.empireval.com

777 Canal View Blvd.
Suite 200
Rochester, NY 14623
Tel:  (585) 475-9260
Fax: (585) 475-9380

350 Fifth Avenue
Suite 6115
New York NY 10118
Tel:  (212) 714-0122
Fax: (212) 714-0124

One International Place
Suite 1400
Boston, MA 02110
Tel:  (617) 535-7785
Fax: (617) 535-7555

61 South Main Street
Suite 201
West Hartford, CT 06107
Tel:  (860) 233-6552
Fax: (860) 521-7575

## Valuation Services

**Empire Valuation Consultants, LLC** provides valuations to private equity and hedge funds, business owners, attorneys, accountants, commercial bankers, investment bankers, trust departments, insurance agents, and financial planners, among others.  **Empire's** consultants have prepared or managed the preparation of over 25,000 appraisals for the following reasons:

- Private Equity & Hedge Fund Marking
- Transfer Pricing
- Solvency Opinions
- Buy/Sell Agreements
- Gifting Programs
- Estate Taxes
- Mergers & Acquisitions
- Blocks of Publicly Traded Securities
- Employee Stock Ownership Plans (ESOPs)
- Financial and SEC Reporting
- Fairness Opinions
- Litigation Support
- Redemptions
- Recapitalizations
- Going Private Transactions
- Stock Option Plans
- Dissenting Shareholder Suits
- Impairment Testing
- Intellectual Property
- Purchase Price Allocations

## Other Financial Services

### Litigation Support & Expert Testimony

**Empire** can assist you with research and litigation support and its professionals are available to provide expert testimony in matters involving questions of valuation.

### ESOP Feasibility Studies & Preliminary Valuations

**Empire** is available to work with our client's team of financial advisors or participate in independent feasibility studies and preliminary valuation reviews in connection with ESOP formation planning.

CNB-PL0047

# ANTHONY M. VENETTE, CPA

## Academic Degrees

M.B.A.    St. John Fisher College, Bittner School of Business, Accounting, 2014

B.S.      St. John Fisher College, Bittner School of Business, Accounting, 2013

## Employment

Empire Valuation Consultants, Rochester, New York
Valuation Consultant, 2016 – Present.

PricewaterhouseCoopers LLP, Rochester, New York
Tax Associate, 2014 – 2016.

## Experience

Mr. Venette is a Certified Public Accountant (CPA) in the State of New York and has memberships in professional organizations including the American Institute of Certified Public Accountants (AICPA) and the New York Society of Certified Public Accountants.

His professional experience, prior to joining Empire, includes preparation and review of federal and state tax returns for a variety of corporations and individuals. Mr. Venette also conducted audits of financial statements as a tax specialist.

CNB-PL0048

# JEFFREY T. SCHULTZ

## Academic Degrees

M.B.A.    University of Rochester, William E. Simon Graduate School of
Business Administration, Finance, 2004

B.S.      Rochester Institute of Technology, College of Business,
Manufacturing and Materials Management, 1996

## Employment

Empire Valuation Consultants, Rochester, New York
    Manager, 2016 – present.
    Senior Valuation Consultant, 2011 – 2016.
    Valuation Consultant, 2006 – 2011.

Ontario and Trumansburg Telephone Cos., Phelps, NY
    Customer Service and Sales Manager, 2004 – 2006.

Rochester Gas and Electric Corp., Rochester, NY
    Subprocess Owner, 1980 – 2003.

## Experience

Mr. Schultz joined Empire Valuation Consultants in 2006, bringing with him
strong quantitative and financial analysis experience, as well as significant
operational, managerial and consulting skills.

While at Rochester Gas and Electric, he was responsible for creating and
providing testimony for gas and electric rate cases.  Mr. Schultz' work also
involved developing detailed analysis that highlighted the costs, projected
savings, and net present value for numerous technology deployments.

Mr. Schultz is a former Board Member of the Wayne Central School District
Board of Education.  During his tenure, he acted as the Board's President, Vice
President, and Chairperson for the District's Audit Committee.

