**Revised Exhibit C-1**

**Eder-Goodman Transaction**
**(as of January 29, 2008)**

| | | |
|---|---|---|
| [1] | Total Price | $4,500,000 |
| [2] | Premium for additional rights | $1,369,565 |
| [3] | Adjusted Price ($P_C$) | $3,130,435 |
| [4] | Percentage Ownership (%) | 15% |
| [5] | Equity ($E_C$) | $20,869,565 |
| [6] | Debt ($D_C$) | $10,870,421 |
| [7] | Cash ($C_C$) | $6,144,197 |
| [8] | Enterprise Value ($EV_C$) | $25,595,789 |
| [9] | Revenue ($R_C$) | $43,244,059 |
| [10] | Enterprise Value/Revenue Multiple ($EV_C/R_C$) | 0.59 |
| [11] | Multiple Adjustment ($EV_M/RM^V \div EV_M/RM^C$) | 0.88 |
| [12] | Adjusted Enterprise Value/Revenue Multiple ($AEV_C/R_C$) | 0.52 |
| [13] | Revenue for Eber-CT ($R_S$) | $36,383,755 |
| [14] | Implied Enterprise Value for Eber-CT ($EV_S$) | $19,036,083 |
| [15] | Debt for Eber-CT ($D_S$) | $3,590,000 |
| [16] | Preferred for Eber-CT ($P_S$) | $4,500,000 |
| [17] | Cash for Eber-CT ($C_S$) | $586,188 |
| [18] | Market Value of Equity for Eber-CT ($E_S$) | $11,532,271 |

PLAINTIFF'S
EXHIBIT

**139**

## Revised Exhibit C-1

**Notes:**

\* The terms here are based on those described in the Report, ¶57.

[1]   Purchase price.  EB-00016856.

[2]   = [1] minus [1] / (1 + 25%) / (1 + 15%) where 25% represents the rights of priority premium and 15% represents the ROFR premium.  *See*  Report, Section VII.B.ii. for a description of the rights of priority and ROFR value.

[3]   = [1] - [2].

[4]   Percent of company sold.  EB-00016856.

[5]   = [3] / [4].

[6]   Debt outstanding near time of transaction, consisting of: $1.5 million line of credit, plus $7.6 million Due to Affiliate, less $1.7 million Due from Affiliate, less $0.95 million Due to Affiliate capitalized to equity.  EB-00019485-7.  Also includes the $4.5 million preferred-like security from Eder-Goodman.

[7]   Fiscal year 2007 cash prior to transaction of $0.144 million.  EB-00019485.  Also includes the $1.5 million line of credit and $4.5 million cash received from Eder-

[8]   = [5] + [6] - [7].

[9]   Fiscal year 2008 revenue.  EB-00019487.

[10]  = [8] / [9].

[11]  Change in market multiples from 1/29/2008 (8.10) to 5/23/2012 (7.16).  Only companies that have multiples on both dates are used.  Source: Capital IQ.

[12]  = [10] x [11].

[13]  Fiscal year 2012 revenue.  EB-00019515.

[14]  = [12] x [13].

[15]  Fiscal year 2012 debt outstanding near Valuation Date.  EB-00019514.  The items included are: Demand note payable of $0.5 million; Current portion of term note payable of $0.206 million; and Term note payable, net of current portion of $2.9 million.

[16]  Eder-Goodman preferred equity position.

[17]  Fiscal year 2012 cash near Valuation Date.  EB-00019513.

[18]  = [14] - [15] - [16] + [17], as of May 23, 2012.

**Revised Exhibit C-2**

**Southern Wine & Spirits Offer**
**(as of August 29, 2007)**

| | | |
|---|---|---|
| [1] | Total Price | $3,000,000 |
| [2] | Premium for additional rights | $391,304 |
| [3] | Adjusted Price ($P_C$) | $2,608,696 |
| [4] | Percentage Ownership (%) | 15% |
| [5] | Equity ($E_C$) | $17,391,304 |
| [6] | Debt ($D_C$) | $7,320,849 |
| [7] | Cash ($C_C$) | $1,644,197 |
| [8] | Enterprise Value ($EV_C$) | $23,067,956 |
| [9] | Revenue ($R_C$) | $42,386,508 |
| [10] | Enterprise Value/Revenue Multiple ($EV_C/R_C$) | 0.54 |
| [11] | Multiple Adjustment ($EV_M/RM^V \div EV_M/RM^C$) | 0.84 |
| [12] | Adjusted Enterprise Value/Revenue Multiple ($AEV_C/R_C$) | 0.46 |
| [13] | Revenue for Eber-CT ($R_S$) | $36,383,755 |
| [14] | Implied Enterprise Value for Eber-CT ($EV_S$) | $16,695,033 |
| [15] | Debt for Eber-CT ($D_S$) | $3,590,000 |
| [16] | Preferred for Eber-CT ($P_S$) | $4,500,000 |
| [17] | Cash for Eber-CT ($C_S$) | $586,188 |
| [18] | Market Value of Equity for Eber-CT ($E_S$) | $9,191,221 |

## Revised Exhibit C-2

**Notes:**

\* The terms here are based on those described in the Report, ¶57.

[1]   Offer price.  *See*  letter from Lester Eber to Mr. Lee F. Hager of Southern dated August 29, 2007.

[2]   = [1] / (1 + 15%) where 15% represents the ROFR premium.  See Report, Section VII.B.ii. for a description of the ROFR value.

[3]   = [1] - [2].

[4]   Percent of company negotiated to be potentially sold.  *See*  letter from Lester Eber to Mr. Lee F. Hager of Southern dated August 29, 2007.

[5]   = [3] / [4].

[6]   Debt outstanding near time of potential transaction, consisting of: $1.5 million line of credit, plus $7.6 million Due to Affiliate, less $1.7 million Due from Affiliate, less $0.95 million Due to Affiliate capitalized to equity.  EB-00019485-7.

[7]   Fiscal year 2007 cash prior to potential transaction of $0.144 million.  EB-00019485.

[8]   = [5] + [6] - [7].

[9]   Fiscal year 2008 revenue.  EB-00019487.

[10]   = [8] / [9].

[11]   Change in market multiples from 8/29/2007 (8.67) to 5/23/2012 (7.31).  Only companies that have multiples on both dates are used.  Source: Capital IQ.

[12]   = [10] x [11].

[13]   Fiscal year 2012 revenue.  EB-00019515.

[14]   = [12] x [13].

[15]   Fiscal year 2012 debt outstanding near Valuation Date.  EB-00019514.  The items included are: Demand note payable of $0.5 million; Current portion of term note payable of $0.206 million; and Term note payable, net of current portion of $2.9 million.

[16]   Eder Goodman preferred equity position.

[17]   Fiscal year 2012 cash near Valuation Date.  EB-00019513.

[18]   = [14] - [15] - [16] + [17], as of May 23, 2012.

**Revised Exhibit D**
**Market Value of Equity for Eber Metro and Eber W&L**

| Year | | Farmer Bros. Co. 2012 | Polebridge Bowman 2010 | Eder-Goodman 2008 | Southern Offer 2007 | Prospect Beverages 2001 |
|---|---|---|---|---|---|---|
| Eber-CT Market Value of Equity | [1] | $1,590,284 | $5,942,579 | $11,532,271 | $9,191,221 | $695,507 |
| Eber Metro's Ownership | [2] | $1,478,029 | $5,523,103 | $10,718,229 | $8,542,429 | $646,413 |
| Eber Metro Liabilities | [3] | $11,138,680 | $11,138,680 | $11,138,680 | $11,138,680 | $11,138,680 |
| Eber Metro - Other Assets | [4] | $360,728 | $360,728 | $360,728 | $360,728 | $360,728 |
| **Eber Metro Market Value of Equity** | [5] | ($9,299,923) | ($5,254,849) | ($59,724) | ($2,235,523) | ($10,131,540) |
| Eber W&L Liabilities | [6] | $11,465,629 | $11,465,629 | $11,465,629 | $11,465,629 | $11,465,629 |
| Eber W&L - Other Assets | [7] | $362,979 | $362,979 | $362,979 | $362,979 | $362,979 |
| **Eber W&L Market Value of Equity** | [8] | ($9,624,621) | ($5,579,547) | ($384,421) | ($2,560,221) | ($10,456,237) |

**Notes:**
[1] See respective Exhibit C and Revised Exhibits C, line [18], for estimate of Eber-CT market value of equity as of Valuation Date.
[2] = 79%/85% multiplied by [1].
[3] Eber Metro Liabilities.  See figure in Report, Section VI.
[4] Eber Metro - Other Assets.  See figure in Report, Section VIII.
[5] = respective [2] minus [3] plus [4].
[6] Eber W&L Liabilities.  See figure in Report, Section VI.
[7] Eber W&L - Other Assets.  See figure in Report, Section VIII.
[8] = respective [2] minus [6] plus [7].

Forensic Economics, Inc.

# GUARANTY

THIS GUARANTY is executed as of February 26, 2010 by **EBER BROS. WINE AND LIQUOR CORPORATION ("Parent" or the "Guarantor")** in favor of **LESTER EBER (the "Lender")**.

      1.    THE GUARANTY.  For valuable consideration, Guarantor hereby unconditionally guarantees and promises to pay promptly to Lender, or order, in lawful money of the United States, any and all Indebtedness to Lender when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter. This Guaranty is cumulative and does not supersede any other outstanding guaranties, and the liability of Guarantor under this Guaranty is exclusive of Guarantor's liability under any other guaranties signed by Guarantor.

      2.    DEFINITIONS.

      (a)    **"Borrower"** shall mean Eber Bros. Wine & Liquor Metro, Inc., a New York corporation.

      (b)    **"Indebtedness"** shall mean any and all debts, liabilities, and obligations of Borrower and Guarantor to Lender arising under the Transaction Documents, now or hereafter existing, whether voluntary or involuntary and however arising, whether direct or indirect or acquired by Lender by assignment, succession, or otherwise, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, held or to be held by Lender for its own account or as agent for another or others, whether Borrower or Guarantor may be liable individually or jointly with others, whether recovery upon such debts, liabilities, and obligations may be or hereafter become barred by any statute of limitations, and whether such debts, liabilities, and obligations may be or hereafter become otherwise unenforceable. Indebtedness includes, without limitation, any and all obligations of Borrower and Guarantor to Lender for reasonable attorneys' fees and all other costs and expenses incurred by Lender in the collection or enforcement of any debts, liabilities, and obligations of Borrower and Guarantor to Lender.

      (c)    **"Note"** means that certain Line of Credit Note dated as of February 26, 2010 executed by Borrower in favor of the Secured Party in the maximum principal amount of $1,500,000, as amended, restated, supplemented or otherwise modified from time to time.

      (d)    **"Security Agreement"** means the Security Agreement dated as of the date hereof executed by the Borrower and Guarantor in favor of Lender, as amended, restated, supplemented or otherwise modified from time to time.

      (e)    **"Transaction Documents"** means the Note, the Guaranty and each other document, instrument and agreement executed in connection therewith.

~Doc# 1142695~

PLAINTIFF'S
EXHIBIT

**140**

CNB000045

Capitalized terms used but not defined herein have the meanings given such terms in the Note or the Guaranty, as applicable.

3.    OBLIGATIONS INDEPENDENT.    The obligations of Guarantor are independent of the obligations of Borrower or any other guarantor, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.  Anyone executing this Guaranty shall be bound by its terms without regard to execution by anyone else.

4.    RIGHTS OF LENDER.  Guarantor authorizes Lender, without notice or demand and without affecting its liability hereunder, from time to time to:

(a)    make additional advances on the Indebtedness or renew, compromise, extend, accelerate, or otherwise change the time for payment, or otherwise change the terms, of the Indebtedness or any part thereof, including increase or decrease of the rate of interest thereon, or otherwise change the terms of any Transaction Documents;

(b)    receive and hold security for the payment of this Guaranty or any Indebtedness and exchange, enforce, waive, release, fail to perfect, sell, or otherwise dispose of any such security;

(c)    apply such security and direct the order or manner of sale thereof as Lender in its discretion may determine; and

(d)    release or substitute any guarantor or any one or more of any endorsers or other guarantors of any of the Indebtedness.

