## EBER BROS. WINE & LIQUOR METRO, INC.
## RESTRICTED STOCK AWARD AGREEMENT

As a material inducement for Wendy Eber ("Executive") to enter into the employment agreement dated _August 14_, 2012, by and between Eber-Connecticut, LLC, a Delaware limited liability company ("Eber-CT"), an affiliated company of Eber Bros. Wine & Liquor Metro, Inc., a New York corporation (the "Company"), the Company, and Executive (the "Employment Agreement"), the Company's Board of Directors (the "Board") hereby grants Executive common stock of the Company (the "Award") from its treasury, subject to the terms and conditions of this Restricted Stock Award Agreement (the "Agreement"). Unless otherwise indicated, all terms used in this Agreement shall have the meaning as defined in Section 10. The principle features of the Award are as follows:

Address of Executive:  524 East 7nd Street Apt 31C
New York, NY 10021
Date of Grant:  _August 14_, 2012

Number of Covered    _2,000_
Shares:

1. Vesting Schedule and Risk of Forfeiture.

(a) Vesting Schedule. Subject to Executive's continuous employment with Eber-CT or any affiliate thereof, the Covered Shares shall vest in accordance with the following schedule (the "Vesting Schedule"):

| Vesting Date | Nonforfeitable Percentage |
| --- | --- |
| January 1, 2013 | One-third shall vest |
| January 1, 2014 | One-third shall vest, combined total of two-thirds vested |
| January 1. 2015 | One-third shall vest, combined total of 100% vested |

Additionally, the Vesting Schedule shall be accelerated in the following circumstances:

(i) Immediately upon the occurrence of any of the following events and without any action on the part of any person or entity, the Vesting Schedule for the Covered Shares shall accelerate such that the nonforfeitable percentage, when added to any previously vested percentages of Covered Shares subject to this Award, shall equal one-hundred percent (100%) of the Covered Shares if (i) the Executive dies, (ii) the Executive's employment is terminated due



PLAINTIFF'S EXHIBIT

151

to Disability (as such term is defined under the terms of the Employment Agreement), (iii) the Executive's employment is terminated without Cause (as such term is defined under the terms of the Employment Agreement 2), or (iv) the Executive resigns her employment with Eber-CT for Good Reason (as such term is defined under the terms of the Employment Agreement).

(ii) The Vesting Schedule for the Covered Shares shall accelerate one-hundred percent (100%) upon a Change in Control (as such term is defined under the terms of the Employment Agreement).

(b) <u>Risk of Forfeiture</u>. The Covered Shares shall be subject to a risk of forfeiture until such time the risk of forfeiture lapses in accordance with the Vesting Schedule. Upon the termination of Executive's employment with Eber-CT or an any affiliate thereof, any Covered Shares that are not vested upon such termination or do not vest as a result of such termination as provided for herein shall automatically be forfeited and immediately returned to the Company.

2. <u>Transfer Restrictions</u>. The Covered Shares issued to Executive hereunder may not be sold, transferred by gift, pledged, hypothecated, or otherwise transferred or disposed of by Executive (other than by will or by the laws of descent or distribution) prior to the date when the Covered Shares become vested pursuant to the Vesting Schedule. Any attempt to transfer Covered Shares in violation of this Section 2 shall be null and void and shall be disregarded. The terms of this Agreement shall be binding upon the executors, administrators, heirs, successors and assigns of Executive.

3. <u>Escrow of Covered Shares</u>. Promptly upon the execution of this Agreement, the Company shall deliver to Executive certificates for all of the Covered Shares.  For purposes of facilitating the enforcement of the provisions of this Agreement, Executive hereby agrees, immediately upon receipt of the certificate(s) for the unvested Covered Shares, to deliver the certificate(s), together with an Assignment Separate from Certificate in the form provided to Executive by Company and  executed by Executive, in blank, to the Secretary of the Company, or any other person designated by the Company as escrow agent, as its attorney-in-fact to hold the certificate(s) and Assignment Separate from Certificate in escrow and to take all such actions and to effectuate all such transfers and releases as are in accordance with the terms of the this Agreement. Executive hereby acknowledges that the Secretary of the Company, or the Secretary's designee, is so appointed as the escrow holder with the foregoing authorities as a material inducement to enter into this Agreement and that the appointment is coupled with an interest and is accordingly irrevocable. The unvested Covered Shares and Assignment Separate from Certificate shall be held by the Secretary or the Secretary's designee, in escrow, pursuant to the Joint Escrow Instructions of the Company and Executive in the form provided by the Company until the unvested Covered Shares are vested, or until such time as this Agreement is no longer in effect. Upon vesting of the unvested Covered Shares, the escrow agent shall promptly deliver to Executive the certificate or certificates representing the vested Covered Shares in the escrow agent's possession belonging to Executive, and the escrow agent shall be discharged of all further obligations hereunder with respect to such vested Covered Shares. Executive agrees that if the Secretary of the Company, or the Secretary's designee, resigns as escrow holder for any or no reason, the Committee shall have the power to appoint a successor to serve as escrow holder pursuant to the terms of this Agreement.

EB-00031291

The Company, the Secretary or other designee shall not be liable for any act it may do or omit to do with respect to holding the Covered Shares in escrow and while acting in good faith and in the exercise of its judgment. The escrow holder may rely upon any letter, notice or other document executed by any signature purported to be genuine and may resign at any time.

4. Additional Securities. Any securities or cash received as the result of an adjustment provided for in Section 12 (the "Additional Securities") shall be retained in escrow in the same manner and subject to the same conditions and restrictions as the Covered Shares with respect to which they were issued, including the Vesting Schedule and risk of forfeiture provisions. If the Additional Securities consist of a convertible security, Executive may exercise any conversion right, and any securities so acquired shall constitute Additional Securities. In the event of any change in certificates evidencing the Company's common stock or the Additional Securities by reason of any adjustment under Section 12 or a Change in Control, the escrow holder is authorized to deliver to the issuer the certificates evidencing the Shares or Additional Securities in exchange for the certificates of the replacement securities.

5. Distributions. The Company shall disburse to Executive all dividends and other distributions with respect to the Covered Shares and Additional Securities, whether such Covered Shares and Additional Securities are vested or not at the date of such dividend or other distribution, less the amount to satisfy any applicable withholding obligations.

6. Taxes. Executive hereby acknowledges and understands that she may suffer adverse tax consequences as a result of her receipt of (or purchase of), vesting in, or disposition of, the Covered Shares. Executive hereby represents that she has consulted with any tax consultants Executive deems advisable in connection with the purchase, vesting, or disposition of the Covered Shares and that Executive is not relying on the Company for any tax advice. In the event the Company determines that it has a tax withholding obligation in connection with Executive's purchase of, vesting in, or disposition of, the Covered Shares, Executive agrees to make appropriate arrangements with the Company or Affiliate for the satisfaction of such withholding. Executive consents to the Company or Affiliate satisfying any withholding obligation by withholding from other compensation due to Executive in the event such satisfactory arrangements are not made.

(a) Representations. Executive has reviewed with her own tax advisors the tax consequences of this investment and the transactions contemplated by this Agreement, including any U.S. federal, state and local tax laws, and any other applicable taxing jurisdiction. Executive is relying solely on such advisors and not on any statements or representations of the Company or any of its agents. Executive hereby acknowledges and understands that she (and not the Company) shall be responsible for her own tax liability that may arise as a result of this investment or the transactions contemplated by this Agreement.

(b) Section 83(b) Election. Executive hereby acknowledges that she has been informed that if she makes a timely election (the "Election") pursuant to Section 83(b) of the Code to be taxed currently on any difference between the fair market value of the Covered Shares and any purchase price paid, this will result in a recognition of taxable income to Executive on the date the Covered Shares were granted. Absent such an Election, taxable income will be measured and recognized by Executive at the time or times on which the Covered Shares become vested. Executive is strongly encouraged to seek the advice of her own tax consultants in connection

EB-00031292

with the Covered Shares granted pursuant to this Agreement, and the advisability of filing the Election under Section 83(b) of the Code. A form of Election under Section 83(b) is attached hereto. EXECUTIVE ACKNOWLEDGES THAT IT IS EXECUTIVE'S SOLE RESPONSIBILITY AND NOT THE COMPANY'S OR ANY AFFILIATE TO TIMELY FILE THE ELECTION UNDER SECTION 83(b) OF THE CODE, EVEN IF EXECUTIVE REQUESTS THE COMPANY, AFFILIATE OR THEIR REPRESENTATIVE TO MAKE THIS FILING ON EXECUTIVE'S BEHALF.

7. <u>Legality of Initial Issuance</u>. No Covered Shares shall be issued unless and until the Company has determined that: (i) the Company and Executive have taken all actions required to register the Covered Shares under the Securities Act or to perfect an exemption from the registration requirements thereof, if applicable; (ii) all applicable listing requirements of any stock exchange or other securities market on which the Covered Shares are listed has been satisfied; and (iii) any other applicable provision of state or U.S. federal law or other applicable law has been satisfied. The Company agrees to use its best efforts to satisfy all such requirements and provisions.

8. <u>Restrictive Legends</u>. Any share certificate evidencing the Covered Shares issued hereunder shall be endorsed with the following legends (in addition to any legend required under applicable U.S. federal, state securities laws and under any other applicable law):

(a) On the face of the certificate:

"TRANSFER OF THIS STOCK IS RESTRICTED IN ACCORDANCE WITH THE CONDITIONS PRINTED ON THE REVERSE OF THIS CERTIFICATE"

(b) On the reverse of the certificate:

"THE SHARES OF STOCK EVIDENCED BY THIS CERTIFICATE ARE SUBJECT TO AND TRANSFERABLE ONLY IN ACCORDANCE WITH THAT CERTAIN EBER BROS. WINE & LIQUOR METRO, INC. RESTRICTED STOCK AWARD AGREEMENT, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL OFFICE OF THE COMPANY. NO TRANSFER OR PLEDGE OF THE SHARES EVIDENCED HEREBY MAY BE MADE EXCEPT IN ACCORDANCE WITH AND SUBJECT TO THE PROVISIONS OF SAID AGREEMENT. BY ACCEPTANCE OF THIS CERTIFICATE, ANY HOLDER, TRANSFEREE OR PLEDGEE HEREOF AGREES TO BE BOUND BY ALL OF THE PROVISIONS OF SAID AGREEMENT."

9. <u>Restrictions on Transfer</u>.

(a) <u>Stop-Transfer Notices</u>. Executive agrees that, in order to ensure compliance with the restrictions referred to herein and applicable law, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

(b) <u>Rights of the Company</u>. The Company shall not (i) record on its books the transfer of any Covered Shares that have been sold or transferred in contravention of this Agreement or

EB-00031293

(ii) treat as the owner of Covered Shares, or otherwise to accord voting, dividend or liquidation rights to, any transferee to whom Covered Shares have been transferred in contravention of this Agreement. Any transfer of Covered Shares not made in conformance with this Agreement shall be null and void and shall not be recognized by the Company.

10. Certain Definitions.

The term **"Affiliate"** shall mean (i) any corporation, partnership or other entity which owns, directly or indirectly, a majority of the voting equity securities of the Company, and (ii) any corporation, partnership or other entity of which a majority of the voting equity securities or equity interest is owned, directly or indirectly, by the Company.

11. General Provisions.

(a) Notice. Any notice required by the terms of this Agreement shall be given in writing and shall be deemed effective upon personal delivery or upon deposit with the applicable government-sponsored postal service, by registered or certified mail, with postage and fees prepaid. Notice shall be addressed to the Company at its principal executive office and to Executive at the address that he most recently provided to the Company.

(b) Successors and Assigns. Except as provided herein to the contrary, this Agreement shall be binding upon and inure to the benefit of the parties to this Agreement, their respective successors and permitted assigns.

(c) No Assignment. Except as otherwise provided in this Agreement, Executive shall not assign any of his or her rights under this Agreement without the prior written consent of the Company, which consent may be withheld in its sole discretion. The Company shall be permitted to assign its rights or obligations under this Agreement, but no such assignment shall release the Company of any obligations pursuant to this Agreement.

(d) Severability. The validity, legality or enforceability of the remainder of this Agreement shall not be affected even if one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable in any respect.

(e) Amendment. Any provision of this Agreement may be amended and the observance thereof may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a written instrument signed by the parties hereto.

(f) Administration. Any determination by the Board in connection with any question or issue arising under this Agreement shall be final, conclusive, and binding on Executive, the Company, and all other persons.

(g) Interpretation. Any dispute regarding the interpretation of this Agreement or the Covered Shares hereunder shall be submitted by Executive or by the Company forthwith to the Board, which shall review such dispute at its next regular meeting. The resolution of such a dispute by the Board shall be final and binding on all parties.

(h) Headings. The section headings in this Agreement are inserted only as a matter of convenience, and in no way define, limit or interpret the scope of this Agreement or of any particular section.

EB-00031294

(i) Counterparts. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any counterpart or other signature delivered by facsimile shall be deemed for all purposes as being a good and valid execution and deliver of this Agreement by that party.

(j) Entire Agreement; Governing Law. The provisions of Executive's Employment Agreement are incorporated herein by reference. The Employment Agreement and this Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company and Executive with respect to the subject matter hereof, and may not be modified adversely to Executive's interest except by means of a writing signed by the Company and Executive. This Agreement is governed by the laws of the State of New York applicable to contracts executed in and to be performed in that state.

12. Adjustments. In the event of any merger, reorganization, consolidation, recapitalization, dividend or distribution (whether in cash, shares or other property, other than a regular cash dividend), stock split, reverse stock split, spin-off or similar transaction or other change in corporate structure affecting the Company's common stock or the value thereof, appropriate adjustments and other substitutions shall be made to preserve the economic value of the Covered Shares taking into consideration the financial and tax consequences, as the Board may determine, reasonably and in good faith, to be appropriate; provided, however, that the number of Covered Shares shall always be a whole number.

13. No Guarantee of Continuous Employment. EXECUTIVE ACKNOWLEDGES AND AGREES THAT THE VESTING OF COVERED SHARES PURSUANT TO THE VESTING SCHEDULE HEREOF IS EARNED ONLY BY EXECUTIVE'S CONTINUOUS EMPLOYMENT WITH EBER-CT OR ANY AFFILIATE THEREOF, AT THE WILL OF EBER_CT, OR ANY AFFILIATE THEREOF, AS APPLICABLE (NOT THROUGH THE ACT OF BEING HIRED, BEING GRANTED THE RIGHT TO RECEIVE COVERED SHARES OR ACQUIRING COVERED SHARES HEREUNDER). EXECUTIVE FURTHER ACKNOWLEDGES AND AGREES THAT THIS AGREEMENT, THE RIGHT GRANTED HEREUNDER, THE TRANSACTIONS CONTEMPLATED HEREUNDER AND THE VESTING SCHEDULE SET FORTH IN THIS AGREEMENT DO NOT CONSTITUTE AN EXPRESS OR IMPLIED PROMISE OF CONTINUED ENGAGEMENT AS AN EMPLOYEE OR CONSULTANT FOR THE VESTING PERIOD, FOR ANY PERIOD, OR AT ALL, AND SHALL NOT INTERFERE IN ANY WAY WITH EXECUTIVE'S RIGHT OR EBER-CT's RIGHT TO TERMINATE EXECUTIVE'S RELATIONSHIP AS AN EMPLOYEE OR CONSULTANT AT ANY TIME, WITH OR WITHOUT CAUSE.

14. Waiver. Failure to insist upon strict compliance with any of the terms, covenants, or conditions hereof will not be deemed a waiver of such term, covenant, or condition, nor will any waiver or relinquishment of, or failure to insist upon strict compliance with, any right or power hereunder at any one or more times be deemed a waiver or relinquishment of such right or power at any other time or times.

[SIGNATURES ON NEXT PAGE]

4827-7683-8414 v.3~

Your signature below indicates your agreement, understanding, and acceptance that the Award is subject to all of the terms and conditions contained in this Agreement. **Please be sure to read all of the provisions of the Agreement which contains the specific terms and conditions of the Award, copies of which you hereby acknowledge having received.**

**EBER BROS. WINE & LIQUOR METRO, INC.**

By: _Lester Eber_

Its: _President_

Date: _August 14, 2012_

**EXECUTIVE**

_Wendy Eber_
Wendy Eber

Date: _August 12, 2012_

4827-7683-8414 v.3~

EB-00031296

# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is made and entered into effective as of August 14, 2012 (the "Effective Date") by and between Eber-Connecticut, LLC (the "Company"), and Wendy Eber (the "Executive").   The Agreement sets forth the terms of Executive's employment with the Company and its affiliates.

## 1.     Position and Duties:

(a)     Effective as of the Effective Date and during the Term, the Company will employ Executive as an executive officer in the position of President of the Company, based in North Haven, Connecticut.  The Executive will report directly to the Board of Managers of the Company (the "Board").  Executive shall have all the duties and responsibilities consistent with her position as the Company's President.

