# Exhibit A

Page 254

1  L. Eber
2  as of this date.)
3  Q. Exhibit 47 is a two-page letter on the
4  letterhead for Elliot W. Gumaer, Jr. dated January
5  2, 2001 Bates stamped January 8, 2001 and Bates
6  number EB 00001556 to 57.
7  Do you recognize this document?
8  A. Yes.
9  Q. What is it?
10  A. It is a letter from Mike Gumaer to
11  myself about his retirement from Nixon Peabody.
12  Q. And do you see on the back page there
13  is a line below the signature of Mike Gumaer
14  stating the terms and conditions of this letter
15  are agreed by the Eber companies?
16  A. Yes.
17  Q. And is that your signature below?
18  A. Yes.
19  Q. Do you remember signing this document?
20  A. I don't remember signing it but I did.
21  It is January of '01.
22  Q. And when is the last time that you
23  remember seeing this document?
24  A. I don't remember.
25  Q. Do you have any reason to believe that

Page 255

1  L. Eber
2  there are any amendments to this letter agreement?
3  A. I don't know. I don't remember. I
4  don't know.
5  Q. Turning to the second page at the top,
6  do you see he, Mike writes "As a director and
7  consultant to the companies I have endorsed your
8  strategic plan to grow our companies thus enabling
9  us to compete in an industry that's changed
10  radically over the years since your father's
11  death."
12  Do you see that?
13  A. Yes.
14  Q. Do you know what he meant by referring
15  to himself as a consultant to the companies?
16  A. Yeah. He was into the business. My
17  father put him right into the business to work
18  with me and help me.
19  Q. So is it fair to say that Mike Gumaer
20  did nonlegal work for the companies?
21  MR. RAMSEY: Form.
22  A. He did legal work. He did consulting.
23  He did everything.
24  Q. Second paragraph on page 2 reads "With
25  the foregoing as historical records I would

Page 256

1  L. Eber
2  propose to you the following A, I shall continue
3  to waive any direct annual compensation as a
4  trustee of the Allen Eber Trust. B, I shall
5  continue as a director of the Eber companies
6  without any compensation commensurate with my
7  responsibilities as a director. And C, I shall
8  continue to serve as a consultant to the companies
9  and as counsel to you personally and as chief
10  executive officer."
11  Do you see that?
12  A. Yes.
13  Q. The letter then continues in the next
14  paragraph, "As compensation for all of these
15  duties the Eber companies will pay me an annual
16  consulting fee of forty thousand dollars payable
17  quarterly on the first of February, May, August
18  and November beginning February 1, 2001. This
19  relationship shall remain in place until modified
20  by you and me in the manner established by this
21  letter."
22  Do you see that?
23  A. Yes.
24  Q. And you agreed to those terms that he
25  proposed?

Page 257

1  L. Eber
2  A. Yes.
3  Q. How long did the annual consulting fee
4  of forty thousand dollars continue for?
5  A. As long as we could pay it and I don't
6  have the date that it changed, but it had to be
7  after Wells foreclosed on us and we didn't have
8  the money to pay him.
9  Q. After that point was his consulting
10  fee reduced?
11  A. Yes.
12  Q. What was it reduced to?
13  A. I don't remember.
14  MR. BROOK: Let's go to the next
15  exhibit. This will be Plaintiffs' Exhibit
16  48.
17  (Plaintiffs' Exhibit 48, an e-mail
18  from Mike Gumaer to Wendy Eber and Lester
19  Eber dated October 29, 2013 bearing Bates
20  number GUM 000023, marked for
21  identification, as of this date.)
22  Q. Exhibit 48 is an e-mail from Mike
23  Gumaer to Wendy Eber and Lester Eber dated October
24  29, 2013 bearing Bates number GUM 000023.
25  Do you recognize this document?

65 (Pages 254 - 257)