UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN and AUDREY HAYS,

                                           Plaintiffs,

        v.

LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC,
ESTATE OF ELLIOTT W. GUMAER, JR. and WENDY EBER,

                                           Defendants,

    and

EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP.,
EBER BROS. WINE & LIQUOR METRO, INC., EBER-
CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS.
ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS OF
MAINE, INC., and CANANDAIGUA NATIONAL BANK & TRUST
COMPANY,

                                           Nominal Defendants.

Civil Action No.
16-CV-9517(LAK/KHP)

## EBER DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
## JUDGMENT

UNDERBERG & KESSLER LLP
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
(585) 258-2882

Paul F. Keneally, Esq.,
Colin D. Ramsey, Esq.,
Jillian K. Farrar, Esq.,
Of Counsel

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I.    CNB'S ATTEMPT, AS SOLE REMAINING CO-TRUSTEE OF THE TRUST, TO TRANSFER CAPITAL STOCK OF EBER BROS. TO PLAINTIFFS IN OCTOBER 2017 WAS INEFFECTIVE. PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT MUST BE DENIED. ....................... 1

II.   PLAINTIFFS' ARE NOT ENTITLED TO FORCE THE RETURN OF METRO TO THE TRUST. 4

    A.   Plaintiffs' derivative remedies, if any, are governed exclusively by the N.Y. Uniform Commercial Code and are limited solely to monetary damages. ............................................................. 4

    B.   Alexbay enforced its rights under N.Y. U.C.C. § 9-620 in good faith. ......................................... 5

    C.   Plaintiffs were not entitled to Notice of the 2012 Foreclosure. ..................................................... 7

    D.   The 2012 Foreclosure was not a "sale" and Plaintiffs' attempts to characterize it as such fail as a matter of law. ........................................................................................................................ 8

III.  LESTER EBER'S ACTIONS WERE EXPRESSLY AUTHORIZED BY THE WILL ............. 10

    A.   Plaintiffs' assertion in sections II(A)(3) and II(B) of their Memorandum of Law that the Co-Trustees had a duty to retain the Eber companies fails as a matter of law. ................................... 10

    B.   The 2012 Foreclosure was contemplated and necessarily permitted by the Will. ...................... 11

IV.   THE 2012 FORECLOSURE ALSO COMPLIES WITH CORPORATE LAW. ...................... 12

    A.   Plaintiffs err as a matter of law in attempting to characterize the 2012 Foreclosure as a "freeze out merger" and subject to the boards' consent process. ................................................................. 12

    B.   Plaintiffs' claim that various corporate actions were invalid because technical corporate formalities were not followed by the Eber companies is incorrect. ................................................... 13

    C.   N.Y. B.S.C. § 909 does not require EBWLC's sole shareholder to approve the 2012 Foreclosure. 14

    D.   In consenting to the 2012 foreclosure under ny ucc 9-620, the directors of ebwlc owed their fiduciary duties to ebwlc and its creditors, and the directors of metro owed their fiduciary duties to metro and its creditors. ...................................................................................................... 15

    E.   Even if the Entire Fairness Doctrine is applicable, the 2012 Foreclosure meets the entire fairness standard. ............................................................................................................................ 19

    F.   The Security Agreement and Guaranty are valid. ......................................................................... 19

V.    PLAINTIFFS' ARGUMENT TO SET ASIDE THE 2017 ISSUANCE OF EBWLC PREFERRED STOCK TO LESTER EBER IS INCORRECT. .................................................................. 20

VI.   PLAINTIFFS ARE NOT ENTITLED TO A CONSTRUCTIVE TRUST WHERE, AS HERE AN ADEQUATE REMEDY AT LAW EXISTS. .......................................................................... 21

VII.  SECTION VI OF PLAINTIFFS' MEMORANDUM OF LAW CLAIMING LESTER USURPED A CORPORATE OPPORTUNITY BY ENTERING INTO THE CONSULTING AGREEMENT WITH SOUTHERN FAILS AS A MATTER OF LAW. ............................................................. 22

VIII. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANY OF THEIR DERIVATIVE CLAIMS AND THEIR REQUEST FOR ATTORNEYS' FEES FAILS AS A MATTER OF LAW. ............................................................................................................. 24

CONCLUSION .................................................................................................................... 25

i

## TABLE OF AUTHORITIES

Cases                                                                                             Pages

*Alexander & Alexander v. Fritzen*,
    147 A.D.2d 241 (1st Dep't 1989).................................................................23

*Allen v. Biltmore Tissue Corp.*, 2 N.Y. 2d 534 (1957) ...............................................2, 3

*Am. Bank & Tr. Co. v. Lichtenstein*,
    48 A.D.2d 790 (1st Dep't 1975)...................................................................20

*Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*,
    174 A.D.3d 150 (3d Dep't 2019)....................................................................5

*Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019) ...............................14

*Barkin Construction Co. v. Goodman*, 221 N.Y. 156 (1917)........................................14

*Bertoni v. Catucci*, 117 A.D.2d 892 (3d Dep't 1986)....................................................21

*Birnbaum v. Birnbaum*, 117 A.D.2d 409 (4th Dep't 1986) ...........................................22

*Boyle v. Kelley*, 42 N.Y.2d 88 (1977)............................................................................21

*Central Budget Corp. v. Garrett*, 48 A.D.2d 825 (2d Dep't 1975) .................................6

*Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506 (2d Cir. 1981) ........................................15

*Cmty. Nat'l Bank v. Med. Benefit Adm'rs, LLC*,
    242 Wis. 2d 626 (2001) ..............................................................................24

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*,
    94 N.Y. 541 (2000)......................................................................................15

*DiPace v. Figueroa*, 223 A.D.2d 949 (3d Dep't 1996) .................................................23

*Evans v. Winston & Strawn*, 303 A.D.2d 331 (1st Dep't 2003) ....................................21

*Flaum v. Birnbaum*, 120 A.D.2d 183 (4th Dep't 1986) .............................................8, 22

*Fransmart, LLC v. Freshii Dev., LLC*,
    768 F. Supp. 2d 851 (E.D. Va. 2011) .........................................................24

*Gerard v. Empire Square Realty Co.*,
    195 App. Div. 244 (2d Dep't 1921)..............................................................14

*Geren v. Quantum Chemical Corp.*, 99 F.3d 401 (2d Cir. 1995) ..................................15

*Ginter v. Palmer & Co.*, 566 P.2d 1358 (Colo. App. 1977) ............................................................2

*Glenn v. Hoteltron Sys., Inc.*, 74 N.Y.2d 386 (1989) .................................................................25

*Granite Partners, L.P. v. Merrill Lynch*,
    2002 U.S. Dist. LEXIS 8364 (S.D.N.Y. May 10, 2002) ...........................................................6

*Gratz v. Claughton*, 187 F.2d 46 (2d Cir. 1951)....................................................................7, 10

*Haff v. Long Island Fuel Corp.*, 233 A.D.117 (2d Dep't 1931) .................................................14

*In re Bay Plastics*, 187 B.R. 315 (Bankr. C.D. Cal 1995) ..........................................................18

*In re Enron Corp.*,
    2005 Bankr. LEXIS 3469 (Bankr. S.D.N.Y. Jun. 16, 2005) ....................................................5

*In re Estate of Hatfield*, 93 Misc.2d 472 (N.Y. Sur. Ct. 1978)...................................................2

*In re F&S Cent. Mtg. Corp.*, 53 B.R. 842 (Bankr. E.D.N.Y. 1985) ...........................................18

*In re Gordon Car & Truck Rental*,
    65 B.R. 371 (Bankr. N.D.N.Y. 1986) ....................................................................................22

