UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN and AUDREY HAYS,

                Plaintiffs,

v.

LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC, ESTATE OF ELLIOTT W. GUMAER, JR. and WENDY EBER,

                Defendants,

and

EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER-CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS OF MAINE, INC., and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,

                Nominal Defendants.

Civil Action No.
16-CV-9517(LAK/KHP)

**AFFIDAVIT OF LESTER EBER**

STATE OF NEW YORK   )
                              ) ss:
COUNTY OF MONROE  )

Lester Eber, being duly sworn, deposes and states as follows:

1. I am a defendant in the above-captioned action. I make this Affidavit in opposition to the motion for summary judgment filed by plaintiffs, Daniel Kleeberg, Lisa Stein and Audrey Hays.

2. I incorporate by reference my November 8, 2019 Affidavit in support of the motion for partial summary judgment made by me, as well as by defendants Alexbay, LLC f/k/a Lester Eber ("Alexbay"), LLC and Wendy Eber (collectively, the "Eber Defendants").

3. In their motion, plaintiffs essentially allege that I engaged in an elaborate and calculated scheme to deprive them of their interest in the family business. This is patently false.

4. At no time prior to the current lawsuit did Lisa Stein or Audrey Hays show the slightest interest in the family business that they now purport to care about so much. Further, while Daniel Kleeberg was a longtime employee of Eber Bros., when the company fell on hard times in 2007, he was quick to abandon the company and head to Florida pursue his own financial interests.

5. Conversely, for almost 60 years – the entirety of my working life – I have worked for Eber Bros. and the related Eber entities, and always sought to do what was in the best interest of the businesses started by my father.

6. Everything that I have done for the businesses over the years was undertaken in good faith, and I never sought to, or did, personally benefit at the expense of the companies.

7. Plaintiffs allege that I engaged in "self-dealing" in pursuing a foreclosure pursuant to the U.C.C. in 2012. However, they conveniently omit the fact that I was the only individual or entity willing to lend millions of dollars to the companies in the years prior to keep them afloat. Had I not personally loaned those monies, the Eber entities would have ceased to exist long prior to the 2012 Article 9 foreclosure and the Supreme Court proceeding that found the foreclosure commercially reasonable.

8. Further, while I am not a lawyer, it is demonstrably false for plaintiffs to allege that the 2012 proceeding was a "sale." Alexbay was not a buyer and EBWLC and Metro were not sellers.

9. Rather, Alexbay was a secured creditor foreclosing on the collateral securing the debt of EBWLC and Metro.

10. The actions of Alexbay in this regard are clearly countenanced by Allen Eber's Will. See Exhibit A to November 8, 2019 Affidavit of Lester Eber.

11. More specifically, Article 12, Clause H expressly permits me, as a Co-Trustee, to make a secured loan to the Trust or the companies owned by it. (See Exhibit A, p. 17 to November 8, 2019 Affidavit of Lester Eber). By clear implication, this provision permits me to enforce my security interest in the collateral (i.e., the capital stock of Metro) securing the loans.

12. Additionally, on August 18, 2011, Elliott Gumaer and Richard Hawks of CNB in their capacity as Co-Trustees ratified my loans to EBWLC and the Security Agreement securing the indebtedness. A copy of the Minutes from the meeting of the Officers of the Trust of Allen Eber dated August 18, 2011 is attached hereto as Exhibit A.

13. Next, contrary to the implicit (and at times explicit) contention that the beneficiaries did not consent to my various loans to the companies, it is undisputable that they had the opportunity to participate in making the loan(s) and refused to do so, and failed to object to my loans.

14. As set forth in the November 8th Affidavit, by letters dated March 22, 2010 and April 2, 2010, I affirmatively offered the opportunity to Sally Kleeberg and Audrey Hays to participate in loans to try and save the companies. In my letters, I explicitly advised that I had already loaned a significant amount of money in an effort to save them.

15. It is undisputed that Sally Kleeberg and Audrey Hays rejected the opportunity to participate in the loans. It is also undisputed that at no point did they (or

any of the beneficiaries) object to me loaning money to the companies, or challenge the authenticity of my loans.

16. Ms. Kleeberg, Ms. Hays and the other beneficiaries were all too happy to let me continue to put money into the companies, but were unwilling to do so themselves.

17. In addition, contrary to the allegations in their motion, plaintiffs were well aware that Mr. Gumaer was a longtime lawyer for the various Eber entities (in addition to being a Co-Trustee).

