UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN and AUDREY HAYS,

                              Plaintiffs,

v.

LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC,
ESTATE OF ELLIOTT W. GUMAER, JR. and WENDY EBER,

                              Defendants,

and

EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER-CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS OF MAINE, INC., and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,

                              Nominal Defendants.

Civil Action No.
16-CV-9517(LAK/KHP)

**AFFIDAVIT OF
WENDY EBER**

STATE OF NEW YORK   )
                              ) ss:
COUNTY OF MONROE   )

      Wendy Eber, being duly sworn, deposes and states as follows:

      1.    I am a defendant in the above-captioned action. I make this Affidavit in opposition to the motion of plaintiffs, Daniel Kleeberg, Lisa Stein and Audrey Hays for partial summary judgment.

      2.    I incorporate by reference my November 8, 2019 Affidavit ("November 8th Affidavit") in support of the motion for partial summary judgment made by me, as well as by defendants Alexbay, LLC f/k/a Lester Eber ("Alexbay"), LLC and Lester Eber (collectively, the "Eber Defendants").

3. I was the CFO and Secretary of Nominal Defendant Eber Bros. Wine and Liquor Corp. ("EBWLC") from 2007 until 2012, at which time I became President.

4. Slocum of Maine paid Lester and me very modest compensation. In their motion, plaintiffs contend, among other things, that the decision by EBWLC in 2012 not to oppose the UCC Article 9 proceeding brought by Alexbay was "economically irrational."

5. Apparently, plaintiffs contend that irrespective of the dire financial conditions faced by EBWLC and Metro, the lack of any viable strategy to turn around the business prospects in light of Sothern's entry into the New York market, and the lack of viable defenses, EBWLC should have nonetheless oppose the Article 9 proceeding.

6. Plaintiffs make a variety of unsubstantiated arguments in support of this contention, but all essentially boil down to the proposition that EBWLC and Metro (and ostensibly all of the Eber entities), were in far better financial shape than is demonstrably the case.

7. As set forth in my November 8th Affidavit, the significant amount of money loaned by Lester Eber was essentially the only reason that the businesses had not been closed previously.

8. As further detailed in my November 8th Affidavit, EBWLC and its "control group" were facing a termination liability related to the Eber Bros. Wine & Liquor Corp. Retirement Plan (the "EBWLC Plan") of over $5 million as of 2012.

9. Plaintiffs' allegations regarding the financial viability of EBWLC, Metro and the other Eber entities wholly ignores the pension termination liability.

10. Similarly, EBWLC and Metro were also jointly and severally liable to the New York State Teamsters Conference & Retirement Fund (the "Teamsters Fund"). As

2

set forth in my November 8th Affidavit, as of June 1, 2012, the liability to the Teamsters Fund was just shy of $1.5 million.

11. Moreover, EBWLC and/or Metro were facing lawsuits or claims – and related legal expenses – from Wolf Concepts, D4, and Harris Beach.

12. These significant liabilities were in addition to the on-the-ground economic realities faced by EBWLC and Metro – namely that they had no real hope of competing with Southern in the New York market.

13. In addition, a EBWLC bank account had been seized in connection with the D4 litigation, legal bills continued to pile up, and uncertainty from the Nationwide Recession remained

14. It is pure fantasy for plaintiffs to allege that EBWLC should have opposed the 2012 proceeding on the basis that by some miracle its business prospects would improve, despite overwhelming evidence to the contrary. In reality, EBWLC had been out of business for years, had no resources, capital or employees, but did have a lot of legacy liabilities.

15. The inescapable reality in 2012 was that EBWLC (a) had poor prospects for potential growth, (b) little to no likelihood of retaining and obtaining customer and creditors, and (3) was faced with the fact that Southern had hired most of the critical EBWLC and Metro New York employees (while others left because they saw the writing on the wall with respect to EBWLC and Metro prospects).

16. Accordingly, in consultation with EBWLC's counsel, Marino Fernandez, Esq., and the Board, it was concluded that as there were no defenses to Alexbay's foreclosure, it would not be opposed.

3

17. Moreover, plaintiffs' assertions that EBWLC or Metro should have renegotiated and/or extended the loans with Lester Eber once again ignores the economic realities they were facing.

18. Extending the maturity date of the loans by six months or a year – or even some larger time period – would not in any way change the fact that EBWLC and Metro had been out of business for years and were simply no longer equipped to compete in the New York market.

19. In light of the crushing economic challenges, it is ludicrous for plaintiffs to allege that not exploring renegotiation or extension of the loans equates to "bad faith."

20. It must also be noted there was no obligation to seek an extension of the loans' maturity date, and not doing so does not equal "bad faith." Further, there is no evidence that Lester Eber would have agreed to any extension or modification.

21. Finally, plaintiffs contend that an experienced appraiser or valuation expert should have been retained to determine the value of Eber Metro. Again, this completely ignores the economic situation faced by EBWLC and Metro in 2012. Further, the Eber defendants expert, Frank Torchio, has confirmed that the value utilized in 2012 was consistent with his value analysis.

22. By that point, EBWLC had no money to do anything – let alone hire an appraiser or valuation expert to confirm the obvious, i.e. that the companies were insolvent and had no defenses to the Alexbay foreclosure.

_____
WENDY EBER

Sworn to before me this

4

5 day of December, 2019.

_____
NOTARY PUBLIC

**AGATA TARANTOLA**
Notary Public, State of Connecticut
My Commission Expires Oct. 31, 2022