**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

PENSION BENEFIT GUARANTY
CORPORATION,

                Plaintiff,

v.

EBER BROS. WINE & LIQUOR
CORPORATION
As Plan Administrator of the
Eber Bros. Wine & Liquor Corp. Retirement Plan

                Defendant.

Case No. 6:15-cv-06283
(MAT-MWP)

## EBER BROS.' RESPONSE TO PENSION BENEFIT GUARANTY CORPORATION'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS ON MOTION FOR SUMMARY JUDGMENT AND EBER BROS.' STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rule of Civil Procedure Rule 56(a)(2) of the United States District Court for the Western District of New York, Defendant Eber Bros. Wine & Liquor Corporation ("Eber Bros."), through its undersigned counsel, hereby submits its response to the Local Rule 56.1 Statement of Material Facts on Motion for Summary Judgment filed by Plaintiff Pension Benefit Guaranty Corporation ("PBGC") (dkt. no. 15-6) and its Statement of Material Undisputed Facts in Support of Eber Bros.' Motion for Summary Judgment.

### RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1.    Eber Bros. is a corporation organized under the laws of New York, with its principal place of business in Rochester, New York, and is both the contributing sponsor and administrator of the Plan.

**Defendant's Response:** Undisputed.

2.    Eber Bros. operated a wine and liquor distribution business in New York.

1

PLAINTIFF'S
EXHIBIT
**165**

**Defendant's Response:** Undisputed that Eber Bros. itself had wine and liquor distribution operations in New York from 1933 to September 2008. Disputed as to the other matters asserted in paragraph 2 or any implications or conclusions the Plaintiff attempts to draw from the matters asserted in paragraph 2.

3.     Eber Bros. issued a WARN notice in February, 2007, stating that it had entered into an agreement to sell its inventory and some of its assets to a competitor, and would close on March 31, 2007.

**Defendant's Response:** Undisputed that on February 20, 2007, Eber Bros. issued a WARN notice stating, *inter alia*, that it "has reached an agreement with Southern Wine and Spirits by which Southern will acquire the inventory and some of the assets of Eber Bros. Wine & Liquor." It is further undisputed that the closing date identified on the WARN notice was March 31, 2007. Disputed as to any other matters asserted in paragraph 3 and any implications or conclusions the Plaintiff attempts to draw from the matters asserted in paragraph 3.

4.     In August 2013, Wendy Eber and counsel from Groom Law Group met with PBGC (the "2013 Meeting").

**Defendant's Response:** Undisputed.

5.     At the 2013 Meeting, counsel from Groom Law Group provided PBGC with a presentation dated August 15, 2013. A true and correct copy of that presentation is included in PBGC's Sealed Administrative Record at pages 00937-52.

**Defendant's Response:** Undisputed.

6.     At the 2013 Meeting, counsel from Groom Law Group discussed PBGC's IRC § 430(k) liens filed against Eber Bros. and several members of Eber Bros. controlled group and the need to terminate the Plan.

2

EB-00017655

**Defendant's Response:** Undisputed that at the 2013 Meeting, counsel from Groom Law Group discussed, *inter alia*, PBGC's IRC § 430(k) liens filed against Eber Bros. and several members of Eber Bros.' controlled group and the need to terminate the Plan. Disputed as to any implications or conclusions the Plaintiff attempts to draw from the matters asserted in paragraph 6.

      7.     After 2007, only Eber-CT had ongoing operations.

**Defendant's Response:** Undisputed that after September 2008, as among Eber Bros., Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), and Eber-Connecticut, LLC (d/b/a Slocum & Sons) ("Eber-CT"), Eber-CT was the only company with its own wine and liquor distribution operations. Disputed as to any implications or conclusions the Plaintiff attempts to draw from the matters asserted in paragraph 7.

      8.     Eber Bros. terminated all employees by May 31, 2009.

**Defendant's Response:** Undisputed.

      9.     Accordingly, Eber Bros. had ceased all operations and had terminated all employees prior to April 30, 2010.

**Defendant's Response:** Disputed.

      10.    As of April 30, 2010, Eber Bros. owned 100% of Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro").

**Defendant's Response:** Undisputed.

      11.    As of April 30, 2010, Eber Metro owned at least 85% of Eber-CT.

**Defendant's Response:** Undisputed.

      12.    As of April 30, 2010, both Eber Metro and Eber-CT were members of Eber Bros.' controlled group ("Eber Bros. Controlled Group").

