UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PENSION BENEFIT GUARANTY
CORPORATION,

Plaintiff,

v.

EBER BROS. WINE & LIQUOR
CORPORATION
As Plan Administrator of the
Eber Bros. Wine & Liquor Corp. Retirement Plan

Defendant.

Case No. 6:15-cv-06283
(MAT-MWP)

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

PLAINTIFF'S
EXHIBIT

**166**

## TABLE OF CONTENTS

ARGUMENT..................................................................................................................1

I.   The Earliest Termination Date the Court Can Properly Select is May 11, 2015. ................1

    A.   The Plan could not have been terminated on PBGC's proposed termination date because the participants had actual notice that the Plan was ongoing. .......................................1

    B.   PBGC asks the court to adopt a sweeping rule that constructive notice – a legal fiction – trumps actual notice when measuring participants' expectations. ...................................3

    C.   PBGC misstates the *Broadway Maintenance test.*............................................................4

    D.   PBGC improperly conflates the end of liquor distribution operations with the end of all business operations..............................................................................................................5

    E.   The appropriate termination date is May 11, 2015, the date participants received notice that the Plan would terminate. .........................................................................................5

II.   PBGC's Allegations Regarding Eber Bros. Are Baseless and Irrelevant. ...........................6

    A.   The PBGC's allegations regarding the Eber family's motives are unfounded................6

    B.   The equity value of Eber-CT is irrelevant in determining the date of plan termination...8

III. Eber Bros. is appropriately defending this litigation............................................................9

CONCLUSION .........................................................................................................10

EB-00017618

## TABLE OF AUTHORITIES

**Cases**

*In re Maryland Glass Corp. Non-Salaried Employee's Pension Plan*, 618 F. Supp. 1410 (D. Md. 1985)..........................................................................................................................................2
*Pension Benefit Guar. Corp. v Nastasi White*, 476 F. Supp. 2d 228 (E.D.N.Y. 2007)..................2
*Pension Benefit Guar. Corp. v. Broadway Maintenance*, 707 F.2d 647 (2d Cir. 1983).....1, 4, 5, 8
*Pension Benefit Guar. Corp. v. Haberbush*, No. CV0002631GHKAIJX, 2000 WL 33362003 (C.D. Cal. Nov. 3, 2000) ..................................................................................................................2
*Pension Benefit Guar. Corp. v. Heppenstall*, 633 F.2d 293 (3d Cir. 1980) ...............................2
*Pension Benefit Guar. Corp. v. Mize Co., Inc.*, 987 F.2d 1059 (4th Cir. 1993)............................2
*Pension Benefit Guar. Corp. v. Rouge Steel Co., No.* 03-CV-75092, 2010 WL 3324921 (E.D. Mich. Aug. 23, 2010) .................................................................................................................2, 6
*Pension Benefit Guar. Corp. v. Thomas O'Rourke Gallagher, Inc.*, CV 14-6554 (E.D.N.Y. July 21, 2015).............................................................................................................................................2
*Pension Comm. for Farmstead Foods Pension Plan v. Pension Benefit Guar. Corp.*, 991 F.2d 1415 (8th Cir. 1993) ...........................................................................................................................2
*Thom v. Am. Standard, Inc.*, 666 F.3d 968 (6th Cir. 2012) ............................................................2

**Statutes**

29 U.S.C. § 1109 ............................................................................................................................10
29 U.S.C. § 1342 ..............................................................................................................................9
29 U.S.C. § 1369 ..............................................................................................................................6

**Regulations**

29 CFR § 4041.1...............................................................................................................................4

**Other Authorities**

*FY 2016 Congressional Budget Justification* at 13, 24 (2015), *available at* https://www.dol.gov/dol/budget/2016/PDF/CBJ-2016-V2-02.pdf ...........................................7
Lonie Hassel, "Pension Plan Terminations — Single Employer Plans", 357-5th Tax Mgmt. (BNA) U.S. Income, at A-5 (2013). ................................................................................................5
Pension Benefit Gaur. Corp., *2015 Annual Report* at 5 (2015), *available at* http://www.pbgc.gov/Documents/2015-annual-report.pdf ..........................................................7
Pension Benefit Guar. Corp, FAQs: Plan Funding, *available at* http://www.pbgc.gov/about/faq/pg/planfundingfaq.html..........................................................3

