*June 23, 2015 summary sent to gary / Lone*

## EBWL Pension - Funding Notification Requirement letters

| Plan Year End | | Pages | Mailed | |
|---|---|---|---|---|
| May 31, 2013 | Deposit not made June 15, 2013 ✓ | 1 | July 25, 2013 ✓ | P |
| May 31, 2013 | Deposit not made December 15, 2012 | 1 | February 15, 2013 ✓ | O |
| May 31 2012 | Annual Funding Notice 5/2012 | 6 | November 15, 2012 ✓ | M |
| May 31, 2012 | Deposit not made June 15, 2012 | 1 | August 15, 2012 ✓ | L |
| May 31, 2012 | Deposit not made December 15, 2011 | 1 | February 10, 2012 ✓ | K |
| May 31, 2012 | Deposit not made September 15, 2011 | 1 | November 11, 2011 ✓ | J |
| | Applic Determination Letter | | January 18 2011 ✓ | I |
| May 31, 2008 | Summary Annual Report | 2 | May 16, 2009 ✓ | F |
| May 31 2010 | Annual Funding Notice May 2010 | 8 | October 2010 ✓ | H |

**Plan Year BEGIN**

| | | | | |
|---|---|---|---|---|
| 1-Jan-08 | Funding Waiver Application | 2 | August 2009 ✓ | G |

*Deposit not made sept 15, 2012     Nov 2012   N*

PLAINTIFF'S EXHIBIT 167

EB-00018059


M

# Annual Funding Notice
## For The
## EBER Bros. Wine & Liquor Corp. Retirement Plan

### Introduction

This notice includes important information about the funding status of your pension plan ("the Plan") and general information about the benefit payments guaranteed by the Pension Benefit Guaranty Corporation ("PBGC"), a federal insurance agency. All traditional pension plans (called "defined benefit pension plans") must provide this notice every year regardless of their funding status. This notice does not mean that the Plan is terminating. It is provided for informational purposes and you are not required to respond in any way. This notice is for the plan year beginning 06/01/2011 and ending 05/31/2012 ("Plan Year").

### How Well Funded Is Your Plan

Under federal law, the plan must report how well it is funded by using a measure called the "funding target attainment percentage." This percentage is obtained by dividing the Plan's Net Plan Assets by Plan Liabilities on the Valuation Date for the plan year. In general, the higher the percentage, the better funded the plan. Your Plan's funding target attainment percentage for the Plan Year and each of the two preceding plan years is shown in the chart below, along with a statement of the value of the Plan's assets and liabilities for the same period.

|  | 2011 | 2010 | 2009 |
|---|---|---|---|
| 1. Valuation Date | 6/1/2011 | 6/1/2010 | 6/1/2009 |
| 2. Plan Assets |  |  |  |
| a. Total Plan Assets | $5,240,654 | $4,579,386 | $4,046,204 |
| b. Funding Standard Carryover Balance | $0 | $0 | $0 |
| c. Prefunding Balance | $0 | $0 | $0 |
| d. Net Plan Assets (a) – (b) – (c) = (d) | $5,240,654 | $4,579,386 | $4,046,204 |
| 3. Plan Liabilities | $8,420,283 | $7,840,655 | $8,093,405 |
| 4. At-Risk Liabilities | N/A | N/A | N/A |
| 5. Funding Target Attainment Percentage (2d)/(3) | 62.2% | 58.4% | 50.0% |

### Plan Assets and Credit Balances

Total Plan Assets is the value of the Plan's assets on the Valuation Date (see line 2 in the chart above). Credit balances were subtracted from Total Plan Assets to determine Net Plan Assets (line 2 d) used in the calculation of the funding target attainment percentage shown in the chart above. While pension plans are permitted to maintain credit balances (also called "funding standard carryover balances" or "prefunding balances" see 2 b & c in the chart above) for funding purposes, they may not be taken into account when calculating a plan's funding target attainment percentage. A plan might have a credit balance, for example, if in a prior year an employer made contributions to the plan above the minimum level required by law. Generally, the excess contributions are counted as "credits" and may be applied in future years toward the minimum level of contributions a plan sponsor is required to make by law.

### Plan Liabilities

Plan Liabilities shown in line 3 of the chart above are the liabilities used to determine the Plan's Funding Target Attainment Percentage. This figure is an estimate of the amount of assets the Plan needs on the Valuation Date to pay for promised benefits under the plan.

