UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN and AUDREY HAYS,

                                        Plaintiffs,

                v.

LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC,
ESTATE OF ELLIOTT W. GUMAER, JR. and WENDY EBER,

                                        Defendants,

        and

EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP.,
EBER BROS. WINE & LIQUOR METRO, INC., EBER-
CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS.
ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS OF
MAINE, INC., and CANANDAIGUA NATIONAL BANK & TRUST
COMPANY,

                                        Nominal Defendants.

Civil Action No.
16-CV-9517(LAK/KHP)

**EBER DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT**

UNDERBERG & KESSLER LLP
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
(585) 258-2882

Paul F. Keneally, Esq.,
Colin D. Ramsey, Esq.,
Jillian K. Farrar, Esq.,
Of Counsel

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT...................................................................................................................2

   I.     PLAINTIFFS DO NOT DISPUTE THAT EBWLC AND METRO WERE JOINTLY
        AND SEVERALLY LIABLE FOR THE TEAMSTERS AND EBWLC PENSION
        LIABILITIES. ...................................................................................................2

   II.    JUSTICE ROSENBAUM'S ORDER IS NOT "IRRELEVANT" AND PLAINTIFFS'
        PRIMARY CLAIMS REGARDING IT ARE LARGELY BARRED BY THE
        ROOKER-FELDMAN DOCTRINE AND/OR RES JUDICATA. ....................................3

   III.   ONCE THE 2012 FORECLOSURE BECAME EFFECTIVE PLAINTIFFS HAD NO
        CLAIM FOR ANY BREACH OF FIDUCIARY DUTY. ...........................................6

   IV.   LESTER EBER'S DUTY WAS TO ACT IN GOOD FAITH .........................................7

   V.    THERE WAS NO DUTY TO INFORM PLAINTIFFS OF THE 2012 UCC
        PROCEEDING. ..................................................................................................10

   VI.   SHAREHOLDER APPROVAL WAS NOT REQUIRED FOR EBWLC'S BOARD TO
        AUTHORIZE THE 2012 FORECLOSURE...............................................................10

   VII.  THE SOUTHERN CONSULTING AGREEMENT WAS NOT A CORPORATE
        OPPORTUNITY. ................................................................................................11

   VIII. PLAINTIFFS CONCEDE THAT CNB'S ATTEMPT TO TRANSFER THE CAPITAL
        STOCK OF EBER BROS. TO PLAINTIFFS WAS INEFFECTIVE. ............................11

   IX.   PLAINTIFFS ARE INCORRECT THAT IT IS PREMATURE TO DISMISS THEIR
        DUPLICATIVE CAUSES OF ACTION....................................................................12

   X.    PLAINTIFFS ARE NOT ENTITLED TO COMMON LAW INDEMNITY. .................12

CONCLUSION...............................................................................................................13

# TABLE OF AUTHORITIES

Case            Page

*Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163 (3d Cir. 1986) ........................5

*City of Perry v. P&G Co.*, 188 F. Supp. 3d 276, 281-82 (S.D.N.Y. 2016) ....................12

*Dabney v. Chase Nat. Bank of City of New York*, 196 F.2d 668 (2d Cir. 1952).....................6, 7, 9

*DiPace v. Figueroa*, 223 A.D.2d 949 (1996) ............................................................11

*Flaum v. Birnbaum*, 177 A.D.2d 170 (4th Dep't 1992) ...........................................10

*In re Estate of Balfe*, 152 Misc. 739 (Sur. Ct. Orange County 1934) .............................9

*In re Balfe*, 245 A. D. 22 (2d Dep't 1935) ...............................................................8

*In re Estate of Dow*, 156 N.Y.S.2d 804 (Sur. Ct. Chautauqua County 1955) ..............................10

*In re Estate of McCredy*, 470 A.2d 585 (Pa. Super. Ct. 1983) ......................................8

*In re Rothko*, 43 N.Y.2d 305 (1977) .......................................................................7

*In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 76 (Del. Ch. 2013) ...............................1

*Genger v. Genger*, 2016 N.Y. Slip Op. 30602(U) (Sup. Ct. New York County 2016) ..................6

*Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) ......................................4

*Gunnerman v. Talisman Capital Talon Fund, Ltd.*, C.A. No.1894-N (Del Ch. 2006) ................10

