UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN and AUDREY HAYS,<br><br>                                                            Plaintiffs,<br><br>v.<br><br>LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC, ESTATE OF ELLIOTT W. GUMAER, JR. and WENDY EBER,<br><br>                                                            Defendants,<br><br>and<br><br>EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER-CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS OF MAINE, INC., and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,<br><br>                                                            Nominal Defendants. | Civil Action No.<br>16-CV-9517(LAK/KHP)<br><br><br><br><br><br><br><br><br><br><br><br>**AFFIDAVIT OF<br>WENDY EBER** |

STATE OF NEW YORK   )
                                      ) ss:
COUNTY OF NEW YORK )

Wendy Eber, being duly sworn, deposes and states as follows:

1. I am a defendant in the above-captioned action. I make this Affidavit in support of the motion for partial summary judgment made by me, as well as by defendants Alexbay, LLC f/k/a Lester Eber ("Alexbay"), LLC and Lester Eber (collectively, the "Eber Defendants") and in opposition to the motion of plaintiffs, Daniel Kleeberg, Lisa Stein and Audrey Hays, for partial summary judgment.

2. I incorporate by reference my Affidavits dated November 8 and December 5, 2019 (collectively, the "Affidavits") in support of the motion for partial summary judgment made by me, as well as by defendants Alexbay, LLC f/k/a Lester Eber

("Alexbay"), LLC and Lester Eber (collectively, the "Eber Defendants") and in opposition to the motion of plaintiffs, Daniel Kleeberg, Lisa Stein and Audrey Hays, for partial summary judgment..

3. As explained in my Affidavits, all the Eber companies were in serious financial crisis in late 2011 and the first quarter of 2012. Eber-Connecticut, LLC ("Eber-CT"), the only operating company in the group, had consistently poor financial performance following the 2008 recession. It had negative EBITDA (earnings before interest, taxes, depreciation and amortization) for each of the six fiscal years 2007-2012— a total of $4,256,952 in aggregate negative EBITDA. Its operations were providing no funds for it to survive or grow. Instead, it was relying on increasing debt. The preferred rights of Eder Goodman LLC, its minority investor, blocked any distribution of funds by Eber-CT to Eber Metro or EBWLC.

4. Lester's outstanding loans to Eber Bros. Wine and Liquor Corp. ("EBWLC") and Eber Bros. Wine & Liquor Metro, Inc. ("Metro") ($3,898,366) became due and payable on December 31, 2011.

5. More importantly, Eber Bros. & Co., Inc., EBWLC and Metro had massive third-party liabilities, both matured and contingent, that they had no ability whatsoever to satisfy—EBWLC Pension Plan termination liability ($5,063,388); Teamsters Fund withdrawal liability ($1,421,030); Harris Beach LLP litigation ($755,896); D4 LLC litigation ($120,000); and Benderson lease default ($246,948). Eber-CT also had an outstanding bank loan facility to CNB ($3,900,000) that had matured on November 1, 2011. All of these obligations were owed to third-parties. The Eber companies had no control at all over whether or when any of these third-party creditors would proceed against the Eber

companies, seek a default judgment or seize its assets (as D4 did). Any of these third-party creditors could easily have caused the situation to spin out of control at any time.

6. Throughout 2011 and early 2012, the Teamsters Fund threatened to unilaterally seize the Eber companies' assets to satisfy its claims. In fact, during this period, Vincent M. DiBella, the Teamsters Fund's counsel, told me that the Teamsters Fund was ready, willing and able to seize all the companies' cash whenever it wanted to in order to satisfy its claims.

7. In September 2011, Harris Beach filed a lawsuit to enforce its claims. EBWLC defaulted on its lease with Benderson in 2011 and Benderson sued EBWLC for breach in early 2012. In 2011 and early 2012, D4 LLC was pursuing litigation against EBWLC to collect on its claim.

8. EBWLC was required to make an annual contribution to the EBWLC Pension Plan for 2012 of approximately $700,000.00, but it had no funds to make the contribution. And, most importantly, it was clear to me that the liability of the Eber "controlled group" for the EBWLC Pension Plan termination liability was looming and would arrive soon enough.

9. CNB extended its $3,900,000 loan to Eber-CT for several months after November 1, 2011, but clearly communicated that it wanted out of the loan as soon as possible.

10. All these liabilities had to be dealt with promptly, regardless of whether or not Lester chose to extend the maturity of his loans. Failure of the Eber companies was imminent. Something had to be done.

11.  The 2012 Foreclosure was not the end of the Eber companies' problems, it was merely the end of the beginning. In 2012, the Eber companies had no alternative sources of financing to solve their problems as they existed at the end of 2011. Only significant additional financing voluntarily provided by Lester after the 2012 Foreclosure, and the Eber companies' ingenuity in solving their problems with their third-party creditors, would save the companies. Plaintiffs were still not willing to provide anything.

12.  The 2012 Foreclosure clearly facilitated the eventual successful resolution of the Eber companies' issues with its third-party creditors. It provided a way for Lester to tread among three loyalties: to the Trust for the beneficiaries; to the Eber companies as the guider of their destiny; and to himself as a secured creditor expressly authorized by the Will of Allen Eber.

13.  In February 2012, the Eber companies settled their litigation with D4 LLC by agreeing to pay $100,000 over the next 12 months, all of which came from voluntary cash funding from Lester.

14.  In August 2012, the Eber companies entered into a Confession of Judgment with the Teamsters Fund settling their withdrawal liability claims. These claims were paid with cash on July 1, 2013, all of which was provided voluntarily by Lester.

15.  In October 2015, Lester voluntarily provided $400,000 in additional cash to help the Eber companies finally settle the Harris Beach claims. Additionally, at the same time, Lester voluntarily provided $27,500 in additional cash to settle the Benderson lease default claim.

16.  After many years of difficult negotiations with the PBGC, in February 2017, the Eber companies finally settled the PBGC's claims ($7,985,670) relating to the

termination liability for the EBWLC Pension Plan, with the help of a voluntary waiver of Lester's future pension benefits which were valued at approximately $1,400,000, and the proceeds of a new bank loan I believe would never have been forthcoming without a resolution of Lester's debt and all the other third-party claims against the Eber companies.

_____
Wendy Eber

Sworn to before me this
21 day of December, 2019.

_____
Notary Public

BRENDA L RIVERA
Notary Public - State of New York
NO. 01RI6348476
Qualified in Bronx County
My Commission Expires Sep 26, 2020