**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DANIEL KLEEBERG, LISA STEIN, and
AUDREY HAYS,

          Plaintiffs,

    v.

LESTER EBER; ALEXBAY, LLC f/k/a
LESTER EBER, LLC; ESTATE OF
ELLIOTT W. GUMAER, JR.; and WENDY
EBER,

          Defendants,

   and

EBER BROS. & CO., INC.; EBER BROS.
WINE AND LIQUOR CORP.; EBER
BROS. WINE & LIQUOR METRO, INC.;
EBER-CONNECTICUT, LLC; EBER-
RHODE ISLAND, LLC; EBER BROS.
ACQUISITION CORP.; EBER-METRO,
LLC; SLOCUM & SONS OF MAINE, INC.;
and CANANDAIGUA NATIONAL BANK
& TRUST COMPANY,

          Nominal Defendants.

Civil Action No.  16-CV-9517(LAK)(KHP)

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PARTIAL RECONSIDERATION**

---

Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Brian@brook-law.com
*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein,*
*and Audrey Hays*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................. 1

I.   The Standard for Reconsideration Is Met ............................................................. 1

II.  Because Lester's Conduct Was Self-Dealing that Was Not Authorized by the Will,
     Plaintiffs Are Entitled to Summary Judgment ...................................................... 2

     A.  The Burden for Showing Beneficiary Consent Is Exceedingly High ................. 2

     B.  This Court Correctly Distinguished the Strict Foreclosure from the Secured Loan, and
         then Disregarded that Distinction ..................................................................... 4

     C.  By Arguing that "Notice" of the Alexbay Foreclosure on Eber Metro Was Not
         Required, Defendants Conceded that There Was No "Consent" ........................ 5

III. Plaintiffs Are Entitled to a Ruling on Lester's Attempt to "Purchase" Their Eber Bros.
     Shares for Nothing ................................................................................................. 6

     A.  This Issue Is Essential to Other Counts and Must Be Decided ......................... 6

     B.  Alternatively, If the Issue Is Not Necessary to Other Claims, then at Least Part of
         Count VI Should Be Reinstated Or Plaintiffs Should Be Permitted to Raise It By Pre-
         Trial Motion With Judge Kaplan ....................................................................... 7

CONCLUSION ......................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Birnbaum v. Birnbaum*, 117 A.D.2d 409, 419, 503 N.Y.S.2d 451 (1986) ...................................... 3

*Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169 (S.D.N.Y. 1988) ............................................. 2

*Davis v. Bryan*, 810 F.2d 42 (2d Cir. 1987).................................................................................. 2

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491

    (S.D.N.Y. 2006) ....................................................................................................................... 3, 5

*Renz v. Beeman*, 589 F.2d 735 (2d Cir. 1978) ............................................................................. 3

*Scott v. City of Mount Vernon*, No. 14-CV-4441 (KMK), 2017 WL 1194490

    (S.D.N.Y. Mar. 30, 2017) ........................................................................................................... 2

*Shrader v. CSX Transp. Inc.*, 70 F.3d 255 (2d Cir. 1995) ............................................................ 1

*Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280 (2d Cir. 2011) ..................... 2

**Rules**

Federal Rule of Civil Procedure 56 ................................................................................................ 7

Local Civil Rule 6.3 ....................................................................................................................... 1

## PRELIMINARY STATEMENT

Filing a motion for reconsideration is always a delicate dance and there is no way to do it tactfully without blunting the force of the arguments. Here, there are such baffling inconsistencies and omissions in the Court's opinion that it almost appears as if they were done intentionally, to issue an opinion prior to substitution of Lester Eber's Estate in the case. Of course, that is speculation, and perhaps it was simply an oversight or drafting error. Whatever the reason, Plaintiffs file this motion to respectfully request that this Court correct its decision.

Despite Lester Eber's untimely demise, this Court should not be reluctant to end those parts of this case that should be over now, without necessitating a time consuming and expensive trial before Judge Kaplan. The bar for reconsideration is high, however it is readily met here with respect to two issues of central importance to this case. This Court's decision on summary judgment (a) raised a defense *sua sponte* that was inconsistent with other parts of the opinion while overlooking the fact that Defendants have already conceded it, and (b) omitted to address a threshold issue, as to which there are no disputed facts, that had been properly raised by Plaintiffs in their motion and which is essential to multiple claims.

## ARGUMENT

### I.   THE STANDARD FOR RECONSIDERATION IS MET

Local Civil Rule 6.3 provides that a motion for reconsideration or reargument of a court order must be accompanied by "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." *Id*. The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). This strict standard is intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a

1

decision and then plugging the gaps of a lost motion with additional matters." *Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988).

