UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN AND AUDREY HAYS,

PLAINTIFFS,

V.

ESTATE OF LESTER EBER, ALEXBAY, LLC F/K/A LESTER EBER, L ESTATE OF ELLIOTT W. GUMAER, JR. AND WENDY EBER,

DEFENDANTS,

AND

EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER-CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP., EBER-METRO, LLC, SLOCUM & SONS OF MAINE, INC., AND CANANDAIGUA NATIONAL BANK & TRUST COMPANY,

NOMINAL DEFENDANTS.

CIVIL ACTION NO.
16-CV-9517(LAK/KHP)

---

**MEMORANDUM OF LAW IN SUPPORT OF THE ESTATE OF LESTER EBER AND ALEXBAY, LLC'S MOTION FOR RECONSIDERATION**

---

UNDERBERG & KESSLER LLP
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
(585) 258-2882

Paul F. Keneally, Esq.,
Colin D. Ramsey, Esq.,
Jillian K. Farrar, Esq.,
Of Counsel

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the Estate of Lester Eber's ("the Estate") motion for reconsideration of so much of the Court's August 10, 2020 Opinion and Order that held that the fact that the trustees' could secure loans against the collateral held in the Trust did not automatically grant a trustee who made a securitized loan the right to foreclose on that collateral for him or herself. As set forth below, it is respectfully submitted that the Court misconstrued or failed to account for the authority cited in defendants' motion on this point, and it should have concluded that the authority to do so, was, in fact, implied as a matter of law.

Alternatively, to the extent that the Court continues to disagree that authority was implied as a matter of law, a question of fact still exists for the jury. Allen Eber's Will ("the Will") gave the express authority to the trustees to make loans secured by collateral held in the Trust. See Exhibit A to November 8, 2019 Affidavit of Lester Eber ("Eber Affidavit"). Critically, this changes the standard of duty from the "no further inquiry rule," to an analysis of whether Lester Eber acted in good faith – which would be a question for the jury.

## FACTS

### I. STANDARD FOR RECONSIDERATION

Admittedly, reconsideration of a previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). Generally, motions for reconsideration are not granted "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* Rule 6.3, Local Civil Rules, S.D.N.Y.

Here, as set forth below, the defendants cited a litany of authority in support of the position that the express grant of authority to trustees to make secured loans, necessarily implied a power and right to collect on those loans.

## II. THE AUTHORITY TO MAKE SECURED LOANS NECESSARILY ALLOWED RETENTION OF THE COLLATERAL IN THE EVENT OF NON-PAYMENT

As recognized by the Court in its Opinion and Order, a trustee's duty of undivided loyalty may be reduced by a settlor by appropriate language in the trust instrument. See Renz v. Beeman, 589 F. 2d 735, 744 (2d Cir. 1978) ("It is true that even a trustee's duty of "utmost loyalty" can be reduced by means of language in the trust instrument permitting certain transactions involving self-interest").

Again, it is undisputed that the Will gave the express authority to the trustees to make loans secured by collateral held in the Trust. Having seen fit to give this power, it is patently inconsistent and against the settlor's intent, to conclude that a trustee, i.e., Lester Eber, was then forbidden from foreclosing on the collateral in the event of non-payment. The Court failed to recognize that the language in the Will reduces the standard of duty from a "no further inquiry rule" standard to one of good faith, and permits a court to weigh the merits of the transaction. This does not automatically allow the trustee to proceed carte blanche with the self-interested transaction, but it does lower the standard. (Id. at 744 "Such an exculpatory clause or agreement [reduces] the standard of duty to one of good faith and permits a court to weigh the merits of the transaction").

It is respectfully suggested that at the very least there is a question of fact as to whether

Lester Eber acted in good faith. Notably, plaintiffs acknowledge that Lester Eber's actions complied with the requirements of the UCC – which includes a requirement of good faith. (NY UCC 1-304)).

Similarly, the Court correctly observed that the authority granted by the Will does not automatically permit Lester Eber the right to foreclose on the collateral for himself. However, it failed to acknowledge that the rule of undivided loyalty due from a trustee may be relaxed by a settlor by appropriate language in the trust instrument in which he either expressly or by necessary implication, recognizes that the trustee may have interests potentially in conflict with the trust.

