UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>            Plaintiffs,<br><br>     v.<br><br>ESTATE OF LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; ESTATE OF ELLIOTT W. GUMAER, JR.; and WENDY EBER,<br><br>            Defendants,<br><br>     and<br><br>EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; EBER-RHODE ISLAND, LLC; EBER BROS. ACQUISITION CORP.; EBER-METRO, LLC; SLOCUM & SONS OF MAINE, INC.; and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,<br><br>            Nominal Defendants. | Civil Action No.  16-CV-9517(LAK)(KHP) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL RECONSIDERATION**

                                                                          Brian C. Brook (BB 1980)
                                                                          BROOK & ASSOCIATES, PLLC
                                                                          100 Church Street, 8th Floor
                                                                          New York, New York 10007
                                                                          Telephone: (212) 257-2334
                                                                          Brian@brook-law.com
                                                                          *Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein,
                                                                          and Audrey Hays*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 1

I.    The Eber Defendants Falsely Claim to Have Raised the Beneficiary Consent Defense, When They Affirmatively Waived It ....................................................................................... 1

    A.    The Answer's Conclusory, Boilerplate Affirmative Defense of "Waiver" Did Not Provide Any Notice of a Defense of Beneficiary Consent ................................................. 1

    B.    Defendants' Statement of Material Facts Merely Referred to the Loan ............................ 3

    C.    Plaintiffs' Summary Judgment Opposition Explicitly Noted the Absence of Beneficiary Consent, and the Ebers' Reply Explicitly Waived the Defense .......................................... 4

II.    On Substance, The Eber Defendants Rely on Conflating the 2010 Loan with the 2012 Metro Transfer ........................................................................................................................... 5

III.    The Court Should Rule on Plaintiffs' Interests in Eber Bros ................................................. 7

CONCLUSION .................................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Birnbaum v. Birnbaum*, 117 A.D.2d 409, 503 N.Y.S.2d 451 (App. Div. 4th Dept 1986).............. 7

*Charney v. Zimbalist*, No. 07 CIV. 6272 AKH GWG, 2014 WL 963734
    (S.D.N.Y. Mar. 12, 2014) ................................................................................................ 3

*Coach, Inc. v. Kmart Corps.,* 756 F.Supp.2d 421 (S.D.N.Y.2010) ................................................ 2

*Price v. Fox Entm't Grp., Inc.*, No. 05 CIV.5259 SAS, 2007 WL 241387
    (S.D.N.Y. Jan. 26, 2007)................................................................................................. 2

*Voest–Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680 (2d Cir.1983) ................ 2

## PRELIMINARY STATEMENT

This Court's summary judgment decision correctly recognized that the Will's authorization for trustees to engage in self-dealing when making a secured loan to the Allen Eber Trust did not authorize more self-dealing when foreclosing on the loan, particularly not when the foreclosure results in literally taking ownership of Trust assets without any valuation or bidding, and without even disclosure, either to the Trust beneficiaries or the Surrogate's Court. In arguing for the first time in this four-year-old case that the Trust beneficiaries consented to the 2012 Metro Transfer, the Eber Defendants completely disregard that important distinction.

## ARGUMENT

### I. THE EBER DEFENDANTS FALSELY CLAIM TO HAVE RAISED THE BENEFICIARY CONSENT DEFENSE, WHEN THEY AFFIRMATIVELY WAIVED IT

Attempting to find safe haven in procedure, the Eber Defendants contend that they raised the defense of beneficiary consent, *even though* it never appeared in any of their briefs, and *even though* they affirmatively argued the opposite: that the beneficiaries never even knew about the Metro Transfer before it happened. Defendants resort to pejorative adjectives and sleight of hand. *See* Eber Opp'n Br. 3 ("Plaintiffs' disingenuous argument that reconsideration is required because Defendants did not argue beneficiary consent is false and contrary Defendants' pleadings."). To call Defendants' argument a stretch would be an understatement. None of their pleadings ever raised the defense. Quite the opposite, they went out of their way to affirmatively waive the defense: "Lester Eber does not argue that he sought, received or needed Plaintiffs' consent to the 2012 Foreclosure…" Eber MSJ Reply 10 (contending there was no "duty to inform the Trust beneficiaries"). If that is not a waiver of a defense, it is hard to know what is.

