UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>    Plaintiffs,<br><br> v.<br><br>ESTATE OF LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; ESTATE OF ELLIOTT W. GUMAER, JR.; and WENDY EBER,<br><br>    Defendants,<br><br> and<br><br>EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; EBER-RHODE ISLAND, LLC; EBER BROS. ACQUISITION CORP.; EBER-METRO, LLC; SLOCUM & SONS OF MAINE, INC.; and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,<br><br>    Nominal Defendants. | Civil Action No. 16-CV-9517(LAK)(KHP) |

**MEMORANDUM IN OPPOSITION TO THE ESTATE OF LESTER EBER'S MOTION FOR PARTIAL RECONSIDERATION**

Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Brian@brook-law.com
*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.     The Testator Consent Issue Was Briefed *Ad Nauseam*, But the Eber Defendants Dodged the Strict Construction Sub-Issue, Even Though Plaintiffs Raised It Repeatedly .................. 1

II.    The Estate Identifies No Controlling Authority or Fact that This Court Overlooked or Misapprehended ................................................................................................................... 2

    A.    This Court's Use of the Term "Carte Blanche" Does Not Mean It Did Not Understand that It Was Rejecting the Lower "Good Faith" Standard .................................................... 2

    B.    This Court's Analysis Implicitly Recognized that an Implied Authorization Was Possible, But Correctly Rejected It Given the Available Alternative of a Public Auction ................ 3

    C.    The Estate's Belated Attempt to Distinguish Adverse Case Law Is Nonsensical ............. 5

    D.    A Power to Collect the Loan Is Not the Issue When Lester Acquired the Operating Business Held by the Trust ................................................................................................ 6

    E.    The Will Contains Other Evidence Rebutting the Estate's Excessively Broad Construction, as Has Already Been Briefed ...................................................................... 7

CONCLUSION ............................................................................................................................... 8

## PRELIMINARY STATEMENT

The Estate of Lester Eber's motion for reconsideration is a textbook example of an improper motion: It seeks merely to relitigate an issue that has been litigated and lost without identifying anything that the Court actually overlooked or misapprehended.

Lester Eber's acquisition of Eber Metro was illegal self-dealing by a trustee that violated his duty of undivided loyalty and is subject to the no-further-inquiry rule because it was neither authorized by the Allen Eber Will nor consented to by the beneficiaries. Having waived the beneficiary consent issue, their only defense was testator authorization. That is the real reason why the Estate seeks "reconsideration": Because the only other alternative is for them to accept defeat.

Refusing to accept the outcome on an issue that has been litigated and lost is pure desperation, not a legitimate basis to ask for reconsideration.

## ARGUMENT

After refusing even to acknowledge the case law requirement of "strict construction" during the summary judgment briefing, Defendants now suggest that this Court somehow misconstrued that case law. Even if their substantive arguments had merit (and they do not), the failure to address this sub-issue at all in any of their briefs means that they have no credible basis to ask this Court to reconsider anything. Simply put, Defendants had three chances to take a swing at arguing how their interpretation could be consistent with strict construction, and they just ignored it even as Plaintiffs argued it in each of their three briefs. Defendants struck out, and now they want another at bat. A motion for reconsideration is not a free shot at a do-over.

### I. THE TESTATOR CONSENT ISSUE WAS BRIEFED *AD NAUSEAM*, BUT THE EBER DEFENDANTS DODGED THE STRICT CONSTRUCTION SUB-ISSUE, EVEN THOUGH PLAINTIFFS RAISED IT REPEATEDLY

"The issue is whether the express power to make a secured loan authorized the collection of the loan by enforcing the security interest." Eber Recon. Br. 8. This issue was litigated, and

1

the Eber Defendants lost. The fact that they did not develop their arguments as much as they now wish they had (with the benefit of hindsight) is no grounds for reconsideration.

This testator authorization issue was addressed extensively in each of Plaintiffs' and the Eber Defendants' summary judgment briefs. Thus, this is quite unlike the beneficiary consent issue (raised in Plaintiffs' motion for reconsideration), which was not argued by the parties (other than in passing as an undisputed issue, including an express waiver in the Ebers' Reply).

