UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN AND AUDREY HAYS,

PLAINTIFFS,

V.

ESTATE OF LESTER EBER, ALEXBAY, LLC F/K/A LESTER EBER, LLC,
ESTATE OF ELLIOTT W. GUMAER, JR. AND WENDY EBER,

DEFENDANTS,

AND

EBER BROS. & CO, INC., EBER BROS. WINE AND LIQUOR CORP.,
EBER BROS. WINE & LIQUOR METRO, INC., EBER- CONNECTICUT,
LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP.,
EBER-METRO, LLC, SLOCUM & SONS OF MAINE, INC., AND
CANANDAIGUA NATIONAL BANK & TRUST COMPANY,

NOMINAL DEFENDANTS.

CIVIL ACTION NO.
16-CV-9517(LAK/KHP)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE ESTATE OF
LESTER EBER AND ALEXBAY, LLC'S MOTION FOR RECONSIDERATION**

---

UNDERBERG & KESSLER LLP
*Attorneys for Eber Defendants*
300 Bausch & Lomb Place
Rochester, New York 14604
(585) 258-2882

Colin D. Ramsey, Esq.,
Paul F. Keneally, Esq.,
Jillian K. Farrar, Esq.,
 Of Counsel

1

**PRELIMINARY STATEMENT**

This reply memorandum of law is submitted in further support of the Estate of Lester

Eber's ("the Estate") motion for reconsideration of so much of the Court's August 10, 2020

Opinion and Order that held that the fact that the Trustees could secure loans against the collateral

held in the Trust did not automatically grant a Trustee who made a securitized loan the right to

foreclose on that collateral for himself.

Plaintiffs' opposition – for the first time – concedes that the Allen Eber Will ("the Will)

authorized Lester Eber to collect his loans made to the Eber companies ("the Loans"). The question

of whether he acted in "good faith" in doing so remains, and that is for a jury to determine.

Plaintiffs are incorrect that this issue was not addressed by the Defendants during summary

judgment briefing, and misconstrue how the cases cited by the Court in its August 10, 2020

Opinion and Order were distinguished.

> **I.     THE EXPRESS AUTHORITY IN THE WILL
> AUTHORIZING LESTER EBER TO MAKE SECURED
> LOANS TO THE EBER COMPANIES NECESSARILY
> IMPLIED THE ABILITY TO RETAIN THE COLLATERAL
> IN THE EVENT OF NON-PAYMENT SO LONG AS HE
> ACTED IN GOOD FAITH**

**A.  The Relaxed Fiduciary Standard was Addressed by Defendants**

Contrary to Plaintiffs' assertions, Defendants addressed this issue throughout its summary

judgment briefing, most notably in the December 23, 2019 Reply Memorandum of Law (ECF Doc.

288 at pp. 7-9).

To that end, New York law is clear that the rule of undivided loyalty due from a trustee

may be relaxed by the settlor by appropriate language in the trust instrument in which he, either

expressly or by necessary implication, recognizes that the trustee may have interests potentially in

conflict with the trust. Again, such language reduces the standard of duty from a "no further inquiry

rule" standard to one of good faith and permits a court to weigh the merits of the transaction. <u>Renz</u> <u>v. Beeman</u>, 589 F. 2d 735, 744 (2d Cir. 1978) ("It is true that even a trustee's duty of "utmost loyalty" can be reduced by means of language in the trust instrument permitting certain transactions involving self-interest"); <u>O'Hayer v. de St. Aubin</u>, 30 A.D. 2d 419, 423 (2d Dept.1968).

In its Opinion and Order, the Court correctly observed that the settlor's directions do not automatically grant Lester Eber the right to retain his collateral in satisfaction of his Loans. However, it failed to acknowledge that the express or implied authority granted to the trustees in the Allen Eber Will allowed Lester Eber to enter into the self-dealing transaction (the retention of his collateral to satisfy his Loans) so long as he acted in good faith.

The evidence favors the conclusion that Allen Eber's intent was to allow Lester Eber to be repaid for his Loans in the ordinary course. Or, to the extent that repayment in the ordinary course was not possible, to retain his collateral in satisfaction of the Loans if the borrower was in distress, could not repay the Loans, or could not realistically sell his collateral at a public sale to a third party. (<u>See</u> Eber Defendants' Memorandum of Law dated November 8, 2019 - ECF Doc. 262-35 at pp. 16-19; Eber Defendants' Memorandum of Law dated December 6, 2019 – ECF Doc. 277 at pp. 11-12.)  The Record is clear that in 2010-2012 Lester Eber could not raise any third-party capital or sell the Eber companies, so he had to be the lender of last resort to the companies. (<u>See</u> Affidavit of Lester Eber sworn to November 8, 2019 - ECF Doc. 262-1 at ¶¶ 27-30).

**B. Plaintiffs Misunderstand the Purpose of Distinguishing the Authority Cited in the Opinion and Order**

Defendants do not allege – as Plaintiffs contend – that strict construction is only appropriate when a fiduciary relies solely on a broad general powers clause in a trust instrument.  Rather, the

3

point was that those cases involved fiduciaries who relied solely on broad general powers clauses

– wholly unlike the express authority granted to Lester Eber in this case.

As noted in the motion for reconsideration, the cases relied upon by the Court [O'Hayer,

Renz, Benedict v. Amaducci, No. 92 CIV. 5239 (KMW), 1993 WL 87937 (S.D.N.Y.  Mar.

