8/24/2020    Remedies Outside the Box: Enforcing Security Interests Under Article 9 of the Uniform Commercial Code

Case 1:16-cv-09517-LAK-KHP Document 341 Filed 01/20/21 Page 1 of 8

August 31, 2012

# Remedies Outside the Box: Enforcing Security Interests Under Article 9 of the Uniform Commercial Code

Share this:

 

The phone rings. It's your client, a secured lender, in a panic. His borrower just defaulted, and he can't find the remedies section in the security agreement. "How am I going to foreclose on collateral," he asks, "without any contractual remedies? What good does a naked security interest do me?" The client sends you the security agreement and you find that while there is a clear security interest and default, the agreement is silent on applicable remedies and timing of enforcement. How do you advise your client?

Thankfully, your client has hope. While it may be unusual to have a security agreement without express remedies, in this case, your client merely needs to think outside the box--or at least outside of the four corners of the agreement. Article 9, Part 6 of the Uniform Commercial Code (UCC), sets forth statutory remedies available to all secured lenders, whether or not they are expressly provided by agreement. These rights include the right to collect on collateral, the right to repossess collateral, the right to sell or dispose of collateral, and the right to retain the collateral in full or partial satisfaction of the debt with the borrower's consent. See UCC §§ 9-607, 9-609, 9-610, 9-620. This article provides a roadmap of these statutory rights and remedies, as well as the obligations and standards of care to which secured parties must adhere and the effects of secured party noncompliance with such standards.

## Article 9 Remedies--Overview

Article 9 remedies, including the remedies in Part 6, are available to any secured party after its borrower, or in Article 9 terms, "debtor," defaults under a security agreement (but the exercise of such remedies may be limited and subject to court approval if the debtor is in bankruptcy). What constitutes a "default" is not defined in Article 9; rather, such determination is left to the agreement of the parties pursuant to the applicable security agreement or loan agreement. Contractual defaults commonly include failure to pay or comply with covenants,

https://www.americanbar.org/groups/business_law/publications/blt/2012/08/03_cabral/    1/8

misrepresentations, judgments against the debtor, bankruptcy, and defaults under other agreements.

While Article 9 does not contain any explicit requirement that a default be material to afford a secured party the right to enforce against collateral, it does generally obligate a secured party to act in good faith when exercising such rights. For example, if a secured party pursues Article 9 remedies after a debtor delivers satisfactory financial statements one day late, such action could be an overreaction to a relatively minor breach. The secured party should thus assess materiality in terms of whether the applicable default puts the credit at risk. See, for example, *Banc of Am. Leasing & Capital, LLC v. Walker Aircraft, LLC*, 2009 U.S. Dist. LEXIS 94657 (D. Minn. 2009).

## Collection and Enforcement

*The Right to Collect: Provisions and Benefits*

UCC § 9-607 provides secured parties with the remedy of collection. This remedy applies to certain types of liquid assets, including accounts receivable, general intangibles, chattel paper, notes, deposit accounts, and other intangible assets that oblige an underlying obligor to make payment or render performance to the debtor. See UCC § 9-607(a). Section 9-607 allows the secured party to collect directly from the underlying obligor, but the secured party must account to the debtor for any surplus in the collection of the collateral. See UCC § 9-608. The right to collect is an attractive remedy for secured parties because it is often the fastest remedy available, allows the secured party to act without disrupting the debtor's business, and provides access to liquid assets.

The secured party may exercise the right to collect from underlying obligors at any time if its security agreement so provides. If the agreement does not address that right, the secured party may still collect directly from underlying obligors (or other persons obligated to make payment on that collateral) upon the debtor's default. See UCC § 9-607(a). For example, after default the secured party may collect on pledged accounts receivable or apply funds from a pledged deposit account in which a security interest has been appropriately perfected to reduce the outstanding secured obligations. Article 9 even allows a secured party to foreclose a pledged mortgage (if applicable state law permits it) or enforce payments under a pledged promissory note (provided, of course, that the underlying obligations are in default). UCC §§ 9-607(a); 9-607, Comment 6 and Comment 8.

