**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL KLEEBERG, et al., | |
| Plaintiffs, | |
| -against- | 16-CV-9517(LAK)(KHP) |
| LESTER EBER, et al., | |
| Defendants, | |
| and | **[PROPOSED] ORDER** |
| EBER BROS. & CO., INC., et al., | |
| Nominal Defendants. | |

**LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE**

After the entry of partial summary judgment in favor of Plaintiffs, and after due

consideration and trial, this Court grants judgment for Plaintiffs as follows:

**PART I – Matters Concerning Eber Bros. & Co., Inc. ("EB&C") and Eber Bros. Wine and Liquor**

**Corp. ("EBWLC")**

1.      By Order of the Monroe County Surrogate's Court dated June 1, 2017, the shares

of EB&C held in the names of the trustees of the Allen Eber Residuary Trust (the "Trust") were

to be distributed as follows to the remaindermen of the Trust:

- **Class A Voting:** 616.67 (or 616 and 2/3) shares each to the Estate of Lester Eber

    and Audrey Hays; 308.33 (or 308 and 1/3) shares each to Lisa Stein and Daniel

    Kleeberg.

- **Class B Nonvoting:** 96.67 (or 96 and 2/3) shares each to the Estate Lester Eber and Audrey Hays; 48.33 (or 48 and 1/3) shares each to Lisa Stein and Daniel Kleeberg.

- **6% Preferred Nonvoting:** 666.67 (or 666 and 2/3) shares each to the Estate Lester Eber and Audrey Hays; 333.33 (or 333 and 1/3) shares each to Lisa Stein and Daniel Kleeberg.

2.      This Court finds that the shares of EB&C belonging to the Trust should have been distributed to the remaindermen, Audrey Hays, Lester Eber, Lisa Stein, and Daniel Kleeberg, in accordance with the June 1, 2017 Surrogate's Court Order.

3.      Immediately upon receipt of this Order, all responsible parties, including without limitation Canandaigua National Bank & Trust ("CNB"), EB&C, and Wendy Eber as Secretary of EB&C, are directed to complete all necessary steps under the UCC Article 8 and any other applicable law to ensure that the shares of EB&C are registered on the books and records of EB&C in accordance with this Order and that new stock certificates are issued to the shareholders and delivered to the proper shareholders or their respective counsel of record.

4.      Although the probate of Lester Eber's Estate is pending resolution in the Surrogate Court, because the Estate holds only a minority interest in the Eber companies, the pending probate proceedings shall not permit the delay of any steps required by this Order.

5.      A telephonic meeting of the shareholders of EB&C shall occur within two (2) days of the date of this Order. If the parties cannot agree on a date and time within that period, then the date and time shall be set for the second day at 4:00 PM Eastern. Votes may be made by proxy, and counsel for the parties shall be permitted to attend but shall not participate or

obstruct the meeting. The shareholders entitled to vote at that meeting, and their respective voting power, shall be Audrey Hays (1/3), the Estate of Lester Eber (1/3), Lisa Stein (1/6), and Daniel Kleeberg (1/6). These voting rights and powers shall be recognized by EB&C even if, for whatever reason, some or all of the steps necessary to formally register the shareholders in accordance with this Order have not been completed before the meeting.

6.      A vote for the directors of EB&C shall occur during the shareholder meeting after no more than thirty minutes for discussion of nominees and debate. The votes shall be announced and counted verbally, and a plurality of votes being sufficient to elect directors.

7.      A meeting of the board of directors of EB&C shall occur immediately following the shareholder vote for the election of the directors. The board of directors meeting may also proceed by telephone and counsel for the parties shall be permitted to attend.

8.      At the board meeting for EB&C, a majority of the duly elected directors of EB&C shall appoint each of the officer(s) for EB&C, including first the selection of a Chairman of the Board to preside over the remaining appointments. Debate and discussion of any candidates shall be limited to no more than thirty minutes, in total, for all positions. At the minimum, there must be a President and Secretary appointed by the end of the meeting, although the responsibilities of President and Secretary may be vested in a single individual if the board so determines.

