**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS, <br><br>                Plaintiffs, <br><br>     v. <br><br> LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; ESTATE OF ELLIOTT W. GUMAER, JR.; and WENDY EBER, <br><br>                Defendants, <br><br>     and <br><br> EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; EBER-RHODE ISLAND, LLC; EBER BROS. ACQUISITION CORP.; EBER-METRO, LLC; SLOCUM & SONS OF MAINE, INC.; and CANANDAIGUA NATIONAL BANK & TRUST COMPANY, <br><br>                Nominal Defendants. | Civil Action No.  16-CV-9517(LAK)(KHP) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE EBER DEFENDANTS TO SUPPLEMENT THEIR DISCOVERY RESPONSES**

Brian C. Brook (BB 1980)
Brook & Associates, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Brian@brook-law.com
*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

**PRELIMINARY STATEMENT**

Defendants have previously recognized that Plaintiffs' document requests are continuing, by producing, e.g., bylaws enacted earlier this year and Eber-CT's most recently audited financial statements. Neither of those documents, however, will increase the amount of disgorgement awarded, unlike the records of the compensation paid to Lester and Wendy since 2017. None of those records have been produced, despite the fact that they are responsive to several different discovery requests that were worded at least as broadly, if not more so, than the requests for bylaws and financial statements.

Most incredible is that Eber-CT's most recent financial statement indicates that Lester Eber had an employment contract with Eber-CT—something that Wendy Eber, President of Eber-CT, denied knowing about in her deposition. That contract supposedly enabled his estate to receive $675,000 in "deferred compensation" when he passed away last year. *See* Ex. 5 ¶ 10.

Undersigned counsel has conferred with defense counsel by telephone and by email, and defense counsel has refused to state whether they will produce the documents after several chances over the course of more than a week.

**Background to the Parties Discovery**

In providing discovery to Plaintiffs, defense counsel abdicated their responsibility to conduct a proper search for documents, and instead allowed Wendy Eber to unilaterally search for and produce all the documents. Among the problems, no record was kept of the search terms used. Several key documents were not originally produced by the Ebers at all. Instead, Plaintiffs only learned about the documents when others, such as the Estate of Gumaer, produced them.

During fact discovery, but after the first round of depositions, Judge Parker found that Defendants had wrongly withheld dozens of documents that were "clearly" not privileged:

> Over half of the bates-stamped pages submitted by the Eber Defendants for *in camera* review fall outside the scope of attorney-client privilege because **they clearly neither seek nor convey legal advice**. It appears that these emails were marked privileged based on the presumption that, where an attorney (or someone who is presumed to be an attorney) is included on an email chain, the entire communication is privileged. **That is clearly not the law.**

Order on 2d Mot. to Compel 33, ECF No. 216 (bold emphasis added). As to one crucial document, Judge Parker expressed concern that related emails were not provided during the first motion to compel in what "appears to have been an effort to conceal a waiver." *Id.* at 52.

### The Relevant Requests for Production

Plaintiffs seek to compel the following documents:

o  All W-2s issued by any Eber entity for Lester and Wendy from 2017 to the present.

o  W-2s issued by Eber Bros. Wine and Liquor Corp. ("EBWLC") for 2008.[1]

o  Schedule Cs for Lester's "consulting" income from Southern Wine & Spirits ("Southern") for 2017 to the present.

o  Lester Eber's employment agreement with Eber-CT, as referenced in the 2020 financial statement, Ex. 5 ¶ 10, including all related correspondence and metadata to show when the agreement was drafted and/or executed.

Plaintiffs propounded multiple discovery requests from 2017 through 2018 that covered these documents. *See* Ex. 1 (Pls. 2nd RFPs Nos. 37, 38, 41, seeking all compensation from any Eber company or Southern, and documents concerning whether Lester or Wendy may have legal fees reimbursed); Ex. 2 (Pls. 3rd RFPs Nos. 44, 47, seeking Eber-CT's books and records all deposits into Lester's accounts); Ex 3 (Pls. 4th RFPs Nos. 43, 46, 47, 49, 50, requesting tax returns, documents showing net worth, and accounting records that would yield the same information); Ex. 4 (Interrogatory No. 9, to identify documents concerning the operation of any Eber company).[2]

---

[1] Only W-2s from Eber-CT were produced, but the record shows that Lester and Wendy only switched to having Eber-CT cover their payroll in mid-2008. Thus, the record produced by Defendants indicates that Wendy was paid only about half her usual salary in 2008.
[2] Regrettably, Plaintiffs' requests mistakenly used the same RFP numbers on several different sets of requests.

