UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>Plaintiffs,<br><br>v.<br><br>LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; ESTATE OF ELLIOTT W. GUMAER, JR.; and WENDY EBER,<br><br>Defendants,<br><br>and<br><br>EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; EBER-RHODE ISLAND, LLC; EBER BROS. ACQUISITION CORP.; EBER-METRO, LLC; SLOCUM & SONS OF MAINE, INC.; and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,<br><br>Nominal Defendants. | Civil Action No.  16-CV-9517(LAK)(KHP) |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE AND TESTIMONY PURSUANT TO F.R.C.P. 37**

Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Brian@brook-law.com
*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

I.   The Actuary's Testimony and Letter Is Inadmissible Because He Was Not Disclosed as Either an Expert or a Fact Witness During Discovery, and His Testimony Would Violate Rule 701 ............................................................................................................. 2

    A.   Defendants Induced Judge Parker to Conclude that the Pension Administration and Related Litigation was Immaterial to this Case .................................................. 3

    B.   The Evidence Should Be Excluded as a Discovery Sanction ............................. 4

    C.   Part of Gallagher's Testimony and the December 2018 Letter Violate FRCP 26(a)(2)(B) and FRE 701 ............................................................................. 9

II.  Exhibits Produced on September 3, 2021, Should Be Excluded ......................................... 11

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014) ............................................... 4

*Agence France Presse v. Morel*, 293 F.R.D. 682 (S.D.N.Y. 2013) ............................................... 4

*ATR-Kim Eng Financial Corp. v. Araneta*, Del. Ch. No. 489-N, 2006 Del. Ch. LEXIS 215,
    2006 WL 3783520 (Del. Ch. 2006) ....................................................................................... 13

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ......................................................... 4

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
    280 F.R.D. 147 (S.D.N.Y. 2012) .............................................................................................. 4

*Teen-Ed, Inc. v. Kimball Int'l Inc.*, 620 F.2d 399 (3d Cir. 1980) .................................................. 10

*Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
    726 F. Supp. 2d 339 (S.D.N.Y. 2010) ....................................................................................... 4

*United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,
    112 F. Supp. 3d 122 (S.D.N.Y. 2015) .................................................................................... 6, 9

*United States v. Garcia*, 413 F.3d 201 (2d Cir. 2005) .................................................................. 10

*United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2005) ...................................................... 10

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ................................................................. 10

*United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) .................................................................... 10

**Rules**

Federal Rule of Civil Procedure 26 ................................................................................... 1, 4, 5, 11

Federal Rule of Civil Procedure 37 ........................................................................................ 1, 3, 4

Federal Rule of Evidence 403 .......................................................................................................... 6

Federal Rule of Evidence 701 ...................................................................................................... 3, 9

Federal Rule of Evidence 702 ........................................................................................................ 11

Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein respectfully submit the following brief in support of their Motion *in limine* to exclude evidence and limit testimony.

## PRELIMINARY STATEMENT

Just days before trial the defense produced several new documents, most concerning complex actuarial calculations. They seek to admit all of these at trial through a witness who was not disclosed as a fact witness until he submitted a declaration at summary judgment. And even then, his testimony is largely expert testimony, because it is centered on an actuarial calculation he did during this litigation and was presumably paid to do. That calculation was in the form of a short letter and did not include anything approximating the report required by Rule 26 for compensated experts. Moreover, to the extent that that opinion letter is construed as "fact" opinion, it is significant that letter was not disclosed to Plaintiffs until July 10, 2019—after fact discovery had closed—even though the letter is dated December 19, 2018.

There is no good excuse for the defense's attempt to try a complicated issue by surprise. That is especially the case because the issue—the amount of a pension funding liability that no longer exists—is at best tangential to the remaining issues in this case. Indeed, Judge Parker ruled that the pension was not "material" to this case and allowed the defense to withhold documents (different from the ones just received) relating to the pension and similar issues.

Because this pension funding question will consume considerable time and resources, and because Plaintiffs will have one hand tied behind their backs due to all the late and selective disclosures, Plaintiffs request that the late disclosed testimony and exhibits be excluded pursuant to Federal Rule of Civil Procedure 37.

