# **Exhibit B**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PENSION BENEFIT GUARANTY CORPORATION,

Plaintiff,

-vs-

EBER BROS. WINE & LIQUOR CORPORATION, as Plan Administrator of the Eber Bros. Wine & Liquor Corp. Retirement Plan,

Defendant.

**DECISION AND ORDER**
**No. 6:15-cv-06283(MAT)**

## I. Introduction

This action arises under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461 ("ERISA"). The Pension Benefit Guaranty Corporation ("PBGC") has sued Eber Bros. Wine & Liquor Corporation ("Eber Bros."), as Plan Administrator of the Eber Bros. Wine & Liquor Corp. Retirement Plan ("the Plan"), seeking to declare the Plan terminated and to have PBGC appointed as statutory trustee. The parties have cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Eber Bros. has a filed motion to seal.

## II. Statutory Background

PBGC is the wholly-owned Federal corporation tasked with administering pension insurance programs under ERISA and protecting participants in private sector defined benefit pension plans. See generally PBGC v. LTV Corp., 496 U.S. 633, 636-39 (1999); 29 U.S.C. §§ 1301-1461. A self-financed entity, PBGC obtains its revenues

DEFENDANT'S EXHIBIT
DD

from only four sources, including the assets in terminated plans and recoveries from employers whose underfunded plans have terminated and who are liable to PBGC for shortfalls in their plans' assets. See PBGC Mem. at 2-3 & nn. 6-10 (citation omitted).

The employer/contributing sponsor of a pension plan and each member of its "controlled group"[1] are jointly and severally liable to the pension plan for contributions necessary to satisfy the minimum funding standards imposed by the Internal Revenue Code and ERISA. When the aggregate amount of missed minimum funding contributions plus interest exceeds $1 million, a lien, enforceable only by PBGC, arises on behalf of the pension plan against all assets of both the plan's sponsor and of the members of the sponsor's controlled group. See 26 U.S.C. § 430(k)(1), (5).

ERISA authorizes PBGC to institute administrative proceedings to terminate a plan "whenever it determines that . . . the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated." 29 U.S.C. § 1342(a)(4). ERISA also authorizes PBGC to "apply to the appropriate United States district court for a decree adjudicating that the plan must be terminated in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or any unreasonable increase in the liability of the fund." 29 U.S.C.

---

[1] A "controlled group" is a group of businesses under common control, such as a parent company and its 80-percent-owned subsidiary. See 29 U.S.C. § 1301(a)(14).

§ 1342(c). Upon termination of an underfunded pension plan, the plan sponsor and any entity that is a member of its controlled group on the termination date becomes jointly and severally liable to PBGC for, inter alia, the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan, together with reasonable interest calculated from the termination date. See 29 U.S.C. § 1362(a), (b)(1)(A).

**II. Factual Background**

The factual summary below is based on the parties' pleadings and exhibits submitted therewith, and the Bates-stamped Sealed Administrative Record filed by PBGC ("PBGC SAR") under seal. Except where noted, the following facts are undisputed.

Eber Bros. is a now-defunct wine and liquor distributor originally based in Rochester, New York. It is both the contributing sponsor and administrator of the Plan, which covers 434 participants.

As of April 30, 2010, the Plan termination date proposed by PBGC, Eber Bros. owned 100 percent of Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), which in turn owned at least 85 percent of Eber Connecticut, LLC (d/b/a Slocum & Sons) ("Eber-CT"). Also as of April 30, 2010, the Eber Bros. controlled group ("the Controlled Group") included Eber Metro and Eber-CT.

In May 2010, Eber Metro transferred 6 percent of its 85-percent-share in Eber-CT to Polebridge Bowman Partners, LLC. PBGC states that this transaction reduced Eber Metro's ownership of

EB-00010504

Case 1:16-cv-09517-LAK-KHP Document 262-25 Filed 11/08/19 Page 5 of 19

Eber-CT to 79 percent and allegedly removed Eber-CT from the Controlled Group.

