UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS, <br><br> Plaintiffs, <br><br> vs. <br><br> LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC., ELLIOT W. GUMAER, JR. and WENDY EBER, <br><br> Defendants, <br><br> and <br><br> EBER BROS. & CO., INC., EBER BROS. WINE AND LIQUOR CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP, EBER-METRO, LLC, and SLOCUM & SONS OF MAINE, INC., <br><br> Nominal Defendants. | Civil Action No. 16-CV-9517(LAK)(KDP) |

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
EVIDENCE AND TESTIMONY PURSUANT TO FRCP 37**

 

**FARRELL FRITZ, P.C.**
Kevin P. Mulry
Frank T. Santoro
*Attorneys for Eber Defendants*
400 RXR Plaza
Uniondale, NY 11556
Tel.: 516.227.0700
Email: kmulry@farrellfritz.com
          fsantoro@farrellfritz.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................. 1
ARGUMENT ................................................................................................................................ 2
POINT I

    MICHAEL GALLAGHER'S TESTIMONY AS TO A CRITICAL FACTUAL ISSUE IN THIS CASE SHOULD NOT BE EXCLUDED AS PLAINTIFFS HAVE KNOWN OF HIS STATUS AS A FACT WITNESS FOR YEARS AND HAVE NOT SUFFERED PREJUDICE ................................................................................................................. 2

        A.  *The Factual Issue Before the Court on the Merits* .......................................................... 2

        B.  *Michael Gallagher, His Role, and His Testimony* ......................................................... 4

            a. Plaintiffs' Assertion that the Eber Defendants Avoided Disclosure by Inducing Magistrate Parker to Conclude that the Subject of Mr. Gallagher's Testimony is Immaterial is Patently Incorrect ........................................................................ 5

            b. Plaintiffs Have Long Known that Mr. Gallagher is a Fact Witness and Defendants Should not be Barred from Offering Mr. Gallagher's Testimony on the Grounds that he was not Identified in Initial Disclosures or that he is Offering an Opinion .. 6

POINT II

    PLAINTIFFS' MOTION TO EXCLUDE DOCUMENTS FROM EVIDENCE ON THE GROUNDS THAT THEY WERE NOT PRODUCED IN DISCOVERY SHOULD BE DENIED ............................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*EMI Music Mktg. v Avatar Records*, Inc.,
   334 F. Supp. 2d 442 [SD NY 2004]......................................................................................7

*Hamilton v City of Peekskill Police Dept.*,
   2015 WL 4635692 [SD NY 2015].........................................................................................7

*Hoopes v Carota*,
   142 A.D.2d 906 [3d Dep't 1988]...........................................................................................6

*Rojo v Deutsche Bank*,
   2009 WL 3790191 [SD NY 2009].........................................................................................7

*Sealy v Gruntal & Co.*,
   1998 WL 698257 [SD NY 1998]...........................................................................................8

**Statutes and Rules**

29 U.S.C. § 1301 [a] [14].................................................................................................................3

29 U.S.C. § 1342 [a] [4]...................................................................................................................3

29 U.S.C. § 1342 [c] ........................................................................................................................3

29 U.S.C. § 1362 [a] [b] [1] [A] ......................................................................................................4

Fed. R. Civ. P. 26(a) ........................................................................................................................7

The Eber Defendants' respectfully submit this memorandum of law in opposition to Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein's motion *in limine* to limit testimony and exclude evidence at trial.

