# BROOK & ASSOCIATES, PLLC
## NEW YORK | NEW JERSEY

**BRIAN C. BROOK**
BRIAN@BROOK-LAW.COM

100 CHURCH STREET
FLOOR 8
NEW YORK, NY 10007
TEL: (212) 256-1957

September 13, 2021

**By Email**

The Honorable Lewis A. Kaplan
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:** *Daniel Kleeberg et al. v. Lester Eber et al.,* 1:16-cv-09517-LAK-KHP
**Response to Defense Objections to Glenn Liebman Testimony**

Dear Judge Kaplan,

On behalf of Plaintiffs, I write in response to Defendants' letter submitted late this afternoon in which they objected to certain aspects of Glenn Liebman's expert testimony. By raising this issue now, Defendants have opened the door for this Court to consider an important point of law that could significantly simplify the trial and avoid the waste of time on legally irrelevant issues.

**The New York Court of Appeals Has Held that Courts Should Consider the Current Valuation of Assets Taken from a Trust When Crafting a Remedy**

Defendants' primary objection is to Liebman's opinions that seek to approximate the *current* value of Eber-CT (and, by extension, its parent, Eber Metro). Defendants' objection should be overruled because New York law requires that the appropriate remedy for breach of trust is to restore the beneficiaries to the position they would have been in but for the breach of trust, including taking into account any appreciation in value of misappropriated assets.

The New York Court of Appeals' seminal decision on breach-of-trust remedies, *In re Estate of Rothko*, 43 N.Y.2d 305, directly contradicts Defendants' efforts to focus the evidence on a single moment in time. Specifically, *Rothko* holds that when there is trustee self-dealing in breach of the duty of loyalty, a plaintiff is entitled to seek appreciation damages if the misappropriated assets have increased in value since the date of the transfer. In fact, in *Rothko*, the plaintiffs were entitled to appreciation damages even though the assets in question had previously been sold for significantly less than the value at the time of trial:

> Here, the executors, though authorized to sell, did not merely err in the amount they accepted but sold to one with whom Reis and Stamos had a self-interest. To make the injured party whole, in both instances the quantum of damages should be the same. In other words, since the paintings cannot be returned, **the estate is**

> *therefore entitled to their value at the time of the decree, i.e., appreciation damages.* These are not punitive damages in a true sense, rather they are damages intended to make the estate whole. Of course, as to [the trustees and the companies through which they sold trust assets] these damages might be considered by some to be exemplary in a sense, in that they serve as a warning to others, but their true character is ascertained when viewed in the light of overriding policy considerations and in the realization that the sale and consignment were not merely sales below value but *inherently wrongful transfers which should allow the owner to be made whole*.

*Id.* at 322 (internal citations omitted) (emphasis added).[1] *See also Matter of Garrasi*, 943 N.Y.S.2d 791, 791, 2011 N.Y. Misc. LEXIS 5530, *32, 2011 NY Slip Op 52096(U) (Surrogate's Court, Schenectady Cty 2011) (citing *Rothko* and collecting other authorities) ("Based on the above finding that the Petitioners' actions constituted a breach of trust that violated their duties as the fiduciaries of the Trust at issue, the Court finds that it is appropriate to impose damages against the Petitioners in order to make the trust whole."). This law is not unique to New York, as the Restatement, Third, of Trusts § 205(b) (1992) provides that a "trustee who commits a breach of trust is chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered."

Thus, if Plaintiffs were seeking damages, *Rothko* and its progeny would make Liebman's opinion of the value near the time of trial indisputably relevant—even, arguably, more relevant than the valuation at the time of the transfer.[2] There is no conceivable reason why the fact that Plaintiffs want equitable relief in the form of a reconveyance and constructive trust would make an assessment of current value any less relevant. Indeed, the present value of Eber-CT and Eber Metro are critical data for determining the necessary scope of a constructive trust and ensuring that, as the no-further-inquiry rule demands, the Plaintiffs, as beneficiaries of the Eber Trust, are truly returned to the position they would have been in but for Lester Eber's malfeasance.

