# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DANIEL KLEEBERG, LISA STEIN, and
AUDREY HAYS,

                Plaintiffs,

      v.

WENDY EBER, in her individual
capacity and as Executrix u/w/o LESTER
EBER; ALEXBAY, LLC f/k/a LESTER
EBER, LLC; LUCIA GORDON GUMAER
and PATRICK D. MARTIN solely in their
capacities as Executors under the will
of ELLIOTT W. GUMAER, JR.; and,

                Defendants,

    and

EBER BROS. & CO., INC.; EBER BROS.
WINE AND LIQUOR CORP.; EBER
BROS. WINE & LIQUOR METRO, INC.;
EBER-CONNECTICUT, LLC; EBER-
RHODE ISLAND, LLC; EBER BROS.
ACQUISITION CORP.; EBER-METRO,
LLC; SLOCUM & SONS OF MAINE, INC.;
and CANANDAIGUA NATIONAL BANK
& TRUST COMPANY,

                Nominal Defendants.

Civil Action No. 16-CV-9517(LAK)(KHP)

---

## PLAINTIFFS' BRIEF REGARDING SUBJECT MATTER JURISDICTION

---

Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Brian@brook-law.com
*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein,
and Audrey Hays*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ................................................................................................................... 1

I.  *Princess Lida* Is a "Prudential Doctrine of Abstention" that Requires an Ongoing State Proceeding and Is Subject to Waiver .................................................................. 1

II.  This Case Was Filed First, and the Surrogate's Court Has Not Exercised Permanent Quasi In Rem Jurisdiction Over the Trust Since 1970 ...................................................... 4

III.  Plaintiffs' Claims Are Not Quasi in Rem Because No Defendant Was Sued In Their Official Capacity as a Trustee ........................................................................... 7

IV.  Defendants Grossly Overreach In Seeking Dismissal of Corporate Law Claims, Which Afford Full Relief ......................................................................................... 10

CONCLUSION ............................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010)............................................................ 2

*Barnes v. Brandrup*, 506 F.Supp. 396 (S.D.N.Y. 1981)........................................ 4, 5, 6

*Bassler v. Arrowood*, 500 F.2d 138 (8th Cir. 1974) ...................................................... 7

*Beach v. Rome Trust Co.*, 269 F.2d 367 (2d Cir. 1959)......................................... 6, 8, 11

*Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83 (2d Cir. 1999) ...................... 1

*Cooperatieve Rabobank U.A. v. Crowe LLP (In re Miami Metals I, Inc.)*,

 625 B.R. 593 (S.D.N.Y. Bankr. 2021)....................................................................... 2

*Dailey v. Nat'l Hockey League*, 987 F.2d 172 (3d Cir. 1993) ...................................... 1

*Flather v. United States Trust Co.*, 93-cv-7504(RPP), 1994 U.S. Dist. LEXIS 9716

 (S.D.N.Y. July 15, 1994) ........................................................................................... 6

*Genovese v. Genovese*, 1:15-CV-00064-BR, 2016 U.S. Dist. LEXIS 125998,

 2016 WL 4945318 (W.D. Pa. Sept. 16, 2016)..................................................... 7, 10

*Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508 (1st Cir. 2009)...................... 2

*Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174 (2d Cir. 2018)............ 1

*Marcus v. Quattrocchi*, 715 F. Supp. 2d 524 (S.D.N.Y. 2010) .................................... 8

*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275 (1939) ............. *passim*

*Reichman v. Pittsburgh Nat'l Bank*, 465 F.2d 16 (3d Cir. 1972)................................... 4

*Renz v. Beeman*, 589 F.2d 735 (2d Cir. 1978) .............................................................. 8

*Rousseau v. United States Trust Co.*, 422 F. Supp. 447 (S.D.N.Y. 1976)................. 5, 6

*Weingarten v. Warren*, 753 F.Supp. 491, 495 (S.D.N.Y. 1990)................................... 6

**Statutes**

N.Y. B.S.C. § 720 ......................................................................................................... 11

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................... 1, 2

Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein respectfully submit the following brief regarding Defendants' argument that this Court lacks subject matter jurisdiction.

