UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>                            Plaintiffs,<br><br>        vs.<br><br>LESTER EBER, ALEXBAY, LLC f/k/a LESTER EBER, LLC., ELLIOT W. GUMAER, JR. and WENDY EBER,<br><br>                            Defendants,<br><br>  and<br><br>EBER BROS. & CO., INC., EBER BROS. WINE AND LIQUOR CORP., EBER BROS. WINE & LIQUOR METRO, INC., EBER CONNECTICUT, LLC, EBER-RHODE ISLAND, LLC, EBER BROS. ACQUISITION CORP, EBER-METRO, LLC, and SLOCUM & SONS OF MAINE, INC.,<br><br>                          Nominal Defendants. | Civil Action No. 16-CV-9517(LAK)(KDP) |

**DEFENDANTS' REPLY BRIEF CONCERNING
SUBJECT MATTER JURISDICTION AND THE *PRINCESS LIDA* DOCTRINE**

                                                **FARRELL FRITZ, P.C.**
                                                Kevin P. Mulry
                                                Frank T. Santoro
                                                *Attorneys for Defendants*
                                                  *Estate of Lester Eber,*
                                                   *Alexbay, LLC, and Wendy Eber*
                                                400 RXR Plaza
                                                Uniondale, NY 11556
                                                Tel.: 516.227.0700
                                                Email: kmulry@farrellfritz.com
                                                            fsantoro@farrellfritz.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
ARGUMENT .............................................................................................................................. 3
POINT I
PLAINTIFFS' CLAIMS ARE DERIVATIVE OF THEIR BENEFICIAL INTEREST IN THE TRUST, SEEK RESTITUTION AND RESTORATION OF THE TRUST *RES*, AND SEEK TO DIRECT ADMINISTRATION OF THE TRUST AND THUS FALL SQUARELY WITHIN THE *PRINCESS LIDA* DOCTRINE .................................................................................................. 3
POINT II
THE SURROGATE'S COURT EXERCISED PRIOR IN REM JURISDICTION OVER THE TRUST'S *RES* ............................................................................................................................. 5
POINT III
*PRINCESS LIDA* DIVESTS THIS COURT OF JURISDICTION WHETHER IT IS ANALYZED AS A SUBJECT MATTER JURISDICTION DOCTRINE OR AN ABSENTION DOCTRINE ................................................................................................................................. 9
CONCLUSION .......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barnes v. Brandrup*,
   506 F. Supp. 396 (S.D.N.Y. 1981) ................................................................................... 7, 8

*Bellotti v. Baird*,
   428 U.S. 132 (1976) ............................................................................................................ 1, 9

*Birnbaum v. Birnbaum*,
   117 A.D.2d 409 (4th Dept. 1986) ......................................................................................... 4

*Boardman v Estelle*,
   957 F.2d 1523 (9th Cir 1992) ............................................................................................... 10

*Cartwright v. Garner,*
   751 F.3d 752 (6th Cir. 2014) ............................................................................................... 1, 9

*Carvel v. Thomas & Agnes Carvel Found.*,
   188 F.3d 83 (2d Cir. 1999) ..................................................................................................... 9

*Cassity v. Pitts,*
   995 F.2d 1009 (10th Cir. 1993) ........................................................................................... 1, 9

*Dailey v. Nat'l Hockey League,*
   987 F.2d 172 (3d Cir. 1993) ................................................................................................ 1, 9

*Genovese v. Genovese*,
   No. 1:15-CV-00064-BR, 2016 WL 4945318 (W.D. Pa., Sept. 16, 2016) ................................. 2

*Guillemard-Ginorio v. Contreras-Gomez*,
   585 F.3d 508 (1st Cir. 2009) ......................................................................................... 1, 9, 10

*In re Miami Metals I, Inc.*,
   625 B.R. 593 (SDNY Bankr. 2021) ..................................................................................... 10

*Matter of Blumenkrantz*,
   14 Misc. 3d 462 (Sur. Ct., Nassau County 2006) ................................................................ 5, 9

*Matter of D'Onofrio*,
   97 Misc. 2d 250 (Sur. Ct., N.Y. County 1978) ..................................................................... 2, 6

*Matter of Hunter*,
   4 N.Y.3d 260 (2005) ............................................................................................................ 2, 8

*Matter of Rockefeller*,
   2004 NYLJ LEXIS 4753 (Sur. Ct., NY County 2004) ............................................................. 6

