UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL KLEEBERG, LISA STEIN, and AUDREY HAYS,<br><br>                    Plaintiffs,<br>    v.<br><br>WENDY EBER, in her individual capacity and as Executrix u/w/o LESTER EBER; ALEXBAY, LLC f/k/a LESTER EBER, LLC; LUCIA GORDON GUMAER and PATRICK D. MARTIN solely in their capacities as Executors under the will of ELLIOTT W. GUMAER, JR.; and,<br><br>                    Defendants,<br>    and<br><br>EBER BROS. & CO., INC.; EBER BROS. WINE AND LIQUOR CORP.; EBER BROS. WINE & LIQUOR METRO, INC.; EBER-CONNECTICUT, LLC; EBER-RHODE ISLAND, LLC; EBER BROS. ACQUISITION CORP.; EBER-METRO, LLC; SLOCUM & SONS OF MAINE, INC.; and CANANDAIGUA NATIONAL BANK & TRUST COMPANY,<br><br>                  Nominal Defendants. | Civil Action No.  16-CV-9517(LAK)(KHP) |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO IMPOSE SANCTIONS ON UNDERBERG & KESSLER, LLP AND JOHN HERBERT**

Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 257-2334
Brian@brook-law.com
*Attorneys for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein respectfully submit the following brief in support of their motion to impose sanctions on certain defense counsel under Federal Rule of Civil Procedure 37, 28 U.S.C. § 1927, and the Court's inherent power.

## PRELIMINARY STATEMENT

Wendy and Lester Eber could never have undertaken even a fraction of their wrongful deeds without the help of lawyers, in particular Underberg & Kessler, LLP, which carried out the 2012 Alexbay transaction against their very own client, Eber Bros Wine and Liquor Corp ("EBWLC"). But any liability for counsel's aiding and abetting the Ebers' misdeeds is for another day and another court; this motion is focused solely on counsel's litigation conduct.

A great of defense counsel's conduct during the case is subject to sanctions. For example:

- Failing to supervise Wendy Eber's collection of potentially responsive documents, resulting in critical documents being unproduced until just days before trial, and most of them coming from a third party, Andy Eder. Withheld documents included Lester Eber's supposed 2012 employment agreement and documents showing that the 2010 transfer of 6% of Eber-CT to Polebridge Bowman was initially intended to be transferred to Wendy Eber directly.

- Failing to prepare Wendy Eber for testimony as a Rule 30(b)(6) witness for the corporate entities, including not even informing her that she was required to educate herself on the listed topics, resulting in hours of wasted deposition time and even more wasted preparation time.

- Refusing to produce documents relating to the Eber Bros. pension plan liability and then relying heavily on that liability in their expert report and at trial.

- Presenting a retained actuarial expert at trial without having provided any discovery disclosures from the witness, not even as a purported fact witness.

- Wasting the parties and this Court's time by frivolously arguing that "equity" entitled the Ebers to keep the company they stole even though the Ebers' own expert witness characterized the 2012 Alexbay transaction as a "shell game" that any reasonable investor would disregard as a fraudulent conveyance to evade the pension liability.

1

- Telling Wendy Eber to claim that the Trust's shares in EBWLC were retired, with no evidence to support that position.[1]

- Raising brand new (and theoretically dispositive) *res judicata* and subject matter jurisdiction arguments after the close of evidence at trial and failing to disclose binding Second Circuit authority that said that the latter was a waivable abstention issue, not a jurisdictional issue at all.

Plaintiffs have served three Rule 11 motions during the pendency of this case, covering some of the above along with other frivolous arguments put forward at various times by defense counsel.

