UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DANIEL KLEEBERG, LISA STEIN, and : 
AUDREY HAYS, :
                                                 :   Case No.: 16-CV-09517
                               Plaintiffs, :
                                                     :

            v. :
                                                     :

WENDY EBER, in her individual capacity and : 
as Executrix u/w/o Lester Eber, et al., :
                                                     :

                           Defendants, :
                                                     :

        and :

EBER BROS. & CO. INC., et al., :
                                                     :

                      Nominal Defendants, :

        and :

CANANDAIGUA NATIONAL BANK & :
TRUST COMPANY, in her individual capacity :
and as Executrix u/w/o Lester Eber, et al., :
                                                     :

            Nominal Intervening Defendant. :
                                                     :

------------------------------------------------------------X

## JOHN S. HERBERT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Tyler Maulsby
28 Liberty Street, 35th Floor
New York, New York 10005
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
tmaulsby@fkks.com

*Attorney for John S. Herbert*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTUAL BACKGROUND .............................................................. 3

LEGAL ARGUMENT ............................................................................................. 9

I.     PLAINTIFFS' MOTION IS UNTIMELY ...................................................... 9

II.    THERE IS NO BASIS FOR SANCTIONS AGAINST MR. HERBERT ....................... 11

       A.     Mr. Herbert Is Not Subject to Sanctions Under Rule 37 ..................... 11

       B.     Sanctions Under Section 1927 and the Court's Inherent Authority Are
              Inappropriate ....................................................................................... 12

III.   THE MOTION IS BROUGHT FOR AN IMPROPER PURPOSE ................ 18

CONCLUSION ...................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Austro v. Niagara Mohawk Power Corp.*,
    66 N.Y.2d 674 (N.Y. 1985) ...................................................................................19

*Braun ex rel. Advanced Battery Tech., Inc. v. Zhiguo Fu*,
    2015 WL 4389893 (S.D.N.Y. July 10, 2015) ....................................................12, 13

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...............................................................................................12

*DeCastro v. Kavadia*,
    309 FRD 167 (S.D.N.Y. 2015) ...............................................................................11

*Huebner v. Midland Credit Mgmt., Inc.*,
    897 F.3d 42 (2d Cir. 2018).................................................................................12, 17

*Knox v. County of Putnam*,
    No. 10 Civ. 1671(ER), 2012 WL 4462011 (S.D.N.Y. Sept. 27, 2012) ...................17

*Manganiello v. City of New York*,
    612 F.3d 149 (2d Cir. 2010).....................................................................................17

*Olive Grp. N. Am. LLC v. Afghanistan Int'l Bank*,
    No. 21-CV-10836 (ER), 2023 WL 2644350 (S.D.N.Y. Mar. 27, 2023) ................12

*Pub. Serv. Mut. Ins. Co. v. Goldfarb*,
    53 N.Y.2d 392 (N.Y. 1981) .....................................................................................19

*Rodriguez v. Village of Port Chester*,
    535 F Supp 3d 202 (S.D.N.Y. 2021).......................................................................10

*In re Terrorist Attacks on September 11, 2001*,
    No. 03-MD-1570 (GBD)(SN), 2018 WL 4096106 (S.D.N.Y. Aug. 27, 2018) .....................10

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of
    Am., AFL-CIO*,
    948 F.2d 1338 (2d Cir. 1991).............................................................................12, 13

*Weinreich v. Sandhaus*,
    156 F.R.D. 60, 63-64 (S.D.N.Y. 1994) ..................................................................11

*Wisser v. Vox Media, Inc.*,
    No. 19-cv-1445, 2020 WL 1547381 (S.D.N.Y. April 1, 2020)...............................14

**Statutes**

28 U.S.C. § 1927 ................................................................................................11, 12, 13

**Other Authorities**

29 C.F.R. § 4041.2 .......................................................................................................5

Fed. R. Civ. P. Rule 37 ...............................................................................................11

Fed. R. Civ. P. 54 ........................................................................................................10

N.Y. R. Prof. Cond. 1.8(i), 1.8(a) ...............................................................................20

John S. Herbert ("Mr. Herbert"), by and through his attorneys, Frankfurt Kurnit Klein & Selz P.C., hereby submits this Memorandum of Law in Opposition to Plaintiffs Audrey Hays, Daniel Kleeberg, and Lisa Stein's (collectively, "Plaintiffs") Motion to Impose Sanctions (Docket Entry ("DE") 467, the "Motion").

## PRELIMINARY STATEMENT

Mr. Herbert is a semi-retired corporate transactional lawyer who has spent his career representing individuals and entities in complex corporate transactions. He was initially retained by Wendy Eber ("Wendy") and Lester Eber ("Lester")[1] in April 2013 as an accommodation to a longtime client (Wendy's husband) in order to provide assistance primarily from a corporate law perspective. His involvement in this case began in early 2017. He was never lead litigation counsel for Wendy and Lester and did not supervise discovery in this case. Mr. Herbert's appearance in this case is the only litigation in which he has ever made an appearance.

