UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

DANIEL KLEEBERG, et al.,

                                 Plaintiffs,

                  -against-

WENDY EBER, et al.,

                                 Defendants.

-------------------------------------------------------------------X

**OPINION AND ORDER**

**16-CV-9517 (LAK) (KHP)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/23/2023

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs have moved pursuant to 28 U.S.C. § 1927 and the Court's inherent power for sanctions against John Herbert, counsel for Wendy Eber and the Estate of Lester Eber. They contend Herbert forged a backdated document.[1] For the reasons set forth below, the motion (ECF No. 467) is denied.

## BACKGROUND

1. The Eber Family Companies and Trust

This case involved a dispute concerning the Eber family liquor distribution business that had been placed in a Trust by the family patriarch, Allen Eber. The parent entity is Eber Bros. &

---

[1] Plaintiffs also had moved, but have since withdrawn their motion, to impose sanctions on Underberg & Kessler, LLP ("Underberg & Kessler"), counsel for Wendy Eber and other defendants, seeking attorneys' fees and costs incurred in connection with a motion to compel production of certain documents withheld as privileged. The motion to compel was resolved by the undersigned in May 2019 – more than four years ago. That motion was granted in part and denied in part. No fees were requested or awarded in connection with that motion. (ECF No. 216).

Co., Inc. ("EB&C").  Additional Eber companies include EB&C subsidiary, Eber Bros. Wine and

Liquor Corp. ("EBWLC"); Eber Bros. Wine & Liquor Metro, Inc. ("Eber Metro"), a subsidiary of

EBWLC; and Eber Metro's subsidiary, Eber-Connecticut ("Eber-CT").

Allen Eber founded EB&C and intended for his heirs to run and benefit from his

business.  His last will and testament (the "Will") provided for the creation of a testamentary

trust (the "Trust") to hold his residuary estate, including all controlling stock for EB&C and

related entities.  The Will stated that it was Allen Eber's wish that his son Lester Eber participate

in the management of the business going forward.  Lester later brought his daughter Wendy

Eber into the business and gave her executive roles in the companies.

The Will nominated three trustees to manage the Trust: Lester Eber; Allen

Eber's attorney, Elliott W. Gumaer, Jr.; and Marine Midland Trust Company, a bank.

M&T Bank subsequently replaced Marine Midland Trust Company as co-trustee, and

Canandaigua National Bank ("CNB") replaced M&T Bank in July 2007.  The Will provided that

the Trust's assets would transfer to the Trust beneficiaries per stirpes, that is,

"[p]roportionately . . . according to their deceased ancestor's share."  Black's Law Dictionary

(11th ed. 2019).  Allen Eber's three children, Mildred Eber Boslov, Sally Eber Kleeberg, and

Lester Eber, were the original beneficiaries of the Trust and each held a one-third "equal"

interest in the Trust.  When Mildred Eber Boslov died in 1973, her only child, Plaintiff Audrey

Hays, became a one-third beneficiary of the Trust.  When Sally Kleeberg passed away in 2014,

her two children, Plaintiffs Daniel Kleeberg and Lisa Stein, became beneficiaries of the Trust,

each holding a one-sixth interest in it.

Over time, through various transactions, Lester Eber while a Trustee of the Trust and principal/executive of the Eber businesses accomplished the transfer of virtually all the assets of the Trust to a company he fully controlled called Alexbay, LLC ("Alexbay"), depriving Plaintiffs – his nieces and nephews – of benefits under the Trust to the advantage of his daughter, Wendy Eber – Plaintiffs' cousin.  The transfer was done purportedly to pay a debt EBWLC owed to Alexbay, although it appears another motive was to protect assets from a significant liability with respect to an employee pension plan.  The Court does not repeat the details of the various corporate transactions here and assumes familiarity with the facts.  See ECF No. 451.  The transfer of Eber Metro to Alexbay was finalized on June 5, 2012, and on that date all of the remaining shares of Eber Metro stock were registered in Alexbay's name on a certificate signed by Lester Eber as President and Wendy Eber as Vice President of Eber Metro.  On June 6 and 9, 2012, Wendy and Gumaer, respectively, formally consented on behalf of EBWLC to the transfer. EBWLC's only remaining asset following the transfer of Eber Metro to Alexbay was less than $3,000 in cash.  EBWLC also was left saddled with the debt it still owed to third-party creditors, including certain pension obligations.

Ultimately, Plaintiffs sued to unwind various transactions and recover benefits to which they were entitled under the Trust.

2.  The Outcome of this Lawsuit

In resolving the parties' cross-motions for partial summary judgment, the Court held that Lester Eber, as a trustee of the Trust, failed to demonstrate that the Trust beneficiaries consented to the transfer of Trust assets to Alexbay and that he and other trustees who had ratified the transfer violated their duty of undivided loyalty to the Trust beneficiaries (i.e.,

3

Plaintiffs).  As a consequence, the Court also found that the transfer of assets was void under the so-called "no further inquiry" rule.  (ECF No. 348).  That decision was issued on March 25, 2021.