Addendum 3-4

# R. SCOTT BRACE, JR., ASA

## Academic Degrees

M.B.A.      State University of New York at Buffalo, Finance, 1996

B.A.        State University of New York College at Geneseo, Economics, 1994

## Employment

**Empire Valuation Consultants, LLC, Rochester, New York (1999-Present)**
Managing Director (2012-Present)
Senior Manager (2010–2012)
Manager (2006–2010)
Senior Valuation Associate (2004-2006)
Valuation Associate (1999-2004)

**M&T Bank, Buffalo, New York (1996-1999)**
Trader/Analyst, Portfolio Management Group (1998-1999)
Senior Credit Analyst (1996-1998)

## Experience

Mr. Brace is an Accredited Senior Appraiser (ASA) of the American Society of Appraisers. Mr. Brace has over 15 years of experience providing business valuation and financial consulting services. While employed at M&T Bank, he was responsible for evaluating a variety of fixed income securities, wholesale funding transactions, and hedging strategies for portfolio management.

Since joining Empire, Mr. Brace has been involved in numerous business valuations. These valuations were prepared for a diverse base of entities and a wide range of purposes that include: estate and gift taxes; buy-sell agreements; potential company and/or equity sales; employee stock ownership plans (ESOPs); SEC and financial reporting (including the allocation of purchase price among acquired intangible assets, goodwill impairment testing, and fair value purposes); shareholder and partnership litigation; and fairness and solvency opinions. His areas of expertise include the valuation of common and preferred stock, debt (including senior debt, subordinated debt, and promissory notes), employee and incentive stock options, warrants, partnership and limited liability company interests; and intangible assets.

CNB-PL0050

EXHIBIT A

## COMPARATIVE INCOME STATEMENTS
## EBER BROS WINE & LIQUOR CORP
FOR THE YEARS ENDED MAY 31,

| | HISTORY 2012 | HISTORY 2013 | HISTORY 2014 | HISTORY 2015 | HISTORY 2016 |
|---|---|---|---|---|---|
| State Tax Refund | 0 | 0 | 0 | 0 | 0 |
| Forgiveness of Debt | 0 | 29,046 | 0 | 0 | 844,014 |
| Gross Sales | 12,447 | 223 | 0 | 0 | 0 |
| Miscellaneous Income | 102,034 | 25,498 | 0 | 0 | 0 |
| TOTAL REVENUES | 114,481 | 54,767 | 0 | 0 | 844,014 |
| | | | | | |
| Bad Debts | 2,799 | 131,179 | 0 | 0 | 1,305,793 |
| Taxes and Licenses | 0 | 250 | 0 | 0 | 0 |
| Pension, Profit Sharing, Etc | 403,000 | 450,953 | 0 | 0 | 0 |
| Legal and Professional Fees | 424,343 | 37,697 | 0 | 0 | 0 |
| Accounting | 0 | 13,856 | 0 | 0 | 0 |
| Settlement | 181,886 | 0 | 0 | 0 | 0 |
| Rents | 71,908 | 0 | 0 | 0 | 0 |
| Office Expense | 6,715 | 0 | 0 | 0 | 0 |
| Miscellaneous | 6,307 | 439 | 0 | 0 | 6,983 |
| Total Operating Expenses | 1,096,958 | 634,374 | 0 | 0 | 1,312,776 |
| | | | | | |
| NET OPERATING INCOME | (982,477) | (579,607) | 0 | 0 | (468,762) |
| | | | | | |
| Interest Income | 235 | 0 | 0 | 0 | 0 |
| Income (Loss) from Equity Method U.S. Corporations | (314,745) | 0 | 0 | 0 | 0 |
| Income from Subsidiary | 0 | 4,053,573 | 0 | 0 | 0 |
| Total Other Income (Expense) | (314,510) | 4,053,573 | 0 | 0 | 0 |
| | | | | | |
| PRE-TAX INCOME | (1,296,987) | 3,473,966 | 0 | 0 | (468,762) |
| Provision (Benefit) for Taxes | 0 | 7,291,666 | 0 | 0 | 0 |
| NET INCOME | (1,296,987) | (3,817,700) | 0 | 0 | (468,762) |