5.    GUARANTY TO BE ABSOLUTE.    Guarantor agrees that until the Indebtedness has been paid in full and any commitments of Lender or facilities provided by Lender with respect to the Indebtedness have been terminated, Guarantor shall not be released by or because of the taking, or failure to take, any action that might in any manner or to any extent vary the risks of Guarantor under this Guaranty or that, but for this paragraph, might discharge or otherwise reduce, limit, or modify Guarantor's obligations under this Guaranty.  Guarantor waives and surrenders any defense to any liability under this Guaranty based upon any such action, including but not limited to any action of Lender described in the immediately preceding paragraph of this Guaranty.  It is the express intent of Guarantor that Guarantor's obligations under this Guaranty are and shall be absolute and unconditional.

- 2 -

CNB000046

6.    GUARANTOR'S WAIVERS OF CERTAIN RIGHTS AND CERTAIN DEFENSES.  Guarantor waives:

        (a)    any right to require Lender to proceed against Borrower or any other Guarantor, proceed against or exhaust any security for the Indebtedness, or pursue any other remedy in Lender's power whatsoever;

        (b)    any defense arising by reason of any disability or other defense of Borrower, or the cessation from any cause whatsoever of the liability of Borrower;

        (c)    any defense based on any claim that Guarantor's obligations exceed or are more burdensome than those of Borrower or any other Guarantor; and

        (d)    the benefit of any statute of limitations affecting Guarantor's liability hereunder.

No provision or waiver in this Guaranty shall be construed as limiting the generality of any other waiver contained in this Guaranty.

7.    WAIVER OF SUBROGATION.  Guarantor forever waives to the extent permitted by applicable law any right of subrogation, reimbursement, indemnification, and contribution (contractual, statutory, or otherwise) including, without limitation, any claim or right of subrogation under the Bankruptcy Code (Title 11, United States Code) or any successor statute (the **"Bankruptcy Code"**), arising from the existence or performance of this Guaranty, and Guarantor waives to the extent permitted by applicable law any right to enforce any remedy that Lender now has or may hereafter have against Borrower or any other Guarantor, and waives any benefit of, and any right to participate in, any security now or hereafter held by Lender.

8.    WAIVER OF NOTICES.  Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of intent to accelerate, notices of acceleration, notices of any suit or any other action against Borrower or any other person, any other notices to any party liable on any Transaction Document, notices of acceptance of this Guaranty, notices of the existence, creation, or incurring of new or additional Indebtedness to which this Guaranty applies or any other Indebtedness of Borrower to Lender, and notices of any fact that might increase Guarantor's risk.

9.    SECURITY.   To secure all of Guarantor's obligations hereunder, Guarantor assigns and grants to Lender a security interest in all moneys, securities, and other property of Guarantor now or hereafter in the possession of Lender and all proceeds thereof. Upon default or breach of any of Guarantor's obligations to Lender, Lender may apply any of the foregoing to reduce the Indebtedness, and may foreclose any collateral as provided in the Uniform Commercial Code as in effect in any applicable jurisdiction and in any security agreements between Lender and Guarantor.

10.    SUBORDINATION. Any obligations of Borrower to Guarantor, now or hereafter existing are hereby subordinated to the Indebtedness.  In addition to Guarantor's waiver

CNB000047

of any right of subrogation as set forth in this Guaranty with respect to any obligations of Borrower to Guarantor as subrogee of Lender, Guarantor agrees that, if Lender so requests, Guarantor shall not demand, take, or receive from Borrower, by setoff or in any other manner, payment of any other obligations of Borrower to Guarantor until the Indebtedness has been paid in full and any commitments of Lender or facilities provided by Lender with respect to the Indebtedness have been terminated.  If any payments are received by Guarantor in violation of such waiver or agreement, such payments shall be received by Guarantor as trustee for Lender and shall be paid over to Lender on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty. Any security interest, lien, or other encumbrance that Guarantor may now or hereafter have on any property of Borrower is hereby subordinated to any security interest, lien, or other encumbrance that Lender may have on any such property.

11.     REVOCATION OF GUARANTY.

(a)     This Guaranty may be revoked at any time by Guarantor in respect to future transactions.  Such revocation shall be effective upon actual receipt by Lender, at the address for notices provided herein or at such other address as may have been provided to Guarantor by Lender, of written notice of revocation.  Revocation shall not affect any of Guarantor's obligations or Lender's rights with respect to transactions committed or entered into prior to Lender's receipt of such notice, regardless of whether or not the Indebtedness related to such transactions, before or after revocation, has been incurred, renewed, compromised, extended, accelerated, or otherwise changed as to any of its terms, including time for payment or increase or decrease of the rate of interest thereon, and regardless of any other act or omission of Lender authorized hereunder. Revocation by Guarantor shall not affect any obligations of any other guarantor.

(b)     Guarantor acknowledges and agrees that this Guaranty may be revoked only in accordance with the foregoing provisions of this paragraph and shall not be revoked simply as a result of any change in name, location, or composition or structure of Borrower, the dissolution of Borrower, or the termination, increase, decrease, or other change of any personnel or owners of Borrower.

12.     REINSTATEMENT OF GUARANTY.   If this Guaranty is revoked, returned, or canceled, and subsequently any payment or transfer of any interest in property by Borrower or Guarantor to Lender is rescinded or must be returned by Lender to Borrower or Guarantor, this Guaranty shall be reinstated with respect to any such payment or transfer, regardless of any such prior revocation, return, or cancellation.

13.     STAY OF ACCELERATION.   In the event that acceleration of the time for payment of any of the Indebtedness is stayed upon the insolvency, bankruptcy, or reorganization of Borrower or otherwise, all such Indebtedness guaranteed by Guarantor shall nonetheless be payable by Guarantor immediately if requested by Lender.

- 4 -

~Doc# 1142695~

CNB000048

Further, Lender, unless prohibited by law the provisions of which cannot be waived, may purchase all or any part of the collateral to be sold, free from and discharged of all trusts, claims, rights of redemption and equities of Borrower or Guarantor whatsoever. Guarantor acknowledges and agrees that the sale of any collateral through any nationally recognized broker-dealer, investment banker, or any other method common in the securities industry shall be deemed a commercially reasonable sale under the Uniform Commercial Code or any other equivalent statute or federal law, and expressly waives notice thereof except as provided herein; and

          (c)    set off against any or all liabilities of Guarantor all money owed by Lender or any of its agents or affiliates in any capacity to Guarantor, whether or not due, and also set off against all other liabilities of Guarantor to Lender all money owed by Lender in any capacity to Guarantor. If exercised by Lender, Lender shall be deemed to have exercised such right of setoff and to have made a charge against any such money immediately upon the occurrence of such default although made or entered on the books subsequent thereto.

        18.    NOTICES. Any notice, demand, request, waiver or other communication required by any provision of this Guaranty shall be in writing and may be delivered by personal service, sent by facsimile with confirmation of receipt, sent by a nationally recognized overnight delivery services or sent by registered or certified mail, return receipt requested, with postage thereon fully repaid. All such communications shall be addressed as follows:

| | |
|---|---|
| To Guarantor: | Eber Bros. Wine And Liquor Corporation |
| | 155 Paragon Drive |
| | Rochester, New York 14625 |
| | Attn: _____ |
| | Facsimile: _____ |
| | |
| To Lender: | Lester Eber |
| | 155 Paragon Drive |
| | Rochester, New York 14625 |
| | Attn: _____ |
| | Facsimile: _____ |

Notices sent by (a) first class mail shall be deemed delivered on the earlier of actual receipt or on the fourth business day after deposit in the U.S. mail, postage prepaid, (b) overnight courier shall be deemed delivered on the next business day, and (c) telecopy shall be deemed delivered when transmitted.

        19.    SUCCESSORS AND ASSIGNS. This Guaranty (a) binds Guarantor and Guarantor's successors and assigns, provided that Guarantor may not assign its rights or obligations under this Guaranty without the prior written consent of Lender, and (b) inures to the benefit of Lender and Lender's indorsees, successors, and assigns. Lender may, without notice to Guarantor and without affecting Guarantor's obligations hereunder, sell, assign, grant

~Doc# 1142695~

CNB000049

participations in, or otherwise transfer to any other person, firm, or corporation the Indebtedness and this Guaranty, in whole or in part. Guarantor agrees that Lender may disclose to any assignee or purchaser, or any prospective assignee or purchaser, of all or part of the Indebtedness any and all information in Lender's possession concerning Guarantor, this Guaranty, and any security for this Guaranty.

20.    AMENDMENTS, WAIVERS, AND SEVERABILITY. No provision of this Guaranty may be amended or waived except in writing. No failure by Lender to exercise, and no delay in exercising, any of its rights, remedies, or powers shall operate as a waiver thereof, and no single or partial exercise of any such right, remedy, or power shall preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The unenforceability or invalidity of any provision of this Guaranty shall not affect the enforceability or validity of any other provision of this Guaranty.

21.    COSTS AND EXPENSES. Guarantor agrees to pay all reasonable attorneys' fees to the extent permitted by applicable law, and all other costs and expenses that may be incurred by Lender (a) in the enforcement of this Guaranty or (b) in the preservation, protection, or enforcement of any rights of Lender in any case commenced by or against Guarantor or Borrower under the Bankruptcy Code.

22.    GOVERNING LAW AND JURISDICTION. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of laws principles which would require the application of the laws of a different state.

23.    CONSENT TO JURISDICTION. GUARANTOR, AND LENDER BY ACCEPTING THIS GUARANTY, HEREBY AGREE THAT THE FEDERAL COURT OF THE WESTERN DISTRICT OF NEW YORK OR, AT THE OPTION OF LENDER, ANY COURT LOCATED IN THE STATE OF NEW YORK SHALL HAVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN GUARANTOR AND LENDER PERTAINING DIRECTLY OR INDIRECTLY TO THIS GUARANTY OR ANY OTHER CAUSE OR DISPUTE WHATSOEVER BETWEEN GUARANTOR AND LENDER OF ANY KIND OR NATURE. GUARANTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED IN SUCH COURTS, HEREBY WAIVING PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREEING THAT SERVICE OF SUCH SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED ADDRESSED TO GUARANTOR AT THE ADDRESS OF GUARANTOR FOR NOTICES SET FORTH HEREIN. SHOULD GUARANTOR FAIL TO APPEAR OR ANSWER ANY SUMMONS, COMPLAINT, PROCESS OR PAPERS SO SERVED WITHIN THIRTY DAYS AFTER THE MAILING THEREOF, IT SHALL BE DEEMED IN DEFAULT AND AN ORDER AND/OR JUDGMENT MAY BE ENTERED AGAINST IT AS PRAYED FOR IN SUCH SUMMONS, COMPLAINT, PROCESS OR PAPERS. THE CHOICE OF FORUM SET FORTH IN THIS SECTION SHALL NOT BE DEEMED TO PRECLUDE THE BRINGING OF ANY ACTION BY LENDER OR THE ENFORCEMENT BY LENDER OF ANY JUDGMENT OBTAINED IN SUCH FORUM IN ANY OTHER APPROPRIATE JURISDICTION. FURTHER, GUARANTOR HEREBY

- 7 -

CNB000050

WAIVES THE RIGHT TO ASSERT THE DEFENSE OF FORUM NON CONVENIENS AND THE RIGHT TO CHALLENGE THE VENUE OF ANY COURT PROCEEDING.