(b)     During the Term, Executive shall be responsible for all segments of the Company's business and all other officers of the Company (excepting the CEO), or any other employee of the Company as so determined by the Executive, shall report to Executive.

(c)     The Company will indemnify and hold Executive harmless if Executive is made a party, or is threatened to be made a party, to any threatened, pending or completed action, suit or proceeding, whether civil or criminal, administrative, or investigative, whether formal or informal, including any action or suit by or in the right of the Company (collectively a "Proceeding") arising out of or related to Executive's employment with, or service to, the Company or any affiliate thereof or because Executive is or was an officer, employee, or agent of the Company or any affiliate thereof, against any judgment, settlement, penalty, fine, or expenses (including, but not limited to, reasonable attorney's fees and disbursements, court costs, and expert witness fees) incurred with respect to the Proceeding, if Executive acted in a manner she believed in good faith to be in or not opposed to the best interests of the Company and, in the case of any criminal proceeding, had no reasonable cause to believe her conduct was unlawful. Any act, or failure to act, based upon authority given pursuant to a resolution duly adopted by the Board or based upon the advice of counsel for the Company or any affiliate thereof shall be conclusively presumed to be done, or omitted to be done, by Executive in good faith and in the best interest of the Company or any affiliate thereof. The Company agrees that it shall advance expenses to or on behalf of the Executive in connection with the Company's obligations pursuant to this Section 1(c).

## 2.     Key Definitions:  For purposes of this Agreement, the following words and phrases shall have the following meanings:

**"Cause"** for purposes of termination of employment of the Executive means termination by the Company for reason of (i) an intentional act of gross negligence or intentional willful misconduct by Executive against the Company which is materially injurious to the Company; or (ii) Executive's commission of an act of dishonesty, embezzlement or fraud which results in material economic loss, damage or injury to the Company; or (iii) Executive's conviction (or plea

EB-00031297

of nolo contendere) of a felony crime; provided, however, that with respect to clauses (i) and (ii) only if the Board adopts a resolution by a vote of at least 75% of its members so finding after giving Executive and her attorney an opportunity to be heard by the Board.   Any act or failure to act based upon authority given pursuant to a resolution duly adopted by the Board or based on the advice of counsel for the Company shall not constitute Cause hereunder.

**"Change of Control"** means (a) any consolidation or merger of the Company or Metro or any other transaction in which the Company, or Metro, as the case may be,  is not the continuing or surviving entity or as a result of which the holder(s) of fifty percent (50%) or more of the total fair market value or total voting power of the shares of the continuing or surviving entity are not holders of the total fair market value or total voting power of the shares of the Company, or Metro, as the case may be,  immediately prior to the transaction, or (b) there occurs the sale or transfer of all or substantially all of the assets of the Company, or Metro, as the case may be,  or the liquidation or dissolution of the Company, or Metro, as the case may be, or (c) individuals who constitute the Board of the Company effective as of the Effective Date, cease for any reason including, but not limited to, a change mandated by any statute or regulation, to constitute a voting majority of the Board of the Company.  An initial public offering of the Company will not be deemed to be a "Change of Control" for purposes of this Agreement.  Any transaction the sole purpose of which is to change the state of the Company's incorporation will not be deemed to be a "Change of Control" for purposes of this Agreement.

**"Company Board" or "Board"** means the Board of Managers of the Company.

**"Company"** means Eber-Connecticut, LLC.

**"Disability"** means that Executive has sustained sickness or injury that renders Executive incapable of performing the duties and services required of Executive hereunder for a period of 180 consecutive calendar days.

**"Good Reason,"** for purposes of resignation of employment by the Executive, shall mean resignation for reason of (a) any action by the Company or the Board resulting in a material negative change to Executive in her employment relationship with the Company, including any negative change in her authority, duties or responsibilities to be performed which are inconsistent with Executive's then current position with the Company, the conditions under which her duties are to be performed or her compensation for performing such duties (for the avoidance of doubt including any reduction in her base salary), (b) any action by the Company or the Board resulting in the Executive being required to report to a corporate officer or employee instead of reporting directly to the Board, (c) failure by the Company to pay Executive's compensation, or a failure to pay any established bonus when due and payable, (d) Executive being requested to perform any act that is unlawful or dishonest,  (e) any material change in working conditions that is materially adverse to Executive, including, without limitation, Executive's required re-location to a worksite location which is not the Executive's then current principal worksite and would increase Executive's one-way commute by more than 20 miles, without Executive's prior written consent, or (f) Executive's title being changed such that Executive's title has significantly diminished stature.  The Executive shall give written notice to the Board within 90 days of her becoming aware of the existence of any "Good Reason"

EB-00031298

condition and, if subject to cure, the Company shall have 30 days in which to cure any such condition to the reasonable satisfaction of Executive.

"**Metro**" means Eber Bros. Wine & Liquor Metro, Inc., a New York corporation.

"**Term**" means the term of this Agreement, commencing on the Effective Date and extending for 36 months; provided that this Agreement shall automatically renew and extend for a period of 36 months on each day succeeding the Effective Date, subject to earlier termination pursuant to the terms of this Agreement.

3.   **Exclusivity**:  In return for the compensation payments set forth in this Agreement, Executive agrees to devote the substantial portion of her professional time and energies to her duties under this Agreement.   During the Term, Executive shall not hold outside employment without the advance written approval of the Board; provided, that it shall not be a violation of this Agreement for Executive to (a) serve on corporate, civic or charitable boards or committees, (b) manage personal investments, or (c) take vacation days and reasonable absences due to injury or illness.

4.   **Compensation:**

(a)   <u>Base Salary</u>. Executive's base rate of compensation for the period of the Term will be at the rate of $130,000.00 per year, paid in accordance with the Company's normal payroll practices, less payroll deductions and applicable withholdings.  Such base rate of compensation will be annually reviewed in accordance with normal business practices and may be increased in the sole discretion of the Board. Notwithstanding the foregoing, effective January 1 of each year of the Term, Executive's base salary shall automatically increase based on the increase in the Consumer Price Index from January 1 of the prior calendar year  through December of the prior calendar year.

(b)   <u>Restricted Equity Grant</u>. As an inducement for Executive to agree to be employed by Company under the terms of this Agreement, subject to approval of the Board of Directors of Metro, Metro shall grant to Executive restricted shares for _2000_ shares of common stock of Metro, subject to a vesting schedule which shall provide for vesting at the rate of one third on each January 1 following the Effective Date, as set forth in a Restricted Stock Agreement to be provided upon approval of the grant by the Board of Directors of Metro. Metro agrees to seek such approval promptly upon the execution of this Agreement, and in any event not later than 90 days after the execution of this Agreement. Notwithstanding the foregoing, effective upon a Change of Control of Company or Metro, or upon a termination of Executive's employment by the Company without Cause, or upon a resignation by the Executive for Good Reason, or upon Executive's termination of employment due to Disability or upon Executive's death, all restrictions shall lapse and such shares shall become immediately fully vested.

EB-00031299

5.      **Bonus Award:** Each calendar year during the Term, Executive shall be eligible for a bonus award, less applicable taxes and withholdings, based upon the achievement of certain performance criteria mutually agreed upon between Executive and the Board and subject to a minimum profitability threshold for the Company which shall be established by the Board, reasonably and in good faith, at or before the beginning of the calendar year and communicated to Executive. The annual bonus amount shall be not less than $32,000, subject to any higher amount awarded by the Board. Performance criteria shall be set in writing within the initial 30-day day period of each calendar year; provided, that for 2012, such performance criteria shall be set in writing within the 30-day period following the execution date of this Agreement. Bonuses will be paid in a cash lump-sum amount immediately following the close of each calendar year period during the Term, with the bonus payment to be made no later than March 15 of the year immediately following the year to which each bonus relates. Executive will be entitled to a bonus payment for a particular calendar year if she is employed by the Company as of December 31 of such calendar year; provided, that if she is not actively employed on such date solely for reason of termination during such calendar year of her employment by the Company (other than for "Cause"), or the Executive's resignation during such calendar year for "Good Reason", or the Executive's Disability, or the Executive's death, during the applicable calendar year period, Executive will be entitled to the full bonus payment as if she was employed as of December 31 of such year.

6.      **Benefits**: Executive shall be eligible to participate in any and all benefit programs that the Company establishes and makes generally available to its senior executive employees from time to time. To the extent it does not create adverse tax consequences to the Company or employees generally, the Company intends to provide Executive with benefit programs at Company expense.

7.      **Vacation:** Executive shall be eligible for not less than four (4) weeks of vacation per calendar year.

8.      **Business Expenses**: The Company will reimburse Executive for all reasonable business-related expenses incurred in connection with, or related to, the performance of her duties, responsibilities or services to the Company, upon presentation to the Company of expense statements, vouchers or other supporting information, in accordance with normal Company business practices.

9.      **Severance:**

(a)      In the event of (i) the Company's termination of Executive's employment without "Cause," or (ii) the resignation by the Executive of her employment for "Good Reason" upon thirty (30) day's advance written notice, or (iii) upon the Company's termination of Executive's employment without "Cause" or Executive's resignation for "Good Reason" within twelve (12) months on or after a Change of Control, or (iv) upon the Executive's Disability, Executive shall receive,

(1) an amount equal to three (3) times Executive's then-current base salary plus an amount equal to three (3) times Executive's bonus payment for the

4819-8192-2830 v.6~

EB-00031300

year prior to the year of the termination or resignation or Disability, less applicable taxes and withholdings, payable in a single cash lump sum payment within 15 days following the date of termination or resignation or Disability, provided, that if the termination occurs before December 31, 2012, then, for purposes of determining the "bonus payment for the year prior to the year of termination", the annual bonus amount shall be deemed to equal $32,000.00, and

(2) a reimbursement for all outstanding business expenses incurred by Executive prior to termination, resignation or Disability, in accordance with the Company's normal business practices, and

(3) a monthly lump sum amount equal to a percentage of the monthly premiums for group health insurance, which shall be the same percentage of Company-paid group health insurance benefits as were provided to Executive and Executive's family under plans of the Company as of the date of the termination or resignation, for the period commencing with the month of the termination or resignation through the last day of the 18th month following the date of termination or resignation, as grossed-up for applicable taxes payable by the Executive.

(b)    In the event the Executive resigns her employment other than for "Good Reason", Executive shall receive:

(1) an amount equal to thirty (30) days of Executive's then-current base salary, less applicable taxes and withholdings, payable in a cash lump sum not later than 30 days following the date of termination of employment, and

(2) a reimbursement for all outstanding business expenses incurred by Executive prior to termination, in accordance with the Company's practices.

(c)    Executive will not be eligible for any severance or separation benefits from the Company if Executive is terminated for "Cause".

(d)    In the event of the death of the Executive during the Term, the Company shall pay to Executive's estate:

(1) an amount equal to three (3) times Executive's then-current base salary plus an amount equal to three (3) times Executive's bonus payment for the year prior to the year of death, payable in a single cash lump sum payment within 15 days following the date of death, provided, that if the death of the Executive occurs before December 31, 2012, then, for purposes of determining the "bonus payment for the year prior to the year of termination", the annual bonus amount shall be deemed to equal

EB-00031301

$32,000.00, and

(2) a reimbursement for all outstanding business expenses incurred by Executive prior to death, in accordance with the Company's normal business practices.

(e)   If Executive's employment terminates for any reason, Executive agrees to immediately resign all positions (including board memberships) Executive may hold on behalf of Company.

10.   **Change of Control Gross-up Payment:**  In the event that Executive shall become entitled to any amounts (the "Regular Amounts"), whether pursuant to the terms of this Agreement or any other plan, arrangement or agreement with the Company, any person whose actions result in a change of ownership covered by Section 280G(b)(2) of the Internal Revenue Code of 1986, as amended (the "Code"), or any person affiliated with the Company or such person, that will be subject to the tax (the "Excise Tax") imposed by Section 4999 of the Code (and any similar tax that may hereafter be imposed), the Company shall pay to Executive an additional amount (the "Gross-up Payment") such that the net amount retained by Executive after payment of all applicable federal and state taxes on the sum of the Regular Amount plus the Gross-up Payment, is equal to the net amount that would have been retained by Executive after payment of all applicable federal and state taxes on the Regular Amount if it had not been subject to the Excise Tax.   Any such Gross-up Payment shall be paid to Executive not later than the close of the tax year in which Executive remits such taxes.

All calculations and determinations under this Section 10 will be made by an independent accounting firm or independent tax counsel appointed by the Company (the "Tax Counsel") whose determinations shall be conclusive and binding on the Company and the Executive for all purposes.  For purposes of making the calculations and determinations required by this Section 10, the Tax Counsel may rely on reasonable, good faith assumptions and approximations concerning the application of Section 280G and Section 4999 of the Code.  The Company and the Executive shall furnish the Tax Counsel with such information and documents as the Tax Counsel may reasonably request in order to make its determinations under this Section 10.  The Company shall bear all costs of the Tax Counsel as reasonably incurred in connection with Tax Counsel services.

11.   **Integration and Choice of Law:** This is the sole agreement between the parties describing Executive's employment with the Company and her duties with respect to the Company.  All prior agreements, written or oral, describing Executive's employment with the Company, are of no further force and effect. The provisions of this Agreement may be modified, amended or terminated only through a written document executed by the parties. This Agreement shall be interpreted and construed by the laws of the State of Connecticut, without regard to its conflict of laws provisions.  Any controversy which may arise between Executive and the Company with respect to the construction, interpretation or application of any of the terms, provisions, covenants or conditions of this Agreement or any claim arising from or relating to this Agreement will be submitted to final and binding arbitration in New Haven, Connecticut or in any other mutually acceptable location in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association then in effect. The

EB-00031302

Company agrees that it shall bear the full cost of the Arbitrator's fee as well as any other expense or cost that is unique to arbitration. Executive and the Company will each pay their own attorneys' fees incurred in connection with the arbitration, and the Arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the Arbitrator will have the authority to make an award of attorneys' fees as required or permitted by applicable law. If there is a dispute as to whether the Company or Executive is the prevailing party in the arbitration, the Arbitrator will decide this issue.

12.     **Notices:** Any notice given hereunder will be sufficient if in writing, and if delivered by hand or sent by overnight or express mail service, signature required, to the address as Executive or the Company, as the case may be, from time to time designate in writing to the other, and shall be deemed given and effective as of the date of its delivery.

13.     **Waiver of Breach:** No waiver by either party hereto of a breach of any provision of this Agreement by the other party, or of compliance with any condition or provision of this Agreement to be performed by such other party, will operate or be construed as a waiver of any subsequent breach by such other party or any similar or dissimilar provision or condition at the same or any subsequent time. The failure of either party hereto to take any action by reason of any breach will not deprive such party of the right to take action at any time while such breach continues.

14.     **Assignment:** Neither this Agreement nor any rights or obligations hereunder shall be assignable or otherwise subject to hypothecation by Executive (except by will or by operation of the laws of intestate succession) or by the Company, except that the Company shall assign this Agreement to any successor (whether by merger, purchase or otherwise) to all or substantially all of the equity, assets or businesses of the Company and shall require, as a condition of any such transaction, that such successor expressly agrees to assume the obligations of the Company hereunder.

15.     **Code Section 409A:**

(a)     To the extent that payments under this Agreement do not qualify for an exception to the application of the requirements of Section 409A of the Code, this Agreement is intended to meet the requirements of Section 409A of the Code, and shall be interpreted and construed consistent with that intent.

(b)     Notwithstanding any other provision of this Agreement, to the extent that the right to any payment (including the provision of benefits) hereunder provides for the "deferral of compensation" within the meaning of Section 409A(d)(1) of the Code, the payment shall be paid (or provided) in accordance with the following:

(1) If the Executive's termination of employment is not a "Separation from Service" within the meaning of Code Section 409A and the regulations and other published guidance thereunder (including Treasury Regulation§1.409A-1(h)), then, if required in order to comply with the provisions of Section 409A of the Code, payment of the benefit amounts

EB-00031303

under Section 9 and Section 10 of this Agreement shall be delayed until such a Separation from Service occurs.

(2) If the Executive is a "Specified Employee" within the meaning of Section 409A(a)(2)(B)(i) of the Code on the date of the Executive's Separation from Service (the "Separation Date"), and if an exemption from the six (6) month delay requirement of Code Section 409A(a)(2)(B)(i) is not available, then no such payment shall be made or commence during the period beginning on the Separation Date and ending on the date that is six months following the Separation Date or, if earlier, on the date of the Executive's death.  The amount of any payment that would otherwise be paid to the Executive during this period shall instead be paid to the Executive on the first day of the first calendar month following the end of the period.

(3) Each payment under this Agreement is intended to constitute a separate payment from each other payment for purposes of Treasury Regulation Section 1.409A-2(b)(2).