*In re Kenneth Cole Productions, Inc.*, 27 N.Y.3d 268 (2016)...............................................12, 13

*In re Levine*, 32 B.R. 742,
    1983 U.S. Dist. LEXIS 14009 (S.D.N.Y. 1983)....................................................................20

*In re Perry H. Koplik & Sons, Inc.*,
    476 B.R. 746 (Bankr. S.D.N.Y. 2012)...................................................................................13

*In re Scarborough Prop. Corp.*, 25 N.Y.2d 553 (1969) .........................................................7, 10

*In re Signature Apparel Grp. LLC*,
    577 B.R. 54 (Bankr. S.D.N.Y. 2017)......................................................................................24

*In re Trados Inc. S'holder Litig.*, 73 A.3d 17 (Del. Ch. 2013) ...................................................19

*Kim v. Ji Sung Yoo*, 311 F. Supp.3d 598 (S.D.N.Y. 2018) ........................................................17

*Kuo v. Kuo*, 1999 U.S. Dist. LEXIS 2384 (S.D.N.Y. Mar. 4, 1999)................................22, 23, 24

*Leslie, Semple & Garrison v. Gavit & Co.*,
    81 A.D.2d 950 (3d Dep't 1981).............................................................................................14

*Lippe v. Bairnco Corp.*, 249 F. Supp.2d 357 (S.D.N.Y. 2003) ..................................................17

*Moses v. Soule*, 63 Misc. Rep. 203 (N.Y. Sup. Ct. 1909).............................................................2

*Moser v. Devine Real Estate, Inc. (Florida),*
    42 A.D.3d 731 (3d Dep't 2007) .................................................................23

*New York Credit Men's Adjustment Bureau v. Weiss,*
    305 N.Y.1 (1953) ...........................................................................................15

*O'Hayer v. De St. Aubin*, 30 A.D.2d 419 (2d Dep't 1968) ...........................10, 11, 12, 21

*PBGC v. Broadway Maintenance Corp.,*
    707 F.2d 647 (2d Cir. 1983) .........................................................................18

*Pittsburgh Coke & Chemical Co. v. Bollo,*
    560 F.2d 1089 (2d Cir. 1977) .......................................................................18

*RSL Communications PLC v. Bildirici,*
    649 F. Supp. 2d 184 (S.D.N.Y. 2009) ..........................................................15

*Rafield v. Brotman*, 261 A.D.2d 257 (1st Dep't 1999).........................................22

*Rapillo v. CitiMortgage, Inc.,*
    2018 U.S. Dist. LEXIS 35491 (E.D.N.Y. Mar. 5, 2018).................................4

*Rosenblatt v. Getty Oil Co.*, 493 A.2d 929 (Del. 1985).......................................19

*Sardanis v. Sumitomo Corp.*, 723 N.Y.S.2d 466 (1st Dep't 2001)........................15

*Shelly v. Doe*, 249 A.D.2d 756 (3d Dep't 1998)..................................................17

*St. Marks Assets, Inc. v. Sohayegh,*
    167 A.D.3d 458 (1st Dep't 2018) ..................................................................14

*Sterling v. Mayflower Hotel Corp.*, 93 A.2d 107 (Del. 1952) .............................19

*Villard v. Villard*, 219 N.Y. 482 (1916) ..............................................................3

*Washer v. Seager*, 272 A.D. 297 (1st Dep't 1947)...............................................22

*Weyerhaeuser Co. v. Gershman*, 324 F.2d 163 (2d Cir. 1963) ...........................20

Statutes                                                                                                    Pages

11 U.S.C. § 101 .................................................................................................................17

N.Y. B.S.C. § 626 .............................................................................................................24

N.Y. B.S.C. § 717 .............................................................................................................16

N.Y. B.S.C. § 903 .............................................................................................................12

N.Y. B.S.C. § 909 .........................................................................................................14, 15

N.Y. D.C.L. § 270 .............................................................................................................16

N.Y. D.C.L. § 271 .............................................................................................................16

N.Y. Gen. Oblig. Law § 5-1105 .................................................................................19, 20

N.Y. U.C.C. § 1-201 ....................................................................................................3, 6, 9

N.Y. U.C.C. § 1-304 .......................................................................................................6, 7

N.Y. U.C.C. § 8-204 ...........................................................................................................3

N.Y. U.C.C. § 9-201 ...........................................................................................................9

N.Y. U.C.C. § 9-203 ...........................................................................................................9

N.Y. U.C.C. § 9-620 .......................................................................................4-7, 9-10, 12-15

N.Y. U.C.C. § 9-622 .......................................................................................................4, 10

N.Y. U.C.C. § 9-625 .........................................................................................................4, 5

## ARGUMENT

I.    **CNB'S ATTEMPT, AS SOLE REMAINING CO-TRUSTEE OF THE TRUST, TO TRANSFER CAPITAL STOCK OF EBER BROS. TO PLAINTIFFS IN OCTOBER 2017 WAS INEFFECTIVE. PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT MUST BE DENIED.**

Section I of Plaintiffs' Memorandum of Law makes a variety of incorrect assertions about Canandaigua National Bank's ("CNB") prior ineffective attempts to transfer the stock in 2017. Their request for declaratory judgment fails as a matter of law.

Lester Eber was not the "Transferring Shareholder" of the Eber Bros. & Co., Inc. ("Eber Bros.") stock in 2017. At all relevant times, the Eber Bros. stock was owned by the Allen Eber Trust (hereinafter the "Trust") and was registered in the name of all three Co-Trustees of the Trust not in their personal capacities. *See* Stock Certificates for Eber Bros. at Plaintiffs' Exh. 134; Dkt. No. 266-8.

The Trust was terminated by order of the Surrogate's Court on June 1, 2017.  Plaintiffs' Exh. 33 at p.2.; Dkt. No. 266-3. Lester Eber and Elliott Gumaer ceased to be Co-Trustees thereafter. As it had throughout its time as Co-Trustee, CNB had remaining administrative Trustee duties left to be performed thereafter. *Id.* Lester Eber and Elliott Gumaer were no longer Trustees when CNB purported to transfer the stock to Plaintiffs in October 2017.

The Eber Bros. By-laws, Article XII, Sec. 1, requires that "the [transferring] shareholder" (the three Co-Trustees before June 1, 2017, and thereafter, CNB, but was never the Surrogate's Court itself) to "personally deliver to the president or secretary [of Eber Bros.] written notice of a proposed transfer" (this never happened before October 27, 2018) "stating the terms of the proposed transfer" (this has never happened, and only now do Plaintiffs acknowledge that CNB's

2017 proposed allocations of the stock among the beneficiaries were wrong, and therefore, non-compliant).  Plaintiffs' Exh. 133 at pg. 11-12, Dkt. No. 266-8.

The decision to terminate the Trust was not "Lester's decision". The Petition to terminate the Trust and Final Accounting was conceived, prepared and filed by CNB alone on February 15, 2017. In fact, the Final Accounting acknowledges Lester and Gumaer did not participate therein. *See* Plaintiffs Exh. 135 at pg. 73, Dkt. No. 266-8.

Lester Eber had no duty to inform the Surrogate's Court about the transfer restriction in Article XII of the By-laws. Plaintiffs cite no authority for such a duty. Regardless of the Trust termination order, any later transfer of the stock to Plaintiffs is required to comply with the transfer restriction By-law.  *In re Estate of Hatfield*, 93 Misc.2d 472 (1978) (restrictive provision in articles of incorporation and noted on share certificates controlled over shareholder-decedent will); *Ginter v. Palmer & Co.*, 566 P.2d 1358 (Colo. App. 1977) (provision giving corporation, on death of shareholder, the option to purchase his shares at book value controlled over will transferring shares to devisee).