18. While Mr. Gumaer also served as my personal lawyer at times, none of the resolutions or transactions at issue in this lawsuit involved matters that Mr. Gumaer was handling for me personally.

19. Next, plaintiffs continue to misconstrue and mischaracterize the nature of the Consulting Agreement that I entered into with Southern Wine & Spirits ("Southern") in August 2007.

20. As set forth in my November 8th Affidavit, Southern's 2004 entry into the New York market was the beginning of the end for Eber Metro and EBWLC. To that end, by March 2007 Eber-CT was the only Eber entity still operating (albeit in Connecticut) as both EBWLC and Metro had laid off all employees and ceased operations in New York.

21. In fact, Daniel Kleeberg referred to Southern's entry into New York as "devastating" to EBWLC during his December 2018 deposition. See Exhibit B, Part 1, p. 48 to November 8, 2019 Affidavit of Lester Eber.

22. It was only at that point – i.e. after EBWLC and Metro had ceased operations – that I negotiated the Consulting Agreement with Southern.

23. It is patently false for plaintiffs to allege that I negotiated the Consulting Agreement prior to or contemporaneously with the closure of EBWLC and Metro, or that the Consulting Agreement was some type of "side deal" that was meant to enrich me at the expense of the companies. EBWLC's Board was aware of the Consulting Agreement.

24. As further set forth in my November 8th Affidavit, Southern made abundantly clear that it was interested in my knowledge and expertise in the New York wine and liquor industry. It was not interested in entering into an agreement with any one of the Eber entities.

25. This makes sense, as neither Metro nor EBWLC ever performed any type of consulting work. This is the reason that I was the only person or entity that entered into a restrictive covenant in connection with the Consulting Agreement. I never considered proposing to Southern that the Consulting Agreement be with one of the Eber entities, as Southern clearly had no interest in such a relationship.

26. With respect to plaintiffs' allegations surrounding the termination of the Allen Eber Trust, it must be noted that CNB – not me – who was aggressively advocating for the termination of the Trust.

27. While it is true that I did not object to the termination in Surrogate's Court, I certainly did not agree to any improper or incorrect distributions in connection with that termination.

28. The terms of CNB's proposed transfer of Eber Bros. shares in October 2017 were clearly wrong.

29. CNB's Petition for judicial settlement of final account, dated February 15, 2017, and the related final account of trustee (which indisputably I had no involvement in

5

preparing), and the Order of judicial settlement of final account dated June 1, 2017, required that the Eber Bros. Shares be distributed (a) one third to me, (b) one third to Audrey Hays (heir to Mildred Boslov), and (c) one sixth to Lisa Stein and one sixth to Daniel Kleeberg (heirs to Sally Kleeberg). See Order for judicial settlement of final account of successor co-trustee, resignation and discharge of co-trustee and termination of trust ("Order for Judicial Settlement") attached as Exhibit 1 to CNB's Intervenor Complaint, Dkt. 206-1.

30. However, CNB has twice failed to comply with this requirement. See Exhibit A to November 8, 2019 Affidavit of Wendy Eber (Chart C). CNB had no discretion to allocate the Eber Bros. Shares other than in equal shares (particularly since, pursuant to an independent valuation report, they assigned a zero value to the shares). See Order for Judicial Settlement.

31. Finally, contrary to plaintiffs' allegation, by Certificate of Amendment dated February 14, 2017, the Certificate of Incorporation of EBWLC was amended to authorize the creation of Class B Junior Preferred Stock. This amendment was approved by written consent of the sole director of EBWLC, dated February 15, 2017, and by Eber Bros., as the sole voting stockholder of EBWLC. A copy of the Certificate of Amendment and the Written Consents are attached as Exhibit B.

32. The version of the October 11, 2017 letter Mr. Vazzana received did not have copies of stock powers endorsing shares to plaintiffs. A copy is attached as Exhibit C.

33. Plaintiff Hays' October 2018 request for an EB&C shareholders meeting was denied for a number of reasons, not just because she was not a registered holder of shares.

*[signature: Lester Eber]*
LESTER EBER

Sworn to before me this
5th day of December 2019.

*[signature: Paul F. Keneally]*
NOTARY PUBLIC

PAUL F. KENEALLY
Notary Public, State of New York
[illegible] County
My Commission Expires 12/5/19