EB-00017656

**Defendant's Response:** Defendant objects that the matter asserted in paragraph 12 is a legal conclusion, but does not dispute the matter asserted therein.

13.     Starting in 2009, Eber Bros. and members of the Eber Bros. Controlled Group failed to make the statutorily required minimum funding contributions to the Plan.

**Defendant's Response:** Undisputed that starting in 2009, Eber Bros. and members of the Eber Bros. Controlled Group failed to make certain statutorily required minimum funding contributions to the Plan. Disputed to the extent the assertion in paragraph 13 implies that Eber Bros. failed to make all statutorily required minimum funding contributions to the Plan.

14.     No contributions have been made to the Plan since March, 2012.

**Defendant's Response:** Undisputed.

15.     After missed contributions owed to the Plan (including interest) exceeded $1 million, PBGC perfected the resulting statutory lien by filing Notices of Federal Lien under IRC § 430(k) against Eber Bros. and several members of the Eber Bros. Controlled Group, including Eber Metro, with the appropriate recordation offices.

**Defendant's Response:** Undisputed that after missed contributions owed to the Plan (including interest) exceeded $1 million, PBGC perfected the resulting statutory lien by filing Notices of Federal Lien under IRC § 430(k) against Eber Bros. and several members of the Eber Bros. Controlled Group, including Eber Metro, with the appropriate recordation offices. Disputed as to the validity of such liens.

16.     The board of directors of Eber Bros., which had administered the Plan, resigned from their positions as of March 31, 2014.

**Defendant's Response:** Undisputed that as of 11:59 pm on March 31, 2014, Elliot Gumaer resigned as a Director of Eber Bros. Wine and Liquor Corporation and Wendy Eber

4

EB-00017657

resigned as President, Chief Financial Officer and Secretary, and as a Director of Eber Bros. Wine and Liquor Corporation. Further undisputed that Eber Bros. administered the Plan through its directors and officers.

17.     After March 31, 2014, there was no one at Eber Bros. who was authorized to fund the Plan.

**Defendant's Response:** Undisputed.

18.     After March 31, 2014, there was no one at Eber Bros. who was authorized to process applications of new retirees applying for benefits from the Plan.

**Defendant's Response:** Undisputed.

19.     As a result of the resignations of the Eber Bros. board members, PBGC began paying new retirees their benefits pending termination of the Plan, in March, 2015.

**Defendant's Response:** Eber Bros. does not have knowledge or information sufficient to form a belief as to whether PBGC began in March, 2015 paying new retirees their benefits pending termination of the Plan or whether PBGC began paying new retirees their benefits as a result of the resignations of the Eber Bros. Board members, but does not dispute the matters asserted in this paragraph.

20.     On August 6, 2014, PBGC issued a Notice of Determination ("NOD") to Eber Bros. stating that PBGC had determined that the Plan should terminate effective April 30, 2010.

**Defendant's Response:** Undisputed.

21.     PBGC sent the NOD to Eber Bros., care of Wendy Eber, former Chief Financial Officer of Eber Bros.

**Defendant's Response:** Undisputed.

EB-00017658

22.     PBGC has requested that Eber Bros. sign a termination and trusteeship agreement for the Plan, but Eber Bros. has not executed the Agreement.

**Defendant's Response:** Undisputed that PBGC has requested that Eber Bros. sign a termination and trusteeship agreement for the Plan, but Eber Bros. has not executed the Agreement because Eber Bros. and PBGC have not agreed on an appropriate date of plan termination.

## EBER BROS.' STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

23.     Eber Bros. was established in 1933 as a small family wine and liquor distributor in New York, with operations eventually in Connecticut, New York City, Delaware, Ohio and Rhode Island. Declaration of Wendy Eber in Support of Eber Bros. Wine & Liquor Corporation's Motion for Summary Judgment and in Opposition to the Pension Benefit Guaranty Corporation's Motion for Summary Judgment ("Eber Decl.") ¶ 3; AR-00004.