EB-00017619

Eber Bros. Wine & Liquor Corp. ("Eber Bros.") and the Pension Benefit Guaranty Corporation ("PBGC") agree that the only issue for this Court to decide is the appropriate termination date for the Eber Bros. Wine & Liquor Corp. Retirement Plan (the "Plan"). Under the test adopted by the Second Circuit in *Broadway Maintenance,* the Court cannot set a date of plan termination until Plan participants had "notice sufficient to extinguish their reliance interest." The facts of the case clearly show that participants were receiving *actual* notice that the Plan was ongoing before, at, and after the time of PBGC's proposed termination date. It was not until years later, after participants had stopped receiving actual notice of Plan continuation, that participants could have had received notice of termination. PBGC asks the Court to be the first in the nation to embrace the proposition that, in determining participants' reasonable expectations, those participants' actual, reasonable expectations are irrelevant and should be trumped by the legal fiction of constructive notice. The Court should reject this nonsensical proposition, deny PBGC's Motion for Summary Judgment, and grant Eber Bros.' Cross Motion for Summary Judgment.[1]

## ARGUMENT

**I.      The Earliest Termination Date the Court Can Properly Select is May 11, 2015.**

**A.      The Plan could not have been terminated on PBGC's proposed termination date because the participants had actual notice that the Plan was ongoing.**

Under the test established by the Second Circuit in *Pension Benefit Guar. Corp. v. Broadway Maintenance*, the earliest date that can properly be selected by a district court as the date of plan termination is the date on which the plan's participants received notice of plan termination sufficient to extinguish their expectations of plan continuation. 707 F.2d 647, 649

---

[1] The discussion in this Reply in Further Support of Summary Judgment is limited to several specific issues so as to comply with the Court's rules (*i.e.*, length limitations), but Eber Bros. continues to assert all of the arguments in its Cross Motion for Summary Judgment.

1

(2d Cir. 1983). Where there is no actual notice, courts frequently use constructive notice to fill

in the gap. *See., e.g., Pension Benefit Guar. Corp. v. Mize Co., Inc.*, 987 F.2d 1059 (4th Cir.

1993); *Pension Comm. for Farmstead Foods Pension Plan v. Pension Benefit Guar. Corp.*, 991

F.2d 1415 (8th Cir. 1993); *Pension Benefit Guar. Corp. v. Heppenstall*, 633 F.2d 293 (3d Cir.

1980); *Pension Benefit Guar. Corp. v. Thomas O'Rourke Gallagher, Inc.*, No. CV 14-6554, 2015

WL 5564618, (E.D.N.Y. July 21, 2015); *Pension Benefit Guar. Corp. v. Rouge Steel Co., No.*

03-CV-75092, 2010 WL 3324921 (E.D. Mich. Aug. 23, 2010); *Pension Benefit Guar. Corp. v*

*Nastasi White*, 476 F. Supp. 2d 228 (E.D.N.Y. 2007); *Pension Benefit Guar. Corp. v.*

*Haberbush*, No. CV0002631GHKAIJX, 2000 WL 33362003 (C.D. Cal. Nov. 3, 2000); *In re Md.*

*Glass Corp. Non-Salaried Employee's Pension Plan*, 618 F. Supp. 1410 (D. Md. 1985).

However, where participants receive actual notice that their plan is ongoing, there is no need for

the judicially created fiction of constructive notice because there is no gap to fill. *See, e.g., Thom*

*v. Am. Standard, Inc.,* 666 F.3d 968, 974 (6th Cir. 2012) (Holding that "actual notice of a

particular return-to-work date trumps constructive notice of another [date].")