Annual Funding Notice
For The
EBER Bros. Wine & Liquor Corp. Retirement Plan

### Year-End Assets and Liabilities

The asset values in the chart above are measured as of the first day of the Plan Year and are actuarial values. Because market values can fluctuate daily based on factors in the marketplace, such as changes in the stock market, pension law allows plans to use actuarial values that are designed to smooth out those fluctuations for funding purposes. The asset values below are market values and are measured as of the last day of the plan year. Market values tend to show a clearer picture of a plan's funded status as of a given point in time. As of 05/31/2012, the fair market value of the Plan's assets was $4,759,790. On this same date, the Plan's liabilities were $8,916,442.

### Participant Information

The total number of participants in the plan as of the Plan's valuation date was 430. Of this number, 0 were active participants, 184 were retired or separated from service and receiving benefits, and 246 were retired or separated from service and entitled to future benefits.

### Funding & Investment Policies

The law requires that every pension plan have a procedure for establishing a funding policy to carry out the plan objectives. A funding policy relates to the level of contributions needed to pay for promised benefits. The funding policy of the Plan is to fund an amount greater than or equal to the minimum deposit to the plan required by law.

Once money is contributed to the Plan, the money is invested by plan officials called fiduciaries. Specific investments are made in accordance with the Plan's investment policy. Generally speaking, an investment policy is a written statement that provides the fiduciaries who are responsible for plan investments with guidelines or general instructions concerning various types or categories of investment management decisions. The investment policy of the Plan is based on a periodic review of plan assets with the plan advisors and a restructuring when necessary to achieve the maximum return with the minimum amount of risk.

In accordance with the Plan's investment policy, the Plan's assets were allocated among the following categories of investments, as of the end of the Plan Year. These allocations are percentages of total assets:

| Asset Allocations | Percentage |
|---|---|
| 1. Interest-bearing cash | 5.8% |
| 2. U.S. Government securities | 0.0% |
| 3. Corporate debt instruments (other than employer securities): | |
| Preferred | 0.0% |
| All other | 15.0% |
| 4. Corporate stocks (other than employer securities): | |
| Preferred | 0.0% |
| Common | 79.2% |
| 5. Partnership/joint venture interests | 0.0% |
| 6. Real estate (other than employer real property) | 0.0% |
| 7. Loans (other than to participants) | 0.0% |
| 8. Participant loans | 0.0% |
| 9. Value of interest in common/collective trusts | 0.0% |
| 10. Value of interest in pooled separate accounts | 0.0% |
| 11. Value of interest in master trust investment accounts | 0.0% |
| 12. Value of interest in 103-12 investment entities | 0.0% |

Annual Funding Notice
For The
EBER Bros. Wine & Liquor Corp. Retirement Plan

| | |
|---|---|
| 13. Value of interest in registered investment companies (e.g., mutual funds) | 0.0% |
| 14. Value of funds held in insurance co. general account (unallocated contracts) | 0.0% |
| 15. Employer-related investments: | |
| Employer Securities | 0.0% |
| Employer real property | 0.0% |
| 16. Buildings and other property used in plan operation | 0.0% |
| 17. Other | 0.0% |

For information about the plan's investment in any of the following types of investments as described in the chart above – common/collective trusts, pooled separate accounts, master trust investment accounts, or 103-12 investment entities – contact the Plan Administrator, at (585) 360-4240, EBER Bros. Wine & Liquor Corp., 95 Allens Creek Road, Bldg.2, Suite 10, Rochester, NY 14618.

### Right to Request a Copy of the Annual Report

A pension plan is required to file with the US Department of Labor an annual report called the Form 5500 that contains financial and other information about the plan. Copies of the annual report are available from the US Department of Labor, Employee Benefits Security Administration's Public Disclosure Room at 200 Constitution Avenue, NW, Room N-1513, Washington, DC 20210, or by calling 202.693.8673. For 2009 and subsequent plan years, you may obtain an electronic copy of the plan's annual report by going to www.efast.dol.gov and using the Form 5500 search function. Or you may obtain a copy of the Plan's annual report by making a written request to the plan administrator. Individual information, such as the amount of your accrued benefit under the plan, is not contained in the annual report. If you are seeking information regarding your benefits under the plan, contact the plan administrator identified below under "Where To Get More Information."

### Summary of Rules Governing Termination of Single-Employer Plans

If a plan is terminated, there are specific termination rules that must be followed under federal law. A summary of these rules follows.

There are two ways an employer can terminate its pension plan. First, the employer can end the plan in a "standard termination" but only after showing the PBGC that the plan has enough money to pay all benefits owed to participants. Under a standard termination, the plan must either purchase an annuity from an insurance company (which will provide you with periodic retirement benefits, such as monthly, for life or for a set period of time when you retire) or, if your plan allows, issue one lump-sum payment that covers your entire benefit. Your plan administrator must give you advance notice that identifies the insurance company (or companies) that your employer may select to provide the annuity. The PBGC's guarantee ends when your employer purchases your annuity or gives you the lump-sum payment.