*H&H Envtl. Sys. v. Evanston Ins. Co.*, 2019 U.S. Dist. LEXIS 39700 (W.D.N.Y. 2019) ............12

*Harborside Refrigerated Services, Inc. v. Vogel*, 959 F.2d 368 (2d Cir. 1992) ...........................4

*Kuo v. Kuo*, 96 Civ. 5130 (CM),1999 U.S. Dist. LEXIS 2384 (S.D.N.Y. Mar. 4, 1999) ............11

*LB Steel, LLC v. Walsh Constr., Co.*, 572 B.R. 690 (Bankr. N.D. Ill. 2017) ...............................5

*Meinhard v. Salmon*, 249 N.Y. 458 (N.Y. 1928) ........................................................8

*Moser v. Devine Real Estate, Inc.*, 42 A.D.3d 731 (3d Dep't 2007) ...............................11

*O'Hayer v. De St. Aubin*, 30 A.D.2d 419 (2d Dep't 1968) ........................................8, 10

*Rosencrans v. Fry*, 12 N.J. 88, 103 (1953) ...............................................................8

*Sung Cho v. City of N.Y.*, 910 F.3d 639 (2d Cir. 2018) ....................................................................3

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398,
   (S.D.N.Y. 2012) ........................................................................................................................5

**Statutes**                                                                                                      **Page**

28 U.S.C. § 2202....................................................................................................................................5

N.Y. U.C.C. § 9-620 ........................................................................................................................6, 9

N.Y. U.C.C. § 9-622 ............................................................................................................................6

N.Y. U.C.C. § 9-625 ............................................................................................................................6

N.Y. U.C.C. § 9-627 ............................................................................................................................6

## PRELIMINARY STATEMENT

Plaintiffs' opposition to the Eber Defendants' motion for partial summary judgment continues to peddle conspiracy theories, mischaracterizations, and *ad hominem* attacks, while ignoring the economic realities that drove the actions that are the subject of this lawsuit and establish their fairness and reasonableness.

Plaintiffs portray themselves as victims of some elaborate plot engineered by Lester Eber to deprive them of what they mistakenly believe would have been a windfall inheritance. However, Plaintiffs continue to conveniently omit the fact that it was only Lester Eber who was willing to (and did) personally lend millions of dollars in an effort to save the family business, which had no equity value.  When offered the opportunity to join in this effort, Plaintiffs, Audrey Hays and Sally Kleeberg, the mother of plaintiffs Daniel Kleeberg and Lisa Stein, explicitly refused.  Rather, they were content to let Lester Eber take all the risk – and now seek to saddle him with all of the liabilities and no repayment.

Despite Lester Eber's best efforts, the Eber business simply could not withstand the entry of Southern Wine & Spirits ("Southern") into the New York market – as well as a host of other economic challenges and liabilities.  Having been the only person or entity willing to lend critically-needed additional cash as the prospects of the Eber entities darkened, Lester Eber was entitled to recoup, or at least partially recoup, the money that he had loaned.  If Lester Eber could go back in time and not make the loans at all, he surely would not make them.  Ironically, in such a scenario, Plaintiffs would be left with nothing.  Unfortunately, Lester Eber chose the nobler course, losing approximately $1.4 million of his pension and continuing to pay other significant expenses for the Eber businesses after the 2012 Foreclosure.  As repayment for Lester Eber's personal sacrifices, he is now embroiled in this litigation with spoiled relatives who have no

interest in acknowledging Lester's contributions to the Eber companies, nor the plight of the business following Southern's entry into the New York market. Rather, Plaintiffs are desperately seeking a way to restore the largesse they lived fat and happy off of for so many years.

Plaintiffs' opposition makes no effort to contradict the extreme economic peril set forth in the Eber Defendants' motion. Rather, it seeks to nitpick technical corporate formalities and obligations in an effort to distract from the inescapable reality that by 2012 Metro was insolvent – and that Plaintiffs' respective interests at that time were worth $0.