Here, Plaintiffs do not seek to raise anything that could have been raised earlier. Quite the opposite, Plaintiffs' arguments are based on oversights and inconsistencies within the Court's opinion, one of which *sua sponte* raised a defense that Defendants themselves never asserted.

II.    **BECAUSE LESTER'S CONDUCT WAS SELF-DEALING THAT WAS NOT AUTHORIZED BY THE WILL, PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT**

Although this Court found that it constituted self-dealing that was not authorized by the Allen Eber Will, this Court denied summary judgment on the issue of whether the Alexbay strict foreclosure on Eber Metro was a breach of trust (i.e. breach of Lester Eber's fiduciary duty as a trustee to the beneficiaries of the Allen Eber Trust). Op. 52–56. Its reason for the denial was that there is a factual dispute about whether the Trust beneficiaries "consented to the terms of the Security Agreement and Guaranty that granted Lester a security interest in Eber Metro and Eber-CT and allowed him to foreclose on the collateral himself." *Id.* at 54.

The Ebers, however, never even *argued* that beneficiary consent was an applicable defense. And as we show below, there is good reason for that.[1]

**A.  The Burden for Showing Beneficiary Consent Is Exceedingly High**

If the defense of beneficiary consent had been raised by Defendants, or if the Court had provided notice of its raising the defense *sua sponte*, then Plaintiffs would have decimated the

---

[1] The Court appears to have raised the issue *sua sponte*, although doing so has been generally disapproved of by the Second Circuit, even when dealing with comparatively clear-cut defenses like the statute of limitations. *See Scott v. City of Mount Vernon*, No. 14-CV-4441 (KMK), 2017 WL 1194490, at *23 (S.D.N.Y. Mar. 30, 2017) ("[T]he Second Circuit has expressed its disapproval of courts raising affirmative defenses, like statute of limitations, *sua sponte*, that is, without prompting from the parties, *see Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) ('If a defendant fails to assert the statute of limitations defense, the district court ordinarily should not raise it sua sponte.' (italics omitted)), although that rule is subject to some exceptions, *see Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ('[D]istrict courts may dismiss an action sua sponte on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers [the] plaintiff himself submitted.' (italics and internal quotation marks omitted)).").

argument by pointing to the exceedingly high burden established by New York law for such a

defense.

An opinion by the presiding district judge in this case, Judge Kaplan, seems to be one of

the more recent to recognize this as the law in New York (and elsewhere):

> [A] beneficiary must give "full free and informed consent" for a fiduciary to
> engage in self-dealing. New York law is in accord that the beneficiary's
> "authorization to engage in self-dealing must be clear and explicit." Full and
> complete disclosure is essential.

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 499–500

(S.D.N.Y. 2006) (detailed footnotes citing authorities omitted)[2]; *see also Renz v. Beeman*, 589

F.2d 735, 744 (2d Cir. 1978) ("Consent to self-dealing requires a more specific showing. It must

be 'clearly proved' and 'made with a full knowledge of all the material particulars and

circumstances,' including the full extent of the Cestui's legal rights.") (cited at Op. 53 on this

issue). In addition, "[t]he burden clearly is on the fiduciary to prove that the consent obtained

from the beneficiaries was fully informed and given with an awareness of their rights and

remedies." *Birnbaum v. Birnbaum*, 117 A.D.2d 409, 419, 503 N.Y.S.2d 451, 457 (1986).

Here, there is no argument, let alone a factual dispute, that there was any authorization

from the beneficiaries for any self-dealing. The beneficiaries never gave "clear and explicit"

consent to anything, not even the loans. Indeed, the parties have long agreed that the only

authorization for any self-dealing that existed was that found in the Will, from the settlor—not

the beneficiaries. And, importantly, this Court has recognized that the conduct in question here is

not within the scope of that limited grant by Allen Eber.

The absence of any factual predicate for a trial on this issue is even more apparent. Far

from having a "clear and explicit" consent, the Ebers themselves affirmatively argued there was

no disclosure of the foreclosure transaction at all (an "essential" prerequisite). *Int'l Equity*

*Investments*, 427 F. Supp. 2d at 499–500. Thus, they undisputedly cannot mean the "burden,"

---

[2] Since this Court did not have the benefit of briefing on the issue, it is entirely appropriate to raise this additional authority at this time, since we are not seeking to "relitigate" an issue that was already litigated. It is a new issue.

which is on them, to prove that a fully informed consent was obtained. The failure to raise this affirmative defense at any time in this litigation could be treated as a waiver.