Contrary to the Court observation at page 52 of the Opinion and Order, ample authority was cited in defendants' motion papers in support of the proposition that implied authority can be enough to reduce the trustee's duty to one of good faith. See O'Hayer v. de St. Aubin, 30 A.D. 2d 419, 423 (2nd Dept.1968)[citing 2 Scott, Trusts [3d ed.], sec. 170.09]; Rosencrans v. Fry, 12 N.J. 88; Steele Estate, 377 Pa. 250; In re Estate of Balfe, 245 App. Div. 22; Heyman v. Heyman, 33 N.Y.S.2d 235; Restatement (Second) of Trusts, 170(I) cmt t (1959); In re Estate of McCredy, 470 A.2d 585, 600 (Pa. Super. Ct. 1983); and Estate of Dow, 156 N.Y.S. 2d 804, 806 (Sur. Ct. Chautauqua County 1955).

To that end, as the court noted in Donovan v. Bierwirth, 538 F. Supp. 463, 469 (E.D.N.Y. 1981):

> "… even at common law, trustees are allowed to trade in securities or other property of an entity with which they are affiliated as long as authorization is provided by the terms of the trust. Restatement (Second) of Trusts, sec. 170, comment n ("such a purchase is proper … if expressly or impliedly authorized by the terms of the trust")"[ Restatement (Second) of Trusts, sec. 170, comment n ("such a purchase is proper…if expressly or impliedly authorized by the terms of the trust"). Accord, Central Hanover Bank Trust Co. v. Russell, 290 N.Y. 593, 48 N.E. 2d 704 (1953) (mem.); 2 A.W. Scott, Law of Trusts, sec. 170.15 at 1340-41 (3d ed. 1967).

The Will contemplated that Lester Eber would be a trustee (and a beneficiary) of the Trust, and expressly allowed any of the trustees to make secured loans to the Eber companies. Lester Eber agreed to make loans to the Eber companies, and in explicit consideration therefor, the Eber companies agreed to pay the loans back and to secure the loans with the stock of Metro as collateral.

If Lester Eber had no authority to seek repayment of the loans, or to retain the collateral in satisfaction in the event the borrower could not pay in the ordinary course, the grant of the security interest in the collateral to secure repayment would have been meaningless – a result against the most basic rules of contract construction. (See O'Hayer, 30 A.D. at 424 "… otherwise the trust provisions viewed in their totality become meaningless"...). Obviously, that was the whole purpose of the security interest was in the first place. Surely, Plaintiffs are not arguing that if the borrower had repaid the loans from cash on hand, Lester Eber would not have been authorized to accept it?

A fair reading of the Will shows that Allen Eber's intent was to allow Lester Eber – or any trustee – to be repaid for his loans in the ordinary course, or to retain the collateral in satisfaction if the borrower was in distress, could not repay the loans, and could not realistically sell the collateral at a public sale to a third party. See Restatement of Trusts, sec 170, cmt s; Boston Safe Deposit Trust Co. v. Lewis, 317 Mass. 137, 141 (Mass. 1944) ("A trustee has all the powers expressly granted to him and such powers as are necessarily implied for the due and faithful execution of the trust; and where the method selected by a testator for the accomplishment of the purpose and object of the trust cannot be adopted by a trustee without dealing with himself individually, it may be fairly assumed that such dealing was contemplated by the testator").

At best, Lester Eber's authority under the Will to collect his loans pursuant to the terms of the 2010 Security Agreement and Guaranty was express. At worst, it was clearly implied. If the issue is whether he acted in good faith in doing so, that is a question of fact for trial.

For example, in Dabney v. Chase Nat. Bank of City of New York, 196 F.2d 668, 670 (2d Cir 1952) [cited by Defendants at p.9 of their December 23, 2019 Memorandum of Law], a bank was an indenture trustee for bondholders of a distressed company. At the same time, the bank was also a commercial lender to the distressed company. The Court concluded that a bond indenture provision, under which the bank was acting as indenture trustee, authorizing the bank to also make commercial loans to the company (but no more), "did indeed imply a power to collect the loan".

In Matter of Hammer, relied on in O'Hayer, a bank served as both an executor of an estate owning a family company and lender under a line of credit guaranteed by the estate. The Court held the loan was collectible by the bank even though the bank had a conflict of interest as trustee and creditor of the estate.