#### A. The Answer's Conclusory, Boilerplate Affirmative Defense of "Waiver" Did Not Provide Any Notice of a Defense of Beneficiary Consent

First, they cite to their Answer's Third Affirmative Defense: "The causes of action in Plaintiffs' Third Amended Complaint are barred by the doctrines of waiver, laches and/or

1

estoppel." Eber Amend. Answer ¶ 16. This boilerplate language covers a lot of bases in conclusory fashion, and yet "consent" is not covered by it.

They offer literally no argument to support their contention that the defense of "waiver" is somehow synonymous with "consent." Instead, they just juxtapose the terms with a slash between them and expect this Court not to question it. Eber Opp'n Br. 6 ("Again, Defendants raised the defense of waiver/consent by Plaintiffs in their Answer…") (emphasis added). Of course, in the very same affirmative defense, they use a slash in "and/or," and those words are certainly not synonyms. So, inserting a slash hardly makes a convincing argument.

Affirmative defenses, like complaints, are subject to the requirements of notice pleading. *Coach, Inc. v. Kmart Corps.,* 756 F.Supp.2d 421, 425 (S.D.N.Y.2010) (holding that affirmative defenses that are merely "conclusory assertions, absent any supporting factual allegations[,] are insufficient as a matter of law and fail to provide a plaintiff with any notice as to how the defense applies to the plaintiffs' claims"). Here, the Ebers' boilerplate language, lumping together general concepts of waiver, laches "and/or" estoppel, did absolutely nothing to put Plaintiffs on notice that they might present a defense of beneficiary consent to the Metro Transfer. Without notice that they would ever argue beneficiary consent, Plaintiffs had no reason to argue against that non-existent defense at summary judgment.

The affirmative defense of "waiver" is distinct from consent. "To establish waiver, defendants must show that plaintiffs relinquished a right with both knowledge of the existence of the right and an intent to relinquish it. A waiver may arise by express agreement or by such conduct or failure to act as to evince an intent not to claim the purported advantage." *Price v. Fox Entm't Grp., Inc.*, No. 05 CIV.5259 SAS, 2007 WL 241387, at *4 (S.D.N.Y. Jan. 26, 2007) (internal quotation marks and footnote citations omitted); *see also Voest–Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 685 (2d Cir.1983) ("To establish waiver under New York law[,] one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it.").

2

Here, the beneficiaries had a right to invalidate any self-dealing transaction if Lester failed to obtain their consent to it (the "no-further-inquiry rule"). There is no argument or evidence to suggest that Lester (or anyone else) informed the beneficiaries of their right to object to Lester's self-dealing and set aside the transaction, much less that the beneficiaries then intentionally waived that right. Thus, the defense of waiver is an *alternative* to consent that could only apply if there was never any consent received before the transaction. By asserting the affirmative defense of waiver, if anything, the Ebers acknowledged that the Metro Transfer was conducted in total secret, without advance disclosure to, let alone consent from, the beneficiaries.

## B. Defendants' Statement of Material Facts Merely Referred to the Loan

Relying on waiver to cover up their failure to plead or otherwise suggest a defense of beneficiary consent is particularly ironic given that "[o]rdinarily, the failure to raise an affirmative defense in an answer results in waiver of the defense." *Charney v. Zimbalist*, No. 07 CIV. 6272 AKH GWG, 2014 WL 963734, at *5 (S.D.N.Y. Mar. 12, 2014). An exception applies if the defendant raises the affirmative defense in a summary judgment motion, so long as there is no prejudice to the plaintiff. *Id*.