Each of the Eber Defendants' three summary judgment briefs addressed their argument that the Will authorized Lester's taking of Eber Metro. *See* Eber MSJ Br. 16–20, Eber MSJ Opp'n 10–11. Eber MSJ Reply 7–10.

Each of Plaintiffs' briefs addressed this issue and each argued the law of strict constriction applied. *See* Pls. MSJ Br. 11–13; Pls. MSJ Opp'n 12–15; Pls. MSJ Reply 6–7.

Importantly, none of the Ebers' prior briefs even *acknowledged* that the law requires strict construction of any authorization that might permit self-dealing by a trustee. Plaintiffs' prior briefs repeatedly pointed out this very omission—and yet they made no effort to address the law until now. *See* Pls. MSJ Opp'n 12 ("Nowhere in the Ebers' brief do they acknowledge that any deviation from the rule against self-dealing must be strictly construed"); Pls. MSJ Reply 6 ("The Ebers simply ignore Plaintiffs' arguments, failing even to acknowledge that courts 'strictly construe' any provisions limiting trustee's general duties."). The time for them to finally address Plaintiffs' argument—and the bountiful case law supporting it—has long passed.

## II. A FAIR READING OF THE COURT'S SUCCINCT ANALYSIS SHOWS IT DID NOT OVERLOOK OR MISAPPREHEND ANYTHING

### A. This Court's Use of the Term "Carte Blanche" Does Not Mean It Did Not Understand that It Was Rejecting the Lower "Good Faith" Standard

The closest the Eber Estate's motion comes to articulating something that this Court overlooked or misapprehended is the following assertion: "The Court failed to recognize that the language in the Will reduces the standard of duty from a 'no further inquiry rule' standard to one of good faith, and permits a court to weight the merits of the transaction." Eber Recon. Br. 3. The

2

Estate proceeds to nitpick the precise wording that the Court used, apparently taking issue with the use of the term "carte blanche" to suggest—without any basis—that this Court did not understand that it was rejecting the lower good faith standard.

Simply put, this Court's use of language that carried a dramatic flair (completely appropriate in light of Lester's egregious conduct) does not mean that the Court misapprehended or overlooked anything. Hence, the procedural prerequisite for reconsideration does not exist.

To the extent this Court reconsiders whether the good faith standard applies nonetheless, it should consider the fact that the Allen Eber Will expressly lowered the standard of care to good faith in one and only circumstance: In the case of a decision to *retain* the business. *See* Pls. MSJ Reply 6 (citing Pls. Ex. 132 at 13). No similar reduction of duty was granted for decisions to dispose of the business. "That Allen Eber chose to abrogate the trustees' duties only as to decisions to retain the business means, by necessary implication, that he did not similarly intend to dispense with the duty of undivided loyalty when it came to decisions to dispose of it." *Id*.

### B. This Court's Analysis Implicitly Recognized that an Implied Authorization Was Possible, But Correctly Rejected It Given the Available Alternative of a Public Auction

The Eber Estate also asserts that the Court "failed to acknowledge that the rule of undivided loyalty due from a trustee may be relaxed by a settlor by appropriate language in the trust instrument in which he expressly or by necessary implication, recognizes that the trustee may have interests potentially in conflict with the trust." *Id.* at 4. [1] But this Court *did* acknowledge this principle, at least implicitly, even if it did not expressly acknowledge the possibility of an implicit authorization.

The Court's opinion clearly rejected the notion that the power to take possession of Trust assets was necessarily implied:

---

[1] In our summary judgment Reply, at 7 footnote 14, we noted: "Only if there was no other reasonably likely outcome besides further self-dealing could it be implied. *See Boston Safe Deposit & Trust Co. v. Lewis*, 317 Mass. 137, 141 (1944) ('[W]here the method selected by a [settlor] for the accomplishment of the purpose and object of the trust cannot be adopted by a trustee without dealing with himself individually, it may be fairly assumed that such dealing was contemplated by the [settlor]')." The Ebers have presented no case law suggesting that the standard for finding a power "necessarily implied" is not the same in New York and subject to strict construction.