22,1993), and Flaum v. Birnbaum, 120 A.D. 2d 183,196 (N.Y. App. Div. 1986)], the "strict

construction" analysis of the fiduciary's powers in a will or trust dealt with strict construction of

a broad general powers clause that was solely relied on by the fiduciary. In those cases, there was

nothing comparable to the express and explicit authority granted to Lester under Article

TWELFTH, Clause H of the Will. Here, Defendants do not rely on a broad general powers clause

in the Will, as secured Loans from any of the three trustees were expressly permitted by the Will.

(See Affidavit of Lester Eber sworn to December 6, 2019 – ECF Doc. 277-1 at ¶11).

### C.  Plaintiffs Concede the Authority to Collect the Loans

Plaintiffs previously conceded the authority granted in the Will to Lester Eber or the Eber

companies to enter into the Loans in the first instance. Significantly, Plaintiffs now concede that

the Will gave Lester Eber the authority to collect his Loans from the Eber companies in 2012 ["No

one is arguing that Lester did not have the "power to collect the loan" (See Plaintiffs' Opposition

at p.6)].

Distilled to its essence, this is simply a case about Lester Eber making Loans to try and

save the Eber companies from going out of business, and his subsequent efforts to collect those

Loans when they became due in December 2011. The N.Y. UCC 9-620 retention of Lester Eber's

collateral in satisfaction of the Loans was an appropriate method – created by the New York State

legislature – to allow secured creditors to collect their debts.  It was also permitted by the agreed-

upon terms of the 2010 Security Agreement and Guaranty.  The only issue is whether Lester Eber

exercised good faith in collecting in the manner he did.  Notably, neither Plaintiffs in any of their briefing, nor the Court in its August 10, 2020 Opinion and Order, cite any case holding that where a trust settlor authorizes a trustee to make a secured loan to the trust, that grant of authority does not also include the authority to collect the loan. If that were not the clear and necessary implication of an express power to make a loan, no sensible trustee would ever make a loan to a trust.

Plaintiffs continue to try to characterize Lester Eber's collection of his Loans as a separate purchase of the Eber companies by Lester Eber, motivated by some sort of desire to freeze Plaintiffs out of their interest in the Trust. First, it must be stated that Plaintiffs have not established such a motive. Rather, the Record is clear that when the Loans were originally conceived, Lester Eber had no intention of favoring himself over the other beneficiaries. As exhaustively noted, Lester Eber gave Plaintiffs the opportunity to participate pro rata in the Loans, and concomitantly, provided all of the substantive loan documentation to Plaintiffs at the time the Loans were to be made.  However, they turned him down, so Lester Eber became the lender of last resort.  (See Affidavit of Lester Eber sworn to November 8, 2019 - ECF Doc. 262-1 at ¶¶ 31-36).

Plaintiffs continue to disregard the fact that in 2012, Lester Eber was faced with defending the Eber companies against multi-million dollar claims from the New York Teamsters Fund, the Eber Wine and Liquor Corp. Pension Plan, and Pension Benefit Guaranty Corporation.  The capital stock of Eber Metro and Eber Wine and Liquor was worthless. (See Expert Report of Frank Torchio at p. 12, attached as Exhibit F to the November 8, 2019 Affidavit of Wendy Eber).  There was nothing left of Plaintiffs' beneficial interest in the Eber companies for the trustees to protect.

In the Opinion and Order, the Court observed, and Plaintiffs have now seized upon, the theoretical possibility that there were other options available to Lester Eber to collect his Loans. Defendants do not dispute that, theoretically, there may have been other options.  However, the

5

Record is clear that any of these "alternatives" would not have resulted in repayment. Rather, Defendants' contention remains that the N.Y. UCC 9-620 retention of Lester Eber's collateral in satisfaction of his Loans was the only realistic path for repayment. Whether Lester Eber's actions to collect his Loans were in good faith is a fact question for trial.[1]

Plaintiffs concede the authority to collect the Loans was necessarily implied in the Will. The fact that each and every possible way in which a trustee might proceed to collect the Loans was not expressly spelled out in the Will does not alter or limit this authority.  Once the authority to collect is acknowledged, the manner in which it is collected must only satisfy a good faith test.

Plaintiffs cite no authority standing for the proposition that where a trustee makes a secured loan to a trust, his duty of loyalty forbids him from retaining his collateral consistent with N.Y. UCC 9-620 in satisfaction of such loans – where the authority to collect is necessarily implied – and the trustee has acted in good faith.

Finally, Plaintiffs posit that Lester could have just sued the Eber companies to collect the Loans. This is a self-defeating argument, as doing so would have been indistinguishable from what Lester Eber actually did. Had he sued for nonpayment, the Eber companies, which were then insolvent, could not repay the Loans. Lester Eber would have taken a default judgment, and eventually a judgment lien on the capital stock of Metro, and would have been right back where he was in June 2012.

---

[1] Plaintiffs have already acknowledged that Lester Eber's actions complied with the requirements of the NY UCC, which itself includes a requirement that he act in good faith

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Court grant the Estate's

motion for reconsideration.

DATED:    October 29, 2020
               Rochester, New York

                                     UNDERBERG & KESSLER LLP


                            By: */s/ Colin D. Ramsey* .
                                   Colin D. Ramsey, Esq., Of Counsel
                                   Paul F. Keneally, Esq., Of Counsel
                                   Jillian K. Farrar, Esq., Of Counsel
                                   *Attorneys for Eber Defendants*
                                   300 Bausch & Lomb Place
                                   Rochester, New York 14604
                                   (585) 258.2800