*Specific Requirements and Duties: Commercial Reasonableness*

A secured party must act in a commercially reasonable manner when exercising its direct collection rights. UCC § 9-607(c). This requirement includes notifying underlying obligors of impending collections. UCC § 9-607(a)(1). As a practical matter, in order to provide notice, the secured party must have access to the debtor's current records and accounting with respect to underlying receivables. The secured party may obtain access via judicial action if the debtor is uncooperative. The commercial reasonableness requirement is not waivable by agreement of the parties. UCC § 9-602(3).

*Defenses*

An underlying obligor on an account, chattel paper or payment intangible generally has an obligation to pay the secured party if the debtor or secured party properly notifies it that payment is required. UCC § 9-406(a). Such notice is sometimes referred to as a cutoff notice as it is viewed as cutting off payments to the debtor. If an underlying obligor has a valid defense to payment (such as prior exercise by the debtor of setoff rights against such underlying obligor), though, it need not pay so long as the defense arose before it received the cutoff notice from the debtor or secured party. UCC § 9-404(a)(2). Earlier collection notification by the secured party, then, is beneficial because it also cuts off defenses for the underlying obligor.

# Repossession

*The Remedy of Repossession*

The remedy of repossession is quite powerful, as the threat of repossession can incentivize a debtor to comply with the security agreement and repay its obligations. Repossession also assures the secured party that, if something goes awry, it can recoup some value on its investment by taking the collateral. Note, however, that repossession is only a temporary solution if used in isolation. The secured party cannot hold collateral indefinitely, and has duties with respect to the collateral it holds, including maintenance, reasonable disposition, and the duty to take reasonable care of collateral in its possession. See UCC §§ 9-601, 9-207. The debtor also has the right to redeem collateral held by the secured party in exchange for fulfillment of the secured obligations (in other words, repayment of the loans). UCC § 9-623.

*Basic Rules of Repossession*

After default, the secured party may take possession of collateral either with judicial process, or without judicial process if there is no breach of peace. UCC § 9-609(b). If repossession without judicial process does result in a breach of peace, the secured party may be liable for conversion or trespass. The UCC does not define a breach of peace, and a significant body of case law has developed in response. See UCC § 9-609, Comment 3. In assessing breaches of peace, courts balance the secured party's right to repossess collateral against possible danger to the public.

Lenders should be aware of several other key repossession issues. First, if the collateral is an object too large to move, such as a piece of equipment, the secured party may render the collateral unusable and dispose of it on the debtor's premises after default. UCC § 9-609(a)(2). Additionally, the secured party is responsible for its agent's actions and will face liability for any unreasonable repossession conducted on its behalf by an independent contractor. UCC § 9-609, Comment 3. Lenders should also be aware that using a law enforcement officer to accomplish repossession may result in a breach of peace if the officer's services were not obtained via judicial process. Finally, the secured party and the debtor cannot waive the breach of peace requirement or contractually define a breach of peace because the requirement protects the general public and others who are not in contractual privity. UCC §§ 9-602, 9-603(b).

## Disposition

*Disposition Generally*

Disposition is the secured party's primary Article 9 remedy. Disposition includes any sale, lease, license, or other disposition of collateral. UCC § 9-610(a).

*Secured Party's Duties before Disposing of Collateral*

The secured party may dispose of any or all collateral either in its existing condition or following commercially reasonable processing, subject to certain limitations. UCC § 9-610(a). Reasonable processing typically means any minimal preparation that could impact the sale price. For example, if a vehicle or piece of equipment would fetch a higher price if cleaned prior to sale, it could be unreasonable not to clean it. See, for example, *Liberty Nat'l Bank & Trust Co. of Okla. City v. Acme Tool Div. of Rucker Co.*, 540 F2d 1375 (10th Cir., 1976). If collateral is incomplete, though, it is sometimes unreasonable to expect the secured party to complete it prior to sale. See UCC § 9-610, Comment 4. For instance, the secured party may lack the requisite knowledge to complete an unfinished computer program, and so the secured party could sell the collateral in its then-

Cited in Kleeberg v. Eber 16CV9517 Decided 8/10/21
Archived on 8/25/2021
This document is protected by copyright.
Further reproduction is prohibited without permission.

present state. As with other Article 9 rights, such sale will be subject to a commercial reasonableness test. UCC § 9-610(b). Price is not necessarily a factor in this test, but the process, time, and place of the sale will be considered.