9.      The President of EB&C have the power to vote EB&C's voting common shares of EBWLC to elect at least two directors of EBWLC. The President of EB&C may elect the directors by execution of a unanimous written consent of all of the shareholders entitled to vote.

3

10.     Once elected, the directors of EBWLC may convene a meeting, or may act by unanimous written consent, to remove or appoint officers of EBWLC, including at the minimum person(s) empowered as President and Secretary, with such actions being effective immediately.

11.     The President of EBWLC shall have the power to vote EBWLC's shares in any subsidiary corporation, including Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro") and to thereby appoint directors for those corporations, who shall be permitted to remove or appoint officers with immediate effect.

12.     Upon appointment in accordance with this Order, the newly appointed President of Eber Metro shall have full power and authority over Eber Metro's membership units in Eber-Connecticut, LLC ("Eber-CT"), including the power to remove and appoint members of Eber-CT's Board of Managers in accordance with Section 5.1.1 of the Eber-CT Limited Liability Company Agreement.

13.     Any of the foregoing required meetings or votes may be adjourned or delayed only upon the unanimous, signed stipulation of the shareholders of EB&C or their counsel of record in this case designating another date and time, or by further order of this Court.

14.     Wendy Eber, who represents herself as the sole current officer and director of EB&C, EBWLC, and Eber Metro, shall not undertake any extrajudicial action to interfere with, delay, or obstruct any of the meetings or votes required by this Order. Subject to this limitation, Wendy Eber and her counsel of record are permitted to observe any of the foregoing meetings and to receive copies of any documents within 48 hours of signing.

15.     Lester's attempt to prevent Plaintiffs from receiving EB&C stock in accordance with the Monroe County Surrogate's June 1, 2017 Order is found to have been wrongful. Accordingly, the Estate must reimburse Plaintiffs for any amounts Plaintiffs have paid or shall in the future pay to CNB to reimburse it for legal expenses incurred in connection with this case or the Allen Eber Trust after October 29, 2018.

**PART II – Restoration of Ownership of and Assets Belonging to EBWLC and Eber Metro**

16.     The 2010 transfer of a 6% ownership interest in Eber-CT from Eber Metro to Polebridge Bowman is found to have been improper and shall be disregarded. Accordingly, Eber Metro owns 85% of the equity in Eber-CT. Any debts associated with the Polebridge Bowman transaction are also void and shall be disregarded.

17.     The 2012 transfer of Eber Metro to Alexbay, LLC is hereby set aside and rescinded. A constructive trust in favor of EBWLC is imposed for the time since then, including but not limited to all assets owned or received by Alexbay at any time since its formation.

18.     To effectuate the constructive trust, Eber Metro must again be the wholly owned subsidiary of EBWLC. All shares of Eber Metro stock that were transferred to Alexbay shall be reconveyed to EBWLC. Any purported transfer of Eber Metro stock by Alexbay is set aside and rescinded, including but not limited to the transfer of Eber Metro stock to Wendy Eber.

19.     All of the stock of Slocum and Sons of Maine, which was subject to a call option purchased and exercised by Eber Metro, shall be returned to Eber Metro within 7 days of this Order. The constructive trust encompasses this entity as well, so for purposes of the accountings and disgorgements directed herein, all Defendants' compensation from and transactions involving Slocum of Maine must be included.

20.     EBWLC's issuance of voting preferred shares to Lester Eber in or around February 2017 has been found to be an improper corporate transaction and a breach of fiduciary duty, and therefore the issuance must be set aside and the preferred shares are deemed null and void.  All voting and ownership interests in EBWLC belong to EB&C, which is majority owned by Plaintiffs. Upon being reconstituted in accordance with this Order, the Board of EB&C may determine by majority vote to retain or rescind the February 2017 amendments made to EBWLC's Certificate of Incorporation that created a new class of voting preferred shares.