**ARGUMENT**

Because they have failed to communicate their response, it is unclear what basis Defendants assert, if any, to refuse to produce these documents. Because there may not be time for a reply, Plaintiffs will try to anticipate what might be argued. To that end, the only conceivable arguments may be (a) that Plaintiffs limited some requests to "the present" and that should override the RFPs' express instruction that the requests are intended to be continuing, or (b) that the RFPs did not specifically request contracts between Lester and Eber-CT. Neither basis, if asserted, has merit.

When Plaintiffs sought to limit the production to a particular fiscal year, the requests so indicated. RFP No. 44 in Plaintiffs' 3rd Set of Requests for Production shows the distinction:

44. The books and records for Eber-C[T], including: …

b. Eber-C[T]'s financial statements for the years ended May 31, 2014 through the present…

e. All K-1's, W-2's and 1099's issued by the Company for the years ended May 31, 2007 through May 31, 2017....

Ex. 2 at 9-10. There were many requests for documents through "the present," which were subject to Instruction No. 5: "These requests are intended to be continuing, requiring you to produce whatever documents responsive to these requests you become aware of or subsequently obtain." Similarly, the very first page of each set of requests provided that "Defendants are under a continuing duty to reasonably supplement the production with documents obtained or discovered subsequent to the service of their responses." Exs. 1, 2, 3, & 4 at 1.

Significantly, Defendants have interpreted these requests correctly as continuing in other instances when the requests were stated as seeking documents through "the present." For example, Plaintiffs' 2nd Set of RFPs No. 32 sought "All bylaws or operating agreements that have been in effect at any time from 2000 to the present for Eber Bros., [EBWLC], Eber Metro, and Eber-C[T]."

Just a few months ago, Defendants produced a new set of Bylaws adopted by EBWLC earlier this year. They correctly understood what the RFP had requested and produced it without prompting.

Similarly, the above-quoted request for "financial statements … through the present" resulted in the production of financial statements for the years ended May 31, 2018, and May 31, 2020, even though the requests were propounded in April 2018. *See* Ex. 2.

As for Lester's Eber-CT employment agreement, 2nd RFPs No. 37 covers it with "Documents sufficient to show all salaries or other compensation paid by any of the Eber Companies to Lester Eber or Wendy Eber from 2006 to the present." Just having the number is not sufficient—not by a long shot—to prove the nature or validity of the payment reflected on Eber-CT's financial statement. Moreover, Plaintiffs asked Wendy about it in her deposition and would have specifically requested a copy if she acknowledged one. Not only must this contract be produced, but also contemporaneous evidence showing when it was actually executed (if ever).[3]

Ultimately, the contract is one document that Defendants themselves will likely rely upon if they want to show that the posthumous $675,000 of "deferred compensation" to Lester, Ex. 5 ¶ 10, ought not to be disgorged through the application of either the constructive trust the faithless servant doctrine. As such, it is subject to disclosure under F.R.C.P. 26(a). If they refuse to produce it, this Court should infer that the payment was extra-contractual.

## CONCLUSION

The Court should order the Eber Defendants to immediately produce the requested documents. For the avoidance of further issues, the Court should also make clear to Defendants

---

[3] Defendants have a track record of backdating documents, as can be shown in those few instances when transmittal emails and fax headers show the actual dates of signature. More recent questionable documents have been produced without any such correspondence. Defendants claim that no such correspondence or native files can be located, and that perhaps the documents were sent by drafting counsel—located in California—to the Ebers by some "other" means besides email or fax. That might be believable if this were the 1980s, but we are talking about 2017 or later.

that they have a continuing duty to supplement as to any other responsive documents in their possession, even if Plaintiffs are unaware of them.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
Brook & Associates, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@brook-law.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: September 1, 2021