The requested relief would only be for purposes of this trial due to the unfair and incomplete disclosures to date. As part of the remedy of constructive trust that is generally entered after a breach of the no-further-inquiry rule by a trustee, the Court may consider some of this evidence to determine whether Lester's estate should get "credit" for him having given up pension benefits as part of the settlement with PBGC. But before the Court does so, Plaintiffs should be given a fair opportunity to evaluate and meet this complicated evidence.

1

## ARGUMENT

After Judge Parker ruled that Lester Eber's June 2012 taking Eber Bros.' only operating assets was void for violating the no-further-inquiry rule that prohibits trustee self-dealing, Judge Parker left Defendants a sliver of hope to keep the stolen assets: If Defendants showed there was no unjust enrichment, then maybe a constructive trust would not be imposed.

Based on the pretrial submissions, it appears that Defendants are desperate to convince the Court that the pension plan funding obligation of Eber Bros. Wine and Liquor Corp. ("EBWLC") should be valued at more than $5 million as of June 2012, even though the liability that was settled for significantly less in February 2017, right after this lawsuit was filed. By inflating the pension funding obligation beyond what management believed was likely at the time and beyond the amount actually paid, they hope to show that EBWLC's liabilities exceeded its assets at the precise moment when the assets were taken. And so, they will argue, the transaction was a wash to Plaintiffs, so it should be allowed to stand, regardless of how much profit Defendants really received.

Regardless of whether conducting this inquiry into the fairness of the Alexbay transaction is legally appropriate after holding that the "no further inquiry rule" applied, any such inquiry should be conducted on a level playing field. As explained below, Defendants' effort to have a completely one-sided presentation of evidence regarding the actuarial value of the pension funding obligation should be shut down.

I. **THE ACTUARY'S TESTIMONY AND LETTER IS INADMISSIBLE BECAUSE HE WAS NOT DISCLOSED AS EITHER AN EXPERT OR A FACT WITNESS DURING DISCOVERY, AND HIS TESTIMONY WOULD VIOLATE FRE 701**

The defense intends to call Michael Gallagher to testify as to certain actuarial opinions he formed about the potential cost of EBWLC's pension plans. This Court should exclude his testimony in its entirety because he was never disclosed as a witness during discovery. Moreover, the subject of his testimony was found to be immaterial by Magistrate Judge Parker, who consequently denied Plaintiffs vital document discovery relating to the pension plan and

2

related litigation. To the extent he is permitted to testify at all, portions of his testimony should be excluded under Federal Rule of Evidence 701 because they are opinions that involve technical or specialized knowledge.

### A. Defendants Induced Judge Parker to Conclude that the Pension Administration and Related Litigation was Immaterial to this Case

Where a party fails to provide discovery on a topic on the grounds that it is immaterial, that party cannot then claim otherwise at trial. Here, Defendants withheld hundreds of documents on privilege grounds. Per Judge Parker's request, Plaintiffs only selected some of the documents on Defendants' privilege log to specifically challenge for *in camera* review.

Incredibly, almost every single document that Plaintiffs challenged was deemed to have been improperly held. The majority, Judge Parker said, were "clearly" not privileged on their face. May 13, 2019 Op. 33, ECF No. 216. A significant subset of the documents was turned over pursuant to the fiduciary exception to attorney-client privilege. *See id.* at appendix.[1]

The only challenged documents that Defendants were permitted to continue to conceal, despite the fiduciary exception, were those documents where Judge Parker found that there was no "good cause" for Plaintiffs to review them because the documents concerned matters that were not material to this litigation. Among the topics that were deemed not material was the PBGC litigation and the "provision and administration of employee benefits." May 13, 2019 Op. 44–45 ("None of these communications concern issues that directly impact the Trust beneficiaries or are material to the issues in this case.").

Pursuant to Rule 37, Defendants should be precluded from introducing evidence at trial on matters where they not only failed to provide discovery, but actively induced a ruling that the subject matter is immaterial.