PBGC asserts that Eber Bros. ceased operations by December 31, 2007, but concedes that the exact date on which this cessation of operations occurred is unclear. According to a PowerPoint presentation prepared by Eber Bros.' attorneys, the Groom Law Group, and made to PBGC in August 2013, "[a]fter 2007, only Eber-CT (d/b/a Slocum & Sons) had ongoing operations." See PBGC SAR-00941. Also, Eber Bros.' Annual Return/Report of Employee Benefit Plan for fiscal plan year June 1, 2009, through May 31, 2010, indicates that there were zero active plan participants. See PBGC SAR-00644-45. Eber Bros. itself admits that it ceased "wine and liquor distribution operations by September 30, 3008." See Eber Bros.' Statement of Material Undisputed Facts ("Eber Bros. SOF"), ¶¶ 8, 25-26 (citations omitted).

Starting in 2009, Eber Bros. and members of the Controlled Group failed, on multiple occasions, to make the statutorily required minimum funding contributions to the Plan. Once these missed contributions exceeded $1 million, PBGC filed Federal lien notices against, inter alia, Eber Bros. and Eber Metro.

In August 2013, Eber-CT met with PBGC to discuss the lien notices and the need to terminate the Plan. It was during this meeting that Eber-CT made the representation that, after 2007, only Eber-CT had ongoing operations.

All members of the Eber Bros. board of directors resigned as of March 31, 2014, leaving no one at Eber Bros. with authority to

administer the Plan. PBGC began paying out benefits to new retirees pending termination of the Plan and its appointment as trustee.

On August 6, 2014, PBGC issued a notice of determination finding that the Plan had not met the minimum funding standards required by law and will not be able to pay benefits when due. PBGC further found that the Plan must be terminated in order to protect the interests of the participants, and that termination should be effective April 30, 2010. The notice of determination was transmitted to Eber Bros. via its former Chief Financial Officer. After Eber Bros. refused to sign a termination and trusteeship agreement for the Plan, PBGC commenced this lawsuit on May 11, 2015. PBGC estimates that, as of April 30, 2010, the Plan's unfunded benefit liabilities are about $5.2 million.

**III. Procedural Status**

In its Complaint (Dkt #1) brought pursuant to 29 U.S.C. §§ 1342(a)(1), § 1342(a)(2), 1342(c), and 1348(a), PBGC seeks an order terminating the Plan, appointing PBGC as statutory trustee of the Plan, and establishing April 30, 2010, as the Plan's termination date.

On August 17, 2015, PBGC filed a Motion for Summary Judgment (Dkt #15) and Memorandum of Law in Support ("PBGC's Mem."). On October 1, 2015, Eber Bros. filed a Cross-Motion for Summary Judgment and Memorandum in Opposition to PBGC's Motion for Summary Judgment ("Eber Bros. Mem."), along with a Motion to Seal (Dkt #27). On October 16, 2015, PBGC filed a Response in Opposition to the Motion to Seal (Dkt #28). On November 2, 2015, PGBC filed a

Case 1:16-cv-09517-LAK-KHP Document 262-25 Filed 11/08/19 Page 7 of 19

Reply to Eber Bros.' Opposition Memorandum and a Memorandum in Opposition to Eber Bros' Cross-Motion for Summary Judgment (Dkt #30) ("PBGC's Reply"). On December 2, 2015, Eber Bros. filed a Reply to PBGC's Opposition to the Cross-Motion for Summary Judgment (Dkt #35) ("Eber Bros. Reply"). The motions were submitted without oral argument on December 16, 2015 (Dkt #36).

After reviewing the parties' voluminous submissions, the Court grants PBGC's Motion for Summary judgment in its entirety, and denies Eber Bros.' Cross-Motion for Summary Judgment in its entirety. The Court denies in part and grants in part Eber Bros.' Motion to Seal.

## III. The Parties' Motions for Summary Judgment

### A. Overview

Eber Bros. "does not dispute that the Plan should be terminated or that, upon the Plan's termination, this Court shall appoint a statutory trustee for the Plan." Eber Bros. Mem. at 7. The parties' main dispute at this juncture therefore centers on the proper termination date of the Plan.