## PRELIMINARY STATEMENT

Plaintiffs assert that the Eber Defendants should be barred from offering fact witness Michael Gallagher's testimony on three grounds. First, they assert that the Eber Defendants withheld discovery by inducing Magistrate Parker to conclude that the subject of Mr. Gallagher's testimony is immaterial to this case, and that it is thus only fair to bar his testimony. Their assertion is flatly refuted by the record; it is simply not true. Defendants never made such an argument and Magistrate Parker never made such finding. His testimony is indeed material to the issues in this case. Second, they urge that Mr. Gallagher should be excluded because he was not on the Eber Defendants' list of witnesses on their initial disclosures at the outset of this case. But Mr. Gallagher has been known to Plaintiffs since well before the close of discovery. Indeed, he has been known to Plaintiffs as a crucial witness with respect to a focal point in this case for more than two years. Plaintiffs have long known that the Eber Defendants would call Mr. Gallagher as a witness and have suffered no unfair prejudice. His testimony should not be barred as a discovery sanction under these facts. Third, Plaintiffs argue that Mr. Gallagher should be barred as offering opinion testimony. But Mr. Gallagher is testifying as to the work that he performed in 2009 when working for Eber Bros. Wine & Liquor and his updating that work in 2009. He is not offering either expert or lay opinion testimony.

Beyond Mr. Gallagher's testimony, Plaintiffs' seek to exclude documents that were not produced in discovery. While the particular circumstance of each document is discussed below, generally, for each document, there is no surprise or unfair prejudice to the Plaintiffs, and no bad

1

faith or willful conduct on the part of the Eber Defendants. Nothing justifies excluding probative evidence to aid the Court in its fact-finding mission.

# ARGUMENT

## POINT I

**MICHAEL GALLAGHER'S TESTIMONY AS TO A CRITICAL FACTUAL ISSUE IN THIS CASE SHOULD NOT BE EXCLUDED AS PLAINTIFFS HAVE KNOWN OF HIS STATUS AS A FACT WITNESS FOR YEARS AND HAVE NOT SUFFERED PREJUDICE**

### A. *The Factual Issue Before the Court on the Merits*

Barring the application of preclusive legal and equitable defenses, the principal factual issue in this case is one of value. On June 5, 2012, Lester Eber (through his wholly owned company, Alexbay, LLC) received Eber Bros. Wine and Liquor Corp.'s ("Eber W&L") entire interest in Eber Bros. Wine and Liquor Metro, Inc. ("Eber Metro") in complete satisfaction of Eber W&L's indebtedness to Lester Eber (who had assigned that indebtedness to Alexbay, LLC). The issue is whether and to what extent Eber Metro's value exceeded Eber W&L's indebtedness to Lester Eber at that time. As Magistrate Parker held in her opinion and order, dated March 25, 2021, Plaintiffs must demonstrate, by clear and convincing evidence, that Lester Eber was unjustly enriched (and if so, the extent to which Lester Eber was unjustly enriched) in this transaction. If Plaintiffs do not meet this heavy burden, the Eber Defendants will prevail on this issue (March 25, 2021 Op. at 21-22, ECF No. 348). If Lester Eber was unjustly enriched, the Court must then consider the extent to which he was unjustly enriched, and fashion an appropriate equitable remedy (March 25, 2021 Op. at 22, ECF No. 348).

The Court's finding of fact as to the value of Eber Metro will depend, in part, on its factual determinations as to Eber Metro's liabilities in and around June 2012, including its liability with

2

respect to Eber W&L's defined benefit retirement plan. Eber W&L adopted the Eber Bros. Wine and Liquor Corporation Retirement Plan (the "Retirement Plan") in 1954, as sponsor, for the benefit of substantially all non-union employees of Eber W&L and Eber Metro and their beneficiaries. The Retirement Plan was a "single employer defined benefit plan", subject to minimum funding standards and the termination insurance program established under ERISA. Eber W&L, as Retirement Plan sponsor, was required to make certain minimum annual contributions to the Retirement Plan to fund benefits thereunder.