Defendants offer zero legal support for their contention that an unjust-enrichment inquiry is limited to a single moment in time when a wrongful act occurred without considering how things panned out. In fact, their own argument contradicts that assertion— Defendants concede that, in an unjust-enrichment inquiry, this Court should examine not just whether Lester was enriched, but also "the *extent* to which Lester Eber was unjustly enriched." Def. Letter 1 (emphasis added)[3]

---

[1] The *Rothko* Court reached this conclusion even though the self-dealing was not so egregious as to warrant application of the no-further-inquiry rule.

[2] Plaintiffs would have considered seeking damages if there were any realistic hope of collecting even a fraction of the difference between the current value of Eber-CT and the amount of supposed debt that Lester relinquished to obtain it. The only realistic path to bring this family drama to a close is to restore ownership and permit the majority owners to try to sell the company and divide the proceeds according to their respective property interests and any other equitable decrees by this Court necessary to make Plaintiffs whole.

[3] Defendants' fly-by-night assertion that Plaintiffs must establish unjust enrichment by "clear and convincing" evidence even after establishing a violation of the no-further-inquiry rule—or *any* breach of an express trust for that matter—is unsupported by any case law and wrong. Plaintiffs are not asserting an independent claim for a constructive trust, which arises when property is taken and equity demands treating it as if it was held in trust. Here, it is undisputed that there was a *de jure* trust, and for the most part it is undisputed as to which assets were part of the trust. One could argue it is a misnomer to call the preferred remedy "a constructive trust" for breach of an express trust, but it makes some sense when, at the time of the decree, the asset has been removed from the trust.

September 13, 2021                                                                                      BROOK & ASSOCIATES
Page 3

Because the goal of any remedy for a breach of the duty of loyalty by a trustee is to restore the plaintiffs to the position they would have been in but for the breach, this Court must consider the current value of Eber-CT and Eber Metro in order to determine and craft the appropriate relief.

**Alternatively, the Court Should Proceed Now to Correct Magistrate Judge Parker's Clear Error in Ordering a "Further Inquiry" Regarding Unjust Enrichment Notwithstanding Holding that the "No Further Inquiry" Rule Applies**

The Court can nip this issue in the bud, and need not concern itself with the relevance of Liebman's testimony, if it instead rules that a reconveyance and a constructive trust are appropriate, irrespective of whether Lester Eber was unjustly enriched, under the no-further-inquiry rule. Indeed, that is the correct course as a matter of New York law and judicial economy alike.

Judge Parker correctly held that "Lester committed a breach of [t]rust and the transfer of Eber-CT to Alexbay [i.e. the Metro Transfer] is void under the no further inquiry rule." Reconsideration Op. 18. New York case law is clear that when a trustee engages in a transaction that violates the no-further-inquiry rule, the beneficiaries "are *entitled* to imposition of a constructive trust and subsequent reconveyance":

> The remedy of a constructive trust is peculiarly suited to circumstances in which a fiduciary has been guilty of self-dealing. "A constructive trust is then the remedial device through which preference of self is made subordinate to loyalty to others"

*Matter of Birnbaum v. Birnbaum*, 117 A.D.2d 409, 420 (4th Dept. 1986) (quoting *Meinhard v. Salmon*, 249 NY 458, 467 (1928) (Cardozo, C.J.); citing Bogert, Trusts § 87 (5th ed 1973)) (emphasis added).

Despite ruling that the transfer was "void" and recognizing that some form equitable relief was appropriate, Judge Parker declined to say that the "void" transaction should be unwound. Judge Parker clearly erred when she instead stated that "the self-dealing party must have been unjustly enriched for a constructive trust to be the appropriate remedy," Reconsideration Op. 20.