## ARGUMENT

In a truly last-ditch effort to evade judicial scrutiny of their pervasive misconduct, Defendants have dropped their claim that Lester was entitled to take all of the Trust's shares of EB&C to divest Plaintiffs of standing and, in its stead, they contend that this Court never had subject matter jurisdiction because of the Supreme Court's decision in *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275 (1939). Defendants' argument depends on this Court rejecting the prior rulings of the Second Circuit and this Court (both in this very case and in others). Defendants of course fail to disclose any of that contrary authority.

## I.   *PRINCESS LIDA* IS A "PRUDENTIAL DOCTRINE OF ABSTENTION" THAT REQUIRES AN ONGOING STATE PROCEEDING AND IS SUBJECT TO WAIVER

Relying on Third Circuit precedent, Defendants argue that the *Princess Lida* doctrine divests this Court of subject matter jurisdiction. Def. F&C ¶ 489 (quoting *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993)). However, the Second Circuit takes a different approach, treating *Princess L*ida as "a rule of comity or abstention, rather than one of subject matter jurisdiction." *Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999). *Carvel*'s holding that *Princess Lida* is "a prudential doctrine of abstention," *id.* at 85, is still good law.[1] This Court is obliged to follow that precedent and treat Defendants' argument as a request to abstain in favor of the Monroe County Surrogate's Court.

The distinction is important. A problem with subject matter jurisdiction at the time of filing would require dismissal,[2] even though the Surrogate's June 1, 2017 Termination Order

---

[1] The Second Circuit most recently cited *Carvel* with approval in *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 192 (2d Cir. 2018) (holding that "the prior exclusive jurisdiction doctrine does not generally apply to situations where one action is in rem and the other in personam").

[2] On subject matter jurisdiction, this Court has already correctly held that the probate exception does not apply because Plaintiffs' claims are in personam. Opinion Denying Mot. to Dismiss ("MTD Op.") 3 (ECF No. 57). The Eber Defendants elected not to file a Rule 12(b) motion of their own, even as the other Defendants did so. Rule 12(b) is explicit that a motion asserting such a defense "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

(Ex. 33) unmistakably relinquished any quasi in rem jurisdiction it had arguably been holding. But because *Princess Lida* is about abstention, this Court need only consider whether now—at this point in time—there is a parallel proceeding in state court to which this Court must defer.

Seeking abstention in favor of the Surrogate's Court at this point in time is ridiculous because there is no way to characterize the Surrogate's Court as currently exercising jurisdiction over any part of the Trust or its corpus given the order to *terminate* the Trust issued in June 2017. Ex. 33. For Defendants to have asserted any credible argument for abstention, Lester ought to have filed an accounting in the Surrogate's Court a long time ago. He chose not to, and instead committed to the (also ridiculous) claim that *his* going-forward duties were terminated by the Order discharging CNB, even though he simultaneously claimed that CNB was not discharged because the EB&C stock had not been distributed (due to Lester's and Wendy's own actions).

Moreover, because abstention is a prudential doctrine, rather than a constitutional one, the Court is not obligated to consider an unpreserved question of abstention. Abstention is an affirmative defense that is subject to waiver, even when it is mandatory. *See, e.g.*, *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010); *Cooperatieve Rabobank U.A. v. Crowe LLP (In re Miami Metals I, Inc.)*, 625 B.R. 593, 598 (S.D.N.Y. Bankr. 2021) ("There can be no doubt that the right to seek mandatory abstention can be waived by any party.") (cleaned up); *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 517 (1st Cir. 2009) (holding that "abstention is a waivable defense"). A *Princess Lida* problem specifically arises when there is an inability to exercise jurisdiction over a res; such a jurisdictional defect is more akin to a fault in personal jurisdiction than subject matter jurisdiction. And a defense of "lack of personal jurisdiction" is certainly subject to waiver if not raised by making a motion to dismiss or the answer. *See* Fed. R. Civ. P. 12(h)(1)(B) (permitting waiver of Rule 12(b)(2) defense).