*Matter of Zalaznick*,
   84 Misc. 2d 715 (Sur. Ct., Bronx County 1975) ................................................................. 5, 9

*Mercer v. Bank of New York Mellon, N.A.*,
   609 F. App'x. 677 (2d Cir. 2015) ........................................................................... 1, 2, 6, 9, 10

*NRLD v. New York Tel. Co.*,
   930 F.2d 1009 [2d Cir 1991] ................................................................................................. 10

*Princess Lida of Thurn & Taxis v. Thompson*,
   305 U.S. 456 (1939) ........................................................................................................ *passim*

*Rousseau v. U.S. Tr. Co. of New York*,
   422 F. Supp. 447 (S.D.N.Y. 1976) ...................................................................................... 2, 9

*Schlegel v. Schlegel Mfg. Corp.*,
   23 A.D.2d 808 (4th Dept  1965) .............................................................................................. 5

*Weingarten v. Warren,*
   753 F. Supp. 491 (S.D.N.Y. 1990) .......................................................................................... 7

**Statutes**

SCPA § 302 .................................................................................................................................. 5, 9

SCPA § 702 (9) ................................................................................................................................ 5

SCPA §§ 1501–1509 ........................................................................................................................ 6

**PRELIMINARY STATEMENT**

Procedurally, the *Princess Lida* Doctrine is now properly before the Court whether it is viewed as a subject matter jurisdiction or abstention argument.  Defendants do not rely on the Third Circuit alone in urging that the doctrine concerns subject matter jurisdiction.  Rather, they rely on the Supreme Court itself (*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939)), and decisions from several Circuits, including the Second Circuit, albeit in a summary order (*Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x. 677 (2d Cir. 2015)), the Sixth Circuit (*Cartwright v. Garner,* 751 F.3d 752, 759–63 (6th Cir. 2014)), the Third Circuit (*Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993)), and the Tenth Circuit (*Cassity v. Pitts,* 995 F.2d 1009, 1012 (10th Cir. 1993)).  These Circuit Courts agree that the *Princess Lida* Doctrine concerns subject matter jurisdiction.  But even if the *Princess Lida* Doctrine were a mandatory abstention doctrine, as Plaintiffs urge, Defendants did not waive their right to now invoke *Princess Lida*.  Despite Plaintiffs' arguments, a mandatory abstention doctrine that divests the Court of jurisdiction is not waivable except under the narrowest of circumstances, not present here.  *Bellotti v. Baird*, 428 U.S. 132, 143 at fn. 10 (1976); *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 517 (1st Cir. 2009).

Substantively, Plaintiffs' claims all derive from their equitable interest in the Trust's *res* as Trust beneficiaries.  Plaintiffs do not seek damages payable to themselves, but ask the Court to undo actions taken during the period of the Trust's administration that Plaintiffs disagree with to restore the Trust's interest in Eber-CT through Eber Bros., and to compel Lester to pay a surcharge to and disgorge compensation for alleged breaches of fiduciary duty as Co-Trustee. Insofar as they bring shareholder derivative claims against Wendy and Lester, their standing derives from their equitable interest in shares of Eber Bros. as Trust beneficiaries; they assert claims on behalf of the Trust as the shareholder of Eber Bros.  They even ask the Court to

interpret and enforce the Surrogate's Court's Order to compel distributions of Eber Bros. shares from the Trust; they ask the Court to direct Trust administration. A trust's beneficiary's claims against a trustee for "administration and restoration of corpus" cannot be maintained if another court is already exercising control over the trust. *Princess Lida,* 305 U.S. at 467, 59 S.Ct. 275; *see also Mercer*; *Rousseau v. U.S. Tr. Co. of New York*, 422 F. Supp. 447, 458 (S.D.N.Y. 1976); *Genovese v. Genovese*, No. 1:15-CV-00064-BR, 2016 WL 4945318 (W.D. Pa., Sept. 16, 2016).

With no question as to the nature of their claims, Plaintiffs assert that the Surrogate's Court has not exercised in rem jurisdiction over the Trust since 1970. They misapprehend both law and fact, failing to confront authority that speaks to the Surrogate's Court's power and control over testamentary trusts and their trustees (*see e.g. Matter of D'Onofrio*, 97 Misc. 2d 250, 252-253 (Sur. Ct., N.Y. County 1978), and failing to acknowledge the multiple and continuous Surrogate's Court proceedings concerning the Trust and its administration since 1970.