Nonetheless, in light of this Court's schedule with other matters and the fact that this case has already consumed a great deal of this Court's time, Plaintiffs do not ask this Court to engage in additional factfinding about the culpability of counsel in frivolously multiplying these proceedings in violation of both Rule 11 and 28 U.S.C. § 1927. Instead, we have narrowly tailored this motion to two issues where this Court (inclusive of the assigned Magistrate Judge) has already made sufficient factual findings to warrant the imposition of sanctions:

1. Mandatory Rule 37(a)(5) sanctions based on Magistrate Judge Parker's prior finding that defense counsel asserted privilege in a manner that was "clearly" overbroad and that defense counsel had intentionally misled the Court into making earlier rulings otherwise.

2. Sanctions under the Court's inherent authority and 28 U.S.C. § 1927 against John Herbert for forging a backdated document in order to prevent summary judgment on the issue of whether EBWLC's February 2017 issuance of preferred shares to Lester Eber was void.

Plaintiffs have released Defendants themselves of further liability, but that release expressly excluded their counsel during this litigation. Accordingly, this motion is tailored not only to already-decided issues, but also solely to the culpability of counsel. Absent imposition of the

---

[1] The Court may recall the following exchange regarding Wendy's decision to eliminate the Trust's shares in EBWLC:
    THE COURT: What lawyer did you speak to about this?
    THE WITNESS: John Herbert. So we weren't certain as to what was going on with these actual --
    THE COURT: So you weren't certain and therefore you scrubbed them off the books of the company?
    THE WITNESS: I thought they had been retired is what -- I thought they had been retired.
Tr. 367-68. After reaching a settlement with Wendy, her counsel sent the EBWLC stock ledger and certificates, which unsurprisingly showed that the Trust's shares were still active. The certificates were in her possession all along, with nothing indicating they were "retired." Given the lack of diligence across the board by defense counsel, we cannot conclude that the concealment of these records was directly attributable to counsel, however.

2

modest amount of sanctions sought herein, the Ebers' counsel will have purely profited from their misdeeds without any accountability. That should not be permitted to pass.

## ARGUMENT

### I. RULE 37 SANCTIONS ARE REQUIRED AS DEFENSE COUNSEL'S PRIVILEGE ASSERTIONS WERE "CLEARLY" UNSUPPORTED

During discovery before Magistrate Judge Katharine Parker, Plaintiffs prevailed on their motion to compel production of documents and to permit questioning on topics over which defense counsel asserted privilege. The mere fact that the motion was granted means that Plaintiffs are presumptively entitled to recover the costs incurred in connection with the motion. *See* Fed. R. Civ. P. 37(a)(5). Those sanctions can be imposed on either the party or the attorney, or both. *Id*. Here, because Plaintiffs have settled their dispute with the Defendants, but that settlement does not release Defendants' counsel, Plaintiffs request that the sanctions be imposed on defense counsel alone. Sanctioning the lawyers alone would be proper even without that settlement, however, given that the discovery dispute concerned misapplication of the attorney-client privilege—an issue about which a client is not presumed to have knowledge.

The only theoretical safe harbor for defense counsel would be if their position was "substantially justified." *Id*. But Judge Parker's opinion has already found that their position was "clearly" wrong, both legally and factually:

> Over half of the of the bates-stamped pages submitted by the Eber Defendants for *in camera* review fall outside the scope of attorney-client privilege because they clearly neither seek nor convey legal advice. It appears that these emails were marked privileged based on the presumption that, where an attorney (or someone who is presumed to be an attorney) is included on an email chain, the entire communication is privileged. That is clearly not the law.

Order on 2d Mot. to Compel at 33 (ECF No. 216).

"Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific

3

deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). As noted above, the "party" against whom the sanctions should be imposed is counsel, because the assertion of privilege is entirely within counsel's control, not the client's. And given the overall history of other issues in this case—about which this Court is intimately familiar—imposing a modest amount of sanctions against defense counsel on this cut-and-dried issue will serve every legitimate purpose that sanctions were designed to further.