The Motion seeks sanctions against Mr. Herbert on the grounds that he purportedly authored a document that was "phony," which Plaintiffs claim was then used to defeat summary judgment. This accusation is false. Mr. Herbert did not fabricate any document in this case. As detailed below, Mr. Herbert was asked by Defendants to prepare a series of documents in January and February 2017 that would create a new class of preferred shares in a company that his clients had run for years, the purpose of which was to effectuate a settlement with the Pension Benefit Guaranty Corporation ("PBGC"). These documents were not intended to have anything to do with this case. Mr. Herbert drafted these documents and provided them to Wendy and Lester for their signatures in 2017 before the settlement with PBGC. Consistent with his practice at the time, Mr. Herbert kept paper copies of the unexecuted final versions of the documents he

---

[1] Wendy and Lester together are referred to as "Defendants."

prepared in a file in his home office.  When Mr. Herbert was asked, two years later, to search his files for these documents, he conducted a diligent search and conveyed what he found to Defendants' lead litigation counsel.  This does not constitute subjective bad faith, which is required under the law to impose sanctions.

Plaintiffs' Motion, which is based on pure speculation and a clear misreading of this Court's prior decisions, does not show otherwise.  The Motion does not point to any concrete evidence to support Plaintiffs' accusation that Mr. Herbert fabricated a document (which he did not).  Instead, Plaintiffs' purported basis for their Motion are *their own unsubstantiated allegations* earlier in this case, which Plaintiffs never pursued further.  The Motion also claims that this Court has "already decided" that the document at issue in the Motion was fabricated.  This too is false.  The Court made no such finding, and Plaintiffs' efforts to misconstrue two sentences of dicta in a footnote from a ninety-seven page decision on the merits is reckless.  Plaintiffs are also wrong that this purportedly "phony" document was used to defeat summary judgment in this case.  A plain reading of the Court's summary judgment decision shows that the Court denied Plaintiffs' motion for summary judgment on entirely separate grounds.

The timing of this Motion and the relief it seeks are also suspect.  The Motion states that Plaintiffs and Defendants have reached a settlement that excludes any claim for sanctions against Defendants' lawyers.  However, as detailed below, the settlement agreement as well as underlying communications show that Plaintiffs' true motivations here are to use the Court's sanctions power to gain additional settlement leverage.  That is a wholly inappropriate use of this Court's resources and should not be entertained.

The Motion should therefore be denied against Mr. Herbert.

## RELEVANT FACTUAL BACKGROUND

As the Court is aware, this litigation arises from a years-long family dispute between Plaintiffs and Defendants over the ownership of a family business.  As relevant here, Mr. Herbert represented Lester (and Lester's estate after Lester's death) and Wendy primarily as corporate counsel in connection with a variety of corporate transactional, corporate governance, and dispute resolution matters beginning in 2013.  *See* Herbert Decl. 4.  Mr. Herbert is not a litigator.  This action is the first and only litigation in which he has ever entered an appearance.  For more than thirty years, until 2013, Mr. Herbert worked as a corporate transactional lawyer at prominent law firms in New York City, where he focused on mergers and acquisitions, private equity and corporate finance, and related matters.  *Id.* 2.  In 2013, Mr. Herbert retired from his law firm.  He continues to practice part-time as a solo practitioner.

### *The Instant Action*

This action was commenced on December 9, 2016 against Wendy and Lester, among other parties.  *See* DE 1.  Defendants were originally represented in this case by the law firm Underberg & Kessler LLP ("Underberg").  On or around July 6, 2021, Underberg was replaced by Farrell Fritz, P.C.  (*See* DE 365).  Mr. Herbert was never lead counsel in this litigation.  He worked as co-counsel with Underberg and Farrell Fritz, P.C., but did not manage the day-to-day affairs of the litigation, such as the supervision of discovery, taking or defending depositions, or questioning witnesses.  In addition, as an experienced corporate transactional lawyer, Mr. Herbert would endeavor to address some of the more complex corporate transactional issues in the case at court conferences.  *See* Herbert Decl. 9.  On June 1, 2021,  Mr. Herbert filed Notices of Appearance on behalf of Wendy, both in her individual capacity and as the executor of the Estate of Lester Eber.  (*See* DE 362-63).  Thereafter, Mr. Herbert continued to act in a limited capacity to support lead litigation counsel representing Wendy.

In the course of discovery, Defendants produced approximately 37,000 documents. Underberg, not Mr. Herbert, was responsible for overseeing all aspects of discovery.  Indeed, Mr. Herbert did not even enter a notice of appearance in this case until nearly two years after discovery was complete and summary judgment had been briefed.  (*See* DE 362-63).