The case then proceeded to a bench trial before the Honorable Lewis A. Kaplan.  On March 30, 2023, Judge Kaplan issued a decision in favor of Plaintiffs and issued a final judgment on April 7, 2023 granting certain equitable relief including appointing Kleeberg as a temporary receiver of EB&C, EBWLC, Eber Metro, and Slocum Maine.  (ECF Nos. 451 & 455).  Kleeberg then dismissed the existing Board of Managers of Eber-CT – the one remaining operating company – and terminated the employment of his cousin Wendy Eber as president and chief executive officer of that entity.  Kleeberg then appointed himself as president and chief executive officer of Eber-CT.  The parties subsequently agreed that 750 Class B junior preferred shares of EBWLC that had been issued to Lester Eber in 2017 were cancelled.  The Court ordered CNB to distribute the stock of EB&C per stirpes in accordance with the Will, declared the Alexbay transaction void, imposed a constructive trust for the benefit of EBWLC on all property that the Eber Defendants had received or may receive traceable to the Alexbay transaction, and ordered the Eber Defendants to transfer to EBWLC all such property.  The Court also declared other transactions void and similarly required transfer of property for the benefit of the Trust and its beneficiaries.  ECF 455.

3.  Settlement of Pension Litigation

As noted above, EBWLC sponsored a pension plan that became underfunded.  This resulted in a lawsuit against EBWLC and related entities by Pension Benefit Guaranty Corporation ("PBGC").  The Eber entities hired the Groom law firm to assist in the defense of

the action.  Ultimately, PBGC obtained a favorable judgment, which resulted in it filing federal tax lien notices against EBWLC and related entities seeking recovery of over $7 million for the benefit of the plan.  A settlement was reached pursuant to which Lester Eber and his wife waived their entitlement to $1.4 million in pension benefits from the plan and Eber-Metro contributed $2 million toward the pension liability.  Purportedly to accomplish the settlement and Lester's and his wife's waiver of their pension benefits, EBWLC created a new class of Class B Junior Preferred Stock (750 shares in total) and authorized the sale of the shares to Lester (the "EBWLC Class B shares").  The creation of the stock and authorization of its sale to Lester was purportedly approved by the EBWLC Board.  Lester acquired the shares in February 2017.

Judge Kaplan found that regardless of the purpose of the creation of the EBWLC Class B shares and their sale to Lester Eber, the transactions were void under the "no further inquiry" rule because they involved self-dealing by Lester Eber.  Judge Kaplan found "there was no persuasive evidence that either of Lester's co-trustees or the trust beneficiaries was informed about or consented to Lester's acquisition of these shares in EBWLC."  (ECF No. 451 p. 79).  Accordingly, he ordered the Eber Defendants to "account for and disgorge any EBWLC distributions received by them in relation to the 750 shares of EBWLC stock with prejudgment interest of nine percent."  Id. at 79-80.  The final judgment in this matter states that these shares "are cancelled and deemed to have had no value."  (ECF No. 455).

4. <u>Attorney John Herbert</u>

Attorney Herbert, a semi-retired corporate lawyer, represented Wendy and Lester Eber and various Eber entities in certain corporate matters.  He attended court conferences in this matter during the discovery phase of the case and sometimes offered explanatory information

about the corporate transactions at issue in the case.  He did not serve as lead litigation counsel.  He did not supervise discovery.  He did not personally sign any filings in this case.  He did not testify in this case.  He entered a formal appearance in this case in 2021 as counsel for Wendy Eber and the Estate of Lester Eber, but not as counsel for any Eber entity.

In 2017, Herbert was asked by his client to prepare certain documents to effectuate the creation of a new class of EBWLC Class B Junior Preferred Stock – the EBWLC Class B shares -- and authorizations for the sale of the shares to Lester Eber (the "EBWLC share documents").  In response to the motion for sanctions he attests that his understanding was that the purpose of the documents was to help effectuate the settlement of the PBGC pension litigation.  Herbert drafted the documents and gave them to Wendy Eber.  That is all.

In connection with this litigation he was asked to search for documents and provided unsigned versions of the above-described documents from his files to Underberg & Kessler, the firm that represented the Eber defendants through summary judgment.  Attorney Herbert has attested that he could not locate an electronic version of the documents and did not have versions that were signed.  However, at some point in the litigation, Underberg & Kessler produced signed versions of the documents.

5. Plaintiffs' Sanctions Request

Long after production of documents concerning the creation and transfer of the EBWLC Class B shares and after a final judgment in this case, Plaintiffs now contend that Herbert should be sanctioned because he drafted the EBWLC share documents and facilitated a fraud. Plaintiffs contend that the signed versions of the documents ultimately produced by Wendy Eber through Underberg & Kessler are fraudulent and backdated.  Plaintiffs' counsel estimates

he spent $14,875 of attorney time addressing the EBWLC share documents in dispositive

motion practice and seeks an award in this amount.   However, Plaintiffs' counsel fails to

provide contemporaneous time records.