CNB-PL0051

EXHIBIT B

## COMPARATIVE BALANCE SHEETS
### EBER BROS WINE & LIQUOR CORP
FOR THE YEARS ENDED MAY 31,

| | HISTORY 2012 | HISTORY 2013 | HISTORY 2014 | HISTORY 2015 | HISTORY 2016 |
|---|---|---|---|---|---|
| Cash and Equivalents | 2,251 | (12) | (12) | (12) | 0 |
| Accounts Receivable | 36,892 | 0 | 0 | 0 | 0 |
| Advances to Affiliate | 2,011,657 | 1,305,793 | 1,305,793 | 1,305,793 | 0 |
| Letters of Credit | 440,953 | 0 | 0 | 0 | 0 |
| **Total Current Assets** | 2,491,753 | 1,305,781 | 1,305,781 | 1,305,781 | 0 |
| | | | | | |
| Fixed Assets | 7,000 | 7,000 | 7,000 | 7,000 | 0 |
| Less: Accumulated Depreciation | 0 | 0 | 0 | 0 | 0 |
| **Net Fixed Assets** | 7,000 | 7,000 | 0 | 7,000 | 0 |
| | | | | | |
| Investment in Subsidiaries | (4,053,573) | 0 | 0 | 0 | 0 |
| **Total Other Assets** | (4,053,573) | 0 | 0 | 0 | 0 |
| | | | | | |
| **TOTAL ASSETS** | (1,554,820) | 1,312,781 | 1,312,781 | 1,312,781 | 0 |

### LIABILITIES & SHAREHOLDERS' EQUITY

| | HISTORY 2012 | HISTORY 2013 | HISTORY 2014 | HISTORY 2015 | HISTORY 2016 |
|---|---|---|---|---|---|
| Accounts Payable | 824,808 | 824,808 | 824,808 | 824,808 | 0 |
| Accrued Expenses and Taxes | 25,498 | 0 | 0 | 0 | 0 |
| Due to Officer | 0 | 19,206 | 19,206 | 19,206 | 0 |
| Rounding | 5 | 5 | 5 | 5 | 0 |
| **Total Current Liabilities** | 850,311 | 844,019 | 844,019 | 844,019 | 0 |
| | | | | | |
| Long-term Debt, Less Current Portion | 600,073 | 0 | 0 | 0 | 0 |
| **Total Other Liabilities** | 600,073 | 0 | 0 | 0 | 0 |
| | | | | | |
| **TOTAL LIABILITIES** | 1,450,384 | 844,019 | 844,019 | 844,019 | 0 |
| | | | | | |
| Preferred Stock | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Common Stock | 1,440,000 | 1,440,000 | 1,440,000 | 1,440,000 | 1,440,000 |
| Additional Paid-in Capital | 333,982 | 333,982 | 333,982 | 333,982 | 333,982 |
| Retained Earnings | (4,829,186) | (1,355,220) | (1,355,220) | (1,355,220) | (1,823,982) |
| **Total Shareholders' Equity** | (3,005,204) | 468,762 | 468,762 | 468,762 | 0 |
| | | | | | |
| **TOTAL LIABILITIES & SHAREHOLDERS' EQUITY** | (1,554,820) | 1,312,781 | 1,312,781 | 1,312,781 | 0 |

(1) Tax returns present rounding each year 2012 through 2015.

CNB-PL0052

EXHIBIT C

## COMPARATIVE CASH FLOW STATEMENTS
### EBER BROS WINE & LIQUOR CORP
FOR THE YEARS ENDED MAY 31,

| | HISTORY 2012 | HISTORY 2013 | HISTORY 2014 | HISTORY 2015 | HISTORY 2016 |
|---|---|---|---|---|---|
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | |
| Net Income | (1,296,987) | (3,817,700) | 0 | 0 | (468,762) |
| Adjustments to reconcile Net Income to Net Cash Provided from Operating Activities | | | | | |
| (Inc.) Dec. in Accounts Receivable | 4,465 | 36,892 | 0 | 0 | 0 |
| (Inc.) Dec. in Advances to Affiliate | 233,748 | 705,864 | 0 | 0 | 1,305,793 |
| (Inc.) Dec. in Letters of Credit | 9,047 | 440,953 | 0 | 0 | 0 |
| (Inc.) Dec. in Investment in Subsidiaries | 314,745 | (4,053,573) | 0 | 0 | 0 |
| Inc. (Dec.) in Accounts Payable | 132,558 | 0 | 0 | 0 | (824,808) |
| Inc. (Dec.) in Accrued Expenses and Taxes | 4,496 | (25,498) | 0 | 0 | 0 |
| Inc. (Dec.) in Due to Officer | 0 | 19,206 | 0 | 0 | (19,206) |
| Inc. (Dec.) in Rounding | 0 | 0 | 0 | 0 | (6) |
| Net Cash Provided By (Used In) Operating Activities | (597,918) | (6,693,856) | 0 | 0 | (6,988) |
| **CASH FLOW FROM INVESTING ACTIVITIES** | | | | | |
| Write Down of Fixed Assets | 0 | 0 | 0 | 0 | 7,000 |
| Net Cash Provided By (Used In) Investing Activities | 0 | 0 | 0 | 0 | 7,000 |
| **CASH FLOW FROM FINANCING ACTIVITIES** | | | | | |
| Long-term Debt | 600,073 | (600,073) | 0 | 0 | 0 |
| Net Cash Provided By (Used In) Financing Activities | 600,073 | (600,073) | 0 | 0 | 0 |
| NET INCREASE (DECREASE) IN CASH | 2,155 | (7,293,929) | 0 | 0 | 12 |
| Beginning Cash | 96 | 2,251 | (12) | (12) | (12) |
| Ending Cash | 2,251 | (7,291,678) | (12) | (12) | 0 |