24.    WAIVER OF JURY TRIAL.  GUARANTOR AND LENDER EACH WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER   THIS AGREEMENT OR ANY TRANSACTION DOCUMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS AGREEMENT OR (B) ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.  GUARANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER OR ANY OTHER PERSON INDEMNIFIED UNDER THIS AGREEMENT ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

25.    LIMITATION ON GUARANTOR LIABILITY.

(a)    It is the intent of Guarantor and Lender that Guarantor's maximum liability hereunder shall be (and shall not be in excess of):

(i)    (x)    in a Proceeding commenced by or against Guarantor under the Bankruptcy Code on or within one year from the date on which any of the Indebtedness is incurred, the maximum amount which would not otherwise cause the Indebtedness (or any other obligations of Guarantor to Lender) to be avoidable or unenforceable against Guarantor under (A) Section 548 of the Bankruptcy Code or (B) any state fraudulent transfer or fraudulent conveyance act or statute applied in such case or proceeding by virtue of Section 544 of the Bankruptcy Code; or

(y)    in a Proceeding commenced by or against Guarantor under the Bankruptcy Code subsequent to one year from the date on which any of the Indebtedness is incurred, the maximum amount which would not otherwise cause the Indebtedness (or any other obligations of Guarantor to Lender) to be avoidable or unenforceable against Guarantor under any state fraudulent transfer or fraudulent conveyance act or statute applied in any such case or proceeding by virtue of  Section 544 of the Bankruptcy Code; or

(z)    in a Proceeding commenced by or against Guarantor under any law, statute or regulation other than the Bankruptcy Code (including, without limitation, any other bankruptcy, reorganization, arrangement, moratorium, readjustment of debt, dissolution, liquidation or similar debtor relief laws), the maximum amount which would not otherwise cause the Indebtedness (or any other obligations of Guarantor to Lender) to be avoidable or unenforceable against Guarantor under such law, statute

- 8 -

CNB000051

or regulation including, without limitation, any state fraudulent transfer or fraudulent conveyance act or statute applied in any such case or proceeding.

The substantive laws under which the possible avoidance or unenforceability of the Indebtedness (or any other obligations of Guarantor to Lender) shall be determined in any such case or proceeding shall hereinafter be referred to as the "**Avoidance Provisions.**"

(ii)     To the end set forth in Section 25(a)(i), but only to the extent that the Indebtedness would otherwise be subject to avoidance under the Avoidance Provisions, if Guarantor is not deemed to have received valuable consideration, fair value or reasonably equivalent value for the Indebtedness, or if the Indebtedness would render Guarantor insolvent, or leave Guarantor with an unreasonably small capital to conduct its business, or cause Guarantor to have incurred debts (or to have intended to have incurred debts) beyond its ability to pay such debts as they mature, in each case as of the time any of the Indebtedness are deemed to have been incurred under the Avoidance Provisions, the maximum Indebtedness for which Guarantor shall be liable hereunder shall be reduced to that amount which, after giving effect thereto, would not cause the Indebtedness (or any other obligations of Guarantor to Lender), as so reduced, to be subject to avoidance under the Avoidance Provisions.

(iii)     This Section 25(a) shall be applicable only in connection with a Proceeding brought by or against Guarantor and is intended solely to preserve the rights of Lender hereunder to the maximum extent that would not cause the Indebtedness of Guarantor to be subject to avoidance under the Avoidance Provisions in connection with any such Proceeding.  Neither Guarantor nor any other person or entity shall have any right or claim under this Section 25(a) against Lender that would not otherwise be available to Guarantor or such other person or entity outside of any Proceeding.

For the purposes of the this Section, "**Proceeding**" means any of the following: (a) the Borrower or Guarantor shall commence a voluntary case concerning itself under the Bankruptcy Code or any other applicable bankruptcy laws; (b) any involuntary case is commenced against the Borrower or Guarantor; or a custodian (as defined in the Bankruptcy Code or any other applicable bankruptcy laws) is appointed for, or takes charge of, all or any substantial part of the property of the Borrower or Guarantor; (c) the Borrower or Guarantor commences any other proceedings under any reorganization arrangement, adjustment of debt, relief of debtor, dissolution, insolvency or liquidation or similar law of any jurisdiction whether now or hereafter in effect relating to the Borrower or Guarantor, or any such proceeding is commenced against the Borrower or Guarantor, or the Borrower or Guarantor is adjudicated insolvent or bankrupt; (d) any order of relief or other order approving any such case or proceeding is entered; (e) the Borrower or Guarantor suffers any appointment of any custodian or the like for it or any substantial part of its property; (f) the Borrower or Guarantor makes a general assignment for the benefit of creditors; (g) the Borrower or Guarantor shall fail to pay, or shall state that it is unable to pay, or shall be unable to pay, its debts generally as they become due; (h) the Borrower or

~Doc# 1142695~

**CNB000052**

Guarantor shall call a meeting of its creditors with a view to arranging a composition or adjustment of its debts; (i) the Borrower or Guarantor shall by any act or failure to act indicate its consent to, approval of or acquiescence in any of the foregoing; or (j) any corporate action shall be taken by the Borrower or Guarantor for the purpose of effecting any of the foregoing.

       26.    FINAL AGREEMENT.  BY SIGNING THIS GUARANTY EACH PARTY REPRESENTS AND AGREES THAT:  (A) THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF, (B) THIS GUARANTY SUPERSEDES ANY COMMITMENT LETTER, TERM SHEET, OR OTHER WRITTEN OUTLINE OF TERMS AND CONDITIONS RELATING TO THE SUBJECT MATTER HEREOF, UNLESS SUCH COMMITMENT LETTER, TERM SHEET, OR OTHER WRITTEN OUTLINE OF TERMS AND CONDITIONS EXPRESSLY PROVIDES TO THE CONTRARY, (C) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (D) THIS GUARANTY MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

[SIGNATURES NEXT PAGE]

~Doc# 1142695~

CNB000053

IN WITNESS WHEROF, the parties have executed this Agreement as of the date first set forth above.

EBER     BROS.     WINE     AND     LIQUOR CORPORATION

By: _____

Title: _____

(Seal)

_____
**LESTER EBER**

- 11 -

~Doc# 1142695~

**CNB000054**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

Plaintiffs,

v.

LESTER EBER,
ALEXBAY, LLC f/k/a LESTER EBER, LLC,
CANANDAIGUA NATIONAL CORPORATION d/b/a
CANANDAIGUA NATIONAL BANK AND TRUST,
ELLIOT W. GUMAER, JR.,
EBER BROS. & CO, INC.,
EBER BROS. WINE AND LIQUOR CORP.,
EBER BROS. WINE & LIQUOR METRO, INC.,
EBER CONNECTICUT, LLC, and
WENDY EBER,

Defendants.

Civil Action No.
16-CV-9517(LAK)(KHP)

**SECOND AMENDED
RESPONSES TO PLAINTIFF
LISA STEIN'S FIRST SET
OF INTERROGATORIES TO
DEFENDANT LESTER EBER**

---

Pursuant to the Federal Rules of Civil Procedure, Rule 26(a)(1), Defendant, Lester Eber, by his attorneys, Underberg & Kessler LLP, for his Second Amended Responses to Plaintiff Lisa Stein's First Set of Interrogatories to Defendant Lester Eber (the "Interrogatories"), hereby responds as follows:

### SPECIFIC OBJECTIONS AND RESPONSES

1.   State the basis for your denial of Paragraph 9 of the Complaint.

**Response to No. 1**:  **Paragraph 9 of the Complaint was denied on the basis that Lester Eber does not spend "most" of his time residing in temporary quarters in Manhattan.**

2.   State the basis for your denial of Paragraph 10 of the Complaint.

**Response to No. 2**:  **Paragraph 10 of the Complaint is denied on the basis that Alexbay is holding company, and does not "transact business."**

PLAINTIFF'S EXHIBIT

141

3.     State the basis for your denial of Paragraph 13 of the Complaint.

**Response to No. 3: Paragraph 13 of the Complaint is denied on the basis that the principal place of business is not located at 155 Paragon Drive. Given that Eber Bros is no longer actively operating, it has no principal place of business.**

4.     State the basis for your denial of Paragraph 14 of the Complaint.

**Response to No. 4: Paragraph 14 of the Complaint is denied on the basis that Eber Wine & Liquor has no principal place of business for the same reasons set forth in Response to No. 3 above. It is further denied on the basis that Eber W&L is not a wholly-owned subsidiary of Eber Bros. Eber Bros. is the majority owner of Eber W&L, but both Lester Eber and the Trust have minority interests.**

5.     State the basis for your denial of Paragraph 15 of the Complaint.

**Response to No. 5: Paragraph 15 of the Complaint was denied because Eber Metro was a wholly owned subsidiary of EWLC prior to June 2012 - not 2013. Further, since its New York operations ceased, Eber Metro has not been primarily managed from Manhattan.**

6.     State the basis for your denial of Paragraph 23 of the Complaint.

**Response to No. 6: Paragraph 23 of the Complaint was denied because it is unclear what is meant by the statement that "CNB has been trustee at all relevant times".**

7.     State the basis for your denial of Paragraph 26 of the Complaint.

**Response to No. 7: Paragraph 26 of the Complaint was denied because Lester Eber was not the Chief Executive Officer and Director of Eber Bros., Eber W&L and Eber Metro at all relevant times.**

8.     Identify all persons who have been members of Eber-Conn at any time, including who was managing member.

**Response to No. 8:**   **Eber Bros. Metro Inc. (majority member); Eder-Goodman, LLC; Polebridge Bowman, LLC; Wendy Eber.**

9.      Identify all documents concerning the governance or operation of any Eber Company.

**Response to No. 9:  EWLC: Articles of Incorporation and By-Laws; Eber Bros. & Co., Inc.: Articles of Incorporation and By-Laws; Alexbay, LLC:   Operating Agreement; Eber-CT: Operating Agreement; Eber Metro Inc.: Articles of Incorporation and By-Laws.**

10.      State the basis for your denial of Paragraph 32 of the Complaint.

**Response to No. 10:  See response to No. 4 above.**

11.      Identify all persons with knowledge of the formation of the company now called Alexbay, LLC.

**Response to No. 11:  Lester Eber; Wendy Eber; counsel.**

12.      State whether you or anyone associated with you attempted to inform any of the beneficiaries of the Allen Eber Trust about the 2012 Action (as defined in the Complaint), and, if so, specify each step taken and identify the persons involved and all documents that support your contention.

**Response to No. 12:   Lester Eber met Sally Kleeberg in or about June 2013 at the 800 Maple restaurant in Buffalo, New York.  During dinner, in response to various questions from Sally Kleeberg, Lester Eber advised her that she had no ownership interest in Eber-CT.  In addition, Lester Eber had a conversation with Daniel Kleeberg following the 2012 action confirming that Lester Eber had foreclosed on the stock of Eber Bros. Metro Inc.**

3

13.     Identify all property held by Alexbay, LLC at any time since its formation.

**Response to No. 13:  Eber Bros. Metro Inc.; Cash – various amounts $12,000 or less.**

14.     State the basis for your denial of Paragraph 44 of the Complaint.

**Response to No. 14:  It was an error to deny the allegations in Paragraph 44 of the Complaint.  Lester Eber did not advise any of the plaintiffs of the 2012 action.**

15.     State the basis for your denial of Paragraph 48 of the Complaint.

**Response to No. 15:  Paragraph 48 of the Complaint was denied on the basis that the shares of Eber Metro were transferred to Alexbay on June 5, 2012 – not June 5, 2013.**

16.     Identify all documents that support your denial of Paragraph 50 of the Complaint, including all documents that support the existence and amount of each debt that was allegedly owed to you or to Alexbay according to the 2012 Action, as described in Paragraph 49 of the Complaint.

**Response to No. 16:    See Documents submitted to Judge Rosenbaum in connection with the 2012 Proceeding.  More specifically:**

- **February 11, 2011 Debt Assumption Agreement**
- **October 2009 Line of Credit Note**
- **February 26, 2010 Guaranty**
- **February 26, 2010 Security Agreement**
- **January 18, 2012 Assignment of Note and Security Agreement**
- **Notice to Debtor**

17.     Identify all persons who have knowledge of the debts described in Paragraph 49 of the Complaint.

4

**Response to No. 17:** **Lester Eber, Wendy Eber, Elliot Gumaer, Richard Hawkes, John Ryan, Lisa Semenick, Sumner Pearsall, Davie Kaplan, CPA, P.C., and Daniel Kleeberg.**

18.     State the basis for your denial of Paragraph 55 of the Complaint, and if because the assignment was executed before the 2012 Action was filed, identify all documents and persons that you believe will support your contention.