(4) Payments with respect to reimbursements of expenses or benefits or provision of fringe or other in-kind benefits shall be made on or before the last day of the calendar year following the calendar year in which the relevant expense or benefit is incurred.  The amount of expenses or benefits eligible for reimbursement, payment or provision during a calendar year shall not affect the expenses or benefits eligible for reimbursement, payment or provision in any other calendar year.

The Company and the Executive have executed this Agreement as of the dates set forth below.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument.  Each counterpart may consist of a copy hereof containing multiple signature pages, each signed by one party, but together signed by both parties hereto.

**EBER-CONNECTICUT, LLC**

By: _Lester Eber_

Print Name _LESTER EBER_
Title: _CEO_

Date: _B | 14_ , 2012

4819-8192-2830 v.6~

EB-00031304

With respect to Section 4(b):

**EBER BROS. WINE & LIQUOR METRO, INC.**

By: _____*Lester Eber*_____

_____*LESTER EBER*_____
Print Name
Title: _____*President*_____

Date: _____*August 14*_____, 2012

AGREED AND ACCEPTED:

_____*Wendy Eber*_____
Wendy Eber

_____*August 14*_____, 2012

EB-00031305

## RESOLUTIONS OF THE
## BOARD OF DIRECTORS OF
## EBER BROS. WINE AND LIQUOR CORPORATION

February 26, 2010

### Background

WHEREAS, there has been presented to Eber Bros. Wine & Liquor Metro, Inc., a New York corporation ("Metro") and a wholly owned subsidiary of Eber Bros. Wine and Liquor Corporation Metro, Inc., a New York corporation (the "Company"), a Line of Credit Note by and between Metro and Lester Eber, the Company's officer and director ("Lender"), pursuant to which Lender shall provide to Metro a revolving line of credit of up to $1,500,000 upon the terms and conditions set forth therein (the "Line of Credit Note");

WHEREAS, in connection with and to induce Lender to provide financing under the Line of Credit Note, the Company agreed to (a) guarantee to Lender the full and timely payment and performance of all of Metro's obligations thereunder pursuant to a Guaranty to be executed in favor of Lender, (b) grant a security interest in substantially all of its assets pursuant to a Security Agreement among Metro, the Company and Lender and (c) deliver other documents, agreements, pledges and/or instruments executed in connection therewith (collectively, including the Line of Credit Note, as the same may be amended, modified, replaced or restated from time to time, the "Loan Documents");

WHEREAS, the Board of Directors (the "Board") of the Company deems it to be in the best interests of Metro and the Company to enter into the Line of Credit Note and other Loan Documents to which they are a party, respectively, as described above;

WHEREAS, the members of the Board have been made aware of, and have considered, the conflict of interest inherent in the transactions contemplated by the Loan Documents and have had the opportunity to discuss the terms of the transactions contemplated by the Loan Documents.

### Resolutions

In light of the foregoing, the members of the Board, with Lester Eber abstaining, adopt the following resolutions with the foregoing Background information expressly constituting a part thereof:

NOW, THEREFORE, BE IT RESOLVED, that the Board, with Lester Eber abstaining, hereby approves the execution, delivery and performance by the Company of the Loan Documents to which it is a party;

RESOLVED FURTHER, that the Board, with Lester Eber abstaining, hereby approves the execution, delivery and performance by the Company of each of the other agreements and instruments contemplated by the Loan Documents;

PLAINTIFF'S
EXHIBIT

**152**

RESOLVED FURTHER, that any officers of the Company (the "Authorized Persons"), be and hereby are authorized and directed to do or cause to be done, in the name and on behalf of the Company, any and all such acts and things and to make, execute, acknowledge or verify, deliver and record, or file any and all certificates, notices, statements, consents, instruments, agreements, deeds, documents or papers, and to transfer such funds of the Company, as may be necessary or desirable in order to consummate the transactions approved in the foregoing resolutions;

RESOLVED FURTHER, that any acts of the Authorized Persons, or either of them, or any person or persons designated and authorized to act by the Authorized Persons, or either of them, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of those resolutions, are hereby severally ratified, confirmed, approved and adopted as acts in the name of and on behalf of the Company; and

RESOLVED FURTHER, that a copy of these resolutions shall be filed with the minutes of the proceedings of the Company.

**Wendy Eber**

| | |
|---|---|
| **From:** | Wendy Eber |
| **Sent:** | Thursday, December 15, 2016 10:03 AM |
| **To:** | Rick Hawks |
| **Cc:** | Lester Eber |
| **Subject:** | Follow up from our conversation |
| **Attachments:** | image001.jpg; ATT00001.htm; 1-main.pdf; ATT00002.htm |

Rick,

As discussed yesterday attached is a copy of the lawsuit which was filed on Friday by Dan Kleeberg, Lisa Stein and Audrey Hayes. Our attorney has told us the case has no merits.

I spoke to Lester and his attorney, he would like to move forward with closing the trust, finalizing the accounting of the Trust, and acquiring the stock of Eber Bros Wine and Liquor Immediately. We would like to move forward as soon as possible and close by end of the year.  When will the documents be ready?

Should you have further questions, feel free to contact me at 917-620-0026.

Many thanks,

Wendy Eber

PLAINTIFF'S
EXHIBIT

**153**

EB-00030956

## JOINT UNANIMOUS WRITTEN CONSENT
## OF THE
## SOLE SHAREHOLDER ENTITLED TO VOTE
## AND
## THE BOARD OF DIRECTORS OF
## EBER BROS. & CO., INC.

The undersigned, being the sole Shareholder entitled to vote and all of the members of the Board of Directors of Eber Bros. & Co., Inc., a New York corporation (the "Corporation"), hereby take the following actions which the Shareholder and Board of Directors are permitted to take without a meeting pursuant to Sections 615(a) and 708(b) of the New York Business Corporation Law:

WHEREAS, it is in the best interest of the Corporation, for PW&S, LLC to sell substantially all of its assets to Southern Wine & Spirits of Ohio, Inc. ("SWO"); and

WHEREAS, Southern Wine & Spirits of America, Inc. ("Southern") has agreed to make a loan to Eber Bros. Acquisition Corp. ("Acquisition") in the principal amount of $11,300,000 (the "Delaware Loan"), the repayment of which Delaware Loan is to be secured by all of the assets of Acquisition and is to be guaranteed by the Eber Bros. Wine and Liquor Corporation ("EBWLC"); and

WHEREAS, it is in the best interest of the Corporation for Acquisition to accept the Delaware Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Acquisition and that EBWLC guaranty the repayment of the Delaware Loan (the "Delaware Guaranty"); and

WHEREAS, Southern has agreed to make a loan to Eber Bros. Wine & Liquor Metro, Inc. ("Metro") in the principal amount of $3,000,000 (the "Connecticut Loan"), the repayment of which Connecticut Loan is to be secured by all of the assets of Metro and is to be guaranteed by EBWLC; and

WHEREAS, it is in the best interest of the Corporation for Metro to accept the Connecticut Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Metro and that EBWLC guaranty the repayment of the Connecticut Loan (the "Connecticut Guaranty"); and

WHEREAS, it is a condition to making the Delaware Loan and the Connecticut Loan that EBWLC agree that all of the obligations of EBWLC under the Delaware Guaranty and the Connecticut Guaranty be secured by a security interest in and to all of the assets of EBWLC; and

WHEREAS, it is in the best interest of the Corporation for EBWLC to grant a security interest in and to all of EBWLC's assets to secure the performance by EBWLC of all of its obligations under the Delaware Guaranty and the Connecticut Guaranty; and

PLAINTIFF'S
EXHIBIT

155

WHEREAS, it is in the best interest of EBWLC for the Corporation to settle all pending litigation that it has with and against Southern in exchange for a payment of $2,000,000; and

WHEREAS, it is in the best interest of the Corporation for Acquisition to sell to Southern for $1,800,000: (i) all of Acquisition's right, title and interest in and to Acquisition's option to purchase from ROED Transition Company, Inc. ("ROED") ROED's fifty percent (50%) ownership interest in Delaware Importers, LLC (the "Option"), and (ii) an option to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC; and

WHEREAS, upon the exercise by Southern of the option to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC, it is in the best interest of the Corporation for Acquisition to sell to Southern Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC upon the terms and conditions set forth in that certain letter agreement, dated July 5, 2007, by and between Southern Wine & Spirits of America, Inc. ("SWS") and EBWLC (the "Original Letter Agreement"), as amended by the First Amendment, dated July 27, 2007 (the "First Amendment"), the Second Amendment, dated August 4, 2007 (the "Second Amendment"), and the Third Amendment, dated August 22, 2007 (the "Third Amendment," and together with the Original Letter Agreement, the First Amendment and the Second Amendment, the "Letter Agreement"); and

WHEREAS, it is in the best interests of the Corporation for Metro to sell to Southern a fifteen percent (15%) membership interest in Eber-Connecticut, LLC upon the terms and conditions set forth in the Letter Agreement; and

WHEREAS, it is in the best interests of the Corporation for Metro to grant to Southern a right of first refusal with respect to the sale by Metro of any equity interest in, or the sale of all or substantially all of the assets of, Eber-Connecticut, LLC and Eber-Rhode Island, LLC in exchange for a payment of $100,000; and

WHEREAS, it is in the best interests of the Corporation for EBWLC to sell to Southern all of EBWLC's right, title and interest in and to the trade name "Liberty Wine Selections" in exchange for payment of $100,000.

NOW, THEREFORE, IT IS HEREBY:

RESOLVED, the Shareholder and the Board of Directors approves of PW&S, LLC selling substantially all of its assets to SWO upon the terms and conditions set forth in the Letter Agreement as further negotiated and agreed to by the Managers of PW&S, LLC, or either of them, in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorizes and approves of Acquisition accepting the Delaware Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Acquisition and of EBWLC

134782 679134.1

EB-00000460

granting to Southern the Delaware Guaranty upon the terms and conditions of a Guaranty Agreement in substantially the same form as is annexed hereto as Exhibit A, with such changes as the officers, or either of them, of EBWLC determine in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorizes and approves of Metro accepting the Connecticut Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Metro and of EBWLC granting to Southern the Connecticut Guaranty upon the terms and conditions of a Guaranty Agreement in substantially the same form as is annexed hereto as Exhibit B, with such changes as the officers, or either of them, of EBWLC determine in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorizes and approves of EBWLC granting to Southern a security interest in and to all of EBWLC's assets to secure the performance by EBWLC of all of its obligations under the Delaware Guaranty and the Connecticut Guaranty upon the terms and conditions of a Security Agreement in substantially the same form annexed hereto as Exhibit C with such changes as the officers, or either of them, of EBWLC determine in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorizes and approves of EBWLC settling all pending litigation that it has with and against Southern in exchange for a payment of $2,000,000 upon terms and conditions negotiated by the officers, or either of them, of EBWLC in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorizes and approves of Acquisition selling to Southern for $1,800,000: (i) all of Acquisition's right, title and interest in and to the Option, and (ii) an option to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC, all upon the terms and conditions as may be negotiated and agreed to by the officer's, or either of them, of Acquisition in their sole and absolute discretion; and it is further

RESOLVED, that upon the exercise by Southern of the option to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC, the Shareholder and the Board of Directors hereby authorize and approve of Acquisition selling to Southern Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC upon the terms and conditions set forth in the Letter Agreement, as such terms may be further negotiated and agreed to by the officer's, or either of them, of Acquisition in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of Metro selling to Southern a fifteen percent (15%) membership interest in Eber-Connecticut, LLC upon the terms and conditions set forth in the Letter Agreement

EB-00000461

as such terms may be further negotiated and agreed to by the officer's, or either of them, of Metro in their sole and absolute discretion; it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorizes and approves of Metro granting to Southern a right of first refusal with respect to the sale by Metro of any equity interest in, or the sale of all or substantially all of the assets of, Eber-Connecticut, LLC and Eber-Rhode Island, LLC in exchange for a payment of $100,000 upon terms and conditions negotiated and agreed to by the officer's, or either of them, of Metro; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorizes and approves of EBWLC selling to Southern all of EBWLC's right, title and interest in and to the trade name "Liberty Wine Selections" in exchange for payment of $100,000; and it is further

RESOLVED, that any and all actions heretofore taken by those persons serving as the Officers and Directors of the Corporation or any of their respective designees in furtherance of the foregoing resolutions, which actions would have been authorized by the foregoing resolutions except that such acts or actions were taken prior to the adoption of those resolutions, are hereby severally acknowledged, ratified, affirmed and adopted as acts or actions in the name of and on behalf of the Corporation.

[Remainder of Page Intentionally Left Blank]

134782 879134.1

08/29/2007   14:35   19149376855                EBER-NDC LLC                          PAGE 01/02

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007                                _____
                                                        Lester Eber, Director

Dated: August ___, 2007                                _____
                                                        Elliott W. Gumaer, Jr., Director

Dated: August ___, 2007                    THE ALLEN EBER TRUST, Shareholder

                                           By:  _____
                                                Lester Eber, Trustee

                                           By:  _____
                                                Elliott W. Gumaer, Jr., Trustee

                                           By:  Canandaigua National Bank and
                                                Trust, Trustee

                                                By:  _____
                                                     Name:
                                                     Title:

134703 879134.1

EB-00000463

08/18/2007   11:20      5082283303                          E W GUMAER                                    PAGE   01

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007

_____
Lester Eber, Director

Dated: August 28, 2007

_____
Elliott W. Gumaer, Jr., Director

Dated: August 28, 2007

THE ALLEN EBER TRUST, Shareholder

By: _____
Lester Eber, Trustee

By: _____
Elliott W. Gumaer Jr., Trustee

By:   Canandaigua National Bank and
Trust, Trustee

By: _____
Name:
Title:

*I neglected to sign as a Trustee on the fax you just received*

EB-00000464

8-28-07; 9:31AM;CNB                                      ;583550                    #  2/  2

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007

_____
Lester Eber, Director

Dated: August ___, 2007

_____
Elliott W. Gumaer, Jr., Director

Dated: August 28, 2007        THE ALLEN EBER TRUST, Shareholder

By:  _____
     Lester Eber, Trustee

By:  _____
     Elliott W. Gumaer, Jr., Trustee

By:  Canandaigua National Bank and
     Trust, Trustee

By:  _____
     Name: RICHARD H. HAWKS JR.
     Title: SR. VICE PRES., CHIEF FID. OFFICER

134782 879154.1

EB-00000465

**JOINT UNANIMOUS WRITTEN CONSENT**
**OF THE**
**SOLE SHAREHOLDER ENTITLED TO VOTE**
**AND**
**THE BOARD OF DIRECTORS OF**
**EBER BROS. WINE AND LIQUOR CORPORATION**

The undersigned, being the sole Shareholder entitled to vote and all of the members of the Board of Directors of Eber Bros. Wine and Liquor Corporation, a New York corporation (the "Corporation"), hereby take the following actions which the Shareholder and the Board of Directors are permitted to take without a meeting pursuant to Sections 615(a) and 708(b) of the New York Business Corporation Law:

WHEREAS, Southern Wine & Spirits of America, Inc. ("Southern") has agreed to make a loan to Eber Bros. Acquisition Corp. ("Acquisition") in the principal amount of $11,300,000 (the "Delaware Loan"), the repayment of which Delaware Loan is to be secured by all of the assets of Acquisition and is to be guaranteed by the Corporation; and

WHEREAS, it is in the best interest of the Corporation for Acquisition to accept the Delaware Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Acquisition and that the Corporation guaranty the repayment of the Delaware Loan (the "Delaware Guaranty"); and

WHEREAS, Southern has agreed to make a loan to Eber Bros. Wine & Liquor Metro, Inc. ("Metro") in the principal amount of $3,000,000 (the "Connecticut Loan"), the repayment of which Connecticut Loan is to be secured by all of the assets of Metro and is to be guaranteed by the Corporation; and

WHEREAS, it is in the best interest of the Corporation for Metro to accept the Connecticut Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Metro and that the Corporation guaranty the repayment of the Connecticut Loan (the "Connecticut Guaranty"); and

WHEREAS, it is a condition to making the Delaware Loan and the Connecticut Loan that the Corporation agree that all of the obligations of the Corporation under the Delaware Guaranty and the Connecticut Guaranty be secured by a security interest in and to all of the assets of the Corporation; and

WHEREAS, it is in the best interest of the Corporation to grant a security interest in and to all of the Corporation's assets to secure the performance by the Corporation of all of its obligations under the Delaware Guaranty and the Connecticut Guaranty; and

WHEREAS, it is in the best interest of the Corporation to settle all pending litigation that it has with and against Southern in exchange for a payment of $2,000,000; and

EB-00000466

WHEREAS, it is in the best interest of the Corporation for Acquisition to sell to Southern for $1,800,000: (i) all of Acquisition's right, title and interest in and to Acquisition's option to purchase from ROED Transition Company, Inc. ("ROED") ROED's fifty percent (50%) ownership interest in Delaware Importers, LLC (the "Option"), and (ii) an option to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC; and

WHEREAS, upon the exercise by Southern of the option to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC, it is in the best interest of the Corporation for Acquisition to sell to Southern Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC upon the terms and conditions set forth in that certain letter agreement, dated July 5, 2007, by and between Southern Wine & Spirits of America, Inc. ("SWS") and the Corporation (the "Original Letter Agreement"), as amended by the First Amendment, dated July 27, 2007 (the "First Amendment"), the Second Amendment, dated August 4, 2007 (the "Second Amendment"), and the Third Amendment, dated August 22, 2007 (the "Third Amendment," and together with the Original Letter Agreement, the First Amendment and the Second Amendment, the "Letter Agreement"); and

WHEREAS, it is in the best interests of the Corporation for Metro to sell to Southern a fifteen percent (15%) membership interest in Eber-Connecticut, LLC upon the terms and conditions set forth in the Letter Agreement; and

WHEREAS, it is in the best interests of the Corporation for Metro to grant to Southern a right of first refusal with respect to the sale by Metro of any equity interest in, or the sale of all or substantially all of the assets of, Eber-Connecticut, LLC and Eber-Rhode Island, LLC in exchange for a payment of $100,000; and

WHEREAS, it is in the best interests of the Corporation for the Corporation to sell to Southern all of the Corporation's right, title and interest in and to the trade name "Liberty Wine Selections" in exchange for payment of $100,000.