The transfer restriction By-law was adopted on June 21, 1996, with the consent of at least two of the three Co-Trustees (Lester Eber and Elliott Gumaer). Like a great many family companies, Eber Bros. adopted the transfer restriction to maintain control of the corporation in the hands of the people who managed its affairs. This was Lester Eber, not Plaintiffs. The Will makes clear the intent of Allen Eber for Lester to manage the company and, together with the other Co-Trustees, control its voting stock. *See* Allen Eber Will (the "Will") at Articles 11 and 12 annexed as Exh. 8 to the Affidavit of Lester Eber dated November 8, 2019 ("November 8, 2019 L. Eber Aff."). *See Allen v. Biltmore Tissue Corp.*, 2 N.Y. 2d 534 (1957); *Moses v. Soule*, 118 N.Y. Supp. 410, 414 (aff'd 120 N.Y. Supp 1136 (1909) ("In the management of corporations few things are more apparent than the desire to keep control of the same in the hands of people who are congenial

2

to the enterprise and to those who manage its affairs….It is frequently provided in the…by-laws that a stockholder shall not sell his stock without first giving a stated period within which …other stockholders may have the opportunity to purchase. I find nothing in all this against public policy. On the contrary, it has to do solely with common sense and practical business.")

The transfer restriction in the By-laws was effective against the Trust. The Trust had actual knowledge of the transfer restrictions at least as long as Lester Eber and Elliott Gumaer were Co-Trustees (until at least June 1, 2017). CNB had actual knowledge not later than October 2018. In any event, the transfer restriction was conspicuously noted on the stock certificates (the statement "this Certificate and the shares represented thereby are issued and shall be held subject to all of the provisions of the…By-Laws and Amendments" was printed in bold type on the face of the stock certificates). Plaintiffs' Exh. 134, Dkt. 266-8. The restriction need not be set forth in full text. It only need be written so that a reasonable person against which it is to operate ought to have noticed it. N.Y. U.C.C. § 8-204, cmt. 2; § 1-201(10). *See Allen v. Biltmore Tissue Corp.*, 2 N.Y.2d 534 [fn 1] (1957) (The [UCC] draftsmen have stated that [Section 8-204] was not designed to change "prevailing care law….").

CNB, as a corporate trustee, had a higher duty of care when acting with respect to Trust assets. *See Villard v. Villard*, 219 N.Y. 482, 501 (1916) (reversed on other grounds).  This is true particularly because CNB had previously disclaimed any responsibility for providing investment advice on the stock of the Eber companies, since they were "off-guidance list" securities.

The CNB Corporate Trust Department knew perfectly well that transfer restrictions are quite common with small private family owned companies. A reasonable person acting as a Co-Trustee should have known that transfer restrictions would have been noted on the company's stock certificates and they were bound to inquire about this and not attempt to transfer the stock until they had ascertained whether or not transfer restrictions existed.

## II.   PLAINTIFFS' ARE NOT ENTITLED TO FORCE THE RETURN OF METRO TO THE TRUST.

**A.   Plaintiffs' derivative remedies, if any, are governed exclusively by the N.Y. Uniform Commercial Code and are limited solely to monetary damages.**

Alexbay's 2012 N.Y. U.C.C. § 9-620 foreclosure of EBWLC's interest in Metro was governed by New York's Uniform Commercial Code.  The New York State Legislature specially crafted U.C.C. § 9-620 for the narrow purpose of enabling a secured creditor to accept collateral in which it has a security interest in satisfaction of its secured debt. N.Y. U.C.C. § 9-620 was designed to simplify and codify New York law relating to strict foreclosures by secured creditors and provides a procedure "by which the secured party acquires the debtor's interest in the collateral without the need for a sale or other disposition." N.Y. U.C.C. § 9-620, cmt 1.

N.Y. U.C.C. § 9-620 sets forth specific conditions governing the foreclosure process and the remedies for a secured creditor's failure to adhere to the statutory requirements.  Here, Alexbay complied with the requirements under N.Y. U.C.C. § 9-620 and Plaintiffs do not allege otherwise. Alexbay's acceptance of Metro's stock in full satisfaction of the debt Metro's stock secured in accordance with the specific requirements of N.Y. U.C.C. § 9-620 had the effect of transferring to Alexbay all of EBWLC's rights in such stock and terminating any other subordinate interest therein.  N.Y. U.C.C. § 9-622.

However, even if Alexbay had not complied with the N.Y. U.C.C. provisions governing the foreclosure of its interest in collateral, Plaintiffs, in their derivative capacity on behalf of EBWLC, are limited to the remedies articulated in N.Y. U.C.C. § 9-625.  *See Rapillo v. CitiMortgage, Inc.*, No. 15-CV-5976(KAM)(RML), 2018 U.S. Dist. LEXIS 35491 at *18 (E.D.N.Y. Mar. 5, 2018).  Pursuant to the plain meaning of N.Y. U.C.C. § 9-625, equitable remedies are only available if the foreclosure is "proceeding" (i.e., has not yet become effective).

4

After a foreclosure has become effective, the remedy is not rescission or invalidation of the sale, but an action for money damages under N.Y. U.C.C. § 9-625(b).  *Id.* at 23-24 (holding that plaintiff's request for injunctive relief invalidating the foreclosure is "not available to Plaintiff as a matter of law"); *In re Enron Corp.*, No. 01-16034 (AJG), 2005 Bankr. LEXIS 3469, at *32 (Bankr. S.D.N.Y. June 16, 2005) (holding that equitable remedies are unavailable after the foreclosure has occurred).  After the foreclosure, rescission or invalidation of the transaction is not available even in the case of bad faith. *Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*, 2019 NY Slip Op 04495, ¶ 8, 174 A.D.3d 150, 162-63 (3d Dep't 2019) (money damages "is the available remedy to [plaintiff] at this stage…It may not, after dissolution and conclusion of the sale, unwind the sale, even if a court were to find that [defendant] was a bad-faith transferee.")

Here, it is undisputed that the 2012 Foreclosure was finalized in the Summer of 2012. Plaintiffs, who commenced this action four years thereafter are expressly limited by the N.Y. U.C.C. to money damages, if any, for a loss caused by a failure to comply.[1]  Plaintiffs' request for rescission of the 2012 Foreclosure and all subsequent transactions must be denied.

Moreover, Plaintiffs in their individual capacities as shareholders or beneficiaries of the Trust have no standing pursuant to the N.Y. U.C.C. to challenge Alexbay's 2012 Foreclosure.

**B.  Alexbay enforced its rights under N.Y. U.C.C. § 9-620 in good faith.**

In section II(A)(1) of Plaintiffs' Memorandum of Law in Support of Summary Judgment, Plaintiffs argue that the "crucial question is, following the default, did Lester and EBWLC act in complete good faith in granting ownership of EBWLC's essentially only asset to Lester himself."

---

[1] At the time of the 2012 Foreclosure, EBWLC and Metro were insolvent.  Thus, Plaintiffs suffered no damages.

Plaintiffs' argument misstates the issue.  The obligation to act in good faith under N.Y. U.C.C. § 9-620 is Alexbay's obligation as a secured creditor, not the obligation of the Board of Directors of EBWLC, as the debtor.  "Section 1-304 imposes an obligation of good faith on a secured party's enforcement under [Article 9]." N.Y. U.C.C. § 9-620, cmt. 11.  Plaintiffs' assertion that the good faith obligation extends to EBWLC, as the debtor, is incorrect.  They cite no authority in support thereof.