24.     In 2005, the largest wine and spirits distributor in the country, Southern Wine & Spirits, entered the New York market. With aggressive and targeted action, it drove Eber Bros. out of the wine and liquor distribution business. Eber Decl. ¶ 4.

25.     Eber Bros. ceased wine and liquor distribution operations by September 30, 2008. Eber Decl. ¶ 5; Exhibit P to the Declaration of Michael P. Kreps in Support of Eber Bros. Wine & Liquor Corporation's Motion for Summary Judgment and in Opposition to the Pension Benefit Guaranty Corporation's Motion for Summary Judgment ("Kreps Decl.").

26.     After September 2008, Eber Bros. existed as a holding company, overseeing its investments in Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro") and Eber-Connecticut,

6

LLC (d/b/a Slocum & Sons) ("Eber-CT") and administering the Plan. Eber Decl. ¶ 5; AR000820-21; AR-00838-839; Exhibit G to the Kreps Decl. at 3.

27.     Plan participants understood that although Eber Bros.' New York wine and liquor distribution operations ceased, Eber Bros. continued to operate its subsidiary, Eber CT. Declaration of Neil Glassbrook ("Glassbrook Decl.") ¶ 4; Declaration of William Crandall ("Crandall Decl.") ¶ 4; Declaration of Janet Lissow ("Lissow Decl.") ¶ 4.

28.     The Plan covers 425 former employees of Eber Bros. and their beneficiaries. Eber Decl. ¶ 8; Exhibit N to Kreps Decl. at 4.

29.     The Plan was frozen on December 31, 2000. AR-00075-78.

30.     Management and the principal shareholder of Eber Bros. developed a three-step plan to continue the Plan notwithstanding the decline of Eber Bros.' wine and liquor distribution business. First, they sought to return Eber-CT to profitability so it could provide dividends to Eber Bros. or be sold to meet its obligations and Eber Bros.' obligations to the Plan. Second, they sought a waiver of the minimum funding standard for the Plan that would waive the minimum required contributions for the plan year ended May 31, 2009. Third, between 2009-2012, Lester Eber lent Eber Bros. a total of approximately $2 million with money taken from his personal savings to enable Eber Bros. to make eight contributions to the Plan from 2010 to 2012 while the first two elements of management's plan were being implemented. Eber Decl. ¶ 10.

31.     Until March 31, 2014, Eber Bros. had officers and directors. Eber Decl. ¶ 6; AR-00819; AR-00968-969.

32.     Eber Bros. held meetings of its Board of Directors or took board action in 2010, 2011, 2012, and 2014. Exhibits A-F to Kreps Decl..

7

33.     Eber Bros. prepared financial statements, collected accounts receivable, conducted audits of the pension plan, and processed workers compensation claims. Eber Decl. ¶¶ 6.

34.     Eber Bros. filed tax returns or requests for extensions to file tax returns through 2015. AR-00818-00835; AR-00836-853; Exhibits G-I to Kreps Decl..

35.     From 2009 to 2012, Eber Bros. made contributions to the Plan in the total amount of $2,415,247. Eber Decl. ¶ 11.

36.     Eber Bros. notified Plan participants of the Plan's application to the IRS for a funding waiver in or about August 2009. Eber Decl. ¶ 14.

37.     On or about January 18, 2011, Eber Bros. notified Plan participants of the Plan's application to the IRS for a determination as to whether the Plan is in compliance with Sections 401(a) and 501(a) of the Internal Revenue Code. Eber Decl. ¶ 14.

38.     Eber Bros. executed amendments to the Plan on February 15, 2010 and December 14, 2010. Exhibits K-M to Kreps Decl..

39.     Eber Bros. prepared actuarial valuations with respect to the Plan. AR-00552-556; AR-00681-699; Exhibit N to Kreps Decl..

40.     Between on or about October 14, 2011 and on or about March 18, 2014, Eber Bros. provided eleven required notices to PBGC. AR-00549 to AR-00600.