     Participants in the Plan received actual notice that the Plan was ongoing before, at, and

after PBGC's proposed termination date. For example, from 2009 through 2013 Eber Bros.

provided eleven notices to participants regarding the Plan, its funding, and missed contributions,

(Eber Decl. ¶ 14 and Exhibits F-P to Eber Decl.; Glassbrook Decl. ¶¶ 5-6; Crandall Decl. ¶¶ 5-6;

Lissow Decl. ¶¶ 5-6) made over 40 benefit determinations (Eber Decl. ¶ 12), and fielded

participants' questions (Eber Decl. ¶ 15). Moreover, Eber Bros.' management went to

extraordinary effort and expense to seek a funding waiver to save the Plan and notified

participants (and PBGC) of this effort.[2] Eber Decl. ¶ 14. Indeed, that is precisely what PBGC

---

[2] PBGC claims that Eber Bros. "actively deceived the IRS." Eber Bros. vehemently disagrees with that unfounded

EB-00017621

urges sponsors to do.[3] Further, participants were told the Plan was ongoing. *See* Glassbrook

Decl. ¶¶ 7-8; Crandall Decl. ¶¶ 7-8; Lissow Decl. ¶¶ 7-8. PBGC disputes none of the record

evidence that participants were actually told and actually understood that their Plan was ongoing

and offers no evidence to the contrary. Consequently, participants' actual expectations were that

the Plan was ongoing, and the concept of constructive notice is entirely irrelevant.[4]

> **B.      PBGC asks the court to adopt a sweeping rule that constructive notice – a legal fiction – trumps actual notice when measuring participants' expectations.**

PBGC asks the Court to be the first in the nation to adopt the sweeping proposition that

participant's actual, reasonable expectations are irrelevant when it comes to determining whether

they had an expectation that their plan would continue. PBGC Reply and Opposition at 9-11.

Unsurprisingly, PBGC cites no authority for this proposition, and none exists. Instead, the

agency relies on a host of inapplicable cases that involve situations in which courts were using

constructive notice to fill a gap in the absence of any actual notice. That is simply not the case

here.

The entire statutory notice regime for terminating a pension plan under the Employee

Retirement Income Security Act of 1974 ("ERISA") is predicated on the notion that participants

should receive actual notice so that they have reasonable expectations regarding the future of

their pension plans. It cannot be the case that participants' actual expectations should be

---

accusation. Eber Bros. has been forthright and honest in all of its dealings with both the IRS and PBGC. It is confounding that PBGC is only now, years later, voicing concerns about Eber Bros.' application to the IRS for a funding waiver. The IRS routinely consults with PBGC when evaluating funding waiver requests (and is typically legally required to do so). PBGC could have raised concerns at any point during the process, but instead waited until the effort to save the Plan had failed to claim that the effort had been futile all along.

[3] PBGC "urges sponsors to explore all possible funding avenues that facilitate continuation of their pension plans." Pension Benefit Guar. Corp, FAQs: Plan Funding, *available at*
http://www.pbgc.gov/about/faq/pg/planfundingfaq.html.

[4] Eber Bros. does not argue, as PBGC purports, that the actual notice to participants "revived their expectations of Plan continuation." Rather the participants' expectations that the Plan would continue were not extinguished at the time PBGC claims because the participants were being told the Plan was ongoing.

EB-00017622

jettisoned in favor of a legal fiction just because it is more convenient for PBGC. That is particularly true where, as is the case here, participants' expectations were based, in part, on notices legally required to be provided under ERISA. In short, PBGC's self-serving position would significantly undercut the intent of Congress.

C.    **PBGC misstates the *Broadway Maintenance* test.**

PBGC argues that "precedent holds that cessation of the employer's operations constitutes constructive notice to participants" that extinguished their reliance interest *in future benefit accruals*. PBGC Reply and Opposition at 1, 7. However, that is the incorrect standard. The Court in *Broadway Maintenance* focused on participants' expectation as to whether the plan would *continue*, not whether participants would receive future *benefit accruals*. 707 F.2d 647, 649 (2d Cir. 1983).