Second, if the plan is not fully-funded, the employer may apply for a distress termination. To do so, however, the employer must be in financial distress and prove to a bankruptcy court or to the PBGC that the employer cannot remain in business unless the plan is terminated. If the application is granted, the PBGC will take over the plan as trustee and pay plan benefits, up to the legal limits, using plan assets and PBGC guarantee funds.

Under certain circumstances, the PBGC may take action on its own to end a pension plan. Most terminations initiated by the PBGC occur when the PBGC determines that plan termination is needed to protect the interests of plan participants or of the PBGC insurance program. The PBGC can do so if, for example, a plan does not have enough money to pay benefits currently due.

EB-00018081

## Annual Funding Notice
### For The
### EBER Bros. Wine & Liquor Corp. Retirement Plan

### Benefit Payments Guaranteed by the PBGC

When the PBGC takes over a plan, it pays pension benefits through its insurance program. Only benefits that you have earned a right to receive and that cannot be forfeited (called vested benefits) are guaranteed. Most participants and beneficiaries receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits that are not guaranteed.

The amount of benefits that PBGC guarantees is determined as of the plan termination date. However, if a plan terminates during a plan sponsor's bankruptcy and the bankruptcy proceeding began on or after September 16, 2006, then the amount guaranteed is determined as of the date the sponsor entered bankruptcy.

The PBGC maximum benefit guarantee is set by law and is updated each calendar year. For a plan with a termination date or sponsor bankruptcy date, as applicable in 2011, the maximum guaranteed benefit is $4,500.00 per month, or $54,000.00 per year, payable in the form of a straight life annuity, for a 65-year-old retiree with no survivor benefit. If a plan terminates during a plan sponsor's bankruptcy, and the bankruptcy proceeding began on or after September 16, 2006, the maximum guarantee is fixed as of the calendar year in which the sponsor entered bankruptcy. The maximum guarantee is lower for an individual who begins receiving benefits from PBGC before age 65; the maximum guarantee by age can be found on PBGC's website, www.pbgc.gov. The guaranteed amount is also reduced if a benefit will be provided to a survivor of the plan participant.

The PBGC guarantees "basic benefits" earned before a plan is terminated, which includes:

- pension benefits at normal retirement age;
- most early retirement benefits;
- annuity benefits for survivors of plan participants; and
- disability benefits for a disability that occurred before the date the plan terminated or the date the sponsor entered bankruptcy, as applicable.

The PBGC does not guarantee certain types of benefits:

- The PBGC does not guarantee benefits for which you do not have a vested right, usually because you have not worked enough years for the company.
- The PBGC does not guarantee benefits for which you have not met all age, service, or other requirements.
- Benefit increases and new benefits that have been in place for less than one year are not guaranteed. Those that have been in place for less than five years are only partly guaranteed.
- Early retirement payments that are greater than payments at normal retirement age may not be guaranteed. For example, a supplemental benefit that stops when you become eligible for Social Security may not be guaranteed.
- Benefits other than pension benefits, such as health insurance, life insurance, death benefits, vacation pay, or severance pay, are not guaranteed.
- The PBGC generally does not pay lump sums exceeding $5,000.

In some circumstances, participants and beneficiaries still may receive some benefits that are not guaranteed. This depends on how much money the terminated plan has and how much the PBGC recovers from employers for plan underfunding.

4 of 5

EB-00018082

Annual Funding Notice
For The
EBER Bros. Wine & Liquor Corp. Retirement Plan

Corporate and Actuarial Information on File with PBGC

A plan sponsor must provide the PBGC with financial information about itself and actuarial information about the plan under certain circumstances, such as when the funding target attainment percentage of the plan (or any other pension plan sponsored by a member of the sponsor's controlled group) falls below 80 percent (other triggers may also apply). The sponsor of the Plan, EBER Bros. Wine & Liquor Corp., and members of its controlled group, if any, were subject to this requirement to provide corporate financial information and plan actuarial information to the PBGC. The PBGC uses this information for oversight and monitoring purposes.

Where to Get More Information

For more information about this notice, you may contact the Plan Administrator, at (585) 360-4240, EBER Bros. Wine & Liquor Corp., 95 Allens Creek Road, Bldg.2, Suite 10, Rochester, NY 14618. For identification purposes, the official plan number is 001 and the plan sponsor's employer identification number or "EIN" is 16-1022661. For more information about the PBGC and benefit guarantees, go to PBGC's website, www.pbgc.gov.

EB-00018083