Above all, Plaintiffs' quest to unwind the 2012 Foreclosure would, even if successful, accomplish nothing. Even if the 2012 Foreclosure is unwound and the Metro stock is transferred back to the Trust beneficiaries, Lester Eber's loans cancelled in the 2012 Foreclosure would be reinstated as well. All these loans would again be in default and would be due and payable, along with all the other claims that Lester would then still have against EBWLC and Metro (over $6 million in cash voluntarily provided by Lester to settle claims brought by other creditors against, and other liabilities of, the Eber companies and the $1.4 million of EBWLC pension benefits Lester voluntarily waived in order to settle the Eber companies' liabilities to the PBGC). EBWLC and Metro would have no funds to pay any of these claims and no capacity to borrow any additional funds. Lester, the Eber companies and Plaintiffs would be right back where they were in June 2012 before the 2012 Foreclosure.

## ARGUMENT

### I.  PLAINTIFFS DO NOT DISPUTE THAT EBWLC AND METRO WERE JOINTLY AND SEVERALLY LIABLE FOR THE TEAMSTERS AND EBWLC PENSION LIABILITIES.

Plaintiffs' argument that the joint and several liability of the Eber companies to the Teamsters and PBGC is irrelevant obscures the value of Plaintiffs' interests and the duties of Lester

Eber and Wendy Eber as officers and directors. As set forth in Frank Torchio's expert report, EBWLC and Metro were insolvent in 2012 in large part because of the joint and several liabilities of the Eber companies to the Teamsters Fund and PBGC. The equity value of Plaintiffs' interest in the Eber companies was zero and Plaintiffs suffered no damages from the 2012 Foreclosure.[1] That fact is hardly irrelevant.

As set forth in the Eber Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Eber Defendants' Dec. 6, 2019 MOL"), the insolvency of EBWLC and Metro, stemming from the joint and several liability to the Teamsters Fund and the PBGC, shifts the duties of the officers and directors of the corporations from the shareholders to the Eber companies for the benefit of all their creditors. *See* § IV(D), pg. 15.

## II.   JUSTICE ROSENBAUM'S ORDER IS NOT "IRRELEVANT" AND PLAINTIFFS' PRIMARY CLAIMS REGARDING IT ARE LARGELY BARRED BY THE ROOKER-FELDMAN DOCTRINE AND/OR RES JUDICATA.

If, as alleged by Plaintiffs, Justice Rosenbaum's Order is irrelevant, surely Plaintiffs would not have dedicated multiple paragraphs of their Third Amended Complaint ("TAC") to complaining of the injuries suffered by Plaintiffs as a result of the Order. Here, unlike in *Sung Cho v. City of N.Y.*, 910 F.3d 639, 641 (2d Cir. 2018), the State Supreme Court did not merely "So Order" a stipulation. Rather, an action was commenced by Alexbay, creditors such as Southern participated, and Justice Rosenbaum approved the foreclosure and found it commercially reasonable. Moreover, unlike in *Sung Cho*, the 2012 Foreclosure was not finalized until after its

---

[1] Where stockholders receive the substantial equivalent in value of what they had before the transaction, the test of fairness is met. *See In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 76 (Del. Ch. 2013).

commercial reasonableness was established by the New York Supreme Court. Therefore *Rooker-Feldman* applies. *See* Eber Defendants' Nov. 8, 2019 MOL at § II.

In addition, Justice Rosenbaum's Order confirmed the validity of the underlying obligations. *See* Eber Defendants' November 8, 2012 MOL at § II(B). Plaintiffs do not dispute the preclusive effect of Justice Rosenbaum's Order on the validity of the underlying obligations (i.e., the guaranty and security agreement).

The declaratory judgment exception does not apply to Plaintiffs' collateral attacks on the 2012 Foreclosure Action in state court because that action involved injunctive relief, and neither EBWLC, Metro nor their privies prevailed. This Circuit's declaratory judgment exception applies where "the prior action involved only a request for declaratory relief." *Harborside Refrigerated Services, Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir. 1992). A party "may not avail himself of the 'declaratory judgment exception' to the doctrine of res judicata" when the prior "[a]ction sought injunctive relief as well as a declaratory judgment." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008).