### B. This Court Correctly Distinguished the Strict Foreclosure from the Secured Loan, and then Disregarded that Distinction

Critically—and correctly—the Court rejected the defense based on the Will because "although the Allen Eber Will allowed the Trustees to make loans secured by collateral held in the Trust, the Will did not expressly grant the Trustees the right to foreclose upon the collateral and keep it for themselves." Op. 52. The Court elaborated that "the Trustees' ability to make loans secured by the collateral held in the Trust did not give them carte blanche to foreclose on the collateral without notice to the beneficiaries because the collateral could, for example, have been sold at a public auction." *Id.* at 53.

After recognizing that important distinction, however, the Court proceeded to conflate the secured loan with the foreclosure when *sua sponte* addressing the issue of beneficiary consent. The opinion relies on facts regarding disclosures made in 2010 at the time of the secured loan—years before the Alexbay foreclosure was (according to Defendants) even contemplated. *Id.* at 54–55. Undisputedly, none of the documents purported to disclose the possibility that Lester would end up owning the collateral himself. Nothing indicated that Lester was doing anything other than what the Will already authorized—which is why none of the correspondence to the beneficiaries purported to seek their consent to the loan or guaranty.

The parties do not dispute that the Will authorized the secured loan, even though it constituted self-dealing. Since that self-dealing transaction was authorized by the Will, it would be inappropriate to have a trial on whether the beneficiaries implicitly consented to the loan by having declined to participate in it. This inconsistency further illustrates the futility of having a trial on the issue identified by the Court.

Simply put, even if the beneficiaries could have arguably consented to the loan in 2010, that cannot have authorized the 2012 foreclosure any more than the Will did.

4

### C.  By Arguing that "Notice" of the Alexbay Foreclosure on Eber Metro Was Not Required, Defendants Conceded that There Was No "Consent"

As Judge Kaplan held, not only is "[f]ull and complete disclosure is essential," but also any consent must be "clear and explicit." *Int'l Equity Investments*, 427 F. Supp. 2d at 499–500.

Quite the opposite of what is legally required to establish beneficiary consent, the Ebers affirmatively argued that "Plaintiffs were not entitled to Notice of the 2012 Foreclosure." Eber MSJ Opp'n 7, ECF No. 377.  This is why the Eber Defendants' most recent correspondence to the Court talked about appealing the summary judgment decision: They know that they have literally zero chance of proving that there was consent at trial. If the defense had any sliver of hope, they would have raised it in their motion papers; they did not.

Plaintiffs would consent to allowing it to be deemed a partial final judgment under Rule 54 to allow the Eber Defendants to proceed to appeal the Court's ruling, which all parties recognize logically compels this result. Holding a trial on this issue, by contrast, would only serve to (a) delay justice to Plaintiffs, (b) increase the risk that the assets are dissipated or imperiled, and (c) increase the burden on an already overburdened court. Instead, the better course is to proceed to enter judgment for Plaintiffs and, if the Court so chooses, permit this issue to be appealed pending trial on the many remaining but distinct issues.

\*   \*   \*

In sum, the defense of beneficiary consent should not have been directed for trial by this Court for several reasons, any one of which is sufficient to reject it as a matter of law:

1. Because Defendants failed to raise the defense themselves, which could have been held to constitute a waiver of the affirmative defense;

2. Because there was no "clear and explicit" consent by the beneficiaries to the self-dealing in the secured loan, which was authorized by the Will, not the beneficiaries;

3. Because even if there was consent to the 2010 secured loan, the 2012 foreclosure transaction was distinct from the secured loan; and

4.  Because Defendants concede that the beneficiaries never received even "notice" of the foreclosure, let alone "full and complete disclosure" that would be required to support the defense of beneficiary consent.

For these reasons, by applying the logic of this Court's decision rejecting the defense that the Defendants did raise, this Court must similarly reject this defense that Defendants declined to assert themselves (quite reasonably, under the circumstances).

### III.   PLAINTIFFS ARE ENTITLED TO A RULING ON LESTER'S ATTEMPT TO "PURCHASE" THEIR EBER BROS. SHARES FOR NOTHING

The first issue presented by Plaintiffs' motion for summary judgment was to rebuke Lester Eber's attempt to "purchase" Plaintiffs' shares in Eber Bros. & Co., Inc. ("EB&C") for literally nothing. Pls. MSJ Br. 2–6. The Court's opinion laid out the undisputed facts in detail. *See* Op. 20–24. Its discussion proceeded to ignore this issue, at least on substance, even though the Court must have recognized that it was essential to other claims in the case.