Similarly, Hammer was cited with favor in In Re Hanes, 214 B.R. 786 (Banktcy Ct, E.D. Va. 1997) (applying New York law). In Hanes, trustees of a marital trust pledged trust assets to secure certain loans. The trust instrument's express authority was very similar to the express provisions of the Allen Eber Will ("… authorizes the … trustees… to …(7) borrow money from anyone (including any individual or corporation serving in a fiduciary capacity hereunder) and to secure the repayment thereof by … pledge of any property ….."), but said nothing expressly about authorizing the enforcement of such pledges. The Court found that "… it appears that the rule in New York, at the very least, is contrary to the Estate's position [that the pledges of trust assets were not authorized by necessary implication and therefore not enforceable], citing Hammer ("settlor's guarantee on a line of credit to a third party held collectible from the trust").

Conversely, the cases relied on by the Court in its Opinion and Order, namely O'Hayer, Benedict, Renz and Flaum, are distinguishable from the facts of this case. In each of those cases, the fiduciary argued unsuccessfully that a reduced standard of good faith should apply rather than the higher standard of the no further inquiry rule.

In O'Hayer, certain of the actions of the trustee of a family trust were alleged to be conflicts of interest. The trust had general, but very broad powers granted to the trustee ("my son … shall benefit and profit from our trusteeships … to as great an extent as we would lawfully be entitled to benefit and profit if said stock were owned by us absolutely and free from all trust"). The Court found that an alleged diversion of a corporate opportunity to the son could not be implied from such general powers. There was no express grant of authority to deal with, much less divert, a corporate opportunity in the trust agreement at all.

In Benedict v. Amaducci, No. 92 CIV. 5239 (KMW), 1993 WL 87937 (S.D.N.Y. Mar. 22,1993), trustees of a family trust made a loan to the settlor of the trust. The Court enjoined the loan, finding a conflict of interest by the trustees and "no explicit language required under New York law to permit the Trustee defendants to loan trust money notwithstanding their personal interest." In fact, there was no authority at all in the trust to loan trust money. The trustees tried to rely solely on broad discretionary powers in the trust "to invest ... in property of any character", powers that made no mention at all of the possibility that any such investment might involve a conflict of interest.

In Renz supra, trustees of a family trust bought, with their personal funds, a significant interest in a company partially owned by the trust. The Court found the purchase of the stock position was a breach of their duty of loyalty to the trust. There was no explicit authority at all in the trust agreement to make such a purchase. Again, the trustees tried to rely solely on provisions

in the trust agreement relating to the management of the trust corpus that gave the trustees broad discretion to exercise powers and rights incident to the ownership of the trust property, none of which were explicit enough to make the trustee's action subject to a reduced good faith test.

Finally, in Flaum v. Birnbaum, 120 A.D. 2d 183,196 (N.Y. App. Div. 1986), an estate executor engaged in a self-dealing purchase of real estate from the estate. The Court set the purchase aside based on a breach of duty of loyalty. The executor tried to rely solely on general language in the will authorizing the executor to exercise broad discretionary powers in estate matters. The court found the broad powers not explicit enough to make the executor's action subject to a reduced good faith test.

In each of the above cases, the "strict construction" analysis of the fiduciary's powers in a will or trust meant strict construction of a broad general powers clause that was solely relied on by the fiduciary. None of those cases can be analogized to the express authority granted to Lester under Article TWELFTH, Clause H of the Will. Defendants do not rely on broad discretionary powers in the Allen Eber Will. Rather, secured loans from any of the three trustees were expressly permitted by the Will.

The issue is whether the express power to make a secured loan authorized the collection of the loan by enforcing the security interest. Lester Eber had the express power, granted to him by the Will, to favor his own interests over those of the Trust, so long as he did so in good faith.

When the loans were originally conceived, Lester had no intention of favoring himself over the other beneficiaries. He offered them the chance to participate pro rata in the loans, but they turned him down. See Exhibit J to Eber Affidavit. Ironically, had they elected to participate, their two-thirds interest would have given them the right to control the enforcement of the 2010 Security Agreement and Guaranty.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Court grant the Estate's motion for reconsideration.

DATED: October 8, 2020
Rochester, New York

UNDERBERG & KESSLER LLP

By: */s/ Colin D. Ramsey, Esq.*

Paul F. Keneally, Esq., Of Counsel
Colin D. Ramsey, Esq., Of Counsel
Jillian K. Farrar, Esq., Of Counsel
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
(585) 258.2800