Here, the Ebers admit that they never raised this issue in their summary judgment papers. *See* Eber Opp'n Br. 3 ("The decision by Defendants' [sic] not to move for summary judgment on an issue does not constitute the waiver of a defense to Plaintiffs' action."). But they seem to believe Plaintiffs had to anticipatorily assert the defense for them, when the Eber Defendants could not even bother to mention it in either their Answer or their motion papers.

Nonetheless, the Ebers seem to suggest that certain paragraphs in their Statement of Undisputed Material Facts somehow put Plaintiffs on notice that they wanted to preserve a defense of beneficiary consent to the Metro Transfer. *See id.* (citing ECF No. 262-34 ¶¶ 30-32, 43). However, these paragraphs do no such thing. The first three cited paragraphs merely assert that Lester disclosed the *loans* to the beneficiaries in some letters that he sent in 2010.

3

Tellingly, Plaintiffs did read these allegations, and we certainly did not come away with any notice that they were arguing beneficiary consent. Quite the opposite, Plaintiffs' Counterstatement of Material Facts expressly noted the apparent irrelevance of these letters. After disputing the authenticity of certain handwritten letters, Plaintiffs said:

> Because ***Defendants do not assert that that the contents of these letters have any significance***, Plaintiffs reserve their remaining arguments for trial in the event that Lester attempts to rely on these handwritten documents.

Pls. CSMF, ECF No. 278, ¶ 30 (emphasis added). In Reply, the Ebers did not disagree that these letters' contents had no legal significance.

Even more inapposite, paragraph 43 just says that in 2012, the Monroe County Supreme "Court entered an Order Granting the Article 9 relief." Nothing in that paragraph even references the beneficiaries, let alone suggests the defense of beneficiary consent.

### C. Plaintiffs' Summary Judgment Opposition Explicitly Noted the Absence of Beneficiary Consent, and the Ebers' Reply Explicitly Waived the Defense

If the Court concludes that Plaintiffs need to point to something more in *their* motion papers showing that the issue at the heart of this reconsideration motion was raised, then the Court need only look to the argument that the Will did not authorize the Metro Transfer. *See* Pls. MSJ Opp'n Br. 12 ("For purposes of trustee liability, Lester breached his duty simply by seeking to acquire Eber Metro without the beneficiaries' consent, regardless of how the 'consent' process occurred."). We made the point that there was no consent. And what did the Ebers say in response?

In reply, the Ebers *twice* referred back to the absence of beneficiaries giving informed consent, and in both instances, they simply doubled down on their argument that the absence of consent was immaterial because, they claimed, the Will authorized it. *See* Eber MSJ Reply 9 ("The rule of undivided loyalty may also be relaxed if the beneficiaries give an informed consent to the transaction or a court authorizes it, but neither of these procedures is required if the trust instrument otherwise authorizes the transaction."). The second reference is even clearer:

4

> In this case, **Lester Eber does not argue that he sought, received or needed Plaintiffs' consent to the 2012 Foreclosure** as the Will provision allowing secured loans is sufficient.

*Id.* at 10 (emphasis added). Given that explicit disclaimer that they are not arguing consent, the only thing "disingenuous" is the Eber Defendants' argument that they asserted this defense. Such dishonesty can and should be sanctioned by this Court for wasting Plaintiffs' and this Court's time with their utterly frivolous attempt to claim a meritless defense that they already waived.

\* \* \*

In sum, the Ebers included some boilerplate affirmative defenses in their Answer, but "consent" of any kind was not one of them, and certainly not beneficiary consent to the Metro Transfer. And in the Ebers' summary judgment papers, there is no assertion that Lester ever disclosed the *foreclosure* proceeding or the Metro Transfer, or anything else that would provide legally adequate notice that the Eber Defendants were asserting, preserving, or even contemplating a defense of beneficiary consent. They argued the opposite of consent: that the beneficiaries did not even have to know about the transaction. Instead, they went "all in" arguing that the Will implicitly authorized the Metro Transfer because it had authorized the secured loans that preceded it. Thus, the record shows the beneficiary consent defense was raised by the Court *sua sponte*, despite the Ebers' decision not to argue it; Plaintiffs should be afforded at least one opportunity to address the issue before being required to go to trial on it.