3

> In this Court's view, the Trustees' ability to make loans secured by the collateral held in the Trust did not give them carte blanche to foreclose on the collateral without notice to the beneficiaries because the collateral could, for example, have been sold at a public auction.

MSJ Op. 53. The Court's noting that there was an available alternative—a "public auction," "for example"—was plainly a substantive rejection of the Ebers' argument that the power to take possession of the collateral was "necessarily permitted by the Will." Eber MSJ Opp'n 11.

Thus, while this Court's analysis did not belabor the point and might not have been as thorough as some of the cases that it cited in discussing the guiding principles, and while this Court only offered one example of the alternatives, there is no basis to conclude that this Court either overlooked or misapprehended any of the applicable law.

To be sure, this Court could have said more to dispense with the Ebers' strained argument, since it was wrong for so, so many reasons. This Court recognized that a public auction was just one "example" of the different options available to Lester as a secured creditor. Upon reconsideration, if granted, it could recognize more of the alternatives (e.g., Lester could have sued to collect or to compel liquidation). In fact, since he was also the CEO, he had even more options available to him that a typical secured creditor (e.g., he could have negotiated a private sale to a third party and then used the proceeds to pay himself back – all of which would have been subject to the standard of good faith so long as he was not selling assets to himself). To be clear, no one is arguing Lester had to take or should have taken such alternative steps; rather, the mere existence of alternative measures for collecting on the loan means that his taking title to the collateral was not necessarily implied.[2]

The idea that there was only one option available to Lester as a secured creditor is further undermined by the UCC itself. A "strict foreclosure" in which collateral is taken by the creditor in satisfaction of a loan is something that cannot be agreed to in the loan documents or at any

---

[2] There were many other advantages to being a secured creditor besides having the potential option of accepting collateral in satisfaction of the debt, short of even pursuing foreclosure remedies. These other benefits preclude the Estate's argument that Lester had no choice but to take Eber Metro for himself through a private transfer "negotiated" with his daughter behind closed doors (e.g., receiving priority over other, unsecured creditors in bankruptcy, negotiating amended terms for the loan, having a court-approved sale, obtaining beneficiary consent, etc.).

4

time before there has been a default on the loan. It can only be authorized by executing a "record authenticated <u>after</u> default" or after the creditor "sends to the debtor <u>after</u> default a proposal…." *See* UCC § 9-620(c) (emphasis added). This is really critical: Since the acceptance of collateral transaction can only be authorized <u>after</u> a default has occurred, even a loan document or security agreement cannot automatically or necessarily authorize a lender to take collateral for itself in lieu of pursuing more traditional collection or foreclosure remedies.

If even a loan document cannot authorize such a transaction until after a default has occurred, then it is legally impossible to construe the Will's decades-earlier authorization for trustees to make secured loans as "necessarily implying" a power to take ownership of Trust assets that were designated as the collateral.

**C. The Estate's Belated Attempt to Distinguish Adverse Case Law Is Nonsensical**

Rather than identify any case law that helps them, the Estate merely tries a different approach to distinguish the voluminous case law that goes against Defendants' position. This is no grounds for reconsideration, but if the Court does look at the substance of the argument, it quickly falls apart.

The Estate's belated attempt to distinguish the case law is to contend that strict construction only applies when there is a "<u>broad general powers clause</u>." Eber Recon. Br. 8 (emphasis in original). No case law supports this distinction, which is total nonsense.

It makes no sense that a more specific clause should be interpreted broadly, as the Estate now argues. If anything, the absence of any provision that includes broad general powers shows that the testator here intended to narrowly circumscribe the trustees' powers.

This Court should reject the Estate's post-decision request to disregard all of New York case law going against trustee self-dealing because it is inconvenient. As noted above, it is procedurally too late for them to start making these arguments now. But if this Court does consider the arguments, they plainly lack any merit whatsoever.