*Public versus Private Sale*

The secured party may dispose of property through a public or a private sale. UCC § 9-610(c). In a public sale or auction, a public notice is given and any purchaser may bid, subject in some cases to eligibility criteria established by the secured party. In a private sale, the secured party seeks out interested parties and agrees on sale terms without an auction. The decision whether to pursue a public or private sale must be made in a commercially reasonable manner. UCC § 9-610, Comment 2.

With the exception of certain types of collateral such as publicly traded securities, the secured party cannot purchase its own collateral in a private sale. UCC § 9-610(c)(2). The policy reason for this requirement is that collateral should be tested by the market to determine the best price. See UCC § 9-610, Comment 7. Therefore, the secured party may buy in a private sale collateral of a kind that is customarily sold on a recognized market or is the subject of widely distributed standard price quotations, because there is already an established market for such collateral. UCC § 9-610(c)(2). In a public sale, the secured party may buy any collateral on which it bids. UCC § 9-610(c)(1).

*Notification before Disposition of Collateral (§ 9-611)*

Prior to disposition, the secured party must send notification of its intent to dispose of collateral to the debtor (unless, after default, the debtor waives the right to notification), secondary obligors (such as guarantors), other secured parties or lienholders who have requested in advance to be notified, and any secured parties or lienholders of record. UCC § 9-611(c). The secured party must run UCC searches before disposition to identify such parties. The UCC provides a safe harbor here, presuming notification compliance if the secured party searches no later than 20 days or earlier than 30 days prior to the notification date and notifies the secured parties or lienholders of record at that time. UCC § 9-611(e)(1).

The secured party must also provide the notice of disposition within a reasonable time. In commercial transactions, a 10-day notice period is considered per se reasonable. UCC § 9-612(b). Any shorter time frame will be subject to a reasonableness test. In consumer transactions, there is

Cited in Weberg v. Eber 16 CV 9517 Decided 8/10/20
Archived on 8/15/20
This document is protected by copyright.
Further reproduction is prohibited without permission.

no safe harbor, and notice is always subject to a reasonableness test. UCC § 9-612(a). Parties often add safe harbor provisions to their security agreements, agreeing that a specified number of days' notice will be commercially reasonable. UCC § 9-603(a) supports the enforceability of such provisions, so long as the stated notice period is not manifestly unreasonable.

*Application of Proceeds to Disposition; Liability for Deficiency and Right to Surplus (§ 9-615)*

Section 9-615 sets forth the priority in which payments should be made from sale proceeds. The foreclosing secured party's expenses take first priority, followed by its secured obligations, and then the secured obligations of any junior secured parties who have provided a demand. If excess surplus exists after all expenses are paid and obligations are satisfied, the secured party must remit the remaining proceeds to the debtor. If the sale results in a net deficiency, the debtor is liable for that deficiency. If the foreclosing secured party is not the senior secured party, the foreclosure sale does not extinguish the senior secured party's lien and the purchaser at the disposition sale takes subject to that senior lien.

## Acceptance of Collateral

Under UCC § 9-620, a secured party may accept collateral in total satisfaction of the secured debt (or partial satisfaction for non-consumer agreements) if it complies with two requirements. The first requirement is acquiescence. In the case of partial satisfaction, the debtor must explicitly consent to the amount of partial satisfaction in an authenticated record created after default. UCC § 9-620(c)(1). In the case of full satisfaction, the debtor may consent either in an authenticated record or by deemed consent if it fails to respond to the secured party's notice of proposal to accept collateral within 20 days. UCC § 9-620(c)(2).