21.     The Court further finds that the following temporary restraints are necessary and appropriate to preserve the rights and interests of Plaintiffs, EB&C, and EBWLC:

a.  Wendy Eber is enjoined from transferring, assigning, encumbering, or in any way disposing of any of the equity of any of the nominal defendants.

b.  Eber-CT is enjoined from making any distributions to its members.

c.  Eber-CT and Slocum of Maine are enjoined from making payments of any kind to any persons or companies that are owned or controlled (in whole or in part, directly or indirectly) by, or otherwise affiliated with, Lester or Wendy Eber or their spouses, children, siblings, or attorneys.

d.  Eber-CT is enjoined from entering into any new, renewal, modified, or extended employment contracts with officers or directors without the prior written consent of Plaintiffs.

e.  EB&C, EBWLC, Eber Metro, Eber-CT, and Slocum of Maine are enjoined from filing any petitions for protection under the bankruptcy laws, or otherwise seeking the appointment of a receiver or trustee.

f.  Alexbay, Wendy Eber, and their counsel are enjoined from taking any actions that would interfere with or delay any part of this Order taking effect, even though such actions might not be explicitly enjoined or prohibited. This provision shall not be interpreted as preventing Defendants from appealing to or seeking a stay of this Order from the U.S. Court of Appeals for the Second Circuit.

Unless otherwise ordered, these restraints shall continue until further order of this Court or a written agreement of the parties.

22.  Any transactions that occurred within the preceding eight (8) months that would have violated any of the foregoing restraints had this order been in effect at the time shall be disclosed to Plaintiffs' counsel within fourteen (14) days of the date of this Order. Plaintiffs shall have fourteen (14) days after receiving disclosure of any such transactions to identify to this Court any transactions that Plaintiffs contend should be voided and a succinct statement of the grounds for doing so. This shall not limit the Plaintiffs' opportunity to seek appropriate equitable relief or money damages as to such recent transactions disclosed pursuant to this Order, if additional parties are necessary to obtain full relief.

23.  Because this derivative action has resulted in a recovery for EBWLC and in light of the facts and circumstances of this case, this Court exercises its discretion to award Plaintiffs' their reasonable expenses, including attorney fees. The amounts shall be due and collectible

from each of the beneficiary corporations: EB&C, EBWLC, and Eber Metro. Plaintiffs' counsel

shall submit a fee application within 30 days of the date of this Order.

**PART III – The Faithless Servant Doctrine**

24.     Consistent with the constructive trust, Eber Metro and Eber-CT must be treated

as if they had been subsidiaries of EBWLC at all times. Therefore, the Court finds that

Defendants' duties of loyalty ran to EBWLC at all relevant times.

25.     The Court finds that Lester Eber's first disloyal act occurred when he negotiated

a personal consulting agreement with Southern Wine & Spirits to benefit himself at the expense

of EBWLC and its shareholders. Accordingly, the Estate is ordered to pay EBWLC an amount

equal to all compensation paid to Lester Eber by EBWLC or any of its subsidiaries after July 5,

2007.

26.     The Court finds that Wendy Eber's first disloyal act occurred when she obtained

a personal right to acquire the Eber-CT equity that was transferred to Polebridge Bowman to

benefit herself at the expense of Eber Metro and its shareholders, including EBWLC.

Accordingly, Wendy is ordered to pay EBWLC an amount equal to all compensation paid to her

by EBWLC or any of its subsidiaries after May 28, 2010.

27.     The Estate of Lester Eber and Wendy Eber shall provide the Court and Plaintiffs

with accountings of all financial and property transactions that they or any entity they

controlled had entered into with any Eber company, so as to ensure that the remedies of

constructive trust and disgorgement are fully effectuated.

SO ORDERED.

DATED:      New York, New York

              _____, 2021

                                        _____

                                        LEWIS A. KAPLAN

                                        United States District Judge