---

[1] These documents that Plaintiffs received are among some of the most important in the case, and Judge Parker agreed that Plaintiffs needed additional deposition days with each of the Ebers to address them.

3

### B. The Evidence Should Be Excluded as a Discovery Sanction

When a party fails to meet its discovery obligations, "[a] district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Pursuant to Rule 37(c)(1), if a party fails to provide information required by Rule 26(a) or (e), the party generally is not permitted to use that information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013). "The purpose of this rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 348 (S.D.N.Y. 2010) (citation and quotation marks omitted).

"In determining whether to exclude evidence under this standard, a district court considers a nonexclusive list of four factors: (i) the party's explanation for its failure to disclose, (ii) the importance of the evidence, (iii) the prejudice suffered by the opposing party, and (iv) the possibility of a continuance." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014) (citing *Design Strategy*, 469 F.3d at 296 (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006))). "The party that violates Rule 26 bears the burden of showing that its violation was either substantially justified or harmless." *Agence France Presse*, 293 F.R.D. at 685 (citing *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)).

Defendants cannot meet their burden of showing that the violations were either "substantially justified" or "harmless." Plaintiffs do not request anything approaching "severe" sanctions. Only the exclusion of evidence that was produced late in the game and in a completely one-sided fashion because there was no adequate notice of the issue the defense decided to raise.

*Defendants' Excuse*

In preparation for this motion, Plaintiffs asked defense counsel to explain their conduct, since that is the first of the four prongs to consider. This is the text of their response, in full:

> Michael Gallagher was featured prominently on documents produced in discovery, *see, e.g.*, Def. Ex. BBBB, Annual Valuation Reports, Notices to Plan Participants (EB-00018,058-107), PBGC Form 10s with valuation reports (EB-00019415, 676, 609), Forms 200 and 5500 (EB-00019254, 307, 271), you have had his December 19, 2018 letter since July 2019, the letter and an affidavit from him were submitted on defendants' summary judgment motion, and he was listed in the May 2021 pretrial order as a defendants' witness. There should be no surprise that Michael Gallagher will testify as a fact witness with respect to the PBGC liability.

Sept. 8, 2021 Email from Kevin Mulry to Brian Brook.

Defendants' excuse offers no substantial justification for their failure to disclose Gallagher during discovery, as required by Rule 26(a)(1)(A), given that they asked him to provide an actuarial opinion during litigation and over *six months before* the close of fact discovery and the deadline for Defendants' expert reports. Gallagher Decl. ¶ 15 ("In December 2018, I was asked to provide an updated calculation of the Plan termination liability under the PBGC standard termination procedures for the Plan as of June 1, 2012."). Gallagher did not slow play his response, either; he submitted his "analysis concerning termination liability by letter dated December 19, 2018." *Id.* at 17. The close of fact discovery was not until June 28, 2019, which was also the deadline for expert reports. *See* Scheduling Order, ECF No. 221. Gallagher's letter was not disclosed until July 10, 2019.

Moreover, this excuse (offered by new counsel, to be fair) fails to account for Judge Parker's ruling that this entire subject was not "material" to this litigation. *See supra* § I(A). Demonstrating that they are trying to "sandbag" Plaintiffs, even after Defendants decided that they would try to use their loss to PBGC to try to help them here, Defendants failed to revisit their document production and failed to produce any of the withheld documents.[2]

---

[2] Indeed, even after Judge Parker made clear that they had been extremely overbroad in their understanding of what could be withheld, Defendants also failed to revisit *any* of the many documents that Plaintiffs did not identify for *in camera* review. Of course, Plaintiffs were forced to rely entirely on Defendants' own (dubious) descriptions on the

Even during expert discovery, when Plaintiffs first saw Gallagher's brief December 2018 letter, Defendants still gave no indication that they intended to call Gallagher as a fact witness. Rather, it appeared that Defendants were trying to sneak his opinions in through their official expert, Frank Torchio.[3] The first time Defendants gave any indication that they would actually call Gallagher as a witness was when they filed their summary judgment motion in November 2019 with an affidavit from Gallagher to support their lead point: seeking a declaratory judgment about ERISA liabilities, even though they asserted no counterclaims nor any relevant affirmative defense. Plaintiffs moved to strike Gallagher's affidavit on essentially the same grounds articulated here. *See* Pls. MSJ Opp'n 10–11, ECF No. 279. In their reply, Defendants declined to even attempt to justify their actions.[4]

*Importance of the Evidence*

Judge Parker already ruled that the pension plan and related litigation is not material to this case. She so ruled in favor of *Defendants'* position at the time. Defendants never asked Judge Parker to reconsider her finding.