### B. Selecting a Termination Date: General Legal Principles

Because PBGC and Eber Bros. have not agreed upon a termination date for the Plan, it is incumbent upon this Court to establish one. See 29 U.S.C. § 1348(a)(4) (stating that the termination date of a single-employer plan is, "in the case of a plan terminated under section 1341(c) or 1342 of this title in any case in which no agreement is reached between the plan administrator and the

corporation (or the trustee), the date established by the court"). However, ERISA "provides no guidance as to how the termination date should be established." PBGC v. Dickens, 535 F. Supp. 922, 924 (W.D. Mich. 1982). Adopting the standard articulated by the Third Circuit, the Second Circuit has held that there are "only two factors" to be considered in establishing the termination date: "[1] the expectations of participants and [2] the financial implications of termination for PBGC." In re Pension Plan for Employees of Broadway Maintenance Corp., 707 F.2d 647, 652 (2d Cir. 1983) ("Broadway Maintenance") (citing PBGC v. Heppenstall Co., 633 F.2d 293, 297, 300-01 (3d Cir. 1980); In re Syntex Fabrics, Inc., 698 F.2d 199, 204 (3d Cir. 1983)). The Second Circuit described the proper procedure for setting a termination date as follows:

> [T]he District Court . . . should begin its analysis by determining the earliest date when the Plan's participants had actual or constructive notice of the Plan's termination, i.e., notice sufficient to extinguish their reliance interest. Once that date is ascertained, the District Court should then select whatever later date serves the interests of PBGC.

707 F.2d at 652-53 (internal citation omitted). The Second Circuit made clear in Broadway Maintenance that "the financial interests of the employer should play no role in setting a termination date in these proceedings." 707 F.2d at 653 (citing Heppenstall, 633 F.2d at 300-01; other citation omitted).

Where, as here, the material facts are not in dispute, the issue of whether there has been constructive notice can be decided as a matter of law. See, e.g., In re USEC Securities Litig., 190 F. Supp.2d 808, 817 (D. Md. 2002) ("Where . . . the underlying facts

are undisputed, the issue of whether a plaintiff has been put on notice can be decided as a matter of law.") (citations omitted); In re Ryan (Stern v. Cont'l Assur. Co.), 851 F.2d 502, 506 (1st Cir. 1988) (constructive notice is a positive rule of law that operates independently of the belief or mental state of the person to be put on notice) (citation omitted).

**C. Application of the Broadway Maintenance Factors**

**1. Earliest Date of Notice to Participants**

PBGC argues that there was constructive notice, i.e., notice sufficient to extinguish any justifiable reliance by Plan participants in theiar continued accrual of benefits, on the date that Eber Bros. ceased operations. Courts in this Circuit and elsewhere consistently "have held that an employee receives constructive notice of a plan's termination when the employer ceases operation." Pension Comm. for Farmstead Foods Pension Plan for Albert Lea Hourly Employees v. PBGC, 991 F.2d 1415, 1421 (8th Cir. 1993) ("Farmstead Foods") (citing Heppenstall, 633 F.2d at 301 ("[I]t seems clear that no employee had any justifiable expectation in a termination date later than May 31, 1979, when the employer ceased all operations."); In re Maryland Glass Corp. Non-Salaried Employees' Pension Plan, 618 F. Supp. 1410, 1415-16 (D. Md. 1985) ("The union argues that it was not until April 23, 1981 when all employees were laid off and liquidation of Maryland Glass became a fact that employees received actual notice of plan termination. Under the circumstances, however, it appears that February 25, 1981 represents the date the company ceased production. When the furnace

Case 6:15-cv-06283-MAT-MWP Document 37 Filed 01/19/16 Page 9 of 18

shut down so too did Maryland Glass, for all intents and purposes relevant to the notice issue. Therefore, the court will establish February 25, 1981 as the date on which the employees had notice of plan termination."); PBGC v. Dickens, 535 F. Supp. 922, 925 (W.D. Mich. 1982)); see also, e.g., Nastasi White, Inc., 476 F. Supp.2d at 230 ("[T]he beneficiaries were placed on constructive notice when the defendant ceased operations."); PBGC v. Thomas O'ROurke Gallagher, Inc., No. CV 14-6554(JS)(ARL), 2015 WL 5564618, at *3 (E.D.N.Y. July 21, 2015) (noting that the "date the defendant ceases business puts the plan beneficiaries on constructive notice that the plan may be terminated") (citation omitted). Courts have reasoned that "since no expectations of benefits can accrue after an employee ceases working, the cessation of all business operations would seem to be the latest date necessary to protect the employees and serve the purpose of the statute." Dickens, 535 F. Supp. at 925 (citing Heppenstall, 633 F.2d at 302); see also Farmstead Foods, 991 F.2d at 1421.