The Retirement Plan also presented "termination liability" to Eber W&L and all entities within its "controlled group," including Eber Metro and Eber Connecticut, LLC ("Eber-CT"). Enforcement of such "termination liability" falls under enforcement of the federal government's Pension Benefit Guaranty Corporation (the "PBGC"). The sponsor of a pension plan, like Eber W&L, and each member of its "controlled group" are jointly and severally liable to the pension plan for contributions necessary to satisfy the minimum funding standards imposed by the Internal Revenue Code and ERISA. A "controlled group" is a group of businesses under common control, such as a parent company (such as Eber W&L) and its 80% percent-owned subsidiary (such as Eber Metro) (29 U.S.C. § 1301 [a] [14]).

ERISA authorizes PBGC to institute administrative proceedings to terminate a plan "whenever it determines that ... the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated" (29 U.S.C. § 1342 [a] [4]). ERISA also authorizes PBGC seek a "decree adjudicating that the plan must be terminated in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or any unreasonable increase in the liability of the fund" (29 U.S.C. § 1342 [c]). Upon termination of an underfunded pension plan, the plan

3

sponsor and any entity that is a member of its controlled group on the termination date becomes jointly and severally liable to PBGC for, *inter alia*, the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan (a/k/a the "termination liability") (29 U.S.C. § 1362 [a] [b] [1] [A]).

Eber Metro's "termination liability" to the PBGC/Retirement Plan is a critical factor in determining its value and assessing Eber W&L's board of directors' actions. As Magistrate Parker held on the parties' summary judgment motions: "As made clear during oral argument, Plaintiffs do not dispute that EBWLC, Eber Metro, and Eber-CT were jointly-and severally liable for the Teamsters and PBGC underfunded pension plan liabilities. Moreover, the Eber Defendants concede that the amounts owed to the Teamsters Fund and PBGC by EBWLC, Eber Metro, and Eber-CT are disputed issues of fact that should be determined at trial because they bear on the ultimate issue of the valuation of EBWLC, Eber Metro, and Eber-CT as of the date of the Metro Transfer" (August 10, 2020 Op. at 65-66, ECF No. 314).

### B. *Michael Gallagher, His Role, and His Testimony*

Michael Gallagher, through his company, Benefits Management, Inc., provided consulting services and administrative services to Eber W&L with respect to its Retirement Plan beginning in 2007. He prepared annual actuarial valuation statements for the Retirement Plan, prepared and was involved in the preparation of numerous tax and regulatory filings with respect to the Retirement Plan, all of which were produced in discovery. His name appears in one of the first documents produced in the first tranche of discovery, and in many other documents (Exhibit A).[1] He was also was also involved in communications with PBGC on behalf of the Eber Defendants -- the PBGC aggressively pursued Eber W&L, Eber Metro, and Eber-CT to recover "termination

---

[1] All exhibit references are to the Declaration of Frank T. Santoro, dated September 13, 2021.

4

liability," including by way of a successful lawsuit in the United States District Court for the Western District of New York (the "PBGC litigation") (Exhibit B). Following this decision, the PBGC assessed termination liability against Eber W&L, Eber Metro, and Eber-CT in the amount of $5,165,764 as of April 10, 2010 (Exhibit C).

In 2009, Mr. Gallagher calculated the "termination liability" for the Retirement Plan as of May 31, 2009 in the amount of $5,555,755, as reflected in an Eber W&L waiver application to the Internal Revenue Service, which was produced during discovery (Exhibit D). Then, in December 2018, Mr. Gallagher provided a letter updating his calculation of the "termination liability" as of June 1, 2012 as $5,063,388, which was produced in 2019 (Exhibit E).

> a. Plaintiffs' Assertion that the Eber Defendants Avoided Disclosure by Inducing Magistrate Parker to Conclude that the Subject of Mr. Gallagher's Testimony is Immaterial is Patently Incorrect

Plaintiffs' motion aims to exclude Mr. Gallagher from testifying based on a flatly incorrect assertion. Plaintiffs claim that Magistrate Parker determined on a discovery motion, at the Eber Defendants' urging, that the subject of Mr. Gallagher's testimony (Eber Metro's liability with respect to the Retirement Plan) is immaterial to this case. They argue that the Eber Defendants should not be able to offer evidence on a subject that was successfully shielded from disclosure on the grounds that it is immaterial. But Plaintiffs' assertions as to Magistrate Parker's findings and the Eber Defendant's arguments on that motion are incorrect and misleading; regrettably, they are disingenuous.