Just the opposite, New York law is crystal clear: "Where self-dealing is found, the fairness or unfairness of the transaction is immaterial and not considered by the court. Thus, where a fiduciary has transferred estate or trust property to himself, the court will not consider the fairness or unfairness of the transaction nor consider whether or not full consideration was paid." *In re Parisi*, 34 Misc. 3d 1204(A), 946 N.Y.S.2d 68 (Sur. Ct. Queens County 2011), *aff'd as modified*, 975 N.Y.S.2d 459. See also *In re Parisi,* 975 N.Y.S.2d 459, 462 (App. Div. 2d Dep't 2013) ("Under that per se rule, the court is generally required, upon challenge by a beneficiary, to set aside a transfer of property, held in trust by a fiduciary, to the fiduciary himself or an entity in which he or she has an interest.").[4]

---

[4] The only exception to this "per se rule" is if the trustee has resold the property to a bona fide purchaser. *Birnbaum*, 117 A.D. 2d at 420. Otherwise, "the beneficiaries can insist upon a reconveyance of the property." *Id*. Notably, even if *Rothko* had applied the no-further-inquiry rule to less egregious self-dealing, the paintings had already been sold.

Judge Parker's contrary conclusion relied on a single case, *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004), which had nothing to do with self-dealing of any kind, let alone breach of the no-further-inquiry rule. Notably, Defendants never argued that a constructive trust could not be imposed without showing unjust enrichment, as nothing in the case law even suggested that possibility. This was an issue that Judge Parker raised *sua sponte* for the first time in her reconsideration opinion.[5]

Prior to her reconsideration, Judge Parker acknowledged the consequences of the rule:

> As explained by the Second Circuit: "Under the higher standard of undivided loyalty, the law 'stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, ***without undertaking to deal with the question of abstract justice in the particular case***.'"

Summary Judgment Op. 50 (quoting *Renz v. Beeman*, 589 F.2d 735, 744 (2d Cir. 1978) (quoting *Wendt v. Fischer*, 243 N.Y. 439, 444 (1926); and *Munson v. Syracuse, Geneva & Corning R.R.*, 103 N.Y. 58, 74 (1886))) (emphasis added). *See also* Summary Judgment Op. 51 ("Upon finding that the no further inquiry rule is implicated, 'the court is generally *required*, upon challenge by a beneficiary, to set aside a transfer of property, held in trust by a fiduciary, to the fiduciary himself or an entity in which he or she has an interest.'") (quoting *In re Parisi*, 111 A.D.3d at 943) (emphasis added).

The no-further-inquiry rule means exactly what its name says: there need be, and should be, <u>no further inquiry</u> before a transaction must be ordered unwound. Here, the no-further-inquiry rule applies, and the case law makes clear that Plaintiffs are entitled to a reconveyance and a constructive trust, irrespective of the fairness of the Alexbay transaction. The Court should rule that the fairness of the Metro Transaction is not at issue in determining the equitable relief to which Plaintiffs are entitled, as the no-further-inquiry rule mandated by New York law demands.

**The Formula Used to Value Eber-CT Is Unchanged from 2018 to 2020, But the Underlying Data Has Been Updated to More Closely Estimate Current Value**

In Liebman's 2019 report, the last available financial information was as of May 31, 2018, so he offered an opinion as of that date. Now, the latest information provided to Plaintiffs is from May 31, 2020, so his opinion has been updated.[6] This is not a new opinion.

Defendants' arguments are misplaced. First, *Camarata* is a case where the plaintiff made no initial disclosure of an expert at all, not one where the expert sought to expand or update his

---

[5] Judge Parker granted reconsideration after having similarly raised the defense of beneficiary consent *sua sponte*, even though Defendants had expressly waived that defense in their motion papers.

[6] Indeed, to avoid any such objections, Liebman retained the same EV/R multiple he used in 2019 even though he identified several reasons why the multiple should probably be increased, including heightened valuations in the market overall.

opinion. Second, supplementation of an expert's opinion is permitted (so long as the original opinion was timely disclosed per Rule 26(e)(2) at the time of pretrial disclosures) where it does not offer new theories or opinions but just updates damages calculations to present values. *See, e.g.*, *Junger v. Singh*, 514 F.Supp.3d 579, 591 (W.D.N.Y. 2021).