By failing to raise this issue even during the trial and asserting affirmative defenses that were inconsistent with *Princess Lida* abstention, Defendants waived their new *Princess Lida* argument. To avoid the clear conflict with their new arguments, Defendants have dropped their Tenth, Eleventh, and Fifteenth Affirmative Defenses:

2

TENTH AFFIRMATIVE DEFENSE[3]

23. The transfer restrictions and call rights contained in Article XII of the Eber Bros. & Co.'s by-laws are/were binding on the Trust and on CNB.

ELEVENTH AFFIRMATIVE DEFENSE

24. The Eber Bros. & Co. stock certificates state "this Certificate and the shares represented thereby ... shall be held subject to all of the provisions of ... the By-Laws and Amendments."

FIFTEENTH AFFIRMATIVE DEFENSE

28. Lester Eber had no fiduciary duties as trustee following the Surrogate's Court Termination Order.

Amend. Answer (ECF No. 241). The Court will recognize these as relating to whether Lester could take Plaintiffs' shares in EB&C that were supposed to be distributed from the Trust—and issue that was heavily litigated at summary judgment and through trial. *See, e.g.*, Hays Decl. ¶¶ 33–46; Wendy Decl. ¶¶ 162–188; Pl. F&C ¶¶ 277–306, 459–464.

As CNB's Hawks testified, one of the main reasons for filing the 2017 petition to terminate the Trust and distribute shares to Plaintiffs was to enable Plaintiffs to pursue their claims against Lester and Gumaer. Hawks Dep. 87:13–89:2. Now, rather than trying to intercept Plaintiffs' shares from CNB, Defendants contend that CNB's failure to deliver the shares to Plaintiffs means that the Surrogate's Court continues to retain jurisdiction over this entire case. But the only reason CNB did not immediately deliver the EB&C shares to Plaintiffs and Lester was because of Wendy's claim that she could not locate the stock register followed by Lester's demand that CNB transfer all of the shares to him instead.

Thus, *Lester* was the one seeking to interfere with the administration of the Trust and distribution of its corpus.[4] But now, several years later, Defendants withdraw that attempt and

---

[3] Plaintiffs' Reply erroneously referenced the Twelfth affirmative defense instead of the Tenth. Posttrial Reply 2 n.3.

[4] Any potential for conflicting or duplicative orders based on Plaintiffs' claims was eliminated when Plaintiffs amended their complaint based on that accounting proceeding to withdraw the request that this Court remove the trustees and to remove the request for an(other) accounting from CNB. *Compare* Complaint 23 (ECF No. 1) *with* First Amended Complaint 29 (ECF No. 85).

contend that Plaintiffs are the ones who are trying to bend or break the rules. Their inconsistent defenses up until two weeks ago constituted an unequivocal waiver of the defense they now seek.

This Court should additionally hold that, even if the defense were not waived, and even if it made any sense to abstain in favor of the Surrogate's Court after its June 1, 2017 Order, *Princess Lida* is inapplicable for several reasons, discussed below.[5]

## II.   THIS CASE WAS FILED FIRST, AND THE SURROGATE'S COURT HAS NOT EXERCISED PERMANENT QUASI IN REM JURISDICTION OVER THE TRUST SINCE 1970

By its own terms, *Princess Lida* applies when there is a previously filed state accounting action. When the federal action is filed before the accounting, however, courts—including the Third Circuit—have found *Princess Lida* inapplicable. *See Barnes v. Brandrup*, 506 F.Supp. 396 (S.D.N.Y. 1981); *Reichman v. Pittsburgh Nat'l Bank*, 465 F.2d 16, 18 (3d Cir. 1972). Here, this federal case was indeed filed first. Therefore, to the extent that any of Plaintiffs' claims could be characterized as *quasi in rem*, there was no lack of jurisdiction in this Court unless the Court accepts Defendants' characterization—unsupported by any case law—that the Surrogate Court has *continuing* and *exclusive* jurisdiction over a testamentary trust from the moment when probate of the estate begins until the moment when the Surrogate Court finally terminates the trust and discharges all trustees.[6]