The *Princess Lida* Doctrine is squarely applicable and divests this Court of jurisdiction under these facts (*Princess Lida*, 305 U.S. at 466-67). Despite Plaintiffs' colorful advocacy, Defendants' submissions on the two threshold issues of *Princess Lida* and res judicata are not a "last-ditch" effort. Plaintiffs cannot escape *Princess Lida*, the Second Circuit's most recent reasoning in *Mercer*, this Court's decision in *Rousseau* and other guiding authorities. Nor can they evade the New York State Court of Appeals' precedent laid down in *Matter of Hunter*, 4 N.Y.3d 260 at 270 (2005). This case must be dismissed.

# ARGUMENT

## POINT I

### PLAINTIFFS' CLAIMS ARE DERIVATIVE OF THEIR BENEFICIAL INTEREST IN THE TRUST, SEEK RESTITUTION AND RESTORATION OF THE TRUST *RES*, AND SEEK TO DIRECT ADMINISTRATION OF THE TRUST AND THUS FALL SQUARELY WITHIN THE *PRINCESS LIDA* DOCTRINE

Plaintiffs' principal argument with respect to the *Princess Lida* Doctrine is their misleading and inapt assertion that "Plaintiffs' Claims Are Not Quasi in Rem Because No Defendant Was Sued In Their Official Capacity as a Trustee."  Plaintiffs' claims are all entirely derivative of their interest in the Trust, are premised on their allegation that Lester breached his fiduciary duty as a Co-Trustee, seek reconveyance of assets within the Trust's *res*, and seek restitution and restoration of the Trust's *res*.  These are derivative, equitable claims that necessarily require this Court to exercise control over the Trust's *res*.  Plaintiffs even ask this Court to interpret and carry out a Surrogate's Court Order and to issue a judgment that conflicts with that order. PFFCL ¶459-464 Def. Exs. TTTT, OOOO.  Unquestionably, "[t]o give effect to its jurisdiction, this Court must control the Trust *res*."  *Princess Lida,* 305 U.S. at 466–67.

Plaintiffs' Third Amended Complaint ("TAC") alleges that their standing lies in their interest as beneficiaries of the Trust (TAC ¶¶ 33, 34), and a necessary element of every cause of action is that Lester breached his fiduciary duty as a Co-Trustee of the Trust (TAC ¶¶ 52, 180, 195, 196, 270, 372-375).  Plaintiffs' proposed findings ask this Court to find that Lester breached his fiduciary duty as Co-Trustee, and seek to make the Trust whole by reconveying shares of businesses that were and are part of the Trust's *res*, and restoring the Trust and the businesses owned by the Trust, *inter alia*, as follows:

- They allege that "the transfer of 6% of Eber-CT to Wendy (via Polebridge[]) was a breach of Lester's fiduciary duty as a co-trustee since he gave away a Trust asset to his own daughter without consent from co-trustee CNB, much less consent from the beneficiaries." PFFCL ¶ 493.

3

- They allege that Lester breached his fiduciary duty as a Co-Trustee to set aside the 2012 Foreclosure, relying on *Birnbaum v. Birnbaum*, 117 A.D.2d 409, 420 (4th Dept. 1986), stating that "Plaintiffs have insisted upon a reconveyance of property taken from the Trust, and because that property has not been transferred to any bona fide purchasers, the Court must grant a reconveyance." PFFCL ¶ 493.

- They allege that Lester breached his fiduciary duty of loyalty as Trustee by usurping a Trust opportunity in entering into the Southern Consulting Agreement, and they seek disgorgement of the compensation that Lester received as a Southern Consultant as an equitable remedy. PFFCL ¶¶ 24, 77, 79, 470.

- They allege that Lester as Co-Trustee of the Trust engaged in impermissible self-dealing by entering into an employment agreement with Eber-CT, and they seek a surcharge against him. PFFCL ¶¶ 24, 479-485.

Plaintiffs do not merely seek to restore the Trust's *res* based on their allegations that Lester breached his fiduciary duty as Co-Trustee; they go so far as to ask this Court to direct Trust administration, even in a manner contrary to a Surrogate's Court's Order. They ask the Court, contrary to the Surrogate's Court Order, dated June 1, 2007 (the "Accounting Order"), to find that the Trust owned shares of Eber W&L, and to cause such shares to be distributed from the Trust. PFFCL ¶ 457-458; Def Exs. OOOO, TTTT.[1] They also ask the Court to interpret and enforce the Accounting Order with respect to Eber Bros. shares currently held by CNB as Co-Trustee. PFFCL ¶ 459-464. The Accounting Order does not require pro-rata distribution of the Trust's Eber Bros. shares, but Plaintiffs ask this Court to enforce the Accounting Order as such.