Indeed, not only was defense counsel's position "clearly" wrong, but the entire motion was dragged out and unnecessarily time-consuming to litigate because defense counsel initially provided misleadingly incomplete information to Judge Parker:

> Finally, the Court has reexamined the Underberg Letter, EB-00026647 and EB-00026648. The Court previously concluded that the memorandum was privileged because it was prepared by U&K with respect to Alexbay and was addressed to Wendy Eber, as CFO for Alexbay, and Sturm, presumably in some capacity on behalf of Alexbay.31 However, the Court now has emails — not previously produced by Defendants — showing that the letter was disclosed to Gumaer — a person outside the attorney-client relationship. Defendants have provided no information demonstrating that Gumaer was an attorney for Alexbay. ***The Court is troubled that these emails were not previously provided, as it is Defendants' burden to demonstrate there was no waiver of the attorney-client privilege and the failure to provide these emails appears to have been an effort to conceal a waiver.*** Accordingly, the Court concludes, based on the additional information provided, that its prior decision regarding the Underberg Letter must be changed, as Wendy Eber, as an officer of Alexbay, waived privilege by disclosing the Letter to Gumaer.

Order on 2d Mot. to Compel at 51-52 (internal citations omitted; emphasis added). This is an extraordinary comment from a Magistrate Judge, and a key reason why Plaintiffs believe that, at least on this discrete issue that has already been decided in substance in a written opinion, sanctions should be imposed to appropriately punish counsel's deceptive tactics.

4

Plaintiffs first raised the issue of an inadequate privilege log by letter to counsel in December 2017, and ultimately sought judicial intervention in May 2018. *See* Pls. Ltr. Mot. dated May 25, 2018 (ECF No. 98). After a Rule 37(f) conference was unsuccessful, not one but two formal motions were required. *See* Order on 2d Mot. to Compel at 8-9. Ultimately, Judge Parker's order on Plaintiffs' second motion to compel the documents (after denying the first motion) was issued in May 2019. *Id.*

Thus, Defendants' baseless privilege assertions took approximately 18 months to finally resolve. In addition to the motion practice itself and countless efforts to meet and confer and review incrementally revised privilege logs, counsel's conduct also required engaging in repeat depositions once the wrongly withheld documents were produced. Based on an initial review of detailed time records that are available, a fair estimate of the legal fees incurred in connection with the lengthy privilege battle is $125,000.[2]

## II. HERBERT SHOULD BE SANCTIONED OR HELD IN CONTEMPT BECAUSE HE CREATED A PHONY BACKDATED DOCUMENT TO DEFEAT SUMMARY JUDGMENT

Arguably the most egregious act of counsel during this litigation was forging at least one document and then relying on it to defeat summary judgment. Plaintiffs moved for partial summary judgment to overturn the issuance of 750 voting preferred shares to Lester on the grounds that the creation of that new class of shares was not authorized by EBWLC's shareholders. Defense counsel then miraculously found the missing authorization and came up with nonsense to explain why it had not appeared before. This document was clearly backdated and was not actually signed at or near the time of the transaction itself, which was nearly three years before the document was produced by defense counsel. *See* Pls. Prop. Findings of Fact and Conclusions of Law ¶¶ 307-19 (ECF NO. 401) (outlining the foregoing facts with citations); DX-

---

[2] Rule 54(b)(2) requires this motion for fees to include the amount or a "fair estimate" of the fees sought. This amount is based on a review of detailed time records from December 2017 through June 2019 for both undersigned counsel, at the rate of $850 per hour, and his former associate (an honors graduate of the University of Texas Law School) at the rate of $425 per hour. While most of that time was on the motion practice itself as expressly specified by Rule 37(a)(5), the reviewed time also included the second round of depositions, both attorney time and the associated costs for court reporters and videographers.

AA at 9 (the purported authorization that Defendants relied on at summary judgment and again at trial); PX 270 (production cover letter); PX 271 at 4, 8 (defense emails scrambling to explain how this document, supposedly drafted before its effective date, suddenly appeared years later); Trial Tr. 358:13-363:19 (cross of Wendy covering the transaction and the forged document).