### The PBGC Settlement and the February 2017 Stock Authorizations

As detailed in the Court's Opinion dated March 30, 2023, which was issued after a trial on the merits (DE 451, the "Trial Decision"), between 2014 and 2016, the PBGC sought to terminate Eber Bros. Wine & Liquor Corp.'s ("EBWLC") Retirement Plan and demanded immediate payment of approximately $7,985,670 of unfunded liabilities.  *See* Trial Decision at 14.  In 2015, PBGC commenced an action against EBWLC in the United States District Court for the Western District of New York "to declare the Plan terminated and to have PBGC appointed as statutory trustee."  *Id.* at p.17.  In 2016, the court terminated the Retirement Plan retroactive to April 10, 2010 (two years before the 2012 foreclosure of Lester's loans). The court further found that Eber Metro and Eber-CT, the only two Eber family companies with any material assts, were in the EBWLC ERISA "controlled group" and therefore were jointly and severally liable with EBWLC for all the unfunded pension liabilities.

In connection with the PBGC matter, Wendy, Lester and the Eber companies hired a Washington D.C. law firm, Groom Law Group, that specialized in pension and benefits matters. Mr. Herbert provided assistance to Groom Law Group and tried to help negotiate a settlement with PBGC.  Herbert Decl. 11.  Ultimately in February 2017, PBGC agreed to a settlement under which it agreed to release all the EBWLC ERISA "controlled group" members from all unfunded pension liabilities in return for Lester waiving his (and Lester's wife waiving her) entire future benefit entitlement under the Retirement Plan, which was estimated at approximately $1.4

million, plus an additional cash payment from Eber-Metro of $2.0 million (the "PBGC Settlement"). *See id.* 16, 18.

It does not appear that any party in this action has ever claimed that the PBGC Settlement was improper or somehow detrimental to the Eber companies or Plaintiffs. On the contrary, the PBGC Settlement provided a significant benefit (equal to approximately $6 million) to EBWLC, Eber-Metro and Eber-CT (and therefore to Plaintiffs who now own those companies), insofar as it absolved those companies of any further pension liability in exchange for a personal monetary contribution from Lester and his wife and a $2.0 million payment from Eber-Metro. *Id.*

In order to facilitate the PBGC Settlement, Wendy and Lester were required to execute certain corporate documents. Among other things, EBWLC created a new class of 750 preferred shares of stock, which were issued to Lester. The purpose of this issuance was to enable Lester to qualify as the "majority owner" of EBWLC within the meaning of 29 C.F.R. § 4041.2 so that he could forfeit his and his wife's pension benefits in order to complete the PBGC Settlement. *See* Herbert Decl. 19.

To accomplish this issuance, Mr. Herbert was asked to prepare the necessary corporate documents. Mr. Herbert prepared these documents in January and February 2017. Specifically, Mr. Herbert drafted the following documents (the "Authorization Documents"):

- Unanimous written consent of the EBCO board, which authorized Lester to execute a shareholder consent appointing Wendy as director of EBWLC so that she could execute EBWLC's Authorization Documents;

- Unanimous written consent of EBCO (as the sole holder of EBWLC voting stock), which appointed Wendy as sole director of EBWLC;

- Unanimous written consent (the "Shareholder Consent") of EBCO (as the sole holder of EBWLC voting stock) consenting to the EBWLC charter amendment (the "Charter Amendment");

- Unanimous written consent of EBWLC approving the form of the EBWLC charter amendment and authorizing the purchase agreement for the EBWLC preferred shares between EBWLC and Lester; and

- EBWLC Charter Amendment authorizing the issuance of the additional 750 shares of preferred stock.

See Herbert Decl. ¶ 22.

Mr. Herbert prepared these documents in January and February 2017, before the PBGC Settlement was finalized, and provided the Authorization Documents to Wendy and Lester to review and sign.[2]  Consistent with his longstanding practice, Mr. Herbert kept paper copies of each of the unsigned Authorization Documents in his files.  With respect to the Shareholder Consent – which is the document that appears to be at issue in the Motion – Mr. Herbert recalls drafting the document at some point in February 2017 before the PBGC settlement closed, after which time he placed a paper copy of the document in his files along with the other Authorization Documents.

Mr. Herbert believed that Wendy and Lester signed all the Authorization Documents in February 2017 before the PBGC Settlement.  The record, including the representation from Underberg to Plaintiffs' counsel on December 13, 2019, supports Mr. Herbert's understanding.  *See* PE 271 (email from P. Keneally to B. Brook stating "[Mr. Herbert] provided the document to

---

[2] As was his practice at that time, Mr. Herbert would sometimes send documents to Wendy and Lester electronically and at other times he would send physical copies or bring them to in-person meetings.

Wendy Eber at some point prior to February 15, 2017, *when Ms. Eber signed it*." (emphasis added).[3]  Further, to the extent the Authorization Documents were relevant or responsive to issues in this litigation, Mr. Herbert assumed that Wendy and Lester had provided those documents to Underberg, who had produced the Authorization Documents in discovery.  Again, Mr. Herbert is a semi-retired transactional lawyer, not a litigator.  He did not supervise discovery in this action and was not asked to assist in the discovery process with the exception of answering limited questions about specific issues.