**LEGAL STANDARD**

28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct

cases in any court of the United States . . . who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   Section

1927 is only applicable to attorneys or other persons authorized to practice before the courts

and not against a party.  *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

Section 1927 sanctions are imposed only "when the attorney's actions are so completely

without merit as to require the conclusion that they must have been undertaken for some

improper purpose."  *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir.

2011) (citation omitted).  Prior to imposing sanctions under Section 1927, a court must provide

the attorney an opportunity to be heard.  *Id.* at 126.  To impose monetary sanctions under

Section 1927, "a court must find clear evidence that (1) the offending party's claims were

entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by

improper purposes such as harassment or delay."  *Huebner v. Midland Credit Mgmt., Inc.*, 897

F.3d 42, 55 (2d Cir. 2018) (citation omitted); *see also Oliveri*, 803 F.2d at 1273 ("An award under

§ 1927 is proper when the attorney's actions are so completely without merit as to require the

conclusion that they must have been undertaken for some improper purpose such as delay.").

When assessing an attorney's conduct, "[t]he question is whether a reasonable attorney could

have concluded that facts supporting the claim might be established, not whether such facts

actually had been established." *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390

(2d Cir. 1985).  The fact that judgment was entered against the party is "a necessary, but not a

sufficient, condition for a finding of a total lack of a colorable basis." *Schlaifer Nance & Co. v.*

*Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999).  But when an attorney continues to defend a

submission even after learning of facts rendering the submission "fatal[ly] flaw[ed]," he has

engaged in bad faith conduct sanctionable under Section 1927.  *Liebowitz v. Bandshell Artist*

*Mgmt.*, 6 F.4th 267, 282-83 (2d Cir. 2021).

The Court may impose sanctions against a party and its attorneys pursuant to its

inherent power.  The standard for determining whether sanctions are appropriate pursuant to

the Court's inherent power is the same as the one for assessing whether sanctions are

appropriate against an attorney pursuant to Section 1927.  *Int'l Technologies Mktg., Inc. v.*

*Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021); *United States v. Prevezon Holdings, Ltd.*, 305

F. Supp. 3d 468, 478 (S.D.N.Y. 2018).  Specifically, there must be clear evidence that "(1) the

offending party's claims were entirely without color, and (2) the claims were brought in bad

faith -- that is, motivated by improper purposes such as harassment or delay." *Prevezon*

*Holdings, Ltd.,* 305 F. Supp. 3d at 479 (quoting *Eismann*, 204 F.3d 393, 396 (2d Cir. 2000).

Therefore, courts often consider motions for sanctions pursuant to Section 1927 and their

inherent power together.  *Id.* at 478.  Attorneys' fees can be awarded as sanctions when "the

losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Eisemann*

*v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (internal quotations omitted).

8

A district court's inherent power to sanction also includes the power to "sanction a party ... to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).  Fraud on the court occurs when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate the action." *Id.* (citation omitted).  The court "has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *See Rossbach v. Montefiore Med. Ctr.*, 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) at *8. That power includes the power to take testimony and reach factual conclusions.  See *Liebowitz*, 2021 WL 3118938, at *9 (affirming a district court's sanctions order that was based on the District Court's independent "review[ ] of the record and evaluat[ion of] the demeanor of the witnesses at [an] evidentiary hearing").

A "court's inherent power must be exercised with restraint and discretion." *Int'l Technologies Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d at 368 (quoting *Chambers*, 501 U.S. 32, 44 (1991)).  Just as with sanctions under Section 1927, before issuing sanctions under its inherent power, the court must provide the attorney or party facing sanctions with "adequate notice and opportunity to be heard." *Shepherd*, 921 F.3d at 97.

## DISCUSSION

Plaintiffs' request for sanctions is utterly without merit.  They offer no case where a court has imposed sanctions on an attorney who simply drafted a document and did not himself submit a signed version of the document to the Court or make arguments to the Court in reliance on the signed document.  They offer no proof that Herbert himself forged Wendy

9

Eber's signature on the documents and concede this in their reply brief.  Their complaint

focuses on the late production of signed versions of the EBWLC share documents and

speculates that due to the delay in the Eber defendants' production of them the documents are

suspect.  Of course, Herbert was not responsible for discovery in this matter and has attested

he did not have signed versions of the documents in his files.  He merely provided the

documents he could locate at the request of Underberg & Kessler.  Thus, Plaintiffs do not

provide any factual basis for finding that Herbert acted in bad faith in connection with this

litigation or perpetuated a fraud on this court.  Indeed, there is absolutely no basis for their

accusations against Herbert.

Furthermore, Plaintiffs' brief completely disregards the high standard required for

imposition of sanctions under Section 1927 or the court's inherent power and does not even

attempt to apply the facts to the applicable legal standard.   In sum, Plaintiffs fall far short of

the "clear evidence" needed to find any fault with Herbert's conduct in this litigation.

## CONCLUSION

For the above-stated reasons, Plaintiffs' motion for sanctions at ECF No. 467 is DENIED.

Dated: October 23, 2023
       New York, New York


                                                    SO ORDERED,

                                                    _Katharine H Parker_
                                                    _____
                                                    KATHARINE H. PARKER
                                                    United States Magistrate Judge