CNB-PL0053

EXHIBIT D

## CALCULATION OF ADJUSTED BOOK VALUE
### EBER BROS WINE & LIQUOR CORP
### AS OF JANUARY 12, 2017

| | May 31, 2016 | MARKET ADJUSTMENTS | ADJUSTED BOOK VALUE |
|---|---|---|---|
| **ASSETS** | | | |
| TOTAL ASSETS | 0 | 0 | 0 |
| **LIABILITIES** | | | |
| Statutory Liability to PBGC[1] | 0 | 7,291,666 | 7,291,666 |
| Payment Due to IRS[2] | 0 | 232,181 | 232,181 |
| Kleeberg, Stein, and Hayes Lawsuit Liability[3] | 0 | 0 | 0 |
| **Total Other Liabilities** | 0 | 7,523,847 | 7,523,847 |
| **TOTAL LIABILITIES** | 0 | 7,523,847 | 7,523,847 |
| **Total Shareholders' Equity** | 0 | (7,523,847) | (7,523,847) |
| **TOTAL LIABILITIES & SHAREHOLDERS' EQUITY** | 0 | 0 | 0 |
| Adjusted Book Value | | | ($7,523,847) |

| Concluded Fair Market Value of a 100% Interest, rounded | No Value |
|---|---|

(1) In September 2016, according to the Demand, Pension Benefit Government Corporation ("PBGC") was awarded $7.3 million in a lawsuit brought against the Company in the District Court of Connecticut. This amount was to cover the unfunded balance of the Pension Plan. This is the amount of the Eber Bros Wine & Liquor Corporation ("EWLC") liability as of the Valuation Date. See section "A. Description of Assets and Liabilities" of the Report for more information.

(2) The Internal Revenue Service ("IRS") assessed $232,000 on September 5, 2016 for excise taxes on payments that were not properly made to the Pension Plan for the tax period ended May 31, 2013. This is the amount of the payment due to the IRS as of the Valuation Date. See section "A. Description of Assets and Liabilities" of the Report for more information.

(3) A lawsuit was brought by Daniel Kleeberg, Lisa Stein, and Audrey Hayes against Lester Eber, Wendy Eber, EWLC, and other corporations owned by the Ebers. The lawsuit was filed on December 9, 2016. As of the Valuation Date, EWLC has not been served. The lawsuit alleges a breach of fiduciary duties by the defendants. The lawsuit is uncertain and potentially non-existent. As such, the ABV was considered to be $0. See section "A. Description of Assets and Liabilities" of the Report for more information.

CNB-PL0054

## LaRocca, Lorisa D.

| | |
|---|---|
| **From:** | Jim Vazzana <jgvazzana@frontiernet.net> |
| **Sent:** | Thursday, January 19, 2017 9:22 AM |
| **To:** | LaRocca, Lorisa D. |
| **Cc:** | 'Wendy Eber'; 'Lester Eber' |
| **Subject:** | Eber/CNB |

Dear Lorisa:

Lester and Wendy Eber are being represented by Paul Keanelly from Underberg Kessler for the litigation that is pending. Wendy has advised me that she hopes to get something before the end of the week on the appraisal.

I am looking forward to seeing the Accounting when complete.  Thank you.

Sincerely,

Jim

Dictated but not read.