**Response to No. 18:** **Paragraph 55 of the Complaint was denied on the basis that the assignments were executed by Lester Eber before the 2012 action was filed. Lester and Wendy Eber will testify regarding same and copies are attached.**

19.     State the basis for your denial of Paragraph 56 of the Complaint.

**Response to No. 19: Paragraph 56 of the Complaint was denied on the basis that plaintiffs were kept apprised of the general state of affairs of the Eber businesses subsequent to 2007. More specifically, Daniel Kleeberg was consulting for Eber W&L, and received consulting fees from Eber W&L as the company winded down its business. Mr. Kleeberg was well aware that Eber W&L was winding down and had outstanding liabilities to many vendors (including the Benderson properties debt, which he and his mother, Sally Kleeberg, attempted to settle, and that Lester Eber was loaning money into Eber W&L to pay these debts). In addition, Mr. Kleeberg knew about Eber W&L legacy issues, including potential pension liabilities. Further, both Wendy and Lester Eber had many conversations with Mr. Kleeberg regarding the state of the business when he was transacting business for Camu, Paqui Tequila, and Cannon Vodka in their dealings with Eber-CT, LLC.**

20.     State the basis for your denial of Paragraph 59 of the Complaint.

**Response to No. 20:**  **Paragraph 59 of the Complaint was denied on the basis that it asks for an admission regarding what CNB's December 18, 2012 letter allegedly implies.**

21.     State the basis for your denial of Paragraph 60 of the Complaint.

**Response to No. 21:**  **Paragraph 60 of the Complaint was denied on the basis that there was no concealment of the 2012 action, and Lester Eber did not engage in any self-dealing.**

22.     State the basis for your denial of Paragraph 61 of the Complaint.

**Response to No. 22:**  **Paragraph 61 of the Complaint was denied on the basis that, upon information and belief, plaintiffs were advised of the 2012 action prior to 2015 by Marc Stein, Esq.**

23.     State the basis for your denial of Paragraph 64 of the Complaint.

**Response to No. 23:**  **Paragraph 64 of the Complaint was denied on the basis that the transfer of Eber-Conn to Lester was not a fraudulent conveyance and no material facts were withheld from the Court in connection with the 2012 action.**

24.     State the basis for your denial of Paragraph 67 of the Complaint.

**Response to No. 24:**  **Paragraph 67 of the Complaint was denied on the basis that the Eber-Conn transfer was not fraudulent, there was no inconsistency in the debts owed to Lester, there were no false statements made regarding Alexbay, and nothing was concealed from plaintiffs.**

25.     State the basis for your denial of Paragraph 69 of the Complaint.

**Response to No. 25:**  **Paragraph 69 of the Complaint was denied on the basis that a demand to the Eber Bros. Board was a necessary precursor to the filing of the present lawsuit, and Lester Eber would have considered such a demand.**

6

DATED:   July 26, 2018
         Rochester, New York

                                        UNDERBERG & KESSLER LLP

                                        By: _____
                                           Paul F. Keneally, Esq.
                                         Colin D. Ramsey, Esq.
                                         Attorneys for Eber Defendants
                                       300 Bausch & Lomb Place
                                       Rochester, New York 14604
                                       585-258-2800
                                       pkeneally@underbergkessler.com
                                       cramsey@underbergkessler.com

TO:   Brian C. Brook, Esq.
       Daryoush Behbood, Esq.
       Clinton Brook & Peed
       Attorneys for Plaintiffs
       101 Hudson Street, Suite 2100
       Jersey City, New Jersey 07302
       212-256-1957
       brian@clintonbrook.com
       daryoush@clintonbrook.com


       Robert Calihan, Esq.
       Attorney for Defendant
       Estate of Elliot W. Gumaer, Jr.
       16 East Main Street, Suite 620
       Rochester, New York 14614
       585-232-5291
       rcalihan@calihanlaw.com

       Donald O'Brien, Esq.
       Wood Oviatt Gilman, LLP
       Attorneys for Defendant
       Canandaigua National Corporation
       d/b/a Canandaigua National Bank
       2 State Street
       Rochester, New York 14614
       585-987-2800
       dobrien@woodsoviatt.com

# V E R I F I C A T I O N

STATE OF _____        )
COUNTY OF _____       ) ss:

     **LESTER EBER**, being duly sworn, deposes and says that:  he is one of the

Defendants in the within action; that deponent has read the foregoing Second Amended

Responses to Plaintiff Lisa Stein's First Set of Interrogatories to Defendant Lester Eber

and knows the contents thereof, and that the same is true to deponent's own knowledge,

except as to those matters stated therein to be alleged upon information and belief, and

that as to those matters deponent believes it to be true.


                                  _____
                                          **Lester Eber**

Sworn to before me this
_____ day of July, 2018.


_____
      Notary Public

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

                Plaintiffs,

      v.

                                          Civil Action No. 16-CV-9517(LAK)

LESTER EBER,
ALEXBAY, LLC f/k/a LESTER EBER, LLC,
CANANDAIGUA NATIONAL CORPORATION d/b/a
CANANDAIGUA NATIONAL BANK AND TRUST,      **SECOND AMENDED RESPONSES**
ELLIOT W. GUMAER, JR.,                            **TO PLAINTIFF DANIEL KLEEBERG'S**
EBER BROS. & CO, INC.,                           **FIRST SET OF INTERROGATORIES**
EBER BROS. WINE AND LIQUOR CORP.,          **TO DEFENDANT LESTER EBER**
EBER BROS. WINE & LIQUOR METRO, INC.,
EBER CONNECTICUT, LLC, and
WENDY EBER,

                Defendants.

---

    Pursuant to the Federal Rules of Civil Procedure, Rule 26(a)(1), Defendant, Lester

Eber, by his attorneys, Underberg & Kessler LLP, for his Second Amended Responses

to Plaintiff Daniel Kleeberg's First Set of Interrogatories to Defendant Lester Eber (the

"Interrogatories"), hereby responds as follows:

**SPECIFIC OBJECTIONS AND RESPONSES**

    1.    Identify all your sources of income since 2007 by year:

**Response to No. 1:**

**2007:  Eber Brothers Wine & Liquor Corp. ("Eber Bros."); Southern Wine & Spirits**
**2008:  Eber Bros.; Southern Wine & Spirits; Eber-CT**
**2009:  Eber-CT; Southern Wine & Spirits**
**2010:  Eber-CT; Southern Wine & Spirits**
**2011:  Eber-CT; Southern Wine & Spirits**
**2012:  Eber-CT; Southern Wine & Spirits; Slocum of ME**
**2013:  Eber-CT; Southern Wine & Spirits; Slocum of ME**



PLAINTIFF'S
EXHIBIT

**142**

**2014:  Eber-CT; Southern Wine & Spirits; Slocum of ME**
**2015:  Eber-CT; Southern Wine & Spirits; Slocum of ME**
**2016:  Eber-CT; Southern Wine & Spirits; Slocum of ME**

2.     As to each related party transaction (as defined by GAAP, including ASC 850) that you entered into with any Eber Company, including each loan, identify each person with whom you communicated about the transaction before it was consummated and state whether that person specifically approved or disapproved of the transaction.

<u>**Response to No. 2:**</u>

- **Eber Bros. Metro Inc. Line of Credit Note up to $1,500,000 (Oct. 2009)**
  - **People contacted about the transaction before it was assumed by Eber Bros. Metro Inc.:  Lester Eber, Wendy Eber, and Elliott Gumaer.**
  - **Loan was authorized by unanimous written consent of Metro Board. On Feb 26, 2010 Board meeting of Eber Bros. Metro Inc. approved loans (Lester Eber abstained from voting).**

- **Foreclosure of lien on capital stock of Metro Inc. by Alexbay**
  - **People contacted about the transaction before it was consummated: Wendy Eber, Elliott Gumaer, and counsel.  Notice sent to Wendy Eber. Board minutes documenting decision to waive defenses March 13, 2012 and thereafter: Wendy Eber and Elliott Gumaer.**

- **EBWLC- Promissory Note March 1, 2012-$203,000**
  - **Approved by Wendy Eber.**

- **Promissory Note Eber-CT, LLC**

- **March 13, 2006 Amended and Restated Promissory Note- $1,503,750**
  - **Communicated to and approved by John Ryan and Lester Eber.**

- **March 13, 2006 Amended and Restated Promissory Note- $575,800**
  - **Communicated to and approved by John Ryan and Lester Eber.**

- **October 1, 2002 Promissory Note- $575,895**
  - **Communicated to and approved by John Ryan and Lester Eber**

- **Lester Eber advanced amounts from his own funds to pay the following liabilities:**

  o **Union Withdrawal Liabilities and legal Fees: Communicated to and approved by Wendy Eber in 2013**
  o **Wolf Concept Settlement: Communicated to and approved by Wendy Eber in 2011**
  o **Benderson Settlement and legal Fees: Communicated to and approved by Wendy Eber in 2016**
  o **Harris Beach Settlement and legal Fees; Communicated to and approved by Wendy Eber in 2016**
  o **D4 Settlement and legal Fees: Communicated to and approved by Wendy Eber in 2012**
  o **PBGC and some legal fees–partial payment of Settlement Communicated to and approved by Wendy Eber in 2017**

3.      Identify all persons involved in any transaction between any Defendant and Southern, and specify which transaction each person was involved in and his role in the transaction.

<u>Response to No. 3:</u>

- **Settlement of lawsuit and Sale of Delaware and Ohio - Lester Eber, Wendy Eber and Elliott Gumaer (Directors authorizing transaction)[2007].**

- **Alexbay, LLC v. EWLC, Southern Wine and Spirits, State of NY Supreme Court- Lester Eber (Sole member of Alexbay)[2012].**

4.      Identify all positions of full or part-time employment and the dates of such employment since 1970.

<u>Response to No. 4:</u>

- **Eber Bros Wine and Liquor Corporation, President-1970 to 2008**
- **Eber-CT, LLC, President - 2005 to 2013, CEO 2013- present**

5.      Identify all businesses in which you have been a member, partner, officer, or director since 1970.

3

**Response to No. 5:**

**Eber Bros. and Co., EWLC, Eber-CT, LLC, Eber Bros. Wine and Liquor Metro Inc., Eber Metro LLC, ENDC LLC, Slocum of Maine, Alexbay, Eber Acquisition, Eber-RI, LLC, PW&S,LLC, Monroe Display, Inc.**

      6.    Identify all persons who served as Officers or Directors of Eber Bros. since

2000, including their title(s) and dates of service.

**Response to No. 6:**

**Lester Eber, President and Director 2000- present; John Ryan, CFO and Secretary 2000 to unknown; Lisa Semenick, Secretary and CFO unknown to October, 2007; Wendy Eber, Secretary and CFO October 2007 to present; Elliott Gumaer, Director 2000 to 2017.**

      7.    Identify all persons who served as Officers or Directors of Eber W&L since

2000, including their title(s) and dates of service.

**Response to No. 7:**

**Lester Eber, President 2000 to 2012; John Ryan, CFO and Secretary; Lisa Semenick, CFO and Secretary, 2007; Wendy Eber, CFO and Secretary 2007 to 2014; Elliott Gumaer, Director 2000 to 2014 and September 14, 2015- October 1, 2015; Wendy Eber, Assistant Secretary 2014- present.**

      8.    Identify all third parties who have discussed potential investment in any Eber

Company with you or any other Defendant, and specify the dates when such discussions

occurred.

**Response to No. 8:**

**Polebridge Bowman-2010; PBGC-approximately 2014-15; Southern Wine and Spirits-unknown; NDC-unknown; Maglioccos-unknown; Charmer Sun Belt-unknown; Eder Bros, Allen S. Goodman 2007-2008; Allied-approximately 2008; others (names not recalled).**

      9.    Identify all persons you have spoken with concerning the valuation of Eber-

Conn since 2007.

**Response to No. 9:**

**Wendy Eber, Sumner Pearsall, Eric Fry, and counsel.**

10. State the basis for your contention that any causes of action in the Complaint are barred by the applicable statute of limitations, as alleged in your Second Affirmative Defense.