NOW, THEREFORE, IT IS HEREBY:

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of Acquisition accepting the Delaware Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Acquisition and that the Corporation grant to Southern the Delaware Guaranty upon the terms and conditions of a Guaranty Agreement in substantially the same form as is annexed hereto as Exhibit A, with such changes as the Authorized Officers (as defined below), or either of them, determine in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of Metro accepting the Connecticut Loan upon the terms and conditions negotiated and agreed to by the officers, or any of them, of Metro and that the Corporation grant to Southern the Connecticut Guaranty upon the terms and conditions of a Guaranty Agreement in substantially the same form as is annexed hereto as Exhibit B, with such changes as the Authorized Officers, or either of them, determine in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of the Corporation granting to Southern a security interest in and to all of the Corporation's assets to secure the performance by the Corporation of all of its obligations under the Delaware Guaranty and the Connecticut Guaranty upon the terms and conditions of a Security Agreement in substantially the same form annexed hereto as Exhibit C with such changes as the Authorized Officers, or either of them, determine in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of the Corporation settling all pending litigation that it has with and against Southern in exchange for a payment of $2,000,000 upon terms and conditions negotiated by the Authorized Officer's, or either of them, in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of Acquisition selling to Southern for $1,800,000: (i) all of Acquisition's right, title and interest in and to the Option, and (ii) an option to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC, all upon the terms and conditions as may be negotiated and agreed to by the officer's, or either of them, of Acquisition in their sole and absolute discretion; and it is further

RESOLVED, that upon the exercise by Southern of the option  to acquire Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC, the Shareholder and the Board of Directors hereby authorize and approve of Acquisition selling to Southern Acquisition's fifty percent (50%) ownership interest in Delaware Importers, LLC upon the terms and conditions set forth in the Letter Agreement, as such terms may be further negotiated and agreed to by the officer's, or either of them, of Acquisition in their sole and absolute discretion; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of Metro selling to Southern a fifteen percent (15%) membership interest in Eber-Connecticut, LLC upon the terms and conditions set forth in the Letter Agreement as such terms may be further negotiated and agreed to by the officer's, or either of them, of Metro in their sole and absolute discretion; it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of Metro to granting to Southern a right of first refusal with respect to the sale by Metro of any equity interest in, or the sale of all or substantially all of the assets of, Eber-Connecticut, LLC and Eber-Rhode Island, LLC in exchange for a payment of $100,000 upon terms and conditions negotiated and agreed to by the officer's, or either of them, of Metro; and it is further

RESOLVED, that the Shareholder and the Board of Directors hereby authorize and approve of the Corporation selling to Southern all of the Corporation's right, title and interest in and to the trade name "Liberty Wine Selections" in exchange for payment of $100,000; and it is further

RESOLVED, that Lester Eber and Lisa Semenick, or either of them (the "Authorized Officers") be, and each hereby is, authorized and directed, for and on behalf of the Corporation, to negotiate the definitive form of, and to execute and deliver, any and all documents, certificates, notes, instruments, security agreements, mortgages, assignments, pledges and other documents and agreements of any kind deemed to be necessary and appropriate to effectuate the purposes of the foregoing resolutions; and it is further

RESOLVED, that any and all actions heretofore taken by the Authorized Officers or any of their respective designees in furtherance of the foregoing resolutions, which actions would have been authorized by the foregoing resolutions except that such acts or actions were taken prior to the adoption of those resolutions, are hereby severally acknowledged, ratified, affirmed and adopted as acts or actions in the name of and on behalf of the Corporation.

[Remainder of Page Intentionally Left Blank]

134782 875571.2

EB-00000469

08/28/2007  14:35   19149376055          EBER-NDC LLC                    PAGE  82'82

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007                    _____
                                           Lester Eber, Director

Dated: August ___, 2007                    _____
                                           Lisa Semenick, Director

Dated: August ___, 2007                    _____
                                           Elliott W. Gumaer, Jr., Director

Dated: August ___, 2007           EBER BROS. & CO., INC.

                                  By: _____
                                           Lester Eber, President

134703.875571.2

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007

_____
Lester Eber, Director

Dated: August ___, 2007

*Lisa Semenick*
_____
Lisa Semenick, Director

Dated: August ___, 2007

_____
Elliott W. Gumaer, Jr., Director

Dated: August ___, 2007

EBER BROS. & CO., INC.

By: _____
Lester Eber, President

134782 575571.2

08/18/2007  11:13    5082283303          E W GUMAER                    PAGE  03

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007                 _____
                                         Lester Eber, Director

Dated: August ___, 2007                 _____
                                         Lisa Semenick, Director

Dated: August 28, 2007                   _____
                                         Elliott W. Gumaer, Jr., Director

Dated: August ___, 2007                  EBER BROS. & CO., INC.

                                         By: _____
                                             Lester Eber, President

134782 078571.2

PAGE  08/29          HARRIS BEACH PLLC 2D          15854198818          15:28   08/24/2007

EB-00000472

# JOINT UNANIMOUS WRITTEN CONSENT
## OF THE SOLE SHAREHOLDER
## AND
## THE BOARD OF DIRECTORS OF
## EBER BROS. WINE & LIQUOR METRO, INC.

The undersigned, being the sole Shareholder and all of the members of the Board of Directors of Eber Bros. Wine & Liquor Metro, Inc., a New York corporation (the "Corporation"), hereby take the following actions which the sole Shareholder and the Board of Directors are permitted to take without a meeting pursuant to Section 615(a) and Section 708(b) of the New York Business Corporation Law:

WHEREAS, Southern Wine & Spirits of America, Inc. ("Southern") has agreed to loan to the Corporation, $3,000,000 (the "Loan"), which Loan is to be collateralized by a security interest in and to all of the assets of the Corporation; and

WHEREAS, it is in the best interests of the Corporation to accept the Loan from Southern and to grant to Southern a security interest in and to all of the assets of the Corporation as collateral for the Loan; and

WHEREAS, it is in the best interests of the Corporation for Metro to sell to Southern a fifteen percent (15%) membership interest in Eber-Connecticut, LLC upon the terms and conditions set forth in that certain letter agreement, dated July 5, 2007, by and between Southern Wine & Spirits of America, Inc. ("SWS") and Eber Bros. Wine & Liquor Corporation ("Eber Bros.") (the "Original Letter Agreement"), as amended by the First Amendment, dated July 27, 2007 (the "First Amendment"), the Second Amendment, dated August 4, 2007 (the "Second Amendment"), and the Third Amendment, dated August 22, 2007 (the "Third Amendment," and together with the Original Letter Agreement, the First Amendment and the Second Amendment, the "Letter Agreement"); and

WHEREAS, it is in the best interests of the Corporation grant to Southern a right of first refusal with respect to the sale of any equity interest in, or the sale of all or substantially all of the assets of, Eber-Connecticut, LLC and Eber-Rhode Island, LLC in exchange for a payment of $100,000.

NOW, THEREFORE, IT IS HEREBY:

RESOLVED, that the sole Shareholder and the Board of Directors hereby authorize and approve the Corporation accepting the Loan from Southern, which Loan will not bear interest until the occurrence of an event of default and will be due and payable on demand of Southern, but in no event later than the date on which the Corporation closes on a transaction in which it sells to Southern a fifteen percent (15%) ownership interest in and to Eber-Connecticut, LLC, all as more specifically ser forth in a Promissory Note in substantially the same form attached hereto as Exhibit A with such changes as the Authorized Officers (as defined below), or either of them, determine in their sole and absolute discretion (the "Promissory Note"); and it is further

EB-00000473

RESOLVED, that the sole Shareholder and the Board of Directors hereby authorize and approve the Corporation granting to Southern a security interest in and to all of the Corporation's assets, including without limitation all of the Corporation's right, title and interest in and to all of the issued and outstanding ownership interests of Eber-Connecticut, LLC, upon the terms and conditions of a Security Agreement in substantially the form annexed hereto as Exhibit B, with such changes as the Authorized Officers, or either of them, determine in their sole and absolute discretion (the "Security Agreement"); and it is further

RESOLVED, that the sole Shareholder and the Board of Directors hereby authorize and approve of the Corporation selling to Southern a fifteen percent (15%) membership interest in Eber-Connecticut, LLC upon the terms and conditions set forth in the Letter Agreement as such terms may be further negotiated and agreed to by the Authorized Officer's, or either of them, in their sole and absolute discretion; it is further

RESOLVED, that the sole Shareholder and the Board of Directors hereby authorize and approve the Corporation granting to Southern a right of first refusal with respect to the sale of any equity interest in, or the sale of all or substantially all of the assets of, Eber-Connecticut, LLC and Eber-Rhode Island, LLC in accordance with terms and conditions as may be negotiated and agreed to by the Authorized Officers, or either of them, in exchange for a payment in the amount of $100,000; and it is further

RESOLVED, that Lester Eber and Lisa Semenick, or either of them (the "Authorized Officers") be, and each hereby is, authorized and directed, for and on behalf of the Corporation, to negotiate the definitive form of, and to execute and deliver, the Promissory Note and Security Agreement together with any and all other certificates, notes, instruments, security agreements, mortgages, assignments, pledges and other documents and agreements of any kind deemed to be necessary and appropriate to effectuate the purposes of the Promissory Note or the Security Agreement or as may otherwise be deemed to be reasonably necessary to effectuate the purpose of the foregoing resolutions; and it is further

RESOLVED, that any and all actions heretofore taken by the Authorized Officers, or either of them, or any of their respective designees in furtherance of the foregoing resolutions, which actions would have been authorized by the foregoing resolutions except that such acts or actions were taken prior to the adoption of those resolutions, are hereby severally acknowledged, ratified, affirmed and adopted as acts or actions in the name of and on behalf of the Corporation.

[Remainder of Page Intentionally Left Blank]

134782 885419.1

EB-00000474

Dated: August ___, 2007

_Lester Eber_
Lester Eber, Director

Dated: August ___, 2007

_Lisa Semenick_
Lisa Semenick, Director

Dated: August ___, 2007

EBER BROS. WINE AND LIQUOR
CORPORATION, Sole Shareholder

By: _Lester Eber_
Lester Eber, President

By: _Lisa Semenick_
Lisa Semenick, Chief Financial Officer

134782 B86419.1

Dated: August ___, 2007

_____
Lester Eber, Director

Dated: August ___, 2007

_____
Lisa Semenick, Director

Dated: August **28** 2007

_____
Elliot W. Gumaer, Jr., Director

Dated: August ___, 2007

EBER BROS. WINE AND LIQUOR
CORPORATION, Sole Shareholder

By: _____
Lester Eber, President

By: _____
Lisa Semeniok, Chief Financial Officer

## JOINT UNANIMOUS WRITTEN CONSENT
## OF THE BOARD OF DIRECTORS
## OF
## EBER BROS. WINE & LIQUOR METRO, INC.

The undersigned, being all of the members of the Board of Directors of Eber Bros. Wine & Liquor Metro, Inc., a New York corporation (the "Corporation"), hereby take the following actions which the Board of Directors is permitted to take without a meeting pursuant to Section 708(b) of the New York Business Corporation Law:

WHEREAS, Southern Wine & Spirits of America, Inc. ("Southern") has agreed to loan to the Corporation $3,000,000 (the "CT Loan") and to loan to Eber Bros. Acquisition Corp. $11,300,000 (the "DE Loan" and together with the CT Loan, the "Loans"); and

WHEREAS, it is a condition to making the Loans that Eber-Connecticut, LLC ("Eber-CT") guaranty the repayment of the Loans; and

WHEREAS, it is in the best interests of the Corporation, as the sole member of Eber-CT, for Eber-CT to guaranty repayment of the Loans.

NOW, THEREFORE, IT IS HEREBY:

RESOLVED, that the Board of Directors, in its capacity as the Board of Directors of the sole member of Eber-CT, hereby authorize and approve of Eber-CT guarantying the repayment of the Loans upon the terms and conditions of a certain Guaranty Agreement, in the form attached hereto as Exhibit A with such changes as the Authorized Officers (as defined below), or either of them, determine in their sole and absolute discretion (the "Guaranty"); and it is further

RESOLVED, that Lester Eber and Lisa Semenick, or either of them (the "Authorized Officers") be, and each hereby is, authorized and directed, for and on behalf of the Corporation, to negotiate the definitive form of, and to execute and deliver, the Guaranty together with any and all other certificates, notes, instruments, security agreements, mortgages, assignments, pledges and other documents and agreements of any kind deemed to be necessary and appropriate to effectuate the purposes of the Guaranty or as may otherwise be deemed to be reasonably necessary to effectuate the purpose of the foregoing resolutions; and it is further

RESOLVED, that any and all actions heretofore taken by the Authorized Officers, or either of them, or any of their respective designees in furtherance of the foregoing resolutions, which actions would have been authorized by the foregoing resolutions except that such acts or actions were taken prior to the adoption of those resolutions, are hereby severally acknowledged, ratified, affirmed and adopted as acts or actions in the name of and on behalf of the Corporation.

[Remainder of Page Intentionally Left Blank]

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007

_____
Lester Eber, Director

Dated: August ___, 2007

_____
Lisa Semenick, Director

Dated: August ___, 2007

_____
Elliott W. Gumaer, Jr., Director

EB-00000478

This Unanimous Written Consent may be signed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

Dated: August ___, 2007

*Lester Eber*
_____
Lester Eber, Director

Dated: August ___, 2007

_____
Lisa Semenick, Director

Dated: August ___, 2007

_____
Elliott W. Gumaer, Jr., Director

Safe, accurate, FAST! Use  **e-file**  Visit the IRS Web Site

# 2010 W-2 and EARNINGS SUMMARY

**Employee Reference Copy**

**W-2 Wage and Tax Statement 2010**
OMB No. 1545-0008

Copy C for employee's records.

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail. The reverse side includes general information that you may also find helpful.

| d Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 001130 09/49A | 001 | A | 1 |

c Employer's name, address, and ZIP code

EBER BROS WINE & LIQUOR CORP
95 ALLENS CREEK RD
ROCHESTER NY 14618

Batch #01049

**1. The following information reflects your final 2010 pay stub plus any adjustments submitted by your employer.**

| | | | |
|---|---|---|---|
| Gross Pay | 182013.92 | Social Security Tax Withheld Box 4 of W-2 | 6621.60 | NY. State Income Tax Box 17 of W-2 | 8672.23 |
| | | | | SUI/SDI Box 14 of W-2 | |
| Fed. Income Tax Withheld Box 2 of W-2 | 27210.54 | Medicare Tax Withheld Box 6 of W-2 | 2358.43 | | |

**2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.**

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | NY. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 182,013.92 | 182,013.92 | 182,013.92 | 182,013.92 |
| Less 401(k) (D-Box 12) | 16,500.00 | N/A | 16,500.00 | 16,500.00 |
| Less Medical FSA | 2,250.04 | 2,250.04 | 2,250.04 | 2,250.04 |
| Less Other Cafe 125 | 17,113.72 | 17,113.72 | 17,113.72 | 17,113.72 |
| Wages Over Limit | N/A | 55,850.16 | N/A | N/A |
| Reported W-2 Wages | 146,150.16 | 106,800.00 | 162,650.16 | 146,150.16 |

e/f Employee's name, address, and ZIP code

LESTER EBER
15 CORAL WAY
ROCHESTER,NY 14618

| b Employer's FED ID number | a Employee's SSA number |
|---|---|
| 16-0417450 | |

| 1 Wages, tips, other comp. 146150.16 | 2 Federal income tax withheld 27210.54 |
| 3 Social security wages 106800.00 | 4 Social security tax withheld 6621.60 |
| 5 Medicare wages and tips 162650.16 | 6 Medicare tax withheld 2358.43 |
| 7 Social security tips | 8 Allocated tips |
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12  D 16500.00 |
| 14 Other | 12b / 12c / 12d |

| 15 State NY | Employer's state ID no. 16-0417450 | 16 State wages, tips, etc. 146150.16 |
| 17 State income tax 8672.23 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**3. Employee W-4 Profile.** To change your Employee W-4 Profile information, file a new W-4 with your payroll dept.