Every enforcement of a right within the N.Y. U.C.C. imposes an obligation of good faith in its enforcement. N.Y. U.C.C. § 1-304, cmt 1. In the N.Y. U.C.C. context, "good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing. N.Y. U.C.C. § 1-201 (20). "Fair dealing" is a broad term that must be defined in context. Fair dealing is concerned with the fairness of conduct rather than the care with which an act is performed. This is an entirely different concept than whether a party exercised ordinary care in conducting a transaction, in light of reasonable commercial standards. N.Y. U.C.C. § 1-201 (20), cmt 20.

New York courts hold that commercial reasonableness encompasses good faith. *See Granite Partners, L.P. v. Merrill Lynch*, 2002 U.S. Dist. LEXIS 8364, 96 Civ. 7874 (RWS) (S.D.N.Y. May 10, 2002) ("Commercial reasonableness 'hinges on the totality of the circumstances, including the good faith efforts of the creditor'") (citations omitted); *see also Central Budget Corp. v. Garrett*, 48 A.D.2d 825, 368 N.Y.S.2d 268, 269 (2d Dep't 1975) ("We construe 'commercially reasonable' in this context to mean that a qualifying disposition must be made in [ ] good faith").  Here, Justice Rosenbaum's Order specifically found that the 2012 Foreclosure was commercially reasonable.  Justice Rosenbaum's finding of commercial reasonableness includes an implicit finding that Alexbay acted in good faith and met the standard required by N.Y. U.C.C. § 9-620. Any attack by Plaintiffs on Justice Rosenbaum's Order, which implicitly found that Lester Eber's loans were enforceable and the 2012 Foreclosure was done in

good faith, is barred by the *Rooker-Feldman* doctrine, *Res Judicata* and the principle that matters claiming a fraud on the court must be brought before the original tribunal.  *See* Eber Defendants' Memorandum of Law §§ II(B) and III.

The N.Y. U.C.C. good faith requirement does not support an independent cause of action for failure to enforce a right in good faith. The good faith doctrine merely directs a court towards interpreting rights within the commercial context in which they are created, performed or enforced, and does not create a separate duty of fairness and reasonableness that can be independently breached. N.Y. U.C.C. § 1-304, cmt. 1.

Alexbay's duty to act in good faith is only relevant to Alexbay's conduct in enforcing its rights under N.Y. U.C.C. § 9-620 and in satisfying the specific requirements thereof. It does not permit Plaintiffs to sweep other collateral claims related to state law fiduciary duties of directors and of trustees into the issue of its good faith under N.Y. U.C.C. § 9-620. *Gratz v. Claughton*, 187 F.2d 46 (2d Cir. 1951) does not apply to a N.Y. U.C.C. § 9- 620 foreclosure. The purpose of N.Y. U.C.C. § 9-620 is to provide a simple and efficient statutory process that would allow a secured creditor to obtain finality to a foreclosure process and establish clear title to collateral.

**C.  Plaintiffs were not entitled to Notice of the 2012 Foreclosure.**

Plaintiffs' assertion that N.Y. U.C.C. § 9-620 required "due process" and notice of the proposed foreclosure to the Plaintiffs is incorrect. There is no such requirement in N.Y. U.C.C. § 9-620 and Plaintiffs cite no authority in support thereof. The facts in *In re Scarborough Prop. Corp.*, 25 N.Y.2d 553 (1969) do not involve a N.Y. U.C.C. § 9-620 foreclosure and the case does not impose an independent requirement of notification to the Plaintiffs for such a foreclosure. Plaintiffs do not raise any other issues with the satisfaction of the specific statutory conditions to effectiveness thereof under N.Y. U.C.C. § 9-620.

As the record evidence demonstrates, Lester Eber advised the Trust beneficiaries of the absolute necessity of making loans to Metro and EBWLC and offered them an opportunity to participate in the loans. L. Eber Aff. sworn to November 8, 2019 at ¶¶ 31-35; L. Eber Aff. sworn to December 5, 2019 at ¶¶ 13-16. Plaintiffs did not complain about the loans from Lester Eber (in which they refused to participate when they were made) which enabled Metro and EBWLC to survive. *Id.* Put simply, Plaintiffs want the Court to condone their enjoyment of the benefits of Lester Eber's loans, of which they had knowledge and refused to participate, and later punish Lester Eber for the personal risks he took to help try and save Metro and EBWLC.

Plaintiffs reliance of *Flaum v. Birnbaum* is inapposite for the following reasons: (1) the Will contains an express authorization permitting secured loans to be made by any Co-Trustee; (2) here, the Plaintiffs knew of and did not object to Lester's loans; (3) Lester Eber's loans were valid debt of EBWLC and Metro; and (4) Alexbay foreclosed on its security interest in the Metro stock, it did not purchase assets of the trust or use alleged debts of the trust to fund the purchase of personal assets.

Plaintiffs' assertion that the N.Y. U.C.C.'s standard of "commercial reasonableness" only governs a non-fiduciary secured creditor's duties is also incorrect. Plaintiffs cite no authority in support thereof.

**D. The 2012 Foreclosure was not a "sale" and Plaintiffs' attempts to characterize it as such fail as a matter of law.**

Plaintiffs mischaracterize the 2012 Foreclosure as a sale in sections II(A)(2) & (3) of their Memorandum of Law. The 2012 Foreclosure was not a sale, but the enforcement of the secured party's package of pre-existing rights, both as previously created as a matter of contract in 2010 and pursuant to N.Y. U.C.C. Article 9, a New York State statutory scheme specifically designed for these purposes. The pre-existing documentation for the Loans, and provisions of Article 9,

contemplated repayment of the Loans in full in accordance with their terms, or, in the case of a default, enforcement of the creditor's rights to repayment by foreclosing on the loans' collateral. It was all part of an integral whole created long before July 2012.

The Security Agreement was entered into by EBWLC, Metro and Lester Eber on February 26, 2010, and was amended and restated on February 11, 2011. November 8, 2019 L. Eber Aff. at ¶ 29, Exh. I. The Trustees ratified and approved Lester Eber's loans, the Guaranty and the Security Agreement by vote of Elliott Gumaer and Richard Hawks on August 18, 2011. *Id*.; December 6, 2019 L. Eber Aff. at ¶ 12.

The Security Agreement created a contemporaneous security interest in the collateral (the Metro stock) to secure repayment of the Loans and the Guaranty thereof dated February 26, 2010. November 8, 2019 L. Eber Aff. at ¶ 29. The Security Agreement itself granted Lester Eber the security interest in the collateral. *Id*. The security interest thereby became effective, or "attached", by virtue of N.Y. U.C.C. § 9-203. It "is effective according to its terms between the parties...." N.Y. U.C.C. § 9-201.

The security interest was an interest in the collateral directly (N.Y. U.C.C. § 1-201(b)(35)), senior, in the event of a default, to Plaintiffs' indirect beneficial interest as beneficiaries of the Trust, which owned the voting stock of Eber Bros., which in turn owned the voting stock of EBWLC, which in turn owned the voting stock of Metro. Plaintiffs had no direct ownership interest in the collateral at all. Lester even received possession of the collateral when the Security Agreement was executed.

The Security Agreement gave Lester the contractual right to "[e]nforce the security interest given [t]hereunder pursuant to the Uniform Commercial Code and any other applicable law." Security Agreement, § 6(b). N.Y. U.C.C. Article 9 gave Lester all the rights of a secured party under Article 9, including enforcing Article 9's property rights. N.Y. U.C.C. § 9-620 gave the

secured party the statutorily created right to accept the collateral in full satisfaction of the debt secured thereby. Once the statutory conditions to its effectiveness (N.Y. U.C.C. § 9-622) were satisfied, the debtor had no further interest therein.