41.     Eber Bros. sent notices to Plan participants of missed contributions to the Plan on or about November 11, 2011, February 10, 2012, August 15, 2012, November 11, 2012, February 15, 2013, and July 25, 2013. Eber Decl. ¶ 14; Glassbrook Decl. ¶ 5; Crandall Decl. ¶ 5; Lissow Decl. ¶ 5.

8

EB-00017661

42.      Eber Bros. sent annual funding notices with respect to the Plan to participants in or about October 2010 and November 2012.  Eber Decl. ¶ 14; Glassbrook Decl. ¶ 5; Crandall Decl. ¶ 5; Lissow Decl. ¶ 5.

43.      Based on the notices participants received from Eber Bros. regarding the Plan, participants understood that the Plan was ongoing and had not terminated, nor did Eber Bros. nor any government agency contemplate terminating the Plan.  Glassbrook Decl. ¶ 7; Crandall Decl. ¶ 7; Lissow Decl. ¶ 7.

44.      Between February 2010 and March 2013, Eber Bros. made over 40 benefit determinations under the Plan.  Eber Decl. ¶ 12.

45.      Eber Bros. made all required premium payments to PBGC through 2013.  Eber Decl. ¶ 13.

46.      On March 9, 2012, May 4, 2012, March 13, 2013, and March 14, 2014, Eber Bros. filed Forms 5500 with the United States Department of Labor with respect to the Plan. AR-00644; AR-00675; AR-00678; Exhibit J to Kreps Decl..

47.      Eber Bros. fielded participant questions with respect to the Plan.  Eber Decl. ¶ 15.

48.      Between 2010 and 2013 PBGC and Eber Bros. engaged in discussions about how Eber Bros. was going to meet its obligations to fund the Plan on an ongoing basis.  Eber Decl. ¶ 16.

49.      On February 14, 2012, the IRS granted Eber Bros. a funding waiver based on the expectation that Eber Bros. would be able to make minimum required contributions to the Plan from proceeds from the Eber-CT operations.  AR-00604-607.

50.      On April 23, 2014, the IRS issued a determination that the Plan was tax qualified. AR-00633-634.

9

51.     Eber Bros. understands that, currently, retirees are receiving the full amount of their benefits earned under the Plan. Eber Bros.' actuary has informed Eber Bros. that a termination date of May 11, 2015 or later would result in all benefits under the Plan being guaranteed by PBGC. Eber Decl. ¶ 17.

52.     Participants understand that the Plan is ongoing and has not terminated. Glassbrook Decl. ¶ 8; Crandall Decl. ¶ 8; Lissow Decl. ¶ 8.

Dated: October 1, 2015

/s/ Ingrid C. Palermo
Edward P. Hourihan, Jr.
Ingrid C. Palermo
BOND, SCHOENECK & KING, PLLC
Office and P.O. Address
350 Linden Oaks, Suite 310
Rochester, New York 14625-2825
Telephone: (585) 362-4700
E-mail: hourihe@bskcom
        palermi@bsk.com

/s/ Michael P. Kreps
Gary M. Ford
Michael P. Kreps
Katie B. Kohn
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 857-0620
Facsimile: (202) 659-4503
gford@groom.com
mkreps@groom.com
kkohn@groom.com

Attorneys for the Defendant

10

EB-00017663

## CERTIFICATE OF SERVICE

I, Ingrid C. Palermo, hereby certify that on October 1, 2015, I caused to be served a

true and correct copy of EBER BROS.' RESPONSE TO PENSION BENEFIT GUARANTY

CORPORATION'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS ON MOTION

FOR SUMMARY JUDGMENT AND EBER BROS.' STATEMENT OF MATERIAL

UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT to be filed

with the Clerk of the Court using the ECF filing system, which will send electronic

notification to all counsel of record:

Desiree Monique Amador
Kimberly Elizabeth Neureiter
Pension Benefit Guaranty Corp.
Office of the General Counsel
1200 K Street, N.W.
Suite 340
Washington, DC 20005-4026
202-326-4020
Fax: 202-326-4112

By: /s/ Ingrid C. Palermo
Ingrid C. Palermo

11