There are innumerable examples of "frozen" plans - *i.e.*, plans for which participants do not earn additional pension benefits and have no expectation of future accruals – that have not been terminated. Nothing in ERISA prohibits a plan sponsor from voluntarily deciding to freeze its ongoing plan. Many plan sponsors continue to maintain frozen plans for years or decades, and those plans are clearly ongoing.[5] It is only in a small percentage of circumstances that such plans ever actually terminate.

In contrast, a plan sponsor can only terminate a pension plan by engaging in the PBGC-supervised termination process under Title IV of ERISA, which is the "exclusive means of voluntarily terminating a plan." 29 CFR § 4041.1. Under that process, an underfunded plan generally will freeze (if not already frozen), cease vesting, and stop "grow-ins" to certain benefits. Benefits will also be reduced to the PBGC guaranty level, and PBGC will take over

---

[5] In fact, Eber Bros. maintained the Plan for almost two decades after the Plan was frozen.

4

EB-00017623

plan administration. Lonie Hassel, "Pension Plan Terminations — Single Employer Plans", 357-5th Tax Mgmt. (BNA) U.S. Income, at A-1 – A-6 (2013).

Under PBGC's interpretation of *Broadway Maintenance*, millions of participants in ongoing plans sponsored by financially healthy companies would be deemed to have constructive notice of plan termination, despite the fact that their employers have no intention of terminating the plans.

### D.   PBGC improperly conflates the end of Eber Bros.' own liquor distribution operations with the end of all business operations.

PBGC asserts that Eber Bros. ceased operations in 2008. But PBGC's view is too narrow. Over many years, Eber Bros. built a Northeastern wine and liquor distribution business. By 2005, it had operations in New York, Connecticut, Delaware, Ohio, and Rhode Island. The overall business was structured so that they did business through a parent holding company (which also owned the New York operating business), as well as through several operating subsidiaries controlled by Eber Bros., which owned businesses in specific states. After 2005, Eber Bros. successfully sold or shut down businesses in some of those states, but not in others. At and well after both September 30, 2008, and April 30, 2010, Eber Bros.' overall Northeastern business continued to be operated in this same holding company/operating subsidiary fashion. The shutdown of the New York portion of Eber Bros.' Northeastern business in 2008 does not change this fact.

### E.   The appropriate termination date is May 11, 2015, the date participants received notice that the Plan would terminate.

Participants were receiving actual notice that the Plan was ongoing until March 2014. At that point, Eber Bros.' officer responsible for sending notices and communicating with participants lost fiduciary insurance and was forced to resign, and participants stopped receiving actual notice that the Plan would continue. Participants then received constructive notice that the

5

Plan would be terminated when PBGC filed this action to terminate the Plan, and it should have been clear to participants that the Plan would not remain ongoing. *See Pension Ben. Guar. Corp. v. Rouge Steel Co.*, No. 03-CV-75092, 2010 WL 3324921, at *7 (E.D. Mich. Aug. 23, 2010) (Acknowledging that pendency of a court action provided plan participants with notice of plan termination.)

## II.   PBGC's Allegations Regarding Eber Bros. Are Baseless and Irrelevant.

PBGC devotes the majority of its Reply and Opposition to an attempt to divert the Court from the straightforward legal standard and undisputed facts outlined above. PBGC argues that Eber-CT is a highly valuable company and that the Eber family has attempted to hide the company's true value while Eber Bros.' shirked its responsibility for the Plan. Those allegations are baseless, as PBGC was well aware from both the facts in the record and the agency's long history of discussions with management. The allegations are also completely irrelevant for purposes of this litigation.[6]

### A.   The PBGC's allegations regarding the Eber family's motives are unfounded.

In its Reply and Opposition, PBGC attempts to paint Eber Bros.' efforts to save the Plan and, in particular, the May 2010 sale of a minority interest in Eber-CT and the June 2012 foreclosure of Lester Eber's lien on the assets of Eber Bros. to secure repayment of $3.6 million of loans to Eber Bros. as self-serving. However, despite the decline of Eber Bros.' own wine and liquor distribution business, management and Lester Eber made every effort to satisfy Eber Bros.' obligation to the Plan, including spending years trying to work with PBGC to resolve the

---

[6] ERISA permits PBGC to assert a claim against a person and such persons' controlled group for pension liabilities "if a principal purpose of any person in entering into any transaction is to evade liability…." 29 U.S.C. § 1369. However, PBGC does not assert such a claim here.