The Complaint and Justice Rosenbaum's Order in the 2012 Foreclosure Action involved injunctive relief complementary to declaratory relief. Alexbay sought relief for its claims of default on the outstanding indebtedness. The Complaint "requests that this Court determine, adjudge, and order, that Alexbay LLC's acceptance, as a secured creditor, of EBWLC's ownership interests in Eber Bros. Wine & Liquor Metro, LLC,...in full satisfaction of the secured obligations owed to Alexbay LLC, is 'commercially reasonable.'" Exhibit L to L. Eber Aff. sworn to Nov. 8, 2019 at 9, 10, 15. Justice Rosenbaum's Order grants the "Motion seeking a determination that Alexbay's acceptance of certain collateral in full satisfaction of Eber Bros' obligation is 'Commercially Reasonable.'" Exhibit M to L. Eber Aff. sworn to Nov. 8, 2019 at 4. The State Court ordered

4

Alexbay's acceptance of EBWLC's ownership interests in Metro. The 2012 Foreclosure authorization and order to transfer Metro's stock constitutes injunctive relief and bars the application of the declaratory judgment exception to res judicata.

"Under the exception, only the prevailing party in a declaratory judgment action may seek further relief in the form of damages or an injunction." *LB Steel, LLC v. Walsh Constr., Co.*, 572 B.R. 690, 703 (Bankr. N.D. Ill. 2017) *citing* 28 U.S.C. § 2202 and *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986). This Court concurs that "Section 2202 thus merely provides that after a plaintiff prevails on its declaratory judgment claims, further relief based on that declaratory judgment may be granted." *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 410 (S.D.N.Y. 2012). Plaintiffs may not rely upon the declaratory judgment exception because EBWLC and Metro were not the prevailing party to the 2012 Foreclosure Action.

New York applies preclusive weight to a UCC Article 9 foreclosure action. "[T]he foreclosure action [to enforce a secured party's rights under UCC Article 9],…[t]his prior determination is res judicata and cannot be collaterally attacked in this action either by way of defense or affirmative claim." *Chase Manhattan Bank, N.A. v. Natarelli*, 93 Misc. 2d 78, 83-86, 86 n3 (N.Y. Sup. Ct. 1977). The declaratory judgment exception does not apply. Res judicata precludes Plaintiffs' claims related to the 2012 Foreclosure and Justice Rosenbaum's Order.[2]

---

[2] For these reasons, any request to file a Rule 11 motion by Plaintiffs based on the presentation of these legal arguments should be summarily denied.

### III.   ONCE THE 2012 FORECLOSURE BECAME EFFECTIVE PLAINTIFFS HAD NO CLAIM FOR ANY BREACH OF FIDUCIARY DUTY.

Alexbay (and Lester Eber) met all express requirements and enforced the secured creditor's rights in good faith under N.Y. U.C.C. § 9-620. Again, Judge Rosenbaum's Order found that the 2012 Foreclosure was "commercially reasonable" as a matter of law. N.Y. U.C.C. § 9-627. When the 2012 Foreclosure became "effective", it transferred all EBWLC's interest in the collateral to Alexbay and terminated any other subordinate interest. N.Y. U.C.C. § 9-622.

Since the Loans and the 2012 Foreclosure were authorized by the Will (*see* Eber Defendants' Dec. 6, 2019 MOL at § III) the safeguard that Plaintiffs were entitled to rely on was that Lester Eber act in good faith in enforcing the secured creditor's rights under N.Y. U.C.C. § 9-620. As a result, once the 2012 Foreclosure became "effective" under N.Y. U.C.C § 9-620, Plaintiffs had no further claim against Lester Eber for any breach of fiduciary duty.

Further, even if Plaintiffs have a claim for breach of fiduciary duty, the remedy is limited to damages. N.Y. U.C.C. § 9-620 clearly expresses a preference for damages as an exclusive remedy in the case of a foreclosure. *See* N.Y. U.C.C. § 9-620. N.Y. U.C.C. § 9-625. Even where a Plaintiff achieves summary judgment on a breach of fiduciary duty claim, New York courts favor monetary damages. *See Genger v. Genger*, 2016 N.Y. Slip Op. 30602(U) *13-14 (Sup. Ct. New York County 2016) (finding that even though the Trustee breached his fiduciary duty and purchased shares at a N.Y. U.C.C. foreclosure sale that was not commercially reasonable, return of the shares was inappropriate).