### A.  This Issue Is Essential to Other Counts and Must Be Decided

Plaintiffs respectfully request that this Court issue a ruling on this issue. Thus, this is more of a request for consideration in the first instance than it is *re*consideration. Nevertheless, we are unaware of any procedural mechanism other than the instant motion to make the request.

It is unclear why this Court laid out the facts only to avoid the legal issue, so it requires some speculation to see if the reasoning can be determined. Our best guess is that the Court did not address the issue because it construed the issue as seeking judgment on Count VI, which it dismissed as "duplicative." *See* Op. 40. However, that is not a basis to avoid the issue, since it is still an essential part of this case that must be decided. Indeed, even if Count VI is dismissed, the propriety of Lester's actions is still challenged in other counts, including explicitly in Count IV, as the Court noted. *Id*. If the issue were not essential to other counts, the Court would have had no basis to dismiss the relevant part of Count VI.

6

Under Rule 56, a party may seek summary judgment on any claim or defense, or even merely any "part" of a claim or defense. Fed. R. Civ. P. 56(a). Accordingly, this issue was properly presented, regardless of the dismissal of Count VI, because establishing Plaintiffs' ownership of shares in EB&C is essential to their requested relief in multiple other counts, including Count I.[3]

In other words, to set aside the Eber Metro Transfer to Alexbay would not afford Plaintiffs relief unless their rights as shareholders are recognized. The same is true as to the Southern transaction, since that is likewise a claim that is derivative, based on injury to Eber Bros. and its subsidiaries; if Plaintiffs have no rights in Eber Bros., there is no standing to Thus, the issue is essential to Count I, and since Plaintiffs are entitled to partial summary judgment on Count I as to the Eber Metro Transfer (see above), this issue should be decided now.

Moreover, this issue is particularly appropriate for summary judgment since there are no disputed facts that will affect the outcome. There is no reason not to decide it now.

### B. Alternatively, If the Issue Is Not Necessary to Other Claims, then at Least Part of Count VI Should Be Reinstated Or Plaintiffs Should Be Permitted to Raise It By Pre-Trial Motion With Judge Kaplan

*If* this Court is going to rule on the issue, then Plaintiffs have no objection to Count VI being dismissed. We do not care what heading it falls under as long as there is a ruling. However, under the circumstances, it seems peculiarly unfair to Plaintiffs to refuse to address an issue *entirely* because it is "duplicative." It still must be decided *at least once*.

A declaratory judgment claim can only be dismissed as duplicative if the same legal issue will be decided "of necessity" in other claims. *See* Eber MSJ Br. 28 (citing authorities). The Court did not make this finding; such a finding would, of necessity, require the Court to address the issue. Accordingly, if for some reason this Court does not believe it is appropriate to decide

---

[3] The mere fact that the brief began by saying, "[a]s requested in Count VI," Pls. MSJ Br. 2, should not have been construed as *limiting* the issue to Count VI. The legal rulings sought are material to virtually the entire case. There does not seem to be any dispute about that. If the Defendants do not agree that this issue should be decided now (they never argued that it should not before), it can only be because they are desperate to delay in light of the Court's other rulings.

this issue in connection with the other remaining Counts in this case, then this Court must reconsider its decision to dismiss the pertinent part of Count VI.

The parties need a ruling on this issue. Virtually all claims turn on it. There are no disputed facts. And it is a threshold question, one which Plaintiffs have asked this Court to take up for nearly two years since mere hours after Lester first made his attempt. *See* Brook Letter dated October 31, 2018, ECF No. 139. The Court instructed us to amend the Complaint to tee this up, and we did so. Then we filed the motion for summary judgment to tee this up in precisely the manner the Court directed. We then consented to having this Court decide the issue and to waive our right to have Judge Kaplan decide it. When we gave that consent, we never would have imagined that there would simply be no ruling on this vital issue. Indeed, there is no point in going to trial at all if Plaintiffs are going to lose on this issue.

Accordingly, Plaintiffs again respectfully ask the Court to decide this validly raised issue, or alternatively, to permit Plaintiffs to raise it immediately with Judge Kaplan. There is simply no reason to delay its adjudication until trial.

## CONCLUSION

The Court should revise its decision on summary judgment to enter judgment in Plaintiffs' favor on the issues of Lester's breach of fiduciary

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@brook-law.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: September 18, 2020