II. ON SUBSTANCE, THE EBER DEFENDANTS RELY ON CONFLATING THE 2010 LOAN WITH THE 2012 METRO TRANSFER

Just as they did in their summary judgment papers arguing that the Metro Transfer was authorized by the Will, the Eber Defendants conflate a secured loan (which was both authorized by the Will and disclosed to the beneficiaries) with Lester's taking personal ownership of the family business (which was neither). *See* Eber Opp'n Br. 5 ("whether Audrey Hays and Sally Kleeberg sufficiently **consented to the overall loan transactions**….") *id.* at 6 ("Genuine issues of material fact exist as to whether Plaintiffs (or their predecessors in interest) **consented to the loan transactions**….") (emphasis added).

5

As our opening brief for this motion explained, consenting to the loan transactions (even if it could be inferred from non-participation, which is dubious at best) would not authorize Lester to take the family business for himself. *See* Pls. Br. 4 (quoting the Court's opinion). The Eber Defendants say nothing in response to this. That their newfound defense again relies on conflating the two distinct transactions is reason alone to reject the defense. Indeed, the same exact reasoning that this Court applied to the Will applies with equal if not greater force here.

Instead of really addressing the issues, Defendants' opposition goes through some of the case law cited in a confusing effort to distinguish the cases, even though none of it goes to the core issue. As to Judge Kaplan's prior decision in *International Equity*, the facts are different and the case was in a different posture, but Defendants cannot deny that his opinion accurately stated law: namely, the exceedingly high burden for establishing beneficiary consent.

Turning to *Renz*, Defendants claim that the situation here is distinguishable from a trustee purchasing Trust assets without offering the other beneficiaries the same opportunity because Lester "explicitly offered the other trust beneficiaries the opportunity to invest in Eber Metro to save the corporation, which they declined." Opp'n Br. 5. But just as in *Renz*, Lester never gave them the opportunity to buy Eber Metro's stock, which Lester took in exchange for his debt.[1] In other words, this supposed distinction relies on obfuscation of which transaction is at issue.

Finally, as to *Birnbaum*, Defendants twist the case into one about disclosure of loans, when really it is about showing just how difficult it is to establish beneficiary consent even when there is a written consent:

> One of the most stringent precepts in the law is that a fiduciary shall not engage in self-dealing and when he is so charged, his actions will be scrutinized most carefully. When a fiduciary engages in self-dealing, there is inevitably a conflict of interest: as fiduciary he is bound to secure the greatest advantage for the beneficiaries; yet to do so might work to his personal disadvantage. **Because of the conflict inherent in such transaction, it is voidable by the beneficiaries unless they have consented. Even then [if there is a consent], it is voidable if**

---

[1] As has already been briefed, there is nothing in the loan documents that indicates any possibility that the individuals loaning money might end up taking ownership of the business away from the Trust. That is an additional reason why consenting to the loans could not possibly result in consent to the Metro Transfer.

6

> the fiduciary fails to disclose material facts which he knew or should have known, if he used the influence of his position to induce the consent or if the transaction was not in all respects fair and reasonable (II Scott, Trusts § 170, at 1298 [3d ed 1967]).

*Birnbaum v. Birnbaum*, 117 A.D.2d 409, 416, 503 N.Y.S.2d 451 (App. Div. 4th Dept 1986) (emphasis added). The case is distinguishable, but not in a way that helps Defendants: In *Birnbaum*, the fiduciary obtained a signed "Release and Discharge" explicitly authorizing the transfer of specified estate assets to the executor:

> Saul presented Janice, Jay and Ilene with a "Release and Discharge" which recited that the estate owed Saul $365,382.09 representing money which Saul had loaned to decedent and, in partial reduction of that debt, ***authorized a transfer to Saul of the following assets***: a 19.643% interest in North Shore Mart (the interest held by Bernard prior to the Firman Group purchase); a 25% interest in the Olympic Bowl; a 25% interest in a partnership owning two industrial buildings in New Jersey; and decedent's interest in a partnership owning property in Pennsauken, New Jersey, and Huntington, Long Island. The document valued the 19% interest in North Shore Mart at $147,500.