5

### D. A Power to Collect the Loan Is Not the Issue When Lester Acquired the Operating Business Held by the Trust

No one is arguing that Lester did not have the "power to collect the loan," Eber Recon. Br. 6; *see also id.* at 5 ("If Lester Eber had no authority to seek repayment of the loans…"). But that is *not* what Lester did. Instead of seeking repayment of the cash that he purportedly loaned (i.e. collection), he acquired Eber Metro. Nothing in the Will even arguably implies a power to any trustee to acquire the business.

That said, Judge Learned Hand recognized that the power to collect may be limited if a trustee's collection of the loan would injure the beneficiaries, depending on the circumstances. See *Dabney v. Chase Nat. Bank of City of New York*, 196 F.2d 668, 672 (2d Cir. 1952) (holding that if the trustee's power to collect on a loan conflicts with the trustee's duty to the beneficiaries, "the power to collect should have yielded to the duty of loyalty, for all powers are to be interpreted as conditional upon observance of that duty"). But since Lester did not seek to collect the loan, but instead used the loan balance as currency to purchase Trust assets, the power to collect is not the pertinent power.

If Lester had forced the sale of Eber Metro, then the precedent of *Dabney* may be more on point. And in that hypothetical world, there would likely be triable issue as to whether Lester overstepped when he undertook such actions in order to advance his own interests as a creditor. But, again, that is *not* what happened here.

Rather than engage in a legal process to collect on the loan, Lester used the loan as a pretense to acquire the Trust's business for his sole benefit, rather than having to continue to share the business with his extended family. He did it through transaction conducted behind closed doors, "negotiated" with his own daughter (and, conveniently, his sole heir). And he did it without so much as notice to the Trust beneficiaries or the Surrogate's Court.

### E. The Will Contains Other Evidence Rebutting the Estate's Excessively Broad Construction, as Has Already Been Briefed

In its analysis, this Court applied the rule of strict construction to find that the authorization to make secured loans did not give the trustees power to foreclose on the collateral. MSJ Op. 53. If the Court does reconsider this holding based on that provision, and if it were for some reason to disregard the rule of strict construction as the Estate implores it to do, this Court must still construe the provision. And as with construction of any legal document, this Court should examine the other parts of the Will to aid in ascertaining the testator's intent.

Plaintiffs have already briefed the Court on the provisions of the Will that evidence the testator's intent foreclosed any possibility that Lester Eber (or any trustee) might take ownership of the Trust's business assets for himself, cutting out his sisters and their children. *See* Pls. MSJ Br. 11–13; Pls. MSJ Reply 6–7. We respectfully incorporate those arguments by reference and ask that this Court consider them if it agrees to reconsider the testator intent issue.

\* \* \*

This Court did not overlook or misapprehend anything when it correctly held that Lester's acquisition of Eber Metro was not self-dealing that was contemplated or otherwise authorized by the Will.

To rest assured that it reached the correct conclusion, this Court need only consider the following hypothetical, which assumes that Lester undertook the *exact same transaction*, but in two separate steps instead of one debt-for-business swap:

1. First, Lester obtained repayment of the loan from Eber Metro, receiving cash.
2. Second, Lester purchased Eber Metro from EBWLC with cash.

This is substantively identical to what actually happened. If this happened in that manner, with the collection step separated, then there would have been no doubt that it was only the first step that was arguably authorized by the Will. The second step—purchasing a trust asset—was undisputedly not authorized by any provisions of the Will.[3]

---

[3] And if Lester really believed it was authorized self-dealing, he would not have felt the need to conceal the transaction from the beneficiaries.

7

Because this is, in substance, precisely what transpired here—albeit in a cashless exchange of debt for assets—it was unauthorized self-dealing subject to the no-further-inquiry rule.

## CONCLUSION

The Court should deny the Estate's motion for reconsideration. To the extent it is granted, this Court should reach the same result, as further supported by, *inter alia*, the portions of the Will that evince the testator's intent that Lester should never individually own the Trust's business assets.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@brook-law.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: October 22, 2020