The second requirement to effect acceptance of collateral is to confirm that no parties entitled to notice thereof object to the acceptance of collateral. UCC § 9-620(a)(2). The parties entitled to notice are the debtor (who may waive the right to notice after default), a secondary obligor entitled to notice under UCC § 9-621(b), and other secured parties or lienholders that have filed lien records within 10 days prior to the debtor's consent. Each such party has 20 days to object before the partial satisfaction agreement becomes official. UCC § 9-620(d)(1). If the secured party searches lien records and simultaneously sends notice to the debtor so the 10-day filing period and the 20-day objection period run concurrently, the secured party can search again within 10 days of debtor consent to ensure that no new secured parties have filed. UCC § 9-621(a)(2). If new

Cited in Kleeberg v Eber 16Cv9517 Decided 8/10/20
Archived on 8/25/20
This document is protected by copyright.
Further reproductions prohibited without permission.

filings occur, those secured parties must be notified and given their 20 days to object to the partial satisfaction agreement.

If any person, whether entitled to notice of the proposal to accept collateral or otherwise, makes a timely objection to the secured party's proposal, such objection prevents the acceptance of collateral from taking effect. See UCC § 9-620, Comment 8. An objection from any person entitled to notice is timely if received by the secured party within 20 days of the date such person received the requisite notice, and an objection from any other person is timely if received before the debtor agrees to (or is deemed to agree to) the acceptance.

## Secured Party Noncompliance

While Article 9 is generous in supplying statutory remedies to secured parties, these gifts come with a price--the requirement that the secured party comply with the rules and standards set forth in Article 9. Failure to comply can have serious consequences for a secured party.

If the secured party fails to comply with Article 9's requirements, the debtor, secondary obligors, or other lienholders can attempt to enjoin the secured party from proceeding. UCC § 9-625(a). Additionally, if the secured party breaches Part 6 of Article 9 during a disposition, perhaps by acting in a commercially unreasonable manner or failing to give required notice, it may be liable to the debtor, secondary obligors, or other secured parties or lienholders for losses resulting from such noncompliance, and may be required to pay statutory damages. UCC §§ 9-625(b), 9-625(e). This liability exists alongside non-UCC remedies, such as trespass for breach of peace or conversion in the case of an unreasonable disposition.

Noncompliance can also impact a secured party's ability to charge debtors for any deficiency in the amount of the secured party's recovery and a secured party's obligation to pay over any surplus recovery to the debtor. In a commercial transaction where the amount of a deficiency or surplus is at issue, a secured party typically does not have to prove compliance with the Part 6 remedies of the UCC. UCC § 9-626(a)(1). If, however, a debtor questions the steps taken by the secured party, the secured party carries the burden of demonstrating compliance. UCC § 9-626(a)(2). For this reason, the secured party should keep detailed records when exercising remedies to provide evidence of commercial reasonableness and compliance with other statutory remedies if necessary.

Cited in Kleeberg v Eber 16Cv9517 Decided 8/10/20
Archived as of 8/12/20
This document protected by copyright.
Further reproductions prohibited without permission.

In the event of a dispute over a secured party's compliance with Article 9 in a non-consumer transaction, UCC § 9-626(a) sets forth specific rules for determining the amount of any deficiency judgment the secured party can collect from the debtor. Under these rules, a non-complying secured party may be prevented from recovering any deficiency at all or may have its deficiency amount reduced. For example, unless the secured party can prove the actual amount it would have recovered in a compliant sale, the secured party will not be entitled to a deficiency payment because the presumption under Article 9 is that the proceeds which would have been recovered in a compliant sale would have equaled the amount of the outstanding secured obligations. UCC § 9-626(a). Courts have more discretion to determine deficiency payments or surpluses in consumer transactions. UCC § 9-626(b). Courts can also assess additional statutory damages in consumer transactions under UCC § 9-625(c).

## Conclusion

Article 9 of the UCC provides a valuable set of tools to a secured party wishing to enforce its rights following a debtor default. These tools are helpful to secured parties even when security agreements are silent on remedies. Such statutory remedies provide comfort to a secured party that even if the contract is silent, the secured party nevertheless has certain rights available to it as a matter of law. All it has to do is think outside the box.

Cited in Ileeberg v Eber 16CV9517 Decided 8/10/20 Archived on 8/25/20 This document is protected by copyright. Further reproduction is prohibited without permission.

ABA American Bar Association | /content/aba-cms-dotorg/en/groups/business_law/publications/blt/2012/08/03_cabral