Defendants want Gallagher to testify as to the amount of money that he now believes EBWLC would have needed to deposit as of June 1, 2012 if the pension plan had been terminated by then, as a 2016 W.D.N.Y. opinion retroactively declared.[5] The evidence is unimportant, and if anything, it is prejudicial by wasting the Court's time and confusing the issues in violation of Federal Rule of Evidence 403. An actuarial estimate of the amount of EBWLC's pension obligations in 2012 has no bearing on any of Plaintiffs' claims.

---

privilege log to decide which documents should be reviewed *in camera*, so it is entirely possible that critical, discoverable documents are still being withheld despite being "clearly" not privileged.

[3] It is well understood that an expert can often rely on evidence that is otherwise inadmissible, so Torchio's reliance on Gallagher's letter did not suffice to disclose Gallagher as a witness back at a time when Plaintiffs could have potentially sought to obtain relevant documents (like those disclosed last week) and a deposition. That said, if Gallagher's opinions are excluded Torchio should not be permitted to rely on Gallagher's letter because Torchio is not qualified to offer an actuarial opinion himself and cannot attest the accuracy of Gallagher's work product. *See United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015) (holding that one actuary could incorporate the opinion of another actuary into his expert testimony).

[4] Judge Parker found the motion to strike moot and the affidavit contained hearsay. 2d Mot. to Compel Op. 66 n. 9.

[5] Defendants marked the opinion as Exhibit DD.

When Alexbay took Eber Metro in 2012, it did not assume any of EBWLC's debts, either to the pension plans or any of its other creditors. Instead, the sole consideration received by EBWLC was the elimination of the alleged debts to Lester (Alexbay). It is undisputed that, at the time of the Alexbay transfer, Lester and Wendy Eber believed that the transfer would shield Eber Metro from being tapped by the PBGC to fund EBWLC's pension plan.[6]

The Ebers' knowledge of the existence of those debts at the time is relevant insofar as it helps to fully understand Defendants' motives in conducting the challenged Polebridge Bowman sale of 6% of Eber-CT and the already-void Metro Transfer. However, a precise estimate based on a 2016 court opinion is immaterial because, not only was that decision not knowable at the time of the transfer, but also Alexbay did <u>not</u> assume those obligations.

Defendants' position about Eber Metro's liability under ERISA, articulated at summary judgment, amounts to some form of quasi collateral estoppel based on the 2016 W.D.N.Y. grant of summary judgment *against* EBWLC, even though Plaintiffs were not parties to the PBGC litigation and the Ebers argued the opposite position they now assert. If anyone should be asserting collateral estoppel, it is Plaintiffs, who could argue that the PBGC decision necessarily decided that the Polebridge Bowman and Alexbay transactions should be disregarded.

Just because the defense is (now) predicated on pretending that Alexbay assumed responsibility for EBWLC's pension plan when it did the opposite does not mean that this Court should indulge such fantasy. The importance factor weighs in favor of exclusion.

*Prejudice to Plaintiffs*

Gallagher is no simple witness to cross-examine. Even experienced business lawyers are generally unfamiliar with how actuaries do their work and with PBGC's "standard termination procedures," whatever those may be (they do not appear to be in the discovery and no external

---

[6] For example, Defendants themselves intend to submit proof that Lester personally expended hundreds of thousands of dollars on lawyers to fight against PBGC and other creditors after the Alexbay transfer. Their reason for doing is to contend that his estate should receive "credit" for paying the lawyers, which is quite the contorted position since they are simultaneously contending that this Court should assume that Eber Metro was liable all along—which would mean Lester spent all that money for nothing and should get no credit. As with the W.D.N.Y. ruling that disregarded the two core transactions in this case, Defendants want to have their cake and eat it, too.