PBGC asserts that Eber Bros. ceased operations no later than December 31, 2007, citing a presentation by Eber Bros.' attorneys to PBGC stating that "'[a]fter 2007, only Eber-CT (d/b/a Slocum & Sons) had ongoing operations.'" PBGC's Mem. at 20 n. 114 (quoting PBGC SAR-00941). Thus, by Eber Bros.' own representation, it ceased operations sometime before 2008. PBGC also cites the February 20, 2007, Worker Adjustment and Retraining Notification ("WARN") filed by Eber Bros. with the New York State Department of Labor, stating that it had entered into an agreement to sell its inventory and

some of its assets to a competitor, and that it would close on March 31, 2007. The WARN indicates that the reason for its filing was "Plant Closing", that the "Layoff Date" was March 18, 2007, and that all 212 employees of the Eber Bros. plant were "[a]ffected" by the WARN. *See* WARN Details for Eber Bros., N.Y.S. Dep't of Labor (Feb. 20, 2007) (quoted in PBGC's Mem. at 20 n. 114);[2] *see also* Declaration of Michael Kreps ("Kreps Dec."), Exhibit ("Ex.") J, p. 26 ("On March 30, 2007, [Eber Bros.] ceased New York state operations, resulting in the termination of over 90% of active employees. . . ."). The Court agrees with all of the courts to have addressed the issue that an employer's cessation of operations constitutes constructive notice that its pension plan will not continue. The Court further concludes that PBGC has established, through Eber Bros.' own statements, that a cessation of its operations had occurred by December 31, 2007, sufficient to extinguish Plan participants' expectation interests. *See*, *e.g.*, *Berard v. Royal Elec., Inc.*, 795 F. Supp. 519, 524 (D. R.I. 1992) ("[T]he plaintiffs must be charged with constructive notice of the plan's termination because FL Industries ceased operations with respect to Royal Electric when it sold the company to Royal Technologies. The plaintiffs were no longer FL Industries employees, and, thus, they could not justifiably expect to continue accruing retirement benefits from an employer for whom they no longer worked.").

---

[2] The February 20, 2007 WARN is available at https://www.labor.ny.gov/app/warn/details.asp?id=1509 (last accessed Jan. 14, 2016)).

Alternatively, the Court finds that PBGC's submissions establish that Plan participants had constructive notice by May 31, 2009. As PBGC notes, Eber Bros.' Annual Return/Report of Employee Benefit Plan for fiscal plan year June 1, 2009, through May 31, 2010, indicates that there were zero active plan participants. Thus, all Eber Bros' employees apparently had been terminated by May 31, 2009.

Eber Bros. opposes PBGC's proposed termination date, arguing that it had not ceased all operations as of April 30, 2010, because it continued to exist as a holding company, had not filed for bankruptcy, had not dissolved or liquidated its assets, and was not listed as "inactive" with the New York State Department of State. See Eber Bros. Mem. at 13. The Court finds that the foregoing activities and statuses could not have reasonably revived the expectation interests of the Plan participants, which had been extinguished by the 2007 plant closing and the lay-offs of employees. See, e.g., PBGC v. Rouge Steel Co., No. 03-CV-75092, 2010 WL 3324921, at *6 (E.D. Mich. Aug. 23, 2010) ("[p]articipants received constructive notice when Rouge Steel ceased operations and permanently laid off all employees in January of 2004;" "[t]hus, after January 2004 (at the latest), Plan Participants' expectation interests were extinguished"). An employer's cessation of operations and lay-offs are salient, discrete events to an employee who is accruing benefits by virtue of his continued employment and participation in the employer-sponsored plan. As the Eighth Circuit

has noted, "[a]fter a plant had closed, a discharged employee, who had not been receiving paychecks from a former employer, would be very presumptuous in believing that pension benefits were continuing to accrue." Farmstead Foods, 991 F.2d at 1421.