In her May 13, 2019 opinion and order, Magistrate Parker found that Plaintiffs did not have "good cause" to receive and review documents relating to legal strategy and legal advice within the context of the PBGC litigation itself. More specifically, in the May 13, 2019 opinion and order (May 13, 2019 Op. at 44, ECF No. 216), Magistrate Parker appropriately concluded:

5

> [C]ommunications involving legal actions against the Eber Entities and the Entities' legal strategies in those actions or legal advice concerning their provision and administration of employee benefits [are privileged]. Plaintiffs have not met their burden of demonstrating good cause to apply the fiduciary exception to override attorney-client privilege with respect to these documents. *See, e.g.*, *Hoopes*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410. None of these communications concern issues that directly impact the Trust beneficiaries or are material to the issues in this case.

Nowhere in her May 13, 2019 opinion and order did Magistrate Parker conclude or imply that the Eber Defendants' liability to the PBGC with respect to the Retirement Plan was immaterial to this case. Rather, the extent of her ruling was that communications involving legal strategies and advice in that litigation – as contrasted with the PBGC/Retirement Plan liability itself – were subject to the attorney-client privilege (May 13, 2019 Op. at 44-45, ECF No. 216).

Plaintiffs' assertion that the Defendants urged Magistrate Parker to find that the PBGC/Retirement Plan liability is immaterial to this case is flatly refuted by the fact that Defendants moved for summary judgment on this very issue. Defendants sought a declaratory judgment that Eber W&L, Eber Metro and Eber-CT were jointly and severally liable to the PBGC with respect to the Retirement Plan. While Magistrate Parker ultimately found issues of fact on the amount of the obligation to PBGC with respect to the Retirement Plan (August 10, 2020 Op. at 65-66, ECF No. 314), Plaintiffs' suggestion that she believed (or was induced by Defendants to believe) that issue was immaterial to this case is pure fiction.

> b. Plaintiffs Have Long Known that Mr. Gallagher is a Fact Witness and Defendants Should not be Barred from Offering Mr. Gallagher's Testimony on the Grounds that he was not Identified in Initial Disclosures or that he is Offering an Opinion

Plaintiffs move from mischaracterizing Magistrate Parker's findings to feigning surprise. They argue that Mr. Gallagher was not disclosed as a witness and should thus be barred from

testifying. While Plaintiffs correctly observe that the Eber Defendants did not identify Mr. Gallagher as a witness on their initial disclosures, his status as a fact witness in this case was not a secret.

As set forth above, Defendants produced scores of documents in the course of discovery reflecting his status as a fact witness in this case. Indeed, Mr. Gallagher's contemporaneous 2009 calculation of "termination liability" with respect to the Retirement Plan as of May 31, 2009 was known to Plaintiffs long before discovery closed. Further, Mr. Gallagher's calculation of Eber Metro's termination liability as of June 2012, set forth in a letter, dated December 28, 2018, was known to Plaintiffs as of June 2019, as it was referenced in the Eber Defendant's expert report, and was produced in July 2019. Plaintiff Daniel Kleeberg even testified about an e-mail that Mr. Gallagher transmitted about his own pension benefits in 2014 (Exhibit F). Further, the Eber Defendants identified Mr. Gallagher as a trial witness on the joint pre-trial order, dated May 14, 2021 (May 14, 2012 Order 19, ECF 356).