**Defendants Do Not Understand Accounting Terminology**

In arguing that Liebman's testimony crosses the line into ultimate issues of fact or legal conclusions, Defendants demonstrate their ignorance of accounting terminology. It is far from clear that concepts like "arm's length transaction" are legal conclusions at all, but assuming *arguendo* that they are, that does not mean that the Court cannot hear evidence applying those concepts from the perspective of an accountant and business appraiser.

For example, Liebman's opinion about a related party transaction as defined by Generally Accepted Accounting Principles (GAAP) is not even arguably a legal opinion. That opinion was offered based on the shocking revelation less than two weeks ago that the Ebers had concealed a 2012 employment agreement that resulted in Lester Eber's estate (i.e., Wendy) receiving a $675,000 golden (death) parachute. Liebman's testimony merely confirmed that the language of one of Plaintiffs' interrogatories (based on GAAP) required that disclosure

Similarly, Liebman's opinion that the Polebridge Bowman transaction between Lester Eber and his lawyer, which Lester said was at least in part as a form of compensation (so he claims, though we will show even that is unequivocally false), was not arm's length. This conclusion does not reach the ultimate issue in the case of whether the transaction should be declared a sham and unwound.[7] Rather, Liebman is stating that, based on his years of experience as both a business appraiser and a forensic accountant, the transaction has too many features that deviate from a market-based transaction to serve as a reliable data point for a fair market valuation analysis. Regardless of whether he uses the label "not arm's length," the opinion will be the same. And particularly since this is a bench trial, there is no risk of confusion to the factfinder.

As for the subsidiary opinion about the 2% interest rate charged on the Polebridge Bowman transaction, that is helpful opinion testimony. Again, since this is a bench trial, it may be beating a dead horse for him to say it, but it is worth Liebman explaining that that interest rate at which Eber Metro loaned money out was so much lower than the interest rate Eber Metro was being charged to borrow money at the time (from Lester)—by a factor of 6.25x (12.5% vs. 2%), that it is a significant factor in his conclusion that the Polebridge Bowman transaction is not a reliable indicator of fair market value.

---

[7] *Cf.* Federal Rule of Evidence 704, permitting expert testimony that goes to ultimate issues.

September 13, 2021                                                                                       BROOK & ASSOCIATES
Page 6

Finally, Liebman's opinions about what constitute liabilities of various companies in an ownership chain is offered merely based on his business and accounting experience. He knows very well (better than defense expert Frank Torchio, who is not an accountant) how companies are supposed to account for liabilities, including the particularly tricky category of contingent liabilities. His opinions are not legal conclusions, but rather conclusions about how a reasonable investor would be likely to consider a parent corporation's liabilities when valuing a subsidiary.

To be sure, Liebman is not an expert on ERISA law. And unlike Torchio, Plaintiffs did not feed Liebman any self-serving "legal assumption" to blindly adopt in lieu of applying his own expertise. Plaintiffs asked Liebman to do his job as he ordinarily would. Admitting Liebman's expert opinion will not in any way impair this Court from being free to hold—over Plaintiffs' objection—that Defendants can take advantage of their loss to PBGC in the 2016 W.D.N.Y. court ruling that retroactively imposed pension plan funding liabilities on Eber Metro to treat the liability as if it had been a legal certainty in 2012—even though the reality was that, at the time of the transfer, it was only a contingent liability, and one that Defendants spent somewhere in the neighborhood of $1 million in legal fees fighting. Plaintiffs' view is that Defendants' argument is sheer lunacy, since the W.D.N.Y. imposed liability by *disregarding* the very transactions Defendants now seek to uphold, but admitting Liebman's non-legal opinion would in no way preclude this Court from adopting that defense argument.

We thank the Court for its attention to this matter.

                                                                                      Respectfully submitted,

                                                                                       Brian C. Brook

cc:      All counsel of record