In Defendants' view, *Princess Lida*'s requirement that the state court's exercise of quasi in rem jurisdiction be first is met by showing that *some* act of trust administration occurred in the past and the trust was not yet terminated. *See* Def. F&C ¶ 500 ("The Surrogate's Court had exercised in rem jurisdiction over the Trust and its assets dating back to 1970."). So, if there was an accounting at *any* point in the past, Defendants say that the Surrogate's Court retains exclusive jurisdiction over all claims relating to the Trust, including any derivative claims that

---

[5] Because Plaintiffs were unable to find a case where *Princess Lida* abstention was specifically deemed waived by the Second Circuit, Plaintiffs are concerned that a finding of waiver alone might risk extending these proceedings with a remand even though Defendants' substantive arguments are riddled with holes.

[6] Actually, Defendants do not say when that jurisdiction ends, perhaps because they also face an uphill battle in claiming that this Court should abstain in favor of the Surrogate's Court when that court has terminated the Trust.

might be asserted by the trust beneficiaries. *Id.* ¶ 506 (arguing that claims against Wendy must be dismissed because Plaintiffs' standing "derives strictly from their interest in the Trust over which the Surrogate's Court has exercised in rem jurisdiction"). Defendants point to no authority for their proposition, which is predicated on conflating the concepts of "supervisory power" and jurisdiction. *Id.* ¶¶ 496–497. They are not the same thing.

"[T]he mere existence of power to supervise the administration of a trust does not mean that jurisdiction is in fact being exercised; some affirmative steps by the trustee or court are required for jurisdiction to attach over the corpus." *Barnes*, 506 F. Supp. at 401 ("Accountings were filed in 1973 and 1975…. Following the settlement of an account "the corpus is reawarded to the trustee for further administration … of the trust." Nothing happened in connection with the trusts in this case between settlement of the 1975 accounting and the filing of the federal complaint. The federal action was therefore first filed.") (quoting *Princess Lida*, 305 U.S. at 464).

*Barnes* considered a Connecticut trust, as was at issue in *Rousseau v. United States Trust Co.*, 422 F. Supp. 447 (S.D.N.Y. 1976), a case upon which Defendants rely—heavily. *Barnes* found *Rousseau* "inapposite":

> There, Judge Wyatt was presented with claims against a defendant in his capacities as both an executor of the estate and a testamentary trustee. Jurisdiction clearly did not exist over the claims involving the estate, and the claim involving the trust was 'a relatively insignificant part of the overall claim against defendant." Consequently, Judge Wyatt concluded that to retain the claims against the trustee "would be most inefficient judicial administration."

*Barnes*, 506 F.Supp. at 404 (quoting *Rousseau*, 422 F. Supp. at 459). In particular, the defendant "Trust Company could only have acted as executor" at the time of most of the challenged actions because the estate was then still being administered and the Trust Company "was not authorized to act as trustee" until February 6, 1976. *Rousseau*, 422 F.Supp. at 454. The *Rousseau* court questioned whether a testamentary trust even existed until the Probate Court entered an order "directing or approving transfer of title to the trust res from the executor to the trustee." *Id.* The

multiple plaintiffs were all beneficiaries of the same estate, but each had not yet been apportioned its own individual trust, for a total of "seven testamentary trusts to be set up according to complicated formulas." *Id.* at 455 ("If defendant is liable for misconduct, the damages must be paid to the estate and treated as a part of that estate in accordance with the will.").[7] Thus, at the time of the federal court filing, the estate was undoubtedly still being administered—a significant factual distinction from this case, where the estate of Allen Eber went into probate over 56 years before this action was filed and the three co-trustees were all duly appointed and authorized to administer the Trust without continuing judicial supervision.[8]

While both *Barnes* and *Rousseau* considered Connecticut courts, *Weingarten v. Warren* specifically rejected the argument that the New York Surrogate's Court has "continuing quasi in rem jurisdiction" because, once a trustee is appointed, "jurisdiction over the corpus of the trust vested in that trustee." 753 F.Supp. 491, 495 (S.D.N.Y. 1990) (citing *Barnes*).[9]