In fact, Plaintiffs recently (and aptly) described their allegations herein and requests for relief herein to the Surrogate's Court on applications in Lester's Estate[2] as follows:

> 11. Specifically, the SDNY held that [Lester] breached his fiduciary duty of undivided loyalty as trustee of a trust ([Plaintiffs] composed two-thirds of the

---

[1] Schedule G of the Accounting, "Principal Assets on Hand," does not include these Eber W&L shares (Def. Ex. OOOO). The Accounting Order judicially settles the Accounting (Def. Ex. TTTT), and thus, Plaintiffs are asking this Court to issue relief that is contrary to such order. Further, the Court should note that the relief granted in the Accounting Order is, in part, contingent on the assets reflected on Schedule G being entirely distributed.

[2] A copy of the Affirmation of Brian Brook, Esq., filed in a Surrogate's Court proceeding in the Estate of Lester Eber, dated June 16, 2021, is annexed hereto as an Appendix.

beneficiary interest) when he transferred the family business to himself and his daughter, cutting out his extended family members, the [Plaintiffs].

12.  The primary relief demanded by [Plaintiffs] as to this transaction is equitable: To set aside the transfer of the corporation that controls the family business, returning all the wrongly transferred property to the Trust, and imposing a constructive trust over the corporate assets to ensure that full restitution can be had. [3]

As to Plaintiffs' claims against Wendy, their standing derives only from their interest in the Trust (TAC ¶¶ 33, 34). As Trust beneficiaries, with an equitable interest in the Trust's shares of Eber Bros., they seek to recover on behalf of the Trust, which has legal title to Eber Bros. shares; they are suing on behalf of the Trust. See *Matter of Blumenkrantz*, 14 Misc. 3d 462 (Sur. Ct., Nassau County 2006); *Schlegel v. Schlegel Mfg. Corp.*, 23 A.D.2d 808 (4th Dept 1965). [4]

In sum, Plaintiffs' claims are claims by a trust's beneficiaries for "administration and restoration of corpus" and "[t]o give effect to its jurisdiction, this Court must control the Trust *res*."  *Princess Lida,* 305 U.S. at 466–67.[5]

## POINT II

## THE SURROGATE'S COURT EXERCISED PRIOR IN REM JURISDICTION OVER THE TRUST'S *RES*

Because Plaintiffs' claims ask this court to exercise control over the Trust's *res*, the *Princess Lida* Doctrine will divest this Court of jurisdiction if the Trust's *res* is already under the

---

[3] Plaintiffs argued to the Surrogate that this Court erred in addressing their claims. In doing so, they emphasized that all of their claims are based on Lester's alleged breaches of fiduciary duty as Co-Trustee.  They stated that "It is worth noting that the federal magistrate judge who decided the summary judgment motion is not as familiar with the intricacies of New York state law governing trusts, as such matters rarely appear in federal court. . . the magistrate cited inapposite case law because it did not concern self-dealing by a trustee.  In New York, unauthorized self-dealing is subject to the "no further inquiry rule" rendering such transactions voidable by the beneficiaries even if done in good faith and on fair terms."  See Appendix ¶ 13.

[4] The procedural opportunity to sue Wendy existed not only in the Accounting Proceeding (SCPA 302; *Matter of Zalaznick*, 84 Misc. 2d 715 (Sur. Ct., Bronx County 1975)), but also independently in the Surrogate's Court. Pursuant to SCPA 702 (9), Letters may be granted limiting and restricting the powers and rights of the holder thereof "[t]o commence and maintain any action or proceeding against the fiduciary, in his or her individual capacity, or against anyone else against whom the fiduciary fails or refuses to bring such a proceeding."

[5] Whether Plaintiffs' claims are described as in rem or quasi in rem claims (and Defendants submit that they are), or as *in personam* claims as the Court held in a separate motion brought by other parties, the result is the same.  The Court must exercise control over the Trust's *res* to effect its jurisdiction.

control of the New York Surrogate's Court. First, Plaintiffs, do not meaningfully discuss the Surrogate's Court's jurisdiction and power over testamentary trusts under the law. From a legal standpoint, they ignore the fact, as the Second Circuit has observed, that New York law gives "Surrogate's Courts extensive powers over testamentary trusts. *Mercer*, at 2, *citing* N.Y. Surr. Ct. Proc. Act. §§ 1501–1509. Indeed, a Surrogate's Court that has issued letters to a testamentary trustee has extensive continuing supervisory power and control over that trust, its *res*, the trustee, and the trust's administration. *See Matter of D'Onofrio*, 97 Misc. 2d 250, 252-253 (Sur. Ct., N.Y. County 1978); *Matter of Rockefeller*, 2004 NYLJ LEXIS 4753 (Sur. Ct., NY County 2004).