In its verdict, this Court concluded that the shareholder authorization did not exist. *See* Op. 77 n. 228 ("Additionally, New York law requires approval by 'vote of a majority ... of shareholders' to create a new class of shares. N.Y. B.C.S. § 803(a). No such vote ever took place, and *there was no written authorization in lieu of a vote*.") (emphasis added). Therefore, it is already decided that the document submitted by the defense was phony.

According to Underberg & Kessler (the attorneys who were involved in the discovery phase), the author of that phony document was John Herbert, a corporate transactional attorney who entered an appearance in this case, and thus became subject to this Court's jurisdiction over his conduct. *See* PX 271 at 4 ("The form of the shareholder consent document at issue was drafted by John Herbert at some point prior to February 15, 2017. He then provided the document to Wendy Eber at some point prior to February 15, 2017, when Ms. Eber signed it. He is searching for a Word version of the document. Further, while it is unclear at best if this document was previously requested, we agree that we have (and had) an obligation to disclose it once we were going to attach it to motion papers. Ms. Eber located the document during a further search in connection with preparing our opposition to your motion for summary judgment, and we disclosed it to you almost immediately thereafter."); *id.* at 8 ("Mr. Herbert has as yet been unable to locate the Word version of the shareholder consent, or any email transmitting it to Ms. Eber in 2017, but will continue to look for them. If they are found, we will provide them to you. The shareholder consent form may have been copied over, and the document may have been given to Ms. Eber other than by email."). To the extent that Mr. Herbert now denies that he prepared the document, this portion of the sanctions motion should be expanded to include Underberg & Kessler, too.

6

Under 28 U.S.C. § 1927 or this Court's inherent authority to sanction abuse of the judicial process, the Court should order Herbert to pay Plaintiffs' additional costs incurred due to the misconduct of faking a document to avoid summary judgment on this issue. *See generally Wisser v. Vox Media, Inc.*, 19-cv-1445, 2020 WL 1547381 *13-15 (S.D.N.Y. Apr. 1, 2020) (summarizing the applicable standards and finding they were violated when counsel applied a client's electronic signature to interrogatory responses without the client's review and approval).

Though egregious, with respect to this forgery and backdating issue, the amount that could be awarded to Plaintiffs is likely limited to the actual additional costs incurred.[3] Here, time records were not kept separately for this discrete issue, and that means approximating the amount of time spent. The preferred-share-issuance issue took up approximately three out of the 116 pages of Plaintiffs' proposed findings of fact and conclusions of law, or roughly 2.5%. Plaintiffs' counsel recorded approximately 700 hours of time before, during, and after trial, and 2.5% of that at a reasonable billing rate of $850 per hour is $14,875—a fairly modest sum considering the severity of disrespect for this Court and the law that Mr. Herbert demonstrated.

---

[3] Because the amount is relatively small, especially considering the overall size of the case and the amount of fees that Mr. Herbert likely collected, Plaintiffs would welcome additional or alternative sanctions imposed in the form of money that Mr. Herbert should pay to the Clerk of Court. Mr. Herbert is not himself a litigator, so it is unfortunately unlikely that imposing sanctions will change his course of conduct or otherwise affect his career in the same way it would a lawyer who regularly appears in courts.

## CONCLUSION

For the foregoing reasons, the Court should sanction Underberg & Kessler in the amount of $125,000 and John Herbert in the amount of $14,875.[4]

Respectfully submitted,

/s Brian C. Brook
Brian C. Brook (BB 1980)
BROOK & ASSOCIATES, PLLC
100 Church Street, 8th Floor
New York, New York 10007
Telephone: (212) 256-1957
Facsimile: (646) 257-2887
Brian@brook-law.com

*Counsel for Plaintiffs Daniel Kleeberg, Lisa Stein, and Audrey Hays*

Dated: June 12, 2023

---

[4] To the extent that a formal declaration is necessary to support these amounts, undersigned counsel hereby declares under penalty of perjury that the factual assertions in this brief are true and correct, and that these amounts are fair estimates of the fees and costs incurred, to the best of his knowledge, information, and belief.