### *The Motions for Partial Summary Judgment*

In late 2019, the parties in this action cross-moved for partial summary judgment on a variety of issues.  In connection with the summary judgment briefing, Plaintiffs sought, among other things, to set aside the transaction that created the 750 preferred shares of EBWLC stock.  Defendants argued that they had corporate authority to undertake the transaction and that Lester had the authority under the 1969 Allen Eber Trust (the "Trust") to issue the shares to himself to complete the PBGC Settlement.  At the time of summary judgment briefing, Mr. Herbert assumed that all the Authorization Documents had been provided to litigation counsel and assumed they had been produced in discovery.  Mr. Herbert subsequently learned that the Shareholder Consent was not produced in discovery and that Underberg did not have a copy of the document.  On December 5, Wendy sent her lawyers at Underberg a copy of the executed Shareholder Consent, which Underberg promptly produced to Plaintiffs.

---

[3] During Wendy's cross-examination at trial, Plaintiffs' counsel *never* asked Wendy when she signed any of the Authorization Documents, despite ample opportunity to do so.  *See* DE 391 (Trial Transcript dated Sept, 21, 2021), 362:8-363:5.  This is telling.  Presumably in an effort to avoid asking a question to which they did not want the answer, Plaintiffs now base their allegations against Mr. Herbert on pure conjecture.

Contrary to the accusations in the Motion, Mr. Herbert did not fabricate the Shareholder Consent or back-date it and vehemently denies any such allegation. After the Shareholder Consent was produced, Mr. Herbert was asked by Underberg to search for any drafts or copies he had in his files related to the drafting of the Shareholder Consent. After a diligent search, Mr. Herbert was unable to find a native Microsoft Word version of the document, but did locate the paper copy of the unsigned final version, that he had kept in his files along with the other Authorization Documents.[4] Mr. Herbert kept these files in the regular course of his practice and recalls making that file in February 2017. Mr. Herbert conveyed this information to Underberg who in turn, conveyed the information to Plaintiffs' counsel. After receiving that information, Plaintiffs did not move to compel any records related to the Shareholder Consent, nor did they directly raise the issue with the Court in their summary judgment briefing.

### The Trial Decision

On March 30, 2023, this Court issued its Trial Decision, which included findings of fact and conclusions of law. (*See* DE 451) As relevant here, the Court found that the issuance of the 2017 EBWLC preferred stock was void. *See* Trial Decision at 76. The Court found that "[r]egardless of the underlying purpose, the transactions are another instance of self-dealing by Lester that is void under the 'no further inquiry rule.'" *Id.* As such, it tested whether Lester met the required fiduciary standard of conduct as a co-trustee of the trust. The Motion claims that in this holding, the Court also found that the Shareholder Consent was fabricated because the Court concluded that "no such vote ever took place and there was no written authorization in lieu of a

---

[4] As noted, Mr. Herbert relied primarily on hard copy filing, not electronic filing. In addition, between January-February 2017, when he prepared the Authorization Documents, and December 2019, when he was asked to search his files, Mr. Herbert moved his entire office and files twice to different homes in New York and California.

vote" to authorize the creation of the 750 preferred shares of EBWLC stock. *Id.* At 77 n.228. As detailed below, the Motion relies on a misreading of this portion of the Trial Decision, which made no finding whatsoever about whether the Shareholder Consent document signed by Wendy was valid. Nowhere in the Trial Decision, did the Court make such a finding or that Mr. Herbert somehow participated in any fabrication.

### *The Settlement and the Instant Motion for Sanctions*

On June 12, 2023, Plaintiffs filed the Instant Motion. As noted in the Motion, Plaintiffs and Defendants have already reached a settlement, however, the releases in the settlement agreement apparently carved-out Plaintiffs' ability to seek sanctions against Defendants' counsel. The settlement agreement extends beyond a simple carve-out and actually requires Plaintiffs to indemnify Defendants in the event the Court, *sua sponte*, imposes sanctions for misconduct. As detailed below, not only is this impermissible, but it makes the instant Motion immediately suspect. *See* Herbert Decl. Exs. B-C.

### LEGAL ARGUMENT

### I.    PLAINTIFFS' MOTION IS UNTIMELY

As detailed above, the Motion seeks sanction for conduct that allegedly occurred *more than four years ago*. As it relates to Mr. Herbert, Plaintiffs' Motion claims that Mr. Herbert prepared the Shareholder Consent, which Plaintiffs claim – without any concrete evidence – was either "forged" or "backdated" by him and was allegedly used to defeat summary judgment. *See* Mot. at 6-7. Leaving aside that the Shareholder Consent was not the basis for the Court's denial of summary judgment (which we address below), Plaintiffs had ample opportunity to address this issue over the past four years. Plaintiffs did not bring a motion before the Court to compel

evidence or testimony concerning this purportedly fabricated document.[5]  Indeed, after Plaintiffs'

motion for summary judgment was denied on a variety of issues (including the request to set

aside the preferred shares issuance), Plaintiffs moved to reargue the Court's decision as to certain

issues *but did not raise any issue regarding the Shareholder Consent*.  (*See* DE 322-23).  It is

incomprehensible that if Plaintiffs genuinely believed that Defendants had submitted a fabricated

document to defeat summary judgment (as they now allege), they would not have run to the

Court at the earliest possible opportunity to address the issue.