James G. Vazzana, Esq.
Wiedman, Vazzana, Corcoran & Volta, P.C.
5 South Fitzhugh Street
Rochester, New York  14614

Disclaimer/Confidentiality Notice:
    This transmission, including any attachments, is intended to be delivered and designated solely for delivery to the names addressee(s) and may contain information that is confidential, propriety, attorney work product and/or attorney/client privileged matter. Any unauthorized review, use, disclosure, copying, distribution or the taking of any action because of this information is prohibited.  Any unauthorized person or unintended recipient of this electronic communication is strictly prohibited from using, disclosing, copying, distributing and/or taking any action in connection with the same and should immediately notify the sender of this matter and immediately delete the electronic communication and send an email to the sender and the sender by telephone (585) 454-5850 extension 115 to obtain instructions as to the disposal of the transmitted material.  In no event shall this material be read, used, copies, reproduced, stored or retained by anyone other than the named addressee(s), except with the express written consent of the sender or the named addressee(s).

CNB-PL0055

## LaRocca, Lorisa D.

| | |
|---|---|
| **From:** | Jim Vazzana <jgvazzana@frontiernet.net> |
| **Sent:** | Tuesday, March 14, 2017 11:58 AM |
| **To:** | ssennett@nycourts.gov |
| **Cc:** | LaRocca, Lorisa D. |
| **Subject:** | FW: Send data from TOSHIBA4505AC [PDF_E-MAIL]  03/14/2017 11:52 |
| **Attachments:** | DOC031417.pdf |

Sarah:

Cover letter and executed Notice of Retainer and Appearance on the Final
Accounting of Canandaigua National Bank  for Trust under will of Allen Eber
is attached (File No. 1970-1952).  I tried e-filing this but the system said
that there was no prior e-filings.  Hope this is sufficient.

James G. Vazzana, Esq.

Wiedman, Vazzana, Corcoran & Volta, P.C.
5 South Fitzhugh Street
Rochester, New York  14614

Disclaimer/Confidentiality Notice:
        This transmission, including any attachments, is intended to be
delivered and designated solely for delivery to the names addressee(s) and
may contain information that is confidential, propriety, attorney work
product and/or attorney/client privileged matter. Any unauthorized review,
use, disclosure, copying, distribution or the taking of any action because
of this information is prohibited.  Any unauthorized person or unintended
recipient of this electronic communication is strictly prohibited from
using, disclosing, copying, distributing and/or taking any action in
connection with the same and should immediately notify the sender of this
matter and immediately delete the electronic communication and send an email
to the sender and the sender by telephone (585) 454-5850 extension 115 to
obtain instructions as to the disposal of the transmitted material.  In no
event shall this material be read, used, copies, reproduced, stored or
retained by anyone other than the named addressee(s), except with the
express written consent of the sender or the named addressee(s).


-----Original Message-----
From: weidmanscanner@frontier.net [mailto:weidmanscanner@frontier.net]
Sent: Tuesday, March 14, 2017 11:53 AM
To: aswicker@frontiernet.net
Subject: Send data from TOSHIBA4505AC [PDF_E-MAIL] 03/14/2017 11:52

Scanned from TOSHIBA4505AC



PLAINTIFF'S
EXHIBIT

**137**

1

CNB-PL0029

Suzanne
PDF_E-MAIL
Date:03/14/2017 11:52
Pages:2
Resolution:300x300 DPI
----------------------------------------

CNB-PL0030

WIEDMAN, VAZZANA, CORCORAN & VOLTA, P.C.

ATTORNEYS AND COUNSELLORS

5 SOUTH FITZHUGH STREET

ROCHESTER, NEW YORK 14614

TELEPHONE (585) 454-5850

FACSIMILE (585) 454-1273

FREDERICK WIEDMAN (1957)
FREDERICK WIEDMAN, JR. (1999)
———
JAMES G. VAZZANA
CHRISTOPHER H. CORCORAN
SANDRA E. VOLTA*

*ALSO ADMITTED IN FLORIDA

PARALEGALS
JOANNE LAMAGNA
AMANDA L. BACH

March 13, 2017

Monroe County Surrogate's Court
541 Hall of Justice
99 Exchange Street
Rochester NY 14614-2186

Re:   Final Accounting of Canandaigua National Bank
      As Successor Co-Trustee of Residuary Trust under
      The Will of Allen Eber dated October 27, 1969
      File No.: 1970-1952

Gentlemen:

Enclosed herewith is Notice of Retainer and Appearance (with Authorization), to record my representation of Lester Eber in the above Final accounting matter.