**Response to No. 10:**

**The Eber Defendants included this affirmative defense in order to preserve it. As the litigation is ongoing, the Eber Defendants are not in a position to articulate each and every way in which the Complaint is barred by the statute of limitations. The Eber Defendants will supplement this response as necessary.**

11. State the basis for your contention that any causes of action in the Complaint are barred by the doctrines of waiver, laches and/or estoppel, as alleged in your Third Affirmative Defense.

**Response to No. 11:**

**The Eber Defendants included this affirmative defense in order to preserve it. As the litigation is ongoing, the Eber Defendants are not in a position to articulate each and every way in which the Complaint is barred by the doctrines of waiver, laches and/or estoppel. The Eber Defendants will supplement this response as necessary.**

12. State the basis for your contention that Plaintiffs' complaint is barred by the doctrine of unclean hands, as alleged in your Fifth Affirmative Defense.

**Response to No. 12:**

**The Eber Defendants included this affirmative defense in order to preserve it. As the litigation is ongoing, the Eber Defendants are not in a position to articulate each and every way in which the Complaint is barred by the doctrine of unclean hands. The Eber Defendants will supplement this response as necessary.**

13. Identify all sources and locations of documents that you or your attorneys have searched to respond to the Requests for Production issued to the Eber Defendants by all Plaintiffs on June 22, 2017.

**Response to No. 13:**

**Corporate Records are located at 95 Allens Creek Road, Building 2, Rochester New York and 30 Corporate Drive, North Haven, Connecticut, and electronically including email accounts of Lester Eber, Wendy Eber and Administrative Assistant Janet Lissow.**

14.     Identify all email accounts that you have used (either personal or business)

since 2000.

**Response to No. 14:**

**Leber@eberbros.com**
**Leber@slocumandsons.com**
**Leber@southernwine.com**
**lestereber@gmail.com**


DATED:   July 26, 2018
            Rochester, New York

                                        UNDERBERG & KESSLER LLP

                                        By: _____
                                            Paul F. Keneally, Esq.
                                            Colin D. Ramsey, Esq.
                                            *Attorneys for Eber Defendants*
                                            300 Bausch & Lomb Place
                                            Rochester, New York 14604
                                            (585) 258-2800
                                            pkeneally@underbergkessler.com
                                            cramsey@underbergkessler.com


TO:   Brian C. Brook, Esq.
        Clinton Brook & Peed
        *Attorneys for Plaintiffs*
        100 Church Street, 8th Floor
        New York, New York 10022
        (212) 328-9559
        brian@clintonbrook.com

CC.:   William G. Bauer, Esq.
       Woods Oviatt Gilman
       *Attorneys for Defendant CNB*
       700 Crossroads Building, 2 State Street
       Rochester, New York 14614
       Telephone:  (716) 987-2800
       wbauer@woodsoviatt.com


       Robert Barnes Calihan, Esq.
       Calihan Law PLLC
       *Attorneys for Defendant Gumaer*
       The Powers Building, Suite 761
       16 West Main Street
       Rochester, New York14614
       Telephone:  (585) 232-5291
       rcalihan@calihanlaw.com

STATE OF _____ )
COUNTY OF _____ ) ss:

      **LESTER EBER**, being duly sworn, deposes and says that:  he is one of the

Defendants in the within action; that deponent has read the foregoing Second Amended

Responses to Plaintiff Daniel Kleeberg's First Set of Interrogatories to Defendant Lester

Eber and knows the contents thereof, and that the same is true to deponent's own

knowledge, except as to those matters stated therein to be alleged upon information and

belief, and that as to those matters deponent believes it to be true.


                       _____

                       **Lester Eber**


Sworn to before me this
\_\_\_ day of July, 2018.


_____
      Notary Public



underberg & kessler LLP

PAUL F. KENEALLY, PARTNER
(585) 258-2882
pkeneally@underbergkessler.com

August 17, 2018

***VIA EMAIL AND FIRST CLASS MAIL***

Daryoush Behbood, Esq.
Clinton Brook & Peed
101 Hudson Street
Suite 2100
Jersey City, New Jersey 07302

> Re:   *Daniel Kleeberg, Lisa Stein and Audrey Hays v. Lester Eber, et al.*
>        Civ. Action No.:  16-cv-09517

Dear Mr. Behbood:

Please allow the following to serve as a response to the objections to the Eber Defendants' various discovery responses raised in your July 31, 2018 letter.  I would suggest that rather than continuing the endless parade of objections on relatively minor points, it would be far more efficient for all involved to simply address these minor issues during depositions.  If a written clarification is called for thereafter, so be it.  Nonetheless, please be advised of the following:

- The January 29, 2008 letter from Lester Eber to Lee Hager previously produced is the only copy in possession of the Eber Defendants.  Please be further advised that we do not possess a copy that has been countersigned by Mr. Hager.

- While Mr. Eber's bank record entries unrelated to this case or any of the companies or people referenced in it, we have unredacted these unrelated deposit entries to show names only demonstrating they were not from any Eber entity.  A disc containing same is attached.

- The plain language of the Eber Defendants' response to No. 19 of Plaintiff's First Request for Production of Documents makes clear that all documents were provided despite the objection raised in the response.  However, let this further confirm that no documents were withheld based on that objection.  This is true for the other responses referenced in your letter, namely Wendy Eber's amended response No. 6 to Kleeberg's First Set of Interrogatories, response No. 41 in Eber Defendants' amended responses to Plaintiff's Second Request for Production, and response No. 9 in Eber Defendants' amended responses to Hays' First Set of Interrogatories.

PLAINTIFF'S
EXHIBIT
**143**



*Daryoush Behbood, Esq.*
*August 17, 2018*
*Page 2*

- The following attorneys were retained regarding the foreclosure action: David L. Belt, Esq. of Hurwitz Sagarin Slossberg & Knuff LLC and Paul F. Keneally, Esq., William Brueckner, Esq. and Michael J. Beyma, Esq. of Underberg & Kessler LLP.

- The ownership interests in Eber W&L was as follows:

    o Eber Bros.: 250 preferred; 2000 A common; 438 B common;
    o Trust Beneficiaries: 250 preferred; 379 B common; and
    o Lester Eber: 750 B preferred.

- The following attorney was retained regarding the formation of Alexbay LLC: Jerry Ferrell, Esq.

- Lester Eber's response to Interrogatory No. 25 makes clear that it was Lester Eber's understanding that a demand to the Board was necessary based upon his position on that Board for many years. Contrary to your characterization, this is not a legal conclusion, rather this was Lester Eber's good faith belief based upon his long association with Eber Bros.

Very truly yours,

Paul F. Keneally

PFK:ar
Enclosures
cc(w/encl):     Robert Calihan, Esq. (*w/ enc. via email and First Class Mail*)
                Laura Myers, Esq. (*w/ enc. via email and First Class Mail*)
                Michael J. Adams, Esq. (*w/ enc. via email and First Class Mail*)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

                    Plaintiffs,

        v.

                                Civil Action No.
                                16-CV-9517(LAK)

LESTER EBER,
ALEXBAY, LLC f/k/a LESTER EBER, LLC,
CANANDAIGUA NATIONAL CORPORATION d/b/a
CANANDAIGUA NATIONAL BANK AND TRUST,     **RESPONSES TO PLAINTIFF**
ESTATE OF ELLIOT W. GUMAER, JR.,             **AUDREY HAYS' SECOND SET**
EBER BROS. & CO., INC.,                        **OF INTERROGATORIES TO**
EBER BROS. WINE AND LIQUOR CORP.,        **THE EBER DEFENDANTS**
EBER BROS. WINE & LIQUOR METRO, INC.,
EBER-CONNECTICUT, LLC, and
WENDY EBER,

                    Defendants.

---

       Pursuant to the Federal Rules of Civil Procedure, Rule 26(a)(1), the Eber

Defendants, by their attorneys, Underberg & Kessler LLP, for their Responses to

Plaintiff Audrey Hays' Second Set of Interrogatories to the Eber Defendants (the

"Interrogatories"), hereby respond as follows:

<u>**SPECIFIC OBJECTIONS AND RESPONSES**</u>

       12.    Provide an annual detailed transaction general ledger for each of the Eber

Companies, separated by year, for the years 2007 through the date of trial in this matter, in

Microsoft Excel format.  A sample of such an Excel spreadsheet is attached hereto.

<u>**Response to No. 12**</u>**:  The Eber Defendants object to this interrogatory on the**

**basis that it is not an interrogatory but, rather, a document request.**

       13.    Identify the persons associated with Eder-Goodman who have been your

primary point of contact at or for Eder-Goodman since 2008.

PLAINTIFF'S
EXHIBIT

**144**

**Response to No. 13**:  Andy Eder and David Heller.

14.    Identify all of the affiliates and related parties with whom there were transactions that were referenced in any of the Eber Companies' financial statements since 2005.

**Response to No. 14**:   **The Eber Defendants direct Plaintiffs to previously produced financial records for the Eber Companies.**

15.    Identify the documents concerning each related party transaction referenced in any of the Eber Companies' financial statements since 2005.

**Response to No. 15**:  **See Response to No. 14, above.**

16.    Specify the dates when each of the Eber Defendants engaged Paul Keneally or Underberg & Kessler LLP, and the scope and subject matter of each engagement.  (If an Eber Defendant engaged Paul Keneally or Underberg & Kessler LLP with respect to more than one matter, then each engagement should be separately specified.)

**Response to No. 16**:

- Lester Eber—Estate Planning 2010
- EBWLC—Wolf Concepts Litigation 2010
- EBWLC—M. Madigan Matter 2010
- EBWLC—General Corporate 2011
- EBWLC—Connecticut Judgment 2011
- EBWLC—Collection Matters 2012
- Alexbay, LLC—Foreclosure 2012
- Eber-CT—CNB Refinance 2013
- Eber-CT—Formation of LLC 2013
- Eber-CT—Excise Tax Issue 2013
- Eber-CT—SDNY Litigation 2013

2

DATED:   August 28, 2018
         Rochester, New York

UNDERBERG & KESSLER LLP

By: _____

   Paul F. Keneally, Esq.
   Colin D. Ramsey, Esq.
   Attorneys for Eber Defendants
   300 Bausch & Lomb Place
   Rochester, New York 14604
   585-258-2800
   cramsey@underbergkessler.com
   pkeneally@underbergkessler.com

TO:   Brian C. Brook, Esq.
      Clinton Brook & Peed
      Attorneys for Plaintiffs
      101 Hudson Street, Suite 2100
      Jersey City, NJ 07302
      212-256-1957
      brian@clintonbrook.com

      Robert Calihan, Esq.
      Attorney for Defendant
      Estate of Elliot W. Gumaer, Jr.
      16 West Main Street, Suite 736
      Rochester, New York 14614
      585-232-5291
      rcalihan@calihanlaw.com

3

## VERIFICATION

STATE OF New York    )
COUNTY OF Monroe    ) ss:

LESTER EBER, being duly sworn, deposes and says that:  he is one of the Defendants in the within action; that deponent has read the foregoing Responses to Plaintiff Audrey Hays' Second Set of Interrogatories to the Eber Defendants and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters stated therein to be alleged upon information and belief, and that as to those matters deponent believes it to be true.

_Lester Eber_

**Lester Eber**

Sworn to before me this
27th day of August, 2018.

Notary Public

JULIE V MERSEREAU
NOTARY PUBLIC-STATE OF NEW YORK
No. 02ME4876287
Qualified in Monroe County
My Commission Expires October 20, 2018

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

Plaintiffs,

v.

Civil Action No.
16-CV-9517(LAK)

LESTER EBER,
ALEXBAY, LLC f/k/a LESTER EBER, LLC,
CANANDAIGUA NATIONAL CORPORATION d/b/a
CANANDAIGUA NATIONAL BANK AND TRUST,
ESTATE OF ELLIOT W. GUMAER, JR.,
EBER BROS. & CO., INC.,
EBER BROS. WINE AND LIQUOR CORP.,
EBER BROS. WINE & LIQUOR METRO, INC.,
EBER-CONNECTICUT, LLC, and
WENDY EBER,

**RESPONSES TO PLAINTIFF
DANIEL KLEEBERG'S SECOND
SET OF INTERROGATORIES
TO LESTER EBER**

Defendants.