LESTER EBER
15 CORAL WAY
ROCHESTER,NY 14618

Social Security Number:
Taxable Marital Status: MARRIED

Exemptions/Allowances:
FEDERAL: 0
STATE: 0

© 2010 ADP, INC.

--- Fold and Detach Here ---

**Copy 1** (Federal Filing Copy)

| 1 Wages, tips, other comp. 146150.16 | 2 Federal income tax withheld 27210.54 |
| 3 Social security wages 106800.00 | 4 Social security tax withheld 6621.60 |
| 5 Medicare wages and tips 162650.16 | 6 Medicare tax withheld 2358.43 |
| d Control number 001130 09/49A | Dept. 001 | Corp. A | Employer use only 1 |

c Employer's name, address, and ZIP code
EBER BROS WINE & LIQUOR CORP
95 ALLENS CREEK RD
ROCHESTER NY 14618

| b Employer's FED ID number 16-0417450 | a Employee's SSA number |
| 7 Social security tips | 8 Allocated tips |
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12  D 16500.00 |
| 14 Other | 12b / 12c / 12d | 13 Stat emp. Ret. plan X 3rd party sick pay |

e/f Employee's name, address, and ZIP code
LESTER EBER
15 CORAL WAY
ROCHESTER,NY 14618

| 15 State NY | Employer's state ID no. 16-0417450 | 16 State wages, tips, etc. 146150.16 |
| 17 State income tax 8672.23 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2 Wage and Tax Statement 2010**  Federal Filing Copy
OMB No. 1545-0008
Copy B to be filed with employee's Federal Income Tax Return.

**Copy 2** (NY. State Reference Copy)

| 1 Wages, tips, other comp. 146150.16 | 2 Federal income tax withheld 27210.54 |
| 3 Social security wages 106800.00 | 4 Social security tax withheld 6621.60 |
| 5 Medicare wages and tips 162650.16 | 6 Medicare tax withheld 2358.43 |
| d Control number 001130 09/49A | Dept. 001 | Corp. A | Employer use only 1 |

c Employer's name, address, and ZIP code
EBER BROS WINE & LIQUOR CORP
95 ALLENS CREEK RD
ROCHESTER NY 14618

| b Employer's FED ID number 16-0417450 | a Employee's SSA number |
| 7 Social security tips | 8 Allocated tips |
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a  D 16500.00 |
| 14 Other | 12b / 12c / 12d | 13 Stat emp. Ret. plan X 3rd party sick pay |

e/f Employee's name, address, and ZIP code
LESTER EBER
15 CORAL WAY
ROCHESTER,NY 14618

| 15 State NY | Employer's state ID no. 16-0417450 | 16 State wages, tips, etc. 146150.16 |
| 17 State income tax 8672.23 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2 Wage and Tax Statement 2010**  NY. State Reference Copy
OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax Return.

**Copy 3** (NY. State Filing Copy)

| 1 Wages, tips, other comp. 146150.16 | 2 Federal income tax withheld 27210.54 |
| 3 Social security wages 106800.00 | 4 Social security tax withheld 6621.60 |
| 5 Medicare wages and tips 162650.16 | 6 Medicare tax withheld 2358.43 |
| d Control number 001130 09/49A | Dept. 001 | Corp. A | Employer use only 1 |

c Employer's name, address, and ZIP code
EBER BROS WINE & LIQUOR CORP
95 ALLENS CREEK RD
ROCHESTER NY 14618

| b Employer's FED ID number 16-0417450 | a Employee's SSA number |
| 7 Social security tips | 8 Allocated tips |
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a  D 16500.00 |
| 14 Other | 12b / 12c / 12d | 13 Stat emp. Ret. plan X 3rd party sick pay |

e/f Employee's name, address, and ZIP code
LESTER EBER
15 CORAL WAY
ROCHESTER,NY 14618

| 15 State NY | Employer's state ID no. 16-0417450 | 16 State wages, tips, etc. 146150.16 |
| 17 State income tax 8672.23 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2 Wage and Tax Statement 2010**
OMB No. 1545-0008

PLAINTIFF'S EXHIBIT 155

## Lester Eber

| | |
|---|---|
| **From:** | Rick Hawks <RHawks@cnbank.com> |
| **Sent:** | Tuesday, September 06, 2011 10:22 AM |
| **To:** | 'Elliott Gumaer'; Lester Eber |
| **Subject:** | RE: Lisa Kleeberg Stein Financial Request   -- Eber Family Trust |

Lester and Elliot -- Per each of your responses, I will initiate a conference call at 4 pm. Weds. 9/7/11.   Lester, I will call you at 585-738-5925.   Elliot, please e-mail a number for me to reach you at.   Thank you. -- Rick Hawks

**From:** Elliott Gumaer [mailto:egumaer1@yahoo.com]
**Sent:** Sunday, September 04, 2011 6:02 PM
**To:** l.eber@eberbros.com; Rick Hawks
**Subject:** Re: Lisa Kleeberg Stein Financial Request -- Eber Family Trust

**Rick and Lester,  I will be available from 4PM on on Wednesday, September 7.  Please confirm that this date and time is agreeable to you both.  Best, Mike**

**--- On Thu, 9/1/11, Rick Hawks <RHawks@cnbank.com> wrote:**

From: Rick Hawks <RHawks@cnbank.com>
Subject: Lisa Kleeberg Stein Financial Request -- Eber Family Trust
To: "EGumaer@nixonpeabody.com" <EGumaer@nixonpeabody.com>, "egumaer1@yahoo.com" <egumaer1@yahoo.com>, "l.eber@eberbros.com" <l.eber@eberbros.com>
Date: Thursday, September 1, 2011, 5:57 PM

Lester and Elliot --  I have responded to Lisa that the Trustees are reviewing the request.  There is merit to her request but  we as trustees have several  issues administratively we need to ask and answer before we can approve her request.  First, this is a family trust with multiple income beneficiaries and remaindermen designed to protect family assets from creditors claims and undo medical expenses.  Article 9  (page 10 and 11 of the will) states the " trustees to pay to any income beneficiary under this "ninth" such amounts of principal as it, in its absolute discretion, may deem necessary or advisable for the care maintenance or welfare of any such beneficiary or member of his or her family, provided, however, that any such principal payment shall be charged against the trust from which such beneficiary shall be entitled to receive income…. " .  As trustees, we need to be concerned of making principal distributions to a third level beneficiary  without the other beneficiaries  having knowledge or authorizing with consent.                                                        I would like to discuss the concerns among the trustees and would suggest a conference call on Sept. 7, 2011anytime from 2pm to 5 pm.  Let me know if that works  for each of you and the # to reach you at.  Thank You.  Rick Hawks

1


PLAINTIFF'S
EXHIBIT
**156**

# THE CANANDAIGUA NATIONAL BANK
## AND TRUST COMPANY

**72 South Main Street**
**Canandaigua, New York 14424**

Richard H. Hawks, Jr.
Senior V.P. & Trust Officer

(585) 394-4260 Ext. 36040
Fax (585) 394-4001

September 20, 2011

Mrs. Sally Kleeberg
83 Aster Pl
Amherst, NY 14501

Re:  Allen Eber Trust

Dear Mrs. Kleeberg:

Recently, the Trustees of the Allen Eber Family Trust received a request from Lisa Kleeberg Stein to provide financial support to Erica Stein for many of the ongoing medical expenses associated with her health. The Trustees have reviewed the request along with the trust provisions and have determined a monthly distribution can be made but would require the consent from each of the trust remainderman. The distributions will be made from principal and a record of payments made will be charged against the trust from which such beneficiary (family) final distributions shall be made.

At this time, we would ask for your consent to begin a monthly distribution to Erica to assist in meeting her living & medical expense. I ask that you sign the attached copy of this letter where indicated and return it to us in the enclosed envelope.

Thank you for your prompt return of the consent form.

Sincerely,

Richard H. Hawks, Jr.
Senior Vice President &
Trust Officer

I consent to distributions outlined in the above letter.

_____
Sally Kleeberg

PLAINTIFF'S
EXHIBIT

**157**

EB-00030961

# THE CANANDAIGUA NATIONAL BANK
## AND TRUST COMPANY

**72 South Main Street**
**Canandaigua, New York 14424**

Richard H. Hawks, Jr.
Senior V.P. & Trust Officer

(585) 394-4260 Ext. 36040
Fax (585) 394-4001

September 20, 2011

Mr. Lester Eber
Bldg 2 Ste 10
95 Allens Creek Rd
Rochester NY  14618

*Re: Allen Eber Trust*

Dear Mr. Eber:

Recently, the Trustees of the Allen Eber Family Trust received a request from Lisa Kleeberg Stein to provide financial support to Erica Stein for many of the ongoing medical expenses associated with her health. The Trustees have reviewed the request along with the trust provisions and have determined a monthly distribution can be made. The distributions will be made from principal and we will keep a record of payments made. Upon termination of the trust, the amount of the distributions to Erica will be charged against the appropriate family.

At this time, we would ask for your consent to begin a monthly distribution to Erica to assist in meeting her living & medical expense. I ask that you sign the attached copy of this letter where indicated and return it to us in the enclosed envelope.

Thank you for your prompt return of the consent form.

Sincerely,

Richard H. Hawks, Jr.
Senior Vice President &
Trust Officer

I consent to distributions outlined in the above letter.

Lester Eber

# THE CANANDAIGUA NATIONAL BANK
## AND TRUST COMPANY

**72 South Main Street**
**Canandaigua, New York 14424**

Richard H. Hawks, Jr.
Senior V.P. & Trust Officer

(585) 394-4260 Ext. 36040
Fax (585) 394-4001

September 20, 2011

Ms. Wendy Eber
524 E 72nd St  Apt 31C
The Belaire Condominum
New York NY  10021

*Re:  Allen Eber Trust*

Dear Ms. Eber:

Recently, the Trustees of the Allen Eber Family Trust received a request from Lisa Kleeberg Stein to provide financial support to Erica Stein for many of the ongoing medical expenses associated with her health. The Trustees have reviewed the request along with the trust provisions and have determined a monthly distribution can be made. The distributions will be made from principal and we will keep a record of payments made. Upon termination of the trust, the amount of the distributions to Erica will be charged against the appropriate family.

At this time, we would ask for your consent to begin a monthly distribution to Erica to assist in meeting her living & medical expense. I ask that you sign the attached copy of this letter where indicated and return it to us in the enclosed envelope.

Thank you for your prompt return of the consent form.

~~Sincerely,~~

Richard H. Hawks, Jr.
Senior Vice President &
Trust Officer

I consent to distributions outlined in the above letter.

_____
Wendy Eber

EB-00020848

## EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)

### (A DELAWARE LIMITED LIABILITY COMPANY)

FINANCIAL STATEMENTS
AND
SUPPLEMENTAL SCHEDULES
FOR THE YEARS ENDED
MAY 31, 2012 AND 2011
AND
INDEPENDENT AUDITORS' REPORT



PLAINTIFF'S
EXHIBIT

158

## EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)

(A Delaware Limited Liability Company)

May 31, 2012 and 2011

### TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **INDEPENDENT AUDITORS' REPORT** | 1 |
| **FINANCIAL STATEMENTS** | |
| Balance sheets | 2 |
| Statements of operations and members' equity | 3 |
| Statements of cash flows | 4 |
| Notes to financial statements | 5 - 9 |
| **SUPPLEMENTAL SCHEDULES** | |
| Cost of goods sold | 10 |
| Selling and delivery expenses | 11 |
| Administrative expenses | 12 |



**DAVIE KAPLAN**
Certified Public Accountants

## INDEPENDENT AUDITORS' REPORT

To the Members
Eber - Connecticut, LLC (D/B/A Slocum & Sons)

We have audited the accompanying balance sheets of Eber - Connecticut, LLC (D/B/A Slocum & Sons) (a Delaware limited liability company) as of May 31, 2012 and 2011, and the related statements of operations and members' equity, and cash flows for the years then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Eber - Connecticut, LLC (D/B/A Slocum & Sons) as of May 31, 2012 and 2011, and the results of its operations and its cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America.

Our audits were conducted for the purpose of forming an opinion on the financial statements as a whole. The supplemental schedules of cost of goods sold, selling and delivery expenses, and administrative expenses are presented for purposes of additional analysis and are not a required part of the financial statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the financial statements. The information has been subjected to the auditing procedures applied in the audit of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated in all material respects in relation to the financial statements as a whole.

*Davie Kaplan, CPA, P.C.*

February 4, 2013

-1-

EB-00019512

## EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)

(A Delaware Limited Liability Company)

Balance Sheets
May 31, 2012 and 2011

### ASSETS

| | 2012 | 2011 |
|---|---|---|
| **Current assets** | | |
| Cash | $ 586,188 | $ 412,972 |
| Accounts receivable, net of allowance for doubtful accounts of $50,000 in 2012 and 2011 | 3,969,236 | 4,237,688 |
| Inventory, net of allowance for obsolescence of $150,000 in 2012 and $130,000 in 2011 | 7,801,306 | 8,401,491 |
| Prepaid expenses and other current assets | 91,933 | 86,447 |
| | 12,448,663 | 13,138,598 |
| **Property, plant and equipment** | | |
| Leasehold improvements | 666,007 | 640,379 |
| Office furniture and equipment | 1,858,385 | 1,853,988 |
| Automobiles and trucks | 75,217 | 82,601 |
| | 2,599,609 | 2,576,968 |
| Less: Accumulated depreciation | 1,908,985 | 1,815,973 |
| | 690,624 | 760,995 |
| | $ 13,139,287 | $ 13,899,593 |

The accompanying Notes to Financial Statements
are an integral part of these statements.

## LIABILITIES AND MEMBERS' EQUITY

|  | 2012 | 2011 |
|---|---|---|
| **Current liabilities** | | |
| Demand note payable | $ 500,000 | $ - |
| Current portion of term note payable | 206,292 | 3,770,000 |
| Accounts payable | 3,768,789 | 3,907,642 |
| Accrued beverage taxes | 97,019 | 69,533 |
| Accrued payroll and payroll taxes | 119,324 | 147,447 |
| Other accrued expenses | 228,256 | 305,940 |
| | 4,919,680 | 8,200,562 |
| **Long-term liabilities** | | |
| Term note payable, net of current portion | 2,883,708 | - |
| **Members' equity** | 5,335,899 | 5,699,031 |
| | $ 13,139,287 | $ 13,899,593 |

-2-

EB-00019514

## EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)

(A Delaware Limited Liability Company)

Statements of Operations and Members' Equity
For the Years Ended May 31, 2012 and 2011

| | 2012 | % of Sales | 2011 | % of Sales |
|---|---|---|---|---|
| **Sales** | $ 36,383,755 | 100.0 | $ 36,890,281 | 100.0 |
| **Cost of goods sold** | 27,946,902 | 76.8 | 28,606,509 | 77.5 |
| **Gross profit** | 8,436,853 | 23.2 | 8,283,772 | 22.5 |
| **Selling expenses** | 3,531,098 | 9.7 | 3,570,412 | 9.7 |
| **Delivery expenses** | 2,249,646 | 6.2 | 2,152,498 | 5.8 |
| **Administrative expenses** | 2,955,169 | 8.1 | 3,248,159 | 8.8 |
| | 8,735,913 | 24.0 | 8,971,069 | 24.3 |
| **Loss from operations** | (299,060) | (0.8) | (687,297) | (1.8) |
| **Other income (expense)** | | | | |
| Other income | 165,747 | 0.5 | - | - |
| Interest expense | (227,269) | (0.6) | (221,503) | (0.6) |
| Loss on sale of equipment | (2,550) | - | - | - |
| | (64,072) | (0.1) | (221,503) | (0.6) |
| **Net loss** | (363,132) | (0.9) | (908,800) | (2.4) |
| **Members' equity, beginning** | 5,699,031 | | 6,607,831 | |
| **Members' equity, ending** | $ 5,335,899 | | $ 5,699,031 | |

The accompanying Notes to Financial Statements
are an integral part of these statements.