Plaintiffs do not cite to a single case analogizing a foreclosure under N.Y. U.C.C. § 9-620 to a sale because the 2012 Foreclosure was not a sale. Plaintiffs' citation to *O'Hayer v. De St. Aubin*, 30 A.D.2d 419 (2d Dep't 1968), actually supports Lester Eber's position because the language of the Trust specifically allows the Trustee to make loans secured by the Trust assets and, as discussed *infra* (pgs. 25-27), Lester Eber's consulting contract with Southern cannot be reasonably regarded as the legitimate objective of the Trust corporations. *See id.* at 155. Plaintiffs' reliance on *Gratz v. Claughton*, 187 F.2d 46 (2d Cir. 1951) is also misplaced. In *Gratz*, the Second Circuit decided issues related to the proper venue and constitutionality of claims for violations of § 16 of the Securities and Exchange Act of 1934, neither of which has any applicability to this matter. *In re Scarborough Properties*, 255 N.E.2d 761 (1969) is likewise distinguishable to this matter. *In Scarborough*, the Trustee sought permission to purchase an asset of the trust, not lend the Trust corporations money as Lester Eber did.

For the reasons stated above, Alexbay acted in good faith as a matter of law. At a minimum, there is an issue of fact with respect to whether Alexbay acted in good faith with respect to the 2012 Foreclosure.

## III. LESTER EBER'S ACTIONS WERE EXPRESSLY AUTHORIZED BY THE WILL.

### A. Plaintiffs' assertion in sections II(A)(3) and II(B) of their Memorandum of Law that the Co-Trustees had a duty to retain the Eber companies fails as a matter of law.

The Co-Trustees had no duty to retain the capital stock of Eber Bros., EBWLC, Metro or Eber-CT during the life of the Trust. The Will clearly provides (a)…"it is my wish that my voting

control of Eber Bros. & Co., Inc. can be retained and, subject to that primary wish, I hope that my interest in certain other close corporations can also be retained….I accordingly expressly authorize my…Trustee to retain my stock of Eber Bros. & Co., Inc. and my interests in any other close corporations…with which I may be connected at the time of my death, and, although this shall not be deemed a direction to retain such corporate stocks or business interests, I, nevertheless, direct that neither my Executor nor my Trustee shall be responsible or accountable for any loss to my estate resulting from the retention of any such corporate stocks or business interests, provided only that it shall have acted in good faith." Will, Art. 11, November 8, 2019 L. Eber Aff. at Exh. 8. Article TWELVE of the Will grants the Trustee the authority "[t]o sell, exchange or otherwise dispose of any such property…for cash or for any other consideration…" *Id.*

The clear and unambiguous language of the Will gives the Trustee the power to dispose of the Trust assets. Plaintiffs' claims to the contrary fail as a matter of law.

**B. The 2012 Foreclosure was contemplated and necessarily permitted by the Will.**

According to Article 12, Paragraph H, of the Will, Allen Eber granted to Lester Eber, his Trustee, the power to "borrow money from itself or others for the benefit of my estate or any trust hereunder, and to *secure the loan by pledge or mortgage of the property of my estate* or any trust and to renew existing loans" (emphasis added).

Plaintiffs concede this language of the Will expressly permitted Lester Eber to make secured loans to the Eber Companies. However, Plaintiffs then erroneously contend that, despite the clear language in the Will, Lester Eber could not foreclose on the collateral after the loans went into default. Plaintiffs recognize that *O'Hayer*, 30 A.D.2d 419, applied to the facts of this case, allowed Allen Eber to relax Lester Eber's duty of undivided loyalty to the Trust, as a Co-Trustee, by appropriate language in the Will. This relaxation of Trustee duties can be achieved expressly or by necessary implication. By expressly allowing a Trustee to "secure the loan by pledge or

mortgage of the property of my estate," Allen Eber necessarily implied that the security interest in the property of the estate could be foreclosed upon in the event of a default.[2] Here, like in *O'Hayer*, the strong and precise language used by Allen Eber to enable a Trustee to make secured loans to the Eber Companies should not be read as Plaintiffs suggest "for, otherwise, the trust provisions viewed in their totality become meaningless and unrealistic" *O'Hayer*, 30 A.D.2d at 424.

At a minimum, there is an issue of fact as to whether the Trust authorized Lester Eber through Alexbay to foreclose on the debt secured by EBWLC's interest in Metro.

## IV.   THE 2012 FORECLOSURE ALSO COMPLIES WITH CORPORATE LAW.

### A. Plaintiffs err as a matter of law in attempting to characterize the 2012 Foreclosure as a "freeze out merger" and subject to the boards' consent process.

Plaintiffs' rely on *In re Kenneth Cole Productions, Inc.*, 27 N.Y.3d 268 (2016) as setting forth a multi-step process that allows the board of directors of an acquired party in a two-party merger involving a conflict of interest to rely on the business judgment rule rather than the entire fairness doctrine. It has nothing to do with the 2012 Foreclosure. Plaintiffs cite no authority imposing the process requirements in the *Cole* case on a N.Y. U.C.C. § 9-620 foreclosure.

Unlike a third-party merger (N.Y. B.S.C. § 903), New York law does not require a shareholder vote to approve a N.Y. U.C.C. § 9-620 foreclosure, whether by a simple majority, or a majority of a minority, vote. In any event, if a shareholder vote was required for the 2012 Foreclosure, it would be a vote of the sole shareholder of Metro, and of EBWLC, not Plaintiffs.

As previously stated in section II, *supra*, the N.Y. U.C.C. § 9-620 is a specially crafted procedure adopted by the New York State Legislature for the narrow purpose of allowing a secured

---

[2] If foreclosure of the security interest was not contemplated by Allen Eber, he would have prohibited securing loans with Trust assets or only allowed the Trustee to make unsecured loans.

creditor to accept collateral in which it has a security interest in satisfaction of its secured debt. Whether the business judgment rule or the entire fairness rule may apply to the 2012 Foreclosure, the *Cole* procedure is irrelevant.

      *Cole* also addresses the advisability of involving a special committee of independent directors. Unlike the *Cole* case, which involved a public company, the Eber companies are small family companies. While it may be helpful in some circumstances to have a board of directors with independent directors, and/or to implement other common corporate governance measures, "[t]hese 'best practices,' while laudatory, do not yet set the bar for minimally acceptable levels of care." *In re Perry H. Koplik & Sons, Inc.*, 476 B.R. 746, 800 n. 289 (Bankr. S.D.N.Y. 2012) (challenging various transactions by the small family company involving alleged conflicts of interest).

      In any event, N.Y U.C.C. § 9-620 foreclosures are not governed by the business judgment rule or the entire fairness doctrine, but only conditioned on the consent of the owner of the collateral. The foreclosure is effective even if the debtor merely declines to object, rather than affirmatively consents, to the secured creditor's foreclosure proposal. *See* N.Y. U.C.C. § 9-620(c)(2).

**B.  Plaintiffs' claim that various corporate actions were invalid because technical corporate formalities were not followed by the Eber companies is incorrect.**

      Plaintiffs complain that the Eber companies failed to comply with technical corporate formalities in connection with various corporate actions, and, as a result, those actions are invalid.