6

EB-00017625

issues. Lester Eber even made contributions to the pension despite not being legally required to do so.

PBGC's allegations are based on demonstrably false assumptions about the value of Eber-CT. Eber-CT is a wine distributor, and the business model is simple. The company buys wine wholesale. It sells that wine to retailers at a small premium, from which it needs to try to cover its operating and other expenses to (hopefully) earn a profit. The going concern value of a business is in large part driven by the amount net cash flow the business can generate from its ongoing operations. As shown by Eber-CT's audited financial statements – which PBGC does not suggest are incomplete or inaccurate – the company has struggled consistently and has not even been able to generate sustainable and recurring positive net cash flows from its operations. The implications on the value of the business are indisputable. In sum –

- From fiscal year 2005 to 2013 Eber-CT lost more than $7 million dollars (Eber Decl. ¶ 7);
- In fiscal year 2014, the company essentially broke even and passed key financial covenants under its bank credit agreement by an uncomfortably slim margin (*Id.*); and
- The net liquidation value of Eber-CT is not materially different from the amount of Canandaigua National Bank and Trust's pre-existing secured loans and first priority lien on Eber-CT's assets, meaning PBGC would likely collect little or nothing from Eber-CT if it were forced to liquidate today.

PBGC has a large staff of financial analysts who routinely value companies and analyze credit, investment, and actuarial risks. Pension Benefit Guar. Corp., *FY 2016 Congressional Budget Justification* at 13, 24 (2015), *available at* https://www.dol.gov/dol/budget/2016/PDF/CBJ-2016-V2-02.pdf; Pension Benefit Gaur. Corp.,

7

EB-00017626

*2015 Annual Report* at 5 (2015), *available at* http://www.pbgc.gov/Documents/2015-annual-report.pdf. Tellingly, however, in the case of the undisputed facts derived from Eber-CT's audited financial statements, PBGC does not even attempt to offer its own valuation of Eber-CT. Instead, PBGC makes the remarkable assertion that "the market" has indicated that Eber Metro's equity interest in Eber-CT is worth at least $15.8 million. PBGC Reply and Opposition at 4-5.

PBGC's supposed "market indication" is based on the groundless claims of a former Eber Bros. outside lawyer in an unrelated litigation against Eber Bros. That litigation recently settled for nuisance value, and the claims were dismissed with prejudice on the merits. The lawyer who made the claims has recently admitted to Lester Eber that —

- He had no role in determining the equity value of Eber-CT for the May 2010 sale of a minority interest therein or for the June 2012 foreclosure of Lester Eber's lien on the assets of Eber Bros. securing his $3.6 million loan to Eber Bros. (which was contemporaneously determined to be "commercially reasonable" by New York State Court Justice Matthew Rosenbaum);

- He has no view on the current value of Eber-CT;

- He has never seen financial statements of Eber-CT for its 2013-2015 fiscal years; and

- His statements about the value of Eber-CT as of May 2010 and June 2012 involved significant assumptions and contained elements of speculation.

*See* Affidavit of Patrick J. Dalton (Eber Reply, Exhibit 1).

### B. The equity value of Eber-CT is irrelevant in determining the date of plan termination.

The equity value of Eber-CT has no bearing on the proper date of plan termination. As PBGC admits, in determining the termination date of a plan under the *Broadway Maintenance* test, the second circuit has emphasized that, "the financial interests of the employer should play

8

*no role* in setting a termination date." *Broadway Maintenance*, 707 F.2d at 652; PBGC's Reply and Opposition at 8. PBGC is merely attempting to obscure the relevant facts in this case by attempting to cast a shadow on the reputation of the Eber family. Unlike PBGC, Eber Bros. welcomes an objective application of the standard set forth by the Second Circuit in determining the proper date of termination.