Plaintiffs cite no New York authority supporting the availability of a reconveyance or rescission remedy to the facts in the case at bar. In *Dabney v. Chase Nat. Bank of City of New York*, 196 F.2d 668, 670 (2d Cir. 1952), a case relied upon by Plaintiffs, the indenture trustee's loan to

the debtor was unsecured and was not subject to N.Y. U.C.C. Article 9. Indeed, *Dabney* was decided ten (10) years before the N.Y. U.C.C was adopted. Further, the indenture trustee's beneficiaries were bondholders in a bankruptcy proceeding, not stockholders. Put simply, *Dabney* is wholly distinguishable from the current facts.

Here, the Trust was terminated on June 1, 2017, and the status quo of the ultimate beneficial ownership of Metro by the Trust beneficiaries at June 5, 2012 cannot be restored. Allen Eber clearly wished that Lester Eber, not Plaintiffs, manage the Eber companies and have control of the voting stock thereof. A reconveyance or rescission would result in Plaintiffs gaining voting control of the Eber companies and the employment of Lester and Wendy Eber being promptly terminated. In addition, the Will did not contain any duty on the part of the Co-Trustees to retain the Eber Bros. stock. *See* Eber Defendants' December 6, 2019 MOL. Nor are the Eber companies "unique assets". *See in re Rothko*, 43 N.Y.2d 305 (1977).

Plaintiffs suffered no harm as a result of the 2012 Foreclosure. In June 2012, EBWLC and Metro were insolvent (Torchio Report attached as Exhibit F to Nov. 8, 2019 W. Eber Aff. at 37-38) and Plaintiffs have presented no evidence to the contrary. The 2012 Foreclosure had no adverse financial effect on EBWLC, which was then out of business. The Loans EBWLC and Metro owed were cancelled and Alexbay accepted the stock in return. The value of the Eber Bros. stock in June 2012 was clearly less than the face value of the Loans. Any value that the Metro stock might have had at some later date was, at the time of the 2012 Foreclosure, grossly speculative.

## IV.    LESTER EBER'S DUTY WAS TO ACT IN GOOD FAITH

The duty of undivided loyalty that New York common law imposes on a fiduciary is easy enough to state in general terms. However, application of that principle to a particular case is more complex. A court must consider the totality of the circumstances, including the nature of the

transaction involved, the personal interests of the fiduciary and the beneficiaries in the transaction, and the consequences of the conduct alleged to have breached the fiduciary duty. *Lawrence v. Cohn*, 197 F. Supp. 2d 16, 34 (S.D.N.Y. 2002). In this area of the law, "[l]ittle profit will come from a dissection of the precedents." *Meinhard v. Salmon*, 249 N.Y. 458, 466 (N.Y. 1928). Decision in each case must rest on its own facts.

The so-called "no further inquiry" rule (a presumption that certain self-dealing transactions by a fiduciary to be voidable by beneficiaries without further inquiry into its merits) has often been applied as an aid to the enforcement of a standard of conduct by a fiduciary. But it is not a standard of conduct in and of itself.

The "no further inquiry" rule is a default rule that yields to contrary terms of a particular trust. *O'Hayer v. De St. Aubin*, 30 A.D.2d 419 (2d Dep't 1968). The *O'Hayer* Court established the general principle that

> "the rule of undivided loyalty due from a trustee...may be relaxed by a settlor by appropriate language in the trust instrument in which he, either expressly or by necessary implication, recognizes that the trustee may have interests potentially in conflict with the trust; … the law interposes to require that the trustee always exercise good faith in his administration."

*Id.* at 423. *See In re Balfe*, 245 A.D. 22, 24 (2d Dep't 1935); Restatement (Second) of Trusts, sec. 170(I), cmt t (1959); *see In re Estate of McCredy*, 470 A.2d 585, 600 (Pa. Super. Ct. 1983).

The *O'Hayer* court cites with approval *Rosencrans v. Fry,* 12 N.J. 88, 103 (1953), which held

> "A trustee has all the powers expressly granted to him and such powers as are necessarily implied for the due and faithful execution of the trust; and where the method selected by a testator for the accomplishment of the purpose and object of the trust cannot be adopted by a trustee without dealing with himself individually, it may be fairly assumed that such dealing was contemplated by the testator."