*Id*. at 413–14 (emphasis added). Despite all that, the Court *still* found the asset transfer voidable due to inadequacy in the disclosure that accompanied the request for the beneficiaries' consent.

In striking contrast here, Lester never even disclosed that he was transferring any assets to himself. It is *that* transaction—the Metro Transfer in 2012—being challenged as violating the no-further-inquiry rule, and it is voidable because there was nothing even close to consent.

### III. THE COURT SHOULD RULE ON PLAINTIFFS' INTERESTS IN EBER BROS.

Defendants affirmatively contend that a ruling on Plaintiffs' ownership interests in Eber Bros. & Co., Inc. is "unnecessary" to the other counts in Plaintiffs' complaint. Opp'n Br. 6. This is a bizarrely ignorant argument for them to make given the legal standard, which they themselves presented to this Court. *See* Eber MSJ Br. 28 (citing authorities for the proposition that a declaratory judgment claim can only be dismissed as duplicative if the same issue will be resolved "of necessity" in other claims). Thus, if Defendants are right and this issue will not necessarily be resolved, then that means the Court erred by dismissing that part of Count VI.

After mistakenly making an argument in favor of granting reconsideration, Defendants turn to their more tried and true approach of misrepresenting what we said. They claim, "Plaintiffs admit they are making this request for the first time in their motion for reconsideration." Opp'n Br. 7. This is baloney, and they know it. When we said that we wanted "consideration" by this Court, that did not mean we were raising a new issue. Quite the opposite, it reflected our understandable confusion that there seemed to be no decision of the issue by the Court. For Defendants to try to twist our words into making it seem like we are presenting a novel issue that was not in our motion is almost as dishonest as their claim to have preserved a beneficiary consent defense. Plaintiffs requested a ruling on this issue as the lead issue in our motion (and that was after amending the complaint, of course, primarily to include this issue).

After making their confusing and dishonest attempts at fabricating a procedural bar, Defendants proceed contend that "there are a whole host of factual and legal issues related to the issue of who the rightful owner of these shares of stock is, that need to be resolved at trial." Opp'n Br. 7.[2] But then they do not say what those issues are, and do not even say that they are disputed. This conclusory assertion cannot be credited.

Instead of identifying any disputed issues of fact, Defendants wax nostalgic about their (rejected) arguments about CNB's transfer in October 2017 and Lester's attempt to exercise "call rights" in October 2018. *Id.* None of these facts are disputed, however. There is nothing to put before the trier of fact.

In sum, the Court should consider this issue, which was properly presented to the Court as the lead issue in Plaintiffs' motion for summary judgment and which the Court appeared to be ready to address based on its heavy discussion of the facts in its opinion. It is unclear why the Court did not proceed to decide the issue after setting it up. It does not matter whether it is in the context of Count VI because the issue is "unnecessary" as Defendants now claim, or in the

---

[2] By saying that underlying issues "need to be resolved at trial," it is unclear how they reconcile that with their first argument that the issue is "unnecessary." One would have hoped that we could find common ground and agree that the issue is necessary, even if we disagreed on when and how it should be resolved. Sadly, it seems that the Eber Defendants merely are looking for an excuse to prolong this litigation.

context of being a prerequisite to multiple other counts. The issue has been presented, does not turn on any disputed facts, and ought to be decided.

## CONCLUSION

The Court should revise its decision on summary judgment to enter judgment in Plaintiffs' favor on the issues of (a) Lester's unauthorized self-dealing through the Metro Transfer and (b) Plaintiffs' ownership interests in shares of EB&C that were ordered to be distributed to the Trust beneficiaries.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@brook-law.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: October 8, 2020