7

citations has been provided). Even if Plaintiffs had months to retain their own expert and prepare, it would pose a challenge.

The problem with Gallagher is not just calling him as a witness, but the complex documents that his actuarial opinions are based on. Plaintiffs have expressly objected to Gallagher being listed on the defense witness list since the first pretrial order. *See* ECF No. 355 at 19 (first bullet point). That means that Defendants have had notice that if they want to use him at trial, they should get their act together. Instead, they made things even worse by holding back documents that undergird his testimony until ten days before trial.

The only way Defendants' tactical discovery violations would be harmless is if this Court were to agree with Plaintiffs that EBWLC's pension funding obligation is not relevant to determining whether the Alexbay transaction should be set aside or whether a constructive trust should be imposed.

*Possibility of a Continuance*

This case is nearly five years old. Two out of three human defendants have passed away since this litigation began. It concerns transactions that are, on average, a decade old. A continuance for Plaintiffs to retain their own expert and evaluate this complicated collateral issue should be out of the question.

To the extent that the pension funding issue has any relevance, it would be at the constructive trust stage. Plaintiffs' position, grounded in New York case law about the consequences of wrongly taking property, is that Lester's estate should get no "credit" to Lester's estate either (a) for paying lawyers to fight against funding the pension plan for over five years or (b) for giving up the remainder of his pension to settle with PBGC. That said, the defense could articulate a non-frivolous argument that Lester should get such credit. At that point, the Court could consider the actuarial value of the pension plan that Lester relinquished. But Gallagher's proposed testimony does not even address that point, other than to include hearsay from the 2016 W.D.N.Y. PBGC decision about how Lester's maximum pension benefit would be reduced. Gallagher Decl. ¶ 23.

### C. Gallagher's Testimony and the December 2018 Letter Violate FRCP 26(a)(2)(B) and FRE 701

Actuarial calculations are far outside the ken of the layperson. They are not simple arithmetic. Michael Gallagher's declaration begins with his qualifications to offer actuarial opinions. He is "an Associate of the Society of Actuaries, a Member of the Academy of Actuaries, and [is] licensed to practice before the IRS as an Enrolled Actuary."

Opinions formed at the time of the events in question are not necessarily expert testimony. For example, if Gallagher had calculated the amount due to the pension plan and that amount was then paid, Gallagher can testify as to the amount paid. *See United States Bank Nat'l Ass'n*., 112 F. Supp. 3d at 137 (discussing the line between fact and expert testimony using the analogy of a treating physician who can testify as to the care and treatment provided, but not the diagnosis). With this distinction in mind, all of Gallagher's accounting opinions, whether formed in 2012 or in 2018, constitute opinion testimony relating to potential future pension payouts at various points of time. Of particular note is the opinion at paragraphs 15–21 of Gallagher's declaration where he offers "an updated calculation" that he performed in December 2018. Gallagher Decl. ¶ 15. The final number he spits out is the amount that EBWLC "would have need to a make [as] a contribution to the [pension] Plan … under the standard termination procedures of the PBGC." *Id.* at 21 (citing Ex. JJ as authority, even though that is his own letter from December 2018).

Federal Rule of Evidence 701—Opinion Testimony by Lay Witnesses—provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

9

To satisfy the first of Rule 701's requirements, a lay witness's opinion testimony must be "*both* (a) based on the witness's first-hand perceptions *and* (b) rationally derived from those first-hand perceptions." *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007) (emphasis in original). Here, Gallagher says his new calculation was based on information "available" to his company in 2012. Even though saying that information was "available" does not necessarily mean that he actually saw all of the information at the time, that is not the biggest problem when it comes to the 2018 opinion. Rather, it is the fact that he was posed a hypothetical question,[7] asking Gallagher to assume that the pension plan terminated retroactively, which is not something he ever perceived. Accordingly, his opinion about what EBWLC "would have" owed, Gallagher Decl. ¶ 21, cannot be rationally based on his perception.