Eber Bros. asserts that as a holding company, it oversaw its investment in Eber Metro and Eber-CT and tried to either return Eber-CT to profitability or to take steps to sell it in order to meet Plan obligations. See Eber Bros. Mem. at 3, 13. PBGC persuasively argues that Eber Bros.' approach to determining what constitutes a "cessation of operations" places undue control over a plan termination date into the hands of plan sponsors and their controlled groups' members. See PBGC's Reply at 13.

Eber Bros. also argues that its continued administration of the Plan forecloses a finding that Plan beneficiaries had constructive notice of the Plan's termination. Following this line of reasoning, if administration of an ERISA plan continues, there can be no termination date, and thus no termination of the plan. Such a result makes little sense and does not reflect actual practice in these types of cases. Indeed, PBGC notes that it has terminated plans notwithstanding the fact that the sponsor and administrator were ongoing entities and presumably administering the plan. See PBGC's Reply at 14 n. 68 (citing PBGC Republic Techs. Intern., LLC, 386 F.3d 659, 664 (6th Cir. 2004) (noting that PBGC "determined that the plans should be terminated and that PBGC should establish a termination date prior to shutdown" of the plan administrator/sponsor because "[i]f the plans were not terminated

Case 1:16-cv-09517-LAK-KHP Document 262-25 Filed 11/08/19 Page 14 of 19

prior to shutdown, . . . 'PBGC's long run loss [could] reasonably be expected to increase unreasonably'") (quotation omitted); other citations omitted). Furthermore, as PBGC contends, Eber Bros.' argument runs counter to ERISA's purpose of "provid[ing] for the timely and uninterrupted payment of pension benefits[,]" 29 U.S.C. § 1302(a)(2), because it would require all plan administration to cease before PBGC could assume the obligation of the plan's sponsor to pay benefits as they become due.

Finally, it bears repeating that Eber Bros. has previously represented to PBGC that "after 2007, only Eber-CT . . . had ongoing operations." PBGC SAR-000941; see also Declaration of Michael Kreps ("Kreps Dec."), Exhibit ("Ex.") J, p. 26 ("On March 30, 2007, [Eber Bros.] ceased New York state operations, resulting in the termination of over 90% of active employees. . . ."). Eber Bros. thus has recognized the distinction between conducting operations and simply existing as a holding company, and has admitted that after 2007, it was not conducting operations. However, whether the Court uses December 31, 2007, or May 31, 2009, as the earliest date of constructive notice to participants makes no difference, because both dates are before April 30, 2010, the termination date selected by PBGC.

**2. Date that Serves PBGC's Interests**

The Court now turns to the second part of the Broadway Maintenance procedure-selecting a termination date on or after the earliest date of constructive notice that best serves PBGC's interests. Broadway Maintenance, 707 F.2d at 652-53; see also

Heppenstall, 633 F.2d at 300-01 (in choosing a termination date, district court erred in "read[ing] out of the statutory standard the purpose of protecting the PBGC fund from increases in liability"). The Second Circuit has stated that a district court "is entitled to conclude" that the date proposed by PBGC "adequately serves the interests of PBGC." Broadway Maintenance, 707 F.2d at 653; see also Nastasi White, Inc., 476 F. Supp.2d at 230 (recommending adoption of termination date requested by PBGC since it "likely represents an advantageous date from [PBGC's] perspective"). PBGC has proposed April 30, 2010, as the termination date, and has affirmatively demonstrated why that date is advantageous to its financial interests, in light of the corporate transactions that occurred between and among the Controlled Group prior to April 30, 2010. As of that date, PBGC explains, "the Eber Bros. Controlled Group remained intact, and all of its members were liable to PBGC," thereby "provid[ing] PBGC the greatest likelihood of recovery." PBGC Mem. at 21 & nn. 118 & 119 (citing 29 U.S.C. § 1362(b)).