The Eber Defendants' omission of Mr. Gallagher in their initial disclosures at the outset of this case under these circumstances does not support an order of preclusion. They were never keeping Mr. Gallagher a secret, and under applicable law, the Court should consider this, along with the importance of his testimony, and whether Plaintiffs would suffer unfair prejudice in its calculus as to whether to exclude his testimony (*Hamilton v City of Peekskill Police Dept.*, 2015 WL 4635692 [SD NY 2015]). This Court has denied motions to strike and motions to preclude a witness who was not included in initial disclosures under FRCP Rule 26(a), where, like here, the moving party learned of the witness during the course of discovery (*Rojo v Deutsche Bank*, 2009 WL 3790191 [SD NY 2009] [failure to disclose witnesses in Rule 26(a) disclosures was harmless because the witnesses "were referred to in documents produced during discovery"];

7

*Mktg. v Avatar Records*, Inc., 334 F. Supp. 2d 442, 445 [SD NY 2004] [denying preclusion where witnesses were identified in a pretrial order more than two months before trial and moving party learned of witnesses and exhibits during discovery]; *Sealy v Gruntal & Co.*, 1998 WL 698257 [SD NY 1998] [denying motion to preclude where identities of witnesses were disclosed during deposition testimony]).

  Here, Plaintiffs have understood that Mr. Gallagher is a witness for years, dating back to before discovery closed. He is an important witness, as his work with respect to the Eber W&L Retirement Plan is directly relevant and material for the Court, as the trier of fact, to consider. The Court may draw inferences from his testimony with respect to Eber Metro's "termination liability" attendant to the Eber W&L Retirement Plan. Plaintiffs knew that Mr. Gallagher was a critical witness in this case from, at the latest, the date that they received Defendants' expert's report. They also knew of the existence of the December 19, 2008 letter dating back more to than 2 years ago. But Plaintiffs' chose to wait until 6 days prior to the beginning of trial to seek to exclude his testimony claiming, in part, unfair prejudice. Their dubious claim of surprise and unfair prejudice is clearly refuted by the record.

  Finally, Plaintiffs also seek to exclude Mr. Gallagher on the grounds that he is offering expert testimony without having been properly disclosed as an expert witness, or, alternatively, that he is offering prohibited opinion testimony as a lay witness. But he is not offering opinion testimony. Mr. Gallagher is testifying as to the work that he performed for Eber W&L and the results of his work. He is testifying, *inter alia*, that performed an actuarial valuation in August 2009 in connection with an IRS filing which reflected a "termination liability" for the Retirement Plan as of May 31, 2009, and that he employed the same formula in 2018 which reflected a "termination liability" for the Retirement Plan as of June 1, 2012. The actuarial "termination

liability" as reported to the IRS in 2009 was merely updated in 2018 and is not an expression of an opinion in any respect. As Mr. Gallagher states in his letter, it is a calculation.

## POINT II

### PLAINTIFFS' MOTION TO EXCLUDE DOCUMENTS FROM EVIDENCE ON THE GROUNDS THAT THEY WERE NOT PRODUCED IN DISCOVERY SHOULD BE DENIED

The Eber Defendants have offered a handful of documents as proposed trial exhibits that were not produced in discovery. To the extent that Plaintiffs' document requests called for their production, Defendants' responses to Plaintiffs' interrogatories reflects good faith efforts were made to identify and produce documents demanded in Plaintiffs' requests for production of documents, by way of word search and other efforts. The Eber Defendants' response to Plaintiff Audrey Hays' Interrogatories, dated July 26, 2018, details the process by which the Eber Defendants sought to recover and produce documents responsive to Plaintiffs' demands (Exhibit G). Letters exchanged between counsel in late 2018 further drove into the details of Plaintiffs' good faith efforts to secure and produce documents (Exhibit G). Notably, Plaintiffs' made six separate document requests in the course of discovery that demanded production of tens of thousands of pages of documents (ultimately, the Eber Defendants produced nearly 40,000 pages of documents). Plaintiffs' expectation of a perfect document production simply does not square with reality.