Because "the Surrogate's Court was not exercising jurisdiction over the Trust at the time this action was filed," the only possible basis for abstention is the *Colorado River* doctrine. *See Flather v. United States Trust Co.*, 93-cv-7504(RPP),1994 U.S. Dist. LEXIS 9716, *5–6 (S.D.N.Y. July 15, 1994) (abstaining from hearing claims regarding a testamentary trust under *Colorado River* where the accounting action was not filed until months after the federal complaint) (citing *Barnes* and *Weingarten*). As the Court may recall, the now-settled defendants asked this Court to abstain under *Colorado River*. The Eber Defendants did not—and we know now that was because they were not interested in forum shopping, but rather avoiding judicial

---

[7] Defendants' arguments misleadingly assert that in 1972, the Connecticut Probate Court "admitted decedent's will to probate thereby creating the testamentary trusts," Def. F&C ¶ 491, without disclosing that the defendant co-trustee was not appointed until 1976 and that no portion of the estate had been allocated to the multiple trusts as of the time of the federal court decision, let alone the filing of the complaint.

[8] Also notable is that the *Rousseau* decision was rendered on November 4, 1976—the exact same date when the hearing was scheduled in the Probate Court. *Rousseau*, 422 F.Supp. at 447, 450. As a practical and procedural matter, there is virtually no resemblance to this case where the last Surrogate Court proceeding occurred over four years ago, and it was to effectively wash its hands of the Trust.

[9] *See also Beach v. Rome Trust Co.*, 269 F.2d 367, 372–373 (2d Cir. 1959) ("After a careful review of the duties and organization of the relevant New York courts we conclude that the jurisdiction of the Surrogate over testamentary trustees would not prevent claims such as these for money damages from being heard in the district court at least when no previously instituted proceeding for an accounting was pending.").

scrutiny altogether. In any event, this Court rejected application of that doctrine here. MTD Op. 5–7 (ECF No. 57). Surely the Eber Defendants have waived that abstention claim, too, but we will see what they say next.

In sum, even if Plaintiffs' claims are characterized as quasi in rem—though they are not—this Court obtained jurisdiction without impediment when this case was filed almost a decade after the Surrogate Court's last action, appointing CNB as successor co-trustee. Ex. 138. Having obtained valid jurisdiction over any arguably quasi in rem claims, CNB's petition for an accounting over two months later did not divest this Court of its jurisdiction.

## III.   PLAINTIFFS' CLAIMS ARE NOT QUASI IN REM BECAUSE NO DEFENDANT WAS SUED IN THEIR OFFICIAL CAPACITY AS A TRUSTEE

As noted above, this Court has already held that Plaintiffs' claims are in personam. MTD Op. 3 (ECF No. 57). Defendants do not even reference this Court's decision, let alone articulate grounds for concluding that it warrants reconsideration under the same standard that Defendants themselves insist should be applied to Judge Parker's ruling that the no-further-inquiry rule requires further inquiry, and under a heightened burden of proof. Instead, Defendants assert that Plaintiffs' claims are quasi in rem, relying on a single unpublished out-of-circuit case that has never been cited by another court; this Court should not be the first to do so.

As Judge Barbara Rothstein recognized, drawing the line between claims that are in personam and quasi in rem can be difficult. *Genovese v. Genovese*, 1:15-CV-00064-BR, 2016 U.S. Dist. LEXIS 125998, *11, 2016 WL 4945318 (W.D. Pa. Sept. 16, 2016) ("However, 'this line of distinction is not always clear.'" (quoting *Bassler v. Arrowood*, 500 F.2d 138, 142 (8th Cir. 1974)).[10] *Genovese* correctly concluded that "[a]n order compelling the trustee to perform various actions respecting his management of the trust" requires quasi in rem jurisdiction. *Id.* at *14. Plaintiffs seek no such order; in fact, once CNB distributes the EB&C shares—an