Second, Plaintiffs ignore the history of the Monroe County Surrogate's Court's supervisory control over the Trust. These are critical factors in the *Princess Lida* Doctrine, as illustrated by *Mercer*. There, as in this case, beneficiaries of a testamentary trust, commenced an action in federal court, seeking redress for alleged breaches of fiduciary duty by the trustee. At the time the plaintiffs commenced the federal action those claims were not before the Surrogate's Court in any pending proceeding. Nevertheless, the Second Circuit recognized that the Surrogate's Court had exercised prior in rem jurisdiction that divested the district court of subject matter jurisdiction. There, as here, the Surrogate's Court issued letters of trusteeship to the defendants giving them authority to administer the testamentary trust at issue. Moreover, there, as here, other Surrogate's Court proceedings followed the mere issuance of letters of trusteeship. In *Mercer*, given the extensive powers of the Surrogate's Court over testamentary trusts under New York law, the Second Circuit held that the prior activity in the Surrogate's Court, taken as a whole, divested the district court of jurisdiction. This was the case even though the plaintiff's claims for breach of fiduciary duty and remedies sought were not before the Surrogate's Court prior to commencement of the federal case. There, as here, the New York Surrogate's Court

6

exercised a certain minimum of supervisory control over a testamentary trust, thus divesting this Court of jurisdiction over the same kinds of claims asserted herein.

Further, Plaintiffs' misplaced reliance on *Barnes v. Brandrup*, 506 F. Supp. 396 (S.D.N.Y. 1981) yields to careful analysis. In *Barnes,* the Court indeed held that the mere existence of the Connecticut state probate court's power to supervise the administration of a trust did not, in and of itself, divest the federal court of jurisdiction under *Princess Lida*, and that affirmative steps by the trustee or court are required for jurisdiction to attach over a trust corpus to divest a federal court of jurisdiction. *Barnes*, 506 F. Supp. at 401. But in *Barnes*, the case turned on the fact that the Connecticut probate court would not have been able to exercise jurisdiction over all of the plaintiff's claims - - the probate court, "by its own admission, [was] incapable of adjudicating the claims presented in the federal court and deferred consideration of the pending accounts." *id* at 402. That is not the case here; the Surrogate's Court has the power to adjudicate all of Plaintiffs' claims, a point that Plaintiffs do not address.[6]

Here, the Monroe County Surrogate's Court first exercised subject matter, in rem jurisdiction, over the Trust when it probated the Will and issued Letters of Trusteeship to the nominated Co-Trustees, authorizing them to act. Thereafter, it judicially settled accountings, approved resignations, and appointed successors; it exercised supervisory control in successive and continuous proceedings for decades. For example, the Surrogate's Court issued a Decree, dated January 23, 1991, settling Lester, Elliot M. Gumaer, Jr., and Marine Midland's accounting for the period August 11, 1976 to October 31, 1990 and appointed M&T Bank as successor Co-Trustee. M&T Bank, Mr. Gumaer and Lester then petitioned the Surrogate's Court for judicial settlement of their accounting for the period May 9, 1991 through December 31, 2006 (Pl. Ex.

---

[6] Plaintiffs' reliance on *Weingarten v. Warren,* 753 F. Supp. 491, 495 (S.D.N.Y. 1990) is no less availing for the simple reason that the trust at issue was an *inter vivos* trust, and not a testamentary trust.

7

154; Def. Ex. OOOO).  The Surrogate's Court issued a Decree, dated July 23, 2007, settling that accounting, and then issued Successor Letters of Trusteeship to CNB (Pl. Ex. 138).

Then, on February 15, 2017, CNB petitioned the Surrogate's Court seeking judicial settlement of a final accounting of the Trust for the period August 27, 2007 through December 27, 2016 (the "Accounting Proceeding").  The Surrogate's Court did not "defer its accounts" like the Connecticut probate court did in *Barnes*.  The Surrogate's Court, with its in rem jurisdiction over the Trust and its *res*, exercised jurisdiction over all persons interested in the Trust in connection with the Accounting Proceeding (Def. Ex. OOOO, TTTT), and adjudicated the Accounting Proceeding, by issuing a Decree fixing the interested parties' rights in the Trust.