Instead, Plaintiffs simply made vague references in various filings in which they voiced

skepticism about the authenticity of the document, but never pursued the issue further.  Under

these circumstances, Plaintiffs' motion should be denied.[6]  *See Rodriguez v. Village of Port*

*Chester*, 535 F Supp 3d 202, 217 (S.D.N.Y. 2021); *see also In re Terrorist Attacks on September*

*11, 2001*, No. 03-MD-1570 (GBD)(SN), 2018 WL 4096106, at *2 (S.D.N.Y. Aug. 27, 2018)

(denying sanctions motion as untimely because there was "most certainly unreasonable delay"

where Plaintiffs "waited to bring their motion for sanctions until more than six years after [the]

alleged misconduct."); *Shamis v. Ambassador* Factors Corp., 34 F Supp 2d 879, 886 (S.D.N.Y.

1999), on rearg, 187 FRD 148 (S.D.N.Y. 1999) (noting that "unreasonable delay rendered

motion for sanctions untimely where plaintiff had notice of [party's] possible discovery abuses

years before, but 'let the matter rest'; motion for sanctions brought "simply … too late to raise

these issues now" as "[d]iscovery [had] been closed for five months and [the party] did not

---

[5] Although Plaintiffs threatened such action in counsel's December 9, 2019 email (*see* PE 271), they never followed through until nearly four years later after the action concluded.

[6] The Motion also appears to based, at least in part, on Fed. R. Civ. P. 54.  *See* Mot. at 5, n.2.  Given that this is a sanctions motion, Rule 54 is inapplicable.  *See* Fed. R. Civ. P. 54(2)(E) ("Subparagraphs (A)–(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. §1927."

previously bring this issue to the Court's attention.") (internal citations omitted); *Weinreich v. Sandhaus*, 156 F.R.D. 60, 63-64 (S.D.N.Y. 1994) (holding that motion for sanctions pursuant to Fed. R. Civ. P. 11 and 37, 28 U.S.C. § 1927, and the inherent power of the Court was untimely when "the great majority of the sanctionable conduct alleged in plaintiff's motion occurred between three and six years ago.")

## II.     THERE IS NO BASIS FOR SANCTIONS AGAINST MR. HERBERT

### A.      Mr. Herbert Is Not Subject to Sanctions Under Rule 37

Although it is not entirely clear, Plaintiffs' Motion does not appear to seek sanctions against Mr. Herbert under Fed. R. Civ. P. Rule 37 ("Rule 37") for purported discovery abuses. *See* Mot. at 4-6. Accordingly, to the extent the Court concludes that any sanctions are warranted against counsel under Rule 37, no such finding should issue against Mr. Herbert.[7]

Moreover, any sanction against Mr. Herbert under Rule 37 would be inappropriate given his limited involvement in this case. *See DeCastro v. Kavadia*, 309 FRD 167, n. 19 (S.D.N.Y. 2015) (noting that imposing sanctions against co-counsel "would be inappropriate at this time, due to his limited participation in the action"). As detailed above, Mr. Herbert was by no means "lead counsel" in this action and was not responsible for supervising discovery, including directing how and when documents were collected and produced. He is a corporate transactional lawyer who provided limited assistance to Wendy, Lester, and their litigation counsel in this dispute and did not even file a notice of appearance until after the discovery phase of this action

---

[7] Further, to the extent the Court concludes that Mr. Herbert is subject to the prong of the Motion that seeks sanctions under Rule 37, Mr. Herbert joins in the arguments advanced by Underberg, including that Plaintiffs have not properly justified any of their fees spent on these issues. (*See* DE 480).

closed.  (*See* DE 362-63).  Under these circumstances, there is no basis to impose sanctions against Mr. Herbert under Rule 37.

### B.   Sanctions Under Section 1927 and the Court's Inherent Authority Are Inappropriate

28 U.S.C. § 1927 ("Section 1927") authorizes sanctions for conduct that is "unreasonable and vexatious" and leads to the "multiplication[] of proceedings."  *Olive Grp. N. Am. LLC v. Afghanistan Int'l Bank*, No. 21-CV-10836 (ER), 2023 WL 2644350 at \*5 (S.D.N.Y. Mar. 27, 2023).  Sanctions under Section 1927 are intended to "deter unnecessary delays in litigation" but are only proper when the attorney's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose[.]"  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991).  Implicit in Section 1927 is the requirement that a party engage in some intentional wrongdoing that wastes time and resources of the court and the parties.  *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (Section 1927 requires a court to find clear evidence that "(1) the offending party's claims were entirely without color" and "(2) the claims were … motivated by improper purposes such as harassment or delay.")