I attempted to e-file this but there was an indication that no prior e-filings had been done on this estate.

Very truly yours,

WIEDMAN, VAZZANA, CORCORAN & VOLTA, P.C.

James G. Vazzana

JGV/m
encl.

CNB-PL0031

**SURROGATE'S COURT OF THE STATE OF NEW YORK – ONTARIO COUNTY**

IN THE MATTER OF FINAL ACCOUNTING OF
THE CANANDAIGUA NATIONAL BANK AND TRUST COMPANY,
AS SUCCESSOR CO-TRUSTEE OF RESIDUARY TRUST
UNDER THE WILL OF ALLEN EBER DATED OCTOBER 27, 1969

**NOTICE OF RETAINER
AND APPEARANCE
(WITH AUTHORIZATION)**

FILE NO. 1970-1952

TO THE SURROGATE'S COURT and to Lorisa D. LaRocca, , attorney for petitioner in this proceeding:

Please take notice that *[Name of each person being represented]* _LESTER EBER_ who is interested in the above captioned proceeding as *[state interest]* trust beneficiaries is represented by the undersigned attorney or law firm, and that I or my firm has been retained by the above interested person and hereby appear as attorney for him in this proceeding.

Dated: March 7, 2017

Signature: _____
Firm Name: Wiedman, Vazzana, Corcoran & Volta, PC
Address:   5 South Fitzhugh Street
           Rochester, New York 14614
Telephone No. (585) 454-5850

**AUTHORIZATION FOR COUNSEL TO APPEAR**
*[This authorization must be signed by each person appearing who has not been served with a citation or who does not
personally appear in court and identify himself to the Surrogate as a matter of record.]*

Please take notice the undersigned, interested in the above captioned proceeding as trust beneficiaries,

LESTER EBER

Personally appears herein and retains, authorizes and empowers James G. Vazzana, Esq., Wiedman, Vazzana, Corcoran & Volta, P.C. attorney-at-law to appear as attorney herein and to represent the undersigned in all matters connected in the above entitled proceeding.   No powers of attorney, assignments or any other similar instruments containing an expressed or implied authorization or delegation of power to act thereunder on behalf of the undersigned has been executed by any of the undersigned concerning the interest of the undersigned in the above estate.

_____
LESTER EBER

STATE OF NEW YORK      )
COUNTY OF Nassau       ) ss.:

On this 15 day of March _____, 2017, before me, the undersigned, personally appeared LESTER EBER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and he acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of whom the individual acted, executed the instrument.

_____
Notary Public
My Commission Expires:
*{Affix stamp or seal}*

KAREN E KEEGAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01KE6239535
Qualified in Suffolk County
My Commission Expires April 18, 2019

CNB-PL0032

*On the Date Written Below LETTERS are Granted by the Surrogate's Court, State of New York as follows:*

Name of Decedent:  **Allen Eber**                              File #:  **1970DT01952/C**

Domicile of Decedent:  **County Of Monroe**                    Date of Death:  **July 24, 1970**

Fiduciary Appointed:  **Canandaigua National Bank & Trust**
Mailing Address       **Company**
                      1150 Pittsford-Victor Road
                      Pittsford NY  14534

Letters Issued:       **SUCCESSOR LETTERS OF TRUSTEESHIP**

Limitations:          **NONE**

THESE LETTERS, granted pursuant to a decree entered by the court, authorize and empower the above-named fiduciary or fiduciaries to perform all acts requisite to the proper administration and disposition of the estate/trust of the Decedent in accordance with the decree and the laws of New York State, subject to the limitations and restrictions, if any, as set forth above.

Dated:  **July 23, 2007**



IN TESTIMONY WHEREOF,  the seal of the Monroe Surrogate's Court has been affixed.

WITNESS, Hon Edmund A Calvaruso, Judge of the Monroe  Surrogate's Court.

Hon. Edmund A Calvaruso

*These Letters are Not Valid Without the Raised Seal of the Monroe County Surrogate's Court*

**Attorney for the Estate:**
**John T Fitzgerald Jr**
**Nixon Peabody Llp**
Clinton Square P.O. Box 31051
Rochester NY  14603
Telephone: (585) 263-1357

PLAINTIFF'S
EXHIBIT

**138**

**CNB0000219**