---

Pursuant to the Federal Rules of Civil Procedure, Rule 26(a)(1), Defendant,

Lester Eber, by his attorneys, Underberg & Kessler LLP, for his Responses to Plaintiff

Daniel Kleeberg's Second Set of Interrogatories to Lester Eber (the "Interrogatories"),

hereby responds as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

15.     Identify everyone who was responsible for or involved in reviewing or approving

of the terms of your consulting agreement with Southern and specify what each such

individual's role was with respect to the consulting agreement (e.g., acting as attorney to you,

a director of Eber W&L, etc.).

**Response to No. 15:**   **Harris Beach PLLC, as attorneys; Elliott Gumaer, as**

**attorney; and Lisa Semenick, Director to Eber W&L.**



PLAINTIFF'S
EXHIBIT

**145**

16.    Identify all documents concerning your consulting agreement with Southern that were disclosed to any of the directors or officers of any of the Eber Companies (excluding Wendy), and identify which directors or officers received each such document and when (if such information is not apparent and correct on the face of each document).

**Response to No. 16: Do not recall.**

17.    Identify the four different distributors that Eber-CT contacted between 2008 and 2012, as described in Paragraph 30 of Lester Eber's Affidavit dated June 24, 2015 (Bates No. EB-000017536).

**Response to No. 17: Upon information and belief, Magriocco, Martinetti, Allied and Fedway.**

18.    Identify who introduced the Eber Defendants to Glen Sturm in 2010.

**Response to No. 18: No one.**

19.    Identify the documents concerning any Eber Defendant's engagement of Glen Sturm, either as a lawyer or as a senior strategic consultant, or both.

**Response to No. 19: None.**

20.    Specify the date when you first told anyone (either in writing or verbally) that you were resigning as President of Eber W&L.

**Response to No. 20:        Do not recall.**

21.    Specify the reasons why you resigned as President of Eber W&L.

**Response to No. 21: Client privileged communication.**

2

DATED:    August 28, 2018
          Rochester, New York

                                        UNDERBERG & KESSLER LLP

                                        By: _____
                                             Paul F. Keneally, Esq.
                                             Colin D. Ramsey, Esq.
                                             Attorneys for Eber Defendants
                                             300 Bausch & Lomb Place
                                             Rochester, New York 14604
                                             585-258-2800
                                             cramsey@underbergkessler.com
                                             pkeneally@underbergkessler.com

TO:    Brian C. Brook, Esq.
       Clinton Brook & Peed
       Attorneys for Plaintiffs
       101 Hudson Street, Suite 2100
       Jersey City, NJ 07302
       212-256-1957
       brian@clintonbrook.com

       Robert Calihan, Esq.
       Attorney for Defendant
       Estate of Elliot W. Gumaer, Jr.
       16 West Main Street, Suite 736
       Rochester, New York 14614
       585-232-5291
       rcalihan@calihanlaw.com

## V E R I F I C A T I O N

STATE OF New York        )
COUNTY OF Monroe         ) ss:

    **LESTER EBER**, being duly sworn, deposes and says that:  he is one of the

Defendants in the within action; that deponent has read the foregoing Responses to

Plaintiff Daniel Kleeberg's Second Set of Interrogatories to Lester Eber and knows the

contents thereof, and that the same is true to deponent's own knowledge, except as to

those matters stated therein to be alleged upon information and belief, and that as to

those matters deponent believes it to be true.

                                           _Lester Eber_

                                           **Lester Eber**

Sworn to before me this
27th day of August, 2018.

_Julie V Mersereau_
Notary Public

JULIE V MERSEREAU
NOTARY PUBLIC-STATE OF NEW YORK
No. 02ME4876287
Qualified in Monroe County
My Commission Expires October 20, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

                Plaintiffs,

     v.

                               Civil Action No.
                               16-CV-9517(LAK)

LESTER EBER,
ALEXBAY, LLC f/k/a LESTER EBER, LLC,
CANANDAIGUA NATIONAL CORPORATION d/b/a    **RESPONSES TO PLAINTIFF**
CANANDAIGUA NATIONAL BANK AND TRUST,    **LISA STEIN'S FIRST SET OF**
ESTATE OF ELLIOT W. GUMAER, JR.,    **INTERROGATORIES TO**
EBER BROS. & CO, INC.,    **DEFENDANT WENDY EBER**
EBER BROS. WINE AND LIQUOR CORP.,
EBER BROS. WINE & LIQUOR METRO, INC.,
EBER-CONNECTICUT, LLC, and
WENDY EBER,

                Defendants.

_____

       Pursuant to the Federal Rules of Civil Procedure, Rule 26(a)(1), Defendant,

Wendy Eber, by her attorneys, Underberg & Kessler LLP, for her Responses to Plaintiff

Lisa Stein's First Set of Interrogatories to Defendant Wendy Eber (the "Interrogatories"),

hereby responds as follows:

<u>**SPECIFIC OBJECTIONS AND RESPONSES**</u>

       1.    Specify when you first began working for or with Alexbay, in any capacity,

official or unofficial.

**<u>Response to No. 1</u>:  Defendant Wendy Eber has never officially or unofficially**

**worked for Alexbay, but has been familiar with it since its formation in 2011.**

       2.    Specify all positions held by you in connection with any Alexbay, the

compensation associated with each position, and the dates when those positions were

held.

PLAINTIFF'S
EXHIBIT
**146**

**Response to No. 2:  See Response to No. 1, above.**

3.      Identify all persons who are or have ever been economic interest owners in Alexbay.

**Response to No. 3:  Lester Eber.**

4.      As to each person identified in response to Interrogatory No. 2 (including yourself if applicable), specify:

        a. The value or percentage of the economic interest (and if it changed over time, specify each value or percentage that has ever been held and the dates when those values or percentages applied);

        b. The consideration provided in exchange for the economic interest, and

        c. The date when the economic interest was acquired.

**Response to No. 4:  See Response to No. 1, above.**

5.      Identify all legal entities or businesses (excluding publicly traded companies) in which you have held any type of economic interest since 2007.

**Response to No. 5:  Defendant Wendy Eber has answered this question in responses to interrogatories previously served by Plaintiffs.  Defendant Wendy Eber has no other information responsive to this Interrogatory other than what has been set forth in the Responses to the previous interrogatories.**

6.      Specify whether you provided any consideration to any Eber Defendant, or to Poleridge Bowman or any other third party, in connection with your receipt of the right of first refusal to acquire Poleridge Bowman's interest in Eber-Conn.

**Response to No. 6:  Yes.**

2

7.     Identify all current officers, directors, and managers of the Eber Companies and Alexbay.

**Response to No. 7:  The Eber Defendants and/or Defendant Lester Eber have answered this question in responses to interrogatories previously served by Plaintiffs.  Defendant Wendy Eber has no other information responsive to this Interrogatory other than what has been set forth in the Eber Defendants' and/or Lester Eber's Responses to the previous interrogatories.**

8.     Identify all persons who currently hold any kind of equity or ownership interest in any of the Eber Companies or Alexbay.

**Response to No. 8:   The Eber Defendants and/or Defendant Lester Eber have answered this question in responses to interrogatories previously served by Plaintiffs.  Defendant Wendy Eber has no other information responsive to this Interrogatory other than what has been set forth in the Eber Defendants' and/or Lester Eber's Responses to the previous interrogatories.**

9.     As to each person identified in response to Interrogatory No. 8, specify as to each company:

   a.  The type of equity interest held (e.g., Class A common shares);

   b.  The amount of that equity interest (e.g., the number of shares or the percentage of the total); and

   c.  The percentage of the total voting power within that company that is held by that person.

**Response to No. 9:  The Eber Defendants and/or Defendant Lester Eber have answered this question in responses to interrogatories previously served by**

3

Plaintiffs.   Defendant Wendy Eber has no other information responsive to this Interrogatory other than what has been set forth in the Eber Defendants' and/or Lester Eber's Responses to the previous interrogatories.

10.    Identify any persons who have a contingent equity or ownership interest in any of the Eber Companies or Alexbay.

**Response to No. 10**:   Defendant Wendy Eber has ownership interest in Eber-Metro.  A copy of the Stand-Alone Restricted Stock Award Agreement is included in the Eber Defendants' August 28, 2018 document production marked as EB-00031284—EB-00031305.

DATED:      August 28, 2018
                    Rochester, New York

                                                    UNDERBERG & KESSLER LLP

                                                    By: _____
                                                         Paul F. Keneally, Esq.
                                                         Colin D. Ramsey, Esq.
                                                         Attorneys for Eber Defendants
                                                         300 Bausch & Lomb Place
                                                         Rochester, New York 14604
                                                         585-258-2800
                                                         cramsey@underbergkessler.com
                                                         pkeneally@underbergkessler.com

TO:    Brian C. Brook, Esq.
          Clinton Brook & Peed
          Attorneys for Plaintiffs
          101 Hudson Street, Suite 2100
          Jersey City, NJ 07302
          212-256-1957
          brian@clintonbrook.com

Robert Calihan, Esq.
Attorney for Defendant
Estate of Elliot W. Gumaer, Jr.
16 West Main Street, Suite 736
Rochester, New York 14614
585-232-5291
rcalihan@calihanlaw.com

VERIFICATION

STATE OF New York )
COUNTY OF New York ) ss:


**WENDY EBER**, being duly sworn, deposes and says that:  she is one of the Defendants in the within action; that deponent has read the foregoing Responses to Plaintiff Lisa Stein's First Set of Interrogatories to Defendant Wendy Eber and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters stated therein to be alleged upon information and belief, and that as to those matters deponent believes it to be true.

Wendy Eber
**Wendy Eber**


Sworn to before me this
28 day of August, 2018.

JANERISA ENCARNACION PUJOLS
Notary Public - State of New York
NO. 01EN6347215
Qualified in Bronx County
My Commission Expires Aug 29, 2020

Notary Public



underberg & kessler LLP

PAUL F. KENEALLY, PARTNER
(585) 258-2882
pkeneally@underbergkessler.com

December 14, 2018

*VIA E-MAIL AND FIRST-CLASS MAIL*

Brian C. Brook, Esq.
Daryoush Behbood, Esq.
Clinton Brook & Peed
85 Broad Street, Fl. 16
New York, NY 10004

> **RE:   Daniel Kleeberg, Lisa Stein and Audrey Hays v. Lester Eber, et al.**
> **Civ. Action No.:  16-cv-9517**

Dear Messrs. Brook and Behbood:

Please allow the following to serve as a further response to Mr. Behbood's October 19, 2018 letter.

*Response to Stein's First Set of Interrogatories to Wendy Eber*:

Int. 5:  Identify all legal entities or businesses (excluding publicly traded companies) in which you have held any type of economic interest since 2007.

Supplemental Response:

**Slocum of Maine, Inc. (50%), Eber-Connecticut, LLC (6%), Segwey, LLC (100%) and Eber Bros. Wine & Liquor Metro, Inc. (9.1%).**

Int. 7:  Identify all current officers, directors and managers of the Eber Companies and Alexbay.

Supplemental Response:

**Alexbay LLC:**
Lester Eber - Sole Member



PLAINTIFF'S
EXHIBIT
**147**



Brian C. Brook, Esq.
December 14, 2018
P a g e | **2**

**Eber Bros. & Co., Inc.**:
Lester Eber – President and Director
Wendy Eber – CFO, Secretary and Director

**Eber Bros. Wine & Liquor Corporation**:
Lester Eber – President and Director
Wendy Eber – CFO and Secretary, Director

**Eber Bros. Wine & Liquor Metro, Inc.**:
Lester Eber—President, Director
Wendy Eber—CFO and Secretary, Director

**Eber-Connecticut, LLC**:
Wendy Eber – President
Lester Eber – CEO
Wally Crumb – Secretary and CFO

Int. 8:  Identify all persons who currently hold any kind of equity or ownership interest in any of the Eber Companies or Alexbay.

Supplemental Response:  See enclosed ownership charts Bates numbered EB-00033270 – EB-00033271.

Int. 9:  As to each person identified in response to Interrogatory No. 8, specify as to each company:
    a.    The type of equity interest held;
    b.    The amount of that equity interest; and
    c.    The percentage of the total voting power within that company that is held by that person.