-3-

EB-00019515

**EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)**

(A Delaware Limited Liability Company)

Statements of Cash Flows
For the Years Ended May 31, 2012 and 2011

|  | 2012 | 2011 |
|---|---|---|
| **Cash flows from operating activities** | | |
| Net loss | $ (363,132) | $ (908,800) |
| Adjustments to reconcile net loss to net cash provided by operating activities | | |
| Depreciation | 94,837 | 147,334 |
| Loss on sale of equipment | 2,550 | - |
| Increase (decrease) in inventory allowance for obsolescence | 20,000 | (20,000) |
| | (245,745) | (781,466) |
| Increase (decrease) in cash due to changes in operating assets and liabilities | | |
| Accounts receivable | 268,452 | (383,026) |
| Inventory | 580,185 | 1,329,010 |
| Prepaid expenses and other current assets | (5,486) | 25,830 |
| Accounts payable | (138,853) | 351,364 |
| Accrued beverage taxes | 27,486 | (33,608) |
| Accrued payroll and payroll taxes | (28,123) | (111,900) |
| Other accrued expenses | (77,684) | (10,489) |
| | 380,232 | 385,715 |
| **Cash flows from investing activities** | | |
| Acquisition of property, plant and equipment | (30,016) | (148,801) |
| Proceeds from sale of equipment | 3,000 | - |
| | (27,016) | (148,801) |
| **Cash flows from financing activities** | | |
| Repayments of long-term debt | (180,000) | (130,000) |
| **Net increase in cash** | 173,216 | 106,914 |
| **Cash, beginning** | 412,972 | 306,058 |
| **Cash, ending** | $ 586,188 | $ 412,972 |

The accompanying Notes to Financial Statements
are an integral part of these statements.

EB-00019516

|  | 2012 | 2011 |
|---|---|---|
| **Supplemental disclosure of cash flow Information** | | |
| Interest paid | $ 209,496 | $ 221,503 |
| **Non-cash financing activity** | | |
| Conversion of term note payable to demand note payable | $ 500,000 | $ - |

-4-

EB-00019517

**EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)**

(A Delaware Limited Liability Company)

Notes to Financial Statements
May 31, 2012 and 2011

1. **Description of Business**

   Eber-Connecticut, LLC (D/B/A Slocum & Sons) ("the Company"), is in the business of wholesale wine and liquor distribution in the state of Connecticut. The Company extends credit to customers in the normal course of business.

2. **Summary of Significant Accounting Policies**

   Use of estimates

   The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

   Concentrations of credit risk

   Financial instruments that potentially subject the Company to concentrations of credit risk are trade receivables and cash in bank. Due to the large number and diversity of the Company's customer base, concentrations of credit risk are minimal. The Company maintains deposits which may exceed the federally insured amount at times.

   Accounts receivable

   The Company uses the reserve for bad debt method of valuing doubtful accounts receivable which is based on historical experience, coupled with a review of the current status of existing receivables.

   Inventory

   Inventory is stated primarily at the lower of cost, based upon the first-in, first-out (FIFO) method of accounting, or market.

   Property, plant, equipment and depreciation

   Property and equipment are stated at cost, less accumulated depreciation. Depreciation is computed using the straight-line and declining balance methods over the estimated useful lives of the assets as follows:

   | | |
   |---|---|
   | Leasehold improvements | 10 - 40 years |
   | Office furniture and equipment | 5 - 10 years |
   | Automobiles and trucks | 3 - 10 years |

-5-

EB-00019518

**EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)**

(A Delaware Limited Liability Company)

Notes to Financial Statements
May 31, 2012 and 2011

2.   **Summary of Significant Accounting Policies** (Continued)

Property, plant, equipment and depreciation (Continued)

Expenditures for repairs and maintenance are charged against operations. Renewals and betterments that materially extend the life of the assets are capitalized.

Income taxes

No provision or benefit for income taxes has been included in these financial statements since taxable income or loss passes through to, and is reportable by, the members individually.

The Company is subject to U.S. Federal tax filings as well as filings in various state jurisdictions. Returns filed in these jurisdictions for tax years ended on or after May 31, 2009 are subject to examination by authorities.

Liability of the members

The members of the Company shall not be liable to any other person for losses or damages incurred under acts of good faith in carrying out the responsibilities of the Company. Any indemnity shall be paid out of and to the extent of Company assets. The members shall be liable for fraud, bad faith, illegal acts or gross negligence.

Shipping and handling

Shipping and handling costs are classified as delivery expenses in the accompanying statements of operations.

Advertising

Advertising costs are generally expensed as incurred.

Subsequent events

The Company evaluated events occurring between the end of the most recent fiscal year and February 4, 2013, the date the financial statements were available to be issued.

-6-

EB-00019519

**EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)**

(A Delaware Limited Liability Company)

Notes to Financial Statements
May 31, 2012 and 2011

3.   **Note Payable**

|  | 2012 | 2011 |
|---|------|------|
| Note payable to a bank, originally due in monthly installments of $15,000, plus interest at the prime rate plus 2.5%. An interest rate floor of 4% was established for the term of the loan. The note was collateralized by substantially all business assets and an assignment of a certificate of deposit in the amount of $500,000 in the name of an officer. The note was guaranteed by an officer and affiliates of the Company. In January, 2013, the note payable was refinanced (see **Note 10, Subsequent Event**). | $3,590,000 | $3,770,000 |

The prime rate was 3.25% at May 31, 2012.

4.   **Related Party Transactions**

Accounts payable

Amounts due to affiliates included in the accounts payable balance in the accompanying balance sheets amounted to $369,793 and $324,319 at May 31, 2012 and 2011, respectively. Amounts included in purchases from affiliates amounted to $3,116,813 and $3,467,099 for 2012 and 2011, respectively.

5.   **Retirement Plan**

The Company participates in a multi-employer profit sharing 401(k) plan for eligible employees. Employees must be at least 21 years of age and complete six months of service to be eligible. The Company may make discretionary profit-sharing contributions equal to 3% of base annual compensation to all participants who are employed by the Company on December 31. The Company made no profit sharing contribution in 2012 and 2011.

6.   **Commitments and Contingencies**

The Company leases warehouse and office space and certain equipment under operating leases which expire in various years through 2015. The Company is obligated to pay property taxes and other costs associated with the use of the property. Total rental expense under operating leases was $503,717 and $520,911 for 2012 and 2011, respectively. Minimum future rental payments under these non-cancelable operating leases are:

| Year | Amount |
|------|--------|
| 2013 | $  448,925 |
| 2014 | 406,481 |
| 2015 | 366,974 |
|  | $1,222,360 |

-7-

EB-00019520

**EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)**

(A Delaware Limited Liability Company)

Notes to Financial Statements
May 31, 2012 and 2011

7.   **Advertising**

Advertising expense amounted to $6,159 and $7,550 for the years ended May 31, 2012 and 2011, respectively.

8.   **Shipping and Handling Costs**

Shipping and handling costs classified as delivery expenses in the accompanying statements of operations amounted to $2,249,646 and $2,152,498 for the years ended May 31, 2012 and 2011, respectively.

9.   **Restructuring Charges**

In May, 2009, the Company recorded charges associated with certain employment contracts as well as severance costs. The employment contracts provide ongoing compensation and certain benefits to two employees who no longer provide services or benefit to the Company. As a result, the Company fully accrued for the related costs as of May 31, 2009. The total charge was approximately $685,000 and was reflected primarily as administrative expenses in the accompanying Statements of Operations. The remaining accrual is included in Other accrued expenses on the balance sheet. Future payments related to these restructuring charges are:

| Year | Amount |
|------|--------|
| 2013 | $ 76,260 |
| 2014 | 66,260 |
| 2015 | 16,260 |
| 2016 | 9,264 |
| 2017 | 9,264 |
| Thereafter | 4,632 |
| | $ 181,940 |

10.  **Subsequent Event**

Refinance

In January, 2013, the Company refinanced its existing term loan (see **Note 4**) to a new term loan and a demand note. Beginning in March, 2013, the term loan is due in equal monthly installments of $33,250, including interest at the prime rate plus 2.75%, through February, 2014. Beginning in March, 2014, the term loan will be due in equal monthly installments of principal and interest at the prime rate plus 2.75% (approximately $45,300 at the current effective interest rate of 6%), through February, 2020. An interest rate floor of 4% has been established for the term of the loan. The aggregate maturity for the term note payable is as follows:

-8-

EB-00019521

**EBER - CONNECTICUT, LLC (D/B/A SLOCUM & SONS)**

(A Delaware Limited Liability Company)

Notes to Financial Statements
May 31, 2012 and 2011

10.   Subsequent Event (Continued)

Refinance (Continued)

| Year | Amount |
|------|--------|
| 2013 | $ 206,292 |
| 2014 | 268,628 |
| 2015 | 397,509 |
| 2016 | 422,026 |
| 2017 | 448,056 |
| Thereafter | 1,347,489 |
| | $3,090,000 |

The demand note payable is in the principal amount of $500,000 and requires interest only payments beginning in March, 2013 at the prime rate plus 1.5%. An interest rate floor of 4% has been established for the term of the loan.

The term loan payable and the demand note payable are secured by substantially all assets of the Company as well as an assignment of marketable securities and a certificate of deposit in the amount of $120,000 and $500,000, respectively, owned by an officer. The term loan payable and the demand note payable are guaranteed by an officer and affiliates of the Company for the full amount borrowed. The term loan payable and the demand note payable are subject to certain financial covenants effective beginning with the year ended May 31, 2014.

-9-

Mar. 9. 2012 3:06PM                                                          No. 9470   P. 2

STATE OF NEW YORK
SUPREME COURT            COUNTY OF MONROE

---

ALEXBAY, LLC,

                                    Plaintiff,                    Index No.:
                                                                 2012-1919
            vs.

EBER BROS. WINE & LIQUOR CORP.;                                  **STIPULATION**
SOUTHERN WINE & SPIRITS
OF AMERICA, INC.;
EBER BROS. WINE & LIQUOR METRO, INC.;
and JOHN DOES 1 – 10, being fictitious names
intended to designate other entities or persons
claiming any interest in Eber Bros. Wine & Liquor,
Inc.'s "OWNERSHIP INTEREST IN EBER BROS.
WINE & LIQUOR METRO, INC.";

                                    Defendants.

---

**IT IS HEREBY STIPULATED AND AGREED**, between Plaintiff and

Defendants Eber Bros. Wine & Liquor Corp. and Eber Bros. Wine & Liquor Metro, Inc.

(hereafter, collectively, "*the Eber Bros. Defendants*"), by their undersigned counsel, that: (1) the

Eber Bros. Defendants acknowledge service of the Summons and Complaint herein and appear

in this proceeding; and (2) the Eber Bros. Defendants have no objection to the relief requested by

Plaintiff in this proceeding, and release any claim to the Collateral, as defined in the Complaint,

or any proceeds thereof.

Dated: March 9, 2012                              March 9, 2012

**UNDERBERG & KESSLER LLP**                        **MARINO A. FERNANDEZ, JR., ESQ.**
*Attorneys for Plaintiff*                          *Attorneys for the Eber Bros. Defendants*

By: _____                       By: _____
William E. Brueckner, Esq.                         1 East Main Street, 10th Floor
300 Bausch & Lomb Place                            Rochester, New York 14614
Rochester, New York 14604                          585.360.1266
585.258.2800

PLAINTIFF'S
EXHIBIT

**159**

EB-00020483



# Eber Wine & Liquor Corp.
## General Ledger
### All Transactions

Accrual Basis

| Type | Date | Num | Adj | Name | Memo | Split | Debit | Credit | Balance |
|------|------|-----|-----|------|------|-------|-------|--------|---------|
| Bill | 6/6/2011 | 11-06-... | | Underberg Kessler - 50835 | | 2060 · Account... | 832.00 | | 3,463,222.35 |
| Bill | 6/9/2011 | 230327 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 22,870.71 | | 3,486,093.06 |
| Bill | 6/10/2011 | 061011 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 7,575.00 | | 3,493,668.06 |
| Bill | 6/22/2011 | 062211 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 7,575.00 | | 3,501,243.06 |
| Bill | 7/1/2011 | 030811 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 5,670.65 | | 3,506,913.71 |
| Bill | 7/7/2011 | 11-07 | | Underberg Kessler - 50835 | | 2060 · Account... | 275,000.00 | | 3,781,913.71 |
| Bill | 7/11/2011 | 231227 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 1,182.80 | | 3,783,096.51 |
| Bill | 7/12/2011 | 11048... | | Underberg Kessler - 50835 | | 2060 · Account... | 680.47 | | 3,783,776.98 |
| Bill | 7/20/2011 | 94757... | | Johnson, Morgan & White - 39928 | R&M Fine | 2060 · Account... | 500.00 | | 3,784,276.98 |
| General Jour... | 7/20/2011 | 606 | * | D4, LLC - 42028 | To void check # 1956 | 1083 · CNBT D... | | 3,000.00 | 3,781,276.98 |
| General Jour... | 7/20/2011 | 606 | * | D4, LLC - 42028 | To void check # 1956 | 1083 · CNBT D... | | 1,196.15 | 3,780,080.83 |
| Bill | 7/20/2011 | 11-07 | | Charles Zolot | | 2060 · Account... | 800.00 | | 3,780,880.83 |
| Bill | 7/22/2011 | 072211 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 1,325.00 | | 3,782,205.83 |
| Bill | 8/5/2011 | 232187 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 6,061.00 | | 3,788,266.83 |
| Bill | 8/22/2011 | 082211 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 1,650.00 | | 3,789,916.83 |
| Bill | 9/1/2011 | 144841 | | Davie Kaplan, CPA, P.C. - 39997 | | 2060 · Account... | 1,892.00 | | 3,791,808.83 |
| Bill | 9/1/2011 | 10060... | | Groom Law Group - 43299 | | 2060 · Account... | 1,904.57 | | 3,793,713.40 |
| Bill | 9/1/2011 | 10061... | | Groom Law Group - 43299 | | 2060 · Account... | 1,116.00 | | 3,794,829.40 |
| Bill | 9/1/2011 | 10061... | | Groom Law Group - 43299 | | 2060 · Account... | 558.00 | | 3,795,387.40 |
| Bill | 9/1/2011 | 10062... | | Groom Law Group - 43299 | | 2060 · Account... | 1,500.45 | | 3,796,887.85 |
| Bill | 9/1/2011 | 10063... | | Groom Law Group - 43299 | | 2060 · Account... | 1,084.50 | | 3,797,972.35 |
| Bill | 9/1/2011 | 10063... | | Groom Law Group - 43299 | | 2060 · Account... | 1,224.50 | | 3,799,196.85 |
| Credit | 9/1/2011 | 06221... | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | | 7,575.00 | 3,791,621.85 |
| Bill | 9/1/2011 | 11057... | | Underberg Kessler - 50835 | | 2060 · Account... | 2,028.00 | | 3,793,649.85 |
| Bill | 9/7/2011 | 11062... | | Underberg Kessler - 50835 | | 2060 · Account... | 9,139.00 | | 3,802,788.85 |
| Bill | 9/9/2011 | 233162 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 2,969.00 | | 3,805,757.85 |
| Bill | 9/15/2011 | 10064... | | Groom Law Group - 43299 | | 2060 · Account... | 7,016.05 | | 3,812,773.90 |
| Bill | 9/21/2011 | 092111 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 375.00 | | 3,813,148.90 |
| Deposit | 9/22/2011 | 18092 | | Manhattan West - 110075 | Deposit | 1073 · CNBT O... | | 14.12 | 3,813,163.02 |
| Bill | 10/11/2011 | 234524 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 1,327.60 | | 3,814,490.62 |
| Bill | 10/15/2011 | 145980 | | Davie Kaplan, CPA, P.C. - 39997 | | 2060 · Account... | 2,423.00 | | 3,816,913.62 |
| Bill | 10/19/2011 | 10065... | | Groom Law Group - 43299 | | 2060 · Account... | 2,046.00 | | 3,818,959.62 |
| Bill | 11/10/2011 | 111011 | | Bonded Collection Service - 40812 | | 2060 · Account... | 36.00 | | 3,818,995.62 |
| Deposit | 11/25/2011 | | | Field of Dreams - 63818 | Deposit | 1073 · CNBT O... | | 7.80 | 3,819,003.42 |
| Bill | 12/7/2011 | 146621 | | Davie Kaplan, CPA, P.C. - 39997 | | 2060 · Account... | 2,391.00 | | 3,821,394.42 |
| Bill | 12/15/2011 | 121511 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 5,650.00 | | 3,827,044.42 |
| Deposit | 12/16/2011 | 18193 | | Town & Country Disc Liquor Inc - ... | Bonded Collection Services | 1073 · CNBT O... | | 450.00 | 3,827,494.42 |
| Bill | 1/1/2012 | 10066... | | Groom Law Group - 43299 | | 2060 · Account... | 2,599.50 | | 3,830,093.92 |
| Bill | 1/16/2012 | 011612 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 1,325.00 | | 3,831,418.92 |
| Deposit | 1/18/2012 | 18221 | | Bonded Collection Service - 40812 | Deposit | 1073 · CNBT O... | | 10.63 | 3,831,429.55 |
| Bill | 1/20/2012 | 10067... | | Groom Law Group - 43299 | | 2060 · Account... | 2,219.65 | | 3,833,649.20 |
| Deposit | 1/31/2012 | 092396 | | Commercial Collection Corp. | Deposit | 1073 · CNBT O... | | 20.51 | 3,833,669.71 |
| Bill | 2/1/2012 | 11073... | | Underberg Kessler - 50835 | | 2060 · Account... | 2,247.00 | | 3,835,916.71 |
| Bill | 2/1/2012 | 11083... | | Underberg Kessler - 50835 | | 2060 · Account... | 2,951.00 | | 3,838,867.71 |
| Bill | 2/1/2012 | 11091... | | Underberg Kessler - 50835 | | 2060 · Account... | 2,407.00 | | 3,841,274.71 |
| Bill | 2/1/2012 | 11091... | | Underberg Kessler - 50835 | | 2060 · Account... | 1,243.00 | | 3,842,517.71 |
| Credit | 2/1/2012 | 11073... | | Underberg Kessler - 50835 | | 2060 · Account... | | 449.40 | 3,842,068.31 |
| Credit | 2/1/2012 | 11083... | | Underberg Kessler - 50835 | | 2060 · Account... | | 590.20 | 3,841,478.11 |
| Credit | 2/1/2012 | 11091... | | Underberg Kessler - 50835 | | 2060 · Account... | | 481.40 | 3,840,996.71 |
| Credit | 2/1/2012 | 11091... | | Underberg Kessler - 50835 | | 2060 · Account... | | 249.00 | 3,840,747.71 |
| Bill | 2/20/2012 | 22012 | | Sumner T. Pearsall, COA - 48090 | | 2060 · Account... | 8,450.00 | | 3,849,197.71 |
| Bill | 2/24/2012 | 10068... | | Groom Law Group - 43299 | | 2060 · Account... | 8,138.00 | | 3,857,335.71 |
| Credit | 2/24/2012 | 10068... | | Groom Law Group - 43299 | | 2060 · Account... | | 2,180.85 | 3,855,154.86 |
| Bill | 3/14/2012 | 10068... | | Groom Law Group - 43299 | | 2060 · Account... | 7,472.75 | | 3,862,627.61 |
| Bill | 4/1/2012 | 235534 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 1,223.15 | | 3,863,850.76 |
| Bill | 4/1/2012 | 236378 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 953.69 | | 3,864,804.45 |
| Bill | 4/1/2012 | 237427 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 2,900.00 | | 3,867,704.45 |
| Bill | 4/1/2012 | 238356 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 4.38 | | 3,867,708.83 |
| Bill | 4/1/2012 | 239152 | | Carmody & Torrance LLP - 20232 | | 2060 · Account... | 90.00 | | 3,867,798.83 |
| Bill | 4/1/2012 | 10065... | | Groom Law Group - 43299 | | 2060 · Account... | 2,867.59 | | 3,870,666.42 |
| Deposit | 4/10/2012 | 18285 | | Bonded Collection Service - 40812 | Deposit | 1073 · CNBT O... | | 21.54 | 3,870,687.96 |
| Bill | 5/3/2012 | 10069... | | Groom Law Group - 43299 | | 2060 · Account... | 885.00 | | 3,871,572.96 |
| Bill | 5/9/2012 | 050912 | | Marino A. Fernandez, Jr. | | 2060 · Account... | 586.25 | | 3,872,159.21 |
| Bill | 5/11/2012 | 242073 | | Meyers, Saxon & Cole | | 2060 · Account... | 400.00 | | 3,872,559.21 |