      Plaintiffs assume that the Eber companies' corporate governance is required to be held to the same technical legal standards as a large public company with significantly greater resources. Plaintiffs misread New York law in this respect. Under New York law, the failure to follow corporate formalities, in a closely held corporation, is not actionable by itself. *In re Perry H. Koplik*

& Sons, Inc., 476 B.R. 746, 797-800 (Bankr. S.D.N.Y. 2012) ("Thus if, by way of example, officers of a closely held corporation engaged in all the necessary analysis before making a business decision, their failure to meet as a board and enact corporate resolutions would not, under the New York cases, make an otherwise thoughtful decision improper"); *Barkin Construction Co. v. Goodman*, 221 N.Y. 156,161, 116 N.E., 770 (1917) ("Courts are not to shut their eyes to the realities of business life"); *Haff v. Long Island Fuel Corp.*, 233 A.D.117,121 (2d Dep't 1931) ("In the management and affairs of a family corporation, irregularities not directly harmful in their nature will be overlooked, and invalidity will not be sought if the declaration of illegality would work injustice"); *St. Marks Assets, Inc. v. Sohayegh*, 167 A.D.3d 458, 90 N.Y.S.3d 30 (1st Dept 2018), citing *Leslie, Semple & Garrison v. Gavit & Co.*, 81 A.D.2d 950 (3d Dep't 1981) ("If corporate formalities are customarily dispensed with and the affairs of a close corporation are carried on through informal conferences, decisions reached by all the directors and shareholders at informal conferences bind the corporation"). *See also Gerard v. Empire Square Realty Co.*, 195 A.D. 244 (2d Dep't 1921).

## C. N.Y. B.S.C. § 909 does not require EBWLC's sole shareholder to approve the 2012 Foreclosure.

Shareholders of a New York corporation do not have an ability to prevent, or bring claims against a board of directors for failing to obtain shareholder consent prior to authorizing a N.Y. U.C.C. § 9-620 foreclosure. A N.Y. U.C.C. § 9-620 foreclosure is a statutory remedy, wholly separate from a transaction where a corporation undertakes a voluntary asset disposition. N.Y. B.S.C. § 911 expressly permits a New York corporation to secure a loan from a third party with its assets without obtaining shareholder consent. Therefore, shareholders cannot expect to be able to interfere with the lender's right to enforce its remedies under such pledge by foreclosing on such assets under N.Y. U.C.C. § 9-620. *See Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 300

(S.D.N.Y. 2019). Plaintiffs reliance on *Sardanis v. Sumitomo Corp.*, 282 A.D.2d 322, 723 N.Y.S.2d 466 (1st Dep't 2001) is incorrect. When that case did not involve the enforcement of a security interest in collateral by a creditor, whether or not pursuant to a specific statutory scheme. Also, one principal purpose of N.Y. B.S.C. § 909 is to protect minority shareholders. *Gavit & Co.*, 81 A.D.2d 950. Here, in 2012 EBWLC had only one shareholder—Eber Bros.

**D. In consenting to the 2012 foreclosure under ny ucc 9-620, the directors of ebwlc owed their fiduciary duties to ebwlc and its creditors, and the directors of metro owed their fiduciary duties to metro and its creditors.**

Under New York law, directors of an insolvent corporation owe a fiduciary duty to preserve the assets of the corporation for the benefit of its creditors. The duty that directors owe to the creditors of an insolvent corporation is defined primarily by the "trust fund doctrine" under which the directors hold the remaining corporate assets in trust for its creditors as the principally affected persons, the new residual claimants on the corporation's assets. *New York Credit Men's Adjustment Bureau v. Weiss*, 305 N.Y.1, 7 (N.Y. 1953) ("If the corporation was insolvent at that time it is clear that defendants, as officers and directors thereof, were to be considered as though trustees of the property for the corporate creditors-beneficiaries*."); Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y. 541, 549 (2000); *Geren v. Quantum Chemical Corp.*, 95-7454, 1995 U.S. App. LEXIS 39912 at *3 (2d Cir. Dec. 13, 1995) ("[u]nder New York law, directors of a corporation may become trustees of the creditors when the corporation is insolvent."); *Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 (2d Cir. 1981); *RSL Communications PLC v. Bildirici*, 649 F. Supp. 2d 184, 202 (S.D.N.Y. 2009). On and prior to the date in July 2012 on which Wendy Eber and Elliott Gumaer consented to the 2012 Foreclosure, EBWLC and Metro were both insolvent, and the directors of each owed their fiduciary duties to the corporation and all of its creditors, not just Alexbay.

15

At minimum, Metro's and EBWLC's insolvency is a genuine issue of material fact. The Torchio Report and the November 8, 2019 Affidavits of Lester Eber and Wendy Eber demonstrate that Metro and EBWLC were insolvent at least as early as late May and early June 2012. Affidavit of Wendy Eber sworn to November 8, 2019 ("November 8, 2019 W. Eber Aff.") at ¶ 46, the Expert Report of Frank Torchio attached as Exhibit F to the November 8, 2019 W. Eber Aff.; November 8, 2019 L. Eber Aff. at ¶ 36. Plaintiffs have not even offered an expert opinion of Metro's or EBWLC's solvency at the time of the 2012 Foreclosure. Plaintiffs' attempts to question Torchio's report fail as a matter of law or, at best, raise a genuine issue of material fact.

Under N.Y. B.S.C. § 717(b), New York's "Constituency Statute," Wendy Eber and Elliott Gumaer were entitled to consider, and did consider, a variety of other factors, in determining whether to consent to the 2012 Foreclosure in July 2012. "In taking action…a director shall be entitled to consider, without limitation…the effects that the corporation's actions may have in the short-term or in the long-term upon…(i) the prospects for potential growth, development, productivity and profitability of the corporation; (ii) the corporation's current employees; (iii) the corporation's retired employees…entitled to receive…benefits…from any plan sponsored …by the corporation; or (iv) the corporation's customers and creditors…." N.Y. B.S.C. § 717(b).

The fact that Wendy Eber is Lester Eber's daughter does not change what the nature of her duties as a director of EBWLC and Metro were and to whom she owed those duties. Plaintiffs do not contest that this is true.

Under New York law, a corporation is "insolvent" if the "present fair salable value of [its] assets is less than the amount that will be required to pay [its] probable liability on its existing debts as they become absolute and mature. N.Y. D.C.L. § 271(1). "Debt" includes "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y. D.C.L. 270.

Under the U.S. Bankruptcy Code, 11 U.S.C.101(32)(A) defines "insolvent" for a corporation as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation…." "Debt" means "liability on a claim" 11 U.S.C. § 101(12). "Claim" means a right to payment, or a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5).

As of the time of the 2012 Foreclosure, the unfunded benefit liability under the EBWLC Plan was an accrued liability under the EBWLC Plan, and was therefore an existing "debt" of EBWLC. *See Lippe v. Bairnco Corp.*, 249 F. Supp.2d 357 (S.D.N.Y. 2003), *aff'd* 99 Fed. Appx 274 (2d Cir. 2004); *Shelly v. Doe*, 249 A.D. 2d 756 (3d Dep't 1998). Such accrued liability of EBWLC was also a contingent liability of Metro and Eber Bros. to the PBGC, and was therefore an existing "debt" (which, by definition, includes contingent liabilities) of those two entities. *See* Eber Defendants Memorandum of Law dated November 8, 2019 at pgs. 3-6. As of the time of the 2012 Foreclosure, the Teamsters Fund withdrawal liability was a matured and joint and several liability of Eber Bros., EBWLC and Metro to the Teamsters Fund. *Id.* Also, at the time of the 2012 Foreclosure, loans made by Lester Eber, and then held by Alexbay, were existing "debts" of each of EBWLC and Metro. *Id.*

Determining a debtor's "probable liability on [its] existing debts as they become absolute and matured" is to be determined from the viewpoint of the facts and circumstances as of the time that insolvency is claimed to have existed. *Lippe*, 249 F. Supp.2d at 380. "The question…is what [debtor's] objectively probable liability [was] on his existing debt at the time of the…conveyance." *Tae H. Kim v. Ji Sung Yoo*, 311 F. Supp.3d 598, 616 (S.D.N.Y. 2018).