**III.   Eber Bros. is appropriately defending this litigation.**

PBGC is mistaken when it asserts that a proper party is not directing this litigation. PBGC Reply and Opposition at 22-24. The Plan Administrator of the Plan is Eber Bros. *See* Plan Amendment No. 14 and Resolution of Eber Bros. Board of Directors—Dec. 15, 2010 (Eber Reply, Exhibit 2). Wendy Eber is the Assistant Secretary – Dispute Resolution for Eber Bros. *See* Unanimous Written Consent of the Directors of Eber Bros—March 31, 2014; Written Consent of the Sole Director of Eber Bros—Sept. 30, 2015 (Eber Reply, Exhibits 3 & 4). In that role, she has the authority to supervise and control all of the litigation pending as of September 30, 2015, by or against Eber Bros. before U.S. federal court, including this lawsuit. In addition, on September 30, 2015, the Eber Bros. Board of Directors ratified and approved, in all respects, all of Wendy Eber's acts and omissions in connection with the supervision and control of this litigation. *See* Written Consent of the Sole Director of Eber Bros—Sept. 30, 2015 (Eber Reply, Exhibit 4).

PBGC is being disingenuous when it asserts that Eber Bros. has "refused" to take certain actions with respect to the Plan. PBGC Reply and Opposition at 23. As PBGC is well aware, Eber Bros. has tried for over two years to get PBGC to take over the Plan. Despite having clear legal authority to do so, PBGC has repeatedly refused to act and, instead, initiated this action.[7]

---

[7] PBGC has the authority to be appointed interim trustee of the Plan pending the outcome of this litigation. 29

9

Now, PBGC demands that a member of the Eber family subject herself to *personal liability* under ERISA by administering the Plan without the necessary legal authority. 29 U.S.C. § 1109. That may be convenient for PBGC, but it would be completely unreasonable for anyone to subject herself to such personal liability, particularly given the fact that Eber Bros. has not had fiduciary liability insurance since March 31, 2014.

### CONCLUSION

For the reasons set forth above, and in its opening brief, Eber Bros. respectfully urges the Court to enter Summary Judgment in its favor and to deny PBGC's request for Summary Judgment.

Dated: December 2, 2015

/s/ Ingrid C. Palermo
Edward P. Hourihan, Jr.
Ingrid C. Palermo
BOND, SCHOENECK & KING, PLLC
Office and P.O. Address
350 Linden Oaks, Suite 310
Rochester, New York 14625-2825
Telephone: (585) 362-4700
hourihe@bskcom
palermi@bsk.com


/s/ Michael P. Kreps
Gary M. Ford
Michael P. Kreps
Katie B. Kohn
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 857-0620
Facsimile: (202) 659-4503
gford@groom.com
mkreps@groom.com
kkohn@groom.com

Attorneys for the Defendant

---

U.S.C. § 1342. Eber Bros. has repeatedly suggested to PBGC that the agency accept an appointment as the interim trustee of the Plan pending the outcome of this litigation, but PBGC has refused.

EB-00017629

## CERTIFICATE OF SERVICE

I, Ingrid C. Palermo, hereby certify that on December 2, 2015, I caused to be served a

true and correct copy of DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION

FOR SUMMARY JUDGMENT to be filed with the Clerk of the Court using the ECF filing

system, which will send electronic notification to all counsel of record:

Desiree Monique Amador
Kimberly Elizabeth Neureiter
Pension Benefit Guaranty Corp.
Office of the General Counsel
1200 K Street, N.W.
Suite 340
Washington, DC 20005-4026
202-326-4020
Fax: 202-326-4112

By: /s/ Ingrid C. Palermo
    Ingrid C. Palermo

EB-00017630