The rule of undivided loyalty may also be relaxed if the beneficiaries give an informed consent to the transaction or a court authorizes it, but neither of these procedures is required if the trust instrument otherwise authorizes the transaction. *See id.*

Plaintiffs concede that the Will expressly authorized Lester Eber to make secured loans to EBWLC and Metro. Lester's right to accept the loan collateral in full satisfaction of his debt in the event of a default was authorized both by N.Y. U.C.C. § 9-620 (a specially-crafted procedure adopted by the New York State Legislature for the narrow purpose of enabling a secured creditor to accept collateral in satisfaction of its secured debt), and by the Security Agreement entered into in 2010 itself. It was all part of a package of pre-existing statutory and contractual rights put in place long before 2012. The right to enforce the security interest was thus expressly part and parcel of the pre-existing secured loan package. Even if it had not been, it was a necessary implication of an otherwise authorized secured loan. "…the trustee had an express power: i.e., to lend money to [debtor] (a power which did indeed imply a power to collect the loan)…." *Dabney v. Chase Nat. Bank of City of New York*, 196 F.2d 668, 670 (2d Cir. 1952).

Under the Will, a Co-Trustee was authorized to act with respect to the making a secured loan to the Eber companies. Accordingly, the cases that forbid trustees to act in circumstances that involve "divided loyalty" are inappropriate. In authorizing such secured loans, Allen Eber realized no doubt he was placing the Co-Trustee in the position of treading among three loyalties (i.e., to the Trust for the beneficiaries; to the Eber companies as guiders of their destiny; and to the lending Co-Trustee as an authorized creditor of the companies). He was willing to allow the Co-Trustee to act under conditions of divided loyalty and had a right to do so. Obviously, the duty of the Co-Trustees to act in good faith remained and Lester Eber did. *See In re Estate of Balfe*, 152 Misc.

739 (Sur. Ct. Orange County 1934); *In re Estate of Dow*, 156 N.Y.S.2d 804, 806 (Sur. Ct. Chautauqua County 1955).

## V.     THERE WAS NO DUTY TO INFORM PLAINTIFFS OF THE 2012 UCC PROCEEDING.

Plaintiffs strive mightily to equate the facts of this case with *Flaum v. Birnbaum*, 177 A.D.2d 170 (4th Dep't 1992), but clearly fail to do so. As noted above, the rule of undivided loyalty may be relaxed if trust or estate beneficiaries give an informed consent to a disputed transaction, or a court authorizes the transaction, or the will or trust instrument, expressly or by necessary implication, authorizes the transaction. *See O'Hayer*, 30 A.D.2d at 419. In *Flaum* (and related cases cited therein), the fiduciary sought to relax his duty of undivided loyalty by arguing that the beneficiaries consented to the disputed transaction, but failed because he did not provide beneficiaries with the disclosure required to make their consent a well-informed one. In this case, Lester Eber does not argue that he sought, received or needed Plaintiffs' consent to the 2012 Foreclosure as the Will provision allowing secured loans is sufficient.   Plaintiffs still cite no authority for a duty to inform the Trust beneficiaries in a case such as the case at bar.

## VI.    SHAREHOLDER APPROVAL WAS NOT REQUIRED FOR EBWLC'S BOARD TO AUTHORIZE THE 2012 FORECLOSURE.

N.Y. B.S.C. § 909 contains no requirement that the shareholders of EBWLC approve the 2012 Foreclosure. *See Gunnerman* v. *Talisman Capital Talon Fund, Ltd.*, C.A. No.1894-N (Del Ch. 2006).

## VII.   THE SOUTHERN CONSULTING AGREEMENT WAS NOT A CORPORATE OPPORTUNITY.

As addressed in Section VII of Eber Defendants' Dec. 6, 2019 MOL, Lester Eber's consulting agreement with Southern was not a corporate opportunity of any of the Eber companies. EBWLC had no tangible expectancy in the consulting agreement and had ceased operations months before Lester Eber entered into the consulting agreement with Southern. *See Kuo v. Kuo*, 96 Civ. 5130 (CM), 1999 U.S. Dist. LEXIS 2384 at *11 (S.D.N.Y. Mar. 4, 1999) aff'd, 216 F.3d 1072 (2d Cir. 2000). Even, assuming *arguendo*, that EBWLC was capable of entering into the business of consulting and lobbying,[3] Southern was only interested in contracting with Lester Eber. Eber Defendants Dec. 6, 2019 MOL at § VII, pg. 23. In New York, where a third-party would not have done business with the corporation, there is no corporate opportunity.  *Moser v. Devine Real Estate, Inc.*, 42 A.D.3d 731, 135-36 (3d Dep't 2007) *citing DiPace v. Figueroa*, 223 A.D.2d 949, 952 (1996).