The second requirement of being "helpful" is designed to provide "assurance[ ] against the admission of opinions that would merely tell the jury what result to reach," *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (quoting Fed. R. Evid. 704 Adv. Comm. Note), as distinguished from testimony that "helps the jury gain 'an accurate reproduction of the event' actually witnessed" by the testifying witness. *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005) (citation omitted). In other words, a lay opinion should add something to the evidence, rather than just tell the factfinder how to interpret the evidence. Here, if the evidence available in 2012 can be analyzed by ordinary, rational (non-expert) thought processes, then it does not help the Court for Gallagher merely to tell the Court how to put the pieces together.

The only reason why the testimony might help the Court as factfinder is the same reason it is inadmissible under the third prong of Rule 701: Because it is based on Gallagher's specialized knowledge and training as an actuary. A layperson could never reach the conclusions that Gallagher did even if they had been there and directly perceived everything that happened.

---

[7] Defendants rely on a 2016 W.D.N.Y. opinion against EBWLC for the conclusion that the pension plan terminated in 2010. Ex. DD. Since Gallagher stopped working for EBWLC in 2014, any opinion he forms now based on the 2016 decision about what the liability would have been is hypothetical, and not the stuff of lay witness testimony. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("The ability to answer hypothetical questions is 'the essential difference' between expert and lay witnesses."); *Teen-Ed, Inc. v. Kimball Int'l Inc.*, 620 F.2d 399, 404 (3d Cir. 1980) ("The essential difference between [Rule 701 and 702 testimony] . . . is that a qualified expert may answer hypothetical questions.").

Particularly inscrutable is Gallagher's claim that his calculation is supposedly consistent with PBGC's "standard termination procedures." Plaintiffs do not know what those are. Gallagher cites only his own prior letter for this, and that document just says the same thing without any citations at all. Plaintiffs cannot possibly cross-examine this opinion. That is why such opinions formed by a witness retained during litigation must be accompanied by a report.

As expert testimony, it is also subject to exclusion for violating Federal Rule of Civil Procedure 26(a)(2)(A)-(B) because he was not disclosed as someone who would provide testimony under Rule 702 and no report accompanied his opinion. Gallagher admits that he has not served as an actuary for Defendants since 2014. *Id.* ¶ 14. Thus, by being retained in December 2018 to provide actuarial calculations about 2012, he is a witness who was "retained or specially employed to provide expert testimony" within the scope of Rule 26(a)(2)(B). As a result, he was required to provide a written report. The December 2018 letter that Defendants withheld until after the expert report deadline does not come close to including the information required by Rule 26. That is why the Court should not consider these opinions under FRE 702.[8]

## II.   EXHIBITS PRODUCED ON SEPTEMBER 3, 2021, SHOULD BE EXCLUDED

The most recent surprise (so far) is several new documents that the defense wants to be admitted. These are new not merely in the sense that they were not produced during discovery. Far worse, Defendants held these documents back until just last Friday, September 3, 2021:

- Exhibit X (a judicial opinion from 2005)
- Exhibit BBBBB (68-page Restatement of Eber Bros.' pension plan in 1994)
- Exhibit CCCC (Letters sent to Wendy Eber by her father in 2007)
- Exhibit DDDD (2 pages regarding the amount of Lester's pension payments)
- Exhibit DDDDD (the first 7 pages of a 53-plus-page memorandum from 1977, with the full document still undisclosed to Plaintiffs)

---

[8] To the extent that the entire declaration is not stricken, Plaintiffs also object to paragraph 23 of the Gallagher Declaration as hearsay. *See* Pls. 2d Mot. to Compel Op. 66 n. 9 (finding hearsay even in less overt reliance on out-of-court statements).

- NNNN (a 19-page financial statement for EBWLC's Retirement Plan for 2011 and 2012
- ZZZZ (an Employee Notice that is likely over 14 years old)[9]

Plaintiffs had repeatedly advised defense counsel that their search for documents was inadequate. This goes back over three years. There is no excuse for why they waited until the very last moment to produce these documents.