Eber Bros. asserts in a conclusory fashion that "many" participants will sustain a benefit reduction if the termination date is set as April 30, 2010. See Eber Bros. Mem. at 6. PBGC responds that, using the April 30, 2010, termination date, all 434 Plan participants except one will receive their full pension benefits. PBGC's Reply at 6 & n. 32 (citing Ex. 3, User Work-Scratch Pad; PBGC SAR-000731 (redacted version of same)). The only participant who will not receive his full benefit is Lester

Eber, who will have his overall lifetime benefit reduced by operation of the statutory guarantee limit from approximately $1.5 million to $1.25 million. Id. & n. 33 (citing Ex. 3; Ex. 4, E-mail dated 1/10/14 from Michael Gallagher, Plan Actuary, to Tim Rhodes, Actuary for PBGC; Wendy Eber; and Thomas Gigot, Esq., Counsel for Eber Bros.). In any event, the two-step process set forth in Broadway Maintenance itself adequately balances the interests of participants and PBGC. See PBGC v. Mize Co., 987 F.2d 1059, 1063 (4th Cir. 1993) ("Th[e] [Broadway Maintenance] test is based on two assumptions: (1) that the reliance interests of the participants will never be diminished by the selection of a postnotice date[;] and (2) that the date selected by PBGC adequately protects PBGC's interests."). In sum, the Court finds no reason to reject PBGC's requested termination date. Accordingly, the Court holds that the Plan's termination date is April 30, 2010.

**IV. Eber Bros. Motion to Seal**

**A. Eber Bros.' Main Request**

Concurrently with its Cross-Motion for Summary Judgment, Eber Bros. moved for permission to file that motion, as well as any related and subsequent filings in this Court, under seal. PBGC argues that Eber Bros. essentially seeks to seal the entire record, and contends that it has not met its burden of showing that disclosure would result in a sufficiently serious injury to its interests. See, e.g., Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do

not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle.").

Eber Bros. argues that its request is justified because the case has attracted little attention from the public. This is an insufficient reason for Eber Bros.' request. Eber Bros. also asserts that non-disclosure is necessary to protect its own interests. However, the Court cannot see how disclosure of information relating to it and the Plan would harm its interests, given that Eber Bros. has long been a defunct business, with no operations, employees, revenues, or assets.

Eber Bros. also argues that sealing is necessary to protect the privacy of former employees of Eber Bros. and the confidentiality of proprietary financial data belonging to Eber Bros. and an ongoing third-party business. PBGC does not dispute that such concerns are legitimate, but argues that Eber Bros.' main request is overbroad.

**B. Eber Bros' Alternative Motion to Seal**

PBGC does not oppose Eber Bros.' proposed alternative, which is to redact personal identifying information and financial information regarding Plan participants and the ongoing third-party entity. The Court finds that Eber Bros.' alternative proposal will adequately protect the interests of significance identified by Eber Bros., namely, the privacy of former employees of Eber Bros. and the confidentiality of proprietary financial data of Eber Bros. and a third-party business. Accordingly, the Court grants Eber Bros.' alternative request for relief in the Motion to Seal, and denies

EB-00010517

its request to file the entire Cross-Motion and related and subsequent pleadings under seal.

## V. Conclusion and Orders

For the foregoing reasons, PBGC's Motion for Summary Judgment is granted in full, and Eber Bros.' Cross-Motion for Summary Judgment is denied in full. Eber Bros.' Motion to Seal is granted in part to the extent as provided below, and it is hereby

**ORDERED** that as to Eber Bros.' motion to seal, Eber Bros. shall file all exhibits attached to its Cross-Motion for Summary Judgment under seal; and shall file redacted versions of its Cross-Motion for Summary Judgment and Opposition to PBGC's Motion for Summary Judgment, and shall file redacted versions of all related pleadings, memoranda, and declarations, removing personal identifying information and financial information relating to the ongoing third-party entity as identified in Eber Bros. Motion to Seal; and it is

**ORDERED** that April 30, 2010, is established as the termination date of the Plan pursuant to 29 U.S.C. § 1348(a)(4); and it is

**ORDERED** that the Plan is terminated as of April 30, 2010, pursuant to 29 U.S.C. § 1342(c); and it is

**ORDERED** that PBGC is appointed as the statutory trustee of the Plan pursuant to 29 U.S.C. § 1342(c); and it is

**ORDERED** that Eber Bros., its agents and all other persons or entities having possession, custody, or control of any records, assets, or other property regarding the Plan and any documents

required to determine the benefits payable to participants of the Plan, must transfer, convey, and deliver all such records, assets, property, and documents to PBGC as statutory trustee pursuant to 29 U.S.C. § 1342(d)(1); and it is

**ORDERED** that the Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: January 19, 2016
Rochester, New York