Moreover, the existence of these documents was evident from document that the Eber Defendants produced, and are not prejudiced by their being offered into evidence. They even had ample opportunity to follow up with the Eber Defendants in the course of discovery to requests for these documents and it does not appear that they did so. In sum, the Eber Defendants did not willfully or contumaciously withhold these documents, and did not keep them a secret, and

9

Plaintiffs are not unfairly prejudiced with them coming into evidence. A document by document analysis confirms as much.

- Proposed Exhibit ZZZZ, is a Worker Adjustment and Retraining Notification ("WARN notice") that was provided to Eber W&L's employees in its Albany office. As Plaintiffs point out this notice is 14 years old, and advises employees of the closing and layoff dates in accordance with applicable law. The Order of the Hon. Michael Telesca, dated January 19, 2016, refers to WARN notices given to Eber W&L employees and their public availability as filed with the New York State Department of Labor (Exhibit B, p.10, fn 2). There is absolutely no prejudice associated with this notice coming into evidence.

- Similarly, Exhibit X is a publicly available document. It is a decision and order of the Supreme Court, Monroe County, dated April 21, 2005, in the lawsuit that Eber W&L commenced against Southern Wine & Spirits of America, Inc. and other persons (Exhibit H). This lawsuit was settled and the documents associated with that settlement have in part, been proposed by Plaintiffs trial exhibits. There is no prejudice to Plaintiffs in this document being offered into evidence.

- Exhibit DDDD is another document that appears in the public record. This document is referenced in the Order of the Hon. Michael Telesca, dated January 19, 2016. Plaintiffs knew that this document existed, understood its import, and are not prejudiced by it being offered into evidence (Exhibit I).

- Plaintiff is correct that Exhibit DDDDD is the first 7 pages of a 53-plus-page document from 1977, including a digest of the Eber W&L Retirement Plan, and the first few pages of the Retirement Plan in existence at the time. This sets forth the history of the adoption of the Retirement Plan, and its amendments leading up to that point. There does not appear to be any

dispute as to these facts, and this document, which substantiates the Retirement Plan, is not prejudicial to Plaintiffs in the least. Further, if the Eber Defendants had the complete Retirement Plan as of 1977 they would surely produce same.

- Finally, Plaintiff complains about Exhibit NNNN, which is Eber W&L's Retirement Plan's audited financial statement for the years 2011 and 2012 (Exhibit J). But it does not appear that this document falls into the category of any documents that Plaintiffs demanded in their six separate requests for production. But even if one of Plaintiffs' demands could be construed to request this document, it was not deliberately withheld from disclosure. The Retirement Plan's financial statements are referenced in other documents produced in disclosure and would have been have been produced if clearly and unambiguously requested. Again, there is no unfair prejudice to Plaintiffs by including this document as a trial exhibit.

Plaintiffs have known of the existence of the foregoing documents, many of which are or were publicly available, and many of which the Eber Defendants could have identified, located, and produced if they had been identified in a way that made them easier to locate and turn over. Moreover, while Plaintiffs suggests that counsel is "sniffing for truffles this late in the game," these documents are not "truffles." They are largely foundational, and admitting them into evidence serves to ensure a clearer presentation of the facts to aid the Court in its truth finding charge without unfairly prejudicing Plaintiffs. They should not be excluded.

Dated: Uniondale, New York
September 13, 2021

        FARRELL FRITZ, P.C.

By: *s/Frank T. Santoro*
Kevin P. Mulry
Frank T. Santoro
*Attorneys for Defendants and Nominal Defendants*
400 RXR Plaza
Uniondale, NY 11556
Tel.: 516.227.0700
Kmulry@farrellfritz.com
fsantoro@farrellfritz.com

TO:    Brian C. Brook, Esq.
Brook & Associates, PLLC
*Attorneys for Plaintiffs*
100 Church Street, Floor 8
New York, New York 10007
(212) 256.1957
brian@brook-law.com