---

[10] Judge Rothstein was officially posted in the Western District of Washington with chambers in the District of Columbia, but she decided *Genovese* out of the Western District of Pennsylvania. There was no question in that case that there was already a pending state court action that required quasi in rem jurisdiction before the filing of the federal complaint.

inevitability now that Lester's Estate has withdrawn his attempt to intercept them—there will be no co-trustees left. Plaintiffs' claims treat the Trust as terminated, and do not ask this Court to intervene in Trust administration or to restore any part of the corpus of the Trust. *See also Beach*, 269 F.2d at 371–372 (conducting a claim-by-claim analysis under the "definite if not always precise line [that] has been drawn between claims seeking to contest management or to effect a distribution of property, and those merely seeking a judgment declaring the plaintiff entitled to receive from the fiduciary an interest in the estate"). No claims are asserted against Lester in his capacity as a trustee. Even Plaintiffs' claim for an accounting sought "an accounting of [Defendants'] profits relating to the Eber Bros. business to Plaintiffs and to EB&C and EBWLC" rather than any accounting of Defendants' dealings with the Trust. *See* TAC ¶¶ 382–387.[11]

Once again, Defendants improperly and without any support conflate two related but distinct legal concepts: a trust's assets versus a trust's corpus (or res). The concept of a trust asset is far broader than the corpus, as it includes even "intangible asset[s]" like the right "to be free from competition from its fiduciary." *Renz v. Beeman*, 589 F.2d 735, 746 (2d Cir. 1978). The corpus of the trust refers to the body of the trust, i.e. property that is directly held by it. It excludes income, for example. Therefore, when a trust holds corporate stock, the assets of the corporation are not considered part of the corpus of the trust. It is not overstatement to say that such a holding would throw the entire stock market into complete disarray, because suddenly every corporate subsidiary and asset would be subject to the thousands if not millions of trusts that exist and hold publicly traded stocks. Accordingly, this Court should reject Defendants' argument that Lester's income from Southern or the misappropriated shares of Eber Metro and Eber-CT constituted part of the Trust's corpus.[12]

---

[11] Count IX did reference the fact that Lester and Gumaer "were trustees for the Trust" in one paragraph but then did not seek an accounting of their dealings with the Trust itself. TAC ¶ 381.

[12] Defendants even resort to misleadingly suggesting that Plaintiffs' derivative claims for damages as if we are seeking disgorgement of fees paid to Lester as a trustee, because that would arguably implicate the administration of the Trust. Def. F&C ¶¶ 502, 504. *C.f. Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010) ("Requests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception.").

Because the assets that Plaintiffs ask this Court to recover for the direct benefit of EBWLC are not part of the Trust's corpus, this Court is not required to have jurisdiction of the Trust's corpus and thus this is another reason why *Princess Lida* is inapplicable. Plaintiffs do not even allege that Defendants took anything from the corpus of the Trust, and certainly do not seek restoration of any property to the Trust. The Trust had beneficial interests in the misappropriated shares of Eber Metro and Eber-CT, but none of the trustees ever held legal title to them. For example, Lester did not transfer the Trust's shares of EB&C to himself. Instead, he transferred Eber Metro to himself. Eber Metro was owned by EBWLC, not by the Trust directly. Plaintiffs assert shareholder derivative claims on behalf of EB&C, EBWLC, and Eber Metro. Plaintiffs' claims will affect the *value* of the once-Trust-held shares of EB&C, but they will not affect the title to the those shares, which has already been adjudicated by the Surrogate's Court and thus eliminating Plaintiffs' original request to replace the co-trustees.