The Surrogate's Court did not "stand down," refuse jurisdiction or "defer its accounts" -- it fulfilled its charge.  Plaintiffs' focus on the fact that CNB, and not Lester, was the accounting party in the Accounting Proceeding misses the entire premise of in rem jurisdiction.  The Surrogate's Court exercised jurisdiction over all beneficiaries and Co-Trustees, including Plaintiffs, through the exercise of in rem jurisdiction flowing from the Trust under its control.  It fully and finally adjudicated any and all matters pertaining to the Trust, its *res*, and the parties' rights therein for all facets of administration through the accounting period.  Plaintiffs were fully afforded an opportunity to litigate all of their claims in the Surrogate's Court, and the Accounting Order now precludes such claims.[7]  Res judicata bars their claims *See Hunter*.[8]

---

[7] Plaintiffs had the opportunity to interpose objections and challenge the Accounting and had the opportunity to bring cross-claims against Lester and Mr. Gumaer and initiate third-party practice in the Accounting Proceeding. SCPA 302; *Matter of Zalaznick*, 84 Misc. 2d 715 (Sur. Ct., Bronx County 1975); *Matter of Blumenkrantz*, 14 Misc. 3d  462 (Sur. Ct., Nassau County 2006).

[8] Plaintiffs continue to argue the issue of res judicata in their *Princess Lida* briefing.  Having themselves invoked the res judicata effect of the Accounting Order, they now urge the Court in footnote 18 of their brief, to ignore the conjunctive/disjunctive language contained in Defendants' Amended Answer, which pleads res judicata generally, in paragraph 27 as follows "Plaintiffs' Third Amended Complaint is barred by res judicata and/or collateral estoppel relating to Judge Rosenbaum's 2012 Order."  Plaintiffs' attempt to feign surprise by the res judicata defense, and narrow construction of Defendants' pleading of the affirmative defense is not credible.

In sum, given the New York Surrogate's Court power and control over testamentary trusts under the law, and the Monroe County Surrogate's Court's meaningful and substantial activity with respect to this Trust, the Surrogate's Court exercised control over the Trust's *res* before Plaintiffs filed this suit. *See Mercer; Rousseau*. *Princess Lida* divests this Court of jurisdiction.

## POINT III
### *PRINCESS LIDA* DIVESTS THIS COURT OF JURISDICTION WHETHER IT IS ANALYZED AS A SUBJECT MATTER JURISDICTION DOCTRINE OR AN ABSENTION DOCTRINE

Defendants do not merely rely on the Third Circuit in asserting that this Court lacks subject matter jurisdiction over this action by virtue of the United States Supreme Court's decision in *Princess Lida*. Indeed, *Mercer*, citing *Princess Lida,* explained that where one court, *i.e.,* a Surrogate's Court, is exercising in rem jurisdiction over a *res*, a second court, *i.e.*, a federal court, will not assume in rem jurisdiction over the same *res* (*see Mercer*, 609 F. App'x. 677, 678). This is consistent with the Third Circuit's decision in *Dailey v Nat'l Hockey League*, 987 F.2d 172 (3d Cir 1993), and the Sixth Circuit's decision in *Cartwright v Garner*, 751 F.3d 752 (6th Cir 2015). The Tenth Circuit has likewise recognized this proposition relying on *Princess Lida*, in its Decision in *Cassity v Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993). To say that the Second Circuit does not take this approach is misplaced. *Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999) concerned an *inter vivos* trust rather than a testamentary trust, and thus does not reflect the Second Circuit's current approach, reflected in *Mercer,* on how *Princess Lida* applies to New York testamentary trusts over which the Surrogate's Court has expansive control as a matter of law.

Even assuming, *arguendo*, that *Princess Lida* is an abstention doctrine, there was no waiver of its application. Waiver of a mandatory abstention doctrine occurs only in exceptional

9

circumstances. See *Bellotti v Baird*, 428 U.S. 132, 143 at fn. 10 (1976); *Guillemard-Ginorio v Contreras-Gomez*, 585 F.3d 508, 517 (1st Cir 2009). Waiver may only occur as "by express statement" (*Boardman v Estelle*, 957 F.2d 1523, 1535 (9th Cir 1992)) or by "clear and unequivocal conduct, as waivers are never too lightly inferred" (*In re Miami Metals I, Inc.*, 625 B.R. 593, 598 (SDNY Bankr. 2021). Plaintiffs allege Defendants waived *Princess Lida* as an abstention doctrine because of their prior silence on the issue (not including it as a pleaded affirmative defense). But silence is neither an "express statement," nor "clear and unequivocal conduct" regarding *Princess Lida's* application here. Plaintiffs fall far short of meeting their "weighty burden of establishing that a 'clear and unmistakable' waiver has occurred.'" *id.* quoting *NRLD v New York Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir 1991).