The court's inherent authority to issue sanctions, which stems from the court's need to "manage [its] own affairs" and effectuate the "orderly and expeditious disposition of cases" is likewise only appropriate when there is a "particularized showing of bad faith."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Teamsters*, 948 F.2d at 1345.  The Supreme Court has cautioned that the court's inherent authority should be exercised "with restraint and discretion" and that sanctions are proper only when the party being sanctioned has *knowingly* acted in bad faith.  *Chambers*, 501 U.S. at 44; *see also Braun ex rel. Advanced Battery Tech., Inc. v. Zhiguo Fu*, 2015 WL 4389893 \*17 (S.D.N.Y. July 10, 2015) (inherent authority sanctions are

inappropriate unless party "knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly.")  Sanctions imposed under the court's inherent authority require a finding of bad faith "by clear and convincing evidence" and the court's findings of fact "must be characterized by a high degree of specificity."  *Braun*, 2015 WL 4389893, at *17.  In essence, to impose sanctions under Section 1927 or the court's inherent authority, the court must find that the attorney acted in bad faith.  *Teamsters*, 948 F.2d at 1345, 47 ("Both § 1927 and the court's inherent power demand, *inter alia*, a clear demonstration of bad faith in order to justify sanctions.")

As detailed in the Motion, Plaintiffs' sole basis for seeking sanctions against Mr. Herbert is his purported involvement in the creation of the Shareholder Consent, which Plaintiffs claim was "phony."  As detailed below, Plaintiffs' unsupported accusations come nowhere close to meeting their burden under Section 1927 or the Court's inherent authority.  This is so for at least three reasons.

*First*, there is no support for Plaintiffs' accusation that Mr. Herbert authored a "phony document," namely the Shareholder Consent.  In the Motion, Plaintiffs cite nothing more than their own conclusory allegations, which they have never substantiated despite having four years to do so in this litigation.  *See* Mot. at 6 (citing to Proposed Findings of Fact, not adopted by the Court and email accusations from Plaintiffs' counsel).

Mr. Herbert's declaration puts this matter to rest.  As detailed in the Herbert Declaration, Mr. Herbert was asked by Wendy and Lester to prepare the Authorization Documents needed to complete the PBGC Settlement in January and February 2017, including the issuance of the EBWLC preferred shares.  He did as he was asked and drafted the five Authorization Documents

and provided them to Wendy and Lester before the PBGC Settlement was finalized on February 24, 2017.  He then placed paper copies of the five unsigned Authorization Documents in his hard copy files shortly before the PBGC Settlement.  Mr. Herbert has no recollection of receiving the signed copies of the Authorization Documents from either Wendy or Lester at the time and does not have any records to suggested that he did.  *See* Herbert Decl. ¶ 29.

Mr. Herbert categorically denies affixing Wendy or Lester's signatures to any of the Authorization Documents by any means, nor did he backdate any of the Authorization Documents as the Motion suggests.[8]  *Id.* ¶ 30.

In connection with this litigation, Mr. Herbert assumed that Wendy or Lester had provided all relevant documents to their litigation counsel at Underberg, including the Authorization Documents.  Mr. Herbert subsequently learned that four of the five Authorization Documents were produced by Underberg between September 2017 and June 2019 and, according to Plaintiffs' Exhibit 270, a copy of the executed Shareholder Consent provided to Underberg by Wendy was produced to Plaintiffs by Underberg on December 6, 2019.

In connection with Underberg's efforts to produce the Shareholder Consent on or around December 6, 2019, Mr. Herbert was asked by Underberg to try to locate paper and electronic copies of the Shareholder Consent in his own files.  Mr. Herbert conducted a diligent search in his paper and electronic files.  He was able to locate unsigned paper copies of all the documents he drafted in 2017, which is the information he conveyed to Underberg.  *See* Herbert Decl. ¶ 34.

---

[8] On this issue, the Motion cites generally to *Wisser v. Vox Media, Inc.*, No. 19-cv-1445, 2020 WL 1547381 (S.D.N.Y. April 1, 2020).  *Wisser* is totally irrelevant.  Unlike the facts in *Wisser*, there has been no testimony that Mr. Herbert affixed Wendy's signature to the document (he did not).  On the contrary, the record shows that Wendy signed the document.  The Shareholder Consent also does not contain an "electronic signature" but rather a hand signature, leaving little question about who signed the document.

Mr. Herbert did not have a signed copy of the Shareholder Consent and understands that the signed copy was provided to Underberg on December 5, 2019 by Wendy.  *See id.*

Mr. Herbert's actions do not amount to subjective bad faith, which is required for a finding of sanctions.  Mr. Herbert did not fabricate any document in this case.  He is an accomplished transactional lawyer who spent decades at large law firms representing individuals and entities in highly sophisticated transactions.  He takes this accusation seriously and maintains that it is without any merit whatsoever.  The Motion does not provide any concrete evidence to the contrary.