Supplemental Response:    See Supplemental Response to Int. 8, above.

*Response to Kleeberg's First Set of Interrogatories to Wendy Eber*:

Int. 3:  Identify all businesses in which you have been a member, partner, officer or director since 1990:

Supplemental Response:

**Eber Bros. & Co., Inc.**
    Officer (Secretary and CFO); Director



Brian C. Brook, Esq.
December 14, 2018
P a g e | **3**

**Eber Bros. Wine & Liquor Corp.**
Officer (Secretary and CFO); Assistant Secretary; Secretary and Director

**Eber Bros. Wine and Liquor Metro, Inc.**
CFO, Secretary and Director

**Eber-Connecticut, LLC**
Officer; Manager (Secretary, Treasurer, and President) and Member

**Slocum of Maine, Inc.**
Officer

**Segwey LLC**
Sole Member

**Eber-Rhode Island**
Manager, Officer (Secretary and Treasurer)

**PW&S**
Director, Officer (Secretary and CFO)

**Eber Acquisition Corp.**
Director, Officer (Secretary and CFO)

**Eber Bros. Wine and Liquor Metro, LLC**
Officer (Secretary and Treasurer)

Int. 8:  As to each company you identified in response to Interrogatory No. 7, describe (a) the nature of its business operations, (b) the dates when it was in operation, (c) the geographic region in which it operated, (d) any positions in it that you or Lester held and the dates you held them, and the Eber Defendants' respective ownership interest.

Supplemental Response:  Defendant Wendy Eber references and realleges the prior response to this interrogatory.  Additionally, please see additions below:

**Slocum of ME, LLC:**
See prior response.  Additionally, approximate date of operation was prior to 2005.
**Segwey, LLC:**



Brian C. Brook, Esq.
December 14, 2018
P a g e | **4**

See prior response.  Additionally, Wendy Eber is the sole member with 100% ownership interest.

**Eber Metro, LLC:**
See prior response.

**PW&S, LLC:**
See prior response.

**Eber Acquisition Corp.:**
See prior response.

**Delaware Importers, LLC:**
See prior response.

**Monroe Display, Inc.**
See prior response.  Additionally, Wendy Eber is Director, Secretary and CFO.

*Response to Hays' First Set of Interrogatories to Eber Defendants*:

Int. 7:  As to each email account identified in response to Interrogatory No. 5, identify all search terms used to search for documents.

Supplemental Response:  See prior response.  Additionally, to the extent the ten (10) search terms you list were contained within the documents requests, they were used.

*Response to Stein's First Set of Interrogatories to Lester Eber*:

Int. 4:  State the basis for your denial of Paragraph 14 of the Complaint.

Supplemental Response:  Eber Bros. is the majority owner of Eber Bros. Wine & Liquor Corp., but both Lester Eber and the Trust have minority interests as shown in the enclosed ownership charts Bates numbered EB-00033270 – EB-00033271.

Int. 11:  Identify all persons with knowledge of the formation of the company now called Alexbay, LLC.

Supplemental Response:  Lester Eber retained Gerald E. Farrell.



Brian C. Brook, Esq.
December 14, 2018
P a g e | **5**

Int. 22: State the basis for your denial of Paragraph 61 of the Complaint.

Supplemental Response: We need to expand on our previous response, "Upon information and belief, plaintiffs were aware of the 2012 action by Marc Stein, Esq." The information and basis for this belief is that in approximately 2014, Mark Stein told Dan Kleeberg about the Alexbay 2012 litigation and Dan Kleeberg relayed this information to Lester Eber.

Very truly yours,

Paul F. Keneally

PFK/mds
Enclosure
cc:     Michael J. Adams, Esq. (w/ enc. via e-mail & First-Class Mail)
        Robert B. Calihan, Esq. (w/ enc. via e-mail & First-Class Mail)

Alexbay LLC Ownership Structure
(registered holders – 12/1/18)



EB-00033270

Eber Bros. & Co., Inc. Ownership Structure
(registered holders – 12/1/18)



"Lester Eber, Elliott W. Gumaer, Jr.,
Central Trust Company, Co-tr
U/W Allen Eber Residuary"

Lester Eber

1850 voting common
490 nonvoting common
2000 nonvoting preferred

Sally Kleeberg

100 nonvoting common

100%

100 nonvoting common

Eber Bros. & Co., Inc.
(NY)
(dormant)

2000 voting common
438 nonvoting common
250 nonvoting preferred

Lester Eber

72.7%

"Co-tr U/W Allen Eber Residuary"

750 voting
junior preferred

27.3%

250 nonvoting preferred
379 nonvoting common

Eber Bros, Wine & Liquor Corp.
(NY)
(dormant)

EB-00033271

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

                                        Plaintiffs,

v.                                                                    Civil Action No. 16-CV-9517(LAK)

LESTER EBER, ALEXBAY, LLC
f/k/a LESTER EBER, LLC,
ESTATE OF ELLIOT W. GUMAER, JR.           **RESPONSES TO PLAINTIFF**
and WENDY EBER,                                      **AUDREY HAYS' THIRD SET**
                                        Defendants.        **OF INTERROGATORIES TO**
                                                                   **DEFENDANT LESTER EBER**
and

EBER BROS. & CO., INC.; EBER BROS.
WINE AND LIQUOR CORP.; EBER BROS.
WINE & LIQUOR METRO, INC.;
EBER-CONNECTICUT, LLC; EBER-RHODE
ISLAND, LLC; EBER BROS. ACQUISITION
CORP.; EBER-METRO LLC; SLOCUM &
SONS OF MAINE, INC,; and CANANDAIGUA
NATIONAL BANK & TRUST COMPANY,

                                        Nominal Defendants.

_____

        Defendant, Lester Eber, by his attorneys, UNDERBERG & KESSLER LLP, for

his Responses to Plaintiff Audrey Hays' Third Set of Interrogatories to Defendant Lester

Eber, (the "Interrogatories") responds as follows:

## <u>GENERAL OBJECTIONS</u>

        Defendant objects to the Interrogatories on the following grounds:

        1.        The Interrogatories seek information that is not relevant to the subject

matter of this action nor reasonably calculated to lead to the discovery of admissible

evidence or information bearing on the Plaintiffs' claims or Defendants' defenses, and



PLAINTIFF'S
EXHIBIT
148

are impracticable if not impossible to comply with.

2.    Defendant objects to the Interrogatories on the grounds that they are unduly burdensome, vague, impose an unreasonable discovery burden, are impracticable if not impossible to comply with and otherwise cannot be complied with without incurring undue costs.

3.    The Interrogatories are not consistent with the Federal Rules of Civil Procedure.

4.    The Interrogatories call for the disclosure of information and/or materials which are confidential and/or proprietary and are otherwise protected by privilege, including the attorney-client privilege, the joint defense privilege, the attorney work product privilege or other applicable privilege, including material prepared in anticipation of litigation or in preparation for trial.

5.    The Interrogatories seek information or requires production or identification of documents already in the possession of the Plaintiff or which are otherwise publicly available.

6.    In providing these objections to the Interrogatories, Defendant does not in any way waive or intend to waive, but rather intend to preserve and preserves:

a)    All objections as to competency, relevancy, materiality and admissibility of these responses;

b)    All rights to object on any ground to the use of these responses in any subsequent proceedings, including the trial of these or any other action(s); and

c)    All rights to object on any grounds to any requests for further

2

responses to the Interrogatories involving or related to the subject matter.

7.    Defendant reserves the right to supplement these objections and to make further objections if necessary.

8.    These general objections apply to each of the Plaintiff's Interrogatories propounded to the Defendant below.  All Interrogatories are answered subject to and without waiving these general objections.

## SPECIFIC OBJECTIONS AND RESPONSES

17.    Do you contend that you were acting in the best interest of EBWLC's shareholders when you sought to transfer Eber Metro from EBWLC to Alexbay?

**Response to No. 17:  By notice dated January 18, 2012, executed by Lester Eber, as President of Alexbay LLC, pursuant to UCC 9-620, Alexbay, in its capacity as a creditor, proposed to accept all the shares of capital stock of Eber Metro in full satisfaction of the obligations to Alexbay secured by such stock. Lester Eber had no involvement as a director of any of EBWLC or Eber Metro with respect to this strict foreclosure.**

18.    If you answered "yes" to Interrogatory No. 1, specify all benefits to EBWLC's shareholders from the transfer to Alexbay?

**Response to No. 18:  As set forth in response to #17 above, Lester Eber was not a director of EBWLC or Eber Metro during the operative time period.**

19.    Do you contend that you were not bound by any fiduciary duties as co-trustee of the Trust when you participated in the transfer of Eber Metro from EBWLC to Alexbay in 2012?

3

**Response to No. 19:  It is not contended that Lester Eber was not bound by "any fiduciary duties" as co-trustee of the Trust.  It is contended that the transfer of Eber Metro from EBWLC to Alexbay did not violate any fiduciary duties.**

20.     Do you contend that the Trust was terminated as a result of the June 1, 2017 Surrogate's Court Termination Order?

**Response to No. 20:  A review of the June 1, 2017 Surrogate's Court Order makes clear that Lester Eber is no longer a trustee, but that CNB is still a trustee due to unfulfilled duties and responsibilities.**

21.     Do you contend that the Trust currently owns the common shares of Eber Bros.?

**Response to No. 21:  It is unclear what is meant by the term "owns." The shares are currently registered in the name of "Lester Eber, Elliott W. Gumaer, Jr., M&T Bank, Co-Trustees U/W Allen Eber Residuary."  Note the share transfer restrictions in Article 12 of the EBWLC Bylaws, which were adopted with approval of the Trust on June 21, 1996, and the Notice dated October 31, 2018 from Lester Eber exercising his call right thereunder.**

22.     Specify all facts that support the contention in your Answer (Fifteenth Affirmative Defense) that you had no fiduciary duties as trustee following the Surrogate's Court Termination Order, including specific reference to any part of that Order that supports your contention.

4

**Response to No. 22:** **The June 1, 2017 Surrogate's Court Order terminated the Trust as to Lester Eber as of its date and, unlike CNB, did not assign any residual mop up Trustee duties to Lester Eber or Elliott W. Gumaer, Jr.**

23.     Identify all persons whom you contend are currently empowered to vote the common shares of Eber Bros.

**Response to No. 23:** **Unknown given the uncertainties surrounding the stock.  UCC 8-207 may be applicable.**

24.     If you contend that the nature of the services provided by you to Southern after 2007 was substantially different from the nature of the services that you had performed for EBWLC prior to 2007, specify how it was different.

**Response to No. 24:** **The services provided to Southern did differ drastically from the services performed for EBWLC.  Such differences include the fact that Lester Eber served as only a consultant and lobbyist for Southern, and the needs and focus of Southern's business interests in New York often differed substantially from the interests of EBWLC prior to it being forced out of business by Southern.  In addition, Lester Eber's duties with EBWLC as a CEO required him to handle all aspects of business, including but not limited to, sales, marketing, corporate governance, compensation, employee supervision, and real estate management.**

5

Defendant Lester Eber reserves the right to supplement and/or amend these responses upon the completion of discovery.

DATED:   Rochester, New York
         September 13, 2019

                              UNDERBERG & KESSLER LLP

                        By: _____
                              Paul F. Keneally, Esq.
                              Colin D. Ramsey, Esq.
                              *Attorneys for Eber Defendants*
                              300 Bausch & Lomb Place
                              Rochester, New York 14604
                              585-258-2882

TO:   Brian C. Brook, Esq.
      Brook & Associates, PLLC
      *Attorneys for Plaintiffs*
      100 Church Street, Floor 8
      New York, New York 10007
      212-256-1957

CC:   Robert Calihan, Esq.
      Calihan Law PLLC
      *Attorneys for Defendant Estate of*
      *Elliot W. Gumaer, Jr.*
      16 East Main Street, Suite 620
      Rochester, New York 14614

      Donald O'Brien, Esq.
      Woods Oviatt Gilman, LLP
      *Attorneys for Nominal Defendant*
      *Canandaigua National Bank & Trust Company*
      1900 Bausch & Lomb Place
      Rochester, New York 14604

6

# V E R I F I C A T I O N

STATE OF _____       )
COUNTY OF _____     ) ss:

**LESTER EBER**, being duly sworn, deposes and says that:

He is one of the Defendants in the within action; that deponent has read the foregoing Responses to Plaintiff Audrey Hays' Third Set of Interrogatories to Defendant Lester Eber and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters stated therein to be alleged upon information and belief, and that as to those matters deponent believes it to be true.