PLAINTIFF'S EXHIBIT 160

EB-00032593

# THE CANANDAIGUA NATIONAL BANK
## AND TRUST COMPANY

**1150 Pittsford-Victor Road**
**Pittsford, NEW YORK 14534**

Richard H. Hawks, Jr.
Senior V.P. & Trust Officer

(585) 419-0670 Ext. 36040
Fax (585) 394-4001

December 18, 2009

Mrs. Audrey Nan Boslov Hays
P.O. Box 126
Tesuque, NM  87574-0126

Re:  Successor Co-Trustee u/w Allen Eber Residuary Trust

Dear Mrs. Nan Boslov Hays:

We are pleased to enclose the following checks payable to your order.

1.   Our check no. ****** in the amount of $3,347.90 represents your share of the
     2009 annual trust income.

2.   Our check no. ****** in the amount of $4,000.00 represents your share of a
     year end distribution from the trust.  A small portion of the 2009 distribution to
     you from the trust will be tax-exempt since there are municipal bonds in the
     portfolio.  You will receive a tax letter from us before the end of February
     advising you of the amount of taxable income you should report on your 2009
     income tax return.

3.   Letter from Lester Eber – HSBC check #551

We also enclose a statement of assets that itemizes the stocks, bonds, and cash held in the trust as
of November 30, 2009.  The Co-Trustees, Lester Eber, Elliott Gumaer, Jr., and The Canandaigua
National Bank and Trust Company are responsible for administering and investing the trust
assets following the Prudent Investor Standard as set by the State of New York.  The Co-
Trustees are investing to protect both the current beneficiaries and the remainders interest.  The
goal is to provide the greatest total return.  We will continue to look at the concentrations and
diversify the portfolio as may be appropriate.

PLAINTIFF'S
EXHIBIT

**161**

We are maintaining higher cash positions at this time due to the instability of the markets and the extremely low interest rates. We are currently looking at Step Up bonds which have a sliding coupon rate. We will be purchasing them as they become available.

Should you have any questions concerning this letter or list of assets please contact me at (585) 393-6040.

Sincerely,

Richard H. Hawks, Jr.
Senior Vice President &
Trust Officer

RHH:kll
Enclosures
C:  Elliott W. Gumaer, Jr., Esq.

**Lester Eber**
**95 Allens Creed Road Building 2 Suite 10**
**Rochester, New York 14618**

December 15, 2009

Dear Audrey:

The world wide economic recession of the last two years has had a serious impact on our business. (As you know) We no longer distribute wine and spirits in New York State. Our business is limited to Connecticut; however, the business which we acquired in that state has required a complete operating workout from its then existing business plan, including a reduction in personnel, careful monitoring of all business related expenses and renewed sales efforts. Our efforts to reach positive earnings are not over and it is time for ownership to participate in our new business plan. Thus, the company will not declare an annual dividend to its Class A or Class B common stock holders in 2009, indeed our lack of satisfactory earnings prevents any other course of action. It is problematical that we will be able to resume a dividend to our stockholder in 2010.

I know that our decision to omit a dividend may cause a hardship for you. To ease this burden, I propose to make a personal tax free gift to you in the amount of $4,000 which is enclosed. Because this will be a gift from me there will be no tax attributed to its receipt.

Additionally, Trust income from other assets than Eber Bros. is not impacted by the decision to not declare an annual dividend. Enclosed is a check from The Canandaigua National Bank for the income from these assets.

Sincerely,

*Love,*
*Lester*

Lester Eber

P.S. IF Son, Udell need Contributions I would be very happy to support him through you. Hope Abel is O.K.

EB-00001135



HARRIS BEACH PLLC
ATTORNEYS AT LAW

## EBER BROS. WINE AND LIQUOR CORPORATION
### SALE OF
### PW&S, LLC
### AND
### DELAWARE IMPORTERS, LLC
### TO
### SOUTHERN WINE & SPIRITS OF AMERICA, INC.
### AND CERTAIN OTHER TRANSACTIONS

### Closing Index

I. Letter Agreement Governing Transactions:

    1. Letter Agreement, dated July 5, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc.

    2. First Amendment to Letter Agreement, dated July 27, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc.

    3. Second Amendment to Letter Agreement, dated August 14, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc.

    4. Third Amendment to Letter Agreement, dated August 22, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc.

    5. Fourth Amendment to Letter Agreement, dated August 28, 2008, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc.

    6. Fifth Amendment to Letter Agreement, dated August 29, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc.

    7. Sixth Amendment to Letter Agreement, dated January 29, 2008, by and between Eber Bros. Wine and Liquor Corporation, Eber Bros. Wine & Liquor Metro, Inc. and Southern Wine & Spirits of America, Inc.

II. August 30, 2007 Closing:

    8. Sale of Assets of PW&S, LLC:

        a. Asset Purchase Agreement, dated as of August 30, 2007, by and among Southern Wine & Spirits of Ohio, Inc., Southern Wine & Spirits of America, Inc., PW&S, LLC and Eber Bros. Wine and Liquor Corporation.

PLAINTIFF'S EXHIBIT

162

b.     Bill of Sale, dated August 30, 2007, given by PW&S, LLC to Southern Wine & Spirits of Ohio, Inc.

c.     Assignment, dated August 30, 2007, given by PW&S, LLC to Southern Wine & Spirits of Ohio, Inc.

d.     Assignment and Assumption Agreement, dated August 30, 2007, by and between PW&S, LLC, Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of Ohio, Inc., relating to Donald Postiy's Employment Agreement.

e.     Assignment and Assumption of Lease, dated August 30, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of Ohio, Inc. relating to the Lease Agreement for the premises located at 651 D Lakeview Plaza Blvd., Worthington, Ohio 43085.

f.     Assignment and Assumption of Lease, dated August 30, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of Ohio, Inc. relating to the Lease Agreement for the premises located at 651 B Lakeview Plaza Blvd., Worthington, Ohio 43085.

g.     Assignment and Assumption of Brokerage Agreements:

      i.     Future Brands

      ii.     Bacardi U.S.A., Inc.

      iii.     E. & J. Gallo Winery

      iv.     The Patron Spirits Company

      v.     Jacquin, Charles Et Cie, Inc.

      vi.     Laird & Company

      vii.     American Beverage Group, Inc.

      viii.     Phillips Distributing Corporation

      ix.     Crillon Importers Ltd.

      x.     Jim Beam Brands Co.

h.     Restrictive Covenant, dated August 30, 2007, by and between PW&S, LLC and Southern Wine & Spirits of America, Inc.

i.     Restrictive Covenant, dated August 30, 2007, by and between Lester Eber and Southern Wine & Spirits of America, Inc.

EB-00000002

j.    Name Registration Update canceling use of assumed name "Postiy Wine & Spirits" by PW&S, LLC.

k.    Closing Certificate of Eber Bros. Wine and Liquor Corporation.

l.    Closing Certificate of PW&S, LLC.

m.    Closing Certificate of Southern Wine & Spirits of America, Inc.

n.    Closing Certificate of Southern Wine & Spirits of Ohio, Inc.

o.    Officer's Certificate of Eber Bros. Wine and Liquor Corporation.

p.    Officer's Certificate of PW&S, LLC.

q.    Officer's Certificate of Southern Wine & Spirits of America, Inc.

r.    Officer's Certificate of Southern Wine & Spirits of Ohio, Inc.

s.    Subsistence Certificate of PW&S, LLC issued by the Secretary of State of the State of Ohio.

t.    Subsistence Certificate of Eber Bros. Wine and Liquor Corporation issued by the Department of State of the State of New York.

u.    Opinion of Harris Beach PLLC.

9.    Settlement of Litigation between Eber Bros. Wine and Liquor Corporation and its affiliates and Southern Wine & Spirits of America, Inc. and its affiliates:

a.    Release, dated August 22, 2007, given by Southern Wine & Spirits of America, Inc., Southern Wine & Spirits of New York, Inc., and Southern Wine & Spirits of Upstate New York, Inc. to Eber Bros. Wine and Liquor Corporation, Eber Bros. & Co., Inc., Eber-Metro, LLC, Eber Bros. Wine & Liquor Metro, Inc. and Lester Eber.

b.    Release, dated August 22, 2007, given by Eber Bros. Wine and Liquor Corporation, Eber Bros. & Co., Inc., Eber-Metro, LLC, Eber Bros. Wine & Liquor Metro, Inc. and Lester Eber to Southern Wine & Spirits of America, Inc., Southern Wine & Spirits of New York, Inc., and Southern Wine & Spirits of Upstate New York, Inc.

c.    Release, dated August 22, 2007, given by Eber Bros. Wine and Liquor Corporation, Eber Bros. & Co., Inc., Eber-Metro, LLC, Eber Bros. Wine & Liquor Metro, Inc. and Lester Eber to Daniel Sisto, Terry Rose, Todd May, Steven Mastascusa, R. Michael Kimber, Joseph Attanasio, David Foster, Eugene Bonnabeau, Richard Jones, the estate of Robert Makis,

EB-00000003

Robert Wheeler, John Smith, Michael Bova, Thomas Kitson and Randy Chamberlin.

d.     Stipulation of Discontinuance.

10.    Loan Transactions:

a.     Promissory Note, dated August 30, 2007, given by Eber Bros. Acquisition Corp. to Southern Wine & Spirits of America, Inc. in the original principal amount of $11,300,000.

b.     Security Agreement, dated August 30, 2007, by and between Eber Bros. Acquisition Corp. and Southern Wine & Spirits of America, Inc.

c.     Certificate of Ownership Interest No. 2, issued to Eber Bros. Acquisition Corp., representing 50 units of membership interest in Delaware Importers, LLC, together with an Ownership Interest Power, executed in blank, with respect thereto.

d.     Promissory Note, dated August 30, 2007, given by Eber Bros. Wine & Liquor Metro, Inc. to Southern Wine & Spirits of America, Inc. in the original principal amount of $3,000,000.

e.     Security Agreement, dated August 30, by and between Eber Bros. Wine & Liquor Metro, Inc. and Southern Wine & Spirits of America, Inc.

f.     Acknowledgement and Consent, dated August 30, 2007, given by Eber-Connecticut, LLC to Southern Wine & Spirits of America, Inc.

g.     Acknowledgement and Consent, dated August 30, 2007, given by Eber-Rhode Island, LLC to Southern Wine & Spirits of America, Inc.

h.     Guaranty Agreement, dated August 30, 2007, given by Eber Bros. Wine and Liquor Corporation in favor of Southern Wine & Spirits of America, Inc.

i.     Security Agreement, dated August 30, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc.

j.     Stock Certificates 1 and 2 issued to Eber Bros. Wine and Liquor Corporation representing 20,000 shares of common stock of Eber Bros. Wine & Liquor Metro, Inc., together with a stock power, executed in blank, with respect thereto.

k.     Stock Certificate 1 issued to Eber Bros. Wine and Liquor Corporation representing 100 shares of common stock of Eber Bros. Acquisition Corp., together with a stock power, executed in blank, with respect thereto.

EB-00000004

l.       Guaranty Agreement, dated August 30, 2007, given by Eber-Connecticut, LLC to Southern Wine & Spirits of America, Inc.

11.    Delaware Importers, LLC Transactions:

    a.       Option Agreement, dated August 30, 2007, granted by Eber Bros. Acquisition Corp. and Southern Wine & Spirits of America, Inc. granting to Southern Wine & Spirits of America, Inc. an option to purchase Eber Bros. Acquisition Corp.'s 50% interest in Delaware Importers, LLC.

    b.       Assignment of Option, dated August 30, 2007, given by Eber Bros. Acquisition Corp. to Southern Wine & Spirits of America, Inc.

    c.       Agreement, dated August 30, 2007, by and among Eber Bros. Acquisition Corp., Southern Wine & Spirits of America, Inc., Roger B. Hart, Edward J. Stegemeier, ROED Transition Company and Delaware Importers, LLC relating to the sale by ROED Transition Company of its membership interest in Delaware Importers, LLC to Southern Wine & Spirits of America, Inc.

12.    Sale of Trade Name "Liberty Wine Selections":

    a.       Letter Agreement, dated August 30, 2007, by and between Eber Bros. Wine and Liquor Corporation and Southern Wine & Spirits of America, Inc. relating to the sale of the trade name "Liberty Wine Selections".

    b.       Certificate of Discontinuance of Assumed Name of Liberty Wine Selections by Eber Bros. Wine and Liquor Corporation.

13.    Letter Agreement, dated August 30, 2007, by and between Eber Bros. Wine & Liquor Metro, Inc. and Southern Wine & Spirits of America, Inc. granting Southern Wine & Spirits of America, Inc. a right of first refusal in connection with any sale of Eber-Connecticut, LLC or Eber-Rhode-Island, LLC.

14.    Joint Unanimous Written Consent of the Sole Shareholder Entitled to Vote and the Board of Directors of Eber Bros. & Co., Inc.

15.    Joint Unanimous Written Consent of the Sole Shareholder Entitled to Vote and the Board of Directors of Eber Bros. Wine and Liquor Corporation.

16.    Joint Unanimous Written Consent of the Sole Shareholder and the Board of Directors of Eber Bros. Wine & Liquor Metro, Inc.

17.    Joint Unanimous Written Consent of the Sole Shareholder and the Board of Directors of Eber Bros. Acquisition Corp.