17

The accrued unfunded benefit liability under the EBWLC Plan was deemed to be a matured joint and several liability of Eber Bros., EBWLC and Metro to the PBGC, as of the judicially-determined date of involuntary termination of the EBWLC Plan. *See* Order of Michael A. Telesca dated January 19, 2016 ("WDNY Order") at pg.17 annexed as Exhibit E to the November 8, 2019 W. Eber Aff. The termination date in an involuntary plan termination is "the earliest date when the plan's participants had actual or constructive notice of the plan's termination, i.e., notice sufficient to extinguish their reliance interest" in further benefit accruals under the plan. *PBGC v. Broadway Maintenance Corp.*, 707 F.2d 647, 652 (2d Cir. 1983). Accrual of additional benefits under the EBWLC Plan was frozen by EBWLC in December 2000. EBWLC ceased operations by September 2008 and terminated all its employees by May 2009. WDNY Order at 10-11. It is undisputed that Judge Telesca's Order established April 30, 2010 as the Plan termination date. *Id.* at 17.

Also, Plaintiffs' claim that the book value of the assets (and related book goodwill), and what Plaintiffs call the "equity value" (actually just the book shareholders equity) of Eber-CT, as shown on its balance sheet, were relevant to the fair valuation of Eber-CT is clearly wrong. Asset values carried on a balance sheet, even if derived in accordance with General Accepted Accounting Principles ("GAAP"), do not necessarily reflect fair value. GAAP is not synonymous with any specific valuation policy. *In re F&S Cent. Mtg. Corp.*, 53 B.R. 842 (Bankr. E.D.N.Y. 1985), citing *Pittsburgh Coke & Chemical Co. v. Bollo*, 560 F.2d 1089 (2d Cir. 1977). Likewise, goodwill must be disregarded in a determination of solvency, even though it is calculated consistent with GAAP, because it "cannot be said to satisfy a creditor claim." *In re Bay Plastics*, 187 B.R. 315, 330 (Bankr. C.D. Cal 1995).

18

**E. Even if the Entire Fairness Doctrine is applicable, the 2012 Foreclosure meets the entire fairness standard.**

Even where defendant directors do not adopt any protective measures, fail to consider the common stockholders and fail to acknowledge conflicts of interest, a transaction will still meet the test of fairness if the "'minority stockholder shall receive the substantial equivalent in value of what he had before.'" *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 76 (Del. Ch. 2013) quoting *Sterling v. Mayflower Hotel Corp.*, 93 A.2d 107, 114 (Del. 1952); *accord Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 940 (Del. 1985). Here both EBWLC and Metro were insolvent. *See* Torchio report at pg. 36-37; November 8, 2019 W. Eber Aff. at ¶ 46; and November 8, 2019 L. Eber Aff. at 36. Like in *Trados*, the Eber Companies had no ability to raise additional capital and the officers/directors (Lester Eber) refused to put in additional money. November 8, 2019 L. Eber Aff. at ¶ 27. The value of the Eber Bros. & Co. shares when taking into account the liabilities to the PBGC, Teamsters, Lester Eber, Harris Beach, D4 and Benderson Development, all of whom would be paid prior to Plaintiffs is zero.

At minimum, there is a question of fact as to whether Plaintiffs received "substantial equivalent in value to what they had before."

**F. The Security Agreement and Guaranty are valid.**

As addressed in section II(B) the Eber Defendants' Memorandum of Law in Support of their Motion for Summary Judgment Plaintiffs' challenge to the validity of the loans, the Guaranty and the Security Agreement are barred by the *Rooker-Feldman* doctrine. *See* Eber Defendants' Memorandum of Law at pgs. 9-11.

According to New York General Obligations Law § 5-1105, "[a] promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is

expressed in the writing and is proved to have been given or performed and would be a valid

consideration but for the time when it was given or performed." N.Y. Gen. Oblig. Law § 5-1105.

Where the consideration is referenced, even cursorily, the Second Circuit finds that the

requirements of N.Y. Gen. Oblig. Law § 5-1105 are met. Here, the Guaranty and the Security

Agreement specifically reference the past consideration of the Line of Credit Note in the amount

of $1,500,000. *See In re Levine*, 32 B.R. 742, (S.D.N.Y. 1983), aff'd, 732 F.2d 141 (2d Cir. N.Y.

1984) and *Am. Bank & Tr. Co. v. Lichtenstein*, 48 A.D.2d 790, 790-91, (1st Dep't 1975) ("The

guarantees, which are in writing, were given upon the expressed past consideration of 'any

financial accommodations given', and therefore, come within subdivision 5-1105 of the General

Obligations Law, and are enforceable" quoting *Weyerhaeuser Co. v. Gershman*, 324 F.2d 163, 165

(2d Cir. 1963)). The Guaranty and Security Agreement both dated February 26, 2010 are annexed

as Exhibit I to the November 8, 2019 L. Eber Aff. Plaintiffs' claims that the Security Agreement

and Guaranty are invalid fail as a matter of law.

## V.   PLAINTIFFS' ARGUMENT TO SET ASIDE THE 2017 ISSUANCE OF EBWLC PREFERRED STOCK TO LESTER EBER IS INCORRECT.

The Certificate of Amendment (the "Certificate of Amendment") dated February 14, 2017,

of the Certificate of Incorporation of EBWLC, authorizing the creation of Class B junior preferred

stock, was approved by Written Consent of the Sole Director of EBWLC dated February 15, 2017,

and by Eber Bros., as the sole voting stockholder of EBWLC, by Written Consent dated February

15, 2017, pursuant to N.Y. B.S.C. 805. *See* Exhibit B to December 5, 2019 L. Eber Aff.

N.Y. B.S.C. § 713 does not apply to the issuance of the preferred stock to Lester Eber,

which only applies to transactions between a corporation and one of its directors. Lester was not a

director of EBWLC at the time the stock was authorized or issued. Even if it did apply, the

transaction was disclosed to, and approved by, Eber Bros.

Lester's duty of undivided loyalty as a co-Trustee of the Trust requires only a showing of his good faith where, as here, the Will relaxed such duty by appropriate language in which Allen Eber, either expressly or by necessary implication, recognizes that Lester may have interests potentially in conflict with the Trust. *O'Hayer* 30 A.D.2d at 423; *see* Will, Article Twelve, Clauses D, E, H, I, O and R.

The Certificate of Amendment was validly approved by a Written Consent dated February 15, 2017, of the Sole Member of the Board of Directors of EBWLC, pursuant to Article II, para. 10 of the EBWLC By-laws. Quorum requirements only relate to whether an actual board meeting was validly held (if a quorum is present, then only the vote of a majority of the directors present is required for valid board action). It is not relevant to a written consent of all the directors in lieu of meeting process.

## VI.   PLAINTIFFS ARE NOT ENTITLED TO A CONSTRUCTIVE TRUST WHERE, AS HERE AN ADEQUATE REMEDY AT LAW EXISTS.

It is well-established under New York law that "equity will not entertain jurisdiction where there is an adequate remedy at law." *Boyle v. Kelley*, 42 N.Y.2d 88, 91, (1977). New York courts consistently hold that "[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate." *Bertoni v. Catucci*, 117 A.D.2d 892, 895, (3d Dep't 1986); *see e.g. Evans v. Winston & Strawn*, 303 A.D.2d 331, 333, (1st Dep't 2003) ("Plaintiffs' claim for a constructive trust was properly dismissed since plaintiffs do not claim that [defendant] is unable to repay plaintiffs' capital contributions, and it does not otherwise appear that the legal remedy of damages will be inadequate").