## VIII.   PLAINTIFFS CONCEDE THAT CNB'S ATTEMPT TO TRANSFER THE CAPITAL STOCK OF EBER BROS. TO PLAINTIFFS WAS INEFFECTIVE.

Plaintiffs concede that CNB failed to transfer ownership of the Trust's shares of Eber Bros. Lester Eber's October 2018 exercise of his call right must be enforced.  Failing that, Lester Eber is entitled, pursuant to Eber Bros. by-laws, to exercise his call right if and when a transfer eventually is proposed.

---

[3] A line of business it had never done that it is wholly different from wine and liquor distribution.

## IX.   PLAINTIFFS ARE INCORRECT THAT IT IS PREMATURE TO DISMISS THEIR DUPLICATIVE CAUSES OF ACTION.

This Court routinely dismisses duplicative causes of action pursuant to Rule 12(b)(6) prior to the close of discovery and trial. *City of Perry v. P&G Co.*, 188 F. Supp. 3d 276, 281-82; 286 (S.D.N.Y. 2016); *H&H Envtl. Sys. v. Evanston Ins. Co.*, 2019 U.S. Dist. LEXIS 39700 at *4-5, *11-12 (W.D.N.Y. 2019). Plaintiffs' Count VIII is duplicative of Counts I and II and should be dismissed.

## X.   PLAINTIFFS ARE NOT ENTITLED TO COMMON LAW INDEMNITY.

Plaintiffs' claim for common law indemnity should be dismissed. Plaintiffs concede that CNB failed to properly transfer the ownership of the Trust's shares of Eber Bros. to Plaintiffs. Plaintiffs' Dec. 6, 2019 MOL § VI, pg. 22. Given Plaintiffs' acknowledgment that CNB failed to properly transfer the Trust's shares, common law indemnity is inappropriate as Lester Eber's exercise of the call right provided for in the Eber Bros. by-laws necessarily came thereafter. CNB is a necessary party to this action due to their failure to properly transfer the Trust's shares.

In addition, Plaintiffs' liability to CNB originates solely from Plaintiffs' voluntary negotiated settlement agreement with CNB.  Lester Eber was not involved in Plaintiffs' negotiations with CNB and Plaintiffs freely agreed to indemnify CNB for their future legal fees associated with this matter.  CNB's failure to transfer the stocks correctly and Plaintiffs' contract with CNB (in which Lester Eber had no part in negotiating) is the source of Plaintiffs' liability to CNB, not Lester Eber properly exercising his call right pursuant to the Eber Bros. by-laws.

## CONCLUSION

For all of the foregoing reasons, the Eber Defendants' motion for partial summary judgment should be granted. [4] [5]


DATED:        December 23, 2019
              Rochester, New York

                                        UNDERBERG & KESSLER LLP


                                        By: /s/ Paul F. Keneally, Esq.
                                            Paul F. Keneally, Esq., Of Counsel
                                            Colin D. Ramsey, Esq., Of Counsel
                                            Jillian K. Farrar, Esq., Of Counsel
                                            Attorneys for Eber Defendants
                                            300 Bausch & Lomb Place
                                            Rochester, New York 14604
                                            (585) 258.2800

---

[4] Regarding the February 2017 shareholder consent document approving an amendment to the EBWLC charter, drafted by John Herbert, Esq. prior to February 15, 2017, provided to Ms. Eber and signed by her that day, it was not specifically requested by Plaintiffs during discovery nor in the over 36,000 pages of documents produced by the Eber Defendants. Once identified by Plaintiffs, Ms. Eber searched for and found it and it was immediately produced to Plaintiffs. Notably this document supports the Eber Defendants, so they had no incentive to not produce it.

[5] Regarding the chart of the non-voting and preferred shares originally issued to the Trust by EBWLC prior to 2007, based on the relevant evidence (e.g., CNB is not in possession of any such certificate) it appears they were no longer outstanding at the time of the 2012 Foreclosure. These pre-2007 preferred shares do not overtly affect any claims in the case.