Admitting these exhibits now would be prejudicial to Plaintiffs. Most of the exhibits concern the pension plan and complex actuarial calculations that the defense wants to introduce into evidence. Considering that none of Plaintiffs, their attorney, or their expert are actuaries, there is no way that Plaintiffs can possibly process this information now.

The inexcusably late production of predominantly technical exhibits concerning the pension plan (which is not even directly at issue in this case) should result in exclusion of all the above-named exhibits except for Exhibit DDDD, which is a document that should have been disclosed in response to Plaintiffs' discovery requests since it reflects Lester's compensation from EBWLC.

With respect to Exhibits CCCC and ZZZZ, Plaintiffs were denied the opportunity to inquire about them with Lester and Wendy Eber. Particularly since at least one of them was entirely drafted by Lester, who is not deceased, the late disclosure is irreparably prejudicial.

If the Court permits the defense to use these late-produced documents, it should ensure that the Defendants' recent document searches are not one-sided. This is a case where virtually all of the material documents are in Defendants' exclusive possession and control, and there is a long track record of concealing documents, including the recently discovered 2012 Employment Agreement between Lester Eber and Eber-CT, signed by Wendy Eber, providing his estate with a golden parachute upon his demise. The document was responsive to numerous document

---

[9] The defense simultaneously produced several other documents which they said had not been produced, including a 2012 Actuarial Valuation Report (Ex. CCCCC). However, that report and several other documents were either already produced or had been sent directly to Plaintiffs at the same time as Defendants.

12

requests, at least one interrogatory,[10] and an explicit question to Eber-CT's Rule 30(b)(6) designee (Wendy Eber). Plaintiffs only discovered that the document existed because we were able to read between the lines of Eber-CT's most recent financial statement, which cryptically disclosed a large payment that turned Eber-CT's significant net profit into a loss. But for Lester's passing and the auditors being required to disclose such a significant transaction in the financial statement, Plaintiffs would have never known that that crucial document existed. And the fact that they are now producing so many documents like Exhibits CCCC and ZZZZ just days before trial shows how inadequate their prior searches during discovery must have been.

Therefore, Plaintiffs respectfully request that any permission for Defendants to introduce new documents should be accompanied by an order directing Defendants' newly retained counsel to devote actual lawyer time to finding out just how much else has been concealed.[11] And the proximity to trial is their fault. If they can afford the time to go around sniffing for truffles this late in the game, they should be required to share.

---

[10] *See* Declaration of Glenn Liebman ¶¶ 124–128 (explaining that the agreement was within the scope of an interrogatory requesting disclosure of all such related party transactions).

[11] Prior defense counsel was Underberg & Kessler, the same law firm that represented both Alexbay and EBWLC at the same time in 2012 and was concerned about its own liability of Plaintiffs prevailed. They took the position that they could delegate all document searches to Wendy Eber, who did not even retain a list of the search terms she used, and who was plainly unreliable. Because there are enough actual issues already pending for this trial, Plaintiffs are reserving their arguments for an award of fees and expenses, based on bad faith litigation conduct and under Rules 11 and 37, until after the trial. *See, e.g.*, *ATR-Kim Eng Financial Corp. v. Araneta*, 2006 Del. Ch. LEXIS 215, 2006 WL 3783520, at § F (Del. Ch. 2006) (page number for pin citation unavailable) (V.C. Strine, after a bench trial, awarding attorney's fees based on bad faith litigation conduct in breach of fiduciary duty case where fiduciary transferred assets out of a holding company to his family and rendered the holding company worthless).

## CONCLUSION

The Court should grant Plaintiffs' motion to exclude evidence from the upcoming trial.

        Respectfully submitted,

        /s Brian C. Brook
        Brian C. Brook (BB 1980)
        BROOK & ASSOCIATES, PLLC
        100 Church Street, 8th Floor
        New York, New York 10007
        Telephone: (212) 257-2334
        Facsimile: (646) 257-2887
        Brian@brook-law.com

        *Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: September 9, 2021