It will be interesting to see if Defendants try to take back their claim that the Trust's shares of EBWLC no longer exist, as those shares are the only aspect of this case where Plaintiffs asked this Court to affect the corpus of the Trust. Notably, however, Plaintiffs did not make that request until after trial when considering the proposed order for injunctive relief. And even then, Plaintiffs proposed that the order be done without prejudice to any changes that might be made in the Surrogate's Court upon petition by David Eber, Lester's son who lost a one-sixth interest in the Trust when Lester consented to distribute CNB's Trust assets before Lester's demise. Pl. F&C ¶¶ 457–458.[13] Since *Princess Lida* entails a claim-by-claim analysis, and there is not even a properly pleaded claim for these shares to be distributed, this Court may deny or

---

[13] Defendants incorrectly cite to "Plaintiffs FFCL ¶ 97-98" when those were the pages numbers. Def. F&C 504. They also mischaracterize the Surrogate's Court's June 1, 2017 Order as if it finally determined what all of the assets of the Trust were, foreclosing any possibility of later discovery of assets even though Lester failed to provide his own account and it appears that at least some of the EBWLC share certificates were in his possession, custody, or control. Ex. 139; Tr. 366:18–20. No aspect of Plaintiffs' case is contrary to the Surrogate's Order. Indeed, it was *Lester* who raised an affirmative defense asking this Court to disregard the Surrogate's Order and allow him to intercept the Trust's EB&C shares being distributed by CNB to Plaintiffs. According to Defendants' new argument, it seems this Court had no jurisdiction to consider Lester's request. But even if that were true, that would not affect this Court's jurisdiction over Plaintiffs' claims any more than a federal law defense could allow removal of a purely state-law complaint. The principle of "what's good for the goose is good for the gander" is not always applicable in matters of jurisdiction.

ignore the issue without it affecting any other aspect of the case. To be clear, however, this Court should rule that Wendy breached her fiduciary duties as an officer and director by erasing the Trust's shares from EBWLC's books—that is a matter of internal corporate governance.[14]

## IV.   DEFENDANTS GROSSLY OVERREACH IN SEEKING DISMISSAL OF CORPORATE LAW CLAIMS, WHICH AFFORD FULL RELIEF

Even if Defendants were right about everything that they say in their argument up to this point, they still could not secure a significant dismissal. They conveniently ignore Plaintiffs' shareholder derivative claims that were filed against Lester and Wendy in their capacities as officers and directors of EBWLC and its affiliates. *Genovese* itself makes clear that claims brought against Defendants "in their capacity as [officers and] directors of those corporations" are <u>not</u> subject to *Princess Lida*. *Genovese*, 2016 U.S. Dist. LEXIS 125998 at \*19–20. Accordingly, Judge Rothstein had no basis to dismiss or abstain from hearing any claims other than those against the defendant "in his capacity as a trustee." *Id.* at \*20. She merely stayed those claims due to the overlap with the ongoing state court proceedings, *id.*—something that would be completely inappropriate at this stage of this case, especially with no ongoing state proceeding.[15]

Defendants do not mention Plaintiffs' claims against Defendants in their capacities as corporate officers and directors, nor the fact that the corporations at issue are actual parties to this litigation. They do not even do so when discussing claims Def F&C ¶ 506. The Court should not countenance Defendants addressing those corporate law claims for the first time on reply, though they will undoubtedly try. Regardless, as to Wendy, Defendants' argument makes no sense. They assert that Plaintiffs' standing to seek

Plaintiffs' corporate law claims suffice to secure all of the relief requested by Plaintiffs. The rationale for Lester's breaches may be different—applying the entire fairness doctrine

---

[14] Since the Surrogate Court had ruled the Trust terminated and no proceedings were ongoing, Plaintiffs' position is that this Court has jurisdiction over the EBWLC shares—particularly so if the Court's ruling on the corporate law issue is what effectively causes the shares to spring back into existence at this date. That said, this is an incredibly minor issue that may be adjudicated in the Surrogate's Court anyway if David Eber petitions for his share. Plaintiffs were uncertain whether even to make this request at this late stage, so this Court is welcome to disregard it.