## CONCLUSION

Defendants respectfully request that the Court enter their proposed findings of fact and conclusions of law dismissing this case for lack of subject matter jurisdiction.

Dated: Uniondale, New York
       November 12, 2021

                                        FARRELL FRITZ, P.C.

                            By:    *S/ Frank T. Santoro*
                                        Kevin P. Mulry
                                        Frank T. Santoro
                                        *Attorneys for Defendants*
                                        400 RXR Plaza
                                        Uniondale, NY 11556
                                        Tel.: 516.227.0700
                                        Kmulry@farrellfritz.com
                                        Fsantoro@farrellfritz.com

Appendix

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE
----------------------------------------------------------------X   File No. 2020-1048

IN THE MATTER OF THE ESTATE OF                                      **ATTORNEY AFFIRMATION**

LESTER EBER,

                            Deceased.
----------------------------------------------------------------X

      Brian Brook, an attorney duly licensed to practice law before the Courts in the State of New York, affirms under the penalty of perjury:

      1.    I am a member of the law firm of Brook & Associates, PLLC and lead attorney of record for Audrey Hays, Daniel Kleeberg, and Lisa Stein (the "Petitioners"), in the federal court proceeding entitled *Kleeberg, et al. v. Wendy Eber, et al.*, Case No. 16-cv-9517 (LAK)(KHP) in the Southern District of New York (the "SDNY Action").

      2.    I make this affirmation in support of Petitioners' reply to the Opposition dated June 7, 2021 of Respondent Wendy Eber as the executor of the Estate of Lester Eber (the "Respondent") to Petitioners' application for unliquidated/contingent claim pursuant to SCPA § 1804 and preservation of assets of the decedent Lester Eber (the "Decedent").

      3.    I am deeply familiar with the facts and procedural posture of the underlying case, having personally reviewed thousands of pages of document discovery and conducted numerous depositions, including four days of examining the Respondent and two days with the Decedent.

      4.    Petitioners have diligently pursued their claims. They filed the SDNY Action in December 2016, just a few months after learning about the core improper transaction—the Decedent's transferring of the family business out of Decedent's father's testamentary trust (the "Trust") and placing it into his own holding company—from a news article covering litigation

against the Decedent filed by creditors who were defrauded by the same transaction. Decedent and his co-trustees had concealed the transaction from the trust beneficiaries (Petitioners) for four years. Both of those other co-trustees have settled with Petitioners.

5.  Since filing the SDNY Action, Petitioners have diligently pursued completion of the case. Unfortunately, Decedent and Respondent repeatedly sought to delay and impede the proceedings.

6.  For instance, after the lawsuit was filed, Decedent engaged in at least two new corporate transactions designed to prevent Petitioners from wresting control of the family business back from him and his daughter (Respondent), such as issuing new stock to himself to dilute the trust's interest, and even preventing the distribution of the corporate stock to the Trust beneficiaries after this Surrogate's Court ordered it to be distributed as a condition of terminating the Trust.

7.  As another example, Respondent withheld numerous damaging documents during discovery. Petitioners only learned about their existence after a co-defendant produced them. Nonetheless, Respondent proceeded to assert the attorney-client privilege over the documents. The SDNY initially credited the assertion. However, after a second motion to compel, the SDNY concluded that Respondent and her attorneys had misled the court and thus ordered the documents to be produced. These discovery shenanigans, among many others, delayed the case significantly. Petitioners cannot be faulted for the time it took to obtain what they were entitled to receive.

8.  I have reviewed the statements of fact in the reply submission and can attest that, although presented in highly summarized form, they are accurate and well supported by the factual record developed during the over two years of discovery that occurred.

9. In the SDNY Action, Petitioners filed a motion for partial summary judgment on several counts of the Third Amended Complaint, including on Count I for breach of fiduciary duty seeking to void certain improper transactions.