*Second*, Plaintiffs are wrong when they state that "it is already decided that the document submitted by the defense was phony."  *See* Mot. at 6.  The Court made no such finding.  The Motion relies on a portion of a single footnote (footnote 228) in the Court's ninety-seven page Trial Decision to argue that the Court has concluded that the Shareholder Consent was fabricated.  *See* Mot. at 6.  At best, Plaintiffs are misreading the Court's Decision, at worst they are distorting the Decision to serve their interests.  The Court's decision to void the EBWLC preferred shares was not based on whether the Shareholder Consent document, signed by Wendy, was valid as a technical compliance matter under N.Y. B.C.L. § 803(a).  On the contrary, the Court's decision was based on its finding that the issuance of the EBWLC preferred shares to Lester, as a co-trustee of the Trust (not as an officer or director of EBWLC or EBCO), was a self-interested transaction  and therefore void under the "no further inquiry" rule.  The Court continued:

> Most importantly, there was no persuasive evidence that either of Lester's co-trustees or the trust beneficiaries was informed about or consented to Lester's acquisition of these shares in EBWLC. To the contrary, plaintiffs objected to these transactions and moved for summary judgment to enjoin them. The "no further inquiry" rule requires that I set aside these transactions regardless of their underlying fairness or lack thereof.

Trial Decision at 76.  The Court's decision only tests whether Lester had met the required

fiduciary standard of conduct as a co-trustee of the Trust.

In other words, the Court never even reached the technical validity of the Authorization

Documents under N.Y. B.C.L. § 803(a) because, as a matter of law, the Court was required to set

aside the transaction under the "no further inquiry" rule.  The single sentence at the end of

footnote 228 on which Plaintiffs' entire argument rests makes no reference to the Shareholder

Consent or its authenticity and certainly makes no finding with respect to Mr. Herbert.[9]

Plaintiffs' effort to interpret this finding to suggest that "it is already decided that the document

submitted by the defense was phony" rings hollow.

*Third*, Plaintiffs' claim that the Shareholder Consent was used to "defeat summary

judgment" is simply false.  *See* Mot. at 6.  As a threshold matter, Mr. Herbert did not submit *any*

document in support of or in opposition to summary judgment.  He had not even appeared in the

case at that time and did not sign any of the papers.  In any event, the Court's decision denying

Plaintiffs' motion for summary judgment had absolutely nothing to do with the authenticity of

the Shareholder Consent or any of the other Authorization Documents.

On the contrary, the Court held that an issue of fact existed as to: (i) whether EBWLC

had one or two shareholders (i.e., Lester alone or Lester and the Trust), not whether the creation

of the new class of preferred shares was properly documented; and (ii) whether Plaintiffs had

consented to the transaction (thereby avoiding the "no further inquiry" rule), which the Court

observed Plaintiffs completely failed to address in their summary judgment briefing.  *See* DE

---

[9] Indeed, in the Trial Decision, the Court also imposed punitive damages against Wendy.  *See* Trial
Decision at 92-94.  If, as Plaintiffs contend, the Court found that Wendy or her lawyers had fabricated a
document in the course of this litigation, one would expect that issue to be part of the "morally
reprehensible behavior" that the Court concluded warranted punitive damages.  *Id.* at 93.  It was not.

314 at 58-60.  The Court further found issues of fact concerning whether the issuance of the

EBWLC preferred shares to Lester was an "interested director transaction" under N.Y.B.C.L.

sec. 713 and whether a quorum was present when the EBWLC Board approved the issuance of

the shares by consent in lieu of a Board meeting (finding that a material issue of fact as to the

number of EBWLC shareholders existed for Trial that directly bears on the existence of a

quorum), finding that Plaintiffs failed to carry their burden on these issues.[10] None of these

issues had anything to do with the authenticity of the Shareholder Consent.  In other words, even

if there were legitimate questions concerning the authenticity of the Shareholder Consent (which

there were not), it played no role in the Court's summary judgment decision as Plaintiffs

contend.  *Accord Huebner*, 897 F.3d at 55.

　　　　Moreover, to the extent the Shareholder Consent might have played any role at summary

judgment, it related to Wendy and Lester's credibility, which the Court could not consider on

summary judgment.  See *Knox v. County of Putnam*, No. 10 Civ. 1671(ER), 2012 WL 4462011,

at *5 (S.D.N.Y. Sept. 27, 2012) (citing *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d

Cir. 2010).

　　　　As detailed above, Mr. Herbert drafted the Authorization Documents in 2017 and

provided them to Wendy and Lester at that time.  The Motion does not meaningfully dispute this

fact.  Mr. Herbert's declaration also makes clear that he never had a signed copy of the

Shareholder Consent (or any of the Authorization Documents) in February 2017.  If there is a

question about *when* the Shareholder Consent was signed, that is not an issue involving Mr.

---

[10] Plaintiffs deposed Wendy and Lester *extensively* in advance of summary judgment (Wendy was deposed on January 23, 2019, February 27-28, 2019 and June 28, 2019; Lester was deposed on January 24, 2019 and June 27, 2019).  Notwithstanding hours of deposition testimony, there is no testimony that supports Plaintiffs' accusations against Mr. Herbert.

Herbert, but instead an issue involving Wendy, who provided the signed Shareholder Consent to Underberg.[11]

Also telling is that although Plaintiffs sought to unwind the issuance of the EBWLC preferred shares, after the Court issued the Trial Decision, Plaintiffs requested (with the agreement of Defendants) that the EBWLC preferred shares *not* be voided.  *See* DE 452 at 2, 4. *See also* DE 455 (Judgment dated April 7, 2023 stating "by agreement of the parties on April 5, 2023, the [EBWLC preferred shares] are cancelled without consideration rather than voided."). The reason is clear:  Plaintiffs recognized the significant benefits to them of the PBGC settlement and did not want to risk having that undone.