_____
**Lester Eber**

Sworn to before me this
_____ day of September, 2019.


_____
Notary Public

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

DANIEL KLEEBERG, LISA STEIN
and AUDREY HAYS,

                   Plaintiffs,

v.

                               Civil Action No. 16-CV-9517(LAK)

LESTER EBER, ALEXBAY, LLC
f/k/a LESTER EBER, LLC,
ESTATE OF ELLIOT W. GUMAER, JR.
and WENDY EBER,

                   Defendants.

and

EBER BROS. & CO., INC.; EBER BROS.
WINE AND LIQUOR CORP.; EBER BROS.
WINE & LIQUOR METRO, INC.;
EBER-CONNECTICUT, LLC; EBER-RHODE
ISLAND, LLC; EBER BROS. ACQUISITION
CORP.; EBER-METRO LLC; SLOCUM &
SONS OF MAINE, INC,; and CANANDAIGUA
NATIONAL BANK & TRUST COMPANY,

                   Nominal Defendants.

_____

**RESPONSES TO PLAINTIFF
LISA STEIN'S SECOND SET
OF INTERROGATORIES TO
DEFENDANT WENDY EBER**

       Defendant, Wendy Eber, by her attorneys, UNDERBERG & KESSLER LLP, for

her Responses to Plaintiff Lisa Stein's Second Set of Interrogatories to Defendant

Wendy Eber, (the "Interrogatories") responds as follows:

## GENERAL OBJECTIONS

       Defendant objects to the Interrogatories on the following grounds:

       1.    The Interrogatories seek information that is not relevant to the subject

matter of this action nor reasonably calculated to lead to the discovery of admissible

evidence or information bearing on the Plaintiffs' claims or Defendants' defenses, and



PLAINTIFF'S
EXHIBIT

149

are impracticable if not impossible to comply with.

2.     Defendant objects to the Interrogatories on the grounds that they are unduly burdensome, vague, impose an unreasonable discovery burden, are impracticable if not impossible to comply with and otherwise cannot be complied with without incurring undue costs.

3.     The Interrogatories are not consistent with the Federal Rules of Civil Procedure.

4.     The Interrogatories call for the disclosure of information and/or materials which are confidential and/or proprietary and are otherwise protected by privilege, including the attorney-client privilege, the joint defense privilege, the attorney work product privilege or other applicable privilege, including material prepared in anticipation of litigation or in preparation for trial.

5.     The Interrogatories seek information or requires production or identification of documents already in the possession of the Plaintiff or which are otherwise publicly available.

6.     In providing these objections to the Interrogatories, Defendant does not in any way waive or intend to waive, but rather intend to preserve and preserves:

a)     All objections as to competency, relevancy, materiality and admissibility of these responses;

b)     All rights to object on any ground to the use of these responses in any subsequent proceedings, including the trial of these or any other action(s); and

c)     All rights to object on any grounds to any requests for further

2

responses to the Interrogatories involving or related to the subject matter.

7.     Defendant reserves the right to supplement these objections and to make further objections if necessary.

8.     These general objections apply to each of the Plaintiffs' Interrogatories propounded to the Defendant below.  All Interrogatories are answered subject to and without waiving these general objections.

## SPECIFIC OBJECTIONS AND RESPONSES

11.     Do you contend that EBWLC's pension funding liability to PBGC was also a liability of Eber Metro as of May 1, 2012?

**Response to No. 11:  Yes.**

12.     Do you contend that EBWLC's pension funding liability to PBGC was also a liability that belonged to Eber-CT as of May 1, 2012?

**Response to No. 12:  Yes.**

13.     Do you contend that EBWLC's pension funding liability to PBGC was also a liability of Eber Metro as of July 1, 2012?

**Response to No. 13:  Yes.**

14.     Do you contend that EBWLC's pension funding liability to PBGC was also a liability of Eber-CT as of July 1, 2012?

**Response to No. 14:  Yes.**

15.     Do you contend that the transfer of six percent of the membership interest in Eber-CT to Polebridge Bowman was, at least in part, compensation for services by Glenn Sturm?

3

**Response to No. 15:  Yes.**

16.     If you contend that the transfer of six percent of the membership interest in Eber-CT to Polebridge Bowman was an arm's length transaction, specify all facts that support your contention that the relationship between Eber Metro and Polebridge Bowman was an arm's length relationship.

**Response to No. 16:  Prior to May 30, 2010, none of Polebridge Bowman, Glenn Sturm or any of their respective affiliates (a) owned any direct or indirect equity interest in any of the Eber companies, (b) was a director, officer or employee of any of the Eber companies, (c) owed any amount to any of the Eber companies, (d) had any familial relationship with Lester or Wendy Eber, (e) had any business or personal relationship with Lester Eber, Wendy Eber or any of the Eber entities, with the exception of the consulting and legal services he provided.**

**Prior to May 30, 2010, none of Lester Eber, Wendy Eber or any of the Eber companies (a) owned any direct or indirect equity interest in Polebridge Bowman or any of its affiliates, (b) was a director, officer or employee of Polebridge Bowman or any of its affiliates, or (c) owed any amount to Polebridge Bowman or Glenn Sturm.**

17.     Do you contend that EBWLC owed any money to Lester Eber or Alexbay on the day after the transfer of Eber Metro to Alexbay was completed?  If so, specify the amount of money owed and the nature of the debt.

**Response to No. 17:  No.**

4

18.     If you contend that the June 1, 2017 Surrogate's Court Order (marked as Plaintiff's Exhibit 33) did not require distribution of Eber Bros. stock to the Trust beneficiaries, specify all facts that support your contention.

**Response to No. 18:  The Petition dated February 15, 2017 was prepared by CNB and expressly acknowledges that neither Lester Eber nor Elliott Gumaer participated in the preparation of the Petition.  CNB has not distributed the stock. Lester Eber is unaware of CNB's reason(s) for not doing so.  Note the share transfer restrictions in Article 12 of the EBWLC Bylaws, which were adopted with approval of the Trust on June 21, 1996, and the Notice dated October 31, 2018 from Lester Eber exercising his call right thereunder.**

19.     If you contend that CNB did not properly allocate the distribution of Eber Bros. stock to the Trust beneficiaries in its July 2017 Proposed Distribution (EB-00000836 marked as Plaintiff's Exhibit 32), how do you contend the shares should have been distributed?  Specify the number of shares that should have been distributed to each person.

**Response to No. 19:  CNB has not provided an explanation as to how it arrived at the proposed allocation of the Eber Bros. & Co. Inc. shares of Class A common stock, Class B common stock or Preferred stock.  The chart below shows what appears to have been provided for by Surrogate's Court Order, CNB's original allocation, and CNB's reallocation:**

5

| EB&CO. INC. | A | B | C |
|---|---|---|---|
| | 1/3, 1/3, 1/6, 1/6 PER S CT. ORDER | 7/12/17 CNB ALLOCATION | 8/1/17 CNB REALLOCATION |
| **CLASS A VOTING (1850)** | | | |
| LESTER EBER | 616.67 | 610 | 706 |
| AUDREY HAYS | 616.67 | 610 | 706 |
| LISA STEIN | 308.33 | 315 | 137 |
| DAN KLEEBERG | 308.33 | 315 | 301 |
| | | | |
| **CLASS B NONVOTING (290)** | | | |
| LESTER EBER | 96.67 | 95 | 111 |
| AUDREY HAYS | 96.67 | 95 | 111 |
| LISA STEIN | 48.33 | 50 | 21 |
| DAN KLEEBERG | 48.33 | 50 | 47 |
| | | | |
| **6% PREFERRED (2000)** | | | |
| LESTER EBER | 666.67 | 660 | 765 |
| AUDREY HAYS | 666.67 | 660 | 764 |
| LISA STEIN | 333.33 | 340 | 147 |
| DAN KLEEBERG | 333.33 | 340 | 324 |

20.     Specify all facts that support your contention in response to Interrogatory No. 19.

**Response to No. 20:   Allen Eber's Will and the June 1, 2017 Surrogate's Court Order.**

21.     State the basis for your contention in your Answer (Sixteenth Affirmative Defense) that New York Business Corporation Law §717 bars any of Plaintiffs' Claims against you, including specifying which subsection you intend to rely on and, if (a), identifying the persons, information, opinions, reports, and statements on whom you purport to have relied, and, if (b), specifying how that subsection applies to your

6

decision as both an officer and director of EBWLC to approve the transfer of Eber Metro to Alexbay in 2012.

**Response to No. 21:**  **Both sections (a) and (b) of BCL §717.  With respect to Wendy Eber's decision as a director of EBWLC to consent to the acceptance by Alexbay of the capital stock of Metro in satisfaction of the obligations to Alexbay secured by it, (a) she relied on, without limitation, information, opinions, reports, and statements, including, without limitation, financial statements and other financial data, in each case prepared or presented by officers and employees of the Eber companies, counsel, public accountants and other persons as to matters which he believed to be within such person's professional or expert competence, and (b) she considered, without limitation, (1) both the long-term and the short-term interest of EBWCL and its shareholders and (2) the effects that EBWLC's actions may have in the short-term or in the long-term upon any of the following: the prospects for potential growth, development, productivity and profitability of the Eber companies; the Eber companies' current employees; the Eber companies' retired employees and other beneficiaries receiving or entitled to receive, welfare or similar benefits from or pursuant to any plan sponsored, or agreement entered into, by the Eber companies; the Eber companies' customers and creditors; and the ability of the Eber companies to provide, as a going concern, goods, services, employment opportunities and employment benefits and otherwise to contribute to the communities in which they do business.**

22.   Do you contend that Eber Metro or EBWLC would have borrowed money from Lester Eber in 2009 through 2011 even if EBWLC were receiving $50,000 per month from Southern?

**Response to No. 22:  This interrogatory calls for inappropriate speculation. In the first instance, there was never an opportunity for EBWLC to receive any sum of money from Southern.  Further, the finances of Eber Metro and EBWLC were such that they very likely would still have had to borrow money from Lester Eber even if additional funds had been received.**

Defendant Wendy Eber reserves the right to supplement and/or amend these responses upon the completion of discovery.

DATED:   Rochester, New York
         September 13, 2019

                                        UNDERBERG & KESSLER LLP

                                        By: _____
                                           Paul F. Keneally, Esq.
                                           Colin D. Ramsey, Esq.
                                           *Attorneys for Eber Defendants*
                                           300 Bausch & Lomb Place
                                           Rochester, New York 14604
                                           585-258-2882

TO:   Brian C. Brook, Esq.
      Brook & Associates, PLLC
      *Attorneys for Plaintiffs*
      100 Church Street, Floor 8
      New York, New York 10007
      212-256-1957

8

CC:   Robert Calihan, Esq.
       Calihan Law PLLC
       *Attorneys for Defendant Estate of*
       *Elliot W. Gumaer, Jr.*
       16 East Main Street, Suite 620
       Rochester, New York 14614

       Donald O'Brien, Esq.
       Woods Oviatt Gilman, LLP
       *Attorneys for Nominal Defendant*
       *Canandaigua National Bank & Trust Company*
       1900 Bausch & Lomb Place
       Rochester, New York 14604

# VERIFICATION

STATE OF _____       )
COUNTY OF _____      ) ss.:

      **WENDY EBER**, being duly sworn, deposes and says that:

      She is one of the Defendants in the within action; that deponent has read the foregoing Responses to Plaintiff Lisa Stein's Second Set of Interrogatories to Defendant Wendy Eber and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to those matters stated therein to be alleged upon information and belief, and that as to those matters deponent believes it to be true.

                           _____
                           **Wendy Eber**

Sworn to before me this
_____ day of September, 2019.


_____
Notary Public

10