18.    Consulting Agreement, dated August 30, 2007, by and between Southern Wine & Spirits of Upstate New York, Inc. and Lester Eber.

EB-00000005

19.   Letter of Direction of Payment of Funds.

III.   Sale of Membership Interest in Delaware Importers, LLC:

20.   Purchase Agreement, dated as of November 30, 2007, by and among Southern Wine & Spirits of America, Inc., Southern Wine & Spirits of Delaware, LLC, Eber Bros. Acquisition Corp., and Eber Bros. Wine and Liquor Corporation.

21.   Letter Agreement, dated as of November 30, 2007, by and between Southern Wine & Spirits of America, Inc., Eber Bros. Wine and Liquor Corporation and Eber Bros. Acquisition Corp., relating to the inventory price calculation.

22.   Letter Agreement, dated November 30, 2007, by and among Southern Wine & Spirits of America, Inc., Eber Bros. Acquisition Corp., Delaware Importers, LLC, ROED Transition Company, Inc., Edward Stegemeier and Roger Hart relating the calculation of the purchase price.

23.   Unit Power, dated as of November 1, 2007, given by Eber Bros. Acquisition Corp. to Southern Wine & Spirits of Delaware, LLC, together with Certificate of Ownership Interest No. 2 issued to Eber Bros. Acquisition Corp. evidencing ownership of 50 units of Delaware Importers, LLC.

24.   Escrow Agreement, dated as of November 30, 2007, by and among Eber Bros. Acquisition Corp., Southern Wine & Spirits of America, Inc., Southern Wine & Spirits of Delaware, LLC and Harris Beach PLLC.

25.   Escrow Agreement, dated as of November 30, 2007, by and among Eber Bros. Acquisition Corp., ROED Transition Company, Inc., Southern Wine & Spirits of America, Inc., Southern Wine & Spirits of Delaware, LLC, Delaware Importers, LLC and The Bank of Castile.

26.   Restrictive Covenant, dated November 30, 2007, by and between Eber Bros. Acquisition Corp. and Southern Wine & Spirits of America, Inc.

27.   Restrictive Covenant, dated November 30, 2007, by and between Lester Eber and Southern Wine & Spirits of America, Inc.

28.   Letter Agreement, dated November 30, 2007, by and between Eber Bros. Acquisition Corp., Southern Wine & Spirits of America, Inc. and Southern Wine & Spirits of Delaware, LLC relating to environmental liability.

29.   Resignation of Lester Eber as a Manager of Delaware Importers, LLC.

30.   Resignation of Wendy Eber as a Manager and as the Secretary and Treasurer of Delaware Importers, LLC.

31.   Closing Certificate of Eber Bros. Wine and Liquor Corporation.

EB-00000006

32.   Closing Certificate of Eber Bros. Acquisition Corp.

33.   Closing Certificate of Southern Wine & Spirits of America, Inc.

34.   Closing Certificate of Southern Wine & Spirits of Delaware, LLC.

35.   Officer's Certificate of Eber Bros. Wine and Liquor Corporation.

36.   Officer's Certificate of Eber Bros. Acquisition Corp.

37.   Officer's Certificate of Southern Wine & Spirits of America, Inc.

38.   Officer's Certificate of Southern Wine & Spirits of Delaware, LLC.

39.   Non-Foreign Person Affidavit Under Internal Revenue Code Section 1445.

40.   Written Consent of the Board of Managers of Delaware Importers, LLC terminating the Delaware Importers, LLC 401(k) Profit Sharing Plan.

41.   Letter Agreement, dated November 2, 2007, by and between Delaware Importers, LLC and Delaware River Industrial Park, LLC whereby Delaware River Industrial Park, LLC consented to the change of control of Delaware Importers, LLC.

42.   Letter Agreement, dated November 30, 2007, by and between Eber Bros. Acquisition Corp. and ROED Transition Company, Inc. relating to environmental indemnity.

43.   Opinion of Harris Beach PLLC.

EB-00000007

Wendy Eber
Chief Financial Officer
Eber Bros. Wine & Liquor Metro, Inc.
95 Allens Creek Rd.
Bldg 2  Ste 10 & 11
Rochester, NY  14618

Re:   NOTICE TO DEBTOR OF PROPOSAL TO ACCEPT COLLATERAL IN FULL
      SATISFACTION OF LINE OF CREDIT NOTE DATED FEBRUARY 26, 2010 IN THE
      MAXIMUM PRINCIPAL AMOUNT OF $1,500,000.00 AND OF THE AMENDED
      AND RESTATED PROMISSORY NOTE DATED MARCH 13, 2006 IN THE
      PRINCIPAL AMOUNT OF $1,503,750.00

      Alexbay, LLC, the undersigned, of 30 Corporate Drive, North Haven, Connecticut

06473-3254, is the holder of the Amended and Restated Promissory Note dated March 13, 2006

in the principal amount of $1,503,750.00 (the "EWLC Note"), executed by Eber Bros. Wine and

Liquor Corporation ("EWLC"), the obligations of which with respect to the EWLC Note were

assumed by Eber Bros. Wine & Liquor Metro, Inc. ("Metro") by the Debt Assumption

Agreement dated February 11, 2011 ("Debt Assumption Agreement").  Alexbay, LLC is also the

holder of the Line of Credit Note dated February 26, 2010 in the maximum principal amount of

$1,500,000.00 (Line of Credit Note"), executed by Metro.

      Payment of the Line of Credit Note is secured by Metro pursuant to the Security

Agreement dated February 26, 2010 ("Security Agreement") whereby Metro assigned to the

then-holder, Lester Eber, a security interest in, among other things, "[t]he shares of common

stock and preferred stock, or partnership, membership and other ownership interests, now or

hereafter owned by Debtor, including, without limitation, any membership interest in Eber-

PLAINTIFF'S
EXHIBIT

163

Connecticut, LLC now or hereafter owned, directly or indirectly by Metro...." Payment of the Line of Credit Note and the EWLC Note are also secured by Metro pursuant to the Amended and Restated Security Agreement dated February 11, 2011 ("Amended and Restated Security Agreement") whereby Metro assigned and granted to the then-holder Lester Eber a security interest in "[t]he shares of common stock and preferred stock, or partnership, membership and other ownership interests, now or hereafter owned by Debtor, including, without limitation, any membership interest in Eber-Connecticut, LLC now or hereafter owned, directly or indirectly by Metro."

By assignment of Note and Security Agreement dated January 18, 2012, Lester Eber irrevocably granted, assigned and transferred all right, title, interest and benefits he had in and to the EWLC Note, the Security Agreement and the Amended and Restated Security Agreement to Alexbay, LLC. By Assignment of Line of Credit Note dated January 18, 2012, Lester Eber irrevocably granted, assigned and transferred all right, title, interest and benefits he had in and to the Line of Credit Note, the Security Agreement and the Amended and Restated Security Agreement to Alexbay, LLC.

The amount due and payable pursuant to the Amended and Restated Promissory Note dated March 13, 2006 is $1,951,874.26 as of December 31, 2011, plus interest accruing at the rate of nine percent (9%) per annum thereafter. The amount due and payable pursuant to the Line of Credit Note dated February 26, 2010 is $1,698,828.22 as of December 31, 2011 plus interest accruing at the rate of twelve and one-half percent (12 ½%) per annum thereafter.

Metro has defaulted and continues to remain in default on payments due under the EWLC Note, the Debt Assumption Agreement, the Line of Credit Note, the Security Agreement and the Amended and Restated Security Agreement described above.

EB-00000865

/2012 11:48    4328782              FORTORANGECLUB                    PAGE  03/03

Pursuant to N.Y.U.C.C. § 9-620, Alexbay proposes to accept the membership interest owned by Metro in Eber-Connecticut, LLC in full satisfaction of the obligations set forth in the EWLC Note and the Line of Credit Note secured by the Security Agreement and the Amended and Restated Security Agreement.

In accordance with N.Y.U.C.C. § 9-620, you must object in writing to this proposal to accept the membership interest owned by Metro in Eber-Connecticut, LLC in satisfaction of the obligations created by the Note, the Guaranty and the Line of Credit Note within twenty (20) days after the date this notification was sent to Metro.

Your objection to the acceptance by Alexbay, LLC of Metro's membership interest in Eber-Connecticut, LLC must be received by Alexbay, LLC within twenty (20) days of the date this notification was sent at the following address:

Alexbay, LLC
30 Corporate Drive
North Haven, Connecticut 06473-3254

Dated: January ___, 2012

ALEXBAY, LLC

By _____

Lester Eber, Its Sole Member

BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED
# 7004 2890 0003 6983 9970

EB-00000866

Trustees of the New York State Teamsters Conference

Pension & Retirement Fund

P.O. Box 4928

Syracuse, NY 13221-4928

Re: NOTICE TO OTHER SECURED PARTY OF PROPOSAL BY SECURED PARTY TO
ACCEPT COLLATERAL IN FULL SATISFACTION OF AMENDED AND RESTATED
PROMISSORY NOTE DATED MARCH 13, 2006 IN THE PRINCIPAL AMOUNT OF
$1,503,750.00 AND OF LINE OF CREDIT NOTE DATED FEBRUARY 26, 2010 IN THE
MAXIMUM PRINCIPAL AMOUNT OF $1,500,000.00

Alexbay, LLC, the undersigned, of 30 Corporate Drive, North Haven, Connecticut 06473-3254, is
the holder of the Amended and Restated Promissory Note dated March 13, 2006 in the principal
amount of $1,503,750.00 (the "EWLC Note"), executed by Eber Bros. Wine and Liquor Corporation
("EWLC"), the obligations of which with respect to the EWLC Note were assumed by Eber Bros.
Wine & Liquor Metro, Inc. ("Metro") by the Debt Assumption Agreement dated February 11, 2011
("Debt Assumption Agreement"). Alexbay, LLC is also the holder of the Line of Credit Note dated
February 26, 2010 in the maximum principal amount of $1,500,000.00 (Line of Credit Note"),
executed by Metro.

Payment of the Line of Credit Note is secured by Metro pursuant to the Security Agreement dated
February 26, 2010 ("Security Agreement") whereby Metro assigned to the then-holder, Lester Eber, a
security interest in, among other things, "[t]he shares of common stock and preferred stock, or
partnership, membership and other ownership interests, now or hereafter owned by Debtor,
including, without limitation, any membership interest in Eber-Connecticut, LLC now or hereafter
owned, directly or indirectly by Metro...." Payment of the Line of Credit Note and the EWLC Note
are also secured by Metro pursuant to the Amended and Restated Security Agreement dated February
11, 2011 ("Amended and Restated Security Agreement") whereby Metro assigned and granted to the
then-holder Lester Eber a security interest in "[t]he shares of common stock and preferred stock, or
partnership, membership and other ownership interests, now or hereafter owned by Debtor, including,
without limitation, any membership interest in Eber-Connecticut, LLC now or hereafter owned,
directly or indirectly by Metro."

By assignment of Note and Security Agreement dated January 18, 2012, Lester Eber irrevocably
granted, assigned and transferred all right, title, interest and benefits he had in and to the EWLC Note,
the Security Agreement and the Amended and Restated Security Agreement to Alexbay, LLC. By
Assignment of Line of Credit Note dated January 18, 2012, Lester Eber irrevocably granted, assigned
and transferred all right, title, interest and benefits he had in and to the Line of Credit Note, the

EB-00000867

Security Agreement and the Amended and Restated Security Agreement to Alexbay, LLC.

The amount due and payable pursuant to the Amended and Restated Promissory Note dated March 13, 2006 is $1,951,874.26 as of December 31, 2011, plus interest accruing at the rate of nine percent (9%) per annum thereafter. The amount due and payable pursuant to the Line of Credit Note dated February 26, 2010 is $1,698,828.22 as of December 31, 2011, plus interest accruing at the rate of twelve and one-half percent (12 ½%) per annum thereafter.

Metro has defaulted and continues to remain in default on payments due under the EWLC Note, the Debt Assumption Agreement, the Line of Credit Note, the Security Agreement and the Amended and Restated Security Agreement described above.

Pursuant to N.Y.U.C.C. § 9-620, Alexbay proposes to accept the membership interest owned by Metro in Eber-Connecticut, LLC in full satisfaction of the obligations set forth in the EWLC Note and the Line of Credit Note secured by the Security Agreement and the Amended and Restated Security Agreement.

In accordance with N.Y.U.C.C. § 9-620, you must object in writing to this proposal to accept the membership interest owned by Metro in Eber-Connecticut, LLC in satisfaction of the obligations created by the Note, the Guaranty and the Line of Credit Note within twenty (20) days after the date this notification was sent to Metro.

A notice of this proposal has been sent concurrently to Eber Bros. Wine & Liquor Metro, by certified mail, return receipt requested.

Your objection to the acceptance by Alexbay, LLC of Metro's membership interest in Eber-Connecticut, LLC must be received by Alexbay, LLC within twenty (20) days of the date this notification was sent at the following address:

Alexbay, LLC

30 Corporate Drive

North Haven, Connecticut 06473-3254

Dated: January ___, 2012

ALEXBAY, LLC

By _____ Lester Eber

Lester Eber, its Sole Member

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

EB-00000868

Security Agreement and the Amended and Restated Security Agreement to Alexbay, LLC.

The amount due and payable pursuant to the Amended and Restated Promissory Note dated March 13, 2006 is $1,951,874.26 as of December 31, 2011, plus interest accruing at the rate of nine percent (9%) per annum thereafter. The amount due and payable pursuant to the Line of Credit Note dated February 26, 2010 is $1,698,828.22 as of December 31, 2011 plus interest accruing at the rate of twelve and one-half percent (12 ½%) per annum thereafter.

Metro has defaulted and continues to remain in default on payments due under the EWLC Note, the Debt Assumption Agreement, the Line of Credit Note, the Security Agreement and the Amended and Restated Security Agreement described above.

Pursuant to N.Y.U.C.C. § 9-620, Alexbay proposes to accept the membership interest owned by Metro in Eber-Connecticut, LLC in full satisfaction of the obligations set forth in the EWLC Note and the Line of Credit Note secured by the Security Agreement and the Amended and Restated Security Agreement.

In accordance with N.Y.U.C.C. § 9-620, you must object in writing to this proposal to accept the membership interest owned by Metro in Eber-Connecticut, LLC in satisfaction of the obligations created by the Note, the Guaranty and the Line of Credit Note within twenty (20) days after the date this notification was sent to Metro.

A notice of this proposal has been sent concurrently to Eber Bros. Wine & Liquor Metro, by certified mail, return receipt[pt requested.

Your objection to the acceptance by Alexbay, LLC of Metro's membership interest in Eber-Connecticut, LLC must be received by Alexbay, LLC within twenty (20) days of the date this notification was sent at the following address:

Alexbay, LLC

30 Corporate Drive

North Haven, Connecticut 06473-3254

Dated: January __, 2012

ALEXBAY, LLC

By _____

Lester Eber, its Sole Member

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kenneth Stillwell
Trustee of the NYS
    Teamsters Conference
Pension + Retirement Fund
P.O. Box 4928
Syracuse, NY 13221-4928

*COMPLETE THIS SECTION ON DELIVERY*

A. Received by *(Please Print Clearly)*  D Loiacano

B. Date of Delivery  1/19/12

C. Signature  X D Loiacano

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

JAN 19 2012

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Ar    7004 2890 0003 6983 9956

PS Form 3811, July 1999          Domestic Return Receipt          102595-99-M-1789

EB-00000870

To: Allen Eber Trust
     c/o Canandaigua National Bank & Trust Company
     72 South Main St.
     Canandaigua, NY 14424
     Attn: Rita Nischal, Esq.

In connection with the Notice of Intent to Purchase Shares of Eber Bros. & Co., Inc. given by Lester Eber to the Allen Eber Trust on October 30, 2018, attached hereto, the undersigned notifies you that the purchase price, the book value of the shares as it appears in the books of the corporation as of May 31, 2018, is $0.

Please deliver physical possession of the stock certificate for these shares, which I understand is currently in your possession, with your endorsement thereof, to me promptly, at the following address:

_____
Lester Eber
15 Coral Way
Rochester, NY 14618

Dated: December 17, 2018

PLAINTIFF'S
EXHIBIT

164

To: Allen Eber Trust
  c/o Canandaigua National Bank and Trust Company
   72 South Main St.
   Canandaigua, NY 14424
   Attn: Rita Nischal, Esq.

## NOTICE OF INTENT TO PURCHASE SHARES

The undersigned hereby gives notice of my intent to purchase all shares of capital stock of Eber Bros. & Co., Inc. ( the "Company") of which the Allen Eber Trust is the registered holder that are proposed to be transferred to Daniel Kleeberg, Lisa Stein or Audrey Hays pursuant to Article XII of the By-Laws of the Company.

_____
Lester Eber