Here, Plaintiffs have an adequate remedy at law—money damages.  In the unlikely event Plaintiffs are victorious, money damages are an adequate remedy to the Trust beneficiaries who took no interest in the operations of the Eber companies.  Similarly, any alleged damages arising

from Wendy Eber receiving shares of Metro or Metro exercising the call option with respect to Slocum & Sons of Maine, Inc. stock is compensable through money damages.

Plaintiffs reliance on *Flaum v. Birnbaum*, 120 A.D.2d 183 (4th Dep't 1986) is misplaced, as described supra at pg. 9.  Additionally, *Birnbaum v. Birnbaum*, 117 A.D.2d 409 (4th Dep't 1986) is also distinguishable from this matter.  In the *Birnbaum* matters, the Defendant did not substantiate the purported loans made to the estate where as here, there is no dispute that Lester Eber loaned millions to the Eber companies.

**VII.   SECTION VI OF PLAINTIFFS' MEMORANDUM OF LAW CLAIMING LESTER USURPED A CORPORATE OPPORTUNITY BY ENTERING INTO THE CONSULTING AGREEMENT WITH SOUTHERN FAILS AS A MATTER OF LAW.**

Plaintiffs' claims that Lester's consulting agreement with Southern violated his duties as Trustee, and an officer or director of the Eber Companies fails as a matter of law because EBWLC had no tangible expectancy of obtaining the consulting business of Southern and Lester Eber's consulting for Southern was neither necessary nor essential to the line of business of the corporation.

"It is well settled that the corporate opportunity doctrine does not apply where the corporation had no tangible expectancy in the opportunity allegedly taken by the fiduciary." *Kuo v. Kuo*, 96 Civ. 5130 (CM), 1999 U.S. Dist. LEXIS 2384 at *11 (S.D.N.Y. Mar. 4, 1999) aff'd, 216 F.3d 1072 (2d Cir. 2000) citing *Washer v. Seager*, 272 A.D. 297, 303-4 (1st Dep't 1947) and *In re Gordon Car & Truck Rental*, 65 B.R. 371, 376 (Bankr. N.D.N.Y. 1986); *see also Rafield v. Brotman*, 261 A.D.2d 257, 258, (1st Dep't 1999) (finding that corporation had no tangible expectancy of continuing the relationship with its customer who hired corporation's officer/director after customer determined to bring services inhouse).  Under New York law, a corporate opportunity cannot be created by the mere desire or hope of doing business in the

future. *See Alexander & Alexander v. Fritzen*, 147 A.D.2d 241, 247-48, 542 N.Y.S.2d 530 (1st Dep't 1989).   Moreover, a business opportunity must be so essential and necessary to the corporation's success that "the consequences of deprivation are so severe as to threaten the viability of the enterprise." *Alexander*, 147 A.D.2d at 248.  New York courts "reject as overbroad [ ] interpretation[s] of a business opportunity as that which embraces areas into which the corporation could naturally or easily expand." *Id.* at 249.

Here, Plaintiffs' claim against Lester Eber for breach of fiduciary duty as a faithless servant fails as a matter of law because EBWLC had no tangible expectancy in the consulting agreement with Southern, EBWLC had ceased operation months before Lester Eber entered into the consulting agreement. EBWLC and Metro engaged in the business of wine and liquor distribution. Neither EBWLC nor Metro had ever provided in consulting or lobbying services. November 8, 2019 L. Eber Aff. at ¶¶ 17-24.  Even, assuming arguendo, if EBWLC and Metro could have naturally expanded into consulting and/or lobbying services, it would have been insufficient to turn Lester Eber's consulting agreement into a business opportunity for EBWLC or Metro. Additionally, like in *Kuo*, EBWLC and Metro had ceased operations prior to Lester Eber entering into the consulting agreement. EBWLC and Metro had no tangible expectancy in any business because they were out of business.

In New York, "such evidence that the third party would not have done business with the corporation, but only the employee or officer individually would have, is sufficient to preclude a finding that a corporate opportunity existed." *Moser v. Devine Real Estate, Inc.*, 42 A.D.3d 731, 735-36 (3d Dep't 2007) citing *DiPace v. Figueroa*, 223 AD2d 949, 952, (1996).  Here, Lee Hager unequivocally testified that Southern was not interested in doing business with EBWLC or Metro and that it would have only offered the consulting agreement to Lester Eber in his individual

capacity.  November 8, 2019 L. Eber Aff. at ¶¶ 22-24. If the consulting agreement could not be considered a corporate opportunity, it cannot be a trust asset.

The case law cited by Plaintiffs in support of section VI of their Memorandum of Law is wholly distinguishable from this matter. Plaintiffs' reliance on *In re Signature Apparel Grp. LLC*, 577 B.R. 54, (Bankr. S.D.N.Y. 2017) is also misplaced for several reasons: (1) the bankruptcy court applied Delaware law which defines corporate opportunity more broadly than New York law; (2) the corporation was in Chapter 11 Bankruptcy and still operating whereas here, EBWLC and Metro were no longer operating; and (3) the defendants violated the automatic bankruptcy stay by transferring the corporation's most valuable asset.  Plaintiffs' also err in relying on *Cmty. Nat'l Bank v. Med. Benefit Adm'rs, LLC*, 242 Wis. 2d 626, (2001) because it applies Wisconsin law and found an issue of fact as to whether the receiver had usurped a corporate opportunity.  Likewise, *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 855 (E.D. Va. 2011) is also misplaced because it involves the interpretation of a contract under Virginia law and is inapposite. Lee Hager, Executive Vice President of Southern, testified that Southern had no interest in contracting with any of the Eber Companies.

Plaintiffs' self-serving speculations that Southern could and would have contracted with the Eber corporations belie the record evidence and fail to give rise to a corporate opportunity. *Kuo*, 1999 U.S. Dist. LEXIS 2384.  At a minimum, there is an issue of fact as to whether Lester Eber breached his fiduciary duty by entering into the consulting agreement with Southern.

## VIII.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANY OF THEIR DERIVATIVE CLAIMS AND THEIR REQUEST FOR ATTORNEYS' FEES FAILS AS A MATTER OF LAW.

"Although Business Corporation Law § 626(e) provides that a successful plaintiff in a shareholders' derivative action *may* recoup legal expenses and attorneys' fees from the proceeds of a judgment, compromise or settlement in favor of the corporation, it does not authorize the

imposition of such expenses on the losing party" (emphasis added).  *Glenn v. Hoteltron Sys., Inc.*, 74 N.Y.2d 386, 393, (1989).  In the event Plaintiffs are successful in their derivative capacity as shareholders of Eber Bros., the court may—but is not obligated—to award attorneys' fees from the corporation.  *Id.*  Here, Plaintiffs are not entitled to summary judgment on any of their derivative claims and attorneys' fees are unwarranted.

**CONCLUSION**

For all of the foregoing reasons, the Eber Defendants' motion for partial summary judgment should be granted.

DATED:       December 6, 2019
             Rochester, New York

                                    UNDERBERG & KESSLER LLP


                              By: */s/ Paul F. Keneally, Esq.*
                                  Paul F. Keneally, Esq., Of Counsel
                                  Colin D. Ramsey, Esq., Of Counsel
                                  Jillian K. Farrar, Esq., Of Counsel
                                  *Attorneys for Eber Defendants*
                                  300 Bausch & Lomb Place
                                  Rochester, New York 14604
                                  (585) 258.2800