[15] Judge Rothstein's decision was based on an assumption that the dismissed claims "will now presumably be adjudicated with the Accounting and Petition for Adjudication that were previously filed in state court." *Id.* at \*20.

instead of the no-further-inquiry rule to transactions like Lester's transfer of Eber Metro to Alexbay—but the outcome is the same. *See, e.g.*, N.Y. B.S.C. § 720(a)(2) (permitting the Court "[t]o set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness").[16] Plaintiffs' Third Amended Complaint asserts corporate law as an additional basis for relief under Count I, while Count IV is specifically based on Section 720. *E.g.*, TAC ¶¶ 179, 182–185, 204, 209, 217, 250, 262, 268, 297–304 (ECF No. 236). Plaintiffs did not cite to Section 720 in their proposed Findings of Fact and Conclusions of Law based on this Court's prior holding that trust law duties carried over into Lester's dealings with EB&C's subsidiaries, specifically his taking of Eber Metro. Had Defendants raised this argument earlier, Plaintiffs' posttrial filings would certainly have covered all the bases.[17]

\* \* \*

Defendants' decision to keep their *Princess Lida* argument in their back pocket was obviously a strategic one: They preferred to wait and see if this Court appeared receptive to their positions and Wendy's testimony on the merits. But now the trial is over and this Court stated that Plaintiffs were likely to prevail in the Preliminary Injunction. This is now their *lead* argument, even though it is somewhat inconsistent with their other late-raised defense of res judicata based on the Surrogate's Order, since abstention only applies when a state court proceeding is ongoing, while res judicata only applies after a final judgment has been entered.[18]

---

[16] Worst case, if this Court were to agree with Defendants that it cannot order the transfer of corporate assets back to the corporations, then this Court's time and effort spent on this case need not be wasted, nor must Plaintiffs start from scratch before the Surrogate's Court. This Court could reverse Magistrate Judge Parker's summary dismissal of Count VI, which sought a declaratory judgment as to Plaintiffs' rights, including their entitlement to certain assets and the propriety of certain transactions. Declaratory relief would not be duplicative if Plaintiffs' claims were otherwise dismissed. As explained in *Beach*, federal courts have long exercised jurisdiction over cases where plaintiffs are "seeking a judgment in personam declaring the plaintiff entitled to receive from the fiduciary an interest in the estate." 269 F.2d at 372.

[17] To the extent that Defendants try to claim that not including Section 720 in their posttrial brief constituted a waiver by Plaintiffs—while surely denying that they waived anything—this Court should recognize that as yet another attempt by Defendants to elevate form over substance to avoid the consequences of their actions. Plaintiffs never withdrew their corporate law claims or Count IV nor gave Defendants any basis to believe otherwise.

[18] Defendants' res judicata argument was not raised before closing arguments, even though a recent review of the trial transcript in advance of the upcoming settlement conference shows that Mr. Santoro anticipated making it earlier. *See* Tr. 51–52 (asking Lisa Stein whether she sought to "hold [the 2017 Surrogate's Court] proceeding in abeyance"). Defendants' subsequent assertion that they raised this defense in their Answer asks this Court to ignore

By raising this issue at the final moment and dropping their five-year-old attempt to take Plaintiffs' shares (Ex. 153), Defendants effectively concede that they have lost the case on the merits. Indeed, particularly devastating to their last-ditch hope to retain control of Eber-CT was Andrew Eder's testimony that he has been interested in buying the whole company, not just 15% of it, since 2007, Tr. 123:17–24, and that in 2010 he never even had the opportunity to exercise his right of first refusal on the shares given to Polebridge, Tr. 116:11–18. This destroyed Wendy Eber's testimony—critical to defending all of Defendants' actions—that there were no alternatives to having Lester take the company for themselves and that Lester had not transferred Eber Metro to Alexbay with fraudulent intent. No matter how poorly the trial went for Defendants though, it is no excuse for their delay in raising a challenge to the Court's jurisdiction, or for their gross misrepresentations and omissions about the law and the facts.

## CONCLUSION

The Court should hold that Defendants waived any affirmative defense of *Princess Lida* abstention and that *Princess Lida* abstention does not apply to Plaintiffs' claims.

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Facsimile: (646) 257-2887
Brian@brook-law.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: November 5, 2021

---

the fact that the Answer expressly limited the defense to res judicata based on the 2012 decision based on the UCC. See Eber Amend. Answer ¶ 27 ("Plaintiffs' Third Amended Complaint is barred by res judicata and/or collateral estoppel relating to Judge Rosenbaum's 2012 Order.").