10. Although the SDNY initially denied Petitioner's motion in full, by Opinion and Order on Parties' Motions for Reconsideration dated March 25, 2021 (the "Order") (*see* Exhibit A to Amy Altman Affirmation), the SDNY reversed its prior order and granted Plaintiffs' motion for partial summary judgment in part regarding Defendants' breach of fiduciary duty as to the core transaction in the case.

11. Specifically, the SDNY held that the Decedent breached his fiduciary duty of undivided loyalty as trustee of a trust (Petitioners composed two-thirds of the beneficiary interest) when he transferred the family business to himself and his daughter, cutting out his extended family members, the Petitioners.

12. The primary relief demanded by Petitioners as to this transaction is equitable: To set aside the transfer of the corporation that controls the family business, returning all the wrongly transferred property to the Trust, and imposing a constructive trust over the corporate assets to ensure that full restitution can be had. As an example of why a deep examination will be necessary to craft the terms of a constructive trust, after the family business was stolen, the Decedent distributed over ten percent of the stolen corporate stock to his daughter, the Respondent. Rather than enter the requested relief at this time, however, the SDNY held that there remain "questions more properly left for trial," before deciding on the precise remedy. Among other things, the Court held that one of the equitable remedies sought by Petitioners—a constructive trust—required a finding of unjust enrichment, which required valuation of the different sides of the transfer citing case law that did not concern self-dealing by a trustee.

13. It is worth noting that the federal magistrate judge who decided the summary judgment motion is not as familiar with the intricacies of New York state law governing trusts, as such matters rarely appear in federal court since complete diversity of citizenship is typically lacking. The magistrate's decision that a trial was necessary before imposing a constructive trust was rendered *sua sponte*, without any briefing by any of the parties on the issue. Moreover, the magistrate cited only inapposite case law because it did not concern self-dealing by a trustee. In New York, unauthorized trustee self-dealing is subject to the "no further inquiry rule" rendering such transactions voidable by the beneficiaries even if done in good faith and on fair terms.

14. As a result, it is Petitioners' position that despite the magistrate's hesitancy to grant relief at this stage, New York precedent clearly requires the transfer of the business to be set aside, without any trial on valuation. Indeed, it is somewhat contradictory that the magistrate found that the Decedent violated the "no further inquiry rule" and then proceeded to order a trial on valuation: precisely the sort of "further inquiry" that is not supposed to happen once a beneficiary objects. See *Birnbaum v. Birnbaum*, 117 A.D. 2d 409, 420 (N.Y. App. Div. 4th Dept. 1986) (holding that beneficiaries are entitled as a matter of law to a constructive trust and a reconveyance by the trustee of wrongly obtained property, without any finding of unjust enrichment) (citing *Meinhard v. Salmon*, 249 N.Y. 458, 467 (1928)).

15. After sending the case back to the presiding district judge, a bench trial has been scheduled to commence on September 14, 2021.

16. After the SDNY entered partial summary judgment in Petitioners' favor on this transaction, a third party that purchased 15% of the family business for $4.5 million in 2008 has presented the Petitioners and Respondent with an offer to purchase the remaining 85% of the business. The offer utilizes a formula based on recent gross profit numbers that have not been

disclosed by the Respondent despite her continuing duty to update discovery responses. Based on the last available financial information, however, the third party's offer would value the entire Eber-Connecticut business at $22,761,276—several million dollars more than our retained valuation expert calculated based on the same financial information. In fact, the third party's formula values the 85% portion that was owned by the Trust at $19,347,084, which is more than our expert valued the entire entity, and vastly more money than the roughly $4 million of debt that the Decedent and Respondent exchanged to take that 85% interest for themselves.

17. I personally performed the calculations of potential damages with interest in Microsoft Excel using the information received in discovery and New York's 9% prejudgment interest rate. The precise dates when certain payments to Decedent occurred were not readily available, however, which is why an accounting is requested in the SDNY Action and also why I adopted a conservative approach that assumed that virtually all payments occurred *after* the latest possible dates, thus ensuring that the calculations are conservative. Given that we expect the damages amount will significantly exceed the value of the Estate, it is not necessary to hunt for every possible dollar.

**WHEREFORE**, given the SDNY Action's most recent Orders granting partial summary judgment against the Estate and setting a trial date to determine the remedy and to resolve the remaining claims, your affirmant respectfully requests that this Court grant an order directing that all estate assets be reserved for a period of one year, without prejudice to file an application to extend the time or until such time as the SDNY Action is decided at trial; and such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 16, 2021

Brian Brook

5