## III.     THE MOTION IS BROUGHT FOR AN IMPROPER PURPOSE

Finally, Plaintiffs' motion should be denied as it was brought for a wholly improper purpose.  Plaintiffs note in their Motion that although Plaintiffs have released Defendants as part of a settlement agreement, "that release expressly excluded their counsel during this litigation." *See* Mot. at 2.  That does not tell the full story.  Indeed, in addition to carving-out Defendants from any release, Plaintiffs have expressly agreed to *indemnify* Defendants in the event the Court concludes that Defendants' actions warrant sanctions.  The relevant portions of the settlement agreement reads as follows:

> Dismissal of Certain Litigation.  . . . The Parties expressly acknowledge and agree that this Agreement shall not limit Plaintiffs' and their counsel's ability to seek attorney fees by motion to the District Court provided that such fees are only sought from attorneys ("Attorney Claims"), and, notwithstanding anything to the contrary herein, that **under no circumstances shall Wendy Eber, the Estate of Lester Eber, or any other Defendants become liable for or be required to pay any sums of money to Plaintiffs or their counsel, even if ordered to do so by the District Court.**

---

[11] Of course, as the Motion admits, Plaintiffs have already released Wendy for this conduct, which is why they are taking aim at Mr. Herbert in the Motion.

> Counsel Action Indemnity. Plaintiffs have reserved their rights to pursue certain Attorney Claims. The Plaintiff Parties (in this context, the "Indemnitors") hereby agree to **jointly and severally indemnify, defend, and hold harmless the Defendants from any and all claims, demands, losses, liabilities, damages, costs, and expenses (including the advancement of reasonable attorneys' fees and expenses) arising out of or related to any action or claim brought by the Plaintiff Parties against any third party in connection with the Attorney Claims.** If advancement is sought, the Plaintiff Parties shall have the right to select mutually agreeable counsel for the Defendants and approve all bills. This provision shall not apply in the event that the Defendants assert claims or counterclaims of their own against the same attorneys, and Defendants agree to promptly disclose any demands, offers, or settlements exchanged with such attorneys for a four-year period after the date of this Agreement.

*See* Herbert Decl. Ex. B (emphasis added).

The agreement that the parties reached cannot be squared with the accusations in the Motion. If, as the Motion alleges, Defendants and their counsel orchestrated a scheme to falsify documents and submit them to a Court, such conduct cannot be the subject of indemnification. *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 399 (N.Y. 1981) ("One who intentionally injures another may not be indemnified for any civil liability thus incurred."); *see also Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674 (N.Y. 1985). Plaintiffs' willingness to agree to such an indemnification, however, makes clear that the Motion is simply a cynical effort to use the Court's sanctions power as an additional tool to leverage a settlement.

Plaintiffs' improper motivations for bringing this Motion are further supported by the communications between Plaintiffs' counsel and the lawyer representing Defendants (not Mr. Herbert) before the settlement agreement was signed. On April 20, 2023, Plaintiffs' counsel wrote an email which stated:

> "[The sanctions motion] could be an alternative means of collecting at least a few hundred thousand dollars, both through a sanctions motion to Kaplan and a malpractice claim against Underberg for their ridiculous conflict of interest taking money from a client (EBWLC) when they were helping Lester/Wendy steal its only asset. My clients aren't keen on it, and it'd mean a lot more work for me, but

it's an idea I have that could help bridge the gap since you're signaling she wants to settle for $2 or less, and that's just not gonna cut it."

*See* Herbert Decl. Ex. C (email from B. Brook to D. Slossberg dated April 20, 2023).[12]  That is not the purpose of sanctions, and Plaintiffs' actions should not be countenanced.

## <u>CONCLUSION</u>

For the foregoing, Mr. Herbert respectfully requests that the Court deny the Motion as against him in its entirety.

Dated: New York, New York
       August 14, 2023

                       FRANKFURT KURNIT KLEIN & SELZ, P.C.

                       By:  */s/ Tyler Maulsby*
                           Tyler Maulsby

                       28 Liberty Street, 35th Floor
                       New York, New York 10005
                       Tel.:  (212) 980-0120
                       Fax:  (212) 593-9175
                       tmaulsby@fkks.com

                       *Attorney for John S. Herbert*

---

[12] Adding additional motivation for Plaintiffs' groundless Motion against Mr. Herbert, it appears that after this litigation concluded, Plaintiffs' counsel, Mr. Brook, became the Chief Operating Officer of the business that his clients' took over.  *See* https://www.linkedin.com/in/brian-brook-4596466.  Accordingly, any amounts sought in attorneys' fees would effectively result in Mr. Brook being paid twice – once for his own legal fees and then again as a windfall for the company he now runs.  It is not at all clear why Plaintiffs did not feel the need to disclose this glaring conflict of interest to the Court in connection with their Motion.  *See* N.Y. R. Prof. Cond. 1.8(i), 1.8(a).